# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)    IRA LEE WILKINS, | ) | |
| | ) | |
| On behalf of themselves and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-00606-CVE-JFJ |
| | ) | |
| (1)    ABERDEEN ENTERPRIZES II, INC., | ) | |
| AN OKLAHOMA CORPORATION, | ) | |
| | ) | |
| *et al.* | ) | |

---

## DEFENDANT ABERDEEN ENTERPRIZES'
## MOTION TO DISMISS AND BRIEF IN SUPPORT

---

**Coffey, Senger & McDaniel, PLLC**
John R. Woodard, III, OBA# 9853
Robert E. Applegate, OBA# 17376
4725 East 91st Street, Suite 100
Tulsa, OK 74137
P:  9189-292-8787
F:  918-292- 8788
john@csmlawgroup.com
applegate@csmlawgroup.com
***Attorneys for Defendant Aberdeen Enterprizes II, Inc.***

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITY | ii |
| BRIEF IN SUPPORT | 1 |
| ARGUMENT AND AUTHORITY | 3 |
| *Standard of Review* | 3 |
| *The Nature of the "Agreement for Collection" and Aberdeen's Actions Pursuant Thereto* | 5 |
| PROPOSITION I - PLAINTIFF HAS FAILED TO STATE A CLAIM PURSUANT TO RICO | 9 |
| PROPOSITION II - PLAINTIFF HAS FAILED TO STATE A CLAIM PURSUANT TO 42 U.S.C. § 1983 | 13 |
| *Color of Law* | 14 |
| *Personal Participation and Policy or Custom* | 20 |
| *Count Two - Due Process* | 22 |
| *Count Four - Equal Protection* | 23 |
| *Count Five - Fourteenth Amendment* | 25 |
| *Count Six - Fourth and Fourteenth Amendments* | 26 |
| *Count Seven - Due Process and Equal Protection* | 27 |
| PROPOSITION III - THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE CLAIMS AND, NEVERTHELESS, PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF IN SUCH RESPECTS | 29 |
| *Supplemental Jurisdiction* | 30 |
| *Count Three - Void and Unenforceable Agreement* | 30 |
| *Count Eight - Abuse of Process* | 31 |
| CONCLUSION | 32 |

# TABLE OF AUTHORITY

| **Cases** | **Page** |
|---|---|
| *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970) | 16 |
| *Andrews v. Dir., IRS*, 2010 U.S. Dist. LEXIS 73961 (D. Colo. April 20, 2010) | 9 |
| *Ashcraft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) | 4, 20 |
| *Asset Acceptance L.L.C. v. White*, 2014 OK CIV APP 96, 340 P. 3d 19 | 30 |
| *Bache Halsey Stuart Shields, Inc. v. Tracy Collins Bank & Tr. Co.*, 558 F. Supp. 1042 (D. Utah 1983) | 11 - 13 |
| *Barr v. Abrams*, 810 F. 2d 358 (2nd Cir. 1987) | 14 |
| *Beedle v. Wilson*, 422 F. 3d 1059 (10th Cir. 2005) | 3 |
| *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) | 3 - 5 |
| *Benavidez v. Gunnell*, 722 F. 2d 615 (10th Cir. 1983) | 19 |
| *Bennett v. Passic*, 545 F. 2d 1260 (10th Cir. 1976) | 20 |
| *Beth Israel Medical Center v. Smith*, 576 F. Supp. 1061 (S.D. N.Y. 1983) | 11 |
| *Betts v. Allied Cementing Co.*, 1989 U.S. Dist. LEXIS 11747 (D. Kan. September 19, 1989) | 5 |
| *Board of County Commissioners of Bryant County, Oklahoma v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) | 20 |
| *Bracy v. Gramley,* 520 U.S. 899, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997) | 22 |
| *Bryant-Bruce v. Vanderbilt University, Inc.*, 974 F. Supp. 1127 (M.D. Tenn. 1997) | 19 |
| *Bryner v. Utah*, 2010 U.S. Dist. LEXIS 29132 (D. Utah March 22, 2010) | 14 |
| *Burton v. Wilmington Parking Auth.*, 365 U.S. 715,  81 S. Ct. 856, 6 L. Ed. 2d 45 (1961) | 15 |
| *Carey v. Continental Airlines, Inc.*, 823 F. 2d 1402 (10th Cir. 1987) | 19 |
| *Chapman v. Chase Manhattan Mortg. Corp.*, 2007 U.S. Dist. LEXIS 70655 (N.D. Okla. September 24, 2007) | 12 - 13 |
| *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) | 20 |
| *Clulow v. Oklahoma*, 700 F. 2d 1291 (10th Cir. 1983) | 16 |
| *Connard v. State*, 1934 OK CR 98, 35 P. 2d 278 | 12 |
| *Creech v. Fed. Land Bank*, 647 F. Supp. 1097 (D. Colo. 1986) | 11 |
| *Davis v. Oklahoma Dept. of Corrections*, 516 F. Supp. 5 (W.D. Okla. 1980) | 14 |
| *Davis v. Union Nat. Bank*, 46 F. 3d 24 (7th Cir. 1994) | 19 |
| *Dees v. Vendel*, 856 F. Supp. 1531 (D. Kan. 1994) | 14 |
| *Dixon v. City of Lawton, Okl.*, 898 F. 2d 1443 (10th Cir. 1990) | 14 |
| *Duba v. McIntyre*, 501 F. 2d 590 (8th Cir. 1974) | 21 |
| *Dunn v. White*, 880 F. 2d 1188 (10th Cir. 1989) | 14 |
| *Ex parte Small*, 1950 OK CR 98, 221 P. 2d 669 | 24 |
| *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978) | 15, 18 - 19 |
| *Gallagher v. Neil Young Freedom Concert*, 49 F. 3d 1442 (10th Cir. 1995) | 15 - 16 |
| *Gallegos v. City and County of Denver*, 984 F. 2d 358 (10th Cir. 1993) | 14 |

ii

*Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) .......... 14

*Ginsberg v. Henley Car & Truck Leasing, Inc.*, 189 F. 3d 268 (2nd Cir. 1999) .......... 19

*Gitterman v. Vitoulis*, 579 F. Supp. 423 (S.D. N.Y. 1983) .......... 10

*Gold v. Local 7 United Food and Commercial Workers Union*, 159 F. 3d 1307 (10th Cir. 1998) .......... 30

*Hall v. Bellmon*, 935 F. 2d 1106 (10th Cir. 1991) .......... 14

*Harvey v. Harvey*, 949 F. 2d 1127 (11th Cir. 1992) .......... 20

*Henry v. Farmer City State Bank*, 808 F. 2d 1228 (7th Cir. 1986) .......... 21 - 22

*Howard v. Webb*, 570 P. 2d 42, 1977 Okla. LEXIS 708 (Okla. October 4, 1977) .......... 27

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974) .......... 15 - 16

*Landmark Land Co. v. Buchanan*, 874 F. 2d 717 (10th Cir. 1988) .......... 24

*LaVoy v. Snedeker*, 2004 U.S. Dist. LEXIS 20292 (D. N.M. March 9, 2004) .......... 22

*Lee v. Estes Park*, 820 F. 2d 1112 (10th Cir. 1987) .......... 19

*Lee v. State*, 75 Ala. 29 (Ala. 1933) .......... 24

*Lile v. Tippecanoe County Jail*, 844 F. Supp. 1301 (N.D. Ind. 1992) .......... 20

*Lillard v. Shelby County Board of Education*, 76 F. 3d 716 (6th Cir. 1996) .......... 20

*Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982) .......... 15

*Lynn v. Rainey*, 1964 OK 212, 400 P. 2d 805 .......... 31

*Marlin Oil Corp. v. Barby Energy Corp.*, 2002 OK CIV APP 92, 55 P. 3d 446 .......... 31

*Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) .......... 20

*Monroe v. Pape*, 365 U.S. 167, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961) .......... 14

*Moore v. Guesno*, 485 F. Supp. 2d 300 (W.D. N.Y. 2007) .......... 10

*Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S. Ct. 1965, 32 L. Ed. 2d 627 (1972) .......... 15

*National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 109 S. Ct. 454, 102 L. Ed. 2d 469 (1988) .......... 14

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S. Ct. 2018, 89 L. Ed. 2d 452 (1986) .......... 20

*Peng v. Mei Chin Penghu*, 335 F. 3d 970 (9th Cir. 2003) .......... 19

*Peoples Electric Cooperative v. Western Farmers Electric Cooperative*, 746 F. Supp. 2d 1202 (W.D. Okla. 2010) .......... 4

*Pointer v. City of Tulsa*, 2014 U.S. Dist. LEXIS 118744 (N.D. Okla. August 26, 2014) .......... 14

*Redding v. St. Eward*, 241 F. 3d 530 (6th Cir. 2001) .......... 19

*Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982) .......... 15

*Riddle v. Mondragon*, 83 F. 3d 1197 (10th Cir. 1996) .......... 14

*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F. 3d 1174 (10th Cir. 2007) .......... 3 - 4

*Robbins v. Okla. ex rel. Department of Human Services*, 519 F. 3d 1242 (10th Cir. 2008) .......... 4

*Schroder v. Volcker*, 646 F. Supp. 132 (D. Colo. 1986) .......... 19 - 20

*Sigmon v. CommunityCare HMO, Inc.*, 234 F. 3d 1121 (10th Cir. 2000) .......... 15

*Sooner Products Co. v. McBride*, 708 F. 2d 510 (10th Cir. 1983)     16
*State v. Ballard*, 1994 OK CR 6, 868 P. 2d 738     25
*Taylor v. First Wyoming Bank, N.A.*, 707 F. 2d 388 (9th Cir. 1983)     15
*United States v. Lightfoot*, 506 F. 2d 238 (D.C. Cir. 1974)     12
*Valdez v. City and County of Denver*, 878 F. 2d 1285 (10th Cir. 1989)     21 - 22
*Waucaush v. United States*, 380 F. 3d 251 (6th Cir. 2004)     10
*Wise v. Bravo*, 666 F. 2d 1328 (10th Cir. 1981)     5, 20

## Statutes and Rules

U.S. Const. amend. IV     13, 26, 29
U.S. Const. amend. VI     14
U.S. Const. amend. XIV     13, 14, 22, 25, 26, 29
18 U.S.C. § 1951     9, 11
18 U.S.C. § 1952     9, 12
18 U.S.C. § 1961     9, 11
18 U.S.C. § 1962     9 - 10
28 U.S.C. § 1367     30
42 U.S.C. § 1983     3, 5, 13 - 16, 18, 20 - 21, 29, 33
Fed. R. Civ. P. 8     5
Fed. R. Civ. P. 12     1
Fed. R. Civ. P. 23     1
Okla. Const. art. II, § 13     23 - 24
Okla. Stat. tit. 19, § 514.4 (2003)     5-6
Okla. Stat. tit. 19, § 514.4 (2010)     6-7, 17, 19, 32
Okla. Stat. tit. 21, § 1481     9, 12
Okla. Stat. tit. 21, § 1482     9
Okla. Stat. tit. 22, § 42     19
Okla. Stat. tit. 22, § 983     28
Okla. Stat. tit. 28, § 101     25
Rule 8.2, Rules of the Oklahoma Court of Criminal Appeals     27
Rule 8.3, Rules of the Oklahoma Court of Criminal Appeals     27 - 28
Rule 8.4, Rules of the Oklahoma Court of Criminal Appeals     28

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1)    IRA LEE WILKINS, | ) | |
| | ) | |
| On behalf of themselves and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-00606-CVE-JFJ |
| | ) | |
| (1)    ABERDEEN ENTERPRIZES II, INC., | ) | |
| AN OKLAHOMA CORPORATION, | ) | |
| | ) | |
| *et al.* | ) | |

**DEFENDANT ABERDEEN ENTERPRIZES'**
**MOTION TO DISMISS AND BRIEF IN SUPPORT**

Defendant Aberdeen Enterprizes II, Inc. ("Aberdeen") moves the Court to dismiss Plaintiff's Class Action Complaint pursuant to Fed. R. Civ. P. 12 (b) (6).[1]  As described more fully in Aberdeen's Brief in Support below, Plaintiff has failed to state a claim upon which relief can be granted against Aberdeen.  Plaintiff's cause of action presents nothing more than a bare charges of conspiracy and "extortion" relating to a legitimate and legal business activity.

**BRIEF IN SUPPORT**

Plaintiff brings this matter challenging a legally authorized and legitimate business arrangement and ensuing activities involving Aberdeen, the Oklahoma Sheriffs' Association and all county sheriffs of Oklahoma.  The business arrangement relates to an Agreement for Collection between Aberdeen and the Oklahoma Sheriffs' Association.  Pursuant to the Agreement (and

---

[1] Plaintiff has not yet moved for class certification.  Aberdeen disputes that Plaintiff has, or can, establish the requisite elements under Fed. R. Civ. P. 23 in order for this matter to proceed as a class action.  The instant motion does not address class certification, but Plaintiff's failure to state a claim.  Aberdeen will respond to Plaintiff's request for class certification if and when such motion is presented or the issue is otherwise properly before the Court.

Oklahoma statutory authority), Aberdeen performs "collection of fines, penalties and assessments of certain 'Warrants' (as defined below) issued by the County Sheriffs in the State of Oklahoma." *See* Complaint [Doc. 2], Exhibit "1," Agreement for Collection, at p. 1.  In short, Aberdeen, a private corporation, works with persons subject to failure-to-pay warrants in an effort to collect outstanding fines, penalties and assessments and requests the recall of such warrants to prevent arrest.

Plaintiff identifies as "an indigent resident of Tulsa, currently in the custody of the Oklahoma Department of Corrections."  Complaint [Doc. 2], at ¶ 15, p. 14.  Plaintiff describes pleading to a criminal charge and later subject to a bench warrant "for Failure to Pay" that was "sent to Aberdeen for collections."  *Id.*  As it is not entirely clear from the allegations presented, Plaintiff appears to propose that Aberdeen requested another bench warrant be issued for Plaintiff's failure to pay and such warrant has precluded Plaintiff's ability to be released from incarceration.[2] *See id.*

The primary theme of Plaintiff's cause of action is that the Agreement for Collection between Aberdeen and the Oklahoma Sheriffs' Association permits imprisonment for failure to pay a debt in contravention of federal and state law.  Plaintiff charges that Aberdeen extorts money

---

[2] Plaintiff's description of his circumstances is misleading, if not altogether incorrect.  Plaintiff was placed in Department of Corrections' custody in relation to a sentence out of Tulsa County (CF-2017-1092) on July 7, 2017.  While in custody, Plaintiff sought admission to a Department of Corrections work program.  According to Department of Corrections' policy, Plaintiff was not eligible for such program based upon an active warrant out of Wagoner County for Plaintiff's failure to appear in relation to traffic charges (TR-2010-1937, TR-2010-1938, TR-2010-1939).  Plaintiff contacted Aberdeen to arrange partial payment of the outstanding warrant in order to have the warrant recalled.  Plaintiff's fiancée made an initial payment and Aberdeen requested Wagoner County recall the warrant.  Wagoner County recalled the warrant.  Any subsequent decision accepting or denying Plaintiff for the work program remained with the Department of Corrections.  While most of such information is public record, Aberdeen only clarifies the circumstances and has accepted Plaintiff's allegations as true for the purposes of its Motion to Dismiss herein.

2

- *i.e. fines, penalties and assessments imposed not by Aberdeen but by the judiciary and legislature* - through "intimidation, warrants and incarceration." *Id.*, at p. 9. When individuals subject to pending failure-to-pay warrants - *i.e. warrants issued by judges* - fail to pay the same, Plaintiff then charges that Aberdeen "requests that warrants be issued … with no hearing to determine ability to pay." *Id.*

Plaintiff's description of an alleged conspiracy of extortion involving Aberdeen is fundamentally flawed, contrary to his own allegations and, nevertheless, falls significantly short of stating a claim for relief. Plaintiff's Complaint fails to state sufficient facts to state a plausible claim for relief under RICO based upon the absence of any "racketeering activity" involving interstate commerce. Additionally, Plaintiff's claims pursuant to 42 U.S.C. § 1983 are wholly untenable as Aberdeen cannot be determined to have acted under "color of law." Moreover, none of the challenged conduct by Aberdeen rises to the level of transgression upon any of Plaintiff's constitutional rights. Finally, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims and, in any event, such claims fail to state a plausible claim for relief.

## ARGUMENT AND AUTHORITY

### *Standard of Review*

In reviewing the sufficiency of a complaint to state a claim, the previous standard required a reviewing court to determine whether "'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F. 3d 1174, 1177 (10th Cir. 2007) (quoting *Beedle v. Wilson*, 422 F. 3d 1059, 1063 (10th Cir. 2005)). However, since the United States Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the standard is whether a plaintiff has presented "enough facts to state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.  In discussing this standard, the court in *Ridge at Red Hawk* described:

> The [*Twombly*] Court explained that a plaintiff must "nudge[] [his] claims across the line from conceivable to plausible" in order to survive a motion to dismiss.  Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.

*Ridge at Red Hawk*, at 1177 (quoting *Twombly*, 127 S. Ct. at 1974).  As the Western District has explained:

> A plaintiff's complaint must do more than merely raise the possibility of a claim.  It must allege the existence of a plausible one.

*Peoples Electric Cooperative v. Western Farmers Electric Cooperative*, 746 F. Supp. 2d 1202, 1206 (W.D. Okla. 2010) (citing *Twombly*, 550 U.S. at 570).

Plausibility serves two important functions: (1) to weed out claims with no "reasonable prospect of success" and (2) to provide notice to defendants "of the actual grounds of the claim against them." *Robbins v. Okla. ex rel. Department of Human Services*, 519 F. 3d 1242, 1248 (10th Cir. 2008).  While detailed factual allegations may not be necessary, a plaintiff is obligated to provide more than mere "labels and conclusions" which succeed only in providing "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965 (citations omitted).  Allegations of fact which merely create a suspicion of misconduct do <u>not</u> state a claim for relief.  *See Ashcraft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

Furthermore, and with particular respect to Plaintiff's § 1983 claims, the courts have long required that allegations of constitutional violations be sufficiently detailed.  The Tenth Circuit has described:

> Constitutional rights allegedly invaded, warranting an award of damages, must be specifically identified. Conclusory allegations will not suffice.

*Wise v. Bravo*, 666 F. 2d 1328, 1333 (10th Cir. 1981) (citations omitted). Even prior to *Twombly* and under a liberal and minimal construction of Fed. R. Civ. P. 8 (a), a plaintiff asserting constitutional violations must provide sufficient specificity and clarity regarding the particular conduct of the defendant and how the same transgresses the plaintiff's constitutional rights. *See Betts v. Allied Cementing Co.*, 1989 U.S. Dist. LEXIS 11747, *2-3 (D. Kan. September 19, 1989).

### The Nature of the "Agreement for Collection" and Aberdeen's Actions Pursuant Thereto

Before discussing the specific claims presented and failure of Plaintiff to state a plausible claim for relief pursuant to the authority above, it is necessary to discuss Aberdeen's business activity at issue. To begin, on July 1, 2003, the Oklahoma Legislature enacted the following:

> A. Notwithstanding any other section of law, the county sheriffs of any Oklahoma county may enter into a private contract, pursuant to Section 85.41 of Title 74 of the Oklahoma Statutes. Such contract shall establish an automated telephone system which would notify persons of their outstanding misdemeanor warrants. The provisions of any such contract entered into shall be administered by a statewide association of county sheriffs in Oklahoma.

> B. The automated telephone system shall allow the person with outstanding misdemeanor warrants to make payment by electronic means. For purposes of this subsection, "electronic means" shall be defined as the use of a nationally recognized credit or a debit card for payment of outstanding misdemeanor warrants using an automated telephone system.

Okla. Stat. tit. 19, § 514.4 (2003). This provision authorized county sheriffs to enter into a private agreement which set up a means by which persons with outstanding warrants could make electronic payments. This provision was amended in 2005 and again in 2010 to authorize the use of a private contractor for locating and notifying persons with outstanding failure-to-pay warrants and to collect the same. In its current version, this statute provides:

A. Notwithstanding any other section of law, the county sheriffs of any Oklahoma county may enter into a private contract, pursuant to Section 85.41 of Title 74 of the Oklahoma Statutes. Such contract shall require the contractor to attempt to locate and notify persons of their outstanding misdemeanor or failure-to-pay warrants.

B. A person may make payment directly to the court, as allowed by law, or the contractor shall be authorized to accept payment on misdemeanor or failure-to-pay warrants by various means including, but not limited to, payment by phone, mail, or Internet, and in any payment form including, but not limited to, personal, cashier's, traveler's, certified, or guaranteed bank check, postal or commercial money order, nationally recognized credit or a debit card, or other generally accepted payment form. Any payment collected and received by the contractor shall be paid within fifteen (15) days to the court clerk of the entity that issued the outstanding misdemeanor or failure-to-pay warrant.

C. As provided for by this section, a person may pay in lieu of appearance before the court and such payment accepted by the court shall constitute a finding of guilty as though a plea of nolo contendere had been entered by the defendant as allowed by law and shall function as a written, dated, and signed plea form acceptable to the court. Such payment shall serve as a written waiver of a jury trial.

D. The court shall release the outstanding misdemeanor or failure-to-pay warrant upon receipt of all sums due pursuant to said warrant including the misdemeanor or failure-to-pay warrant, scheduled fine or sum due, all associated fees, costs and statutory penalty assessments, and the administrative cost pursuant to Section 514.5 of this title.

E. The provisions of any contract entered into by a county sheriff shall be administered by a statewide association of county sheriffs in Oklahoma. The county sheriff of any Oklahoma county may assign their right to contract to the statewide association administering the provisions of this contract.

F. The provisions of this section and Section 514.5 of this title shall be applicable to:

> 1. Any misdemeanor or failure-to-pay warrant issued or relating to any proceeding pursuant to the State and Municipal Traffic Bail Bond Procedure Act;

2. Any misdemeanor or failure-to-pay warrant issued that allows a defendant to resolve the matter by payment in lieu of a personal appearance in court; and

3. Any failure-to-pay warrant issued in a criminal case.

*Id.* (effective November 1, 2010).

The Agreement for Collection between Aberdeen and the Oklahoma Sheriffs' Association was specifically entered pursuant to this provision. *See* Complaint [Doc. 2], Exhibit "1," Agreement for Collection, at p. 1. The Agreement engages Aberdeen to locate and notify persons of *outstanding* failure-to-pay warrants and attempts to collect the same. Aberdeen does not, contrary to Plaintiff's bare assertion, issue warrants or make any determination as to whether a person's failure to pay *outstanding* fees, penalties and assessments justifies incarceration. *See id.* Rather, accounts are referred to Aberdeen who then simply attempts to collect such amounts already owed by such person to the county. These *outstanding* accounts are identified by county officials and Aberdeen uses its best efforts to collect the same. *See id.*, at ¶ 2, pp. 3-4 Aberdeen is merely a private corporation retained as an independent contractor to assist with the counties' attempts to collect *previously determined* fees, penalties and assessments relating to *previously issued* failure-to-pay warrants. *See id.*, at ¶ 17, p. 14.

In the event, a person fails to comply with a payment arrangement, Aberdeen notifies the person of the same. If payment remains outstanding, Aberdeen notes the same on a computer system accessible to court officials.[3] *See* Complaint [Doc. 2], Exhibit "2," at p. 1. Any failure-to-pay warrants resulting from such failure and Aberdeen's notation of the same are prepared, issued and served by county officials, not Aberdeen.

---

[3] Some court officials may specifically request Aberdeen provide a list of the status of accounts, as opposed to simply accessing the computer system.

Though clouded by disparaging accusations, Plaintiff's Complaint acknowledges this process and the scope of Aberdeen's involvement. *See id.*, at ¶¶ 22-24, pp. 16-18. Contrary to Plaintiff's allegation, fees, penalties and assessments relating to these outstanding failure-to-pay warrants are not determined by Aberdeen, but relate to "court debts in criminal cases." *Id.*, at p. 9. The thirty percent figure referenced by Plaintiff is a fee *added by the court as a court cost* to cover the expense of having to employ the collections process. "[**A**]**ll funds collected** by Aberdeen" under the Agreement are submitted to the county. *Id.*, Exhibit "1," Agreement for Collection, ¶ 2 (e) (3), p. 5. Once payment is made to the county, Aberdeen is paid a percentage. *See id.*, Exhibit "1," Agreement for Collection, ¶ 2 (e) (3) (B), p. 5. *See also* Complaint [Doc. 2], at ¶ 28, p. 19.

Plaintiff also appears to recognize (despite his attempts to improperly charge Aberdeen otherwise) that a defendant's ability to pay a fine/cost in connection with a criminal sentence remains that of a county judge. *See id.*, at ¶¶ 41-43, pp. 24-25. Whether a county judge makes such determination cannot be attributed to Aberdeen. Again, Aberdeen's involvement occurs **after** a failure-to-pay warrant is originally issued. In the event a subsequent warrant for failure-to-pay is issued and executed for the arrest of a person based upon a failure to satisfy any payment schedule, such warrant is not issued by Aberdeen.[4] As Plaintiff advises, Aberdeen may *request* an outstanding failure-to-pay warrant be recalled and such involvement should not be construed as supporting that Aberdeen has usurped the county judge's statutory function of actually issuing arrest warrants or, more importantly, imprisoning a person for failure to pay.

---

[4] Plaintiff appears to acknowledge this fact, despite his accusations. *See id.*, at ¶ 56, p. 31 ("… **the county could reissue a FTP warrant.**")

**PROPOSITION I**

**PLAINTIFF HAS FAILED TO STATE A CLAIM PURSUANT TO RICO**

In Count One, Plaintiff presents a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO").   Plaintiff contends the "Sheriffs' Association, together with Aberdeen and the other unnamed conspirators" committed extortion in violation of: the Hobbs Act, 18 U.S.C. § 1951; Okla. Stat. tit. 21, § 1481; Okla. Stat. tit. 21, § 1482 and the Travel Act, 18 U.S.C. § 1952.  *See* Complaint [Doc. 2], at ¶¶ 114 and 119, pp. 51-52. These activities include alleged threats that the failure to pay outstanding fees, penalties and assessments may result in the issuance of a warrant, arrest, imposition of additional fee and/or incarceration.  *See id.*, at ¶ 122, p. 52.

A civil claim pursuant to RICO, such as presented by Plaintiff, requires "(1) conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity."  *Andrews v. Dir., IRS*, 2010 U.S. Dist. LEXIS 73961, *7 (D. Colo. April 20, 2010).  "Racketeering activity" is defined in § 1961 (1) to include, among others, "extortion" and "any act which is indictable" under the Hobbs Act and Travel Act.  Aberdeen does not concede that Plaintiff has presented sufficient allegations to support that any of these elements can be satisfied in this matter.  As referenced above and discussed in greater detail below, Aberdeen's conduct pursuant to the Agreement for Collection is authorized by statute and otherwise lawful.  Plaintiff's conclusory allegations of "extortion" are wholly without merit.

As a preliminary matter as respects Count One of Plaintiff's Complaint, a RICO claim requires a predicate showing that the alleged activity affects <u>interstate commerce</u>.  *See* 18 U.S.C. § 1962; *Moore v. Guesno*, 485 F. Supp. 2d 300, 309 (W.D. N.Y. 2007).  On this issue, Plaintiff can only offer that Defendants' activities relate "to the collection of money" and "movement" of

profit across state lines. Complaint [Doc. 2], at ¶ 115, p. 51. Such allegation is woefully insufficient even under the most liberal construction of the term "interstate commerce." In rejecting a similarly tenuous connection, the Sixth Circuit commented:

> Indeed, most individuals and organizations cannot help but buy products that traveled in interstate commerce, or occasionally talk to colleagues in, or travel to, other states for some reason or another If we were to label these occasional acts of interstate commerce as "substantial," federal authority under the Commerce Clause would be virtually limitless.

*Waucaush v. United States*, 380 F. 3d 251, 258 (6th Cir. 2004). *See also Gitterman v. Vitoulis*, 579 F. Supp. 423, 425-26 (S.D. N.Y. 1983) (rejecting contention that intrastate calls made on a network which includes both intrastate and interstate phone lines sufficiently implicate interstate commerce for purposes of RICO).

Aberdeen, the Oklahoma Sheriffs' Association and the numerous county sheriffs involved in this matter are Oklahoma entities/citizens. *See* Complaint [Doc. 2], at ¶¶ 16 - 19, pp. 14-15. Additionally, Plaintiff is alleged to be "an indigent resident of Tulsa, currently in the custody of the Oklahoma Department of Corrections." *Id.*, at ¶ 15, p. 14. Pursuant to Plaintiff's own allegations in the Complaint, the proposed "extortion" scheme relates strictly to *intra*state communications between parties situated in Oklahoma.[5] Plaintiff's conclusory assertion that interstate commerce is somehow affected will not suffice to save dismissal of his RICO claims in Count One as the allegations and circumstances presented specifically dispel this requisite jurisdictional showing.

---

[5] On this point, it is further instructive that Plaintiff's proposed class are people found to be indigent by **Oklahoma County Courts** who were assigned counsel through the **Oklahoma Indigent Defense System**. *See* Complaint [Doc. 2], at p. 8.

10

Even assuming, <u>arguendo</u>, Plaintiff could somehow link the subject activities to interstate commerce, he has, nevertheless, failed to state a claim under RICO.  Assuming, for purposes of this motion only, that Aberdeen qualifies as an "enterprise," the alleged "extortion" activity does not meet the requirement for a "pattern of racketeering activity."  First, the "pattern" element requires the commission of two or more acts.  *See* 18 U.S.C. § 1961 (5); *Beth Israel Medical Center v. Smith*, 576 F. Supp. 1061, 1065 (S.D. N.Y. 1983).  Plaintiff, however, has only implicated one alleged activity of "extortion" - Aberdeen's "request that a warrant be issued."  *See* Complaint [Doc. 2], at ¶ 15, p. 14. Purportedly, this warrant was issued and, if "not for the warrant for failure to pay," Plaintiff would have "been cleared for release." Complaint [Doc. 2], at ¶ 15, p. 14.[6]  A pattern, for purposes of RICO, "requires multiple criminal episodes or schemes, *not simply multiple predicate acts to accomplish a **single scheme**" - i.e. securing Plaintiff's payment of outstanding fees, penalties and other assessments relating to a previously issued failure-to-pay warrant.  *Creech v. Fed. Land Bank*, 647 F. Supp. 1097, 1100-01 (D. Colo. 1986).

The second component, "racketeering activity," also requires more than Plaintiff's cursory promise of satisfaction.  Whether based upon an alleged violation of the Hobbs Act, Travel Act or Oklahoma criminal statutes relating to "extortion," the racketeering activity must be alleged "with enough specificity to show there is probable cause the crimes were committed."  *Bache Halsey Stuart Shields, Inc. v. Tracy Collins Bank & Tr. Co.*, 558 F. Supp. 1042, 1045 (D. Utah 1983).  The allegations of activity attributable to Aberdeen are not so specific.

The Hobbs Act is a criminal statute which requires an element of unlawful taking of property.  *See* 18 U.S.C. § 1951; *Creech*, at 1099.  Nowhere in the sixty-three-page Complaint

---

[6] As previously indicated, as a point of clarification, the warrant was not requested by Aberdeen and Plaintiff's "release" was transfer into a work program.

does Plaintiff dispute that the failure-to-pay bench warrant which resulted in Aberdeen's involvement was invalid or that he otherwise did not have to pay the fees, penalties or assessments at issue.  According to the allegations presented, Aberdeen was not robbing or extorting money from Plaintiff wrongfully, but merely performing its obligations pursuant to the Agreement for Collection which have been statutorily authorized.  It is disingenuous to charge Aberdeen with wrongfully taking money through the alleged threat of arrest when he does not dispute such amount is owed or that, under Oklahoma law, the possibility of an arrest warrant being issue is, in fact, one of the lawful repercussions of a failure to pay the same.

Plaintiff's reliance on the Travel Act is even further untenable.  The Travel Act, as signaled by its very name, requires an element of travel for purposes of "unlawful activity."  *See* 18 U.S.C. § 1952.  Plaintiff simply cannot implicate "interstate travel to further the purposes of concerted illegal activity."  *United States v. Lightfoot*, 506 F. 2d 238, 240 (D.C. Cir. 1974).  Based upon the allegations presented, Plaintiff has failed to provide the requisite sufficiency of unlawfulness and interstate travel.

As for the Oklahoma statutory provisions, Plaintiff's charge of "extortion" is not well-founded or based on probable cause.  *See Bache*, at 1045.  "Extortion" is defined as "the obtaining of property from another with his consent, induced by a wrongful use of force or fear, or under color of official right."  Okla. Stat. tit. 21, § 1481.  *See also Connard v. State*, 1934 OK CR 98, 35 P. 2d 278, 279.  Plaintiff alleges he was in custody and unable to pay an outstanding warrant which prevented his "release."  *See* Complaint [Doc. 2], at ¶ 15, p. 14.  Any efforts by Aberdeen to collect a legitimate debt which Plaintiff does not dispute was owed cannot be characterized as "extortion" (or attempted "extortion") as it has not been (and cannot be) shown that Aberdeen's efforts were wrongful. *See e.g. Chapman v. Chase Manhattan Mortg. Corp.*, 2007 U.S. Dist. LEXIS 70655,

*24-26 (N.D. Okla. September 24, 2007) (discussing bank's use of necessary steps to collect legitimate obligation).

In sum, based upon the complete absence of any involvement of interstate commerce and lack of "pattern of racketeering activity," Plaintiff has wholly failed to state a claim pursuant to RICO.  As described by the court in *Bache*, "RICO was enacted as part of the Organized Crime Control Act of 1970, the purpose of which was to combat 'organized crime' in the United States." *Bache*, at 1046.  Aberdeen's efforts - authorized by Oklahoma statute - to secure payment of fees, penalties and assessments relating to an undisputed outstanding failure-to-pay warrant issued to Plaintiff simply do not implicate the racketeering activity contemplated by Congress.

## PROPOSITION II

## PLAINTIFF HAS FAILED TO STATE A CLAIM PURSUANT TO 42 U.S.C. § 1983

In Counts Two, Four, Five, Six and Seven, Plaintiff presents allegations of constitutional violations relating to Aberdeen's activities pursuant to the Agreement for Collection.  In Count Two, Plaintiff submits that his Due Process rights have been violated because the Oklahoma Sheriffs' Association and numerous identified county sheriffs used a "private, for-profit corporation to perform a traditional court function - fine and cost collection" instead of a "neutral public court officer."  Complaint [Doc. 2], at ¶¶ 140 and 141, p. 56.  In Count Four, Plaintiff complains the collection process violates equal protection in that it treats indigent defendants different than those who owe money to a "private creditor."  *See id.*, at ¶ 150, p. 59.  Count Five proposes the Fourteenth Amendment is violated as a result of the Defendants' use of Aberdeen to "supervise" those who cannot afford to pay court judgments.  *Id.*, at ¶ 153, p. 60.  Plaintiff repurposes the Fourteenth Amendment, along with the Fourth Amendment, in Count Six to challenge the failure-to-pay warrant process.  Finally, in Count Seven, Plaintiff contends the

Fourteenth Amendment is, again, transgressed by Defendants' jailing of persons based upon their inability to afford a "preset" money payment. *Id.*, at ¶ 158, p. 61.[7]

Section 1983 does not create substantive rights, but is merely a procedural vehicle to remedy deprivations of existing federal rights. *See Gallegos v. City and County of Denver*, 984 F. 2d 358, 362 (10th Cir. 1993); *Dixon v. City of Lawton, Okl.*, 898 F. 2d 1443, 1448 (10th Cir. 1990).[8] There are, however, certain ground rules for establishing a claim pursuant to § 1983, regardless of the precise substantive federal right at issue. These ground rules include the requirement of action under "color of law," personal participation by individual defendants and a policy or custom on behalf of municipalities and proper corporate entities. Plaintiff's § 1983 claims fail in these respects.

### *Color of Law*

The only proper defendants in a § 1983 cause of action are "those wrongdoers 'who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.'" *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191, 109 S. Ct. 454, 462, 102 L. Ed. 2d 469 (1988) (quoting *Monroe v. Pape*, 365 U.S. 167, 172, 81 S. Ct. 473, 476, 5 L. Ed. 2d 492 (1961)). In addition to showing that he has been "deprived of a right 'secured by the Constitutional and the laws' of the United States," Plaintiff must show that

---

[7] Within his jurisdictional allegations, Plaintiff references the Sixth Amendment. However, even notwithstanding the lack of any specific allegations in support, it is not clear how Plaintiff's Sixth Amendment rights are implicated in this matter. *See Gideon v. Wainwright*, 372 U.S. 335, 339-40, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); *Pointer v. City of Tulsa*, 2014 U.S. Dist. LEXIS 118744, *15-16 (N.D. Okla. August 26, 2014); *Bryner v. Utah*, 2010 U.S. Dist. LEXIS 29132, *19-20 (D. Utah March 22, 2010).

[8] As previously referenced, general and conclusory allegations of constitutional violations are insufficient. *See Riddle v. Mondragon*, 83 F. 3d 1197, 1205 (10th Cir. 1996); *Hall v. Bellmon*, 935 F. 2d 1106, 1110 (10th Cir. 1991); *Dunn v. White*, 880 F. 2d 1188, 1197 (10th Cir. 1989); *Barr v. Abrams*, 810 F. 2d 358, 363 (2nd Cir. 1987); *Dees v. Vendel*, 856 F. Supp. 1531, 1536 (D. Kan. 1994); *Davis v. Oklahoma Dept. of Corrections*, 516 F. Supp. 5, 6 (W.D. Okla. 1980).

Aberdeen deprived him of this right acting under color of state law.  *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978).  *See also Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 2753, 73 L. Ed. 2d 482 (1982).

In determining whether a private entity has acted under color of law, four tests have been employed by the courts.  *See Sigmon v. CommunityCare HMO, Inc.*, 234 F. 3d 1121, 1125 (10th Cir. 2000).  The first test asks "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the later may be fairly treated as that of the State itself."  *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S. Ct. 449, 453, 42 L. Ed. 2d 477 (1974).  To satisfy this test, evidence must be presented that the State exerted some degree of coercion over the private entity.  *See Gallagher v. Neil Young Freedom Concert*, 49 F. 3d 1442, 1448 (10th Cir. 1995).  The State's mere acquiescence in the alleged conduct is insufficient.  *Id.*

The second test inquires as to "whether the state has 'so far insinuated itself into a position of interdependence' with the private party ... that there is a 'symbiotic relationship between them.'"  *Id.*, at 1447 (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725, 81 S. Ct. 856, 861-61, 6 L. Ed. 2d 45 (1961); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175, 92 S. Ct. 1965, 1972-73, 32 L. Ed. 2d 627 (1972)).  This "symbiotic relationship" cannot be established based simply upon facts such as the incident occurred on public property or the defendant entity receives public funding or is regulated by the State.  *Id.*, at 1451-53.  *See also Rendell-Baker v. Kohn*, 457 U.S. 830, 840-41, 102 S. Ct. 2764, 2771, 73 L. Ed. 2d 418 (1982); *Taylor v. First Wyoming Bank, N.A.*, 707 F. 2d 388, 389 (9th Cir. 1983).

The third test requires concerted action between the State and the private entity.  *Id.*, at 1453-54.  In this respect, the issue is whether the private party willfully participates in a joint

activity with the state. *Id.*, at 1447 (citing *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 152, 90 S. Ct. 1598, 1605-06, 26 L. Ed. 2d 142 (1970)). This test requires specific factual allegations. As described in *Sooner Products Co. v. McBride*, 708 F. 2d 510 (10th Cir. 1983):

> When a plaintiff in a § 1983 action attempts to assert the necessary "state action" by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action.

*McBride*, at 512 (citing *Clulow v. Oklahoma*, 700 F. 2d 1291, 1303 (10th Cir. 1983)).

The final test does not necessarily require concerted action or State involvement. Rather, a private entity may be determined to have acted under color of state law if it "exercises 'powers traditionally *exclusively* reserved to the State.'" *Gallagher*, at 1447 (quoting *Jackson*, 419 U.S. at 352, 95 S. Ct. at 454) (emphasis added).

None of these tests support a finding that Aberdeen may be deemed a state actor for purposes of § 1983. Throughout the Complaint, Plaintiff identifies Aberdeen as a private corporation. The Agreement for Collection rejects any characterization of Aberdeen as other than mere independent contractor:

> Neither Party shall be, or hold itself out as, the agent of the other Party under this Agreement. Nothing contained herein shall be deemed to create, and the Parties do not intend to create, any relationship of partners or joint venturers, and neither Party is authorized to or shall act toward third parties or the public in any manner which would indicate any such relationship. Aberdeen shall, at all times throughout the Term of this Agreement, act and perform its collection duties hereunder as an independent contractor. It is expressly understood and agreed that Association shall not exercise any control over the methods by which Aberdeen and/or any officer(s), agent(s), and/or employee(s) of Aberdeen, shall perform Aberdeen's work and functions. In addition, it is expressly acknowledged and agreed that Aberdeen shall solely be responsible for all costs, travel expenses, insurance and any and all other costs and expenses incurred by Aberdeen and/or Aberdeen

16

> Representatives in connection with, or otherwise incidental to, Aberdeen's performance under this Agreement.   Under no circumstances shall this Agreement be construed or interpreted as an exclusive dealing agreement by either Party.   Nothing in this Agreement shall be construed as to restrict Association from entering into any agreement with any other party, even if similar to or competitive with the transactions contemplated hereunder.

Complaint [Doc. 2], Exhibit "1," Agreement for Collection, at ¶ 17, p. 14.  *See also* Okla. Stat. tit. 19, § 514.4 (referencing such arrangement as a "private contract").

The Agreement for Collection, along with the statutory provisions authorizing the same, specifically dispel application of the first, second and third color of law tests described above.  The very nature of this relationship, even as characterized by Plaintiff, is the Oklahoma Sheriffs' Association's retention of a private corporation to collect fees, penalties and assessments relating to outstanding failure-to-pay warrants.  Under this agreement, no county/state agency exerts any degree of coercion over Aberdeen, insinuating itself into a position of interdependence with Aberdeen or performing action in concert with Aberdeen with respect to such collections.[9]  To the contrary, the Oklahoma Sheriffs' Association "in its capacity as administrative agent of certain, participating County Sheriffs of Oklahoma," pursuant to state statute, has retained Aberdeen to attempt collection of outstanding failure-to-pay warrants.  *See* Complaint [Doc. 2], Exhibit "1," Agreement for Collection, at p. 1.  In other words, through the Agreement for Collection, county sheriffs have attempted to divest themselves from these collection activities in favor of a private corporation.

Any argument in support of the fourth test is unavailing as the collection of unpaid fees and costs may not be characterized as a function exclusively reserved to the state.  Contrary to

---

[9] It is important to note that the Oklahoma Sheriffs' Association is not a public entity, but a non-profit association.

Plaintiff's suggestion, the test in this respect is not whether the function is traditionally performed by a government official, but whether the function is one "exclusively reserved to the State."[10] *Flagg Bros.*, 436 U.S. at 158, 98 S. Ct. at 1734.  The United States Supreme Court recognized that "very few" functions have been "exclusively reserved."  *Id.*  In *Flagg Bros.*, the Court provided examples of such exclusive functions to include the election of public officials and performance of the municipal functions of a town.  *Id.*, 436 U.S. at 158-59.

The circumstances in *Flagg Bros.* are analogous to the present.  Therein, the plaintiff and her family were evicted from their apartment and a city marshal arranged for their belongings to be stored in a privately-owned warehouse.  After a dispute between plaintiff and the warehouse regarding moving and storage fees, the warehouse threatened to sell plaintiff's furniture if the account was not paid.  Plaintiff later initiated a class action proposing a sale of her belongings would violate the Due Process and Equal Protection Clauses.  The warehouse moved to dismiss the complaint for failing to state a claim under § 1983.  *See id.*, at 151-154.

The United States Supreme Court reversed the decision of the Second Circuit which found sufficient state involvement.  In so holding, the Court recognized plaintiff's options in seeking replevin under state law as opposed to § 1983:  "The challenged statute itself provides a damages remedy against the warehouseman for violations of its provisions." *Id.*, at 160.  The Court explained, "This system of rights and remedies, recognizing the traditional place of private arrangements in ordering relationships in the commercial world, can hardly be said to have delegated to Flagg Brothers an exclusive prerogative of the sovereign."  *Id.*  Nevertheless, the

---

[10] For example, in the Complaint, Plaintiff describes the collection activity as a "traditional and longstanding role of the cost administrator."  *See* Complaint [Doc. 2], at ¶ 141, p. 56.

Court expressly concluded that "the settlement of disputes between debtors and creditors is not traditionally an exclusive public function." *Id.*, at 161.

Aberdeen's sole involvement relates to attempts to collect unpaid fees, penalties and assessments connected to failure-to-pay warrants - circumstances created prior to Aberdeen's involvement.  Aberdeen does not and cannot issue or recall warrants.  *See* Okla. Stat. tit. 19, § 514.4 (D) ("The court shall release the outstanding misdemeanor or failure-to-pay warrant upon receipt of all sums due…"); Okla. Stat. tit. 22, § 42 (magistrate to issue warrants).  The lack of an "exclusive public function" is further demonstrated by the Legislature's express authorization of private contract to perform collection attempts for failure-to-pay warrants.  Aberdeen is simply a private debt collector.

Given the allegations presented, it is further important to note that Plaintiff cannot establish the requisite state action based upon any information provided by Aberdeen to county officials (i.e. a person's failure to pay any arrangement with Aberdeen).   The mere summoning of law enforcement officers; furnishing of information, even *false* information, to law enforcement officers or reporting of a crime fail to implicate the requisite state action.  *See Peng v. Mei Chin Penghu*, 335 F. 3d 970 (9th Cir. 2003); *Redding v. St. Eward*, 241 F. 3d 530, 533 (6th Cir. 2001); *Ginsberg v. Henley Car & Truck Leasing, Inc.*, 189 F. 3d 268, 271-72 (2nd Cir. 1999); *Carey v. Continental Airlines, Inc.*, 823 F. 2d 1402 (10th Cir. 1987); *Lee v. Estes Park*, 820 F. 2d 1112, 1115 (10th Cir. 1987); *Benavidez v. Gunnell*, 722 F. 2d 615, 618 (10th Cir. 1983); *Bryant-Bruce v. Vanderbilt University, Inc.*, 974 F. Supp. 1127, 1142 (M.D. Tenn. 1997).  As described in *Davis v. Union Nat. Bank*, 46 F. 3d 24, 26 (7th Cir. 1994), "At most, the facts Davis alleges could be taken to suggest that the Bank gave the officers misleading or false information, but such behavior does not indicate wrongful state action."  *See also Schroder v. Volcker*, 646 F. Supp. 132, 135 (D.

Colo. 1986) (private party's misuse of a state statute insufficient to support conduct attributable to the state).

### Personal Participation and Policy or Custom

The courts have long recognized that, under § 1983, an entity may not be held liable pursuant to *respondeat superior* or vicarious liability. *See Iqbal*, 556 U.S. at 676; *Board of County Commissioners of Bryant County, Oklahoma v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Lillard v. Shelby County Board of Education*, 76 F. 3d 716, 727 (6th Cir. 1996); *Harvey v. Harvey*, 949 F. 2d 1127, 1129-30 (11th Cir. 1992). Rather, with respect to individuals, § 1983 requires allegations of personal participation in a constitutional violation. *See Wise v. Bravo*, 666 F. 2d at 1333; *Bennett v. Passic*, 545 F. 2d 1260, 1262-63 (10th Cir. 1976) (personal participation is an essential allegation which may not be satisfied with conclusory allegations). *See also Lile v. Tippecanoe County Jail*, 844 F. Supp. 1301, 1308 (N.D. Ind. 1992). As for municipalities and corporate entities found acting under color of state law, § 1983 requires allegations of an official policy or custom which caused a constitutional violation. *See Monell*, 436 U.S. at 691. The policy or custom requirement was intended to distinguish between alleged wrongful acts of employees of the entity and acts of the entity. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 106 S. Ct. 2018, 89 L. Ed. 2d 452 (1986).

Assuming, arguendo, Aberdeen could be found to have acted under color of state law, it is, nevertheless, entitled to dismissal of Plaintiff's § 1983 claim based upon the lack of a plausible claim relating to any unconstitutional policy or custom of Aberdeen. In the Complaint, Plaintiff describes alleged threats and extortion by Aberdeen. As described in greater detail below and to

the extent such allegations could be construed as implicating a policy or custom of Aberdeen (as compared to wrongful activity solely on behalf of an Aberdeen employee), Aberdeen's policy or custom of contacting persons such as Plaintiff for the purposes of collecting a debt and allegedly advising of the possibility of arrest for failure to pay an outstanding warrant is not unconstitutional. To the extent any communications between Aberdeen employees and Plaintiff (or others like Plaintiff) exceeded the Agreement for Collection or other permissible debt-collection efforts, such would amount to individual conduct to which Aberdeen may not be held vicariously liable under § 1983.  Plaintiff's task is to identify an unconstitutional policy or custom of Aberdeen and not simply present allegations relating to wrongdoing on behalf of an individual employee or Oklahoma's failure-to-pay warrant system in general.

Finally, before addressing the specific constitutional violations alleged by Plaintiff, it is necessary to discuss quasi-judicial immunity for Aberdeen.  Assuming, _arguendo_, Aberdeen may be found a sufficient state actor for purposes of § 1983, it was, at best, only performing a purely ministerial act of locating and attempting to collect orders issued from a court.  _See Duba v. McIntyre_, 501 F. 2d 590, 591 (8th Cir. 1974).  _See also Henry v. Farmer City State Bank_, 808 F. 2d 1228, 1238 (7th Cir. 1986).  As the Tenth Circuit has provided:

> To force officials performing ministerial acts intimately related to the judicial process to answer in court every time a litigant believes the judge acted improperly is unacceptable.  **Officials must not be called upon to answer for the legality of decisions which they are powerless to control.**

_Valdez v. City and County of Denver_, 878 F. 2d 1285, 1289 (10th Cir. 1989) (Emphasis added).

The court continued:

> Officials employed to implement facially valid court orders could choose: They may disregard the judge's orders and face discharge, or worse yet criminal contempt, or they may fulfill their duty and risk being haled into court.... Officials such as the defendants must

not be required to act as pseudo-appellate courts scrutinizing the
orders of judges.

*Id.* (citing *Henry*, at 1239).

### Count Two - Due Process

The first constitutional transgression described in Plaintiff's Complaint relates to the

Oklahoma Sheriffs' Association's use of Aberdeen, a private corporation, to collect fees, penalties

and assessments relating to failure-to-pay warrants instead of a neutral government court cost

administrator.  Plaintiff proposes the Due Process Clause of the Fourteenth Amendment prohibits

"neutral judicial officials and neutral civil and criminal law enforcement actors from having a

personal financial interest in the cases prosecuted and decided by them."  Complaint [Doc. 2], at

¶ 140, p. 56.  While this allegation relates more to the Oklahoma Sheriffs' Association's conduct

(in employing the statutory measure created by the Oklahoma Legislature in retaining a private

entity for collection of outstanding failure-to-pay warrants), it is, nevertheless, important to address

in terms of Plaintiff's failure to state a plausible claim for *any* constitutional violation.

Plaintiff's attempt to stretch the bounds of the Fourteenth Amendment's Due Process

Clause to the present matter must be denied.  In terms of bias or interest, the Due Process Clause's

reach relates to the constitutional guarantee of a fair trial in a fair tribunal.  *See LaVoy v. Snedeker*,

2004 U.S. Dist. LEXIS 20292, *75 (D. N.M. March 9, 2004) (citing *Bracy v. Gramley*, 520 U.S.

899, 904-05, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997)).  Aberdeen's involvement in the process

relating to the collection of outstanding failure-to-pay warrants does not implicate Plaintiff's rights

in this respect.  Whether collection efforts were made by Aberdeen or Plaintiff's proposed neutral

court cost administrator, the goal is to recover amounts previously determined Plaintiff owes in

relation to a warrant already issued.  Public or private, the goal remains the same - recovery of fees

and costs relating to failure-to-pay warrants for which the entity collecting had no involvement in determining or issuing.

The incongruity in Plaintiff's proposition in this respect is also illustrated by the extortion scenario painted in the Complaint. Plaintiff claims Aberdeen threatened him and others like him with arrest/jail when they are unable to pay the outstanding failure-to-pay warrant. Aberdeen's financial interest would be nil if Plaintiff or others like him are incarcerated, as compared to being released or otherwise out of jail and able to work. Aberdeen's financial interest would only be served through working with Plaintiff and others like him to ensure incarceration does not occur. Plaintiff's attempt to interject financial bias for purposes of a Due Process challenge is wholly untenable.

### Count Four - Equal Protection

In Count Four, Plaintiff proposes that the use of jail and/or threats of jail for purposes of debt collection against indigent defendants denies them equal protection as compared to persons owing debts to private creditors. This proposition ignores the critical distinction of the existence of an ***outstanding bench warrant for arrest based upon the failure to pay previously determined fines or penalties***. Plaintiff did not borrow money from the county. Rather, Plaintiff and others like him were imposed sentences which included the payment of court costs or other monetary penalties. *See* Complaint [Doc. 2], at pp. 8-9 and 14. Once Plaintiff and others like him fail to pay these amounts, failure-to-pay bench warrants are issued for their arrest.

A debt between a person and a private creditor cannot be compared to the scenario involving Plaintiff. The Oklahoma Constitution in § 13 of Article II distinguishes, "Imprisonment for debt is prohibited, except for the non-payment of fines and penalties imposed for the violation of law." The Oklahoma Court of Criminal Appeals has also distinguished:

> "That fines, forfeitures, mulcts, damages for a wrong or tort, are not a debt within this clause of the Constitution * * * and when a citizen by his own misconduct exposes himself to the punitive powers of the law, the expense incident to his prosecution and conviction, each and all of these may result in subjecting the defaulter to a money liability. These are not debts incurred by contract inter parties, but are the result of being members of the social compact, or body politic. * * * Penalties are imposed in furtherance of some public policy, and as a means of securing obedience to law. Persons who incur these, are either in morals or law wrongdoers, and not simply unfortunate debtors unable to perform their pecuniary obligations to whom the constitutional provisions against imprisonment for debt do not apply."

*Ex parte Small*, 1950 OK CR 98, 221 P. 2d 669, 679 (quoting *Lee v. State*, 75 Ala. 29, 30-31 (Ala. 1933)).

The debts which may eventually lead to Aberdeen's involvement relate strictly to failure-to-pay warrants. Plaintiff has attempted to define his potential class action as including "all people living in poverty, found to be indigent by the Courts of Oklahoma Counties, who were assigned a Public Defender or counsel through the Oklahoma Indigent Defense System at the time of sentencing, who were later issued warrants and/or incarcerated for failure to pay criminal court fines and costs." Complaint [Doc. 2], at p. 8. The circumstances attendant to Plaintiff and these individuals cannot be compared to, for example, a person who borrowed money from a bank and failed to pay it back. An equal protection challenge requires Plaintiff establish that he (and others like him) were treated differently than "***similarly situated***" persons and that such treatment "lacked a rational basis." *Landmark Land Co. v. Buchanan*, 874 F. 2d 717, 722 (10th Cir. 1988) (emphasis added). Plaintiff and other persons for whom failure-to-pay arrest warrants have been issued are simply not similarly situated to persons owing a debt to a private creditor.

The Oklahoma Court of Criminal Appeals, in an opinion referenced in Plaintiff's Complaint, declined to find an equal protection violation in this very scenario. In *State v. Ballard*,

1994 OK CR 6, 868 P. 2d 738, the Court responded to a constitutional challenge to Okla. Stat. tit.

28, § 101.  In rejecting the equal protection claim, the Court reasoned:

> Concerning the other equal protection argument, that imposition of the assessment unfairly discriminates against indigent defendants, this Court is able, as we stated in *Hunter,* 787 P.2d at 865, to interpret the statute in a way that eliminates this discrimination. The legislature enacted section 101 of title 28 which provides, among other things that "all costs in the prosecution of all criminal actions" shall be adjudged a part of the penalty of the offense which a defendant is obligated to pay. The legislature defined the language "all costs in the prosecution of all criminal actions" to include "court clerk's costs and fees authorized by statute," 28 O.S.1981 § 101, and we believe the assessment complained of here falls into the category of "fees authorized by statute."
>
> The Legislature also inserted a provision in the statute providing that if a defendant "is without means" to pay the fine, fees or costs, these fines, fees or costs shall be entered on the judgment docket, putting the court in the same position as any other judgment creditor. *Id.* It is this provision -- providing for penalties for a willful refusal to pay, but providing for alternate remedies if a defendant is unable to pay -- that enables the assessment to withstand a constitutional challenge by an indigent on equal protection grounds. If a defendant cannot pay the assessment because he is without means to do so, he is not thrown into prison or otherwise punished. Section 101 of title 28, read in connection with the assessment, places the defendant in the same position as any other judgment debtor. In addition, Rule VIII, Rules of the Court of Criminal Appeals, provide the procedure to be followed if a person is unable to pay. *See also* 22 O.S.1991, § 983. He is therefore not singled out for unequal treatment based on his indigency.

*Ballard*, at ¶¶ 6-7, 868 P. 2d at 741.

### *Count Five - Fourteenth Amendment*

In Count Five, Plaintiff presents additional Due Process and Equal Protection charges based upon alleged "supervision" by Aberdeen.  Plaintiff proposes that, those persons able to pay the outstanding failure-to-pay warrants "are not supervised by Aberdeen," as compared to those defendants whose failure-to-pay warrants remain outstanding and are turned over to Aberdeen for

collection and "supervision."   *See* Complaint [Doc. 2], at ¶ 153, p. 60.   This argument is nonsensical.   Aberdeen is a private corporation who, pursuant to a statutorily authorized contract, attempts to collect outstanding failure-to-pay warrants.   Plaintiff is not denied Due Process or Equal Protection as compared to persons able to satisfy failure-to-pay warrants.   Plaintiff's attempt to characterize Aberdeen's collection attempts as a form of post-sentencing probation supervision is disingenuous.   No basis has been or can be identified by Plaintiff to support a Due Process or Equal Protection challenge based solely on the fact that a wealthy defendant can pay court-imposed fees, penalties or other assessment and, thus, not have his case turned over for collection by Aberdeen.

### Count Six - Fourth and Fourteenth Amendments

Plaintiff's sixth count concerns an alleged policy and practice of Defendants to "seek, issue, and execute arrest warrants" against persons without first inquiring as to the person's ability to pay.   *Id.*, at ¶ 155, p. 60.   This charge has no connection to Aberdeen.   Aberdeen does not (and cannot) issue failure-to-pay warrants.   Aberdeen's very involvement is preceded and necessitated by such <u>prior</u> determination:

> **WHEREAS**, the Parties are entering into this Agreement for Aberdeen to provide certain collection services to Association, in Association's capacity as administrative agent for those certain, participating County Sheriffs, in connection with certain Warrants *issued by those participating County Sheriffs and referred to Aberdeen for collection hereunder.*

*See id.*, Exhibit "1," Agreement for Collection, at p. 1 (emphasis added).   Neither the statute authorizing such Agreement, the Agreement itself nor any other circumstances permit Aberdeen to deprive Plaintiff of any "liberty for nonpayment prior to any meaningful pre-deprivation process."  *Id.*, at ¶ 156, p. 61.   Plaintiff's implication of Aberdeen's involvement in having warrants issued or persons imprisoned defies his own allegations and Oklahoma law.

### *Count Seven - Due Process and Equal Protection*

Plaintiff's final push for a violation of his rights pursuant to the Due Process and Equal Protection Clauses relates to Aberdeen's control over a payment schedule that can affect whether a person is arrested and imprisoned.  This charge, as with Count Six, attempts to characterize Aberdeen's involvement as an unconstitutional circumvention of a hearing to determine whether a failure to pay is based upon sincere inability or outright refusal.

*Arrest* for an outstanding failure-to-pay warrant is not unconstitutional.  *See Howard v. Webb*, 570 P. 2d 42, 48, 1977 Okla. LEXIS 708 (Okla. October 4, 1977) (supplemental opinion on rehearing).  *Imprisonment* for the failure to pay a fine, cost, fee or assessment may be effected when the defendant is found able to satisfy the same, "but refuses or neglects to do so."  Okla. Stat. tit. 22, § 983 (A).  Thus, Plaintiff's declaration that arrest and/or imprisonment for a "debt" is categorically unconstitutional is misguided.

The Rules of the Oklahoma Court of Criminal Appeals referenced in Plaintiff's Complaint describe the post-sentencing process which may be triggered.  In Rule 8.2, a defendant "may be **immediately confined**" if he/she is financially able to pay a fine and/or costs imposed by court order but "refuses or neglects" to do so.  Additionally, and of particular illustration of Aberdeen's connection to the process, Rule 8.3 describes:

> After a judicial finding that the defendant may be able to pay the fine and/or costs in installments, the court may order the defendant to make payment of installments in reasonable amounts and fix the due date of each payment, and may order the defendant to appear before the court on each due date. In event of imprisonment as a part of the judgment rendered, a determination shall be made as to the defendant's ability to make installment payments after completion of the term of imprisonment. *See* <u>Section 983(D) of Title 22</u>.

If such installment payments are not made, the defendant is provided an opportunity to explain why and, if such explanation is not "satisfactory," the defendant may be incarcerated.  Okla. Ct. Crim. App. R. 8.4.

The issuance and recall of failure-to-pay warrants rests solely within the authority of county officials and not Aberdeen.  In terms of when a person may be incarcerated for failure to pay court fees, penalties or other assessments, the entire process is authorized and organized by statute and court rules.  Aberdeen's involvement arises *after* a warrant is issued and executed in relation to a defendant's failure to pay fees, costs, etc. in connection with his/her sentence.  Aberdeen then assists the defendant with payment arrangements for the same in order to keep the defendant out of jail.  Whether the defendant satisfies the arrangement or fails to comply with the arrangement, such as noted by Aberdeen.  The decision to recall a warrant or issue a new warrant is, by law, within the power of governmental officials.

Plaintiff's claim that it is Aberdeen that requests warrants be issued and recalled with no hearing to determine an ability to pay is misleading.  Aberdeen, as the private entity retained to assist in collections relating to failure-to-pay warrants, does, indeed, ask that warrants be recalled once the individual has made a payment plan and submitted the first payment.  While Aberdeen disputes its involvement in the same, the mere requesting that a warrant be issued cannot be construed as Aberdeen's ability to *actually issue* a warrant.  The power to issue or recall warrants remains in the hands of governmental officials, such as county judges.  The statutory provisions and court rules identified do not require a hearing prior to the request to *issue* a warrant.  Rather, such a hearing is required *before a person may be incarcerated*.

Plaintiff does not propose that he (or anyone else in a similar position) has been wrongfully imprisoned based upon any actions of Aberdeen.  Plaintiff also does not propose that any

28

information allegedly supplied by Aberdeen regarding an outstanding failure-to-pay warrant is incorrect. Rather, Plaintiff appears to freely admit that a failure-to-pay warrant was properly issued. Imprisonment (or, in Plaintiff's specific case, the Department of Correction's alleged refusal to allow Plaintiff to be entered into a work program) resulting from such failure has not been and cannot be shown a result of any wrongdoing on behalf of Aberdeen. No plausible claim for Fourth and Fourteenth Amendment constitutional violations can be stated against Aberdeen for doing nothing more than assisting in the collection of outstanding failure-to-pay warrants and, if Plaintiff or other similar person fails to pay the same, advising officials of this fact.[11]

## PROPOSITION III

### THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE CLAIMS AND, NEVERTHELESS, PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF IN SUCH RESPECTS

In addition to the alleged RICO and § 1983 claims, Plaintiff has also presented two claims based upon state law. Specifically, in Count Three, Plaintiff challenges the Agreement for Collection as void and unenforceable. In Count Eight, Plaintiff claims Aberdeen has abused legal process in order to generate fees. As dismissal of Plaintiff's federal claims is warranted and the subject matter of the state claims involve analysis of Oklahoma statutory authority, the Court should decline to exercise its supplemental jurisdiction over the state law claims. Nevertheless, in the event jurisdiction is extended, Plaintiff has, nevertheless, failed to state plausible claims for relief in these respects.

---

[11] As mentioned previously, in actuality, Aberdeen's advising of a person's failure to comply with payment arrangements is more indirect with such fact simply being noted on a shared computer network. Regardless, Plaintiff does not appear to dispute that he failed to pay the same or that the failure-to-pay warrant was incorrectly issued.

### Supplemental Jurisdiction

Plaintiff has failed to state a plausible claim for relief with respect to all of his federal claims.  As such, the Court may decline to exercise supplemental jurisdiction over his remaining state law claims.  *See* 28 U.S.C. § 1367 (c); *Gold v. Local 7 United Food and Commercial Workers Union*, 159 F. 3d 1307, 1310 (10th Cir. 1998).  Supplemental jurisdiction is properly denied based upon the state law issues involved in these claims (i.e. process and contract specifically authorized by state statute and court rules) under § 1367 (c) (1), as well as under § 1367 (c) (3) based upon the dismissal of all federal claims asserted.

### Count Three - Void and Unenforceable Agreement

If supplemental jurisdiction is exercised in the Court's discretion, Plaintiff has failed to state a plausible claim for relief with respect to his state law claims.  Particularly, in Count Three, Plaintiff proposes that the Agreement for Collection between Aberdeen and the Oklahoma Sheriffs' Association is void and unenforceable as it is "harmful to the public and is in conflict with federal and state law."  Complaint [Doc. 2], at ¶ 146, p. 57.  As discussed previously herein, the Agreement for Collection is *specifically authorized by Oklahoma law*.  Additionally, the agreement does not transgress any federal rights.

Even notwithstanding the agreement's unquestionable validity, Plaintiff lacks standing to challenge the same.  Plaintiff is not a party to the agreement and Plaintiff has no personal stake in whether the agreement is void or valid.  *See Asset Acceptance L.L.C. v. White*, 2014 OK CIV APP 96, ¶ 4, 340 P. 3d 19, 20.  Whether Aberdeen or Plaintiff's proposed neutral court cost administrator is performing the collection services, if Plaintiff fails to satisfy the failure-to-pay warrant, the result remains the same.  Furthermore, the agreement specifically excludes any third-

30

party beneficiary claim.  *See* Complaint [Doc. 2], Exhibit "1," Agreement for Collection, at ¶ 18, pp. 14-15; *Lynn v. Rainey*, 1964 OK 212, ¶ 44, 400 P. 2d 805, 814.

***Count Eight - Abuse of Process***

Finally, in Count Eight, Plaintiff claims Aberdeen has "abused the legal process to seek arrest warrants with an ulterior motive to collect additional fees."  Complaint [Doc. 2], at ¶ 160, p. 62.  Such contention is without merit.    Aberdeen's actions are <u>not</u> improper and <u>not</u> primarily motivated by an improper purpose.  *See Marlin Oil Corp. v. Barby Energy Corp.*, 2002 OK CIV APP 92, ¶ 11, 55 P. 3d 446. Again, the entire process is authorized and outlined by Oklahoma statutes and court rules.  Aberdeen's role in the process remains that of *collecting* the money owed for the counties.

Any injustice in the process is, by Plaintiff's own admission, only arguably a result of determinations by persons unconnected with Aberdeen.  Plaintiff does not propose Aberdeen caused him to miss a payment or otherwise fail to satisfy an outstanding failure-to-pay warrant. This failure to pay, not any action or omission of Aberdeen, placed Plaintiff into a position of having to respond for the same.  From that point, any determination as to whether Plaintiff's failure is excusable or sufficiently culpable lies in the hands of governmental officials such as county judges, not the private collections agency retained to help in the collections process.   While Aberdeen disputes that the process does not adequately comply with Oklahoma state law and constitutional protections, its involvement in the process is, at best, only ministerial.

Plaintiff's abuse of process claim provides opportunity to recast the essence of this matter. Plaintiff has identified a lawful process and interjected careless accusations of wrongdoing while not denying that this process applies.  To resolve Plaintiff's challenge to the process would require invalidation of Oklahoma statutes and court rules to, effectively, remove the courts' ability to

31

impose fees and costs to criminal sentencing.   It is beyond merely curious that Plaintiff's Complaint is void of any contention that his (or those of the proposed class) present incarcerated status has been wrongfully applied.[12]   As mentioned previously herein, taking Plaintiff's allegations as true for the purpose of this motion, Aberdeen's request that a failure-to-pay warrant be issued does nothing to remove, circumvent or otherwise affect the ***post***-issuance hearing process before a judge that determines whether the failure to pay was excusable or sufficiently culpable to support imprisonment.

## **CONCLUSION**

Through the course of sixty-three pages and various attached exhibits, Plaintiff has embarked on a campaign to challenge the repercussions available in the event a criminal defendant fails to pay fees, penalties and assessments entered as part of his/her criminal sentencing.  Through statutory provisions such as Okla. Stat. tit. 19, § 514.4, the Oklahoma Legislature has authorized the use of private contract to provide persons with outstanding failure-to-pay warrants an option to resolve such arrest warrants and avoid the possibility of imprisonment.   In our matter, such contract was entered with Aberdeen, who locates and notifies persons of outstanding failure-to-pay warrants and works with such individuals with the goal of having these warrants recalled.

The ultimate repercussion, which is the focal point of Plaintiff's campaign, relates to the possibility of imprisonment for failure to pay court-imposed fees, costs, etc.  The protections against imprisonment for a "debt" are not removed, revised or otherwise affected by the retention of a private company to assist in collecting outstanding amounts.  Plaintiff's attempts to employ

---

[12] In the "Introduction," Plaintiff describes the class as including persons "found to be indigent … who were later issued warrants and/or incarcerated for failure to pay criminal court fines and costs."   Complaint [Doc. 2], at p. 8.   Plaintiff does not add that the warrants or orders for incarceration were incorrectly issued.

RICO, § 1983 and state law to challenge Aberdeen's involvement in the process must be rejected. These accusations fall significantly short of stating a plausible claim for relief.

WHEREFORE, Defendant Aberdeen Enterprizes II, Inc. respectfully requests the Court dismiss it from this matter and award it costs, and reasonable fees incurred in connection with the instant motion.

Respectfully submitted,

/s/ Robert E. Applegate
John R. Woodard, III, OBA No. 9853
Robert E. Applegate, OBA No. 17376
Coffey Senger & McDaniel, PLLC
47 25 East 91st Street, Suite 100
Tulsa, OK 74137
918-292-8787
918-292-8788 – Fax
john@csmlawgroup.com
applegate@csmlawgroup.com
*Attorneys for Defendant Aberdeen Enterprizes II, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of January 2018, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Daniel Smolen
Donald E. Smolen, II
Robert M. Blakemore
Smolen Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119

Jill Webb
J Webb Law Firm PLLC
PO Box 1234
Tulsa, Ok 74101

/s/ Robert E. Applegate
Robert E. Applegate