# Exhibit A

# AGREEMENT FOR COLLECTION

This Agreement for Collection (the "Agreement") is being entered into by and between The Oklahoma Sheriffs' Association ("Association"), in its capacity as administrative agent of certain, participating County Sheriffs of Oklahoma (the "County Sheriffs""), and Aberdeen Enterprises II, Inc., an Oklahoma corporation ("Aberdeen"), for the collection of fines, penalties and assessments of certain "Warrants" (as defined below) issued by the County Sheriffs in the State of Oklahoma. Association and Aberdeen may each be referenced hereunder as a "Party" and collectively as the "Parties".

## RECITALS

**WHEREAS**, pursuant to 19 O.S. §§ 514.4 and 514.5, (effective November 1, 2010), County Sheriffs may enter into a private contract for the purpose of requiring the contractor to attempt to locate and notify persons of any, (I) outstanding misdemeanor failure-to-pay warrants issued or relating to any proceeding pursuant to the State and Municipal Traffic Bail Bond Procedure Act, (ii) outstanding misdemeanor failure-to-pay warrants issued that allows a defendant to resolve the matter by payment in lieu of a personal appearance in court, and/or (iii) failure-to-pay warrant issued in a criminal case (collectively "Warrants"), and to collect any fines, penalties and assessments (collectively "Debt") associated with any such Warrants which remain unpaid and uncollected; and

**WHEREAS**, in accordance with 19 O.S. §§ 514.4, certain County Sheriffs have elected to assign their right to contract for the collection of any such Warrants to the Association; and

**WHEREAS**, Aberdeen is in the business of collecting the debts associated with such Warrants in the State of Oklahoma; and

**WHEREAS**, the Parties are entering into this Agreement for Aberdeen to provide certain collection services to Association, in Association's capacity as administrative agent for those certain, participating County Sheriffs, in connection with certain Warrants issued by those participating County Sheriffs and referred to Aberdeen for collection hereunder;

**NOW, THEREFORE**, in consideration for the mutual promises, agreements and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree to the following terms and conditions:

## TERMS AND CONDITIONS

1. **Term and Termination**.

    (a) <u>Term</u>. Unless otherwise earlier terminated in accordance with the terms of this Agreement, the term of this Agreement ("<u>Term</u>") shall commence on the date last signed by the Party below ("the <u>Effective Date</u>") and shall expire on **December 31, 2014** (the "<u>Termination Date</u>"). This Agreement shall automatically terminate on the Termination Date, unless both Parties otherwise agree to extend the Term in writing via an amendment to this Agreement prior to such Termination Date. Otherwise, upon the Termination Date of this Agreement, neither Party shall have any further obligation under this Agreement, except as otherwise set forth in Section 14 (<u>Survivability</u>).

    (b) <u>Termination</u>.

    (1) The Sheriffs' Association may terminate this contract due to non-renewal, unavailability of funds or for neglect as determined by the Sheriffs' Association which shall include, but not necessarily be limited to, failure to provide required periodic statements, failure to provide required standards of service, failure to provide quality and frequency of service, and failure to act consistently with the spirit of the applicable debt collection provisions of the FDCPA and FCRA under the Federal guidelines for collections and the corresponding State guidelines. This may include any cessation or diminution of service including but not limited to failure to maintain adequate personnel, whether arising from labor disputes, or otherwise, any substantial change in ownership or proprietorship of Aberdeen which in the opinion of the Sheriffs' Association is not in its best interest, or failure to comply with the terms of this contract.

    (2) Notwithstanding any other provision of this Agreement either Party may terminate this Agreement by giving the other Party written notice, if the other Party has materially breached its representations, warranties, duties and/or obligations hereunder, and such breach is not cured within thirty (30) days after receipt of such written notice.

    (3) In addition, notwithstanding anything to the contrary, Association shall have the right to terminate this Agreement, (I) if Aberdeen has filed a petition in bankruptcy, is insolvent, or has sought relief under any law related to Aberdeen's financial condition or its ability to meet its payment obligations; (ii) if any involuntary petition in bankruptcy has been filed against Aberdeen, or any relief under any such law has been sought by any creditor(s) of Aberdeen, unless such involuntary petition is dismissed, or such relief is denied, within thirty (30) days after it has been filed or sought;

    and/or (iii) at any time during the Term, in Association's sole discretion, upon sixty (60) days advance written notice to Aberdeen.

(4) Upon expiration or termination of this Agreement, Aberdeen shall immediately discontinue collection action, and all referrals which have not been collected and all monies due but which have not yet been paid shall be transmitted by Aberdeen to Association within ten (10) business days following such expiration or termination date, along with a detailed report setting forth the current status of each referral being returned. Any monies received by Aberdeen on behalf of the Association after the expiration or termination date of this Agreement shall be immediately forwarded to Association, and shall not be subject to any collection fee(s).

2. **Aberdeen's Roles and Responsibilities.**

(a) Accounts.   Aberdeen shall only accept accounts placed under this Agreement by the Association, and referred by a County Sheriff's or Oklahoma Court Clerk's office ("Court Clerk(s)") to Aberdeen for collection, in such County Sheriff or Court Clerk's sole discretion. Upon request by a County Sheriff or Court Clerk, Aberdeen shall immediately return to such County Sheriff or Court Clerk any account(s) referred to Aberdeen in error at no charge to such County Sheriff or Court Clerk.

(b) OCIS Agreement and Access.

(1) Aberdeen hereby acknowledges and agrees that pursuant to 20 O.S. § 1315, the Oklahoma Supreme Court, by and through the office of the Administrative Director of the Courts ("AOC"), maintains the court information system designated as the "Oklahoma Court Information System" ("OCIS"), which is utilized by the court clerks and judges of certain district courts of this state for case management and accounting purposes, including processing payments of court fees, penalties, and assessments. Aberdeen further acknowledges and agrees that on and after the Effective Date of this Agreement and throughout the Term of this Agreement, including any Agreement renewals, Aberdeen shall have in effect with the AOC an Agreement Regarding Use of the Oklahoma Court Information System by Private Collections Vendor ("OCIS Agreement"), for access to certain district court case management and accounting functions on OCIS, subject to the terms and conditions imposed by the AOC regarding system use and access as provided for under such separate OCIS Agreement, and subject to the Rules for Management of the Oklahoma Court

    Information System, 20 O.S. Chap. 18, App. 2, and the Rules for Using the Oklahoma Court Information System, 20 O.S. Chap. 19, App. 3.

  (2) If the County Sheriff or Court Clerk referring a Warrant to Aberdeen hereunder is in a county that utilizes the OCIS system, the account shall be processed through OCIS. If the county is not a county which utilizes the OCIS system, accounts may be furnished to Aberdeen by way of paper, tape, or electronic media, as determined by the referring County Sheriff or Court Clerk, in such County Sheriff's or Court Clerk's sole discretion.

(c) At all times throughout the Term of this Agreement, Aberdeen shall, (I) use its best efforts to collect any Debts associated with any Warrants referred to Aberdeen hereunder, solely utilizing means which are legal, necessary and proper. Aberdeen shall not harass or exert undue pressure on delinquent debtors or employ any procedure that would cast discredit upon the Association, the County Sheriff(s) and/or the Court Clerk(s), or otherwise subject the Association, the County Sheriff(s) and/or such Court Clerk(s) to public disapproval; and (ii) comply with all applicable federal, state, and local laws and regulations with regard to collection practices and procedures.

(d) Aberdeen may offer to a debtor of a Warrant the opportunity to pay his/her Debt by electronic means by check or credit card, when receiving payments. The charges associated with the convenience of paying by electronic means is a convenience that, if the debtor uses that procedure, the charge for such processing shall be chargeable to the debtor with notice, and shall be in compliance with applicable law.

(e) <u>Trust Account/Payments</u>.

  (1) Aberdeen shall accept accounts placed by the Sheriffs' Association from the various County Court Clerks under the terms of this agreement and will use its best efforts to collect said accounts utilizing means legal, necessary and proper. Aberdeen agrees that any and all information provided by or through each County Sheriff's Office and Court Clerk's Office or any other state agency shall remain confidential in all respects. The placement of accounts by each County Sheriff's Office and Court Clerk's Office to Aberdeen shall be at the sole discretion of each County Sheriff's Office and Court Clerk's Office. Accounts may be furnished on paper, tape, and electronic media or through OSCN access to Aberdeen.

(2)   Aberdeen agrees to return to each County Sheriff's Office and/or Court Clerk's Office at no charge accounts referred in error.

(3)   Aberdeen shall deposit all funds collected by Aberdeen hereunder in a trust account and shall be disbursed to the respective Counties on the 15th and last day of the month, plus 5 days for check processing. The disbursement will detail the name of the debtor, the account the payment was applied, the date of the payment, the amount of the payment and the pro-rata division of the funds between the parties, if appropriate. Further disbursements will be made under the following terms:

   (A)   To each Court Clerk of the County that has issued a Warrant referred to Aberdeen for collection hereunder, the total amount collected on the original filings, penalties and an administration fee and itemized by a Trust Statement.

   (B)   It is understood and agreed that each Court Clerk of the County that has issued a warrant and collected the funds plus the administrative cost shall then, in turn, pay Association, or its designated representative or assignee, in this case Aberdeen, 30% of the original fines before the administrative fees were added or 23.0769% of the total monies received or 20% of the original fines before the administrative fees were added, or 16.67% whichever is less as determined by the assignment date of the case for collection.

   (C)   Aberdeen, within fifteen (15) days of the receipt of any funds from the Court Clerk of the County that has issued a warrant and paid funds to the Association or Aberdeen pursuant to 19 O.S. § 514.5 (A) and (B), shall distribute to Association ■ of that amount, less any adjustments made by the Court subject to the terms below.

   (D)   Notwithstanding anything to the contrary, including, without limitation, in Sections (B) & (C) above, if and when the Aberdeen Fees for collection of the Debts associated with the Warrants referred to, and collected by, Aberdeen under this Agreement equal or exceed $1,000,000.00 (one million dollars) in gross revenue aggregate, then the distributions

Page 5 of 16

    provided for in Section (C) shall have no further force and effect throughout the remainder of the Term of the contract. In lieu, the following distributions shall apply with respect to any and all Debts collected by Aberdeen hereunder:

  (i) To Association directly, ▮▮▮▮▮▮▮▮▮▮ of the thirty percent (30%) as provided for under Title 19 O.S. § 514.5 (A).

  (j) Aberdeen shall retain the balance as its fee for collection of the accounts.

 (4) The distribution calculations on partial payments or payments under a payment plan shall be consistent with a division on each payment of 76.9231% of the fine, penalty, administrative fee to the Court Clerk's offices and 23.0769% of the payment or 16.67% whichever is less as determined by the assignment date of the case for collection to Aberdeen until the full amount is paid.

 (5) It is expressly understood and agreed that Aberdeen shall not be entitled to retain any portion of an overpayment and shall not be entitled to a collection fee for any overpayment or for "credit for time served". Any amount received by Aberdeen that is in excess of that which is due and payable by a debtor shall constitute an "overpayment" and shall be returned to the debtor. In any case where Aberdeen determines an overpayment has been made by any debtor, Aberdeen shall immediately notify Association in writing, provide Association a full accounting relative to such overpayment, and shall promptly return such overpayment to the debtor (and provide Association with documentation evidencing the return of such overpayment).

(f) Upon expiration or termination of this Agreement, Aberdeen shall immediately, (i) discontinue collection action, and (ii) deliver to Association all Information (as defined in Section 14 below) which Aberdeen obtained by virtue of this Agreement and/or relating to Aberdeen's performance hereunder, whether in tangible or intangible form, or (iii) if directed by Association, in Association's sole discretion, destroy all such Information in accordance with applicable law and prevailing industry standards within ten (10) days of Association's request, and provide written certification to

Association of the complete and permanent destruction of such Information. All referrals uncompleted and all monies due but not yet paid by Aberdeen to the applicable Court Clerk's office, shall be transmitted to such County Court Clerk's office within ten (10) business days following such expiration or termination date, and shall not be subject to a collection fee, and shall include a written summary by Aberdeen of the current status of each referred account being returned.

(g) Aberdeen shall not represent Association, any County Sheriff's office and/or any Court Clerk's office in any matter other than the collection of an account referred hereunder. If and when an account referred to Aberdeen by the Association, a County Sheriff and/or Court Clerk hereunder becomes involved in litigation, Aberdeen shall immediately suspend collection activity and/or return any account at no charge, upon the request of Association, such County Sheriff's office, and/or Court Clerk's office. In no event shall Aberdeen seek to collect on any account which becomes involved in litigation including without limitation, bankruptcy.

(h) <u>Collection Activity Reports.</u>

(1) <u>Monthly Reports</u>. No later than the Fifteenth (15th) day and Twentieth (20th) day of each calendar month during the Term, Aberdeen shall provide Association the following information with respect to each county that has been referred by Association, a copy of each check from the trust account paid to the county. At the time of payment to the Association a copy of all checks paid by the county of which the distribution of payments to Aberdeen and the Association are made up.

(2) <u>Bi-Monthly Reports</u>. No later than the 1st and 15th of each calendar month during the Term, Aberdeen shall provide each County Clerk's Office the information set forth in section 2 (e) (3) above relative to each account which has been referred by Association, a County Sheriff's office and/or Court Clerk's office for collection and which relates to such county.

(3) <u>Annual Report</u>. No later than October 31st of each calendar year, Aberdeen shall provide an annual summary report to Association.

3. **Roles and Responsibilities of Association.**

(a) Upon request by Aberdeen, Association will provide to Aberdeen any debtor information that would be available to Association for purposes of

Page 7 of 16

collecting the warrant, based upon information obtained through the collective efforts of each County Sheriff's office and Court Clerk's office. Aberdeen agrees that any and all information provided by or through Association, a County Sheriff's office and a Court Clerk's office or any other state agency shall remain confidential in all respects and shall be treated as "Information" under Section 14 below.

(b) Association shall assist Aberdeen in obtaining a monthly report from each Court Clerk for an Oklahoma County that has issued a Warrant which has been referred to Aberdeen for collection hereunder.

4. **Representations and Warranties.** Aberdeen hereby represents and warrants that: (i) it is a corporation duly organized, validly existing and in good standing under the laws of the State of Oklahoma; (ii) it has the requisite power and authority to enter into this Agreement and to fully perform its obligations hereunder; (iii) the individual executing this Agreement has the authority to do so; (iv) it has not made nor will it make any contractual or other commitment which will or may prevent, impair or hinder its full performance of this Agreement; (v) it shall comply in spirit with all federal, state, and local laws, rules and regulations, including, without limitation, the applicable debt collection provisions of the FDCPA and FCRA under the Federal guidelines for collections and the corresponding State guidelines and all applicable privacy laws; (vi) it shall not knowingly use the rights granted to it hereunder for any unlawful purpose; (vii) it shall be responsible for obtaining all required permits, licenses, and bonding to comply with pertinent regulations; municipal, county, state and federal laws and shall be liability for all applicable taxes; (viii) it has not, and shall not at any time during the Term, provide services to the State of Oklahoma of a similar nature for a non-uniform rate as set forth in this Agreement.

5. **Records and Audit Rights.** Aberdeen agrees to keep and maintain accurate books and records with respect to its performance under this Agreement. During the Term and for two (2) years thereafter, Association, the State Auditor and Inspector, and any other state agency have the right to conduct an audit of such books and records that are reasonably necessary to verify Aberdeen's compliance with the terms of this Agreement. Any such audit shall be conducted during Aberdeen's regular business hours at Aberdeen's principal place of business in the State of Oklahoma. If with respect to any audit there is a shortfall for the period audited between the amounts payable to Association and the amounts actually paid, Aberdeen shall promptly pay all outstanding payments to Association, and in addition to any such payments due, shall pay interest on such overdue amount at a rate of one and one-half percent (1½ %) per month, and shall pay for the reasonable costs and expenses of Association, the State Auditor and Inspector, and/or any other state agency associated with performing such audit.

6. **Indemnity, Limitation of Liability and Disclaimer of Warranties.**

(a) It is hereby acknowledged and agreed by the Parties that Association, its Board members, officers, County Sheriffs and Court Clerks shall have no liability for any acts or omissions by Aberdeen, its officers, agents and/or employees, connection with its performance or failure to perform its duties and obligations under this Agreement. Rather, notwithstanding anything to the contrary, Aberdeen shall indemnify, defend, and forever hold harmless Association, its Board members, officers and directors, the County Sheriffs, the State of Oklahoma, the Oklahoma District Courts, the Administrative Office of the Courts and their officials, agents and employees from and against any and all claims, damages, liabilities, costs and expenses (including reasonable attorneys' fees) (collectively "Claims") arising out of any breach of any of Aberdeen's warranties, representations and duties and/or obligations pursuant to this Agreement including, without limitation, any acts or omissions on the part of Aberdeen and/or any officer(s), agent(s), and/or employee(s) of Aberdeen in connection with its performance under the terms of this Agreement. Upon receipt by Aberdeen of written notice of any Claim for which such indemnity applies, Aberdeen shall immediately undertake the defense of any such claim or action and permit Association to participate, in Association's sole discretion.

(b) LIMITATION OF LIABILITY. NOTWITHSTANDING ANYTHING TO THE CONTRARY, IN NO EVENT SHALL ASSOCIATION, ITS OFFICERS, DIRECTORS OR BOARD MEMBERS BE LIABLE TO ABERDEEN FOR ANY INCIDENTAL, SPECIAL, CONSEQUENTIAL, PUNITIVE OR SIMILAR DAMAGES (INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS OR REVENUES, OR DAMAGES TO OR LOSS OF PERSONAL PROPERTY), HOWEVER CAUSED, BASED ON ANY THEORY OF LIABILITY.

(c) DISCLAIMER OF WARRANTIES. ASSOCIATION MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, ANY WARRANTY AS TO MERCHANTABILITY OR FITNESS FOR INTENDED OR PARTICULAR PURPOSE WITH RESPECT TO ITS OBLIGATIONS, SERVICES AND/OR REPORTS PROVIDED HEREUNDER.

7. **Insurance.**

(a) With respect to Aberdeen's performance under this Agreement, and in addition to Aberdeen's obligation to indemnify, Aberdeen shall at its sole cost and expense:

(1) maintain the insurance coverages and limits required by this Section 7 and any additional insurance and/or bonds required by law: (A) at

all times during the term of this Agreement and until completion of all work associated with this Agreement, whichever is later; and (B) with respect to any coverage maintained in a "claims-made" policy, for two (2) years following the term of this Agreement or completion of all work associated with this Agreement, whichever is later. If a "claims-made" policy is maintained, the retroactive date must precede the commencement of work under this Agreement;

(2) procure the required insurance from an insurance company eligible to do business in Oklahoma and having and maintaining a Financial Strength Rating of "A-" or better and a Financial Size Category of "VII" or better, as rated in the A.M. Best Key Rating Guide for Property and Casualty Insurance Companies, except that, in the case of Workers' Compensation insurance, Aberdeen may procure insurance from the Oklahoma State Insurance Fund; and

(3) deliver to Association certificates of insurance stating the types of insurance and policy limits. Aberdeen shall provide or will endeavor to have the issuing insurance company provide at least thirty (30) days advance written notice of cancellation, non-renewal, or reduction in coverage, terms, or limits to Association. Aberdeen shall deliver such certificates: (A) prior to execution of this Agreement and prior to commencement of any work hereunder; (B) prior to expiration of any insurance policy required in this Section 7; and (C) for any coverage maintained on a "claims-made" policy, for two (2) years following the term of this Agreement or completion of all work associated with this Agreement, whichever is later.

(b) The Parties agree:

(1) the failure of Association to demand such certificate of insurance or failure of Association to identify a deficiency will not be construed as a waiver of Aberdeen's obligation to maintain the insurance required under this Agreement;

(2) that the insurance required under this Agreement does not represent that coverage and limits will necessarily be adequate to protect Aberdeen, nor shall it be deemed as a limitation on Aberdeen's liability to Association under this Agreement;

(3) Aberdeen may meet the required insurance coverages and limits with any combination of primary and Umbrella/Excess liability insurance; and

(4)   Aberdeen is responsible for any deductible or self-insured retention.

(c) The insurance coverage required by this Section includes:

(1)   **Workers' Compensation** insurance with benefits afforded under the laws of the State of Oklahoma and **Employers Liability** insurance with limits of at least:

- $500,000 for Bodily Injury – each accident
- $500,000 for Bodily Injury by disease – policy limits
- $500,000 for Bodily Injury by disease – each employee

> To the fullest extent allowable by Law, the policy must include a waiver of subrogation in favor of Association.

(2)   **Commercial General Liability** insurance written on Insurance Services Office (ISO) Form CG 00 01 12 04 or a substitute form providing equivalent coverage, covering liability arising from premises, operations, personal injury, products/completed operations, and liability assumed under an insured contract (including the tort liability of another assumed in a business contract) with limits of at least:

- $2,000,000 General Aggregate limit
    - $1,000,000 each occurrence limit for all bodily injury or property damage incurred in any one (1) occurrence
    - $1,000,000 each occurrence limit for Personal Injury and Advertising Injury

The **Commercial General Liability** insurance policy must: (A) include the Oklahoma Sheriffs' Association and its Board of Directors, Executive Director and Officers as an Additional Insured(s), and Aberdeen shall provide a copy of the Additional Insured endorsement to Association. A copy of the Additional Insured endorsement must be provided within 30 days of execution of this Agreement.

8.   **Governing Law.**   Notwithstanding anything to the contrary, the obligations of Association and Aberdeen under this Agreement are subject to all applicable federal, state and local laws, rules and regulations, and this Agreement and all matters or issues collateral thereto shall be governed by, and construed in accordance with, the laws of the State of Oklahoma (without giving effect to the laws, rules or principles of the State of Oklahoma regarding conflicts of laws).

9. **Conflict with State or Federal Law.** It is hereby acknowledged and agreed by the Parties that the Association, the County Sheriffs, and the Court Clerks are charged with and remain uniquely responsible for upholding the state and federal constitutions and other state and federal laws. Therefore, notwithstanding anything to the contrary, nothing in this Agreement shall be construed to require the Association, any County Sheriff(s) and/or any Court Clerk(s) to perform, direct, authorize, or participate in any act that causes any of them, individually or as an organization, to violate those laws or the rights of the citizens or consumers under those laws. Any provision or part of this Agreement that conflicts with the requirements of any applicable state or federal law, as amended from time to time, shall be void and unenforceable.

10. **Intellectual Property Rights.** Notwithstanding anything to the contrary, nothing contained herein shall act as a transfer to Aberdeen of ownership of any intellectual property rights in any of the materials, creations, inventions, writings, discoveries, programs, developments or innovations that are created or conceived for use by Association, any County Sheriff(s) and/or Court Clerk(s) during and/or otherwise related to Aberdeen's performance hereunder, and/or any Information (as defined in Section 14 below) disclosed or otherwise made available to Aberdeen in connection with this Agreement and/or its performance hereunder.

11. **Assignment.** Aberdeen shall have no right to assign this Agreement, and/or to subcontract, or otherwise delegate any of Aberdeen's rights, obligations and/or duties hereunder.

12. **Force Majeure.** Other than as set forth in this paragraph, neither Party shall have any rights or liabilities against the other Party hereto for the non-operation of facilities, equipment, or software or the non-furnishing of the Service(s) or any part thereof, by reason of an act of God, labor dispute, fire, weather condition, breakdown of facilities, legal enactment, governmental order or regulation, or any other cause (excluding financial inability) beyond a Party's reasonable control ("Force Majeure"). The affected Party will give prompt notice to the other Party when a Force Majeure has occurred.

13. **Notices.** All notices required hereunder shall be in writing and shall be delivered by hand, certified mail, return receipt requested, telecopy or facsimile, or by express courier or overnight delivery adequate postage prepaid to the respective addresses for each Party set forth below, as such notice contacts may be modified from time to time in accordance with this Section.

If to Association:
Oklahoma Sheriff's Association
6531 N. Classen Blvd., #A
Oklahoma City, OK 73116-7307

Attn: Ken McNair
Facsimile: (405) 286-3265

With a copy to:
Christopher J. Collins, Esq.
Collins, Zorn & Wagner, P.C.
429 N.E. 50th Street, Second Floor
Oklahoma City, OK 73105
Facsimile: (405) 524-2078

If to Aberdeen:
Aberdeen Enterprises II, Inc.
4143 E. 31st Street
Tulsa, Oklahoma 74135
Attention: Renita Shofner
Facsimile: (918) 794-0800

Notices shall be deemed given: if by hand delivery on the next business day following delivery; if by mail, on the earlier to occur of actual receipt or on the fifth calendar day following mailing if sent in accordance with this Section; if by facsimile on the date set forth on the confirmation produced by the sending facsimile machine; if by express courier or overnight delivery service, on the next business day following delivery of the notice or report to such service with instructions for overnight delivery.

**14.  Security and Confidentiality.** Aberdeen and its employees, officers, attorneys, auditors, consultants and agents ("Aberdeen Representatives") have maintained and will maintain in confidence the terms and conditions of this Agreement, as well as all data, summaries, reports or information of all kinds, whether oral or written, acquired from or from the files of, or devised or developed by Association, a County Sheriff's office and/or a Court Clerk's office and/or otherwise disclosed by Association, a County Sheriff's office and/or a Court Clerk's office to Aberdeen and/or any Aberdeen Representative(s) in connection with Aberdeen's performance hereunder (collectively the "Information"), and have not and will not reveal the same to any third party, except: (I) at the written direction or consent of Association; (ii) to the extent necessary to comply with applicable law, rule or regulation of a governmental agency, or a valid order of a court of competent jurisdiction, in which event Aberdeen shall so notify Association as promptly as practicable (and, prior to making any disclosure) and shall in all cases seek confidential treatment and redaction to the greatest extent possible of such information; and (iii) as part of its normal reporting or review procedure to its attorneys or auditors, provided such attorneys and/or auditors agree to be bound by the provisions of this Section. In no event shall Aberdeen, directly or indirectly, publish, disseminate, or otherwise disclose, deliver or make available any Information to any third party, and shall limit the disclose of the Information to only those Aberdeen Representatives with a need to know to perform under this Agreement. Aberdeen hereby acknowledges and agrees that Aberdeen and the Aberdeen Representatives

Page 13 of 16

may use Information including, without limitation, Information concerning individual debtors only for such reasonable and lawful means to effect collections hereunder, and for no other reason whatsoever. Aberdeen shall develop, implement, maintain and use appropriate administrative, technical and physical security measures which may include but not be limited to encryption techniques and firewalls, to preserve the confidentiality and integrity of all Information. If any Information made available to Aberdeen hereunder is stolen, lost, or in any way compromised, transgressed, trespassed, hacked, copied, damaged, or improperly disclosed, Aberdeen shall immediately notify Association and at Aberdeen's sole expense, cooperate with Association in its efforts to assess the loss, recover or reconstruct the Information, and to identify, investigate and prosecute those responsible.

**15. Survivability.** The Parties' obligations under this Agreement which by their nature are intended to continue beyond the termination or expiration of this Agreement shall survive the termination or expiration of this Agreement. Without limiting the general applicability of the foregoing, the following sections are specifically agreed by the Parties to continue beyond the termination or expiration of this Agreement: the Recitals, Sections 1, 2 and Sections 4 through 21.

**16. Severability.** Every provision of this Agreement is intended to be severable. If any term or provision of this Agreement shall be held to be invalid, illegal or unenforceable for any reason, such invalidity, illegality or unenforceability shall not affect the validity, legality or enforceability of the remainder of this Agreement.

**17. Relationship.** Neither Party shall be, or hold itself out as, the agent of the other Party under this Agreement. Nothing contained herein shall be deemed to create, and the Parties do not intend to create, any relationship of partners or joint venturers, and neither Party is authorized to or shall act toward third parties or the public in any manner which would indicate any such relationship. Aberdeen shall, at all times throughout the Term of this Agreement, act and perform its collection duties hereunder as an independent contractor. It is expressly understood and agreed that Association shall not exercise any control over the methods by which Aberdeen and/or any officer(s), agent(s), and/or employee(s) of Aberdeen, shall perform Aberdeen's work and functions. In addition, it is expressly acknowledged and agreed that Aberdeen shall solely be responsible for all costs, travel expenses, insurance and any and all other costs and expenses incurred by Aberdeen and/or Aberdeen Representatives in connection with, or otherwise incidental to, Aberdeen's performance under this Agreement. Under no circumstances shall this Agreement be construed or interpreted as an exclusive dealing agreement by either Party. Nothing in this Agreement shall be construed as to restrict Association from entering into any agreement with any other party, even if similar to or competitive with the transactions contemplated hereunder.

**18. No Third Party Beneficiaries.** This Agreement is for the sole benefit of the Parties, and their permitted assignees who are parties to this contract and nothing

herein expressed or implied shall create or be construed to create any third party beneficiary rights hereunder. This Agreement shall not provide any non-party with any remedy, claim, cause of action or other right.

**19.   No Presumption.**  The Parties acknowledge and confirm that each of their respective attorneys has participated in the review and revision of this Agreement and that each Party has had the benefit of its independent legal counsel's advice with respect to the terms and provisions hereof and its rights and obligations hereunder. Each Party stipulates and agrees that the rule of construction to the effect that any ambiguities are to be or may be resolved against the drafting Party shall not be employed in the interpretation of this Agreement to favor any Party against another and that no Party shall have the benefit of any legal presumption or the detriment of any burden of proof by reason of any ambiguity or uncertain meaning contained in this Agreement.

**20.   Non-Recourse.**  Notwithstanding anything to the contrary in this Agreement, it is expressly understood and agreed by the Parties that each and every representation, undertaking and agreement made in this Agreement on the part of the Association was not made nor intended to be made as a personal representation, undertaking or agreement on the part of any individual, incorporator, stockholder, director, officer or partner, past, present or future, of the Association, any County Sheriff(s), and/or any Court Clerk(s), all of which recourse, whether in common law, in equity, by statute or otherwise, is hereby forever waived and released.

**21.   Scope of Agreement, Waiver and Amendment.**   This Agreement constitutes the entire agreement and understanding between the Parties with respect to the subject matter hereof and supersedes all prior and/or contemporaneous, express or implied, written or oral, agreements, representations and conditions between the Parties with respect thereto. No provision of this Agreement shall be deemed waived or amended by either Party unless such waiver or amendment is reduced to writing and signed by the Party against whom such waiver or amendment is sought to be enforced. This Agreement may only be amended by a writing signed by both Parties.

The Parties hereto have executed this Agreement as of the date(s) set forth below.

**The Oklahoma Sheriffs' Association**

By: _____

Printed Name: _____

Title: _____

Date: _____

**Aberdeen Enterprises II, Inc.**
By: _____
Printed Name: _____
Title: President
Date: _____

## COLLECTION CONTRACT EXTENTED

This agreement is made between Oklahoma Sheriff's Association, (OSA), party of the first part and Aberdeen Enterprizes II, Inc., an Oklahoma Corporation (Aberdeen), party of the second part for the collection of outstanding obligations due various county courts of which OSA is the administrative agent.

### RECITALS

1. That the party of the first part is the administrative agent for uncollected obligations that are due and owing to the county courts and have been unable to collect them in the ordinary course of business which remain unpaid.

2. That Aberdeen is in the business of converting these types into collected funds.

3. That the parties have entered into an agreement under the following terms and conditions to collect these obligations for and on behalf of the county courts represented by the party of the first part.

4. That the parties wish to extend the agreement beyond its present terms as follows:

### TERMS

The parties to this agreement hereby agree to extend the collection agreement heretofore commenced on this 1st day of January, 2010, with a one year extension, and again extended from December 31st, 2011 for a term of three (3) years to commence on January 1st, 2012 to December 31, 2014, and again extended from December 31st, 2016 between The Oklahoma Sheriff's Association and Aberdeen Enterprizes II, Inc., for the collection of court cost and fines that are unpaid and assigned for collection.

That said agreement shall be extended for a term of three (3) years to commence on January 1st, 2017. That all terms under the original agreement shall remain in full force and effect, except the terms of all preceding agreements referenced therein except this extension agreement.

In Witness Whereof, the parties hereto have hereto set their hands on this ___16___ day of December, 2016.

Oklahoma Sheriff's Association

*Ray McNair*   Dated  12/16/16

Aberdeen Enterprizes II, Inc.

*[signature]*   Dated 12/15/16