**CASE NO. 17-cv-606-TCK-JFJ**

---

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

---

**CARLY GRAFF,** *et al.*,

**Plaintiff,**

**v.**

**ABERDEEN ENTERPRIZES II, INC,** *et al.,*

**Defendants.**

---

**DEFENDANTS JUDGES' MOTION TO DISMISS
AND BRIEF IN SUPPORT**

---

**STEFANIE E. LAWSON, OBA#22422**
**Assistant Attorney General**
**Oklahoma Attorney General's Office**
**Litigation Division**
**313 NE 21st Street**
**Oklahoma City, Oklahoma 73105**
**Telephone: (405) 521-3921   Facsimile: (405) 521-4518**

*Attorney for Defendants Tulsa County Judges Douglas Drummond, Dawn
Moody, and William Musseman and Rogers County Judge Terrell Crosson*

**October 22, 2018**

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................. ii

DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT ................ 1

STATEMENT OF THE CASE ........................................................................... 1

LITIGATION HISTORY .................................................................................. 5

ARGUMENT AND AUTHORITIES ................................................................ 5

PROPOSITION I:

    THIS COURT SHOULD DECLINE TO EXERCISE ITS JURISDICTION OVER THESE CLAIMS AGAINST DEFENDANT STATE JUDGES ...... 6

    *Federalism and Comity* ............................................................................. 7

PROPOSITION II:

    PLAINTIFFS LACK STANDING TO BRING THESE CLAIMS ............. 14

PROPOSITION III:

    DECLATORY RELIEF IS UNAVAILABLE ............................................ 19

CONCLUSION ............................................................................................... 22

CERTIFICATE OF SERVICE ......................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,*
300 U.S. 227 (1937) ............................................................................ 18,20

*Abbott Laboratories v. Gardner,*
387 U.S. 136 (1967) ................................................................................ 20

*Ariz. Christian Sch. Tuition Org. v. Winn,*
563 U.S. 125 (2011) ................................................................................ 14

*Awad v. Ziriax*
670 F.3d 1111 (10th Cir. 2012) ............................................................. 14

*Bearden v. Georgia,*
461 U.S. 660 (1986) ................................................................................ 13

*Belill v. Hummel,*
835 F.2d 877 (6th Cir. 1987) .................................................................... 9

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (1955) ................................................................................ 17

*Board of County Comm'rs v. Geringer,*
297 F.3d 1108 (10th Cir. 2002) ............................................................. 14

*Brown v. Zavaras,*
63 F.3d 967 (10th Cir. 1995) .................................................................. 17

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) .......................................................................... 16, 17

*Coleman v. Court of Appeals,*
550 F.Supp. 681 (W.D.Okl.1980) ........................................................... 21

*Cory v. Allstate Ins.,*
583 F.3d 1240 (10th Cir. 2009) ............................................................. 17

*Cox v. Phelps Dodge Corp,*
43 F.3d 1345 (10th 1994) ....................................................................... 18

*District of Columbia Court of Appeals v. Feldman,*
460 U.S. 462 (1983)....................................................................................... 8

*Exxon Mobil Corp. v. Allapattah Services, Inc.*
545 U.S. 546 (2005)....................................................................................... 7

*Francis E. Heydt Co. v. United States,*
948 F.2d 672 (10th Cir.1991).................................................................... 21

*Gilliam v. Foster,*
75 F.3d 881 (4th Cir. 1996)....................................................................... 13

*Huffman v. Pursue,*
420 U.S. 592 (1975).......................................................................... 10, 11, 12

*Habecker v. Town of Estes Park, Colo.,*
518 F.3d 1217 (10th Cir. 2008).................................................................. 14

*In Re Keeler,*
273 B.R. 416 (D.Md.2002)........................................................................... 21

*Juidice v. Vail,*
430 U.S. 327 (1977)..................................................................................... 11

*Kokkonen v. Guardian Life Ins. Co. of America,*
511 U.S. 375 (1994)....................................................................................... 7

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992)................................................................................. 16,17

*Maryland Casualty Co. v. Pacific Coal & Oil Co.,*
312 U.S. 270 (1941)..................................................................................... 20

*MedImmune, Inc. v. Genentech, Inc.,*
549 U.S. 118 (2007))............................................................................... 19,20

*National Federal of Independent Business v. Sebelius,*
567 U.S. 519 (2012)....................................................................................... 9

*Nova Health Systems v. Gandy,*
416 F.3d 1149 (10th Cir. 2005)................................................................ 16,18

*O'Shea v. Littlejohn,*
414 U.S. 488 (1974)........................................................................ 15,19

*Pembaur v. City of Cincinnati,*
475 U.S. 468 (1986).......................................................................... 16

*Pulliam v. Allen,*
466 U.S. 522 (1984)............................................................................ 6

*Rector v. City and County of Denver,*
348 F.3d 935 (10th Cir. 2003)........................................................... 14

*Rooker v. Fidelity Trust Co.,*
263 U.S. 413 (1923)............................................................................ 8

*Schaffer v. Clinton*
240 F.3d 878 (10th Cir. 2001)........................................................... 14

*Steffel v. Thompson,*
415 U.S. 452 (1974)............................................................... 11, 12, 20

*Simon v. E. Ky. Welfare Rights Org.,*
426 U.S. 26 (1976)............................................................................ 16

*Surefoot LC v. Sure Foot Corp.,*
531 F.3d 1236 (10th Cir. 2008) ........................................................ 19

*State Farm Fire & Casualty Co. v. Mhoon,*
31 F.3d 979 (10th Cir.1994).............................................................. 21

*Terrace v. Thompson,*
263 U.S. 197 (1923).......................................................................... 20

*Thomas v. Wildins,*
61 F.Supp.3d 13 (D.C. Cir. 2014) ....................................................... 6

*United States v. Sprague,*
282 U.S. 716 (1931)............................................................................ 9

*Utah Animal Rights Coalition v. Salt Lake City Corp.,*
371 F.3d 1248 (10th Cir.2004).......................................................... 21

*Utah Ass'n of Ctys. v. Bush,*
455 F.3d 1094 (10th Cir. 2006)......................................................... 14

*Warth v. Seldin,*
422 U.S. 490 (1975)............................................................................................... 14

*Weitzel v. Division of Occupational and Professional Licensing of the Department of Commerce of the State of Utah*
240 F.3d 871 (10th Cir. 2001)............................................................................. 12

*Will vs. Michigan Dept. of State Police,*
491 U.S. 59 (1989)................................................................................................. 6

*Wilton v. Seven Falls Co.,*
515 U.S. 277, 286, (1995)................................................................................... 21

*Younger v. Harris*
401 U.S. 37 (1971).................................................................. 9, 10,11,12,13

## STATUTES

22 O.S. § 983 ........................................................................................................ 3

18 U.S.C. §§ 1961-1968 ....................................................................................... 2

28 U.S.C. § 1257.................................................................................................... 8

28 U.S.C. § 2201 (a) ........................................................................................... 21

28 U.S.C. § 2201................................................................................................... 19

28 U.S.C. § 2283.............................................................................................. 8, 10

42 U.S.C. § 1983.................................................................................. 2,4,6,7,8,16

## RULES

Okla. Ct. Crim. App. Rules 8.1, *et seq*........................................................ 4,18,19,21

Fed. R. Civ. P. 12(b)(1)....................................................................................... 22

Fed. R. Civ. P. 12(b)(1) and (6) ......................................................................... 1

## OTHER AUTHORITIES

U.S. CONST. art. III................................................................... 7,8,14,16,19,20

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

CARLY GRAFF, *et.al*.

        Plaintiff,

v.

ABERDEEN ENTERPRIZES II, INC., *et al.,*

        Defendants.

**Case No.: 17-cv-606-TCK-JFJ**

## <u>DEFENDANT JUDGES' MOTION TO DISMISS AND BRIEF IN SUPPORT</u>

Defendants Tulsa County Judges Douglas Drummond, Dawn Moody, and William Musseman and Rogers County Judge Terrell Crosson (collectively "State Judges"), by and through attorney of record, Stefanie Lawson, Assistant Attorney General, respectfully move this Court to dismiss Plaintiffs' Second Amended Complaint [Doc. 212] pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure for the reasons that Plaintiffs do not have standing and have failed to state a valid claim against the named state judges.

## BRIEF IN SUPPORT

## STATEMENT OF THE CASE

Plaintiffs are a group of individuals seeking class certification. They claim they (and others similarly situated) currently owe money for various traffic and criminal court related fees and/or fines to various counties in the State of Oklahoma. They have sued Aberdeen Enterprizes II, Inc. (a collection agency), two of Aberdeen's executives, various County Commissioners, Sheriffs, and Court Clerks. They have also named four state judges, Tulsa County Special Judge Dawn Moody, Tulsa County District Judge Douglas Drummond, Tulsa County District Judge William Musseman, and Rogers County Special Judge Terrell Crosson (sued in their *official capacities*

only for declaratory relief [Doc. 212, ¶¶ 33 and 34, fn. 43, p. 100][1]. Plaintiffs seek an order declaring it unlawful for State Judges to issue "debt collection arrest warrants based solely on alleged nonpayment" and "without inquiry into ability to pay, consideration of alternatives, pre-deprivation process and factual allegations based on oath or affirmation." *Id.* at (c), pp. 98-99. Plaintiffs also seek an order "declaring it unlawful [and unconstitutional] for the Tulsa County Judges and Rogers County Judge to issue debt-collection arrest warrants on the bases of unsworn statements" *Id.* at ¶ (e). Plaintiffs' allege that "[n]umerous actors in the Oklahoma criminal legal system enable Aberdeen" to extort money from them (*id.*, ¶ 9), which violates their rights under the Racketeer Influence and Corrupt Organization Act ("RICO")(18 U.S.C. §§ 1961-1968), the United States Constitution pursuant to 42 U.S.C. § 1983, and Oklahoma law. [Doc. 212, ¶ 15]. The sole remedy Plaintiffs seek from this Court, specifically against the State Judges, is "[a]n order declaring it unlawful for the Tulsa County Judges and Rogers County Judge to issue debt-collection warrants on the basis of unsworn statements, and declaring the same unconstitutional." *Id.*, p. 99, ¶ (e).

Other than the very broad indictment against the State's criminal legal system, Plaintiffs' only specific allegations against the named State Judges are that "Judge Moody issues arrest warrants for court debtors based solely on unsworn statements alleging nonpayment without probable cause or any pre-deprivation process, including any inquiry into ability to pay." *Id.*, ¶ 33. Plaintiffs also allege that Judge Moody signs debt collection warrants as a matter of course and

---

[1] To the extent that the Second Amended Complaint can be interpreted as seeking an injunction or damages against Defendant State Judges, Plaintiff's counsel confirmed to undersigned via email on October 9, 2018 that Defendant State Judges are being sued in their official capacities for declaratory relief only. Should the Court decide otherwise or Plaintiffs change their minds, Defendant State Judges request permission to respond to a claim for any additional claims, for either injunctive relief or damages.

presides over the cost docket hearings. *Id., ¶¶* 120 and 130. Plaintiffs' do not claim they have been the subject of Judge Moody's actions, and do not name any class member similarly situated that has suffered from Judge Moody's alleged actions. Plaintiffs allege that Judges "Doug Drummond and William J. Musseman, Jr. (collectively, with Judge Moody, the 'Tulsa County Judges') supervise Judge Moody and set the policies and practices for court debt collection for the Tulsa County District Court." *Id., ¶* 33. Plaintiffs also claim that Judge Terrell S. Crossen (the 'Rogers County Judge') presides over criminal cases in Rogers County" and "issues arrest warrants for court debtors based solely on unsworn statements alleging nonpayment without probable cause or any legal proceedings; including any inquiry into ability to pay. *Id., ¶* 34. Finally, Plaintiff Holmes alleges that Judge Crosson issued a debt collection arrest warrant in one of her cases. *Id.* , ¶ 206.

Significantly, Plaintiffs fail to allege that either they, or those similarly situated, have challenged any of the named State Judges' actions through Oklahoma's Criminal appellant process based on the Judges' failure to follow state law or appropriate Court of Criminal Appeals Rules. Plaintiffs readily admit there are state statutes and rules in place to prevent the very actions they claim violate the U.S. Constitution. [Doc. 212, ¶¶ 43, 44, and 45]. They even admit that Aberdeen's contract with the various counties prohibits them from violating any law. *Id.*, ¶ 81. Yet, no Plaintiff has availed themselves of readily available state court remedies that would have protected them from their alleged plight.

Plaintiffs' Second Amended Complaint fails to mention the numerous and myriad statutes which authorize and dictate the process and procedures for collecting court costs, fee, and fines which are or have been imposed as a result of criminal proceedings. 22 O.S. §983.[2] Of particular

---

[2] A. Any defendant found guilty of an offense in any court of this state may be imprisoned for nonpayment of the fine, cost, fee, or assessment when the trial court finds after notice and hearing that the defendant is financially able but

relevance to Plaintiffs' claims against the State Judges, Oklahoma's statutory scheme and the rules promulgated by the Oklahoma Supreme Court and Court of Criminal Appeals contemplate and allow for appeal from the imposition of courts costs fees and fines, as well as review of a criminal defendant's status as indigent and his/her ability to pay those court costs fines and fees once they are imposed. Okla. Ct. Crim. App. Rules 8.1 *et seq*. Plaintiffs are attempting to collaterally attack their sentences through this §1983 action against the State Judges, which are tasked by law to review and enforce compliance with the sentences as imposed. Plaintiffs are essentially seeking an order from this Court that would declare compliance with state statute and court rules

---

refuses or neglects to pay the fine, cost, fee, or assessment. A sentence to pay a fine, cost, fee, or assessment may be converted into a jail sentence only after a hearing and a judicial determination, memorialized of record, that the defendant is able to satisfy the fine, cost, fee, or assessment by payment, but refuses or neglects so to do.

B. After a judicial determination that the defendant is able to pay the fine, cost, fee, or assessment in installments, the court may order the fine, cost, fee, or assessment to be paid in installments and shall set the amount and date for each installment.

C. In addition, the district court or municipal court, within one hundred twenty (120) days from the date upon which the person was originally ordered to make payment, may send notice of nonpayment of any court ordered fine and costs for a moving traffic violation to the Department of Public Safety with a recommendation of suspension of driving privileges of the defendant until the total amount of any fine and costs has been paid. Upon receipt of payment of the total amount of the fine and costs for the moving traffic violation, the court shall send notice thereof to the Department, if a nonpayment notice was sent as provided for in this subsection. Notices sent to the Department shall be on forms or by a method approved by the Department.

D. The Court of Criminal Appeals shall implement procedures and rules for methods of payment of fines, costs, fees, and assessments by indigents, which procedures and rules shall be distributed to all district courts and municipal courts by the Administrative Office of the Courts.

4

unconstitutional as well as an order declaring the issuance of bench warrant on failure to pay (an enforcement mechanism which is contemplated and endorsed by state law) as unconstitutional.

## LITIGATION HISTORY

Plaintiffs originally filed this action in November 2017 naming only Aberdeen Enterprizes, the Oklahoma Sheriff's Association, and various "participating" county administrators. That Complaint alleged violations under RICO, due process, and equal protection. Plaintiffs also alleged state law violations, attacking the execution of the "failure to pay warrants" and questioned the contract between the Sheriffs and Aberdeen, i.e., essentially the same claims made in the Amended Complaint. [Doc. 76]. Plaintiffs' Amended Complaint added various county level officials and four state judges in order to attack every step in the process for collection of court costs, fees and fines. The relief Plaintiffs sought against the State Judges was for an order directing them to follow state law and associated rules in the collection process of valid criminally issued fines and fees. All Defendants filed Motions to Dismiss in March 2018. [Docs. 169 and 175-185]. Plaintiffs then sought leave to amend again ([Doc. 202]), which was granted ([Doc. 211]), and Plaintiffs filed their Second Amended Complaint on September 21, 2018. [Doc. 212]. As noted in the previous Motion to Dismiss, the State Judges remain unnecessary parties to accomplish Plaintiffs' perceived goal. Plaintiffs, it appears, have added the State Judges merely to disrupt the State's enforcement of its criminal judgments and convictions without first appealing any particular state judge's decision through the State's criminal appeals system.

## SUMMARY OF THE ARGUMENT

This Court should decline to exercise its jurisdiction over the claims against the State Judges based on federalism and comity. Plaintiffs have not met their burden to establish standing to bring these claims against these State Judges. Finally, the declaratory relief Plaintiffs are seeking

against these State Judges asks this Court to insert itself into pending state criminal actions, where these State Judges are merely enforcing the State's criminal law. Those State court decisions have never been challenged or appealed within the State's appellate system. This Court should therefore dismiss Plaintiffs' Second Amended Complaint.

**PROPOSITION I:   THIS COURT SHOULD DECLINE TO EXERCISE ITS JURISDICTION OVER THESE CLAIMS AGAINST DEFENDANT STATE JUDGES**

This Court should decline to exercise its jurisdiction over the State Judges in their official capacity. *Federalism* and *comity* preclude this Court from issuing any relief against the named State Judges. A state judge sued in his/her official capacity is not a "person" under 42 U.S.C. § 1983 and therefore cannot be sued[3]. *Will vs. Michigan Dept. of State Police*, 491 U.S. 59 (1989)(a state official sued in his official capacity is not a "person" under § 1983).

In the instant action Plaintiffs challenge bench warrants or the potential for bench warrants to be issued in their state cases by naming State Judges and claim the possibility of warrants or arrest violate their constitutional rights. Plaintiffs ask this Court to intervene in ongoing state court matters and essentially reverse those without Plaintiffs having completed those state proceedings or even having availed themselves of the appropriate appellate process. One concern raised by seeking injunctive relief through §1983 against a judge pertains to issues of federalism. "Federal judges, it is urged, should not sit in constant supervision of the actions of state judicial officers, whatever the scope of authority under § 1983 for issuing an injunction against a judge." *Pulliam v. Allen*, 466 U.S. 522, 539 (1984). In fact, an amendment to §1983, the Federal Court

---

[3] Plaintiffs do not appear to have named the State Judges specifically as Defendants in Count I (the RICO claim). Insofar as Plaintiffs' claim Defendant State Judges' actions contribute to the actions making up the RICO claims, judicial immunity applies to RICO claims for damages. *See Thomas v. Wildins*, 61 F.Supp.3d 13, 19-20 (D.C. Cir. 2014).

Improvement Act of 1996 ("FCIA") extends judicial immunity to injunctive relief and forbids injunctive relief unless a declaratory decree has been violated or declaratory relief is otherwise unavailable. 42 U.S.C. §1983 ("any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."). In *Knox v. Bland*, the plaintiff was seeking an order requiring a state court judge to either rule a certain way or manage its docket in a particular manner. 632 F.3d 1290, 1292 (10th Cir. 2011) (holding that federal courts lack the "authority to issue ... a writ to direct state courts or their judicial officers in the performance of their duties"). The Court characterized the action as one seeking a writ, but the principle is applicable here. Plaintiffs are seeking an order directing the State Judges to conduct their dockets in a particular way. Federal Courts do not have the authority to issue such an order. Plaintiffs' claims should therefore, be dismissed.

### *Federalism and Comity*

Plaintiffs' opus ignores several constitutional truths. The first and foremost truth is this Court is one of limited jurisdiction. U.S. CONST. art. III; *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 125 S.Ct. 2611 (2005)(Federal District Courts are courts of limited jurisdiction). Article III courts possess only the power authorized by the United States' Constitution and federal statute. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, (1994). When the United States was established, the states surrendered some of their sovereignty to the national government, but retained much of it. *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 285 (1970). One of the powers the states retained was the maintenance of their own judicial systems. *Id.* While the U.S. Supreme Court has the power to directly review state court cases, the lower federal courts possess only limited power to review

7

those issues specifically granted them by Congress. *Id.* at 286. This constitutional truth is expressed in the terms *federalism* and *comity* and embodied in the Anti-Injunction Act. 28 U.S.C. § 2283 and the Tenth Amendment.

The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." All of Plaintiffs' claims stem from the alleged fact they have *pending* state criminal cases in which they owe fines and/or fees. [Doc. 212]. As such, the Anti-Injunction Act prevents this Court from issuing any kind of injunction or order directing the State Judges to act on any of Plaintiffs' pending cases in any particular way.

This dual system of government should be respected. If Plaintiffs believe their federal constitutional rights have been violated, their remedy was and is to file an appeal or writ within the State Court appellant system, and then to the U.S. Supreme Court. *See* 28 U.S.C. § 1257. In many respects, Plaintiffs are attempting to circumvent Article III and the *Rooker-Feldman* doctrine, with their claims against the State Judges. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413(1923) and reaffirmed in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Under that doctrine, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06, 114 S.Ct. 2647, (1994). Plaintiffs here are seeking review of the state court's enforcement mechanisms to compel satisfaction of ordered court costs, fines, and fees.

The federalism principles expressed in the Anti-Injunction Act are merely an acknowledgment of a State's self-governing rights reflected in the Tenth Amendment, which prohibits the national government from exercising non-delegated powers that will infringe on the judicial autonomy of the states. "The Tenth Amendment was intended to confirm the understanding of the people at the time the Constitution was adopted, that powers not granted to the United States were reserved to the States or to the people." *United States v. Sprague*, 282 U.S. 716, 733 (1931); *see also*, *National Federal of Independent Business v. Sebelius*, 567 U.S. 519 (2012)(discussing federalism, comity, and our duel system of government wherein the States retain all powers not delegated to the federal government). Federalism principles demand that federal courts must abstain from granting declaratory or injunctive relief against state courts because doing so would involve interference and monitoring of, the day-to-day conduct of state hearings and trials, which would be unduly intrusive. *Belill v. Hummel*, 835 F.2d 877, (6th Cir. 1987). This Court should abstain from exercising any jurisdiction over the State Judges because important state interests are at stake that would offend these principles of federalism and comity.

The U.S. Supreme Court addressed the principle of *federalism* in the case *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, (1971). In that case, Justice Black wrote "this slogan, 'Our Federalism,' born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future." *Younger*, 401 U.S. at 44-45. The concept of comity represents "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with legitimate activities of the States." *Id.* at 44.

In *Younger v. Harris*, the plaintiff (Harris) had been indicted and charged under California's Criminal Syndicalism Act in state court. While this case was still pending in state court, Mr. Harris filed suit in federal district court, asking the court to enjoin Younger (the local D.A.) from prosecuting him. Harris alleged that the prosecution and even the presence of the Act inhibited him in the exercise of his rights of free speech and press guaranteed by the First and Fourteenth Amendments. After the federal district court issued an injunction the District Attorney appealed.

Ultimately, the United States Supreme Court reversed the district court's injunction finding it to be "a violation of the national policy forbidding federal courts" from staying or enjoining "pending state court proceedings except under special circumstances." *Id.* at 41. After citing what it termed as the "1793 Act," (the predecessor to the Anti-Injunction Act [28 U.S.C. § 2283]), the Court explained that a federal court's intrusion into state court proceedings is extremely limited and typically requires a showing that plaintiffs will suffer irreparable harm. *Id.* at 43 (internal quotations and citations omitted). However, "irreparable damages" or "irreparable injuries" do not include the normal consequences of a criminal conviction, such as being required to pay a fine, court costs, or fees.[4] "Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution." *Id. at* 46.

Even in those cases where a federal injunction has not directly disrupted a State's criminal justice system, the *Younger* doctrine of non-interference should be applied when "it has disrupted the State's efforts to protect the very interests which underlie its criminal laws and to obtain compliance with precisely the standards which are embodied in its criminal laws." *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604 (1975). A state court litigant "should not be permitted the luxury

---

[4] *Younger*, 401 U.S. at 46 "Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term."

of federal litigation of issues presented by ongoing state proceedings, a luxury which ... is quite costly in terms of the interests which *Younger* seeks to protect." *Id*. at 605-606. "[A] necessary concomitant of *Younger* is that a [state litigant] must exhaust his state appellate remedies before seeking relief in the District Courts, unless he can bring himself within one of the exceptions specified in *Younger*." *Id.* at 608.

Six years after *Younger v. Harris* was decided the Supreme Court held in *Juidice v. Vail*, 430 U.S. 327 (1977), that a federal district court could not enjoin state judges from issuing contempt orders in a civil debt collection proceeding. In extending the *Younger* abstention doctrine even further, the Court held that:

> the more vital consideration behind the *Younger* doctrine of nonintervention lay not in the fact that the state criminal process was involved but rather in the notion of comity, that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Id*. at 334 (emphasis added; *internal quotations omitted*, citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 601 (1975) and *Younger*, at 44).The Court explained that not even the exception to Eleventh Amendment immunity under *Ex parte Young*, 209 U.S. 123 (1908) was available to the class action debtors in *Juidice* because a "[f]ederal court cannot ... interfere in a case where the proceedings were already pending in a state court." *Id*. at 335.[5] "A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important

---

[5] When no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles. *Steffel v. Thompson*, 415 U.S. 452, 462, 94 S.Ct. 1209 (1974). The reverse situation is present here.

interest." *Id.* at 335. "[I]nterference with the contempt process not only unduly interferes with the legitimate activities of the State, but also can readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles." *Id.* at 336 (*internal citations and quotations omitted*). The collection process at issue in the case at bar is substantially similar to the civil contempt proceedings in *Steffel*. The bench warrants issued for noncompliance when payments are missed are part of a court's fundamental power to enforce its order. The bench warrants issued in this context are essentially an order to appear before the court to show cause as to why they are non-compliant as in the nature of civil contempt.

Of course, *Younger* does not apply where a federal district court "properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and [whatever] manner and against whomever an effort might be made to apply it." *Huffman,* 420 U.S. 592, 611 (1975). Neither the Plaintiffs, nor those similarly situated, fall within those exceptions.

Plaintiffs have not alleged the State Judges have acted in "bad faith" or for purely "harassment" reasons. [Doc. 212]. Plaintiffs insinuate that Defendant State Judges issue bench warrants for failure to pay costs, fees, and fines not to exercise their authority to require compliance, but to improperly secure funding for the operation of the courts. Even under a strained interpretation, a court using bench warrants to enforce its orders and appearance requirements is not actually bad faith or harassment. It is Plaintiffs' heavy burden to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment. *Weitzel v. Division of Occupational and Professional Licensing of the Department of Commerce of the State of Utah*, 240 F.3d 871, 877 (10th Cir. 2001). In fact, there is no case since *Younger* was decided

12

in which the Court has found that the exception for bad faith or harassment was applicable.[6] In determining whether a state court proceeding constitutes bad faith or harassment, a district court considers whether the state court action is objectively frivolous, whether it was motivated by retaliatory purposes, and whether it is oppressively burdensome. *Id*. at 877.

Plaintiffs cite *Bearden v. Georgia*, 461 U.S. 660 (1986) for the proposition that "a probationer may not be imprisoned for nonpayment of a fine or restitution, unless it is shown that the nonpayment was willful. If a person lacks the ability to pay despite *bona fide* efforts to acquire the resources to do so, imprisonment would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. *Id*. at 672-73." [Doc. 212, ¶ 42]. However, *Bearden* is inapplicable to negate the application of *Younger* in this case because, as Plaintiffs' have alleged, they do have an opportunity to appear before a state judge and plead they are not "willfully" failing to pay their fines. [Doc. 212, ¶¶ 43, 44, and 45]. Plaintiffs allege the State Judges have violated that state statute and those state rules, however, no Plaintiff has alleged they appeared to make a claim of "unable to pay" or alleged they have appealed any of the State Judges' decisions that are contrary to those statutes and rules.[7] As such, this Court should abstain from deciding claims against Defendant State Judges pursuant to the *Younger* doctrine. This Court should therefore decline to exercise its jurisdiction over Plaintiffs' claims against Defendant State Judges.

**PROPOSITION II:  PLAINTIFFS LACK STANDING TO BRING THESE CLAIMS**

---

[6] "Over thirty years of litigation since *Younger* testify to the strength of its presumption against federal interference; in no case has the Supreme Court found the bad faith exception to apply." *Gilliam v. Foster*, 75 F.3d 881, 906 (4th Cir. 1996).

[7] Plaintiff Holmes does allege that she was arrested on a bench warrant for failure to pay and then appeared in front of a judge. She alleges that she was released the same day she appeared on the bench warrant, which is consistent with the statutes and rules in place. Plaintiff Holmes does not identify the judge in front of whom she appeared. [Doc. 212 ¶¶ 206-210].

To establish Article III standing, a plaintiff must demonstrate "(1) that he or she has 'suffered an injury in fact;' (2) that the injury is 'fairly traceable to the challenged action of the defendant;' and, (3) that it is 'likely' that 'the injury will be redressed by a favorable decision.'" *Awad v. Ziriax,* 670 F.3d 1111, 1120 (10th Cir. 2012) (quoting *Ariz. Christian Sch. Tuition Org. v. Winn,* 563 U.S. 125, 131 S.Ct. 1436, 1442 (2011)). These three (3) requirements are often referred to as "injury in fact, causation, and redressability." *Habecker v. Town of Estes Park, Colo.,* 518 F.3d 1217, 1224 (10th Cir. 2008). "In its starkest terms, the standing inquiry requires the Court to ask not only whether an injury has occurred, but whether the injury that has occurred may serve as the basis for a legal remedy in the federal courts." *Schaffer v. Clinton*, 240 F.3d 878, 883 (10th Cir. 2001). "[S]tanding is determined as of the time of the filing of the complaint." *Utah Ass'n of Ctys. v. Bush*, 455 F.3d 1094, 1101 (10th Cir. 2006). Any plaintiff who has not yet suffered any kind of constitutional violation nor had the opportunity to raise their constitutional claims in state court, would not yet have standing because they had not suffered any kind of injury.

Standing also has a prudential component. *Rector v. City and County of Denver*, 348 F.3d 935, 942 (10th Cir. 2003). A party has prudential standing if: (1) the party asserts its own rights, not those of third parties; (2) the party's claim is not a general grievance shared equally and generally by all or a large class of citizens; and (3) the party's injury is within the zone of interests protected or regulated by statutes or constitutional guarantees invoked in the suit. *See Board of County Comm'rs v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975).

The Supreme Court in *O'Shea v. Littlejohn,* 414 U.S. 488, 94 S.Ct. 669 (1974), explained that "it seems to us that attempting to anticipate whether and when [the plaintiffs] will be charged with a crime and will be made to appear before [the defendant magistrate or circuit court judge]

14

takes us into the area of speculation and conjecture," and concluded the plaintiffs lacked standing to enjoin the defendants' alleged discriminatory bond-setting, sentencing, and jury-fee practices, either on their own behalf or on behalf of a class. *O'Shea,* 414 U.S. at 497. Similarly, in this case Plaintiffs are asking this Court to speculate as to when or whether they will fail to meet their financial obligations, be called before the court to explain themselves, and then be incarcerated because of or in spite of their poverty. Plaintiffs have not alleged a real and immediate threat, that absent this Court's intervention they will suffer an arrest or incarceration for failure to pay court debts. All Plaintiffs, per statute and rule, have the opportunity to seek review prior to incarceration on failure to pay.

Plaintiffs Second Amended Complaint consists of 372 paragraphs asserting sweeping and conclusory indictment of the court costs, fees and fine collections procedures, which are authorized by statutes and rules of the Oklahoma Court of Criminal Appeals. Eight (8) named Plaintiffs seek relief for a purported class of those similarly situated. Fifty-nine (59) paragraphs are specific to named Plaintiffs ([Doc. 212 ¶¶ 18-25, 155-213]), and thirty-five (35) paragraphs are specific to the named state judicial Defendants or some generic judge. (*Id.*, at ¶¶ 33-34, 49-50, 64, 78, 91-93, 109, 111, 118, 120, 126, 130, 136-138, 140, 158, 164, 178, 190, 206-207, 210, 321, 323, 330-331, 333, 342, 348, 361]. Of the 372 paragraphs, only seven (7) paragraphs allege any actual interaction between the named Plaintiffs and any judge ([Doc. 212, ¶¶ 158, 164, 178, 190, 206, 207, and 210]). The vast majority of the remaining paragraphs in Plaintiffs' Second Amended Complaint consist of generalized and conclusory allegations about the procedures and practices for collecting court costs, fees and fines. Nowhere does any Plaintiff allege that he or she appealed imposition of court debts or appeared before a court to seek review of their ability to pay. In fact, only Plaintiffs Graff, Frazier, Holmes, Meachum, and Choate allege any interaction with any judge from a warrant

15

issued to hearing on ability to pay. Plaintiffs Smith, Killman, and Williams do not allege any interactions with judges through either hearing or warrants. These minimal allegations do not rise to a cognizable claim for relief under § 1983. Plaintiffs must allege more than potential injury to a cognizable interest; injury in fact requires Plaintiffs themselves to be among the injured. *See, Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992). Allegations of possible future injury are insufficient to confer standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

A plaintiff must identify the officials responsible for the particular conduct alleged to have violated her rights. *See Pembaur v. City of Cincinnati,* 475 U.S. 468, 483 (1986). This satisfies the "fairly traceable" element of Article III standing. *See Lujan*, *supra*, at 560-561. Plaintiffs' Second Amended Complaint includes numerous general allegations that the way judges as a group administer the collection of court costs, fines and fees is unlawful. However, Plaintiffs have not actually alleged they have had any contact with any of Defendant State Judges. Rather, Plaintiffs misstate or misinterpret the process under Oklahoma Law. The only contact Plaintiffs allege to have had with any named State Judge is due to their having failed to meet their court ordered obligations, and thus they may be subject to the issuance of a bench warrant and possible arrest. "The plaintiff's burden of demonstrating causation is not satisfied when '[s]peculative inferences are necessary to connect [the plaintiff's] injury to the challenged actions [or inaction].' *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1157 (10th Cir. 2005)(quoting *Simon v. E. Ky. Welfare Rights Org*., 426 U.S. 26, 45–46 (1976)). Article III causation requires something less than the concept of proximate cause but does require a substantial likelihood that Plaintiff's injury in fact was caused by defendants' actions. *Id*. at 1156. Plaintiffs essentially must show that the injury is attributable to the challenged conduct of defendants. *Id*. at 1156. "When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be [alleged]

16

in order to establish standing depends considerably upon whether the plaintiff is ... an object of the action (or forgone action) at issue." *Lujan*, 504 U.S. at 561. A bench warrant will only issue if Plaintiffs fail to meet their financial obligations and, also fail to seek or appear for a review of their ability to pay.

The Second Amended Complaint is filled with generalized and conclusory allegations as well as legal arguments, which are not enough to demonstrate Plaintiffs' right to sue or state a claim. Plaintiffs have failed to establish their alleged injuries are fairly traceable to each of the named Judges with any particularity. Allegations of possible future injury are not sufficient. *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013). Plaintiffs' legal conclusions and opinions cannot be accepted to confer standing even if stated as facts. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 555 (1955), *Cory v. Allstate Ins*., 583 F.3d 1240, 1244 (10th Cir. 2009); *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995).

The third element of constitutional standing requires a plaintiff to establish that it is "likely, as opposed to merely speculative, that [the plaintiff's alleged] injury will be redressed by a favorable [court] decision." *Lujan* at 561. Plaintiffs have limited their requested relief from the State Judges in their Second Amended Complaint to an order declaring the Judges' actions of issuing bench warrants when Plaintiffs fail to meet the financial obligations of their sentences without an inquiry into ability to pay, to be unlawful. Plaintiffs are essentially asking this Court to decide if Defendant State Judges are complying with the U.S. and Oklahoma Constitutions during the process and procedures used to collect outstanding court debts.

In order for an action for declaratory relief to be justiciable, the requested relief must resolve an actual case or controversy, which affects the behavior of the defendant toward the plaintiff. *Cox v. Phelps Dodge Corp,* 43 F.3d 1345, 1348 (10th 1994). "The controversy must be

17

definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461 (1937). A declaratory judgment must terminate the parties' controversy and the relief granted must redress the Plaintiff's injury either directly or indirectly. Redressability means the court must be able to grant relief through the exercise of its power. *Nova Health Systems v. Gandy,* 416 F. 3d 1149 (10th 2012).

Plaintiffs do not overtly seek to challenge the constitutionality of a state statute as applied to their conduct. Rather, they challenge the lawfulness of the manner in which Defendant State Judges issue bench warrants when payment obligations pursuant to a plea or conviction have not been met. The declaratory judgment Plaintiffs seek will not render Oklahoma's court costs, fees, and fines system, or any provision therein, unconstitutional. It will not have any effect on Plaintiffs' underlying criminal cases—their cases will remain open pending satisfaction of costs, fines and fees, unless those obligations are later waived by the court following the proper procedure. *See* Okla. Ct. Crim. App. Rules 8.1, *et seq.* As Defendant State Judges already follow the statutes and Court of Criminal Appeals Rules, and Plaintiffs are not and have not challenged the constitutionality of those statutes and rules, the declaratory relief they are seeking will not change Plaintiff's responsibilities toward the debts owed. Until the obligations are satisfied or the fees owed are overturned on appeal or waived by the court, pursuant to Rule 8.4 or 8.5, *supra*, any declaratory relief would not terminate a controversy by remedying Plaintiffs' alleged injury.

Plaintiffs' underlying criminal cases subject to judicial oversight until the debts are satisfied or waived. A declaratory judgment may not interfere with the ongoing state criminal proceedings. *O'Shea*, *supra*, at 500-502. Because of principles of equity, comity, and federalism, the Supreme Court has acknowledged that federal courts should ordinarily refrain from enjoining ongoing state criminal prosecutions. *Steffel*, *supra*, at 460. "[A] pending state proceeding, in all

but unusual cases, would provide the federal plaintiff with the necessary vehicle for vindicating his constitutional rights, and, in that circumstance, the restraining of an ongoing prosecution would entail an unseemly failure to give effect to the principle that state courts have the solemn responsibility, equally with the federal courts to guard, enforce, and protect every right granted or secured by the constitution of the United States ....” *Id.* at 460-461. When the state criminal prosecution began before the federal suit is filed, the federal court must consider the same principles regarding the propriety of intervention regardless of whether injunctive or declaratory relief is requested. *Id.* at 461. All Plaintiffs have or had the opportunity to appeal the imposition of fees and have the ability to seek relief from the state courts through review of disability or ability to pay. Okla. Ct. Crim. App. Rules 8.1, *et seq*. Therefore, the declaratory relief Plaintiffs seek do not meet the standard for redressability.

**PROPOSITION III: DECLARATORY RELIEF IS UNAVAILABLE**

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (2010), provides that:

In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

The "actual controversy" referenced in the Federal Declaratory Judgment Act, "actual controversy" invokes the case-or-controversy requirements of Article III of the U.S. Constitution. *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1241 (10th Cir. 2008) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126, 127 S.Ct. 764, 771, (2007)). For the purposes of the FDJA, an actual controversy occurs if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510,

19

(1941)). The Supreme Court has explained that the phrase "case of actual controversy" in the Federal Declaratory Judgment Act refers to the type of cases and controversies that are justiciable under Article III. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth* 300 U.S. 227, 240, 57 S.Ct. 461 (1937). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510(1941). Article III's case-or-controversy requirement operates to ensure that declaratory relief is available only when a live controversy continues to exist. *Id.* at 273.

Government action (or inaction) which threatens a plaintiff's arguably legal activity can form the basis of relief under the Federal Declaratory Judgment Act. *See Terrace v. Thompson,* 263 U.S. 197, 44 S.Ct. 15(1923)*; see also Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209 (1974). The dilemma posed by government coercion, creating a perceived choice between potential prosecutions or abandoning rights, is "a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 152, 87 S.Ct. 1507 (1967). This type of dilemma is not present in the case at bar. Plaintiffs are not faced with abandoning their rights or risking prosecution. There are Oklahoma statutes and court rules in place specifically to protect Plaintiffs' rights and provide for both a direct appeal and review of payment obligations.[8] Plaintiffs are simply failing to exercise or ignoring those rights, which does not give them the right to challenge the state court's mechanisms for enforcement of its judgments.

Plaintiffs are seeking a declaratory judgment stating Defendant State Judges' issuance of bench warrants for failure to meet payment obligations imposed pursuant to criminal cases violates

---

[8] *See* Okla. Ct. Crim. App. Rules 8.1 to 8.8.

20

their constitutional rights. The Tenth Circuit has said that a declaratory judgment is not meant to proclaim liability for a past act, but to define the legal rights and obligations of the parties in anticipation of some future conduct. *See Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th Cir.2004) (McConnell, J., *concurring*) ("[A] declaratory judgment action involving past conduct that will not recur is not justiciable."); *Francis E. Heydt Co. v. United States*, 948 F.2d 672, 676–77 (10th Cir.1991). Under the Declaratory Judgment Act, the federal court has discretion to intervene. 28 U.S.C. § 2201(a) (a court "*may* declare the rights and other legal relations of any interested party," (emphasis added)). The court's discretion is "unique and substantial" when deciding whether to declare a litigant's rights. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286, (1995).

Plaintiffs, however, should not be eligible for declaratory relief because there is a more suitable remedy, the appellate process. *See State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir.1994) (one of the factors for a court to consider in deciding whether to hear a declaratory action is "whether there is an alternative remedy which is better or more effective") (quotation omitted). *See also In Re Keeler*, 273 B.R. 416, 421 (D.Md.2002) ("If the state trial court erred ... relief was available in the [state] appellate courts ....") (citation omitted); *Coleman v. Court of Appeals*, 550 F.Supp. 681, 684 (W.D.Okl.1980) ("The proper remedy for litigants who feel wronged by an adverse judgment is through the appellate process.") (citations omitted). Plaintiffs' claims against the Defendant State Judges for declaratory relief should be dismissed.

## CONCLUSION

Defendant State Judges respectfully request that pursuant to Fed. R. Civ. P. 12(b)(1) and (6) this Court dismiss Plaintiffs' claims against them and for any and all such relief as the Court may deem appropriate.

Respectfully submitted,

/s/Stefanie E. Lawson
**STEFANIE E. LAWSON, OBA# 22422**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
Tele: (405) 521-3921   Fax: (405) 521-4518
stefanie.lawson@oag.ok.gov
*Attorney for Defendants Stat Judges*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of October 2018, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants:

Alexander Karakatsanis
Elizabeth Rossi
Katherine Hubbard
Civil Rights Corps.
910 17th St. NW Ste. 200
Washington, DC 2006
Email: alec@civilrightscorps.org
Email: elizabeth@civilrightscorps.org
Email: katherine@civilrightscorps.org
*Attorney for Plaintiffs*

Daniel E. Smolen
Robert M. Blakemore
Smolen Smolen & Roytman, PLLC
701 S. Cincinnati Ave.
Tulsa, OK 74419
Email: danielsmolen@ssrok.com
Email: bobblakemore@ssrok.com
*Attorney for Plaintiff*

Douglas N. Letter
Mary B. McCord
Robert D. Friedman
Seth T. Wayne
Institute for Constitutional Advocacy
    and Protection
600 New Jersey Ave., NW
Washington, DC 2001
Email: mbm7@georgetown.edu
Email: rdf34@georgetown.edu
Email: sw1098@georgetown.edu
*Attorney for Plaintiffs*

Jill Elizabeth Webb
J. Webb Law Firm, PLLC
PO Box 1234
Tulsa, OK 74103
Email: jwebb@jwebblaw.com
*Attorney for Plaintiffs*

Harry A. Parrish
John R. Woodard, III
Robert E. Applegate
Coffey Senger & McDaniel PLLC
4725 E. 91 St., Ste. 100
Tulsa, OK 74137
Email: harry@csmlawgroup.com
Email: john@csmlawgroup.com
Email: applegate@csmlawgroup.com
*Attorney for Aberdeen Enterprizes, II, Inc., Rob Shofner,*

Kelsey A. Chilcoat
Maurice G. Woods, II
McAtee & Woods PC
410 NW 13th
Oklahoma City, OK 73103
Email: kelseyc@mcateeandwoods.com
Email: mauricew@mcateeandwoods.com
*Attorneys for Oklahoma Sheriffs' Assoc.*

Chris M. Warzecha
Isaac R. Ellis
Melodie Freeman-Burney
Robert D. James
Conner & Winters, LLP (Tulsa)
1 Williams Center, Rm. 4000
Tulsa, OK 74172
Email: cwarzecha@cwlaw.com
Email: iellis@cwlaw.com
Email: mburney@cwlaw.com
Email: rob.james@cwlaw.com
*Attorneys for Oklahoma Sheriffs' Assoc.*

April D. Kelso
Jeffrey C. Hendrickson
Randall J. Wood
Robert L. Betts
Robert S. Lafferrandre
Pierce Couch Hendrickson
      Baysinger & Green, LLP (OKC)
PO Box 26350
Oklahoma City, OK 73126
Email: akelso@piercecouch.com
Email: jhendrickson@piercecouch.com
Email: rwood@piercecouch.com
Email: rbetts@piercecouch.com
Email: rlafferrandre@piercecouch.com
*Attorneys for Defendant Sheriffs*

Aaron Etherington
Carri A. Remillard
Rodney J. Heggy
Oklahoma County District Atty's Ofc.
320 Robert S. Kerr, Ste. 606
Oklahoma City, OK 73102
Email: aaron.etherington@oklahomacounty.org
Email: carri.remillard@oklahomacounty.org
Email: rod.heggy@oklahomacounty.org
*Attorneys for P.D. Taylor*

Douglas A. Wilson

Thomas A. LeBlanc
Todd M. Wagner
Best & Sharp
1 W. Third St., Ste. 900
Tulsa, OK 74103
Email: tleblanc@bestsharp.com
Email: twagner@bestsharp.com
*Attorneys for Scott Walton, Rogers BCC*

Jo Lynn Jeter

23

Kimberly M. Hall
Tulsa County District Attorney's Ofc.
500 S. Denver Ave., Ste. 900
Tulsa, OK 74103
Email: douglas.wilson@tulsacounty.org
Email: khall@tulsacounty.org
*Attorneys for Vic Regalado, Tulsa BOCC, Darlene Bailey and Kim Henry*

Joel L. Wohlgemuth
Norman Wohlgemuth Chandler
   Jeter Barnett & Ray PC
401 S. Boston Ave., Ste. 2900
Tulsa, OK 74103
Email: jlj@nwcjlaw.com
Email: jlw@nwcjlaw.com
*Attorneys for Vic Regalado, Tulsa BOCC, Darlene Bailey and Kim Henry*

/s/Stefanie E. Lawson
Stefanie E. Lawson

24