# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

CARLY GRAFF, et. al.,

    *Plaintiffs*,

v.

ABERDEEN ENTERPRIZES II, INC., et al.,

    *Defendants*.

Case No. 4:17-CV-606-TCK-JFJ

## PLAINTIFFS' OPPOSITION TO DEFENDANT (FORMER COURT CLERK OF ROGERS COUNTY) KIM HENRY'S PERSONAL-CAPACITY MOTION TO DISMISS

### BRIEF C

Jill Webb, OBA #21402
J Webb Law Firm PLLC
P.O. Box 1234
Tulsa, OK 74101
Tel: 918-346-5664
jill.webb@gmail.com

Katherine Hubbard (admitted *Pro Hac Vice*)
California Bar No. 302729
Ryan Downer (admitted *Pro Hac Vice*)
D.C. Bar No. 1013470
Marco Lopez* (admitted *Pro Hac Vice*)
California Bar No. 316245
Tara Mikkilineni (admitted *Pro Hac Vice*)
D.C. Bar No. 997284
Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
Tel: 202-599-0953
Fax: 202-609-8030
katherine@civilrightscorps.org
ryan@civilrightscorps.org
marco@civilrightscorps.org
tara@civilrightscorps.org

*Admitted solely to practice law in California; not admitted in the District of Columbia. Practice is limited pursuant to D.C. App. R. 49(c)(3).

Daniel Smolen, OBA #19943
Donald E. Smolen, II, OBA #19944
Robert M. Blakemore, OBA #18656
Smolen, Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

Douglas N. Letter (admitted *Pro Hac Vice*)
D.C. Bar No. 253492
Robert Friedman (admitted *Pro Hac Vice*)
D.C. Bar No. 1046738
Seth Wayne (admitted *Pro Hac Vice*)
D.C. Bar No. 888273445
Institute for Constitutional Advocacy
and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
Dl1016@georgetown.edu
rdf34@georgetown.edu
sw1098@georgetown.edu

*Attorneys for the Plaintiffs*

## INDEX OF PLAINTIFFS OPPOSITION BRIEFS

For ease of reference, each of Plaintiffs' opposition briefs has been labeled by letter according to the motion to dismiss to which it responds, listed below.

A. 51 County Sheriff Defendants, Individual Capacity (Doc. 239)

B. Rogers County Defendants, Official Capacity (Doc. 226)

C. Kim Henry, Former Court Clerk of Rogers County, Individual Capacity (Doc. 227)

D. Scott Walton, Sheriff of Rogers County, Individual Capacity (Doc. 228)

E. Aberdeen Enterprizes II, Inc. (Doc. 230)

F. Jim and Rob Shofner (Doc. 231)

G. Oklahoma Sheriffs' Association (Doc. 232)

H. Defendant Judges (Doc. 233)

I. 51 County Sheriff Defendants, Official Capacity (Doc. 234)

J. Vic Regalado, Sheriff of Tulsa County, Individual Capacity (Doc. 235)

K. Don Newberry, Court Clerk of Tulsa County, Individual Capacity (Doc. 236)

L. Darlene Bailey, Cost Administrator of Tulsa County, Individual Capacity (Doc. 237)

M. Tulsa County Defendants, Official Capacity (Doc. 238)

# INTRODUCTION

This class action lawsuit challenges a systemic extortion scheme whereby local officials, in concert with a for-profit company, Aberdeen Enterprizes II, Inc. ("Aberdeen"), use both the threat of arrest and actual incarceration to extract money from indigent Oklahomans who owe court debt. Defendants employ these coercive tactics against members of the putative class despite the absence of any mechanism to assess their ability to pay the fines levied against them. Plaintiffs, all of whom owe fines and fees to the court system, are threatened, arrested, and imprisoned when they cannot pay, not because of any willful refusal, but solely due to their indigence. As a result of this scheme, tens of millions of dollars—squeezed from Oklahoma's poorest citizens, who sacrifice basic necessities of life to try to avoid being caged—flow to Aberdeen, a private debt-collection company; to the Oklahoma Sheriffs' Association ("OSA"), a private lobbying organization; to dozens of county sheriffs' offices; and to the Oklahoma court system. Plaintiffs' suit challenges the operation of this scheme, which violates the federal Constitution, Oklahoma law, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The extortion scheme cannot function without arrest warrants for nonpayment and the referral of individual debtors' cases to Aberdeen for collection, tasks that court clerks in various counties play a key role in carrying out.

Defendant Kim Henry is the former Clerk of the District Court of Rogers County. Doc. 212, Second Amended Complaint ("SAC") ¶ 37. In that role, she was responsible for collecting court debt in Rogers County, where she maintained a policy and practice of seeking debt-collection arrest warrants without inquiring into the warrant subject's ability to pay and without making her requests under oath or affirmation; choosing which individual cases to transfer to Aberdeen for collection; transferring such cases without conducting an inquiry into the debtor's ability to pay; assessing a 30% penalty surcharge to the debt of anyone whose case was referred, regardless of

the individual's ability to pay and without any notice; and, after transferring a case to Aberdeen, assisting the company in seeking new arrest warrants and recalling old ones at its request. *Id.*

Henry's practices have affected multiple Plaintiffs in this case. She requested that an arrest warrant issue against Plaintiff Carly Graff—without notice and based solely on nonpayment—and decided to transfer Graff's case to Aberdeen. SAC ¶ 158. The application for the arrest warrant did not contain sworn statements supporting any of its factual claims; nor did it even contain unsworn assertions that would provide probable cause. *Id.* The result was a substantially increased debt for Graff, *id.*, who has since been harassed by Aberdeen via mail, *id.* ¶ 159, and who now lives in fear of arrest, unable to lead a normal life, *id.* ¶ 160. Henry also requested a warrant issue against Plaintiff Melanie Holmes. *Id.* ¶¶ 25, 207. Because of that warrant, Holmes, who now lives in Oregon, is afraid to return to Oklahoma to visit her family. *Id.* ¶¶ 212, 213.

Plaintiffs seek compensatory damages for the harm caused by this unlawful conduct. In Counts Two and Five, Plaintiffs challenge Henry's practice of requesting, and helping Aberdeen request, warrants based solely on nonpayment, without regard for the debtor's ability to pay. In Count Three, Plaintiffs challenge Henry's practice of requesting, and helping Aberdeen request, warrants that recklessly omitted material information regarding ability to pay, as well as her practice of requesting warrants not based on oath or affirmation. In Count Seven, Plaintiffs challenge Henry's practice of referring cases to Aberdeen, which is an essential component of the collective effort among various Defendants in this case to use unconstitutionally onerous methods to collect debt.

In her motion to dismiss, Henry asserts that she can avoid liability for her illegal conduct because she is entitled to quasi-judicial immunity given that her challenged conduct was carried out at the order of the Oklahoma Supreme Court. But the order on which she relies was merely an

administrative directive to district courts (not court clerks) to participate in a debt-collection program. Government actors cannot claim derivative immunity for following such administrative orders. Regardless, the order did not direct court clerks as to the circumstances under which to request warrants in individual cases or when to refer individual cases to a private debt collector. It is those individualized decisions that Plaintiffs challenge, and Plaintiffs have alleged that Henry made them at her own discretion, not at the direction of any judge on the Oklahoma Supreme Court or otherwise. Further, Henry does not argue that those acts are entitled to absolute immunity in their own right.

Nor can Henry shield herself under the doctrine of qualified immunity. She claims that she has not personally participated in the violation of constitutional rights, first, on the ground she has not participated in arresting or detaining any Plaintiffs and, second, on the ground that seeking a warrant and arresting someone (as opposed to sentencing them to a term of imprisonment) solely for nonpayment is somehow constitutional. The first argument misunderstands Plaintiffs' claims, which challenge Henry's role in requesting warrants and referring individual debtor's cases to Aberdeen, regardless of whether Plaintiffs have already been detained. Henry's second argument misunderstands the law. If it is unconstitutional to imprison someone solely for nonpayment—which she does not dispute—it is of course unconstitutional to seek an arrest warrant for that same "offense." Henry cites nothing to support her counterintuitive argument to the contrary.

Contrary to Henry's assertion that Plaintiffs' rights are not clearly established, there is Supreme Court and Tenth Circuit precedent directly on point. First, the Tenth Circuit has held that warrants issued without oath or affirmation violate the Fourth Amendment. *See Dow v. Baird*, 389 F.2d 882, 883–84 (10th Cir. 1968). Second, the Tenth Circuit has held that recklessly omitting from a warrant request material information that would eliminate probable cause—here,

information related to the debtor's inability to pay—violates the Fourth Amendment. *See Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996); *Stewart v. Donges*, 915 F.2d 572, 581–83 (10th Cir. 1990). Third, the Supreme Court has held that it is unconstitutional to imprison someone simply for being too poor to pay their court debt. *See Bearden v. Georgia*, 461 U.S. 660, 667–68 (1983). Fourth, the Supreme Court has held that it is unconstitutional to impose onerous collection methods—here, referral to Aberdeen and imposition of a 30 percent penalty—only on those too poor to pay debt owed to the government. *See James v. Strange*, 407 U.S. 128 (1972). These are the practices, clearly established as unconstitutional, for which Plaintiffs seek to hold Henry liable.

Defendant Henry's motion to dismiss should be denied.

## ARGUMENT

I. **Plaintiffs' Claims Are Not Barred by *Younger*, *Rooker-Feldman*, or *Heck***

Defendant asserts that the *Younger*, *Rooker-Feldman*, and *Heck* doctrines bar Plaintiffs' claims against her in her personal capacity. Doc. 227 (Brief in Support of Motion to Dismiss) at 3–4. The arguments she adopts for these assertions—those set forth by the Rogers County Defendants in their motion to dismiss, *see id.* (incorporating Doc. 226)—are addressed in Plaintiffs' opposition to the Rogers County Defendants' motion, Br. B, Sections II-III, pp. 7-11, and in their opposition to the motion to dismiss filed by the 51 County Sheriffs in their official capacities, Br. I, Section V, pp. 22-24, both of which Plaintiffs incorporate here, in accordance with the Court's instruction to avoid duplicative arguments.

II. **Absolute Immunity Does Not Protect Henry for Investigating, Seeking, and Attesting to the Factual Basis for the Warrants**

Henry argues that her conduct in requesting warrants and referring cases to Aberdeen is protected by absolute quasi-judicial immunity, first, because no Plaintiff has been served with a

warrant that issued in Rogers County and, second, because she is merely following an order from the Oklahoma Supreme Court. Doc. 227 at 4–7.[1]

Henry's first argument (that no plaintiff has been arrested) is out of place, as the question of whether an actual arrest has occurred has no bearing on her supposed entitlement to absolute immunity. As Plaintiffs explain, Br. L, section I.A.i, pp. 6-8, an official's absolute immunity *vel non* depends on the function served by her conduct, not on its downstream consequences. Regardless, as explained below, Henry's argument is irrelevant even to the merits of Plaintiffs' claims against her, which are based, not on the execution of any warrant, but on her role in requesting warrants and in referring cases to Aberdeen.

Henry's second argument—that she is merely following an order of the Oklahoma Supreme Court—while at least relevant to the immunity analysis, fares no better. Henry's argument for this type of derivative immunity can succeed only if the order at issue is one for which the issuing judge would be immune. *See, e.g.*, *Mays v. Sudderth*, 97 F.3d 107, 114 (5th Cir. 1996) ("As the [quasi-judicial] officer's immunity derives from that of the issuing judge, the order must be one for which the judge is absolutely immune from suit."); *cf. Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993) ("Even had common-law judges performed the functions of a court reporter . . . [i]t would still remain to consider whether judges, when performing that function, were themselves entitled to absolute immunity."). Here, it is clear that the Oklahoma Supreme Court's order fails to satisfy the test for judicial immunity, and so Henry's derivative claim fails with it.

---

[1] Defendant Henry's arguments for absolute immunity are similar to those put forth by Defendants Darlene Bailey (Tulsa County Cost Administrator) and Don Newberry (Tulsa County Court Clerk) in their motion to dismiss, Doc. 237. To avoid duplication, Plaintiffs incorporate their opposition to that motion here. *See* Br. L at Section I.A., pp. 5-14.

The "touchstone" of a judicial act is the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine*, 508 U.S. at 435–36 (quoting *Burns v. Reed*, 500 U.S. 478, 500 (1991) (Scalia, J., concurring in part and dissenting in part)). By contrast, making rules with general application, supervising court employees, and overseeing the efficient operation of a court are not judicial actions; even when done by judges, they are done in a legislative or administrative capacity. *See Forrester v. White*, 484 U.S. 219, 229 (1988); *Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731 (1980).[2] Judges are therefore not entitled to absolute immunity when acting in their administrative capacity. *Forrester*, 484 U.S. at 229.

The order of the Oklahoma Supreme Court at issue here is clearly administrative. That order, Oklahoma Supreme Court Order, S.C.A.D. 2011-08 (Doc. 99-35), "directed" Oklahoma district courts "to participate in the misdemeanor or failure-to-pay warrant collection program authorized by Title 19 Oklahoma Statutes Sections 514.4 and 514.5." *See* Doc. 237 at 2. The title of the order itself betrays its administrative nature: "S.C.A.D." stands for "Supreme Court *Administrative* Docket." The "administrative directives" that issue on this docket address administrative matters, such as the payment schedule for court reporters, *see In re Fee Schedule of Certified Shorthand Reporters*, 2009 OK 84, 271 P.3d 776, and whether to use a private debt collector. Moreover, S.C.A.D. 2011-08 cannot be said to touch on the "performance of the

---

[2] For example, the court in *ODonnell v. Harris Cty., Texas* held that County Judges do not act in their judicial capacity when they "promulgate written Rules of Court or oversee the unwritten customs and practices that could be corrected through the written Rules but are not," because "[t]hese acts and omissions do not arise out of each judge acting to resolve disputes between parties in each court." 227 F. Supp. 3d 706, 757 (S.D. Tex. 2016), *reconsideration denied*, No. CV H-16-1414, 2017 WL 784899 (S.D. Tex. Mar. 1, 2017), *and aff'd in part, rev'd in part*, 882 F.3d 528 (5th Cir. 2018), *opinion withdrawn and superseded on reh'g sub nom. ODonnell v. Harris Cty.*, No. 17-20333, 2018 WL 2465481 (5th Cir. June 1, 2018), *and aff'd in part, rev'd in part sub nom. ODonnell v. Harris Cty.*, No. 17-20333, 2018 WL 2465481 (5th Cir. June 1, 2018).

function of resolving disputes between *parties*, or of authoritatively adjudicating *private rights*" at all. It is directed at district courts across Oklahoma, not at private parties or even with reference to a private party. *See Antoine*, 508 U.S. at 435–36. The order is no more entitled to judicial immunity than it would be if it directed district courts to use Kinkos for copying instead of their own machines. Because the justices themselves would not be entitled to judicial immunity for this administrative decision, Henry cannot claim derivative immunity. *See Mays*, 97 F.3d at 114.

Further, even if S.C.A.D. 2011-08 were a "judicial" order—and it plainly is not— Henry still would not be entitled to derivative immunity. As she notes, immunity law "distinguish[es] between [an] officer's compliance with [a] court [order] and . . . . 'the manner in which that [order] is enforced.'" Doc. 227 at 4 n.4 (quoting *Richman v. Sheahan*, 270 F.3d 430, 436 (7th Cir. 2001)); *see also Martin v. Bd. of Cty. Comm'rs of Cty. of Pueblo*, 909 F.2d 402, 405 (10th Cir. 1990) ("[A]bsolute immunity does not protect defendants from damage claims directed not to the conduct prescribed in the court order itself but to the manner of its execution."). S.C.A.D. 2011-08 directs "district courts" to participate in a debt-collection program, but it does not speak to any individual case or direct court clerks like Henry on how to request warrants and under what circumstances to refer a case to the debt collector. That is the conduct Plaintiffs challenge here, and it goes to the "manner of [the] execution" of S.C.A.D. 2011-08, to which derivative immunity would not extend even if the order were judicial. *See Martin*, 909 F.2d at 405.[3]

---

[3] Henry wisely does not argue that she is entitled to judicial immunity irrespective of S.C.A.D. 2011-08. Regardless, for the reasons explained in Plaintiffs' opposition to Defendant Bailey's motion to dismiss, such an argument would fail anyway. *See* Br. L at Section I.B., pp. 14-17.

### III. Qualified Immunity Does Not Shield Henry for Her Knowing Violation of Clearly Established Law

Henry argues that, even if she is not entitled to absolute immunity, qualified immunity shields her from suit. Doc. 227 at 8. She denies personal involvement in violating Plaintiffs' constitutional rights, denies that the rights they assert are clearly established, and claims to have reasonably relied on state law and an administrative order concerning the collection of court debt. *Id.* at 8–17. Her arguments are unavailing.

At the outset, it is essential to restate the claims Plaintiffs assert against Henry, because she has mischaracterized them. The Supreme Court's decision in *Bearden* prohibits sentencing someone to a term of imprisonment solely for nonpayment of court debt without a finding that the person willfully refused to pay. *See* Doc. 227 at 10. It is therefore also unconstitutional to request a warrant against someone solely for nonpayment because a warrant cannot (lawfully) issue for a nonexistent offense. And indeed, Oklahoma law codifies Plaintiffs' understanding. *See* Okla. Stat. tit. 22, § 983(A).

Against these background principles, Plaintiffs have alleged that Henry violates the Constitution in three ways when she requests warrants for nonpayment. First, she does so without making the requests under oath or affirmation, in violation of the Fourth Amendment's plain text and settled Tenth Circuit law. *See Dow*, 389 F.2d at 883–84. Second, her requests are unconstitutional because she has no evidence, let alone enough to support probable cause, that the debtor has willfully refused to pay. Indeed, Plaintiffs allege that she *knows* they cannot pay due to indigence. SAC ¶¶ 322, 330, 332, 347. Third, Henry's requests are unconstitutional because she recklessly omits information about ability to pay that would eliminate probable cause for willful nonpayment if presented to the judge who issues the warrants. *See, e.g.*, *Stewart*, 915 F.2d at 582–83 ("[I]t was a clearly established violation of plaintiff's Fourth and Fourteenth Amendment rights

to knowingly or recklessly omit from an arrest affidavit information which, if included, would have vitiated probable cause."); SAC ¶¶ 322, 332. Plaintiffs have also alleged that she partakes in unconstitutionally onerous methods of debt collection by referring cases to Aberdeen, assessing a 30% penalty, and helping Aberdeen seek warrants. *See James*, 407 U.S. 128. Plaintiffs have briefed these constitutional violations and injuries at length in their motion for preliminary injunction, Doc. 77 at 5–20. *See also* Plaintiffs' opposition to Defendant Regalado's motion to dismiss, Br. J, Section III, pp. 9-20; Plaintiffs' opposition to County Sheriff Defendants' official capacity motion to dismiss, Br. I, Section I.A., pp. 6-9.

Henry's denial that Plaintiffs have alleged her personal involvement in constitutional violations is thus premised on a serious misunderstanding of Plaintiffs' claims. She argues that these claims are all based on unconstitutional arrests and detention prohibited by *Bearden*, and so must be dismissed because she has not taken part in arresting or detaining any Plaintiff. Doc. 227 at 10–11. However, as just explained, Plaintiffs actually challenge the harm caused by the warrants themselves, which Henry has personally requested, and by the referral of cases to Aberdeen, which she has personally directed. Those harms include the extortionate use to which those warrants are put by Aberdeen and other Defendants as a means of debt-collection.

With respect to the claims they actually advance, Plaintiffs have clearly alleged Henry's personal participation. Plaintiffs have alleged that Henry requested the warrants against Plaintiffs Holmes and Graff; that Henry referred Plaintiff Graff's case to Aberdeen for collection and increased Graff's debt by 30%, and that Henry establishes the policies for setting warrants and referring cases in Rogers County. SAC ¶¶ 37, 134–37, 158, 206, 332. No more is required to adequately allege constitutional violations for which Henry is not immune.

9

Henry nonetheless argues that the Constitution has not been violated because "bench warrants" can be used to seize a person solely for nonpayment of court debt and bring that person to court to determine whether the nonpayment was willful. Doc. 227 at 12 ("The bench warrant does not represent a violation of *Bearden*, but provides a mechanism by which a Court can comply with *Bearden*."). Even if correct, this would have no effect on Plaintiffs' claims that Henry violates the Fourth Amendment's oath or affirmation requirement. But Henry's argument is not correct.[4] The warrants that she attempts to characterize as court summonses are arrest warrants in every sense of the term. When a law enforcement agent serves a debtor with a warrant, the agent does not bring the debtor to court; he brings her to jail, where she must remain, sometimes for days at a time, before seeing a judge. SAC ¶¶ 96–99. This is an arrest. And under both Oklahoma and federal law, nonpayment alone is insufficient to establish probable cause for an arrest (even pursuant to a so-called "bench warrant") because jailing can only ever be predicated on *willful* nonpayment. *See* Okla. Stat. tit. 22, § 983(A); *Bearden*, 461 U.S. at 672.[5]

Henry asserts that *Bearden* did not concern "processes" and therefore should not be read to mean that warrants based on nonpayment are unlawful. *See* Doc. 227 at 11. But it should be obvious that law enforcement cannot arrest a person unless she has committed a punishable "offense." And that is what Henry claims to have a lawful basis to do here. She cites nothing in

---

[4] As Plaintiffs explain in their opposition to the Rogers Sheriff's individual-capacity motion to dismiss, the warrants at issue in this case are not "bench warrants" for purposes of federal constitutional law, notwithstanding Defendants' attempt to label them as such. Br. D, Section II.B., pp. 9-10.

[5] Henry misleadingly suggests that Okla. Stat. tit. 22, § 966(A) authorizes arrest for nonpayment alone. That statute merely states that *when* a warrant issues, a fee should be assessed against the subject. The statute describes a "failure to pay," but that does not mean—and in light of the Supreme Court's decision in *Bearden*, cannot mean—that the failure to pay need not be willful for the defendant to be validly arrested.

support of this novel view, and the Supreme Court has already held to the contrary. *See Heien v. North Carolina*, 135 S. Ct. 530, 539 (2014) (holding that seizing someone for a nonexistent offense violates the Fourth Amendment *unless* the officer made a "reasonable" mistake in believing the offense existed).[6] Henry's proposed contrary rule would be nonsensical, as it would allow the precise evil—detention solely for nonpayment, sometimes for days in Rogers County—that *Bearden* and Oklahoma law prohibit. The proper means for a court to determine whether nonpayment is willful is to issue a summons for a debtor to appear in court.[7]

Henry additionally argues that the constitutional rights Plaintiffs assert are not clearly established and that she reasonably relied on state law and the Oklahoma Supreme Court order discussed above. Doc. 227 at 7–8. These arguments are, in substance, the same as those put forth by Defendant Darlene Bailey (Tulsa County Cost Administrator) in her motion to dismiss. Doc. 237. In accordance with the Court's instruction to avoid duplicative arguments, Plaintiffs incorporate their opposition to that motion here. *See* Br. L, Section II, pp. 17-19.

Finally, Henry asserts that there is "no case law making it unconstitutional for a Clerk to have some role in 'assisting' the district court to determine whether a bench warrant should issue."

---

[6] Defendant Henry has not argued that she made a reasonable mistake, nor could she, in light of *Bearden.*

[7] Several Defendants make the related suggestion that inability to pay due to indigence is an affirmative defense to be raised at a hearing. *See, e.g.*, Doc. 226 at 5–6. This claim turns *Bearden* on its head. That case held that *before* incarcerating a defaulting debtor "a sentencing court *must* inquire into the reasons for the failure to pay" and that *only* upon a finding of willful refusal may the court "sentence the defendant to imprisonment." *Bearden*, 461 U.S. at 672 (emphasis added). Thus, a pre-imprisonment inquiry and a finding of willfulness are mandatory, making them necessary elements of the violation. This is only logical. The crux of Plaintiffs' complaint is that they are arrested and incarcerated for nonpayment *before* having an opportunity to be heard. Were ability to pay an affirmative defense to be raised at a hearing, they could raise it in court only *after* the harm of unwarranted *pre-hearing* detention had already occurred. Such a result would be nothing short of Kafkaesque.

Doc. 227 at 13.  But of course, that is not what Plaintiffs claim.  Plaintiffs allege that Henry assesses whether a failure-to-pay warrant is needed and then requests unconstitutional warrants, not that she merely "assists" judges.  *See* SAC ¶¶ 133–38.

## CONCLUSION

For the reasons set forth above, Plaintiffs ask the Court to deny Henry's motion to dismiss the claims they bring against her in her personal capacity.

Dated: November 30, 2018

Respectfully submitted,

*/s/Jill E. Webb*
Jill Webb, OBA #21402
J Webb Law Firm PLLC
P.O. Box 1234
Tulsa, OK 74101
Tel: 918-346-5664
jill.webb@gmail.com

*/s/ Daniel E. Smolen*
Daniel Smolen, OBA #19943
Donald E. Smolen, II, OBA #19944
Robert M. Blakemore, OBA #18656
Smolen, Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

*/s/ Katherine Hubbard*
Katherine Hubbard (admitted *Pro Hac Vice*)
California Bar No. 302729
Ryan Downer (admitted *Pro Hac Vice*)
D.C. Bar No. 1013470
Marco Lopez* (admitted *Pro Hac Vice*)
California Bar No. 316245
Tara Mikkilineni (admitted *Pro Hac Vice*)
D.C. Bar No. 997284
Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
Tel: 202-599-0953
Fax: 202-609-8030

12

katherine@civilrightscorps.org
ryan@civilrightscorps.org
marco@civilrightscorps.org
tara@civilrightscorps.org

*Admitted solely to practice law in California; not admitted in the District of Columbia. Practice is limited pursuant to D.C. App. R. 49(c)(3).

/s/ *Seth Wayne*
Douglas N. Letter (admitted *Pro Hac Vice*)
D.C. Bar No. 253492
Robert Friedman (admitted *Pro Hac Vice*)
D.C. Bar No. 1046738
Seth Wayne (admitted *Pro Hac Vice*)
D.C. Bar No. 888273445
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
dl1016@georgetown.edu
rdf34@georgetown.edu
sw1098@georgetown.edu

*Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

   I hereby certify that on the 30th day of November, 2018, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

*/s/ Seth Wayne*