UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CARLY GRAFF, et. al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| v. | ) | |
| | ) | **Case No. 4:17-CV-606-TCK-JFJ** |
| ABERDEEN ENTERPRIZES II, INC., et al., | ) | |
| | ) | |
| | ) | |
| **Defendants.** | | |

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT VIC
REGALADO, SHERIFF OF TULSA COUNTY, IN HIS INDIVIDUAL CAPACITY

BRIEF J

Jill Webb, OBA #21402
J Webb Law Firm PLLC
P.O. Box 1234
Tulsa, OK 74101
Tel: 918-346-5664
jill.webb@gmail.com

Daniel Smolen, OBA #19943
Donald E. Smolen, II, OBA #19944
Robert M. Blakemore, OBA #18656
Smolen, Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

Katherine Hubbard (admitted *Pro Hac Vice*)
California Bar No. 302729
Ryan Downer (admitted *Pro Hac Vice*)
D.C. Bar No. 1013470
Marco Lopez* (admitted *Pro Hac Vice*)
California Bar No. 316245
Tara Mikkilineni (admitted *Pro Hac Vice*)
D.C. Bar No. 997284
Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
Tel: 202-599-0953

Fax: 202-609-8030
katherine@civilrightscorps.org
ryan@civilrightscorps.org
marco@civilrightscorps.org
tara@civilrightscorps.org

*Admitted solely to practice law in California;
not admitted in the District of Columbia. Practice
is limited pursuant to D.C. App. R. 49(c)(3).

Douglas N. Letter (admitted *Pro Hac Vice*)
D.C. Bar No. 253492
Robert Friedman (admitted *Pro Hac Vice*)
D.C. Bar No. 1046738
Seth Wayne (admitted *Pro Hac Vice*)
D.C. Bar No. 888273445
Institute for Constitutional Advocacy and
Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
dl1016@georgetown.edu
rdf34@georgetown.edu
sw1098@georgetown.edu

*Attorneys for the Plaintiffs*

## <u>Index of Plaintiffs' Opposition Briefs</u>

For ease of reference, each of Plaintiffs' opposition briefs has been labeled by letter according to the motion to dismiss to which it is responsive, listed below.

Brief A: 51 County Sheriff Defendants, Individual Capacity (Doc. 239)

Brief B: Rogers County Defendants, Official Capacity (Doc. 226)

Brief C: Kim Henry, Former Court Clerk of Rogers County, Individual Capacity (Doc. 227)

Brief D: Scott Walton, Sheriff of Rogers County, Individual Capacity (Doc. 228)

Brief E: Aberdeen Enterprizes II, Inc. (Doc. 230)

Brief F: Jim and Rob Shofner (Doc. 231)

Brief G: Oklahoma Sheriffs' Association (Doc. 232)

Brief H: Defendant Judges (Doc. 233)

Brief I: 51 County Sheriff Defendants, Official Capacity (Doc. 234)

Brief J: Vic Regalado, Sheriff of Tulsa County, Individual Capacity (Doc. 235)

Brief K: Don Newberry, Court Clerk of Tulsa County, Individual Capacity (Doc. 236)

Brief L: Darlene Bailey, Cost Administrator of Tulsa County, Individual Capacity (Doc. 237)

Brief M: Tulsa County Defendants, Official Capacity (Doc. 238)

Brief J

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

STATEMENT OF THE CASE ..............................................................................................2

LAW AND ARGUMENT ......................................................................................................5

    I.        Regalado Personally Participated in the Unconstitutional Conduct Challenged in the Second Amended Complaint ..........................................................................................5

    II.       Plaintiffs Have Standing to Sue Regalado ...................................................................7

            A. Plaintiffs Have Standing Because They Seek Damages ...........................................7

            B. Plaintiffs Have Standing to Enjoin Regalado....................................................7

    III.      Plaintiffs Allege Clearly Established Constitutional Violations.................................9

            A.  Defendant Violates Plaintiffs' Fourteenth Amendment Right Against Arrests and Incarceration Based on Inability to Pay (Counts Two and Four) .........................10

                  1.   Defendant Violates Plaintiffs' Fourteenth Amendment Right Against Arrest and Incarceration Based on Inability to Pay ...............................11

                  2.   Regalado's Confinement and Release Practices Violate Practices Violate Due Process and Equal Protection (Court Four)....................................12

            B.  Defendant Regalado's Practice of Jailing Debtors Without a Hearing or Finding of Willfulness Violates Procedural Due Process (Count Five)............................14

            C.  Regalado's Reliance on Aberdeen's Use of Extreme Threats Violates the Equal Protection Clause (Count Seven)...............................................................16

            D.  Defendant's Practice of Making Arrests for Nonpayment Violates the Fourth Amendment...............................................................................................17

    IV.     Qualified Immunity Does Not Shield Regalado .........................................................20

    V.      Regalado Is Not Entitled to Absolute Immunity........................................................21

    VI.    Plaintiffs Allege Violations of the RICO Act ...........................................................22

CONCLUSION ....................................................................................................................22

Brief J

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Addington v. Texas*, 441 U.S. 418 (1979) ................................................................. 15

*Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331 (1948) ................................. 17

*Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003) .......................................................... 10

*Bearden v. Georgia*, 461 U.S. 660 (1983) ......................................................... 10, 13

*Brown v. Burman*, 822 F.3d 1151 (10th Cir. 2016) ..................................................... 7

*Cain v. City of New Orleans*, No. CV 15-4479, 2016 WL 2962912 (E.D. La. May 23, 2016).... 13

*Citizen Ctr. v. Gessler*, 770 F.3d 900 (10th Cir. 2014) ................................................ 9

*Connecticut v. Doehr*, 501 U.S. 1 (1991) ......................................................... 11, 16

*Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010) ............................................ 5, 6

*Doe v. Angelina Cty.*, 733 F. Supp. 245 (E.D. Tex. 1990) ......................................... 10

*Dow v. Baird*, 389 F.2d 882 (10th Cir. 1968) ......................................................... 18

*Durkee v. Minor*, 841 F.3d 872 (10th Cir. 2016) ....................................................... 5

*Ex Parte Young*, 209 U.S. 123 (1908) ....................................................................... 8

*Fant v. City of Ferguson*, No. 4:15-CV-00253-AGF, 2016 WL 6696065 (E.D. Mo. Nov. 15, 2016)................................................................................................................. 13

*Foucha v. Louisiana*, 504 U.S. 71 (1992) ............................................................... 14

*Franks v. Delaware*, 438 U.S. 154 (1978) .............................................................. 19

*Fuentes v. Shevin*, 407 U.S. 67 (1975) .............................................................. 11, 16

*Hall v. Furlong*, 77 F.3d 361 (10th Cir. 1996) ........................................................ 10

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................ 20

*James v. Strange*, 407 U.S. 128 (1972) ............................................................. 16, 17

*Jones v. City of Clanton*, No. 2:15cv34-MHT, 2015 WL 5387219 (M.D. Ala. Sept. 14, 2015).. 13

*Landry v. Hoepfner*, 840 F.2d 1201 (5th Cir. 1988) ................................................ 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................. 7

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ........................................................ 14, 15

*McGrain v. Daugherty*, 273 U.S. 135 (1927) .......................................................... 18

*Milner v. Duncklee*, 460 F. Supp. 2d 360 (D. Conn. 2006) ...................................... 19

*Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978)................................................... 10

*Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F. Supp. 3d 758 (M.D. Tenn. 2015) ................ 13

*State v. Davidson*, 260 Neb. 417 (2000) ................................................................. 19

*Tate v. Short*, 401 U.S. 395 (1971) ....................................................................... 13

*Thomas v. Kaven*, 765 F.3d 1183 (10th Cir. 2014)................................................... 20

*Thompson v. Moss Point*, No. 1:15cv00182LG-RHW, 2015 WL 10322003 (S.D. Miss. Nov. 16, 2015)................................................................................................................. 13

*Trant v. Oklahoma*, 754 F.3d 1158 (10th Cir. 2014) ................................................. 7

*Turner v. Rogers*, 564 U.S. 431 (2011) ............................................................. 11, 16

*United States v. Grose*, 687 F.2d 1298 (10th Cir. 1982) ..................................... 10, 13

*United States v. Payan*, 992 F.2d 1387 (5th Cir. 1993) ............................................ 10

*United States v. Schell*, 692 F.2d 672 (10th Cir. 1982) ............................................ 15

Brief J

*United States v. Ventresca*, 380 U.S. 102 (1965) ........................................................... 18

*Valdez v. City and County of Denver*, 878 F.2d 1285 (10th Cir. 1989) ...................... 21

*Wilkinson v. Austin*, 545 U.S. 209 (2005) ................................................................... 14

*Williams v. Illinois*, 399 U.S. 235 (1970) .............................................................. 10, 13

*Wilson v. Montano*, 715 F.3d 847 (10th Cir. 2013) ...................................................... 5

*Youngberg v. Romeo*, 457 U.S. 307 (1982) ................................................................ 14

Statutes

18 U.S.C. § 1962 ........................................................................................................ 2, 22

18 U.S.C. §§ 1961–68 ................................................................................................... 22

42 U.S.C. § 1983 .................................................................................................. 5, 6, 14

Okla. Ct. R. Crim. App. 8.4 .................................................................................. 14, 15

Okla. Stat. tit. 22, § 983 ........................................................................................ 14, 15

Other Authorities

William Blackstone, 4 *Commentaries on the Laws of England* ................................... 19

Brief J

## INTRODUCTION

The Court should deny the motion of Defendant Vic Regalado, Sheriff of Tulsa County ("Regalado"), in his individual capacity.  Indigent court debtors in Tulsa County, including named Plaintiffs and members of the putative class, have for years been subjected to arrest and imprisonment at the hands of Regalado, and threats and harassment from Defendant Aberdeen Enterprizes II, Inc. ("Aberdeen") as a result of his decision to contract with that company.  Multiple named Plaintiffs and many class members face ongoing injury and threat of imminent arrest by Regalado as a result of their currently active unlawful warrants.  Regalado's defenses lack merit and fail to excuse his conduct.

Contrary to Regalado's mischaracterization of it, the Second Amended Complaint alleges that he personally participates in the unlawful conduct that Plaintiffs challenge.  He is responsible for the use of Aberdeen in Tulsa County and is responsible for the harms stemming from Aberdeen's illegal debt-collection activities in his jurisdiction.  He is also responsible for the execution of unlawful arrest warrants and for the detention of Plaintiff Melanie Holmes for six days based on an unlawful warrant.  Plaintiffs have standing against Regalado because relief on their damages claims would redress their past injuries, and because an injunction against him would redress their imminent injuries.

Regalado is not immune from suit on Plaintiffs' claims.  Absolute quasi-judicial immunity does not apply to injunctive relief as a general matter, and Defendant cannot claim quasi-judicial immunity for warrants that he is responsible for procuring, or for warrants that he is responsible for executing with the knowledge that they were unlawfully issued.  *See* Br. D, Section II (Plaintiffs' opposition to the motion to dismiss filed by Scott Walton, Sheriff of Rogers County).

Brief J

Qualified immunity likewise has no effect on injunctive relief and does not shield Regalado here, because Plaintiffs allege clearly established violations of constitutional law.

Plaintiffs also allege that Regalado participated in the extensive RICO enterprise that has led to the extortion of money from Plaintiffs and members of the putative class. The various defenses he raises against civil RICO liability fail for the same reasons set forth in Plaintiffs' oppositions to the respective motions to dismiss filed by the 51 Sheriff Defendants in their individual capacities, the Rogers County Sheriff, and Jim and Robert Shofner (the Shofners). *See* Br. A; Br. D; Br. F.

## STATEMENT OF THE CASE

Plaintiffs' claims against Regalado are: Count One, for participating in the RICO enterprise under 18 U.S.C. § 1962 (c) and (d); Count Two, for executing arrest warrants for nonpayment without inquiry into ability to pay, in violation of the Fourteenth Amendment; Count Three, for executing arrest warrants based on unsworn allegations of nonpayment with material omissions in violation of the Fourth Amendment; Count Four, for detaining persons arrested on debt-collection arrest warrants because of their inability to pay, in violation of the Fourteenth Amendment; Count Five, for depriving Plaintiffs of state-created liberty interests by executing unlawful arrest warrants and detaining them unlawfully; and Count Seven, for employing onerous enforcement methods in violation of the Fourteenth Amendment. These claims are well pled in the Second Amended Complaint.

Regalado is one of the dozens of county sheriffs who participate in a wide-ranging enterprise with the "unflagging aim . . . to squeeze as much money out of impoverished court debtors as possible." Doc. 212 (Second Amended Complaint) ("SAC") ¶ 2. Regalado "routinely arrest[s] and jail[s] individuals pursuant to . . . debt-collection arrest warrants that are based solely

Brief J

on nonpayment." *Id.* ¶ 10. Regalado, like the other Sheriff Defendants, has "contractually delegated to Aberdeen, Inc. the responsibility to collect court debts." *Id.* ¶ 51.[1] He is a member of the Oklahoma Sheriffs' Association ("OSA"), which administers the contract and profits from it. *Id.* ¶¶ 105–06.

Arrest warrants in Tulsa County have been sought by the Tulsa Clerk and Cost Administrator, both by their own request and at the request of Defendant Aberdeen. These warrants are issued by Defendant Judge Moody without any inquiry into ability to pay. The process by which this occurs is set forth in Plaintiffs' opposition to the Tulsa Cost Administrator's Motion to Dismiss, Br. L at 3-5. Regalado arrests debtors with active debt-collection arrest warrants, and Tulsa County debtors arrested by any law enforcement agency are taken to the county jail operated by Regalado. SAC ¶ 128. He holds these debtors in jail unless they are able to pay a preset $250 payment. *Id.* The payment does not function as a "bond"; if paid, it is applied to the debt and never returned. *Id.* If a debtor cannot pay, she is held in jail until Regalado brings her to see a judge at the next "cost docket" date, usually the following Tuesday or Friday. *Id.* ¶ 129. Regalado arrests and detains debtors without providing, and knowing that other actors do not provide, "any of the inquiries, findings, or procedural safeguards required by Supreme Court precedent [and state law] prior to jailing a person for nonpayment." *Id.* ¶ 10.

Plaintiffs Randy Frazier and Melanie Holmes both have debt-collection arrest warrants arising out of Tulsa County. Ms. Holmes was arrested in December 2016 and detained by Regalado in the Tulsa County Jail. *Id.* ¶ 25. Plaintiffs Choate and Smith both make payments to Aberdeen on debt-collection cases in Tulsa County. *Id.* ¶¶ 20, 23.

---

[1] After the filing of this lawsuit, Tulsa County stopped using Aberdeen's services. SAC ¶ 124.

Brief J

Mr. Frazier is 59 years old, and a resident of Tulsa County with serious medical issues. *Id.* ¶ 19. He was unable to pay the court debt arising out of multiple cases, and the Tulsa Clerk and Cost Administrator sought, and a Tulsa County Special Judge issued, arrest warrants for nonpayment without any inquiry into ability to pay. *Id.* ¶¶ 19, 164. Mr. Frazier is indigent and would be unable to pay the required money to get out of jail were he to be arrested. *Id.* ¶ 19. He and his family members are regularly threatened and harassed by Aberdeen as a result of Regalado's decision to contract with the company. *Id.* ¶¶ 19, 165–68.

Ms. Holmes is 41 years old and lives in Oregon. SAC ¶¶ 200, 212. She has an active debt-collection arrest warrant in Tulsa County. *Id.* ¶ 207. When her Tulsa County debt-collection arrest warrant was issued, she was indigent, and no inquiry was conducted into her ability to pay. *Id.* ¶ 206. She has children and other family who still live in Oklahoma, and she is afraid to visit them because of fear she will be arrested on her warrants. *Id.* ¶ 213.

Mr. Smith is 32 years old and lives in Tulsa County. SAC ¶ 20. Two cases in which Mr. Smith owes court debt were transferred to Aberdeen, and he began receiving threats that he would be arrested if he did not pay. *Id.* ¶¶ 171–72. Mr. Smith has been paying Aberdeen instead of purchasing basic necessities, and he has experienced stress and anxiety due to fear that he will be jailed by Regalado if he is unable to pay. *Id.* ¶ 174.

Mr. Choate is 40 years old and lives in Tulsa County. SAC ¶ 23. Mr. Choate's only form of steady income is federal disability payments, which he uses to support his family. SAC ¶¶ 187–88. He owes court debt from a 2007 criminal conviction, and had his case transferred to Aberdeen when he fell behind on payments. *Id.* ¶¶ 189–90. Because of threats from Aberdeen, Mr. Choate has made payments, often having to decide between taking care of his family and paying the

Brief J

company.  He is afraid that if he does not pay, he will be arrested and jailed by Regalado.  *Id.* ¶ 193.

## LAW AND ARGUMENT

I.     **Regalado Personally Participated in the Unconstitutional Conduct Challenged in the Second Amended Complaint**

Regalado asserts that Plaintiffs have not alleged his personal participation in the unconstitutional conduct that injured them.  Doc. 235 at 7–8.  This argument misunderstands the element of causation and disregards the allegations in the Second Amended Complaint, which establish that Defendant played an active role in inflicting Plaintiffs' injuries.  Section 1983 imposes liability on a state actor who "subjects[] or causes [an individual] to be subjected" to a deprivation of her constitutional rights.  42 U.S.C. § 1983.  Put differently, there must be a "direct causal link" between the defendant's conduct and the plaintiff's injury.  *Dodds v. Richardson*, 614 F.3d 1185, 1202 (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).  Although "vicarious liability is inapplicable to . . . § 1983 suits," *id.* at 1198 (quotation marks omitted), liability under § 1983 does not require "direct participation" in the infliction of the injury and "is not limited solely to situations where a defendant violates a plaintiff's rights by [for example] physically placing hands on him," *id.* at 1195 (quotation marks omitted).  Liability also extends to the "defendant-supervisor who creates, promulgates, implements, or *in some other way possesses responsibility for the continued operation of a policy*" that, when enforced "by the defendant-supervisor *or her subordinates*," injures the plaintiff.  *Id.* at 1199 (emphases added).  Indeed, it is enough if the supervisor is deliberately indifferent to the maintenance of a practice that is carried out by subordinates and that causes the plaintiff's injury.  *Durkee v. Minor*, 841 F.3d 872, 877 (10th Cir. 2016); *Wilson v. Montano*, 715 F.3d 847, 858 (10th Cir. 2013) (finding sheriff liable

5

where he was "deliberately indifferent to the ongoing constitutional violations which occurred under his supervision").

Plaintiffs have alleged, among other things, that Regalado authorized Tulsa's use of Aberdeen and is responsible for the resulting misconduct, *see, e.g.*, SAC ¶¶ 29, 31; that he maintains a policy that led to Ms. Holmes' arrest, *id.* ¶¶ 31, 208; and that he unconstitutionally detained Ms. Holmes for six days after her arrest, *id.* ¶ 209.  The "order" that Regalado "followed" in detaining Ms. Holmes on demand of a $500 payment was not signed by a judicial officer.  *Id.* ¶ 209.  These allegations clearly establish personal participation.

Regalado also argues that he cannot be held responsible under § 1983 for the injuries resulting from Tulsa County's use of Aberdeen solely because he was in office when the OSA renewed its contract with the company.  Doc. 235 at 7.  This argument mischaracterizes Plaintiffs' allegations.  Plaintiffs allege that Regalado had knowledge of Aberdeen's misconduct and nonetheless authorized the OSA to renew the contract with the company.  SAC ¶¶ 29, 31.  They further allege that he had the power to curtail Tulsa County's use of Aberdeen but did not do so until months into this litigation, after the filing of the First Amended Complaint.  *Id.* ¶ 9 n.5.  Thus, Plaintiffs' claims against Regalado are based on far more than the mere fact that he held office, and they do not seek what he calls "[l]iability without fault."  Doc. 235 at 7.

Finally, contrary to Regalado's motion, *see id.*, his liability for Aberdeen's misconduct does not require that he personally be party to the contract with the company.  Again, the relevant test requires only that he "possesses responsibility for the continued operation of a policy."  *Dodds*, 614 F.3d at 1199.  Plaintiffs have met this standard by alleging that Regalado authorized the OSA to renew its contract with Aberdeen despite knowing of the latter's ongoing misconduct.  OSA served as Regalado's agent in signing the contract.  *See* Doc. 212, Ex. A, at 1.

Brief J

## II. Plaintiffs Have Standing to Sue Regalado

Regalado acknowledges that he arrested and incarcerated Ms. Holmes on a debt-collection arrest warrant but denies that he is able to redress her injuries, as he claims that he cannot refuse to execute a facially valid warrant. Doc. 235 at 25. As with other arguments in Regalado's and his co-defendants' briefs, this one seeks to shift responsibility entirely to the state courts for the unconstitutional debt-collection scheme in which they have extensively participated. Defendants thereby seek to undermine Plaintiffs' ability to prove the third element of standing—that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quotation marks omitted). But the "redressability" requirement is easily met here, both as to damages and as to injunctive relief.

### A. Plaintiffs Have Standing Because They Seek Damages

The past harm Plaintiffs have already suffered as a result of the unconstitutional scheme in which Regalado participated may be redressed by financial compensation. A claim for damages satisfies the redressability prong even in the presence of barriers to injunctive relief such as voluntary cessation of conduct. *See, e.g.*, *Brown v. Burman*, 822 F.3d 1151, 1169 (10th Cir. 2016); *Trant v. Oklahoma*, 754 F.3d 1158, 1173–74 (10th Cir. 2014) (damages claim would establish standing where other forms of relief did not meet redressability prong).

### B. Plaintiffs Have Standing to Enjoin Regalado

As Plaintiffs have adequately pled that Regalado has duties and discretion concerning the unconstitutional debt-collection process, their claims are also redressable through injunctive relief. *See* Plaintiffs' Opposition to the 51 County Sheriffs Official Capacity Motion to Dismiss, Br. I, Section II.B. Five of the eight Named Plaintiffs have clearly stated that they are indigent and have outstanding court debt in Tulsa County. *See, e.g.*, SAC ¶¶ 19–21, 23, 25. They are therefore

likely, absent an injunction, to face ongoing unconstitutional debt collection, imposition of arrest warrants, onerous debt collection, and incarceration for nonpayment.  And contrary to Regalado's argument, he may be enjoined from following unconstitutional court orders.  *See* Br. L, Section IV.

Regalado's redressability argument, Doc. 235 at 25, is just a reformulation of his immunity argument, which is mistaken for the reasons set forth in Section V, *infra*.  He does not deny that an injunction prohibiting him from enforcing unconstitutional warrants would in fact redress Plaintiffs' injuries; he merely asserts that he is required to follow judicial orders under state law. But this does not negate Plaintiffs' standing, as under *Ex Parte Young*, 209 U.S. 123 (1908), he may be enjoined from enforcing unconstitutional orders.  *See* Plaintiffs' Consolidated Reply in Support of Their Motion For a Preliminary Injunction, Doc. 153 at 2-3.  And immunity does not apply to injunctive relief.  *See* Br. D, Section II.A at 4-6.

First, the prayer for relief specifically requests, among other things, an order prohibiting Regalado from "*enforcing* debt-collection arrest warrants based on nonpayment without making inquiry into the warrant subject's ability to pay and consideration of alternatives."  SAC at 99 (emphasis added).  The Complaint pleads that Regalado arrests individuals on invalid warrants and detains them unless they make payments, *id.* ¶ 31, as Regalado admits is plead with regard to Ms. Holmes, Doc. 235 at 25.

Second, Plaintiffs seek an order enjoining the use of "a debt collection company"—namely, Aberdeen—"that exercises control over debtors' liberty and also has a direct financial interest to infringe on that liberty."  SAC at 99.  The contract states that cases are transferred to Aberdeen at the Sheriff or Court Clerk's "sole discretion," Doc. 212, Ex. A at 3, and Regalado is responsible for the use of Aberdeen in his jurisdiction, SAC ¶ 30.

Brief J

An order enjoining Regalado from these activities would plainly redress Plaintiffs' claims, regardless of whether the state courts have final say over the issuance of warrants. *See Citizen Ctr. v. Gessler*, 770 F.3d 900, 914-15 (10th Cir. 2014) (even though clerks required approval from Secretary of State to proceed with program that would remedy constitutional claim, claims were redressable by both clerks and the Secretary of State). Plaintiffs have established Article III standing with regard to Regalado.

### III.     Plaintiffs Allege Clearly Established Constitutional Violations

Persistent throughout Regalado's Motion to Dismiss is the suggestion that Plaintiffs' constitutional claims lack merit. *See* Doc. 235 at 5–6; *id*. at 15 ("[T]here is no clearly established constitutional violation alleged by Plaintiffs."). As Plaintiffs briefed extensively in their Motion for a Preliminary Injunction, the arrest warrants issued in Tulsa County and elsewhere in Oklahoma—and the ensuing arrests and jailing for nonpayment—violate Plaintiffs' rights under the Fourteenth and Fourth Amendments. *See* Doc. 77 (Plaintiffs' Motion for a Preliminary Injunction) at 5–16.

Counts Two and Four allege violations of Plaintiffs' substantive rights under the Equal Protection and Due Process Clauses based on Supreme Court precedent that court debtors cannot be imprisoned for nonpayment merely because they cannot pay the debt owed and are entitled to a pre-detention inquiry into their ability to pay—a right Defendants perpetually abrogate. Count Five further alleges that, in violation of procedural protections provided by the Due Process Clause, Plaintiffs are consistently denied liberty interests created by state law. Count Seven alleges that Aberdeen's onerous debt-collection methods—for which Regalado is liable—violate principles of equal protection established by the Supreme Court. And Count Three alleges that

Brief J

Defendants violate the Fourth Amendment through procurement and execution of warrants lacking probable cause.

A. Defendant Violates Plaintiffs' Fourteenth Amendment Right Against Arrests and Incarceration Based on Inability to Pay (Counts Two and Four)

Equal protection and substantive due process principles prohibit arresting and jailing a person solely because she cannot afford to pay an amount of money.  *See* Plaintiffs' Motion for a Preliminary Injunction, Doc. 77 at 5–11 (citing cases including *Williams v. Illinois*, 399 U.S. 235, 240–41 (1970) (holding that imprisonment resulting "directly from an involuntary nonpayment of a fine or court costs" is "an impermissible discrimination that rests on ability to pay"); *Bearden v. Georgia*, 461 U.S. 660, 667–68 (1983) (holding that, "if the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it")).[2]  To deprive someone of her core bodily liberty based on her inability to pay is "contrary to the fundamental fairness required by the Fourteenth Amendment."  *Bearden*, 461 U.S. at 672–73; *United States v. Grose*, 687 F.2d 1298, 1301 (10th Cir. 1982) (en banc) (holding that it is unconstitutional to jail a person for inability to pay a fine).[3]

---

[2] *See also, e.g.*, *Hall v. Furlong*, 77 F.3d 361, 364 (10th Cir. 1996) ("[T]he Equal Protection Clause mandates the grant of full credit toward the maximum term of Mr. Hall's sentence for the time he spent incarcerated prior to sentencing due to his indigency."); *Landry v. Hoepfner*, 840 F.2d 1201, 1216 n.30 (5th Cir. 1988) ("Nor generally can nonpayment result in *any* imprisonment where it is *bona fide* merely the result of financial inability." (citing *Bearden*)); *United States v. Payan*, 992 F.2d 1387, 1396 (5th Cir. 1993) ("Nothing in the language of the *Bearden* opinion prevents its application to any given enforcement mechanism."); *Pugh v. Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978) (en banc) ("At the outset we accept the principle that imprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible.").

[3] *See also Alkire v. Irving*, 330 F.3d 802, 818–19 (6th Cir. 2003) (holding that it is unconstitutional to issue a bench warrant and imprison a person for nonpayment without an inquiry and findings as to whether the nonpayment was willful); *Doe v. Angelina Cty.*, 733 F. Supp. 245, 254 (E.D. Tex. 1990) (holding that, because an "important liberty interest is implicated when the state determines to incarcerate a person for failure to pay a fine," and because of "the likelihood of unconstitutional

Brief J

As a result, a debtor can only be jailed for nonpayment found to be willful.  *Bearden*, 461 U.S. at 672.

Significantly here, in order to protect that substantive right, the Supreme Court has established minimum procedural safeguards that must be met before the government may arrest or jail a person for nonpayment.  In *Turner v. Rogers*, 564 U.S. 431 (2011), the Court held those safeguards to include:

> (1) notice to the defendant that his "ability to pay" is a critical issue in the . . . proceeding; (2) the use of a form (or the equivalent) to elicit relevant financial information; (3) an opportunity at the hearing for the defendant to respond to statements and questions about his financial status, (e.g., those triggered by his responses on the form); and (4) an express finding by the court that the defendant has the ability to pay.

*Id.* at 447–48.

In that case, Turner's confinement for failure to pay child support was unconstitutional because the court did not provide the notice, opportunity to be heard, inquiry into ability to pay, or "express finding[s]" essential to "fundamental fairness."  *Id.* at 448.  *Turner*'s holding reaffirms a longstanding legal principle that the Supreme Court has repeatedly upheld: absent "extraordinary situations," *Fuentes v. Shevin*, 407 U.S. 67, 90 (1975) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)), a person must be given a meaningful opportunity to be heard *prior* to a deprivation of liberty or property, *see id.* at 90–92; *see also Connecticut v. Doehr*, 501 U.S. 1, 15 (1991) (holding that due process is offended when a delayed hearing "would not cure the temporary deprivation that an earlier hearing might have prevented").

    1.   Defendant Violates Plaintiffs' Fourteenth Amendment Right Against Arrest and Incarceration Based on Inability to Pay (Count Two)

---

conduct in the absence of process," the Constitution "clearly requires the institution of some form of pre-incarceration legal process for determining the reasons for a party's failure to pay a fine").

Brief J

Regalado and his co-defendants violate these fundamental principles every day as a matter of policy and practice. When a debtor does not make payments, Aberdeen or the Defendant Court Clerks and Cost Administrator seek arrest warrants based solely on nonpayment without any inquiry into ability to pay, and Regalado executes those warrants. He arrests and incarcerates impoverished court debtors for nonpayment despite full knowledge that protections mandated by the Supreme Court have not been provided—an opportunity to be heard, consideration of ability to pay and alternatives to incarceration, and findings concerning willfulness.[4]

Regalado cannot evade responsibility for these constitutional violations by shifting blame to the courts or claiming that he has no duty to consider a debtor's ability to pay before enforcing an arrest warrant for nonpayment. As Plaintiffs explain thoroughly elsewhere, because Defendant is responsible for procuring these warrants and for enforcing them while aware that there has been no ability-to-pay inquiry, he has committed a violation even if he bore no duty to inquire himself. *See* Plaintiffs Opposition to the Rogers County Sheriff's Individual Capacity Motion to Dismiss, Br. D, Section II.

## 2. Regalado's Confinement and Release Practices Violate Due Process and Equal Protection (Count Four)

Separate and apart from Regalado unconstitutionally executing defective arrest warrants, the Complaint also alleges that Regalado's post-arrest detention practices are unconstitutional. Specifically—and as argued at length in Plaintiffs' Motion for Preliminary Injunction—Plaintiffs claim that debtors in Tulsa (and Rogers) County are detained for days at a time unless they can pay a certain amount of the debt they owe. *See* SAC ¶¶ 128–29; Doc. 77 at 16–20. These arbitrary

---

[4] As stated above, Tulsa County no longer refers cases to Aberdeen. However, up to and after the filing of the First Amended Complaint, Regalado arrested and jailed debtors pursuant to requests from Aberdeen.

Brief J

monetary amounts do not constitute bond or bail designed to ensure the debtor's appearance in court at a later date.  Instead, they function as ransom demands.

Requiring a predetermined payment for release from jail, without an inquiry into ability to pay or consideration of non-financial alternatives, violates both due process and equal protection. *See Williams*, 399 U.S. at 240–41; *Tate v. Short*, 401 U.S. 395, 398 (1971); *Bearden*, 461 U.S. at 665, 667–68; *Grose*, 687 F.2d at 1301.  These principles have been applied by various courts in situations nearly identical to those presented in this case.  *See, e.g.*, *Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F. Supp. 3d 758, 768–69 (M.D. Tenn. 2015) (finding that the government cannot subject probationers to predetermined money bonds to secure release pending formal revocation hearings without individualized consideration of ability to pay and alternatives); *Fant v. City of Ferguson*, No. 4:15-CV-00253-AGF, 2016 WL 6696065, at *6 (E.D. Mo. Nov. 15, 2016) (holding that plaintiffs stated constitutional claim by pleading that they were arrested and imprisoned on pre-set secured money bonds pursuant to warrants issued solely for their failure to pay court costs, without any inquiry into the reasons for nonpayment); *Cain v. City of New Orleans*, No. CV 15-4479, 2016 WL 2962912, at *6 (E.D. La. May 23, 2016) (same); *Jones v. City of Clanton*, No. 2:15cv34-MHT, 2015 WL 5387219, at *2 (M.D. Ala. Sept. 14, 2015) (declaring that the "use of a secured bail schedule to detain a person after arrest, without an individualized hearing regarding the person's indigence and the need for bail or alternatives to bail, violates the Due Process Clause of the Fourteenth Amendment"); *Thompson v. Moss Point*, No. 1:15cv00182LG-RHW, 2015 WL 10322003, at *1 (S.D. Miss. Nov. 16, 2015) (same).

Defendant Regalado's Motion to Dismiss makes no attempt to defend his unconstitutional detention practices, other than by claiming that a judge ordered them.  But as with execution of warrants he knows to be legally defective, he cannot disclaim responsibility for his role in a process

13

Brief J

that he knows to be unlawful.  *See* Br. D, Section II.  As a salient example, the order that ostensibly justified his detention of Ms. Holmes was not signed by a judge.  SAC ¶ 209.   Because he jails and detains people for days based on their failure to pay a predetermined cash payment—where there has been no inquiry into their ability to pay or consideration of alternatives—Regalado is liable under § 1983.

B. Defendant Regalado's Practice of Jailing Debtors Without a Hearing or Finding of Willfulness Violates Procedural Due Process (Count Five)

Oklahoma law provides every person owing court debt with an affirmative right to be free from imprisonment in the absence of proof that the person has willfully refused to pay her court debt.  *See* Okla. Stat. tit. 22, § 983(A); Okla. Ct. R. Crim. App. 8.4.  This state law creates a liberty interest that the Fourteenth Amendment's Due Process Clause protects from arbitrary deprivation.  *See, e.g.*, *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," . . .  or it may arise from an expectation or interest created by state laws or policies.").  Such a liberty interest cannot be invaded without adequate process, including notice and a hearing.

The Supreme Court has set forth a three-part balancing test to determine what process is due prior to depriving someone of a liberty interest.  *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Courts are to examine: (1) the nature of the private right at stake; (2) the risk of erroneous deprivation given the procedures currently being employed and the probable value of additional safeguards; and (3) the government's interest in avoiding additional procedural safeguards.  *Id.*

Here, the "private right" at stake is one of the most fundamental—the right to be free from bodily restraint and confinement in a jail cell.  *See, e.g.*, *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982).  The fundamental nature of this right is underscored by the fact that it is *also an entitlement under Oklahoma law*.  Okla. Stat. tit. 22,

14

Brief J

§ 983(A) states: "Any defendant found guilty of an offense in any court of this state may be imprisoned for nonpayment of the fine, cost, fee, or assessment when the trial court finds after notice and hearing that the defendant is financially able but refuses or neglects to pay the fine, cost, fee, or assessment."  Additionally, Rule 8.4 of the Rules of the Court of Criminal Appeals provides: "If the defendant fails to make an installment payment when due, he/she must be given an opportunity to be heard as to the refusal or neglect to pay the installment when due." Incarceration is appropriate only "[i]f no satisfactory explanation is given at the hearing on failure to pay." *Id*.  This right is mandatory and non-discretionary.  It thus clearly establishes a liberty interest that cannot be taken away without due process.

Under the second prong of *Mathews*, the risk of erroneous deprivation without inquiry into ability to pay here is enormous.  Because nonpayment may be punished with physical confinement only if it is willful, and because large numbers of traffic and criminal debtors are indigent, jailing people prior to inquiring into their ability to pay is highly likely to result in a wrongful deprivation.

Finally, there is obviously no harm to the government in requiring it do in practice what is already required by law—to issue a summons and hold a hearing on whether nonpayment was willful *before* depriving a person of her liberty.  *See* Okla. Stat. tit. 22, § 983(A); Okla. Ct. R. Crim. App. 8.4.  These procedures underscore that the government only *benefits* from accurate fact-finding and a reduction in wasted resources spent on incarcerating those who cannot pay.  *Cf. Addington v. Texas*, 441 U.S. 418, 426 (1979) (deeming it "at least unclear to what extent, if any, the state's interests are furthered" by using a standard of proof that increases the risk that people will be erroneously committed); *United States v. Schell*, 692 F.2d 672, 684 (10th Cir. 1982) (McKay, J., concurring in part and dissenting in part) (explaining that the government has an interest in avoiding erroneous liberty deprivations).  Moreover, as discussed *supra*, the Supreme

15

Brief J

Court has applied these principles to this context and already explained the minimum procedural safeguards required before the government may arrest or jail a person for nonpayment.  That is, absent "extraordinary situations," a person must be given a meaningful opportunity to be heard *prior* to a deprivation of liberty or property.  *See Turner*, 564 U.S. at 447–48; *Fuentes*, 407 U.S. at 90–91 (postponement of notice and a hearing is justified only in "truly unusual" situations, and only when "directly necessary" to advance important interests); *Doehr*, 501 U.S. at 15 (due process is offended when a delayed hearing "would not cure the temporary deprivation that an earlier hearing might have prevented").  Neither the government's interest in collecting old court debt nor Aberdeen's interest in generating profit through the debt-collection process creates an exigency that could possibly justify departure from decades of settled law requiring safeguards against the erroneous deprivation of a person's liberty.

C.  Regalado's Reliance on Aberdeen's Use of Extreme Threats Violates the Equal Protection Clause (Count Seven)

Regalado outsources the heart of his debt-collection authority to Aberdeen.  SAC ¶ 65. Aberdeen then uses extreme threats of family separation and imprisonment against, and seeks arrest warrants for, those who cannot pay their court debt.  Regalado then makes good on those threats by executing these warrants and imprisoning debtors pursuant to them.  This conduct denies indigent debtors equal protection as compared to wealthy debtors.  Specifically, Defendants subject debtors who cannot pay to severe treatment while "allowing those who can afford to pay to be left alone."  *Id.* ¶ 361.  This cause of action is rooted in longstanding Supreme Court precedent.

In *James v. Strange*, 407 U.S. 128 (1972), the Court held that government officials could not use "unduly harsh or discriminatory terms" to collect court costs owed from a criminal case, "merely because the obligation is to the public treasury rather than to a private creditor," *id.* at 138.

16

Brief J

There, the Court struck down a Kansas recoupment statute that expressly denied indigent defendants who owed money to the State for indigent defense costs the basic wage garnishment exemptions available to judgment debtors in civil cases under Kansas law. *Id*. at 135, 141–42. It recognized that "state recoupment statutes" may embody "legitimate state interests," but reasoned that those interests "are not thwarted by requiring more even treatment of indigent criminal defendants with other classes of debtors." *Id*. at 141. "For Kansas to deny" the basic wage exemptions at issue was for it "to risk denying" a debtor "the means needed to keep himself and his family afloat." *Id*. at 136. The result was to "blight" in "discriminatory fashion the hopes of indigents for self-sufficiency and self-respect." *Id*. at 141–42. For these reasons, the Court struck down Kansas's "unduly harsh" debt-collection scheme. *Id.* at 138.

In this case, Defendants' use of arrest warrants, jailing, and indefinite detention until payment is received singles out poor debtors for treatment in a more extreme manner than that in *James*. In Kansas, criminal defendants were merely barred from claiming certain garnishment exemptions. Here, by contrast, Defendants threaten, arrest, and imprison people without regard to their ability to pay and without following any of the required procedures for determining ability to pay, and then keep them there for days or weeks until they or their families bargain or pay. Defendants are not constitutionally permitted to enforce their laws in a manner that would require indigent debtors to pay "the last dollar they have or can get, and thus make themselves and their dependents wholly destitute." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). But that is precisely what they do.

D. Defendant's Practice of Making Arrests for Nonpayment Violates the Fourth Amendment

As Plaintiffs have also briefed extensively, Regalado violates the Fourth Amendment because he executes arrest warrants unsupported by sworn factual allegations; the warrant

Brief J

applications omit material facts as a matter of policy; and there is no probable cause that the alleged nonpayment was willful.  *See* Doc. 77 at 11–16; *United States v. Ventresca*, 380 U.S. 102, 109 (1965); *Dow v. Baird*, 389 F.2d 882, 884 (10th Cir. 1968) (finding an affidavit that was signed but not sworn under oath "clearly and obviously invalid").  Regalado does not seriously contest the principles at issue or even the fact that he executes arrest warrants for nonpayment without anyone having sworn to the veracity of the factual allegations in the warrant applications, as alleged in the Complaint.  SAC ¶¶ 9, 30–36.  He also does not contest that, in place of the required sworn affidavit, an Aberdeen employee or employee in the Cost Administrator or Clerk of Court's Office simply asserts—without oath or affirmation—that a debtor has not made sufficient payments.  *Id.*

Instead, Regalado attempts to skirt the Fourth Amendment altogether by labeling Plaintiffs' arrest warrants as "bench warrants," likening them to contempt warrants issued for failure to appear after a valid summons—warrants to which, he argues, the oath-or-affirmation requirement does not apply.  Doc. 235 at 17–24.  But this argument collapses under the slightest scrutiny.  Unlike a traditional, valid bench warrant, the warrants Plaintiffs challenge are not preceded by a valid summons or based on an attested-to failure to appear in court.  Defendant Judges issue the warrants *automatically*—without sworn affirmation—and for failure to *pay*.  The difference is critical.

In issuing a traditional bench warrant, a magistrate herself supplies a sworn basis for the facts establishing probable cause.  In place of a sworn affidavit by a separate complaining officer, the magistrate relies on her personal knowledge of what occurs in her court, and her personal knowledge is backed by her oath of office.  *See, e.g.*, *McGrain v. Daugherty*, 273 U.S. 135, 156–57 (1927) (noting that judges, based on their oaths of office, "may issue attachments, based on their own knowledge of the default, where intended witnesses or jurors fail to appear in obedience

18

to process shown by the officer's return to have been duly served"); *State v. Davidson*, 260 Neb. 417, 424, 426 (2000) (holding that a court, "acting under the solemn obligation of its oath of office," is not "required to affirm by separate affidavit events that took place in its presence," so long as that evidence is set forth in the warrant itself). For example, when a judge knows personally—through observation in court and review of court records—that a defendant has been formally summoned in accordance with state law and has failed to appear, he can issue a bench warrant for contempt based on that knowledge.[5]

By contrast, any facts forming the basis for probable cause that are *not* personally known to the judge signing the warrant must be supported by a sworn affidavit. *See Franks v. Delaware*, 438 U.S. 154 (1978). This rule is only logical: "If the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned, at the discretion of the judges, without any farther proof or examination" because the judge is a firsthand witness of the conduct. William Blackstone, 4 *Commentaries on the Laws of England* *283 (1769). "But in matters that arise at a distance, and of which the court cannot have so perfect a knowle[d]ge, unless by the confession of the party or the testimony of others" then a sworn affidavit is needed that provides "sufficient ground to suspect that a contempt has been committed" in order for a warrant or order to show cause to issue. *Id.*

Here, the fact of nonpayment is not a matter of court record. And because the judges conduct no pre-deprivation inquiries into a debtor's ability to pay, there can be no evidence—much less evidence recited on the face of the warrants—that the judges signing the warrants have

---

[5] Of course, "even if it is sufficient for a judge to rely on his personal knowledge rather than an affidavit supported by oath or affirmation, the judge must still make an actual finding of probable cause in order for a document purporting to be an arrest warrant to satisfy the warrant requirement of the Fourth Amendment." *Milner v. Duncklee*, 460 F. Supp. 2d 360, 374 (D. Conn. 2006) (citing *Payton v. New York*, 445 U.S. 573, 602–03 (1980)).

Brief J

inquired into the debtor's ability to pay.  Because both nonpayment and willfulness are elements

of the only failure-to-pay offense for which Plaintiffs could be arrested, and because the judges do

not personally know facts establishing probable cause for either of those elements, the warrants

must be backed by sworn affidavits attesting to such facts.  And the warrants here have no such

backing.

## IV.    Qualified Immunity Does Not Shield Regalado

Qualified immunity protects government officials from liability for civil damages only

insofar as their conduct does not violate clearly established rights of which a reasonable person

would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Regalado claims he is

shielded by qualified immunity because the rights asserted by Plaintiffs against him were not

clearly established at the time of the alleged violations.  But, as shown above, the Fourth and

Fourteenth Amendment rights asserted here have been clearly established since well before the

alleged violations took place.

As an initial matter, qualified immunity is more properly raised at summary judgment,

rather than in a motion to dismiss.  Given the fact-specific nature of the showing Defendants would

have to make to establish qualified immunity, early consideration of qualified immunity requires

an especially searching review.  *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)

("Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to

a more challenging standard of review than would apply on summary judgment.") (quoting

*Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)).

As Plaintiffs' discussion above shows, there is no serious dispute that decades of Supreme

Court and federal courts of appeals authority prohibit (1) jailing people solely for nonpayment

without a pre-deprivation inquiry into their ability to pay (and without the procedures and findings

Brief J

required at such proceedings), (2) jailing people on arrest warrants without a sufficient factual basis sworn by oath or affirmation, and (3) omitting material facts in warrant applications.

It is also clearly established that arrest warrants require a sworn basis for probable cause, and so it is clearly established that even so-called "bench" warrants issued for failure to pay require probable cause that the person has the ability to pay. Regalado is therefore liable if he knows that the person against whom he executes an arrest warrant has no ability to pay, or if he knows that there will be no pre-arrest hearing on ability to pay. Plaintiffs have alleged Regalado's knowledge. SAC ¶ 81. To the extent he seeks to be shielded by qualified immunity, his claim should be heard at the summary judgment stage.

## V.    Regalado Is Not Entitled to Absolute Immunity

Regalado further claims that he is entitled to absolute, "quasi-judicial" immunity for the claims against him that derive from his role executing debt-collection arrest warrants. Doc. 235 at 8. His claim is grounded in the argument that the warrants are facially valid judicial orders akin to traditional bench warrants, and in support he cites several cases, most notably *Valdez v. City and County of Denver*, 878 F.2d 1285 (10th Cir. 1989), for the proposition that "an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order," *id.* at 1286. Regalado's arguments are virtually identical to those made by Defendant Walton, the Rogers County Sheriff, in his individual capacity, and fail for the same reasons. Therefore, for the purpose of efficiency, instead of repeating the same arguments here, Plaintiffs refer the Court to their briefing in response to Defendant Walton's quasi-judicial immunity argument. *See* Br. D, Section II.

Regalado also argues that he cannot be held responsible for detaining individuals and enjoys quasi-judicial immunity based on a local court rule that disallows release without approval

Brief J

of a judge or posting an appearance bond.  See Doc. 235 at 13.  This argument fails because administrative orders, such as the one cited in Regalado's Motion, are not judicial acts from which immunity flows.  See Plaintiffs' Opposition to the Tulsa County Cost Administrator, Br. L, Section II.B at 15-16.  Again, as a critical example of this, the order that resulted in Regalado's detention of Melanie Holmes was not even signed by a judicial officer.  SAC ¶ 209.

## VI.      Plaintiffs Allege Violations of the RICO Act

Plaintiffs state a valid claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 (RICO).  In Count One, Plaintiffs allege that Regalado in his individual capacity, together with Aberdeen, Inc., the Shofners, OSA, and the other 53 Sheriff Defendants in their individual capacities (collectively, "RICO Defendants"), are members of an enterprise that uses the threat of arrest and incarceration in order to extort millions of dollars in payments from thousands of impoverished debtors, in violation of 18 U.S.C. § 1962 (c) and (d). SAC ¶¶ 275–317. Regalado raises a series of unavailing defenses, which are virtually identical to those raised by his co-defendants the 51 County Sheriffs, the Rogers County Sheriff, and the Shofners.  Accordingly, for the sake of efficiency, instead of repeating those arguments here, Plaintiffs refer the Court to their Oppositions to these Defendants' motions to dismiss.  See Br. A, Section III; Br. D, Section IV; and Br. F, Section III.[6]

## CONCLUSION

For all the reasons stated above, the Court should deny the Tulsa County Sheriff's Individual Capacity Motion to Dismiss.

---

[6] Regalado acknowledges that Plaintiffs Killman, Meachum, Choate, Smith, and Holmes allege injury as a result of Aberdeen's extortionate threats on behalf of the RICO enterprise, but he seeks to dismiss any RICO claim brought by the remainder of the Plaintiffs.  See Doc. 235 at 23.  To clarify, Plaintiffs Wilkins, Frazier, and Graff do not bring a RICO claim.

Brief J

Dated: November 30, 2018

Respectfully submitted,

*/s/Jill E. Webb*
Jill Webb, OBA #21402
J Webb Law Firm PLLC
P.O. Box 1234
Tulsa, OK 74101
Tel: 918-346-5664
jill.webb@gmail.com

*/s/ Daniel E. Smolen*
Daniel Smolen, OBA #19943
Donald E. Smolen, II, OBA #19944
Robert M. Blakemore, OBA #18656
Smolen, Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

*/s/ Katherine Hubbard*
Katherine Hubbard (admitted *Pro Hac Vice*)
California Bar No. 302729
Ryan Downer (admitted *Pro Hac Vice*)
D.C. Bar No. 1013470
Marco Lopez* (admitted *Pro Hac Vice*)
California Bar No. 316245
Tara Mikkilineni (admitted *Pro Hac Vice*)
D.C. Bar No. 997284
Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
Tel: 202-599-0953
Fax: 202-609-8030
katherine@civilrightscorps.org
ryan@civilrightscorps.org
marco@civilrightscorps.org
tara@civilrightscorps.org

*Admitted solely to practice law in California; not admitted in the District of Columbia. Practice is limited pursuant to D.C. App. R. 49(c)(3).

*/s/ Seth Wayne*

23

Brief J

Douglas N. Letter (admitted *Pro Hac Vice*)
D.C. Bar No. 253492
Robert Friedman (admitted *Pro Hac Vice*)
D.C. Bar No. 1046738
Seth Wayne (admitted *Pro Hac Vice*)
D.C. Bar No. 888273445
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
dl1016@georgetown.edu
rdf34@georgetown.edu
sw1098@georgetown.edu

*Attorneys for the Plaintiffs*

Brief J

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of November, 2018, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.


_/s/ Seth Wayne_

Brief J