## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CARLY GRAFF, et. al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | **Case No. 4:17-CV-606-TCK-JFJ** |
| **ABERDEEN ENTERPRIZES II, INC., et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | | |

### PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT DARLENE BAILEY, COST ADMINISTRATOR OF TULSA COUNTY, IN HER INDIVIDUAL CAPACITY

### BRIEF L

Jill Webb, OBA #21402
J Webb Law Firm PLLC
P.O. Box 1234
Tulsa, OK 74101
Tel: 918-346-5664
jill.webb@gmail.com

Daniel Smolen, OBA #19943
Donald E. Smolen, II, OBA #19944
Robert M. Blakemore, OBA #18656
Smolen, Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

Katherine Hubbard (admitted *Pro Hac Vice*)
California Bar No. 302729
Ryan Downer (admitted *Pro Hac Vice*)
D.C. Bar No. 1013470
Marco Lopez* (admitted *Pro Hac Vice*)
California Bar No. 316245
Tara Mikkilineni (admitted *Pro Hac Vice*)
D.C. Bar No. 997284
Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
Tel: 202-599-0953
Fax: 202-609-8030

katherine@civilrightscorps.org
ryan@civilrightscorps.org
marco@civilrightscorps.org
tara@civilrightscorps.org

*Admitted solely to practice law in California; not admitted in the District of Columbia. Practice is limited pursuant to D.C. App. R. 49(c)(3).

Douglas N. Letter (admitted *Pro Hac Vice*)
D.C. Bar No. 253492
Robert Friedman (admitted *Pro Hac Vice*)
D.C. Bar No. 1046738
Seth Wayne (admitted *Pro Hac Vice*)
D.C. Bar No. 888273445
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
dl1016@georgetown.edu
rdf34@georgetown.edu
sw1098@georgetown.edu

*Attorneys for the Plaintiffs*

Brief L

## Index of Plaintiffs' Opposition Briefs

For ease of reference, each of Plaintiffs' opposition briefs has been labeled by letter according to the motion to dismiss to which it is responsive, listed below.

Brief A: 51 County Sheriff Defendants, Individual Capacity (Doc. 239)

Brief B: Rogers County Defendants, Official Capacity (Doc. 226)

Brief C: Kim Henry, Former Court Clerk of Rogers County, Individual Capacity (Doc. 227)

Brief D: Scott Walton, Sheriff of Rogers County, Individual Capacity (Doc. 228)

Brief E: Aberdeen Enterprizes II, Inc. (Doc. 230)

Brief F: Jim and Rob Shofner (Doc. 231)

Brief G: Oklahoma Sheriffs' Association (Doc. 232)

Brief H: Defendant Judges (Doc. 233)

Brief I: 51 County Sheriff Defendants, Official Capacity (Doc. 234)

Brief J: Vic Regalado, Sheriff of Tulsa County, Individual Capacity (Doc. 235)

Brief K: Don Newberry, Court Clerk of Tulsa County, Individual Capacity (Doc. 236)

Brief L: Darlene Bailey, Cost Administrator of Tulsa County, Individual Capacity (Doc. 237)

Brief M: Tulsa County Defendants, Official Capacity (Doc. 238)

i

Brief L

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

RELEVANT BACKGROUND ............................................................................3

ARGUMENT .......................................................................................................5

    **I.**    **Bailey Is Not Entitled to Judicial or Derivative Immunity** ...............5

        **A.**  **Bailey Does Not Enjoy Judicial or Derivative Immunity for Requesting Warrants** ...........................................................5

            **i.**    *The Supreme Court Has Held That Seeking a Warrant Is Not a Judicial Function* .....................7

            **ii.**   *Bailey Cannot Escape Liability by Claiming That Judges Ordered Her Warrant Practices.* ...........8

            **iii.**  *Bailey Cannot Avoid Liability by Claiming That She Issues Warrants.* ...........................................12

            **iv.**  *Plaintiffs Are Not Asking Bailey to Act as Pseudo-Appellate Court* ...........................................14

        **B.**  **Bailey Is Not Entitled to Judicial or Derivative Immunity for Referring Cases to Aberdeen** ...........................14

    **II.**   **Qualified Immunity Does Not Shield Bailey from Suit** ...................17

    **III.**  **Plaintiffs Have Standing to Sue Bailey** .........................................19

    **IV.**  **This Court Has Authority to Issue Equitable Relief Against Bailey in Her Individual Capacity** ...................................................21

    **V.**   **Bailey Has Personally Participated in the Challenged Misconduct** ...............24

CONCLUSION ..................................................................................................25

Brief L

# **TABLE OF AUTHORITIES**

Cases

*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993) ...................................................... passim

*ARW Expl. Corp. v. Aguirre*, 947 F.2d 450 (10th Cir. 1991) ..................................................... 20

*Bearden v. Georgia*, 461 U.S. 660 (1983) ............................................................................ 3, 18

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ................................................................................... 23

*Boyer v. County of Washington*, 971 F.2d 100 (8th Cir. 1992) ................................................... 14

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) ................................................................................. 18

*Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011 ..................................................................... 22

*Burns v. Reed*, 500 U.S. 478 (1991) ..................................................................................... 5, 10

*Cain v. City of New Orleans*, 2017 WL 467685 (E.D. La. Feb. 3, 2017) .............................. 12, 13

*Commonwealth of Pennsylvania v. Porter*, 659 F.2d 306 (3d Cir. 1981) .................................. 22

*Cressman v. Thompson*, 719 F.3d 1139 (10th Cir. 2013) ............................................................. 8

*DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714 (10th Cir. 1988) ...................... 23

*Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010) ................................................................ 25

*Dow v. Baird*, 389 F.2d 882 (10th Cir. 1968) ......................................................................... 2, 17

*Finstuen v. Crutcher*, 496 F.3d 1139 (10th Cir. 2007). ............................................................... 20

*Forrester v. White*, 484 U.S. 219 (1988) ..................................................................... 11, 14, 15

*Fry v. Robinson*, 678 F. App'x 313 (6th Cir. 2017) ..................................................................... 13

*Groh v. Ramirez*, 540 U.S. 551 (2004) ........................................................................................ 17

*Hafer v. Melo*, 502 U.S. 21 (1991) .............................................................................................. 22

*James v. Strange*, 407 U.S. 128 (1972) .................................................................................. 3, 19

*Jones v. Hacker*, No. 13-CV-00444-JHP, 2015 WL 1279352
   (E.D. Okla. Mar. 20, 2015) ........................................................................... 9, 11, 17

*Kalina v. Fletcher*, 522 U.S. 118 (1997) ............................................................... 7, 8, 10, 11

*Mays v. Sudderth*, 97 F.3d 107 (5th Cir. 1996) ............................................................................ 6

*Molina v. March*, No. CV 07-4296, 2009 WL 10693183 (S.D. Tex. Sept. 28, 2009) ................ 22

*Moss v. Kopp*, 559 F.3d 1155 (10th Cir. 2009) ..................................................................... 10, 16

*Mullenix v. Luna*, 136 S. Ct. 305 (2015) .............................................................................. 18, 19

*Newton v. Buckley*, 127 F.3d 1109 (10th Cir. 1997) .................................................................... 14

*North Side State Bank v. Board of Cty. Comm'rs of Tulsa Cty.*, 894 P.2d 1046
   (Okla. 1994) ........................................................................................................... 16

*Perano v. Arbaugh*, No. 10-CV-01623, 2011 WL 1103885 (E.D. Pa. Mar. 25, 2011) ............... 22

*Richman v. Sheahan*, 270 F.3d 430 (7th Cir. 2001) ...................................................................... 6

*Split Rail Fence Co., Inc. v. United States*, 852 F.3d 1228 (10th Cir. 2017) .............................. 19

*Stewart v. Donges*, 915 F.2d 572 (10th Cir. 1990) .................................................................. 3, 18

*Thomas v. Palacios*, 73 F.3d 374 (10th Cir. 1995) ..................................................................... 14

*Toles v. Oklahoma Department of Corrections*, 2017 WL 7734649
   (W.D. Okla. Nov. 27, 2017) ............................................................................................. 23

*Trackwell v. U.S. Gov't*, 472 F.3d 1242 (10th Cir. 2007) ............................................................. 6

Brief L

*Valdez v. City of Denver*, 878 F.2d 1285 (10th Cir. 1989) ........................................................ 14
*Vasquez v. Davis*, 882 F.3d 1270 (10th Cir. 2018) ................................................................ 23
*Wolford v. Lasater*, 78 F.3d 484 (10th Cir. 1996) .............................................................. 18, 19
*Young v. Lynch*, 846 F.2d 960 (4th Cir. 1988) .................................................................. 23

Statutes

42 U.S.C. § 1983 ................................................................................................................ passim
Okla. Stat. tit. 19, § 514.4 .............................................................................................. 15, 16
Okla. Stat. tit. 19, § 514.5 .............................................................................................. 4, 15
Okla. Stat. tit. 22, § 983 .......................................................................................................... 18
Okla. Stat. tit. 28, § 151 .......................................................................................................... 11

Other Authorities

*In re Fee Schedule of Certified Shorthand Reporters*, 271 P.3d 776 (Okla. S.C.A.D. 2009) ...... 15
Oklahoma Supreme Court Order, S.C.A.D. 2011-08 (Doc. 99-35) .......................................... 15

iv

Brief L

## INTRODUCTION

Plaintiffs challenge an abusive and illegal debt-collection scheme perpetrated by a for-profit company, Aberdeen Enterprizes II, Inc., that uses the threat of arrest and incarceration to extract money from indigent Oklahomans who owe court debt that they are financially unable to pay.  This illicit scheme cannot function without arrest warrants for nonpayment and without the referral of individual debtors' cases to Aberdeen for collection by extortionate means.

Defendant Darlene Bailey, the Cost Administrator of the Tulsa County District Court, plays a pivotal role in securing the necessary arrest warrants and referring cases to Aberdeen. First, as the Second Amended Complaint alleges, Bailey has established a practice, along with the Tulsa County District Court Clerk, of requesting arrest warrants after a debtor misses a certain number of payments.  She makes these requests with complete disregard for the debtor's ability to pay the court debt owed, and she does not make the request under oath or affirmation. Second, Bailey chooses which cases to refer to Aberdeen, again without any inquiry into the debtor's ability to pay, and once a case is transferred, she adds 30 percent to the amount of court debt the debtor owes.  Third, after Aberdeen takes control of a case, Bailey assists it in securing new debt-collection arrest warrants.  As before, these requests involve no inquiry into ability to pay and are not made under oath or affirmation.

Plaintiffs have sued Bailey, in her individual capacity, to enjoin her from continuing this unlawful conduct and to seek compensatory damages for the harm already done.  In Counts Two and Five, Plaintiffs challenge Bailey's practice of requesting, and helping Aberdeen request, warrants based solely on nonpayment, without regard to the debtor's ability to pay.  In Count Three, Plaintiffs challenge Bailey's practice of requesting, and helping Aberdeen request, warrants that recklessly omit material information related to ability to pay, as well as her practice

1

of requesting warrants without oath or affirmation.  In Count Seven, Plaintiffs challenge Bailey's practice of referring cases to Aberdeen, which is part and parcel of the collective effort among various Defendants in this case to use unconstitutionally onerous methods to collect debt.

In her motion to dismiss, Bailey attempts to characterize her actions as ministerial tasks performed at the direction of Oklahoma judges.  She then claims judicial immunity for this conduct of assisting Oklahoma judges, at their direction, in issuing warrants and collecting court debt.  At the pleadings stage, however, Plaintiffs' allegations must be taken as true.  Here, those allegations are clear:  Bailey, on her own initiative, requests that warrants issue and chooses to refer cases to Aberdeen in compliance with her (and the Tulsa Clerk's) own policies, not at the instruction of a judge.  Even if such a judge's order existed, Bailey would only be able to claim derivative immunity for following it if the order itself were covered by the doctrine of judicial immunity.  But the type of broadly applicable directive, concerning warrant applications in general, that Bailey describes (but does not actually identify) would, in reality, be an administrative rule, not a "judicial act" to which absolute immunity attaches.  *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–36 (1993).  Bailey is thus not entitled to judicial immunity.

Nor can Bailey take shelter under the doctrine of qualified immunity.  The Supreme Court and Tenth Circuit have clearly established the constitutional principles underlying Plaintiffs' claims.  First, the Tenth Circuit has held that warrants issued not on the basis of oath or affirmation violate the Fourth Amendment.  *See Dow v. Baird*, 389 F.2d 882, 883–84 (10th Cir. 1968).  Second, the Tenth Circuit has held that recklessly omitting from a warrant request material information that would eliminate probable cause—here, information related to the debtor's inability to pay—violates the Fourth Amendment.  *See Stewart v. Donges*, 915 F.2d

2

Brief L

572, 581 (10th Cir. 1990). Third, the Supreme Court has held that it is unconstitutional to imprison someone simply for being too poor to pay their court debt. *See Bearden v. Georgia*, 461 U.S. 660, 667–68 (1983). Fourth, the Supreme Court has held that it is unconstitutional to impose onerous collection methods—which Bailey contributes to by referring cases to Aberdeen and imposing a 30 percent penalty—only on those too poor to pay debt owed to the government. *See James v. Strange*, 407 U.S. 128 (1972). These are the practices, clearly established as unconstitutional, for which Plaintiffs seek to hold Bailey liable.

There is also no merit to Bailey's claims that Plaintiffs lack standing and that this Court cannot issue otherwise appropriate injunctive relief against her in her individual capacity. Some Plaintiffs have already been injured by Bailey's practices and thus have standing to pursue damages. Others are at imminent risk of Bailey's helping Aberdeen request another warrant against them and thus have standing to pursue injunctive relief. And this Court, in turn, has authority to issue the requested injunction. Section 1983 authorizes equitable relief against any "person" who deprives another of constitutional rights. 42 U.S.C. § 1983. There is no limitation to "persons acting in an official capacity."

Lastly, Plaintiffs have adequately alleged that Bailey personally participated in the challenged misconduct. Their Complaint attributes the unconstitutional warrant and referral practices to Bailey, which suffices to establish her liability under § 1983.

Bailey's motion to dismiss should be denied.

## RELEVANT BACKGROUND

Bailey is the Cost Administrator for the Tulsa County District Court. Second Am. Comp. ("SAC"), Doc. 212 ¶ 36. Along with Defendant Don Newberry, the Clerk of Court, Bailey is responsible for collecting fines, fees, and costs assessed against individuals convicted of traffic

Brief L

and criminal offenses.  *Id.*  As part of that effort, Bailey establishes payment plans for people owing court debt.  *Id.*  If a debtor misses a certain number of payments, ranging from six to twelve payments, Bailey requests that a judge issue a warrant for the debtor's arrest.  *Id.* ¶¶ 36, 120–21.  Bailey includes no information about the debtor's ability to pay when she requests a warrant, and she does not make her requests under oath or affirmation.  *Id.*  Once Bailey makes such a request, a judge signs the warrant for it to become an active arrest warrant.  *Id.* ¶¶ 120–21. The Complaint alleges that Defendants Bailey and Newberry established these practices for seeking warrants.  *Id.* ¶¶ 35–36.

After a warrant issues in a specific case, Bailey "chooses" whether to refer the case to Aberdeen to take charge of collecting the court debt.  *Id.* ¶ 36.[1]  If she does refer the case to Aberdeen, she also increases the amount the debtor owes by 30 percent.  *Id.* ¶¶ 36, 58.  The 30 percent add-on is used to pay Aberdeen for its services and to pay the Oklahoma Sheriffs' Association for overseeing Aberdeen's contract.  Okla. Stat. tit. 19, § 514.5(b).

Bailey continues to play a role in collecting debt, even after referral, by assisting Aberdeen in obtaining new arrest warrants.  If the debtor pays Aberdeen to have a warrant recalled, but then misses payments again, Aberdeen will seek a new warrant.  *Id.* ¶ 126.  To do this, Aberdeen makes an informal request for a warrant to the Cost Administrator.  *Id.* ¶¶ 36, 89, 126.  The Cost Administrator will then assist Aberdeen by putting the request in front of a judge in a form that allows the judge to issue a warrant.  *Id.* ¶ 126.  The Cost Administrator does this without information about the debtor's ability to pay and without making (or having Aberdeen make) the request under oath or affirmation.  *Id.* ¶¶ 36, 89, 126.

---

[1] Tulsa County ceased using Aberdeen to collect debt after Plaintiffs initiated this action, but before the filing of the Second Amended Compliant.  SAC ¶ 124.  The statement of the relevant background that follows captures Bailey's practices prior to that point.

Brief L

Bailey's practices have affected multiple Plaintiffs in this case.  Of particular relevance here, she requested that a warrant issue against Plaintiff Randy Frazier and assisted in requesting multiple warrants against Melanie Holmes.  *Id.* ¶¶ 25, 36, 207.  Bailey also referred Mr. Frazier's case to Aberdeen.  *Id.* ¶ 19.  As a result of Bailey's conduct, Mr. Frazier has lived under the specter of an active warrant and endured being threatened with arrest by Aberdeen—a threat Aberdeen made not only to him but also to his daughter.  *Id.* ¶¶ 165–67.  And Ms. Holmes was ultimately arrested on a warrant that Bailey helped Aberdeen request and is now too scared to return to Oklahoma to visit family because of the other warrant Bailey requested.  *Id.* ¶¶ 207-08, 212-13.  Multiple other plaintiffs, moreover, are too poor to pay their court debt.  *See, e.g.*, *id.* ¶¶ 20-23.  Because they will therefore miss payments, they are at risk of being subjected to Bailey's illegal practice of assisting Aberdeen in requesting a new warrant.  *See id.* ¶ 126.

## ARGUMENT

### I.    Bailey Is Not Entitled to Judicial or Derivative Immunity.

Plaintiffs seek compensation for Bailey's unlawful practices of requesting warrants and referring cases to Aberdeen for collection.  Bailey "bears the burden of showing that [judicial] immunity is justified for [each] function."  *Burns v. Reed*, 500 U.S. 478, 486 (1991).  She has not met this burden with respect to either her warrant practices or her referral practices.

### A. Bailey Does Not Enjoy Judicial or Derivative Immunity for Requesting Warrants.

Plaintiffs have alleged that Bailey follows established practices regarding when to seek warrants and how to help Aberdeen seek warrants for nonpayment of court debt.  She investigates nonpayment, or relies on Aberdeen's investigation, and then requests that a judge issue a warrant.  Plaintiffs have further alleged that these practices originate with Defendants Bailey and Newberry.  *See* SAC ¶¶ 35–36, 120–21, 126.  By contrast, Plaintiffs nowhere allege

5

that any judges direct Bailey or Aberdeen on how and when to make warrant requests, and Bailey does not identify any such judicial directive (despite claiming one exists). *See, e.g.*, Mot. to Dismiss Pls.' Second Am. Compl. By Def. Darlene Bailey, in Her Individual Capacity ("Doc. 237") at 17 (asserting, without citation and in conflict with Plaintiffs' allegations, that Bailey "prepare[s] [warrants] for the judge's signature upon the judge's direction to do so"). Plaintiffs also nowhere allege that Bailey actually issues arrest warrants.

These allegations establish that Bailey performs the function of an investigator who requests warrants for violations of the law. With that function properly understood, Bailey's claim to absolute immunity fails.[2] Her arguments to the contrary—based on the existence of the supposed order from a judge directing her to seek warrants; a conflation of seeking and issuing warrants; and a fear that she will be forced to act as a "pseudo-appellate court"—all lack merit.

---

[2] Bailey claims "Judicial, Quasi-Judicial and/or Derivative Immunity." Doc. 237 at 8. Bailey does not distinguish among these terms, and the case law does not always use them in a consistent manner. "Judicial immunity" applies to the function of adjudicating private disputes and private rights. *See Antoine*, 508 U.S. at 435–36 (citation omitted). The term "derivative immunity" has been used in at least two ways. It is sometimes used to describe the immunity that applies to a government official who is not a judge but performs a judicial function (that is itself covered by judicial immunity) that a judge delegates. *See,e.g., Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1247 (10th Cir. 2007). "Derivative immunity" is also sometimes used to describe the immunity that applies when a person executes a judicial order under certain circumstances. *See, e.g., Mays v. Sudderth*, 97 F.3d 107, 114 (5th Cir. 1996). "Quasi-judicial immunity" is likewise generally invoked in two ways: (1) when immunity is applied to judicial decisionmaking made by non-judges (such as a parole commissioner) and (2) when immunity applies to the execution of a judicial order under certain circumstances (which, as just noted, is sometimes described as "derivative immunity"). *See generally Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001). For purposes of this brief, Plaintiffs use the term "judicial immunity" to mean the immunity that applies to a judicial function, no matter who carries it out, and Plaintiffs use the term "derivative immunity" to mean the immunity that applies when a person executes a judicial order.

Brief L

i.    *The Supreme Court Has Held That Seeking a Warrant Is Not a Judicial Function.*

Judicial immunity applies only to "judicial acts."  *Forrester v. White*, 484 U.S. 219, 227 (1988).  The "touchstone" of a judicial act is the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights."  *Antoine*, 508 U.S. at 435–36 (citation omitted).  By contrast, investigating violations of the law and seeking warrants is not a judicial function, and judicial immunity does not attach to officials engaging in such conduct.  *See Malley v. Briggs* 475 U.S. 335, 340–43 (1986); *Snell v. Tunnell*, 920 F.2d 673, 687 (10th Cir. 1990) ("The [*Malley*] Court reasoned that applying for a warrant 'while a vital part of the administration of criminal justice, is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment.'" (citation omitted)).  Because this is precisely what Plaintiffs have alleged Bailey does—and assists Aberdeen in doing—her claim for absolute judicial immunity should be rejected.

That Bailey holds the title of "cost administrator," instead of "sheriff" or "police officer," does not change the conclusion that the *function* of seeking a warrant and attesting to facts in warrant applications is not an act taken in a "judicial capacity."[3]  The Supreme Court considered and rejected a similar argument that prosecutors—who enjoy absolute immunity for prosecutorial functions—are immune when engaging in investigative functions: "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'"  *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997) (quoting *Buckley v.*

---

[3] Nor does it matter that Defendants refer to these warrants as "bench warrants."  Whatever Defendants choose to label these warrants, they originate in the same manner as a traditional arrest warrant (upon request from a government official investigating the law) and they are reviewed, signed, and issued by a judge.  *See* Pls.' Opp. to the Tulsa County Sheriff's Motion to Dismiss in His Individual Capacity, Br. J, Section III.D, pp. 18-20.

Brief L

*Fitzsimmons*, 509 U.S. 259, 273–74 (1993)).   Here, Bailey, like the prosecutor in *Kalina*, is "performing the investigative functions normally performed by a . . . police officer," namely, investigating non-compliance with the law requiring payment of court debt, and seeking warrants.  Similarly:

> Testifying about facts is the function of the witness, not of the lawyer.  No matter how brief or succinct it may be, the evidentiary component of an application for an arrest warrant is a distinct and essential predicate for a finding of probable cause.  Even when the person who makes the constitutionally required 'Oath or affirmation' is a lawyer, the only function that she performs in giving sworn testimony is that of a witness.

*Id.* at 130–31.  *Kalina* concerned absolute immunity for prosecutors, but its reasoning applies equally here: investigating and seeking a warrant is no more a judicial function than it is a prosecutorial one.

### ii.    *Bailey Cannot Escape Liability by Claiming That Judges Ordered Her Warrant Practices.*

Bailey attempts to avoid this straightforward conclusion by claiming to act pursuant to a judicial order when requesting warrants.  *See, e.g.*, Doc. 237 at 12, 14 (asserting that Bailey does as she is "told by the state judiciary who, on occasion, request such warrants for signature . . . and who also issue standing orders regarding such matters with respect to frequently recurring situations").  There are multiple flaws with Bailey's argument.

*First*, her allegation conflicts with the Second Amended Complaint, which must be accepted as true at this stage.  *See Cressman v. Thompson*, 719 F.3d 1139, 1144 (10th Cir. 2013).  Once this case proceeds to discovery, Bailey will have her opportunity to contest the factual premise of Plaintiffs claims, but dismissal based on Bailey's contradictory description of her conduct is improper at the pleadings stage.

Brief L

**Second**, Bailey does not actually identify any judicial order directing her to undertake the warrant-request practices that Plaintiffs challenge.  Instead, she points to *Jones v. Hacker*, No. 13-CV-00444-JHP, 2015 WL 1279352 (E.D. Okla. Mar. 20, 2015), as supposed proof that her process for requesting warrants flows from a judicial order.  *See* Doc. 237 at 10–11.  In effect, Bailey asks this Court to treat *Jones* as *res judicata* against Plaintiffs here.  But *Jones* involved a different plaintiff and addressed the practices in a different Oklahoma county district court (specifically, Okmulgee), so it cannot control the facts here.  Moreover, *Jones* was decided after discovery on a summary-judgment record that contained a dispositive factual difference from Plaintiffs' Complaint: whereas Plaintiffs here have alleged that Defendants Bailey and Newberry are responsible for warrant-request practices, the record in *Jones* showed that, in Okmulgee County, the judges directed the cost administrator there to seek warrants.[4]  2015 WL 1279352 at *1.

   **Third**, even if a judge had ordered Bailey to request warrants in every case after a certain number of missed payments, that still would not entitle Bailey to derivative immunity.  Bailey

---

[4] *Jones* includes the somewhat confusing remark that the "Okmulgee County judges *expect* the Court Clerk's office, and specifically the Cost Administrator, to determine those criminal defendants who failed to pay court-ordered fines in criminal cases and to prepare bench warrants for the judges' signature for those persons."  2015 WL 1279352 at *1 (emphasis added).  In context, however, it is clear that the judges were not innocent bystanders in "expecting" such conduct, but that it was something they required.  A review of the record shows that the term "expect" is taken from Judge Cynthia D. Pickering's affidavit, which stated that it was her "expectation [that] individuals within the Court Clerk's office keep track of delinquent payers" and "present the appropriate judge with a bench warrant."  *See* Affidavit of Cynthia D. Pickering ¶¶ 5–6, *Jones v. Hacker*, 6:13-cv-00444-JHP (attached as Exhibit A).  This is the type of expectation a supervisor has when an employee is given a defined task.  This is further demonstrated by *Jones*'s statement that the cost administrator "*also* implemented her *own rule* and would generally give a delinquent payer 30 to 60 days' grace period before she would print the warrant depending on the payment history of the criminal defendant."  2015 WL 1279352, at *2 (emphasis added).  It is thus clear that there were the judges' "rules"—which caused the injury in *Jones*—and the clerk's "own rules."  To the extent this Court reads the *Jones* record differently, as on par with Plaintiffs' allegations here, Plaintiffs contend the case was wrongly decided for the reasons stated above.  *See supra* Section I.A.i.

Brief L

enjoys derivative immunity if the order she followed was itself a judicial one for which the issuing judge enjoys judicial immunity. *See Antoine*, 508 U.S. at 435 ("Even had common-law judges performed the functions of a court reporter, that would not end the immunity inquiry. It would still remain to consider whether judges, when performing that function, were themselves entitled to absolute immunity."); *Moss v. Kopp*, 559 F.3d 1155, 1163 (10th Cir. 2009) ("[B]ecause quasi-judicial immunity derives from judicial immunity, for quasi-judicial immunity to apply, the order must be one for which the issuing judge is immune from liability."). But judges are not entitled to judicial immunity when acting in an *administrative* capacity. *Forrester*, 484 U.S. at 229. Making rules of general application, supervising court employees, and overseeing the efficient operation of a court are administrative, not judicial actions. *See id.*; *Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731 (1980).[5] This distinction serves the purposes of judicial immunity: to foster independent and impartial adjudication, *Burns*, 500 U.S. at 485, and to "protect[] the proper functioning of the office, rather than . . . its occupant." *Kalina*, 522 U.S. at 125.

Here, any order requiring Bailey to request warrants (and, to repeat, Bailey has not actually identified such an order) would be administrative.[6] Unlike the culminating act of

---

[5] For example, the court in *ODonnell v. Harris Cty., Texas* held that County Judges do not act in their judicial capacity when they "promulgate written Rules of Court or oversee the unwritten customs and practices that could be corrected through the written Rules but are not," because "[t]hese acts and omissions do not arise out of each judge acting to resolve disputes between parties in each court." 227 F. Supp. 3d 706, 757 (S.D. Tex. 2016), *reconsideration denied*, No. CV H-16-1414, 2017 WL 784899 (S.D. Tex. Mar. 1, 2017), *and aff'd in part, rev'd in part*, 882 F.3d 528 (5th Cir. 2018), *opinion withdrawn and superseded on reh'g sub nom. ODonnell v. Harris Cty.*, No. 17-20333, 2018 WL 2465481 (5th Cir. June 1, 2018), *and aff'd in part, rev'd in part*, No. 17-20333, 2018 WL 2465481 (5th Cir. June 1, 2018).

[6] To the extent that Bailey is not claiming there is a specific order, but merely that she acts under the supervision of judges, her claim fails for the same reason. *See* Doc. 237 (noting that, in the hierarchy among employees in the Oklahoma court system, clerks fall below judges). Because judges themselves do not enjoy immunity for all of their conduct, *see, e.g., Forrester v. White*,

Brief L

"ordering the arrest of an *individual*," *cf. Jones*, 2015 WL 1279352 at *7 (emphasis added), the allegedly non-discretionary act Bailey describes—merely collecting a list of persons who missed payments and transferring those names to unsigned warrant requests—involves no "adjudication of private rights" or disputes between parties. *Antoine*, 508 U.S. at 435–36.  It is more akin to the court reporter's task of recording proceedings "verbatim," a task that the Supreme Court held is not covered by judicial immunity. *See id.* at 437.  Thus, as one court recently held, judicial immunity does not apply to tasks that "focus more on the administrative task of collecting fines than the judicial act of imposing them."  *Kneisser v. McInerney*, 15-cv-07043, 2018 WL 1586033, at *14 (D.N.J. Mar. 30, 2018).  Indeed, it would turn the Supreme Court's functional test for absolute immunity on its head if the conduct that the Supreme Court held to be non-judicial in *Malley* and *Kalina* could become judicial simply because someone with the title "judge" tells another person to do it on a *jurisdiction-wide basis*.[7]

**Fourth**, even if Bailey were correct that a judicial order exists, that it overrides Plaintiffs' well-pleaded allegations, and that her conduct pursuant to the order is covered by derivative immunity, Bailey still would not be entitled to dismissal of all of Plaintiffs' damages claims.  Bailey's theory addresses only warrants that originate in her office.  It does not address warrants that she assists Aberdeen in obtaining, including those that issued against Plaintiff Melanie Holmes.  *See* SAC ¶¶ 25, 207.  Aberdeen makes its own decision when to request warrants, SAC

---

484 U.S. 219, 229 (1988), it is obvious that acting under a judge's supervision (as Bailey claims to be, albeit without citation and in conflict with Plaintiffs' Complaint) does not automatically entitle a subordinate to immunity.  *See infra* Section I.B.  Nor can Bailey rely on her general duty to collect fees embodied in Okla. Stat. tit. 28, § 151(A).  *See* Doc. 237 at 12-13.  This statute says nothing of warrant requests and certainly does not embody the type of specific judicial directive on which she claims to rely.

[7] Because the order to which Bailey points, if it existed, would be administrative, her argument based on *Valdez v. City of Denver*, 878 F.2d 1285 (10th Cir. 1989), which crucially involved a particular type of *judicial* order, is inapposite.

Brief L

¶ 126, and no one contends that a judge has any role in that decisionmaking process. Accordingly, when Bailey facilitates Aberdeen's request, she, like Aberdeen, cannot claim judicial immunity.

> ### iii. *Bailey Cannot Avoid Liability by Claiming That She Issues Warrants.*

Bailey also asks this Court to treat her warrant-seeking as tantamount to *issuing* signed warrants, an act for which she claims to have judicial immunity. *See* Doc. 237 at 14. Again, Bailey's characterization contradicts the Second Amended Complaint and cannot justify dismissal at this stage. It even contradicts her own brief, as she observes in the preceding paragraph that "court clerks are not authorized to issue . . . warrants." *Id.*[8]

Nonetheless, Bailey contends that another district court's decision compels this conflation of requesting warrants, on the one hand, and issuing signed warrant orders, on the other. *See* Doc. 237 at 14 (citing *Cain v. City of New Orleans*, 2017 WL 467685 (E.D. La. Feb. 3, 2017)). But Bailey misunderstands *Cain*. In *Cain*, the complaint, read in conjunction with documents attached to it, alleged that "the authority to issue Collections Warrants [wa]s given to the Collections Department" and that the court administrator in that Department actually "issue[d] warrants." *Id.* at *6. Here, by contrast, Plaintiffs have alleged the opposite: that it is a judge who issues the warrants. Bailey is only alleged to have requested the warrant. Although Plaintiffs allege that Judge Moody does not adequately scrutinize Bailey's warrant requests, Judge Moody's failure to properly carry out her judicial task does not convert Bailey's request into a judicial act any more than a magistrate's rubber stamp of a search warrant would render a

---

[8] State law does provide that a judge "may direct" a clerk to issue a warrant. Okla. Stat. tit. 22, § 454. But that provision applies only when a defendant jumps bail. And, in any event, Plaintiffs have alleged no such direction here. Rather, Plaintiffs have alleged that Bailey (and Newberry) *only* request warrants, not issue warrants. *See, e.g.*, SAC ¶¶ 35-36.

Brief L

police officer's application for a search warrant a judicial act. *See, e.g.*, *Fry v. Robinson*, 678 F. App'x 313, 319 (6th Cir. 2017) (affirming denial of qualified immunity for police officer who sought arrest warrants "on the basis of . . . bare bones affidavits" where clerk acted as a "rubber-stamp" in signing the warrant).

Bailey also emphasizes that the court administrator in *Cain* used a "formula" set by judges to determine when to issue a warrant. 2017 WL 467685 at *6. Bailey claims that this case is the "same" because Plaintiffs have alleged that clerks "automatically" seeks warrants based on nonpayment. Doc. 237 at 15. But for three reasons, this case is not the same. First, Bailey ignores, again, the difference between "issuing" and "requesting." She is alleged to do only the latter. Second, Plaintiffs have alleged that *Bailey* (along with Newberry), and not any judge, is responsible for determining when to seek warrants in Tulsa County. *See, e.g.*, SAC ¶ 120 ("If a debtor does not make a payment during the first six months of the payment period, the Tulsa Cost Administrator's office, *pursuant to policy established by the Tulsa Clerk*, seeks a debt-collection arrest warrant based solely on the nonpayment.") (emphasis added). Bailey nonetheless appears to ask the Court to infer (contrary to Plaintiffs' allegations) that judges are truly behind Bailey's practices because Plaintiffs have alleged that Judge Moody issues warrants that Bailey requests "as a matter of course." Doc. 237 at 15 (quoting SAC ¶ 120). Judge Moody's practice, however, only establishes that she does not properly scrutinize warrant requests, and it would be improper to treat Judge Moody's conduct as negating Plaintiffs' allegation. At the pleadings stage, inferences are to be drawn in Plaintiffs' favor, not in Bailey's. Third, and in any event, for the reasons explained above, a jurisdiction-wide order from judges on when to request warrants would be administrative, not judicial, and therefore would not render Bailey immune.

Brief L

The distinction between requesting a warrant and issuing a warrant is not "pure sophistry," as Bailey claims.  Doc. 237 at 14.  Rather, it is integral to a determination of whether judicial immunity applies.[9]  Here, because the allegations in the Complaint establish that Bailey's practices constitute requests, she is not entitled to judicial immunity.

### iv. *Plaintiffs Are Not Asking Bailey to Act as Pseudo-Appellate Court.*

In her final parry, Bailey argues that she must be entitled to judicial immunity lest she be forced into the role of a "pseudo-appellate court" by having to "mak[e] her own determination as to whether a particular person is indigent."  *See* Doc. 237 at 17 (citing *Valdez v. City of Denver*, 878 F.2d 1285 (10th Cir. 1989)).  Bailey's fear is unwarranted.  *Valdez* sought to avoid a situations where government officials, in the absence of immunity, would be forced to take action that conflicted with a judge's order *after* a judge issued that order.  *See* 878 F.2d at 1289. Here, by contrast, Bailey's act of requesting a warrant *precedes* a judicial order, and Plaintiffs are not asking Bailey to review a judge's determination about a person's indigency at some point in the past.

### B. Bailey Is Not Entitled to Judicial or Derivative Immunity for Referring Cases to Aberdeen.

Bailey also is not entitled to judicial or derivative immunity for referring cases to Aberdeen for collections.  The act of referring a case is a quintessentially administrative decision, not a judicial one.  In *Forrester*, the Supreme Court held that a judge is not entitled to

---

[9] This distinction also disposes of the two unpublished Tenth Circuit decisions and the Eighth Circuit decision that Bailey cites.  *See Newton v. Buckley*, 127 F.3d 1109 (10th Cir. 1997) (unpublished) (finding quasi-judicial immunity where clerk was "authorized by [Utah] law to issue a bench warrant" and did so by affixing a judge's signature stamp); *Thomas v. Palacios*, 73 F.3d 374 (10th Cir. 1995) (unpublished) (finding quasi-judicial immunity applied to "court commissioner" who "issued" a warrant); *Boyer v. County of Washington*, 971 F.2d 100, 102 (8th Cir. 1992) ("[W]e agree that DeClue is entitled to absolute immunity for signing and issuing the arrest warrant.").

Brief L

judicial immunity when firing an employee.  484 U.S. at 229.  Though performed by a judge, the discharge decision was not a judicial act and, instead, concerned only "supervising court employees and overseeing the efficient operation of a court."  *Id.*  Bailey's decision to transfer responsibility to collect court debt from Tulsa County District Court employees to Aberdeen is every bit as much a personnel decision as the discharge decision in *Forrester*.  It concerns the "efficient operation of [the] court," *Forrester*, 484 U.S. at 229, not the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights," to which judicial immunity attaches.  *Antoine*, 508 U.S. at 435–36.[10]

Here, too, Bailey also argues that she acts pursuant to a judicial order and is therefore entitled to derivative immunity.  *See* Doc. 237 at 15.  Again, she is mistaken.  The order on which she relies—Oklahoma Supreme Court Order, S.C.A.D. 2011-08 (Doc. 99-35)—is an administrative one to which judicial immunity does not apply.  That order "directed" Oklahoma district courts "to participate in the misdemeanor or failure-to-pay warrant collection program authorized by Okla. Stat. tit. 19, §§ 514.4 and 514.5."  *See* Doc. 237 at 2.  As already explained, the fact that this instruction to engage a debt collector (the "program" authorized by Okla Stat. tit. 19, §§ 514.4 and 514.5) came from Supreme Court justices does not make it any less administrative.  *See supra* Section I.A.ii.  Further proof of this is found in what "S.C.A.D." stands for:  Supreme Court *Administrative* Docket.  The "administrative directives" that issue on this docket address administrative matters, such as the payment schedule for court reporters, *see In re Fee Schedule of Certified Shorthand Reporters*, 271 P.3d 776 (Okla. S.C.A.D. 2009), and

---

[10] This personnel decision does not become a judicial one simply because it carries with it the addition of a 30 percent fee.  The fee is not a criminal fine imposed in a traditional sense, but an amount used to pay the new personnel being made responsible for collecting the court debt— Aberdeen and the Sheriffs' Association.  *No part of the 30 percent fee is retained by the Tulsa County District Court or any part of the State or county government.*  Okla. Stat. tit. 19, § 514.5(b) (2010).

Brief L

whether to use a private debt collector.  Because the justices themselves would not be entitled to judicial immunity for this administrative decision, Bailey cannot claim derivative immunity for following it.  *See Antoine*, 508 U.S. at 435; *Moss*, 559 F.3d at 1163.

In any event, Administrative Directive 2011-08 does not do what Bailey claims.  It merely instructs Oklahoma district courts to participate in a debt collection program, which can only even be done if the relevant county sheriff chooses to engage a private debt collector.  *See* Okla. Stat. tit. 19, § 514.4(a) (2010) ("[C]ounty sheriffs of any Oklahoma county *may* enter into a private contract." (emphasis added)).  The Administrative Directive does not actually instruct Bailey (or anyone else) when to take the further step of referring individual cases to the debt collector, here, Aberdeen.  It is this latter practice that Plaintiffs challenge.

In the absence of any specific orders—let alone a judicial, as opposed to administrative, order—Bailey attempts to find immunity in the fact that her position as cost administrator falls under the general supervision of the judiciary.  Doc. 237 at 16.[11]  General supervision by judges does not, however, convert every action of a court employee into a judicial act.  *See, e.g.*, *Antoine*, 508 U.S. at 435.  Nor can Bailey alter that conclusion by noting that the Oklahoma Supreme Court once stated that, "in the performance of all ministerial court functions," court clerks "are subject to summary control by the judges."  Doc. 237 at 15 (quoting *North Side State Bank v. Board of Cty. Comm'rs of Tulsa Cty.*, 894 P.2d 1046, 1051 (Okla. 1994)).  The decision to refer an individual case to Aberdeen is not a ministerial one, but an action that—pursuant to a contract entered into *by the Sheriff's Association and Aberdeen* (not a judge)—is vested in the "sole discretion" of the Tulsa sheriff and the Tulsa court clerk (who has engaged Bailey for help).  SAC ¶ 283.  Indeed, even if Bailey is "subject" to control in certain matters, that does not

---

[11] Once more, Bailey's brief undermines her own argument, as she describes a chain of "administrative" supervision.  Doc. 237 at 16.

Brief L

mean that judges exercise such control,[12] and at the pleadings stage, Plaintiffs are entitled to the inference that they do not.

Because the Second Amended Complaint, which must be taken as true at this stage, alleges that Bailey makes administrative decisions about when to refer cases, she is not entitled to judicial or derivative immunity for those referrals.

## II.   Qualified Immunity Does Not Shield Bailey from Suit.

Plaintiffs allege that Bailey has violated four constitutional principles.[13]   Each of those principles is clearly established under existing precedents.

*First*, Bailey requests, and assists Aberdeen in requesting, warrants without making those requests under oath or affirmation.   This violates the Fourth Amendment's requirement that warrants must be based upon probable cause "supported by Oath or affirmation."   U.S. Const., am. IV.   Qualified immunity is no bar to suit when the Fourth Amendment's clear commands are so baldly disregarded.   *See Groh v. Ramirez*, 540 U.S. 551, 563 (2004) ("Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid.").   Lest there be any doubt, the Tenth Circuit has held that a warrant request submitted not under oath was "clearly and obviously invalid."   *Dow v. Baird*, 389 F.2d 882, 883–84 (10th Cir. 1968).

---

[12] For example, as noted above, in *Jones*, the clerk adopted "her *own rule*" that gave "a delinquent payer 30 to 60 days' grace period before she would print the warrant depending on the payment history of the criminal defendant."   2015 WL 1279352, at *2 (emphasis added).

[13] In addition to raising qualified immunity, Bailey asserts at the beginning of her brief that Plaintiffs have not alleged "(1) their constitutional rights were violated by Bailey acting under color of state law, and (2) Bailey subjected or caused Plaintiffs to be subjected to a deprivation of their constitutional rights."   Doc. 237 at 6.   It is unclear what Bailey views as the difference between these two prongs.   What is clear, however, is that Bailey does not address the merits of Plaintiffs' constitutional claims anywhere beyond her discussion of qualified immunity.

Brief L

*Second*, by requesting warrants without regard to ability to pay, Bailey violates the clearly established rule that the government cannot "imprison a person solely because he lacked the resources to pay" a fine. *Bearden v. Georgia*, 461 U.S. 660, 667–68 (1983). *Bearden* addressed the imprisonment phase of proceedings, not the initial steps of obtaining a warrant or arrest. But a constitutional right may be clearly established even when there is no "case directly on point" if "existing precedent . . . place[s] the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation omitted). Here, precedent holding that a person cannot be imprisoned for being too poor to pay a fine places "beyond debate" that the person cannot be arrested, or have a warrant sought, on that basis. No one could reasonably contend, for example, that because the Supreme Court held only that a person cannot be convicted for speech without "inciting . . . imminent lawless action," *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969), a government official would be entitled to qualified immunity for seeking an arrest warrant based on harmless speech.

*Third*, and relatedly, Bailey recklessly omits information related to the debtor's ability to pay when she requests warrants or assists Aberdeen in requesting them. The Tenth Circuit has held that "[i]t is a violation of the Fourth Amendment for an arrest warrant affiant to . . . recklessly omit from the affidavit information which, if included, would have vitiated probable cause." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) (citing *Stewart v. Donges*, 915 F.2d 572, 581–83 (10th Cir. 1990)). Here, the offense for which Bailey seeks warrants is the *willful* refusal to pay court debt. Okla. Stat. tit. 22, § 983(A). By turning a blind eye to ability to pay—and, as a matter of practice, not including information about ability to pay in warrant

requests—Bailey regularly and recklessly omits information in her warrant requests that would "vitiate[] probable cause." *Wolford*, 78 F.3d at 489.[14]

*Fourth*, as explained in Plaintiff's Opposition to the County Sheriffs' Motion to Dismiss in Their Individual Capacity, Plaintiffs have stated a claim under the rule prohibiting onerous methods of debt collection, articulated in *James v. Strange*, 407 U.S. 128 (1972). *See* Br. A, Section IV, pp. 14-16. Bailey's referral of cases to Aberdeen is a key component of this violation. That there may be subtle differences among the various onerous methods applied does not mean that the rule against them is not clearly established. *See Mullenix*, 136 S. Ct. at 308.

*Finally*, there is no basis for Bailey to invoke the rule that qualified immunity may protect a government official who relies on a duly enacted statute or ordinance. Doc. 237 at 16 (citing *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994)). As explained in the preceding discussion of judicial immunity, no statute or court order requires Bailey's practices.

### III.   Plaintiffs Have Standing to Sue Bailey.

Bailey challenges Plaintiffs' standing on the ground that she cannot redress Plaintiffs' injuries because she "is without authority to issue or recall a bench warrant." Doc. 237 at 21. As discussed above, Plaintiffs agree that Bailey cannot issue a warrant, and Plaintiffs do not seek an order requiring her to issue or recall one. Rather, Plaintiffs seek damages for past injuries and an

---

[14] That Bailey may not have actual knowledge of the debtor's inability to pay in every single instance does not render her immune. Her lack of actual knowledge is a consequence of her complete disregard for the key element of the offense (*willful* refusal to pay). Her conduct thus "equate[s] to 'willful blindness,' or constructive knowledge." *Split Rail Fence Co., Inc. v. United States*, 852 F.3d 1228, 1250 n.18 (10th Cir. 2017). Put differently, Bailey cannot escape the reach of the rule articulated in *Wolford* by being so woefully deficient at her task of investigating. As explained above, qualified immunity is unavailable when "existing precedent . . . place[s] the statutory or constitutional question beyond debate," and it does not protect the "plainly incompetent." *Mullenix*, 136 S. Ct. at 308 (citation omitted). Here, existing precedent precludes Bailey from recklessly omitting information pertinent to probable cause. She cannot evade this rule by establishing a practice of refusing to learn that information, *i.e.*, by being "plainly incompetent." *Id.* (citation omitted).

Brief L

order enjoining Bailey's practices relating to *requesting* warrants and referring cases to Aberdeen. Plaintiffs meet all three requirements of Article III standing needed to pursue these claims: "injury-in-fact, causation and redressability." *Finstuen v. Crutcher*, 496 F.3d 1139, 1143 (10th Cir. 2007).

With respect to damages, multiple Plaintiffs have been injured by Bailey's unconstitutional practices. For example, Bailey requested a warrant against Plaintiff Randy Frazier, and that warrant was issued. SAC ¶ 164. She then transferred Mr. Frazier's case to Aberdeen, resulting in Mr. Frazier being subjected to threats of "pay or be arrested," despite his indigence. *Id.* ¶¶ 19, 164. Bailey also assisted Aberdeen in requesting a warrant against Plaintiff Melanie Holmes, and that warrant led to Ms. Holmes' arrest. *Id.* ¶¶ 36, 207–08. And Bailey took all of these actions pursuant to her normal practice of not requesting warrants under oath or affirmation and disregarding ability to pay. *Id.* ¶ 36. These Plaintiffs clearly have suffered past injuries caused by Bailey, and damages will redress those injuries.

With respect to injunctive relief, all Plaintiffs with cases arising in Tulsa County District Court have standing to seek an injunction against Bailey's practice of referring cases to Aberdeen. As noted, Plaintiffs have alleged that Tulsa County stopped using Aberdeen after Plaintiffs filed this case. SAC ¶ 124. This voluntary cessation of the challenged conduct does not moot Plaintiffs claims, of course. *See, e.g.*, *ARW Expl. Corp. v. Aguirre*, 947 F.2d 450, 453 (10th Cir. 1991) ("The voluntary cessation of objectionable conduct does not, as a general rule, render a case moot."). But here, it does create the possibility that Plaintiffs' cases will be sent back to Aberdeen. The requested injunction will redress that anticipated injury.

Multiple Plaintiffs also have standing to seek injunctive relief against Bailey requesting warrants. As explained in Plaintiffs' Opposition to the Judicial Defendants' Motions to Dismiss,

Brief L

*see* Br. H, Section IV.A, pp, 11-13, multiple Plaintiffs cannot pay their court debt and are at imminent risk of having Bailey request new debt-collection arrest warrants against them. *See* SAC ¶¶ 36, 89. An injunction prohibiting Bailey from requesting (or, if Tulsa County begins using Aberdeen again, assisting Aberdeen in requesting) new warrants without regard to ability to pay and without making the request under oath or information will prevent these anticipated imminent injuries.

Bailey's suggestion that such an injunction will not redress the anticipated injuries because she lacks authority to "undertake pre-deprivation procedures regarding . . . ability to pay" misses the point. *See* Doc. 237 at 22. The injury is not the absence of "pre-deprivation procedures" alone, but the deprivation (*i.e.*, the warrants, arrests, and referrals) that results from their absence. Accordingly, an order prohibiting Bailey from continuing to seek unconstitutional warrants and refer cases to Aberdeen will provide the requested relief. If Bailey cannot provide the requisite pre-deprivation process herself, as she claims, then she should not be allowed to seek warrants until another government official does.

## IV. This Court Has Authority to Issue Equitable Relief Against Bailey in Her Individual Capacity.

Bailey next argues that injunctive relief is *never* available against a government official in her individual capacity. Doc. 237 at 20. This argument is belied by the plain text of § 1983, which plainly vests this Court with authority to enjoin any "person" (other than one acting in a judicial capacity) who violates the constitutional rights of another under color of state law. There is no limitation in the text to "persons in their official capacity." So long as the "person" who is sued "cause[d]" the constitutional violation—which Plaintiffs have adequately alleged Bailey did here, *see infra* Section V—this Court has the power to provide equitable relief. *See* 42 U.S.C. § 1983. The Cost Administrator's argument cannot overcome this plain language.

Brief L

*See, e.g.*, *Perano v. Arbaugh*, No. 10-CV-01623, 2011 WL 1103885, at \*6 (E.D. Pa. Mar. 25, 2011) (holding that injunctive relief is available against defendants in their individual capacities); *Molina v. March*, No. CV 07-4296, 2009 WL 10693183, at \*15 (S.D. Tex. Sept. 28, 2009) ("The Court disagrees with Magidson's broad assertion that injunctive suits can only be lodged against defendants in their official capacity."); *cf. also Commonwealth of Pennsylvania v. Porter*, 659 F.2d 306, 313 (3d Cir. 1981) (en banc) (affirming injunction against individual police officer who had left the department because the officer "is still functioning as a policeman, and that the pattern or practice of police misconduct which the [district] court found he had engaged in may, if not enjoined, continue in another part of Pennsylvania").

Bailey invokes *Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011), to argue otherwise, but that case does not support her theory. *Brown*, a case brought against state-level (not municipal-level) officials, included a footnote that cited *Hafer v. Melo*, 502 U.S. 21, 30 (1991), for the proposition that "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." 662 F.3d at 1161 n.5. This language, however, was dicta: the availability of injunctive relief was not at issue in the appeal, and the description of *Hafer* was used only in reference to the uncontested procedural posture (an appeal of a denial of qualified immunity from a damages claim). *Brown* therefore does not bind this Court. Moreover, *Brown*'s dicta is based on a misreading of *Hafer*, which says nothing to imply that suits against individual-capacity defendants can only be for money damages.[15]  And it makes sense that *Hafer* says no such thing, as such a rule cannot be squared with the statute's plain text, which, again, authorizes suit against "*[e]very person*" acting under

---

[15] *Brown* was correct that suits against *state* defendants in their official capacities may only seek injunctive relief.  That is because an official capacity suit against state official for damages is barred by the Eleventh Amendment.  *See Hafer*, 502 U.S. at 30.

Brief L

color of state law.  42 U.S.C. § 1983 (emphasis added).  The only other case Bailey cites, *Toles v. Oklahoma Department of Corrections*, relied on *Brown*, *see* 2017 WL 7734649, at *7 (W.D. Okla. Nov. 27, 2017), and is a district court ruling that does not bind this Court.

Two appellate court rulings, which Bailey does not cite, are also not controlling here.  *See Vasquez v. Davis*, 882 F.3d 1270, 1279 (10th Cir. 2018); *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 718 (10th Cir. 1988).  *Vasquez* cited *Brown* for the proposition that injunctive relief is available in official capacity actions only, but that statement was not necessary to the Court's decision because the injunction in the case "did" issue against an official capacity defendant anyway, rendering the defendant's argument moot.  882 F.3d at 1279. *DeVargas* considered only the burden of defending a claim for injunctive relief in both *Bivens* and § 1983 suits, in the context of determining whether an interlocutory appeal of a denial of qualified immunity may be taken when there is a pending claim for injunctive relief.  It did not actually confront the question whether, if an injunction is unavailable against a defendant in her official capacity, it may be available against her in her individual capacity.[16]

---

[16] This is further illustrated by the fact that other courts addressing the interlocutory appeal issue presented in *DeVargas* found no need to touch upon what type of relief is available in individual capacity suits.  *See, e.g., Young v. Lynch*, 846 F.2d 960, 962 (4th Cir. 1988) (noting that, because "[t]he interlocutory appeal to resolve the question of qualified immunity conclusively determines whether the official's conduct violated clearly established law and therefore whether the official must defend against a claim for damages," the "immunity claim is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated," and to that extent "separable from and collateral to the equitable rights that are asserted"); *id.* (stressing the "considerable differences in both time and expense in defending a case that involves both damages and equitable relief as contrasted to a case that involves equitable relief alone").  As *Lynch* makes clear, the rationale for the rule recognized in cases like *DeVargas*—that denials of qualified immunity are subject to interlocutory review even when there are injunctive claims that would require further litigation anyway—has everything to do with the purposes of qualified immunity and nothing to do with the availability of personal injunctive relief.  *Cf. Behrens v. Pelletier*, 516 U.S. 299, 311–12 (1996) ("The *Harlow* right to immunity is a right to immunity *from certain claims*, not from litigation in general; when immunity with respect to those claims has been

Brief L

Bailey's argument must also be viewed alongside her claim, made in the Tulsa County Defendants' Motion to Dismiss in Their Official Capacity, that she is an improper defendant in her official capacity because she is not a final policymaker. *See* Doc. 238 at 9. Plaintiffs explain in their opposition to that brief why Bailey's official capacity argument is misguided. *See* Br. M, Section IV, pp. 19-21. But the upshot of her two positions, taken together, is that even though she is alleged to be causing ongoing constitutional harms, she cannot be enjoined in her individual capacity at all and cannot be enjoined in her official capacity unless she is acting pursuant to a final municipal policy. Under this theory, if Bailey were to prove during discovery that her conduct is not pursuant to a municipal policy, then she would remain free to continue her unconstitutional conduct and this Court would be powerless to stop her. Plaintiffs submit that both Bailey's individual capacity argument and her official capacity argument are wrong, but at a minimum, they cannot both be correct: to hold otherwise would be to create a significant gap in § 1983's coverage and carve out a loophole contrary to the statute's broad remedial purpose.[17]

Finally, the Court may, at a minimum, issue declaratory relief against Bailey in her individual capacity. To Plaintiffs' knowledge, the Tenth Circuit has not addressed such relief, even in dicta, and granting a declaratory order here would prevent Bailey's attempt to escape all federal review of her ongoing conduct.

## V.   Bailey Has Personally Participated in the Challenged Misconduct.

Bailey's conclusory argument she that has not personally participated in the challenged constitutional violations should be rejected as well. *See* Doc. 237 at 7. The "personal

---

finally denied, appeal must be available, and cannot be foreclosed by the mere addition of other claims to the suit.").

[17] To take a separate example, Bailey's argument would mean that a deputy clerk who refuses to issue marriage licenses to same-sex couples because of her personal beliefs could not be enjoined because (1) as a deputy, she is not a final policymaker and (2) courts can never enjoin officials in their individual capacities.

Brief L

participation" element of a § 1983 claim requires that a plaintiff plead a "direct causal link" between the defendant's conduct and the plaintiff's injury. *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010). It does not mandate "direct participation" in the infliction of the injury and "is not limited solely to situations where a defendant violates a plaintiff's rights by [for example] physically placing hands on him." *Id.* at 1195 (internal quotation marks and citation omitted). Instead, liability also extends to the "defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy" that, when enforced "by the defendant-supervisor or her subordinates," injures the plaintiff. *Id.* at 1199 (emphases added).

The Second Amended Complaint adequately pleads that Bailey participated in causing Plaintiffs' injuries. As explained above, Plaintiffs have alleged that Bailey established and executed the practices that resulted in warrant requests against Ms. Holmes and Mr. Frazier and that resulted in the referral of Mr. Frazier's case to Aberdeen. No more is required. Bailey's assertion that the allegations against her speculate as to "unknown criminal defendants, unrelated to any specific identity, place or time," Doc. 237 at 7, simply ignores the numerous detailed allegations against her. This Court should reject Bailey's argument.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to deny Bailey's motion to dismiss in her individual capacity.

Dated: November 30, 2018

Respectfully submitted,

*/s/Jill E. Webb*
Jill Webb, OBA #21402
J Webb Law Firm PLLC
P.O. Box 1234

Brief L

Tulsa, OK 74101
Tel: 918-346-5664
jill.webb@gmail.com

/s/ Daniel E. Smolen
Daniel Smolen, OBA #19943
Donald E. Smolen, II, OBA #19944
Robert M. Blakemore, OBA #18656
Smolen, Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

/s/ Katherine Hubbard
Katherine Hubbard (admitted *Pro Hac Vice*)
California Bar No. 302729
Ryan Downer (admitted *Pro Hac Vice*)
D.C. Bar No. 1013470
Marco Lopez* (admitted *Pro Hac Vice*)
California Bar No. 316245
Tara Mikkilineni (admitted *Pro Hac Vice*)
D.C. Bar No. 997284
Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
Tel: 202-599-0953
Fax: 202-609-8030
katherine@civilrightscorps.org
ryan@civilrightscorps.org
marco@civilrightscorps.org
tara@civilrightscorps.org

*Admitted solely to practice law in California; not admitted in the
District of Columbia. Practice is limited pursuant to D.C. App. R.
49(c)(3).

/s/ Seth Wayne
Douglas N. Letter (admitted *Pro Hac Vice*)
D.C. Bar No. 253492
Robert Friedman (admitted *Pro Hac Vice*)
D.C. Bar No. 1046738
Seth Wayne (admitted *Pro Hac Vice*)
D.C. Bar No. 888273445
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center

26

Brief L

600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
dl1016@georgetown.edu
rdf34@georgetown.edu
sw1098@georgetown.edu

*Attorneys for the Plaintiffs*

Brief L

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of November, 2018, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

_/s/ Seth Wayne_

Brief L