## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

CARLY GRAFF, et. al.

      *Plaintiffs*,

  v.

ABERDEEN ENTERPRIZES II, INC., et. al.

      *Defendants*.

Case No. 4:17-CV-606-TCK-JFJ

## PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY TULSA COUNTY COURT CLERK, SHERIFF, AND COST ADMINISTRATOR, IN THEIR OFFICIAL CAPACITIES, AND THE BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY

### BRIEF M

Jill Webb, OBA #21402
J Webb Law Firm PLLC
P.O. Box 1234
Tulsa, OK 74101
Tel: 918-346-5664
jill.webb@gmail.com

Katherine Hubbard (admitted *Pro Hac Vice*)
California Bar No. 302729
Ryan Downer (admitted *Pro Hac Vice*)
D.C. Bar No. 1013470
Marco Lopez* (admitted *Pro Hac Vice*)
California Bar No. 316245
Tara Mikkilineni (admitted *Pro Hac Vice*)
D.C. Bar No. 997284
Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
Tel: 202-599-0953
Fax: 202-609-8030
katherine@civilrightscorps.org
ryan@civilrightscorps.org
marco@civilrightscorps.org
tara@civilrightscorps.org

*Admitted solely to practice law in California;
not admitted in the District of Columbia. Practice
is limited pursuant to D.C. App. R. 49(c)(3).

Daniel Smolen, OBA #19943
Donald E. Smolen, II, OBA #19944
Robert M. Blakemore, OBA #18656
Smolen, Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

Douglas N. Letter (admitted *Pro Hac Vice*)
D.C. Bar No. 253492
Robert Friedman (admitted *Pro Hac Vice*)
D.C. Bar No. 1046738
Seth Wayne (admitted *Pro Hac Vice*)
D.C. Bar No. 888273445
Institute for Constitutional Advocacy
and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
Dl1016@georgetown.edu
rdf34@georgetown.edu
sw1098@georgetown.edu

*Attorneys for the Plaintiffs*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ iv

INTRODUCTION ....................................................................................................... 1

RELEVANT BACKGROUND ................................................................................... 1

ARGUMENT ............................................................................................................... 4

    I.    Plaintiffs Have Stated a Claim for Municipal Liability Against Tulsa County ................................................................................................................ 4

        A.    The Tulsa Sheriff Has Final Policymaking Authority with Respect to Engaging Aberdeen, Executing Warrants, and Detaining People Pursuant to Them ........................................................................... 5

            1.    Oklahoma Law Vests Each County Sheriff with Final Authority to Decide Whether to Hire a Debt Collector, Which Debt Collector to Hire, and Provision of Assistance to the Debt Collector ........................................................... 5

            2.    The Tulsa Sheriff Has Final Policymaking Authority Over the Challenged Warrant Execution Practices .................................. 8

            3.    The Tulsa Sheriff Has Final Policymaking Authority Over the Challenged Detention Practices ............................................... 11

        B.    The Tulsa Court Clerk and Cost Administrator Have Final Policymaking Authority with Respect to Referring Cases to Aberdeen and Seeking Warrants ............................................................ 11

            1.    The Tulsa Clerk's and Cost Administrator's Practices of Referring Cases to Aberdeen and Assisting Aberdeen in Obtaining Warrants Are County Policy ....................................... 11

            2.    The Tulsa Clerk's and Cost Administrator's Practices Related to Seeking Warrants Before a Case Is Transferred to Aberdeen Is County Policy ...................................................... 14

    II.    The Tulsa County Defendants' Practices Caused Plaintiffs Injuries and Plaintiffs Do Not Seek to Hold Them Vicariously Liable for Aberdeen, Inc.'s Conduct ...................................................................................... 15

    III.    Tulsa County Is Not Entitled to Eleventh Amendment Immunity ...................... 18

    IV.    Tulsa County Cost Administrator Darlene Bailey Is a Properly Named Defendant ........................................................................................... 19

V.      The Board of County Commissioners of Tulsa County Is a Properly
        Named Defendant ...................................................................................................21

CONCLUSION.............................................................................................................................21

## INDEX OF PLAINTIFFS' OPPOSITION BRIEFS

For ease of reference, each of Plaintiffs' opposition briefs has been labeled by letter according to the motion to dismiss to which it is responsive, listed below.

Brief A: 51 County Sheriff Defendants, Individual Capacity (Doc. 239)

Brief B: Rogers County Defendants, Official Capacity (Doc. 226)

Brief C: Kim Henry, Former Court Clerk of Rogers County, Individual Capacity (Doc. 227)

Brief D: Scott Walton, Sheriff of Rogers County, Individual Capacity (Doc. 228)

Brief E: Aberdeen Enterprizes II, Inc. (Doc. 230)

Brief F: Jim and Rob Shofner (Doc. 231)

Brief G: Oklahoma Sheriffs' Association (Doc. 232)

Brief H: Defendant Judges (Doc. 233)

Brief I: 51 County Sheriff Defendants, Official Capacity (Doc. 234)

Brief J: Vic Regalado, Sheriff of Tulsa County, Individual Capacity (Doc. 235)

Brief K: Don Newberry, Court Clerk of Tulsa County, Individual Capacity (Doc. 236)

Brief L: Darlene Bailey, Cost Administrator of Tulsa County, Individual Capacity (Doc. 237)

Brief M: Tulsa County Defendants, Official Capacity (Doc. 238)

# TABLE OF AUTHORITIES

**Cases**

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175 (10th Cir. 2010)..................... 4, 5

*Brashear v. Tulsa County Board of County Commissioners*, No. 15-CV-473-GKF-PJC, 2016 WL
    633374 (N.D. Okla. Feb. 17, 2016) .................................................................. 21, 22

*Burns v. State*, 220 P.2d 473 (1950) .................................................................................. 11

*Conner v. Drummond*, 46 P.2d 447 (Okla. 1935)................................................................ 12

*Hollingsworth v. Hill,* 110 F.3d 733 (10th Cir. 1997) ............................................... 8, 9

*Jett v. Dallas Indep. Sch. Dist*, 491 U.S. 701 (1989)....................................................... 13

*Jinks v. Richland Cty.*, 538 U.S. 456 (2003)................................................................... 19

*Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391 (1979) ................... 19

*Lopez v. LeMaster*, 172 F.3d 756 (10th Cir. 1999)............................................... 8, 12, 24

*McMillian v. Monroe Cty., Ala.*, 520 U.S. 781 (1997) ................................................. 5

*Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) ........................................ 5, 12, 22

*Moss v. Kopp*, 559 F.3d 1155 (10th Cir. 2009)................................................................ 21

*Moya v. Garcia*, 895 F.3d 1229 (10th Cir. 2018) ........................................... 11, 12, 18

*Myers v. Okla. County Bd. Of County Comm'rs*, 151 F.3d 1313 (10th Cir. 1998) .............. 6, 9, 10

*North Side State Bank v. Board of County Commissioners*, 894 P.2d 1046 (Okla. 1994) .......... 14

*ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018)............................................... 11

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)....................................................... 5, 13

*Scott v. O'Grady*, 975 F.2d 366 (7th Cir. 1992) ........................................................ 9, 20

*Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281 (10th Cir. 2007)........................ 21

*Speight v. Presley*, 203 P.3d 173 (Okla. 2008) ................................................................ 14

*State ex rel. Gaines v. Beaver*, 166 P.2d 776 (Okla. 1945) ............................................. 12

*Webb v. City of Maplewood*, No. 17-2381, 2018 WL 2070564 (8th Cir. May 4, 2018) .............. 20

*Wilson v. Montano*, 715 F.3d 847 (10th Cir. 2013) ........................................................ 10, 18

**Statutes**

2010 Okla. Sess. Law Serv. Ch. 87 (H.B. 3242) ................................................................ 7

Okla. Stat. tit. 12 § 29 ................................................................................................. 15

Okla. Stat. tit. 19, § 514 ........................................................................................ 8, 10

Okla. Stat. tit. 19, § 514.4 ................................................................................... 6, 7, 8

Okla. Stat. tit. 19, § 514.5 ................................................................................... 2, 14

Okla. Stat. tit. 19, § 516 ............................................................................................ 8

Okla. Stat. tit. 19, § 513 ............................................................................................ 8

Okla. Stat. tit. 21 § 1533 ........................................................................................... 15

Okla. Stat. tit. 21 § 1553 ........................................................................................... 15

**Other Authorities**

Op. Okla. Att'y Gen. 85-027 (1985)................................................................................ 11

## INTRODUCTION

In their official capacity motion to dismiss (Doc. 238), Defendants Tulsa County Court Clerk Don Newberry, in his official capacity ("Tulsa Clerk"), Tulsa County Sheriff Vic Regalado in his official capacity ("Tulsa Sheriff"), Tulsa County Cost Administrator Darlene Bailey in her official capacity ("Tulsa Cost Administrator"), and the Board of County Commissioners of Tulsa County, collectively ("Tulsa County Defendants") seek to shift wholesale to the state courts responsibility for the unconstitutional debt-collection scheme in which they have extensively participated and, in many respects, control. The Second Amended Complaint alleges that the Tulsa County Defendants in their official capacity are the final policymakers in their respective roles and that, in these capacities, they have engaged in various unconstitutional practices that enable Defendants' unlawful and extortionate debt-collection scheme to pervade Oklahoma's criminal legal system. The Tulsa County Defendants attempt to evade responsibility for these practices by claiming that they have no discretion to do anything other than transfer cases to a private company that will use threats of arrest to extort money from indigent people, seek arrest warrants for people who do not pay according to the arbitrary terms set by Aberdeen, and arrest and detain people on those warrants. These arguments fail because the law plainly does not require this course of action.

Tulsa County Defendants' additional arguments that the Cost Administrator and Board of County Commissioners are not properly named defendants and that the County is entitled to immunity under the Eleventh Amendment are meritless. The Motion to Dismiss should be denied.

## RELEVANT BACKGROUND

The Second Amended Complaint puts forth numerous allegations that establish that the Tulsa County Defendants are final policymakers for the County whose decisions facilitate the unconstitutional debt collection scheme.

The Tulsa Clerk and Cost Administrator are responsible for collecting court debts in Tulsa

1

Brief M

County. SAC ¶¶ 35-36. As part of that effort, the Tulsa Clerk and Cost Administrator establish payment plans for people owing court debt. *Id.* Under practices that the Tulsa Clerk has established, if a debtor misses a certain number of payments, ranging from six to twelve payments, his office, which includes the Cost Administrator, requests that a judge issue a warrant for the debtor's arrest. SAC ¶¶ 35, 118, 120-21. The requests include no information about the debtor's ability to pay, and the requestor does not attest to facts under oath or affirmation. SAC ¶¶ 35, 120-21. Once the request is submitted, a judge signs the warrant so that it becomes an active arrest warrant. SAC ¶¶ 120-21. The Second Amended Complaint alleges that the Tulsa Clerk and Cost Administrator established these practices for seeking warrants. SAC ¶¶ 35-36.

After a warrant issues in a specific case, the Tulsa Clerk and Cost Administrator choose whether to refer the case to Aberdeen to take charge of collecting the court debt. SAC ¶ 35.[1] If the case is referred, the Tulsa Clerk's office increases the amount the debtor owes by 30 percent. SAC ¶¶ 35, 36, 58. The 30 percent add-on is used to pay Aberdeen for its services and the Oklahoma Sheriffs' Association ("OSA") for overseeing Aberdeen's contract. Okla. Stat. tit. 19, § 514.5(b). The Tulsa Clerk has established practices that require his office to continue to play a role in collecting debt even after referral, specifically, by assisting Aberdeen in obtaining new arrest warrants. If the debtor pays Aberdeen to have a warrant recalled, but then misses payments again, Aberdeen will seek a new warrant. SAC ¶ 126. To do this, Aberdeen makes an informal request for a warrant to the Tulsa Clerk's office. SAC ¶¶ 35, 89, 126. Pursuant to the Tulsa Clerk's practice, his office then assists Aberdeen by putting the request before a judge in a form that allows

---

[1] Tulsa County ceased using Aberdeen to collect debt after Plaintiffs initiated this action, but before the filing of the Second Amended Complaint. SAC ¶ 124. The statement of the relevant background that follows captures the Tulsa Clerk and Cost Administrator's practices prior to the point that Tulsa stopped using Aberdeen.

Brief M

the judge to issue a warrant. SAC ¶ 35. This is done without information about the debtor's ability to pay and without making (or having Aberdeen make) the request under oath or affirmation. SAC ¶¶ 35, 89, 126. The Tulsa Clerk has annotated case dockets in a way that shows collaboration with Aberdeen, Inc., including specifically warning: "DO NOT ISSUE WARRANT UNLESS CONTACTED BY ABERDEEN." SAC ¶ 62. Court clerks assist Aberdeen in its efforts to seek arrest warrants by putting the company's requests before judges. *Id.*

The Tulsa Sheriff is the final policymaker for all county law enforcement and county jail-related decisions in Tulsa County. SAC ¶ 31. In this capacity, the Tulsa Sheriff (along with the other Defendant Sheriffs), through his agent OSA, entered into the Agreement with Aberdeen. SAC ¶ 56. The Agreement contractually delegates to Aberdeen the responsibility to collect court debts, including the authority to determine when to request that new arrest warrants issue, and to control when to request the recall of warrants. SAC ¶ 51.

The Tulsa Sheriff has a policy and practice of arresting individuals with outstanding debt-collection warrants knowing that there has been no pre-deprivation process, no inquiry into ability to pay, and no application made based on sworn assertions of fact sufficient to justify an arrest. SAC ¶ 31. He has a policy of detaining such individuals in the Tulsa County Jail until the following Tuesday or Friday unless the individual pays $250 in cash, without any inquiry into ability to pay. *Id.* The $250 cash release payment, if paid, is not returned upon the arrestee's appearance at any future court date (indeed, there will be no future court date if the person is able to pay the debts in full), but is instead applied to the arrestee's court debts, a portion of which is retained by the Sheriffs. *Id.*

The Board of County Commissioners of the County of Tulsa ("Tulsa County") is the governing body of the County of Tulsa. SAC ¶ 38. Tulsa County, through the Sheriff and the Clerk

Brief M

of Court, is responsible for establishing policy for the Tulsa County jail and for the collection of court debt.

## ARGUMENT

### I.      Plaintiffs Have Stated a Claim for Municipal Liability Against Tulsa County[2]

The Tulsa County Defendants raise two principal and related arguments that Plaintiffs have failed to state a claim for municipal liability against Tulsa County. First, they argue that, in carrying out the conduct challenged in this case, they act as arms of the state courts and thus are state, not county, actors. Second, in a variation on this theme, they argue that the Oklahoma judiciary has final policymaking authority over their conduct. Through these dual assertions, the Tulsa County Defendants seek to shift wholesale responsibility for every policy affecting unlawful debt-collection in their county to the courts. Their arguments are unavailing.

Municipal liability under § 1983 attaches, *inter alia*, where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188-89 (10th Cir. 2010) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Such liability "may be based on a formal regulation or policy statement, or it may be based on an informal 'custom' so long as this custom amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well

---

[2] The Tulsa County Defendants argue that Plaintiffs' RICO claim cannot be brought against a governmental entity.  Regardless of whether this argument is correct, Plaintiffs do not seek to impose RICO liability on Tulsa County. Plaintiffs' RICO claim is against other Defendants: Aberdeen, Inc., Jim and Rob Shofner, the Oklahoma Sheriffs' Association, and the 54 county sheriffs in their individual capacity only. SAC ¶ 275.

Brief M

settled as to constitute a 'custom or usage' with the force of law." *Brammer-Hoelter*, 602 F.3d at 1189 (internal quotation marks omitted). Whether the final policy is carried out on behalf of the state (which is not covered by § 1983) or on behalf of a county or other political subdivision (which are covered by § 1983) is a question of state law. *See generally McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 787 (1997).

The Tulsa County Defendants here are officials with final policymaking authority over their respective roles in the unconstitutional debt-collection scheme described in the Second Amended Complaint. Defendant Sheriff, Court Clerk, and Cost Administrator have taken discretionary actions within their exclusive authority and they act on behalf of Tulsa County, not the State of Oklahoma.

A.     **The Tulsa Sheriff Has Final Policymaking Authority with Respect to Engaging Aberdeen, Executing Warrants, and Detaining People Pursuant to Them**

Plaintiffs seek to hold the Tulsa Sheriff and Tulsa County liable for the Sheriff's conduct in contracting with Aberdeen, executing warrants, and detaining people pursuant to those warrants. An examination of Oklahoma law and Tenth Circuit precedent demonstrates that Sheriffs act as county officials with final policymaking authority in carrying out each one of these practices.

1.     **Oklahoma Law Vests Each County Sheriff with Final Authority to Decide Whether to Hire a Debt Collector, Which Debt Collector to Hire, and Provision of Assistance to the Debt Collector**

The Tulsa County Defendants' argument resisting municipal liability fails to address Count Six of the Second Amended Complaint. This Count seeks to hold the Sheriff liable in his official capacity for his role in contracting with Aberdeen and the attendant violation of Plaintiffs' due process right to a neutral law enforcement actor. *See* SAC ¶¶ 354-59 (Count Six); *see also* Doc. 238 (purporting to identify which of the Sheriff's practices Plaintiffs' complaint challenges, but

Brief M

omitting Count Six). Any argument that the Sheriff is not liable in his official capacity in Count Six is now waived.

In any event, any new argument by the Tulsa County Defendants that would challenge Count Six of the Second Amended Complaint would fail. Sheriffs are county actors with final policymaking authority over "law enforcement activities" in each of their counties. *Myers v. Okla. Cty. Bd. Of Cty. Comm'rs*, 151 F.3d 1313, 1319 (10th Cir. 1998). The decision to hire Aberdeen falls within the scope of that final policymaking authority, as Oklahoma law confirms. The law under which the Tulsa Sheriff hired Aberdeen provided that "the county sheriffs . . . *may*" contract with a private debt collector to allow the debt collector "to attempt[] to *locate and notify persons* of their outstanding misdemeanor or failure-to-pay warrants." Okla. Stat. tit. 19, § 514.4(A) (2010) (emphasis added).[3] Each county sheriff, moreover, had authority to decide whether to enter into the contract itself or to designate OSA as its agent to do so. *Id.* § 514.4(E). "Locat[ing] and notify[ing]" people of warrants is a law enforcement activity within the domain of a county sheriff, as is determining the most effective way to do so—by handling that responsibility with the Sheriff's own employees, by contracting with a private debt collector to do so, or by designating OSA as an agent to contract with a private debt collector. Indeed, the statutory provision giving sheriffs this authority was titled "An Act relating *to counties and county officers* . . . which relate to outstanding warrants; modifying scope of certain contracts; modifying administrative costs for certain warrants; and providing an effective date." 2010 Okla. Sess. Law Serv. Ch. 87 (H.B. 3242) (emphasis added). When the Tulsa Sheriff exercised his discretion under this provision to permit

---

[3] This law was amended as of November 1, 2018.  The new law still gives county sheriffs final policymaking authority, but now only provides the option to contract with OSA, instead of directly with a debt collector. Plaintiffs have attached here a copy of the law in effect at the time this suit was filed. *See* Exhibit A.

Brief M

OSA to hire Aberdeen and then reauthorized that decision year after year, he did so as a county officer and as the officer with final policymaking authority.[4] This same argument applies to Plaintiffs' claims under Count Seven, challenging their subjection to unconstitutionally onerous debt collection by Defendants.

Further indication that the Tulsa Sheriff acted as a county policymaker is found in the Tenth Circuit's treatment of similar state laws. The Tenth Circuit has concluded that sheriffs are final policymakers with regard to county jails by pointing to an Oklahoma law that provides "[t]he sheriff shall have the charge and custody of the jail of his county." Okla. Stat. tit. 19, § 513. *See Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999). And the Tenth Circuit has found that sheriffs are final policymakers with respect to "law enforcement activities" and "the service and execution of orders issued by Oklahoma courts" on the basis of laws that give sheriffs the "duty . . . to keep and preserve the peace of their respective counties," Okla. Stat. tit. 19, § 516(A), and that task the sheriffs with responsibility to "serve and execute, according to law, all process . . . and . . . attend upon the several courts of record held in his county," Okla. Stat. tit. 19, § 514. *See*

---

[4] Although the Tulsa County Defendants have not offered any argument challenging that the Sheriff is a final policymaker for purposes of hiring Aberdeen, Defendant Oklahoma County Sheriff P.D. Taylor has suggested that sheriffs are not final policymakers because the Oklahoma Supreme Court "retains some measure of ability to reject the use of any particular vendor by virtue of the absolute control they maintain over the Oklahoma Court Information Systems (OCIS)." Doc. 215 at 3. Even assuming this is true, nothing in Oklahoma law requires a "vendor" such as Aberdeen to use the Oklahoma Court Information Systems when carrying out its responsibility to "locate and notify" debtors of their warrants. The contract itself acknowledges that some counties do not use OCIS. Doc. 212, Ex. A at 5. Nor can it be said that the Oklahoma Supreme Court bears ultimate responsibility for everything related to Aberdeen, as some Defendants have suggested, because that court issued an administrative order stating that "[e]ach district court is authorized and directed to participate in the misdemeanor or failure-to-pay warrant collection program authorized by Title 19 Oklahoma Statutes Sections 514.4 and 514.5[.]" Doc. 238 at 6. That order instructed "district courts," not sheriffs, and the district courts have a separate role under Sections 514.4 and 514.5, including, for example, to allow payment of court debt in certain forms (such as personal checks and internet payments). *See* Okla. Stat. tit. 19, § 514.4(B) (2010).

*Hollingsworth v. Hill,* 110 F.3d 733, 743 (10th Cir. 1997)*; Reid v. Hamby*, 124 F.3d 217, 1997 WL 537909, at *5 & n.1 (10th Cir. 1997) (unpublished). Just as the sheriffs are county actors and final policymakers for the responsibilities identified in those provisions, so too are they county actors and final policymakers for the decision of whether, and with whom, to contract *in their specific county* under Okla. Stat. tit. 19, § 514.4(A). Tellingly, the provision that vests the sheriffs with authority to decide whether to contract with an entity such as Aberdeen is part of the same chapter of Oklahoma law as these other provisions that clearly concern county functions.

Moreover, under the terms of the contract that the Tulsa Sheriff authorized as county policymaker, he is to assist Aberdeen in its collection activities. *See* SAC ¶ 283 (requiring sheriffs to "provide debtor information"); *id.* (sheriffs and court clerks are granted "sole discretion" to choose cases to transfer to Aberdeen). Any assistance provided to the company is attributable to the contract authorized by each sheriff, making the decision for his county.

The Tulsa Sheriff was thus the final Tulsa County policymaker in the decision to hire Aberdeen and his decision is attributable to Tulsa County, not the state of Oklahoma.

### 2.     The Tulsa Sheriff Has Final Policymaking Authority Over the Challenged Warrant Execution Practices

The Tulsa Sheriff is also the final policymaker with respect to the decision to execute the debt-collection arrest warrants challenged in this case. The Tenth Circuit has already held that Oklahoma sheriffs are final policymakers not only when it comes to "law enforcement activities" in their counties as a general matter, *Myers*, 151 F.3d at 1319, but also specifically as to authority over "the service and execution of orders issued by Oklahoma courts." *Hollingsworth*, 110 F.3d at 743; *see also Myers*, 151 F.3d at 1319 (explaining that, even though the defendant sheriff had obtained a court order authorizing him to take a mentally ill man into custody, if the decision to enter an apartment to execute the order had "resulted in a constitutional violation, *the County*

8

Brief M

would be liable") (emphasis added). Tulsa County's extensive discussion of, and reliance on, the Seventh Circuit's decision in *Scott v. O'Grady*, 975 F.2d 366 (7th Cir. 1992), *see* Doc. 238 at 23-25, is therefore inapposite in the face of more recent governing Tenth Circuit law.

Even if the Tulsa Sheriff would normally be an "arm of the court" when executing judicial orders, Doc. 238 at 18, he is not under the circumstances of this case. This is not a case where the Sheriff steps innocently and unknowingly into the fray after a judge has issued an order. Rather, as Plaintiffs explain in their discussion of why the Sheriff Defendants are not entitled to quasi-judicial immunity, Plaintiffs' opposition to Rogers County Sheriff's individual capacity motion to dismiss, Br. D, Section II.B., pp. 6-11, Plaintiffs have alleged that the Tulsa Sheriff knows that warrants are wrongfully procured through the use of material omissions. *See* SAC ¶ 334. Indeed, the Tulsa Sheriff enables the wrongful procurements of warrants by repeatedly executing such warrants without protest and by reauthorizing the contract with Aberdeen. *Cf. Wilson v. Montano*, 715 F.3d 847, 858 (10th Cir. 2013) (finding sheriff liable where he was "deliberately indifferent to the ongoing constitutional violations which occurred under his supervision . . . ."). These judicial orders thus flow not from the independent decisions of the Tulsa County District Court, but from the "law enforcement activities," *Myers*, 151 F.3d at 1319, within the policymaking authority of the Tulsa Sheriff.

Oklahoma law recognizes that a Sheriff is not required to execute judicial orders where the judicial process is manipulated. It provides that "[t]he sheriff . . . shall serve and execute, according to law, all process, writs, precepts and orders *issued or made by lawful authorities*." Okla. Stat. tit. 19, § 514 (emphasis added). Neither Aberdeen nor the Tulsa Sheriff has the "lawful authorit[y]" to issue a warrant, but they have nonetheless, in effect, seized control of the warrant issuance process by omitting—or, in the case of the Sheriff, ignoring the omission of—material information

Brief M

related to ability to pay.[5] Under such circumstances, Oklahoma law does not compel the Tulsa Sheriff to execute the warrants, given that they were not issued by "lawful authorities." For example, in *Burns v. State*, the Criminal Court of Appeals of Oklahoma found that a warrant could not be lawfully executed, even though it was issued by a judge, because the person who had obtained it was not employed by a sheriff and did not swear to the allegations in the request, creating a risk a false statements. 220 P.2d 473, 475-76 (1950).

The authorities that the Tulsa County Defendants cite are not to the contrary. The cited Oklahoma Attorney General Opinion, Doc. 238 at 20, merely notes that while at common law "a part of the duties of the office of sheriff was to execute process when directed to do so by a court," the rules that now apply are those that were codified in the Oklahoma Statutes. Op. Okla. Att'y Gen. 85-027 (1985). Here, the decision to enforce the unconstitutional warrants accordingly falls within the Tulsa Sheriff's discretion, and was not mandated—or even permitted—by law. Likewise, none of the cases Tulsa County discusses involved any suggestion that the initial arrest and detention were invalid, or any allegation that a sheriff was involved in procuring the unlawful warrant. *See ODonnell v. Harris Cty.*, 892 F.3d 147 (5th Cir. 2018) (Texas law); *Moya v. Garcia*, 895 F.3d 1229, 1236 (10th Cir. 2018)[6]; *Conner v. Drummond*, 46 P.2d 447 (Okla. 1935); *State ex rel. Gaines v. Beaver*, 166 P.2d 776 (Okla. 1945). Their reasoning simply does not apply to these facts

Accordingly, Tulsa County may therefore be held liable under *Monell* for the Sheriff's practices concerning the execution of warrants.

---

[5] Functionally, this is no different than a warrantless arrest, and a Sheriff, of course, does not act as an arm of the state courts in carrying out such arrests.

[6] *Moya* is even farther afield.  It concerned causation under New Mexico law, not whether a sheriff (under Oklahoma law) acts as a county official or an arm of the court.

Brief M

3.    **The Tulsa Sheriff Has Final Policymaking Authority Over the Challenged Detention Practices**

The Tulsa Sheriff likewise bears final policymaking authority for detaining debtors after they are arrested. As noted, the Sheriff is the final policymaker with respect to the jail where the Sheriff holds individuals, like Plaintiff Melanie Holmes, arrested on debt-collection warrants. *See Lopez*, 172 F.3d at 763. Further, the arrestees end up in that jail only because of practices (just described) that fall within the policymaking authority of the Tulsa Sheriff. The judicial order requiring a $250 payment issues only *after* material information has been omitted in a request to the judge for a warrant for arrest. It, too, is not lawful, and for the reasons already stated, the Sheriff is not obligated to execute it.

B.    **The Tulsa Court Clerk and Cost Administrator Have Final Policymaking Authority with Respect to Referring Cases to Aberdeen and Seeking Warrants**

Plaintiffs have also sufficiently alleged that the Tulsa Court Clerk and Cost Administrator have established unlawful practices that are attributable to Tulsa County, not Oklahoma courts. Specifically, the Tulsa Clerk and Cost Administrator determine when to refer cases to Aberdeen and then, in administering that referral, assist Aberdeen in seeking new arrest warrants. Further, the Tulsa Clerk and Cost Administrator act as county policymakers when requesting warrants before a case is ever referred to Aberdeen.

1.    **The Tulsa Clerk's and Cost Administrator's Practices of Referring Cases to Aberdeen and Assisting Aberdeen in Obtaining Warrants Are County Policy**

When considering whether a municipal entity has final policymaking authority for its actions, courts not only consider "state and local positive law," but also "custom or usage having the force of law." *Jett v. Dallas Indep. Sch. Dist*, 491 U.S. 701, 737 (1989) (internal quotation marks and citation omitted). As explained above, the Tulsa Sheriff made the decision to engage

11

Brief M

Aberdeen as an exercise of his policymaking authority. The contract with Aberdeen, in turn, vests the Clerk and Sheriff with the "sole discretion" to choose which cases to refer to Aberdeen. Doc. 212, Ex. A at 4. Plaintiffs have further alleged that, by custom and practice in Tulsa County, the Court Clerk, with the assistance of the Tulsa Cost Administrator, exercises the authority—without any involvement from the Sheriff—to "choose" which cases to refer to Aberdeen. SAC ¶¶ 35-36; 125 ("If no payments have been made within 30 days after the issuance of a debt collection arrest warrant, *the Clerk and Cost Administrator* exercise their discretion under the Agreement to transfer the case to Aberdeen, Inc." (emphasis added)). Once a case is referred, the Clerk and Cost Administrator have an established practice of seeking warrants on Aberdeen's behalf. Because these Defendants have final decisionmaking authority over these processes—referral and warrant requests—as a result of custom or usage, they thus are liable for their "deliberate choice[s] to follow a course of action" that is "made from among various alternatives by the official or officials responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

Contrary to Tulsa County's argument, this is not an area in which the Clerk and Cost Administrator are subject to the supervision of Oklahoma judges who act as the true final policymakers. It was the decision of the Sheriff, not the Oklahoma courts, to engage Aberdeen, and the Clerk and Cost Administrator's settled roles in facilitating Aberdeen's work stems from that decision, which is squarely within the province of a county policymaker. Therefore, the custom and usage under which the Clerk and Cost Administrator refer cases and assists Aberdeen is a county policy as well.

Tulsa County's reliance on *North Side State Bank v. Board of County Commissioners*, 894 P.2d 1046 (Okla. 1994), is misplaced. Although Tulsa County is correct that *North Side* did posit that court clerks are sometimes subject to the "summary control" of judges, that is only for

Brief M

"ministerial court functions." *North Side*, 894 P.2d at 1051. Here, Plaintiffs have alleged (consistent with the text of the contract with Aberdeen) that the Clerk and Cost Administrator exercise discretion when referring cases to Aberdeen. SAC ¶¶ 35-36; *cf. Speight v. Presley*, 203 P.3d 173, 177 (Okla. 2008) ("The district court clerk is judicial personnel' and is an arm of the court whose duties are ministerial, except for those discretionary duties provided by statute." (internal quotation marks omitted)). *North Side* is further inapposite because it addressed a court clerk's handling of *state funds*. 894 P.2d at 1052. Here, by contrast, the 30 percent penalty that Aberdeen collects results from a contract with a county official (the Sheriff, through OSA as its agent) and, indeed, no part of the 30 percent penalty is retained by the state courts. *See* Okla. Stat. tit. 19, § 514.5(B) (2010). These funds are therefore more akin to the county funds that, as *North Side* explained, the Clerk handles as a county official. 894 P.2d at 1052.

That the Chief Justice of the Oklahoma Supreme Court directed district courts to participate in the misdemeanor or failure-to-pay warrant collection program also does not undermine the conclusion that the Clerk and Cost Administrator exercise final policymaking authority. First, that order is directed specifically at the courts themselves, and not at court clerks or cost administrators. It therefore cannot explain or excuse these Defendants' actions. Second, nothing in that order or the orders from the individual district courts instructs the Clerk and Cost Administrator on when or how to refer individual cases to Aberdeen. As noted, that authority could only come from the contract in the first instance and has only taken hold through settled custom and usage not attributable to the Oklahoma courts.

Finally, any suggestion that the Tulsa Clerk is compelled by law to simply transmit Aberdeen's patently unlawful warrant requests to a judge is contradicted by Oklahoma law. The Clerk may "refuse to file any document presented for filing if the clerk believes that the document

Brief M

constitutes sham legal process as defined by [Okla. Stat. tit. 21 § 1533]." Okla. Stat. tit. 12 § 29.

Sham legal process is broadly defined and includes the "issuance, display, delivery, distribution,

reliance on as lawful authority, or other use of an instrument that is not lawfully issued . . . and

[that] purports to" be an arrest warrant or other court order, require the arrest of any person, or

"assert jurisdiction or authority over" the rights or privileges of any person or property. Okla. Stat.

tit. 21 § 1553(H)(1). The term "lawfully issued" is defined to mean "in accordance with the

applicable statutes, rules, regulations, and ordinances of the United States, a state, or a political

subdivision of a state." Okla. Stat. tit. 21 § 1533(H)(2). In this case, the arrest warrants sought by

Aberdeen and processed by the Court Clerks were not lawfully issued and thus constitute sham

legal process. This is particularly evident in that the warrant applications lack oath or affirmation

or any hint of a basis for probable cause. Nevertheless, the Clerk did not refuse to participate in

their execution.

> 2. **The Tulsa Clerk's and Cost Administrator's Practices Related to Seeking Warrants Before a Case Is Transferred to Aberdeen Is County Policy**

Defendants Tulsa Clerk and Cost Administrator also use their authority and discretion to

intentionally further the nefarious debt-collection scheme challenged in the Second Amended

Complaint when they request warrants before a case is ever sent to Aberdeen. When the Tulsa

Clerk seeks a debt collection arrest warrant in Tulsa County, "[a]s a matter of policy and practice,

no information concerning the debtor's indigence is included, *even when the debtor had informed

the Cost Administrator that the debtor is unable to pay*." SAC ¶ 120 (emphasis added).  Defendants

Brief M

cannot plausibly argue that the courts are responsible for *their* policy of deceiving the courts by withholding information relevant to the warrant process.[7]

*          *          *

Despite their arguments, then, the Sheriffs, Court Clerks, and Cost Administrator are final policymakers within their respective areas of authority, and each is liable under § 1983. Thus, Plaintiffs have stated a claim for municipal liability.

## II.    The Tulsa County Defendants' Practices Caused Plaintiffs Injuries and Plaintiffs Do Not Seek to Hold Them Vicariously Liable for Aberdeen, Inc.'s Conduct

The Tulsa County Defendants next argue that no county policy caused, or was the "moving force" behind, the conduct challenged in this case. Doc. 238 at 21-22. They are wrong: each of the five county policies described above injured Plaintiffs.

*First*, the decision to authorize OSA to contract with Aberdeen resulted in violating the right of multiple Plaintiffs to have a law enforcement actor untainted by financial bias oversee their case, and has subjected Plaintiffs to onerous debt collection practices. *See generally* Response in Opposition to 51 County Sheriffs' official capacity motion to dismiss, Br. I, Section I.A., pp. 11-14. Under Count Six, Plaintiffs do not seek to hold Tulsa County liable for all of Aberdeen's misconduct, as the Tulsa County Defendants suggest, *see* Doc. 238 at 22, but simply for the Sheriff's own unconstitutional decision to enter into a contract—and then continue to reauthorize OSA to renew the contract—that had an impermissible financial bias in its plain text. SAC ¶¶ 29,

---

[7] Defendants, relying on *Cain v. City of New Orleans*, No. 15-4479, 2016 U.S. Dist. LEXIS 63510 (E.D. La. May 13, 2016), argue that they do not actually request warrants.  As explained in Plaintiffs' response in opposition to the Tulsa Cost Administrator's individual capacity motion to dismiss, Br. L, Section I.A.iii, pp. 12-14, this assertion is incorrect.

Brief M

31.[8] Similarly, under Count Seven, Plaintiffs seek to hold Tulsa County liable for the decision to subject Plaintiffs to Aberdeen's threats, harassment, and warrant-seeking, and the harms (including imprisonment) that have resulted therefrom, in addition to the 30% surcharge applied from Tulsa County's decisions to transfer Plaintiffs' cases to Aberdeen for collection. Further, as already explained and contrary to the Tulsa County Defendant's argument, Doc. 238 at 22, the Oklahoma Supreme Court did not direct county sheriffs to do anything. It instead instructed district courts to participate in warrant collections programs. It certainly did not direct the Tulsa Sheriff, specifically, to hire Aberdeen, specifically, or to transfer any individual cases to Aberdeen.

*Second*, the Sheriff's unconstitutional policy of executing warrants obtained through material omissions has injured Plaintiff Melanie Holmes, who was arrested on a debt-collection warrant and taken into the Sheriff's custody at the Tulsa County jail. SAC ¶ 209. The Sheriff's assertion that her injury flows from a court order is wrong for the same reason that the Sheriff is wrong that he acted as an arm of the court in executing the order. *See* Section I.A.ii., *supra*.

*Third*, the Sheriff's detention policies also caused Melanie Holmes to be held in jail for six days when she was arrested. SAC ¶ 209. Though the Sheriff might assert that Ms. Holmes's injury was caused by the "judicial order" that required her to pay money for her release, that assertion would be incorrect. As the Tenth Circuit has explained, if a person is held in jail because the jailer's policies deprived a court of information that would result in release, the jailer, not the court, caused

---

[8] Tulsa County cannot and does not claim that it was unaware of Aberdeen's financial incentives. The Sheriff has (through OSA) allowed the contract to exist and be renewed for years; the financial bias is part of the terms of the contract; the Sheriff—under the contact's terms, if not in practice— has his own responsibilities under the contract such that it may be inferred (at the pleadings stage) that he has read the contract; and as a matter of general knowledge, it is likely (though not required) that a debt collector will retain a percentage of the debt collected. *See* Doc. 212-1 at 4-5. Plaintiffs are therefore entitled to an inference at this stage that the Sheriff knows of Aberdeen's financial incentives.

Brief M

the injury. *Wilson v. Montano*, 715 F.3d 847, 857 (10th Cir. 2013); *see also Moya*, 895 F.3d at 1233 ("Without a complaint, the court could not make a probable-cause determination. By [not filing a complaint and thus] preventing a probable-cause determination, the sheriff [in *Wilson*] impeded the criminal-justice process."). Here, because the Sheriff had an established practice of executing warrants requested on the basis of material omissions and turned a blind eye to such omissions, key information about ability to pay never reached the court. One can assume (for causation purposes) that if a judge in Tulsa County were in possession of information about the arrestee's indigence, the judge would follow the law and not require the arrestee to pay high amounts to gain her release.

**Fourth**, the Clerk and Cost Administrator's practice of referring cases to Aberdeen and then assisting Aberdeen in securing warrants has also injured Ms. Holmes. Not only was she arrested on one Aberdeen-requested warrant in 2016, *see* SAC ¶¶ 207, 209, but also a more recent warrant issued against her after she was released from jail, *see* SAC ¶ 25. Aberdeen requested that most recent warrant, and the Clerk and Cost Administrator assisted Aberdeen in making the request, *after* Holmes told Aberdeen she could not afford to pay. *See* SAC ¶ 211; *see also* SAC ¶ 126.

**Fifth**, the Clerk and Cost Administrator's practice of requesting warrants even before a case is referred to Aberdeen resulted in a warrant request, and issuance, against Plaintiff Randy Frazier.[9]

---

[9] Plaintiffs explain in their response to Tulsa County Sheriff Vic Regalado's individual capacity motion to dismiss how these policies violate the constitution. Br. J, Section III, pp. 9-20.

Brief M

### III.     Tulsa County Is Not Entitled to Eleventh Amendment Immunity

Tulsa County argues that it enjoys Eleventh Amendment immunity from this suit "as an arm of the State Court." Doc. 238 at 22-25. As applied to the County itself, this argument is incorrect on its face because the Supreme Court has made clear that municipalities do not have Eleventh Amendment immunity. *Jinks v. Richland Cty.*, 538 U.S. 456, 466 (2003); *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401 (1979) (noting that the Supreme Court "has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power'"). Accordingly, the Eighth Circuit recently explained that courts do not apply the "real, substantial party in interest" test invoked by Tulsa County here, Doc. 238 at 33, "to find that a municipality itself had immunity." *See Webb v. City of Maplewood*, 889 F.3d 483, 486 (8th Cir. 2018), *cert. denied sub nom. City of Maplewood, Mo. v. Webb*, No. 18-342, 2018 WL 4408429 (U.S. Oct. 15, 2018).

The County's argument may be that, insofar as the District Court of Tulsa County is an arm of the state, so is the County Sheriff when he executes District Court orders, such that the County cannot be held liable for the Sheriff's conduct. *See* Doc. 238 at 24-25 (arguing that Oklahoma law requires the Sheriff to execute District Court orders on pain of punishment, and that this makes the Sheriff an arm of the state). This argument, however, fails for the reasons described above. The County Sheriff is not simply executing a court order. He plays a role in wrongfully obtaining that order, and the execution of that order (and subsequent detention) flow from his wrongful conduct as a county law enforcement official, not as an arm of the state.

Even assuming for the sake of argument that the Tulsa Sheriff is a state actor when carrying out the orders at issue in this case, Plaintiffs' claims for prospective relief against the Sheriff still

Brief M

survive. *Cf. Scott v. O'Grady*, 975 F.2d 366, 369, 371 (7th Cir. 1992) (holding that a county sheriff was acting as a state official when he enforced state court orders and was therefore not liable for § 1983 *damages* when sued in his official capacity, but noting that under *Ex parte Young*, an official-capacity suit for prospective injunctive relief is not barred by the Eleventh Amendment). The law is clear: whether or not the County could be made to compensate Plaintiffs for the past harm caused by the Sheriff's enforcement of district court orders, this Court has the power to tell the Sheriff to *stop committing further constitutional violations*. If Tulsa County District Court judges ordered the Sheriff to detain only Muslims, or to detain only women, this Court would clearly have the power to issue an injunction ordering the Sheriff to stop enforcing those orders, regardless of whether the County government could be required to pay damages to individuals detained in the past pursuant to such orders.

**IV.    Tulsa County Cost Administrator Darlene Bailey Is a Properly Named Defendant**

Defendants argue that Darlene Bailey, the Tulsa Cost Administrator, should be dismissed because she is not a "policymaker" and thus no "official capacity" suit is available against her. Doc. 238 at 8-9. This contention disregards the allegations in the Second Amended Complaint, which state that the Cost Administrator is responsible for multiple Tulsa County policies including collecting court debts, setting initial payment plans, seeking debt-collection arrest warrants, transferring cases to Aberdeen, and assessing a 30-percent penalty surcharge. *See* SAC ¶ 36. As argued above, the allegations establish that the Cost Administrator is a final policymaker for Tulsa County.

Even assuming that the Cost Administrator is not a "policymaker," the Tulsa County Defendants incorrectly insist that she has been improperly named a defendant in this action. A suit for damages against a defendant in her official capacity "generally represents only another way of

Brief M

pleading an action against an entity of which an officer is an agent." *Moss v. Kopp*, 559 F.3d 1155, 1168 n.13 (10th Cir. 2009) (citation, quotation, and brackets omitted). A municipal entity, in turn, may be held liable for this misconduct of such agents when they act pursuant to a municipal policy, regardless of whether the agent is a "policymaker." *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1284 (10th Cir. 2007) ("[A]ctions taken by employees in compliance with official policy or custom are one way to establish liability on the part of a municipality."). Indeed, the only case that the Tulsa County Defendants cite, *Brashear v. Tulsa County Board of County Commissioners*, found that an official capacity suit against two deputies is among the "permissible methods of pleading a *Monell* claim." No. 15-CV-473-GKF-PJC, 2016 WL 633374, at *4 (N.D. Okla. Feb. 17, 2016).[10] Thus, even if the Cost Administrator is subordinate to the Court Clerk as Defendants argue, actions that she takes in compliance with the official policy established by the Clerk (*see* section I.B., *infra*) establish liability on the part of the municipality.

The Tulsa County Defendants' argument also disregards that Plaintiffs seek injunctive relief against the Cost Administrator in her official capacity. Hence, even if the Tulsa County Defendants were correct that the Cost Administrator is improperly named for purposes of compensatory relief—and they are not—Plaintiffs still have a live claim against her for injunctive relief. Other than their sweeping and conclusory assertion that a non-policymaker is not a proper defendant, Tulsa County has presented no reason why injunctive relief is unavailable against the Cost Administrator in her official capacity.

---

[10] The court in *Brashear* did find the damages suit against the deputies duplicative of the one against the County, but the County there did not contest that it was a properly named defendant. By contrast, the next section in the Tulsa County Defendants' brief argues that the County should be dismissed.

Brief M

The Cost Administrator's argument must also be viewed alongside her claim, made in her individual capacity brief, that injunctive relief is *never* available against a government official in her individual capacity. Doc. 237 at 20. Plaintiffs explain in their opposition to that brief why the Cost Administrator's individual capacity argument is incorrect, Br. L, Section IV, pp. 21-24, but the upshot of the Cost Administrator's two positions, taken together, is that even though she is continuing to cause constitutional harms, she cannot be enjoined in either her individual or official capacity, *i.e.*, she is free to continue her unconstitutional conduct and this Court is powerless to stop her. Both of the Cost Administrator's contentions are wrong, but at a minimum, they cannot both be correct: holding otherwise would create a significant gap in § 1983's coverage, contrary to § 1983's text and remedial purpose.[11]

## V. The Board of County Commissioners of Tulsa County Is a Properly Named Defendant

Defendants argue that the Board of County Commissioners of Tulsa County cannot properly be named as a defendant here because the Sheriffs and Court Clerks are alone responsible for the alleged activities imputed to the County, and because there are no allegations of participation by the Boards. Doc. 238 at 9-10. Plaintiffs explain why this argument is incorrect in their opposition to the Rogers County Defendants' motion to dismiss in their official capacity. *See* Br. B, Section V, pp. 12-13.

## CONCLUSION

Plaintiffs have stated a claim for municipal liability against Tulsa County for its role in Defendants' unconstitutional debt-collection scheme, the Cost Administrator and Board of

---

[11] To take a separate example, the Cost Administrator's argument would mean that a deputy clerk who refuses to issue marriage licenses to same-sex couples because of her personal beliefs could not be enjoined because (1) as a deputy, she is not a policymaker and (2) courts can never enjoin officials in their individual capacities.

Brief M

Commissioners are properly named, and the County is not entitled to Eleventh Amendment immunity. Accordingly, Defendants' Motion to Dismiss should be denied.

Dated: November 30, 2018

Respectfully submitted,

*/s/Jill E. Webb*
Jill Webb, OBA #21402
J Webb Law Firm PLLC
P.O. Box 1234
Tulsa, OK 74101
Tel: 918-346-5664
jill.webb@gmail.com

*/s/ Daniel E. Smolen*
Daniel Smolen, OBA #19943
Donald E. Smolen, II, OBA #19944
Robert M. Blakemore, OBA #18656
Smolen, Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

/s/ *Katherine Hubbard*
Katherine Hubbard (admitted *Pro Hac Vice*)
California Bar No. 302729
Ryan Downer (admitted *Pro Hac Vice*)
D.C. Bar No. 1013470
Marco Lopez* (admitted *Pro Hac Vice*)
California Bar No. 316245
Tara Mikkilineni (admitted *Pro Hac Vice*)
D.C. Bar No. 997284
Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
Tel: 202-599-0953
Fax: 202-609-8030
katherine@civilrightscorps.org
ryan@civilrightscorps.org
marco@civilrightscorps.org
tara@civilrightscorps.org

*Admitted solely to practice law in California; not admitted in the District of Columbia. Practice is limited pursuant to D.C. App. R. 49(c)(3).

Brief M

/s/ *Seth Wayne*
Douglas N. Letter (admitted *Pro Hac Vice*)
D.C. Bar No. 253492
Robert Friedman (admitted *Pro Hac Vice*)
D.C. Bar No. 1046738
Seth Wayne (admitted *Pro Hac Vice*)
D.C. Bar No. 888273445
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
dl1016@georgetown.edu
rdf34@georgetown.edu
sw1098@georgetown.edu

*Attorneys for the Plaintiffs*

Brief M

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of November, 2018, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

_/s/ Seth Wayne_

Brief M