# United States District Court
### NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARLY GRAFF, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:17-CV-606-TCK-JFJ |
| ) | |
| ABERDEEN ENTERPRIZES II, INC., ) | |
| et al. ) | |
| ) | |
| Defendants. ) | |

**REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT BY DEFENDANTS
TULSA COUNTY COURT CLERK, TULSA COUNTY SHERIFF, AND
TULSA COST ADMINISTRATOR, IN THEIR OFFICIAL CAPACITIES,
AND THE BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY**

**Joel L. Wohlgemuth, OBA #9811**
**Jo Lynn Jeter, OBA #20252**
NORMAN WOHLGEMUTH CHANDLER JETER
BARNETT & RAY
2900 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

**Douglas A. Wilson, OBA#13128**
Assistant District Attorney
TULSA COUNTY DISTRICT ATTORNEY'S
OFFICE
500 S. Denver Ave., Suite 832
Tulsa, OK 74103
Telephone: (918) 596-8795
Facsimile: (918) 596-4804

**Kim M. Hall, OBA #16100**
Assistant District Attorney
TULSA COUNTY DISTRICT ATTORNEY'S
OFFICE
500 S. Denver Ave., Suite 827
Tulsa, OK 74103
Telephone: (918) 596-4845
Facsimile: (918) 596-4804

**ATTORNEYS FOR DEFENDANTS VIC REGALADO, SHERIFF OF TULSA COUNTY,
DON NEWBERRY, TULSA COUNTY COURT CLERK, DARLENE BAILEY, TULSA
COUNTY COURT COSTS ADMINISTRATOR, AND BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY OF TULSA**

Plaintiffs are convicted criminal defendants who bring suit under § 1983 against the Sheriff, Court Clerk[1] and Board of County Commissioners (collectively, "Tulsa County") (and more than 60 other defendants, including state judges, other counties and private parties) seeking damages, declaratory and prospective injunctive relief.[2]  *See* Second Amended Complaint ("SAC"), Doc. #212.  They allege their constitutional rights were and are being violated by the Sheriff, Court Clerk and his deputy in carrying out the different roles each plays in the collection of past-due court debt owed the State of Oklahoma, and in the preparation of, and compliance with, the court's failure-to-pay bench warrants.  *See* SAC, Counts 2 through 7, ¶¶ 318-362, Doc. #212.  Tulsa County moves to dismiss on the ground, that with respect to such matters, its local governmental actors *perform state functions within the state's judicial hierarchy* pursuant to judicial orders, court rules, state statutes, attorney general opinions and case law that impose upon them contempt of court, criminal penalties and removal from office for noncompliance.  *See* Tulsa County's Motion to Dismiss ("Motion"), pp. 3-8, 12-25, Doc. #238.

Plaintiffs oppose the Motion by reiterating their conclusory allegations in the SAC that the acts complained of are county polices[3] as opposed to state polices, and point to the actors

---

[1] And one of his deputy clerks, who serves him as Tulsa County's Cost Administrator.

[2] Plaintiffs' only factually supported allegations involving Tulsa County and/or judges within the 14th Judicial District are in paragraphs 19-21, 23, 25, 161-80, 186-93 and 200-13 of their SAC. The vast majority of the allegations in Plaintiffs' SAC, for example, that the Court Clerk's preparation of a failure-to-pay bench warrant amounts to "seeking" such a warrant, or that the Sheriff's execution of such a warrant is done "with knowledge that [it was] issued without any pre-deprivation process," are the sort of conclusory formulaic assertions which the Supreme Court found "disentitles them to the presumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (regarding conclusory allegations that "petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest[;]' … that Ashcroft was the 'principal architect' of this invidious policy, and that Mueller was 'instrumental' in adopting and executing it.")

[3] As evidenced by the number of counties sued, such "county policies" oddly exist statewide.

sued as being labeled "county" actors, but Plaintiffs otherwise offer little to no analysis of state law in support of their position. *See* Plaintiffs' Brief in Opposition ("Response"), Doc. #279.[4] In support of the subject § 1983 municipal liability claims, Plaintiffs identify in their Response the following particular acts undertaken by local governmental actors allegedly in the establishment of, or in adherence to, *county policy* in violation (allegedly) of their constitutional rights:

> (1) The Sheriff assigned to the Oklahoma Sheriff's Association ("OSA") the right to contract with a third-party contractor, in this case, Aberdeen Enterprizes, II, Inc. ("Aberdeen"), to attempt to locate and notify criminal defendants of their outstanding failure-to-pay bench warrants and collect the past-due court debt owed to the State of Oklahoma;
>
> (2) The Court Clerk and/or his deputy prepared failure-to-pay bench warrants for issuance by the state judiciary;
>
> (3) The Court Clerk and/or his deputy referred cases with outstanding failure-to-pay bench warrants to Aberdeen for collection of the past-due court debt and communicated with Aberdeen regarding same;
>
> (4) The Sheriff complied with failure-to-pay bench warrants by taking into custody the criminal defendant named therein according to the terms of the warrant issued by the state court judge; and
>
> (5) The Sheriff complied with the failure-to-pay bench warrants by detaining the criminal defendant until the court authorized his release.

*See* Response, pp. 4-15, Doc. #279. Additionally, the parties disagree about whether deputy clerk Darlene Bailey is a proper party defendant in her official capacity, and whether the Board of County Commissioners of Tulsa County ("BOCC") is a proper party defendant.

Under 42 U.S.C. § 1983, a county cannot be held to answer for policies, rules or decisions officially adopted by the state legislature or state judiciary. *Surplus Store and Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 791-92 (10th Cir. 1991). Liability against a

---

[4] Despite the page limitations established by this Court (Docs. #165, #259), Plaintiffs' Response references 28 other pages of argument spread across 5 different briefs. *See* Response, pp. 9, 15, 17 and 21, Doc. #279. Tulsa County is unable to address the additional 28 pages tendered by Plaintiffs without violating this Court's page limitations.

municipality under § 1983, whether for damages or prospective injunctive relief, must be predicated on "the municipality's own wrongful conduct," not on the municipality being responsible for the acts of another – not even an employee. *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 38 (2010). "[T]he action that is alleged to be unconstitutional [must] implement[] or execute[] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. at 36. "A court's task is to identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 784-86 (1997). As noted by Plaintiffs: "Whether the final policy is carried out on behalf of the state (which is not covered by § 1983) or on behalf of a county or other political subdivision (which are covered by § 1983) is a question of state law." Response, p. 5, Doc. #279. In this analysis, labels can be misleading. *McMillian*, 520 U.S. at 786. The Tenth Circuit has ruled that the acts of a municipal judge *in performing a state judicial function* do not establish municipal policy. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1190 (10th Cir. 2003) (collecting cases).

An analysis of state law reveals that the Sheriff, Court Clerk and their deputies do what they do according to state statute under the direction and control of the state judiciary in order to collect past-due court debt owing the State of Oklahoma. As a matter of law, such acts do not implement or execute county policy.

(1)   Plaintiffs argue that the Sheriff's decision to contract with OSA in order to implement the misdemeanor and failure-to-pay warrant collection program authorized by 19 *Okla. Stat.* §§ 514.4 and 514.5 (2010) ("Statutory Collection Program")[5] establishes "county policy" that

---

[5] *See* Doc. #279-1 for the text of these statutes in effect when Plaintiffs filed this action.

3

directly violates Plaintiffs' federally-protected rights.  *See* Response, p. 6, Doc. #279.  Plaintiffs do not explain how the Sheriff's assignment to OSA of the right to contract with a private debt collector (SAC, ¶ 5, Doc. #212) violates their constitutional rights, nor do they argue that the Statutory Collection Program is unconstitutional on its face.[6]  This Court "must presume that a state statute is constitutional."  *Eaton v. Jarvis Products*, 965 F.2d 922, 929 (10th Cir. 1992).  The very terms of the statute grant the Sheriff authority to assign to OSA the decision as to which private third-party contractor to retain.  *See* 19 Okla. Stat. § 514.4(E).  Moreover, under 19 *Okla. Stat*. § 514.4, the Sheriff's decision in this respect must be carried out "pursuant to Section 85.41 of Title 74 of the Oklahoma Statutes," which establishes the requirements for *state agencies* to enter into professional services contracts.  *See* 74 Okla. Stat. § 85.41.  Clearly, the legislature understood that the private third-party contractor would be retained *on behalf of the State of Oklahoma*.  After all, the Statutory Collection Program is expressly intended to collect past due court debt owing the State of Oklahoma.  A sheriff's decision to implement the program is both statutorily and economically carried out on behalf of the state judiciary, not the county.

(2)   Plaintiffs argue that the preparation of failure-to-pay bench warrants establishes *county policy* that directly violates Plaintiffs' federally protected rights.  *See* Response, pp.14-15, Doc. #279.  Plaintiffs conclusorily allege that the Court Clerk and his deputy "seek" or "request" failure-to-pay bench warrants without following the same procedures required of law enforcement officials who must testify by affidavit to a neutral magistrate to obtain an arrest warrant for a suspected criminal.  *Id*.  The state judiciary looks to "the Court Clerk's office, and specifically the Cost Administrator, to determine those criminal defendants who failed to pay

---

[6] Unlike *Ex parte Young*, 209 U.S. 123, 159 (1908), Plaintiffs do not bring this action to prospectively enjoin state officers in their official capacities from "enforc[ing] a legislative enactment which is void because unconstitutional."

court-ordered fines in criminal cases and to prepare bench warrants for the judges' signature for those persons." *Jones v. Hacker*, 2015 WL 1279352, *1 (E.D. Okla. 2015). The Court Clerk and his deputy do not function in such matters as county law enforcement officials, but rather as arms of the district court – an agency of the State's judicial branch. *Id*; *Okla. Const.* Art. 7.

Oklahoma's seventy-seven counties are divided into twenty-six judicial districts, each with its own district court and at least one district court judge; these judicial districts are then divided into nine judicial administrative districts, each with its own presiding administrative judge. 20 *Okla. Stat.* §§ 22-23 and 92.1–92.27; *Okla. Const.* Art. 7, § 7. Each county is required to provide a court room and an office for the judge of the *district court*, but each judge serves his or her judicial district, not the county. 19 *Okla. Stat.* § 401; George B. Fraser, "Oklahoma's New Judicial System," 21 *Okla. L. Rev.* 373, 375 (1968) ("Fraser"); *Okla. Const.*, Art. 7. *Unless granted* **statutory authority** *to exercise his discretion, the Court Clerk – an elected county official – and his deputies serve within the State's judicial hierarchy* subject to the authority of a District Judge, the Presiding Administrative Judge, and ultimately the Chief Justice of the Supreme Court. Rule 2 of the Oklahoma Supreme Court Rules on Administration of Courts sets forth the following chain of command for any deputy clerk in the District Court Clerk's office:[7]

| Chief Justice of the Supreme Court |
| Presiding Judge of the Judicial Administrative District |
| A District Court Judge of the Judicial District |
| District Court Clerk |
| Deputy Clerk |

20 *Okla. Stat.* Ch.1, App. 2, Rule 2. *See also Petuskey v. Cannon*, 1987 OK 74, ¶ 20, 742 P.2d 1117, 1121 ("[T]he District Court Clerk is 'judicial personnel' as the term is used in Rule 2 of Administration of Courts, *supra*. He is an arm of the court, whose duties are ministerial, except

---

[7] The role of Chief Judge of the Judicial District is omitted because the Presiding Administrative Judge takes on the role of Chief Judge in Oklahoma and Tulsa Counties.

5

for those discretionary duties provided by statute."); and Fraser at 385 ("The supreme court has the power and the duty to exercise control over the various officers of the courts including court clerks, court reporters, bailiffs, and, when they are engaged in activities that are connected with the legal system, sheriffs. Also, the supreme court has superintending control over court funds, law libraries, and other activities that are related to the legal system."). The Oklahoma Supreme Court exercises significant authority over the collection of court debt by virtue of its general superintendent control over all inferior courts, *Okla. Const*. Art. 7, § 4, and express statutory authority to institute a fines, fees and costs collection program. 28 *Okla. Stat*. § 151(D).

District Attorneys prosecute on behalf of the State of Oklahoma individuals charged with violating the State's criminal code. In all such proceedings, certain fines, fees, costs and/or restitution are imposed against the defendant at the time of sentencing. *See, e.g.*, 21 *Okla. Stat*. § 64; 28 *Okla. Stat.* § 153. This criminal court debt is "part of the penalty of the offense of which the defendant [is] convicted." 28 *Okla. Stat*. § 101. When a criminal defendant is unable to pay in full, the district court may allow him to pay his criminal court debt in installment payments and "shall set the amount and date for each installment." 22 *Okla. Stat*. § 983(B) (2000). Upon payment of this court debt to the Court Clerk in satisfaction of the sentence, it is deposited in the Court Fund to defray the expense of holding court. 20 *Okla. Stat*. § 1301. By statute, the County Treasurer acts "**as an agent of the state** in the care and handling of the Court Fund." *Id*.

If the district court does not receive an installment payment when due and the convicted criminal fails to appear and explain such failure, the district court may issue a statewide bench warrant for his arrest based on his failure to pay or appear. 22 *Okla. Stat*. §§ 454-58, 966A, 967, 1115.4(B), 1151.1(D)&(E) and 1151.1A (D)&(E); 19 *Okla. Stat*. § 514.4; and *Jones, supra.* While his criminal court debt remains outstanding, a convicted criminal does not enjoy the absolute liberty to which every citizen is entitled, but rather a form of "conditional liberty," that is,

conditioned on satisfying the remaining terms of his criminal sentence. *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (discussing conditional liberty of a parolee); *Chase v. Page*, 1969 OK CR 196, ¶ 17, 456 P.2d 590, 594 (same). A criminal sentence for fines, fees and costs may be enforced against someone who willfully refuses to pay "by imprisonment until the same shall be satisfied at a rate of Twenty-five Dollars ($25.00) per day of such fees and costs, or fine, or both."[8] 28 *Okla. Stat*. § 101.

The collection of court debt is a function imposed upon the district courts and their court clerks as agents of the state judicial system. *See e.g.*, 28 *Okla. Stat.* §§ 151-153, 162; 22 *Okla. Stat*. §§ 983-983b; 20 *Okla. Stat*. §§ 1313.2-1313.5. The amounts assessed by statute against a convicted criminal are posted to the court's docket; and when the court issues a failure-to-pay bench warrant, the past-due amount is both set forth on the court's docket sheet and written into the warrant. *See* court docket sheets at http://www.oscn.net/dockets/Search.aspx.[9] Plaintiffs have identified no statute that grants the Court Clerk or his deputy discretion to conduct independent law enforcement investigations on behalf of the county into outstanding court debt.

---

[8] Plaintiffs do not allege imprisonment in Tulsa County under this statute; rather, they complain that as convicted criminals with outstanding failure-to-pay bench warrants, they were taken into custody and held to account to the court for their failure to timely pay the monetary terms of their sentence and/or failure to appear and explain why they cannot pay. *See* Note 2 (first sentence). At the hearing on a convicted criminal's failure to timely pay the monetary terms of his sentence, the burden rests with the defendant to prove that his failure to comply with the installment payment terms set by the Court is justified, whether by indigency, disability or otherwise. *See McCaskey v. State*, 1989 OK CR 63, ¶ 4, 781 P.2d 836, 837; *Patterson v. State*, 1987 OK CR 255, ¶ 3, 745 P.2d 1198, 1199; Rule 8.4, Rules of the Court of Criminal Appeals; and 22 *Okla. Stat*. § 1355A (2001) (a defendant who posts bond is presumed non-indigent).

[9] *See also* the records on file with this Court: Plaintiff Randy Frazier's docket sheets, Exhibit "6" to his Motion for Temporary Restraining Order, Doc. #77-6; Plaintiff Randy Frazier's Failure-to-Pay Bench Warrants, Exhibit "1" to Defendants' Brief in Opposition to Motion for Temporary Restraining Order, Doc. #145-1; and Plaintiff Melanie Holmes' docket sheet, Exhibit "A" to Plaintiffs' Brief in Opposition to Don Newberry's Motion to Dismiss, Doc. #277-1.

Without such statutory discretion, the Court Clerk and his deputy historically function as an accounts receivable clerk in preparation of failure-to-pay bench warrants under the state judiciary's direction and control to collect past-due court debt owing the State. *See Jones, supra.*

(3) Plaintiffs argue that referral by the Court Clerk or his deputy of convicted criminals with outstanding failure-to-pay bench warrants to Aberdeen for collection establishes "county policy" in deprivation of Plaintiffs' constitutional rights. *See* Response, pp.11-14, Doc. #279. With little to no explanation other than *ipse dixit*, Plaintiffs point to the contract between OSA and Aberdeen as somehow granting authority to the Court Clerk to exercise discretion in transferring cases to Aberdeen. *Id*. Clearly, a contract between OSA and Aberdeen is not binding on the Court Clerk or his deputies who are not parties to the contract. Plaintiffs irrationally conclude that such contractual authorization removes the Court Clerk from his primary function within the State's judicial hierarchy and converts his acts into "county policy." *Id*. The Court Clerk's acts in furtherance of an Order by the Chief Justice of the Supreme Court to participate in the Statutory Collection Program are clearly undertaken on behalf of the state judiciary.[10]

Plaintiffs also complain about the communication between the Court Clerk's office and Aberdeen regarding *outstanding failure-to-pay bench warrants* and Aberdeen's *collection of the past-due court debt. Id.* Yet, Plaintiffs have identified *no statute* that grants the Court Clerk or his deputy discretion with respect to the Statutory Collection Program.[11] Plaintiffs' reference to

---

[10] The OSA-Aberdeen contract extension says that it is "for the collection of outstanding obligations due various *county courts* of which OSA is the administrative agent," Collection Contract Extension, p. 18, Doc. #212-1, but Oklahoma's county courts were abolished in 1968 by constitutional amendment and their duties were absorbed by the district courts. *In the Matter of the Guardianship of Stanfield*, 2012 OK 8, ¶ 18, 276 P.3d 989, 998.

[11] Pursuant to subsection D of § 514.4, a court is not required to release an outstanding misdemeanor or failure-to-pay warrant until "receipt of all sums due." 19 *Okla. Stat*. § 514.4(D).

sham legal process is a red herring. While the Court Clerk is authorized pursuant to 12 *Okla. Stat*. § 29 to refuse to file any document he believes is sham legal process, neither Aberdeen nor OSA file documents under the Statutory Collection Program with the district court. The doctrine against filing sham legal process simply does not apply to mere *communications*.

(4)   Plaintiffs conclusorily allege that as a matter of "county policy" the Sheriff executes failure-to-pay bench warrants with full knowledge that there has been no "pre-deprivation process [or] … inquiry into ability to pay" in direct violation of Plaintiffs' federally protected rights. *See* Response, pp. 3, 11-14, Doc. #279. As an officer of the court, it is the Sheriff's statutory duty to execute such warrants, under penalty of law. *See* Motion, pp. 18-21, Doc. #238. As discussed above, the preparation and issuance of failure-to-pay bench warrants is a judicial function in which, as a matter of state law, the Sheriff is not involved. Plaintiffs mischaracterize the nature of the holding in *Burns v. State*, 1950 OK CR 86, 220 P.2d 473, 475-76. *See* Response, p. 10, Doc. #279. *Burns* stands for no more than the proposition that a motion to suppress evidence obtained by a search warrant is properly granted when no evidence is introduced that the person serving the search warrant is authorized to do so. *Id*. at 476.

None of the Plaintiffs allege that the Sheriff personally arrested them. The Sheriff's decision, on behalf of the state judiciary, to implement the Statutory Collection Program by assignment to OSA of the right to contract with a private debt collector *for the collection of court debt* is unrelated to any specific criminal conviction or to any specific issuance of a failure-to-pay bench warrant. The Sheriff is not responsible for drafting the contract between OSA and Aberdeen, and he is not responsible for Aberdeen's behavior.

(5)   Plaintiffs argue that the Sheriff's detention of a convicted criminal on a failure-to-pay bench warrant violates their constitutional rights. *See* Response, pp.11, Doc. #279. Plaintiffs'

9

sole argument on this front is that the Sheriff is the final policymaker with respect to the jail. *Id*. And with respect to the maintenance of the jail, that much is true. But Plaintiffs ignore state law and local court rules that vest *exclusive authority* in the state judiciary regarding the terms and conditions of an arrestee's release from jail, not the least of which, is *when* he may be released from jail. *See* 22 *Okla. Stat*. § 1105.3(B) (judge may grant or deny pretrial release); 1981 OK AG 103 (release only under 22 O.S. § 209 or by order of the district court); OK R 14 DIST CT Rule CR 1(D) (release *only* by court authorization).[12]

(Bailey)   As shown by the table of judicial hierarchy on page 5 above, a deputy clerk is at the bottom of the ladder. Under state law, she does not set policy. She follows directions. No state statutes grant her any discretion in performance of her duties. The county is not otherwise liable for her behavior under 42 U.S.C. § 1983 because there is no respondeat superior liability. Injunctive relief cannot issue against judges; nor should it issue against the judge's clerks.

(BOCC)   Plaintiff's suit against Vic Regalado, in his official capacity as Sheriff, is a suit against Tulsa County. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999) (suit against Jackson County Sheriff in his official capacity is the equivalent of a suit against Jackson County). Under both federal civil rights and Oklahoma law, a county officer can be sued in his or her official capacity when payment is sought from the county. *See* 19 *Okla. Stat.* § 6; 12 *Okla. Stat.* § 2025(D)(2). Plaintiffs falsely state the BOCC is "responsible for establishing policy for the Tulsa County Jail." Response, p. 4, Doc. #279.

     A district judge needs, and state law provides that the judge has, assistance. Through the use of court clerks in the daily operation of the courts, and the use of sheriffs in execution of court orders, district judges administer the state's justice. County policy is not at issue.

---

[12] http://www.tulsacountydistrictcourt.org/files/DistrictCourtRulesCriminal.pdf.

Respectfully submitted,

/s/ Douglas A. Wilson
Douglas A. Wilson, OBA #13128
Assistant District Attorney
Tulsa County District Attorney's Office
500 S. Denver Ave., Suite 832
Tulsa, OK  74103
(918) 596-8795 phone
(918) 596-4804 fax
douglas.wilson@tulsacounty.org

Kimberly M. Hall, OBA #16100
Assistant District Attorney
Tulsa County District Attorney's Office
500 S. Denver Ave., Suite 827
Tulsa, OK  74103
(918) 596-4845 phone
khall@tulsacounty.org

Joel L. Wohlgemuth, OBA #9811
Jo Lynn Jeter, OBA #20252
**NORMAN WOHLGEMUTH CHANDLER JETER BARNETT & RAY**
2900 Mid-Continent Tower
401 South Boston
Tulsa, OK 74103
(918) 583-7571
(918) 584-7846 – facsimile
jlw@nwcjlaw.com
jlj@nwcjlaw.com

ATTORNEYS FOR TULSA COUNTY SHERIFF VIC REGALADO,
TULSA COUNTY COURT CLERK DON NEWBERRY, TULSA
COUNTY COURT COST ADMINISTRATOR DARLENE BAILEY AND
THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TULSA

CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2018, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | | |
|---|---|---|
| Robert Earl Applegate | Robert Dale James | Daniel E Smolen |
| Robert Lamar Betts | Jo Lynn Jeter | Donald Eugene Smolen, II |
| Robert Murray Blakemore | Alexander Karakatsanis | Todd Michael Wagner |
| Kelsey Ann Chilcoat | April Danielle Kelso | Chris M Warzecha |
| Isaac Robertson Ellis | Robert Stevens Lafferrandre | Seth T Wayne |
| Aaron Etherington | Stefanie Erin Lawson | Jill Elizabeth Webb |
| Melodie Freeman-Burney | Thomas Adrian LeBlanc | Joel L Wohlgemuth |
| Robert D Friedman | Douglas N. Letter | Randall J Wood |
| Kimberly Majors Hall | Mary B McCord | John R Woodard, III |
| Rodney J Heggy | Harry Anthony Parrish | Maurice Glenn Woods, II |
| Jeffrey Calvin Hendrickson | Carri Ann Remillard | |
| Katherine Hubbard | Elizabeth Rossi | |

/s/ Douglas A. Wilson
Douglas A. Wilson