UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARLY GRAFF, et. al.<br><br>*Plaintiffs*,<br><br>v.<br><br>ABERDEEN ENTERPRIZES II, INC., et al.<br><br>*Defendants*. | Case No. 4:17-CV-606-TCK-JFJ |

### PLAINTIFFS' SUR REPLY IN OPPOSITION TO DEFENDANTS ABERDEEN ENTERPRIZES II, INC.'S AND JIM AND ROB SHOFNER'S MOTIONS TO DISMISS

In their replies to Plaintiffs' response to their Motions to Dismiss, Defendants Aberdeen and the Shofners (referred to collectively as "Defendants") make several new[1] and misleading arguments about the constitutional principles that underpin Plaintiffs' claims. The crux of Defendants' arguments is that the protections stemming from *Bearden* only apply to "sentencing courts" at the time of sentencing, and thus that they do not apply to Defendants' actions because those actions *only* lead to Plaintiffs' arrest.[2] This attempted restriction of the *Bearden* doctrine defies well-established law, and the inference Defendants draw from it relies on a false factual premise—that the arrest warrants sought by Defendants do not also result in the jailing of those who cannot pay. This court should reject both.

---

[1] In their Motion to Dismiss, Defendants misstate the standard for evaluating a hybrid Due Process/Equal Protection claim under *Bearden*, stating that "no plausible substantive due process claim against Aberdeen exists because Plaintiffs have failed to present any allegations of conscience-shocking conduct on behalf of Aberdeen." Doc. 230 at 18. Defendants appear to recognize, in their Replies, that *Bearden* does not implicate the "conscience-shocking" test of substantive due process, arguing for the first time—again, incorrectly—that *Bearden*'s principles are limited to "imprisonment." Doc. 287 [Aberdeen Reply Br.] at 7.

[2] Defendants appear to concede that the arrest warrants they seek *do* result in Plaintiffs' arrest.

1

**I.  The constitutional principles of *Bearden* apply beyond imprisonment.**

Defendants rely on a specious distinction to claim that *Bearden* and its forerunners have no application to their conduct, stating that "*arrest* for an outstanding failure to pay warrant must not be confused with *imprisonment* for failing to pay court debt." Doc. 287 [Aberdeen Reply Br.] at 3 n.2; Doc. 286 [Shofner Reply Br.] at 3 ("[T]he focus [of *Bearden*] remains on a determination of inability/failure to pay before imprisonment, not before an arrest warrant may issue or be executed."). But this is plainly wrong as a constitutional matter; the long line of Supreme Court cases culminating in *Bearden* make clear that its prohibitions do not apply solely to imprisonment.

In *Mayer v. Chicago*, 404 U.S. 189, 197 (1971), the Court held unconstitutional the denial of an indigent criminal defendant's request for a transcript of his court proceedings, in a case where the punishment was no more than a fine. In reaching this holding, the *Mayer* Court relied on *Griffin v. Illinois*, 351 U.S. 12 (1956)—the first case in the *Bearden* line—in which the Court had held unconstitutional the denial of a transcript for purposes of appeal to a defendant sentenced to a term of imprisonment who could not afford to pay for a transcript. Importantly, the *Mayer* Court rejected the City's attempt to distinguish *Griffin* on the grounds that the latter implicated a "sentence[ ] . . . of confinement"; the Court noted that "the invidiousness of the discrimination [against the indigent defendant] . . . is not erased by any differences in the sentences that may be imposed." 404 U.S. at 196-97; *accord Rinaldi v. Yeager*, 384 U.S. 305, 309 (1966) ("There is no defensible interest served by focusing on th[e] distinction [between a fine and a custodial sentence] as a classifying feature in a reimbursement statute"). Indeed, the Court observed that "[a] fine may bear as heavily on an indigent accused as forced confinement" and described the loss of a professional license as a "collateral consequence[]" that could be "even more serious" than confinement. *Mayer*, 404 U.S. at 197.

In other words, the principle recognized in *Griffin*—and reaffirmed in *Bearden*—applied not because imprisonment was at stake, but because of the seriousness of the sanction and its consequences. This point was reinforced in *M.L.B. v. S.L.J.*, 519 U.S. 102 (1996), in which the Supreme Court extended the *Griffin-Bearden* line to civil cases involving the termination of parental rights, noting expressly that "*Griffin*'s principle has not been confined to cases in which imprisonment is at stake." *M.L.B.*, 519 U.S. at 111. And district courts have recently applied the *Griffin-Bearden* doctrine to sanctions that do not implicate imprisonment. *See Robinson v. Purkey*, 326 F.R.D. 105, 153–59 (M.D. Tenn. 2018) (preliminarily enjoining, as unconstitutional, Tennessee's statute suspending drives licenses for nonpayment of traffic debt); *Thomas v. Haslam*, 329 F. Supp. 3d 475, 497 (M.D. Tenn. 2018) (granting summary judgment to plaintiffs in case challenging Tennessee's statutory scheme for revoking driver's licenses for nonpayment of court debt). There can be no dispute that arrest is a consequence serious enough to trigger the protections of the Constitution.

Indeed, even if arrest did not always implicate *Bearden*'s protections on its own, that would not help Defendants in this case, where, for those subjected to Aberdeen's practices, there is no meaningful distinction between arrest and detention—individuals arrested for nonpayment to Aberdeen *are immediately jailed*. As a matter of course, without any further inquiry, judges and court clerks in numerous counties routinely issue Aberdeen's debt-collection arrest warrants—warrants based solely on a debtor's nonpayment to Aberdeen of an amount of money demanded at its discretion. Doc. 212 [Second Amended Complaint] ¶¶ 90–91. And people arrested on debt-collection warrants must make a payment deemed adequate by Aberdeen *to be released from custody before seeing a judge*. Doc. 212 ¶ 97. As a consequence, a person can spend days, weeks or months in jail if they are unable to afford the amount Aberdeen demands for release. Doc. 212

¶¶ 23, 25, 97–98. For example, Plaintiff Christopher Choate was arrested for nonpayment to Aberdeen and held in the Tulsa County jail on a debt collection warrant. *Id.* ¶¶ 23, 190. Plaintiff Melanie Holmes was similarly arrested on an Aberdeen debt collection warrant; the public docket for the issuance of the warrant read in part: "DID NOT PAY ABERDEEN". *Id.* ¶¶ 25, 207. She was arrested and held in a jail cell for days. *Id.* at 209. Defendants' seeking of the arrest warrants for nonpayment without inquiry into ability to pay directly results in Plaintiffs' detention. It is for this reason that Aberdeen's contention that "[n]o constitutional provision or court mandate precludes the issuance of an arrest warrant based upon a failure to pay court debt," Doc. 287 at 7, is utterly misleading.

## II. *Bearden* and its progeny do not only constrain "sentencing courts."

Defendants attempt to disclaim any constitutional culpability by arguing that *Bearden*'s constitutional strictures only bind sentencing courts: Doc. 287 at 7–8 ("It remains unclear how Plaintiffs believe *Bearden* or any other constitutional amendment or law requires Aberdeen to step into the role of the sentencing court."); *see* Doc. 286 at 2–3. This is incorrect as a matter of law.

Courts have held that *Bearden* constrains actors other than sentencing courts. This is demonstrated most clearly by the Supreme Court's application of *Bearden* in *M.L.B.*, which, as a case about parental rights, necessarily did not involve a "sentencing court." *Bearden* has been applied as well to, *inter alia*, the Commissioner of the Tennessee Department of Safety and Homeland Security;[3] the city of Ferguson, Missouri;[4] and Harris County, Texas, as well as its

---

[3] *Robinson v. Purkey*, 326 F.R.D. 105, 158–59 (M.D. Tenn. 2018); *Thomas v. Haslam*, 329 F.Supp.3d 475, 497 (M.D. Tenn. 2018).

[4] *Fant v. City of Ferguson*, 107 F. Supp. 3d 1016, 1031 (E.D. Mo. 2015), *on reconsideration*, No. 4:15-CV-00253-AGF, 2015 WL 4232917 (E.D. Mo. July 13, 2015).

county sheriff, county hearing officers.[5] In all of those cases, the entities were held liable because they were directly responsible for the deprivation—of driver's licenses in one instance, of pretrial liberty in the others—that flowed from the failure to conduct any inquiry into ability to pay.

Most significantly, *Bearden* has been held to bind *a private company* under circumstances very similar to the facts alleged in this case. In *Rodriguez v. Providence Community Corrections, Inc.*, a federal district court in Tennessee granted a classwide preliminary injunction against a private probation company for *Bearden* violations where, as here, the company's role was to report nonpayment to the courts and thereby trigger arrest warrants that led to probation revocation proceedings. 155 F. Supp. 3d 758, 762, 764 (M.D. Tenn. 2015). After issuing the injunction in *Rodriguez*, the district court held that Plaintiffs had plausibly alleged their claims under *Bearden*, finding that "the practice of jailing probationers solely for nonpayment and keeping probationers on preset secured money bonds violate[s] the Fourteenth Amendment." *Rodriguez v. Providence Cmty. Corr., Inc.,* 191 F. Supp. 3d 758, 779 (M.D. Tenn. 2016). The court expressly rejected the private probation company's argument that, because it did not actually "jail people," it was not liable, noting that "the record reveals that PCC probation officers actively participated in the setting of secured money bonds." *Id.* In other words, Plaintiffs had sufficiently stated a claim that PCC caused the constitutional violation, without being the party to physically arrest and imprison the probationers for nonpayment. *Id.* So too here. As *Rodriguez* establishes, Defendants are culpable because they play the critical role in deciding when nonpayment of amounts *they* set will result in arrest and jail time.

---

[5] *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2017) (holding Harris County, Texas's money-bail system unconstitutional, and stating that it worked a "basic injustice" whereby "poor arrestees in Harris County are incarcerated where similarly situated wealthy arrestees are not, solely because the indigent cannot afford to pay a secured bond").

As this case law makes clear, *Bearden* plainly applies to entities other than sentencing courts. But to the extent that Defendants are making an indirect argument that they are not liable for the unconstitutional conduct simply because they are private actors, that is also a gross misstatement of the law. As discussed in Plaintiffs Response to Aberdeen's Motion to Dismiss, Aberdeen's unconstitutional conduct is under color of law for the purposes of Section 1983 liability. Doc. 271 at 6-11. And in fact, as Plaintiffs have alleged, Defendants conspired with the judges, clerks, and law enforcement to enact this scheme in which the power to arrest and jail is used as a cudgel to extract from Plaintiffs money that they do not have. Doc. 212 ¶¶ 53–65.

**III.    Detention without prior process plainly violates the Constitution.**

Finally, Defendants misapprehend the relevant constitutional principles in arguing that "[n]o constitutional right is transgressed through (1) alleged threats of arrest/imprisonment for a failure to pay the court debt at issue or (2) advising law enforcement/court officials that a person has failed to make payment while omitting information as to whether such person is refusing to pay or unable to pay."[6] As Plaintiffs have alleged and discussed *supra*, Defendants are responsible for using the fact of nonpayment to discretionarily issue arrest warrants that directly resulted in jailing Plaintiffs who were unable to pay the amounts set and demanded by Defendants. After the moment of arrest, Plaintiffs were jailed "for days before they are allowed to see a judge" and unable to obtain their release unless they paid an amount deemed by Aberdeen to be satisfactory. Doc. 212 ¶ 10; *accord id.* ¶¶ 98, 129.

The Supreme Court has made clear that this detention violates due process. Absent "extraordinary situations," a person must be given a meaningful opportunity to be heard *prior* to a deprivation of liberty or even property. *Fuentes v. Shevin*, 407 U.S. 67, 90–92 (1972) (holding

---

[6] Doc. 287 at 7.

that postponement of notice and a hearing is justified only in "truly unusual" situations, and only when "directly necessary" to advance important interests, when there is a "special need for very prompt action," and if specific standards are "narrowly drawn" to limit the deprivation); *see also Connecticut v. Doehr*, 501 U.S. 1, 15 (1991) (holding that due process is offended when a delayed hearing "would not cure the temporary deprivation that an earlier hearing might have prevented"). Defendants have never showed—nor could they—that any such exigency exists with respect to any of the Plaintiffs for whom they have sought arrest warrants. It was thus unconstitutional to arrest them solely on the basis of nonpayment. *See Alkire v. Irving*, 330 F.3d 802, 816–17 (6th Cir. 2003).

For these reasons and those discussed in Plaintiffs' Response, this Court should deny Defendants' Motions to Dismiss.

Dated: April 11, 2019

                                        Respectfully submitted,

                                        <u>/s/ *Katherine Hubbard*</u>
                                        Katherine Hubbard (admitted *Pro Hac Vice*)
                                        California Bar No. 302729
                                        Ryan Downer (admitted *Pro Hac Vice*)
                                        D.C. Bar No. 1013470
                                        Marco Lopez* (admitted *Pro Hac Vice*)
                                        California Bar No. 316245
                                        Tara Mikkilineni (admitted *Pro Hac Vice*)
                                        D.C. Bar No. 997284
                                        Civil Rights Corps
                                        910 17th Street NW, Suite 200
                                        Washington, DC 20006
                                        Tel: 202-599-0953
                                        Fax: 202-609-8030
                                        katherine@civilrightscorps.org
                                        ryan@civilrightscorps.org
                                        marco@civilrightscorps.org
                                        tara@civilrightscorps.org

*Admitted solely to practice law in California; not admitted in the District of Columbia. Practice is limited pursuant to D.C. App. R. 49(c)(3).

*/s/Jill E. Webb*
Jill Webb, OBA #21402
J Webb Law Firm PLLC
P.O. Box 1234
Tulsa, OK 74101
Tel: 918-346-5664
jill.webb@gmail.com

*/s/ Daniel E. Smolen*
Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

/s/ *Seth Wayne*
Seth Wayne (admitted *Pro Hac Vice*)
D.C. Bar No. 888273445
Robert Friedman (admitted *Pro Hac Vice*)
D.C. Bar No. 1046738
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
sw1098@georgetown.edu
rdf34@georgetown.edu

*Attorneys for the Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of April, 2019, I electronically transmitted the foregoing Plaintiffs' Sur Reply in Opposition to Defendants Aberdeen Enterprizes II, Inc.'s and Jim and Rob Shofner's Motions to Dismiss to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

*/s/ Katherine Hubbard*