# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)    CARLY GRAFF, | ) | |
| | ) | |
| On behalf of themselves and all others | ) | |
| similarly situated, | ) | Case No. 17-CV-00606-TCK-JFJ |
| | ) | (Complaint - Class Action) |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| (1) ABERDEEN ENTERPRIZES II, INC., | ) | |
| AN OKLAHOMA CORPORATION, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**RESPONSE TO PLAINTIFFS' "MOTION TO ENTER A SCHEDULING ORDER AND OPEN DISCOVERY" OF DEFENDANTS BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ROGERS, SHERIFF SCOTT WALTON (OFFICIAL/INDIVIDUAL CAPACITIES), AND FORMER COURT CLERK KIM HENRY (OFFICIAL/INDIVIDUAL CAPACITIES)**

Respectfully submitted,

Thomas A. LeBlanc, OBA #14768
W. Caleb Jones, OBA #33541
**BEST & SHARP**
One West Third Street
Williams Center Tower I, Suite 900
Tulsa OK 74103
(918) 582-1234 Telephone
(918) 585-7447 Facsimile
tleblanc@bestsharp.com
wcjones@bestsharp.com
*Attorneys for Defendants,*
*Scott Walton, Sheriff of Rogers County,in his official and individual capacity; and Board of County Commissioners of Rogers County, Oklahoma; and Kim Henry, official capacity only*

Scott B. Wood, OBA #12536
**WOOD, PUHL & WOOD, PLLC**
2409 E. Skelly Drive, Suite 200
Tulsa, Oklahoma 74105
(918) 742-0808
(918) 742-0812
okcoplaw@aol.com
*Attorney for Kim Henry, individual capacity*

September 18, 2020

## <u>TABLE OF CONTENTS</u>

I.      **FACTS** .........................................................................................................1

II.     **ARGUMENTS AND AUTHORITIES**..........................................................6

     A.    Legal Standards.................................................................................6

     B.    Discovery Should Not be Permitted While Qualified and Absolute Immunity Defenses Remain Undecided .................................................7

          1.    The Discovery Will be Extensive, Onerous and in Conflict with Immunity Defenses ...................................................................10

          2.    If an Interlocutory Appeal is Taken, the District Court is Divested of Jurisdiction Over Those Aspects of The Case Involved in the Appeal ........................................................................................14

     C.    Discovery Should Not be Opened When The Court Has Not Yet Ruled on The Motions to Dismiss.........................................................................16

     D.    The Stay Factors Do Not Favor Opening Discovery ............................16

          1.    Plaintiffs' Interests and Potential Prejudice.............................17

          2.    The Burden Imposed on Defendants..........................................18

          3.    The Convenience to the Court ...................................................19

          4.    Burden Imposed on Non-Parties ..............................................19

          5.    Public Interest ...........................................................................20

III.    **CONCLUSION** ..........................................................................................21

i

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                                           <u>**Page**</u>

*Anderson v. Creighton*,
    483 U.S. 635 (1987)...................................................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................6, 8, 9, 12

*Bryson v. Gonzales*,
    534 F.3d 1282 (10th Cir. 2008) ...............................................................................8

*B.T. v. Davis*,
    557 F. Supp.2d 1262 (D.N.M. 2007) .......................................................................9

*Codero v. Froats*,
    2015 WL 12862514 (D.N.M. 2015) .......................................................................19

*Curtin v. United Airlines, Inc.*,
    274 F.3d 88 (D.C. Cir. 2001) ...........................................................................6, 16

*Dalton v. Town of Silver City*,
    2019 WL 1428363 (D.N.M. 2019) .....................................................................9, 14

*Filarsky v. Delia*,
    566 U.S. 377 (2012).................................................................................................17

*General Telephone Company of Southwest v. Falcon*,
    457 U.S. 147 (1982).................................................................................................11

*Gomez v. Toledo*,
    446 U.S. 635 (1980).................................................................................................8

*Green v. Whetsel*,
    166 Fed. Appx. 375 (10th Cir. 2006).....................................................................20

*Grossman v. City of Portland*,
    33 F.3d 1200 (10th Cir. 1994) ...............................................................................15

*Jamieson v. Vatterott Educ. Centers, Inc.*,
    259 F.R.D. 520 (D. Kan. 2009)........................................................................10, 16

*K.D by Nipper v. Harrison Sch. Dist. Two*,
    2018 WL 10808848 (D. Colo. 2018)..................................................................6, 16

*Kehoe v. Fidelity Federal Bank & Trust*,
    421 F.3d 1209 (11th Cir. 2005) ............................................................7

*Krell v. Queen Anne's County*,
    2020 WL 416975 (D. Md. 2020) ........................................................18

*Loumiet v. United States*,
    315 F. Supp. 3d 349 (D.D.C. 2018) ................................................6, 10

*McCauley v. Halliburton*,
    413 F.3d 1158 (10th Cir. 2005) ..........................................................14

*Messerschmidt v. Millender*,
    132 S. Ct. 1235 (2012) ........................................................................7

*Meyers By & Through Meyers v. Bd. of Educ. of San Juan Sch. Dist.*,
    905 F. Supp. 1544 (D. Utah 1995) .....................................................16

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) .......................................................................8, 10

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ...........................................................................17

*Pfuetz v. State of Kansas*,
    2010 WL 3718836 (D. Kan. 2010) ......................................................9

*Reed v. Bowen*,
    849 F.2d 1307 (10th Cir. 1988) ..........................................................11

*Siegert v. Gilley*,
    500 U.S. 226 (1991) .............................................................................8

*Stewart v. Donges*,
    915 F.2d 572 (10th Cir. 1990) ......................................................14, 15

*Taylor v. Jaquez*,
    126 F.3d 1294 (10th Cir. 1997) ..........................................................20

*Tenorio v. Pitzer*,
    2013 WL 12178001 (D.N.M. 2013) .....................................................9

*Trevizo v. Adams*,
    455 F.3d 1155 (10th Cir. 2006) ..........................................................11

*Walker v. City of Orem*,
   451 F.3d 1139 (10th Cir. 2006) ........................................................................8

*Wedel v. Craig*,
   2010 WL 2545974 (D. Kan. 2010) ...................................................................9

## **Statutes**

19 O.S. §§514, 516, 518 ........................................................................................15

19 O.S. §514.4 ......................................................................................................18

28 O.S. §151   ........................................................................................................15

## **Other**

Fed. R. Civ. P. 23(a)(1)-(4) ...................................................................................11

Fed. R. Civ. Proc. 23(b)(1)-(3) .............................................................................11

*State of Oklahoma v. Graff, Carly Michelle*, Case No. TR-2017-1672 ..........................17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1)   CARLY GRAFF, | ) | |
| | ) | |
| On behalf of themselves and all others | ) | |
| similarly situated, | ) | Case No. 17-CV-00606-TCK-JFJ |
| | ) | (Complaint - Class Action) |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| (1) ABERDEEN ENTERPRIZES II, INC., | ) | |
| AN OKLAHOMA CORPORATION, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**RESPONSE TO PLAINTIFFS' "MOTION TO ENTER A SCHEDULING**
**ORDER AND OPEN DISCOVERY" OF DEFENDANTS BOARD OF**
**COUNTY COMMISSIONERS OF THE COUNTY OF ROGERS,**
**SHERIFF SCOTT WALTON (OFFICIAL/INDIVIDUAL CAPACITIES), AND**
**FORMER COURT CLERK KIM HENRY (OFFICIAL/INDIVIDUAL CAPACITIES)**

COME NOW Defendants Board of County Commissioners of County of Rogers; Sheriff

Scott Walton (official and individual capacities); and Former Rogers County Court Clerk Kim

Henry (official and individual capacities), and, per the Court's recent Minute Order, [Dkt. #333],

hereby file this Response to Plaintiffs' Motion to Enter a Scheduling Order and Open Discovery.

As discussed below, Defendants request the Court deny Plaintiffs' Motion.

**I.     FACTS**

1.     On November 2, 2017, Plaintiff Ira Wilkins filed a 161-paragraph "Class Action

       Complaint" against seventy-nine (79) Defendants, including claims against certain

       Defendants in their individual capacities.  (Dkt. #1).  In that document, Plaintiff sought a

       declaratory judgment; a preliminary and permanent injunction; compensatory damages;

       treble and punitive damages; and attorney fees and costs.  (Dkt. #1 at p. 63).

1

2.   On February 1, 2018, Plaintiffs filed their Amended Complaint, which added six (6) additional Plaintiffs.  (Dkt. #76).  In addition, Plaintiffs' allegations expanded to three-hundred and thirty-three (333) paragraphs.  (*Id.*).

3.   On the same date, Plaintiffs filed a Motion for Temporary Restraining Order and Motion for Class Certification.  (Dtk. #77, 78).

4.   The Motion for Class Certification contained four (4) proposed classes, including an "Aberdeen Class," "Damages Class," "Tulsa Court Debt Class," and "Rogers Court Debt Class."  (Dkt. #78 at p. 6-7).

5.   Thereafter, all Defendants filed Motions to Dismiss raising numerous and substantial legal arguments in response to Plaintiff's various claims.  (Dkt. #95, 99, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185).

6.   Certain Defendants raised immunity defenses, including absolute and qualified immunity.  The immunity defenses were not trivial or insubstantial.  Sheriff Walton and Clerk Henry, for instance, argued that they were entitled to absolute immunity for any claims related to service of court process and that Plaintiffs had otherwise failed to state a violation of their constitutional rights (since Defendants were not involved in the arrest or detention of any named Plaintiff and because no Plaintiff associated with Rogers County had, in fact, been arrested or detained for failure to pay outstanding fines and costs); that any right at issue was not clearly-established; and that Defendants reasonably relied upon duly-enacted statutes and an Order from the Oklahoma Supreme Court.  (Dkt. #178 at p. 6-14).

7.   On March 9, 2018, the parties filed a Joint Status Report, wherein Defendants again asserted their qualified immunity and absolute immunity defenses and objected to discovery while motions to dismiss were pending.  (Dkt. #156).

8.    Defendants also did not concede that jurisdiction was appropriate in this Court.  (*Id.*).

9.    In the Joint Status Report, Plaintiffs proposed <u>one year</u> of discovery on both "class and merits-based issues."  (*Id.*).

10.   Plaintiffs claimed they only needed to take 25 depositions, and Defendants each sought 25 depositions.  (*Id.*).

11.   On March 26, 2018, the Court found good cause for delaying issuance of the scheduling order in light of the pendency of the Motion for Preliminary Injunction and the Motions to Dismiss.  (Dkt. #186) ("[T]he Court finds good cause for delay in issuing a scheduling order in this case, as Plaintiffs have filed a Motion for Preliminary Injunction . . and Defendants have filed Motions to Dismiss . . . which should first be resolved.").

12.   Thereafter, Plaintiffs sought an extension of time to respond to Defendants' Motions to Dismiss, which the Court granted.  (Dkt. #200-201).

13.   However, instead of responding to Defendants' Motions to Dismiss, Plaintiffs thereafter requested the Court deny Defendants' Motions to Dismiss as moot so that Plaintiffs could file a Second Amended Complaint.  (Dkt. #202).

14.   Certain Defendants vehemently opposed Plaintiffs' Motion to Amend.  (Dkt. #204, 205, 206, 207, 208, 209, 210).

15.   Three months later, on September 20, 2018, the Court issued its Opinion and Order granting Plaintiffs leave to file their Second Amended Complaint.  (Dkt. #211).  The Court rejected Defendants' arguments and noted that the Second Amended Complaint "refine[d] the allegations and will allow the Court to decide future motions based on substantive issues."  (*Id.* at p. 9).

16.     Plaintiffs filed their Second Amended Complaint on September 21, 2018, adding one new Plaintiff and expanding their allegations to three-hundred and seventy-two (372) paragraphs.  (Dkt. #212).

17.     Plaintiffs again requested a variety of relief, including declaratory, compensatory, and injunctive relief, and requesting class certification.  (*Id.*).

18.     Defendants filed their Motions to Dismiss thereafter, raising significant legal arguments supporting dismissal of Plaintiff's claims, and again asserting qualified and absolute immunity defenses.  (Dkt. #226-239).

19.     Plaintiffs sought leave to file a 150-page consolidated brief in response to all Defendants, but Defendants objected.  (Dkt. #248-250).

20.     Rogers County Defendants pointed out that the proposal was prejudicial to Defendants, who were entitled to understand Plaintiff's arguments against each Defendant.  (Dkt. #250).

21.     Defendants also pointed out the qualified immunity defenses at stake, and argued that Defendants were entitled to understand which constitutional right they allegedly violated; that any order denying qualified immunity was immediately appealable; and that the Court's ultimate findings and conclusions would form an important part of the basis for appellate review.  (Dkt. #250 at p. 4).

22.     The Court denied Plaintiff's Motion to File Consolidated Briefing.  (Dkt. #259).  The Court noted that it "remains particularly concerned with judicial economy in light of the many pending Motions to Dismiss.  Accordingly, the Court urges Plaintiffs to limit their Responses to the precise legal issues addressed in the relevant Motion to Dismiss, and to avoid duplicative briefing."  (Dkt. #259).

23.     Plaintiffs filed their Response Briefs on November 30, 2018.  (Dkt. # 267-279).

4

24.   Defendants filed their Reply Briefs on December 21, 2018.  (Dkt. # 283-295).

25.   The Motions to Dismiss have been pending since that time.

26.   On August 24, 2020, Plaintiffs filed an <u>opposed</u> Motion to Enter a Scheduling Order and Open Discovery.  (Dkt. #323).

27.   On August 26, 2020, and before Defendants were allowed to respond, the Court issued a minute order finding that "good cause" existed to lift the stay of discovery and directing the parties to submit "a Joint Scheduling Order regarding the Motion for Class Certification (Doc. 78) within twenty (20) days of the date of this order."  (Dkt. #324).

28.   The Court also referred Plaintiff's Motion for Preliminary Injunction to Magistrate Judge Jayne for findings and recommendations pursuant to 28 U.S.C. §636(B).  (Dkt. #325).

29.   Thereafter, counsel for certain Defendants reached out to Plaintiffs' counsel to inquire as to the scope of Plaintiffs' proposed discovery on class issues.

30.   Plaintiffs' counsel did not respond to those requests.  (Dkt. #324).

31.   On September 8, 2020, and thereafter, various Defendants filed motions to reconsider and/or motions to vacate, pointing out that they did not get a chance to respond to the Motion to Enter Scheduling Order and Open Discovery.  (Dkt. #328, 329, 330, 331, 332).

32.   On the morning of September 11, 2020, counsel for Defendants and Plaintiffs had a conference call pursuant to the Court's minute order, (Dkt. #324), wherein the parties could not agree on any procedure for discovery in light of the pending motions to reconsider and motions to dismiss.

33.   Nevertheless, Plaintiffs' counsel indicated (1) they believed, per the Court's minute order, the Court had allowed both merits *and* class discovery to go forward; (2) they planned to

request one year of discovery for such matters; and (3) they planned to issue discovery requests to Defendants on that very day (September 11, 2020) or soon thereafter.

34.     In the afternoon of September 11, 2020, the Court granted Defendants' motions to reconsider and/or vacate and directed Defendants to respond to Plaintiffs' Motion to Enter Scheduling Order and Open Discovery on or before September 18, 2020.  (Dkt. #333).

## II.     ARGUMENTS AND AUTHORITIES

### A.     Legal Standards

While the Court retains control over scheduling and discovery orders, that discretion is not unbridled in the context of immunity defenses.  For instance, one court has held that traditional considerations (regarding a stay of a trial court's decision) do not apply in the context of qualified or absolute immunity defenses.  *See Loumiet v. U.S.*, 315 F. Supp. 3d 349, 352 (D.D.C. 2018) (noting the "Supreme Court's specific guidance regarding discovery during resolution of qualified immunity issues" and that the "Supreme Court urges caution where discovery may entangle individuals potentially protected by qualified immunity").  This is because the normal presumptions on this issue are reversed in the context of qualified immunity.  Stays are not favored in civil litigation, but they are encouraged (if not required) in the context of certain qualified and absolute immunity defenses.  *E.g., Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (discussed *infra*).

In addition, the Court has discretion to stay proceedings, including class certification proceedings, until resolution of pending motions to dismiss.  *See K.D by Nipper v. Harrison Sch. Dist. Two*, 2018 WL 10808848, at 2 (D. Colo. 2018) ("[T]he Court acknowledges the efficiency and fairness of delaying the proceedings pending resolution of a motion to dismiss that could resolve this matter in its entirety."); *Curtin v. United Airlines, Inc.*, 275 F.3d 88, 92-93 (D.C. Cir. 2001) (holding "where . . . the plaintiffs' claims can be readily resolved on summary judgment,

where the defendant seeks an early disposition of those claims, and where the plaintiffs are not prejudiced thereby, a district court does not abuse its discretion by resolving the merits before considering the question of class certification."); *see also Kehoe v. Fidelity Federal Bank & Trust*, 421 F.3d 1209, 1211 (11th Cir. 2005) (court may decide dispositive motions prior to certification).

This Court has indicated that stays may be appropriate "where the case is likely to be finally concluded as a result of the ruling thereon; where the facts sought through uncompleted discovery would not affect the resolution of the motion, or where discovery on all issues of the broad complaint would be wasteful and burdensome." *Stephenson Oil Co. v. Citgo Petroleum Corp*., 2008 WL 5412816, at 2 (N.D. 2008).   The Court also may consider other factors, including (1) plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.  *Id.*

## B.    Discovery Should Not Be Permitted While Qualified and Absolute Immunity Defenses Remain Undecided

First, the qualified and absolute immunity defenses remain pending before the Court. Plaintiffs did not mention this issue in their Motion to Enter Scheduling Order and Open Discovery, (Dkt. #323), and therefore did not provide the Court with any advice regarding how to manage discovery while absolute and qualified immunity defenses remain unadjudicated.  Because Plaintiffs' motion did not address the issue, it was not based on the appropriate legal standards.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (internal quotation marks and citations omitted).  "[D]amages suits against government officials can entail substantial social costs, including the risk that fear of personal

monetary liability and harassing litigation will unduly inhibit officials in the discharge of their

duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  In *Mitchell v. Forsyth*, 472 U.S. 511,

526 (1985), the Court stated:

> *Harlow* thus recognized an entitlement not to stand trial or face the other burdens
> of litigation, conditioned on the resolution of the essentially legal question whether
> the conduct of which the plaintiff complains violated clearly established law.  **The
> entitlement is an immunity from suit rather than a mere defense to liability;
> and like an absolute immunity, it is effectively lost if a case is erroneously
> permitted to go to trial.**

*Id.* at 526 (bold added).

When qualified immunity has been invoked, discovery should be stayed until the defense

has been resolved, including through an appeal.[1]  "Until this threshold immunity question is

resolved, discovery should not be allowed . . . One of the purposes of immunity, absolute or

qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands

customarily imposed upon those defending a long drawn out lawsuit."  *See Siegert v. Gilley*, 500

U.S. 226, 231 (1991) (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)).  And, "[t]he very purpose of

[an] interlocutory appeal" in qualified immunity cases "is 'to spare [official defendants] from the

ordeal of discovery if the complaint fails to allege a constitutional violation or if the alleged

violation was not clearly established.'" *Bryson v. Gonzales*, 534 F.3d 1282, 1287 (10th Cir. 2008).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009), the Court reiterated that the "basic thrust of

the qualified-immunity doctrine is to free officials from the concerns of litigation, including

'avoidance of disruptive discovery.'"  The Court further noted that *all* discovery should generally

be stayed, even discovery against defendants who are not asserting a qualified immunity defense:

---

[1] As discussed *infra*, when an interlocutory appeal is filed, the district court is divested of
jurisdiction over matters involved in the appeal.  *See Walker v. City of Orem*, 451 F.3d 1139, 1146
(10th Cir. 2006) ("The filing of the notice of appeal was an event of jurisdictional significance,
which divested the district court from granting further relief concerning the issues on appeal.").

>   If a Government official is to devote time to his or her duties, and to the formulation
>   of sound and responsible policies, it is counterproductive to require the substantial
>   diversion that is attendant to participating in litigation and making informed
>   decisions as to how it should proceed. Litigation, though necessary to ensure that
>   officials comply with the law, exacts heavy costs in terms of efficiency and
>   expenditure of valuable time and resources that might otherwise be directed to the
>   proper execution of the work of the Government.
>   . . .
>   It is no answer to these concerns to say that discovery for petitioners can be deferred
>   while pretrial proceedings continue for other defendants. It is quite likely that,
>   when discovery as to the other parties proceeds, it would prove necessary for
>   petitioners and their counsel to participate in the process to ensure the case does not
>   develop in a misleading or slanted way that causes prejudice to their position. Even
>   if petitioners are not yet themselves subject to discovery orders, then, they would
>   not be free from the burdens of discovery.

*Id.* at 685-686; *see also Tenorio v. Pitzer,* 2013 WL 12178001, at 3 (D.N.M. 2013) ("However,

after *Iqbal,* the law is clear that discovery should be stayed upon assertion of qualified immunity,

even for those defendants not asserting the defense."); *B.T. v. Davis*, 557 F. Supp.2d 1262, 1286

(D.N.M. 2007) ("Once the qualified immunity defense has been raised, the Court must not let a

plaintiff use discovery as a fishing expedition to flesh out the merits of his claim."); *Dalton v.*

*Town of Silver City*, 2019 WL 1428363, at 3 (D.N.M. 2019) (citing *Iqbal* and noting that "once a

single defendant raises the issue of qualified immunity in a dispositive motion, discovery for all

defendants should generally be stayed").[2]

Because immunity defenses remain pending – and are currently unadjudicated – the Court

should reject Plaintiff's motion to open discovery in this matter. The immunity at issue is one

from suit, not merely one from liability. *See Mitchell, supra.* Said Defendants should not be

required to participate in the litigation process unless and until the Court rules on the qualified and

---

[2] The same stay rules apply to an assertion of absolute immunity. *See Pfuetz v. State of Kansas*, 2010 WL 3718836 (D. Kan. 2010) (granting stay where defendants asserted qualified immunity/Eleventh Amendment immunity); *Wedel v. Craig*, 2010 WL 2545974 (D. Kan. 2010) (granting stay where parties asserted absolute judicial immunity/Eleventh Amendment immunity).

absolute immunity defenses, and until such time as any (potential) appeals are concluded. Subjecting them to extensive discovery on class action issues would be in conflict with basic qualified immunity principles. *See Loumiet v. U.S.*, 315 F.Supp.3d 349 (D.D.C. 2018) (noting that "any attempt to resolve [discovery disputes] during the pending interlocutory appeal . . . would ultimately waste the Court's and the parties' resources if they must revisit discovery disputes" after the appellate court's resolution of the immunity issues).

### 1.   The Discovery Will Be Extensive, Onerous and in Conflict with Immunity Defenses

For instance, the exact scope of the anticipated discovery is unclear, but Defendants anticipate that discovery on the class certification issues alone will be time-consuming, expansive, expensive and burdensome.   Plaintiffs have proposed four (4) different classes, with apparent overlap between said classes, including:  "Aberdeen Class," "Damages Class," "Tulsa Court Debt Class," and "Rogers Court Debt Class."   (Dkt. #78 at p. 6-7).[3]   Plaintiffs have defined their proposed classes broadly, asserting uniform treatment of the proposed class not only across the 53 counties named in their lawsuit, but even uniform treatment of court debtors within each county. Certification as a class-action requires the class-proponent to establish all of the following elements with respect to their multiple proposed classes:[4] (1) the class is so numerous that joinder

---

[3] Plaintiffs filed their Motion for Class Certification, (Dkt. #78), with respect to the allegations contained in the Amended Complaint.  (Dkt. #76).  Since that time, Plaintiffs were granted leave to file a Second Amended Complaint which changed the nature and scope of their allegations and claims.  Hence, it is not clear that the Motion for Class Certification is even ripe with respect to the allegations contained in the Second Amended Complaint.  *E.g., Jamieson v. Vatterott Educ. Centers, Inc*., 259 F.R.D. 520, 526 (D. Kan. 2009) ("As a practical matter, it is appropriate to clarify the nature and scope of the pending claims before determining their suitability for class action treatment.").  Indeed, Plaintiffs have re-labeled their proposed classes and have added new parties to the classes.  *Compare* Dkt. # 76 at ¶200 *with* Dkt. #212 ¶216.

[4] Plaintiffs bear the evidentiary burden on each of the elements to establish certification. *General Telephone Company of Southwest v. Falcon*, 457 U.S. 147, 152 (1982).  Certification is

of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy).  *See* Fed. R. Civ. P. 23(a)(1)-(4).  The proponent must also show at least one element from Fed. R. Civ. Proc. 23(b)(1)-(3).

<u>Discovery will be required on all of these issues</u>.  In the Rogers Court Debt Class alone, Plaintiffs have alleged seven (7) common issues of law and seven (7) common issues of law, as well as asserting that the commonalities listed are non-exhaustive.  (Dkt. #78 at 8-12).  They allege as many as twenty-two (22) common issues of fact and law for other classes and devote four (4) pages of their brief in support of certification to making such allegations.  (*Id.*).  To satisfy their heavy burden, it is likely that Plaintiffs will have to inquire into the circumstances of nearly every failure-to-pay arrest and warrant across every county of the State.  Plaintiffs will also be required to conduct discovery on the practices employed in the various jurisdictions involved in this case. Defendants anticipate Plaintiffs will propound extensive written discovery on all Defendants and will seek to conduct a large number of depositions to support their class action certification quest. Defendants would likewise be required to propound discovery on all Plaintiffs and to conduct numerous depositions.  This discovery, propounded on individual Defendants, would be onerous and extensive, and would impinge on the immunity rights clearly provided to those Defendants.

And, as noted in *Iqbal*, it is "no answer" to say that discovery can be stayed with respect to the individual Defendants (who are entitled to immunity defenses) and yet proceed against other

---

only appropriate if "the trial court is satisfied, after a **rigorous analysis**, that the perquisites of Rule 23(a) have been satisfied."  *Id.* at 161 (bold added).  If Plaintiffs wish to maintain their broad class definitions, they must "show, 'under a strict burden of proof' that all four requirements are clearly met."  *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (quoting *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988)).

Defendants.  Individual defendants would be *required* to participate in those discovery efforts in order to ensure that discovery does not proceed in a "slanted" way, *Iqbal*, 556 U.S. at 685, and to be informed about the manner in which the litigation and discovery are progressing.  The problem is particularly acute in the present case for several reasons.  First, Plaintiffs have sued numerous Defendants concerning the State's failure-to-pay program and, as evidenced by their multiple amended complaints, have had difficulty articulating where any alleged constitutional violation occurred.  Hence, if discovery proceeds on all of Plaintiff's claims, the individual Defendants have a legitimate basis for participating in same, i.e., to ensure discovery progresses in an appropriate way and/or in protecting their interests during the course of that discovery. Hence, "[e]ven if [defendants] are not yet themselves subject to discovery orders . . . they would not be free from the burdens of discovery."  *See Iqbal,* 556 U.S. at 685-86.

Second, and relatedly, Plaintiffs claim that the Sheriff-Defendants, in their individual capacities, were in a RICO conspiracy with other named Defendants.  Plaintiffs claim that these Defendants engaged in a "RICO enterprise," which functioned as a "continuing unit."  (Dkt. #212 at ¶¶ 274-290).   According to Plaintiffs, Defendants engaged in "extortionate activities" and "continue to engage in these racketeering acts, and pose a continuous threat of engaging in racketeering acts." (Dkt. #212 at ¶¶282, 286).  It would be anomalous for the Court to allow class discovery with respect to certain alleged participants in this "RICO enterprise," but to stay discovery with respect to other Defendants because of their immunity defenses.  Discovery should not be permitted with respect to certain Defendants when other participants in this alleged RICO conspiracy have legitimate claims to immunity – claims that have not been resolved by this Court (or by an appellate court) at this point.

Third, aside from class discovery, the parties would be required to conduct discovery on the ten (10) claims asserted by Plaintiffs in their 102-page Second Amended Petition – claims that challenge Oklahoma's statutory system for the collection of fines and fees associated with criminal convictions. (Dkt. #212). These include:

(1) **RICO**, 18 U.S.C. §1962(c) and (d);

(2) **Fourteenth Amendment** ("Seeking, Issuing and Executing Debt-Collection Warrants Based Solely on Non-Payment Without Inquiry into Ability, to Pay Violates Plaintiffs' Rights Under the Fourteenth Amendment");

(3) **Fourteenth Amendment** ("Seeking, Issuing, and Executing Debt-Collection Arrest Warrants Based Solely on Unsworn Allegations of Nonpayment Containing Material Omissions Violates Plaintiffs' Rights Under the Fourth Amendment");

(4) **Fourteenth Amendment** ("Detaining Persons Arrested on Debt-Collection Arrest Warrants Because of an Inability to Pay Violates Plaintiffs' Rights Under the Fourteenth Amendment");

(5) **"State-Created Liberty Interests"** ("Jailing Debtors Without Proof of Willfulness Without Notice and a Hearing Violates Their State-Created Liberty Interests");

(6) **Due Process** ("Aberdeen, Inc.'s Role in Collecting Court Debts and Requesting and Recalling Arrest Warrants Violates the Due Process Clause");

(7) **Fourteenth Amendment** ("Defendants' Policy and Practice of Subjecting Individuals Who Owe Court Debt to Onerous Collection Enforcement Methods Violates the Fourteenth Amendment");

(8) **Abuse of Process.** ("The Practice of Using Arrest Warrants to Coerce Plaintiffs into Making Monetary Payments They Cannot Afford Constitutes Abuse of Process");

(9) **Duress**; and

(10) **Unjust Enrichment.**

(Dkt. #212). In short, the broad nature of these claims would require extensive discovery, which would impinge upon the immunity defenses discussed herein.

### 2. If an Interlocutory Appeal is Taken, the District Court is Divested of Jurisdiction Over Those Aspects of The Case Involved in the Appeal

Further, and relatedly, if an appeal is taken from any adverse decision on qualified or absolute immunity issues, the district court is divested of jurisdiction to proceed with any part of the action against an appealing defendant. *See Stewart v. Donges,* 915 F.2d 572, 576 (10th Cir. 1990). In *Stewart*, the Court held that when an appeal relates to matters dealing with the right of a defendant not to have to proceed to trial, e.g., double jeopardy or qualified immunity, the district court only retains jurisdiction "over peripheral matters *unrelated to the disputed right not to have [to] defend the prosecution or action at trial.*" 915 F.2d at 576 (emphasis added).[5] The *Stewart* Court distinguished certain appeals (involving isolated issues) from appeals (like those involving qualified immunity or double jeopardy) that relate "to the entire action." The latter divest the district court of jurisdiction to proceed with *any* part of the action against the appealing defendant. *Id.; see also McCauley v. Halliburton,* 413 F.3d 1158 (10th Cir. 2005) (holding appeal from denial of arbitration motion divested court of jurisdiction to proceed on merits of underlying claim while appeal pending). While it may be possible to identify certain discrete issues that remain within the district court's control, in qualified immunity cases, the "general rule is to stay all proceedings against all defendants." *See Dalton v. Town of Silver*, 2019 WL 1428363, 3 (D.N.M. 2019).

In the present case, the Court has not yet ruled on the Motions to Dismiss, so Defendants are unaware of the scope of any appeal. However, Defendants have raised immunity defenses. Defendants Sheriff Walton and (former) Clerk Henry have argued that they are entitled to absolute immunity regarding Plaintiff's claims concerning service of court process/warrants. (Dkt. #228).

---

[5] The district court can regain jurisdiction only by taking the "affirmative step of certifying the appeal as frivolous or forfeited, and until that step is taken it simply lacks jurisdiction to proceed with the trial." *Stewart*, 915 F.2d at 577-578.

14

As shown previously, court clerks have a statutory duty to charge and collect fines, fees and costs. 28 O.S. § 151. Sheriffs have the statutory obligation to serve process in civil and criminal cases. 19 O.S. §§ 514, 516, 518. These statutory obligations are significant and provide Defendants with a strong basis for their immunity arguments. *See Grossman v. City of Portland*, 33 F.3d 1200, 1209 (10th Cir. 1994) ("[A]n officer who reasonably relies on the legislature's determination that a statute is constitutional should be shielded from personal liability."). These issues should be addressed before invasive and ongoing discovery efforts are undertaken.

Defendants also argued that they are entitled to qualified immunity because there was no underlying constitutional violation related to the arrest and detention of persons for failure to pay; because any right at issue was not clearly-established; and because Defendants reasonably relied upon duly enacted statutes and an ordinance from the Oklahoma Supreme Court. The other County Sheriffs have made similar arguments. (Dkt. #239). Sheriff Regalado has made similar arguments. (Dkt. #235). And the Court Clerks and the Tulsa Cost Administrator have made similar arguments. (Dkt. #227, 236, 237). These issues go to the heart of Plaintiffs' claims and, per *Stewart*, the Court would be divested of jurisdiction over such claims during the pendency of an appeal of these immunity issues. For those reasons, the Court should reject Plaintiffs' request to open discovery regarding class and merits issues.

C.     **Discovery Should Not Be Opened When The Court Has Not Yet Ruled on The Motions to Dismiss**

Finally, as a practical matter, discovery should not be opened until the Court rules on Defendants' Motions to Dismiss. Those motions raise substantial issues related to subject matter jurisdiction, failure to state a claim, absolute immunity, and qualified immunity. (Dkt. #226, 227, 228). The Court initially found good cause to delay entry of a scheduling order in order for the Court to address Defendants' Motions to Dismiss. (Dkt. #186). The same rationale continues to

15

hold true.  The parties are currently unaware of which claims will go forward and which are subject to dismissal.  And, as discussed above, the parties are also unaware of the Court's ruling with respect to the qualified and absolute immunity defenses.  *See K.D by Nipper*, 2018 WL 10808848, at 2 ("[T]he Court acknowledges the efficiency and fairness of delaying the proceedings pending resolution of a motion to dismiss that could resolve this matter in its entirety.").  For those reasons, a stay is appropriate because certain claims may be finally resolved by the Court's ruling on the Motions to Dismiss and because broad discovery on all issues would be wasteful and burdensome in light of the arguments presented in Defendants' Motions to Dismiss.

In addition, Plaintiffs have proposed to certify four "classes," which involve, in one form or another, the ten (10) claims asserted against sixty-six (66) Defendants.  (Dkt. #212).  It is common, and often preferable, for the Court to rule on motions to dismiss before assessing class arguments in order to "spare[] both parties and the court a needless, time-consuming inquiry into certification."  *See Curtin v. United Airlines*, 274 F.3d 88, 92 (D.C. Cir. 2001).  Indeed, as "a practical matter, is appropriate to clarify the nature and scope of the pending claims before determining their suitability for class action treatment."  *See Jamieson v. Vatterott*, 259 F.R.D. 520, 526 (D. Kan. 2009).  The Court has discretion to determine the most appropriate point in the proceedings for certification.  *Meyers v. Bd. of Educ. of San Juan Sch. Dist.*, 905 F. Supp. 1544, 1578 (D. Utah 1995) ("The court believes that a ruling on the issue of class certification is premature in this case where further discovery and factual development may narrow the issues and affect the definitions of the putative class or classes.").

### D.     The Stay Factors Do Not Favor Opening Discovery

Plaintiffs argue that the stay should be lifted because of the various factors outlined for lifting a stay in a traditional civil case, as identified above.  Plaintiffs' arguments are without merit:

16

### 1.       Plaintiffs' Interests and Potential Prejudice

Plaintiffs argue that they continue to suffer the "risk" of harassment, threats, and detention because of poverty.  However, Plaintiffs have cited <u>no instance during the stay period</u> where any Plaintiff has suffered any actual detention or arrest for failure to pay.  To the contrary, the primary named Plaintiff (Carly Graff) has now paid her outstanding fines and costs, leaving substantial questions about whether she even is a proper party to this case.[6]  Further, the mere "fear" of being required to pay a duly imposed fine does not state a constitutional violation.  In fact, it does not even amount to a state-law tort.  *E.g.*, Dkt. #228 at 14 n.9.

Plaintiffs also argue that economic uncertainty plagues the country and that unemployment has "reached record levels," but Plaintiffs fail to show how those general arguments justify Plaintiffs' need for immediate and invasive class discovery.  Plaintiffs certainly fail to show how those facts justify invasive discovery against numerous government officials who, themselves, are navigating the difficulties associated with the ongoing pandemic.  Qualified immunity is designed, in part, to protect against "the distractions that can accompany even routine lawsuits."  *E.g.*, *Filarsky v. Delia*, 566 U.S. 377, 391 (2012).  This lawsuit is far from routine, but challenges the entirety of this State's legislatively-sanctioned failure-to-pay and misdemeanor warrant collection process, including related orders from the Oklahoma Supreme Court.  *E.g.*, 19 O.S. §514.4 *et seq*.

Plaintiffs complain that they might suffer "evidentiary prejudice" due to the passage of time, but this argument is speculative in nature.  The underlying criminal records (related to fines,

---

[6] *See State of Oklahoma v. Graff, Carly Michelle*, Case No. TR-2017-1672.  In that regard, see *O'Shea v. Littleton*, 414 U.S. 488 (1974) (finding plaintiffs in class action failed to allege actual case or controversy because named plaintiffs had not suffered injury from alleged illegal bond-setting, sentencing and jury-fee practices).

fees and costs) are public records and recorded on public dockets.  They will not disappear.  And, there is no basis to conclude that evidence or witnesses will disappear if the stay remains in place.

**2.     The Burden Imposed on Defendants**

Plaintiffs claim that Defendants will suffer no prejudice if required to participate in discovery.  But, Plaintiffs can only make this argument by ignoring the immunity defenses referenced above.  *See Krell v. Queen Anne's County*, 2020 WL 416975 (D. Md. 2020) (finding that potential loss of qualified immunity rights supports stay of discovery) ("This potential for irreparable loss supports granting a stay.").  Sheriff Walton and Court Clerk Henry do not just have an "interest" in avoiding discovery.  Rather, Defendants contend that they are *immune* from such discovery.  This potential loss of such immunity – i.e., caused by participation in the discovery process – constitutes a special burden justifying a stay of discovery until such time as the immunity issue is resolved by this Court and/or by an appellate court.

As noted above, the discovery burdens in this case will be enormous.  Plaintiffs have sued 62 government actors and/or entities.  (Dkt. #212).  Plaintiffs have pursued numerous claims (some overlapping; some discrete) against all Defendants.  Plaintiffs will propound numerous discovery requests on all Defendants and will seek to take numerous depositions.  Plaintiffs will seek both class discovery and merits discovery at the same time.  Defendants, in turn, will be forced to conduct similar discovery on all issues in the case.  Hence, Plaintiffs' argument that there would be no "special burden" placed on Defendants by opening discovery is incorrect and, frankly, quite unreasonable.  Such an argument can only be made by ignoring the true nature of Plaintiff's legal theories and the amount and type of discovery that would be necessary to support such claims.

18

### 3.    The Convenience to the Court

Plaintiffs claim that opening discovery is "in the interest of convenience to the Court" because it will prevent the Court from assessing "evidentiary gaps."  But, in reality, the Court would be better suited to address discovery and evidentiary issues after the Court rules on the Motions to Dismiss and after immunity defenses are resolved.  Otherwise, the Court will be forced to litigate this case in piecemeal fashion.  *E.g., Codero v. Froats*, 2015 WL 12862514, 1 (D.N.M. 2015) (staying action in light of qualified immunity appeal because the "Court does not want to proceed piecemeal on this case").  The Court's ruling would resolve whether certain Defendants will be dismissed from the case, and would impact ongoing issues related to (1) the putative classes; (2) the common issues of fact; and (3) the common issues of law.  Indeed, the Court's ruling may dramatically affect the scope of discovery.  It would be disruptive to the parties and the Court to oversee a (potentially) contentious multi-year discovery process only for the Court to later rule that some or all defendants are entitled to some form of immunity.  This factor counsels against proceeding in a piecemeal fashion.

### 4.    Burden Imposed on Non-Parties

Plaintiffs claim that a lift on the stay would benefit non-parties because the lawsuit, if successful, would apparently benefit family members of putative class members.  Plaintiffs' counsel claim that an unidentified person contacted them about her daughter, who owed outstanding costs and fees per some unidentified Oklahoma law violation.  Defendants are unable to respond to hearsay allegations about unidentified persons unaffiliated with this lawsuit. Plaintiffs, of course, do not mention the valid interest of the State in the execution of its criminal laws.  That is, collection of fines and fees is an important state function, which clearly "implicate[s] separately articulated state policies."  *See Taylor v. Jaquez,* 126 F.3d 1294, 1297 (10th Cir. 1997);

*see also Green v. Whetsel*, 166 Fed. Appx. 375, 376 (10th Cir. 2006) ("Oklahoma has an important interest in enforcing its criminal laws through criminal proceedings in the state's courts."). This interest alone amounts to good cause to keep the stay in place.

### 5. Public Interest

Finally, Plaintiffs suggest that the public interest justifies opening discovery because the "persistence of a de factor debtors' prison scheme." (Dkt. #323). Of course, this is an allegation only. Oklahoma does not operate a *de facto* debtors' prison. Rather, Plaintiffs have admittedly violated Oklahoma law and, among other penalties for said violations, owe fines and fees as a result of their unlawful conduct. The public interest is served by those Defendants who voluntarily satisfy the terms of their criminal sentences, including their failure-to-pay agreements. Plaintiffs concede that a process is available to them (Rule 8) to make arguments about their ability to pay. *See also Winbush v. State*, 433 P.3d 1275 (Okla. Crim. App. 2018) (finding that after State has shown probationer failed to make restitution payments, burden shifts to probationer to prove that failure to pay was not willful or that he/she has made sufficient *bona fide* efforts to pay). In their Motion to Open Discovery, they ignore that process. Further, the failure-to-pay and misdemeanor warrant program has been deemed appropriate by the Oklahoma Legislature, *e.g.,* 19 O.S. §514.4, and clearly serves important government interests by providing direction and approval of a mechanism by which to collect outstanding court fines, fees and costs. The public interest is not served by opening discovery on a process designed to disrupt that system. If successful, it would only benefit those who owe fines, fees and costs to the State.

## III.     CONCLUSION

As discussed above, Defendants Sheriff Scott Walton, (former) Court Clerk of Rogers County Kim Henry, and Board of County Commissioners of Rogers County respectfully request the Court deny Plaintiff's Motion to Enter Scheduling Order and Open Discovery.  As discussed above, because numerous Defendants retain qualified and absolute immunity arguments, Defendants are entitled to a stay until such time as those defenses are finally adjudicated, including through an appeal if necessary.  In addition, the opening of discovery is not necessary until such time as the Court rules on the Motions to Dismiss and, in light of the serious qualified and absolute immunity defenses at stake, the factors governing the opening of discovery do not favor opening discovery on class or merits issues at this time.

WHEREFORE, premises considered, Defendants Scott Walton, Kim Henry, and Board of County Commissions of Rogers County respectfully request the Court deny Plaintiff's Motion to Enter Scheduling Order and Open Discovery, and grant any other appropriate relief on these issues.

Respectfully submitted,

s/ Thomas A. LeBlanc
Thomas A. LeBlanc, OBA #14768
W. Caleb Jones, OBA #33541
BEST & SHARP
One West Third Street
Williams Center Tower I, Suite 900
Tulsa OK 74103
(918) 582-1234 Telephone
(918) 585-7447 Facsimile
tleblanc@bestsharp.com
wcjones@bestsharp.com
*Attorneys for Defendants,*
*Scott Walton, Sheriff of Rogers County,*
*in his official and individual capacity; and*
*Board of County Commissioners of Rogers*
 *County, Oklahoma; and Kim Henry, official*
*capacity only*

21

s/ Scott B. Wood
Scott B. Wood, OBA #12536
WOOD, PUHL & WOOD, PLLC
2409 E. Skelly Drive, Suite 200
Tulsa, Oklahoma 74105
(918) 742-0808
(918) 742-0812
okcoplaw@aol.com
*Attorney for Kim Henry, individual capacity*

## CERTIFICATE OF MAILING

I hereby certify that on the 18th day of September, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

Daniel E Smolen
danielsmolen@ssrok.com
Donald E. Smolen
donaldsmolen@ssrok.com
Robert M. Blakemore
bobblakemore@ssrok.com
Seth T. Wayne
sw1098@georgetown.edu
Mary B. McCord
mbm7@georgetown.edu
Robert D. Friedman
rdf34@georgetown.edu
Elizabeth Rossi
elizabeth@civilrightscorps.org
Jill Elizabeth Webb
Jill.Webb@gmail.com
Douglas N. Letter, Admitted Pro Hac Vice
dl1016@georgetown.edu
Ryan Downer, Admitted Pro Hac Vice
ryan@civilrightscorps.org
Marco Lopez, Admitted Pro Hac Vice
marco@civilrightscorps.org
Tara Mikkilineni, Admitted Pro Hac Vice
tara@civilrightscorps.org
Ryan Downer
ryan@civilrightscorps.org
*Attorneys for Plaintiffs*

22

Robert E. Applegate
applegate@cswlawgroup.com
*Attorney for Aberdeen Enterprizes, II, Inc.*

John R Woodard III
john@csmlawgroup.com
*Attorney for Aberdeen Enterprizes II, Inc.,*
*Jim D. Shofner and Rob Shofner*


Jeffrey C. Hendrickson
jhendrickson@piercecouch.com
Robert Lamar Betts
rbetts@piercecouch.com
April D. Kelso
akelso@piercecouch.com
Robert S. Lafferandre
rlafferandre@piercecouch.com
Randall J. Wood
rwood@piercecouch.com
*Attorneys for 52 Sheriff Defendants*
*Excluding the Sheriffs of Oklahoma, Rogers*
*and Tulsa Counties*

Rodney J. Heggy
rod.heggy@oklahomacounty.org
Aaron Etherington
aaron.etherington@oklahomacounty.org
Carri A. Remillard
carri.remallard@oklahomacounty.org
*Attorney for PD Taylor, Oklahoma County Sheriff*

Chris M. Warzecha
cwarzecha@cwlaw.com
Isaac Robertson Ellis
iellis@cwlaw.com
Melodie Freeman-Burney
mburney@cwlaw.com
Robert Dale James
rob.james@cwlaw.com

Maurice G. Woods, II
mauricew@mcateeandwoods.com
Kelsey A. Chilcoat
kelseyc@mcateeandwoods.com
McAtee & Woods, P.C.
410 N.W. 13th Street

Oklahoma City, Ok 73103
*Attorneys for Oklahoma Sheriffs' Association*

Stefanie E. Lawson
stefanie.lawson@oag.ok.gov
*Attorneys for Judge Dawn Moody, Judge Doug M. Drummond,*
*Judge Williams J. Musseman, Jr. and Judge Terrell S. Crosson*

Joel L. Wohlgemuth
jlw@nwcjlaw.com
Jo Lynn Jeter
jlj@nwcjlaw.com
Douglas A. Wilson
douglas.wilson@tulsacounty.org
Barrett L. Powers
blp@nwcjlaw.com
Mike Shouse
mshouse@tulsacounty.org
*Attorneys for Don Newberry, Tulsa County Court Clerk, Vic Regalado, Tulsa County*
*Sheriff, Darlene Bailey, Tulsa County Cost Administrator, Board of County*
*Commissioners for Tulsa County*

s/ Thomas A. LeBlanc