# United States District Court
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CARLY GRAFF, et al. | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-CV-606-TCK-JFJ |
| | ) | |
| ABERDEEN ENTERPRIZES II, INC., et al. | ) | |
| | ) | |
| | ) | |
|     Defendants. | ) | |

REQUEST FOR THE COURT TO TAKE JUDICIAL NOTICE OF ITS RECORDS IN ANOTHER PROCEEDING AND OF THE OTHER LAW ENFORCEMENT AGENCIES ACTIVE IN TULSA COUNTY BESIDES THE TULSA COUNTY SHERIFF'S OFFICE

COME NOW Defendants, Tulsa County Sheriff, Vic Regalado, Tulsa County Court Clerk, Don Newberry, and Tulsa County Court Cost Administrator, Darlene Bailey (collectively, the "Tulsa County Defendants"), and for purposes of Plaintiff's Motion for Preliminary Injunction request this Court to take judicial notice of its records in another proceeding and of the other law enforcement agencies active in Tulsa County besides the Tulsa County Sheriff's Office. In support hereof, Tulsa County Defendants state as follows:

    1.    Since the filing of Plaintiff's Motion for Preliminary Injunction (Doc. 77, 79), the COVID-19 pandemic has swept across the world and changed the habits of congregate housing.

    2.    Recently, both the State Court Judges and the Tulsa County Sheriff in *Feltz v. Board of County Comm'rs of Tulsa County, et al.*, Case No. 18-cv-298-CVE-JFJ pending in the U.S. District Court for the Northern District of Oklahoma, have filed evidentiary materials with this Court in support of the fact that during this pandemic the State Court Judges, Public Defender and District Attorney are working together to keep the population of the Tulsa County Jail at a minimum for reasons of public health. *See* Declaration of Judge David Guten, Exhibit "4" to Defendant State Judges' Response to Plaintiffs' Motion for Temporary Restraining Order

1

and Preliminary Injunction against Defendant Tulsa County Sheriff and Brief in Support (Doc. 167-4); Affidavit of Stephen Andrew Kunzweiler, Exhibit "K" to Defendant Tulsa County Sheriff's Response Brief to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction against Defendant Tulsa County Sheriff (Doc. 166-11); and Samantha Vincent, *Tulsa County Jail Occupancy Hits Record Low as Judges, Attorneys, Police Adjust to Covid-19 Pandemic*, Tulsa World, March 28, 2020, https://www.tulsaworld.com/news/local/crime-and-courts/tulsa-countyjail-occupancy-hits-record-low-as-judges-attorneys-police-adjust-to-covid-19/article_9ba4c86d-0fdc-5223-983b-89fa572ad54f.html (Doc. 166-12). For the Court's convenience, these court records are also attached hereto as Exhibits "A," "B" and "C," respectively.

3. A court may take judicial notice "of its own records and files, and facts which are part of its public records." *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979).

4. In addition to the Tulsa County Sheriff's Office, there are at least sixteen other law enforcement agencies with the authority in Tulsa County to arrest someone on an outstanding arrest warrant:[1] (1) Oklahoma Highway Patrol; (2) Tulsa Police Department; (3) Bixby Police Department; (4) Broken Arrow Police Department; (5) Catoosa Police Department; (6) Collinsville Police Department; (7) Jenks Police Department; (8) Owasso Police Department; (9) Glenpool Police Department; (10) Sand Springs Police Department; (11) Sapulpa Police Department; (12) Skiatook Police Department; (13) Sperry Police Department; (14) Inola Police Department; (15) Muscogee (Creek) Nation Whitehorse Tribal Police Department; and (16) Tulsa International Airport Police Department.

---

[1] 22 O.S. §§ 172, 175, 967-969.

5. A court may take judicial notice of the existence of other police departments present in a county besides the county sheriff's office. *See Slusher v. Furlong*, 29 Fed.Appx. 490, 493, 2002 WL 12252 (10th Cir. Jan. 4, 2002) ("We take judicial notice that Westminster and Arvada are municipalities located, at least in part, in Jefferson County, Colorado, and that both cities have their own police departments that are separate from the Jefferson County Sheriff's Department").

WHEREFORE, Tulsa County Defendants respectfully request this Court to take judicial notice of Doc. Nos. 167-4, 166-11 and 166-12 filed in Case No. 18-cv-298-CVE-JFJ, and to take judicial notice of the other law enforcement agencies active in Tulsa County besides the Tulsa County Sheriff's Office (*see* paragraph 5 above).

Respectfully submitted,

/s/ Douglas A. Wilson
Douglas A. Wilson, OBA No. 13128
Assistant District Attorney | Civil Division
Tulsa County District Attorney's Office
500 S. Denver Ave. Ste. 827
Tulsa, OK 74103
(918) 596-8795
douglas.wilson@tulsacounty.org

Joel L. Wohlgemuth, OBA #9811
Jo Lynn Jeter, OBA #20252
Barrett Powers, OBA #32485
NORMAN WOHLGEMUTH CHANDLER JETER
    BARNETT & RAY
2900 Mid-Continent Tower
401 South Boston
Tulsa, OK 74103
(918) 583-7571
(918) 584-7846 – facsimile
jwohlgemuth@nwlawok.com
jjeter@nwlawok.com
bpowers@nwlawok.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Robert Earl Applegate | Thomas Adrian LeBlanc |
| Robert Lamar Betts | Douglas N. Letter |
| Robert Murray Blakemore | Mary B McCord |
| Kelsey Ann Chilcoat | Harry Anthony Parrish |
| Isaac Robertson Ellis | Carri Ann Remillard |
| Melodie Freeman-Burney | Elizabeth Rossi |
| Robert D Friedman | Daniel E Smolen |
| Rodney J Heggy | Donald Eugene Smolen, II |
| Jeffrey Calvin Hendrickson | Todd Michael Wagner |
| Katherine Hubbard | Chris M Warzecha |
| Robert Dale James | Seth T Wayne |
| Alexander Karakatsanis | Jill Elizabeth Webb |
| April Danielle Kelso | Randall J Wood |
| Robert Stevens Lafferrandre | John R Woodard, III |
| Stefanie Erin Lawson | Maurice Glenn Woods, II |

/s/ Douglas A. Wilson
Douglas A. Wilson

## DECLARATION OF JUDGE DAVID GUTEN

**STATE OF OKLAHOMA** )
) ss:
**COUNTY OF TULSA** )

I, David Guten, of lawful age, first being duly sworn upon oath, make the following statements based upon my personal knowledge:

1. I am currently a Special Judge in the Tulsa County District Court. I have held this position since February 11, 2019. My duties and responsibilities include presiding over the bond docket created by Administrative Order 2018-09 and codified in Local Criminal Rule 2 on August 22, 2019.

2. The bond docket is currently being held every day.

3. New arrestees appear at the bond docket via video link from the Tulsa County Jail within 48 hours of arrest. A public defender assigned to the bond docket is present to provide assistance to arrestees during their bond settings and to present information and argument on the arrestee's behalf.

4. The daily bond dockets are occurring without interruption despite the closure of the Courthouse for most other matters pursuant to the Orders of the Oklahoma Supreme Court and the Presiding Judge of the Tulsa County District Court.

5. No person currently being held in pretrial detention is being held "because they are poor". The rationale for denial of a PR bond and/or imposition of any condition of release is announced from the bench in open court for the benefit of all participants.

6. Conditions of release are set at the time of an arrestee's appearance on the bond docket based on all of the relevant factors.

7. As an additional post-bond-docket safeguard in light of Covid-19, the public defender's office is actively monitoring the jail population and—if they have any concerns—requesting bond modifications via email. Attorneys from Still She Rises are also seeking bond modifications via email in an effort to expedite the process. A sample of these requests is included as Exhibit A. The Court is considering each of those informal requests and granting modification where

Exhibit "A"

appropriate. The persons considered for modification informally are not reflected on the daily docket sheets. This informal process does not take the place of or prevent any arrestee from filing a formal bond-modification motion.

8. The district attorney and public defender's offices are working with the Court to further reduce the jail population in response to COVID-19. These efforts include identifying and processing misdemeanor defendants that are eligible to conclude their proceedings on an accelerated basis.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __9__ day of __April__, 2020.

_____
Judge David Guten

| Arrestee's Name | Case Number | Date of Request | Relief Requested |
|---|---|---|---|
| Keith Martin | CM-20-1318 | 3/20/20 | PR bond |
| Kathleen Walding | CF-20-1319 | | PR bond |
| Gerrick Henderson | CF-20-1059 | | PR bond |
| Rudy Yocham | CM-20-1087 | | PR bond |
| Kristy Smith | CF-20-1295 | 3/31/20 | PR bond |
| Ronnie McGowan | CF-18-3356 | | Reduce to $3,000 |
| Dustin Smith | CF-20-1353 | | PR bond |
| Jerome Shavers | CF-20-1480 | | PR bond |
| Isac Hernandez | CF-20-1422 | | PR bond |
| Paul Baker | CM-20-1322 | 4/2/20 | PR bond |
| Isac Hernandez | CF-20-1422 | | PR bond |
| Shelly Bledsoe | CF-19-0318 | | PR bond |
| Dustin Densmore | CF-20-1434 | | PR bond |
| Solen Deer-in-Water | CM-20-1248 | | PR bond |
| Desmond Ishman | CF-19-4711 | | PR bond |
| Matthew Garrison | CF-20-1437 | | PR bond |
| Joseph Garzone | CF-20-1367 | | Reduce to $1,000 |
| Chris Green | CF-20-1448 | | PR bond |
| Brent Gray | CF-19-5328 | | PR bond |
| Vincent Carter | CF-20-1009 | | Reduce to $1,000 |
| Brandie Russell | CF-19-5772 | 4/6/20 | PR bond |

EXHIBIT 4-1

# United States District Court
NORTHERN DISTRICT OF OKLAHOMA

MICHAEL PARGA, et al., )
)
    Plaintiffs, )
)
vs. ) Case No. 18-cv-00298-CVE-JFJ
)
BOARD OF COUNTY COMMISSIONERS OF )
THE COUNTY OF TULSA, et al. )
)
    Defendants. )

**AFFIDAVIT**

Exhibit "B"

STATE OF OKLAHOMA )
) ss.
COUNTY OF TULSA )

    The undersigned, of lawful age, being first duly sworn upon oath, deposes and states as follows:

1. I am the District Attorney for the District Attorney's Office, 14th District.

2. Since the on-set of concerns related to the COVID-19 pandemic the Tulsa County Public Defender's Office has frequently engaged with my office as well as the Tulsa County District Courts to address pre-trial detention concerns and bond settings related to their clients.

3. As recently as April 6, 2020 the Tulsa County Public Defender's Office provided the names and case numbers of some of their clients to the District Attorney's Office in a reconsideration related to the COVID-19 pandemic for further reduction of bonds previously set. (See attached Exhibit A)

4. The alleged offenders listed in Exhibit A were put on a docket scheduled for April 7, 2020 so that the Tulsa County Public Defender could advocate on behalf of their clients for lower bonds. The listed explanation for the re-consideration of bond was "Change of condition – COVID".

5. Similar requests by the Public Defender's Office to schedule bond reduction hearings for bonds previously set have been regularly accommodated since the COVID-19 crisis began.

6. As of August 2019, and new Tulsa County District Court Criminal Rule 2, the Tulsa County District Court is conducting bond docket hearings 365 days a year.

Assistant district attorneys on behalf of the State of Oklahoma are provided advanced notification of the setting of these individualized bond hearings. Any unrepresented pretrial detainee is appointed counsel from the Tulsa County Public Defender's Office for purposes of this bond hearing. Their representation encompasses requests for bond reduction, requests for PR bonds and other relief from pretrial detention they think appropriate. Specifically, the Public Defender's Office has been routinely requesting bond reductions based on concerns about COVID-19. This factor, and indeed all individual factors surrounding a suspect's case and circumstances, is currently being considered when assessing bond.

7. Separate from all these endeavors, a majority of the District Court criminal judges are individually reviewing in-custody defendants on their respective District Court Arraignment dockets. While I do not have specific documentation for these efforts, I have been informed that virtually all criminal judges are making this effort in conjunction with their assigned assistant district attorney and assistant public defender.

*Stephen A. Kunzweiler*
**Stephen Andrew Kunzweiler, Affiant**
District Attorney, 14th District

Subscribed and sworn to before me this __8TH__ day of April, 2020.

*Patty G. Beaston*
Notary Public

My Commission Expires: _____

[Notary Seal: PATTY G. BEASTON, NOTARY, #01017626, EXP 11/20/21, STATE OF OKLAHOMA]

From: Lollman, Jason [mailto:Jason.Lollman@oscn.net]
Sent: Sunday, April 5, 2020 1:52 PM
To: Erik Grayless <egrayless@tulsacounty.org>; Kevin Keller <kkeller@tulsacounty.org>
Subject: Bond reduction requests

Erik,

Per our conversation on Friday, I am emailing you the list of bond reduction requests I intend to make on Tuesday's docket. This is the same list I am forwarding to judge Miller.

I understand you will probably be objecting to most of not all of these requests. I would ask you to look at Keenan Anderson though. It appears he is being held on a count of KCSP that wasn't filed. That would probably be an easy $3,000 reduction that we could agree to.

Anyway, let me know what you think. I have added Kevin Keller to this email as you requested.

Thanks!

# Exhibit A

| Defendant's Name | Case No. | Charges | Bond Request | Reason | Docket |
|---|---|---|---|---|---|
| Greg Lamont Dumas | CF-2020-1188 | Maiming | $20,000 >> $10,000 | Change of condition--COVID | A |
| Keenan Anderson | CF-2020-1277 | Poss. Of F/A AFCF | $3,000 reduction | COVID; KCSP count not filed | B |
| Antyon Custard | CF-2019-5179 | Murder 1 | 50% reduction | Change of condition--COVID | B |
| Alan Hunter | CF-2020-1518 | PSV; Forged Inst. | $7,500 >> $2,000 or PR | Change of condition--COVID | B |
| Brianna Walker | YO-2020-15 | Robbery 1 | $50,000 >> $15,000 or PR | Change of condition--COVID | B |
| Gerran Childress | CF-20-586; CF-20-1209 | Burg3; Remove Mon | Agg bond of $10,000 | Change of condition--COVID | C |
| Tamara Crook | CF-2020-1263 | Conjoint Rob; ABPO | $124,000 > $50,000 | Change of condition--COVID | C |
| Derrick McBee | CF-2020-1280 | A&B-ST; Larc of Auto | $7,000 >> $3,500 | Change of condition--COVID | C |
| Devan Whitehead | CF-2020-1275 | Eluding; Poss F/A | $16,000 >> $7,500 | Change of condition--COVID | C |

4/7/2020 Tulsa County jail occupancy hits record low as judges, attorneys, police adjust to COVID-19 pandemic | tulsaworld.com
Case 4:18-cv-00298-CVE-JFJ Document 166-12 Filed in USDC ND/OK on 04/09/20 Page 1 of 5
Case 4:17-cv-00606-TCK-JFJ Document 341 Filed in USDC ND/OK on 09/23/20 Page 12 of 16

# Tulsa County jail occupancy hits record low as judges, attorneys, police adjust to COVID-19 pandemic

By Samantha Vicent Tulsa World  Mar 28, 2020



Exhibit "C"

As of 4 p.m. Friday, the Tulsa County Jail population had decreased roughly 15 percent within a 10-day period -- resulting in what's believed to be a new low of occupancy at the facility. MIKE SIMONS/Tulsa World
STAFF

Related Content

**Find all of the links to coronavirus content in this Tulsa World Special report**

The local court system is adapting to life amid the COVID-19 global pandemic.

As of 4 p.m. Friday, the Tulsa County Jail population had decreased roughly 15% within a 10-day period — resulting in what's believed to be a new low of occupancy at the facility.

Case 4:18-cv-00298-CVE-JFJ Document 166-12 Filed in USDC ND/OK on 04/09/20 Page 2 of 5
Case 4:17-cv-00606-TCK-JFJ Document 341 Filed in USDC ND/OK on 09/23/20 Page 13 of 16
4/7/2020 Tulsa County jail occupancy hits record low as judges, attorneys, police adjust to COVID-19 pandemic | Crime & Courts | tulsaworld.com

"We have told officers to use discretion," Tulsa Police Chief Wendell Franklin told the Tulsa World this week. "We don't want to put officers in any danger. We don't want to bring people into the city jail or the county jail to potentially spread this virus."

However, Franklin cautioned the state is in "a crisis" because of the safety risks created by the rapid spread of COVID-19, caused by the coronavirus.

"We're in this pandemic, but we still have to try and maintain order within our community," he said. "Crime does not stop because this pandemic has hit, and we wish it would."

On Friday, the Oklahoma Supreme Court modified its March 16 emergency order to state district courts requiring the cancellation of juried trials through May 15 and ordered the closure of all 77 county courthouses except for emergencies. In emergency hearings, no more than 10 people can be in a courtroom at one time, including the judge and court personnel.

In specialized proceedings March 19, the Tulsa County Public Defender's Office successfully lobbied for the release of dozens of people either accused only of misdemeanors or nonviolent felony offenses. By the end of that day, Tulsa County Presiding Judge William LaFortune ordered courtrooms and judges' offices closed, though the daily bond docket — and other emergency civil and criminal matters — is still taking place remotely.

District Attorney Steve Kunzweiler said Wednesday that LaFortune, Tulsa Mayor G.T. Bynum and Franklin have since spoken about "limiting arrests to public safety threats" or those "engaged in ongoing criminal enterprises."

Bynum's office declined further comment but Franklin said he recorded 37 arrests on March 17 compared to 22 arrests on Tuesday.

Chief Public Defender Corbin Brewster said there were about 1,250 people housed at the Tulsa County jail on March 16, while a jail population report Friday afternoon said there were nearly 1,100 people on the books.

"We don't want people in the jail any more than they want to be in the jail," said Broken Arrow Police Public Information Officer Chris Walker, whose agency transports arrestees to Tulsa and Wagoner counties. "Even on our responses to calls, we're taking a lot of telephone reports instead of in-person reports to minimize contact."

Franklin said Tulsa County Sheriff Vic Regalado has since implemented a protocol to separate new bookings from those who are already in general population. Sheriff's Office spokeswoman Casey Roebuck has said there is no evidence COVID-19 has entered the jail, though the county has not publicly said whether anyone in the jail has been tested.

Kunzweiler issued a statement to the World in which he said, "Individuals who are not public safety threats are processed quickly and many times released (from jail) on a personal recognizance bond or on a reduced bond."

But Brewster said he identified at least 10 arrests between March 19 and 23 that were "likely avoidable" altogether, including a woman arrested March 21 on a $100 bond for a 2008 misdemeanor warrant for a bogus check.

Kunzweiler, in his statement, said people can be released from custody pre-trial either on their own recognizance with conditions including ankle monitors and homebound detention if necessary, and said, "This is a fluid situation with changes happening every day."

He said the daily bond docket helps to more quickly address cases such as the ones Brewster highlighted.

4/7/2020 Case 4:18-cv-00298-CVE-JFJ Document 166-12 Filed in USDC ND/OK on 04/09/20 Page 4 of 5
Case 4:17-cv-00606-TCK-JFJ Document 341 Filed in USDC ND/OK on 09/23/20 Page 15 of 16
Tulsa County jail occupancy hits record low as judges, attorneys, police adjust to COVID-19 pandemic | tulsaworld.com

Asked about the arrests Brewster cited, Franklin said there are often "underlying factors" that go into the decision to arrest someone with such a warrant, including whether the person is disturbing the peace during their interaction.

He went on to say it was easy to "sit an office and say on paper we should not make arrests on petty crimes and other things," but countered: "What if we get called to, say, a guy running around naked on the streets of Tulsa?

"Do people want their kids (and) do families want to see that?" Franklin asked. "In some instances, we have to make an arrest on that." However, he said: "There's lots of times we interact with people and say 'you have warrants, go take care of those.' "

He said, "I've been on for 23 years and I was doing it as a rookie officer. We've always had that (discretion.) And I think more so now officers are using that discretion."

When asked a similar question about warrant-related arrests, Sand Springs Police Chief Mike Carter said, "The guidance we've put out to our officers is that they need to use discretion in those types of situations. There's obviously a lot more important things to be concentrating on right now."

Carter said officers there have typically issued citations for drug crimes since the legislative passage of criminal justice reform measures. However, he said the agency is also limiting arrests for certain other nonviolent offenses and said police are focused on outreach to businesses impacted by closures due to COVID-19.

Case 4:18-cv-00298-CVE-JFJ Document 166-12 Filed in USDC ND/OK on 04/09/20 Page 5 of 5
Case 4:17-cv-00606-TCK-JFJ Document 341 Filed in USDC ND/OK on 09/23/20 Page 16 of 16
4/7/2020 Tulsa County jail occupancy hits record low as judges, attorneys, police adjust to COVID-19 pandemic | Courts | tulsaworld.com

"But when we say nonviolent offenses, to be clear, we do not count burglary and felony-level theft crimes in that same manner," Carter said.

Walker, from Broken Arrow, said officers would still be required to make arrests in suspected cases of domestic violence but said he believed "not much has changed" with regard to behavior on patrol.

"Where is the line?" he said of deciding which offenses are worthy of arrest. "Everybody's going to say something different. Minor offenses may get a citation rather than an arrest, but that's going to be the individual officer's discretion."

Brewster said Friday afternoon that he thinks law enforcement has overall "done better" at reducing bookings since last week and added: "I think there seems to have been a change in tone in terms of those arrests." He also commended Franklin's willingness to discuss circumstances related to the arrests he identified.

"We recognize the seriousness of this and we recognize the judicial system isn't operating at full strength. We know that," Franklin told the World of the situation. "Obviously the courts know that. The presiding judge knows that. Our municipal judges and court administrator know that.

"But they recognize there is still some function of government that has to be maintained and that judicial branch has to continue to operate, albeit more slowly and remotely. That's the difficult thing. We know we still have to operate and every branch of government still has functions it has to do."