**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

CARLY GRAFF, et al.,                )
                                    )
                Plaintiffs,          )
                                    )
v.                                  )          Case No. 17-CV-606-TCK-JFJ
                                    )
ABERDEEN ENTERPRIZES, II, Inc.,      )
et al.,                             )
                                    )
                Defendants.          )

## OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss the Second Amended Complaint. (Doc. 226). Plaintiffs filed a Response to said motion (Doc. 268), and Defendants filed a Reply (Doc. 292). The definitive question presented is whether this Court has subject matter jurisdiction over Defendants who administer a statutorily created operating fund that is partially sourced, pursuant to state law, by certain categories of statutorily-authorized fines and fees? Although this issue is raised in the instant motion, it is also raised by every other defendant in this case in separate Motions to Dismiss the Second Amended Complaint. See Docs. 226, 227, 228, 230, 231, 232, 233, 234, 235, 236, 237, 238, and 239.

### I. BACKGROUND

Plaintiffs are eight individuals that, at some point, became subject to criminal sentences which included a component for payment of fees, costs and/or fines. The Defendants are a collection of entities with differing involvement along a spectrum from the point of sentencing to events occasioned by the Plaintiffs' failure to comply with the financial obligations of their sentences. Defendant Aberdeen Enterprizes, II, Inc's ("Aberdeen")  involvement in this spectrum relates solely to an Oklahoma statute which allows Oklahoma county sheriffs to enter into a

"private contract" for the purposes of locating and notifying persons of outstanding failure-to-pay warrants and permits the private contractor to accept payment of the outstanding amounts and remit the payments to the court clerk. [1] See Okla. Stat. tit. 19, § 514.4 (A), (B) and (E); Second Amended Complaint (Doc. 212), Exhibit "A," Agreement for Collection ("Agreement"), at p. 1. Aberdeen does not seek, issue, execute or recall warrants. Rather, Aberdeen collects amounts already owed which have been identified by county officials and notes whether a person has or has not paid amounts due.

The Plaintiffs allege concern over the possibility of arrest based upon their failure (or anticipated failure) to pay the fees, costs and/or fines component of their criminal sentences. Plaintiffs allege one of two possible scenarios: (1) a hearing should have been, but was not, conducted to determine whether they have the financial means to pay fees, costs and/or fines connected with their criminal sentences or (2) their circumstances have changed such that a hearing regarding their inability to pay should be conducted.

When an individual fails to pay fees, costs and/or fines connected to their criminal sentence, a county/court official may seek a warrant for nonpayment. See Second Amended Complaint (Doc. 212), ¶ 5, p. 6. The judges sign the warrants, which are executed by the respective sheriffs. See Id., ¶¶ 5, 64 and 65, pp. 6 and 29. Aberdeen's involvement occurs after nonpayment and after warrants are issued and relates to efforts to collect outstanding amounts through, for example, payment plans. See Id., ¶¶ 5 and 51, p. 6 and 25. [2] The thirty percent (30%) fee added to

---

[1] In 2011, the Oklahoma Supreme Court mandated that each district court is "authorized and directed to participate" in the warrant collection program authorized by Section 54.4 "immediately."
[2] Aberdeen is one of a number of private vendors utilized in this regard. See Motion to Dismiss of Defendant P.D. Taylor (Doc. 215 at 3)( Defendant  P.D.Taylor was voluntarily dismissed from this action by Plaintiffs on December 3, 2018. (Doc. 280).

any outstanding amount owed is set by Oklahoma statute. See Id., ¶ 5, p. 6; Okla. Stat. tit. 19, § 514.5 (A). A person's ability to pay the outstanding fees, costs and/or fines is an issue left to courts. See Okla. Ct. Crim. App. R. 8.1 - 8.4.

### A. Overview of State Law

Plaintiffs target thousands of past and future discretionary state court decisions and ask this Court to step into the shoes of the state courts, adjudicate their affirmative defense of indigence, and declare portions of their convictions and sentences invalid. [3] In all state court criminal proceedings, certain costs, fees, and fines are assessed against a defendant at the time of sentencing. These costs, fees, and fines are all part of the sentence imposed upon a criminal defendant. *State v. Ballard*, 868 P.2d 738, 741 (Okl.Cr. 1994); see also Okla. Stat. tit. 28, § 101; *State v. Claborn*, 870 P.2d 169, 171-75 (Okl.Cr. 1994). The collection of costs, fees, and fines is a mandatory duty expressly placed upon the judiciary acting through the district courts and their court clerks. See e.g. Okla. Stat. tit. 28, §§ 151-153; Okla. Stat. tit. 28, § 162; Okla. Stat. tit. 20, §§ 1313.2- 1313.5. As the state's highest court with exclusive jurisdiction in criminal matters, the Legislature charged the Court of Criminal Appeals with developing procedural rules to be followed by lower courts in the collection of costs, fees, and fines in criminal cases. Okla. Const. art. 7, § 4; Okla. Stat. tit. 22, § 983(D). These rules are found within Rule 8.1 through Rule 8.8. Rule 8.1 et seq., Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, Appx. (2018). Although they are promulgated by the appellate court, these rules have the force of statute. Okla. Stat. tit. 22, § 1051(b).

---

[3] An overview of state law is set forth and adopted by this Court in Defendants' brief in support of Motion to Dismiss (Doc. 215 at 1-8).

In addition to the authority vested in the Court of Criminal Appeals, the Oklahoma Supreme Court exercises significant authority over the collection of fines and costs by virtue of their general superintendent control over all inferior courts, Okla. Const. art. 7, § 4, and express statutory authority to institute a cost collection program. Okla. Stat. tit. 28, § 151(D). Pursuant to these powers, on January 13, 2011, the Chief Justice issued the following mandate: "Each district court is authorized and directed to participate in the misdemeanor or failure-to-pay warrant collection program authorized by Title 19 Oklahoma Statutes Sections 514.4 and 514.5 immediately. These collections apply to both misdemeanors and felony cases." (Doc. 99-35) (emphasis added). Section 514.4 authorizes the use of private vendors to notify persons of outstanding warrants issued for failure to pay costs and fines in any criminal case.[4] Okla. Stat. tit. 19, § 514.4(F). As indicated by the plain language of the statute, sheriffs have the option of contracting with such vendors directly or assigning their rights to do so to the statewide association of county sheriffs.

Pursuant to Section 514.4, a number of private vendors have contracted with the Sheriffs' Association. Defendant Aberdeen is one of many vendors. These vendors do not serve every county in the state. While the Sheriffs' Association and the specific vendor may be the parties to each individual contract for services, the Association does not have unlimited ability to retain such vendors. As a practical matter, the Oklahoma Supreme Court retains some measure of ability to reject the use of any particular vendor by virtue of the absolute control they maintain over the Oklahoma Court Information Systems (OCIS) – for it is only the Court through its Administrative

---

[4]   Beginning in 2005, Section 514.4 provided authority for county sheriffs to either enter into contracts with private vendors to locate and notify persons of their outstanding misdemeanor warrants or, in the alternative, assign his or her right to enter into such a contract to the statewide association of county sheriffs. Okla. Stat. tit. 19, § 514.4(F) (2005). In 2010, the Legislature expanded this authority to include notification regarding failure to pay warrants in all criminal cases.

Director that approves and monitors those vendors that are given access to the OCIS system in order to participate in the cost collection program. Rule 5, Rules for Management of the Oklahoma Court Information System, Title 20, Ch. 18, Appx. 2 (2018); (Doc. 212-1), Contract, p. 3. The vendors retained pursuant to Section 514.4 do not come into play in every criminal case within their respective counties and, even when they do, the circumstances of those cases vary.

Except in cases where the defendant has been sentenced to a term of imprisonment, upon imposition of Judgment and Sentence a court shall determine whether a defendant has the ability to immediately satisfy any fines and costs imposed upon him. If unable to satisfy the full amount at the time Judgment and Sentence is rendered, a court may consider whether a defendant is able to pay the amounts owed though installments. Rule 8.1, 8.3, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, Appx. (2018). If a defendant is unable to pay even in installments, a court may waive or suspend payment of costs, fees, and fines. Rule 8.5, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, Appx. (2018).[5] It is here that a defendant has the first of two opportunities to appeal to the Court of Criminal Appeals from a trial court's determination regarding costs, fees, and fines by taking a direct appeal from the Judgment and Sentence. Rule 8.8(A), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, Appx. (2018).

Because costs, fees, and fines are part of the penalty imposed in a criminal proceeding, a defendant remains under the jurisdiction of the district court until such time as the amounts ordered are paid in full. Okla. Stat. tit. 22, § 983. An offender's cost, fine, and fee obligations must be

---

[5]  As reflected by public records, this procedure was followed in Rogers County, Tulsa County, Cleveland County, and Wagoner County. See e.g., Defendant's Motion to Dismiss Doc. 95-7; Doc. 95-11; Doc. 95-12; Doc. 95-22; Doc. 95-23; Doc. 95-25; Doc. 95-27; Doc. 95-28; Doc. 95-29; Doc. 95-33; Doc. 95-34.

periodically reviewed, as financial ability to pay is not a static condition. *Smith v. State*, 155 P.3d 793, 795 (Okl.Cr. 2007). To that end, when installment payments are ordered, a court may also order the defendant to periodically appear before the court. Rule 8.3, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, Appx. (2018). At any point in the cost review process, a court retains the discretion to (1) excuse missed installment payments; (2) temporarily suspend installment payments; or (3) waive payment of the costs, fees, and fines imposed if it appears that a defendant, because of poverty or physical disability, is unable to pay. Rule 8.4, 8.5, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, Appx. (2018). A criminal defendant who makes a good faith effort to participate in the review process by making installment payments and periodic court appearances, or at least reporting to the court when he is unable to do so, should find himself in good stead with the court.

As with any other stage of the criminal proceedings, a court has the power to compel the attendance of persons who have disobeyed an order of the court through issuance of a bench warrant. Okla. Stat. tit. 22, §§ 454-463. In the context of costs, fines, and fee collections, a bench warrant may be issued for a defendant's failure to appear as directed and/or failure to comply with an order to make installment payments. In issuing a bench warrant, a court is not called upon to determine the reason a court order has been disobeyed, only that it has. Defendants contend "it is here that the fallacy of Plaintiffs' claims are laid bare. Nothing in the law requires a court to make a determination before issuing a bench warrant that a defendant has the financial means to comply with an order for the payment of costs, fines, and fees but that he has made a deliberate choice to evade his obligation. To the contrary, the law is clear that the burden is on a defendant to prove that his noncompliance with a court order to pay costs, fines, and fees was excusable; of course, this inquiry is in the nature of an affirmative defense and comes when a hearing on the issue of

noncompliance is held." (Doc. 215 at  5);  See *Tilden v. State*, 306 P.3d 554, 556 (Okl.Cr. 2013); *McCaskey v. State*, 781 P.2d 836, 837 (Okl.Cr. 1989); *Patterson v. State*, 745 P.2d 1198, 1199 (Okl.Cr. 1987).

Prior to issuance of a bench warrant a court need only review its own records – of which it may take judicial notice – to determine whether there is probable cause to believe that the defendant has failed to comply with a court order. No provision of state law requires a court to support the issuance of a bench warrant with a sworn affidavit. Okla. Stat. tit. 22, § 967. The Constitution does not contain such a requirement either. The rationale stems from the purpose served by a bench warrant. Unlike an arrest warrant which is issued for the commission of a crime, bench warrants are issued based upon a violation of a court order and are in the nature of civil contempt. [6] "There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt. And it is essential that courts be able to compel the appearance and testimony of witnesses." *Shillitani v. U.S.*, 384 U.S. 364, 370 (1966). "The authority of a court to issue bench warrants to arrest witnesses who fail to appear is, in fact, unquestioned." *In re Grand Jury Proceedings Harrisburg Grand Jury* 79-1, 658 F.2d 211, 214 (3rd Cir. 1981). The fact of nonappearance and/or nonpayment, without more, is sufficient probable cause to support issuance of a bench warrant. Id. As explained by the Eleventh Circuit:

> The decision of the court to issue a bench warrant constituted a finding made by a neutral magistrate that the defendant failed to appear in a pending criminal matter. We recognize that its issuance did not amount to a judicial finding of probable cause to arrest in the traditional sense – with respect to the bank robberies (i.e., that a crime had been committed and that defendant had committed it). Nonetheless, the police, armed with the warrant, had authority to find and seize the defendant anywhere they could find him for his

---

[6]  Plaintiffs' warrants have been issued for failure to appear as ordered by a court. See e.g. Defendant's Motion to Dismiss Doc. 95-1; Doc. 95-2; Doc. 95-3; Doc. 95-10; Doc. 95-26; Doc. 95-27; Doc. 95-28; Doc. 95-29; Doc. 95-30; Doc. 95-31; Doc. 95-32.

> failure to appear in court. Thus, the presence of the police was pursuant to a direction made by a neutral magistrate. Defendant's rights under the Fourth Amendment require no more.

*U.S. v. Phillips*, 834 F.3d 1176, 1182 (11th Cir. 2016)(quoting *U.S. v. Spencer*, 684 F.3d 220, 223 (2nd Cir. 1982)).

It is only upon issuance of a bench warrant for failure to appear and/or failure to pay court costs, fines, and fees that the provisions of Section 514.4 and 514.5 of Title 19 are triggered in accordance with the mandate of the Oklahoma Supreme Court that all district courts participate in the misdemeanor or failure-to-pay warrant collection program. Regardless of any activities of a contracting vendor, however, a district court maintains an ongoing obligation to review its records for compliance with its orders to pay court costs, fees, and fines and/or to appear before the court as part of the review process. See e.g. Okla. Stat. tit. 28, §§ 151-152; Okla. Stat. tit. 28, § 153; Okla. Stat. tit. 20, §§ 1313.2-1313.5; Doc. 212, Second Amended Complaint, ¶ 83, 84.

Where court records demonstrate compliance with a court order for payment of costs after a period of non-compliance, a court has discretion to recall an active bench warrant. Similarly, at any time the court records indicate probable cause to believe a defendant has failed to comply with a court order, a court may issue a bench warrant commanding that the offender be brought before the court to explain his reason for disobedience.

A defendant's arrest on an active bench warrant is not tantamount to incarceration of the indigent without a court finding that their failure to pay costs, fines, and fees was willful. To the contrary, it is nothing more than a means by which the court may compel recalcitrant offenders to appear and participate in the cost review process when they have voluntarily chosen not to do so. Once brought back before the court, the reason for a defendant's failure to make a good faith effort to comply with an order of the court becomes relevant. It is here that it is the defendant's burden

to prove that good cause exists for non-compliance with a court order. Rule 8.4, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, Appx. (2018). This is true for claims of indigence as well. See *Tilden*, 306 P.3d at 556; *McCaskey*, 781 P.2d at 837; *Patterson*, 745 P.2d at 1199.

Except as it relates to the proof of the elements of a criminal offense, the law traditionally places the burden of establishing an affirmative defense upon the defendant; this is particularly true when the defendant seeks the benefit of a statutory exception or where he or she holds the evidence, or can obtain it with due diligence, to support such a defense. See e.g., *Patterson v. New York*, 432 U.S. 197, 202-10 (1977); *U.S. v. Unser*, 165 F.3d 755, 764-65 (10th Cir. 1999); *Tollett v. State*, 387 P.3d 915, 917 (Okl.Cr. 2016); *Clounce v. State*, 588 P.2d 584, 590 (Okl.Cr. 1978). A defendant who fails to meet their burden of proving indigence or other good cause may be incarcerated for willful nonpayment of costs, fees, and fines. Okla. Stat. tit. 22, § 983(A); Rule 8.4, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, Appx. (2018). Prior to incarcerating a defendant for nonpayment, a court must make written findings of fact and conclusions of law that the defendant was able to pay but refused or neglected to do so. Okla. Stat. tit. 22, § 983(A); Rule 8.7, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, Appx. (2018). An order for confinement operates to "convert," in whole or in part, that portion of the Judgment and Sentence that imposes costs, fees, or fines to a term of imprisonment at a rate $25.00 for each day of imprisonment.[7] Okla. Stat. tit. 22, § 983(A); Okla. Stat. tit. 28, § 101; Rule 8.7, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, Appx. (2018). A defendant ordered to be incarcerated for nonpayment of costs, fines, and fees has the right to appeal

---

[7] In fact, this is the very procedure that was used by the district court in converting a portion of Plaintiff Meachum's fines, costs, and fees to a term of imprisonment in Tulsa County Case Nos. CF-90-2665, CF-91-2157, CM-97-2864, CF-98-2613, CF-2000-815, and CF2001-5184.

the findings of the district court to the Court of Criminal Appeals and may seek a stay of the order of detention pending the outcome of an appeal. Rule 8.8, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, Appx. (2018).

Here, however, and by their own admissions, each of the Plaintiffs have had bench warrants issued to have them returned to the courts (Doc. 212, Second Amended Complaint, p. 26 n.11, p. 60 n.37-38, p. 63 ¶ 206-07) – warrants issued to have them answer for their disobedience to court orders to participate in the cost collection and review process.[8] In this light, it appears that through their own voluntary non-participation in the court process, each of the Plaintiffs have negated the courts' ability to grant them the relief they now complain they have been denied.

## II. STANDARD OF REVIEW

Defendants move to dismiss Plaintiffs' claims for lack of subject-matter jurisdiction. See *Bear v. Patton*, 451 F.3d 639, 641 n.2 (10th Cir. 2006) (noting that the *Rooker-Feldman* doctrine is a rule of subject-matter jurisdiction). Because "federal courts are courts of limited jurisdiction, [they must] presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013). Where, "as here, a party attacks the factual basis for subject matter jurisdiction, the court may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *SK Fin. SA v. La Plata Cty., Bd. of Cty. Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997).

In order to defeat such a motion, a "plaintiff must present affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence."

---

[8] See e.g. Defendant's Motion to Dismiss Doc. 95-1; Doc. 95-2; Doc. 95-3; Doc. 95-10; Doc. 95-26; Doc. 95-27; Doc. 95-28; Doc. 95-2.

*Southway v. Central Bank of Nigeria*, 328 F.3d 1267, 1274 (10th Cir. 2003).  It is Plaintiff's burden to demonstrate that jurisdiction exists. *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017).   In this case, Plaintiffs have not presented evidence regarding the Court's jurisdiction and have failed to meet their burden of proof.

Further, as a court of limited jurisdiction, this Court has "an independent obligation to address [its] own subject-matter jurisdiction and can dismiss a case *sua sponte*" on that basis. *City of Albequerque v. Soto Enterprises, Inc.,* 864 F.3d 1089, 1093 (10th Cir. 2017). This obligation is not discretionary. By rule, a federal court "must dismiss" an action "if it determines at any time it lacks subject matter jurisdiction," Fed.R.Civ.P. 12(h)(3), "even [if] the parties fail to raise the issue," *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986).[9]

## III. ARGUMENT AND AUTHORITIES

### A. THE ROOKER-FELDMAN DOCTRINE

"Under what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments. This preclusion applies to claims actually decided by a state court, and claims inextricably intertwined with a prior state-court judgment." *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017). "*Rooker-Feldman* bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment; such a claim is 'inextricably intertwined' with the state judgment." *Bolden v. City of Topeka*, 441 F.3d 1129, 1141-43 (10th Cir. 2006).

The Second Amended Complaint falls within the confines of the *Rooker-Feldman* doctrine.

---

[9] As noted *supra*, each defendant in this case has raised the issue of this Court's jurisdiction in separate Motions to Dismiss the Second Amended Complaint. See Docs. 226, 227, 228, 230, 231, 232, 233, 234, 235, 236, 237, 238, and 239.
.

The public records [10] repeatedly reflect the assessment of costs and fines as part of the sentences imposed, findings by the state district courts regarding Plaintiffs' ability to pay, installment payment plans, and review of financial status.[11] Plaintiffs challenge these various rulings claiming that "exorbitant" costs and fines were imposed in the first instance, certain costs were included of which they were not advised, and that the sentencing proceedings were flawed  for want of actual judicial consideration of their ability to pay as required by state law. Plaintiffs further claim they have been imprisoned without a proper determination that they had the means to pay the costs, fines, and fees assessed against them, however in those instances the record reflects Plaintiffs chose not to appear for such a determination. Not only do Plaintiffs seek to directly attack these various individual state court determinations, but because the costs and fines assessed are part of the sentence imposed against them, their claims are inextricably intertwined with the Judgments and Sentences themselves.

The *Rooker-Feldman* doctrine exists to prevent a party who lost in state court from seeking what, in substance, would be appellate review of a final state decision in federal district court based on the losing party's claim that the state court order itself violates the losing party's federal rights. *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017); *Harold v. Univ. of Colorado Hosp.*, 2016 WL 741031, at *5 (D. Colo. Feb. 25, 2016). In short, the doctrine bars lower federal courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court

---

[10] A court may take judicial notice of documents that are public records of the courts of Oklahoma without converting a motion to dismiss to a motion for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1264-65, n.24 (10th Cir. 2006). Because Defendants challenge the factual basis for jurisdiction, this Court may consider these public records in the determination of the issue. *SK Finance SA*, 126 F.3d at 1275; Holt, 46 F.3d at 1003.

[11]  See e.g. Defendant's Motion to Dismiss Doc. 95-7; Doc. 95-11; Doc. 95-12; Doc. 95-22; Doc. 95-23; Doc. 95-25; Doc. 95-27; Doc. 95-28; Doc. 95-29; Doc. 95-33; Doc. 95-34.

judgments … and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Plaintiffs' complaints regarding the imposition of costs and fines and/or failure of the district courts to follow appropriate procedures outlined by statute and court rule, could have been challenged on appeal to the Court of Criminal Appeals. Plaintiffs may not circumvent numerous opportunities for appellate review and attempt to seek what is nothing more than a collateral appeal of those state court determinations in this Court by claiming they have been injured by the adverse decisions rendered against them.

The *Rooker-Feldman* doctrine is a rule of subject-matter jurisdiction. It derives "from 28 U.S.C. § 1257(a), which allows parties to a state court judgment to seek direct review in the Supreme Court of the United States, but not to appeal to the lower federal courts." *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006). The doctrine has four requirements:

1) "the federal plaintiff must have lost in state court,"

(2) "the state-court judgment must have been rendered before the district court proceedings commenced,"

(3) "the federal plaintiff must complain of an injury caused by a state-court judgment," and

( (4) "the plaintiff's suit must invite district-court review and rejection of the state court judgment."

18 James Wm. Moore, Moore's Federal Practice § 133.33[2][a] (3d ed. 2018) (citing *Exxon Mobil Corp*, 544 U.S. at 284).  The Court finds Plaintiffs' claims meet each of these requirements.

**1. Plaintiffs lost in state court.**

*Rooker-Feldman*'s first requirement limits the doctrine to federal actions brought by "state court losers." A "state court loser" is someone who (1) was a party to a state court proceeding, see Moore, supra, § 133.33[2][b], and (2) now complains that an order of that state court violates his

federal rights, see *Johnson v. Orr*, 551 F.3d 564, 568–69 (7th Cir. 2008); *Hartford Life Ins. Co. v. Solomon*, 910 F. Supp. 2d 1075, 1081 (N.D. Ill. 2012); *Green v. City of New York*, 438 F. Supp. 2d 111, 119 (E.D.N.Y. 2006). Just because a plaintiff acquiesced to an order in state court does not prevent that party from being deemed a "state court loser." See *Hartford Life Ins. Co.*, 910 F. Supp. 2d at 1081; *Niles v. Wilshire Inv. Grp.*, LLC, 859 F. Supp. 2d 308, 336 (E.D.N.Y. 2012). Rather, if the plaintiff complains that an order violates his federal rights, then the order is deemed a "loss" for *Rooker-Feldman* purposes. See *Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 273 (E.D.N.Y. 2009); *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 56 F. Supp. 3d 1121, 1140 n.58 (C.D. Cal. 2014).

Plaintiffs' claims meet *Rooker-Feldman's* first requirement. Plaintiffs were each sentenced and a judgment was entered that included fees, costs and/or fines. Plaintiffs claim these judgments violate their rights under both state and federal law. The judgments are deemed a "loss" for *Rooker-Feldman* purposes.

### 2. Plaintiffs filed this lawsuit after their state-court proceedings had ended.

*Rooker-Feldman's* second requirement limits the doctrine to cases where the state decision at issue became final before federal proceedings commenced. Under the Supreme Court's decision in *Exxon Mobil*, "a state court judgment is [considered] sufficiently final for operation of the *Rooker Feldman* doctrine … when 'state proceedings have ended.'" *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24 (1st Cir. 2005) (quoting *Exxon Mobil*, 544 U.S. at 291). This can occur in one of three situations:

(1) "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved,"

(2) "if the state action has reached a point where neither party seeks further action," or

(3) "if the state court proceedings have finally resolved all the federal questions in the

14

litigation, but state law or purely factual questions (whether great or small) remain to be litigated."

*Guttman v. Khalsa*, 446 F.3d 1027, 1032 n.2 (10th Cir. 2006) (quoting *Federacion*, 410 F.3d at 24).

Here, Plaintiffs do not request further action in State Court although avenues are available, and the relief requested would result in rejection of the state court judgments [12] at issue due to Plaintiffs' allegations concerning "defect[s] in the state proceedings." See *Mayotte v. U.S. Ntl. Bank Assoc.*, 880 F.3d 1169 (10th Cir. 2018). Plaintiffs' complaints about the imposition of fines and costs against them, and the failure of the district courts to follow appropriate procedures as outlined in statutory law, case law, or court rules, could have been asserted in a direct appeal to the Oklahoma Court of Criminal Appeals, had they elected to exercise those rights, or by some other post-judgment review mechanism (such as a request for a writ of mandamus).

This argument is all the more appropriate considering Plaintiffs have an avenue of recourse available to them through Rule 8 but they have chosen to avoid it solely for the purpose of bringing claims in this Court. This satisfies *Rooker-Feldman's* second requirement.

### 3. Plaintiffs' alleged injuries are the product of state-court orders.

*Rooker-Feldman's* third requirement limits the doctrine to federal actions complaining of injuries caused by a state-court judgment. See *Mo's Express*, 441 F.3d at 1237. This prohibition extends not only to claims, "actually decided by a state court," but also those "inextricably intertwined with a state court judgment." *Cowan v. Hunter*, 2018 WL 1212541, at *3 (N.D. Okla. Mar. 8, 2018). "A claim is inextricably intertwined if the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress." *Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006). "In other words, an element of the claim must be that the state court

---

[12] Court costs imposed in a criminal action are part of the penalty of the offense. See 28 O.S. §101; *State v. Ballard*, 868 P.2d 738, 741 (Okla. Crim. App. 1994).

wrongfully entered its judgment." *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012).

In applying this limitation, courts "look beyond the four corners of the complaint to discern the actual injury claimed by the plaintiff." *Johnson*, 551 F.3d at 568. Plaintiffs cannot avoid the rule through "clever pleading," *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005), or by "casting the complaint in the form of a civil rights action," *Johnson*, 551 F.3d at 568. Nor can a plaintiff manufacture jurisdiction by pinning his injuries on a third party whose conduct was itself "the product of a state court judgment." *McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006). In short, "plaintiffs can't transform the test through creative lawyering." *Market v. City of Garden City*, 723 Fed. Appx. 571, 575 (10th Cir. 2017).

On this point, the Tenth Circuit's recent decision in *Market* is instructive. Much like the present case, *Market* involved a former state-court criminal defendant suing for money damages based on the alleged illegality of her sentence. Id. at 571–72. The plaintiff in that case, Jada Market, had twice been convicted and jailed for driving under the influence of alcohol. Id. On both occasions, she was sentenced to the mandatory minimum required by a municipal ordinance. Id. At the time, she "accepted and served her sentences without challenge." Id. at 572. Later, however, she filed a federal lawsuit against the municipality, alleging that enforcement of the ordinance's mandatory minimums violated her due process rights. Regarding jurisdiction, *Market* argued that her claims were not barred by *Rooker-Feldman* because she was not asking the court to overturn her convictions but rather was seeking money damages for "unlawful enforcement" of those convictions through "illegally extended incarceration." Id. at 574. The district court disagreed, dismissing her claims for lack of subject matter jurisdiction. And on appeal, the Tenth Circuit affirmed.

In doing so, the Tenth Circuit held that *Rooker-Feldman* bars federal suits challenging state court criminal sentences and that *Market's* requested relief, money damages, impermissibly sought to "undo … her state-court punishment." Id. Along the way, the Court stressed that plaintiffs cannot avoid *Rooker-Feldman* through "creative lawyering." Id. at 575. Although Market's claims were "cleverly framed" to avoid the doctrine, the Court nonetheless looked beyond the form of those claims to their substance. Cf. Id.("The limitation on upsetting a state-court judgment isn't a pleading requirement—it's substantive."). Because Market's injuries were the product of a state court judgment, the Court affirmed the dismissal of her claims on jurisdictional grounds.

Here, Plaintiffs' claimed injuries are the direct result of their state-court sentences and judgments. This is precisely the sort of *de facto* appeal that *Rooker-Feldman* was meant to prohibit.

### 4. Plaintiffs ask this Court to review and reject the state-court sentences and judgments.

Finally, *Rooker-Feldman's* fourth requirement limits the doctrine to claims inviting federal district court review and rejection of a state-court judgment. This requirement focuses on the plaintiff's requested relief, specifically, whether that relief "would reverse or 'undo' [a] state court" decision. *Market*, 723 Fed. App'x at 574 (quoting *Mo's* Express, 441 F.3d at 1237). Once again, creative lawyering "can't transform the test." Id. The fact that a plaintiff does not expressly ask to reverse or undo a state-court judgment—or even denies seeking such relief—is not controlling. See Id.; *Hoblock,* 422 F.3d at 88 ("Can a federal plaintiff avoid *Rooker–Feldman* simply by … alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order itself? Surely not."). Rather, it is "the substance[,] not the form[,] of the requested relief [that] ultimately control[s]." *Centifanti v. Nix*, 865 F.2d 1422, 1429 n.8 (3d Cir. 1989); accord *Market*, 723 Fed. App'x at 574. Thus, where a plaintiff seeks money damages to remedy or "undo, to the extent possible," the effects of a state-court judgment, the doctrine

applies, and the claims are barred. See *Market,* 723 Fed. App'x at 574; *Mo's Express*, 441 F.3d at 1237.

Here, Plaintiffs seek money damages in an effort to put themselves in the same position they would have been in had they never received their state court judgments. This is precisely the sort of "backward-looking request for personal compensation" that *Rooker-Feldman* prohibits. See *Market*, 723 Fed. App'x at 574 ("*Market* seeks to undo, to the extent possible, her state-court punishment. Though time served can't be returned, compensatory damages attempt to put plaintiffs in the position they would be in without the faulty imprisonment. That isn't allowed." (citation omitted)).

The *Rooker-Feldman* doctrine prevents this Court from acting as an appellate court over the appropriateness of these underlying state court judgments. As shown above, the doctrine applies here because the relief requested would result in rejection of the state court judgments at issue due to Plaintiffs' allegations concerning "defect[s] in the state proceedings." See *Mayotte,* supra. Plaintiffs' complaints about the imposition of fines and costs against them, and the failure of the district courts to follow appropriate procedures as outlined in statutory law, case law, or court rules, could have been asserted in a direct appeal to the Oklahoma Court of Criminal Appeals, had they elected to exercise those rights, or by some other post-judgment review mechanism (such as a request for a writ of mandamus). Again, this argument is all the more appropriate considering Plaintiffs have an avenue of recourse available to them pursuant to Rule 8, but they have consciously elected to avoid it solely for the purpose of bringing claims in this Court. This Court does not sit as an appellate forum to determine whether a state court committed legal error in sentencing a defendant for violation of state law offenses. For those reasons, the *Rooker-Feldman* doctrine applies, thereby depriving this Court of subject matter jurisdiction.

### B. THE YOUNGER DOCTRINE

In addition to the *Rooker-Feldman* doctrine, Plaintiffs' claims are barred by the principles announced in *Younger v. Harris*, 401 U.S. 37 (1971). In *Younger* and its progeny, the United States Supreme Court set forth the general principle that federal courts are forbidden to interfere with pending state court proceedings except under extraordinary circumstances. *Younger v. Harris*, 401 U.S. 37, 41 (1971); *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, (2013). This conclusion is predicated on notions of comity and federalism which require federal courts to respect state functions and the independent operation of state legal systems. Id. at 44-45. It is for this reason that "*Younger* abstention is jurisdictional." *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004). Furthermore, the *Younger* doctrine applies not only to requests for equitable relief but also extends to claims for monetary relief "when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding." Id.

"Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." See *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997) (quoting *Younger v. Harris*, 401 U.S. 1137 (1971)). The *Younger* doctrine requires a federal court to abstain from exercising jurisdiction where three (3) conditions have been met: First, there must be ongoing state criminal, civil, or administrative proceedings. Second, the state court must offer an adequate forum to hear the federal plaintiff's claims from the federal lawsuit. Third, the state proceeding must involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies. *Taylor*, 126 F.3d at 1297. "Once these three conditions are met, *Younger* abstention is nondiscretionary and, absent extraordinary

circumstances, a district court is required to abstain." *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003).

The three *Younger* elements are satisfied in this case. First, several of Plaintiffs' cases are still ongoing. Plaintiffs have pled guilty to the underlying infractions and, as part of their sentence, have agreed to pay, or have been sentenced to pay, certain fines and costs associated with their violations. Finally, they have admittedly failed to satisfy their plea agreements.

Second, as noted *supra*, Oklahoma provides an adequate forum to hear their federal claims. Plaintiffs can assert, in their underlying case, that the procedures employed regarding collections of the fines were improper and/or unconstitutional for purposes of determining whether those fines are appropriate and whether they should be enforced against them. Plaintiffs can also claim that the fines were improperly increased (by 30% per 19 O.S. §514.5(A) or otherwise) in those proceedings. Indeed, Plaintiffs' general claims in this case center on their argument that they were impermissibly deprived of a hearing on whether they are capable of paying the fine and/or whether additional issues should be taken into consideration by the Court in that regard. Plaintiffs can make any and all constitutional arguments to the state court regarding their fines and/or the procedures to collect them. Likewise, Plaintiffs can appeal any adverse determination concerning their ability to pay under Rule 8.

Third, the State of Oklahoma clearly has a substantial interest in ensuring its laws are enforced and that its statutory fines and fees are paid by identified offenders. This is particularly true with respect to those who have pled guilty to the underlying violation and have agreed to pay the fines and costs, or have been sentenced to pay certain fines and fees as part of a plea arrangement. Collection of fines and fees is an important state function, which clearly "implicate[s] separately articulated state policies." See *Taylor*, supra; see also *Green v. Whetsel*, 166 Fed. Appx.

375, 376 (10th Cir. 2006) (affirming based on *Younger* and noting that magistrate determined "Oklahoma has an important interest in enforcing its criminal laws."). The present case is encompassed by the *Younger* doctrine and this Court lacks subject matter jurisdiction.

### C. THE HECK DOCTRINE

A number of Plaintiffs have filed Section 1983 claims which also focus on criminal charges for which they have received convictions and/or sentences and imply that those convictions/sentences are invalid. The Supreme Court, in *Heck v. Humphrey*, held that a § 1983 plaintiff could only recover on an allegedly unconstitutional conviction or imprisonment, or "other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," if they proved that their conviction or sentence "has been reversed on appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. 477 (1994). If that conviction or sentence has not been invalidated, § 1983 does not recognize a claim for damages. This has come to be known as the *Heck* doctrine, and it requires the trial court to "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence. *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

In this case, Plaintiffs' federal 1983 causes of action are not actionable in light of the *Heck* doctrine. Plaintiffs' §1983 claims are premised on the argument that Defendants have a "policy and practice of arresting and confining individuals on debt-collection arrest warrants issued based on unsworn statements, without inquiry into the individuals' ability to pay or other pre-deprivation process, and on warrant applications that no reasonable person could believe were sufficient to justify arrest."

Plaintiffs' §1983 claims in this case, if successful, would necessarily undermine a basic characteristic – i.e., the imposed fees, fines and/or costs – of their plea agreements and criminal sentences. Before Plaintiffs can "recover damages" for alleged "harm caused" by any denial of an inquiry into their financial ability to pay the underlying fines and costs or regarding alleged "exorbitant" costs, they must "prove that the . . . sentence has been reversed on direct appeal" or "declared invalid by a state tribunal authorized to make such a determination . . ." See *Heck, supra*. That is, Plaintiffs are required to show that they participated in, or requested, a Rule 8 hearing following the plea of guilty and court sentence; and/or that they were denied such a hearing on their ability to pay; and that the resulting fine and/or imprisonment was subsequently vacated, declared invalid or reversed by an Oklahoma tribunal. [13] Plaintiffs cannot pursue a federal court lawsuit based on an alleged failure to provide them with a hearing on their ability to pay court imposed fines, costs and fees without a showing that they have taken advantage of available state court procedures and that their sentences have been reversed on direct appeal. This is true because success on the federal claims would render their sentences invalid. See *Heck, supra*.

This outcome is all the more appropriate considering some Plaintiffs pled guilty and voluntarily entered into plea agreements, and their sentences were the primary issue for consideration in the plea proceedings. It is well established that, much like a contract between two parties, a plea agreement represents an exchange of promises that must be fulfilled. *U.S. v. Rockwell Intern. Corp.*, 124 F.3d 1194, 1199 (10th Cir. 1997). Just as a defendant has an

---

[13] As previously noted, Plaintiffs have multiple avenues for post-judgment review of their sentence and/or conviction, including direct appeal rights under Rule 8.8, and also potential rights under Oklahoma's Post-Conviction Procedure Act. 22 O.S. §1080. "[W]hen a litigant has not attempted to present his federal claims in related state court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).

enforceable expectation that the government will abide by the terms of a plea agreement, Id., so too does the State. *U.S. v. Frownfelter*, 626 F.3d 549, 554 (10th Cir. 2010). And, yet, by bringing this action, Plaintiffs seek to invalidate a portion of their plea agreements. Because judgment in favor of Plaintiffs on their claims would seek to invalidate a portion of their sentences, *Heck* bars their Section 1983 claims. See, e.g., *Ariatti v. Edwards*, 171 Fed.Appx. 718, 719 n.2 (10th Cir. 2006) (finding section 1983 claims based on issuance of bench warrant for failure to pay or appear on speeding ticket likely barred by *Heck.*). Because it is undisputed that Plaintiffs have not pursued available state court remedies, their federal claims must be dismissed under *Heck*.

## IV. CONCLUSION

Plaintiffs are attempting to use this federal action to circumvent the State's legislative process and avoid a direct state court attack on the relevant statutes. By attacking the statutory framework indirectly in this Court, Plaintiffs have called into question fundamental Oklahoma public policy relating to administration of its courts. Even though at first blush the thirty percent (30%) fee seems excessive, this Court does not have the power to eliminate the statutorial-mandated fee. The Court is aware of a number of efforts in other states to change the fee-based funding of their court systems and the difficulties it presents to low-income defendants. However noble or well-intentioned Plaintiffs goals may be, the structure and funding of the Oklahoma criminal justice system is controlled by the State's legislative and executive branches.

The statutory framework at issue was adopted by the Oklahoma Legislature for lawful purposes, and it is endorsed by the Oklahoma Supreme Court. It serves a critical interest in collecting fines that individuals who have violated Oklahoma law, including the Plaintiffs in this case, have been ordered to pay as part of their debt to society. If Plaintiffs find the statutory system problematic, they must give the courts and legislature of Oklahoma a direct and adequate

opportunity to address such concerns and to establish the State's own policy. Oklahoma's Constitution protects the same relevant interests as the United States Constitution, and Oklahoma has an obvious interest in ensuring such interests are protected under Oklahoma law.

The courts of Oklahoma are not only capable of addressing all of Plaintiffs' alleged concerns, they must address these issues first, pursuant to long-standing principles of comity and federal abstention. Plaintiffs have had opportunities to raise their issues, whether based upon state or federal law, in their criminal actions. Plaintiffs still have an opportunity to raise such claims in state court to the extent their individual cases are ongoing. So, too, upon their future failures, if any, to pay those fines that they have specifically agreed to pay in connection with favorable plea agreements and sentences, Plaintiffs may raise their concerns through the channels of review provided by the Oklahoma state courts. Thus, all of Plaintiffs' claims are improper under several legal doctrines that have a commonality of purpose—to preserve the balance between state and federal sovereignty.

Accordingly, Defendants' Motion to Dismiss is granted. Due to this Court's lack of subject matter jurisdiction, this case is dismissed in its entirety.

**IT IS SO ORDERED 12th day of March, 2021.**

TERENCE C. KERN
United States District Judge