**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| CARLY GRAFF, et al., on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | |
| v. | 4:17-CV-606-TCK-JFJ<br>*Hon. Terence C. Kern* |
| ABERDEEN ENTERPRIZES II, INC., *et al.*, | |
| Defendants. | |

## COUNTY SHERIFF DEFENDANTS' RENEWED OFFICIAL-CAPACITY MOTION TO DISMISS AND BRIEF IN SUPPORT

Robert S. Lafferrandre, OBA #11897
Randall J. Wood, OBA #10531
Jeffrey C. Hendrickson, OBA #32798
**PIERCE COUCH HENDRICKSON**
**BAYSINGER & GREEN, L.L.P.**
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
jhendrickson@piercecouch.com

*Attorneys for County Sheriff Defendants*

– July 7, 2023 –

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ....................................................................................

BRIEF IN SUPPORT ............................................................................................ 1

INTRODUCTION ................................................................................................. 1

APPLICABLE OKLAHOMA STATUTES ........................................................... 2

I.   COUNTY SHERIFFS MUST PARTICIPATE IN THE COST-AND-FEE PROGRAM, WHICH WAS JUST MODIFIED BY THE OKLAHOMA LEGISLATURE ........................................................................................... 2

II.  THE PREVIOUS COST-AND-FEE SYSTEM REMAINS RELEVANT TO PLAINTIFFS' CLAIMS ................................................................................. 5

    A.   ARREST ............................................................................................ 5

    B.   ARRAIGNMENT ............................................................................. 6

    C.   JUDGMENT .................................................................................... 8

III. COUNTY SHERIFFS CAN ONLY SET POLICIES WITHIN THE CONFINES OF THEIR STATUTORY AUTHORITY ....................................................... 10

LAW AND ARGUMENT ................................................................................... 11

I.   PLAINTIFFS DO NOT HAVE STANDING TO PURSUE THEIR CLAIMS AGAINST MOST SHERIFF DEFENDANTS ................................................ 12

II.  PLAINTIFFS FAIL TO PLEAD FACTS SUFFICIENT TO SUPPORT PLAUSIBLE CLAIMS FOR RELIEF ......................................................... 14

    A.   PLAINTIFFS' DUE PROCESS CLAIM FAILS BECAUSE THIRD-PARTY DEBT COLLECTORS NEED NOT BE NEUTRAL TO COLLECT GOVERNMENT-OWED DEBTS ................................................. 15

        1.   STATE ACTORS EXERCISING EXECUTIVE FUNCTIONS NEED NOT BE NEUTRAL ................................................................. 15

        2.   ABERDEEN AND SHERIFFS PERFORM EXECUTIVE FUNCTIONS ................................................................................ 20

3.   PLAINTIFFS HAVE NEVER REFERENCED ANY AUTHORITY THAT SPECIFICALLY BARS THE GOVERNMENT FROM USING PRIVATE DEBT COLLECTORS ................................................................. 22

B.   **PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS BECAUSE PLAINTIFFS FAILED TO ALLEGE DISCRIMINATION BETWEEN SIMILARLY SITUATED GROUPS** ................................................. **24**

1.   THE EQUAL PROTECTION CLAUSE REQUIRES A SHOWING THAT A CHALLENGED GOVERNMENT ACTION DISCRIMINATES AMONG SIMILARLY SITUATED GROUPS ............. 25

2.   PLAINTIFFS' SUGGESTED GROUPS ARE NOT SIMILARLY SITUATED BECAUSE THE CHALLENGED GOVERNMENT ACTION CAN BY DEFINITION ONLY APPLY TO THE INDIGENT DEBTOR GROUP ...................................................... 27

3.   PLAINTIFFS' INEVITABLE RELIANCE ON *JAMES V. STRANGE* IS MISPLACED ................................................................. 30

C.   **BOTH OF PLAINTIFFS' CLAIMS FAIL BECAUSE PLAINTIFFS FAILED TO ASSERT SUFFICIENT FACTS SHOWING THE EXISTENCE OF ANY ONE PARTICULAR COUNTY POLICY** ................... **31**

D.   **THE AMENDMENTS TO OKLA. STAT. TIT. 19, SECTION 514.4 AND OKLA. STAT. TIT. 22, SECTION 983 MOOT PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF** ............................................... **34**

**CONCLUSION** ................................................................. **35**

**CERTIFICATE OF SERVICE** ................................................. **36**

**TABLE OF AUTHORITIES**

**Cases**                                                                    **Page(s)**

*Armstrong v. State,*
    742 P.2d 565 (Okla. Crim. 1987) .................................................................10
*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2006) ...................................................................................32
*Bird v. West Valley City,*
    832 F.3d 1188 (10th Cir. 2016).............................................................32, 33
*Blum v. Yaretsky,*
    457 U.S. 991 (1982) ...................................................................................13
*Board of County Com'rs of Bryan County, Okl. v. Brown,*
    520 U.S. 397 (1997) ............................................................................29, 30
*Broussard v. Parish of Orleans,*
    318 F.3d 644 (5th Cir. 2003)..........................................................15, 16, 17
*Broussard v. Parish of Orleans,*
    No. CIV. A. 00-2318, 2001 WL 1335289 (E.D. La. Oct. 29, 2001)..................16, 17
*Burton v. Infinity Capital Mgmt.,*
    862 F.3d 740 (9th Cir. 2017)...............................................................16, 19
*Cain v. City of New Orleans,*
    No. CV 15-4479, 2018 WL 3657447 (E.D. La. Aug. 2, 2018)............................28
*Cent. Wesleyan Coll. v. W.R. Grace & Co.,*
    6 F.3d 177 (4th Cir. 1993) ...........................................................................13
*Clinton v. City of New York,*
    524 U.S. 417 (1998) ...................................................................................24
*Cox v. Glanz,*
    800 F.3d 1231 (10th Cir. 2015).....................................................................32
*Del Campo v. Kennedy,*
    491 F.Supp.2d 891 (N.D.Cal.2006)................................................................20
*Duran v. Muse,*
    No. 16-CV-717-TCK-JFJ, 2017 WL 5985568 (N.D. Okla. Dec. 1, 2017) ............32
*Engquist v. Oregon Dep't of Agric.,*
    553 U.S. 591 (2008) ...................................................................................25
*Ex parte Coffelt,*
    228 P.2d 199 (Okla. Crim. 1951) .................................................................10
*Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc.,*
    528 U.S. 167 (2000) ...................................................................................12
*Gagnon v. Scarpelli,*
    411 U.S. 778 (1973) .............................................................................19, 20
*Gatewood v. State,*
    519 P.2d 924 (Okla. Crim. 1974) .................................................................10
*Gee v. State,*
    538 P.2d 1102 (Okla. Crim. 1975) ...............................................................10
*Grayson v. Perryman,*
    106 P. 954 (Okla. 1909)...........................................................................9, 10

*Hamilton v. Am. Corrective Counseling Servs., Inc.,*
   No. 3:05–434, 2006 WL 3332828 (N.D. Ind. Nov.14, 2006)..............................22

*Hill v. Warsewa,*
   947 F.3d 1305 (10th Cir. 2020)........................................................................13

*Houston v. State,*
   591 P.2d 310 (Okla. Crim. 1979)....................................................................10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...............................................................................32, 34

*James v. City of Dallas,*
   254 F.3d 551 (5th Cir. 2001)..........................................................................13

*James v. Strange,*
   407 U.S. 128 (1972) ...............................................................................30, 31

*Jantzen v. Hawkins,*
   188 F.3d 1247 (10th Cir. 1999)......................................................................11

*Johnson v. Conner,*
   236 P.2d 987 (Okla. 1951).............................................................. 10, 11, 12, 13

*Jones v. State,*
   682 P.2d 757 (Okla. Crim. 1984)...................................................................10

*Keepseagle v. Perdue,*
   856 F.3d 1039 (D.C. Cir. 2017)......................................................................23

*Khalik v. United Airlines,*
   671 F.3d 1188 (10th Cir. 2017)......................................................................31

*La Mar v. H&B Novelty & Loan Co.,*
   489 F.2d 461 (9th Cir. 1973)..........................................................................14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
   572 U.S. 118 (2014) ......................................................................................12

*Lopez v. LeMaster,*
   172 F.3d 756 (10th Cir. 1999)........................................................................32

*Lugar v. Edmondson Oil Co.,*
   457 U.S. 922 (1982) ......................................................................................26

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ......................................................................................12

*Marshall v. Jerrico, Inc.,*
   446 U.S. 238 (1980) ...............................................................................16, 17, 18

*Mehdipour v. Matthews,*
   386 F. App'x. 775 (10th Cir. 2013)................................................................26

*Monell v. Dep't of Soc. Servs.,*
   436 U.S. 658 (1978) ......................................................................................32

*Nesbitt v. State,*
   255 P.3d 435 (Okla. Crim. 2011)...................................................................10

*Niemi v. Lasshofer,*
   770 F.3d 1331 (10th Cir. 2014).......................................................................12

*Oklahoma Pub. Emp. Ass'n v. Oklahoma Dep't of Cent. Serv.,*
   55 P.3d 1072 (Okla. 2002).............................................................................11

*Pahls v. Thomas,*
   718 F.3d 1210 (10th Cir. 2013).......................................................................33

*Palmer v. Credit Collection Services, Inc.*,
 160 F. Supp. 3d 819 (E.D. Pa. 2015) ..................................................................23

Payton v. County of Kane,
 308 F.3d 673 (7th Cir. 2002) .............................................................................14

*Personnel Adm'r of Mass. v. Feeney*,
 442 U.S. 256 (1979) ...........................................................................................25

*PETA v. Rasmussen*,
 298 F.3d 1198 (10th Cir. 2002) .........................................................................12

*Pine v. Dep't of Education*,
 No. CIV 20-527, 2020 WL 4334885 (E.D. Pa. July 28, 2020) ............................23

*Requena v. Roberts*,
 893 F.3d 1195 (10th Cir. 2018) ....................................................................26, 27

*Rio Grande Foundation v. Oliver*,
 57 F.4th 1147 (10th Cir. 2023) ..........................................................................12

*Rolaff v. Farmers Ins. Co.*,
 No. CIV-19-689-J, 2020 WL 4939172 (W.D. Okla. Mar. 19, 2020) ................13, 14

*Rolf v. City of San Antonio*,
 77 F.3d 823 (5th Cir. 1996) ...............................................................................27

*Schwarm v. Craighead*,
 552 F.Supp.2d 1056 (E.D. Cal. May 5, 2008) ........................................20, 21, 22

*SECSYS, LLC, v. Virgil*,
 666 F.3d 678 (10th Cir. 2012) ................................................................25, 26, 29

*Sheriff v. Accelerated Receivables Solutions, Inc.*,
 283 F. App'x 602 (10th Cir. 2008) .....................................................................13

*Shrum v. Cooke*,
 60 F.4th 1304 (10th Cir. 2023) ..........................................................................33

*State v. Claborn*,
 870 P.2d 169 (Okla. Crim. 1994) .......................................................................10

*State v. Ballard*,
 868 P.2d 738 (Okla. Crim 1994) ........................................................................10

*Tulsa Exposition & Fair Corp. v. Bd. of Cnty. Comm'rs*,
 468 P.2d 501 (Okla. 1970) .................................................................................11

*Tumey v. Ohio*,
 273 U.S. 510 (1927) .....................................................................................15, 16

*Turner v. McGee*,
 681 F.3d 1215 (10th Cir. 2012) .........................................................................12

*United States v. South Carolina Dep't of Corr.*,
 No. 3-04-22066, 2006 WL 8446797 (D.S.C. June 14, 2006) ...............................23

*Vigil v. State*,
 666 P.2d 1293 (Okla. Crim. 1983) .....................................................................10

*Ward v. Village of Monroeville*,
 409 U.S. 57 (1972) .............................................................................................15

*Warner v. Orange Cty. Dep't of*,
 Prob., 115 F.3d 1068 (2d Cir. 1996) ..................................................................20

*Washington v. Davis*,
 426 U.S. 229 (1976) ...........................................................................................25

*White v. State,*
    756 P.2d 1251 (Okla. Crim. 1988) ......................................................................10
*Woods v. Oxford Law, LLC,*
    No. 2:13-6467, 2015 WL 778778 (S.D. W.Va. Feb. 24, 2015) ...............................27
*Young v. United States ex rel. Vuitton,*
    481 U.S. 787 (1987) ..........................................................................18, 19

## Statutes

*United States Constitution*
U.S. Const., Art. III ............................................................................12

*United States Code*
15 U.S.C. § 1692...................................................................................17
26 U.S.C. § 6306(a) ..............................................................................22
26 U.S.C. § 6306(c)(1).......................................................................22, 23
29 U.S.C. § 216(e) ...............................................................................17
31 U.S.C. § 3701(f)...............................................................................23
31 U.S.C. § 3711(g)(4)(B)....................................................................23
42 U.S.C. § 1983..........................................................................24, 26, 29

*California Statutes*
Cal. Penal Code §§ 1001.60–1001.67 ...............................................20, 21

*Oklahoma Constitution*
Okla. Const. art. 7, § 4..........................................................................9
Okla. Const. art. 17, § 2........................................................................11

*Oklahoma Statutes*
Okla. Stat. tit. 19, § 3 ..........................................................................11
Okla. Stat. tit. 22, § 42..........................................................................5, 9
Okla. Stat. tit. 19, § 514.4......................................................ii, 2, 4, 34, 35
Okla. Stat. tit. 19, § 514.5.....................................................................29
Okla. Stat. tit. 19, § 514.4(E).................................................................2
Okla. Stat. tit. 20, § 120.........................................................................9
Okla. Stat. tit. 22, § 172.........................................................................5, 9
Okla. Stat. tit. 22, § 456.........................................................................7
Okla. Stat. tit. 22, § 967.........................................................................8
Okla. Stat. tit. 22, § 983........................................................Ii, 2, 34
Okla. Stat. tit. 22, § 983(A)(1)-(2)........................................................3
Okla. Stat. tit. 22, § 983(B)(1)...............................................3, 4, 5, 9
Okla. Stat. tit. 68, § 2814.......................................................................11

## Rules

*Federal Rules of Civil Procedure*
Fed. R. Civ. P. 12(b)(1)..........................................................................1

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................1

*Rules of the Oklahoma Court of Criminal Appeals*
Rule 8.2 ...............................................................................................................................9
Rule 8.8(A) ........................................................................................................................10

## **Other Authorities**

William B. Rubenstein,
  Newberg on Class Actions § 2:5 (5th Ed.) ....................................................................14
Okl. A. G. Opin. No. 08-30,
  2008 WL 4860572 (Nov. 3, 2008) ...............................................................................9
Okl. A.G. Opin. No. 78-216,
  1978 WL 31468 (Aug. 10, 1978) ...................................................................................6

## BRIEF IN SUPPORT

The County Sheriff Defendants, in their official capacities, move for an order from this Court dismissing Plaintiffs' claims against them under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The CSDs offer the following brief in support.

## INTRODUCTION

In filing their Second Amended Complaint, Plaintiffs dropped most claims against the CSDs represented in this motion. Only two remain. The Plaintiffs seek to hold the CSDs liable in their official capacities for alleged violations the Fourteenth Amendment's Due Process and Equal Protection Clauses. *See* Pl.'s Second Am. Compl., ECF 212. In support of those two claims, the Plaintiffs offer these allegations: (1) Plaintiffs claim the CSDs execute arrest warrants; (2) Plaintiffs claim the CSDs maintain a policy and practice of arresting and confining individuals on debt-collection arrest warrants issued based on unsworn statements, without inquiry into the individual's ability to pay or any other pre-deprivation process, and on warrant applications that no reasonable person could believe were sufficient to justify arrest; (3) Plaintiffs claim the use of a financially incentivized debt collector gives the CSDs their own financial incentive in collecting debts; and (4) Plaintiffs claim that it is the policy and practice of "Defendants" to subject individuals who owe court debt to onerous collection enforcement methods.

As pleaded, however, the CSDs cannot be liable for either Fourteenth Amendment claim. Plaintiffs lack standing to proceed against an overwhelming number of the CSDs, firstly. Plaintiffs also failed to plead Due Process or Equal Protection violations against any CSD—it is not a Due Process violation to use a private debt collector to pursue debts, nor is it an Equal Protection violation to seek debts from those who owe them. To boot, Plaintiffs only make two limited sets

of allegations about themselves that pertain to these CSDs, claims that are contradicted by the judicially noticeable court records of Kendallia Killman and Ira Wilkins. Simply put, the Plaintiffs cannot state claims for relief. For these reasons, the Second Amended Complaint should be dismissed as against the County Sheriffs in their official capacities.

## APPLICABLE OKLAHOMA STATUTES

To understand the Plaintiffs' claims in context, a review of the applicable Oklahoma statues is necessary.

**I.    COUNTY SHERIFFS MUST PARTICIPATE IN THE COST-AND-FEE PROGRAM, WHICH WAS JUST MODIFIED BY THE OKLAHOMA LEGISLATURE.**

Okla. Stat. tit. 19, § 514.4 says a county sheriff may enter a private contract for the collection of outstanding court-imposed fees and costs. If such a contract exists, the statute requires the private contractor to "locate and notify persons of certain outstanding warrants." *Id*. § 514.4(A). The County Sheriff may assign its contract right to an entity like the Oklahoma Sheriff's Association ("OSA"). *Id* § 514.4(E). But whether the contract is signed by the sheriff or the OSA, the OSA must administer and oversee the contract's performance. *Id*. § 514.4(E). Here, the County Sheriffs were not parties to the contract with Aberdeen Enterprizes, Doc. 212, ¶ 5; Doc. 212-1, and have no power to monitor the contract under § 514.4(E). That—by statute—falls to the OSA.

While the first round of motions to dismiss were pending before this Court and then on appeal, the Oklahoma Legislature passed a law amending § 514.4 and Okla. Stat. tit. 22, § 983, to create a "court cost compliance program." This program—which went into statutory effect on July 1, 2023, and must be implemented by every county in Oklahoma by November 1, 2023—appears to address many of Plaintiffs' fundamental concerns with Oklahoma's statutory cost-and-fee system and likely moots Plaintiffs' request for injunctive relief.

The program operates this way: as of July 1, 2023, there are created "cost arrest" warrants and "cost cite and release" warrants. *See* § 983(A)(1)-(2). Upon the entry of a judgment and sentence which includes a fee as a term,[1] a court can determine a defendant's ability to pay—either at a cost hearing or on the defendant's written motion an affidavit. § 983(B)(1). At the time of the plea or sentencing, the court must tell the defendant the total amount owed, the consequences of failing to pay, and the defendant's right to request a cost hearing at any time if the defendant cannot pay an obligation. *Id.* § 983(C)(1). The court must order the defendant, immediately after sentencing, to appear before the court clerk to set up a payment plan or to request a cost hearing. *Id.* § 983(C)(2).

If the defendant requests a cost hearing, either before the court clerk or at any time thereafter,[2] the court provides the defendant via personal or U.S. mail service a summons to appear. *Id.* § 983(C)(4). If the defendant fails to appear for a cost hearing they request, the court can issue either a cost cite-and-release warrant or a cost-arrest warrant—but crucially, no additional fees set in when a defendant requests a cost hearing or the court issues a cost cite-and-release warrant. *Id.* If the defendant appears at a cost hearing, the result can go a few ways. If the court finds a defendant cannot pay, in whole or part, the court must relieve the defendant's debt. *Id.* § 983(B)(2). On the other hand, if the court finds a defendant can pay, the court can order full payment, installment payments, or other ways to resolve it, including community service in lieu of payments. *Id.* § 983(E)(1).

If, after this process, a defendant does not comply with the payment plan set up, the law

---

[1] A defendant's ability to pay cannot impact the sentence imposed. *Id.* § 983(B)(1).

[2] A defendant can request a cost hearing "upon any change in circumstance affecting the ability of a defendant to pay[.]" *Id.* § 983(C)(3).

considers them delinquent. When the court identifies a defendant's delinquency, it can issue a cost-arrest warrant or a cost cite-and-release warrant, and it must set another cost hearing to determine the defendant's ability to pay, *id.* § 983(G)(2), and issue a very specialized summons that advises the defendant of their rights, obligations, and consequences—including that an arrest warrant would issue for non-appearance,[3] that the case would be referred to a cost-compliance liaison for collection, and that a larger administrative fee would be added to the amount owed. *Id.* § 983(G)(3).

If a defendant is found with an outstanding cost cite-and-release warrant, the officer cannot arrest them but must give them notice and a warning to appear within ten days. If they appear, the court must conduct another cost hearing. If they don't appear, or if a defendant is found with a cost-arrest warrant—issued, again, for a failure to comply with a fee program or a failure to appear—they can be taken into custody. At a hearing following any arrest, the court must conduct either *another* cost hearing or, at that point, it can conduct a willfulness hearing. *Id.* § 983(H)(4). It is only upon a finding, at a willfulness hearing, that a defendant has the ability to pay their court-imposed financial obligations and is willfully refusing to pay those obligations can the defendant be jailed, and even then they can only be jailed if they were represented by counsel or expressly waived their right to counsel. *Id.* § 983(J).

Once a cost-arrest or a cost cite-and-release warrant is issued, or once the defendant is delinquent and receives notice and an opportunity for a cost hearing, the court can refer a defendant's case to the court-cost-compliance program under § 514.4. *See* § 983(G)(4). In the cost-compliance program, third-party vendors like Aberdeen, who are now styled as "court-cost-compliance liaisons," are authorized to "attempt to locate and notify persons of their outstanding

---

[3] If a defendant is found with an outstanding cost cite-and-release warrant, they cannot be taken into custody but instead receive a warning and notice to appear for a cost-hearing. *Id.* § 983(H)(1).

misdemeanor or cost-related warrants," and to "recover and maintain accounts relating to past due fines, fees, costs, and assessments." *Id.* § 514.4(A)(2). The County Sheriffs must use the court-cost-compliance program, *id.* § 983(L), and the statute—as it did previously—permits them to contract with a "statewide association of county sheriffs" to administer the contract with the third-party "court-cost-compliance liaison," and assign to the association their rights and duties under the contracts with the compliance liaisons. *Id.* § 514.4(A).

## II.   THE PREVIOUS COST-AND-FEE SYSTEM REMAINS RELEVANT TO PLAINTIFFS' CLAIMS.

The CSDs are required to comply with the new system discussed in Section I, but for those new cost-related warrants plus the warrants that pre-dated the change to the statutes, the following rules apply. First, the County Sheriffs have no power to override judicial orders. Second, only judges issue orders. Third, the County Sheriffs' role is merely to execute those judicial orders, including warrants, commitments, and bond settings. Before the change in the law (and for non cost-related warrants untouched by the new system discussed above), these orders occur at three primary stages in the criminal proceeding: arrest, arraignment, and judgment.

### A.   ARREST.

Most criminal proceedings begin with an arrest. Judges issue arrest warrants to the County Sheriff or other court officers.  Okla. Stat. tit. 22, §§ 42, 172. Felony or misdemeanor, the County Sheriff has no discretion to decline to execute a facially valid arrest warrant. *Id.* §§ 176, 177. The statutory warrant form, found at  Okla. Stat. tit. 22, § 172, reads as follows:

County of ......

The State of Oklahoma

To any **sheriff**, constable, marshal or policeman in this state (or in the county of ...... as the case may be):

> Complaint upon oath having been this day made before me that the crime of (designating it) has been committed, and accusing C. D. thereof, **you are therefore commanded forthwith to arrest the above named C. D. and bring him before me** at (naming the place), or, in case of my absence or inability to act, before the nearest or most accessible magistrate in this county.
>
> Dated at ....... this ..... day of ....... 19....
>
> E. F., Justice of the Peace (or as the case may be).

(Emphasis added); *see also* Okl. A.G. Opin. No. 78-216, 1978 WL 31468 (Aug. 10, 1978). Then, after executing the warrant (by arresting), the County Sheriff "must take the defendant before the magistrate who issued the warrants." *Id.* § 176. The judge informs the defendant of the pending charge and associated rights (*Id.* § 251), examines the case and defendant (*Id.* § 253), and decides whether to commit the defendant on a charge or release them for no cause. (*Id.* §§ 262, 264). If the judge finds no cause, they discharge the defendant. *Id.* § 262. But if the judge finds cause, they issue a commitment form which "commands" the County Sheriff to "receive [the defendant] into your custody, and detain him until he is legally discharged." *Id.* § 269. Simultaneously, the judge decides whether the offense is bailable or not. *Id.* §§ 265, 266. If bailable, the judge sets bail and includes language in the commitment form which says the defendant has been "admitted" to bail. *Id.* § 266. The defendant is discharged if they (or someone else) pays their bail. If they cannot pay bail, the defendant remains confined and the County Sheriff cannot release them. If the offense is not bailable, the judge includes language in the commitment form which says "[the defendant] is hereby committed to the sheriff." *Id.* § 265. Again, the County Sheriff has no authority to decline to execute the judge's order. They must jail the defendant. *Id.*

## B.    ARRAIGNMENT.

When the time comes for arraignment, the defendant may be out on bail or in the custody

of the County Sheriff. If the defendant's personal appearance is necessary,[4] and they are in custody, the court can direct the County Sheriff to bring the defendant to the judge, and "the officer must do so accordingly." *Id.* § 453. If the defendant is out on bail but fails to appear ("jumping bail"), the court can direct the clerk to issue a bench warrant for the defendant's arrest. *Id.* § 454. Like arrest warrants, the County Sheriffs have no authority to decline to enforce a facially valid bench warrant. The statutory warrant form, found at  Okla. Stat. tit. 22, § 456, makes this clear:

> County of ........
>
> State of Oklahoma,
>
> To any **sheriff**, constable, policeman or marshal in this state:
>
> An indictment having been found (or information filed) on the ..... day of ......., A. D., 19 ..., in the district court in and for the county of ........, charging C. D. with the crime of ........, (designating it generally **you are therefore commanded forthwith to arrest the above named C. D., and bring him before the court (or before the court to which the indictment or information may have been removed, naming it)** to answer said indictment or information; or if the court have adjourned for the term, that you deliver him into the custody of the sheriff of the county of ........
>
> Given under my hand, with the seal of said court affixed this ..... day of ......., A. D., 19 ....
>
> By order of the court.
>
> (Seal) E. F., Clerk.

(Emphasis added). Once arraigned, the defendant can plead guilty or not guilty. *Id.* § 513. If they plead guilty, the proceeding moves to judgment. *Id.* § 961; *see* "Judgment," *infra*, at 6. If they plead not guilty, the matter proceeds to trial. In the interim, the judge again determines whether to set bail. *Id.* § 462. If the underlying offense is bailable, the judge must again fix bail and endorse

---

[4] The defendant's personal appearance is necessary when they are accused of a felony. *Id.* § 452.

that amount on the warrant. *Id*. § 458. If the offense is unbailable, the defendant "shall be held in custody by the sheriff of the county in which the indictment or information is filed." *Id*. § 459. Once again, the County Sheriff has no power to decline to hold a defendant if the judge orders it. Once the defendant is arraigned (*Id*. § 465), he "must be forthwith committed accordingly." *Id*. § 463. Then, a trial is held. If the defendant is acquitted, they are released. But if convicted (or if the defendant previously pled guilty), the post-judgment procedure begins. Up to this point, the County Sheriffs have no discretion in the pre-judgment transfer, commitment or holding process.

### C.    JUDGMENT.

When the time comes for judgment, the County Sheriffs' authority remains limited. The defendant may still be out on bail, imprisoned if because they did not pay bail, or imprisoned because the offense was not bailable. *Id*. § 965. If the defendant's personal appearance is necessary—and they are in custody—the judge can direct the County Sheriff to bring the defendant before the court. "The officer must do so accordingly." *Id*. § 964. If the defendant is out on bail and does not appear for judgment, the judge can direct the clerk to issue a bench warrant for arrest. *Id*. § 965. And the County Sheriff *still* has no authority to decline to enforce a facially valid bench warrant. *Id*. § 969 ("Whether the bench warrant is served in the county in which it was issued or in another county, *the officer must arrest the defendant and bring him before the court*, or commit him to the officer mentioned in the warrant, according to the command thereof") (emphasis added). The statutory warrant form, found at Okla. Stat. tit. 22, § 967, makes this clear:

County of ..................

State of Oklahoma.

To any sheriff, constable, marshal or policeman in this state:

A B having been, on the ..... day of ....... A. D., 19..., duly convicted in the .......... court of the county of .......... of the crime of

- 8 -

(designating it generally), you are **therefore commanded forthwith to arrest the above named A B and bring him before that court for judgment**, or if the court has adjourned for the term, you are to deliver him into the custody of the sheriff of the county of .......... (as the case may be).

Given under my hand, with the seal of said court affixed, this ..... day of ....... A. D., 19...

By order of the court.

(Seal).

Once the defendant is present (if necessary), the judge enters judgment. This judgment may be a term of imprisonment, or the imposition of a fine, or both. *Id*. § 979. Additionally, the judge must require anyone who, during their criminal proceeding, was confined in a jail to pay costs of their confinement. *Id.* § 979a. This triggers the Rule 8 proceedings described in the *Rules of the Oklahoma Court of Criminal Appeals*.

Any order to pay court costs "shall be subject to review" under Rule 8. If the judge determines that a defendant can pay all or a portion of the money owed but has willfully refused or neglected to do so, the judge may convert "a sentence to pay a fine, cost, fee or assessment...to a jail sentence." *Id*. § 983;  Rule 8.2, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, Appx. (2018). As is evident, the County Sheriffs have no part in determining ability to pay, collect fines and costs. Nor do they issue warrants for non-payment. These powers fall to the judges, who are employees of the State of Oklahoma.  Okla. Stat. tit. 22, §§ 42, 983(D);  Okl. A. G. Opin. No. 08-30, 2008 WL 4860572, *9 (Nov. 3, 2008);  *Grayson v. Perryman*, 106 P. 954, 955-56 (Okla. 1909). These judges are responsible for supervising the courts within their respective judicial districts.  Okla. Const. art. 7, § 4. So too is the Oklahoma Supreme Court through the exercise of its general administrative authority over the lower state courts.  Okla. Stat. tit. 20, § 120. Under that authority, the Oklahoma Supreme Court expressly directed district

courts—and by those courts' orders, the County Sheriffs—to participate in the collection of fines and costs. That order was, as noted above, recently reinforced by a statutory requirement that County Sheriffs participate in the court-cost program.

If a judge finds the defendant failed to pay costs, fees or fines, the defendant has two opportunities to appeal to the Court of Criminal Appeals. First, they can challenge the amount of costs and form of procedures in a direct appeal from the Judgment and Sentence.  Rule 8.8(A), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, Appx. (2018). If they do not, and a judge converts the fine to a prison term, the defendant can then appeal from the court's determination.  *Id*. The Court of Criminal Appeals has addressed numerous challenges to cost, fee and fine assessments as part of the appellate review process in criminal proceedings.[5]

At the close of this statutory exercise, one point emerges above all else: the County Sheriffs' role at every step in a criminal proceeding is to carry out facially valid judicial orders. The judge tells the Sheriff what to do, and the law prevents them from going any further.

## III.   COUNTY SHERIFFS CAN ONLY SET POLICIES WITHIN THE CONFINES OF THEIR STATUTORY AUTHORITY.

Not only do specific statutes restrict the County Sheriffs, but the office of County Sheriff itself lacks power to do anything outside its statutory authority. This is because counties are involuntary, subordinate political subdivisions of the state, and such political subdivisions exist only to aid in the administration of governmental affairs.  *Johnson v. Conner*, 236 P.2d 987, 989

---

[5] *See e.g.*, *Nesbitt v. State*, 255 P.3d 435, 438-41 (Okla. Crim. 2011);  *State v. Ballard*, 868 P.2d 738, 741-43 (Okla. Crim 1994); *State v. Claborn*, 870 P.2d 169, 171-75 (Okla. Crim. 1994); *White v. State*, 756 P.2d 1251, 1252 (Okla. Crim. 1988);  *Armstrong v. State*, 742 P.2d 565, 566 (Okla. Crim. 1987);  *Jones v. State*, 682 P.2d 757, 759 (Okla. Crim. 1984);  *Vigil v. State*, 666 P.2d 1293, 1294 (Okla. Crim. 1983);  *Houston v. State*, 591 P.2d 310 (Okla. Crim. 1979);  *Gee v. State*, 538 P.2d 1102, 1109 (Okla. Crim. 1975);  *Gatewood v. State*, 519 P.2d 924, 926 (Okla. Crim. 1974); *Ex parte Coffelt*, 228 P.2d 199, 200-03 (Okla. Crim. 1951), *overruled on other grounds as stated in Ballard*, 868 P.2d at 742.

(Okla. 1951). Counties have no inherent power of their own; instead, they derive power solely from the State. *Id.* ("all of the powers intrusted (sic) to it are the powers of the sovereignty which created it)" (*sic* added). This absence of sovereignty means counties "possess only such authority as is conferred upon them by law and such authority must be exercised in the manner provided by law." *Tulsa Exposition & Fair Corp. v. Bd. of Cnty. Comm'rs*, 468 P.2d 501, 507-08 (Okla. 1970). Similarly, public officers possess only the powers expressly granted to them by law, and those necessarily incidental to carrying out that authority. *Id.* at 507-08; *Oklahoma Pub. Emp. Ass'n v. Oklahoma Dep't of Cent. Serv.*, 55 P.3d 1072, 1084 (Okla. 2002).

The Oklahoma Constitution and other associated statutes further confirm these limitations. These laws spread county functions among eight elected officials: a Court Clerk, a County Clerk, a County Sheriff, a Treasurer, a County Assessor, and three County Commissioners who together comprise the Board of County Commissioners. Okla. Const. art. 17, § 2; Okla. Stat. tit. 19, § 3; Okla. Stat. tit. 68, § 2814. Each of these officials maintains a realm of statutory authority outside of which they cannot act. And no one official exercises superintending authority over any other. Okla. Const. art. 17, § 2; *see also Jantzen v. Hawkins*, 188 F.3d 1247, 1259 (10th Cir. 1999). In judicial proceedings, the County Sheriff has a limited role, and as a function of government structure, they are not empowered to act beyond that role.

## LAW AND ARGUMENT

In filing their Second Amended Complaint, Plaintiffs dropped many claims against the County Sheriffs in their official capacities, leaving only two. First, they allege that the Sheriffs' use of Aberdeen, a private debt collector, violates the Fourteenth Amendment's Due Process Clause. Second, they allege that the Sheriffs' knowledge of Aberdeen's "onerous" debt collection tactics violates the Fourteenth Amendment's Equal Protection Clause. Neither claim should

proceed beyond the pleading stage, however. As pleaded, they suffer from fundamental problems that render them infirm, both on subject-matter and rules-based grounds.

## I.   PLAINTIFFS DO NOT HAVE STANDING TO PURSUE THEIR CLAIMS AGAINST MOST SHERIFF DEFENDANTS.

Per U.S. Const., Art. III, federal courts can hear only "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). Based on "the separation-of-powers principles underlying that limitation, we have deduced a set of requirements that together make up the 'irreducible constitutional minimum of standing.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (quoting *Lujan*)). To have standing to file suit, the plaintiff must show (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury is redressable by a favorable decision. See *PETA v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002); see also *Turner v. McGee*, 681 F.3d 1215, 1218 (10th Cir. 2012).[6] Regarding causation, the second element, the "injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560.

The problem for Plaintiffs, relative to standing, is that their allegations are replete with efforts to hold Defendants responsible for the actions of third parties. As discussed above, Oklahoma law treats counties as involuntary, subordinate political subdivisions of the State who lack any power beyond that given from the State. *Johnson*, 236 P.2d at 989. For many Defendants,

---

[6] Constitutional standing is a question of subject-matter jurisdiction*, see Rio Grande Foundation v. Oliver*, 57 F.4th 1147, 1160 (10th Cir. 2023), though the "case-or-controversy" directive "also protects judicial economy, ensuring the 'scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake.'" *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc.*, 528 U.S. 167, 191 (2000)). Prudential standing, also discussed herein, is a question of pleading, not jurisdiction. *See Niemi v. Lasshofer*, 770 F.3d 1331, 1345 (10th Cir. 2014). Both are applicable.

the Plaintiffs make no allegations regarding county practices. More particularly, Plaintiffs make almost none that touch directly on the actions of the various county sheriffs or board of county commissioners in their individual or official capacities. *Id.*

In a different but related vein, Plaintiffs' complaints regarding court clerks and deputy court clerks are not county-based, but are instead derivative of their function as an arm of the state court. See, e.g., *Sheriff v. Accelerated Receivables Solutions, Inc*., 283 F. App'x 602, 609 (10th Cir. June 23, 2008) (actions taken by court agents—there a court clerk—were in furtherance of judicial duties). In other words, Plaintiffs facially seek to hold many County defendants liable in their individual and official capacities for the actions of one or more third parties. Even apart from any deficiencies in their pleading Plaintiffs fail outright to demonstrate any injury traceable to most of the county defendants because those defendants lack the statutory authority to act in the areas from which Plaintiffs' claims arise.

Moreover, the putative class-action nature of Plaintiffs' claims poses a prudential standing problem. See *Hill v. Warsewa*, 947 F.3d 1305, 1309 (10th Cir. 2020) (prudential standing traditionally encompasses three principles, including "the general prohibition on a litigant's raising another person's legal rights"). Where there are multiple defendants in a putative class action, like here, at least one named plaintiff must establish standing with respect to each defendant. *See Cent. Wesleyan Coll. v. W.R. Grace & Co.,* 6 F.3d 177, 188 (4th Cir. 1993) ("Moreover, it is essential that named class representatives demonstrate standing 'through a requisite case or controversy between themselves personally and [defendants][.]'") (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1001, n. 13 (1982)); accord. *Rolaff v. Farmers Ins. Co*., No. CIV-19-689-J, 2020 WL 4939172, at *2 (W.D. Okla. Mar. 19, 2020) (unpublished) (citing Cent. Wesleyan Coll.); see also *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001) (abrogated on other grounds) (a plaintiff must have

- 13 -

standing to seek relief for all claims against all defendants); William B. Rubenstein, Newberg on Class Actions § 2:5 (5th Ed.) ("In multi-defendant class actions, the named plaintiffs must show that each defendant has harmed at least one of them").[7]

Here, the nine named Plaintiffs do not have any claims against a significant number of the County Sheriff Defendant Group. In fact, the only CSD with a named-Plaintiff claim pending against it is Cleveland County (regarding Plaintiff Kendallia Killman). For the remaining Defendants in that group, no named Plaintiff has a claim against them. Given this, Plaintiffs cannot trace their injuries to Defendants' conduct, so they do not have standing to proceed against the CSD defendants.

## II. PLAINTIFFS FAIL TO PLEAD FACTS SUFFICIENT TO SUPPORT PLAUSIBLE CLAIMS FOR RELIEF.

Turning to each specific claim, the strictures of Rule 12(b)(6) point to dismissal. Plaintiffs have not plead facts sufficient to show a Fourteenth Amendment Due Process violation, nor have they pleaded facts sufficient to show a Fourteenth Amendment Equal Protection violation, nor have they pleaded facts sufficient to impose municipal/*Monell* liability on the CSDs. The debt-collector at issue here performs a purely executive function—relieving them from any obligation of financial neutrality the Due Process Clause imposes. In a similar vein, the judgment debtors here comprise only one single class, making the kind of divisions condemned by the Equal Protection Clause impossible. Lastly, the allegations at issue specify one or two specific counties,

---

[7] The lone "exception" to this requirement is the so-called "juridical link" doctrine created by the Ninth Circuit in *La Mar v. H&B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973). As of March 2020, only one Circuit, the Seventh, had applied the "juridical link" doctrine it to find standing where none would otherwise exist. See Payton v. County of Kane, 308 F.3d 673, 679-80 (7th Cir. 2002). This Court, and its district courts, have never found the juridical link doctrine applicable to standing, however, *see Rolaff*, 2020 WL 4939172, at *3, and the unique circumstances of *Kane* are not mirrored by Plaintiffs' various claims of constitutional violations.

but do not even pretend to address a great majority of the CSDs, a pleading strategy *Twombly/Iqbal* facially rejects.

### A. PLAINTIFFS' DUE PROCESS CLAIM FAILS BECAUSE THIRD-PARTY DEBT COLLECTORS NEED NOT BE NEUTRAL TO COLLECT GOVERNMENT-OWED DEBTS.

Plaintiffs claim that the Sheriffs' contract with Aberdeen puts the sheriffs on the hook for anything Aberdeen does in the collection process because they allege that Aberdeen's participation—as a financially interested private actor—violates the Fourteenth Amendment's Due Process Clause. Doc. 212, Count 6, ¶¶ 354-359, at 95-96. However, this allegation would only be plausible if Aberdeen, a third-party debt collector, was performing a judicial function in collecting debt. It is not, so Aberdeen's financial interest in their collections is not a Due Process Clause violation. And—taking Plaintiffs' allegations regarding the County Sheriffs' involvement with Aberdeen as true—the County Sheriffs, in their official capacities, do not violate the Due Process Clause by using Aberdeen to collect debts.

### 1. STATE ACTORS EXERCISING EXECUTIVE FUNCTIONS NEED NOT BE NEUTRAL.

Due Process Clause violations depend in large part on whether the contested government function is legislative, judicial, or executive. *Broussard v. Parish of Orleans*, 318 F.3d 644, 662 (5th Cir. 2003). At issue here is the level of financial impartiality the Due Process Clause requires of state actors in carrying out their duties. Under *Tumey v. Ohio*, 273 U.S. 510 (1927), and *Ward v. Village of Monroeville*, 409 U.S. 57 (1972), state actors carrying out judicial functions must be financially impartial in the exercise of that function. Plaintiffs will rely on *Tumey* and its progeny to argue that Aberdeen violated their Due Process Clause rights because Aberdeen has a substantial financial interest in maintaining a high rate of collections. In *Tumey*, the Supreme Court held that a criminal defendant is deprived of due process if a judge has a "direct, personal, substantial

pecuniary interest in reaching a conclusion against him in his case." *Id*. at 523 (emphasis added). But as the Supreme Court has made clear, "the rigid requirements of [*Tumey* and *Ward*] were designed for officials performing judicial or quasi-judicial functions." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248 (1980). This is because state actors carrying out purely executive functions—like debt collection—need not be financially independent from those functions. Here, Aberdeen is not performing judicial or quasi-judicial functions, but executive functions. *Burton v. Infinity Capital Mgmt.*, 862 F.3d 740, 749 (9th Cir. 2017) (noting that debt collecting activities are "distinct from the judicial function.") Therefore, Plaintiffs cannot rely on the line of cases concerning the requirement that judicial actors be neutral. *Broussard*, 318 F.3d at 662. ("The district court's dismissal of this challenge is sound. It correctly noted that *Ward* and *Tumey* are inapplicable to this case, because the focus of those cases was on individuals who exercised a judicial function.")

*Broussard* involved a class-action challenge to certain Louisiana statutes that set out mandatory fees individuals must pay before the court could release them on bail. *Id*. at 647-48. The sheriffs received a portion of those fees. *Id*. One of the plaintiffs' contentions, relevant here, was that the fees created a financial incentive for sheriffs to stack "unnecessary" charges when arresting an individual to recoup more fee money for the sheriff's department. *Id*. at 662-63. This, plaintiffs said, violated the Fourteenth Amendment's Due Process Clause. *Id*. But the district court disagreed; in granting the sheriff defendants' 12(b)(6) motion, it concluded a sheriff does not assume a judicial role when deciding how many arresting charges to apply in booking an individual into the jail. *Broussard v. Parish of Orleans*, No. CIV. A. 00-2318, 2001 WL 1335289 (E.D. La. Oct. 29, 2001). It also found that the sheriff was not expected to be neutral in such a situation. *Id*. So the sheriffs' receipt of a portion of the fees paid by detainees, while making decisions about what charges to include as a basis for booking the detainee, did not violate the Due Process Clause.

*Id.* The Fifth Circuit affirmed on those grounds.  *Broussard*, 318 F.3d at 662.

*Broussard*'s reasoning applies here. Aberdeen does not assume a judicial role when attempting to collect debts because they cannot exercise "discretion" to decline a collection that is transferred to them under the contract with the Oklahoma Sheriffs' Association. Doc. 212-1, at 4. Aberdeen is hired to "use its best efforts" to collect outstanding debts referred to them, and that is what they do. Further, it is well-known how the debt collection industry works, so Aberdeen's cannot be expected to be financially neutral in performing its contract-mandated tasks. Generally, third-party debt collection companies make money by recouping a percentage of repayments they obtain from debtors. This business model is so well-established that Congress passed an entire statutory regime to regulate the private third-party debt collection industry. *See* the Fair Debt Collection Practices Act,  15 U.S.C. §§ 1692 *et seq*. It is not reasonable to expect Aberdeen to be "neutral" in performing the terms of the contract, of which the fundamental principles require Aberdeen to "use its best efforts" to perform the agreement's terms by collecting debts referred to them. So, with guidance from *Broussard*, the Court should dismiss Count Six against the County Sheriffs.

Now, plaintiffs may suggest that Aberdeen is more akin to a "prosecutor" or "probation officer" and thus it has an obligation to remain conflict-free under  *Marshall v. Jerrico*, 446 U.S. 238 (1980). The plaintiffs in  *Marshall* received civil penalties from the Department of Labor under the Fair Labor Standards Act for unlawful employment of child labor.  *Id*. at 240; *see*  29 U.S.C. § 216(e). The FLSA provision providing for civil penalties,  § 216(e), also routes sums collected as penalties to the Employment Standards Administration of the DOL.  *Id*. at 239. After the fine was levied, the *Marshall* plaintiffs sued the Department of Labor.  *Id*. at 240. They argued that  § 216(e) violated the Due Process Clause because it created an impermissible risk of bias. They

- 17 -

believed DOL officials could assess penalties based on increasing the Department's share of penalty funds as opposed to the facts of a given dispute. *Id*. at 244. The Supreme Court disagreed, ruling that strict standards for impartiality under *Tumey* and *Ward* applied to those "performing judicial or quasi-judicial functions" only, and prosecutors operated under a less stringent (but still extant) neutrality requirement. *Id*. at 248. Given the difference in governing standards, the Court found the plaintiffs' concerns too speculative to violate the Due Process Clause. *Id*. at 249-50. But despite this holding, the Court mentioned that "[a] scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." *Id*.

Plaintiffs will likely try and draw parallels based off that language in *Marshall*, as they did in the first briefing cycle. *See* ECF 275, at 10. But as the CSDs pointed out then, any comparison between a prosecutor and Aberdeen misses the mark. Aberdeen does collect money owed to the court, but it does not exercise power akin to prosecutorial discretion. To put it simply, a debt collector does not decide *if* a debt should be collected. On the other hand, a prosecutor decides *if* to pursue charges, and if so *how* to pursue charges and *what* charges to pursue. Due process issues arise when a prosecutor chooses (or declines) to pursue charges because that decision would affect the prosecutor's financial interest.

Expounding on this point in *Young v. United States ex rel. Vuitton*, 481 U.S. 787 (1987), the Supreme Court explained that a financially interested prosecutor could "shape" cases in ways that a court could not review easily. *Id*. at 807-8. *Young* involved a situation where a trial court appointed an attorney to serve as a special prosecutor in a criminal case. Due process concerns arose, however, because the appointed special prosecutor also represented the plaintiffs in a parallel civil case against the same defendant and premised on the same conduct. *Id*. at 790-92.

- 18 -

Among other things, the attorney's dual role "at a minimum created *opportunities* for conflicts to arise, and created at least the *appearance* of impropriety." *Id.* at 806.

So, in a situation like *Young*, the prosecutor can assume the role of judge by exercising prosecutorial discretion which affects substantive legal rights but isn't easily reviewed by a court. *Id*. Debt collectors are different. When a prosecutor makes decisions in a criminal defendant's case, those decisions often create legal effects on the criminal defendant's status under the law. *Young*, 481 U.S. at 814. But a third-party debt collector's decision-making lacks any similar legal effect. If the third-party debt collector seeks to collect from a debtor, the debtor owes the money to the original creditor. If the third-party debt collector, for whatever reason, declines to collect from a debtor, the debtor still owes the money to the creditor. The fact of non-collection has no effect on the debt's legal status, save for those debts that have gone uncollected for long amounts of time. Said differently, the Plaintiffs' alleged court debt will generally remain owed whether Aberdeen seeks to collect on it or not. Plaintiffs do not, because they cannot, allege that Aberdeen itself issues or recalls arrest warrants without judicial approval. So, unlike a judge, prosecutor, or even a probation officer, Aberdeen is not exercising any measure of judicial function; their acts are purely executive in nature. *See*, *e.g.*, *Burton v. Infinity Capital Management*, 862 F.3d 740, 749 (9th Cir. 2017) (denying quasi-judicial immunity to a court-appointed attorney because "attempted debt collection" was an act distinct from the judicial function).

Plaintiffs may also attempt to compare debt collectors to "probation officers" or other government actors tasked with enforcing the law. But this comparison too misses the point. It is true that the Supreme Court has declared that probation officers must be neutral. *See*, *e.g.*, *Gagnon v. Scarpelli*, 411 U.S. 778, 783-84 (1973). However, this is because probation officers "have been entrusted traditionally with broad discretion to judge the progress of rehabilitation in

- 19 -

individual cases, and has been armed with the power to recommend or even to declare revocation" of probation. *Id*. It is that unique role—and the accompanying ability to affect a probationer's legal rights—which mandates that such officers remain neutral. As the Second Circuit explained in *Warner v. Orange Cty. Dep't of Prob.*, 115 F.3d 1068, 1072 (2d Cir. 1996), it is "neither abnormal nor unforeseen" that a court would adopt a probation officer's recommendations on outside treatment without conducting an independent investigation to determine the treating provider's qualifications. The Second Circuit's assumption—it is permissible for a court to rely on a probation officer's recommendation without itself investigating—works only if the probation officer has no financial ties to an outside treatment provider. *Id*. at 1072. A debt collector, on the other hand, has no such authority. They cannot themselves issue warrants, arrest individuals, or make rulings on probable cause. And courts do not rely upon debt collectors like Aberdeen for their reasoned opinion on a debtor's payment status. The debtor has either paid or they haven't, and the Court acts accordingly independent of Aberdeen's involvement. For those reasons, and the others articulated in this subsection, is not a violation of the Due Process Clause for governments to use them to collect outstanding debts.

### 2.   ABERDEEN AND SHERIFFS PERFORM EXECUTIVE FUNCTIONS.

At least one federal district court has grappled with whether a debt collector must remain financially neutral to comply with the Due Process Clause. *See Schwarm v. Craighead*, 552 F.Supp.2d 1056, 1086 (E.D. Cal. May 5, 2008). In 1985, the California Legislature enacted the Bad Check Diversion Act (BCDA), Cal. Penal Code §§ 1001.60–1001.67, "to provide a feasible alternative to criminal prosecution by offering bad check writers a chance to pay their debts and clear the incident reports against them without risking criminal prosecution." *del Campo v. Kennedy*, 491 F.Supp.2d 891, 895 (N.D.Cal.2006). Once a county created a bad check diversion

program under the BCDA, the statute permitted the district attorney to contract with a private entity to "conduct" the program. Cal. Penal Code § 1001.60. *Craighead*, 552 F.Supp.2d at 1063. Enter DATS. A company called the "District Attorney Technical Services, Ltd." ("DATS") contracted with district attorney offices across California to administer these BCDA programs. *Id*. Under these contracts, DATS would collect debts owed by hot check writers, thereby "diverting" them from criminal prosecution. *Id*. at 1064.

Plaintiffs who were subject to DATS collection efforts sued DATS, alleging violations of the Fair Debt Collection Practices Act and the Fourteenth Amendment's due process guarantee. *Id*. at 1086. As to the Fourteenth Amendment, they believed DATS (and specifically DATS' principal Craighead), violated their due process rights because Craighead "had a substantial financial interest in maintaining a high rate of collections." The plaintiffs moved for summary judgment on those claims,[8] but the district court found this argument unpersuasive.

Recounting the opinion's deep dive into DATS' structure is not necessary; it suffices to say that the District Court found that DATS had no judicial or quasi-judicial function. *Id*. Similarly, the Court found that DATS lacked "prosecutorial discretion" that had elsewhere given rise to a due process claim. *Id*. Instead, "any discretion [to pursue the hot check] remained with the respective district attorney because only the district attorney could decide not to pursue diversion with a particular debtor." *Id*. And "only the district attorney could elect to pursue criminal charges if a check writer did not elect to pursue diversion." *Id*. If a debtor chose not to pursue diversion, DATS' could only "refer the check to the district attorney if it satisfied the applicable guidelines

---

[8] Plaintiffs may suggest *Craighead* is not applicable because it is a denial of summary judgment; however, the opinion makes clear that plaintiffs there offered "no facts" suggesting that Craighead violated their due process rights. 552 F.Supp.2d at 1087. Thus, it is applicable to a motion to dismiss based on substantially the same sort of allegation.

or return it to the merchant if it did not." *Id.* Under no circumstances could DATS "deprive check writers of their property." *Id.; see also  Hamilton v. Am. Corrective Counseling Servs., Inc.*, No. 3:05–434, 2006 WL 3332828, at *6 (N.D. Ind. Nov.14, 2006).

Here, Aberdeen is equivalent to DATS. Though Plaintiffs claim Aberdeen requests warrants from judges, they never say Aberdeen itself has any power to deprive debtors of their money or put the debtors in jail themselves. The Second Amended Complaint does not claim that Aberdeen issues warrants itself or authors fake warrants. Like DATS, Aberdeen's only option is to seek a judicial determination of a rights-affecting decision. Were a judge to decline Aberdeen's request, the company could do nothing about it. For that reason, Aberdeen is a purely executive actor. Like the hot check collector in *Craighead*, Aberdeen cannot—at any point—affect whether a debt is owed, nor do Plaintiffs make that nuanced allegation. Instead, they simply allege that Aberdeen asks the judge to issue a warrant. *The judge makes that decision.* Aberdeen, therefore, does not maintain the sort of discretion that concerns due process, and are therefore not required to be financially disinterested from the collection process.

### 3.   PLAINTIFFS HAVE NEVER REFERENCED ANY AUTHORITY THAT SPECIFICALLY BARS THE GOVERNMENT FROM USING PRIVATE DEBT COLLECTORS.

The fact is, state governments and the federal government use third party debt collectors to collect debts on a routine basis. The Internal Revenue Service has always had the authority to enter into such agreements, 26 U.S.C. § 6306(a), but in 2015, President Obama signed the Fixing America's Surface Transportation Act, which required the Internal Revenue Service to use private, third-party debt collectors to collect unpaid taxes. See P.L. 114-94, 2015 H.R. 22, P.L. 114-94, December 4, 2015, 129 Stat. 1312 (emphasis added); see also 26 U.S.C. § 6306(c)(1). The law also authorizes those private, third-party debt collectors to recoup up to 25 percent of the amount

collected. Id. § 6306(e)(1). This portion of the statute has never been challenged on Fifth Amendment Due Process grounds, and critics of the IRS program focus on using private collectors as a policy question, not a constitutional one. *See, e.g*., Adam Chodorow, The IRS is Using Private Debt Collectors Again., Slate, (Apr. 14, 2017), http://www.slate.com/articles/business/moneybox/ 2017/04/the_irs_is_using_private_debt_collectors_again_that_s_a_problem.html.

Private actors forming portions of the government's debt-collection practices appear in other areas too. The U.S. code authorizes the government to use "private collection contractors" to collect nontax debt such as student loan payments, for example. *See* 31 U.S.C. §§ 3701(f), 3711(g)(4)(B); *see also Pine v. Dep't of Education*, No. 2020 WL 4334885, at *4, n. 33 (E.D. Pa. July 28, 2020) (noting the process for collecting debts through wage garnishment, including by contracting with private debt collectors); *United States v. South Carolina Dep't of Corr.*, No. 3-04-22066, 2006 WL 8446797, at *4, 12 (D.S.C. June 14, 2006) (explaining the purpose and procedures authorized by Congress in the Debt Collection Improvement Act to collect debt, including referral of debts to private collection agencies). As these authorities reflect, the government's use of private collectors is entrenched, widespread, and statutory.

At its end, whether one thinks a government action is good or bad, that question is separate from whether the action is constitutional.  When a government action is constitutional—as here— the Court should leave balancing policy goals to the legislature. *See Palmer v. Credit Collection Services, Inc.*, 160 F. Supp. 3d 819, 823 (E.D. Pa. 2015) ("Whether it is sound public policy to allow a debtor to obtain damages from a debt collector in the present circumstances is not for the court to say. We must construe the law, not make it."). This is especially true when policy decisions involve expenditures. *Keepseagle v. Perdue*, 856 F.3d 1039, 1058 (D.C. Cir. 2017) (Brown, J., dissenting) (Expenditures toward the fulfillment of public policy are integral to the policymaking

itself, and policymaking is left to the legislature (citing The Federalist No. 78 (Alexander Hamilton), pg. 464, 467 (Clinton Rossiter ed., 1961)); *Clinton v. City of New York*, 524 U.S. 417, 451 (1998) (Kennedy, J., concurring) ("Money is the instrument of policy and policy affects the lives of citizens. The individual loses liberty in a real sense if that instrument is not subject to traditional constitutional constraints."). Count Six of Plaintiffs' Second Amended Complaint, therefore fails. It should be dismissed.

**B.   PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS BECAUSE PLAINTIFFS FAILED TO ALLEGE DISCRIMINATION BETWEEN SIMILARLY SITUATED GROUPS.**

Next, the Plaintiffs contend that Aberdeen's allegedly onerous debt collection practices, and the County Sheriffs' alleged knowledge of those practices, violates the Fourteenth Amendment's Equal Protection Clause. Doc. 212, Count 7, ¶¶ 360-62, at 96-97. But this claim suffers from two fundamental issues which, together or separately, should result in dismissal. First, Plaintiffs' alleged "similarly situated" groups for their Equal Protection Clause are not "similarly situated." The challenged government action underlying the Plaintiffs' Equal Protection claim— debt collection practices—can factually apply to only one group: individuals who have not paid court debts. Thus, Plaintiffs must allege the Defendants discriminate against protected classes within the group of individuals that haven't paid court debts. They do not, so they have not stated an Equal Protection Clause Claim.

Second, Plaintiffs do not lay out sufficient facts showing that the County Sheriffs, in their official capacities, can be liable for Aberdeen's alleged conduct. *Respondeat superior* is not a basis for municipal liability under 42 U.S.C. § 1983, so Plaintiffs must plead fact allegations showing the County Sheriffs adopted customs, policies and/or procedures which were the moving force

behind the purported Equal Protection violation. They have not. For either reason, this Court should dismiss Count Seven against the County Sheriffs.

> 1.    **THE EQUAL PROTECTION CLAUSE REQUIRES A SHOWING THAT A CHALLENGED GOVERNMENT ACTION DISCRIMINATES AMONG SIMILARLY SITUATED GROUPS.**

As the Tenth Circuit has explained, "equal protection is the law's keystone. Without careful attention to equal protection's demands, the integrity of surrounding law all too often erodes, sometimes to the point where it becomes little more than a tool of majoritarian oppression." *SECSYS, LLC, v. Virgil*, 666 F.3d 678, 684 (10th Cir. 2012) (citations omitted). But "at the same time, it is of course important to be precise about what equal protection is and what it is not." *Id.* Equal protection "doesn't guarantee equal results for all, or suggest that the law may never draw distinctions between persons in meaningfully dissimilar situations—two possibilities that might themselves generate rather than prevent injustice." *Id.* (citing *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 271–73 (1979). Instead, the clause "seeks to ensure that any classifications the law makes are made 'without respect to persons,' that like cases are treated alike, that those who 'appear similarly situated' are not treated differently without, at the very least, 'a rational reason for the difference.'" *Id.* (citing *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 602 (2008) (quotations omitted)). So, with that in mind, the first step in an Equal Protection analysis is to determine whether the challenged state action intentionally discriminates between groups of persons. *SECSYS*, 666 F.3d at 685 (citing *Washington v. Davis*, 426 U.S. 229, 240 (1976)). Two key points in this phrase are determinative: the "challenged state action," and the "groups of persons."

State action, for § 1983 claims, is "conduct allegedly causing the deprivation of a federal right" fairly attributable to the state.[9] *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *see also  Mehdipour v. Matthews*, 386 F. App'x. 775, 779-80 (10th Cir. 2013). Here, Plaintiffs allege that the "challenged state action" is Aberdeen's alleged onerous enforcement methods. These include "repeated threats of arrest" and that Aberdeen "forces [debtors who are too poor to pay, including Plaintiffs] to pay arbitrary and unachievable amounts to have a warrant recalled," along with "harassing family members whose contact information they possess." Doc. 212, ¶ 361, at 96. Plaintiffs pin the Sheriffs' involvement on their arrests of "persons in connection with these onerous enforcement methods," and then call the whole endeavor a "policy and practice."  *Id.*

It is not enough, however, to challenge a state action. Equal protection claims require that the challenged state action intentionally discriminate between similarly situated groups. *SECSYS, LLC*, 666 F.3d at 685. And groups are "similarly situated" only if they are alike "in all relevant respects." *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (citation omitted). Here, Plaintiffs imply that the similarly situated groups are all individuals who owe court debt. *See* Doc. 212, ¶ 361, at 96 (comparing "individuals who are wealthy enough to pay the full amount of their fines" with "individuals too poor to pay their court debt, including Plaintiffs"). Putting the two together, Plaintiffs claim Aberdeen conducts onerous debt collection activities against "individuals too poor to pay their court debt," while "individuals who are wealthy enough to pay the full amount of their fines and fees may do so without any continued contact with any government official or private contractor."  *Id.* In other words, Plaintiffs say wealthy debtors don't have to face state-

---

[9] The County Sheriffs reserve all arguments regarding Aberdeen's status as a "state actor" for § 1983 purposes and do not intend to waive those arguments by omitting them from this motion to dismiss.

conducted onerous debt collections while indigent debtors do, which violates the Equal Protection Clause. *Id.*

### 2. PLAINTIFFS' SUGGESTED GROUPS ARE NOT SIMILARLY SITUATED BECAUSE THE CHALLENGED GOVERNMENT ACTION CAN BY DEFINITION ONLY APPLY TO THE INDIGENT DEBTOR GROUP.

The problem is, this characterization (as alleged) leaves a significant factual hole in Plaintiffs' allegations. The "challenged state action" must be able to apply to all members of the groups, yet in its enforcement discriminates between those groups because of a protected class. *See*, *e.g.*, *Rolf v. City of San Antonio*, 77 F.3d 823, 826 (5th Cir. 1996) ("It is well-established that the Equal Protection Clause is implicated 'only if 'the challenged government action classifies or distinguishes between two or more relevant groups.''") (citations omitted). Here, the Plaintiffs' equal protection claim fails because the "challenged state action" does not apply to one of Plaintiffs' alleged groups of individuals.

Specifically, Plaintiffs suggest Aberdeen goes after non-paying debtors, but not paying debtors, on a wealth-discriminatory basis. But as Plaintiffs acknowledge, paying debtors don't face onerous debt collection practices *because* they are free to pay their court debt without further government intervention. Doc. 212, ¶ 361, at 96. Implied in that statement is that government intervention stops *because* a debt is paid and no longer owed. In other words, only those who don't pay their debts face the "challenged state action" of debt collection. This class, by definition, does not include debtors who can afford to pay because, as Plaintiffs imply, those debtors pay. *See*, *e.g.*, *Woods v. Oxford Law, LLC*, 2015 WL 778778, *6 (citing with approval a 1977 Senate report indicating that "there is universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay debts is miniscule."). So, as alleged, the challenged government action—debt collection—does not factually apply to paying

debtors. That means the Plaintiffs' groups are not similarly situated.

The Eastern District of Louisiana, where Plaintiffs' counsel is also litigating this issue, recently dismissed an Equal Protection claim under similar circumstances. *Cain v. City of New Orleans*, No. CV 15-4479, 2018 WL 3657447 (E.D. La. Aug. 2, 2018), *appeal pending*. The *Cain* plaintiffs argued, in part, that a local judicial policy of using arrest warrants to enforce debt collections against criminal defendants, but not civil judgment debtors, violated the Equal Protection Clause. *Id.* at *4. The district court disagreed, however, and dismissed the claim. It concluded that there was no state law that facially discriminated against criminal judgment debtors. *Id.* at *5. More importantly, the court also found the arrest warrant policy could not apply to civil judgment debtors because the judges did not have jurisdiction over civil judgment debtors. *Id.* at *6. In other words, the policy could not apply factually to civil judgment debtors, and there was no evidence the judges applied it to criminal debtors in a discriminatory manner. *Id.*

So it is here. Of course, there are some differences between *Cain* and the present case. foremost being that in *Cain*, the judges couldn't exercise jurisdiction over civil judgment debtors. Here, Aberdeen can't collect against paying debtors because there's nothing to collect. But the practical effect is the same. In *Cain*, the challenged government action (a debt collection policy against criminal debtors) could not factually apply to civil debtors, so the groups were not "similarly situated" to support an Equal Protection claim. Here, the challenged government action (debt collection against non-paying debtors) cannot factually apply to paying debtors, because as Plaintiffs suggest, paying debtors pay and there are no debts to collect.[10] So the only way Plaintiffs

---

[10] Further supporting this point is that Plaintiffs omit any claim that (1) wealthy debtors willfully refuse to pay and (2) Aberdeen treats them differently.

could carry an Equal Protection claim forward is to allege that Aberdeen discriminates because of a protected class between groups of non-paying debtors.

They do not do so. A deep dive on how to plead intentional discrimination is unnecessary; it suffices to say that Plaintiffs could have alleged an intent to discriminate appeared "on the face" of the challenged state action, or inferred from the action's discriminatory impact as applied. *SECSYS*, 666 F.3d at 685-87. After narrowing the group to its proper scope, it becomes clear that the Plaintiffs' equal protection claim does not suffice. They do not allege that Aberdeen discriminates intentionally amongst protected classes of individuals (such as race) as it collects from non-paying debtors. Nor do they allege any Defendant refers select debts to Aberdeen because of class affiliation. Nor do they allege Aberdeen selectively collects debts from only a certain protected class of individuals. Nor do they allege that debt collection rends a disparate impact upon a protected class. Plaintiffs have failed to state an Equal Protection claim.[11] Count

---

[11] Further, the County Sheriffs in their official capacities cannot be held liable for Aberdeen's conduct merely because the OSA entered a statutorily allowable contract with Aberdeen on their behalf. Not only was that done in obedience to a direct order from the Oklahoma Supreme Court, but as the Supreme Court has noted, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Board of County Com'rs of Bryan County*, *Okl. v. Brown*, 520 U.S. 397, 404 (1997). Instead, "the plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* Said differently, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

The Plaintiffs have not so shown any "direct causal link" to an Equal Protection violation. At most, they claim that "all defendants know" about Aberdeen's conduct, but this is a thin attempt to hook the County Sheriffs for Aberdeen's conduct. Doc. 212, ¶¶ 9, 65-66, 81, at 29, 34. The Plaintiffs also set out a blanket statement that the "policy and practice" of executing arrest warrants results in an Equal Protection violation. Doc. 212, ¶ 361, at 96. But as noted, the County Sheriffs can only act as ordered by a judge. And they have neither the ability nor the responsibility to supervise Aberdeen's conduct under the Oklahoma statutes. *See* Okla. Stat. tit. 19, § 514.5. And the contract itself makes clear that there is no agency relationship between the County Sheriffs and Aberdeen. Doc. 212-1, ¶ 17, at 14. The Plaintiffs' attempt to blame the County Sheriffs is therefore improper. As the Supreme Court noted in *Brown*, "rigorous standards of culpability and causation must be

---

Seven should be dismissed.

### 3.   PLAINTIFFS' INEVITABLE RELIANCE ON *JAMES V. STRANGE* IS MISPLACED.

As with the first briefing cycle, Plaintiffs will assuredly refer this Court to *James v. Strange*, 407 U.S. 128 (1972), as the basis for their Equal Protection claim. While *Strange* did recognize an Equal Protection claim in the realm of indigent debt relief, any principle there announced is confined to the unique circumstances of the recoupment statute in question, and not applicable to today's dispute. Indeed, *Strange* reflects the precise thing the facts here do not: discrimination amongst a similarly situated class of individuals.

*Strange* concerned a Kansas recoupment statute that worked like this: if the state appointed counsel or incurred costs for an indigent criminal defendant, that defendant had to repay those costs within a certain timeframe. *Id.* at 130-32. If they didn't, the court would enter a judgment against the defendant, which would be converted to a lien. *Id.* But unlike anyone else who owed a debt that was converted to a lien, the statute prevented these sorts of defendants from claiming exemptions from creditors (the most notable being, in the Court's eyes, the exemption from having wages garnished). *Id.* This violated the Equal Protection Clause because those who owed a debt to the state could not obtain certain protection from creditors, while those who owed a debt to a private party could. *Id.* That is the key difference between *James* and this case. The unconstitutional statute in *James* distinguished between classes of debtors *who couldn't pay*. If one couldn't pay the state, they had no creditor protection. But if one couldn't pay a private party,

---

applied to ensure that the municipality is not held liable solely for the actions of [others]." *Brown*, 520 U.S. at 405. The County Sheriffs are not liable in their official capacities for Aberdeen's conduct, and Plaintiffs failed to plead any municipal allegations against the County Sheriffs with the requisite specificity. So even if the Court concludes Plaintiffs have stated an Equal Protection violation, they have not sufficiently pled how the County Sheriffs are involved. Count Seven should be dismissed.

they had creditor protection. *James* explicitly recognized this distinction:

> "The indigent's predicament under this statute comes into sharper focus when compared with that of one who has hired counsel in his defense. Should the latter prove unable to pay and a judgment be obtained against him, his obligation would become enforceable under the relevant provisions of the Kansas Code of Civil Procedure. But, unlike the indigent under the recoupment statute, the code's exemptions would protect this judgment debtor."

*Id.* at 136-37. *Strange* went on to suppose a difference in classes between these two sorts of defendants ("It may be argued that an indigent accused, for whom the State has provided counsel, is in a different class with respect to his indebtedness than a judgment creditor whose obligation arose from a private transaction"), but dismissed any concern by referencing parallel provisions of Kansas law that did not discriminate against those who owed money to the state. *Id.* Here, Aberdeen's collection activities do not discriminate amongst classes of people who *can't* pay, which could give rise to an actionable Equal Protection claim.[12] Instead, they allege that Aberdeen collects from those who can't pay, while those who can pay walk free. *See* ECF 212, ¶ 361, at 96. Because those are not similarly situated groups, Plaintiffs' Equal Protection claim fails.

### C.   BOTH OF PLAINTIFFS' CLAIMS FAIL BECAUSE PLAINTIFFS FAILED TO ASSERT SUFFICIENT FACTS SHOWING THE EXISTENCE OF ANY ONE PARTICULAR COUNTY POLICY.

Plaintiffs have not pled any other facts against these County Sheriffs in their official capacities. " Rule 12(b)(6) allows dismissal if a plaintiff fails 'to state a claim upon which relief can be granted.'" *Khalik v. United Airlines*, 671 F.3d 1188, 1190 (10th Cir. 2017). "To withstand a  Rule 12(b)(6) motion, a complaint must contain 'enough facts to state a claim to relief that is

---

[12] Or the plaintiffs could have drawn a distinction between indigent defendants who owed money to the state or the state's private debt collectors versus those who owed money to private parties, which would have been more in line with the claim arguably recognized in *James*, but they did not. *See* Doc. 212, ¶ 361 at 96. Their attempted distinction was between those who owe money to the state and can pay versus those who owe money to the state and cannot.

plausible on its face.'" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As claims against these County Sheriffs officially are claims against the entity that Sheriffs represent (the counties), Plaintiffs can only impose liability on the basis of a county policy or procedure. They cannot, however, because Plaintiffs pled their "policy or procedure" allegations against the Defendants collectively, without any fact allegations that would permit the County Sheriffs to determine "who did what to whom."

As a threshold matter, a lawsuit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978); *see also Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015). For county sheriffs, that means it lies against the county itself. *Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999); *see also Duran v. Muse*, No. 16-cv-717-TCK-JFJ, 2017 WL 5985568, at *7 (N.D. Okla. Dec. 1, 2017) (official capacity claims against a sheriff are claims against the county itself) (citation omitted). A county, however, cannot be held liable under § 1983 "*solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Bird v. West Valley City*, 832 F.3d 1188, 1207 (10th Cir. 2016) (quoting *Monell*, 436 U.S. at 691). Instead, a county is liable only when "the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." *Bird*, 832 F.3d at 1207 (citation omitted).

Plaintiffs seem to submit two "custom or policy" allegation against the County Sheriffs. First, with no specific facts in support, they claim the County Sheriffs have "a policy and practice

of arresting and confining individuals on debt-collection arrest warrants issued based on unsworn statements, without inquiry into the individual's ability to pay or any other pre-deprivation process, and on warrant applications that no reasonable person could believe were sufficient to justify arrest." Doc. 212, ¶ 30, at 17. Second, still with no facts, they claim that a "policy and practice of subjecting individuals, including Plaintiffs, to more extreme penalties and threats...violates the Equal Protection Clause." ( *Id.*, Count 6, ¶ 361, at 96).

This pleading style is not sufficient. The Tenth Circuit has repeatedly said that "it is imperative that [plaintiffs] clearly allege who did what to whom rather than make collective allegations." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Shrum v. Cooke*, 60 F.4th 1304, 1313 (10th Cir. 2023) (In § 1983 cases, "it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom.") Plaintiffs here offer no fact allegations showing *which* County Sheriffs had *what* policy or procedure that motivated any constitutional violation.

Specifically, the Second Amended Complaint contains no specific fact allegations that any Defendant, aside from Aberdeen Enterprizes, "seeks" warrants. So, as pled, it cannot be the "policy and procedure" of any Defendant (besides Aberdeen) to seek warrants. Second, the Second Amended Complaint contains no allegation that any Defendant, aside from the judges, "issues" warrants. So again, as pled, it cannot be the "policy and procedure" of any Defendant (besides the judges and court clerks) to issue warrants. Third, the Second Amended Complaint contains no allegation that any Defendant, aside from these County Sheriffs, "executes" warrants. So, as pled, it cannot be the "policy and procedure" of any Defendant (besides these County Sheriffs) to execute warrants. Finally, the Second Amended Complaint contains no allegation that any Defendant, aside from Aberdeen Enterprizes, engaged in coercive or "onerous" debt collection

methods. So, it cannot, as pleaded, be the "policy and procedure" of any Defendant (besides Aberdeen) to use coercive or onerous debt collection methods. This pleading style violates the *Twombly/Iqbal* directive to plead "factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. For that reason alone, these claims should be dismissed.

### D. THE AMENDMENTS TO OKLA. STAT. TIT. 19, SECTION 514.4 AND OKLA. STAT. TIT. 22, SECTION 983 MOOT PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF.

In addition to the money damages Plaintiffs seek, they ask the Court for a host of declaratory measures; namely, to declare it unlawful for Defendants to issue and execute debt-collection arrest warrants for nonpayment, without seeking the ability to pay, and without considering alternatives, and in making factual findings on unsworn statements. Plaintiffs also ask the Court to enjoin Defendants from executing debt-collection arrest warrants without first making inquiry into the defendant's ability to pay; from using a third-party debt-collector; from using onerous debt-collection methods; and from imposing a 30-percent surcharge on indigent debtors. *See* ECF 212, pgs. 98-100.

The significant changes to Oklahoma law regarding the cost-and-fee system, however, moot most, if not all, of Plaintiffs' requested equitable relief. The newly modified Okla. Stat. tit. 19, §§ 514.4-514.5, and Okla. Stat. tit. 22, § 983 make clear that it would be a statutory violation for a court to impose any arrest or detention on a defendant who had not previously had their financial status adjudged—or, at the *very least*, been given ample opportunity to appear before the court and have their financial status sorted out and ruled upon. Indeed, based on the terms of the statutory amendments, they appear to have been enacted almost directly in response to the claims Plaintiffs make in this lawsuit. Given this, the Court should dismiss the declaratory and injunctive

relief addressed by §§ 514.4-514.5 and 983.

<u>**CONCLUSION**</u>

For the reasons discussed herein, the County Sheriff Defendants, in their official capacities,

move for an order from this Court dismissing Plaintiffs' claims against them with prejudice.

Date: July 7, 2023

Respectfully submitted,

s/ Jeffrey C. Hendrickson
Robert S. Lafferrandre, OBA #11897
Randall J. Wood, OBA #10531
Jeffrey C. Hendrickson, OBA #32798
**PIERCE COUCH HENDRICKSON
BAYSINGER & GREEN, L.L.P.**
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
jhendrickson@piercecouch.com

*Attorneys for County Sheriff Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on **July 7, 2023** I electronically transmitted the attached document to the Clerk of this Court using the ECF System for filing. Based on the records currently on file, the Clerk will transmit a Notice of Electronic Filing all ECF registrants who have appeared in this case.

s/ Jeffrey C. Hendrickson
Jeffrey C. Hendrickson