## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CARLY GRAFF, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-CV-00606-TCK-JFJ |
| | ) | |
| ABERDEEN ENTERPRIZES II, INC., | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

---

### MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT BY DEFENDANTS, TULSA COUNTY COURT CLERK, TULSA COUNTY SHERIFF, AND TULSA COST ADMINISTRATOR, IN THEIR OFFICIAL CAPACITIES, AND THE BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY

---

Douglas A. Wilson, OBA #13128
Assistant District Attorney
Tulsa County District Attorney's Office
218 West Sixth Street, Suite 933
Tulsa, OK  74119
(918) 596-8795
douglas.wilson@tulsacounty.org

Mike Shouse, OBA #33610
Assistant District Attorney
Tulsa County District Attorney's Office
218 West Sixth Street, Suite 935
Tulsa, OK  74119
(918) 596-4825
mshouse@tulsacounty.org

Joel L. Wohlgemuth, OBA #9811
Jo Lynn Jeter, OBA #20252
W. Caleb Jones, OBA #33541
Norman Wohlgemuth, LLP
3200 Mid-Continent Tower
401 South Boston
Tulsa, OK 74103
(918) 583-7571
JWohlgemuth@NWLawOK.com
JJeter@NWLawOK.com
Jones@NWLawOK.com

**ATTORNEYS FOR DEFENDANTS VIC REGALADO, SHERIFF OF TULSA COUNTY, DON NEWBERRY, TULSA COUNTY COURT CLERK, DARLENE BAILEY, TULSA COUNTY COURT COSTS ADMINISTRATOR, IN THEIR OFFICIAL CAPACITIES, AND BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TULSA**

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ………………………………………………..  2

    A.  Plaintiffs' allegations and claims ……………………………………  2

    B.  The State of Oklahoma regulates criminal fines, fees and costs ………  2

    C.  Although an action for damages is barred, prospective injunctive relief
        may be available under the fictions of *Ex Parte Young* ………………..  8

II.  PLAINTIFFS SECOND AMENDED COMPLAINT FAILS TO
    IDENTIFY A COUNTY POLICY OR CUSTOM AS THE MOVING
    FORCE BEHIND THE ALLEGED DEPRIVATION OF PLAINTIFFS'
    CONSTITUTIONAL RIGHTS ……………………………………………  9

    A.  Policies attributed by Plaintiffs to the Tulsa Court Clerk
        and/or His Deputy, the Tulsa Cost Administrator are, in reality,
        policies of the Oklahoma legislature and state judiciary ………………  11

    B.  Plaintiffs attribute policies to the Tulsa County Sheriff that are,
        in actuality, policies of the Oklahoma legislature and state judiciary ….  16

    C.  Municipal liability under § 1983 does not attach because county officers
        follow state law and obey the orders of a state court judge …………….  18

III.  DEFENDANTS ARE ENTITLED TO ELEVENTH AMENDMENT
     IMMUNITY ……………………………………………………………  19

IV.  AS A MATTER OF LAW, AND AS PLED, THE TULSA COST
    ADMINISTRATOR HAS NO POLICYMAKING AUTHORITY
    AND SHOULD BE DISMISSED AS AN IMPROPERLY NAMED
    PARTY DEFENDANT ……………………………………………………  22

V.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM
    AGAINST THE BOARD OF COUNTY COMMISSIONERS ………………..  23

VI.  PLAINTIFFS' CLAIMS ARE MOOT BY VIRTUE OF
    OKLAHOMA'S RECENT ENACTMENT OF HOUSE BILL NO. 2259 ….......  24

VII.  CONCLUSION …………………………………………………………  24

i

<u>ATTACHED EXHIBITS</u>

<u>Exhibit No.</u>

*Feltz v. Board of County Comm'rs of the County of Tulsa*,
Order on Motion to Dismiss, Case No. 18-cv-0298-SPF-JFJ ……………………… 1

Tulsa County District Court Criminal Rule 1(D) …………………………………… 2

*Jones v. Hacker*, 2015 WL 1279352 (E.D. Okla. 2015) …………………………… 3

House Bill No. 2259 …………………………………………………………………… 4

<u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) …………………………………………… 16

*Avery v. Midland County, Tex.*, 390 U.S. 474 (1968) ……………………………….. 23

*Bearden v. State*, 1925 OK CR 146, 233 P. 1100 …………………………………… 12

*Bethesda Lutheran Homes and Services, Inc. v. Leean*, 154 F.3d 716 (7th Cir. 1998) 18

*Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272 (10th Cir. 2021) ………………… 16

*Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487 (10th Cir. 1998) …… 19

*Burns v. Buford*, 2011 WL 486253 (D. Colo. Feb. 7, 2011) ………………………… 1

*Cain v. City of New Orleans*, 2017 WL 467685 (E.D. La. Feb. 3, 2017) ……………. 13

*Colby v. Herrick*, 849 F.3d 1273 (10th Cir. 2017) …………………………………… 19

*Conner v. Drummond*, 1935 OK 507, 46 P.2d 447 …………………………………… 6

*Daves v. Dallas County, Tex.*, 64 F.4th 616 (5th Cir. 2023) ………………………… 24

*Dugan v. Rank*, 372 U.S. 609 (1963) ………………………………………………… 22

*Eaton v. Jarvis Products*, 965 F.2d 922 (10th Cir. 1992) …………………………….. 1

<u>TABLE OF AUTHORITIES</u> (continued)

Page

*Estate of Crowell ex rel. Boen v. Bd. of Cnty. Comm'rs of the County of Cleveland*,
2010 OK 5, 237 P.3d 134 ………………………………………………………..   23

*Ex parte Young*, 209 U.S. 123 (1908) …………………………………………   8, 19

*Feltz v. Board of County Comm'rs of the County of Tulsa*,
Case No. 18-cv-0298-SPF-JFJ (N.D. Okla. Sept. 29, 2021) …………………………   6-7

*Frobe v. Village of Lindenhurst*, 2014 WL 902878 (N.D. Ill. March 7, 2014) ………   19

*Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701 (1989) …………………………………..   10

*Jones v. Hacker*, 2015 WL 1279352 (E.D. Okla. 2015) ……………………………   13-14, 22

*Harper v. Woodward Cnty. Bd. of Cnty. Comm'r*, 2014 WL 7399367
 (W.D. Okla. Dec. 29, 2014) ……………………………………………………   9

*Hill v. Kemp*, 478 F.3d 1236 (10th Cir. 2007) ……………………………………   8

*Humphries v. Milwaukee County*, 2011 WL 5506676 (E.D. Wisc. Nov. 10, 2011) ….   18

*Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995) ………………………………   19

*Kentucky v. Graham*, 473 U.S. 159 (1985) …………………………………………   9

*Large v. Beckham Cty. Dist. Court*, 2014 WL 235477 (W.D. Okla. Jan. 22, 2014) ….   19

*Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183 (10th Cir. 2003) …………………   12-13, 18

*Los Angeles County, Cal. v. Humphries*, 562 U.S. 29 (2010) …………………………   9

*Magic City Amusement Co. v. Hastings*, 1941 OK 220, 116 P.2d 709 ………………..   6

*McMillian v. Monroe County, Ala.*, 520 U.S. 781 (1997) ……………………………...   1

*McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991 (6th Cir. 2019) ……………………   18

*Milligan-Hitt v. Board of Trustees,* 523 F.3d 1219 (10th Cir. 2008) …………………..   10

*Morrison v. Ardmore Indus. Dev. Corp.*, 1968 OK 116, 444 P.2d 816 ………………   2

<u>TABLE OF AUTHORITIES</u> (continued)

Page

*Myers v. Oklahoma County Board of Co. Comm'rs*, 151 F.3d 1313 (10th Cir. 1998)    19

*North Side State Bank v. Board of County Comm'rs of Tulsa County*,
1994 OK 34, 894 P.2d 1046 ……………………………………………………    3, 23

*ODonnell v. Harris Cty.*, 892 F.3d 147 (5th Cir. 2018) ………………………………..    18

*Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) ………………………………………..    10

*Oklahoma Ind. Petroleum Ass'n v. Potts*, 2018 OK 24, 414 P.3d 351 ……………...    2

*Pan Am. Petroleum Corp. v. Board of Tax-Roll Corrections of Tulsa County*,
1973 OK 52, 510 P.2d 680 ……………………………………………………………    17

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) …………………………………    10

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ……………………    19, 22

*Petuskey v. Cannon*, 1987 OK 74, 742 P.2d 1117 ……………………………………    3, 14-15

*Ray v. Judicial Corrections Services, Inc.*, 2017 WL 660842 (N.D. Ala. 2017) ……….    13

*Robinson v. City of Tupelo, Mississippi*, No. 2018 WL 2348666
(N.D. Miss. March 23, 2018) ……………………………………………………………    18

*Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760 (10th Cir. 2013) ….    9

*Scott v. O'Grady*, 975 F.2d 366 (7th Cir. 1992) ………………………………………    20-22

*Shepp v. Fremont County, Wyo.*, 900 F.2d 1448 (10th Cir. 1990) ……………………    18

*Speight v. Presley*, 2008 OK 99, 203 P.3d 173 ………………………………………..    3, 23

*State ex rel. Gaines v. Beaver*, 1945 OK 318, 166 P.2d 776 …………………………    6

*State v. Price*, 2012 OK 51, 280 P.3d 943 ……………………………………………    8, 17

*Strong v. State ex rel. Oklahoma Police Pension & Ret. Bd.*, 2005 OK 45, 115 P.3d 889    17

*Surplus Store and Exchange, Inc. v. City of Delphi*, 928 F.2d 788 (7th Cir. 1991) ……    18

TABLE OF AUTHORITIES (continued)

Page

*Tulsa Exposition & Fair Corp. v. Board of County Comm'rs*,
1970 OK 67, 468 P.2d 501 …………………………………………….. 5

*Van Woudenberg v. Gibson*, 211 F.3d 560 (10th Cir. 2000) …………………………. 5

W*hitesel v. Sengenberger*, 222 F.3d 861 (10th Cir. 2000) …………………………… 18

*WildEarth Guardians v. Public Service Co. of Colorado*, 690 F.3d 1174 (10th Cir. 2012) 24

*Wilson v. Meeks*, 98 F.3d 1247 (10th Cir. 1996) ……………………………………… 23

*Winters v. Board of County Comm'rs of Muskogee County*,
633 Fed.Appx. 684 (10th Cir. 2015) ……………………………………………….. 23

STATUTES

42 U.S.C. § 1983 …………………………………………………….. 1, 9

Okla. Const. art. 7, § 4 …………………………………………….. 6

Okla. Const. art. 17, § 2 …………………………………………….. 23

2023 Okla. Sess. Laws § 247 ("House Bill No. 2259") ……………………………….. 2, 24

19 O.S. § 1 ………………………………………………………….. 5

19 O.S. § 3 ………………………………………………………….. 5

19 O.S. § 131 ……………………………………………………….. 23

19 O.S. § 514 ……………………………………………………….. 7, 16, 21

19 O.S. (2011) § 514.4 ……………………………………………….. 2-6, 14

19 O.S. (2011) § 514.5 ……………………………………………….. 2-5, 14

20 O.S. § 1301 ……………………………………………………… 2-3

21 O.S. § 345 ………………………………………………………. 16

21 O.S. § 444 ………………………………………………………. 7

v

TABLE OF AUTHORITIES (continued)

STATUTES (continued)

Page

21 O.S. § 532 ……………………………………………………………  7

21 O.S. § 533 ……………………………………………………………  7, 21

22 O.S. § 15 ……………………………………………………………  7

22 O.S. § 186 ……………………………………………………………  7

22 O.S. § 209 ……………………………………………………………  7

22 O.S. §§ 454 ……………………………………………………………  12

22 O.S. §§ 454-58 ………………………………………………………  12

22 O.S. §§ 456 ……………………………………………………………  12

22 O.S. §§ 456-57 ………………………………………………………  16

22 O.S. (2023) § 983(L) ………………………………………………  24

22 O.S. § 1105(A) ………………………………………………………  17

22 O.S. § 1105.3((B) ……………………………………………………  17

22 O.S. § 1115.1 …………………………………………………………  7

22 O.S. § 1115.1A ………………………………………………………  7

22 O.S. § 1181 …………………………………………………………  16

28 O.S. § 151(A) ………………………………………………………  15

28 O.S. § 151(D) ………………………………………………………  6

28 O.S. § 153 …………………………………………………………  2

47 O.S. § 751(D) ………………………………………………………  7

57 O.S. § 42 ……………………………………………………………  7

vi

TABLE OF AUTHORITIES (continued)

STATUTES (continued)

Page

57 O.S. § 47 ………………………………………………………….. 7

57 O.S. § 48 ………………………………………………………….. 7

57 O.S. § 49 ………………………………………………………….. 7

57 O.S. § 55 ………………………………………………………….. 7, 21

74 O.S. § 85.41 …………………………………………………………. 4-6


RULES

Fed. R. Civ. P. 8(d)(1) ……………………………………………….. 1

Fed. R. Civ. P. 12(b)(1) ……………………………………………… 1

Fed. R. Civ. P. 12(b)(6) ……………………………………………… 1, 5

Fed. R. Civ. P. 56 ……………………………………………………. 5

Oklahoma Supreme Court Rules on Administration of Courts, 20 O.S. Ch.1, App.

    Rule 2 ……………………………………………………….. 3, 14, 22

    Rule 8.1 ……………………………………………………… 12

    Rule 8.2 ……………………………………………………… 12

    Rule 8.3 ……………………………………………………… 12

    Rule 8.4 ……………………………………………………… 12

    Rule 8.5 ……………………………………………………… 12

    Rule 8.6 ……………………………………………………… 12

    Rule 8.7 ……………………………………………………… 12

Tulsa County District Court Criminal Rule 1(D) ………………………………… 7-8, 17

TABLE OF AUTHORITIES (continued)

ATTORNEY GENERAL OPINIONS

Page

1980 OK AG 1 ……………………………………………………………….. 17

1985 OK AG 27 ………………………………………………………………… 17

2004 OK AG 17 ………………………………………………………………… 7

OTHER AUTHORITIES

George B. Fraser, "Oklahoma's New Judicial System," 21 *Okla. L. Rev.* 373 (1968) … 6

Pursuant to Fed.R.Civ.P. 12(b)(6) and 12(b)(1), Defendants Tulsa County Court Clerk Don Newberry, in his official capacity ("Tulsa Court Clerk"), Vic Regalado, Sheriff of Tulsa County, in his official capacity ("Tulsa County Sheriff"), Tulsa County Cost Administrator Darlene Bailey, in her official capacity ("Tulsa Cost Administrator"), and the Board of County Commissioners of Tulsa County ("BOCC"), (collectively "Tulsa County"),[1] move this Court for an order dismissing Plaintiffs' municipal liability claims against Tulsa County with prejudice.

Plaintiffs' Second Amended Complaint ("SAC," Doc. #212)[2] fails to state a municipal liability claim against Tulsa County upon which relief can be granted.[3]  Plaintiffs have not alleged that any identified Tulsa County policy caused Plaintiffs' alleged injuries.  Instead, Plaintiffs' allegations of wrongdoing against Tulsa County officers relate exclusively to actions that were taken pursuant to *state law*[4] and carrying out *state court* policies, not county policies, and while

---

[1] The United States Supreme Court has "explained that a suit against a governmental officer "in his official capacity" is the same as a suit "'against [the] entity of which [the] officer is an agent,'" and that victory in such an "official-capacity" suit "imposes liability on the entity that [the officer] represents." *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785 n. 2 (1997) (citations omitted).

[2] For purposes of this Motion to Dismiss, it is unnecessary to address Plaintiffs' introductory generalized, abstract hyperbole and/or conclusory statements without factual anchors (SAC at ¶¶ 1-17); class action allegations (SAC at ¶¶ 214-73); allegations related solely to Rogers County (SAC at ¶¶ 32, 37, 39, 133-41); allegations concerning plaintiffs unrelated to the state court sitting in Tulsa County (SAC at ¶¶ 18, 22, 24, 155-60, 81-85 and 194-99); and Plaintiffs' interpretive gloss concerning the terms of a contract attached as an exhibit (SAC at ¶¶ 56-61).  Plaintiffs' allegations about Aberdeen's allegedly unjust and intimidating behavior, and the financial relationship between Aberdeen and the Oklahoma Sheriff's Association ("OSA") are unnecessary to resolve this motion (SAC at ¶¶ 26-29, 32-34, 48, 66-94, 99-107, 165, 175, 192-93).  Plaintiffs also engage in legal argument throughout their Second Amended Complaint (*see e.g.*, pp. 40-47, 66-70, 95, 118), which is improper under Rule 8 and should be disregarded by the Court.  *See* Fed. R. Civ. P. 8(d)(1); *see also Burns v. Buford*, 2011 WL 486253, at *2 (D. Colo. Feb. 7, 2011).

[3] Plaintiffs seek relief against Tulsa County based on 42 U.S.C. § 1983 (Plaintiffs' Counts Two – Seven).  Plaintiffs' RICO claim (Count One) is expressly not pled against these Defendants in their official capacities.

[4] The Court "must presume that a state statute is constitutional." *Eaton v. Jarvis Products*, 965 F.2d 922, 929 (10th Cir. 1992).  Oklahoma's Constitution and Statutes are an express declaration

they were acting as *agents for the state court*, not as agents for Tulsa County.  Because Plaintiffs' allegations relate exclusively to acts taken by the officers while they were acting as state agents, Plaintiffs' claims for monetary damages are barred by Eleventh Amendment immunity.  Lastly, Oklahoma's recent enactment of House Bill No. 2259, which overhauls the state's collection of criminal fines, fees and costs, renders Plaintiffs' claims for prospective injunctive relief moot.

## I.
## INTRODUCTION

### A.  Plaintiffs' allegations and claims

Plaintiffs filed this action on November 2, 2017 complaining about the manner in which Oklahoma assesses and collects criminal fines, fees and costs (SAC at ¶¶ 43-45, 53-55, 112-15, 142-53, Doc. #212).  Plaintiffs seek damages and equitable relief against Tulsa County as set forth in Counts Two through Seven of the SAC.

### B.  The State of Oklahoma regulates criminal fines, fees and costs

Although Plaintiffs have sued Tulsa County, the imposition and collection of criminal fines, fees and costs is a matter that is exclusively within the regulatory purview of the Oklahoma state government and governed by Oklahoma statute and the Oklahoma Supreme Court.  Such fines, fees and costs are collected pursuant to state statute by the district court clerk (*see* 28 O.S. § 153, 20 O.S. § 1301),[5] and with respect to delinquent accounts, collected with the assistance, pursuant to statute, of a private collection agency.  *See* 19 O.S. (2011) §§ 514.4, 514.5.   As the Supreme Court has held: "*[T]he court clerk's function of receiving and disbursing funds of every*

---

of state policy.  *See Oklahoma Ind. Petroleum Ass'n v. Potts*, 2018 OK 24, ¶ 18, 414 P.3d 351, 367 (Wyrick, J., concurring), and *Morrison v. Ardmore Indus. Dev. Corp.*, 1968 OK 116, ¶ 17, 444 P.2d 816, 821-22.

[5] *See also* Uniform Oklahoma Fee Schedule published online by the Oklahoma Supreme Court at http://www.oscn.net/applications/oscn/DeliverDocument.asp?CiteID=481561.

*character is inextricably connected, not with county government, but with that official's duty as state court's bursar.  In managing funds not derived from county appropriations the court clerk acts as a functionary of the state district court rather than as a county official.*"  *North Side State Bank v. Board of County Comm'rs of Tulsa County*, 1994 OK 34, ¶ 15, 894 P.2d 1046, 1052 (emphasis added).  Upon payment, the fines, fees and costs are deposited in the Court Fund to defray the expense of holding court.  *See* 20 O.S. § 1301.  By statute, the County Treasurer acts "***as an agent of the state*** in the care and handling of the Court Fund." *Id*. (Emphasis added).  The district court clerk and his deputies record the assessment of,[6] and track payments and receipts for the collection of, criminal fines, fees and costs under the administrative and supervisory control of the Chief Justice of the Supreme Court.  *See* Oklahoma Supreme Court Rules on Administration of Courts.  20 O.S. Ch.1, App. 2, Rule 2.  Court clerk deputies "are the employees of the court clerk, an independently elected county executive heading a service agency for the district court." *Petuskey, supra,* at ¶ 6, 742 P.2d at 1125 (Opala, J., concurring).  "[I]n the performance of all ministerial court functions, the court clerk and his or her deputies are subject to summary control by the judges and the [county] ha[s] no control over [the] clerk in the performance of those duties." *Speight v. Presley*, 2008 OK 99, ¶ 14, 203 P.3d 173, 177.

In 2005, and again in 2010, to aid in the district courts' collection of delinquent accounts, the Oklahoma Legislature amended 19 O.S. §§ 514.4 and 514.5 to authorize the court's use of a private collection agency.  *See* SAC at ¶ 54, Doc. #212.  Pursuant to the 2010 amendment, and at the time Plaintiffs filed their Complaint, Section 514.4 provided:

---

[6] "The assessment of a fine is exclusively an adjudicative function of a judge, and not the court clerk."  *Petuskey v. Cannon*, 1987 OK 74, ¶ 26, 742 P.2d 1117, 1122 (citing 22 O.S. §§ 961 et seq.).

A. Notwithstanding any other section of law, *the county sheriffs of any Oklahoma county may enter into a private contract,* **pursuant to Section 85.41 of Title 74 of the Oklahoma Statutes**.  Such contract shall require the contractor to attempt to locate and notify persons of their outstanding misdemeanor or failure-to-pay warrants.

B. A person may make payment directly to the court, as allowed by law, or the contractor shall be authorized to accept payment on misdemeanor or failure-to-pay warrants by various means including, but not limited to, payment by phone, mail, or Internet, and in any payment form including, but not limited to, personal, cashier's, traveler's, certified, or guaranteed bank check, postal or commercial money order, nationally recognized credit or a debit card, or other generally accepted payment form. Any payment collected and received by the contractor shall be paid within fifteen (15) days to the court clerk of the entity that issued the outstanding misdemeanor or failure-to-pay warrant.

C. As provided for by this section, a person may pay in lieu of appearance before the court and such payment accepted by the court shall constitute a finding of guilty as though a plea of nolo contendere had been entered by the defendant as allowed by law and shall function as a written, dated, and signed plea form acceptable to the court. Such payment shall serve as a written waiver of a jury trial.

D. The court shall release the outstanding misdemeanor or failure-to-pay warrant upon receipt of all sums due pursuant to said warrant including the misdemeanor or failure-to-pay warrant, scheduled fine or sum due, all associated fees, costs and statutory penalty assessments, and the administrative cost pursuant to Section 514.5 of this title.

E. The provisions of any contract entered into by a county sheriff shall be administered by a statewide association of county sheriffs in Oklahoma.  The county sheriff of any Oklahoma county may assign their right to contract to the statewide association administering the provisions of this contract.

F. The provisions of this section and Section 514.5 of this title shall be applicable to:

> 1. Any misdemeanor or failure-to-pay warrant issued or relating to any proceeding pursuant to the State and Municipal Traffic Bail Bond Procedure Act;

> 2. Any misdemeanor or failure-to-pay warrant issued that allows a defendant to resolve the matter by payment in lieu of a personal appearance in court; and

> 3. Any failure-to-pay warrant issued in a criminal case.

(Emphasis added).   Pursuant to the 2010 amendment, and at the time Plaintiffs filed their

Complaint, Section 514.5 provided:

A. Misdemeanor or failure-to-pay warrants referred to the contractor pursuant to Section 514.4 of this title shall include the addition of an administrative cost of thirty percent (30%) of the outstanding misdemeanor or failure-to-pay warrant, scheduled fine or sum due, and all associated fees, costs and statutory penalty assessments. This administrative cost shall not be waived or reduced except by order of the court.

B. The administrative cost reflected in subsection A of this section, when collected, shall be distributed to the association administering the provisions of the contract, a portion of which may be used to compensate the contractor.

C. The monies collected and disbursed shall be audited at least once a year by a firm approved by the State Auditor and Inspector.

On January 13, 2011, just three months after the above amendments became effective, the

Chief Justice of the Oklahoma Supreme Court ordered:

> ***Each district court is authorized and <u>directed to participate</u>*** *in the misdemeanor or failure-to-pay warrant collection program authorized by Title 19 Oklahoma Statutes Sections 514.4 and 514.5 immediately.* These collections apply to both misdemeanor and felony cases.

*See* Supreme Court Order, S.C.A.D. 2011-08 (Doc. #99-35; Doc #275, fn. 7) (emphasis added).[7]

***The only way that a district court can participate in the misdemeanor or failure-to-pay***

***warrant collection program is for the county sheriff to contract – <u>as a state agency</u>[8] – with a***

---

[7]Facts subject to judicial notice, such as matters of public record, may be considered without triggering the conversion of a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment. *See Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) ("[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record"), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001).

[8] "Counties have only such authority as is granted by statute[, and p]ublic officers possess only such authority as is conferred upon them by law and such authority must be exercised in the manner provided by law." *Tulsa Exposition & Fair Corp. v. Board of County Comm'rs*, 1970 OK 67, ¶ 26, 468 P.2d 501 (citations omitted). Because the authority for a county to contract resides with its board of county commissioners, *see* 19 O.S. §§ 1, 3, the only authority to contract possessed by a county sheriff is such authority as may otherwise be expressed by specific statute. In this instance, 19 O.S. (2011) § 514.4 specifically authorizes the county sheriff to implement the misdemeanor or failure-to-pay warrant collection program by entering into contracts *as a state agency* pursuant to 74 O.S. § 83.41 ("A state agency that acquires professional services shall comply with the provisions of this section…."). The contract at issue in this case requires the

5

"*[private] contractor* to attempt to locate and notify persons of their outstanding misdemeanor or failure-to-pay warrants."[9]  19 O.S. (2011) § 514.4(A) (emphasis added).

> The supreme court has the power and the duty to exercise control over the various officers of the courts including court clerks, court reporters, bailiffs, and, when they are engaged in activities that are connected with the legal system, sheriffs.  Also, the supreme court has superintending control over court funds, law libraries, and other activities that are related to the legal system.

George B. Fraser, "Oklahoma's New Judicial System," 21 *Okla. L. Rev.* 373, 385 (1968) ("Fraser").  "A sheriff is an officer of the court, and subject to its orders and directions." *Conner v. Drummond*, 1935 OK 507, ¶ 5, 46 P.2d 447, 448.  The Oklahoma Supreme Court exercises significant authority over the collection of court debt by virtue of its general superintendent control over all inferior courts, *see* Okla. Const. art. 7, § 4, and express statutory authority to institute a fines, fees and costs collection program.  *See* 28 O.S. § 151(D).

In obedience to the Supreme Court's January 13, 2011 directive, the Tulsa County Sheriff, as an agent of the court, implemented the misdemeanor or failure-to-pay warrant collection

---

private collection agency to enter into "an Agreement Regarding Use of the Oklahoma Court Information System by Private Collections Vendor ("OCIS Agreement")" with the Oklahoma Supreme Court, by and through the Administrative Director of the Courts ("AOC").  *See* Agreement for Collection, Ex. "A" to SAC, Doc. #212-1, ¶ 2(b)(1).  Like the court clerk's role in serving as the state court's bursar in managing funds not derived from county appropriations, because he is acting as an agent of the court, the sheriff also functions as an "arm of the district court" and state actor when he contracts as a state agency pursuant to 74 O.S. § 83.41 to acquire the professional services of a private collection agency for the benefit of the district court.  *No other statutory authority exists for county sheriffs to collect criminal court debt or to contract for its collection* (other than obedience to an order or directive of a state court judge).  *See State ex rel. Gaines v. Beaver*, 1945 OK 318, ¶ 6, 166 P.2d 776, 777-78; *Magic City Amusement Co. v. Hastings*, 1941 OK 220, ¶ 8, 116 P.2d 709, 711; *Feltz v. Board of County Comm'rs of the County of Tulsa*, Order on Motion to Dismiss, p. 20, Case No. 18-cv-0298-SPF-JFJ (N.D. Okla. Sept. 29, 2021), attached Ex. "1."  The sheriff's implementation of the program is both statutorily and economically carried out on behalf of the state, not the county.

[9] A county sheriff can also assign this statutory right to contract to the Oklahoma Sheriff's Association ("OSA").  *See* 19 O.S. (2011) § 514.4(E), and Agreement for Collection, Ex. "A" to SAC, Doc. #212-1, 2nd WHEREAS recital.

program.  *See* SAC at ¶ 51, Doc. #212.  Defendant Aberdeen Enterprizes II, Inc. ("Aberdeen") is

the private collection agency hired by the OSA. *Id*. at ¶ 26; and Ex. "A" to SAC, Doc. #212-1.

The Tulsa County Sheriff's only other role in the matters at issue would be his ministerial

role as an officer of the court in relation to service of arrest warrants and the detention of arrestees

on behalf of the court.  *See* SAC at ¶¶ 21, 31, 65, 98, 128-29, Doc. #212. ***This Court, in a related***

***case, has already determined that the Tulsa County Sheriff acts as a state actor, not as a county***

***actor, with respect to such matters.***  *See Feltz, supra,* p. 20, attached Ex. "1."  *See also* 19 O.S. §

514 ("The sheriff in person, or by his undersheriff or deputy, shall serve and execute, according to

law, all process, writs, precepts and orders issued or made by lawful authorities, and to him

directed"); 57 O.S. § 47 ("sheriff or other officer [in charge of the jail] is hereby required to

conform, in all respects, to the rules and directions promulgated pursuant to Section 192 of Title

74 of the Oklahoma Statutes and of the district judge and communicated to him by the proper

authority"); 2004 OK AG 17, ¶ 23 ("As a 'ministerial officer of the superior courts of justice,' the

sheriff 'arrests and imprisons,' and 'has the custody of the delinquent' in criminal matters").

Although a county sheriff holds those arrested by judicial warrant in his jail, he does so for and on

behalf of the district court.  *See* 21 O.S. §§ 444, 532, 533; 22 O.S. §§ 15, 186; 57 O.S. §§ 42, 47-

49, 55; Local Rule 1(D)(3) and (5), attached Ex. "2."

"A county jail … has a duty to receive a prisoner when custody is tendered by the arresting

agency."  2004 OK AG 17, ¶ 26(7).  Once arrested, only state statute[10] or an order of the district

---

[10] *See, e.g.,* 22 O.S. §§ 1115.1(A), 1115.1A(A) (solely for a misdemeanor traffic violation,
arresting officer may release upon personal recognizance if certain conditions are met); 47 O.S. §
751(D)(arrestee "may be released on the person's own recognizance for medical reasons by the
arresting officer"); 22 O.S. § 209 (solely for misdemeanor charge or violation of city ordinance,
arresting officer may release upon issuance of citation or summons to appear in court).

court can release someone from being held to answer for his or her public offense.  *See* Tulsa County District Court Criminal Rule 1(D)(3) and (5), attached Ex. "2," available online at: https://www.tulsacountydistrictcourt.org/files/TCDC-LocalRulesCriminal-Current12072021.pdf. In Oklahoma, if a sheriff releases an arrestee from custody without statutory authority and in the absence of judicial authorization, the sheriff faces criminal penalties and removal from office.  *See State v. Price*, 2012 OK 51, ¶ 4, n. 3, 280 P.3d 943, 946.

### C.   **Although an action for damages is barred, prospective injunctive relief may be available under the fictions of *Ex Parte Young***

Plaintiffs do not claim that a specific Oklahoma statute or case interpreting Oklahoma law violates their rights under the U.S. Constitution.  Rather, Plaintiffs allege that the day-to-day practices and procedures followed by the district court in its assessment and collection of criminal fines, fees and court costs violates their rights under the United States Constitution, and state law in conformity with the federal constitution.  (*compare* SAC at ¶¶ 40-46, 53-55, 112-15, 146-50 *with* SAC at ¶¶ 318-327, 329-37, 339-43, 345-52, 354-61).  Plaintiffs have sued the counties because the State of Oklahoma cannot be called upon in federal court to answer in damages.  Thus, Plaintiffs have pretzeled their allegations as if county actors carrying out county policies are responsible for their alleged harms.  Indeed, as evidenced by the number of counties sued, such "county policies" oddly exist statewide; in actuality, each county is simply following directives from the State of Oklahoma.  While the Eleventh Amendment bars a suit for damages, the county officers sued in this case may be subject to suit in federal court for prospective injunctive relief under the fictions of *Ex parte Young* as agents of the state (i.e., state actors) to prevent enforcement of an unconstitutional state law.[11]

---

[11]*See Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007) (explaining the various fictions involved in applying the doctrine of *Ex parte Young*).

II.

PLAINTIFFS SECOND AMENDED COMPLAINT FAILS TO IDENTIFY
A COUNTY POLICY OR CUSTOM AS THE MOVING FORCE BEHIND
THE ALLEGED DEPRIVATION OF PLAINTIFFS' CONSTITUTIONAL RIGHTS

To establish municipal liability under 42 U.S.C. § 1983, Plaintiffs must establish (1) an official policy or custom of Tulsa County; (2) the policy or custom was the moving force behind the constitutional violation (i.e. causation); and (3) the policy was enacted or maintained with deliberate indifference to the injury. *Harper v. Woodward Cnty. Bd. of Cnty. Comm'r*, 2014 WL 7399367, *7 (W.D. Okla. Dec. 29, 2014) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769-71 (10th Cir. 2013)).  The actions taken by the Tulsa Court Clerk, Tulsa Cost Administrator and the Tulsa County Sheriff pursuant to orders of the state judiciary, or otherwise in obedience to state law, reflect the actions of state actors following state policy, not county policy.  It is also implausible that a county officer obeying state law under criminal penalty for non-compliance is acting with deliberate indifference.  Plaintiffs have failed to state a plausible claim for relief.

Liability against a county under § 1983, whether for damages or prospective injunctive relief, must be predicated on "the municipality's own wrongful conduct," not on the municipality being responsible for the acts of another – not even an employee.  *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 38 (2010).

> On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.  More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation; thus, *in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law.*

*Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (emphasis added, internal citations omitted, emphasis in original omitted).

9

Under specific circumstances, some decisions by county officials can represent official county policy, but the United States Supreme Court has "emphasize[d] that **not every decision** by municipal officers automatically subjects the municipality to § 1983 liability.  Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (emphasis added).  "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 481-82 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-24 (1985)).

Liability can only attach to Tulsa County where "a deliberate choice to follow a course of action is made from among various alternatives", and where the particular county officer is "responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483. "[T]he identification of those officials whose decisions represent the official policy of the local government unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury." *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737, (1989) (emphasis in original); *see also Milligan-Hitt v. Board of Trustees,* 523 F.3d 1219, 1224 (10th Cir. 2008) ("The judge, not the jury, should determine who exercises  final policymaking authority in  a municipality.").

The district courts' role is to review "the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law," in order to identify "those officials or governmental bodies … who have the power to make official policy on a particular issue." *Jett*, 491 U.S. at 737.  In this case, those issues are the assessment and collection of criminal fines, fees and costs, the issuance, execution and recall of failure-to-pay bench warrants,

contracting with, and transferring delinquent fines, fees and costs to, a private collection agency, detention of arrestees until released by the court, and the setting of monetary conditions to recall warrants or to release those arrested on such warrants.  *See* SAC.

The most noticeable change in Plaintiffs' Second Amended Complaint from prior versions is to frequently, and randomly, use the word "discretion" (or similar wording), as if the repeated use of the word overrides established law. *See* e.g., SAC at ¶¶ 5, 7, 9, 35-36, 50, 57, 125, 164, 178, 183, 283, 322.  The acts allegedly undertaken by Tulsa County officers are undertaken *as a matter of law* based on *statutory mandates* (with criminal penalties for non-compliance), controlling attorney general opinions and governing case law; even if discretion were exercised, it would have been employed on behalf of the *state judiciary* who directed such acts be undertaken, not Tulsa County.  Thus, *the final policymaker with respect to such acts is either the state legislature or found among the state judiciary, not among Tulsa County's officers*.  Plaintiffs' repeated insertion of "discretionary conduct" cannot and does not confer a claim for relief where none exists.

A.   **Policies attributed by Plaintiffs to the Tulsa Court Clerk and/or His Deputy, the Tulsa Cost Administrator are, in reality, policies of the Oklahoma legislature and state judiciary**

Plaintiffs complain that Tulsa County is responsible for their alleged harms because the Tulsa Court Clerk sets up an installment payment plan with guilty criminal defendants who cannot immediately pay their fines, fees and costs (SAC at ¶¶ 35, 118, Doc. #212); "seeks" failure-to-pay bench warrants for criminal defendants who fail to pay according to plan (*id*. at ¶¶ 35, 120, 332, 347, Doc. #212); transfers delinquent accounts to the contracted private collection agency (*id*. at ¶¶ 35, 125, 261); assesses a thirty-percent (30%) surcharge to the criminal defendant on such transferred delinquent accounts (*id*. at ¶¶ 35, 361); and assists the contracted private collection

agency with "seeking" failure-to-pay bench warrants for criminal defendants who continue failing to pay (*id*. at ¶¶ 35, 126, 322).

Plaintiffs redundantly complain that the Tulsa Cost Administrator commits the very same acts as the Tulsa Court Clerk to cause the same alleged harm (*id*. at ¶ 36), and that the Tulsa Cost Administrator does so pursuant to policies and practices promulgated by her direct supervisor: the Tulsa Court Clerk.  *Id.* at ¶¶ 118, 120-22.[12]

However, as a matter of law, the imposition of a payment plan is the state judge's responsibility pursuant to Rules 8.3 and 8.7 of the Rules of the Court of Criminal Appeals, 22 O.S. Ch. 18, App., § VIII.  Likewise, the determination of a defendant's ability to pay fines, fees and costs rests *exclusively* with the state court.  *See* Rules 8.1 – 8.7.  The state court judge may direct every guilty defendant to the district court clerk's office "to make payment or set up a payment plan," *see* SAC at ¶ 118, but the Rules of the Court of Criminal Appeals impose on criminal judges the obligation to determine a defendant's "ability to pay" and to set "installments in reasonable amounts and fix the due date of each payment."  *See* Rules 8.1, 8.3, 8.4 and 8.5.  These rules establish that the collection of criminal fines, fees and costs is indisputably a matter of *state court* policy and procedure, and *state law.*

The issuance of a bench warrant rests with the state court, pursuant to state statute as a matter of state policy.  22 O.S. §§ 454-58.  In Oklahoma, court clerks are not authorized to issue warrants; only judges possess such power.  *See Bearden v. State*, 1925 OK CR 146, 233 P. 1100. Every warrant is, by its very nature, an order of the district court.  22 O.S. § 456.  While 22 O.S. § 454 authorizes the court to "direct the clerk to issue a bench warrant for [a defendant's] arrest,"

---

[12] Plaintiffs allege that the state court judges sitting in Tulsa County issue the failure-to-pay bench warrants (SAC at ¶ 349, doc. #212), and that these judges "set the amount for those who have been arrested on [such] arrest warrants to be released at $250."  *Id*. at ¶ 342.

the district court clerk issues such a warrant as an officer and arm of the court, pursuant to its direction and control.  In *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1186, 1190 (10th Cir. 2003), a municipal judge allowed the court clerk to use the judge's signature stamp without the judge's personal review in issuing arrest warrants for failure to answer a city complaint. "A municipal judge's duty to sign all municipal arrest warrants is directly mandated by [Kansas] statute." *Id.* at 1190.  Plaintiff alleged he had been arrested on one such "invalid warrant."  Because arrest warrants are issued by judges, and their clerks act with respect to such matters pursuant to judicial directive and under judicial control, the Tenth Circuit agreed with the district court that the invalid warrant had been issued "by Judge Roach … pursuant to his position as a judicial officer of the State of Kansas." *Id.* at 1186, 1190.  Issuing warrants is unquestionably a judicial function performed on behalf of the district court. *See Jones v. Hacker*, 2015 WL 1279352, *5 (E.D. Okla. 2015) ("The issuance of warrants is a judicial function"), attached Ex. "3."

Plaintiffs allege that the district court clerk and his deputy cost administrator "seek" warrants rather than prepare them for issuance by the state court.  This is pure sophistry.  Neither the district court clerk nor his deputies "seek" arrest warrants.  They do as they are told by the state judiciary who, on occasion, request arrest warrants for signature and who also issue standing orders regarding such matters with respect to frequently recurring situations.  The lawyers for Plaintiffs in this case have, in at least one other federal district court, unsuccessfully alleged that a court administrator "sought" warrants rather than "issued" warrants.  That court **rejected** the argument, finding that the plaintiffs' allegations as a whole alleged that the judges had "outsourced their job." *Cain v. City of New Orleans*, CV 15-4479, 2017 WL 467685, at *6 (E.D. La. Feb. 3, 2017).  In particular, the district court explained that the court administrator "d[id] not ask for issuance of a warrant based on his own investigation. ***Rather, [the court administrator] applie[d] a formula***

13

***for issuing warrants set by judges who are indisputably authorized to issue warrants on their own***." *Id*. (Emphasis added).  The same applies here.  Plaintiffs claim the district court clerk "*automatically* seeks a warrant . . . based solely on the nonpayment," and that the warrant is signed "*as a matter of course*" by the state court judge. SAC at ¶¶ 5, 120 (emphasis added).  The district court clerk's role is ministerial as a matter of law.  A district court clerk "is not a policymaker for the [county] when conducting judicial acts, such as issuing a warrant. This is because he or she is controlled by the state's judiciary system." *Ray v. Judicial Corrections Services, Inc*., 2:12-CV-02819-RDP, 2017 WL 660842, *14 (N.D. Ala. 2017) (citation omitted).

The district court clerk and cost administrator function as an accounts receivable clerk in preparation of failure-to-pay bench warrants under the state court's direction and control to collect past-due court debt owing the state court. *See Jones, supra,* at *1, attached Ex. "3."  Plaintiffs have identified no statute that grants the district court clerk or his cost administrator discretion to conduct a law enforcement investigation on behalf of the county into outstanding district court debt and swear out findings of fact in a warrant application.  The Oklahoma Supreme Court recognizes the district court clerk as "'judicial personnel' as the term is used in Rule 2 of Administration of Courts, … [and] an arm of the court, whose duties are ministerial, except for those discretionary duties provided by statute." *Petuskey*, *supra*, at ¶ 20, 742 P.2d 1117, 1121.

Transferring delinquent accounts to Aberdeen is in direct obedience to an Order of the Chief Justice of the Supreme Court.  *See* Supreme Court Order, S.C.A.D. 2011-08 (Doc. #99-35) ("Each district court is authorized and ***directed to participate in*** the misdemeanor or failure-to-pay warrant collection program") (emphasis added); and 19 O.S. §§ 514.4 and 514.5.  There are no statutes that grant the district court clerk, or his deputy cost administrator, functioning as the state court's bursar, the authority to countermand the orders of the Oklahoma Supreme Court.  Section

VIII of the Rules of the Court of Criminal Appeals vests *exclusive* discretion in the state judiciary to hear claims of indigence and inability to pay, and no statute imposes a duty on the district court clerk or his deputies to communicate with the judge on behalf of a criminal defendant.

The Oklahoma Legislature, through statute, and the state judiciary are the final decisionmakers with respect to the assessment and imposition of fines, fees and court costs.

> It shall be the duty of the clerks of the district court and other trial courts of record of this state to charge and collect the fees imposed by this title and other fees, assessments and payments as ***imposed by the Oklahoma Statutes, fines, costs and assessments imposed by the district courts or appellate courts***, and none others, in all cases. . . .

28 O.S. § 151(A) (emphasis added).

The above statute, as a matter of state law – presumed constitutional and expressing state policy – requires the district court clerk and his deputies – as the state court's bursar – to charge and collect the fines, fees and costs imposed by statute and state courts. *Neither the district court clerk nor his deputy cost administrator has any policy-making authority to do otherwise.*

> In order to have a unified, organized judiciary in Oklahoma, there must be one individual at the apex: the Chief Justice of the Supreme Court.  Through the powers vested in the Supreme Court, by the Oklahoma Constitution and statutes, it has passed down the authority for the administration of district courts to the Administrative Judge of an Administrative Judicial District. This authority is essential for the orderly operation of justice.
>
> In ministerial matters, the District Court Clerk is serving his Court subject to the authority of the Administrative Judge.  ***Even though he may disagree with a particular order of the Administrative Judge, he has no discretion but to follow it in ministerial matters.***

*Petuskey*, *supra*, at ¶ 36, 742 P.2d at 1123.  The assessment of a 30% surcharge to delinquent accounts transferred to a private collection agency is required by state statute.  *See* 19 O.S. § 514.5 (collections referred to private collection agency "***shall include*** the addition of an administrative cost of thirty percent….") (emphasis added).

**B.  Plaintiffs attribute policies to the Tulsa County Sheriff that are, in actuality, policies of the Oklahoma legislature and state judiciary**

Plaintiffs complain that Tulsa County is responsible for their alleged harms because the Tulsa County Sheriff executes failure-to-pay bench warrants issued by the state court (SAC at ¶¶ 31, 65, 324, 334, 349); and detains those so arrested until they appear on the state court's cost docket (held twice each week) or pay $250 to be released, which is credited to their delinquent fines, fees and costs account.  *See* SAC at ¶¶ 31, 65, 128-29, 343.

State statutes require every county sheriff, under penalty for noncompliance, to serve all arrest warrants "issued or made by lawful authorities, and to him directed."[13]  19 O.S. § 514.  *See also* 21 O.S. § 345 (criminalizing sheriff's willful failure or refusal to perform official duty); 22 O.S. § 1181 (sheriff subject to removal from office for willful neglect of duty).  Plaintiffs do not allege that their arrest warrants were facially invalid; nor do Plaintiffs allege that their arresting officers were present at their judicial proceedings concerning delinquent criminal court debt.[14]  *See* SAC, Doc. #212.  Oklahoma's Attorney General has opined:

---

[13] Every bench warrant is an order of the state court directed to "any sheriff, constable, policeman or marshal in this state" commanding him "forthwith to arrest" the person named in the warrant "and bring him before the court … or if the court have adjourned for the term … deliver him into the custody of the sheriff of the county." 22 O.S. §§ 456-57.

[14] Many of Plaintiffs' allegations, for example, that execution of a failure-to-pay bench warrant is done "with knowledge that [it was] issued without any pre-deprivation process," *see* SAC at ¶¶ 324, 349, are the sort of conclusory phrases the Supreme Court has found "disentitles them to the presumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (finding as conclusory allegations such statements as "petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest[;]' … that Ashcroft was the 'principal architect' of this invidious policy, and that Mueller was 'instrumental' in adopting and executing it.")   "Labels, conclusions, formulaic recitations of elements, and naked assertions will not suffice.  An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement.  Conclusory allegations are not entitled to the assumption of truth." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (citations omitted).

> As to the powers and duties of the sheriff at common law, *Anderson on Sheriffs*, *supra*, at § 6, p. 4, states that ***"It is not only the power, but the duty, of sheriffs in their various jurisdictions . . . to execute all process directed to [them] . . . and [to] carry out the mandates, orders and directions of the courts."***

1985 OK AG 27, ¶ 2 (emphasis added).[15]

State statutes and local court rules vest *exclusive* authority in the state judiciary regarding the terms and conditions of an arrestee's release from jail.  *See* 22 O.S. § 1105.3(B) (only a judge is authorized to grant or deny pretrial release); 1980 OK AG 1 (sheriff cannot release an arrestee other than by court order or upon posting bond in an amount approved by the court); *Price*, supra, at  ¶ 29, 280 P.3d at 952 ("release of a person on personal recognizance is a judicial function"); 22 O.S. § 1105(A) and Local Criminal Rule 1(D)(3), (5), (sheriff authorized to release arrestee only upon verbal or written order of a state court judge), attached Ex. "2"

If the Tulsa County Sheriff did as Plaintiffs suggest—release arrestees from his jail not based on judicial order but in exchange for payment of a sum determined solely by him—he has violated his official duty, disobeyed local court rules, exceeded his statutory authority, and committed an ultra vires act.  "***Public officials performing acts which exceed their authority may not bind a public entity.  Rather, they lack authority to expand their powers and are bound by mandatory law.***"  *Strong v. State ex rel. Oklahoma Police Pension & Ret. Bd*., 2005 OK 45, ¶ 9, 115 P.3d 889, 893 (emphasis added).  However, Plaintiffs acknowledge that "[t]he Tulsa County Judges set the amount required for those who have been arrested on debt-collection arrest warrants to be released at $250."  SAC at 342, Doc. #212 (emphasis added).

---

[15] "[I]t is the duty of [county] officers … with notice thereof to follow the opinion of the Attorney General until relieved of such duty by a court of competent jurisdiction or until this Court should hold otherwise."  *Pan Am. Petroleum Corp. v. Board of Tax-Roll Corrections of Tulsa County*, 1973 OK 52, ¶ 10, 510 P.2d 680.

**C.  Municipal liability under  § 1983 does not attach because county officers follow state law and obey the orders of a state court judge**

Numerous decisions by numerous courts, including the Tenth Circuit, have held that a county officer's decision to follow state law and state judicial orders does not support municipal liability under 42 U.S.C. § 1983.  *See* W*hitesel v. Sengenberger*, 222 F.3d 861, 872 (10th Cir. 2000) (board of county commissioners "cannot be liable for merely implementing a policy created by the state judiciary"); *Ledbetter v. City of Topeka, Kan*., 318 F.3d 1183, 1190 (10th Cir. 2003) (collecting cases) (acts of a municipal judge *in performing a state judicial function* do not establish municipal policy); *Shepp v. Fremont County, Wyo*., 900 F.2d 1448, 1456-57 (10th Cir. 1990) (denial of bail was the responsibility of state judge and could not be attributed to the county). *See also ODonnell v. Harris Cty*., 892 F.3d 147, 156 (5th Cir. 2018) (sheriff is not a municipal policymaker when following judicial orders); *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 995 (6th Cir. 2019) (sheriff acts for state when he detains "probationers under judge-set bail amounts"); *Surplus Store and Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 791-92 (7th Cir. 1991) ("It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law.  If the language and standards from *Monell* are not to become a dead letter, such a 'policy' simply cannot be sufficient to ground liability against a municipality."); *Robinson v. City of Tupelo, Mississippi*, 2018 WL 2348666, *6 (N.D. Miss. March 23, 2018) (municipal liability did not attach to county sheriff's charging a $25 fee when releasing someone on bail because sheriff was simply following state law); *Humphries v. Milwaukee County*, 2011 WL 5506676, *6 (E.D. Wisc. Nov. 10, 2011) ("a municipality 'cannot be held liable under section 1983 for acts that it did under the command of state or federal law'") (quoting *Bethesda Lutheran Homes and Services, Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998); and *Frobe v. Village of*

*Lindenhurst*, 2014 WL 902878, *9 (N.D. Ill. March 7, 2014) ("the state law is a state law, not municipal policy").[16]

III.

<u>DEFENDANTS ARE ENTITLED TO ELEVENTH AMENDMENT IMMUNITY</u>

A state and state actors are generally entitled to Eleventh Amendment immunity in federal court.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-102 (1984).  A narrow exception applies when a plaintiff seeks to prospectively enjoin state officials in their official capacities.  *See Ex parte Young*, 209 U.S. 123 (1908).  This exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal right in the past."  *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (emphasis added).  The Eleventh Amendment bars such relief.  *See Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995).

"The Eleventh Amendment precludes anyone from suing an arm of the state or asserting a damage claim against state officers in their official capacities."  *Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017).  As to the district courts of the State of Oklahoma in particular, Oklahoma federal courts have determined they are arms of the State of Oklahoma.  *See Large v. Beckham Cty. Dist. Court*, 2014 WL 235477, at *3 (W.D. Okla. Jan. 22, 2014) ("the District Court of Beckham County should be considered an arm of the State of Oklahoma and, therefore, entitled to Eleventh Amendment immunity from suit").

---

[16] When the sheriff and his deputies police the county to keep the peace and eradicate crime, they are engaged in traditional law enforcement activities for which municipal liability might attach if the county's applicable policies are the moving force that deprive someone of his or her constitutionally protected rights.  *See, e.g., Myers v. Oklahoma County Board of Co. Comm'rs*, 151 F.3d 1313, 1319 (10th Cir. 1998) (after lone gunman had shot at law enforcement and was threatening suicide, if county sheriff's policy to enter the gunman's apartment violated suspect's constitutional rights, municipal liability could attach, but it would not attach to the deputy's separate and independent decision to shoot gunman upon entering apartment).

19

The Court of Appeals for the Seventh Circuit has directly dealt with the alleged liability of the sheriff for duties preformed as an arm of the state court.  In *Scott*, the county sheriff and his deputy were sued in their official capacities under § 1983 for violating plaintiffs' alleged due process rights under the Fourteenth Amendment based on the officers' execution of a writ of assistance issued by the state court to evict plaintiffs from their apartment.  *Scott v. O'Grady*, 975 F.2d 366, 367-69 (7th Cir. 1992), *cert. denied*, 508 U.S. 942 (1993).  Plaintiffs alleged that the sheriff "has a policy and practice of evicting tenants pursuant to Writs of Assistance [that] … allowed deputy sheriffs of Cook County to evict a tenant in possession who was not named on the Writ of Assistance solely on the oral representation of the [property owner]."  *Id*. at 368-69.

> [Sheriff] O'Grady and [Deputy] Branch filed a Rule 12(b)(6) motion to dismiss, claiming that the Scotts' suit is an action against the State of Illinois and is therefore barred by the Eleventh Amendment.  O'Grady and Branch argued that, when they carried out the Writ of Assistance issued by the state court, they were effectively acting as ***state officers***.  The Scotts, relying on the Illinois Constitution and state statutes, responded that O'Grady and Branch are ***officers of Cook County***, not the State.  The district court agreed with the defendants and dismissed the complaint.

*Id*. at 369 (emphasis added).

On appeal, the Seventh Circuit had to determine "whether Sheriff O'Grady and Deputy Sheriff Branch [were] agents of the state (in which case the Eleventh Amendment protects them), or of the county (in which case it does not)."  *Id*. at 370.  The Seventh Circuit, while noting that Illinois law designated the sheriff as a county officer when he performs duties as the "chief law enforcement officer of the county," held that county sheriffs "***act as an arm of the state when, as in this case, they act to enforce orders issued by state courts.***"  *Id*. at 371 (emphasis added).  The applicability to the present case is clear.  The Tulsa County officers, though officers of the county for certain purposes, "act as an arm of the state" when enforcing court orders or otherwise acting as auxiliaries to the Oklahoma state courts.

The Court in *Scott* then determined that Illinois law "***gives county sheriffs no discretion in executing court orders***," and further, that Illinois law "***punishes him if he does not***" with contempt of court and liability for damages. *Id*. (Emphasis added).

> The writ ordered the Sheriff of Cook County to accompany [owner] to the property and to use all means necessary to ensure [owner's] ability to take possession of the property.  Under *Ill.Rev.Stat*. Ch. 34, §§ 3–6019, 3–6020, O'Grady and Branch had a statutory, non-discretionary duty to execute this writ.  Had they failed to execute the writ, O'Grady and Branch would have been in contempt of court and liable to [owner] for damages.

> Under these circumstances, we agree with the district court, *Scott*, 760 F.Supp. [1288, 1293 (N.D. Ill. 1991)] that Sheriff O'Grady and Deputy Sheriff Branch were not acting as county officials.  ***The county sheriff acts as an arm of the Illinois state judicial system in executing Writs of Assistance and other state court orders.  When fulfilling this statutory duty, the sheriff and his deputies must be deemed state officials for the purposes of Eleventh Amendment immunity***.

*Id*. (emphasis added).

*The same is true in this case*.  19 O.S. § 514 imposes on the county sheriff a statutory, non-discretionary duty to "execute, according to law, all process, writs, precepts and orders issued or made by lawful authorities, and to him directed," 21 O.S. § 533 criminalizes a sheriff's refusal to detain any person as a prisoner in violation of a duty imposed by law, and 57 O.S. § 55 subjects the sheriff to monetary penalties upon his refusal to obey the orders of the district court judge with respect to detainees in the county jail.

Should Plaintiffs contend that Eleventh Amendment immunity is unavailable because Tulsa County would be responsible for any judgment, such argument would be unavailing.  In *Scott*, the Seventh Circuit reasoned that "even if a judgment for [Plaintiffs] would be paid by the county, that does not undermine our conclusion that this is a suit against the State…." *Scott*, 975 F.2d at 372.  "It is true that whether a suit would harm the state fisc is an important factor in determining whether a lawsuit is against a state—that is, whether an unnamed state is the real,

substantial party in interest.  We have never held, however, that this factor alone is dispositive in every case."  *Id*. (citations and internal quotation marks omitted).  A state can be the "real, substantial party in interest" even if its treasury will remain untouched: "The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, *or* interfere with the public administration."  *Pennhurst*, *supra*, 465 U.S. at 101 n.11 (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)) (citations and internal quotation marks omitted and emphasis added). Under this precedent, Tulsa County Officers acting as an arm or officer of the state court are entitled to Eleventh Amendment immunity.

IV.

**AS A MATTER OF LAW, AND AS PLED, THE TULSA COST ADMINISTRATOR HAS NO POLICYMAKING AUTHORITY AND <u>SHOULD BE DISMISSED AS AN IMPROPERLY NAMED PARTY DEFENDANT</u>**

Plaintiff has sued Darlene Bailey individually and in her official capacity as cost administrator, an accounts receivable position created by a directive of the Administrative Office of the Supreme Court.  *See Jones, supra,* at *1, attached Ex. "3."  She is employed as deputy of the district court clerk, and functions as the state court's bursar.  She has no policymaking authority.  *Id*.  In fact, ***Plaintiffs specifically allege that the Tulsa Cost Administrator follows the policies and directives of her immediate supervisor, the Tulsa Court Clerk.***  *See* SAC at ¶¶ 118, 120-22.  This is consistent with Rule 2 of the Oklahoma Supreme Court Rules on Administration of Courts.  Under Rule 2, Bailey's chain of command is first to her immediate supervisor the district court clerk, then a district court judge, then the Presiding Judge of the judicial administrative district, and ultimately, the Chief Justice of the Supreme Court.  *See* 20 O.S. Chp.1, App. 2, Rule 2.  As noted earlier, Plaintiffs allege the Tulsa Cost Administrator commits the very same acts as the Tulsa Court Clerk pursuant to policies established by the Tulsa Court Clerk. *Id*. at ¶¶ 118, 120-22.

V.
## PLAINTIFFS HAVE FAILED TO STATE A CLAIM
## AGAINST THE BOARD OF COUNTY COMMISSIONERS

Plaintiffs only mention the BOCC once in their 120-page, 373-paragraphs long Second

Amended Complaint:

> The Board of County Commissioners of the County of Tulsa ("Tulsa County") is the
> governing body of the County of Tulsa.  Tulsa County, through the Sheriff and the
> Clerk of Court, is responsible for establishing policy for the Tulsa County jail and for
> the collection of court debt.

SAC at ¶ 38, Doc. #212.  Plaintiffs' misstatements of the law are not entitled to a presumption of

truth.  The office of county sheriff and the office of district court clerk are created and established

by Oklahoma's Constitution, *see* Okla. Const. art. 17, § 2, and are on par with the office of board

of county commissioners (i.e., one does not control the other).  *Id*.; 19 O.S. § 131.  "[T]he absence

of a single chief executive and diffusion of responsibility among numerous independently elected

officials are general characteristics of county government in the United States."  *Avery v. Midland*

*County, Tex.*, 390 U.S. 474, 501-02 (1968) (Fortas, J., dissenting).

Under Oklahoma law, a board of county commissioners "is statutorily separate and distinct

from the independently elected sheriff," *Winters v. Board of County Comm'rs of Muskogee*

*County*, 633 Fed.Appx. 684, 685 (10th Cir. 2015) (unpublished), and "has no statutory duty to

hire, train, supervise, or discipline county sheriffs or deputies."  *Estate of Crowell ex rel. Boen v.*

*Bd. of Cnty. Comm'rs of the County of Cleveland*, 2010 OK 5, ¶ 23, 237 P.3d 134.   In like manner,

the BOCC has neither responsibility for nor power to control the court clerk's "performance of

judicial functions."  *Speight*, *supra*, at ¶ 13, 203 P.3d at 177.  *See also North Side State Bank,*

*supra*, at ¶ 15, 894 P.2d at 1052 (county commissioners not answerable for state court's bursar).

The Supreme Court has "explicitly rejected municipal liability based on either a respondeat

superior or vicarious liability theory."  *Wilson v. Meeks*, 98 F.3d 1247, 1255 (10th Cir. 1996).

23

VI.
## PLAINTIFFS' CLAIMS ARE MOOT BY VIRTUE OF OKLAHOMA'S RECENT ENACTMENT OF HOUSE BILL NO. 2259

House Bill No. 2259 requires every county to participate in the state's new cost compliance program, which takes effect November 1, 2023, and completely overhauls the judicial procedures at issue in this case.[17]   *See* House Bill No. 2259, attached Ex. "4."  Because Plaintiffs' claims for prospective injunctive relief are based on judicial procedures that date back to 2017, the new legislation renders Plaintiffs' claims moot.[18]  *See Daves v. Dallas County, Tex.*, 64 F.4th 616, 634 (5th Cir. 2023) (when plaintiffs' evidence predates the new law, "the case has lost its character as a present, live controversy and is therefore moot").

Tulsa County adopts the State Judges' arguments in support of their Motion to Dismiss with respect to the effect of this new legislation on the pending action.

VII.
## CONCLUSION

The BOCC should be dismissed with prejudice for failure to state a claim.

Darlene Bailey, a deputy court clerk serving as Tulsa Cost Administrator, should be dismissed in her official capacity because she has no policymaking authority.

The policies and practices at issue in this case are either mandated by state law and/or by the state's judiciary; they are not the invention of local county government.  Through the use of district court clerks in the daily operation of the courts, and sheriffs in execution of the court's arrest warrants and other orders, state court judges administer the state's justice in accordance with

---

[17] *See* 22 O.S. (2023) § 983(L) ("Every county of this state shall fully utilize and participate in the court cost compliance program"), as enacted by House Bill 2259, p. 15, attached Ex. "4."

[18] "Mootness … is a jurisdictional doctrine originating in Article III's 'case' or 'controversy' language."  *WildEarth Guardians v. Public Service Co. of Colorado*, 690 F.3d 1174, 1182 (10th Cir. 2012).

state statutes.  Tulsa County respectfully requests this Court dismiss Plaintiffs' § 1983 municipal liability claims against its officers with prejudice on the ground that Plaintiffs have failed to identify a *county* policy or custom that was the moving force behind their alleged constitutional deprivations.  In the alternative, Tulsa County respectfully requests the Court dismiss Plaintiffs' damages claims on the ground that *Ex parte Young* may not be used to obtain a declaration that a state actor has violated a plaintiff's federal right in the past, and the Eleventh Amendment bars claims for damages against arms or agents of the state.

Plaintiffs' claims for prospective injunctive relief should be dismissed as moot in light of House Bill No. 2259.

If the Court allows Plaintiffs' claims for prospective injunctive relief to proceed, Tulsa County respectfully requests this Court to dismiss with prejudice Plaintiffs' claims against Tulsa County's remaining officers as county actors, and allow such officers to remain in this lawsuit only to the extent they are sued as state actors, not as county actors.[19]

---

[19] This was the approach taken by this Court in the related case of *Feltz v. Board of County Comm'rs of the County of Tulsa*, Order on Motion to Dismiss, Case No. 18-cv-0298-SPF-JFJ (N.D. Okla. Sept. 29, 2021), attached Ex. "1."  In *Feltz*, Plaintiffs alleged: "The Tulsa County Sheriff is a final policymaker for Tulsa County's post-arrest jailing policies and practices.  Defendant Regalado is named separately from the County as a defendant in the event that the Court concludes that he acts on behalf of the state in this capacity, and thus is subject to prospective relief.  If the Court, however, agrees that he is a final policymaker for the County, naming him individually (sic, should probably be 'separately') is redundant of a suit against the County."  *Feltz*, *supra*, Second Amended Complaint, Doc. 259, at ¶ 18, n. 3.

Respectfully submitted,

/s/ Douglas A. Wilson
Douglas A. Wilson, OBA #13128
Assistant District Attorney
Tulsa County District Attorney's Office
218 West Sixth Street, Suite 933
Tulsa, OK  74119
(918) 596-8795
douglas.wilson@tulsacounty.org

Mike Shouse, OBA #33610
Assistant District Attorney
Tulsa County District Attorney's Office
218 West Sixth Street, Suite 935
Tulsa, OK  74119
(918) 596-4825
mshouse@tulsacounty.org

- and –

Joel L. Wohlgemuth, OBA #9811
Jo Lynn Jeter, OBA #20252
W. Caleb Jones, OBA #33541
Norman Wohlgemuth, LLP
3200 Mid-Continent Tower
401 South Boston
Tulsa, OK 74103
(918) 583-7571
JWohlgemuth@NWLawOK.com
JJeter@NWLawOK.com
Jones@NWLawOK.com

***Attorneys for Tulsa County Sheriff Vic Regalado, Tulsa County Court Clerk Don Newberry and Tulsa County Cost Administrator Darlene Bailey, in their official capacities, and the Board of County Commissioners of the County of Tulsa***

26

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 7, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | | |
|---|---|---|
| Robert E. Applegate | Jill E. Webb | Todd M. Wagner |
| Robert M. Blakemore | Daniel E. Smolen | Robert L. Betts |
| Robert D. Friedman | Donald E. Smolen, II | Harry Anthony Parrish |
| Rodney J. Heggy | Seth T. Wayne | Robert Stevens Lafferrandre |
| Jeffrey C. Hendrickson | John R. Woodward, III | Aaron Etherington |
| Katherine Hubbard | Chris M. Warzecha | April Danielle Kelso |
| Alexander Karakatsanis | Isaac Robertson Ellis | Randall J. Wood |
| Mary B. McCord | Melodie Freeman-Burney | Stefanie E. Lawson |
| Henry A. Parrish | Robert Dale James | Douglas N. Letter |
| Elizabeth Rossi | Thomas A. LeBlanc | Kelsey Ann Chilcoat |
| Maurice G. Woods, II | Carri Ann Remillard | |

/s/ Douglas A. Wilson