**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1)    CARLY GRAFF, | ) | |
| | ) | |
| On behalf of themselves and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 17-CV-00606-TCK-JFJ |
| | ) | (Complaint - Class Action) |
| (1) ABERDEEN ENTERPRIZES II, INC., | ) | |
| AN OKLAHOMA CORPORATION, ET AL., | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

**RENEWED MOTION TO DISMISS SECOND AMENDED COMPLAINT AND**
**BRIEF IN SUPPORT OF DEFENDANT KIM HENRY (FORMER**
**COURT CLERK OF ROGERS COUNTY) IN HER INDIVIDUAL CAPACITY**

Respectfully submitted,

   /s/ Scott B. Wood
Scott B. Wood
WOOD, PUHL & WOOD, PLLC
4037 E. 49th Street
Tulsa, Oklahoma 74135
(918) 607-5946
(918) 742-0808
okcoplaw@aol.com
Attorney for Kim Henry

July 7, 2023

1

## TABLE OF CONTENTS

I.    PLAINTIFFS' ALLEGATIONS ................................................................................1

II.   PLAINTIFFS' CLAIMS................................................................................................3

III.  ARGUMENTS AND AUTHORITIES...........................................................................3

    A.    DEFENDANT KIM HENRY IS ENTITLED TO ABSOLUTE
        IMMUNITY ........................................................................................3

        1.    Court Clerk Kim Henry Had No Personal Involvement
            in any Arrest, Detention or Confinement of Plaintiffs
            Graff and Holmes ..........................................................................5

        2.    Court Clerk Kim Henry is Entitled To Absolute
            Immunity Related to Claims Concerning Issuance of
            Court Process/Warrants ................................................................6

    B.    DEFENDANT KIM HENRY IS ENTITLED TO QUALIFIED
        IMMUNITY ........................................................................................7

        1.    Qualified Immunity Applies Because There Was No
            Underlying Constitutional Violation ..........................................8

        2.    Qualified Immunity Applies Because the Right at Issue
            Was Not Clearly Established ......................................................13

        3.    Qualified Immunity Applies Because Defendant Kim
            Henry Reasonably Relied upon Duly-Enacted Statutes
            and an Order from the Oklahoma Supreme Court ..................15

        4.    Plaintiffs' Claims Are Moot By Virtue of Oklahoma
            House Bill 2259 ..........................................................................17

IV.   CONCLUSION ................................................................................................17

## **TABLE OF AUTHORITIES**

**Case Law**

*Albright v. Rodriguez,*
    51 F.3d 1531 (10th Cir. 1995) ........................................................................8

*Anderson v. Creighton,*
    483 U.S. 635 (1987)   ...............................................................................7, 14

*Axson-Flynn v. Johnson,*
    356 F.3d 1277 (10th Cir. 2004) ...................................................................14

*Beals v. Daniels,*
    2016 WL 7324147 (W.D. Okla. Oct. 18, 2016) ...........................................11

*Bearden v. Georgia,*
    461 U.S. 660 (1983)   .............................................9, 10, 11, 12, 14, 17

*Breeden v. League Serv. Corp.,*
    1978 OK 27, 575 P.2d 1374........................................................................13

*Brown v. Montoya,* 662 F.3d 1152 (10th Cir. 2011) .................................................5, 10

*Coleman v. Farnsworth,*
    90 Fed.Appx. 313 (10th Cir. 2004)................................................................6

*Collins v. City of Clovis,*
    2015 WL 13662642 (D.N.M. Apr. 8, 2015) .................................................14

*Davis v. Nebraska Furniture Mart, Inc.,*
    567 Fed.Appx. 640 (10th Cir. 2014)............................................................11

*Dickerson v. Leavitt,*
    995 F. Supp. 1242 (D. Kan. 1998)..................................................................4

*Dodds v. Richardson,*
    614 F.3d 1185 (10th Cir. 2010) ...................................................................13

*Eades v. Sterlinske,*
    810 F.2d 723 (7th Cir. 1987) .........................................................................3

*Gomes v. Wood,*
    451 F.3d 1122 (10th Cir. 2006) .........................................................7, 8, 14

*Grossman v. City of Portland*,
    33 F.3d 1200 (10th Cir. 1994) ...................................................................................14, 15

*Hackett v. Artesia Police Dep't*,
    379 Fed. Appx. 789 (10th Cir. 2010)................................................................... 14

*Henriksen v. Bentley*,
    644 F.2d 852 (10th Cir. 1981) ..........................................................................3, 6

*Imbler v. Pachtman*,
    424 U.S. 409 (1976) ............................................................................................4

*Jacobs v. Dujmovic*,
    752 F. Supp. 1516 (D. Colo. 1990).....................................................................4

*Malley v. Briggs*,
    475 U.S. 335 (1986) ............................................................................................8

*Medina v. Cram*,
    252 F.3d 1124 (10th Cir. 2001) ..........................................................................8

*Morrison v. Jones*,
    607 F.2d 1269 (9th Cir. 1979) ...........................................................................6

*Newton v. Buckley*,
    1997 WL 642085, 127 F.3d 1109 (10th Cir. 1997) ............................................6

*Paul v. Davis*,
    424 U.S. 693 (1976) ..........................................................................................13

*Petuskey v. Cannon*,
    1987 OK 74, 742 P.2d 1117..................................................................................6

*Reichle v. Howards*,
    132 S. Ct. 2088 (2012)......................................................................................14

*Richman v. Sheahan*, 270 F.3d 430 (7th Cir. 2001) ......................................................3,4

*Rosaka v. Peterson*,
    328 F.3d 1230 (10th Cir. 2003) ..........................................................................8

*Roska ex rel. Roska v. Peterson*,
    328 F.3d 1230 (10th Cir. 2003) ........................................................................15

*Turney v. O'Toole*,
    898 F.2d 1470 (10th Cir. 1990) ..........................................................................4

*U.S. v. Phillips*, 834 F.3d 1176 (11th Cir. 2016) ............................................................7

*U.S. v. Spencer*, 684 F.2d 220 (2nd Cir. 1982) ............................................................7

*Valdez v. City and County of Denver*,
    878 F.2d 1285 (10th Cir. 1989) ...............................................................3, 4, 5

*Whitesel v. Sengenberger*,
    222 F.3d 861 (10th Cir. 2000) ...........................................................................3

## **Statutes**

42 U.S.C. § 1983 …………………………...............................................................4, 5, 6, 8, 10

19 O.S. §514, *et seq* ………… ...........................................................................6, 12, 16, 17

22 OS. §966A …………… ...........................................................................................11

22 O.S. §967 …………….. .........................................................................................11

Court of Criminal Appeals Rule 8.4 .................................................................................9

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1)    CARLY GRAFF, | ) |
| | ) |
| On behalf of themselves and all others | ) |
| similarly situated, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )       Case No. 17-CV-00606-TCK-JFJ |
| | ) |
| (1) ABERDEEN ENTERPRIZES II, INC., | ) |
| AN OKLAHOMA CORPORATION, ET AL., | ) |
| | ) |
| Defendants. | ) |

**MOTION TO DISMISS SECOND AMENDED COMPLAINT AND
BRIEF IN SUPPORT OF DEFENDANT KIM HENRY (FORMER COURT
CLERK OF ROGERS COUNTY) IN HER INDIVIDUAL CAPACITY**

COMES NOW Defendant Kim Henry (former Court Clerk of Rogers County),[1] in her individual capacity, and pursuant to Fed.R.Civ.Proc. 12, hereby files this Renewed Motion to Dismiss Second Amended Complaint and Brief in Support.  As stated below, the Court should dismiss all claims against Defendant Henry in her individual capacity:

**I.    PLAINTIFFS' ALLEGATIONS**

Defendant Henry incorporates herein the summary of Plaintiffs' allegations contained in the separately filed Motion to Dismiss on behalf of the Rogers County Defendants (official capacity).  (Dkt. #226).  As shown therein, Plaintiffs Carly Graff and Melanie Holmes are the only plaintiffs making claims against the Rogers County Defendants.  (Dkt. #212 at ¶¶18, 25).  It is undisputed that Graff pled guilty to a violation of an Oklahoma law concerning her failure to properly use a child passenger restraint system for a child at least 4 years of age but younger than

---

[1] Kim Henry resigned from her position as the Court Clerk of Rogers County effective July 16, 2018.  Since that time, Cathi Edwards has been appointed to serve as Court Clerk of Rogers County.

8 years of age.  At that time, she entered into an agreement to pay the traffic fine in the amount of $255.00 over the course of 90 days.  It is undisputed that she failed to pay the fine.  She also did not request a Rule 8 hearing, nor has she appealed the fine or any alleged failure to provide her with a Rule 8 hearing.  She has not been arrested or incarcerated for her admitted failure to pay the fine and costs associated with her violation of Oklahoma law.  Likewise, even though she is represented by counsel, she has failed to request or pursue a Rule 8 hearing in Rogers County District Court.  Rather, her claim is based on her "fear of arrest" related to her failure to abide by her plea agreement.  (Dkt. #212 at ¶18).

In the Second Amended Complaint, Plaintiff Melanie Holmes has pursued §1983 claims against Defendant Henry based on an arrest in 2008 – over ten (10) years ago – for significant law violations.[2]  Holmes was arrested for (1) unlawful possession of a controlled drug with intent to distribute (in violation of 63 O.S. §2-401(B)(2)); (2) possession of a precursor to manufacture a controlled dangerous substance (in violation of 63 O.S. §2-332); (3) unlawful possession of drug paraphernalia (in violation of 63 O.S. §2-405); and (4) obstructing an officer (in violation of 21 O.S. §540).  By way of a plea agreement, Holmes pled guilty to these crimes, and the Court imposed a sentence, which included imprisonment for ten (10) years and payment of appropriate costs and fines.  She never appealed the terms of her sentence.  She made some payments to satisfy the fines and fee portion of her sentence, but then stopped making payments.  While a bench warrant was issued for her failure to comply with the terms of her sentence, Holmes was never arrested, detained, or imprisoned by any Rogers County Defendants for failure to pay fines, fees or costs.  Since August of 2016, the date of the bench warrant issued for her admitted failure to abide by the terms of her plea agreement, she has not requested a Rule 8 hearing.  This is true even

---

[2] She also has criminal court cases from Creek and Tulsa Counties.  (Dkt. #212 at ¶25).

though she was represented by court-appointed counsel in her criminal matter and is now represented by counsel in the present case.

## II.     PLAINTIFFS' CLAIMS

For purposes of the present motion, Plaintiffs have sued Court Clerk Henry in her *individual capacity*. (Dkt. #212, ¶¶30).  Plaintiffs' claims[3] against Henry are listed as follows:

Count 2:     Fourteenth Amendment (Issuance of Arrest Warrants for Failure to Pay) (Dkt. #212 at ¶319).

Count 3:     Fourth Amendment (Issuance of Arrest Warrants for Failure to Pay) (Dkt. #212 at ¶330).

Count 5:     "State Created Liberty Interests" (Jailing Debtors for Failure to Pay) (Dkt. #212 at ¶346).

Count 7:     Fourteenth Amendment (Subjecting individuals to "Onerous Collection Enforcement Methods") (Dkt. #212 at #361).

## III.    ARGUMENTS AND AUTHORITIES

### A.     DEFENDANT HENRY IS ENTITLED TO ABSOLUTE IMMUNITY

Defendant Henry is entitled to absolute immunity, in her individual capacity, because Plaintiffs' claims against her concern her role in the execution and issuance of Court process.  For the last fifteen years, the Tenth Circuit has held that public officers and court officials are entitled to absolute "quasi-judicial" immunity for their actions in executing facially valid warrants, writs, and other court orders, such as bench warrants.[4]  *See Whitesel v. Sengenberger*, 222 F.3d 861,

---

[3] Plaintiffs do not pursue Counts 1, 4, 6, 8, 9 or 10 against Defendant Kim Henry.

[4] Notably, immunity is justified and defined by the "functions it protects and serves, not by the person to whom it attaches." *See Valdez,* 878 F.2d at 1287.  Consequently, "[i]mmunity which derives from judicial immunity may extend to persons other than a judge where performance of judicial acts or activity as an official aid of the judge is involved." *Henriksen*, 644 F.2d at 855. Thus, absolute judicial immunity has been extended to non-judicial officers where "their duties had an integral relationship with the judicial process." *See Eades v. Sterlinske*, 810 F.2d 723, 726 (7th Cir. 1987); *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000).  Absolute immunity is applicable in this case since Plaintiffs' claims revolve around the issuance of the bench warrants in the first instance, and not with the manner in which they were served. *E.g., Richman v. Sheahan*,

867–70 (10th Cir. 2000) (recognizing that, "[a]lthough absolute immunity generally extends to non-judicial officers performing discretionary judicial acts, some circuits, including our own, have held that those performing ministerial acts at the direction of a judge are also entitled to absolute immunity," and holding that a pretrial service officer, who, acting as a bond commissioner, issued a restraining order, was entitled to qualified immunity); *Turney v. O'Toole*, 898 F.2d 1470, 1472 (10th Cir. 1990) (noting that, "just as judges acting in their judicial capacity are absolutely immune from liability under section 1983, official[s] charged with the duty of executing a facially valid court order enjoy absolute immunity from liability for damages in a suit challenging conduct prescribed by that order," and holding that a state prison superintendent and psychologist were entitled to absolute immunity when they transferred defendant to facility pursuant to a facially valid court order); *Valdez v. City and Cty. of Denver*, 878 F.2d 1285, 1287 (10th Cir. 1989) (holding "an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order"); *Jacobs v. Dujmovic*, 752 F. Supp. 1516, 1524–25 (D. Colo. 1990) (holding officers entitled to absolute immunity for executing writ of restitution); *Dickerson v. Leavitt*, 995 F. Supp. 1242, 1249 (D. Kan. 1998).

Absolute immunity "defeats a suit at the outset ...." *See Imbler v. Pachtman*, 424 U.S. 409, 419 n. 13 (1976). And it is irrelevant to the executing officer's absolute immunity from suit under § 1983 if the court order violates a statute, or is erroneous or even unconstitutional, as long as it is "facially valid." *See Turney v. O'Toole*, 898 F.2d at 1473 ("'Facially valid' does not mean 'lawful.'"). As a policy matter, law enforcement officers must not be required to act as "pseudo-

---

270 F.3d 430, 436 (7th Cir. 2001) (distinguishing between officer's compliance with court process and cases involving "the manner in which that decision is enforced" in cases of excessive force).

appellate courts scrutinizing the orders of judges" because "[t]he public interest demands strict adherence to judicial decrees." *See Valdez*, 878 F.2d at 1289.

### 1. Court Clerk Kim Henry Had No Personal Involvement in any Arrest, Detention or Confinement of Plaintiffs Graff and Holmes

In this case, Plaintiffs' claims are premised on the fact that a bench warrant has been issued for their admitted failure to abide by the terms of their plea agreements.  (Dkt. #212 at ¶18, 158, 206).  However, it is undisputed that said bench warrants were never served on Graff or Holmes, and neither has been incarcerated, arrested or detained for any refusal to pay or failure to honor their plea agreements.  According to the Second Amended Complaint, Plaintiffs' §1983 claims against Kim Henry are premised on her participation in the debt-collection program authorized by the Legislature and Oklahoma Supreme Court.  (Dkt. #212 at ¶37).  Plaintiffs allege that Henry has a "policy and practice of seeking debt-collection arrest warrants without inquiring into the warrant subject's ability to pay" and that Henry makes decisions regarding which cases to send for collection and is involved in assessing a 30% "surcharge" when those cases are sent to collection. (*Id*).  However, Plaintiffs Graff and Holmes have not been served with any such bench warrant, and have not been detained, arrested or confined by Henry.  (*E.g*., Dkt. #212 at ¶¶18, 25, 159, 211-213).  For that reason, Clerk Henry had no personal involvement with Graff and Holmes and is entitled to absolute immunity related to any generic or generalized claims concerning her role in the issuance of court process.[5]

---

[5] "A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability. Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation.  Supervisory liability allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, [or] implements . . . a policy . . . which subjects, or causes to be subjected that plaintiff to the deprivation of any rights. . . secured by the Constitution."  *Brown v. Montoya*, 662 F.3d 1152, 1163–64 (10th Cir. 2011) (internal cites and quotes omitted).

**2.   Court Clerk Kim Henry is Entitled To Absolute Immunity Related to Claims Concerning Issuance of Court Process/Warrants**

Even assuming *arguendo* Court Clerk Henry had any role in the issuance and service of a bench warrant for Holmes and Graff, any and all claims based on such an allegation would be barred by the doctrine of absolute immunity.  Plaintiffs' claims against Henry are related to her efforts to comply with the Oklahoma Supreme Court's directive to participate in the misdemeanor or failure-to-pay warrant collection authorized by 19 O.S. §514.4 *et seq.*  According to the Second Amended Complaint, Plaintiffs complain of Defendant Henry's participation in "seeking debt-collection arrest warrants without inquiring into the warrant subject's ability to pay" as she was "*responsible for collecting fines and fees assessed by the Rogers County Judge*."  (Dkt. #212 at ¶37; ¶322) (emphasis added).  And, yet, these are the very types of claims for which Defendant Henry has absolute immunity, as they are inextricably intertwined with the judicial process.[6]  *See Newton v. Buckley*, 1997 WL 642085, 127 F.3d 1109 (10th Cir. 1997) (unpublished) (finding court clerk entitled to absolute immunity for preparing bench warrant which contained factual errors and was issued using procedural irregularities) ("The circuits are in general agreement that a clerk's issuance of a warrant involves a quasi-judicial act and, therefore, carries with it the protections of absolute immunity."); *Morrison v. Jones*, 607 F.2d 1269, 1273 (9th Cir. 1979) (court clerks have immunity from damages in civil rights suits when they perform tasks that are integral to the judicial process); *Henriksen v. Bentley*, 644 F.2d 852, 855 (10th Cir. 1981) ("[C]lerks of courts have been ruled immune to suit under § 1983 when performing 'quasi-judicial' duties."); *Coleman v. Farnsworth,* 90 Fed.Appx. 313 (10th Cir. 2004) (applying absolute immunity and noting that "[t]o

---

[6] "Oklahoma common law has consistently referred to a court clerk as an officer or arm of the court, whose primary function is ministerial in nature."  *See Petuskey v. Cannon*, 1987 OK 74, ¶18, 742 P.2d 1117, 1121 (finding district court clerk is "judicial personnel" as term used in Rule 2 of Administration of Courts and is an "arm of the court").

hold otherwise would have a chilling effect on the judicial duties and actions of the clerk, who would be readily subject to suit in the course of performing his or her duties in determining whether a summons should issue"). For that reason, claims against Clerk Henry in her individual capacity should be dismissed.

Plaintiffs appear to argue that court clerks can be held individually liable because they have some role, or discretion, in providing information to the Court concerning delinquent accounts and/or some role in referring bench warrants to Aberdeen for collection. (Dkt. #212 at ¶¶322, 332, 347). However, the Court Clerk has been directed to participate in these functions by the Oklahoma Supreme Court, and the Clerk's function is therefore integral to the judicial process and protected by absolute immunity.[7]

### B.   DEFENDANT HENRY IS ENTITLED TO QUALIFIED IMMUNITY

Further, even assuming Defendant Henry is not entitled to absolute immunity, she is entitled to qualified immunity. As a general rule, when government officials are sued for performing discretionary functions, courts recognize the affirmative defense of qualified immunity, which protects "all but the plainly incompetent or those who knowingly violate the law," shielding them from civil liability.[8] *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987),

---

[7] Further, bench warrants are a common method of summoning individuals to Court to explain or justify the breach of their plea agreements. *E.g., U.S. v. Phillips*, 834 F.3d 1176, 1181 (11th Cir. 2016) (non-appearance or non-payment sufficient probable cause to issue bench warrant to ensure defendant appears in court); *U.S. v. Spencer*, 684 F.2d 220 (2nd Cir. 1982) (issuance of bench warrant was judicial finding that defendant failed to appear "in a pending criminal matter" and used to "achieve the court appearance of a defendant . . . for some purpose other than his initial arraignment in the action").

[8] The qualified immunity doctrine is supported by three primary rationales: (1) protecting the public from unwarranted timidity on the part of public officials; (2) ensuring talented candidates are not deterred by the threat of damage suits from entering public service; and (3) reducing the chance that lawsuits will distract from the performance of public duties. *See Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). The doctrine seeks to "balance the protection of constitutional rights and the 'substantial social costs' of imposing liability on public officials. *Id.*

citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Once defendants claim qualified immunity, "the plaintiff initially bears a heavy two-part burden."  *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).  First, Plaintiffs must demonstrate the defendant's actions violated a constitutional right.  Then, Plaintiffs must show that the constitutional rights were clearly established at the time of the conduct.  *Id.*  "[I]f officers of reasonable competence could disagree" about the lawfulness of the challenged conduct, then "[qualified] immunity should be recognized." *Gomes v. Wood*, 451 F.3d 1122, 1136 (10th Cir. 2006).  If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity.  *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citing *Albright*, 51 F.3d at 1535).

Finally, even *assuming* the law was clearly established, the Court then must ask "whether, in spite of the fact that the law was clearly established, 'extraordinary circumstances' – such as reliance on the advice of counsel or on a statute – 'so prevented' the official from knowing that his actions were unconstitutional that he should not be imputed with knowledge of a clearly established right."  *See Rosaka v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003).

### 4.    Qualified Immunity Applies Because there was No Underlying Constitutional Violation

Plaintiffs Graf and Holmes have pursued §1983 claims against Clerk Henry, in her individual capacity, for the alleged violation of their constitutional rights under the Fourth and Fourteenth Amendments.  Plaintiffs' Counts 2, 3, 5 and 7 are pursued against Clerk Henry in her individual capacity:

**Count Two** alleges a violation of the Fourteenth Amendment because the Plaintiffs were "arrested and imprisoned for nonpayment, even though nonpayment was not willful, in violation of the Fourteenth Amendment" and "without any inquiry into ability to pay or consideration of alternatives prior to incarceration."  (Dkt. #212 at ¶323).

**Count Three** is similar to Count Two but is pursued under the Fourth Amendment.  (Dkt. #212 at ¶330).  Plaintiffs allege that the Fourth Amendment prohibits "seeking a warrant" without providing "material information" regarding a debtor's "inability to pay"; seeking, issuing or executing warrants based on "unsworn allegations of nonpayment"; and seeking such warrants without providing "information regarding an essential element of the alleged offense – willful refusal to pay – necessary to establish probable cause."  (*Id.* at ¶331).

**Count Five** re-states the same claims under the Fourteenth Amendment but asserts that *state law* creates a "substantive liberty interest" in being "be free from jailing in the absence of proof that the person has willfully refused to pay her court debt."  (*Id.* at ¶314).  Plaintiffs assert that 22 O.S. § 983(A) and Rule 8.4 of the Rules of the Court of Criminal Appeals create "substantive liberty interests" protected by the Fourteenth Amendment.  (Dkt. #212 at ¶346).

**Count Seven** asserts that subjecting individuals to "onerous collection enforcement methods" violates the Fourteenth Amendment's equal protection clause.  (*Id.* at ¶361).  Plaintiffs argue that individuals who cannot satisfy their criminal sentences (i.e., by paying applicable fines, fees and costs) are treated differently than those that can satisfy their criminal sentences.  (*Id.* at ¶361).  Plaintiffs suggest that the 30% surcharge added to the court debt (when collection activity is turned over to a third party) constitutes unequal treatment under the Fourteenth Amendment. (*Id.*).

Plaintiffs' claims are based on the Supreme Court's decision in *Bearden v. Georgia*, 461 U.S. 660 (1983).  In that case, the Court considered whether the *Fourteenth Amendment* prohibited a State from revoking an indigent defendant's probation for failure to pay a fine and restitution. The Court ultimately determined that, if a state determines a fine or restitution to be the appropriate and adequate penalty for a particular crime, it may not thereafter imprison a person solely because he lacks the resources to pay it.  *Id.* at 673.  However, if the probationer has willfully refused to

pay the fine or restitution when he has the resources to pay or has failed to make sufficient bona fide efforts to seek employment or borrow money to pay, the State is justified in using imprisonment as a sanction to enforce collection. *Id.*

A true analysis of *Bearden* shows that Plaintiffs' constitutional claims in the present case are without merit. First, as stated above, Graff and Holmes have not been "arrested," "imprisoned" or "detained" by Clerk Henry for failure to satisfy their negotiated plea agreements. They certainly have not suffered a search or seizure by Clerk Henry within the meaning of the Fourth Amendment. (Dkt. #212 at ¶18, ¶25, ¶¶155-160; ¶¶200-213). Indeed, Plaintiffs do not identify any facts indicating Clerk Henry was "personally involved" in any constitutional violation with respect to Graff or Holmes.[9] Hence, they have not suffered the type of injury contemplated by *Bearden*, and **Counts 2, 5 and 7** therefore fail to identify a constitutional violation against Clerk Henry.

Second, Plaintiffs' Count **Three** is premised on the right to be "free" from the "issuance" of an "arrest warrant" based on "failure to pay" where such arrest warrant does not consider the defendant's indigency status. However, Clerk Henry did not issue an "arrest warrant" or a "bench warrant" with respect to Graff or Holmes, and cannot be held liable, on any constitutional theory, for such issuance. Rather, the bench warrants were properly issued by the Rogers County District Court for Plaintiffs' admitted failure to comply with terms of their plea agreements.

Third, *Bearden* does not address a state court's mere issuance of "arrest warrants" or "bench warrants," but instead discusses a liberty interest in conditional freedom until such time as the State determines whether the defendants have willfully refused to pay and/or failed to make *bona fide* efforts to pay and/or whether alternative measures of punishment are appropriate. Hence, *Bearden* does not identify clearly established rights related to the *processes* by which a state court

---

[9] Individual liability "under § 1983 must be based on personal involvement in the alleged constitutional violation." *See Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011).

satisfies the principles identified in *Bearden* and, therefore, does not decide whether it is impermissible for a Court to issue a bench warrant for a defendant's failure to satisfy or honor an outstanding plea agreement and/or Time to Pay Agreement.

When a defendant is arrested for violation of Oklahoma law, they are obligated to appear before the district court at a specified time and place. If the defendant pleads guilty or does not contest the charges, the defendant is ultimately sentenced, and fines and costs may be imposed. At that time, an assessment may be undertaken concerning the defendant's ability to pay the specified fines and costs, and (in some cases) a plea agreement is signed by the defendant and the defendant is thereafter obligated to pay the stated fines, fees and costs. In the case of Graf, she was directed to contact the Court Clerk's office with any questions and was notified that a bench warrant can issue for failure to pay according to the agreement. (*Id.*).

If a defendant fails to comply with the terms of his or her sentence, a "bench warrant" can issue for purposes of compelling the defendant to return to Court to explain their failure to abide by the plea agreement. *Cf., Beals v. Daniels,* 2016 WL 7324147, at *3 (W.D. Okla. Oct. 18, 2016) ("A valid bench warrant for a failure to pay fines and/or costs is sufficient probable cause to support Plaintiff's arrest"), *report and recommendation adopted*, 2016 WL 7324085 (W.D. Okla. Dec. 15, 2016); *Davis v. Nebraska Furniture Mart, Inc.*, 567 Fed.Appx. 640 (10th Cir. 2014) (noting district court had granted bench warrant for debtor's failure to make agreed payments and failure to appear). The bench warrant does not represent a violation of *Bearden* but provides a mechanism by which a Court can comply with *Bearden* – a defendant is summoned to Court to explain their failure to abide by their previous plea/pay agreement, and the Court can then determine whether the defendant's actions were willful, whether the defendant has made bona fide efforts to pay and whether alternatives to incarceration exist. *E.g.,* 22 O.S. §966A (recognizing bench warrant can issue for failure to pay court costs, fines, and fees, and clerk shall charge and

collect fee of $5.00); 22 O.S. §967 (identifying form of bench warrant); 19 O.S. §§514.4, 514.5 (noting "failure-to-pay warrants" can issue for failure to pay certain fines and costs).

In other words, the bench warrant is not based upon any finding that a failure to pay was willful such that his costs and fines should be *automatically* converted to a term of imprisonment, but is issued because <u>he or she has failed to comply with the terms of his or her plea agreement or sentence, and for purposes of ensuring that he or she personally appears as part of the Rule 8 review process</u>. *See* Rule 8.4 of Rules of Court of Criminal Appeals. Nothing in *Bearden* prohibits a district court from issuing a bench warrant for purposes of summoning a defendant to Court to assess whether the defendant has willfully failed to comply with the plea agreement and/or with a Time to Pay Agreement, and/or a court sentence. The *mere issuance of a bench warrant* does not violate the principles enunciated in *Bearden*.

Further, a defendant can request a Rule 8 hearing at any time and can appear and explain his or her failure to pay the costs and fines at issue. A defendant cannot, however, ignore his plea agreement and/or court sentence and the available state law procedures for review of that sentence, and then complain that his or her constitutional rights have been violated because of the alleged *absence* of an adequate review process.

Plaintiffs' remaining constitutional claims are without merit. First, Defendants have found no case law making it unconstitutional for a Clerk to have some role in "assisting" the district court to determine whether a bench warrant should issue when a criminal defendant has violated the terms of his or her plea agreement. Second, Defendants have found no case law recognizing a constitutional right to be free from a state's use of a private contractor to assist in collecting court fines and costs,[10] nor any constitutional right to be free of collection costs related to the use of

---

[10] Notably, Aberdeen agreed to use it is best efforts in collecting the underlying court debts, agreed to use means that were "legal, necessary and property," agreed that it "shall not harass or

such a contractor.  Third, Defendants have located no case law recognizing a constitutional right to be free from "onerous collection enforcement methods," particularly where Plaintiffs have failed to identify *any* conduct that was conscious shocking in nature.[11]  The Fourteenth Amendment is "not a font tort law to be superimposed upon whatever systems may already be administered by the States."  *See Paul v. Davis*, 424 U.S. 693, 701 (1976).  Because Plaintiffs have not identified a constitutional violation, all claims against Defendant Henry in her individual capacity should be dismissed.

### 5. Qualified Immunity Applies Because the Right at Issue Was Not Clearly Established

In addition, qualified immunity is appropriate with respect to Defendant Henry because the constitutional rights alleged by Plaintiffs in this particular lawsuit were not clearly established.  A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains."  *See Dodds v. Richardson*, 614 F.3d 1185, 1206 (10th Cir. 2010) (quotation omitted).  The "clearly established" prong ensures government officials are provided fair warning that their conduct is unconstitutional before they are held liable for damages based on that conduct.  *See*

---

exert undue pressure" on debtors, or use methods that would cast discredit upon the Sheriff's Association, the Sheriffs, or the Court Clerks, and would comply with all applicable federal, state and local laws and regulations regarding collection practices and procedures.  (Dkt. 212-1 at p. 5).

[11] In fact, the conduct alleged does not even state a claim for the tort of outrage under Oklahoma state law.  *See Breeden v. League Serv. Corp.*, 1978 OK 27, 575 P.2d 1374 (finding plaintiff failed to state claim for tort of outrage based on collection company's activities in sending letters to home and work addresses, making attempts to contract her, and engaging in one telephone conversation with her).  In the present case, Plaintiff Graff has allegedly received four letters in the mail, but does not allege that she has received any telephone contact with Aberdeen, Inc.  (Dkt. #212 at ¶159).  Plaintiff Holmes likewise complains of similar conduct:  Aberdeen repeatedly attempted to collect the fees owed, and in one instance, even informed her that she "should go directly to court to see a judge instead of dealing with the company."  (Dkt. #212 at ¶204).  Neither Plaintiff has identified any conduct on the part of Clerk Henry that would be considered conscious-shocking.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Thus, government officials must "make reasonable applications of the prevailing law to their own circumstances."  *See Gomes v. Woods*, 451 F.3d 1122, 1134 (10th Cir. 2006) (citations omitted).  Officers are not liable for actions taken that they mistakenly believe are lawful if the mistake is reasonable in light of the applicable law and facts known to them at the time.  *See Axson-Flynn v. Johnson*, 356 F.3d 1277, 1300 (10th Cir. 2004).  The right allegedly violated must be established "not as a 'broad general proposition' . . . but in a 'particularized sense' so that the contours of the right are clear to a reasonable official."  *See Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (internal cites omitted).  Existing precedent "must have placed the statutory or constitutional question beyond debate."  *Id.*

As discussed above, while a defendant has a right to be free *from imprisonment* when he or she lacks funds to pay a fine and, upon failure to pay a fine, a right to a judicial determination regarding ability to pay as discussed in *Bearden*, <u>that right has not been violated in this case</u>.  Rather, Plaintiffs allege that the Rogers County Defendants violated their constitutional rights by the *mere issuance* of a bench warrant related to their failure to abide by their plea agreements.  Plaintiffs were <u>not incarcerated, detained or arrested for mere failure to pay</u>.  No case law exists which indicates a Court may not issue a bench warrant requiring a defendant to appear and address the substance of the plea agreement (and his or her failure to abide by the same) related to the outstanding fines and costs,[12] and certainly no case law indicates that (1) it is unconstitutional for a court clerk to have some role in the issuance of such bench warrants, or that (2) a bench warrant

---

[12] To the contrary, case law from the Tenth Circuit reflects that bench warrants are often issued for failure to abide by a plea or payment agreement.  *E.g., Hackett v. Artesia Police Dep't,* 379 Fed.Appx. 789 (10th Cir. 2010) (bench warrant issued for failure to pay fines); *Collins v. City of Clovis*, 2015 WL 13662642, at *3 (D.N.M. Apr. 8, 2015) ("The bench warrants were issued on June 28, 2011, for charges of contempt of court as a result of Plaintiff's failure to pay fines associated with the City of Clovis.").

is necessarily rendered constitutionally invalid when unsupported with affidavits, oaths or affirmations, or that (3) a court clerk is constitutionally barred from referring individual cases to a debt collection service or that (4) it is unconstitutional for a court clerk to assess a legislatively-authorized fee when said referral takes place.  For those reasons, Defendant Henry is entitled to qualified immunity.

> **6.    Qualified Immunity Applies Because Defendant Henry Reasonably Relied upon Duly-Enacted Statutes and an Order from the Oklahoma Supreme Court**

In addition, and relatedly, Defendant Henry is entitled to qualified immunity by virtue of her reliance on Oklahoma's statutory provisions governing the collection of court costs, fines and fees, and the Oklahoma Supreme Court's directive in that regard.  A government official is entitled to qualified immunity when he or she relies on a duly-enacted statute or ordinance.  *See Grossman v. City of Portland*, 33 F.3d 1200, 1209 (10th Cir. 1994).  "[A]n officer who reasonably relies on the legislature's determination that a statute is constitutional should be shielded from personal liability."  *Id.*  The only exception to this rule is where the "statute authorizes official conduct which is patently violative of fundamental constitutional rights."  *Id.*; *Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) ("In considering the 'objective legal reasonableness' of [a government official's] actions, one relevant factor is whether the defendant relied on a state statute, regulation, or official policy that explicitly sanctioned the conduct in question.").  The existence of a statute or ordinance authorizing certain conduct is a factor that supports the conclusion that a reasonable official would find that conduct constitutional, as officers are entitled to rely on the assumption that the legislature has concluded that the regulation or policy is a valid and constitutional exercise of authority.  *See Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994).

In the present case, the Clerk reasonably relied on legislative provisions which govern the collection of fines, cost and fees, and a related Order from the Oklahoma Supreme Court.  As

stated above, the Supreme Court *directed* the district courts of Oklahoma to participate in the misdemeanor and failure-to-pay warrant collection program authorized by 19 O.S. §514.4, *et seq*. (Dkt. # 226-6).  Those statutory provisions authorized the county sheriffs to enter into a contract for purposes of collecting on outstanding misdemeanor or failure-to-pay warrants.   19 O.S. §514.4(A), (B).  The statute authorized the sheriffs to assign their rights to contract to the state Sheriff's Association and said contract "shall be administered" by the Sheriff's Association.   19 O.S. §514.4(E).  When a misdemeanor or failure-to-pay warrant is referred to a contractor for collection, said warrant "shall" include a 30% administrative cost, which is added to the scheduled fine and/or sum due.  19 O.S. §514.5(A).  This cost "shall not be waived or reduced except by order of the court."  *Id.*  The statute directs that the 30% administrative cost shall be distributed to the Sheriff's association for administration of the contract, and that a portion of the fee "may be used" to compensate the contractor.  19 O.S. §514.5(B).

In the present case, Plaintiffs pursue constitutional claims against Defendant Henry based on her role in the collection of fines pursuant to the misdemeanor and failure-to-pay warrant collection program.  (Dkt. #212 at p. 89-97).  Plaintiffs complain that the court clerks are involved in the issuance of such bench warrants and the bench warrants eventually result in certain defendants being detained, arrested and jailed; and that court clerks improperly allow Aberdeen, Inc., to undertake "onerous collection enforcement methods," and improperly allow a 30% administrative cost to be added to the cost judgment.  (*Id.*).  As shown above, the collection process was specifically addressed by the Oklahoma legislature, and a government official may reasonably conclude that the legislature enacted a collection policy that is valid and constitutional.  It would be fundamentally unfair to subject Defendant Henry, in their individual capacity, to the risk of monetary damages for *complying* with Oklahoma law regarding collection efforts, the use of third-

16

party contractors, and the assessment and collection of fines and costs.  For all of the above-stated reasons, Defendant Henry is entitled to qualified immunity.

### 7. PLAINTIFFS' CLAIMS ARE MOOT BY VIRTUE OF OKLAHOMA'S RECENT ENACTMENT OF HOUSE BILL NO. 2259

House Bill No. 2259 requires every county to participate in the state's new cost compliance program, which takes effect November 1, 2023, and completely overhauls the judicial procedures at issue in this case. (See House Bill No. 2259, http://www.oklegislature.gov/BillInfo.aspx?Bill=hb2259&Session=2300). Because Plaintiffs' claims for prospective injunctive relief are based on judicial procedures that date back to 2017, the new legislation renders Plaintiffs' claims moot. Kim Henry adopts the State Judges' arguments in support of her Motion to Dismiss with respect to the effect of this new legislation on the pending action.

### CONCLUSION

Plaintiffs have pursued claims against Defendant Kim Henry in her "individual capacity." As shown above, those claims are without merit.  First, Defendant Henry is entitled to *absolute immunity*, as Plaintiffs' claims necessarily implicate her role in the judicial process (i.e., related to the issuance of bench warrants and referral to Aberdeen).  Second, Defendant is entitled to *qualified immunity* as (1) her conduct did not violate any constitutional right of Graff or Holmes, (as they have not been served, detained or incarcerated in violation of *Bearden*); (2) Plaintiffs do not have a clearly-established right to be free from the mere "issuance" of a bench warrant for failure to abide by a valid plea and/or pay agreement and/or court sentence; and (3) Defendant reasonably relied upon statutory law (and a directive from the Oklahoma Supreme Court) regarding her participation in the misdemeanor and failure-to-pay warrant collection program, which is authorized by 19 O.S. §514.4, *et seq*.

WHEREFORE, premises considered, Defendant Kim Henry, former Rogers County Court Clerk, (in her individual capacity), respectfully requests the Court dismiss any and all claims against her with prejudice.

Respectfully submitted,

   /s/ Scott B. Wood
Scott B. Wood
WOOD, PUHL & WOOD, PLLC
4037 E. 49th Street
Tulsa, Oklahoma 74135
(918) 607-5946
(918) 742-0808
Attorneys for Defendant Kim Henry

## CERTIFICATE OF MAILING

I hereby certify that on the 7th day of July 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Daniel E Smolen
danielsmolen@ssrok.com
Donald E. Smolen
donaldsmolen@ssrok.com
Robert M. Blakemore
bobblakemore@ssrok.com
Seth T. Wayne

Mary B. McCord
mbm7@georgetown.edu
Robert D. Friedman
rdf34@georgetown.edu
Elizabeth Rossi
elizabeth@civilrightscorps.org
Jill Elizabeth Webb
Jill.Webb@gmail.com
*Attorneys for Plaintiffs*

John R Woodard III
john@csmlawgroup.com
Robert Earl Applegate

applegate@csmlawgroup.com
Harry A. Parrish
parrish@csmlawgroup.com
*Attorney for Aberdeen Enterprizes II, Inc.,*
*Jim D. Shofner and Rob Shofner*

Jeffrey C. Hendrickson
jhendrickson@piercecouch.com
Robert Lamar Betts
rbetts@piercecouch.com
April D. Kelso
akelso@piercecouch.com
Robert S. Lafferandre
rlafferandre@piercecouch.com
Randall J. Wood
rwood@piercecouch.com
*Attorneys for 52 Sheriff Defendants*
*Excluding the Sheriffs of Oklahoma, Rogers*
*and Tulsa Counties*

Rodney J. Heggy
rod.heggy@oklahomacounty.org
Aaron Etherington
aaron.etherington@oklahomacounty.org
*Attorney for PD Taylor, Oklahoma County Sheriff*

Chris M. Warzecha
cwarzecha@cwlaw.com
Isaac Robertson Ellis
iellis@cwlaw.com
Melodie Freeman-Burney
mburney@cwlaw.com
Robert Dale James
rob.james@cwlaw.com
*Attorneys for Oklahoma Sheriffs' Association*

Stefanie E. Lawson
stefanie.lawson@oag.ok.gov
*Attorneys for Judge Dawn Moody, Judge Doug M. Drummond,*
*Judge Williams J. Musseman, Jr. and Judge Terrell S. Crosson*

Joel L. Wohlgemuth
jlw@nwcjlaw.com
Jo Lynn Jeter
jlj@nwcjlaw.com
Emily Brooks Kosmider
ebk@nwcjlaw.com

Douglas A. Wilson
douglas.wilson@tulsacounty.org
*Attorneys for Don Newberry, Tulsa County Court Clerk, Vic Regalado, Tulsa County Sheriff, Darlene Bailey, Tulsa County Cost Administrator, Board of County Commissioners for Tulsa County*

Thomas A Le Blanc,
tleblanc@bestsharp.com
Todd Wagner,
twagner@bestsharp.com
*Attorneys for Defendants, Scott Walton, Sheriff of Rogers County, in his official and individual capacity; Board of County Commissioners of Rogers County, Oklahoma.*

/s/ Scott Wood