**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CARLY GRAFF, et al., on behalf of themselves and all other similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 17-cv-00606-TCK-JFJ |
| ABERDEEN ENTERPRIZES II, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT ABERDEEN ENTERPRIZES' SECOND MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT**

**Coffey, Senger & Woodard, PLLC**
John R. Woodard, III, OBA# 9853
Jennifer S, Struble, OBA# 19949
4725 East 91st Street, Suite 100
Tulsa, OK 74137
P:  9189-292-8787
F:  918-292- 8788
John@cswlawgroup.com
JStruble@cswlawgroup.com
*Attorneys for Defendant Aberdeen Enterprizes II, Inc.*

i

# TABLE OF CONTENTS

BRIEF IN SUPPORT                                                                          1

ARGUMENT AND AUTHORITY                                                          3

PROPOSITION I – PLAINTIFFS HAVE FAILED TO STATE CLAIM                4
PURSUANT TO RICO

PROPOSITION II – PLAINTIFFS HAVE FAILED TO STATE A CLAIM           10
PURSUANT TO 42 U.S.C. § 1983

PROPOSITION III – THE COURT SHOULD DECLINE TO EXERCISE            23
SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE CLAIMS
AND PLAINTIFFS HAVE, NEVERTHELESS, FAILED TO STATE SUCH
CLAIMS

CONCLUSION                                                                                24

# TABLE OF AUTHORITY

**<u>Cases</u>**  <u>Page</u>

*Amanatullah v. Colorado Bd. of Med. Examiners*
187 F.3d 1160, 1163 (10th Cir. 1999)....................................................................... 3

*Andrews v. Dir., IRS*
2010 U.S. Dist. LEXIS 73961, *7 (D. Colo. April 20, 2010) .................................. 7

*Bache Halsey Stuart Shields, Inc. v. Tracy Collins Bank & Tr. Co.*
558 F. Supp. 1042 (D. Utah 1983).......................................................................4,8,9

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ....................................... 3

*Benavidez v. Gunnell*
722 F. 2d 615, 618 (10th Cir. 1983) ……………………………….………………13

*Berg v. First State Ins. Co.*
915 F. 2d 460, 464 (9th Cir. 1990); *Ivar*, at 1235  .................................................. 6

*Blessing v. Freestone*
520 U.S. 329, 340, 117 S. Ct. 1353, 1359, 137 L. Ed. 2d 569 (1997)…………………………...19

*Board of County Commissioners of Bryant County, Oklahoma v. Brown*
520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) ………………..………………14,16

*Boyle v. United States*
556 U.S. 938, 945, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009) ..……………………….......…..7

*Bryant-Bruce v. Vanderbilt University, Inc.*
974 F. Supp. 1127, 1142 (M.D. Tenn. 1997) ……………………………….…….….………14

*Burton v. Wilmington Parking Auth.*
365 U.S. 715, 725, 81 S. Ct. 856, 861-61, 6 L. Ed. 2d 45 (1961) ……………………....…15

*Carey v. Continental Airlines, Inc.*
823 F. 2d 1402 (10th Cir. 1987) ……………………………………..……………………...…13

*Chapman v. Chase Manhattan Mortg. Corp.*
1938 OK 437, 82 P. 2d 994, 995………………………………...……………………....…9

*Chaset v. Fleer/Skybox Int'l*

300 F. 3d 1083, 1086-87 (9th Cir. 2002) .................................................................................. 6

*City of Oklahoma City v. Tuttle*
471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) ......................................... 14

*Compare Snell v. Tunnell*
920 F. 2d 673, 698-99 (10th Cir. 1990) ................................................................. 18

*Creech v. Fed. Land Bank*
647 F. Supp. 1097, 1100-01 (D. Colo. 1986) ..................................................... 8, 12

*Crutchfield v. Countrywide Home Loans*
579 F. Supp. 423, 425-26 (S.D. N.Y. 1983) ........................................................... 3

*Davis v. Union Nat. Bank*
46 F. 3d 24, 26 (7th Cir. 1994) ............................................................................ 13

*Duba v. McIntyre*
501 F. 2d 590, 591 (8th Cir. 1974) ..................................................................... 15

*Edgington v. R.G. Dickinson & Co.*
1992 WL 223822, at *9 (D. Kan. Aug. 7, 1992) ……………………………………………7

*Flagg Bros., Inc. v. Brooks*
 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978).........................................11,12

*Gallagher v. Neil Young Freedom Concert* ....................................................... 11
 49 F. 3d 1442, 1448 (10th Cir. 1995)

*Gallegos v. City and County of Denver*
984 F. 2d 358, 362 (10th Cir. 1993) ...................................................................14

*Ginsberg v. Henley Car & Truck Leasing, Inc.*
189 F. 3d 268, 271-72 (2nd Cir. 1999 ................................................................. 13

*Gitterman v. Vitoulis*
579 F. Supp. 423, 425-26 (S.D. N.Y. 1983) ........................................................... 5

*Glover v. Gartman*
899 F. Supp. 2d 1115, 1136 (D. N.M. 2012) ........................................................ 20

*Gold v. Local 7 United Food and Commercial Workers Union*
159 F. 3d 1307, 1310 (10th Cir. 1998) ............................................................... 23

*Green v. Post*
574 F. 3d 1294, 1301 (10th Cir. 2009)...................................................... 17

*Harvell v. Goodyear Tire & Rubber Co.*
2006 OK 24, ¶ 18, 164 P. 3d 1028, 1035 ……………………………………………………………..24

*Heck v. Humphrey*
512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) ...................................................... 3

*Henry v. Farmer City State Bank*
808 F. 2d 1228, 1238 (7th Cir. 1986) ...................................................... 15

*Herrera v. Santa Fe Pub. Schools*
41 F. Supp. 3d 1027, 1081 n. 123 (D. N.M. 2014) ...................................................... 19

*Howard v. Webb*
570 P. 2d 42, 48, 1977 Okla. LEXIS 708 (Okla. October 4, 1977) ...................................................... 17

*Iqbal*, 556 U.S. at 676 ...................................................... 14

*Ivar v. Elk River Partners, Ltd, Liab. Co.*
705 F. Supp. 2d 1220 (D. Colo. 2010) ...................................................... 6

*Jackson v. Metropolitan Edison Co*
898 F. 2d 1443, 1448 (10th Cir. 1990) ...................................................... 11

*Jackson*
419 U.S. at 352, 95 S. Ct. at 454) ……………………………………………………………………12

*Landmark Land Co. v. Buchanan*
874 F. 2d 717, 722 (10th Cir. 1988) ...................................................... 21

*Lee v. Estes Park*
820 F. 2d 1112, 1115 (10th Cir. 1987) ...................................................... 13

*Marlin Oil Corp. v. Barby Energy Corp.*
2002 OK CIV APP 92, ¶ 11, 55 P. 3d 446 ...................................................... 23

*McClellan v. City of Nowata*
2015 WL 75074, at *14 (N.D. Okla. Jan. 6, 2015)...................................................... 20

*Monell v. New York City Dept. of Social Services*
436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) ...................................................... 14

v

*Monroe v. Pape*
365 U.S. 167, 172, 81 S. Ct. 473, 476, 5 L. Ed. 2d 492 (1961) .................................. 11

*Moore v. Guesno*
485 F. Supp. 2d 300,  (W.D. N.Y. 2007) ................................................................. 4

*Moose Lodge No. 107 v. Irvis*
407 U.S. 163, 92 S. Ct. 1965, 32 L. Ed. 2d 627 (1972) ......................................... 11

*Muskrat v. Deer Creek Pub. Schools*
715 F. 3d 775, 786 (10th Cir. 2013) ..................................................................... 20

*National Collegiate Athletic Ass'n v. Tarkanian*
488 U.S. 179, 109 S. Ct. 454, 102 L. Ed. 2d 469 (1988) ........................................ 11

*Oscar v. University Students Coop. Ass'n.*
965 F. 2d 783, 785 (9th Cir. 1992) …………………………………..…….….……...6

*Onyx Properties LLC v. Board of County Commissioners*
838 F. 3d 1039, 1043 (10th Cir. 2016…………………………………………………16

*Pembaur v. City of Cincinnati*
475 U.S. 469, 106 S. Ct. 2018, 89 L. Ed. 2d 452 (1986) ........................................ 14

*Peng v. Mei Chin Penghu*
335 F. 3d 970 (9th Cir. 2003)………………………….. ...………………………………..13

*Peoples Electric Cooperative v. Western Farmers Electric Cooperative*
746 F. Supp. 2d 1202, (W.D. Okla. 2010)..…… …………………………………………3

*Redding v. St. Eward*
241 F. 3d 530, (6th Cir. 2001) ............................................................................. 13

*Ridge at Red Hawk, L.L.C. v. Schneider*
 493 F. 3d 1174, (10th Cir. 2007)..…… …………………………………….…………....3

*Rooker-Feldman Doctrine*
389 F.3d 1144, 1147 (10th Cir. 2004) …………………………………………………3

*Snell v. Tunnell*
920 F. 2d 673 (10th Cir. 1990)………………………………………………...18

*Sooner Products Co. v. McBride*
708 F. 2d 510 (10th Cir. 1983) ........................................................................... 12

vi

*Spielman v. Hildebrand*
873 F. 2d 1377, 1386 (10th Cir. 1989……………………………………………………….19

*State v. Ballard*
1994 OK CR 6, P. 2d 738 .................................................................................... 22

*Twombly*
 550 U.S. at 555, 127 S. Ct. at 1965...............................................................3,4

*United States v. Boulahanis*
677 F. 2d 586, 590 (7th Cir. 1982) …………………………………………………………10

*United States v. Lightfoot*
 506 F. 2d 238, (D.C. Cir. 1974) ........................................................................ 9

*Valdez v. City and County of Denver*
878 F. 2d 1285, 1289 (10th Cir. 1989) ............................................................ 15

*Waucaush v. United States*
 380 F. 3d 251, (6th Cir. 2004) ........................................................................ 5

*Winters v. Bd. of County Commissioners*
4 F. 3d 848, 856 (10th Cir. 1993 .................................................................... 17

*Younger* Abstention Doctrine as explained in *Amanatullah v. Colorado Bd. of Med. Examiners*
187 F.3d 1160, 1163 (10th Cir. 1999)…………………………………………………….3

*Zagorski v. McAdam*
2014 WL 2982669, at *4 (W.D. Okla. July 1, 2014 ........................................... 24

## Statutes

18 U.S.C. § 1951.............................................................................................. 8

18 U.S.C. § 1952.............................................................................................. 8,9

18 U.S.C. §§ 1961 ........................................................................................... 8

18 U.S.C. § 1962.............................................................................................. 4,6,7

18 U.S.C. §§ 891 ...................................................................................................... 10

18 U.S.C. §§ 894 ...................................................................................................... 8,9

28 U.S.C. § 1367 (c) ................................................................................................. 23

42 U.S.C. § 1983 ................................................................................................ 10,22,24

Okla. Stat. tit. 19, § 514.4 (2003) ........................................................................ 1,2,7,12,13

Okla. Stat. tit. 21, § 1481 ......................................................................................... 8,9

Okla. Stat. tit. 21, § 1482 ........................................................................................... 8

Okla. Stat. tit. 22, § 983 (A) .................................................................................. 9,17,19

Okla. Stat. tit. 28, § 101 ...................................................................................... 21,22,23

## Rules

Rule 8.6, *Rules of the Oklahoma Court of Criminal Appeals*………………………………17

Rule 8.4, *Rules of the Oklahoma Court of Criminal Appeals*………………………………19

Rule VIII, *Rules of the Court of Criminal Appeals*…………………………………………...22

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CARLY GRAFF, et al., on behalf of themselves and all other similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 17-cv-00606-TCK-JFJ |
| ABERDEEN ENTERPRIZES II, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT ABERDEEN ENTERPRIZES' SECOND MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT**

Defendant Aberdeen Enterprizes II, Inc. ("Aberdeen") again moves the Court to dismiss Plaintiffs' Second Amended Complaint [Doc. 212] pursuant to Fed. R. Civ. P. 12 (b) (6). As described more fully in Aberdeen's Brief in Support below, Plaintiffs have failed to state any claim upon which relief can be granted against Aberdeen.

**BRIEF IN SUPPORT**

Plaintiffs are seven individuals, allegedly representative of a class, that, at some point, became subject to criminal sentences which included a component for payment of fees, costs and/or fines. The Defendants are a collection of entities with differing involvement along a spectrum from the point of sentencing to events occasioned by the Plaintiffs' failure to comply with the financial obligations of their sentences. Aberdeen's involvement in this spectrum relates solely to an Oklahoma statute which allows Oklahoma county sheriffs to enter into a "private contract" for the purposes of locating and notifying persons of outstanding failure-to-pay warrants and permits the private contractor to accept payment of the outstanding amounts and remit the same to the court clerk. *See* Okla. Stat. tit. 19, § 514.4 (A), (B) and (E); Second

Amended Complaint [Doc. 212], Exhibit 1, Agreement for Collection ("Agreement"), at p. 1.[1] Aberdeen does not seek, issue, execute or recall warrants. Rather, Aberdeen simply uses its best efforts to collect amounts already owed which have been identified by county officials and notes whether a person has or has not paid amounts due.

The Plaintiffs allege concern over the possibility of arrest based upon their failure (or anticipated failure) to pay the fees, costs and/or fines component of their criminal sentences. Plaintiffs appear to propose one of two scenarios: (1) a hearing should have been, but was not, conducted to determine whether they have the financial means to pay fees, costs and/or fines connected with their criminal sentences or (2) their circumstances have changed such that a hearing regarding their inability to pay should be conducted. Neither of these scenarios, though, may be properly resolved in this forum or as against Aberdeen.

Aberdeen's actions pursuant to the Agreement do not infringe upon any federal or state rights or otherwise which would support Plaintiffs' cause of action. When an individual fails to pay fees, costs and/or fines connected to their criminal sentence, a county/court official may seek a warrant for nonpayment. *See* Second Amended Complaint [Doc. 212], at ¶ 5, p. 6. The judges sign the warrants, which are executed by the respective sheriffs. *See id.*, at ¶¶ 5, 63 and 64, pp. 6 and 27. Aberdeen's involvement occurs after nonpayment and after warrants are issued and relates simply to efforts to collect outstanding amounts through, for example, payment plans. *See id.*, at ¶¶ 5 and 50, p. 6 and 24. The thirty percent (30%) fee added to any outstanding amount owed is set by Oklahoma statute, not Aberdeen. *See id.*, at ¶ 5, p. 6; Okla. Stat. tit. 19, § 514.5 (A). A person's ability/inability to pay the outstanding fees, costs and/or fines is an issue left to

---

[1] During the 2023 Session the Oklahoma Legislature authored and passed revisions and additions to the statutes at Okla. Stat. tit. 19, §§ 514.4 and 514.5. This was signed into law and will go into effect as of November 1, 2023. The new statutory language provides, in no uncertain terms, authorization for the courts to take the exact action under fire by Plaintiff's here.

the judges, not Aberdeen. *See* Class Action Complaint [Doc. 2], at ¶¶ 41-43, pp. 24-25; Okla. Ct. Crim. App. R. 8.1 - 8.4. In short, Aberdeen's actual involvement in the overall spectrum is limited and, even under the allegations presented, falls short of rising to the level of unconstitutional conduct represented by Plaintiffs.

Previously this Court dismissed the claims against Aberdeen based upon certain arguments based in case law under *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994); the *Rooker-Feldman Doctrine* explained at *Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1147 (10th Cir. 2004); and the *Younger* Abstention Doctrine as explained in *Amanatullah v. Colorado Bd. of Med. Examiners*, 187 F.3d 1160, 1163 (10th Cir. 1999). Neither this Court nor the Tenth Circuit reached the arguments made below and Aberdeen herein reasserts those arguments as they form an independent and fully sufficient basis for dismissing Plaintiffs' claims against Aberdeen.

## ARGUMENT AND AUTHORITY

In reviewing the sufficiency of a complaint to state a claim, the Court determines whether a plaintiff has presented "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). Plaintiffs must nudge their claims across the line from conceivable to plausible and do more than raise a metaphysical possibility that "*some* plaintiff could prove *some* set of facts." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F. 3d 1174, 1177 (10th Cir. 2007). *See also Peoples Electric Cooperative v. Western Farmers Electric Cooperative*, 746 F. Supp. 2d 1202, 1206 (W.D. Okla. 2010). While detailed factual allegations may not be necessary, a plaintiff remains obligated to state more than mere "labels and conclusions" which succeed only in providing "a formulaic

recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965 (citations omitted).

## PROPOSITION I

### <u>PLAINTIFFS HAVE FAILED TO STATE A CLAIM PURSUANT TO RICO</u>

In Count One, Plaintiffs present a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiffs contend Aberdeen, Jim Shofner, Rob Shofner, the Oklahoma Sheriffs' Association ("OSA") and the named Sheriffs "constitute an association-in-fact" for purposes of RICO "with the common purpose of maximizing the collection of court debts by Aberdeen, Inc. without consideration of ability to pay or other required legal process." Second Amended Complaint [Doc. 212], at ¶ 262, p. 75. The racketeering activity alleged relates generally to "extortion" under certain federal and state statutes.

Plaintiffs' RICO claim wholly fails to state a plausible claim for relief against Aberdeen. As the court in *Bache Halsey Stuart Shields, Inc. v. Tracy Collins Bank & Tr. Co.*, 558 F. Supp. 1042 (D. Utah 1983), noted, in order to control "overenthusiastic use of RICO, the courts need sufficient facts in the pleadings to enable them to distinguish between well-founded and frivolous claims." *Bache*, at 1046. Plaintiffs have failed to present sufficient allegations to support any of the requisite elements of a civil RICO claim.

A RICO claim requires a predicate showing that the alleged activity affects <u>interstate commerce</u>. *See* 18 U.S.C. § 1962; *Moore v. Guesno*, 485 F. Supp. 2d 300, 309 (W.D. N.Y. 2007). The general proposition that this matter involves the collection of money and movement of profits does not supply sufficient proof of the "enterprise" affecting interstate commerce. In rejecting a similarly tenuous connection, the Sixth Circuit commented:

> Indeed, most individuals and organizations cannot help but buy
> products that traveled in interstate commerce, or occasionally talk

> to colleagues in, or travel to, other states for some reason or another. If we were to label these occasional acts of interstate commerce as "substantial," federal authority under the Commerce Clause would be virtually limitless.

*Waucaush v. United States*, 380 F. 3d 251, 258 (6th Cir. 2004). *See also Gitterman v. Vitoulis*, 579 F. Supp. 423, 425-26 (S.D. N.Y. 1983) (rejecting contention that intrastate calls made on a network which includes both intrastate and interstate phone lines sufficiently implicate interstate commerce for purposes of RICO). Additionally, Plaintiffs' representation regarding plaintiffs "who live outside of Oklahoma" contradicts their allegations in the Complaint and Amended Complaint. *See* Complaint [Doc. 2], at p. 8; Second Amended Complaint [Doc. 212], at ¶¶ 18-24, pp. 11-14. In their motion for class certification, Plaintiffs claim that the management of the proposed class would not be difficult as the class members would be "limited in geographic scope (unlike a nationwide, multi-district class containing millions of members)." Plaintiffs' Motion to Certify Class and Memorandum in Support [Doc. 78], p. 22. It is disingenuous for Plaintiffs to propose the existence of claimants outside of Oklahoma in order to support their civil RICO claim, but also deny the existence of claimants outside of the Court's geographical reach in order to support class certification.

The circumstances presented do not support the existence of an "enterprise" affecting interstate commerce. Aberdeen, the OSA and the numerous county sheriffs involved in this matter are Oklahoma entities/citizens. *See* Second Amended Complaint [Doc. 212], at ¶¶ 25 - 38, pp. 14 - 20. Plaintiffs are all alleged to be Oklahoma residents subject to criminal sentences entered by Oklahoma courts who allege fear of being arrested by Oklahoma law enforcement officials for their failure to pay fees, costs and/or fines connected with their criminal sentences. The potential implication of interstate commerce in this matter is simply too far attenuated to survive scrutiny.

Even assuming, _arguendo_, Plaintiffs could establish sufficient connection to interstate commerce, their civil RICO claim, nevertheless, fails. Section 1964 (c) of Title 18 permits a civil remedy by "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." For such purposes, a plaintiff "must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest." _Chaset v. Fleer/Skybox Int'l_, 300 F. 3d 1083, 1086-87 (9th Cir. 2002). As the court in _Chaset_ explained, "Congress enacted RICO 'to combat organized crime, not to provide a federal cause of action and treble damages' for personal injuries." _Id._, at 1087 (quoting _Oscar v. University Students Coop. Ass'n_, 965 F. 2d 783, 785 (9th Cir. 1992)).

Plaintiffs, by their own admissions, have suffered no concrete injury to their business or property. Plaintiffs Graff, Frazier, Meachum and Killman contend only that they fear being arrested for failing to pay the fees, costs and/or fines component of their criminal sentences. _See_ Second Amended Complaint [Doc. 212], at ¶¶ 18, 19, 21 and 22, pp. 11-13. Plaintiffs Smith and Choate are actually remitting payments for their outstanding fees, costs and/or fines under a payment arrangement with Aberdeen. _See id._, at ¶¶ 20 and 23, pp. 12 and 13-14. Plaintiff Wilkins is currently incarcerated in prison and contends that, once he is released, he will be unable to pay his outstanding amounts. _See id._, at ¶ 24 p. 14. Alleged injuries based upon nothing more than fear, emotional distress or speculation simply do not rise to the level of injury for purposes of RICO. _See Berg v. First State Ins. Co._, 915 F. 2d 460, 464 (9th Cir. 1990); _Ivar_, at 1235. Any purported financial losses by Plaintiffs Smith and Choate based upon their payments to Aberdeen relate strictly to amounts imposed by way of their criminal sentences and/or a thirty percent (30%) imposed _not by any of the Defendants_ but Oklahoma statute.

Even further assuming, *arguendo*, Plaintiffs could satisfy the interstate commerce and "business or property" injury requirements, they have failed to sufficiently allege the existence of an "enterprise" and "pattern of racketeering activity." *See* 18 U.S.C. § 1962 (c) and (d); *Andrews v. Dir., IRS, Ogden Utah,* 2010 WL 2510578, at *2 (D. Colo. Apr. 20, 2010). For purposes of the "enterprise" requirement, the "association-in-fact" must have a structure that includes "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprises' purpose." *Boyle v. United States*, 556 U.S. 938, 945, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009).

Plaintiffs' reference to a common purpose "of maximizing the collection of court debts by Aberdeen" is misguided as none of the persons/entities involved in the alleged "enterprise" has any involvement in the assessment of fees, costs and/or fines imposed in Plaintiffs' criminal sentences or the amounts to be assessed by way of failure-to-pay warrant. *See* Second Amended Complaint [Doc. 212], at ¶¶ 1 and 262, pp. 4 n. 3 and 75. Additionally, the 30% fee is a ***statutory*** administrative fee assessed for a person's failure to pay outstanding fees, costs and/or fines connected to their sentence. *See id.*, at ¶ 5, p. 6; Okla. Stat. tit. 19, § 514.5 (A). None of these entities issues arrests warrants for a failure to pay. *See id.*, at ¶¶ 5 and 63, pp. 6 and 27. Furthermore, Aberdeen's entire purpose and profit-making potential focuses on keeping persons such as Plaintiffs ***out of jail***. Plaintiffs' allegation of an "enterprise" trying to maximize collection of outstanding fees, costs and/or fines by Aberdeen does not square with the factual allegations presented in their Amended Complaint.[2]

---

[2] It further does not appear that Plaintiffs' "enterprise" extends beyond Aberdeen itself, which cannot support this requisite element. *See Edgington v. R.G. Dickinson & Co.*, 1992 WL 223822, at *9 (D. Kan. Aug. 7, 1992) (the purported "enterprise" must be distinct from the named defendant).

Plaintiffs' civil RICO claim also fails for lack of a "pattern of racketeering activity." A "pattern" requires "a showing that a party has committed at least two 'indictable' acts. *Bache Halsey*, at 1045. *See also* 18 U.S.C. § 1961 (5); *Beth Israel Medical Center v. Smith*, 576 F. Supp. 1061, 1065 (S.D. N.Y. 1983). "Racketeering activity" is defined in § 1961 (1) to include, among others, "extortion" and "any act which is indictable" under the Hobbs Act and Travel Act, as well as pursuant to 18 U.S.C. § 894 which was added by way of the Amended Complaint.

In terms of "pattern," Plaintiffs have only implicated one alleged activity for purposes of the Aberdeen "enterprise" - i.e. the collection of outstanding fees, costs and/or fines. A "pattern," though, "requires multiple criminal episodes or schemes, *not simply multiple predicate acts to accomplish a **single scheme**.*" *Creech v. Fed. Land Bank*, 647 F. Supp. 1097, 1100-01 (D. Colo. 1986) (emphasis added). Attempting to collect outstanding fees, costs and/or fines assessed in connection with Plaintiffs' criminal sentences and any warrants issued by state courts for their failure to pay the same, at best, relates only to such a single scheme.

The "racketeering activity" component also fails in this matter. Whether based upon an alleged violation of the Hobbs Act (18 U.S.C. § 1951), Travel Act (18 U.S.C. § 1952), Oklahoma criminal statutes relating to "extortion" (Okla. Stat. tit. 21, §§ 1481 and 1482) or 18 U.S.C. § 894, the proposed racketeering activity must be alleged "with enough specificity to show there is probable cause the crimes were committed." *Bache Halsey*, at 1045.

The Hobbs Act is a criminal statute which requires an element of unlawful taking of property. *See* 18 U.S.C. § 1951; *Creech*, at 1099. Aberdeen was not robbing or extorting money from Plaintiffs wrongfully, but merely performing its obligations pursuant to the Agreement for Collection which have been statutorily authorized. It is unavailing for Plaintiffs to charge Aberdeen with wrongfully taking money through the alleged threat of arrest when Plaintiffs do

not dispute such amount is owed or that, under Oklahoma law, the possibility of an arrest warrant being issue is, in fact, one of the lawful repercussions of a failure to pay the same. Whether Plaintiffs are unable or unwilling to pay the amounts is a consideration separate from whether the amounts were, in fact, imposed.

The Travel Act, even by its very name, requires an element of travel for purposes of "unlawful activity." *See* 18 U.S.C. § 1952. Plaintiffs have not implicated "interstate travel to further the purposes of concerted illegal activity." *United States v. Lightfoot*, 506 F. 2d 238, 240 (D.C. Cir. 1974).

As for the Oklahoma statutory provisions, Plaintiffs' charge of "extortion" is not well-founded or based on probable cause. *See Bache Halsey*, at 1045. "Extortion" is defined as "the obtaining of property from another with his consent, induced by a wrongful use of force or fear, or under color of official right." Okla. Stat. tit. 21, § 1481. Efforts by Aberdeen to collect a legitimate debt cannot be characterized as "extortion" as it has not been (and cannot be) shown that Aberdeen's efforts were wrongful. *See e.g. Chapman v. Chase Manhattan Mortg. Corp.*, 1938 OK 437, 82 P. 2d 994, 995 (discussing bank's use of necessary steps to collect legitimate obligation). Plaintiffs' references to alleged "threats" of arrest by Aberdeen employees do not support implication of "wrongful" or "unlawful" conduct as the risk of arrest is a statutory repercussion available for a person's failure to comply with the monetary component of a criminal sentence.[3] *See* Okla. Stat. tit. 22, § 983.

The final "racketeering activity" proposed by Plaintiffs relates to 18 U.S.C. § 894. This section prohibits the use of "extortionate means" to either (1) collect or attempt to collect any "extension of credit" or (2) punish a person for nonrepayment of such an extension. For purposes

---

[3] Any challenge to the failure of the state court judge to conduct a hearing as to ability/inability to pay in accordance with this statute has no bearing as to Aberdeen.

of § 894, a "creditor" is someone that makes an "extension of credit." *See* 18 U.S.C. § 891 (2). Additionally, the section defines "extortionate extension of credit" to include "any extension of credit with respect to which it is the understanding of the creditor and the debtor at the time it is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means." *Id.*, at § 891 (6). None of the allegations presented can be construed as supporting that Aberdeen was a "creditor" or extended credit to Plaintiffs and engaged in "extortionate means" to collect the same, especially considering that the amounts owed are not "debts" of Aberdeen, but amounts due to the state.[4]

In sum, based upon the complete absence of any involvement of interstate commerce, lack of "business or property" injury and failure of an "enterprise" and "pattern of racketeering activity," Plaintiffs have wholly failed to state a civil RICO claim.

## PROPOSITION II

## PLAINTIFFS HAVE FAILED TO STATE A CLAIM PURSUANT TO 42 U.S.C. § 1983

In Counts Two, Three, Five, Six and Seven, Plaintiffs present allegations of constitutional violations pursuant to 42 U.S.C. § 1983 relating to Aberdeen's activities pursuant to the Agreement for Collection.[5] Plaintiffs' § 1983 claims fail regardless of the precise substantive federal right at issue as Aberdeen is not a state actor or otherwise acting under "color of law." Nevertheless, Plaintiffs have failed to identify any policy or custom on behalf of Aberdeen that violated their constitutional rights.

---

[4] Moreover, § 894 has no application merely because someone defaults on a debt. *See United States v. Boulahanis*, 677 F. 2d 586, 590 (7th Cir. 1982).

[5] Count Four of Plaintiffs' Amended Complaint does not present allegations against Aberdeen.

*Color of Law*

The only proper defendants in a § 1983 cause of action are "those wrongdoers 'who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.'"[6] *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191, 109 S. Ct. 454, 462, 102 L. Ed. 2d 469 (1988) (quoting *Monroe v. Pape*, 365 U.S. 167, 172, 81 S. Ct. 473, 476, 5 L. Ed. 2d 492 (1961)). In addition to showing that they have been "deprived of a right 'secured by the Constitution and the laws' of the United States," Plaintiffs must show that Aberdeen deprived them of this right acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978).

In determining whether a private entity has acted under color of law, four tests have been employed by the courts. The first test asks "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the later may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S. Ct. 449, 453, 42 L. Ed. 2d 477 (1974). To satisfy this test, evidence must be presented that the State exerted some degree of coercion over the private entity. *See Gallagher v. Neil Young Freedom Concert*, 49 F. 3d 1442, 1448 (10th Cir. 1995). The second test inquires as to "whether the state has 'so far insinuated itself into a position of interdependence' with the private party ... that there is a 'symbiotic relationship between them.'" *Id.*, at 1447 (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725, 81 S. Ct. 856, 861-61, 6 L. Ed. 2d 45 (1961); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175, 92 S. Ct. 1965, 1972-73, 32 L. Ed. 2d 627 (1972)). The third test requires concerted action between the State and the private entity. *Id.,* at

---

[6] Section 1983 does not create substantive rights but is merely a procedural vehicle to remedy deprivations of existing federal rights. *See Gallegos v. City and County of Denver*, 984 F. 2d 358, 362 (10th Cir. 1993).

1453-54. In this respect, specific factual allegations and not mere conclusions must be presented to support that the private party willfully participates in a joint activity with the state. *Id.*, at 1447 (citing *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 152, 90 S. Ct. 1598, 1605-06, 26 L. Ed. 2d 142 (1970)). *See also Sooner Products Co. v. McBride*, 708 F. 2d 510, 512 (10th Cir. 1983). The final test asks whether the private entity "exercises 'powers traditionally exclusively reserved to the State.'" *Id.*, at 1447 (quoting *Jackson*, 419 U.S. at 352, 95 S. Ct. at 454).

None of these tests support a finding that Aberdeen may be deemed a state actor for purposes of § 1983. Throughout the initial pleadings, Plaintiffs identify Aberdeen as a private corporation. The Agreement for Collection specifically rejects any characterization of Aberdeen as other than a mere independent contractor and dispels application of the first, second and third color of law tests above. *See* Second Amended Complaint [Doc. 212], Exhibit 1, Agreement for Collection, at ¶ 17, p. 14. *See also* Okla. Stat. tit. 19, § 514.4 (referencing such arrangement as a "private contract"). The very nature of this relationship, even as characterized by Plaintiffs, is the OSA's retention of a private corporation to collect fees, penalties and assessments relating to outstanding failure-to-pay warrants. No state actor is exerting a degree of coercion over Aberdeen, insinuating itself into a position of interdependence with Aberdeen or performing action in concert with Aberdeen with respect to such collections. To the contrary, the purpose of the Agreement for Collection (and Oklahoma statute authorizing the same), is to divest the government from these collection activities in favor of a private corporation.

Any argument in support of the fourth test is unavailing as the collection of unpaid fees and costs may not be characterized as a function exclusively reserved to the state. The test in this respect is not whether the function is traditionally performed by a government official, but whether the function is one "exclusively reserved to the State." *Flagg Bros.,* 436 U.S. at 158.

The United States Supreme Court has recognized that "very few" functions have been "exclusively reserved." *Id.* The Court has provided examples of such exclusive functions to include the election of public officials and performance of the municipal functions of a town. *Id.*, 436 U.S. at 158-59. In circumstances analogous to the present, the Court concluded, *inter alia*, that "the settlement of disputes between debtors and creditors is not traditionally an exclusive public function." *Id.*, at 161.

Aberdeen's sole involvement relates to attempts to collect unpaid fees, penalties and assessments connected to failure-to-pay warrants - circumstances created prior to Aberdeen's involvement. Aberdeen does not and cannot issue or recall warrants. *See* Okla. Stat. tit. 19, § 514.4 (D) ("The court shall release the outstanding misdemeanor or failure-to-pay warrant upon receipt of all sums due…"); Okla. Stat. tit. 22, § 42 (magistrate to issue warrants). The lack of an "exclusive public function" is further demonstrated by the Legislature's express authorization of private contract to perform collection attempts for failure-to-pay warrants.

Given the allegations presented, it is further important to note that Plaintiffs cannot establish the requisite state action based upon any information provided by Aberdeen to county officials (i.e. a person's failure to pay any arrangement with Aberdeen). The mere summoning of law enforcement officers; furnishing of information, even *false* information, to law enforcement officers or reporting of a crime fail to implicate the requisite state action. *See Peng v. Mei Chin Penghu*, 335 F. 3d 970 (9th Cir. 2003); *Redding v. St. Eward*, 241 F. 3d 530, 533 (6th Cir. 2001); *Ginsberg v. Henley Car & Truck Leasing, Inc.*, 189 F. 3d 268, 271-72 (2nd Cir. 1999); *Davis v. Union Nat. Bank*, 46 F. 3d 24, 26 (7th Cir. 1994); *Carey v. Continental Airlines, Inc.*, 823 F. 2d 1402 (10th Cir. 1987); *Lee v. Estes Park*, 820 F. 2d 1112, 1115 (10th Cir. 1987); *Benavidez v.*

13

*Gunnell*, 722 F. 2d 615, 618 (10th Cir. 1983); *Bryant-Bruce v. Vanderbilt University, Inc.*, 974 F. Supp. 1127, 1142 (M.D. Tenn. 1997).

### Policy or Custom

The courts have long recognized that, under § 1983, an entity may not be held liable pursuant to *respondeat superior* or vicarious liability. *See Iqbal*, 556 U.S. at 676; *Board of County Commissioners of Bryant County, Oklahoma v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Rather, for entities found acting under color of state law, § 1983 requires allegations of an official policy or custom which caused a constitutional violation. *See Monell*, 436 U.S. at 691. The policy or custom requirement was intended to distinguish between alleged wrongful acts of employees of the entity and acts of the entity. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 106 S. Ct. 2018, 89 L. Ed. 2d 452 (1986).

Assuming, *arguendo*, Aberdeen could be found to have acted under color of state law, it is, nevertheless, entitled to dismissal of Plaintiffs' § 1983 claim based upon the lack of a plausible claim relating to any unconstitutional policy or custom of Aberdeen. In the Amended Complaint, Plaintiffs identify alleged threats and extortion by Aberdeen. Aberdeen's policies or customs of contacting persons such as Plaintiffs for the purposes of collecting a debt and alleged advising of the possibility of arrest for failure to pay are not unconstitutional. To the extent any communications between Aberdeen employees and Plaintiffs (or others like Plaintiffs) exceeded the Agreement for Collection or other permissible debt-collection efforts, such would amount to individual conduct to which Aberdeen may not be held vicariously liable under § 1983. Plaintiffs' task is to identify an unconstitutional policy or custom of Aberdeen and not simply

present allegations relating to wrongdoing on behalf of an individual employee or Oklahoma's failure-to-pay warrant system in general.

Finally, before addressing the specific constitutional violations alleged by Plaintiffs, it is necessary to discuss quasi-judicial immunity for Aberdeen. Assuming, arguendo, Aberdeen may be found a sufficient state actor for purposes of § 1983, it was, at best, only performing a purely ministerial act of locating and attempting to collect orders issued from a court. *See Duba v. McIntyre*, 501 F. 2d 590, 591 (8th Cir. 1974). *See also Henry v. Farmer City State Bank*, 808 F. 2d 1228, 1238 (7th Cir. 1986). As the Tenth Circuit has provided:

> To force officials performing ministerial acts intimately related to the judicial process to answer in court every time a litigant believes the judge acted improperly is unacceptable. **Officials must not be called upon to answer for the legality of decisions which they are powerless to control.**

*Valdez v. City and County of Denver*, 878 F. 2d 1285, 1289 (10th Cir. 1989) (Emphasis added). The court continued: "Officials such as the defendants must not be required to act as pseudo-appellate courts scrutinizing the orders of judges." *Id.* (citing *Henry*, at 1239).

### Count Two - Fourteenth Amendment

The first constitutional transgression described in Plaintiffs' Amended Complaint relates to the Defendants' "policy and practice" of seeking, issuing and executing "debt-collection arrest warrants solely for nonpayment." Second Amended Complaint [Doc. 212], at ¶ 303, p. 82. Plaintiffs propose these warrants are not based upon any inquiry as to ability to pay. Plaintiffs also take issue with the administrative fees affixed as a result of their failure to pay the fees, costs and/or fines components of their criminal sentences.

A hearing to determine ability to pay and the imposition of administrative fees in connection with failure-to-pay warrants are both creatures of Oklahoma statutory laws. More

15

importantly for purposes of this proposition, no policy or custom of Aberdeen has been identified which infringes upon any connected due process protections. The lone reference to specific action on behalf of Aberdeen proposes it has a "practice of seeking, issuing, and executing warrants." *Id.* As Plaintiffs recognize in their Amended Complaint, warrants are issued by judges and executed by law enforcement officers. Any alleged practice of "seeking" a warrant by Aberdeen (which it denies) cannot be declared as unconstitutional, particularly given the fact that no Plaintiff denies the essence of the information provided: the failure to pay. To accept Plaintiffs' position would be to penalize Aberdeen for providing truthful information to those that are entrusted to issue and execute warrants under Oklahoma law.

The Due Process Clause of the Fourteenth Amendment includes protection against the state depriving a person of their life, liberty or property without some form of process ("procedural due process") and arbitrary acts which deprive a person of their life, liberty or property ("substantive due process"). *See Onyx Properties LLC v. Board of County Commissioners*, 838 F. 3d 1039, 1043 (10th Cir. 2016). Regardless as to which approach Count Two concerns (as the generic allegations presented by Plaintiffs do not provide guidance), Plaintiffs have failed to state a claim for any policy or custom of Aberdeen which denies them due process.[7] Specifically, no plausible procedural due process claim against Aberdeen exists because, by statute, the determination as to ability/inability to pay is entrusted to the state trial court and the issuance and execution of warrants are entrusted to the state judges and law enforcement officers, respectively. *See also Onyx*, at p. 1044 (a violation of state procedural requirements "does not itself deny federal constitutional due process"). In other words, any

---

[7] This is especially true with respect to Plaintiffs Smith and Choate as these individuals allege they are making payments to Aberdeen for their outstanding fees, costs and/or fines and their claims only speculate as to what may happen if they stop making payments.

notice and opportunity for hearing arguably due to Plaintiffs is not precluded by a policy or custom of Aberdeen. *See Winters v. Bd. of County Commissioners*, 4 F. 3d 848, 856 (10th Cir. 1993). Similarly, no plausible substantive due process claim against Aberdeen exists because Plaintiffs have failed to present any allegations of conscience-shocking conduct on behalf of Aberdeen. *See Green v. Post*, 574 F. 3d 1294, 1301 (10th Cir. 2009).

Given the conclusory allegations presented in the Amended Complaint, it cannot be overemphasized that *arrest* for an outstanding failure-to-pay warrant is not unconstitutional. *See Howard v. Webb*, 570 P.2d 42, 48, 1977 OK 68 (supplemental opinion on rehearing). *See also* Okla. Stat. tit. 22, § 983 (A). Plaintiffs' complaint relates to the alleged absence of a hearing to determine ability to pay. Whether the Plaintiffs have the ability to pay the fees, costs and/or fines connected with their sentence is a process entrusted to the trial court imposing the sentence. To the extent any change of financial condition occurs and a subsequent hearing is necessary, such, again, remains entrusted to the judiciary. *See* Rule 8.6, *Rules of the Oklahoma Court of Criminal Appeals*.

### Count Three - Fourth Amendment

Plaintiffs' third count proposes a violation of their Fourth Amendment rights in connection with the seeking, issuance and execution of warrants for nonpayment. Plaintiffs claim the information provided in support of the warrants is "unsworn" and lacks indication of a "willful refusal to pay." Second Amended Complaint [Doc. 212], at ¶ 307, p. 83. Plaintiffs do not provide any allegation that Aberdeen actually requests the judge issue an arrest warrant. Rather, Plaintiffs only appear to propose that Aberdeen begins the warrant process by noting that Plaintiffs have failed to comply with an arrangement they entered for the payment of their outstanding fees, costs and/or fines. In the Amended Complaint, Plaintiffs contend that it is the

"[c]ourt clerks" that actually seek the arrest warrants. *See* Second Amended Complaint [Doc. 212], at ¶ 49, p. 23. In other words, Aberdeen does nothing but supply information of nonpayment that another entity may then use in seeking a warrant. In many instances, the "supplying" of this information is merely a notation being entered into a computer system. *See id.*, Exhibit 1, Agreement for Collection, at ¶ 2, pp. 3-7.

Even assuming a private company's supplying of information to those statutorily entrusted to issue and execute arrest warrants could implicate the Fourth Amendment, Plaintiffs' attempt to craft a Fourth Amendment violation from the same fails. The insurmountable hurdle for Plaintiffs concerns the complete absence of any specific allegation of a deliberate policy of Aberdeen to provide ***false*** information which provided the basis for the issuance and execution of an arrest warrant. *Compare Snell v. Tunnell*, 920 F. 2d 673, 698-99 (10th Cir. 1990). Not one Plaintiff asserts that information indicating they failed to comply with a payment arrangement with Aberdeen was in error, let alone that a policy or custom of Aberdeen exists which resulted in the same. In reading the Amended Complaint beyond Plaintiffs' use of adjectives employed to characterize conduct as improper, Plaintiffs' appear to be actually faulting Aberdeen for providing <u>accurate</u> information.

As mentioned throughout herein, Aberdeen neither issues nor executes arrest warrants for a failure to pay. Only four of the named Plaintiffs (Graff, Frazier, Meachum and Killman) allege outstanding warrants for their arrest based upon their failure to pay fees, costs and/or fines connected to the criminal sentences. The warrants with respect to Plaintiffs Graff and Frazier are alleged to have been issued **prior to Aberdeen's involvement**. *See* Second Amended Complaint [Doc. 212], at ¶¶ 18 and 19, pp. 11-12. Similarly, Plaintiff Meachum does not present any allegation of Aberdeen's involvement in the warrant which led to her arrest. *See id.*, at ¶ 21, p.

18

13. Plaintiff Killman appears to contend she was arrested twice after Aberdeen became involved, but she fails to allege that such warrants were issued based upon false information supplied by Aberdeen or, more importantly, through a policy or custom of Aberdeen which deliberately provides false information for the issuance and execution of arrest warrants. *See id.*, at ¶ 22, p. 13.

### Count Five - State Created Liberty Interests

In Count Five, Plaintiffs propose their Fourteenth Amendment due process rights have been transgressed based upon the alleged failure of Defendants to provide notice or a hearing as to their ability to pay before seeking, issuing and executing arrest warrants. To the extent Count Five amounts to nothing more than an attempt by Plaintiffs to seek redress of a violation of any state right under Okla. Stat. tit. 22, § 983 (A) and/or Rule 8.4 of the Rules for the Oklahoma Court of Criminal Appeals under the guise of a § 1983 claim, such attempt must fail. *See Blessing v. Freestone,* 520 U.S. 329, 340, 117 S. Ct. 1353, 1359, 137 L. Ed. 2d 569 (1997); *Spielman v. Hildebrand*, 873 F. 2d 1377, 1386 (10th Cir. 1989); *Herrera v. Santa Fe Pub. Schools*, 41 F. Supp. 3d 1027, 1081 n. 123 (D. N.M. 2014) (§ 1983 only serves to redress violations of federal law). Otherwise, Plaintiffs' allegations in Count Five are merely duplicative of their claims in Counts Two and Three and, as described above, Aberdeen does not issue or execute warrants but, at most, only provides information that a person has failed to comply with a payment arrangement - information no Plaintiff has challenged as false with respect to their specific circumstances. Moreover, with respect to the determination as to ability to pay, Oklahoma statutes and rules of the Court of Criminal Appeals set forth the process for the same and empower state trial courts with such determination. Aberdeen's very involvement is preceded and necessitated by a prior determination as to the imposition of fees, costs and/or fines

in a criminal sentence and a judge's execution of an arrest warrant for the failure to pay the same. *See* Second Amended Complaint [Doc. 212], Exhibit 1, Agreement for Collection, at p. 1. Plaintiffs can present no authority to support that Aberdeen is constitutionally required to determine ability to pay before merely advising county/court officials that a person has failed to make payment on their outstanding warrant.

***Count Six - Due Process***

In Count Six, Plaintiffs, again, seek redress of alleged due process violations and propose Aberdeen has an "unconstitutional financial bias." Second Amended Complaint [Doc. 212], at ¶ 320, p. 86. This bias, Plaintiffs claim, results in the exploitation of authority over Plaintiffs to extract "as much money as possible without regard to their ability to pay." *Id.*, at ¶ 321, p. 86. Such contention lacks any allegation of conduct on behalf of Aberdeen which could be characterized as "conscience-shocking."[8] *See Muskrat v. Deer Creek Pub. Schools*, 715 F. 3d 775, 786 (10th Cir. 2013). Whether conduct "shocks the conscience" is an objective test that requires something more than negligence and beyond even tort liability which might warrant punitive damages. *See McClellan v. City of Nowata,* 2015 WL 75074, at *14 (N.D. Okla. Jan. 6, 2015); *Glover v. Gartman*, 899 F. Supp. 2d 1115, 1136 (D. N.M. 2012). Aberdeen's alleged providing of information to court/county officials regarding a person's failure to comply with a payment arrangement for outstanding fees, costs and/or fines and alleged "threats" of arrest for a person's failure to make payments do not rise to the level of "conscience-shocking" conduct. Both of such activities relate to accurate information - i.e. the person failed to comply with a payment arrangement and the failure to comply with a payment arrangement can result in arrest.

---

[8] Given the complete lack of sufficient allegations, Aberdeen is left to presume Count Six presents a substantive due process claim such as initially discussed above in connection with Count Two of the Amended Complaint.

The fact that Aberdeen, *as a private for profit business*, receives compensation for its services is not an egregious element sufficient to support "unconstitutional financial bias."

### Count Seven - Equal Protection

In Count Seven, Plaintiffs propose that the use and threat of arrest warrants and the statutory 30% administrative fee for failure-to-pay warrants denies poor criminal defendants equal protection as compared to wealthy criminal defendants. Such an equal protection challenge requires Plaintiffs establish that they were treated differently than "***similarly situated***" persons and that such treatment "lacked a rational basis." *Landmark Land Co. v. Buchanan*, 874 F. 2d 717, 722 (10th Cir. 1988) (emphasis added). Persons with limited or no financial means to pay fees, costs and/or fines connected to their criminal sentences are simply not "similarly situated" to persons with such means. The Oklahoma Court of Criminal Appeals has rejected this very type of equal protection challenge:

> Concerning the other equal protection argument, that imposition of the assessment unfairly discriminates against indigent defendants, this Court is able, as we stated in *Hunter,* 787 P.2d at 865, to interpret the statute [Okla. Stat. tit. 28, § 101] in a way that eliminates this discrimination. The legislature enacted section 101 of title 28 which provides, among other things that "all costs in the prosecution of all criminal actions" shall be adjudged a part of the penalty of the offense which a defendant is obligated to pay. The legislature defined the language "all costs in the prosecution of all criminal actions" to include "court clerk's costs and fees authorized by statute," 28 O.S.1981 § 101, and we believe the assessment complained of here falls into the category of "fees authorized by statute."
>
> The Legislature also inserted a provision in the statute providing that if a defendant "is without means" to pay the fine, fees or costs, these fines, fees or costs shall be entered on the judgment docket, putting the court in the same position as any other judgment creditor. *Id.* It is this provision -- providing for penalties for a willful refusal to pay, but providing for alternate remedies if a defendant is unable to pay -- that enables the assessment to withstand a constitutional challenge by an indigent on equal

> protection grounds. If a defendant cannot pay the assessment because he is without means to do so, he is not thrown into prison or otherwise punished. Section 101 of title 28, read in connection with the assessment, places the defendant in the same position as any other judgment debtor. In addition, Rule VIII, Rules of the Court of Criminal Appeals, provide the procedure to be followed if a person is unable to pay. *See also* 22 O.S.1991, § 983. He is therefore not singled out for unequal treatment based on his indigency.

*State v. Ballard*, 1994 OK CR 6, ¶¶ 6-7, 868 P. 2d 738, 741.

It is also important to address Plaintiffs' unsupported charge that Aberdeen "forces them to pay arbitrary and unachievable amounts to have a warrant recalled." Second Amended Complaint [Doc. 212], at ¶ 323, p. 87. This claim defies Plaintiffs' own allegations elsewhere in the Amended Complaint, which recognize that Aberdeen does not set the amounts connected with Plaintiffs' criminal sentences. and it is not Aberdeen that forces them to comply with their criminal sentences, but the trial court **judgments** *themselves*. *See* Second Amended Complaint [Doc. 212], at ¶ 1, p. 4 and n. 3. *See also id.*, at ¶ 9, p. 8 (recognizing the events which occur well prior to Aberdeen's involvement). The only amount added to a person's criminal sentence under the scenario posed would be the 30% administrative fee, ***set forth by Oklahoma statute***. *See id.*, at ¶ 5, p. 6. At best, Aberdeen tries to assist persons with outstanding failure-to-pay warrants by accepting ***amounts less than that already due per their criminal sentence*** in order to help them avoid arrest. *See id.*, at ¶ 50, p. 24.

In sum, Plaintiffs' § 1983 cause of action against Aberdeen for alleged constitutional violations wholly fails to state a plausible claim for relief. Plaintiffs cannot identify any policy or custom of Aberdeen which deprived them of any protections under the Fourth or Fourteenth Amendments. Plaintiffs' conclusory allegations of constitutional violations regarding Aberdeen's limited involvement in the spectrum will not suffice.

**PROPOSITION III**

**THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
JURISDICTION OVER PLAINTIFFS' STATE CLAIMS AND
<u>PLAINTIFFS HAVE, NEVERTHELESS, FAILED TO STATE SUCH CLAIMS</u>**

As Plaintiffs have failed to state plausible claims for relief with respect to all of their federal claims, the Court may decline to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367 (c); *Gold v. Local 7 United Food and Commercial Workers Union*, 159 F. 3d 1307, 1310 (10th Cir. 1998). In the event jurisdiction is extended, Plaintiffs have failed to state plausible claims for relief in these respects.

*Count Eight - Abuse of Process*

In Count Eight, Plaintiffs claim Aberdeen has "misuse[d] arrest warrants to further its unlawful scheme and for the improper purpose of extracting revenue from the impoverished plaintiffs." Second Amended Complaint [Doc. 212], at ¶ 325, p. 87. It is fatal to Plaintiffs' abuse of process claim that Aberdeen's actions are <u>not</u> improper and <u>not</u> primarily motivated by an improper purpose. *See Marlin Oil Corp. v. Barby Energy Corp.*, 2002 OK CIV APP 92, ¶ 11, 55 P. 3d 446. Other than Plaintiffs' allegation that Aberdeen supplies information to the <u>court clerk</u> who then seeks to have a warrant issued by the <u>judge</u> which is executed by <u>law enforcement officers</u>, it is unclear how Aberdeen allegedly "misuses" a warrant. As Plaintiffs specifically recognize, Aberdeen has no involvement in the issuance and execution of arrest warrants. Aberdeen's only connection to warrants relates to their entire purpose of *trying to help persons satisfy outstanding failure-to-pay warrants*. Plaintiffs' mere incorporation of the terms "misuses," "unlawful" and "improper" to describe legitimate and valid business activity does not otherwise transform the circumstances to legally culpable conduct.

### *Count Nine - "Civil Extortion"*

Plaintiffs' claim for "civil extortion" is unquestionably untenable. Oklahoma does not recognize a civil cause of action for extortion. *See Zagorski v. McAdam,* 2014 WL 2982669, at *4 (W.D. Okla. July 1, 2014).

### *Count Ten - Unjust Enrichment*

The final attempt to propose liability on behalf of Aberdeen in the Amended Complaint alleges Aberdeen has received money from certain Plaintiffs through "unjust methods." Second Amended Complaint [Doc. 212], at ¶ 333, p. 89. Aberdeen does not set the amount of fees, costs and/or fines which may be imposed in Plaintiffs' criminal sentences. The 30% administrative fee referenced by Plaintiffs is an amount ***set by Oklahoma statute***. The financial burdens associated with Plaintiffs' criminal sentences and failure (or potential *future* failure) to pay the same are not a product of Aberdeen's conduct. Aberdeen's receipt of the same is <u>not</u> inequitable. *See Harvell v. Goodyear Tire & Rubber Co.*, 2006 OK 24, ¶ 18, 164 P. 3d 1028, 1035. The amounts are remitted to the court clerk who, in turn, pays Aberdeen. *See* Second Amended Complaint [Doc. 212], Exhibit 1, Agreement for Collection, at ¶ 2 (e). Those Plaintiffs that are making payments on their outstanding warrants are not paying Aberdeen a fee but making payments on their outstanding fees, costs and/or fines imposed in their criminal sentences *through Aberdeen*.

### <u>CONCLUSION</u>

As set forth herein, Plaintiffs' have wholly failed to state a plausible claim for relief against Aberdeen pursuant to RICO, § 1983 and state law, even in light of the decision of the Tenth Circuit. The arguments above have not been addressed by this Court or by the appellate Court and provide sufficient basis for a full dismissal of the claims against Aberdeen. As such, Aberdeen requests the Court dismiss Plaintiffs' cause of action against it in its entirety.

Respectfully submitted,

/s/ John R. Woodard, III
John R. Woodard, III, OBA No. 9853
Jennifer L. Struble, OBA No. 19949
Coffey Senger & Woodard, PLLC
4725 East 91st Street, Suite 100
Tulsa, OK 74137
918-292-8787
918-292-8788 – Fax
john@cswlawgroup.com
jstruble@cswlawgroup.com
*Attorneys for Defendant Aberdeen Enterprizes II, Inc., Jim D. Shofner, and Rob Shofner*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of June, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

All Known Counsel of Record

/s/ John R. Woodard, III
John R. Woodard, III

25