## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CARLY GRAFF, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No. 4:17-CV-606-TCK-JFJ** |
| | ) | |
| **ABERDEEN ENTERPRIZES II, INC., et al.;** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## DEFENDANT OKLAHOMA SHERIFFS' ASSOCIATION'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT[1]

---

Respectfully submitted by:

**CONNER & WINTERS, LLP**

Robert Dale James, OBA #16667
Melodie Freeman-Burney, OBA #12667
Isaac Robertson Ellis, OBA #30072
4100 First Place Tower
15 East 5th Street
Tulsa, OK 74103
Tel: 918.586.5711
rob.james@cwlaw.com
mburney@cwlaw.com
iellis@cwlaw.com

**Attorneys for Oklahoma Sheriffs' Association**

---

[1] This motion and supporting brief are filed pursuant to the Court's May 24, 2023 Minute Order (Doc. 380).

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

The Agreement Between the OSA and Aberdeen ........................................................2

Factual Allegations Relating to the OSA....................................................................3

Summary of the Argument...........................................................................................5

ARGUMENT AND AUTHORITIES ...........................................................................6

I. PLAINTIFFS FAIL TO STATE A FEDERAL CLAIM AGAINST THE OSA. .......................6
      A.    Rule 12(b)(6) Requires Facts to Support a Claim and Forbids Conclusory
          Pleading.........................................................................................................6
      B.    Plaintiffs' Count One RICO Claims Against the OSA Should be
          Dismissed.......................................................................................................7
          1.    Plaintiffs Have Failed to State a § 1962(c) Claim against the
              OSA...................................................................................................7
              a.    Plaintiffs Have Not Alleged the OSA Participated in a
                  RICO Enterprise....................................................................8
              b.    Plaintiffs Have Not Alleged the OSA Engaged in Any
                    Predicate Acts. ....................................................................11
          2.    Plaintiffs Have Failed to State a § 1962(d) Conspiracy Claim
              Against the OSA. ..............................................................................12
      C.    Plaintiffs' Constitutional Claims Against the OSA Should be Dismissed. ...........13
          1.    The OSA is Not a State Actor Subject to § 1983.....................................13
          2.    Plaintiffs Have Also Failed to State a Direct Claim Against the
              OSA...................................................................................................15
               a.    Count Two – 14th Amendment – Procedural Due Process ...........16
              b.    Count Three – 4th Amendment.......................................................17
               c.    Count Five – State Created Liberty Interest – 14th
                  Amendment......................................................................................17
               d.    Count Six – 14th Amendment –Due Process...............................17
               e.    Count Seven – 14th Amendment – Equal Protection ...................18

II. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
      JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS. ...................................18

III. PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED....................................19
      A.    Plaintiffs have Failed to State a Claim against the OSA for Abuse of
          Process. .........................................................................................................19
      B.    Plaintiffs have Failed to State a Claim Against the OSA for "Duress.".............19
      C.    Plaintiffs have Failed to State a Claim Against the OSA for Unjust
          Enrichment....................................................................................................20

IV. THE INJUNCTIVE AND DECLARATORY RELIEF SOUGHT BY
       PLAINTIFFS IS MOOT AS A RESULT OF INTERVENING CHANGE IN
       STATUTE....................................................................................................................21

CONCLUSION.............................................................................................................................25

**TABLE OF AUTHORITIES**

**Cases**

*Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 2016 OK 55, 374 P.3d 820 .................................. 20
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................. 7, 17
*BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089 (10th Cir. 1999)................... 10
*Baumer v. Pachl*, 8 F.3d 1341 (9th Cir. 1993).......................................................... 10, 11
*Beck v. Prupis*, 529 U.S. 494 (2000).............................................................................. 7
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 7, 17
*Callaway v. Parkwood Vill., L.L.C.*, 2000 OK 24, 1 P.3d 1003 .......................................... 19
*Catawba Riverkeeper Found. v. N.C. Dep't of Transp.*, 843 F.3d 583 (4th Cir. 2016) .............. 21
*Childs v. Unified Life Ins. Co.*, 781 F. Supp. 2d 1240 (N.D. Okla. 2011).................................. 20
*Dahlgren v. First Nat. Bank of Holdrege*, 533 F.3d 681 (8th Cir. 2008) ..................................... 11
*Daingerfield Island Protective Soc. v. Lujan*, 920 F.2d 32, 37 (D.C. Cir. 1990) ..................... 21
*Dopp v. Loring*, 54 F. App'x 296 (10th Cir. 2002) ......................................................... 8
*Doug Grant, Inc. v. Greate Bay Casino Corp.*, 3 F. Supp. 2d 518 (D.N.J. 1998)........................ 9
*Dubbs v. Head Start, Inc.*, 336 F.3d 1194 (10th Cir. 2003).................................................... 15, 16
*French Energy, Inc. v. Alexander*, 1991 OK 106, 818 P.2d 1234 ........................................... 20
*Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442 (10th Cir. 1995).............................. 14
*Goren v. New Vision Int'l, Inc.*, 156 F.3d 721 (7th Cir. 1998)............................................... 10, 11
*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974) .................................................. 13
*Jordan v. Sosa*, 654 F.3d 1012 (10th Cir. 2011).......................................................... 21, 22
*Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012) ............................................... 7
*Luft v. Evers*, 963 F.3d 665 (7th Cir. 2020) .................................................................. 21
*Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978).................................. 15
*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514
   (S.D.N.Y. 2001) .................................................................................................... 9
*O'Shea v. Littleton*, 414 U.S. 488 (1974) ...................................................................... 22
*Perino v. Mercury Fin. Co. of Illinois*, 912 F. Supp. 313 (N.D. Ill. 1995)................................. 9
*Ray v. Judicial Correction Servs., Inc.*, 270 F. Supp. 3d 1262 (N.D. Ala. 2017)....................... 15
*Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982) ...................... 14
*Reves v. Ernst & Young*, 507 U.S. 170 (1993).................................................................. 8
*Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096 (10th Cir.
   2010).................................................................................................................. 22
*S.E.C. v. Shields*, 744 F.3d 633 (10th Cir. 2014) ........................................................... 6, 7
*Salinas v. U.S.*, 522 U.S. 52 (1997) ............................................................................ 12
*Sigmon v. CommunityCare HMO, Inc.*, 234 F. 3d 1121 (10th Cir. 2000) ................................ 13
Sooner Products Co. v. McBride, 708 F. 2d 510 (10th Cir. 1983) ............................................ 14
*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) .......................................................... 7, 10, 12
Taylor v. First Wyoming Bank, N.A., 707 F. 2d 388 (9th Cir. 1983)......................................... 14
*U.S. v. Hampton*, 786 F.2d 977 (10th Cir. 1986).............................................................. 12
*United States v. Botefuhr*, 309 F.3d 1263 (10th Cir. 2002) ............................................... 18
*United States v. Harris*, 695 F.3d 1125 (10th Cir. 2012)..................................................... 12
*West v. Atkins*, 487 U.S. 42 (1988) ........................................................................... 13

**Statutes and Rules**
18 U.S.C. § 1951.......................................................................................... 11, 12

iii

18 U.S.C. § 1952 ................................................................................................... 11
18 U.S.C. § 1962(a) .............................................................................................. 12
18 U.S.C. § 1962(b) .............................................................................................. 12
18 U.S.C. § 1962(c) ........................................................................................ passim
18 U.S.C. § 1962(d) .............................................................................................. 12
18 U.S.C. § 891(7) ................................................................................................ 12
18 U.S.C. § 894 .............................................................................................. 11, 12
18 U.S.C. 1961(1)(B) ........................................................................................... 11
19 Okla. Stat. § 514.4 .................................................................................... passim
19 Okla. Stat. § 514.5 ................................................................................ 1, 2, 20, 23
19 Okla. Stat. § 514.5(A) ..................................................................................... 20
19 Okla. Stat. § 514.5(B) ..................................................................................... 20
21 Okla. Stat. § 1481 ..................................................................................... 11, 12
21 Okla. Stat. § 1482 ..................................................................................... 11, 12
22 Okla. Stat. § 983 .............................................................................................. 23
22 Okla. Stat. § 983(A)(1) .................................................................................... 23
22 Okla. Stat. § 983(A)(2) .................................................................................... 23
22 Okla. Stat. § 983(B)(2) .................................................................................... 24
22 Okla. Stat. § 983(B)(3) .................................................................................... 24
22 Okla. Stat. § 983(B)(5) .................................................................................... 24
22 Okla. Stat. § 983(C)(4) .................................................................................... 24
22 Okla. Stat. § 983(D) ........................................................................................ 24
22 Okla. Stat. § 983(G)(3) .................................................................................... 24
22 Okla. Stat. § 983(G)(4) .................................................................................... 24
22 Okla. Stat. § 983(H) ........................................................................................ 23
22 Okla. Stat. § 983(H)(6) .................................................................................... 24
42 U.S.C. § 1983 ........................................................................................... passim

## Other Authorities

James W. Moore & Martin H. Redish, Moore's Federal Practice § 101.90, at 101–237
   (3d ed.2010) ...................................................................................................... 21
U.S. Const. art. III, § 2, cl. 1 ................................................................................. 21

## Rules

Fed. R. Civ. P. 12(b)(1) .......................................................................................... 1
Fed. R. Civ. P. 12(b)(6) ................................................................................... passim

**DEFENDANT OKLAHOMA SHERIFFS' ASSOCIATION'S MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT**

Defendant, Oklahoma Sheriffs' Association (the "OSA"), moves this Court, pursuant to

Fed. R. Civ. P. 12(b)(1) and (b)(6), for an Order dismissing each of Plaintiffs' claims.

## INTRODUCTION

Plaintiffs allege RICO and § 1983 putative class action claims against the OSA and others,

claiming that Oklahoma's system of collecting unpaid court financial obligations amounts to

criminal extortion and racketeering. These claims do not hold up to scrutiny. Oklahoma's system,

which was established by Oklahoma statute and mandated by Oklahoma's highest court, is

constitutional, legal, and necessary to the functioning of our state courts. Oklahoma's Legislature

authorized county sheriffs to enter into a contract with a private entity to locate and notify persons

of their *existing and outstanding* misdemeanor or failure-to-pay warrants and to collect unpaid

court financial obligations. The Legislature mandated that a statewide association of sheriffs, the

OSA, "shall" administer the contract. Pursuant to the statutes, the OSA entered into a contract with

Aberdeen Enterprizes II, Inc. ("Aberdeen") for Aberdeen to engage in collection activity with

respect to individuals who have already failed to pay their outstanding court fines. This system has

benefitted the cash-strapped courts of our State such that the Oklahoma Supreme Court issued an

Order on January 13, 2011, stating (Doc. 99 at 1, Exhibit 35; emphasis added):

> Each district court is authorized ***and directed*** to participate in the misdemeanor or
> failure to pay warrant collection program authorized by Title 19 Oklahoma Statutes
> Sections 514.4 and 514.5 immediately. These collections apply to misdemeanor
> and felony cases.

The Legislature has now amended the statutes governing court financial obligations, providing

even more due process protections to individuals.

The Plaintiffs claim that the Defendants' compliance with these statutes and the Oklahoma

Supreme Court's mandate is not only unconstitutional, but criminally extortionate. **Plaintiffs are**

1

**wrong**. The OSA has not violated any duty owed to Plaintiffs, and, in fact, Plaintiffs have failed to even allege the OSA's involvement in any of the complained of conduct.

The Agreement between the OSA and Aberdeen (Doc. 212-1; hereafter, the "Agreement") is a creation of Oklahoma statute.[2] 19 Okla. Stat. § 514.4 provides in pertinent part:

> A. Notwithstanding any other section of law, the county sheriffs of any Oklahoma county may contract with a statewide association of county sheriffs to administer contracts with third parties attempting to locate and notify persons of their outstanding misdemeanor or failure-to-pay warrants. County sheriffs contracting with a statewide association of county sheriffs for the administration of third-party contracts may assign their rights and duties regarding these contracts to the association.
>
> *       *       *
>
> E. The provisions of any contract entered into by a county sheriff shall be administered by a statewide association of county sheriffs in Oklahoma.

Accounts referred to the collections contractor "shall" add a 30% administrative fee to the sums due, which "shall" be given to the OSA and can be used, in part, to pay the contractor. *Id.* § 514.5.

## The Agreement Between the OSA and Aberdeen

The Agreement, which notes its accordance with § 514.4, states that Aberdeen will provide certain collection services for accounts referred by a County Sheriff or an Oklahoma Court Clerk's office, with those Sheriffs and Court Clerks having "sole discretion" in such referrals. (Doc. 212-1 p. 4, ¶ 2(a)). It also states:

> At all times throughout the Term of this Agreement, Aberdeen shall, (i) use its best efforts to collect any Debts associated with any Warrants referred to Aberdeen hereunder, **solely utilizing means which are legal, necessary and proper**. Aberdeen **shall not harass or exert undue pressure on delinquent debtors or employ any procedure that would cast discredit** upon the Association, the County Sheriff(s) and/or the Court Clerk(s), or otherwise subject the Association, the County Sheriff(s) and/or the Court Clerk(s) to public disapproval; and (ii)

---

[2] As discussed in Section IV below, these statutes have been amended with changes that will go into effect on November 1, 2023. Those changes moot much of the relief sought by Plaintiffs.

2

**comply with all applicable federal, state, and local laws and regulations** with regard to collection practices and procedures.

(*Id*. at 5, ¶. 2(c); emphasis added). In addition, Aberdeen warrants that it will "comply in spirit with all federal, state, and local laws, rules and regulations" and "shall not knowingly use the rights granted to it hereunder for any unlawful purpose." (*Id*. at 9, ¶ 4). Thus, the Agreement authorized by statute and signed by the OSA places a contractual duty on Aberdeen to abide by both the letter and the spirit of all laws, and to avoid any improper or unseemly collection procedures.

The OSA does not control Aberdeen's performance: "[i]t is expressly understood and agreed that Association shall not exercise any control over the methods by which Aberdeen and/or any officer(s), agent(s), and/or employee(s) of Aberdeen, shall perform Aberdeen's work and functions." (*Id*. at 15, ¶ 17). The OSA's "Roles and Responsibilities" under the Agreement are limited to, upon request from Aberdeen, providing Aberdeen with information *collected by the Sheriffs and Court Clerks,* although, in fact, Aberdeen has direct access to that information*. (Id*. at 8-9, ¶ 3). **The OSA does not contact individuals who have warrants; it does not collect money from such individuals; it does not seek, issue, or execute warrants; and it does not gather information on its own that might be used in the issuance or recall of warrants.**

Reflecting this reality, Plaintiffs' only factual references to the OSA are to OSA's status as a party to the statutory Agreement. Tellingly, Plaintiffs' Motion for Preliminary Injunction, which remains pending post-remand, <u>does not seek to enjoin any OSA action</u>. (*See, generally*, Doc. 77). Because of the OSA's lack of participation in the wrongful conduct Plaintiffs allege—even assuming that conduct supports a claim—the OSA simply cannot be held liable under Plaintiffs' claims and should be dismissed entirely from this case.

<u>**Factual Allegations Relating to the OSA**</u>

Plaintiffs' Second Amended Complaint ("SAC") is more than 100 pages long, with 372

3

numbered paragraphs. (*See*, *generally*, Doc 212). Yet only 18 paragraphs make any substantive reference to the OSA, and they do not support Plaintiffs' claims. Without commenting on their veracity, those allegations are paraphrased as follows.

- The OSA, Aberdeen, and Oklahoma court system have made millions of dollars through Aberdeen's practices. (¶ 3).

- There is a contract between Aberdeen and the OSA. The OSA retains a portion of the money collected under the contract. The OSA lobbied for a change in Oklahoma law regarding court debts. (¶ 5).

- Aberdeen contracted with the OSA for the collection of court debts. (¶ 26).

- The OSA is an Oklahoma corporation and it represents the County Sheriffs as a lobbying organization. The OSA entered into a contract with Aberdeen on behalf of 54 Sheriffs and the Agreement has been renewed multiple times. The OSA receives a percentage of what Aberdeen collects under the Agreement and has assets totaling $3,311,433. (¶¶ 29-30).

- State law allows the OSA to administer contracts with private collection companies to notify people of their outstanding warrants. (¶ 54).

- The contract enables companies and the OSA to benefit from the money collected. The OSA gets part of a statutory 30% surcharge added when an arrest warrant is referred to collection. The OSA and the collection company have direct financial interests in collection decisions and determinations. (¶ 55).

- The OSA, acting as an agent of the sheriffs, contracted with Aberdeen in 2010. (¶ 56).

- A portion of the money collected from debtors is retained by the OSA. (¶ 57).

- The OSA splits the 30% "surcharge" collected from debtors with Aberdeen. (¶ 59).

- The contract requires the OSA to share with Aberdeen any debtor information that would be available to the OSA for purposes of collecting the warrant and guarantees Aberdeen's access to county court files. (¶¶ 60; 65).

- The Agreement requires Aberdeen to follow the law and not discredit the OSA, but Aberdeen violates the law with full knowledge and informal agreement of the OSA. (¶ 81; 98, n.24).

- The contract is a financial boon to the OSA. (¶ 104).

- The OSA made over $829,075 in 2016 from the contract and held $3,311,433 in assets. This is more than the assets held by the OSA in 2009. (¶ 105).

- The OSA's expenditures on conferences, conventions, meetings, and advertising and promotion increased from 2009 to 2015. (¶ 106).

- The Agreement results in profit for the OSA, but does not benefit the public (¶ 107).

- The OSA has a contract with Aberdeen, which has been renewed multiple times and continued to remain in effect after the filing of this suit. The OSA knows Aberdeen is engaging in wrongful activities, and financially benefits from those activities. The OSA provides assistance to Aberdeen by procuring debtor information for Aberdeen. (¶¶ 282; 325; 335; and 350).

- In signing the contract with Aberdeen, the OSA, acting on behalf of the Sheriffs, delegated collection of court debts to Aberdeen. (¶ 356).

- The OSA, by renewing the contract with Aberdeen and refusing to revoke it, has authorized Aberdeen to engage in abuse of process. (¶ 366).

- Some of the Plaintiffs have paid money that enriched the OSA. (¶ 372).

## Summary of the Argument

Plaintiffs' factual allegations that the OSA entered into an Agreement with Aberdeen and benefitted from that Agreement are statutorily authorized actions, and they state no claim which allows for relief. Plaintiffs' conclusory allegations, *supported by no facts whatsoever*, that the OSA *knew* that other Defendants were violating Plaintiffs' rights by extortionate conduct, that the OSA *informally agreed* to those violations, and that the OSA "authorized" Aberdeen to abuse the warrant process should be ignored as unsupported by any facts, but even if true, they do not support claims that the OSA has violated RICO, the U.S. Constitution, or any state laws.

As to their RICO claims, Plaintiffs have not and cannot in good faith allege any facts which would even suggest that the OSA directed the affairs or actually participated in the operation or management of an alleged RICO enterprise. Plaintiffs have similarly not alleged that the OSA itself engaged in any predicate acts of extortion or that it agreed to facilitate (or did facilitate) a conspiracy to commit such acts. Thus, Count One fails to state a RICO claim against the OSA.

Plaintiffs' constitutional claims against the OSA in Counts Two, Three, Five, Six, and Seven (Count Four is not alleged against the OSA) also fail. The OSA is not a state actor for purposes of 42 U.S.C. § 1983. Further, there are no allegations that the OSA had a policy or custom that directly caused any alleged constitutional violations. To the contrary, Plaintiffs admit that the

OSA's Agreement with Aberdeen specifically *prohibits* any violation of law. Plaintiffs' constitutional claims all revolve around Oklahoma's warrant and court processes, but *Plaintiffs allege no facts that assert or imply the OSA was involved in these processes at all.* Nor have Plaintiffs alleged any facts that would demonstrate deliberate indifference on the part of the OSA.

Plaintiffs' state law claims against the OSA, for abuse of process, duress, and unjust enrichment, are also fatally infirm. Plaintiffs simply do not allege that the OSA itself engaged in any court process, that the OSA itself engaged in any acts of duress, or that the OSA itself was "enriched" beyond what it was statutorily entitled to receive. Additionally, this Court should not retain supplemental jurisdiction over state law claims when there are no valid federal claims.

Finally, the main purpose of Plaintiffs' SAC is to obtain injunctive and declaratory relief. That requested relief is now moot in light of comprehensive changes to the applicable statutes that go into effect on November 1, 2023. These changes create a new process for the issuance of warrants for unpaid court obligations and new due process protections for defendants such that the prospective relief sought by Plaintiffs is entirely unnecessary.

**ARGUMENT AND AUTHORITIES**[3]

**I.**
**PLAINTIFFS FAIL TO STATE A FEDERAL CLAIM AGAINST THE OSA.**

**A.**     **Rule 12(b)(6) Requires Facts to Support a Claim and Forbids Conclusory Pleading.**

For purposes of reviewing a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court should accept all factual allegations of the complaint as true and view them in the light most favorable to the plaintiff. *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014). To survive the motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its

---

[3] The OSA hereby adopts by reference and incorporates as if fully set forth herein the arguments made by all co-Defendants in support of their respective Motions to Dismiss.

face" and must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). In other words, the facts alleged in the complaint must allow the court to infer the defendant's liability. *Shields*, 744 F.3d at 640 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The *Twombly/Iqbal* pleading standard applied in federal courts "is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are *no more than labels and conclusions* or formulaic recitation of the elements of a cause of action, which the Court stated *will not do*." *Id*. at 640-41 (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (emphasis added)). Plaintiffs fail to meet this standard.

**B.**    **Plaintiffs' Count One RICO Claims Against the OSA Should be Dismissed.**

   **1.**    **Plaintiffs Have Failed to State a § 1962(c) Claim against the OSA.[4]**

Congress enacted RICO to eliminate the infiltration of *organized crime* into legitimate businesses. *See Beck v. Prupis*, 529 U.S. 494, 496 (2000). RICO, under 18 U.S.C. § 1962(c), makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Thus, "[t]o survive a Rule 12(b)(6) motion, a civil RICO claim must allege the defendants (1) *participated in the conduct* (2) of an enterprise (3) *through a pattern* (4) *of racketeering activity*." *Tal v. Hogan*, 453 F.3d 1244, 1269 (10th Cir. 2006) (emphasis added). Plaintiffs have not alleged that the OSA participated in the alleged RICO enterprise at all, much

---

[4] To the extent the OSA focuses its argument in this brief on the most glaring deficiencies in Plaintiffs' 1962(c) claim as that claim specifically applies to the OSA, it does not concede that Plaintiffs have sufficiently pled a 1962(c) claim against any other defendant. Plaintiffs have failed to plead facts showing that the alleged predicate acts affect interstate commerce, that Plaintiffs have suffered any concrete injury to their business or property, or the existence of a RICO enterprise or a pattern of racketeering activity. The OSA expressly adopts and incorporates herein by reference its co-Defendants' arguments in this regard.

less through a pattern of racketeering activity.

>    **a.    Plaintiffs Have Not Alleged the OSA Participated in a RICO Enterprise.**

In *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993), the Supreme Court adopted the "operation or management test" to determine whether a defendant has sufficiently participated in the affairs of an alleged RICO enterprise to support a claim under § 1962(c). This test requires the defendant to have played "some part in ***directing*** th[e] affairs" of the RICO enterprise—actually "participat[ing] in ***the operation or management*** of the enterprise itself"—before liability may be imposed. *Id*. at 183 (emphasis added). Importantly, RICO liability "depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, ***not just their own affairs***." *Dopp v. Loring*, 54 F. App'x 296, 298 (10th Cir. 2002) (emphasis added and quotations omitted).

Plaintiffs have *alleged* in a conclusory manner the existence of a RICO "enterprise" made up of Defendants Aberdeen, Jim Shofner, Rob Shofner, the OSA, and the Defendant Sheriffs. However, **Plaintiffs have wholly failed to assert that the OSA participated in the alleged enterprise in any way.**[5] Plaintiffs' only assertions which even attempt to connect the OSA to the alleged enterprise are that the OSA: (1) has lawfully contracted with Aberdeen, expressly authorizing it to employ only *legal* means to collect outstanding court debt; (2) knows that Aberdeen is engaging in alleged extortionate conduct; (3) provides assistance to Aberdeen by

---

[5] Plaintiffs allege that Aberdeen, *inter alia*, "threatens arrest and incarceration and refuses to request that arrest warrants be recalled for the purpose of extracting payment of court debts from plaintiffs . . . ." (Doc. 212, ¶ 281); and Plaintiffs allege that Jim and Rob Shofner "direct Aberdeen, Inc.'s collection activities[,] . . . exercise direct supervision over Aberdeen, Inc. employees who are responsible for individual cases, including by listening in on their phones calls, and determine the collection practices Aberdeen, Inc. employs" (*Id*. at ¶ 285); and Plaintiffs allege that the Defendant Sheriffs "execute warrants issued upon Aberdeen, Inc.'s request and...detain persons in jail pending payment to Aberdeen, Inc., including those who are unable to pay due to indigence" (*Id*. at ¶ 284). ***Plaintiffs make no such allegations against the OSA and cannot in good faith make such allegations as the OSA has no involvement.***

enlisting government entities to procure debtor information and relaying that information to Aberdeen; and (4) has financially benefitted from the Agreement. These allegations are insufficient to state a claim against the OSA under § 1962(c).

First, Plaintiffs admit, as they must, that **the OSA is expressly authorized by Oklahoma statutes to enter into the contract with Aberdeen and to benefit therefrom.** (Doc. 212, ¶¶ 53-55); *see also* 19 Okla. Stat. § 514.4. Plaintiffs further admit that the Agreement requires Aberdeen to "follow the law" in its collection efforts. (Doc. 212, ¶ 81; Doc. 212-1, p. 4). The OSA cannot play a part in "directing the affairs" of the alleged RICO enterprise by merely entering into a contract as expressly required by law, especially where that contract 1) expressly prohibits Aberdeen from engaging in the alleged conduct that Plaintiffs rely upon as predicate acts of the enterprise and 2) prohibits the OSA from exercising any control over how Aberdeen carries out its duties. *See, e.g.*, *Doug Grant, Inc. v. Greate Bay Casino Corp*., 3 F. Supp. 2d 518, 533 (D.N.J. 1998) (*aff'd as modified*, 232 F.3d 173 (10th Cir. 2000) (finding RICO claim could not survive a 12(b)(6) challenge where predicated on acts which, while framed by the plaintiff as "illegal" or "unlawful," were authorized by statute); *Perino v. Mercury Fin. Co. of Illinois*, 912 F. Supp. 313, 316 (N.D. Ill. 1995) (allegations of vague misconduct do not transform "perfectly legal conduct into actionable fraud under RICO").

The OSA categorically denies that it has ever *known* of any (alleged) extortionate activities by the other Defendants. However, even if it were so, the vague, conclusory allegation of OSA's mere knowledge of Aberdeen's conduct would be inconsequential in demonstrating the OSA itself "participated in the operation or management of the RICO enterprise."  The same is true for Plaintiffs' repeated allegation that the OSA has benefitted financially from Aberdeen's conduct. *Nasik Breeding & Research Farm Ltd. v. Merck & Co. Inc*., 165 F. Supp. 2d 514, 541 (S.D.N.Y.

2001) (holding that "***mere knowledge of a scheme, even coupled with personal benefit***, is not enough to impose liability for a RICO conspiracy" (emphasis added))*; see also Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998) (*modified in part*, 199 F.3d 961, 967 (7th Cir. 2000) (holding that "simply performing services for an enterprise, ***even with knowledge of the enterprise's illicit nature***, is not enough to subject an individual to RICO liability under § 1962(c)") (emphasis added); *Baumer v. Pachl*, 8 F.3d 1341, 1344-45 (9th Cir. 1993) (holding that a 1962(c) claim asserting that a lawyer provided and was paid for legal services to actors in a fraudulent securities scheme, allegedly with knowledge of the scheme, must be dismissed for lack of sufficient allegations that the lawyer *participated* in the conduct of the enterprise's affairs).

The same is true for Plaintiffs' conclusory allegation that the OSA makes debtor information available to Aberdeen. The Tenth Circuit has applied the "operation or management test" on multiple occasions, finding that a defendant with greater alleged connections to a RICO enterprise than the allegations against the OSA here still do not rise to the level of participation in the conduct of the enterprise. *See, e.g. Tal*, 453 F.3d at 1261-70 (10th Cir. 2006) (finding the allegation that RICO defendants affirmatively made numerous material misrepresentations in mailed writings and other medium to fraudulently procure a real estate development contract from the city council and an urban renewal authority, while "a serious allegation," was insufficient to "rise to the level of participation in the operation of management" of the alleged enterprise); *BancOklahoma Mortg. Corp. v. Capital Title Co. Inc.*, 194 F.3d 1089, 1101 (10th Cir. 1999) (affirming summary judgment in favor of RICO-defendant title companies upon finding that, while shown to have been involved in the conduct of an alleged RICO enterprise that perpetrated fraud in relation to the sale of mortgages between financial institutions and alleged to have taken numerous actions to allow and/or further the enterprise's scheme, there was no evidence

10

"suggesting the defendants directed any part of the RICO enterprise" and that "the Title Companies did nothing more than provide their regular services"). Other circuit courts have held the same. *See e.g.*, *Dahlgren v. First Nat. Bank of Holdrege*, 533 F.3d 681, 689-91 (8th Cir. 2008) (finding a RICO defendant bank did not "participate" in the relevant enterprise despite evidence that it was the enterprise's principal lender, had granted numerous financial favors to the enterprise, thereby allowing it to expand its operations, had fraudulently altered financial instruments for its benefit and the benefit of the enterprise, and had urged other RICO defendants to engage in predicate acts); *Goren*, 156 F.3d at 728 (dismissing 1962(c) claims against three RICO defendants despite acknowledging that the plaintiff "clearly allege[d] the existence of a business relationship between these defendants and the enterprise," as well as the defendants' knowledge of the enterprise's illicit nature); *Baumer*, 8 F.3d at 1342-45 (dismissing a 1962(c) claim against an attorney who was alleged to have "knowingly filed a false partnership agreement" and made other intentional misrepresentations in writing for the express purpose of benefitting the enterprise).

Plaintiffs have failed to allege that the OSA played an actual part in any alleged enterprise, much less *directed its affairs*. Plaintiffs' 1962(c) claim thus fails as to the OSA.

### b. *Plaintiffs Have Not Alleged the OSA Engaged in Any Predicate Acts.*

In addition to alleging actual operation and management of a RICO enterprise, to state a valid § 1962(c) RICO claim, Plaintiffs must sufficiently allege that the party has done so "through a pattern of racketeering activity," also referred to as predicate acts. "Racketeering activity" is defined by RICO as an act which is indictable under federal law. *See* 18 U.S.C. 1961(1)(B). The *only* predicate acts alleged by Plaintiffs as to *any* of the RICO Defendants are various forms of extortion, purportedly in violation of the Hobbs Act (18 U.S.C. § 1951), the Travel Act (18 U.S.C. § 1952), Oklahoma criminal law (21 Okla. Stat. §§ 1481-82), and 18 U.S.C. § 894. Extortion requires, at a minimum, the use or threat of force or other criminal means to obtain property from

another.[6] Plaintiffs do not allege that the OSA has used the threat of force or other criminal means to obtain property or has engaged in any other conduct required to constitute extortion. The § 1962(c) claim should therefore be dismissed as against the OSA on this additional ground.

**2.    Plaintiffs Have Failed to State a § 1962(d) Conspiracy Claim Against the OSA.**

The Tenth Circuit holds that "[i]f a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law." *Tal*, 453 F.3d at 1270. By its very terms, § 1962(d) requires that a plaintiff must first maintain an independent violation of subsections (a), (b), or (c) to plead a viable conspiracy claim under subsection (d). 18 U.S.C. § 1962(d); *see also, U.S. v. Hampton*, 786 F.2d 977, 978 (10th Cir. 1986) ("The object of a RICO conspiracy must be to violate a substantive RICO provision."). There are no claims under Subsections 1962(a) or (b). As is shown above, Plaintiffs have failed to plead a valid Subsection 1962(c) claim against the OSA. Therefore, Plaintiffs have also failed to state a Subsection 1962(d) conspiracy claim against the OSA.[7] Count One must be dismissed as against the OSA.

---

[6] *See* 18 U.S.C § 1951 (defining "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right"); 21 Okla. Stat. §§ 1481-82 (defining "extortion" as "the obtaining of property from another with his consent, induced by a wrongful use of force or fear, or under color of official right"); l8 U.S.C § 894 (requiring the use of "extortionate means" which Congress defined in 18 U.S.C. § 891(7) as involving "the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person").

[7] Moreover, even if Plaintiffs' § 1962(c) claim against the OSA was viable, Plaintiffs' § 1962(d) conspiracy claim against the OSA should still be dismissed. Such a claim requires a showing that the Defendant:

> (1) by knowing about **and agreeing to facilitate** the commission of two or more acts (2) constituting a pattern (3) of racketeering activity (4) participates in (5) an enterprise (6) the activities of which affect interstate or foreign commerce.

*United States v. Harris*, 695 F.3d 1125, 1132 (10th Cir. 2012) (emphasis added). Proof is required that the Defendant "adopt[ed] the goal of furthering or facilitating the criminal endeavor." *Id*. at 1133 (quoting *Salinas v. U.S.*, 522 U.S. 52, 65 (1997)). It is not sufficient for Plaintiffs to plead— let alone in conclusory fashion—that the OSA merely knew of the alleged enterprise's predicate conduct or even that the OSA benefitted. To state a valid claim against the OSA under § 1962(d),

**C.**     **Plaintiffs' Constitutional Claims Against the OSA Should be Dismissed.**

Plaintiffs allege constitutional claims against the OSA under 42 U.S.C. § 1983 in Counts

Two, Three, Five, Six, and Seven. However, despite the numerous proposed theories of § 1983

liability, Plaintiffs have not alleged any facts that would demonstrate any policy or custom on the

part of the OSA that could be considered the direct cause of any constitutional deprivation. Nor

have Plaintiffs alleged facts showing any direct participation on the part of the OSA in any conduct

that could be considered a constitutional deprivation. Instead, Plaintiffs have alleged only that the

OSA has a statutorily-authorized contract with Aberdeen pertaining to court debt collection and

that the OSA makes money from that contract. Those allegations do not state a § 1983 claim.

**1.**     **The OSA is Not a State Actor Subject to § 1983.**

First, the only proper defendants in a § 1983 case are those "acting under color of state

law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotations omitted). Private individuals and

entities can only be considered state actors subject to § 1983 under limited circumstances that

Plaintiffs have not pled here.

In determining whether a private entity has acted under color of law, four tests have been

employed. *See Sigmon v. CommunityCare HMO, Inc.*, 234 F. 3d 1121, 1125 (10th Cir. 2000). The

first test asks "whether there is a sufficiently close nexus between the State and

the challenged action of the regulated entity so that the action of the later may be fairly treated as

that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974). The second

test inquires as to "whether the state has so far insinuated itself into a position of interdependence

with the private party ... that there is a symbiotic relationship between them." *Gallagher v. Neil*

---

there must be a valid § 1962(c) claim, and Plaintiffs must additionally allege that the OSA both
had knowledge of such conduct ***and agreed to facilitate its commission***. Plaintiffs have not done
so and cannot in good faith do so.

*Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (quotations omitted).[8] The third test requires concerted action between the State and the private entity and willful participation in a joint activity. *Id.*, at 1453-54.[9] The final test permits a finding of state action only where a private entity "exercises powers traditionally *exclusively* reserved to the State." *Id.* at 1447 (quotation omitted and emphasis added).

None of these tests can be used to establish that the OSA should be considered a state actor under § 1983. The OSA is a non-profit association, and it does not take, nor is it alleged to have taken, any action that could be construed as government action. There is no allegation that the OSA has engaged in any collection activities or in seeking, issuing, or executing warrants. The OSA is not alleged to have set fines or held (or failed to hold) any hearings to determine indigency. The OSA does not engage in court functions or law enforcement. None of the allegedly unconstitutional conduct is even attributed to the OSA. Plaintiffs only allege the existence of a private contract between the OSA and another non-state entity, Aberdeen. That Agreement provides that Aberdeen is an independent contractor and the OSA exercises no control over Aberdeen's work. Because the statute *authorizes* the OSA to enter into the Agreement and provides for actions by a private entity, there can be no argument that these are actions *exclusively* reserved to the state. The OSA is simply a professional association designated under state law as an entity to which Sheriffs can assign their right to contract with a private collection company, and

---

[8] This "symbiotic relationship" cannot be established based only upon facts such as the incident occurred on public property or the defendant receives public funding or is ***regulated by the State***. *Gallagher,* 49 F.3d at 1451-53. *See also Rendell-Baker v. Kohn*, 457 U.S. 830, 840-43 (1982); *Taylor v. First Wyoming Bank, N.A.*, 707 F. 2d 388, 389-90 (9th Cir. 1983).

[9] This test requires specific factual allegations: "When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." *Sooner Products Co. v. McBride*, 708 F. 2d 510, 512 (10th Cir. 1983).

Plaintiffs' allegations reflect that reality. This does not make the OSA a state actor. Accordingly, Plaintiffs' § 1983 claims against the OSA are all fundamentally flawed and must be dismissed.

### 2.    Plaintiffs Have Also Failed to State a Direct Claim Against the OSA.

Even if the OSA were considered a state actor (which the OSA disputes), it could only be considered one with respect to its statutory duties. Those duties do not give rise to any of Plaintiffs' claims in this case. A key principle of § 1983 liability is that an alleged wrongdoer "cannot be held liable solely because it employs a tortfeasor—or, in other words…cannot be held liable under § 1983 on a *respondeat superior* theory." *Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1216 (10th Cir. 2003)(quoting *Monell v. Dep't of Social Services of New York*, 436 U.S. 658, 691 (1978)). Applying this rule, courts hold that, for liability to attach, ***the entity must have its own policy or custom "that was the 'direct cause' or 'moving force' behind the constitutional violation,*** " and the entity must also have "***directly participated*** in the challenged conduct." *Dubbs*, 336 F.3d at 1215, 1217 (emphasis added and quotation omitted).

Causation is a critical inquiry in § 1983 claims, especially where, as here, Plaintiffs rely on a policy or custom that is facially lawful. "[W]hen a plaintiff's claim relies on a facially lawful policy or custom causing a constitutional violation, a court must apply a *rigorous standard of causation* to avoid imposing *respondeat superior* liability on a municipality [or private entity]." *Ray v. Judicial Correction Servs., Inc*., 270 F. Supp. 3d 1262, 1298 (N.D. Ala. 2017) (emphasis added). This is a higher standard than "but for" causation. *Id.* "A plaintiff cannot hold a municipality [or private entity] liable for a constitutional violation merely because its custom or policy made it more likely that a constitutional violation would occur." *Id*.

The *Dubbs* court, *supra,* analyzed whether two private defendants, CAP and K.D. Enterprises ("KD"), could be held liable under § 1983 for an alleged Fourth Amendment violation resulting from an intrusive physical examination performed on pre-school children without

parental consent. 336 F.3d at 1198-1200. The Tenth Circuit held that KD could not be subject to liability because there was "no evidence that KD directly participated in the challenged conduct"; *i.e.*, that it had "no role in performance of the examinations or in arranging for notice and consent." *Id.* at 1217. This holding resulted despite two KD supervisors having been told of concerns about performing the examinations without consent and KD doing nothing to intervene. *Id*. at 1198.

For Plaintiffs to properly allege any § 1983 claim against the OSA, they must allege: 1) a specific policy or custom on the part of the OSA; 2) that directly and proximately caused a constitutional deprivation; and 3) direct participation in (beyond mere knowledge of) the unconstitutional conduct by the OSA and not merely by its employees or subcontractors. As is discussed below, the SAC is devoid of all three elements in every count.

### a.      Count Two – 14th Amendment – Procedural Due Process

In Count Two, Plaintiffs allege that the OSA should be liable because of the purported seeking, issuing, and executing of arrest warrants without pre-arrest due process, such as an inquiry into the ability to pay. (Doc. 212, ¶¶ 322-24). While all Defendants deny these claims, there are simply no allegations that the OSA has any related policies or procedures or any participation in the warrant or arrest process. Instead, the courts in each respective County issue warrants, and law enforcement officers execute warrants. The courts alone perform, "pre-deprivation process," *i.e.*, Rule 8 hearings in which Plaintiffs can challenge their ability to pay.

The OSA's only involvement is that it entered into the Agreement with Aberdeen on behalf of the County Sheriffs. Even if the Agreement could be construed as containing policies or customs of the OSA, those policies or customs would include (i) demanding that Aberdeen carry out its duties ***in compliance with*** all state and federal laws, and (ii) providing that the OSA has no direct involvement or control over the way in which Aberdeen does its job. Hence, Plaintiffs' Count Two

fails as to the OSA, because Plaintiffs have not alleged any direct OSA participation, or OSA policy or custom that caused any constitutional harm in the issuance and execution of warrants.

### b.    Count Three – 4th Amendment

In Count Three, Plaintiffs assert that the Defendants seek, issue, and execute warrants unlawfully and that these warrants are unlawful because they are unsworn and contain no allegations of willfulness to support probable cause. (*Id*. at ¶ 331). However, Plaintiffs have not alleged any OSA policy or custom that could support such a claim against it, any causation, or any participation by the OSA. The OSA does not seek, issue, or execute warrants. The OSA is in no position to provide sworn testimony in support of a warrant request. There is no allegation that it even participates in any of the conduct referenced in this count. As such, the OSA cannot plausibly be held to have violated anyone's Fourth Amendment rights in regard to warrants.

### c.    Count Five – State Created Liberty Interest – 14th Amendment

In Count Five, Plaintiffs make a bare assertion of a violation by all Defendants for seeking, issuing, and executing arrest warrants without proof of willful nonpayment. (*Id*. at ¶¶ 347-49). Again, Plaintiffs make no factual allegations that the OSA did anything other than enter into a contract mandated by the State. Plaintiffs are aware that the OSA had nothing to do with these court and law enforcement procedures but nevertheless have baselessly asserted this claim against the OSA. Such conclusory allegations should be disregarded under Rule 12(b)(6) and the *Twombly/Iqbal* pleading standard, and this claim should be dismissed as to the OSA.

### d.    Count Six – 14th Amendment –Due Process

In Count Six, Plaintiffs discuss Aberdeen's actions and financial incentives (*Id.* at ¶ 357) and then allege that Plaintiffs' due process rights under the Fourteenth Amendment are violated where a "government actor" administers collection of court debts and wields power over "who is arrested and how long they remain confined" while having a financial incentive to make money.

17

(*Id*. at ¶ 355). The Plaintiffs refer to the OSA only as having lawfully *delegated* collection efforts to Aberdeen. However, the actual deprivation Plaintiffs claim is the "unconstitutional financial bias" by Aberdeen. Once again, Plaintiffs do not claim the OSA participates in, or has any policy or custom relating to, the way in which warrants are sought or executed. Nor is there a claim that the OSA decides when or for how much those arrested may bond out of jail. This claim also fails.

<blockquote>e.    <strong><em>Count Seven – 14th Amendment – Equal Protection</em></strong></blockquote>

In Count Seven, Plaintiffs assert that individuals unable to pay court fines and the statutory fee are subjected to threats of arrest, arbitrary and unachievable payment amounts, and family member harassment, and that, as a result, they are being treated unequally from those wealthy enough to pay their fines. However, despite vaguely asserting that this count applies with equal force to the OSA, none of the activities explicitly described as a constitutional violation are attributed to the OSA, and there is no mention of any OSA policy or custom causing the complained-of activities. To the contrary, the OSA's Agreement expresses the opposite policy: Aberdeen must *not* harass anyone or violate the law in its collection activities. The OSA cannot be subjected to liability under § 1983 for the conduct alleged in Count Seven.

**II.**
**<u>THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION</u>**
**<u>OVER PLAINTIFFS' STATE LAW CLAIMS.</u>**

"[A] district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial." *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002). Plaintiffs have failed to state any viable federal claims against the OSA. Therefore, this Court should decline to exercise supplemental jurisdiction over the state law claims alleged against the OSA in Counts Eight, Nine, and Ten. Further, Plaintiffs' state law claims are independently subject to dismissal.

**III.**
**PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED.**

**A.**     **Plaintiffs have Failed to State a Claim against the OSA for Abuse of Process.**

In Count Eight, Plaintiffs allege the OSA "by renewing the contract (and continuing to refuse to revoke it) with knowledge of Aberdeen's policies and practices, has authorized Aberdeen, Inc. to engage in the abuse of process." (Doc. 212, ¶ 366). The elements of an abuse of process claim are (1) the improper use of the court's process (2) primarily for an ulterior or improper purpose (3) with resulting damage to the plaintiff asserting the misuse. *Callaway v. Parkwood Vill., L.L.C.,* 2000 OK 24, ¶ 5, 1 P.3d 1003, 1004. There is no allegation that the OSA has used any court process at all, let alone for any improper purpose. In fact, Plaintiffs' SAC clearly alleges only that parties *other* than OSA use court process to issue and recall warrants. The claim for abuse of process against the OSA fails and should be dismissed.

**B.**     **Plaintiffs have Failed to State a Claim Against the OSA for "Duress."**

Plaintiffs' Count Nine purports to assert a claim of "duress" against the OSA. However, Aberdeen is the *only* Defendant referenced in the allegations. Plaintiffs claim that: (1) "Aberdeen, Inc. threatens to obtain a debt-collection arrest warrant even when it knows that the individual is indigent, that the individual cannot afford to pay, and thus that there are no lawful grounds for an arrest warrant;" (2) "Aberdeen, Inc. engages in this practice with full knowledge of debtors' lack of sophistication and vulnerability to these threats;" and (3) Plaintiffs have suffered damages as a result. (Doc. 212, ¶¶ 369-70). There is no mention of the OSA in Count Nine. Moreover, the Plaintiffs have simply relabeled their former "civil extortion" claim as one for "duress". The allegations are nearly identical and equally flawed.

As a preliminary matter, the OSA finds no Oklahoma case recognizing "duress" as a cause of action other than as a means to rescind or seek relief related to a contract. Plaintiffs have not

19

and cannot allege that they have entered into any contract with the OSA. Moreover, Plaintiffs have not claimed that OSA has obtained anything from any of the Plaintiffs through any threats or through any other means. No Plaintiff in this case has paid anything to the OSA. Count Nine of the SAC should be dismissed.

**C.**     **Plaintiffs have Failed to State a Claim Against the OSA for Unjust Enrichment.**

Under Oklahoma law, a claim for unjust enrichment requires a showing that the defendant has "money in their hands that, in equity and good conscience, they ought not be allowed to retain." *French Energy, Inc. v. Alexander*, 1991 OK 106, 818 P.2d 1234, 1237. To prevail, the plaintiff "must prove enrichment to another coupled with a resulting injustice." *Childs v. Unified Life Ins. Co.*, 781 F. Supp. 2d 1240, 1244 (N.D. Okla. 2011) (quotation omitted). "One is not unjustly enriched, however, by retaining benefits involuntarily acquired which law and equity give him absolutely without any obligation on his part to make restitution." *Am. Biomedical Grp., Inc. v. Techtrol, Inc*., 2016 OK 55, ¶ 27, 374 P.3d 820, 828 (quotation omitted).

As Plaintiffs describe in Count Ten, Aberdeen collects fines, fees, and costs—including a 30% "administrative cost" expressly authorized by 19 Okla. Stat. § 514.5—from those against whom Oklahoma counties have issued failure-to-pay warrants. Critically, none of the Plaintiffs have alleged in the SAC that Aberdeen has collected any monies from them that they do not in fact owe pursuant to Court Order or Oklahoma statute. Plaintiffs also do not allege that the OSA has collected *any* monies directly from Plaintiffs. Rather, Plaintiffs claim only that the OSA "retain[s] a portion of the money Aberdeen, Inc. collects up to an amount equal to [the 30% administrative cost expressly authorized by § 514.5]." (Doc. 212, at ¶ 5).

Of course, the Oklahoma Legislature expressly permits the OSA to receive and retain all or part of this administrative cost. *See* 19 Okla. Stat. § 514.5(B) (stating that the 30% administrative cost mandated in § 514.5(A) "shall be distributed to [Aberdeen], a portion of which may be used

to compensate [the OSA]."). The Agreement confirms this arrangement. (*See* Doc. 212-1, p. 7, ¶ 2(e)(3)(i)). Plaintiffs have alleged no more than this: the OSA has been enriched by Aberdeen's collections to the extent the Oklahoma Legislature expressly required it be. There is no injustice. The OSA cannot be found unjustly enriched for retaining benefits mandated by law.

## IV.
## THE INJUNCTIVE AND DECLARATORY RELIEF SOUGHT BY PLAINTIFFS IS MOOT AS A RESULT OF INTERVENING CHANGE IN STATUTE.

Plaintiffs' claims in this case have always been, as a practical matter, a challenge to the statutory process for collecting unpaid court financial obligations and the procedures followed by Oklahoma courts. Those statutory processes and procedures have been amended by the Oklahoma legislature during this case and much of the relief Plaintiffs seek is now moot, inclusive of their requests for injunctive and declaratory relief. These new processes and procedures go into effect on November 1, 2023.

The Court's jurisdiction under Article III is limited to live cases and controversies. *See* U.S. Const. art. III, § 2, cl. 1. That limit applies at all stages of a case and a "suit must remain alive throughout the course of litigation, and even if there is a justiciable controversy when a complaint is filed, subsequent events can moot the claim." *Catawba Riverkeeper Found. v. N.C. Dep't of Transp.*, 843 F.3d 583, 588 (4th Cir. 2016) (internal quotations omitted). The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction." *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) (quoting 15 James W. Moore & Martin H. Redish, Moore's Federal Practice § 101.90, at 101–237 (3d ed. 2010)). Mootness can apply to less than all of a plaintiff's case. *See*, *e.g.*, *Luft v. Evers*, 963 F.3d 665, 674 (7th Cir. 2020) (holding part of relief sought by plaintiff was moot as a result of change in statute); *Daingerfield Island Protective Soc. v. Lujan*, 920 F.2d 32, 37 (D.C. Cir. 1990) (one count of

complaint mooted by intervening change in statute).

"Where a plaintiff seeks an injunction, his susceptibility to continuing injury is of particular importance—'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.'" *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). Moreover, a plaintiff's continued susceptibility to injury must be reasonably certain, and a court will not entertain a claim for injunctive relief where the allegations of future harm are based on speculation and conjecture. *Id*. "Declaratory judgment actions must be sustainable under the same mootness criteria that apply to any other lawsuit." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). When mootness is applied in the declaratory judgment context, "[i]t is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of *the defendant toward the plaintiff*." *Id*. at 1109-10 (emphasis in original).

Plaintiffs seek injunctive relief as part of Counts 2, 3, 4, 5, 6, 7, 8, and 10. Plaintiffs make the following injunction and declaratory relief requests in their prayer for relief in the SAC:

- An order declaring it unlawful for Defendants to seek, issue, and execute debt-collection arrest warrants based solely on alleged nonpayment, and similarly that it is unlawful to seek, issue, and execute such warrants without inquiry into ability to pay, consideration of alternatives, pre-deprivation process, and factual allegations based on oath or affirmation;

- An order prohibiting Aberdeen, Inc., Jim Shofner, Rob Shofner, the Tulsa Cost Administrator, the Tulsa and Rogers County Court Clerks, Tulsa County, Rogers County, the Sheriffs' Association, and the 54 Sheriff Defendants from seeking or enforcing debt-collection arrest warrants based on nonpayment without making inquiry into the warrant subject's ability to pay and consideration of alternatives;

- An order declaring it unlawful for the Tulsa County Judges and Rogers County Judge to issue debt-collection arrest warrants on the basis of unsworn statements, and declaring the same unconstitutional;

- An order prohibiting the Tulsa County and Rogers County Sheriffs from holding

individuals arrested on debt-collection arrest warrants in jail unless they pay a pre-set sum, without any inquiry into ability to pay and without advancing a compelling government interest, and declaring the same unconstitutional;

- An order enjoining Defendants from using a debt collection company that exercises control over debtors' liberty and also has a direct financial interest to infringe on that liberty, and declaring the same unconstitutional;

- An order enjoining the practice of subjecting individuals too poor to pay their court debts to more onerous collection methods, including, but not limited to, imposing additional financial penalties, threats of arrest, arrest and detention, and declaring the same unconstitutional; and

- An order enjoining the collection of a 30-percent penalty surcharge from individuals too poor to pay their court debt, and declaring the assessment of that penalty, without any inquiry into an individual's ability to pay, unconstitutional.

(Doc. 212 at pp. 98-100).

All of these requests are moot as a result of new laws passed by the Oklahoma Legislature, effective November 1, 2023. Oklahoma House Bill 2259 (HB 2259) provides for comprehensive amendments to 19 Okla. Stat. § 514.4 and 514.5 and 22 Okla. Stat. § 983. (HB 2259 is attached as Exhibit A). HB 2259 makes many changes to the processes and procedures for collection of unpaid court financial obligations and the related warrant process. These include, among others, the following changes:

- Court cost compliance liaisons (like Aberdeen—formerly referred to as "contractors" under the statute) are required to inform individuals of the right to a cost hearing provided under the new statute. (Exh. A, 19 Okla. Stat. 514.4(B)).

- A single payment of $100 is sufficient to recall all cost-related warrants in a jurisdiction, thereby removing the discretion allegedly employed by Aberdeen (*Id*. at § 514.4(D)).

- A two-tiered system is created for "cost cite and release warrants" and "cost arrest warrants". (*See id*. at 22 Okla. Stat. § 983(A)(1) and (A)(2)). Cost cite and release warrants result in the defendant being issued a notice to appear within 10 days and released without being taken into custody. (*Id*. at § 983(H)). If the defendant appears within the timeframe,

23

a cost hearing is set and the warrant is recalled. If they do not appear, a cost arrest warrant may be issued. (*Id*.). If a cost arrest warrant is issued, a defendant can be taken into custody and is given a cost hearing or willfulness hearing, as the Court deems appropriate, within 72 hours, unless the defendant pays $100 toward the outstanding amount or is released on his own recognizance. (*Id*.).

- At the cost hearing, the court applies the factors set forth in § 983(B)(3) and can consider any testimony or information provided by the defendant and inquire about ability to pay. (*Id*. at § 983(D)). If found unable to pay, defendants are provided a hardship waiver, in whole or in part. (*Id*. at § 983(B)(2)).

- Defendants that receive total disability, housing subsidies, or any federal need-based assistance, such as TANF or food stamps, and those whose income is below 150% of the federal poverty level are presumed unable to pay and therefore entitled to a hardship waiver. (*Id*. at § 983(B)(5)).

- Defendants can request a cost hearing at any time regarding their ability to pay court financial obligations and can do so without incurring any court costs. (*Id*. at § 983(C)(4)).

- All warrants for nonpayment that pre-date the effective date of the statute are automatically converted to cost cite and release warrants. (*Id*. at § 983(H)(6)).

In sum, these changes ensure that no defendant will be arrested for a failure to pay without a hearing and an opportunity to contest their ability to pay any court financial obligation. And all of this can occur before the outstanding amount is turned over to a court cost compliance liaison for collection and the 30% amount is added. (*See id*. at § 983(G)(3-4)).

Given these processes, all of the injunctive and declaratory relief sought by Plaintiffs is moot. Court compliance liaisons, like Aberdeen, will now be required to inform defendants of their

right to request a cost hearing and any existing warrant can be recalled with payment of $100. In addition, defendants can request a cost hearing at any time, and if they fail to make a payment, the warrant to be issued will now result in a citation to appear at a proceeding where they will then be given an opportunity to provide proof of inability to pay. The complained-of incarceration for failure to pay without an inquiry into ability to pay is no longer a possibility. A warrant for the defendant's arrest is only issued if they fail to appear after having received notice that they must. And even then, they are given a cost hearing within 72 hours of arrest or can pay $100 to be released. Most, if not all, of the defendants in this case, including at least Graff, Frazier, Meachum, and Choate, would qualify for a presumptive hardship waiver of their court financial obligations. (*See* Doc. 212 at ¶¶ 18-25).  The 30% fee, if added for failure to appear, can similarly be contested as part of the defendant's ability to pay hearing and can be waived by the court. In light of the massive revisions to the applicable legislation, Plaintiffs' requested injunctive and declaratory relief is now moot. Any claim on the part of Plaintiffs that the new statutory authority will not be followed is necessarily based on speculation and therefore an insufficient basis to continue seeking such relief.  These aspects of Plaintiffs' claims should be dismissed.

## CONCLUSION

For all the foregoing reasons, Plaintiffs have failed to state any viable claim against the OSA. In addition, the declaratory and injunctive relief sought by Plaintiffs is moot as a result of changes in legislation. Accordingly, the OSA respectfully requests that the Court enter an Order dismissing Plaintiffs' SAC, or in the alternative, dismissing the OSA from this case.

Respectfully submitted,

**CONNER & WINTERS, LLP**

/s/  Isaac R. Ellis
Robert Dale James, OBA #16667
Isaac R. Ellis, OBA #30072
4000 One Williams Center
Tulsa, OK 74172-0148
Tel: 918.586.5711
rob.james@cwlaw.com
iellis@cwlaw.com

**Attorneys for Oklahoma Sheriffs'**
**Association**

26

## <u>CERTIFICATE OF SERVICE</u>

☑      I hereby certify that on the 7th day of July, 2023, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants admitted in the case.

/s/  Isaac R. Ellis

27