**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1)     CARLY GRAFF, | ) | |
| | ) | |
| On behalf of themselves and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 17-CV-00606-TCK-JFJ |
| | ) | (Complaint - Class Action) |
| (1) ABERDEEN ENTERPRIZES II, INC., | ) | |
| AN OKLAHOMA CORPORATION, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**RENEWED MOTION TO DISMISS SECOND AMENDED COMPLAINT AND BRIEF
IN SUPPORT OF DEFENDANTS THE BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF ROGERS; SCOTT WALTON (SHERIFF OF
ROGERS COUNTY) (OFFICIAL CAPACITY); AND KIM HENRY
<u>(FORMER COURT CLERK OF ROGERS COUNTY) (OFFICIAL CAPACITY)</u>**

Respectfully submitted,

Thomas A. LeBlanc, OBA #14768
**BEST & SHARP**
One West Third Street
Williams Center Tower I, Suite 900
Tulsa OK 74103
(918) 582-1234 Telephone
(918) 585-7447 Facsimile
tleblanc@bestsharp.com
twagner@bestsharp.com
*Attorneys for Defendants,*
*Scott Walton, Sheriff of Rogers County,*
*in his official and individual capacities;*
*and Board of County Commissioners of*
*Rogers County, Oklahoma; Kim Henry, in*
*her official capacity only.*

July 7, 2023.

## TABLE OF CONTENTS

I.    BACKGROUND ....................................................................................1

II.   ARGUMENTS AND AUTHORITIES.................................................10

      A.    PLAINTIFFS LACK STANDING TO PURSUE CLAIMS AGAINST
            THE ROGERS COUNTY DEFENDANTS .......................................11

      B.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR RELIEF
            AGAINST THE ROGERS COUNTY DEFENDANTS................................11

            1.    THE ROGERS COUNTY BOARD OF COMMISSIONERS IS
                  NOT A PROPER PARTY DEFENDANT ...............................12

            2.    PLAINTIFFS HAVE FAILED TO IDENTIFY ANY CUSTOM,
                  POLICY, OR PRACTICE OF THE ROGERS COUNTY
                  DEFENDANTS THAT WAS THE MOVING FORCE BEHIND
                  A CONSTITUTIONAL VIOLATION.................................12

                  a.    Plaintiffs Have Failed to Identify an Underlying
                        Constitutional Violation.................................................13

                  b.    Plaintiffs Have Failed to Identify any "Final Policy" of
                        Sheriff Walton or Court Clerk Henry that Violated Their
                        Constitutional Rights ....................................................14

                  c.    Plaintiffs Have Failed to Show that a Policy or Custom of
                        Rogers County was the Moving Force Behind Any
                        Constitutional Violation.................................................17

      C.    PLAINTIFFS' REQUESTS FOR PROSPECTIVE INJUNCTIVE
            AND DECLARATORY RELIEF HAVE BECOME MOOT AND/OR
            PLAINTIFFS LACK STANDING TO ASSERT CLAIMS FOR
            RELIEF IN THIS REGARD ...........................................................17

III.  CONCLUSION ....................................................................................25

## **TABLE OF AUTHORITIES**

### **Case Law**

*Apodaca v. Rio Arriba County Sheriff's Dept.*,
   905 F.2d 1445 (10th Cir. 1990) ........................................................................13

*Bearden v. Georgia*,
   461 U.S. 660 (1983)   ............................................................11, 13, 15, 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)   ........................................................................12

*Bockes v. Fields*,
   999 F.2d 788 (4th Cir. 1993) ........................................................................16

*Brown v. Buhman,*
   822 F.3d 1151 (10th Cir. 2016) ...............................................................18, 19

*Camfield v. City of Oklahoma City*,
   248 F.3d 1214 (10th Cir. 2001) ........................................................................19

*Campbell–Ewald Co. v. Gomez*,
   136 S. Ct. 663 (2016)   ........................................................................18

*City of Los Angeles v. Heller*,
   475 U.S. 796 (1986)   ........................................................................13

*City of St. Louis v. Praprotnik*,
   485 U.S. 112 (1988)   ........................................................................14

*Familias v. Briscoe*,
   619 F.3d 391 (5th Cir. 1980) ........................................................................15

*Genesis Healthcare Corp. v. Symczyk*,
   133 S. Ct. 1523 (2013)........................................................................18

*Goss v. Board of County Comm'rs of Creek County*,
   2014 WL 4983856 (N. D. Okla. 2014) ........................................................................12

*Graff v. Aberdeen, et al.*,
   65 F.4th 500 (10th Cir. 2023) .............................................................1, 4, 10, 17

*Horstkoetter v. Dep't of Pub. Safety*,
   159 F.2d 1265 (10th Cir. 1998) ........................................................................18

*Hull v. City of Santa Fe,*
   113 Fed. Appx. 301 (10th Cir. 2004) ............................................................................15

*Jantzen v. Hawkins,*
   188 F.3d 1247 (10th Cir. 1999) ....................................................................................12

*Ledbetter v. City of Topeka,*
   318 F.3d 1183 (10th Cir. 2003) ....................................................................................16

*Livsey v. Salt Lake County,*
   275 F.3d 952 (10th Cir. 2001) ......................................................................................13

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992)   ....................................................................................................11

*McCaskey v. State,*
   781 P.2d 836 (Okla. Cr. 1989) .......................................................................................7

*Meade v. Grubbs,*
   841 F.2d 1512 (10th Cir. 1988) ....................................................................................12

*Monell v. New York City Dept. of Social Services,*
   436 U.S. 658 (1978)   ....................................................................................................13

*Myers v. Okla. County Bd. of County Comm'rs,*
   151 F.3d 1313 (10th Cir. 1998) ..............................................................................13, 17

*O'Shea v. Littleton,*
   414 U.S. 488 (1974)   ..............................................................................................19, 25

*Patel v. Hall,*
   849 F.3d 970 (10th Cir. 2017) ......................................................................................14

*PETA v. Rasmussen,*
   298 F.3d 1198 (10th Cir. 2002) ..............................................................................11, 19

*Randle v. City of Aurora,*
   69 F.3d 441 (10th Cir. 1995) ..................................................................................14, 16

*Robbins v. Okla.,*
   519 F.3d 1242 (10th Cir. 2008) ....................................................................................12

*Surplus v. City of Delphi,*
   928 F.2d 788 (7th Cir. 1991) ........................................................................................16

iii

*Teigen v. Renfrow*,
    511 F.3d 1072 (10th Cir. 2007) ...................................................................11, 12

*Tilden v. State*,
    306 P.3d 554 (Okla. Cr. 2013) .........................................................................7

*Tulsa Exposition & Fair Corp.*,
    468 P.2d 501 (Okla. 1970) ..............................................................................14

*Turner v. McGee*,
    681 F.3d 1215 (10th Cir. 2012) ......................................................................11

*Watson v. City of Kansas City*,
    857 F.2d 690 (10th Cir. 1988) ........................................................................13

*West v. Atkins*,
    487 U.S. 42 (1988)    ...........................................................................13

*Whitesel v. Sengenberger*,
    222 F.3d 861 (10th Cir. 2000) ........................................................................15

*Winbush v. State*,
    433 P.3d 1275 (Okla. Crim. App. 2018).........................................................8

*Wyoming v. U.S. Dep't of Agr.*,
    414 F.3d 1207 (10th Cir. 2005) ......................................................................19

**<u>Statutes</u>**

42 U.S.C. §1983     ......................................................11, 13, 15, 16, 17, 19

19 O.S. §131     ................................................................................12

19 O.S. §220     ................................................................................12

19 O.S. §510     ................................................................................12

19 O.S. §514.4     ........................................................2, 8, 9, 15, 16, 22, 23

19 O.S. §514.5     .................................................................9, 15, 16, 17, 23

20 O.S. §§1313.2-1313.5     ..............................................................7

21 O.S. §540     .................................................................................6

22 O.S. §454-463     ...........................................................................7

22 O.S. §456A .................................................................................................12

22 O.S. §982 ..............................................................................................22, 23

22 O.S. §983 ...........................................................7, 8, 10, 19, 20, 21, 22, 23, 24

22 O.S. §1051(b) .............................................................................................7

28 O.S. §35 ....................................................................................................12

28 O.S. §101 ....................................................................................................6

28 O.S. §151-153 ..........................................................................................7, 9

28 O.S. §162 ....................................................................................................7

63 O.S. §2-332 ................................................................................................6

63 O.S. §2-401(B)(2) ......................................................................................6

63 O.S. §2-405 ................................................................................................6

**Other**

Fed. R. Civ. P. 12(b)(6) ................................................................................11

**RENEWED MOTION TO DISMISS SECOND AMENDED COMPLAINT
AND BRIEF IN SUPPORT OF DEFENDANTS THE BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY OF ROGERS; SCOTT WALTON
(SHERIFF OF ROGERS COUNTY) (OFFICIAL CAPACITY); AND KIM HENRY
(FORMER COURT CLERK OF ROGERS COUNTY) (OFFICIAL CAPACITY)**

COME NOW Defendants The Board of County Commissioners of the County of Rogers,

Scott Walton (Sheriff of Rogers County) in his official capacity, and Kim Henry (former[1] Court

Clerk of Rogers County), in her official capacity, (collectively "Rogers County Defendants"), and

pursuant to Fed.R.Civ.Proc. 12(b)(1), (6), and this Court's Order, (Doc. 380), file this Renewed

Motion to Dismiss Second Amended Complaint and Brief in Support.

## I.    BACKGROUND

*Plaintiffs' Allegations*.[2]  Plaintiffs allege that they are indigent individuals who have been

convicted of criminal or traffic offenses and assessed fines and fees as part of their sentences.

(Doc. 212, ¶¶1, 2, 6, 18-25, 117, 133, 144).  At sentencing, or after release from incarceration

following a prison sentence, Plaintiffs were instructed to make payments or set up payment plans

with a "cost administrator."  (*Id.* at ¶¶9, 35-37, 108-109, 113, 134).  Plaintiffs allege that an "illegal

debt-collection scheme" began thereafter in which a court clerk or cost administrator sought a

failure-to-pay arrest warrant without providing notice to each Plaintiff.  (*Id.* at ¶¶5, 50, 118-121,

136-137).  Plaintiffs suggest that the failure-to-pay warrant is issued as a matter of course by a

state court judge without a hearing, (*id.* at ¶¶5, 33-34, 50, 120, 136), and is executed by a sheriff

who is aware that no notice or hearing has been provided to the criminal defendants.  (*Id.* at ¶¶30-

32).  Plaintiffs allege that these warrants are not based on a failure to attend a court hearing, as

---

[1] Kim Henry resigned from her position as the Court Clerk of Rogers County effective July
16, 2018.  Since that time, Cathi Edwards has been appointed to serve as Court Clerk.

[2] This summary of Plaintiffs' allegations is taken from the opinion of the Tenth Circuit.
*See Graff v. Aberdeen, et al.*, 65 F.4th 500 (10th Cir. 2023).

there is typically no scheduled hearing for court debtors to attend.  (*Id.* at ¶¶1-2, 5, 33-37, 50, 95, 121, 136).  Plaintiffs suggest that this is true even though Oklahoma law (via Rule 8.4 of the Oklahoma Court of Criminal Appeals) indicates a debtor "must be given an opportunity to be heard as to the refusal or neglect to pay [an] installment when due."  *See* Rule 8.4 of Rules of the Oklahoma Court of Criminal Appeals.

According to Plaintiffs, after the initial warrant for non-payment is issued, the court clerk or sheriff has the discretion to transfer a case to Aberdeen for collection, at which point a statutory 30% surcharge is added to the total debt owed.  (*Id.* at ¶¶5, 35-37, 57-59, 125, 137, 283).  Plaintiffs concede that the transfer of the case to Aberdeen was authorized by Oklahoma statutory law, e.g., 19 O.S.2010 §514.4, and results from a contract between Aberdeen and OSA; OSA pays Aberdeen for its collection services from the amount of the surcharge collected from the criminal defendant. (Doc. 212 at ¶¶5, 55-59, 125, 137).  According to Plaintiffs, the transfer of the case to Aberdeen and adding the statutory 30% surcharge occur without notice to the debtor; without involvement of a judge; and without any opportunity for the debtor to be heard.  (*Id.* at ¶¶5, 50).

Plaintiffs further allege that, once the matter is transferred to Aberdeen, Aberdeen repeatedly contacts the criminal defendants and/or his or her family and threatens arrest to coerce payment, even where Aberdeen allegedly knows the criminal defendant is too poor to pay.  (*Id.* at ¶¶2, 7, 82, 205-211).  Plaintiffs aver that Aberdeen has trained its employees to coerce debtors into making payments they cannot afford by (1) claiming the only way to remove an active arrest warrant is to make a payment that Aberdeen deems sufficient and (2) threatening the debtor's imminent arrest.  (*Id.* at ¶¶73, 75, 77).  Even though there is simply no dispute that such persons could request a hearing with the Court, Plaintiffs argue that, at no point in this process, are any hearings held in state court where an individual can contest these collection efforts.  (*Id.*).

Plaintiffs further allege that, if Aberdeen's efforts are unsuccessful, Aberdeen contacts court clerks and/or cost administrators to request an arrest warrant for non-payment. (*Id.* at ¶¶88-90). Aberdeen allegedly does not provide court officials with any of the information it possesses about the debtor's inability to pay. (*Id.*). Rather, according to Plaintiffs' theory, court clerks help Aberdeen seek new arrest warrants based solely on "unsworn" allegations of non-payment and without inquiry into the reason for non-payment or ability to pay. (*Id.* at ¶¶ 9, 35-37, 62-63, 88-90). These warrants are routinely issued by judges, without a hearing or providing the debtor any opportunity to explain why he or she did not pay – and executed by the county sheriffs. (*Id.* at ¶¶9-10, 30-34, 64-65, 83-93, 207). Although Plaintiffs could clearly request a hearing with the district court (per Rule 8 of the Oklahoma Criminal Rules), no such hearing is initiated or scheduled by the district court. (*Id.* at ¶¶92-93). Plaintiffs allege these warrants, on their face, violate the 14th Amendment because they are sought without a factual basis in the warrant application or findings in the record about the defendant's ability to pay.

Plaintiffs do not identify any person that Rogers County Defendants arrested or jailed for any failure to pay. But, in general, Plaintiffs allege that when defendants are arrested on failure-to-pay warrants, Sheriffs keep them in jail if they are too poor to pay a fixed sum required for their release -- $250 in Tulsa County and the amount of the debt owed in Rogers County. (*Id.* at ¶¶ 10, 31-32, 65, 97-98, 128-129, 139). Plaintiffs assert that individuals remain in jail when they cannot pay their obligations. (*Id.*; *see also id.* at ¶¶25, 209). The delayed hearings are sometimes the first time an indigent debtor has the ability to explain to a judge that she is financially unable to pay. (*Id.* at ¶¶9-10, 92-98, 120-129, 136-140). Plaintiffs allege that some judges order individuals to remain in jail and "sit out" their debt if they cannot make a payment when they are eventually brought to court. (*Id.* at ¶¶ 10, 98, 14). Plaintiffs allege that neither Sheriffs, Judges, or anyone else provide any of the inquiries, findings, or procedural safeguards required by Supreme Court

precedent and state law before a person can be jailed for nonpayment.  (*Id.* at ¶¶10, 30-37, 40-45, 79, 88-93).  According to the 10th Circuit, Plaintiffs' basic challenge is to the practice of detaining persons on debt-collection warrants for simply failing to pay their court debit "without any notice or hearing at which a person can challenge the basis for the warrant." *Graff v. Aberdeen, et al.*, 65 F.4th 500, 511 (10th Cir. 2023).

   ***Claims.***  Plaintiffs have asserted six (6) claims against these moving Defendants:

Count 2:       Fourteenth Amendment (Seeking, Issuing and Executing Arrest Warrants for Failure to Pay) (Doc. 212 at p. 89).

Count 3:       Fourth Amendment (Seeking, Issuing and Executing Arrest Warrants Based Solely on Unsworn Allegations of Non-Payment) (Doc. 212 at p. 90-92).

Count 4:       Fourteenth Amendment (Detaining Persons for Failure to Pay) (Doc. 212 at p. 92-93).

Count 5:       "State Created Liberty Interests" (Jailing Debtors for Failure to Pay) (Doc. 212 at 93-94).

Count 6:       Fourteenth Amendment (Sheriff, Official Capacity) (Aberdeen's role in collecting court debts). (Doc. 212 at p. 95-96).

Count 7:       Fourteenth Amendment (Subjecting individuals to "Onerous Collection Enforcement Methods" violates "Equal Protection Clause").  (Doc. 212 at 96-97).[3]

   ***Requests for Relief.***  Plaintiffs seek a variety of "relief" by virtue of their various causes of action, including injunctive and declaratory relief, along with monetary "damages":

a.       Certification of the classes, represented by the named Plaintiffs, described in paragraphs 214-273.

b.       An award of treble damages as authorized by RICO, 18 U.S.C. § 1964(c);

---

[3] Plaintiffs have dismissed their claims of abuse of process (Count 8), civil extortion (Count 9) and unjust enrichment (Count 10) against these moving Defendants.  In addition, Plaintiffs no longer pursue a RICO (Claim 1) against the Rogers County defendants in their official capacities. (Doc. 212 at p. 80).

4

c.   An order declaring it unlawful for Defendants to seek, issue, and execute debt collection arrest warrants based solely on alleged nonpayment, and similarly that it is unlawful to seek, issue, and execute such warrants without inquiry into ability to pay, consideration of alternatives, pre-deprivation process, and factual allegations based on oath or affirmation;

d.   An order prohibiting Aberdeen, Inc., Jim Shofner, Rob Shofner, the Tulsa Cost Administrator, the Tulsa and Rogers County Court Clerks, Tulsa County, Rogers County, the Sheriffs' Association, and the 54 Sheriff Defendants from seeking or enforcing debt-collection arrest warrants based on nonpayment without making inquiry into the warrant subject's ability to pay and consideration of alternatives;

e.   An order declaring it unlawful for the Tulsa County Judges and Rogers County Judge to issue debt-collection arrest warrants on the basis of unsworn statements, and declaring the same unconstitutional;

f.   An order prohibiting the Tulsa County and Rogers County Sheriffs from holding individuals arrested on debt-collection arrest warrants in jail unless they pay a pre-set sum, without any inquiry into ability to pay and without advancing a compelling government interest, and declaring the same unconstitutional;

g.   An order enjoining Defendants from using a debt collection company that exercises control over debtors' liberty and also has a direct financial interest to infringe on that liberty, and declaring the same unconstitutional;

h.   An order enjoining the practice of subjecting individuals too poor to pay their court debts to more onerous collection methods, including, but not limited to, imposing additional financial penalties, threats of arrest, arrest and detention, and declaring the same unconstitutional [injunctive claims not asserted against Tulsa County judges or Rogers County judges];

i.   An order enjoining the collection of a 30-percent penalty surcharge from individuals too poor to pay their court debt, and declaring the assessment of that penalty, without any inquiry into an individual's ability to pay, unconstitutional;

j.   An award of compensatory and punitive damages;

k.   An award of declaratory and injunctive relief;

l.   An award of Plaintiffs' costs and reasonable attorneys' fees; and

m.   An order of such other relief as the Court deems just and appropriate.

***Plaintiff Carly Graff.***  The only two plaintiffs who have any connection to Rogers County

5

are Carly Graff and Melanie Holmes.  Graff was previously stopped and issued a citation for failure to properly use a child passenger restraint system for a child at least 4 years of age but younger than 8 years of age.  (Case TR-2017-1672, Rogers County District Court).  Graff does not allege that she was incarcerated or arrested due to a failure to pay warrant.  (Doc. 212, ¶18).  She merely alleges that a warrant was issued, and during that time frame, she worried about being arrested. (*Id.*).  Plaintiffs concede that Graff no longer has an active arrest warrant nor outstanding court debt in Rogers County.  (Doc. 342).

 ***Plaintiff Melanie Holmes (a/k/a Melanie Lee).***   Plaintiff Melanie Holmes (a/k/a Melanie Lee) was arrested in March of 2008 in Rogers County for (1) unlawful possession of a controlled drug with intent to distribute (in violation of 63 O.S. §2-401(B)(2)); (2) possession of a precursor to manufacture a controlled dangerous substance (in violation of 63 O.S. §2-332); (3) unlawful possession of drug paraphernalia (in violation of 63 O.S. §2-405); and (4) obstructing an officer (in violation of 21 O.S. §540).   (Rogers County District Court, CF-2008-143).  She has also been arrested in other counties in the State.  (Doc. 212, ¶25).  As part of her sentence, she was required to pay certain costs and fines.  (*Id.*).  While a bench warrant was issued for her failure to comply with the terms of her sentence, Holmes was never arrested, detained, or imprisoned by any Rogers County Defendants for failure to pay fines, fees, or costs.  Plaintiffs do not allege otherwise.  (*Id.*).

 ***Oklahoma Pre-2023 Statutory Law.***   Prior to 2023, Oklahoma had enacted a variety of measures related to collection of outstanding fines and costs from those charged and convicted of violating Oklahoma law.  Costs, fees, and fines were (and are) assessed against a defendant at the time of sentencing; they form part of the sentence imposed on a defendant.  *See* 28 O.S. §101.  The collection of such costs, fees, and fines is a mandatory duty expressly placed upon the judiciary acting through the district courts and their court clerks.  *See, e.g*., 28 O.S. §§ 151-153; 28 O.S. § 162; 20 O.S. §§ 1313.2-1313.5.  The Court of Criminal Appeals has been charged with developing

procedural rules to be followed by lower courts in the collection of costs, fees, and fines in criminal cases. Okla. Const. art. 7, § 4; 22 O.S.2018 § 983(D). As discussed further below, these rules are found within Rule 8.1 through Rule 8.8. *See Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, Appx. (2018). These rules have the force of statute. 22 O.S. § 1051(b). Likewise, the Oklahoma Supreme Court exercises supervisory authority over the collection of fines and costs by virtue of their general superintendent control over all inferior courts and express statutory authority to institute a cost collection program. Okla. Const. art. 7, §4; 28 O.S. §151(D).

In Oklahoma, a defendant remains under the jurisdiction of the district court until such time as the amounts ordered are paid in full. 22 O.S.2018 §983. A court has the power to compel the attendance of persons who have disobeyed an order of the court through issuance of a bench warrant. 22 O.S. §§ 454-463. A defendant's cost, fine and fee obligations must reviewed periodically, since a defendant's financial ability to pay may change. In the context of costs, fines, and fee collections, a bench warrant may be issued for a defendant's failure to appear as directed and/or failure to comply with an order to make installment payments. *Id.* In issuing a bench warrant, a court is not called upon to determine the reason a court order has been disobeyed, only that the order has, in fact, been disobeyed by the defendant. At that point, the burden is on the defendant to prove that his noncompliance with a court order to pay costs, fines, and fees was excusable. *E.g., Tilden v. State*, 306 P.3d 554, 556 (Okla. Cr. 2013); *McCaskey v. State*, 781 P.2d 836, 837 (Okla. Cr. 1989). To prove a "failure to pay" violation, "the State bears the initial burden to prove that the probationer has failed to make restitution payments . . . Thereafter, the burden shifts to the probationer to prove that his failure to pay was not willful or that he has made sufficient *bona fide* efforts to pay." *Winbush v. State*, 433 P.3d 1275, 1279-80 (Okla. Crim. App. 2018).

***Rules and Procedures.*** Plaintiffs recognize that, even prior to the 2023 amendments (discussed *infra*), Oklahoma had a procedure for obtaining a judicial hearing on any outstanding

7

fines and costs.[4]  (*E.g.,* Doc. 212 at ¶95).  Per Rule 8.1 of the Rules of the Court of Criminal Appeals, where the judgment and sentence of a court imposed a "fine and/or costs upon a defendant, a judicial hearing shall be conducted and judicial determination made as to the defendant's ability to immediately satisfy the fine and costs."  If a defendant is capable of paying, but refuses or neglects to pay in accordance with the court order, he or she may be immediately confined.  Rule 8.2.  If the defendant may be able to pay, the court may order him or her to make installment payments in reasonable amounts and fix a due date for each payment.  Rule. 8.3.  If the defendant fails to make an installment payment, he must be given an opportunity to be heard as to the refusal or neglect to pay the installment when due.  Rule 8.4.  If the defendant fails to provide a satisfactory explanation for failure to pay, the defendant may then be incarcerated.  If the defendant has the ability to pay but cannot due to exigent circumstances or misfortune, the Court in its discretion may provide the defendant with further opportunity to satisfy the fine as "governed by the facts and circumstances of each particular case."  *Id.*  If the court issues an order of detention for failure to pay, the defendant has a right of immediate appeal to the Court of Criminal Appeals and may seek a stay of the order of detention.  Rule 8.8, 8.9.

Oklahoma Sheriffs were allowed to enter into contracts with private entities who will attempt to locate and notify persons of their outstanding misdemeanor or failure-to-pay warrants. 19 O.S.2010 §514.4(A).  A county sheriff was statutorily permitted to assign its right to so contract to the Oklahoma Sheriff's Association.  19 O.S.2010 §514.4(E).  The statute further authorized any person to make payment (for fines, fees, costs) directly to the Court, and the contractor was also authorized to accept payment on misdemeanor or failure-to-pay warrants.  19 O.S.2010

---

[4] Because costs, fees and fines are part of the penalty imposed in a criminal proceeding, a defendant remains under the jurisdiction of the district court until such time as the amounts are paid in full.  22 O.S.2018 § 983.

§514.4(B).  A person could make said payment in lieu of appearing before the court and, if said payment is made, a Court "shall release the outstanding misdemeanor or failure-to-pay warrant upon receipt of all sums due pursuant to said warrant. . ."  19 O.S.2010 §514.4(D).

Statutory law further provided that, if a misdemeanor or failure-to-pay warrant was referred to a contractor (per 19 O.S.2010 §514.4(A)), said warrant "shall include the addition of an administrative cost of thirty percent (30%) of the outstanding misdemeanor or failure-to-pay warrant, scheduled fine or sum due, and all associated fees, costs and statutory penalty assessments."  19 O.S.2010 §514.5(A).  This administrative cost could be waived or reduced, but only upon order of the Court.  *Id.*  The administrative cost was to be distributed to the association administering the provisions of the contract (i.e., the Sheriff's Association, here), and a portion could be used to compensate the contractor.  19 O.S.2010 §514.5(B).

***The 2011 Order of the Oklahoma Supreme Court.***  The Oklahoma Supreme Court exercises significant authority over the collection of fines and costs by virtue of its superintendent control over all inferior courts, Okla. Const. art. 7, § 4, and express statutory authority to institute a cost collection program.  28 O.S. § 151(D).  On January 13, 2011, the Oklahoma Supreme Court issued an order *directing* district courts to participate in the misdemeanor and failure to pay warrant collection program discussed above.  That Order was signed by then-Chief Justice Steven W. Taylor, and was agreed-to by all Justices on the Court.  That Order stated:

ORDER

Each district court is authorized and directed to participate in the misdemeanor or failure-to-pay warrant collection program authorized by Title 19 Oklahoma Statutes Sections 514.4 and 514.5 immediately.  These collections apply to both misdemeanor and felony cases.

Dated this 13th day of January, 2011.

_____
Chief Justice Steven W. Taylor

ALL JUSTICES CONCUR

(Exhibit 1, SCAD Order, Oklahoma Supreme Court Case 2011-08).

 **2023 Statutory Amendments.**  In the Tenth Circuit's opinion in this case, it noted that Oklahoma amended 22 O.S. §983(A) in 2022, and that the "revisions appear designed to alleviate many of the due-process-based problems identified in the SACAC.  The revised version of §983 becomes effective on July 1, 2023.  The changes wrought by the revised version of §983 may well affect the forward-looking claims set out in the SACAC and should be addressed by the parties on remand."  *Graff,* 65 F.4th at 512 n.14.  Those changes will be addressed further below.

## II.   ARGUMENTS AND AUTHORITIES

 Plaintiffs' claims against the Rogers County Defendants should be dismissed.[5]  First, Plaintiffs lack standing to pursue claims against Rogers County because their injuries cannot be traced to any actions of the Rogers County Defendants.  In addition, Plaintiffs have failed to identify a violation of their constitutional rights, and have failed to identify any policy, pattern or practice of Rogers County that violated their rights.  Plaintiffs have also not shown that Sheriff Walton or Court Clerk Henry had final policy making authority over the issuance of bench

---

[5] The Tenth Circuit's opinion in this case only addressed *Rooker-Feldman*, *Heck*, and *Younger*.  It did not purport to rule on alternative bases for dismissal and specifically indicated that the "better course is to remand the matter so, if appropriate, the district court can produce a 'reasoned . . . decision on the subjects.'"  *Graff,* 65 F.4th at 526.

10

warrants or regarding the assessment of indigency under *Bearden*.  Defendants' compliance with, and effectuation of, <u>state law</u> cannot be considered a "policy" of Rogers County for purposes of §1983 liability.  Finally, Plaintiffs' requests for <u>prospective</u> declaratory and injunctive relief are moot in light of 2023 amendments to Oklahoma law.

### A.   PLAINTIFFS LACK STANDING TO PURSUE CLAIMS AGAINST THE ROGERS COUNTY DEFENDANTS

Plaintiffs lack standing to assert claims against Sheriff Walton and Clerk Henry.  To have standing to file suit, the plaintiff must show (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury is redressable by a favorable decision.  *See PETA v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002); *see also Turner v. McGee*, 681 F.3d 1215, 1218 (10th Cir. 2012).  Regarding causation, the second element, the "injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).  Here, Plaintiffs target the State of Oklahoma's assessment and collection of fines, fees, and costs.  Since county officers lack authority to act in these areas, i.e., lack authority to alter state law and state judicial procedures, Plaintiffs cannot trace their injuries to any alleged official conduct of Sheriff Walton or Court Clerk Henry.  Hence, Plaintiffs lack standing to pursue their claims against Walton and Henry in their official capacities.

### B.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR RELIEF AGAINST THE ROGERS COUNTY DEFENDANTS

Plaintiffs have also failed to state a claim for relief against the Rogers County Defendants.  In analyzing a motion to dismiss based on Rule 12(b)(6), the Court "must look for plausibility in the complaint."  *See Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007) (internal quotations omitted).  "Under this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'"  *Teigen*, 511 F.3d at 1078 (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544 (2007)). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008). When a plaintiff sues "the government agency and a number of government actors sued in their individual capacities," it is "particularly important ... that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *See Robbins*, 519 F.3d at 1249–50 (emphasis in original)).

### 1. THE ROGERS COUNTY BOARD OF COMMISSIONERS IS NOT A PROPER PARTY DEFENDANT

Plaintiffs have sued the Board of County Commissions for Rogers County, claiming it is responsible for establishing "policy" at the Rogers County jail and for the collection of court debt. (Doc. 212 at ¶39). These assertions are legally inaccurate. The Sheriff is an elected position, and is responsible for, among other things, the Rogers County jail and service of certain court process. *E.g.*, 19 O.S. §§131; 510 *et seq*. Likewise, the Court Clerk position is an elected position and is responsible for collection of court debt. *E.g.*, 19 O.S. §131, 220; 22 O.S. §456A; 28 O.S. §35. The Board is not a proper party to this action and should be dismissed. *See Jantzen v. Hawkins*, 188 F.3d 1247, 1259 (10th Cir. 1999) (finding Sheriff is not controlled by Board and Board could not be held liable for alleged unlawful termination); *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988); *Goss v. Board of County Comm'rs of Creek County*, 2014 WL 4983856, 6 (N.D. Okla. 2014) (finding Board entitled to summary judgment, as it was "statutorily separate and distinct from the independently elected sheriff."). Plaintiffs have already sued the Sheriff and the Clerk in their official capacities, so the claim against the Board is unnecessary and superfluous.

### 2. PLAINTIFFS HAVE FAILED TO IDENTIFY ANY CUSTOM, POLICY, OR PRACTICE OF THE ROGERS COUNTY DEFENDANTS THAT WAS THE MOVING FORCE BEHIND A CONSTITUTIONAL VIOLATION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he suffered the deprivation of a right secured by the constitution or laws of the United States and that the defendant, acting under color of state law, caused the deprivation. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Where the defendant in question is a municipality (or other local governmental body), the plaintiff must show that a municipal policy or custom was the moving force behind the constitutional deprivation. *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658 (1978). That is, "[a] plaintiff suing a county under section 1983 must demonstrate two elements: (1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation." *See Myers v. Okla. County Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998).

### a. Plaintiffs Have Failed to Identify an Underlying Constitutional Violation

A municipality may not be held liable where there was no underlying constitutional violation by any of its employees. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Apodaca v. Rio Arriba County Sheriff's Dept.*, 905 F.2d 1445, 1447-48 (10th Cir. 1990); *Watson v. City of Kansas City*, 857 F.2d 690, 697 (10th Cir. 1988); *Livsey v. Salt Lake County*, 275 F.3d 952, 958 (10th Cir. 2001) ("A municipality may not be held liable for the actions of its employees if those actions do not constitute a violation of a plaintiff's constitutional rights"). As established in the separate Motions to Dismiss filed by Sheriff Walton and Clerk Henry, there is no underlying violation of Plaintiffs' rights. Plaintiffs Graff and Holmes have not been arrested, detained, or imprisoned for failure to pay costs and fees associated with their plea agreements and sentences. Hence, the principles enunciated in *Bearden* have not been violated, and Plaintiffs cannot show that any alleged final policy or practice of Defendants violated their constitutional rights.

13

**b. Plaintiffs have Failed to Identify any "Final Policy" of Sheriff Walton or Court Clerk Henry that Violated Their Constitutional Rights**

Further, Plaintiffs cannot show that their allegations of unconstitutional conduct are related to any final policymaking decisions of Sheriff Walton or Court Clerk Henry, or to any officially sanctioned "policy" of Rogers County. As stated above, a municipality can only be held liable for acts which the municipality itself is responsible – that is, those it has "officially sanctioned or ordered." *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988). In *Praprotnik,* the Court held that only those officials with "final policymaking authority" can subject a municipality to liability, and that the question of whether an official has "final policymaking authority" is a question of state law. *Id.* at 123. The conduct must have been taken pursuant to a policy adopted *by the official or officials responsible under state law for making policy in that area*. *Id.* To determine whether an individual is a final policymaker, the Court considers: (1) whether the official is meaningfully constrained "by policies not of that official's own making"; (2) whether the official's decisions are final – i.e., are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority. *See, e.g., Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995) (citing *Praprotnik*, 485 U.S. at 127); *Patel v. Hall,* 849 F.3d 970, 979 (10th Cir. 2017); *Praprotnik*, 485 U.S. at 125 (noting plaintiff must identify "some official or body that has the responsibility for making law or setting policy in any given area of a local government's business").

Under Oklahoma law, county officials may only exercise those powers which are expressly granted to them by statute or which are incidental to carrying out express powers. *See Tulsa Exposition & Fair Corp*., 468 P.2d 501, 507 (Okla. 1970). In this case, Plaintiffs assert that they were arrested and imprisoned for failure to pay court fines and costs "without regard to a debtor's ability to pay and on the basis of unsworn statements." (Doc. 212 at ¶1). Plaintiffs' claims are

14

based on the principles enunciated in *Bearden v. Georgia*, 461 U.S. 660 (1983), where the Court considered whether the 14th Amendment prohibited a State from revoking an indigent defendant's probation for failure to pay a fine and restitution.  The Court ultimately determined that, if a State determines a fine or restitution to be the appropriate and adequate penalty for a particular crime, it may not thereafter imprison a person solely because he lacks the resources to pay it.  *Id.* at 673. However, if the probationer has willfully refused to pay the fine or restitution when he has the resources to pay or has failed to make sufficient *bona fide* efforts to seek employment or borrow money to pay, the State is justified in using imprisonment as a sanction to enforce collection.  *Id.*

In this case, Plaintiffs have identified no facts indicating the Board of County Commissioners of Rogers County has itself adopted an official policy or practice of arresting and imprisoning individuals for failure to pay court fines and costs in violation of *Bearden*.  Further, Sheriff Walton and Court Clerk Henry do not set final, official policy with respect to whether an arrest or bench warrant will issue for failure to pay fines, costs, or fees.  The District Court in and for Rogers County issues bench warrants for a defendants' failure to appear or comply with a previous court sentence, plea agreement or breach of a Time to Pay Agreement.  In addition, the State itself has determined that the district courts and court clerks should comply with the misdemeanor and failure to pay program, per 19 O.S. §§ 514.4, 514.5.

The policy of the State of Oklahoma to require compliance with the misdemeanor and failure to pay program cannot be considered the policy of Rogers County for purposes of §1983 liability.  *See Hull v. City of Santa Fe,* 113 Fed. Appx. 301, 303 (10th Cir. 2004) ("[T]he City of Santa Fe is not liable for the conduct of the state court system."); *Whitesel v. Sengenberger,* 222 F.3d 861, 872 (10th Cir. 2000) (county cannot be liable for "merely implementing" a policy created at the state level); *Familias v. Briscoe*, 619 F.3d 391, 404 (5th Cir. 1980) ("Instead, his duty in implementing section 4.28, much like that of a county sheriff in enforcing a state law, may more

15

fairly be characterized as the effectuation of the policy of the State of Texas embodied in that statute, for which the citizens of a particular county should not bear singular responsibility."); *Bockes v. Fields*, 999 F.2d 788 (4th Cir. 1993) (rejecting §1983 claim against county when state board wielded policy-making authority); *Surplus v. City of Delphi*, 928 F.2d 788 (7th Cir. 1991) (rejecting §1983 claim where city allegedly had a "'policy' of enforcing state law").[6]

With respect to the issuance of such bench warrants, the Sheriff and the Court Clerk are restrained by decisions that are not of his own making (they are made by the judge); the Sheriff and Court Clerk have no role in the final decision regarding whether a warrant will issue (the judge makes that decision); and the Sheriff and the Clerk have no institutional authority to issue warrants (only a Court has that authority under the circumstances).  The duties of the Sheriff and Court Clerk are restrained and controlled by Oklahoma statutory law, *e.g.*, 19 O.S. §§ 514, 514.4, 514.5, and the directive of the Oklahoma Supreme Court.  (Exhibit 1).  The Sheriff and the Court Clerk are not a "final policy makers" with respect to Oklahoma's misdemeanor and failure-to-pay warrant system, which was authorized by these statutes.

The Sheriff and the Court Clerk are therefore not final policy makers with respect to the issuance of warrants related to outstanding court costs and fines, nor are they final policy makers with respect to the propriety and scope of a *Bearden* analysis or regarding how that analysis should take place.  Further, the municipality itself cannot be held liable for the issuance of the warrants at issue.  *See Randle, supra*.  In addition, a municipality may not be held liable for the decision-making of judicial officers.  *See Ledbetter v. City of Topeka*, 318 F.3d 1183 (10th Cir. 2003).

Finally, Sheriff Walton and Court Clerk Henry had no final policy-making authority with

---

[6] *If* Plaintiffs seek to hold the Rogers County Defendants liable for enforcing court orders or otherwise acting as auxiliaries of the State, they would be entitled to 11th Amendment immunity. (Doc. 399 at 19-22) (Tulsa County Motion to Dismiss arguments adopted herein).

respect to the role of a state contractor (i.e., Aberdeen, Inc.), in the collection of Court fines and costs, as that issue was governed (and *authorized*) by Oklahoma state law.  19 O.S.2010 §514.4. Defendants Walton and Henry had no role in Aberdeen's collection efforts and were not responsible for any policies related to alleged "onerous collection enforcement methods." (Doc. 212 at ¶361).  Likewise, (1) Defendants Walton and Henry had no final policy making role in setting the designated "amount" of fines and costs associated with violations of Oklahoma law (which was the job of the Oklahoma legislature); (2) the Sheriff had no role related to the complained-of 30% fee referenced in statutory law; and (3) the Clerk had no discretion but to impose the complained-of 30% fee referenced in statutory law if a failure-to-pay warrant is referred to a contractor.  19 O.S.2010 §514.5(A) (noting fee "shall" be assessed if referred).

For those reasons, Plaintiffs have failed to state a 1983 municipal liability claim based on the alleged decision-making of a final policy maker associated with Rogers County.  For that reason, Counts 2, 3, 4, 5, 6, and 7 should be dismissed against the Rogers County Defendants.

### c.   Plaintiffs Have Failed to Show that a Policy or Custom of Rogers County was the Moving Force Behind Any Constitutional Violation

For the same reasons, Plaintiffs have not alleged sufficient facts to show that "a municipal policy or custom was the moving force behind the constitutional deprivation."  *Myers v. Okla. Cnty. Bd. of Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).  Rather, Plaintiffs challenge the misdemeanor and failure to pay warrant protection program authorized by state law and state courts.  Plaintiffs cannot show that their injuries were caused by a policy that was adopted at the county level.  Plaintiffs' claims against the Rogers County Defendants should be dismissed.

### C.   PLAINTIFFS' REQUESTS FOR PROSPECTIVE INJUNCTIVE AND DECLARATORY RELIEF HAVE BECOME MOOT AND/OR PLAINTIFFS LACK STANDING TO ASSERT CLAIMS FOR RELIEF IN THIS REGARD

As noted above, the Tenth Circuit directed the parties to address the viability of Plaintiffs'

requests for prospective relief in light of amendments to Oklahoma law.  *Graff*, 65 F.4th at 512 n.14.  In this case, Plaintiffs seek declaratory and injunctive relief regarding the collection of fines, fees and costs imposed on criminal defendants in state court proceedings.  (Doc. 212 at pp. 98-100).  Plaintiffs seek injunctive and declaratory relief prohibiting Defendants from arresting or detaining individuals for failure to pay outstanding court debt in the absence of a hearing on the individual's ability to pay.  (*Id.*).  Plaintiffs also seek an order prohibiting Defendants from using "a debt collection company" that has a "direct financial interest" to "infringe on" debtors' liberty interest, and an order enjoining collection of a 30% surcharge "from individuals too poor to pay their court debt" and declaring said fee "unconstitutional" in the absence of an inquiry into an individual's ability to pay.  (*Id.*).  As discussed below, Plaintiffs' requests for prospective injunctive and declaratory relief have become moot in light of amendments to Oklahoma law.

"Two related doctrines, standing and mootness, keep federal courts within their constitutional bounds.  Standing concerns whether a plaintiff's action qualifies as a case or controversy when it is filed; mootness ensures it remains one at the time a court renders its decision." *Brown v. Buhman,* 822 F.3d 1151 (10th Cir. 2016).  "The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness) . . .  Failure to satisfy the requirements of either doctrine places a dispute outside the reach of the federal courts." *Id.*  A plaintiff's standing at the time of filing does not ensure the court will ultimately be able to decide the case on the merits. *Id.*  An "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013) (quotations and citations omitted).

"If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Campbell–Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016).  A party's

standing for retrospective relief may be based on past injuries, whereas its claims for prospective relief require a continuing injury. *Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1277 (10th Cir. 1998). As the Supreme Court has explained, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). "If, while the litigation is pending, an event occurs that heals the injury, plaintiffs lose their standing for claims for prospective relief and the claims become moot." *PETA v. Rasmussen*, 298 F.3d 1198, 1202-03 (10th Cir. 2002) (citing *Horstkoetter*, 159 F.3d at 1277).

A statutory amendment can moot a party's request for prospective relief when the amendment removes the challenged features of prior law. For instance, in *Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1223 (10th Cir. 2001), the Court rejected a declaratory judgment claim when a state criminal statute had been amended by the state legislature during the pendency of the appeal. In *Wyoming v. U.S. Dep't of Agr.*, 414 F.3d 1207 (10th Cir. 2005), the plaintiff brought an action for declaratory and injunctive relief against the Department of Agriculture concerning a particular rule regarding road construction measures. During the appeal, the defendant adopted a new rule that replaced the old rule, and the Tenth Circuit found the case was moot. *Id.* In *Brown v. Buhman*, 822 F.3d 1151 (10th Cir. 2016), the plaintiffs brought a §1983 claim against a county attorney challenging the constitutionality of Utah's bigamy statute. The Court found that the plaintiff's request for prospective relief was moot because the defendant had adopted a new policy limiting the scope of bigamy prosecutions, and the plaintiffs suffered no credible threat of future prosecution. *Id.* at 1170-71.

The same outcome applies here. During the pendency of the appeal in this case, the Oklahoma Legislature adopted substantial amendments to the statutes that govern collection of costs, fines, and fees, thereby rendering moot Plaintiffs' requests for prospective declaratory and

19

injunctive relief.  The amendments to Section 983 of Title 22 became effective on July 1, 2023.  Additional amendments were made thereafter, and a new version of the statue will take effect on November 1, 2023.  Defendant will address the November 1, 2023 amendments, as they will be in effect for all purposes relevant to Plaintiffs' requests for prospective relief.

The amended statute indicates that, when a judgment or sentence imposes a "court financial obligation," the Court at the time of sentencing or at any point thereafter may determine the ability of a defendant to pay the court financial obligation.  22 O.S. §983(B)(1) (effective 11.1.23).  The Court may make this determination at a "cost hearing" or upon written motion or affidavit by the defendant.  *Id.*  If defendants are found to be unable to pay in whole or in part, the defendant "shall be relieved of the debt by the court through a hardship waiver . . . either in whole or in part."  22 O.S. §983(B)(2).  The statute outlines certain issues that should be considered in assessing ability to pay, including income, expenses, dependents, assets, child support obligations, physical or mental health conditions, additional case-related expenses that must be paid by the defendant; and any other relevant factors.  22 O.S. §983(B)(3).  On the other hand, the following shall <u>not</u> be considered income or assets:  child support income; monies from federal, state, or tribal government for need-based programs or disability assistance; assets exempt from bankruptcy.  22 O.S. §983(B)(4).  Further, various individuals are presumed to be unable to pay.  *Id.* at §983(B)(5).

The amended statute provides direction on how Courts address these issues with criminal defendants.  At the time of a plea or sentencing, the Court shall inform the defendant of the total court financial obligations owed; the consequence of failing to pay the financial obligations; and that defendant may request a cost hearing if, at any time, he or she is unable to pay the financial obligations, at which point the court may waive all or part of the debt owed.  22 O.S. §983(C)(1).  The Court shall also order the defendant to appear immediately after sentencing at the court clerk's office to provide current contact information and to either (a) select payment terms or (b) request

20

a cost hearing.  22 O.S. §983(C)(2).  Payment can be made in full or in installments.  22 O.S. §983(C)(3).  Upon any change in circumstances affecting the defendant's ability to pay, the defendant may request a "cost hearing" before the Court by contacting the court clerk.  *Id.*

The Court for each county, and all municipal courts, shall provide a cost hearing for any defendant upon request – either by a dedicated docket or by a special setting.  22 O.S. §983(C)(4). Likewise, the Court Clerk shall periodically review cases for delinquency and, upon identifying a delinquent defendant, shall notify the Court, which will then set a hearing to determine if the defendant is able to pay.  If a "cost hearing" is requested or set by the Court, the defendant will receive a <u>summons</u> to appear in Court at a specified date/time.  22 O.S. §983(C)(4).  The statute outlines the text of the summons that will be received by the defendants.  22 O.S. §983(G)(3).  The summons notes that the defendant is (1) being ordered to appear for a cost hearing; (2) may contact the court clerk prior to the hearing to pay the amount due or re-schedule the hearing; and (3) notes that it is <u>not</u> an arrest warrant, but provides the defendant with notice that, if they fail to appear, a warrant would be issued and the case would be referred to a "cost compliance liaison" which will cause an additional administrative fee of up to 35% to be added to the amount due, and may include additional costs imposed by the court.  22 O.S. §983(G)(3).   If the defendant fails to appear for a requested cost hearing, the court may issue either a "cost cite and release" warrant or a "cost arrest warrant."  No fees will be assessed or collected as a consequence of requesting a cost hearing or related to the issuance of a "cost cite and release warrant."  22 O.S. §983(C)(4).

In determining "ability to pay" at a "cost hearing," the Court may rely on testimony, relevant documents, and information provided by the defendant.  22 O.S. §983(D).  The Court may also make inquiry of the defendant and consider other evidence or testimony concerning the ability to pay.  *Id.*  If the Court finds that the defendant is able to pay some or all of the court financial obligations, the Court may order any of the following conditions for payment:  (i) payment in full;

(ii) payment in installments; (iii) financial incentive under a set of conditions determined by the court; or (iv) community service in lieu of payment, provided the defendant shall receive credit for no less than two times the amount of the state minimum wage for each hour of community service. 22 O.S. §983(E)(1).  If a defendant fails to comply, he or she is deemed "delinquent," and the Court may issue a "cost cite and release warrant" or a "cost arrest warrant."  22 O.S. §983(E)(2). If a waiver is warranted, the court shall apply the same reduction equally to all fines, costs, fees, and assessments, excluding restitution.  22 O.S. §983(F).  A defendant is delinquent where the total amount due has not been paid or when no installments have been received in the most recent 90-day period. 22 O.S. §983(G).  The statute also addresses a situation where an officer determines that a defendant has an outstanding cost warrant, and regulates how the officer provides the individual with notice of his required appearance before the court clerk.  22 O.S. §983(H).

The statute provides that every county in the state shall fully utilize and participate in the court "cost compliance program."  22 O.S. §983(L).  A Court "shall" refer a case to the cost compliance program upon the issuance of a "cost arrest warrant"; a Court "may" refer a case to the court compliance program upon the issuance of a "cost cite and release warrant"; and a Court may refer a case to the court cost compliance program without the issuance of a warrant; provided, the defendant is delinquent and has had sufficient notice and opportunity to have a cost hearing. 22 O.S. §983(G)(4).  After a "cost hearing" where a defendant is found able to pay a court financial obligation (either in whole or in part) and then becomes delinquent in that payment, a Court may conduct a "willfulness" hearing.  22 O.S. §983(J)(1).  Such a hearing only occurs after a Court has already found (1) the defendant has the ability to pay, but (2) the defendant has failed to pay.  22 O.S. §982(A)(7).  At the "willfulness" hearing, the Court may consider a wide range of evidence. 22 O.S. §983(J)(2).  After a finding of a "willful" violation, the Court may issue a variety of punishments as outlined in the statute.  22 O.S. §983(J)(3).

The "court cost compliance program" is outlined in 19 O.S. §514.4 *et seq*. (effective 11.1.23) and was created to "assist county sheriffs and the courts of this state with the collection of fines, costs, fees, and assessments associated with any case in which a warrant has been issued and the case has been referred to the court cost compliance program pursuant" to 22 O.S. §983. 19 O.S. §514.4(A)(1).  County sheriffs may contract with a statewide association of county sheriffs to administer contracts with third parties, who shall be referred to as "court cost compliance liaisons."  These entities may assist with attempting to locate and notify persons of their outstanding misdemeanor or cost-related warrants, and recover and maintain accounts relating to past due fines, fees, costs, and assessments.  19 O.S. §514.4(A)(2).  County sheriffs may assign their rights and duties regarding these contracts to the association.  *Id.*

A person may make payment directly to the court, or to the court cost compliance liaison on cases referred pursuant to 22 O.S. §982.  19 O.S. §514.4(B).  Court cost compliance liaisons "shall inform" individuals of their rights to a cost hearing as provided in 22 O.S. §983.  Further, a Court shall release or recall any outstanding warrant, including cost-related warrants, upon receipt of all sums due pursuant the warrant or with a mutually agreeable monthly payment plan and a downpayment set at the discretion of the court at an amount no less than $100.00.  19 O.S. §514.4(D).  A single downpayment shall be sufficient to recall all cost-related warrants against a defendant pending in a single jurisdiction.  *Id.*  When a cost-related warrant is referred to the cost compliance liaison, the warrants "shall include the addition of an administrative cost of thirty percent (30%) of the outstanding misdemeanor or cost-related warrant, scheduled fine or sum due, and all associated fees, costs and statutory penalty assessments."  19 O.S. §514.5(A).

As the Court can discern, these statutes are explicit and thorough, and provide criminal defendants with adequate notice of the cost and fee judgments imposed on them, and provide a mechanism by which they can obtain a "cost hearing" on their financial obligations.  The

procedures provide a mechanism by which Courts can assess the defendants' ability to pay, outline considerations for the Court to consider in that regard, and give the Court discretion to reduce or eliminate outstanding financial obligations.  A defendant is not penalized for requesting a cost hearing.  Cost arrest warrants and cost "cite and release warrants" are only issued after a defendant has been given adequate notice of his or her obligations; notice of his or her rights to appear and be heard; and yet the defendant fails to appear and/or refuses to abide by the payment plan.

The "cost compliance liaisons" may be used to attempt to collect outstanding court debt, and these entities must advise the debtors of their right to request a cost hearing pursuant to 22 O.S. §983.  Cost compliance liaisons are only used after the defendant has had a cost hearing (where "ability to pay" is assessed); or where the defendant has failed or refused to attend a cost hearing; or where the defendant is "delinquent" and has had sufficient notice and opportunity to have a cost hearing.  Hence, Plaintiffs' requests for prospective relief are moot:

- Plaintiffs seek an order declaring it unlawful to seek, issue or execute arrest warrants based solely on alleged non-payment and without inquiry into ability to pay.  (Doc. 219, pp. 98-99).  This request is moot in light of the procedures outlined in 22 O.S. §983, which provide a "cost hearing" to defendants where a defendant's ability to pay can be assessed.

- Plaintiffs seek an order prohibiting Defendants from seeking or enforcing arrest warrants based on non-payment without making inquiry into the ability to pay.  (Doc. 219, p. 99).  This claim is moot in light of the procedures outlined in the amended statute, which require an assessment of a defendant's ability to pay, and which otherwise regulate the issuance of "cost arrest warrants" and "cost cite and release warrants."

- Plaintiffs seek an order declaring it "unlawful" for Tulsa County and Rogers County Judges to issue debt-collection warrants on the basis of unsworn statements.  (Doc. 219, p. 99).  This request is not applicable to the Rogers County Defendants, but the statute specifically addresses the circumstances under which "cost arrest warrants" and "cost cite and release warrants" can be issued.  This request for relief is moot.

- Plaintiffs seek an order prohibiting Sheriffs from holding individuals arrested on debt-collection warrants in jail unless they pre-pay a set sum, without inquiry into ability to pay. (Doc. 219, p. 99).  The amended statutes specifically address the issuance of "cost arrest warrants" and "cost cite and release warrants," which are only issued after the court provides the defendant with an opportunity to address his or her ability to pay.  Hence, this request is moot.

- Plaintiffs request an order prohibiting Defendants from using debt collection companies that exercise control over debtors' liberty interests where said companies have a "direct financial interest" to infringe on that liberty. (Doc. 219, p. 99). Plaintiffs have cited no authority for this request for relief, and it should be dismissed. It is not improper to use a third-party collection company to assist in the collection of court debt. Further, this request is moot insofar as the conduct of the third-party is regulated by the amended statute.

- Plaintiffs seek an order enjoining the practice of subjecting defendants who are too poor to pay their debts to "more onerous collection methods." (Doc. 219, p. 99). This request is moot insofar as the amended statutes allow for cost hearings where the defendant's ability to pay is considered, and courts have authority to relieve all financial obligations, depending on the evidence.

- Plaintiffs seek an order enjoining collection of a 30% surcharge from "individuals too poor to pay their court debt" and declaring the assessment, in the absence of inquiry into ability-to-pay, unconstitutional. (Doc. 219 at p. 100). This request is moot because the amended statute regulates the surcharge and regulates when that fee will be applied. Defendants are not assessed the 30% fee merely by requesting a cost hearing. The fee only applies when the matter has been referred to a cost compliance liaison, and that referral only occurs after the Court has provided the defendant with an opportunity to address his or her ability to pay. The defendants are also provided with notice concerning the circumstances under which the fee will be assessed, and how it can be avoided. 22 O.S. §983(G).

Because the amended statutes provide defendants with an ability to appear at a "cost hearing" where "ability to pay" is considered, and because cost warrants are not issued until after those procedures have been employed, Plaintiffs' requests for prospective injunctive/ declaratory relief should be deemed moot. Respect for the "proper balance in the concurrent operation of federal and state courts counsels restraint against the issuance of injunctions against state officers engaged in the administration of the State's criminal laws. . ." *O'Shea*, 414 U.S. at 678.

## III.   CONCLUSION

For these reasons, the Court should dismiss all claims against the Rogers County Defendants.

WHEREFORE, premises considered, Defendants Sheriff Scott Walton (official capacity), Court Clerk Kim Henry (official capacity) and the Board of County Commissioners of Rogers County (official capacity), respectfully request the Court dismiss Plaintiff's claims against them.

Respectfully submitted,

BEST & SHARP

*s/ Thomas A. LeBlanc*
Thomas A. LeBlanc, OBA #14768
One West Third Street
Williams Center Tower I, Suite 900
Tulsa OK 74103
(918) 582-1234 Telephone
(918) 585-7447 Facsimile
tleblanc@bestsharp.com
twagner@bestsharp.com
*Attorneys for Defendants,*
*Scott Walton, Sheriff of Rogers County,*
*in his official and individual capacity;*
*Board of County Commissioners of Rogers*
*County, Oklahoma; and Kim Henry,*
*Rogers County Court Clerk*

## **CERTIFICATE OF MAILING**

I hereby certify that on the 7th day of July, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

Daniel E Smolen
danielsmolen@ssrok.com
Donald E. Smolen
donaldsmolen@ssrok.com
Robert M. Blakemore
bobblakemore@ssrok.com
Seth T. Wayne
sw1098@georgetown.edu
Mary B. McCord
mbm7@georgetown.edu
Elizabeth Rossi
elizabeth@civilrightscorps.org
Douglas N. Letter, Admitted Pro Hac Vice
dl1016@georgetown.edu
Ryan Downer, Admitted Pro Hac Vice
ryan@civilrightscorps.org
Marco Lopez, Admitted Pro Hac Vice
marco@civilrightscorps.org
Tara Mikkilineni, Admitted Pro Hac Vice
tara@civilrightscorps.org
Ryan Downer
ryan@civilrightscorps.org
Leonard Laurenceau, Admitted Pro Hac Vice
leo@civilrightscorps.org
Shelby Calambokidis, Admitted Pro Hac Vice
sc2053@georgetown.edu
Ellora Thadaney Israni. Admitted Pro Hac Vice
ellora@civilrightscorps.org
*Attorneys for Plaintiffs*

John R Woodard III
john@csmlawgroup.com
*Attorney for Aberdeen Enterprizes II, Inc.,*
*Jim D. Shofner and Rob Shofner*

Jeffrey C. Hendrickson
jhendrickson@piercecouch.com
Robert Lamar Betts
rbetts@piercecouch.com
April D. Kelso
akelso@piercecouch.com

Robert S. Lafferandre
rlafferandre@piercecouch.com
Randall J. Wood
rwood@piercecouch.com
*Attorneys for 51 Sheriff Defendants*
*Excluding the Sheriffs of Oklahoma, Rogers*
*and Tulsa Counties*

Rodney J. Heggy
rod.heggy@oklahomacounty.org
Aaron Etherington
aaron.etherington@oklahomacounty.org
Carri A. Remillard
carri.remallard@oklahomacounty.org
*Attorney for PD Taylor, Oklahoma County Sheriff*

Chris M. Warzecha
cwarzecha@cwlaw.com
Isaac Robertson Ellis
iellis@cwlaw.com
Melodie Freeman-Burney
mburney@cwlaw.com
Robert Dale James
rob.james@cwlaw.com
Conner & Winters, LLP
*Attorneys for Oklahoma Sheriffs' Association*

Stefanie E. Lawson
stefanie.lawson@oag.ok.gov
*Attorneys for Judge Dawn Moody, Judge Doug M. Drummond,*
*Judge Williams J. Musseman, Jr. and Judge Terrell S. Crosson*

Joel L. Wohlgemuth
jlw@nwcjlaw.com
Jo Lynn Jeter
jlj@nwcjlaw.com
W. Caleb Jones
wjones@NWLawOK.com
Douglas A. Wilson
douglas.wilson@tulsacounty.org
Mike Shouse
mshouse@tulsacounty.org
*Attorneys for Don Newberry, Tulsa County Court Clerk, Vic Regalado, Tulsa County*
*Sheriff, Darlene Bailey, Tulsa County Cost Administrator, Board of County*
*Commissioners for Tulsa County*

Scott Wood
okcoplaw@aol.com
*Attorney for Kim Henry*

                                    *s/ Thomas A. LeBlanc*