# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

CARLY GRAFF, et al., on behalf of
themselves and all others similarly situated,

      Plaintiffs,

v.

ABERDEEN ENTERPRIZES II, INC., *et al.*,

      Defendants.

4:17-CV-606-TCK-JFJ
*Hon. Terence C. Kern*

## COUNTY SHERIFF DEFENDANTS' RENEWED INDIVIDUAL-CAPACITY MOTION TO DISMISS AND BRIEF IN SUPPORT

Robert S. Lafferrandre, OBA #11897
Randall J. Wood, OBA #10531
Jeffrey C. Hendrickson, OBA #32798
**PIERCE COUCH HENDRICKSON
BAYSINGER & GREEN, L.L.P.**
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
jhendrickson@piercecouch.com

***Attorneys for County Sheriff Defendants***

– July 7, 2023 –

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS  ...................................................................................................

TABLE OF AUTHORITIES ...................................................................................... iv

BRIEF IN SUPPORT ................................................................................................. 1

INTRODUCTION........................................................................................................ 1

APPLICABLE OKLAHOMA STATUTES ................................................................ 2

I.   DISTRICT COURTS MUST PARTICIPATE IN THE COST-AND-FEE PROGRAM, WHICH WAS JUST MODIFIED BY THE OKLAHOMA LEGISLATURE. ............... 2

II.  THE PREVIOUS COST-AND-FEE SYSTEM REMAINS RELEVANT TO PLAINTIFF'S CLAIMS................................................................................ 5

A. ARREST............................................................................................... 5

B. ARRAIGNMENT.................................................................................. 6

C. JUDGMENT. ......................................................................................... 8

III. COUNTY SHERIFFS CAN ONLY SET POLICIES WITHIN THE CONFINES OF THEIR STATUTORY AUTHORITY. ..................................................... 10

LAW AND ARGUMENT.......................................................................................... 11

I.   PLAINTIFFS DO NOT HAVE STANDING TO PURSUE THEIR CLAIMS AGAINST MOST SHERIFF DEFENDANTS................................................... 11

II.  PLAINTIFFS FAIL TO PLEAD FACTS SUFFICIENT TO SUPPORT PLAUSIBLE CLAIMS FOR RELIEF............................................................................ 14

A.  THE COUNTY SHERIFFS ARE ENTITLED TO QUASI-JUDICIAL IMMUNITY BECAUSE EXECUTING WARRANTS IS A "JUDICIAL FUNCTION." ........................................................................................ 14

B.  THE COUNTY SHERIFFS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE RIGHT ASSERTED BY PLAINTIFFS WAS NOT "CLEARLY ESTABLISHED" AT THE TIME THE ALLEGATIONS AROSE. ................................................................................................ 18

C.  PLAINTIFFS FAIL TO STATE A RICO CLAIM AGAINST THE COUNTY SHERIFFS.......................................................................................... 21

1.   PLAINTIFFS FAILED TO EXPLAIN HOW THE COUNTY SHERIFFS ARE INVOLVED IN A RICO ENTERPRISE. ........................................... 22

2.   PLAINTIFFS FAILED TO EXPLAIN HOW THE COUNTY SHERIFFS COMMITTED PREDICATE ACTS. ........................................................ 23

3.      PLAINTIFFS FAILED TO EXPLAIN HOW THE COUNTY SHERIFFS ENGAGED IN A PATTERN OF RACKETEERING ACTIVITY. ........... 25

4.      PLAINTIFFS FAILED TO EXPLAIN HOW THE COUNTY SHERIFFS ENGAGED IN A RICO CONSPIRACY. ......................................................... 26

D.   PLAINTIFFS FAIL TO STATE AN EQUAL PROTECTION CLAIM AGAINST THE COUNTY SHERIFFS. .................................................................... 27

1.      THE EQUAL PROTECTION CLAUSE REQUIRES A SHOWING THAT A CHALLENGED GOVERNMENT ACTION DISCRIMINATES AMONG SIMILARLY SITUATED GROUPS. ................................................ 27

2.      PLAINTIFFS' SUGGESTED GROUPS ARE NOT SIMILARLY SITUATED BECAUSE THE CHALLENGED GOVERNMENT ACTION CAN BY DEFINITION ONLY APPLY TO THE INDIGENT DEBTOR GROUP. ........................................................................................................ 29

3.      PLAINTIFFS' INEVITABLE RELIANCE ON JAMES V. STRANGE IS MISPLACED. ........................................................................................... 31

E.   BOTH OF PLAINTIFFS' CLAIMS FAIL BECAUSE PLAINTIFFS FAILED TO ASSERT SUFFICIENT FACTS SHOW HOW THE SHERIFFS, IN THE INDIVIDUAL CAPACITIES, PARTICIPATED IN THE ALLEGED VIOLATIONS. ............................................................................................... 33

F.   THE AMENDMENTS TO OKLA. STAT. TIT. 19, SECTION 514.4 AND OKLA. STAT. TIT. 22, SECTION 983 MOOT PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF. .................................................................................. 36

CONCLUSION ....................................................................................................... 37

CERTIFICATE OF SERVICE ............................................................................. 38

- iii -

## TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*Alliance v. Alternative Holistic Healing, LLC, et al.*, No. 1:15-cv-349-REB-C,
BS, 2016 WL 223815 (D. Colo. Jan. 19, 2016) .................................................................. 25, 26

*Antoine v. Byers & Anderson, Inc.*,
508 U.S. 429 (1993) ............................................................................................................. 15

*Armstrong v. State*,
742 P.2d 565 (Okla. Crim. 1987) ........................................................................................ 10

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ............................................................................................................. 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................. 33, 34, 35

*Baker v. McCollan*
443 U.S. 137 (1979) ............................................................................................................. 20

*BancOklahoma Mortgage Corp. v. Capital Title Co., Inc.*,
194 F.3d 1089 (10th Cir. 1999) ........................................................................................... 22

*BEG Investments, LLC v. Alberti*,
34 F. Supp. 3d 68 (D.D.C. 2014) ........................................................................................ 17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 554 (2006) ............................................................................................................. 33

*Bixler v. Foster*,
596 F.3d 751 (10th Cir. 2010) ....................................................................................... 21, 25

*Blum v. Yaretsky*,
457 U.S. 991 (1982) ............................................................................................................. 13

*Bush v. Rauch*,
38 F.3d 842 (6th Cir. 1994) ................................................................................................. 16

*Cain v. City of New Orleans*,
No. CV 15-4479, 2018 WL 3657447 (E.D. La. Aug. 2, 2018) ........................................... 30

*Carroll v. Carman*,
135 S. Ct. 348 (2014) ..................................................................................................... 18, 19

*Case v. W. Las Vegas Indep. Sch. Dist.*,
473 F.3d 1323 (10th Cir. 2007) ........................................................................................... 18

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*,
6 F.3d 177 (4th Cir. 1993) ................................................................................................... 13

*Coates v. Powell*,
639 F.3d 471 (8th Cir. 2011) ............................................................................................... 20

*Condict v. Condict*,
826 F.2d 923 (10th Cir. 1987) ............................................................................................. 26

*Crow v. Montgomery,*
  403 F.3d 598 (8th Cir. 2005) ........................................................................... 19

*Dodds v. Richardson,*
  614 F.3d 1185 (10th Cir. 2010) ....................................................................... 34

*Engquist v. Oregon Dep't of Agric.,*
  553 U.S. 591 (2008) ......................................................................................... 28

*Ex parte Coffelt,*
  228 P.2d 199 (Okla. Crim. 1951) ..................................................................... 10

*Fogarty v. Gallegos,*
  523 F.3d 1147 (10th Cir. 2008) ....................................................................... 34

*Friedlob v. Trustees of Alpine Mutual Fund Trust,*
  905 F.Supp. 843 (D. Colo. 1995) ................................................................ 25, 26

*Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc.,*
  528 U.S. 167 (2000) ......................................................................................... 12

*Gallagher v. Shelton,*
  587 F.3d 1063 (10th Cir. 2009) ....................................................................... 34

*Gatewood v. State,*
  519 P.2d 924 (Okla. Crim. 1974) ..................................................................... 10

*Gee v. State,*
  538 P.2d 1102 (Okla. Crim. 1975) ................................................................... 10

*Gray v. GEO Group, Inc.,*
  727 F. App'x. 940 (10th Cir. 2018) .................................................................. 33

*Grayson v. Perryman,*
  106 P. 954 (Okla. 1909) ................................................................................. 9, 10

*Green v. Branson,*
  108 F.3d 1296 (10th Cir. 1997) ....................................................................... 35

*Harvey v. Harvey,*
  931 F. Supp. 127 (D. Conn. 1996) ................................................................... 23

*Hill v. Warsewa,*
  947 F.3d 1305 (10th Cir. 2020) ....................................................................... 13

*Houston v. State,*
  591 P.2d 310 (Okla. Crim. 1979) ..................................................................... 10

*Humphries v. Cnty. of Los Angeles,*
  554 F.3d 1170 (9th Cir. 2009) ......................................................................... 21

*Imbler v. Pachtman,*
  424 U.S. 409 (1976) ......................................................................................... 15

*In re Grand Jury Proceedings Harrisburg Grand Jury 79-1,*
  658 F.2d 211 (3d Cir. 1981) ............................................................................ 17

*James v. City of Dallas,*
  254 F.3d 551 (5th Cir. 2001) ........................................................................... 13

*James v. Strange,*
    407 U.S. 128 (1972) ................................................................................. 31, 32

*Jantzen v. Hawkins,*
    188 F.3d 1247 (10th Cir. 1999) .................................................................... 11

*Johnson v. Conner,*
    236 P.2d 987 (Okla. 1951) ...................................................................... 10, 12

*Jones v. State,*
    682 P.2d 757 (Okla. Crim. 1984) ................................................................. 10

*Khalik v. United Airlines,*
    671 F.3d 1188 (10th Cir. 2017) .................................................................... 33

*Kloch v. Kohl,*
    545 F.3d 603 (8th Cir. 2008) ....................................................................... 21

*Koch v. City of Del City,*
    660 F.3d 1228 (10th Cir. 2011) .................................................................... 18

*La Mar v. H&B Novelty & Loan Co.,*
    489 F.2d 461 (9th Cir. 1973) ....................................................................... 13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014) ..................................................................................... 12

*Lugar v. Edmondson Oil Co.,*
    457 U.S. 922 (1982) ..................................................................................... 28

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................................... 11, 12

*Lundahl v. Zimmer,*
    296 F.3d 936 (10th Cir. 2002) ..................................................................... 15

*Meade v. Grubbs,*
    841 F.2d 1512 (10th Cir. 1988) .................................................................... 35

*Medina v. City and County of Denver,*
    960 F.2d 1493 (10th Cir. 1992) .................................................................... 18

*Mehdipour v. Matthews,*
    386 F. App'x. 775 (10th Cir. 2013) .............................................................. 28

*Mills v. Graves,*
    930 F.2d 729 (9th Cir. 1991) ....................................................................... 21

*Mir v. Deck,*
    676 Fed. Appx. 707 (9th Cir. 2017) ............................................................. 17

*Moss v. Kopp,*
    559 F.3d 1155 (10th Cir. 2009) .................................................................... 16

*Mullenix v. Luna,*
    136 S. Ct. 305 (2015) ................................................................................... 19

*Nesbitt v. State,*
    255 P.3d 435 (Okla. Crim. 2011) ................................................................. 10

*Niemi v. Lasshofer*,
  770 F.3d 1331 (10th Cir. 2014)......................................................................... 12

*Oklahoma Pub. Emp. Ass'n v. Oklahoma Dep't of Cent. Serv.*,
  55 P.3d 1072 (Okla. 2002) .............................................................................. 11

*Pahls v. Thomas*,
  718 F.3d 1210 (10th Cir. 2013)........................................................................ 33

Payton v. County of Kane,
  308 F.3d 673 (7th Cir. 2002)............................................................................ 14

*Pearson v. Callahan*,
  555 U.S. 223 (2009) .................................................................................. 18, 19

*Personnel Adm'r of Mass. v. Feeney*,
  442 U.S. 256 (1979)........................................................................................ 27

*PETA v. Rasmussen*,
  298 F.3d 1198 (10th Cir. 2002)........................................................................ 12

*Plumhoff v. Rickard*,
  134 S. Ct. 2012 (2014) .............................................................................. 19, 20

*Raiser v. Kono*,
  245 F. App'x. 732 (10th Cir. 2007) .................................................................. 17

*Requena v. Roberts*,
  893 F.3d 1195 (10th Cir. 2018) .................................................................. 28, 29

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ........................................................................................ 22

*Rio Grande Foundation v. Oliver*,
  57 F.4th 1147 (10th Cir. 2023)........................................................................ 12

*Rolaff v. Farmers Ins. Co.*,
  No. CIV-19-689-J, 2020 WL 4939172 (W.D. Okla. Mar. 19, 2020)................ 13, 14

*Rolf v. City of San Antonio*,
  77 F.3d 823 (5th Cir. 1996)............................................................................. 29

Safe Streets All. v. Hickenlooper,
  859 F.3d 865 (10th Cir. 2017).......................................................................... 22

*Scheidler v. Nat'l Org. for Women, Inc.*,
  537 U.S. 393 (2003) ........................................................................................ 23

*SECSYS, LLC, v. Virgil*,
  666 F.3d 678 (10th Cir. 2012)............................................................... 27, 28, 31

*Sheriff v. Accelerated Receivables Solutions, Inc.*,
  283 F. App'x 602 (10th Cir. June 23, 2008) .................................................... 13

*Shillitani v. U.S.*,
  384 U.S. 364 (1966) ........................................................................................ 16

*Smith v. Oklahoma Tax Comm'n*,
  No. 2009 WL 10671777, n. 3 (W.D. Okla. Aug. 7, 2009)................................ 17

*Snell v. Tunnell*,
   920 F.2d 673 (10th Cir. 1990)................................................................ 14, 15

*Snyder v. Trepagnier*,
   142 F.3d 791 (5th Cir. 1998).......................................................................... 35

*State v. Ballard*,
   868 P.2d 738 (Okla. Crim 1994) .................................................................... 10

*State v. Claborn*,
   870 P.2d 169 (Okla. Crim. 1994) ................................................................... 10

*Stone v. Baum*,
   409 F.Supp.2d 1164 (D. Ariz. 2005)............................................................... 18

*Stump v. Sparkman*,
   435 U.S. 349 (1978).................................................................................. 14, 15

*Taylor v. Barkes*,
   575 U.S. ---, 135 S. Ct. 2042 (2015) .............................................................. 19

*Thomas v. Wilkins*,
   61 F. Supp. 3d 13 (D.D.C. 2014) ................................................................... 17

*Toevs v. Reid*,
   646 F. 3d 752 (10th Cir. 2011)........................................................................ 18

*Trackwell v. U.S. Government*,
   472 F.3d 1242 (10th Cir. 2007)...................................................................... 15

*Tulsa Exposition & Fair Corp. v. Bd. of Cnty. Comm'rs*,
   468 P.2d 501 (Okla. 1970) ........................................................................ 10, 11

*Turner v. McGee*,
   681 F.3d 1215 (10th Cir. 2012)....................................................................... 12

*Turney v. O'Toole*,
   898 F.2d 1470 (10th Cir. 1990)....................................................................... 16

*United States v. Phillips*,
   834 F.3d 1176 (11th Cir. 2016)....................................................................... 16

*United States v. Peterson*,
   544 F. Supp. 2d 1363 (M.D. Ga. 2008)...................................................... 24, 25

*United States v. Sanders*,
   928 F.2d 940 (10th Cir. 1991)........................................................................ 22

*Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co.*,
   996 F.2d 1534 (3d Cir. 1993)......................................................................... 22

*Vigil v. State*,
   666 P.2d 1293 (Okla. Crim. 1983) ................................................................. 10

*Waddell & Reed Fin., Inc. v. Torchmark Corp.*,
   223 F.R.D. 566 (D. Kan. 2004)................................................................. 22, 25

*Washington v. Davis*,
   426 U.S. 229 (1976) ...................................................................................... 28

*White v. State*,
    756 P.2d 1251 (Okla. Crim. 1988) ........................................................................ 10

*Whitesel v. Sengenberger*,
    222 F.3d 861 (10th Cir. 2000) ...................................................................... 15, 16

*Wilkie v. Robbins*,
    551 U.S. 537 (2007) ........................................................................... 23, 24, 25

*Woods v. Oxford Law, LLC*,
    No. 2:13-6467, 2015 WL 778778 (S.D. W.Va Feb. 24, 2015) ............................ 30

## **Statutes**

*United States Constitution*
U.S. Const., Art. III ........................................................................................... 11

*United States Code*
18 U.S.C. § 894 ................................................................................................. 23
18 U.S.C. § 1951 (ii) ......................................................................................... 23
18 U.S.C. § 1952, (iii) ....................................................................................... 23
18 U.S.C. § 1961 ............................................................................................... 23
18 U.S.C. § 1961(5) ........................................................................................... 25
18 U.S.C. § 1962(a)-(c) ..................................................................................... 26
18 U.S.C. § 1962(c) ........................................................................................... 25
42 U.S.C. 1983 ................................................................................................... 18

*Oklahoma Constitution*
Okla. Const. art. 7, § 4 ........................................................................................ 9
Okla. Const. art. 17, § 2 ..................................................................................... 11

*Oklahoma Statutes*
Okla. Stat. tit. 19, § 3 ........................................................................................ 11
Okla. Stat. tit. 19, § 514.4 ......................................................................... 2, 4, 36
Okla. Stat. tit. 19, § 514.4(E) ........................................................................... 11
Okla. Stat. tit. 19, § 514.5 ................................................................................. 25
Okla. Stat. tit. 20, § 120 ...................................................................................... 9
Okla. Stat. tit. 20, § 1301 ................................................................................... 24
Okla. Stat. tit. 21, § 1481 ................................................................................... 23
Okla. Stat. tit. 21, § 1482 ................................................................................... 23
Okla. Stat. tit. 22, § 42 .................................................................................... 5, 9
Okla. Stat. tit. 22, § 172 ...................................................................................... 5
Okla. Stat. tit. 22, § 176 ................................................................................... 26

Okla. Stat. tit. 22, § 456 ................................................................................................ 7, 11
Okla. Stat. tit. 22, § 967 ............................................................................................ 8, 11, 16
Okla. Stat. tit. 22, § 968 ..................................................................................................... 17
Okla. Stat. tit. 22, § 983 ................................................................................................. 2, 36
Okla. Stat. tit. 22, § 983(A)(1) ............................................................................................ 2
Okla. Stat. tit. 22, § 983(A)(2) ............................................................................................ 2
Okla. Stat. tit. 22, § 983(B)(1) ..................................................................................... 3, 4, 9
Okla. Stat. tit. 68, § 2814 .................................................................................................. 11

## **Rules**

*Federal Rules of Civil Procedure*
Fed. R. Civ. P. 12(b)(1) ........................................................................................................ 1
Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 1

*Rules of the Oklahoma Court of Criminal Appeals*
Rule 8.2 ............................................................................................................................... 9
Rule 8.8(A) ........................................................................................................................ 10

## **Other Authorities**

William B. Rubenstein,
     Newberg on Class Actions § 2:5 (5th Ed.) ............................................................... 13

_____

## **BRIEF IN SUPPORT**
_____

The County Sheriff Defendants, in their individual capacities, move for an order from this Court dismissing Plaintiffs' claims against them under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The CSDs offer the following brief in support.

## **INTRODUCTION**

In filing their Second Amended Complaint, Plaintiffs dropped most claims against the County Sheriffs represented in this motion. Now, only two remain. The Plaintiffs seek to hold the County Sheriffs liable in their individual capacities for alleged violations of the Racketeering Influenced and Corrupt Organizations Act, as well as the Fourteenth Amendment's Equal Protection Clause. *See* Pl.'s Second Am. Compl., Doc. 212. In support of those two claims, the Plaintiffs offer three allegations: (1) Plaintiffs claim the County Sheriffs execute arrest warrants; (2) Plaintiffs claim the County Sheriffs maintain a policy and practice of arresting and confining individuals on debt-collection arrest warrants issued based on unsworn statements, without inquiry into the individual's ability to pay or any other pre-deprivation process, and on warrant applications that no reasonable person could believe were sufficient to justify arrest; and (3) Plaintiffs claim that it is the policy and practice of "Defendants" to subject individuals who owe court debt to onerous collection enforcement methods.

As pleaded, however, the County Sheriffs cannot be liable for either the RICO or Equal Protection claim. To boot, Plaintiffs only allege two sets of limited facts about themselves that pertain to these County Sheriffs. But judicially noticeable court records contradict those allegations. Without these facts, the Plaintiffs do not state claims for relief. For these reasons, the Second Amended Complaint should be dismissed against the County Sheriffs in their individual

capacities.

## APPLICABLE OKLAHOMA STATUTES

To understand the Plaintiffs' claims in context, a review of the applicable Oklahoma statues is necessary.

## I.   DISTRICT COURTS MUST PARTICIPATE IN THE COST-AND-FEE PROGRAM, WHICH WAS JUST MODIFIED BY THE OKLAHOMA LEGISLATURE.

Okla. Stat. tit. 19, § 514.4 says a county sheriff may enter a private contract for the collection of outstanding court-imposed fees and costs. If such a contract exists, the statute requires the private contractor to "locate and notify persons of certain outstanding warrants." *Id*. § 514.4(A). The County Sheriff may assign its contract right to an entity like the Oklahoma Sheriff's Association ("OSA"). *Id* § 514.4(E). But whether the contract is signed by the sheriff or the OSA, the OSA must administer and oversee the contract's performance. *Id*. § 514.4(E). Here, the County Sheriffs were not parties to the contract with Aberdeen Enterprizes, Doc. 212, ¶ 5; Doc. 212-1, and have no power to monitor the contract under § 514.4(E). That—by statute—falls to the OSA.

While the first round of motions to dismiss were pending before this Court and then on appeal, the Oklahoma Legislature passed a law amending § 514.4 and Okla. Stat. tit. 22, § 983, to create a "court cost compliance program." This program—which went into statutory effect on July 1, 2023, and must be implemented by every county in Oklahoma by November 1, 2023—appears to address many of Plaintiffs' fundamental concerns with Oklahoma's statutory cost-and-fee system and likely moots Plaintiffs' request for injunctive relief. The program operates this way: as of July 1, 2023, there are created "cost arrest" warrants and "cost cite and release" warrants. *See* § 983(A)(1)-(2). Upon the entry of a judgment and sentence which includes a fee as a term,[1] a court

---

[1] A defendant's ability to pay cannot impact the sentence imposed. *Id*. § 983(B)(1).

can determine a defendant's ability to pay—either at a cost hearing or on the defendant's written motion an affidavit. § 983(B)(1). At the time of the plea or sentencing, the court must tell the defendant the total amount owed, the consequences of failing to pay, and the defendant's right to request a cost hearing at any time if the defendant cannot pay an obligation. *Id.* § 983(C)(1). The court must order the defendant, immediately after sentencing, to appear before the court clerk to set up a payment plan or to request a cost hearing. *Id.* § 983(C)(2).

If the defendant requests a cost hearing, either before the court clerk or at any time thereafter,[2] the court provides the defendant via personal or U.S. mail service a summons to appear. *Id.* § 983(C)(4). If the defendant fails to appear for a cost hearing they request, the court can issue either a cost cite-and-release warrant or a cost-arrest warrant—but crucially, no additional fees set in when a defendant requests a cost hearing or the court issues a cost cite-and-release warrant. *Id.* If the defendant appears at a cost hearing, the result can go a few ways. If the court finds a defendant cannot pay, in whole or part, the court must relieve the defendant's debt. *Id.* § 983(B)(2). On the other hand, if the court finds a defendant can pay, the court can order full payment, installment payments, or other ways to resolve it, including community service in lieu of payments. *Id.* § 983(E)(1).

If, after this process, a defendant does not comply with the payment plan set up, the law considers them delinquent. When the court identifies a defendant's delinquency, it can issue a cost-arrest warrant or a cost cite-and-release warrant, and it must set another cost hearing to determine the defendant's ability to pay, *id.* § 983(G)(2), and issue a very specialized summons that advises the defendant of their rights, obligations, and consequences—including that an arrest warrant

---

[2] A defendant can request a cost hearing "upon any change in circumstance affecting the ability of a defendant to pay[.]" *Id.* § 983(C)(3).

would issue for non-appearance,[3] that the case would be referred to a cost-compliance liaison for collection, and that a larger administrative fee would be added to the amount owed. *Id.* § 983(G)(3).

If a defendant is found with an outstanding cost cite-and-release warrant, the officer cannot arrest them but must give them notice and a warning to appear within ten days. If they appear, the court must conduct another cost hearing. If they don't appear, or if a defendant is found with a cost-arrest warrant—issued, again, for a failure to comply with a fee program or a failure to appear—they can be taken into custody. At a hearing following any arrest, the court must conduct either *another* cost hearing or, at that point, it can conduct a willfulness hearing. *Id.* § 983(H)(4). It is only upon a finding, at a willfulness hearing, that a defendant has the ability to pay their court-imposed financial obligations and is willfully refusing to pay those obligations can the defendant be jailed, and even then they can only be jailed if they were represented by counsel or expressly waived their right to counsel. *Id.* § 983(J).

Once a cost-arrest or a cost cite-and-release warrant is issued, or once the defendant is delinquent and receives notice and an opportunity for a cost hearing, the court can refer a defendant's case to the court-cost-compliance program under § 514.4. *See* § 983(G)(4). In the cost-compliance program, third-party vendors like Aberdeen, who are now styled as "court-cost-compliance liaisons," are authorized to "attempt to locate and notify persons of their outstanding misdemeanor or cost-related warrants," and to "recover and maintain accounts relating to past due fines, fees, costs, and assessments." *Id.* § 514.4(A)(2). The County Sheriffs must use the court-cost-compliance program, *id.* § 983(L), and the statute—as it did previously—permits them to contract with a "statewide association of county sheriffs" to administer the contract with the third-

---

[3] If a defendant is found with an outstanding cost cite-and-release warrant, they cannot be taken into custody but instead receive a warning and notice to appear for a cost-hearing. *Id.* § 983(H)(1).

party "court-cost-compliance liaison," and assign to the association their rights and duties under the contracts with the compliance liaisons. *Id.* § 514.4(A).

## II.   THE PREVIOUS COST-AND-FEE SYSTEM REMAINS RELEVANT TO PLAINTIFF'S CLAIMS.

The CSDs are required to comply with the new system discussed in Section I, but for those new cost-related warrants plus the warrants that pre-dated the change to the statutes, the following rules apply. First, the County Sheriffs have no power to override judicial orders. Second, only judges issue orders. Third, the County Sheriffs' role is merely to execute those judicial orders, including warrants, commitments, and bond settings. Before the change in the law (and for non cost-related warrants untouched by the new system discussed above), these orders occur at three primary stages in the criminal proceeding: arrest, arraignment, and judgment.

### A.   ARREST.

Most criminal proceedings begin with an arrest. Judges issue arrest warrants to the County Sheriff or other court officers. Okla. Stat. tit. 22, §§ 42, 172. Felony or misdemeanor, the County Sheriff has no discretion to decline to execute a facially valid arrest warrant. *Id*. §§ 176, 177. The statutory warrant form, found at Okla. Stat. tit. 22, § 172, reads as follows:

> County of ......
>
> The State of Oklahoma
>
> To any **sheriff**, constable, marshal or policeman in this state (or in the county of ...... as the case may be):
>
> Complaint upon oath having been this day made before me that the crime of (designating it) has been committed, and accusing C. D. thereof, **you are therefore commanded forthwith to arrest the above named C. D. and bring him before me** at (naming the place), or, in case of my absence or inability to act, before the nearest or most accessible magistrate in this county.
>
> Dated at ....... this ..... day of ....... 19....

E. F., Justice of the Peace (or as the case may be).

(Emphasis added); *see also* Okl. A.G. Opin. No. 78-216, 1978 WL 31468 (Aug. 10, 1978). Then, after executing the warrant (by arresting), the County Sheriff "must take the defendant before the magistrate who issued the warrants." *Id*. § 176. The judge informs the defendant of the pending charge and associated rights (*Id*. § 251), examines the case and defendant (*Id*. § 253), and decides whether to commit the defendant on a charge or release them for no cause. (*Id*. §§ 262, 264). If the judge finds no cause, they discharge the defendant. *Id*. § 262. But if the judge finds cause, they issue a commitment form which "commands" the County Sheriff to "receive [the defendant] into your custody, and detain him until he is legally discharged." *Id*. § 269. Simultaneously, the judge decides whether the offense is bailable or not. *Id*. §§ 265, 266. If bailable, the judge sets bail and includes language in the commitment form which says the defendant has been "admitted" to bail. *Id*. § 266. The defendant is discharged if they (or someone else) pays their bail. If they cannot pay bail, the defendant remains confined and the County Sheriff cannot release them. If the offense is not bailable, the judge includes language in the commitment form which says "[the defendant] is hereby committed to the sheriff." *Id*. § 265. Again, the County Sheriff has no authority to decline to execute the judge's order. They must jail the defendant. *Id*.

## B.   ARRAIGNMENT.

When the time comes for arraignment, the defendant may be out on bail or in the custody of the County Sheriff. If the defendant's personal appearance is necessary,[4] and they are in custody, the court can direct the County Sheriff to bring the defendant to the judge, and "the officer must do so accordingly." *Id*. § 453. If the defendant is out on bail but fails to appear ("jumping bail"),

---

[4] The defendant's personal appearance is necessary when they are accused of a felony. *Id*. § 452.

the court can direct the clerk to issue a bench warrant for the defendant's arrest. *Id*. § 454. Like arrest warrants, the County Sheriffs have no authority to decline to enforce a facially valid bench warrant. The statutory warrant form, found at Okla. Stat. tit. 22, § 456, makes this clear:

---

County of ........

State of Oklahoma,

To any **sheriff**, constable, policeman or marshal in this state:

An indictment having been found (or information filed) on the ..... day of ......., A. D., 19 ..., in the district court in and for the county of ........, charging C. D. with the crime of ........, (designating it generally) **you are therefore commanded forthwith to arrest the above named C. D., and bring him before the court (or before the court to which the indictment or information may have been removed, naming it)** to answer said indictment or information; or if the court have adjourned for the term, that you deliver him into the custody of the sheriff of the county of ........

Given under my hand, with the seal of said court affixed this ..... day of ......., A. D., 19 ....

By order of the court.

(Seal) E. F., Clerk.

---

(Emphasis added). Once arraigned, the defendant can plead guilty or not guilty. *Id*. § 513. If they plead guilty, the proceeding moves to judgment. *Id*. § 961; *see* "Judgment," *infra*, at 6. If they plead not guilty, the matter proceeds to trial. In the interim, the judge again determines whether to set bail. *Id*. § 462. If the underlying offense is bailable, the judge must again fix bail and endorse that amount on the warrant. *Id*. § 458. If the offense is unbailable, the defendant "shall be held in custody by the sheriff of the county in which the indictment or information is filed." *Id*. § 459. Once again, the County Sheriff has no power to decline to hold a defendant if the judge orders it. Once the defendant is arraigned (*Id*. § 465), he "must be forthwith committed accordingly." *Id*. § 463. Then, a trial is held. If the defendant is acquitted, they are released. But if convicted (or if the

defendant previously pled guilty), the post-judgment procedure begins. Up to this point, the County Sheriffs have no discretion in the pre-judgment transfer, commitment or holding process.

### C.      JUDGMENT.

When the time comes for judgment, the County Sheriffs' authority remains limited. The defendant may still be out on bail, imprisoned if because they did not pay bail, or imprisoned because the offense was not bailable. *Id*. § 965. If the defendant's personal appearance is necessary—and they are in custody—the judge can direct the County Sheriff to bring the defendant before the court. "The officer must do so accordingly." *Id*. § 964. If the defendant is out on bail and does not appear for judgment, the judge can direct the clerk to issue a bench warrant for arrest. *Id*. § 965. And the County Sheriff *still* has no authority to decline to enforce a facially valid bench warrant. *Id*. § 969 ("Whether the bench warrant is served in the county in which it was issued or in another county, *the officer must arrest the defendant and bring him before the court*, or commit him to the officer mentioned in the warrant, according to the command thereof") (emphasis added). The statutory warrant form, found at Okla. Stat. tit. 22, § 967, makes this clear:

County of ..................

State of Oklahoma.

To any sheriff, constable, marshal or policeman in this state:

A B having been, on the ..... day of ....... A. D., 19..., duly convicted in the .......... court of the county of ......... of the crime of (designating it generally), you are **therefore commanded forthwith to arrest the above named A B and bring him before that court for judgment**, or if the court has adjourned for the term, you are to deliver him into the custody of the sheriff of the county of .......... (as the case may be).

Given under my hand, with the seal of said court affixed, this ..... day of ....... A. D., 19...

By order of the court.

(Seal). _____

Once the defendant is present (if necessary), the judge enters judgment. This judgment may be a term of imprisonment, or the imposition of a fine, or both. *Id*. § 979. Additionally, the judge must require anyone who, during their criminal proceeding, was confined in a jail to pay costs of their confinement. *Id*. § 979a. This triggers the Rule 8 proceedings described in the *Rules of the Oklahoma Court of Criminal Appeals*.

Any order to pay court costs "shall be subject to review" under Rule 8. If the judge determines that a defendant can pay all or a portion of the money owed but has willfully refused or neglected to do so, the judge may convert "a sentence to pay a fine, cost, fee or assessment...to a jail sentence." *Id*. § 983; Rule 8.2, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, Appx. (2018). As is evident, the County Sheriffs have no part in determining ability to pay, collect fines and costs. Nor do they issue warrants for non-payment. These powers fall to the judges, who are employees of the State of Oklahoma. Okla. Stat. tit. 22, §§ 42, 983(D); Okl. A. G. Opin. No. 08-30, 2008 WL 4860572, *9 (Nov. 3, 2008); *Grayson v. Perryman*, 106 P. 954, 955-56 (Okla. 1909). These judges are responsible for supervising the courts within their respective judicial districts. Okla. Const. art. 7, § 4. So too is the Oklahoma Supreme Court through the exercise of its general administrative authority over the lower state courts. Okla. Stat. tit. 20, § 120. Under that authority, the Oklahoma Supreme Court expressly directed district courts−and by those courts' orders, the County Sheriffs—to participate in the collection of fines and costs. That order was, as noted above, recently reinforced by a statutory requirement that County Sheriffs participate in the court-cost program.

If a judge finds the defendant failed to pay costs, fees or fines, the defendant has two opportunities to appeal to the Court of Criminal Appeals. First, they can challenge the amount of

costs and form of procedures in a direct appeal from the Judgment and Sentence. Rule 8.8(A),

*Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, Appx. (2018). If they do not,

and a judge converts the fine to a prison term, the defendant can then appeal from the court's

determination. *Id*. The Court of Criminal Appeals has addressed numerous challenges to cost, fee

and fine assessments as part of the appellate review process in criminal proceedings.[5]

At the close of this statutory exercise, one point emerges above all else: the County

Sheriffs' role at every step in a criminal proceeding is to carry out facially valid judicial orders.

The judge tells the Sheriff what to do, and the law prevents them from going any further.

## III.   COUNTY SHERIFFS CAN ONLY SET POLICIES WITHIN THE CONFINES OF THEIR STATUTORY AUTHORITY.

Not only do specific statutes restrict the County Sheriffs, but the office of County Sheriff

itself lacks power to do anything outside its statutory authority. This is because counties are

involuntary, subordinate political subdivisions of the state, and such political subdivisions exist

only to aid in the administration of governmental affairs. *Johnson v. Conner*, 236 P.2d 987, 989

(Okla. 1951). Counties have no inherent power of their own; instead, they derive power solely

from the State. *Id*. ("all of the powers intrusted (sic) to it are the powers of the sovereignty which

created it)" (*sic* added). This absence of sovereignty means counties "possess only such authority

as is conferred upon them by law and such authority must be exercised in the manner provided by

law." *Tulsa Exposition & Fair Corp. v. Bd. of Cnty. Comm'rs*, 468 P.2d 501, 507-08 (Okla. 1970).

---

[5] *See e.g.*, *Nesbitt v. State*, 255 P.3d 435, 438-41 (Okla. Crim. 2011); *State v. Ballard*, 868 P.2d 738, 741-43 (Okla. Crim 1994); *State v. Claborn*, 870 P.2d 169, 171-75 (Okla. Crim. 1994); *White v. State*, 756 P.2d 1251, 1252 (Okla. Crim. 1988); *Armstrong v. State*, 742 P.2d 565, 566 (Okla. Crim. 1987); *Jones v. State*, 682 P.2d 757, 759 (Okla. Crim. 1984); *Vigil v. State*, 666 P.2d 1293, 1294 (Okla. Crim. 1983); *Houston v. State*, 591 P.2d 310 (Okla. Crim. 1979); *Gee v. State*, 538 P.2d 1102, 1109 (Okla. Crim. 1975); *Gatewood v. State*, 519 P.2d 924, 926 (Okla. Crim. 1974); *Ex parte Coffelt*, 228 P.2d 199, 200-03 (Okla. Crim. 1951), *overruled on other grounds as stated in Ballard*, 868 P.2d at 742.

Similarly, public officers possess only the powers expressly granted to them by law, and those necessarily incidental to carrying out that authority. *Id*. at 507-08; *Oklahoma Pub. Emp. Ass'n v. Oklahoma Dep't of Cent. Serv*., 55 P.3d 1072, 1084 (Okla. 2002).

The Oklahoma Constitution and other associated statutes further confirm these limitations. These laws spread county functions among eight elected officials: a Court Clerk, a County Clerk, a County Sheriff, a Treasurer, a County Assessor, and three County Commissioners who together comprise the Board of County Commissioners. Okla. Const. art. 17, § 2; Okla. Stat. tit. 19, § 3; Okla. Stat. tit. 68, § 2814. Each of these officials maintains a realm of statutory authority outside of which they cannot act. And no one official exercises superintending authority over any other. Okla. Const. art. 17, § 2; *see also Jantzen v. Hawkins*, 188 F.3d 1247, 1259 (10th Cir. 1999). In judicial proceedings, the County Sheriff has a limited role, and as a function of government structure, they are not empowered to act beyond that role.

## LAW AND ARGUMENT

In filing their Second Amended Complaint, Plaintiffs dropped many claims against the County Sheriffs in their individual capacities, leaving only two. First, they allege that the Sheriffs violate the Racketeer-Influenced and Corrupt Organizations Act by their alleged participation in a vast conspiracy to undermine indigent debtors' rights. Second, they allege that the Sheriffs' knowledge of Aberdeen's "onerous" debt collection tactics violates the Fourteenth Amendment's Equal Protection Clause. Neither claim should proceed beyond the pleading stage, however. As pleaded, they suffer from fundamental problems that render them infirm, both on subject-matter and rules-based grounds.

## I.   PLAINTIFFS DO NOT HAVE STANDING TO PURSUE THEIR CLAIMS AGAINST MOST SHERIFF DEFENDANTS.

Per U.S. Const., Art. III, federal courts can hear only "cases" and "controversies." *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). Based on "the separation-of-powers principles underlying that limitation, we have deduced a set of requirements that together make up the 'irreducible constitutional minimum of standing.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 125 (2014) (quoting *Lujan*)). To have standing to file suit, the plaintiff must show (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury is redressable by a favorable decision. See *PETA v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002); see also *Turner v. McGee*, 681 F.3d 1215, 1218 (10th Cir. 2012).[6] Regarding causation, the second element, the "injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560.

The problem for Plaintiffs, relative to standing, is that their allegations are replete with efforts to hold Defendants responsible for the actions of third parties. As discussed above, Oklahoma law treats counties as involuntary, subordinate political subdivisions of the State who lack any power beyond that given from the State. *Johnson*, 236 P.2d at 989. For many Defendants, the Plaintiffs make no allegations regarding county practices. More particularly, Plaintiffs make almost none that touch directly on the actions of the various county sheriffs or board of county commissioners in their individual capacities. *Id*.

In a different but related vein, Plaintiffs' complaints regarding court clerks and deputy court clerks are not county-based, but are instead derivative of their function as an arm of the state

---

[6] Constitutional standing is a question of subject-matter jurisdiction*, see Rio Grande Foundation v. Oliver*, 57 F.4th 1147, 1160 (10th Cir. 2023), though the "case-or-controversy" directive "also protects judicial economy, ensuring the 'scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake.'" *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc.*, 528 U.S. 167, 191 (2000)). Prudential standing, also discussed herein, is a question of pleading, not jurisdiction. *See Niemi v. Lasshofer*, 770 F.3d 1331, 1345 (10th Cir. 2014). Both are applicable.

court. See, e.g., *Sheriff v. Accelerated Receivables Solutions, Inc.*, 283 F. App'x 602, 609 (10th Cir. June 23, 2008) (actions taken by court agents—there a court clerk—were in furtherance of judicial duties). In other words, Plaintiffs facially seek to hold many County defendants liable in their individual capacities for the actions of one or more third parties. Even apart from any deficiencies in their pleading Plaintiffs fail outright to demonstrate any injury traceable to most of the county defendants because those defendants lack the statutory authority to act in the areas from which Plaintiffs' claims arise.

Moreover, the putative class-action nature of Plaintiffs' claims poses a prudential standing problem. See *Hill v. Warsewa*, 947 F.3d 1305, 1309 (10th Cir. 2020) (prudential standing traditionally encompasses three principles, including "the general prohibition on a litigant's raising another person's legal rights"). Where there are multiple defendants in a putative class action, like here, at least one named plaintiff must establish standing with respect to each defendant. *See Cent. Wesleyan Coll. v. W.R. Grace & Co.,* 6 F.3d 177, 188 (4th Cir. 1993) ("Moreover, it is essential that named class representatives demonstrate standing 'through a requisite case or controversy between themselves personally and [defendants][.]'") (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1001, n. 13 (1982)); accord. *Rolaff v. Farmers Ins. Co.*, No. CIV-19-689-J, 2020 WL 4939172, at *2 (W.D. Okla. Mar. 19, 2020) (unpublished) (citing Cent. Wesleyan Coll.); see also *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001) (abrogated on other grounds) (a plaintiff must have standing to seek relief for all claims against all defendants); William B. Rubenstein, Newberg on Class Actions § 2:5 (5th Ed.) ("In multi-defendant class actions, the named plaintiffs must show that each defendant has harmed at least one of them").[7]

---

[7] The lone "exception" to this requirement is the so-called "juridical link" doctrine created by the Ninth Circuit in *La Mar v. H&B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973). As of March 2020, only one Circuit, the Seventh, had applied the "juridical link" doctrine it to find

Here, the nine named Plaintiffs do not have any claims against a significant number of the County Sheriff Defendant Group. In fact, the only CSD with a named-Plaintiff claim pending against it is Cleveland County (regarding Plaintiff Kendallia Killman). For the remaining Defendants in that group, no named Plaintiff has a claim against them. Given this, Plaintiffs cannot trace their injuries to Defendants' conduct, so they do not have standing to proceed against the CSD defendants.

## II.   PLAINTIFFS FAIL TO PLEAD FACTS SUFFICIENT TO SUPPORT PLAUSIBLE CLAIMS FOR RELIEF.

Turning to each specific claim, the strictures of Rule 12(b)(6) point to dismissal. Plaintiffs have not plead facts sufficient to avoid the implication of quasi-judicial or qualified immunity; they pleaded facts sufficient to show a Fourteenth Amendment Equal Protection violation; and they failed to plead facts sufficient to state plausible claims for relief. For those reasons, dismissal remains warranted.

### A.   THE COUNTY SHERIFFS ARE ENTITLED TO QUASI-JUDICIAL IMMUNITY BECAUSE EXECUTING WARRANTS IS A "JUDICIAL FUNCTION."

The Supreme Court has recognized the defense of absolute immunity from civil rights suits in several well-established contexts involving the judicial process. *Snell v. Tunnell*, 920 F.2d 673, 686 (10th Cir. 1990). "A judge acting in his judicial capacity is absolutely immune from such suits, unless the judge acts clearly without any colorable claim of jurisdiction." *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)). The rationale for according absolute immunity in the civil rights context is to "allow functionaries in the judicial system the latitude to perform their

---

standing where none would otherwise exist. See Payton v. County of Kane, 308 F.3d 673, 679-80 (7th Cir. 2002). This Court, and its district courts, have never found the juridical link doctrine applicable to standing, however, *see Rolaff*, 2020 WL 4939172, at *3, and the unique circumstances of *Kane* are not mirrored by Plaintiffs' various claims of constitutional violations.

tasks absent the threat of retaliatory §1983 litigation." *Id*. at 686-87. Of course, "absolute immunity has its costs because those with valid claims against dishonest or malicious government officials are denied relief." *Id*. at 687 (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). But the smooth functioning of the judicial system takes precedence over those meritorious claims which absolute immunity forecloses. *Id*.

Absolute immunity bars lawsuits against those who are "resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine v. Byers & Anderson*, *Inc.*, 508 U.S. 429, 435-36 (1993). This is most often a judge. Except when they act in clear absence of all jurisdiction, immunity shields judges from liability for their official adjudicative acts. *Lundahl v. Zimmer*, 296 F.3d 936, 939 (10th Cir. 2002) (citing *Stump*, 435 U.S. at 356-57 (1978)). And a judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was beyond his authority. *Stump*, 435 U.S. at 939.

This immunity, however, is not limited to judges. The Tenth Circuit, as well as the Supreme Court and sister circuits, has afforded absolute immunity to judicial officers on the theory that "immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000). In this context, it is referred to as "quasi-judicial immunity," and it extends to persons other than a judge where "performance of judicial acts is involved." *Id*. at 867. When an official assists a judge in the "discharge of judicial functions," the law considers that official the "functional equivalent of the judge" and grants them immunity from a suit premised on those "judicial functions." *Trackwell v. U.S. Government*, 472 F.3d 1242, 1247 (10th Cir. 2007). Said another way, non-judicial officers receive quasi-judicial immunity when their functions are "intimately associated with the judicial phase of the criminal process." *Whitesel*, 222 F.3d at 867.

- 15 -

As relevant here, *Whitesel* further recognized that non-judicial officers receive quasi-judicial immunity when they perform ministerial acts at the direction of a judge. *Id.* at 869. For example, executing a court order is a "ministerial function" intimately associated with a judicial proceeding. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). If officers could not receive immunity for executing facially valid, judge-signed orders, it would force those officers (most of whom lack extensive legal training) to conduct impromptu appellate reviews of every judicial order. And the Tenth Circuit has remarked that "state officials must not be required to act as pseudo-appellate courts scrutinizing the orders of judges." *Turney v. O'Toole*, 898 F.2d 1470, 1473 (10th Cir. 1990). To conclude otherwise would effectively hold them liable "for executing an order because the order did not measure up to statutory standards." *Id.* "The fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised." *Id.* For this reason, "officials charged with the duty of executing a facially valid court order enjoy absolute immunity from liability for damages a suit challenging conduct prescribed by that order." *Moss v. Kopp*, 559 F.3d 1155, 1163 (10th Cir. 2009). An official is entitled to quasi-judicial immunity where the following criteria are met: (1) the court order is facially valid; (2) the judge issuing the disputed order is immune from liability in his or her own right; (3) the official executing the order must act within the scope of his own jurisdiction; and (4) the officers must only act as prescribed by the order in question. *Id.*

Applying these principles to here, County Sheriffs are entitled to quasi-judicial immunity. Plaintiffs do not allege specific facts showing the County Sheriffs were involved fact-gathering to support and issue arrest and bench warrants, and therefore have knowledge about the facts underlying the warrants. Plus, bench warrants do not require support by a sworn affidavit made part of the warrant. Okla. Stat. tit. 22, § 967; *Shillitani v. U.S.*, 384 U.S. 364, 370 (1966); *United*

*States v. Phillips*, 834 F.3d 1176, 1182 (11th Cir. 2016); *In re Grand Jury Proceedings Harrisburg Grand Jury 79-1*, 658 F.2d 211, 214 (3d Cir. 1981).

Plaintiffs likewise make no allegation that any of the named County Sheriffs acted outside of their jurisdiction in executing any bench warrant, nor that they exceeded the authority given to them by the warrants. As provided by law, a bench warrant commands that a peace officer take custody of the person named in the warrant and bring him to court or place him in the custody of the sheriff until such time as he may be presented to the court. Okla. Stat. tit. 22, § 968.

In the same vein, quasi-judicial immunity should shield the County Sheriffs from Plaintiffs' RICO claims. *See, e.g.*, *Thomas v. Wilkins*, 61 F. Supp. 3d 13, 20 (D.D.C. 2014), *aff'd*, *Thomas v. Wilkins*, 14-5197, 2015 WL 1606933 (D.C. Cir. Feb. 23, 2015) (RICO claims against judge and court clerk barred under doctrine of absolute judicial immunity where the pattern of racketeering activity was predicated on acts that were "judicial in nature"). *See also Raiser v. Kono*, 245 Fed.Appx. 732, 735 (10th Cir. 2007) (unpublished) (judge entitled to absolute judicial immunity from RICO claims for actions taken in his judicial capacity); *Mir v. Deck*, 676 Fed. Appx. 707, 709 (9th Cir. 2017) (unpublished) (dismissal of RICO claims against California Medical Board affirmed where board was entitled to absolute immunity because their actions were taken in their quasi-judicial capacities); *BEG Investments, LLC v. Alberti*, 34 F. Supp. 3d 68, 84 (D.D.C. 2014) (finding that members of the District of Columbia Alcohol Beverage Control Board had "qualified immunity on the RICO and Hobbs Act claims"); *Smith v. Oklahoma Tax Comm'n*, 2009 WL 10671777, *2 fn. 3 (W.D. Okla. Aug. 7, 2009) (unpublished) (finding that judicial immunity was applicable to plaintiff's RICO claims against judge acting in judicial capacity); *and McDonald v. Heaton*, 2006 WL 170604, *2 (W.D. Okla. June 16, 2006) (unpublished) (plaintiff could not circumvent the judicial immunity doctrine by bringing his claims under the RICO Act rather than

42 U.S.C. § 1983) (*citing Stone v. Baum*, 409 F.Supp.2d 1164 (D. Ariz. 2005)).

Under all of these circumstances, the County Sheriffs are entitled to quasi-judicial immunity from suit. Plaintiffs' claims against them must be dismissed.

> **B.      THE COUNTY SHERIFFS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE RIGHT ASSERTED BY PLAINTIFFS WAS NOT "CLEARLY ESTABLISHED" AT THE TIME THE ALLEGATIONS AROSE.**

In addition to quasi-judicial immunity, the County Sheriffs are entitled to qualified immunity. Once a defendant asserts a qualified immunity defense in a dispositive motion, the responsibility shifts to the plaintiff to "meet a 'heavy two-part burden.'" *Case v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323 (10th Cir. 2007). "[T]o avoid judgment for the defendant based on qualified immunity," Plaintiffs must show that the County Sheriffs' actions violated a specific statutory or constitutional right and the right was clearly established at the time of the conduct at issue." *Toevs v. Reid*, 646 F. 3d 752, 755 (10th Cir. 2011). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011). This Court can address the two-prong test in whatever order is appropriate under the circumstances. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). Here, the County Sheriffs submit that the Court should consider the test in reverse; Plaintiffs do not articulate a "clearly established" right, but even if they do, the County Sheriffs did not violate it.

For a law to be "clearly established," there must be a Supreme Court or Tenth Circuit decision on point. *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). This is because the Supreme Court expansively formulated the qualified immunity doctrine to give "government officials breathing room to make reasonable but mistaken judgments." *Carroll v.*

*Carman*, 135 S. Ct. 348, 350 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). The doctrine thus protects "all but the plainly incompetent or those who knowingly violate the law." *Id*. Said differently, "the protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (2009) (internal quotation marks omitted).

So, even if an officer's conduct has violated the Fourteenth Amendments, they are entitled to qualified immunity unless the officer violated a "clearly established" right. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2022-2023 (2014). It is Plaintiffs' burden "to show that the contours of the right were clearly established" at the time of the alleged misconduct. A Defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable officer in the defendant's shoes would have understood that he was violating it.. at 2023. "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate." *Taylor v. Barkes*, 575 U.S. ---, 135 S. Ct. 2042, 2044 (2015) (citation omitted). Or as the Eighth Circuit put it, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005).

To ensure that bright lines are involved, the Supreme Court "ha[s] repeatedly told courts not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quotations and punctuation omitted). According to the Court, "[t]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S.Ct. at 308 (quotations omitted).

Plaintiffs define the constitutional right at issue as the right to be free from imprisonment solely for being indigent. Doc. 212, ¶ 13, at 10-11. No one disputes that this a constitutional right. But this characterization runs afoul of the Supreme Court's directive in *Mullenix* because it

attempts to transpose a high-level right on a case with very nuanced claims against the officers involved. Of course no one should be jailed because they simply cannot pay, but putting it that way does not assist the Court in answering the critical question: did the County Sheriffs act reasonably in the particular circumstances they faced? *Plumhoff*, 134 S. Ct. at 2023.

The Plaintiffs' allegations show they believe the County Sheriffs committed a much more nuanced violation, which puts the legitimacy of a much more nuanced "constitutional right" at issue. Because the Plaintiffs believe their constitutional rights were violated when the Sheriffs executed warrants and contracted with private parties, it necessarily means the Plaintiffs believe they have a constitutional right to non-judicial appellate review of facially valid judicial orders and state laws. There is no precedent for such a right; much less that it was "clearly established law" at the time these allegations arose.

The County Sheriffs repeatedly emphasize, as a prime point of their defense, that Oklahoma law permits them no discretion to decline to execute facially valid orders. However, according to Plaintiffs, the only way the Sheriffs could have vindicated the various Plaintiffs' constitutional rights was by conducting an impromptu appellate review of the facially valid judicial order and then declining to execute the order based on the Sheriff's own understanding of what the warrant requires, or what state law permits them to do. But as the Supreme Court noted in *Baker v. McCollan*, the Constitution does not require a Sheriff "to investigate independently every claim of innocence," or even when they do, to conduct an "error-free investigation." 443 U.S. 137, 145-46 (1979).

Similarly, multiple circuits have found that qualified immunity shields officers from liability when they act under an obligation to follow state law. *Coates v. Powell*, 639 F.3d 471 (8th Cir. 2011) (officer protected by qualified immunity from Fourth Amendment violation because

state statute required him to stay with a social worker inside a home); *Kloch v. Kohl*, 545 F.3d 603 (8th Cir. 2008) (attorney general was protected by qualified immunity because state statute obligated him to enforce the laws of his state); *Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170 (9th Cir. 2009) (defendant detective entitled to qualified immunity where a state statute authorized the reporting of child abuse cases by law enforcement agencies); *Mills v. Graves*, 930 F.2d 729 (9th Cir. 1991) (defendant detective entitled to qualified immunity where a state statute authorized seizure of drug paraphernalia by law enforcement officials).

Like the officials in these cases, Plaintiffs' complaints against the County Sheriffs run up against the Sheriffs' obligation to follow valid state law. Plaintiffs do not have a "clearly established" right to these County Sheriffs conducting an appellate review of those laws or judicial orders. This likewise applies to Plaintiffs' RICO claims against the County Sheriffs individually, which subsist on the same allegations. Thus, the County Sheriffs are entitled to qualified immunity on all Counts listed in Plaintiffs' Second Amended Complaint.

## C. PLAINTIFFS FAIL TO STATE A RICO CLAIM AGAINST THE COUNTY SHERIFFS.

In pleading a claim under RICO, eight elements are critical: (1) the defendant (2) through the commission of two or more of the enumerated predicate acts (3) which constitute a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly participates in the conduct of (6) an enterprise (7) the activities of which affect interstate commerce, and, that (8) the plaintiff was injured in his or her business or property by reason of such conduct." *Bixler v. Foster*, 596 F.3d 751, 760–61 (10th Cir. 2010). The Plaintiffs' claim fails to show how the County Sheriffs: (1) are involved in the alleged enterprise, (ii) commit predicate acts on the part of the alleged RICO Defendants, (iii) engage in a pattern of racketeering activity; or (iv) conspire to do all the above.

- 21 -

1.   **PLAINTIFFS FAILED TO EXPLAIN HOW THE COUNTY SHERIFFS ARE INVOLVED IN A RICO ENTERPRISE.**

To show involvement in a RICO enterprise, Plaintiffs must establish (1) an ongoing organization with a decision-making framework or mechanism for controlling the group; (2) with associates that function as a continuing unit; and (3) which is separate and apart from the pattern of racketeering activity." *Waddell & Reed Fin.*, *Inc.* *v.* *Torchmark Corp.*, 223 F.R.D. 566, 600 (D. Kan. 2004) (citing *United States v. Sanders*, 928 F.2d 940, 943–44 (10th Cir. 1991)). Further, in order to establish the necessary participation in the enterprise's affairs, the plaintiff must plead facts plausibly demonstrating that each defendant had "some part in directing the enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

Allegations about a defendant's alleged participation in a RICO enterprise fail when the only allegations show the defendant provided their regular services in their regular course of business. *See Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 884 (10th Cir. 2017) ("A defendant must do more than simply provide, through its regular course of business, goods and services that ultimately benefit the enterprise."); *see also BancOklahoma Mortgage Corp. v. Capital Title Co.*, *Inc.*, 194 F.3d 1089, 1100-1102 (10th Cir. 1999) (plaintiff failed to allege defendant title companies participated in the conduct of the enterprise where "Title Companies did nothing more than provide their regular services, which included closing-related services such as recording documents and issuing title commitments"). This is true even if the defendant's goods or services ultimately benefit the enterprise. *Univ. of Maryland at Baltimore v. Peat*, *Marwick*, *Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) ("Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result.").

Here, Plaintiffs limit the County Sheriffs' involvement in the pled "enterprise" to the performance of services in their regular course of business; namely, the execution of bench

warrants and the detaining of individuals pursuant to the terms of a facially valid arrest warrant. Doc. 212, ¶ 283. Though Plaintiffs claim the County Sheriffs' actions benefit the enterprise, that benefit is insufficient because the County Sheriffs' only provide services in their regular course of business. In other words, the Sheriffs do what the statutes say. Because Plaintiffs fail to establish that the County Sheriffs "participated" in the alleged enterprise, the civil RICO count must be dismissed against the County Sheriffs for failure to state a claim.

## 2. PLAINTIFFS FAILED TO EXPLAIN HOW THE COUNTY SHERIFFS COMMITTED PREDICATE ACTS.

Similarly, Plaintiffs' predicate act allegations fail. "The offenses which may serve as predicate acts for a RICO claim are delineated in 18 U.S.C. § 1961. This list is exclusive." *Harvey v. Harvey*, 931 F. Supp. 127, 130 (D. Conn. 1996), *aff'd*, *Harvey v. Harvey*, 108 F.3d 329 (2d Cir. 1997). Plaintiffs have attempted to allege four separate "predicate acts": (i) *extortion* in violation of the Hobbs Act, 18 U.S.C. § 1951 (ii) *extortion* in violation of the Travel Act, 18 U.S.C. § 1952, (iii) *extortion* in violation of 21 *Okla. Stat.* §§ 1481-1482, and (iv) *extortionate* collection of extension of credit in violation of 18 U.S.C. § 894. Doc. 212, ¶ 290).

Because Plaintiffs' claim the County Sheriffs committed "predicate acts" in furtherance of extortionate conduct, the court must determine whether Plaintiffs have stated a claim of extortion in the first instance. *See, e.g.*, *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 410, (2003) (petitioners who did not commit extortion likewise did not violate the Travel Act or state extortion laws); *Wilkie v. Robbins*, 551 U.S. 537, 567 (2007) (predicate acts of blackmail under state law and violation of the Hobbs Act failed because the petitioners did not commit extortion).

In *Wilkie*, the Supreme Court concluded that extortion allegations fail where the "[g]overnment is the intended beneficiary of the allegedly extortionate acts." *Id*. at 2605. This limitation arises from common law, where "extortion by the public official was the rough

equivalent of what we would now describe as 'taking a bribe[,]'...[and] the crime of extortion focused on the harm of public corruption, by the sale of public favors for private gain, not on the harm caused by overzealous efforts to obtain property on behalf of the Government." *Id*. at 2606. Thus, in *Wilkie*, the Supreme Court found that the alleged predicate acts (extortion under the Hobbs Act and blackmail under state law) were based on "extortionate" conduct, and therefore, they must have been "capable of being generically classified as extortionate" to qualify as a RICO predicate offense. *Id*. at 2607-08. However, because the conduct was done "to obtain property for the Government rather than a private party," the acts were not extortionate, and the RICO claim failed. *Id*. at 2605.

Similarly, in *United States v. Peterson*, the court concluded that a sheriff collecting money for his county government did not "commit the offense of extortion, even if the government [did] not have a lawful or legal claim to the property." 544 F. Supp. 2d 1363, 1370 (M.D. Ga. 2008). There, the sheriff collected room and board fees from inmates and then transmitted those funds to the county commissioners. *Id*. The U.S. Government alleged that the sheriff violated the Hobbs Act by "forc[ing] inmates to pay for their room and board before their release on bond," and, where they were unable to pay, "forc[ing] them to sign promissory notes that stated they could be re-incarcerated for failure to pay." *Id*. But applying *Wilkie*, the court granted the sheriff's motion to dismiss because the fees were collected on behalf of local government rather than the sheriff himself. *Id*. at 1371.

Here, the beneficiary of the funds collected is the state and local government. Indeed, Plaintiffs allege that the money being collected is used for a variety of county measures. Doc. 212, ¶ 30, 263. In fact, under the contract between Aberdeen and the OSA, all funds collected by Aberdeen are remitted to their respective counties. Doc. 212-1, at 5. Then, under Okla. Stat. tit.

20, § 1301, "[a]ll fees, fines, costs and forfeitures shall, when collected by the court clerk, be deposited in a fund in the county treasury designated 'The Court Fund', and shall be used, from year to year, in defraying the expenses of holding court in said county. The county treasurer shall act as an agent of the state in the care and handling of the Court Fund..." *Id*. If Aberdeen receives any compensation, the statute requires it. See Okla. Stat. tit. 19, § 514.5. But because the government is the intended beneficiary of the funds collected, there is no viable claim for extortion – which itself underlies Plaintiffs' alleged "predicate acts." Under *Wilkie*, the Plaintiffs failed to plead a RICO predicate act under. *See* 551 U.S. at 563–65. Once again, the RICO claim should be dismissed.

### 3.   PLAINTIFFS FAILED TO EXPLAIN HOW THE COUNTY SHERIFFS ENGAGED IN A PATTERN OF RACKETEERING ACTIVITY.

To show a RICO enterprise exists, Plaintiffs must show that these Sheriffs conducted the enterprise "through a pattern of racketeering activity." A "'pattern' requires at least two predicate acts." *Waddell & Reed Fin*., *Inc*. *v*. *Torchmark Corp*., 223 F.R.D. 566, 599 (D. Kan. 2004) (citing 18 U.S.C. § 1962(c)); *Bixler*, 596 F.3d at 760–61 (citing 18 U.S.C. § 1961(5)). The Plaintiffs have not pled that the County Sheriffs have committed a single RICO predicate act, nor have they pled two or more.

Additionally, "racketeering activity" is defined to mean "various criminal acts requiring *mens rea*." *Friedlob v*. *Trustees of Alpine Mutual Fund Trust*, 905 F.Supp. 843, 859 (D. Colo. 1995); *see also Alliance v*. *Alternative Holistic Healing*, *LLC*, *et al*., No. 1:15-cv-349-REB-CBS, 2016 WL 223815, at *6 (D. Colo. Jan. 19, 2016). This means that "a finding of racketeering activity requires *indictable criminal* conduct. Therefore, because only criminal violations suffice as predicate acts under RICO, plaintiff must allege that defendants committed the acts willfully or

with actual knowledge of the illegal activities." *Id.* (*quoting Friedlob*, 905 F.Supp. at 859). Plaintiffs have failed to do so here. To be sure, they repeat the phrase "willful, knowing, and intentional" acts numerous times in the RICO Count. However, the *only* RICO activity they allege against the County Sheriffs is that the sheriffs "execute the arrest warrants obtained and threatened by Aberdeen, which they know were procured as a result of Aberdeen, Inc.'s policies and practices..." Doc. 212, ¶ 283, at 82. But Oklahoma law *requires* the County Sheriffs to execute facially valid arrest warrants. See, e.g., Okla. Stat. tit. 22, §§ 176, 456, 967, and again, Plaintiffs have not alleged any facts showing that any County Sheriff knowingly executed a warrant based on insufficient information.[8] Thus, the sum of Plaintiffs' allegations is the absurd conclusion that Oklahoma law requires the County Sheriffs to participate in racketeering activity. The Sheriffs were compelled by law to execute the warrants; they could not have had the criminal intent necessary to engage in the various criminal acts alleged. This claim should be dismissed.

### 4.   PLAINTIFFS FAILED TO EXPLAIN HOW THE COUNTY SHERIFFS ENGAGED IN A RICO CONSPIRACY.

Finally, because Plaintiffs failed to adequately plead any RICO predicate acts against the County Sheriffs, any alleged subsection (d) conspiracy claim fails as a matter of law. *Condict v. Condict*, 826 F.2d 923, 927 (10th Cir. 1987) ("[A]ny claim under § 1962(d) based on a conspiracy to violate the provisions of 18 U.S.C. § 1962(a)-(c) must necessarily fail if the substantive claims are themselves deficient."). The conspiracy claim should be dismissed.

---

[8] Plaintiffs include one allegation that the Sheriffs executed warrants based on "applications that no reasonable person could believe were sufficient to justify arrest." Doc. 212, ¶ 30, at 17. However, Plaintiffs offer nothing in the way of fact allegations indicating when any County Sheriff engaged in such activities, nor did Plaintiffs offer facts showing the County Sheriffs knew of these alleged facially insufficient warrants. This one-off allegation, without more, is insufficient to state claims under RICO or the Fourteenth Amendment.

### D.    PLAINTIFFS FAIL TO STATE AN EQUAL PROTECTION CLAIM AGAINST THE COUNTY SHERIFFS.

Next, the Plaintiffs contend that Aberdeen's allegedly onerous debt collection practices, and the County Sheriffs' alleged knowledge of those practices, violates the Fourteenth Amendment's Equal Protection Clause. Doc. 212, Count 7, ¶¶ 360-62, at 96-97. But this claim suffers from two fundamental issues which, together or separately, should result in dismissal. First, Plaintiffs' alleged "similarly situated" groups for their Equal Protection Clause are not "similarly situated." The challenged government action underlying the Plaintiffs' Equal Protection claim— debt collection practices—can factually apply to only one group: individuals who have not paid court debts. Thus, Plaintiffs must allege the Defendants discriminate against protected classes within the group of individuals that haven't paid court debts. They do not, so they have not stated an Equal Protection Clause Claim.

### 1.    THE EQUAL PROTECTION CLAUSE REQUIRES A SHOWING THAT A CHALLENGED GOVERNMENT ACTION DISCRIMINATES AMONG SIMILARLY SITUATED GROUPS.

As the Tenth Circuit has explained, "equal protection is the law's keystone. Without careful attention to equal protection's demands, the integrity of surrounding law all too often erodes, sometimes to the point where it becomes little more than a tool of majoritarian oppression." *SECSYS*, *LLC*, *v. Virgil*, 666 F.3d 678, 684 (10th Cir. 2012) (citations omitted). But "at the same time, it is of course important to be precise about what equal protection is and what it is not." *Id*. Equal protection "doesn't guarantee equal results for all, or suggest that the law may never draw distinctions between persons in meaningfully dissimilar situations—two possibilities that might themselves generate rather than prevent injustice." *Id*. (citing *Personnel Adm'r of Mass*. *v*. *Feeney*, 442 U.S. 256, 271–73 (1979). Instead, the clause "seeks to ensure that any classifications the law makes are made 'without respect to persons,' that like cases are treated alike, that those who

'appear similarly situated' are not treated differently without, at the very least, 'a rational reason for the difference.'" *Id.* (citing *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 602 (2008) (quotations omitted)). So, with that in mind, the first step in an Equal Protection analysis is to determine whether the challenged state action intentionally discriminates between groups of persons. *SECSYS*, 666 F.3d at 685 (citing *Washington v. Davis*, 426 U.S. 229, 240 (1976)). Two key points in this phrase are determinative: the "challenged state action," and the "groups of persons."

State action, for § 1983 claims, is "conduct allegedly causing the deprivation of a federal right" fairly attributable to the state.[9] *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *see also Mehdipour v. Matthews*, 386 F. App'x. 775, 779-80 (10th Cir. 2013). Here, Plaintiffs allege that the "challenged state action" is Aberdeen's alleged onerous enforcement methods. These include "repeated threats of arrest" and that Aberdeen "forces [debtors who are too poor to pay, including Plaintiffs] to pay arbitrary and unachievable amounts to have a warrant recalled," along with "harassing family members whose contact information they possess." Doc. 212, ¶ 361, at 96. Plaintiffs pin the Sheriffs' involvement on their arrests of "persons in connection with these onerous enforcement methods," and then call the whole endeavor a "policy and practice." *Id.*

It is not enough, however, to challenge a state action. Equal protection claims require that the challenged state action intentionally discriminate between similarly situated groups. *SECSYS, LLC*, 666 F.3d at 685. And groups are "similarly situated" only if they are alike "in all relevant respects." *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (citation omitted). Here, Plaintiffs imply that the similarly situated groups are all individuals who owe court debt. *See* Doc.

---

[9] The County Sheriffs reserve all arguments regarding Aberdeen's status as a "state actor" for § 1983 purposes and do not intend to waive those arguments by omitting them from this motion to dismiss.

212, ¶ 361, at 96 (comparing "individuals who are wealthy enough to pay the full amount of their fines" with "individuals too poor to pay their court debt, including Plaintiffs"). Putting the two together, Plaintiffs claim Aberdeen conducts onerous debt collection activities against "individuals too poor to pay their court debt," while "individuals who are wealthy enough to pay the full amount of their fines and fees may do so without any continued contact with any government official or private contractor." *Id.* In other words, Plaintiffs say wealthy debtors don't have to face state-conducted onerous debt collections while indigent debtors do, which violates the Equal Protection Clause. *Id.*

> **2.    PLAINTIFFS' SUGGESTED GROUPS ARE NOT SIMILARLY SITUATED BECAUSE THE CHALLENGED GOVERNMENT ACTION CAN BY DEFINITION ONLY APPLY TO THE INDIGENT DEBTOR GROUP.**

The problem is, this characterization (as alleged) leaves a significant factual hole in Plaintiffs' allegations. The "challenged state action" must be able to apply to all members of the groups, yet in its enforcement discriminates between those groups because of a protected class. *See*, *e.g.*, *Rolf v. City of San Antonio*, 77 F.3d 823, 826 (5th Cir. 1996) ("It is well-established that the Equal Protection Clause is implicated 'only if 'the challenged government action classifies or distinguishes between two or more relevant groups.''") (citations omitted). Here, the Plaintiffs' equal protection claim fails because the "challenged state action" does not apply to one of Plaintiffs' alleged groups of individuals.

Specifically, Plaintiffs suggest Aberdeen goes after non-paying debtors, but not paying debtors, on a wealth-discriminatory basis. But as Plaintiffs acknowledge, paying debtors don't face onerous debt collection practices *because* they are free to pay their court debt without further government intervention. Doc. 212, ¶ 361, at 96. Implied in that statement is that government intervention stops *because* a debt is paid and no longer owed. In other words, only those who don't

pay their debts face the "challenged state action" of debt collection. This class, by definition, does not include debtors who can afford to pay because, as Plaintiffs imply, those debtors pay. *See*, *e.g.*, *Woods v. Oxford Law*, *LLC*, 2015 WL 778778, *6 (citing with approval a 1977 Senate report indicating that "there is universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay debts is miniscule."). So, as alleged, the challenged government action—debt collection—does not factually apply to paying debtors. That means the Plaintiffs' groups are not similarly situated.

The Eastern District of Louisiana, where Plaintiffs' counsel is also litigating this issue, recently dismissed an Equal Protection claim under similar circumstances. *Cain v. City of New Orleans*, No. CV 15-4479, 2018 WL 3657447 (E.D. La. Aug. 2, 2018), *appeal pending*. The *Cain* plaintiffs argued, in part, that a local judicial policy of using arrest warrants to enforce debt collections against criminal defendants, but not civil judgment debtors, violated the Equal Protection Clause. *Id*. at *4. The district court disagreed, however, and dismissed the claim. It concluded that there was no state law that facially discriminated against criminal judgment debtors. *Id*. at *5. More importantly, the court also found the arrest warrant policy could not apply to civil judgment debtors because the judges did not have jurisdiction over civil judgment debtors. *Id*. at *6. In other words, the policy could not apply factually to civil judgment debtors, and there was no evidence the judges applied it to criminal debtors in a discriminatory manner. *Id*.

So it is here. Of course, there are some differences between *Cain* and the present case. foremost being that in *Cain*, the judges couldn't exercise jurisdiction over civil judgment debtors. Here, Aberdeen can't collect against paying debtors because there's nothing to collect. But the practical effect is the same. In *Cain*, the challenged government action (a debt collection policy against criminal debtors) could not factually apply to civil debtors, so the groups were not

"similarly situated" to support an Equal Protection claim. Here, the challenged government action (debt collection against non-paying debtors) cannot factually apply to paying debtors, because as Plaintiffs suggest, paying debtors pay and there are no debts to collect.[10] So the only way Plaintiffs could carry an Equal Protection claim forward is to allege that Aberdeen discriminates because of a protected class between groups of non-paying debtors.

They do not do so. A deep dive on how to plead intentional discrimination is unnecessary; it suffices to say that Plaintiffs could have alleged an intent to discriminate appeared "on the face" of the challenged state action, or inferred from the action's discriminatory impact as applied. *SECSYS*, 666 F.3d at 685-87. After narrowing the group to its proper scope, it becomes clear that the Plaintiffs' equal protection claim does not suffice. They do not allege that Aberdeen discriminates intentionally amongst protected classes of individuals (such as race) as it collects from non-paying debtors. Nor do they allege any Defendant refers select debts to Aberdeen because of class affiliation. Nor do they allege Aberdeen selectively collects debts from only a certain protected class of individuals. Nor do they allege that debt collection rends a disparate impact upon a protected class. Plaintiffs have failed to state an Equal Protection claim. Count Seven should be dismissed.

### 3.  PLAINTIFFS' INEVITABLE RELIANCE ON JAMES V. STRANGE IS MISPLACED.

As with the first briefing cycle, Plaintiffs will assuredly refer this Court to *James v. Strange*, 407 U.S. 128 (1972), as the basis for their Equal Protection claim. While *Strange* did recognize an Equal Protection claim in the realm of indigent debt relief, any principle there announced is

---

[10] Further supporting this point is that Plaintiffs omit any claim that (1) wealthy debtors willfully refuse to pay and (2) Aberdeen treats them differently.

confined to the unique circumstances of the recoupment statute in question, and not applicable to today's dispute. Indeed, *Strange* reflects the precise thing the facts here do not: discrimination amongst a similarly situated class of individuals.

*Strange* concerned a Kansas recoupment statute that worked like this: if the state appointed counsel or incurred costs for an indigent criminal defendant, that defendant had to repay those costs within a certain timeframe. *Id.* at 130-32. If they didn't, the court would enter a judgment against the defendant, which would be converted to a lien. *Id.* But unlike anyone else who owed a debt that was converted to a lien, the statute prevented these sorts of defendants from claiming exemptions from creditors (the most notable being, in the Court's eyes, the exemption from having wages garnished). *Id.* This violated the Equal Protection Clause because those who owed a debt to the state could not obtain certain protection from creditors, while those who owed a debt to a private party could. *Id.* That is the key difference between *James* and this case. The unconstitutional statute in *James* distinguished between classes of debtors *who couldn't pay*. If one couldn't pay the state, they had no creditor protection. But if one couldn't pay a private party, they had creditor protection. *James* explicitly recognized this distinction:

> "The indigent's predicament under this statute comes into sharper focus when compared with that of one who has hired counsel in his defense. Should the latter prove unable to pay and a judgment be obtained against him, his obligation would become enforceable under the relevant provisions of the Kansas Code of Civil Procedure. But, unlike the indigent under the recoupment statute, the code's exemptions would protect this judgment debtor."

*Id.* at 136-37. *Strange* went on to suppose a difference in classes between these two sorts of defendants ("It may be argued that an indigent accused, for whom the State has provided counsel, is in a different class with respect to his indebtedness than a judgment creditor whose obligation arose from a private transaction"), but dismissed any concern by referencing parallel provisions of Kansas law that did not discriminate against those who owed money to the state. *Id.* Here,

Aberdeen's collection activities do not discriminate amongst classes of people who *can't* pay, which could give rise to an actionable Equal Protection claim.[11] Instead, they allege that Aberdeen collects from those who can't pay, while those who can pay walk free. *See* ECF 212, ¶ 361, at 96. Because those are not similarly situated groups, Plaintiffs' Equal Protection claim fails.

      **E.**     **BOTH OF PLAINTIFFS' CLAIMS FAIL BECAUSE PLAINTIFFS FAILED TO ASSERT SUFFICIENT FACTS SHOW HOW THE SHERIFFS, IN THE INDIVIDUAL CAPACITIES, PARTICIPATED IN THE ALLEGED VIOLATIONS.**

Absent the specific facts about Ms. Killman and Mr. Wilkins, Plaintiffs have not pled any other facts against the County Sheriffs in their individual capacities. "Rule 12(b)(6) allows dismissal if a plaintiff fails 'to state a claim upon which relief can be granted.'" *Khalik v. United Airlines*, 671 F.3d 1188, 1190 (10th Cir. 2017). "To withstand a Rule 12(b)(6) motion, a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Fact pleading is especially important here. The Tenth Circuit has repeatedly remarked that, for § 1983 claims, "it is imperative that [plaintiffs] clearly allege who did what to whom rather than make collective allegations." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Gray v. GEO Group, Inc.*, 727 Fed. App'x. 940, n. 2 (10th Cir. 2018). But Plaintiffs here offer no specific fact allegations showing that any Sheriff did anything to anyone at all. They have not

---

[11] Or the plaintiffs could have drawn a distinction between indigent defendants who owed money to the state or the state's private debt collectors versus those who owed money to private parties, which would have been more in line with the claim arguably recognized in *James*, but they did not. *See* Doc. 212, ¶ 361 at 96. Their attempted distinction was between those who owe money to the state and can pay versus those who owe money to the state and cannot.

pled facts showing that any County Sheriff was personally involved in any constitutional violation. Nor have they pled facts showing an affirmative link between the County Sheriffs' conduct such that they could be held liable in their supervisory capacity. The Second Amended Complaint does not even appear to contain a supervisory liability claim. Still, it will be addressed.

Supervisory status alone does not give rise to individual liability under Section 1983. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit... where masters do not answer for the torts of their servants— the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *see also Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). The supervisor's "role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). So only pleading facts that show a constitutional violation by a supervisor's subordinate does not impose individual liability upon the supervisor.

If no respondeat superior, then, how can a plaintiff impose supervisory liability? The Tenth Circuit answered this question in *Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010). "[W]hen a plaintiff sues an official under ... § 1983 for conduct arising from his or her superintendent responsibilities, the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." Thus, the applicable test to establish supervisory liability, set forth in *Dodds*, says plaintiffs must assert facts showing that: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy; (2) the policy caused the alleged constitutional harm; and (3) the defendant acted with the state of mind required to establish the alleged constitutional deprivation. *Id.* at 1199. Because of the state of mind element, allegations of mere negligent supervision alone are insufficient to establish liability;

rather, liability must be predicated on the supervisor's own deliberate indifference. *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997).

Deliberate indifference has been defined as a "conscious choice to endanger constitutional rights." *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998). This element requires more than "a supervisor's mere knowledge of his subordinate's" conduct. See *Iqbal*, 556 U.S. at 677. A supervisor may be held liable in his or her individual capacity under Section 1983 for the actions of a subordinate only if the supervisor participated or acquiesced in the constitutional violation of the prisoner's rights. *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988). In other words, the supervisor is only "deliberately indifferent" if they knew they were creating a substantial risk of harm. *Green*, 108 F.3d at 1302.

These authorities demonstrate that in order to establish individual liability, Plaintiffs must demonstrate that: (1) their constitutional rights were violated and (2) the County Sheriffs were affirmatively linked thereto. Plaintiffs' Second Amended Complaint fails in both regards. As to the showing of an affirmative link, the Second Amended Complaint contains no factual allegations whatsoever regarding the County Sheriffs. Plaintiffs do not allege that the County Sheriffs personally participated in the assessment of fines and costs against them, the collection of any such fines and costs, the issuance of bench warrants by the courts, or their arrest on any bench warrants to compel their attendance before the court as part of the collection process. They do not allege facts demonstrating that the County Sheriffs knew about, created, or condoned any condition that caused any harm to Plaintiffs in their arrest on outstanding bench warrants. And they do not allege that the County Sheriffs otherwise possessed a deliberately indifferent state of mind with regard to the execution of such warrants that was so obviously deficient that they could be held personally responsible on Plaintiffs' claims.

Plaintiffs failed to plausibly plead a claim for the violation of their constitutional rights. They failed to plead an affirmative link between the County Sheriffs and any violation. And they failed to plead any personal participation. For those reasons, the Second Amended Complaint does not sufficiently state individual capacity claims against the County Sheriffs. It should be dismissed.

### F. THE AMENDMENTS TO OKLA. STAT. TIT. 19, SECTION 514.4 AND OKLA. STAT. TIT. 22, SECTION 983 MOOT PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF.

In addition to the money damages Plaintiffs seek, they ask the Court for a host of declaratory measures; namely, to declare it unlawful for Defendants to issue and execute debt-collection arrest warrants for nonpayment, without seeking the ability to pay, and without considering alternatives, and in making factual findings on unsworn statements. Plaintiffs also ask the Court to enjoin Defendants from executing debt-collection arrest warrants without first making inquiry into the defendant's ability to pay; from using a third-party debt-collector; from using onerous debt-collection methods; and from imposing a 30-percent surcharge on indigent debtors. *See* ECF 212, pgs. 98-100.

The significant changes to Oklahoma law regarding the cost-and-fee system, however, moot most, if not all, of Plaintiffs' requested equitable relief. The newly modified Okla. Stat. tit. 19, §§ 514.4-514.5, and Okla. Stat. tit. 22, § 983 make clear that it would be a statutory violation for a court to impose any arrest or detention on a defendant who had not previously had their financial status adjudged—or, at the *very least*, been given ample opportunity to appear before the court and have their financial status sorted out and ruled upon. Indeed, based on the terms of the statutory amendments, they appear to have been enacted almost directly in response to the claims Plaintiffs make in this lawsuit. Given this, the Court should dismiss the declaratory and injunctive relief addressed by §§ 514.4-514.5 and 983.

## <u>CONCLUSION</u>

For the reasons discussed herein, the County Sheriff Defendants, in their individual capacities, move for an order from this Court dismissing Plaintiffs' claims against them with prejudice.

Date: July 7, 2023

Respectfully submitted,

s/ Jeffrey C. Hendrickson

Robert S. Lafferrandre, OBA #11897
Randall J. Wood, OBA #10531
Jeffrey C. Hendrickson, OBA #32798
**PIERCE COUCH HENDRICKSON**
**BAYSINGER & GREEN, L.L.P.**
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
jhendrickson@piercecouch.com

***Attorneys for County Sheriff Defendants***

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on **July 7, 2023** I electronically transmitted the attached document to the Clerk of this Court using the ECF System for filing. Based on the records currently on file, the Clerk will transmit a Notice of Electronic Filing all ECF registrants who have appeared in this case.

s/ Jeffrey C. Hendrickson
Jeffrey C. Hendrickson