## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

CARLY GRAFF, et al.                    )
                                       )
      Plaintiffs,                      )
                                       )
v.                                     )          Case No. 4:17-CV-606-TCK-JFJ
                                       )
ABERDEEN ENTERPRIZES II, INC.,         )
et al.                                 )
                                       )
      Defendants.                      )

---

### MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT BY
### DEFENDANT DARLENE BAILEY, IN HER INDIVIDUAL CAPACITY

---

**Joel L. Wohlgemuth, OBA #9811**
**Jo Lynn Jeter, OBA #20252**
**W. Caleb Jones, OBA #33541**
**Norman Wohlgemuth, LLP**
3200 Mid-Continent Tower
401 South Boston
Tulsa, OK 74103
(918) 583-7571
(918) 584-7846 – facsimile
JWohlgemuth@NWLawOK.com
JJeter@NWLawOK.com
WJones@NWLawOK.com

**Douglas A. Wilson, OBA #13128**
**Michael Shouse, OBA #33610**
**Tulsa County District Attorney's Office**
**Civil Division**
218 W. Sixth St., Suite 933
Tulsa, OK 74119
918-596-8795
douglas.wilson@tulsacounty.org
mshouse@tulsacounty.org

**ATTORNEYS FOR DEFENDANTS VIC REGALADO, SHERIFF OF TULSA COUNTY, DON NEWBERRY, TULSA COUNTY COURT CLERK, DARLENE BAILEY, TULSA COUNTY COURT COSTS ADMINISTRATOR, AND BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TULSA**

**July 7, 2023**

TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND ...............................................................................1

ARGUMENT AND AUTHORITIES ..................................................................6

I.      THE GOVERNING STANDARDS THAT REQUIRE DISMISSAL. ...............................6

II.     BECAUSE BAILEY IS ACTING ON BEHALF OF THE COURT AND/OR IN A JUDICIAL
        CAPACITY, SHE IS ENTITLED TO ABSOLUTE QUASI-JUDICIAL IMMUNITY ON
        ALL COUNTS. ........................................................................................................8

        A. The Parameters of Quashi-Judicial Immunity. .........................................8

        B. Bailey is Entitled to Absolute Quasi-Judicial Immunity. ........................11

III.    AT MINIMUM, BAILEY IS ENTITLED TO QUALIFIED IMMUNITY ON ALL COUNTS
        BECAUSE NO CLEARLY ESTABLISHED CONSTITUTIONAL VIOLATION HAS
        BEEN PLED. ...........................................................................................................15

IV.     THE INJUNCTIVE RELIEF SOUGHT BY PLAINTIFFS AGAINST BAILEY FAILS AS A
        MATTER OF LAW. .................................................................................................19

V.      MOST OF PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS. ........20

CONCLUSION ...................................................................................................21

TABLE OF AUTHORITIES

<u>CASES</u>

*Albers v. Bd. of County Comm'rs,*
    771 F.3d, 697 (10th Cir. 2014) .................................................................................................. 7

*Allen v. Town of Colcord,*
    874 F. Supp. 2d 1276 (N.D. Okla. 2012) ................................................................................ 6

*Allen v. Zigler,*
    2002 OK CIV APP 30, 41 P.3d 1060 ..................................................................................... 15

*Ashcroft v. al–Kidd,*
    563 U.S. 731 (2011) ......................................................................................................... 16, 17

*Barrett v. Barrett,*
    249 P.2d 88 (Okla. 1952) ...................................................................................................... 14

*Bearden v. Georgia,*
    461 U.S. 660 (1983) ) ....................................................................................................... 18, 19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................................... 6

*Bishop v. Oklahoma,*
    333 F. App'x 361 (10th Cir. 2009) ........................................................................................ 14

*Boyer v. County of Washington,*
    971 F.2d 100 (8th Cir. 1992) ........................................................................................... 10, 13

*Brown v. Montoya,*
    662 F.3d 1152 (10th Cir. 2011) ............................................................................................. 19

*Burns v. Buford,*
    2011 WL 486253 (D. Colo. Feb. 7, 2011) ............................................................................. 2

*Cain v. City of New Orleans,*
    CV 15-4479, 2017 WL 467685 (E.D. La. Feb. 3, 2017) ...................................................... 13

*Chastain v. Sundquist,*
    833 F.2d 311 (D.C. Cir. 1987) ................................................................................ 15

*Chilcoat v. San Juan Cnty.,*
    41 F.4th 1196 (10th Cir. 2022) .............................................................................. 19

*Christensen v. Park City Mun. Corp.,*
    554 F.3d 1271 (10th Cir. 2009) ............................................................................. 18

*Coleman v. Farnsworth,*
    90 F. App'x 313 (10th Cir. 2004) .......................................................................... 10

*DeVargas v. Mason & Hanger-Silas Mason Co.,*
    844 F.2d 714 (10th Cir. 1988) ............................................................................... 19

*Lockett ex rel. Lockett v. Fallin,*
    841 F.3d 1098 (10th Cir. 2016) ................................................................................ 6

*Forrester v. White,*
    484 U.S. 219 (1988) .................................................................................................. 9

*F.T.C. v. Innovative Mktg., Inc.,*
    654 F. Supp. 2d 378 (D. Md. 2009) ......................................................................... 7

*Guiden v. Morrow,*
    92 F. App'x 663 (10th Cir. 2004) .......................................................................... 10

*Hafer v. Melo,*
    502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ........................................... 19

*Hirsh v. Twyford,*
    139 P. 313 (Okla. 1913) .......................................................................................... 14

*Holt v. United States,*
    46 F.3d 1000 (10th Cir. 1995) .................................................................................. 6

*Jones v. Hacker,*
    13-CV-444-JHP, 2015 WL 1279352 (E.D. Okla. March 20, 2015) ................... 2, 14

*Khalik v. United Air Lines,*
    671 F.3d 1188 (10th Cir. 2012) ................................................................................ 6

*Lane v. Franks,*
  573 U.S. 228 (2014) .......................................................................................... 16

*Leverington v. City of Colorado Springs,*
  643 F.3d 719 (10th Cir. 2011) .......................................................................... 16

*Matney v. King,*
  93 P. 737 (Okla. 1908) ...................................................................................... 14

*McKinney v. State of Okl., Dep't of Human Servs., Shawnee, OK,*
  925 F.2d 363 (10th Cir. 1991) .......................................................................... 10

*McGregor v. Gibson,*
  248 F.3d 946 (10th Cir. 2001) ............................................................................ 3

*Medina v. City and County of Denver,*
  960 F.2d 1493 (10th Cir. 1992) ........................................................................ 16

*Mullenix v. Luna,*
  577 U.S. 7 (2015) ........................................................................................ 16, 18

*Newton v. Buckley,*
  127 F.3d 1109 (10th Cir. 1997) ........................................................................ 10

*N. Side State Bank v. Bd. of Cty. Comm'rs of Tulsa Cty.,*
  894 P.2d 1046 (Okla. 1994) ........................................................................ 12, 14

*Pace v. Swerdlow,*
  519 F.3d 1067 (10th Cir. 2008) .......................................................................... 3

*Petuskey v. Cannon,*
  1987 OK 74, ¶ 20, 742 P.2d 1117 ............................................................ 2, 12, 14

*Romero v. Fay,*
  45 F.3d 1472 (10th Cir. 1995) .......................................................................... 16

*Sanford v. MemberWorks, Inc.,*
  625 F.3d 550 (9th Cir. 2010) .............................................................................. 6

*Sawyer v. Gorman,*
  317 F. App'x 725 (10th Cir. 2008) .................................................................... 10

*Spalsbury v. Sisson*
    250 F. App'x 238 (10th Cir. 2007) ........................................................................... 10

*Speight v. Presley,*
    203 P.3d 173 (Okla. 2008) ..................................................................................... 14

*Stevenson v. Grace,*
    365 F. App'x 97 (10th Cir. 2009) .................................................................... 20, 21

*Tarter v. Hury,*
    646 F.2d 1010 (5th Cir. 1981) ................................................................................ 11

*Thomas v. Durastanti,*
    607 F.3d 655 (10th Cir. 2010) ................................................................................ 16

*Thomas v. Palacios,*
    1999 U.S. App. LEXIS 22088 (10th Cir. 1999) .................................................. 9, 10

*Trackwell v. U.S. Gov't,*
    472 F.3d 1241 (10th Cir. 2007) ................................................................................ 9

*Turney v. O'Toole,*
    898 F.2d 1470 (10th Cir. 1990) .............................................................................. 17

*Valdez v. City of Denver,*
    878 F.2d 1285 (10th Cir. 1989) ................................................................. 1, 8, 9, 15

*Van Woudenberg v. Gibson,*
    211 F.3d 560 (10th Cir. 2000) .................................................................................. 3

*Whitesel v. Sengenberger,*
    222 F.3d 861 (10th Cir. 2000) ............................................................................... 10

*Wiggins v. New Mexico State Supreme Court Clerk,*
    664 F.2d 812 (10th Cir. 1981) ............................................................................... 10

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. IV ................................................................................................ 4

U.S. Const. amend. XIV .............................................................................................. 4

## STATUTES

19 *Okla. Stat.* § 514.4 ....................................................................................... passim

19 *Okla. Stat.* § 514.5 ....................................................................................... passim

20 *Okla. Stat.* § 1301 .................................................................................................. 2

22 *Okla. Stat.* §§ 456 ............................................................................................... 11

22 *Okla. Stat.* § 966 .................................................................................................. 19

22 *Okla. Stat.* § 967 .................................................................................................. 19

28 *Okla. Stat.* § 151 .................................................................................................. 12

28 *Okla. Stat.* § 153 ............................................................................................ 2, 11

42 U.S.C. § 1983 ............................................................................................ 4, 19, 20

## RULES

10th Cir. R. 32.1 ........................................................................................................ 9

FED. R. APP. P. 27 ..................................................................................................... 3

FED. R. CIV. P. 7 ........................................................................................................ 7

FED. R. CIV. P. 8 ........................................................................................................ 2

FED. R. CIV. P. 12 ............................................................................................... passim

FED. R. CIV. P. 56 ..................................................................................................... 3

Oklahoma Supreme Court Rules on Administration of Courts, Rule 2 .................... 2, 15

## OTHER AUTHORITIES

Supreme Court Order, S.C.A.D. 2011-08 (Doc. #99-35) ................................... 3, 13, 18

In accordance with FED. R. CIV. P. 12(b)(1), and FED. R. CIV. P. 12(b)(6), Defendant Darlene Bailey, Tulsa County Court Costs Administrator, in her individual capacity ("Bailey"), moves this Court for an order dismissing with prejudice all claims against Bailey set forth in Plaintiffs' Second Amended Complaint ("SAC").

## INTRODUCTION

Plaintiffs seek to attack the systems instituted by the Oklahoma legislature, Supreme Court, and District Courts for imposing and collecting fines and fees from criminals in Oklahoma. Aware that relief is unavailable against Oklahoma's actual state policymakers and legislators, Plaintiffs seek to hold Bailey—a functionary of the Tulsa County Court Clerk—personally liable for carrying out her duties in assisting the District Court and Court Clerk. Basic and well-established principles of immunity dictate that Bailey cannot be held liable for performing "ministerial acts intimately related to the judicial process." *See Valdez v. City of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989). Plaintiffs' claims are precisely the sort of claims that the doctrines of quasi-judicial immunity and qualified immunity were meant to address.

## FACTUAL BACKGROUND

Plaintiffs complain about the procedures used by the Oklahoma judicial system to collect fines, fees, and court costs from criminal defendants. (*See* SAC, Doc. No. 212).[1] The court costs,

---

[1] For purposes of this motion, it is unnecessary to address Plaintiffs' introductory, generalized, abstract hyperbole and/or conclusory statements unrelated to time or place (*id.* at ¶¶ 1-17); class action allegations (*id.* at ¶¶ 214-73); allegations related solely to Rogers County (*id.* at ¶¶ 32, 37, 39, 133-141); allegations concerning plaintiffs unrelated to the District Court system in and for Tulsa County (*id.* at ¶¶ 18, 22, 24, 155-60, 181-85 and 194-99); and the terms of a contract attached thereto as an exhibit (*id.* at ¶¶ 56-61). Plaintiffs' allegations regarding the allegedly unjust and/or intimidating behavior of Aberdeen and the financial relationship that exists between Aberdeen and the Oklahoma Sheriff's Association are acknowledged as having been pled, but the specifics of such allegations are unnecessary to resolve this motion (*id.* at ¶¶ 26-29, 32-34, 48, 66-94, 99-107, 165-75, and 192-93). Plaintiffs also engage in legal argument throughout their Second Amended Complaint, (*see e.g.*, pp. 22-25, 30-31, 45, ¶¶ 40-47, 66-70, 95, 118), which is improper under

1

fines, and fees are assessed as a matter of law (*id.* at ¶¶ 142-153) and collected by the Court Clerk[2] under the administrative and supervisory control of the Presiding Judge of the judicial administrative district, and ultimately, the Chief Justice of the Supreme Court.[3] "In approximately 2003 or 2004, the Office of the Supreme Court Administrator of Oklahoma required each Court Clerk to designate a deputy clerk as Cost Administrator … [to track] payments and receipts for the collection of fines and court costs." *Jones v. Hacker*, 13-CV-444-JHP, 2015 WL 1279352, *1 (E.D. Okla. March 20, 2015). Plaintiffs allege that every criminal defendant sentenced in Tulsa County is Ordered by the Judge to see the Tulsa County Cost Administrator "to make payment or set up a payment plan." (SAC, ¶ 118).

In 2005, and again in 2010, to aid in the district courts' collection of delinquent accounts, the Oklahoma Legislature amended 19 *Okla. Stat.* §§ 514.4 and 514.5 to permit the use of a private collection agency. (SAC at ¶ 54). On January 13, 2011, the Chief Justice of the Oklahoma Supreme Court ordered:

---

Rule 8 and should be disregarded by the Court. *See* Fed. R. Civ. P. 8(d)(1); *Burns v. Buford*, 2011 WL 486253, at *2 (D. Colo. Feb. 7, 2011) (Ordering plaintiff to amend his complaint because "plaintiff fails to set forth a short and plain statement of his claims" under Rule 8, and instead "sets forth an extended and unnecessary discussion of often insignificant details and legal argument. . . .").

[2] *See* 28 *Okla. Stat.* § 153 ("The clerks of the courts shall collect as costs in every criminal case …"); *and* 20 *Okla. Stat.* § 1301 ("All fees, fines, costs and forfeitures shall, when collected by the court clerk, be deposited in a fund in the county treasury designated 'The Court Fund', and shall be used, from year to year, in defraying the expenses of holding court in said county. The county treasurer shall act as an agent of the state in the care and handling of the Court Fund …").

[3] *See* Rule 2, Oklahoma Supreme Court Rules on Administration of Courts. 20 O.S. Ch.1, App. 2, Rule 2. *See also Petuskey v. Cannon*, 1987 OK 74, ¶ 20, 742 P.2d 1117, 1121 ("Therefore, we conclude the District Court Clerk is 'judicial personnel' as the term is used in Rule 2 of Administration of Courts. He is an arm of the court, whose duties are ministerial, except for those discretionary duties provided by statute. As such, the Court Clerk is subject to the control of the Supreme Court, and the supervisory control it has passed down to the Administrative District Judge in his Judicial Administrative District in the performance of his ministerial functions.").

2

> Each district court is authorized *and directed to participate* in the misdemeanor or failure-to-pay warrant collection program authorized by Title 19 Oklahoma Statutes Sections 514.4 and 514.5 immediately.  These collections apply to both misdemeanor and felony cases.

*See* Supreme Court Order, S.C.A.D. 2011-08 (Doc. No. 99-35) (emphasis added).[4]   Under direction by the State Court, the Tulsa County Sheriff participated in the misdemeanor or failure-to-pay warrant collection program on behalf of the District Court.  (SAC, ¶ 51).  Defendant Aberdeen Enterprizes II, Inc. ("Aberdeen") is the private collection agency contracted to assist the District Court with its delinquent accounts.  (*Id*. at ¶ 26).

If a convicted criminal defendant fails to pay the fines, fees, and court costs that have been assessed against him as part of his criminal sentence, the Court may issue a failure-to-pay bench warrant to secure the criminal defendant's appearance at a cost docket setting.  (*Id.* at ¶¶ 120, 123).  Plaintiffs allege that the Cost Administrator requires a $250.00 payment to recall such failure-to-pay bench warrants.  (*Id.* at ¶ 122).  Plaintiffs claim that the day-to-day practices and procedures employed in the collection of fines, fees and court costs from convicted criminal defendants violate the federal constitution and state law in conformity with the federal constitution.  (*Id., compare* ¶¶ 40-46, 53-55, 112-15, 146-50 and 144-48 *with* ¶¶ 318-27, 329-37, 339-43, 345-52, 354-61).

With regard to Bailey, in particular, Plaintiffs allege that Bailey's actions in the assessment and collection of fines, fees, and court costs, the issuance and recall of failure-to-pay bench warrants, the setting of monetary conditions to recall such warrants, and the transfer of delinquent

---

[4] Facts subject to judicial notice, such as matters of public record, may be considered without triggering the conversion of a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment. *See* 27A Fed. Proc., L. Ed. §§ 62:466, 477 (2008); *see also Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) ("[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record"), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001); *Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008) (court may take judicial notice of materials in state court's file).

accounts to Aberdeen constitute violations of the United States Constitution actionable under 42 U.S.C. § 1983, entitling Plaintiffs to declaratory and injunctive relief and to compensatory and punitive damages against Bailey. Plaintiffs' claims for relief against Bailey are as follows:

- Claim 2 (seeking damages and injunctive relief): The issuance and execution of bench warrants for a debtor's arrest based on unsworn allegations of non-payment and without pre-deprivation notice and an opportunity to be heard on the debtor's ability to pay violate Plaintiffs' due process and equal protection rights under the Fourteenth Amendment (SAC at ¶¶ 318-27).

- Claim 3 (seeking damages and injunctive relief): The issuance and execution of bench warrants for a debtor's arrest based on declarations that materially omit known information regarding a debtor's ability to pay and that fail to attest that the debtor's failure to pay is willful violate Plaintiffs' liberty interest under the Fourth Amendment (SAC at ¶¶ 329-37).

- Claim 4 (seeking damages and injunctive relief): The detention of Plaintiffs in the Tulsa County Jail on failure-to-pay bench warrants until the next cost docket because they cannot pay $250.00 toward their court debt, without inquiring into debtor's financial resources and a finding that detention is necessary under the circumstances, violates Plaintiffs' due process and equal protection rights under the Fourteenth Amendment (SAC at ¶¶ 339-43).

- Claim 5 (seeking damages and injunctive relief): The issuance and execution of bench warrants for a debtor's arrest, which automatically includes additional fees and surcharges, without notice or hearing, in the absence of proof that the debtor has willfully refused to pay, violate Plaintiffs' liberty interest under the Fourth Amendment (SAC at ¶¶ 345-52).

- Claim 7 (seeking damages and injunctive relief): Use of onerous collection practices for individuals too poor to pay the full amount of their fines, fees and court costs upon conviction, coupled with the issuance of arrest warrants, and imposition of additional fees and surcharges in event of default, violates Plaintiffs' equal protection rights under the Fourteenth Amendment (SAC at ¶¶ 360-61).

Plaintiffs broadly assert that the day-to-day practices and procedures followed in the collection of fines, fees, and court costs from convicted criminal defendants violates the United States Constitution and state law in conformity with the federal constitution. (SAC; *compare* ¶¶ 40-46, 53-55, 112-15, 146-50, *with* ¶¶ 318-27, 329-37, 339-343, 345-352, 354-361). Plaintiffs

make a host of general allegations against Bailey: Plaintiffs allege that every criminal defendant sentenced in Tulsa County is ordered by the judge to see Bailey "to make payment or set up a payment plan" (*id.* at ¶ 118); that Bailey provides criminal defendants no options for alternatives to payment when fines and fees are imposed, nor does she make a meaningful inquiry into, or make findings concerning, ability to pay (*id.*); that when criminal defendants tell her they cannot afford to pay any amount, she says they must pay nevertheless (*id.* at ¶ 119); that in the event of nonpayment over an established period of time, she "seeks" a debt-collection arrest warrant based solely on the nonpayment, without any factual allegations supported by oath or affirmation, and without any pre-deprivation legal process, which warrant is signed as a matter of course by Defendant Judge Moody (*id.* at ¶¶ 120-21); that Bailey "seeks" failure-to-pay bench warrants without any inquiry into ability to pay and often in the face of evidence—such as the fact that the debtor was designated indigent and assigned a public defender—that the debtor lacks the ability to pay (*id.* at ¶ 123); that Bailey typically requires a $250.00 payment to recall the warrant (*id.* at ¶ 122); that Bailey assists district court judges in automatically issuing and recalling failure-to-pay bench warrants in response to Aberdeen's requests to do so (*id.* at ¶ 126); and, that despite alleging elsewhere that the Court Clerk has the discretion for transferring cases to Aberdeen (*id.* at ¶ 5), alleges that the Cost Administrator has the discretion to transfer cases to Aberdeen (*id.* at ¶ 36).

Most of these allegations are wholly disconnected from any claim of any named Plaintiff. Moreover, even taking Plaintiffs allegations as true, Bailey's alleged actions have been taken as a functionary of the District Court and in accordance with Oklahoma law and the dictates of the Tulsa County Court and the Oklahoma Supreme Court. As such, Plaintiffs claims are barred under the doctrine of absolute quasi-judicial immunity, and Bailey is entitled to, at a minimum, qualified immunity.

## ARGUMENT AND AUTHORITIES

I.   THE GOVERNING STANDARDS THAT REQUIRE DISMISSAL.

A motion to dismiss under Rule 12(b)(6) should be granted when, as here, a complaint fails to make allegations sufficient to support a right to relief. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief," but a complaint must "contain enough facts to state a claim for relief that is plausible on its face." *Allen v. Town of Colcord*, 874 F. Supp. 2d 1276, 1282 (N.D. Okla. 2012) (citation and quotation omitted). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' are insufficient." *Lockett ex rel. Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

Further, "Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). "[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint." *Id.* (citation omitted). "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Id.* Plaintiffs' lack of standing deprives this court of subject matter jurisdiction.

"When a named plaintiff has no cognizable claim for relief, 'she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail.'" *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 560 (9th Cir. 2010). As set forth below, Plaintiffs' claims fail

as a matter of law.  Plaintiffs' claims cannot be maintained individually, and they cannot bring them on behalf of a class, requiring dismissal of the entire action.

Lastly, Plaintiffs will likely argue that Bailey is prohibited by Fed. R. Civ. P. 12(g)(2) from making any arguments under Fed. R. Civ. P. 12(b)(6) that were not raised in her previous motion to dismiss. However, the issue is not so straightforward. The strictures of Rule 12(g)(2) are "expressly subject to Rule 12(h)(2), which allows parties to raise certain defenses, including the failure to state a claim upon which relief may be granted, in any pleading allowed under Rule 7(a), by a motion for judgment on the pleadings under Rule 12(c), or at trial." *Albers v. Bd. of County Comm'rs*, 771 F.3d 697, 701 (10th Cir. 2014). Moreover, Rule 12(h)(1) provides that a party waives certain defenses if not raised in a prior Rule 12 motion, but failure to state a claim under Rule 12(b)(6) is not one of these waived defenses. *Id*. In interpreting these provisions, many district courts have accordingly refused a hyper-technical reading of Rule 12(g), in favor of permitting additional Rule 12(b)(6) arguments. Permitting such additional arguments allows for all meritorious defenses to be raised, ultimately conserving judicial economy and resolving the parties' issues based upon substance rather than empty procedural formality. *See F.T.C. v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378, 383-84 (D. Md. 2009) (collecting cases). This is especially true where, as here, this Court has expressly ordered additional briefing on Defendants' dismissal arguments, and, as such, Rule 12(g)'s proscription on successive pre-answer motions to dismiss is simply not applicable. As such, to the extent any argument below has not been previously raised, Bailey submits that Rule 12 does not pose any procedural bar to this Court's consideration of such arguments.

## II.   BECAUSE BAILEY IS ACTING ON BEHALF OF THE COURT AND/OR IN A JUDICIAL CAPACITY, SHE IS ENTITLED TO ABSOLUTE QUASI-JUDICIAL IMMUNITY ON ALL COUNTS.

Every claim against Bailey in her individual capacity is founded upon Bailey's execution of her duties to the Tulsa County Clerk on behalf of the District Court. Plaintiffs seek to hold Bailey personally responsible for the assessment and collection of fines, fees, and court costs, the issuance and recall of failure-to-pay bench warrants, the setting of monetary conditions to recall such warrants, and the transfer of delinquent accounts to Aberdeen. (*See* SAC, ¶¶ 35, 50, 62, 122-23, 126, 164). The doctrine of quasi-judicial immunity precludes every claim against Bailey: Bailey's performance of her duties to the Clerk and the Court *cannot* form a basis for civil liability. Plaintiffs' claims must be dismissed.

### A.   *The Parameters of Quasi-Judicial Immunity.*

The Tenth Circuit Court of Appeals concluded in the seminal case of *Valdez v. City of Denver*, 878 F.2d 1285, 1286, 1289-90 (10th Cir. 1989), that "an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." While a spectator in Denver County Court, Valdez exclaimed "bullshit" following something the Judge said to a defendant. *Id.* at 1286. An exchange of words ensued between the Judge and Valdez and as a result, the Judge held Valdez in contempt of court and ordered a sheriff captain and three deputies to arrest Valdez. *Id.* Valdez sued the captain as well as the administrative supervisor of the jail. *Id.*

The Tenth Circuit reversed the District Court, which denied the officers' motion for summary judgment on the ground of absolute quasi-judicial immunity, finding "the record viewed as a whole indicates that every action of the defendants Herrera and MacFarlane to which Valdez objects was taken under the direction of a State court judge." *Id.* at 1290.

8

Crucially for Bailey's purposes, the Tenth Circuit noted that the United States Supreme Court has adopted a "functional" approach to entitlement to immunity: "Immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Id*. at 1285 (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988) (emphasis in original)). The Tenth Circuit concluded that "[t]o force officials performing ministerial acts intimately related to the judicial process to answer in court every time a litigant believes the judge acted improperly is unacceptable." *Id*.

Citing the First, Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth, and Eleventh Circuits, the *Valdez* Court observed that other circuits had endorsed similar approaches to immunity with virtual unanimity. *Valdez,* 878 F.2d at 1288. Based on the foregoing reasoning, the Tenth Circuit determined that the captain and the deputies were shielded from liability by absolute quasi-judicial immunity. *Id*. at 1290.

Court clerks and their deputies, like Bailey, perform functions that are integrally related to the functioning of their courts. Given that "immunity is justified and defined by the *functions* it protects and serves" it is not surprising that the Tenth Circuit has often and repeatedly held that clerks are entitled to absolute immunity for actions taken in the discharge of their roles as court functionaries. In *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1247 (10th Cir. 2007) the Tenth Circuit held that "when a court clerk assists a court or a judge in the discharge of judicial functions, the clerk is considered the functional equivalent of the judge and enjoys derivative immunity."

In *Thomas v. Palacios*, 1999 U.S. App. LEXIS 22088, *3 (10th Cir. 1999) (unpublished) [5], the Tenth Circuit held that a "court commissioner" was entitled to quasi-judicial immunity, even

---

[5] This unpublished decision (and all others herein) is cited to the Court for its persuasive value, in accordance with 10th Cir. R. 32.1.

though she had issued search warrants unlawfully and without jurisdiction. The Tenth Circuit noted that "[c]ourt employees whose acts are intertwined with the judicial process are entitled to 'quasi-judicial' immunity unless acting in the clear absence of all jurisdiction or authority." *Id*. Even though the court commissioner acted without jurisdiction, she was entitled to immunity because she "issued the warrant based on longstanding, previously accepted practice" and "therefore clearly had a colorable basis of authority to issue the warrant." *Id*. The applicability of this language to Bailey is evident. Similar holdings from the Tenth Circuit abound. *See Newton v. Buckley*, 127 F.3d 1109, at *4 (10th Cir. 1997) (unpublished) (court clerk entitled to absolute immunity for issuing warrant and filing failure to appear information); *Coleman v. Farnsworth*, 90 F. App'x 313, 317 (10th Cir. 2004) (unpublished) (court clerk entitled to judicial immunity when issuing summons, "regardless of procedural error, motive or good faith" (emphasis added)); *see also Guiden v. Morrow*, 92 F. App'x 663, 665 (10th Cir. 2004) (unpublished); *Sawyer v. Gorman*, 317 F. App'x 725, 728 (10th Cir. 2008) (unpublished); *Spalsbury v. Sisson*, 250 F. App'x 238, 248 (10th Cir. 2007) (unpublished); *McKinney v. State of Okl., Dep't of Human Servs., Shawnee OK*, 925 F.2d 363, 365 (10th Cir. 1991); *Wiggins v. New Mexico State Supreme Court Clerk*, 664 F.2d 812, 815 (10th Cir. 1981).

Further, in *Whitesel v. Sengenberger*, 222 F.3d 861, 869 (10th Cir. 2000), the Tenth Circuit rejected the argument that officials must act strictly within their authority to avail themselves of absolute immunity: "*even if the pretrial service officers exceeded their authority or committed 'grave procedural errors'* in issuing the discretionary orders, such actions do not equate to acting in clear absence of all jurisdiction." *Id*. at 868. In *Boyer v. County of Washington*, the Eighth Circuit similarly held that a court clerk was entitled to absolute immunity for signing and issuing arrest warrants, even when the court clerk was authorized under state statute only to issue, not sign,

10

arrest warrants. *Boyer v. County of Washington*, 971 F.2d 100, 102 (8th Cir. 1992). The Court reasoned that regardless of her authority, "these acts are integral parts of the criminal judicial process." *Id.*; *see also Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981) (court clerks "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction").

### B. Bailey is Entitled to Absolute Quasi-Judicial Immunity.

Plaintiffs seek to hold Bailey personally responsible for the assessment and collection of fines, fees, and court costs, the issuance and recall of failure-to-pay bench warrants, the setting of monetary conditions to recall such warrants, and the transfer of delinquent accounts to Aberdeen. (*See* SAC, ¶¶ 35, 50, 62, 122-23, 126, 164). Plaintiffs' ascribe much to Bailey's "discretion," as if the repeated use of the word could overcome established law. (*See* e.g., SAC, ¶¶ 5, 7, 9, 35-36, 50, 57, 125, 164, 178, 183, 283, 322). It cannot. As the following cases and state law make clear, Bailey's assessment of costs, issuance of warrants, and referral of accounts to Aberdeen are *not* discretionary acts, and even if they were, it is indisputable that these functions are performed on behalf of the state judges, and thus the judges are the final policymakers.

The assessment and collection of fines, fees and court costs is a matter established by state statute and ordered by the judiciary to be carried out by the court clerk. The Court Clerk, with Bailey's assistance, assesses those costs that the Oklahoma statutes and state court judges direct him to assess. *See* 19 *Okla. Stat.* § 514.5(A) (30% surcharge which may not be waived or reduced except by order of the court); 28 *Okla. Stat.* §§ 153(A)(9) and (L) ($50 sheriff's fee for serving or endeavoring to serve each warrant, which may not be dismissed or waived); 28 *Okla. Stat.* §§ 153(D) and (L) ($25 fee assessed and credited to the Oklahoma Court Information System Revolving Fund, which may not be dismissed or waived); and 22 *Okla. Stat.* § 456(A) (court clerk

11

shall charge and collect a $5 fee for the issuance of each bench warrant for a defendant's failure to pay court costs, fines, fees, or assessments in felony, misdemeanor, or traffic cases). Plaintiffs reference these last three fees as the $80 warrant fee. It is the Court Clerk's duty:

> ... to charge and collect the fees imposed by this title and other fees, assessments and payments as *imposed by the Oklahoma Statutes, fines, costs and assessments imposed by the district courts or appellate courts*, and none others, in all cases. ...

28 *Okla. Stat.* § 151(A) (emphasis added). Further, the Court Clerk does not have the discretion to waive costs.

> In order to have a unified, organized judiciary in Oklahoma, there must be one individual at the apex: the Chief Justice of the Supreme Court. Through the powers vested in the Supreme Court, by the Oklahoma Constitution and statutes, it has passed down the authority for the administration of district courts to the Administrative Judge of an Administrative Judicial District. This authority is essential for the orderly operation of justice.

> In ministerial matters, the District Court Clerk is serving his Court subject to the authority of the Administrative Judge. *Even though he may disagree with a particular order of the Administrative Judge, he has no discretion but to follow it in ministerial matters.*

*Petuskey*, 742 P.2d at 1123 (emphasis added).

> The district court clerk has no authority to act in a judicial capacity and demand payment of fines, fees and costs, until there has been an adjudication that the person must pay. However, once the fines, fees or costs are ripe for collection, the clerk should not be discouraged from collecting the *overdue* moneys.

*Id*. at ¶ 28, 742 P.2d at 1122. To this end, "[T]he court clerk's function of receiving and disbursing funds of *every* character is inextricably connected, not with county government, but with that official's duty as state court's bursar." *N. Side State Bank v. Bd. of Cty. Comm'rs of Tulsa Cty.*, 894 P.2d 1046, 1052 (Okla. 1994). As a deputy of the Tulsa County Court Clerk, the above law applies equally to Bailey's actions taken as cost administrator.

As for the issuance and recall of warrants, state court judges issue the failure-to-pay bench warrants. (*Id*. at ¶ 32). Even taking the facts pled as true, it is clear that Bailey is not exercising

12

any discretion in issuing facially valid arrest warrants signed by the District Court Judges. Indeed, if the court clerk in *Boyer*, *supra*, who was actually *signing* arrest warrants in contravention of the Missouri statutes, was entitled to absolute immunity, then Bailey is certainly entitled to absolute immunity for simply assisting the court in issuing judge-signed warrants.

Moreover, while Plaintiffs try to allege that Bailey "seeks" warrants rather than "issues" them (*see e.g.* SAC, ¶¶ 5, 35, 50, 92, and 123), other courts have rejected this type of craftiness where the actual allegations indicate otherwise. For instance, in another case handled by Plaintiffs' counsel of record, the plaintiffs alleged that a court administrator "sought" warrants rather than "issued" them, but the court rejected this argument, finding that the plaintiffs' allegations as a whole alleged that the judges had "outsourced their job." *Cain v. City of New Orleans*, CV 15-4479, 2017 WL 467685, at *6 (E.D. La. Feb. 3, 2017). In particular, the court explained that the court administrator "d[id] not ask for issuance of a warrant based on his own investigation. ***Rather, [the court administrator] applie[d] a formula for issuing warrants set by judges who are indisputably authorized to issue warrants on their own***." *Id.* (emphasis added). The same is alleged here. Plaintiffs claim the Court Clerk "*automatically* seeks a warrant ... based solely on ... nonpayment," and that the warrant is signed "*as a matter of course*" by the state court judge. (SAC, ¶ 120) (Emphasis added). Notwithstanding Plaintiffs' shrewd choice of words, Bailey does not seek warrants.

Finally, as noted earlier, the transfer of cases to Aberdeen is undertaken in direct response to an order given by the Chief Justice of the Supreme Court. *See* Supreme Court Order, S.C.A.D. 2011-08 (Doc. No.99-35) ("Each district court is authorized and *directed to participate in* the misdemeanor or failure-to-pay warrant collection program authorized by Title 19 Oklahoma Statutes Sections 514.4 and 514.5 immediately") (emphasis added). Thus, even if Bailey or the

13

Court Clerk has discretion in whether to transfer a particular case to Aberdeen, the utilization of Aberdeen is not discretionary and, in fact, is mandated by the Supreme Court; thus, the policy of assigning cases to Aberdeen is promulgated by the courts, not Bailey.

With regard to each of the alleged actions taken by Bailey, although a court clerk "is both a county officer and an officer or 'arm' of the court," (*Speight v. Presley*, 203 P.3d 173, 177 (Okla. 2008)), "[i]n the performance of all *ministerial* court functions, the court clerk and his deputies are subject to *summary control* by the judges." *N. Side State Bank*, 894 P.2d at 1051 (emphasis in original). Thus, Oklahoma courts have indisputably recognized that the court clerk is an arm of the court in performing duties related to the judicial system. *See Barrett v. Barrett*, 249 P.2d 88, 90 (Okla. 1952) ("The clerk is the arm of the court for which he is clerk."); *Hirsh v. Twyford*, 139 P. 313, 316 (Okla. 1913) ("The clerk of the district court [is] the arm of that court, and subject to the exclusive control and jurisdiction of the district court."); and *Matney v. King*, 93 P. 737, 745 (Okla. 1908) ("The clerk of the district court is an officer of the court."). Likewise, the Tenth Circuit has held:

> [A] district court clerk [in Oklahoma] is "judicial personnel" and is an arm of the court whose duties are ministerial, except for those discretionary duties provided by statute. In the performance of [a] clerk's ministerial functions, ***the court clerk is subject to the control of the Supreme Court and the supervisory control that it has passed down to the Administrative District Judge in the clerk's administrative district.***

*Bishop v. Oklahoma*, 333 F. App'x 361, 365 (10th Cir. 2009) (unpublished) (quoting *Speight,* 203 P.3d at 177) (emphasis added). District court clerks "are officers and arms of the court, and . . . the clerk is 'ultimately connected to the existence, dignity, and function of the judiciary.'" *Jones*, 2015 WL 1279352, at *6 (*quoting Petuskey*, 742 P.2d at 1121).

The Court Clerk is among district court personnel subject to the administrative and supervisory control of the judiciary, in the following ascending order of authority:

14

1. The employee's immediate supervisor, if the employee reports to someone other than a district judge;

2. A district judge of the judicial district;

3. The Chief Judge of the judicial district, in all districts other than Oklahoma County and Tulsa County;

4. The Presiding Judge of the judicial administrative district; and

5. The Chief Justice of the Supreme Court.

Rule 2(B), Oklahoma Supreme Court Rules on Administration of Courts. 20 O.S. Chp.1, App. 2, Rule 2. *See also* note 5, *supra*. As a deputy of the Court Clerk, Bailey is subject to same chain of control.

In sum, the conduct alleged in the Second Amended Complaint is integral to the judicial process, and Bailey is entitled to absolute judicial, quasi-judicial and/or derivative immunity. The alternative would be precisely what the Tenth Circuit in *Valdez* forbids: a scenario in which Bailey must second guess judicial orders and policies, acting as a "pseudo-appellate court" and making her own determination as to whether a particular person is indigent, whether a warrant should be recalled, etc. Accordingly, Bailey is shielded from liability in her individual capacity by absolute judicial, quasi-judicial and/or derivative immunity on all claims asserted against her. *See Chastain v. Sundquist*, 833 F.2d 311, 330 (D.C. Cir. 1987) (Mikva, J., dissenting) (absolute immunity protects individuals from "civil damage suits, regardless of whether these suits charge a constitutional, statutory, or common law violation."); *see also Allen v. Zigler*, 41 P.3d 1060 (Okla. Civ. App. 2002).

### III.   AT MINIMUM BAILEY IS ENTITLED TO QUALIFIED IMMUNITY ON ALL COUNTS BECAUSE NO CLEARLY ESTABLISHED CONSTITUTIONAL VIOLATION HAS BEEN PLED.

Even if Bailey were not entitled to absolute immunity (and she is), Bailey's alleged actions entitle her to qualified immunity because Plaintiffs have alleged no clearly established constitutional violation. "Qualified immunity gives government officials breathing room to make

reasonable but mistaken judgments about open legal questions." *Lane v. Franks*, 573 U.S. 228, 243 (2014) (internal quotations and citations omitted). "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (internal quotations and citations omitted).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) (internal quotations and citations omitted). "Ordinarily, in order for the law to be clearly established, *there must be a Supreme Court or Tenth Circuit decision on point*, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (quoting *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992) (emphasis added).

"The plaintiff bears the burden of citing . . . what he thinks constitutes clearly established law." *Id* (internal citations omitted). "In order to carry his burden, the plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995) (internal citations omitted). "Rather, **the plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity**, and demonstrate a substantial correspondence between the conduct in question and prior law establishing that the defendant's actions were clearly prohibited." *Id.* (internal citations and alterations omitted and emphasis added). The United States Supreme Court has "repeatedly told courts ... not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citing *Ashcroft v. al–Kidd*, 563 U.S. 731,

16

742 (2011)).  "The dispositive question is whether the violative nature of *particular* conduct is clearly established.  This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (citations and internal quotation marks omitted, emphasis in original).

Here, Plaintiffs allege that Bailey assesses and collects statutorily and/or judicially imposed court costs, assists the judge in issuing and recalling failure-to-pay bench warrants, transfers accounts to Aberdeen, and sets monetary conditions to recall failure-to-pay warrants.  (*See* SAC, ¶¶ 35, 50, 62, 122-23, 126, and 164).  There are no authorities that clearly establish it is unconstitutional for a deputy court clerk to assist the court in collecting outstanding court costs imposed either judicially or by statute.  Likewise, there is no law that establishes a court clerk has a constitutional duty to ensure a warrant is properly issued by a state court judge. To the contrary, the clearly established law is that the court clerk does not have the authority to do or question any of these things, as they are all based on either orders from the court or Oklahoma statutes. *See Turney v. O'Toole*, 898 F.2d 1470, 1473 (10th Cir. 1990) ("State officials must not be required to act as pseudo-appellate courts scrutinizing the orders of judges, but subjecting them to liability for executing an order because the order did not measure up to statutory standards would have just that effect" (internal citation and quotations omitted)).

Plaintiffs' allegations against Bailey also relate to her alleged assessment and collection of fines, fees and court costs, the issuance and recall of failure-to-pay bench warrants, the setting of monetary conditions to recall such warrants, and the transfer of delinquent accounts to Aberdeen. (*See* SAC, ¶¶ 35, 50, 62, 122-23, 126, 164). There are no authorities that clearly establish that a district court clerk violates an individual's constitutional rights by assessing statutorily mandated court costs and fees. Nor is any clearly established constitutional right violated by transferring an

17

individual's delinquent court costs to a private party for collections in accordance with Oklahoma law and pursuant to orders of the state Supreme Court. *See* Supreme Court Order, S.C.A.D. 2011-08 (Doc. #99-35) ("Each district court is authorized and directed to participate in the misdemeanor or failure-to-pay warrant collection program authorized by Title 19 Oklahoma Statutes Sections 514.4 and 514.5 immediately. . ."); *see also* 19 *Okla. Stat.* § 514.5(A) ("Misdemeanor or failure-to-pay warrants referred to the contractor pursuant to Section 514.4 of this title **shall include** the addition of an administrative cost of thirty percent (30%) . . . This administrative cost shall not be waived or reduced except by order of the court" (emphasis added)). In fact, when an officer acts in accordance with a state statute, qualified immunity follows unless said statute is "patently violative" of the Constitution. *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009).

Plaintiffs claim that their detention on bench warrants, issued by the District Court, violates rights as set forth in *Bearden v. Georgia*, 461 U.S. 660 (1983). In *Bearden*, the Supreme Court held that petitioner's probation could not be revoked solely for reason of his nonpayment of a fine, without some finding that petitioner had willfully failed to pay the fine. *Id.* at 667-668. *Bearden* is not close to the present facts, unless its holding is taken at a "high level of generality"—which is contrary to the qualified immunity analysis. *Mullenix*, 577 U.S. at 12. The procedural context of Plaintiffs' claims is not remotely similar to *Bearden*. Plaintiffs are criminal defendants who have pled guilty to, or otherwise been found guilty of, criminal offenses, and Plaintiffs have failed to observe the obligations set forth in their (often voluntarily negotiated) criminal sentences. After continued noncompliance, bench warrants were issued; critically, these bench warrants impose no sentence upon Plaintiffs and do not purport to impose some term of imprisonment for nonpayment; instead, the warrants are issued and served so that the criminal defendant can be brought before

18

the Court, so that the Court may, in order to comply with *Bearden*, determine ability to pay and defendants' willfulness in nonpayment. Such a warrant is entirely appropriate under Oklahoma law. *E.g.,* 22 O.S. § 966A (recognizing bench warrant can issue for failure to pay court costs, fines, and fees, and clerk shall charge and collect fee of $5.00); 22 O.S. § 967 (identifying form of bench warrant); 19 O.S. §§ 514.4, 514.5 (noting "failure-to-pay warrants" can issue for failure to pay certain fines and costs). *Bearden* holds that "in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay." *Bearden*, 461 U.S. at 672. *Bearden* does not hold that it was unlawful to assist in issuing bench warrants or to utilize a private contractor in court cost collection efforts; indeed, *Bearden* has no conceivable application to Bailey.

Because there are no clearly established constitutional violations on the part of Bailey, she is entitled to qualified immunity on all counts.

## IV.   THE INJUNCTIVE RELIEF SOUGHT BY PLAINTIFFS AGAINST BAILEY FAILS AS A MATTER OF LAW.

Plaintiffs' claims purport to seek injunctive relief against Bailey in her individual capacity; any such request for relief must be dismissed. The Tenth Circuit has repeatedly and unambiguously held that an individual capacity defendant may not be sued under § 1983 for injunctive relief. In *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011), the Tenth Circuit held: "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." (citing *Hafer v. Melo*, 502 U.S. 21, 30, 27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)); *see also DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 718 (10th Cir. 1988) ("An action for injunctive relief no matter how it is phrased is against a defendant in official capacity only . . . ."). Just last year, in *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1214 (10th Cir. 2022), the Tenth Circuit reaffirmed that, "[u]nder § 1983, a plaintiff

19

cannot sue an official in their individual capacity for injunctive or declaratory relief." Plaintiffs'

claims against Bailey in her individual capacity for injunctive relief must be dismissed.

### V.   MOST OF PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

Plaintiffs' § 1983 claims are subject to a two-year statute of limitations. *See Stevenson v.*

*Grace*, 356 F. App'x 97, 98 (10th Cir. 2009) (unpublished). "And since the injury in a § 1983 case

is the violation of a constitutional right, such claims accrue when the plaintiff knows or should

know that his or her constitutional rights have been violated." *Id.* (alteration and quotations

omitted).

Plaintiffs' claims in counts two, three, and five of their Second Amended Complaint allege

constitutional violations in the "seeking, issuing, and executing" of debt-collection warrants. (*See*

SAC, Count 2, ¶¶ 318-327; Count 3, ¶¶ 329-337; Count 5, ¶¶ 345-352). Plaintiffs' claims against

Bailey relate to her alleged actions in "seeking" the warrants at issue and thus would have accrued

on the date the warrants were issued.  However, even assuming, *arguendo*, Bailey had some role

in the execution phase, the latest date that Plaintiffs' claims would have accrued is on the date of

their arrest. Linda Meachum was arrested in 2014.  (*Id.* at ¶ 179). Likewise, Christopher Choate

was arrested in April 2015.[6] This lawsuit was filed on November 2, 2017. As the date Meachum's

and Choate's claims accrued was more than two years prior to the filing of this lawsuit, their claims

are barred by the statute of limitations.

Plaintiffs' claims in count four allege a constitutional violation in the "detaining" of people

arrested on debt-collection warrants, and count five similarly alleges the improper "jailing" of

debtors without notice and a hearing.  (*See* SAC, ¶¶ 339-343 and 345-352).  In either instance,

---

[6] Although the date of Choate's arrest is not pled in the Second Amended Complaint, it is a matter
of public record, and therefore, the Court may take judicial notice of the date. (*See* note 4, *supra*).

Plaintiffs' claims would have accrued "when the victim [was] released from custody or when the victim [was] bound over on charges, whichever occurs first." *Stevenson*, 356 F. App'x at 98. Meachum claims she was arrested in 2014. (SAC, ¶ 179). Plaintiffs allege Tulsa County only holds failure-to-pay arrestees for a few days if they are unable to post bail. (*Id.* at ¶ 129).   Even if Meachum were arrested at the end of December 2014, she would have been released in early January 2015, at the latest.   Choate was released in April 2014.[7] Both Meacham's and Choate's detention-related claims as to counts four and five accrued more than two years prior to the filing of the lawsuit, so such claims are time barred.

## CONCLUSION

For the foregoing reasons, Defendant Tulsa County Cost Administrator Darlene Bailey, in her individual capacity, respectfully moves this Honorable Court to dismiss *with prejudice* all claims brought against her in this action in accordance with FED. R. CIV. P. 12(b)(1), and FED. R. CIV. P. 12(b)(6).

---

[7] *See* note 6, *supra*.

21

Respectfully submitted,


  /s/ Jo Lynn Jeter
**Joel L. Wohlgemuth**, OBA #9811
**Jo Lynn Jeter**, OBA #20252
**W. Caleb Jones**, OBA # 33541
**NORMAN WOHLGEMUTH, LLP**
401 South Boston, Suite 3200
Tulsa, OK 74103
(918) 583-7571
(918) 584-7846 – facsimile
JWohlgemuth@NWLawOK.com
JJeter@NWLawOK.com
WJones@NWLawOK.com

**Douglas A. Wilson**, OBA #13128
**Michael Shouse**, OBA #33610
**Tulsa County District Attorney's Office**
**Civil Division**
218 W. Sixth St., Suite 933
Tulsa, OK  74119
Telephone: (918) 596-8795
Facsimile: (918) 596-4804
douglas.wilson@tulsacounty.org
mshouse@tulsacount.org

**Attorneys for Tulsa County Sheriff Vic**
**Regalado, Tulsa County Court Clerk Don**
**Newberry and Tulsa County Cost**
**Administrator Darlene Bailey, in both**
**their individual and official capacities,**
**and the Board of County Commissioners**
**of the County of Tulsa**


## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants in this matter.


                        /s/ Jo Lynn Jeter