CASE NO. 17-cv-606-TCK-JFJ

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

CARLY GRAFF, *et al.*,

Plaintiffs,

v.

ABERDEEN ENTERPRIZES II, INC., *et al.*,

Defendants.

STATE JUDGES' MOTION TO DISMISS AND BRIEF IN SUPPORT

STEFANIE E. LAWSON, OBA#22422
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921   Facsimile: (405) 521-4518

*Attorney for State Judges Douglas Drummond, Down Moody,
William Musseman and Terrell Crosson*

July 7, 2023

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ..............................................................................................

DEFENDANTS STATE JUDGES' MOTION TO DISMISS ........................................... 1

BRIEF IN SUPPORT ...................................................................................................... 1

STATEMENT OF THE CASE ......................................................................................... 1

SUMMARY OF THE ARGUMENT ............................................................................... 6

STANDARD OF REVIEW ............................................................................................. 6

    *Rule 12(b)(1)* ............................................................................................................ 6

    *Rule 12(b)(6)* ............................................................................................................ 7

ARGUMENT AND AUTHORITY ................................................................................. 7

    *Article III Requirements* ........................................................................................ 7

    *Injury in Fact* ........................................................................................................ 10

    *Traceability/Causation* ......................................................................................... 13

    *Redressibility* ........................................................................................................ 15

    *Mootness* ................................................................................................................ 21

        *A.  Constitutional Mootness* ............................................................................ 23

        *B.  Prudential Mootness* .................................................................................. 25

CONCLUSION .............................................................................................................. 31

CERTIFICATE OF SERVICE ...................................................................................... 31

# TABLE OF AUTHORITIES

## CASES

*Abbott Laboratories v. Gardner,*
387 U.S. 136 (1967) ................................................................................................19

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,*
300 U.S. 227 (1937) ................................................................................................17

*Allstate Ins. Co. v. Green,*
825 F.2d 1061 (6th Cir. 1987) ...............................................................................19

*Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1,*
859 F.3d 1243 (10th Cir. 2017) ................................................................................9

*Arizonans for Official English v. Arizona,*
520 U.S. 32 (1997) .................................................................................... 9, 22, 23

*Audobon of Kansas, Inc. v. United State Dep't of Interior,*
67 F.4th 1093 (10th Cir. 2023) ..............................................................................30

*Beattie v. U.S.,*
949 F.2d 1092 (10th Cir. 1991) ..............................................................................23

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) .............................................................................................7, 15

*Broker's Choice of Am. v. NBC Universal, Inc.,*
861 F.3d 1081 (10th Cir. 2017) ................................................................................7

*Bronson v. Swensen,*
500 F.3d 1099 (10th Cir. 2007) ...........................................................................9, 17

*Brown v. Buhman,*
822 F.3d 1151 (10th Cir. 2016) ................................................................................9

*Brown v. Zavaras,*
63 F.3d 967 (10th Cir. 1995) .................................................................................15

*Bldg. & Const. Dep't v. Rockwell Int'l Corp,*
7 F.3d 1492 (10th Cir. 1993) .................................................................................23

*Burwell v. Hobby Lobby Stores, Inc.,*
134 S. Ct. 2751 (2014) ............................................................................8

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ...............................................................................17

*Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson,*
236 F.3d 1174 (10th Cir. 2001) ....................................................... 22, 31

*Chamber of Commerce v. U.S. Dep't of Energy,*
627 F.2d 289 (D.C. Cir. 1980) .............................................................22

*Citizen Ctr. v. Gessler,*
770 F.3d 990 (10th Cir.2014) ..............................................................24

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ...............................................................11, 12, 15

*Coleman v. Court of Appeals,*
550 F.Supp. 681 (W.D. Okla. 1980) ................................................. 17, 20

*Collins v. Daniels,*
916 F.3d 1302 (10th Cir. 2019) ...........................................................23

*Cory v. Allstate Ins.,*
583 F.3d 1240 (10th Cir. 2009) ...........................................................15

*Cox v. Phelps Dodge Corp.,*
43 F.3d 1345 (10th Cir. 1994) ................................................... 10, 17, 22

*Disability Law Ctr. v. Millcreek Health Ctr.,*
428 F.3d 992 (10th Cir.2005) .............................................................9, 21

*Erikson v. Pawnee County Bd. of County Comm'rs,*
263 F.3d 1151 (10th Cir. 2001) .............................................................7

*Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.,*
647 F.3d 1296 (11th Cir. 2011) .............................................................8

*Fletcher v. U.S.,*
116 F.3d 1315 (10th Cir. 1997) ...........................................................23

*Francis E. Heydt Co. v. U.S.,*
948 F.2d 672 (10th Cir. 1991) .............................................................17

*Franklin v. Massachusetts,*
505 U.S. 799 (1992) ..................................................................................................10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
528 U.S. 167 (2000) ...................................................................................................8

*Habecker v. Town of Estes Park. Colo.,*
518 F.3d 1217 (10th Cir. 2008) ..............................................................................9, 21

*Hall v. Bellmon,*
935 F.2d 1106 (10th Cir. 1991) ..................................................................................7

*Hobby Lobby Stores, Inc. v. Sebelius,*
723 F.3d 1114 (10th Cir. 2013) ..................................................................................8

*Holt v. U.S.,*
46 F.3d 1000 (10th Cir. 1995) .................................................................................6, 7

*Hunnicutt v. Zeneca, Inc.,*
2012 WL 4321392 (N.D. Okla. Sept. 19, 2012) .........................................................8

*Jodan v. Sosa,*
654 F.3d 1012(10th Cir. 2011) ..............................................................................24, 25

*Kokkonen v. Guardian Life Ins. Co.,*
511 U.S. 375 (1994) ...................................................................................................7

*Lippoldt v. Cole,*
468 F.3d 1204 (10th Cir. 2006) ..................................................................................9

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) .........................................................8, 9, 11, 13, 14, 15

*Maryland Casualty Co. v. Pacific Coal & Oil Co.,*
312 U.S. 270 (1941) .................................................................................................18

*McKesson Corp. v. Hembree,*
2018 WL 4621833 (N.D. Okla. Sept. 26, 2018) ...................................................23, 24

*MedImmune Inc. v. Genetech, Inc.,*
549 U.S. 118 (2007) .................................................................................................18

*Mink v. Suthers*,
482 .3d 1244 (10th Cir. 2007) ............................................................... 9, 21, 22

*N. Nat. Gas Co. v. Grounds*,
931 F.2d 678 (10th Cir. 1991) ...................................................................... 30

*Nova Health Systems v. Gandy*,
416 F.3d 1149 (10th Cir. 2005) ................................................... 9, 10, 13, 17

*Ohio Nat'l Life Ins. Co. v. United States*,
922 F.2d 320 (6th Cir. 1990) ......................................................................... 6

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ........................................................................ 12, 14, 24

*Pembaur v. City of Cincinnati*,
475 U.S. 458 (1986) ...................................................................................... 13

*Peterson v. Grisham*,
594 F.3d (10th Cir. 2010) ............................................................................... 7

*Prison Legal News v. Fed. Bureau of Prisons*,
944 F.3d 868 (10th Cir. 2019) ............................................................... 23, 24

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
601 F.3d 1096 (10th Cir. 2010) ............................................................ 22, 24

*Schaffer v. Clinton*,
240 F.3d 878 (10th Cir. 2001) ....................................................................... 9

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ................................................................................. 13, 14

*S. Utah Wilderness Alliance v. Smith*,
110 F.3d 727 (10th Cir. 1997) ..................................................................... 23

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....................................................................................... 8

*State Farm Fire & Casualty Co. v. Mhoon*,
31 F.3d 979 (10th Cir. 1994) ....................................................................... 19

*Steffel v. Thompson*,
415 U.S. 452 (1974) ...................................................................................... 19

*Surefoot LC v. Sure Foot Corp.,*
531 F.3d 1236 (10th Cir. 2008) ................................................................. 18

*Tandy v. City of Wichita,*
380 F.3d 1277 (10th Cir. 2004) ............................................................. 8, 17

*Terrace v. Thompson,*
263 U.S. 197 (1923) ................................................................................. 19

*Unified Sch. Dist. No. 259, Sedgwick Cnty. Kan. v. Disability Rights Ctr. of Kan.,*
491 F.3d 1143 (10th Cir. 2007) ............................................................. 10, 2

*U.S. v. Ramos,*
695 F.3d 1035 (10th Cir.2012) ................................................................... 8

*U.S. v. Seminole Nation of Okla.,*
312 F.3d 939 (10th Cir. 2002) .................................................................. 24

*Utah Animal Rights Coalition v. Salt Lake City Corp.,*
371 F.3d 1248 (10th Cir. 2004) ........................................................... 10, 17

*Walker v. United Parcel Serv., Inc.,*
240 F.3d 1268 (10th Cir.2001) ............................................................. 10, 22

*Wheeler v. Hurdman,*
825 F.2d 257 (10th Cir.), *cert. denied,* 484 U.S. 986 ............................... 6, 7

*Wilton v. Seven Falls Co.,*
515 U.S. 277 (1995) ................................................................................. 19

*Winbush v. State,*
2018 OK CR 38 ........................................................................................ 21

*Winzler v. Toyota Motor Sales U.S.A., Inc.,*
681 F.3d 1208 (10th Cir. 2012) ................................................................ 25

## STATUTES

22 O.S. § 123 .............................................................................................. 3

22 O.S. § 124 .............................................................................................. 3

22 O.S. § 983 ......................................... 4, 6, 15, 16, 19, 20, 21, 26, 30

22 O.S. § 983a ..................................................................................................4, 19

22 O.S. § 983(B) ..............................................................................................26, 30

22 O.S. § 983(C) ...................................................................................................27

22 O.S. § 983(C)(4) ..............................................................................................28

22 O.S. § 983(D) ...................................................................................................28

22 O.S. § 983(G)(2) ..............................................................................................27

22 O.S. § 983(M) ..................................................................................................28

18 U.S.C. §§ 1961-1968 ......................................................................................2, 5

28 U.S.C. § 2201(2010) ........................................................................................18

28 U.S.C. § 2201(a) ..............................................................................................18

42 U.S.C. § 1981(a) .........................................................................................10, 22

42 U.S.C. § 1983 .....................................................................................................2

## RULES

Okla. Ct. Crim. App. R. 8.1 *et seq.* ............................................................... 4, 16, 19

Okla. Ct. Crim. App. R. 8.3 .....................................................................................4

Okla. Ct. Crim. App. R. 8.4 ................................................................................4, 16

Okla. Ct. Crim. App. R. 8.5 ................................................................................4, 16

Fed. R. Civ. P. 8 ....................................................................................................12

Fed. R. Civ. P. 12(b)(1) .................................................................................. 1, 6, 31

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1, 7, 31

Fed. R. Civ. P. 12(h)(3) ...........................................................................................7

Fed. R. Civ. P. 56 ....................................................................................................6

**OTHER**

U.S. CONST. art. III ........................................................................................18

U.S. CONST. art. III, § 2 ..................................................................................22

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA**

CARLY GRAFF, *et.al.*

      Plaintiff,

v.

ABERDEEN ENTERPRIZES II, INC., *et al.,*

      Defendants.

**Case No.: 17-cv-606-TCK-JFJ**

## DEFENDANT STATE JUDGES' MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendants Tulsa County Judges Douglas Drummond, Dawn Moody, and William Musseman and Rogers County Judge Terrell Crosson (collectively "State Judges")[1] by and through attorney of record, Stefanie Lawson, Assistant Attorney General, respectfully move this Court to dismiss Plaintiffs' Second Amended Complaint [Doc. 212] pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure because Plaintiffs cannot meet Article III requirements as to Defendant State Judges.

## BRIEF IN SUPPORT

## STATEMENT OF THE CASE

Plaintiffs are a group of individuals seeking class certification. They claim they (and others similarly situated) currently owe money for various traffic and criminal court related fees and/or fines to various counties in the State of Oklahoma. They have sued Aberdeen Enterprizes II, Inc. (a collection agency), two of Aberdeen's executives, various County

---

[1] Judge Musseman was appointed to the Court of Criminal Appeals in 2022 and is no longer a District Judge in Tulsa County. Judge Moody was elected to District Judge in 2019 and is no longer a Special Judge assigned to the cost docket.

Commissioners, Sheriffs, and Court Clerks. They have also named four state judges, Tulsa County Special Judge Dawn Moody, Tulsa County District Judge Douglas Drummond, Tulsa County District Judge William Musseman, and Rogers County Special Judge Terrell Crosson (sued in their *official capacities* only for declaratory relief) [Doc. 212, ¶¶ 33 and 34, fn. 43, p. 100][2]. Plaintiffs seek an order declaring it unlawful for State Judges to issue "debt collection arrest warrants based solely on alleged nonpayment" and "without inquiry into ability to pay, consideration of alternatives, pre-deprivation process and factual allegations based on oath or affirmation." *Id.* at (c), pp. 98-99. Plaintiffs also seek an order "declaring it unlawful [and unconstitutional] for the Tulsa County Judges and Rogers County Judge to issue debt-collection arrest warrants on the bases of unsworn statements" *Id.* at ¶ (e). Plaintiffs' allege that "[n]umerous actors in the Oklahoma criminal legal system enable Aberdeen" to extort money from them (*id.*, ¶ 9), which violates their rights under the Racketeer Influence and Corrupt Organization Act ("RICO") (18 U.S.C. §§ 1961-1968), the United States Constitution pursuant to 42 U.S.C. § 1983, and Oklahoma law. [Doc. 212, ¶ 15]. The sole remedy Plaintiffs seek from this Court against the State Judges specifically is "[a]n order declaring it unlawful for the Tulsa County Judges and Rogers County Judge to issue debt-collection warrants on the basis of unsworn statements, and declaring the same unconstitutional." *Id.*, p. 99, ¶ (e).

---

[2]To the extent that the Second Amended Complaint can be interpreted as seeking an injunction or damages against Defendant State Judges, Plaintiff's counsel confirmed to undersigned via email on October 9, 2018 that Defendant State Judges are being sued in their official capacities for declaratory relief only. Should the Court decide otherwise or Plaintiffs change their minds, Defendant State Judges request permission to respond to any additional claims, for either injunctive relief or damages.

Other than the very broad indictment against the State's criminal legal system, Plaintiffs' only specific allegations against the named State Judges are that "Judge Moody issues arrest warrants for court debtors based solely on unsworn statements alleging nonpayment without probable cause or any pre-deprivation process, including any inquiry into ability to pay." *Id.*, ¶ 33. Plaintiffs also allege that Judge Moody signs debt collection warrants as a matter of course and presides over the cost docket hearings. *Id.,* ¶¶ 120 and 130. Plaintiffs do not claim they have been the subject of Judge Moody's actions, and do not name any class member similarly situated that has suffered from Judge Moody's alleged actions. Plaintiffs allege that Judges "Doug Drummond and William J. Musseman, Jr. (collectively, with Judge Moody, the 'Tulsa County Judges') supervise Judge Moody and set the policies and practices for court debt collection for the Tulsa County District Court." *Id.,* ¶ 33. Plaintiffs further allege that Judges Musseman and Drummond failed to implement recommendations by a steering committee to cease arrests on debt collection warrants.[3] *Id.* Plaintiffs also claim that Judge Terrell S. Crosson (the 'Rogers County Judge') presides over criminal cases in Rogers County" and "issues arrest warrants for court debtors based solely on unsworn statements alleging nonpayment without probable cause or any legal proceedings; including any inquiry into ability to pay. *Id.,* ¶ 34. Finally, Plaintiff Holmes alleges that Judge Crosson issued a debt collection arrest warrant in one of her cases. *Id.,* ¶ 206.

---

[3]There is no allegation, and it is not the case, that two of the more than a dozen district judges in Tulsa County have the authority to cease any particular arrest or that they had a constitutional obligation to implement any of the committee's recommendations. While the Special Judges serve at the pleasure of the District Judges, the Special Judges maintain judicial independence in the conduct of their assigned dockets, deliberations, and decisions. *See e.g.* 22 O.S. § 123, 124.

Significantly, Plaintiffs fail to allege that either they, or those similarly situated, have challenged any of the named State Judges' actions through Oklahoma's Criminal appellate process based on the Judges' failure to follow state law or appropriate Court of Criminal Appeals Rules. Plaintiffs readily admit there are state statutes and rules in place to prevent the very actions they claim violate the U.S. Constitution. [Doc. 212, ¶¶ 43, 44, and 45]. They even admit that Aberdeen's contract with the various counties prohibits them from violating any law. *Id.*, ¶ 81. Yet, no Plaintiff has availed themselves of readily available state court remedies that would have protected them from their alleged plight.

The Oklahoma Legislature and Court of Criminal Appeals have enacted various statutes and rules to govern the collection of costs, fines, and fees imposed as part of criminal sentences. *See* Title 22 Criminal Procedure Ch. 16 Judgment and Execution §§ 983, 983a, and 983b.[4] *See also* Title 22, Ch. 18, Court of Criminal Appeals Rule 8.1 to 8.8, Rule 10 and 22 O.S. §§454-463. Oklahoma's statutory scheme and the rules promulgated by the Court of Criminal Appeals contemplate and allow for appeal from the imposition of courts costs fees and fines, as well as review of a criminal defendant's status as indigent and his/her ability to pay those court costs fines and fees once they are imposed. *See e.g.* 22 O.S. § 983a, Okla. Ct. Crim. App. Rules 8.1 *et seq.* These rules provide process and remedy for ongoing review of a defendant's continued ability to pay her court debts. Specifically, Rules 8.3, 8.4, and 8.5 provide for installment payments with a fixed due date of each payment and opportunity to be heard as to failure to make payments. See 22 O.S. Rule 8.3, 8.4, 8.5. State judges are tasked by law to

---

[4] The statutes applicable at the time this suit was filed as well as the amended versions have been attached for the Court's convenience. *See Statutes,* attached as Exhibit 1.

review and enforce compliance with criminal sentences as imposed. Plaintiffs are essentially seeking an order from this Court that would declare compliance with state statute and court rules unconstitutional as well as an order declaring the issuance of a bench warrant on failure to pay (an enforcement mechanism, which is contemplated and endorsed by state law) as unconstitutional.

## LITIGATION HISTORY

Plaintiffs originally filed this action in November 2017 naming only Aberdeen Enterprizes, the Oklahoma Sheriff's Association, and various "participating" county administrators. That Complaint alleged violations under RICO, due process, and equal protection. Plaintiffs also alleged state law violations, attacking the execution of the "failure to pay warrants" and questioned the contract between the Sheriffs and Aberdeen, i.e., essentially the same claims made in the Amended Complaint. [Doc. 76]. Plaintiffs' Amended Complaint added various county level officials and four state judges in order to attack every step in the process for collection of court costs, fees and fines. The relief Plaintiffs sought against the State Judges was for an order directing them to follow state law and associated rules in the collection process of valid criminally issued fines and fees. All Defendants filed Motions to Dismiss in March 2018. [Docs. 169 and 175-185]. Plaintiffs then sought leave to amend again ([Doc. 202]), which was granted ([Doc. 211]), and Plaintiffs filed their Second Amended Complaint on September 21, 2018. [Doc. 212]. All defendants again filed Motions to Dismiss. This Court granted the Motions and dismissed the case in its entirety on March 12, 2021. [Doc. 352]. Plaintiffs appealed the dismissal to the Tenth Circuit. On April 10, 2023, the Tenth Circuit Court of Appeals remanded the instant litigation back to this Court, reversing this

Court's dismissal on the basis of *Rooker-Feldman*, the *Heck* bar, and *Younger* abstention for further proceedings consistent with the Tenth Circuit's opinion. [Doc. 366].

## SUMMARY OF THE ARGUMENT

Plaintiffs have not met their burden to establish that they have met or can meet Article III requirements to bring these claims against these State Judges. Plaintiffs cannot show that they have standing for their claims against these judicial defendants, nor can they establish that declaratory relief is appropriate for these claims against these defendants. Additionally, Plaintiffs claims are now moot, pursuant to the Oklahoma Legislature's amendment to 22 O.S. § 983 (effective Nov. 1, 2023). This Court should therefore dismiss Plaintiffs' Second Amended Complaint.

## STANDARD OF REVIEW

### Rule 12(b)(1)

"Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint." *Holt v. U.S.*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990)). "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Id.*

"Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id.* at 1003. "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* "A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*; *Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir.), *cert. denied*, 484 U.S. 986, 108 S. Ct. 503 (1987). "In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56

motion." *Holt*, 46 F.3d at 1003 (citing *Wheeler*, 825 F.2d at 259 n. 5). Plaintiffs have the burden of establishing jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). State Judges bring a facial and factual challenge to the Court's subject matter jurisdiction as to Plaintiffs' claims. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure empowers a court to dismiss a complaint for failure to state claims upon which relief may be granted. Motions to dismiss are properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and those factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, at 1965, 1974 (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969. A court is not required to accept as true allegations that are conclusory in nature. *Erikson v. Pawnee County Bd. of County Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991). Finally, "dismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Broker's Choice of Am. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017) (citing *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010)).

## ARGUMENT AND AUTHORITY

## Article III Requirements

"Article III of the Constitution limits federal judicial power to 'Cases' and 'Controversies.' A party that cannot present a case or controversy within the meaning of

7

Article III does not have standing to sue in federal court." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1126 (10th Cir. 2013) (en banc) (*aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014)). To have standing, a party must have suffered an injury—"an invasion of a legally protected interest"— that is caused "by the conduct complained of" and redressable by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, . . . the federal court must dismiss the case for lack of subject matter jurisdiction." *United States v. Ramos*, 695 F.3d 1035, 1046 (10th Cir. 2012) (quoting *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011)).

To establish Article III standing, each plaintiff must establish that (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of each defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81, 120 S. Ct. 693 (2000); *Tandy v. City of Wichita,* 380 F.3d 1277, 1283 (10th Cir. 2004); *Hunnicutt v. Zeneca, Inc.*, Case No. 10-CV-708-TCK-TLW, 2012 WL 4321392, *2-*3 (N.D. Okla. Sept. 19, 2012) ("Where there are multiple defendants, the named plaintiff must establish standing with respect to each defendant."). These elements have been called the "irreducible constitutional minimum" for standing, and the plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing all three elements. *Spokeo, Inc. v. Robins,* 578 U.S. 330, 337, 136 S. Ct. 1540, 1547, (2016). "In its starkest terms, the standing inquiry requires the Court to ask not only whether an injury has occurred, but whether the injury that

has occurred may serve as the basis for a legal remedy in the federal courts." *Schaffer v. Clinton*, 240 F.3d 878, 883 (10th Cir. 2001). "Each plaintiff must have standing to seek each form of relief in each claim." *Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1*, 859 F.3d 1243, 1250 (10th Cir. 2017) (quoting *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007)).

The party seeking to invoke federal jurisdiction bears the burden of establishing all three elements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130 (1992). If any one of these three elements—injury, causation, and redressability— is absent, then plaintiff has no standing under Article III to assert his claim. Article III standing is determined as of time at which plaintiff's complaint was filed. *See Nova Health Systems v. Gandy*, 416 F.3d 1149, 1154–55 (10th Cir. 2005). However, this burden exists "at all times throughout the litigation," *Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir. 2006) though the terminology changes depending on the stage of litigation. "[M]ootness '[is] the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Brown v. Buhman*, 822 F.3d 1151, 1164 (10th Cir. 2016) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22, 117 S. Ct. 1055 (1997)). The existence of a live case or controversy is a constitutional prerequisite and therefore mootness is a threshold issue to Federal court jurisdiction. *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005). "'Without a live, concrete controversy, we lack jurisdiction to consider claims no matter how meritorious.'" *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1223 (10th Cir. 2008) (quoting *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007)).

Declaratory judgment actions must be sustainable under the same mootness criteria that apply to any other lawsuits. *See Unified Sch. Dist. No. 259, Sedgwick Cnty. Kan. v. Disability Rights Ctr. of Kan.*, 491 F.3d. 1143, 1147 (10th Cir. 2007) As the Tenth Circuit noted in *Cox v. Phelps Dodge Corp.*, "[i]t is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an *advisory opinion* is the settling of some dispute which affects the behavior of the defendant toward the plaintiff." 43 F.3d 1345, 1348 (10th Cir. 1994) (brackets, en dash, and internal quotation marks omitted and emphasis added), superseded by statute on other grounds, Civil Rights Act of 1991, Pub.L. No. 102–166, § 102, 105 Stat. 1071, 1072 (codified at 42 U.S.C. § 1981(a)), as recognized in *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001).

The Tenth Circuit determined that a declaratory judgment is not a means to proclaim liability for a past act, but to define the legal rights and obligations of the parties in anticipation of some future conduct. *See Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th Cir.2004) *See Facio v. Jones*, 929 F.2d 541, 544 (10th Cir.1991) ("plaintiff cannot maintain a declaratory… action unless he or she can demonstrate a good chance of being likewise injured in the future"). "Redressability requires that the court be able to afford relief through the exercise of its power, not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power." *Gandy*, 416 F.3d at 1159 (*quoting Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J, concurring)).

## Injury in Fact

Plaintiffs Second Amended Complaint consists of 372 paragraphs asserting sweeping and conclusory indictment of the court costs, fees and fine collections procedures, which are

authorized by statutes and rules of the Oklahoma Court of Criminal Appeals. Eight (8) named Plaintiffs seek relief for a purported class of those similarly situated. Fifty-nine (59) paragraphs are specific to named Plaintiffs ([Doc. 212 ¶¶ 18-25, 155-213]), and thirty-five (35) paragraphs are specific to the named state judicial Defendants or some generic judge. (*Id.*, at ¶¶ 33-34, 49-50, 64, 78, 91-93, 109, 111, 118, 120, 126, 130, 136-138, 140, 158, 164, 178, 190, 206-207, 210, 321, 323, 330-331, 333, 342, 348, 361]. Of the 372 paragraphs, only seven (7) paragraphs allege any actual interaction between the named Plaintiffs and any judge ([Doc. 212, ¶¶ 158, 164, 178, 190, 206, 207, and 210]). The vast majority of the remaining paragraphs in Plaintiffs' Second Amended Complaint consist of generalized and conclusory allegations about the procedures and practices for collecting court costs, fees and fines.

Nowhere does any Plaintiff allege that he or she appealed imposition of court debts or appeared before a court to seek review of their ability to pay. In fact, only Plaintiffs Graff, Frazier, Holmes, Meachum, and Choate allege any interaction with any judge in any instance. Plaintiffs Smith, Killman, and Williams do not allege any interactions with judges through either hearing or warrants. These minimal allegations do not rise to a cognizable claim for relief. Plaintiffs must allege more than potential injury to a cognizable interest; injury in fact requires Plaintiffs themselves to be among the injured. *See, Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992). Allegations of possible future injury are insufficient to confer standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). In *Clapper v. Amnesty Int'l USA*, the Supreme Court considered the concept of self-inflicted harm as pertaining to standing and explained that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"

because such injuries "are not fairly traceable" to the conduct creating that fear. 133 S. Ct. at 1151. "[O]therwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing by making an expenditure based on a nonparanoid fear." *Id.*

The Supreme Court in *O'Shea v. Littleton,* 414 U.S. 488, 94 S. Ct. 669 (1974)*,* explained that "it seems to us that attempting to anticipate whether and when [the plaintiffs] will be charged with a crime and will be made to appear before [the defendant magistrate or circuit court judge] takes us into the area of speculation and conjecture," and concluded the plaintiffs lacked standing to enjoin the defendants' alleged discriminatory bond-setting, sentencing, and jury-fee practices, either on their own behalf or on behalf of a class. *O'Shea,* 414 U.S. at 497. Similarly, in this case Plaintiffs are asking this Court to speculate as to when or whether they will fail to meet their financial obligations, be called before the court to explain themselves, and then be incarcerated because of or in spite of their poverty. An equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged—a "likelihood of substantial and immediate irreparable injury." *Id.*, at 502. The speculative nature of Plaintiffs' claims of future injury requires a finding that this prerequisite of equitable relief has not been fulfilled. Plaintiffs have not alleged a real and immediate threat, that absent this Court's intervention they will suffer an arrest or incarceration for failure to pay court debts. All Plaintiffs, per statute and rule, have the opportunity to seek review prior to the issuance of a cost warrant and before potential arrest and incarceration on failure to pay. The mechanism for obtaining review of cost obligations varies among the District Courts, but generally consists of contacting the court by e.g. calling the cost administrator or filing a Rule 8 Motion,

and seeking placement on the cost docket. That no Plaintiff has even attempted to seek review does not create an injury imposed by the Defendant State Judges.

## *Traceability/Causation*

A plaintiff must identify the officials responsible for the particular conduct alleged to have violated her rights. *See Pembaur v. City of Cincinnati*, 475 U.S. 468, 483 (1986). This satisfies the "fairly traceable" element of Article III standing. *See Lujan*, *supra*, at 560-561. Plaintiffs' Second Amended Complaint includes numerous general allegations that the way judges as a group administer the collection of court costs, fines and fees is unlawful. However, Plaintiffs have not actually alleged they have had any contact with any of Defendant State Judges. Rather, Plaintiffs misstate or misinterpret the process under Oklahoma Law. The only contact Plaintiffs allege to have had with any named State Judge is due to Plaintiffs having failed to meet their court ordered obligations, and thus they *may be* subject to the issuance of a bench warrant and possible arrest. As for the claims specific to Judges Drummond and Musseman regarding their participation on steering committee, Plaintiffs have further failed to connect their claims that Judges Musseman and Drummond had the authority or the obligation to implement the steering committee's recommendations for Plaintiffs' benefit. The allegation that these two District Judges have supervisory authority over the Special Judges assigned to the cost docket is also conclusory and unsupported.

"The plaintiff's burden of demonstrating causation is not satisfied when '[s]peculative inferences are necessary to connect [the plaintiff's] injury to the challenged actions [or inaction].' *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1157 (10th Cir. 2005) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45–46 (1976)). Article III causation requires something

less than the concept of proximate cause but does require a substantial likelihood that Plaintiff's injury in fact was caused by defendants' actions. *Id.* at 1156. Plaintiffs essentially must show that the injury is attributable to the challenged conduct of defendants. *Id.* at 1156. "When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be [alleged] in order to establish standing depends considerably upon whether the plaintiff is ... an object of the action (or forgone action) at issue." *Lujan*, 504 U.S. at 561. At the time this action was filed, a bench warrant would only issue if Plaintiffs failed to meet their financial obligations and then, also, failed to seek or appear for a review of their ability to pay.

In *O'Shea v. Littleton,* 414 U.S. 488, 493, 496-97 (1974), the defendant judges were claimed to have set bonds in criminal cases according to a schedule without consideration of the circumstances of the case or the individual charged. The complaint did not allege specific instances involving the named plaintiffs in the claims against the judges. The Court held that the plaintiffs lacked standing to seek prospective relief against the judges. The Court found that the allegations of past wrongs did not provide sufficient evidence of a future injury. The Court reasoned, that for the future, it may "…assume that respondents will conduct their activities within the law and so avoid prosecution…" The Court concluded, "attempting to anticipate whether and when these respondents will be charged with crime and will be made to appear before either petitioner takes us into the area of speculation and conjecture." Plaintiffs' claims fail for these same reasons. Plaintiffs cannot establish, and in fact it is not the case, that even if a cost warrant has been issued in the past that they will continue to be delinquent and fail to seek review of their financial obligations. It is purely speculative that

14

Plaintiffs cannot gain relief from the courts to which they owe should they choose to seek same.

The Second Amended Complaint is filled with generalized and conclusory allegations as well as legal arguments, which are not enough to demonstrate Plaintiffs' right to sue or state a claim against the State Judges. Plaintiffs have failed to establish their alleged injuries are fairly traceable to each of the named Judges with any particularity. Allegations of possible future injury are not sufficient. *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013). Plaintiffs' legal conclusions and opinions cannot be accepted to confer standing even if stated as facts. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 555 (1955), *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009); *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995).

## Redressiblity

The third element of constitutional standing requires a plaintiff to establish that it is "likely, as opposed to merely speculative, that [the plaintiff's alleged] injury will be redressed by a favorable [court] decision." *Lujan* at 561. Plaintiffs have limited their requested relief from the State Judges in their Second Amended Complaint to an order declaring the Judges' actions of issuing bench warrants when Plaintiffs fail to meet the financial obligations of their sentences without an inquiry into ability to pay, to be unlawful. Plaintiffs are essentially asking this Court to decide if Defendant State Judges are complying with the U.S. and Oklahoma Constitutions during the process and procedures used to collect outstanding court debts.[5]

---

[5]Defendant State Judges do not concede that the previous procedures violated any court debtor's rights, but the Legislature has established more precise methods for summoning a delinquent court debtor before the court for explanation. *See* 22 O.S. § 983, as amended effective November 1, 2023.

Plaintiffs do not overtly seek to challenge the constitutionality of a state statute as applied to their conduct. Rather, they challenge the lawfulness of the manner in which Defendant State Judges issue bench warrants when payment obligations pursuant to a plea or conviction have not been met. The declaratory judgment Plaintiffs seek will not render Oklahoma's court costs, fees, and fines system, or any provision therein, unconstitutional. It will not have any effect on Plaintiffs' underlying criminal cases—their cases will remain open pending satisfaction of costs, fines and fees, unless those obligations are later waived by the court following the proper procedure. *See* Okla. Ct. Crim. App. Rules 8.1, *et seq.* As Defendant State Judges already follow the statutes and Court of Criminal Appeals Rules, and Plaintiffs are not and have not challenged the constitutionality of those statutes and rules, the declaratory relief they are seeking will not change Plaintiff's responsibilities toward the debts owed. Until the obligations are satisfied or the fees owed are overturned on appeal or waived by the court, pursuant to Rule 8.4 or 8.5, *supra*, any declaratory relief would not terminate a controversy by remedying Plaintiffs' alleged injury, specifically as to the method of issuing warrants, given the amendments to 22 O.S. § 983. All Plaintiffs have or had the opportunity to appeal the imposition of fees and have the ability to seek relief from the state courts through review of disability or ability to pay. Okla. Ct. Crim. App. Rules 8.1, *et seq.* Therefore, the declaratory relief Plaintiffs seek do not meet the standard for redressability.

Plaintiffs are seeking a declaratory judgment stating Defendant State Judges' issuance of bench warrants for failure to meet payment obligations imposed pursuant to criminal cases violates their constitutional rights. The Tenth Circuit has said that a declaratory judgment is not meant to proclaim liability for a past act, but to define the legal rights and obligations of

the parties in anticipation of some future conduct. *See Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th Cir. 2004) (McConnell, J., *concurring*) ("[A] declaratory judgment action involving past conduct that will not recur is not justiciable."); *Francis E. Heydt Co. v. United States*, 948 F.2d 672, 676–77 (10th Cir.1991).

In order for an action for declaratory relief to be justiciable, the requested relief must resolve an actual case or controversy, which affects the behavior of the defendant toward the plaintiff. *Cox v. Phelps Dodge Corp,* 43 F.3d 1345, 1348 (10th Cir. 1994). "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S. Ct. 461 (1937). A declaratory judgment must terminate the parties' controversy and the relief granted must redress the Plaintiff's injury either directly or indirectly. Redressability means the court must be able to grant relief through the exercise of its power. *Nova Health Sys. v. Gandy,* 416 F.3d 1149 (10th Cir. 2005). "Each plaintiff must have standing to seek each form of relief in each claim." *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007). "To seek prospective relief, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). Past injuries are relevant to showing a risk of future harm, but "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660 (1983) (quotation and alterations omitted). "The proper remedy for litigants who feel wronged by an adverse judgment is through the appellate process." *Coleman v. Court of Appeals*, 550 F.Supp. 681, 684 (W.D. Okla. 1980) (citations omitted).

Under the Declaratory Judgment Act, a district court "*may* declare the rights and other legal relations of [an] interested party seeking [declaratory relief]." 28 U.S.C. § 2201(a) (emphasis added).[6] The "actual controversy" referenced in the Federal Declaratory Judgment Act ("FDJA"), invokes the case-or-controversy requirements of Article III of the U.S. Constitution. *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1241 (10th Cir. 2008) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126, 127 S. Ct. 764, 771 (2007); *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth* 300 U.S. 227, 240, 57 S. Ct. 461 (1937)). For the purposes of the FDJA, an actual controversy occurs if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510 (1941)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co.,* 312 U.S. at 273, 61 S. Ct. 510. Article III's case-or-controversy requirement operates to ensure that declaratory relief is available only when a live controversy continues to exist. *Id.*

---

[6]The Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (2010), provides that:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

Government action (or inaction) which threatens a plaintiff's arguably legal activity can form the basis of relief under the Federal Declaratory Judgment Act. *See Terrace v. Thompson,* 263 U.S. 197, 44 S. Ct. 15 (1923)*; see also Steffel v. Thompson,* 415 U.S. 452 (1974). The dilemma posed by government coercion, creating a perceived choice between potential prosecutions or abandoning rights, is "a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 152, 87 S. Ct. 1507 (1967). This type of dilemma is not present in the case at bar. Plaintiffs are not faced with abandoning their rights or risking prosecution. There are Oklahoma statutes and court rules in place specifically to protect Plaintiffs' rights and provide for both a direct appeal and review of payment obligations.[7] Plaintiffs are simply failing to exercise or ignoring those rights, which does not give them the right to challenge the state court's mechanisms for enforcement of its judgments.

In *State Farm Fire & Casualty Co. v. Mhoon,* the Tenth Circuit posited that five factors are to be weighed by the court when deciding whether to hear an action for declaratory relief:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata* ; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective

31 F.3d 979, 983 (10th Cir.1994) (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987). The court's discretion is "unique and substantial" when deciding whether to declare a litigant's rights. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286, (1995).

---

[7]*See* Okla. Ct. Crim. App. Rules 8.1 to 8.8, 22 O.S. §§ 983, 983a.

All factors weight in favor of the Defendant State Judges. Considering the first factor, as more fully set forth in the next section, a declaratory action would not settle the controversy between Plaintiffs and Defendant State Judges, as the relief Plaintiffs seek is largely provided in the amendment to 22 O.S. § 983, which takes effect on November 1, 2023, thus a declaratory action is now moot. With respect to the second factor, Plaintiffs' declaratory action would serve no useful purpose in clarifying the legal relations at issue, as the statutory amendment sufficiently establishes clear and detailed procedures for the imposition of court financial obligations with which Plaintiffs took issue. The third factor likewise weighs in favor of the judges as Plaintiffs are seeking an order dictating the nature and result of judicial enforcement of cost collection procedures, rather than participating in those procedures directly. As for the fourth factor, granting declaratory relief in this instance "would certainly create friction between the federal and state courts and improperly encroach upon the state court's jurisdiction" as the federal court would be dictating the course of criminal sentencing and collection of criminal penalties in Oklahoma courts.

Finally, regarding the fifth factor, Plaintiffs should not be eligible for declaratory relief because Plaintiffs have an alternate remedy, obviating the need for any declaratory relief. Plaintiffs, per the rules and statutes, have the opportunity to seek relief from their cost obligations. *Coleman v. Court of Appeals*, 550 F.Supp. 681, 684 (W.D.Okl.1980) ("The proper remedy for litigants who feel wronged by an adverse judgment is through the appellate process.") (citations omitted). Additionally, Plaintiffs may appeal any order that results in incarceration for failure to pay court debt or file a writ with the Court of Criminal Appeals, challenging decisions regarding installment payments. Plaintiffs, therefore, are not eligible for

declaratory relief because there is a more suitable remedy. The state proceedings can, and do, afford criminal defendants relief when they participate in the process. In this case, Plaintiffs have had the opportunity to seek review of ability to pay on any cost docket, and according to the Oklahoma Court of Criminal Appeals, the burden is on the Plaintiffs to show they are unable to pay. *Winbush v. State*, 2018 OK CR 38, 433 P.3d 1275. A bench warrant for failing to appear will only issue if Plaintiffs fail to appear for a cost review and fail to make some payment, and only after a courtesy letter is sent to alert the criminal defendant of the missed court date. *See* 22 O.S. § 983 as amended.

To the extent Plaintiffs seek the federal court to require outcome determinative payment reviews – that is an improper use of declaratory relief. That Plaintiffs simply failed to exercise those opportunities to seek review of their cost obligations does not now give them the opportunity to challenge the state court's mechanisms for orderly consideration of collecting criminal court debt. Because a declaratory action would not settle the controversy between Plaintiffs and Defendant State Judges, would serve no useful purpose in clarifying the legal relations at issue, and because of the existence of a more suitable remedy, Plaintiffs' claims against the Defendant State Judges for declaratory relief must be dismissed.

## Mootness

The existence of a live case or controversy is a constitutional prerequisite under Article III and therefore mootness is a threshold issue to Federal court jurisdiction. *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005). "'Without a live, concrete controversy, we lack jurisdiction to consider claims no matter how meritorious.'" *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1223 (10th Cir. 2008) (quoting *Mink v. Suthers*, 482

F.3d 1244, 1253 (10th Cir. 2007)). Declaratory judgment actions must be sustainable under the same mootness criteria that apply to any other lawsuit. *See Unified Sch. Dist. No. 259, Sedgwick Cnty. Kan. v. Disability Rights Ctr. of Kan.*, 491 F.3d 1143, 1147 (10th Cir. 2007) ("Actions seeking a declaratory judgment must comport with the same mootness principles as any other suit." (internal quotation marks omitted)). As the Tenth Circuit noted in *Cox v. Phelps Dodge Corp.*, "[i]t is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff." 43 F.3d 1345, 1348 (10th Cir. 1994) (brackets, en dash, and internal quotation marks omitted), superseded by statute on other grounds, Civil Rights Act of 1991, Pub.L. No. 102–166, § 102, 105 Stat. 1071, 1072 (codified at 42 U.S.C. § 1981(a)), as recognized in *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001).

"The crucial question is whether granting a present determination of the issues offered will have some effect in the real world." *Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) (internal citations and quotations omitted).

There are two forms of mootness, constitutional and prudential. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1121 (10th Cir. 2010) (citations omitted); *see also Chamber of Commerce v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980) (per curiam) ("The doctrine of mootness has two distinct branches."). Constitutional mootness considers whether a federal court has jurisdiction over actual "cases" and "controversies." U.S. CONST. art. III, § 2, cl. 1. "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, 117 S.

Ct. 1055 (1997) (internal quotation marks omitted). A court may also consider the prudential-mootness doctrine. This doctrine generally applies only to requests for injunctive or declaratory relief. *Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1492 (10th Cir. 1993) ("All the cases in which the prudential mootness concept has been applied have involved a request for prospective equitable relief by declaratory judgment or injunction."); *see Fletcher v. U.S.*, 116 F.3d 1315, 1321 (10th Cir. 1997); *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 727 (10th Cir. 1997). However, "[t]he court must decide whether a case is moot as to 'each form of relief sought.'" *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (quoting *Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019)).

### A. Constitutional Mootness

Under Article III, federal courts only have jurisdiction over actual cases and controversies in which relief can be granted. "With respect to injunctive relief and the question of mootness, '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *McKesson Corp. v. Hembree*, No. 17-CV-323-TCK-FHM, 2018 WL 4621833, *3 (N.D. Okla. Sept. 26, 2018) (quoting *Beattie v. U.S.*, 949 F.2d 1092, 1094 (10th Cir. 1991) (quotation marks and citation omitted)). The party requesting relief must "demonstrate a good chance of being likewise injured in the future." *Id.* (quoting *Beattie*, 949 F.2d at 1093). "If an event occurs while a case is pending that heals the injury and only prospective relief has been sought, the case must be dismissed." *Id.* (quoting *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997)).

23

"'Generally, a claim for prospective injunction becomes moot once the event to be enjoined has come and gone.' *Citizen Ctr. v. Gessler*, 770 F.3d 990, 907 (10th Cir. 2014). A claim for declaratory relief that does not 'settl[e] . . . some dispute which affects the behavior of the defendant toward the plaintiff' is moot, *Rio Grande Silvery Minnow*, 601 F.3d at 1110 (quotations omitted), because it fails to 'seek[] more than a retrospective opinion that [the plaintiff] was wrongly harmed by the defendant,' *Jordan [v. Sosa]*, 654 F.3d [1012,] 1025 [(10th Cir. 2011)]." *Prison Legal News*, 944 F.3d at 880.

"To constitute an exception to the mootness doctrine, it is not enough that an issue will escape review because of limited duration. It is also necessary that there be a reasonable expectation that the same complaining party [will] be subjected to the same action again." *McKesson Corp.* 2018 WL 4621833, *2 (quoting *U.S. v. Seminole Nation of Okla.*, 321 F.3d 939, 944 (10th Cir. 2002) (internal quotations and citation omitted)). However, courts generally presume that people will operate within the law and not be subject to arrest. *See O'Shea v. Littleton*, 414 U.S. 488, 497, 94 S. Ct. 669 (1974) ("We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners.").

Plaintiffs' claims for relief based on the procedure and treatment at the time they became delinquent in their court ordered financial obligations are now moot. Plaintiffs cannot demonstrate they will be similarly injured in the future, as the governing statutes have changed to the benefit of criminal defendants and court debtors. Criminal defendants have multiple opportunities to assert their rights as to collection procedures at cost docket appearances, and more formal Rule 8 hearings. The Legislature has set out specific, detailed procedures for the

collection of court debts. These procedures include multiple layers of contact to help court debtors gain relief if necessary before a warrant is issued. Therefore, Plaintiffs can no longer demonstrate a likelihood of the same injury in the future.

## B. Prudential Mootness

The Tenth Circuit described the prudential mootness doctrine as follows:

> Prudential mootness doctrine often makes its appearance in cases where a plaintiff starts off with a vital complaint but then a coordinate branch of government steps in to promise the relief she seeks. Sometimes the plaintiff will seek an injunction against the enforcement of a regulation the relevant agency later offers to withdraw on its own. Sometimes the plaintiff will seek an order forcing a department to take an action that it eventually agrees to take voluntarily. However, it comes about though, once the plaintiff has a remedial promise from a coordinate branch in hand, we will generally decline to add the promise of a judicial remedy to the heap. While deciding the lawsuit might once have had practical importance, given the assurances of relief from some other department of government it doesn't any longer.… Though a remedial promise may not be enough to kill a case constitutionally, it can be enough to bring it to an end all the same as a matter of equity.

See *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210-1211 (10th Cir. 2012) (citations omitted); *Jordan v. Sosa*, 654 F.3d at 1024 ("a court may dismiss a case under the prudential-mootness doctrine if the case is so attenuated and that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant" (citations internal quotations and internal emphasis omitted)).

With respect to Defendant State Judges, Plaintiffs seek two orders from this Court: 1) "An order declaring it unlawful for Defendants to seek, issue, and execute debt-collection arrest warrants based solely on alleged nonpayment, and similarly that it is unlawful to seek, issue, and execute such warrants without inquiry into ability to pay, consideration of

alternatives, pre-deprivation process, and factual allegations based on oath or affirmation;" and 2) "[a]n order declaring it unlawful for the Tulsa County Judges and Rogers County Judge to issue debt-collection arrest warrants on the basis of unsworn statements, and declaring the same unconstitutional[.]" [Doc 212, (c) and (e) pp. 98-99].

The remedy Plaintiffs seek, a change in the procedures for issuing cost warrants, and court debt collection procedures, has already been codified by the Oklahoma Legislature and signed by the Governor. See 22 O.S. § 983 (as amended). Though the applicable rules for review of and relief from financial obligations imposed as part of valid criminal sentences are statutory and a matter of public record, the court must provide multiple and specific notice, separate from the language on criminal defendant plea agreements and installment payment plans, of the remedies available through Rule 8. *See* 22 O.S.  §983(B) as amended.

Plaintiffs' Second Amended Complaint was filed in 2018. In the intervening years, the Oklahoma Legislature amended the relevant statutes, which largely governs the procedures for collecting court costs, fines, and fees imposed pursuant to criminal conviction more than three (3) times. Among other things, the amended statute requires additional mandatory procedures pertinent to Plaintiffs' claims and requested declaratory relief including:

- Notice of the financial obligations and availability of a cost hearing by the court:

C. 1. At the time of a plea or sentencing, the court shall inform the defendant of the total court financial obligations owed, the consequences of failing to pay the court financial obligations, and that the defendant may request a cost hearing if at any time he or she is unable to pay the court financial obligations, at which point the court may waive all or part of the debt owed. If the total amount of court financial obligations owed is not available at the time of the plea or sentencing, the court shall inform the defendant that court financial obligations have been incurred and the time and location where the defendant may learn of the total amount owed.

26

2. The court shall order the defendant to appear immediately after sentencing at the office of the court clerk to provide current contact information and to either select payment terms or request a cost hearing. Failure to immediately report to the court clerk shall result in the full amount of court financial obligations to be due thirty (30) days from the date of the plea or sentencing in district courts or thirty (30) days from the date of the plea or sentencing in municipal courts.

3. Payment of court financial obligations may be made under the following terms:

> a. payment in full, or
> b. payment in installments.

Upon any change in circumstances affecting the ability of a defendant to pay, a defendant may request a cost hearing before the court by contacting the court clerk.

22 O.S. § 983(C) (effective Nov. 1, 2023).

- A Summons is to be issued if a defendant becomes delinquent; the arrest warrant is not the first notice of delinquency to the defendant:

2. The court clerk shall periodically review cases for delinquency at least once every six (6) months and, upon identifying a delinquent defendant, notify the court which shall, within ten (10) days thereafter, set a cost hearing for the court to determine if the defendant is able to pay. The cost hearing shall be set within forty-five (45) days of the issuance of the summons. The hearing shall be set on a date that shall allow the court clerk to issue a summons fourteen (14) days prior to the cost hearing. Defendants shall incur no additional fees associated with the issuance of the summons.

22 O.S. § 983(G)(2) (effective Nov. 1, 2023).

- Finally, a cost cite and release warrant or a cost arrest warrant may be issued if the summons is ignored:

4. The district court for each county and all municipal courts shall provide a cost hearing for any defendant upon request, either by establishing a dedicated docket or on an as-requested basis. A defendant who requests a cost hearing will receive a summons by personal service or by United States mail to appear in court as required by subsection G of this section. If a defendant fails to appear for a requested cost hearing, the court may issue either a cost cite and release warrant or a cost arrest warrant. No fees shall be assessed or collected from the defendant as a consequence of either requesting a cost hearing or the issuing of a cost cite and release warrant.

22 O.S. § 983(C)(4) (effective Nov. 1, 2023).

The statute includes recommended language for the summons and requires the Court of Criminal Appeals to promulgate forms to gather financial information and explain the process and obligations.

22 O.S. § 983(G)(3) states:

> 3. At least fourteen (14) days prior to the cost hearing, the court clerk shall issue one summons to the defendant to be served by United States mail to the mailing address of the defendant on file in the case, substantially as follows:
> SUMMONS
> You are ORDERED to appear for a COST HEARING at a specified time, place, and date to determine if you are financially able to pay the fines, costs, fees, or assessments or an installment due in Case No._____.
> YOU MUST BE PRESENT AT THE HEARING.
> At any time before the date of the cost hearing, you may contact the court clerk and pay the amount due or request in writing or in person prior to the court date, that the hearing be rescheduled for no later than thirty (30) days after the scheduled time.
> THIS IS NOT AN ARREST WARRANT. However, if you fail to appear for the cost hearing or pay the amount due, the court will issue a WARRANT and refer the case to a court cost compliance liaison which will cause an additional administrative fee of up to thirty-five percent (35%) to be added to the amount owed and may include additional costs imposed by the court.

And § 983(D) and (M):

> D. In determining the ability of the defendant to pay court financial obligations, the court may rely on testimony, relevant documents, and any information provided by the defendant using a cost hearing affidavit promulgated by the Court of Criminal Appeals. In addition, the court may make inquiry of the defendant and consider any other evidence or testimony concerning the ability of the defendant to pay.

> M. The Court of Criminal Appeals shall implement procedures and rules for implementation of the requirements of this section. Such procedures, rules, and any supplemental forms may be made available by the Administrative Office of the Courts.

Further, the new statute mandates the specific factors that the court must consider and those that the court must not consider in determining a defendant's ability to pay:

B. 1. Except in cases provided for in Section 983b of this title, when the judgment and sentence of a court, either in whole or in part, imposes court financial obligations upon a defendant, the court at the time of sentencing may immediately, or at any point thereafter until the debt is either paid or waived, determine the ability of a defendant to pay the court financial obligations. The court may make such determinations at a cost hearing or upon written motion or affidavit by the defendant. The ability of a defendant to pay court financial obligations may not impact the sentence imposed.

2. Defendants with court financial obligations who are found by the court to be unable to pay, in whole or in part, shall be relieved of the debt by the court through a hardship waiver of the court financial obligations, either in whole or in part.

3. In determining the ability of a defendant to pay, the court shall consider the following factors:

a. individual and household income,

b. household living expenses,

c. number of dependents,

d. assets,

e. child support obligations,

f. physical or mental health conditions that diminish the ability to generate income or manage resources,

g. additional case-related expenses to be paid by the defendant, and

h. any other factors relevant to the ability of the defendant to pay.

4. In determining the ability of a defendant to pay, the following shall not be considered as income or assets:

a. child support income,

b. any monies received from a federal, state, or tribal government need-based or disability assistance program, or

c. assets exempt from bankruptcy.

5. Defendants in the following circumstances are presumed unable to pay and eligible for relief under paragraph 2 of this subsection:

a. designated as totally disabled by any federal, state, or tribal disability services program including but not limited to military disability, Social Security Disability Insurance, Supplemental Security Income, or tribal disability benefits,

b. receives support from the Temporary Assistance for Needy Families program, Supplemental Nutrition Assistance Program, the Special Supplemental Nutrition Program for Women, Infants, and Children nutrition education and supplemental food program, or any other federal need-based financial support,

c. receives subsidized housing support through the Housing Choice Voucher program, the United States Department of Housing and Urban Development, or other state, local, or federal government housing subsidy program, or
d. total income is below one hundred fifty percent (150%) of the federal poverty level.

22 O.S. § 983(B) (effective Nov. 1, 2023).

Plaintiffs' requested declaratory relief as it pertains to Defendant State Judges boils down to an overhaul of the process through which court financial obligations are collected from indigent defendants, which is the purpose behind the statutory amendment. "When the law that controls a given situation is changed, litigation under the old law generally becomes moot." *N. Nat. Gas Co. v. Grounds*, 931 F.2d 678, 684 (10th Cir. 1991). Even if Plaintiffs' requested declaratory relief were granted in this instance, it would not materially affect the way Defendant State Judges behave toward Plaintiffs, provided that Defendant State Judges act in accordance with the provisions of the amended version of 22 O.S. § 983. "[] [A] claim for declaratory relief becomes moot when the relief would not affect the behavior of the defendant toward the plaintiff." *Audobon of Kansas, Inc. v. United States Dep't of Interior*, 67 F.4th 1093, 1102 (10th Cir. 2023) (internal quotation marks and citations omitted). Pursuant to the amended statute, arrest warrants will no longer be based solely on alleged nonpayment or unsworn statements, cost hearings are available upon request to determine the defendant's ability to pay, alternatives to payment are available, and notice of delinquency and an opportunity to be heard prior to the issuance of cost cite and release or cost arrest warrants are provided. *See generally* 22 O.S. § 983 (effective Nov. 1, 2023). Should Plaintiffs ever again be delinquent on court imposed financial obligations, the procedures codified by the amendments to 22 O.S. § 983 requires just the sort of procedures Plaintiffs claim they were

unlawfully denied. Therefore, any relief granted against Defendant State Judges in Plaintiffs' favor would not change the future behavior of Defendant State Judges toward Plaintiffs, nor would it have any effect on the court financial obligation collection process. *See Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 235 F.3d at 1182. Thus, Plaintiffs claims against Defendant State Judges are moot and must be dismissed.

## CONCLUSION

Defendant State Judges respectfully request that pursuant to Fed. R. Civ. P. 12(b)(1) and (6) this Court dismiss Plaintiffs' claims against them and for any and all such relief as the Court may deem appropriate.

Respectfully submitted,

/s/Stefanie E. Lawson
**STEFANIE E. LAWSON, OBA# 22422**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:    (405) 521-3921
Facsimile:    (405) 521-4518
Email: stefanie.lawson@oag.ok.gov
*Attorney for Defendants State Judges*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day July 2023 I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further certify that a true and correct copy of the foregoing document was sent via the ECF System to all counsel of record who are ECF participants.

/s/ Stefanie Lawson
Stefanie E. Lawson

31