**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **CARLY GRAFF, et al.,** | |
| *Plaintiffs,* | |
| v. | **Case No. 4:17-CV-606-TCK-JFJ** |
| **ABERDEEN ENTERPRIZES II, INC., et al.,** | |
| *Defendants.* | |

## PLAINTIFFS' OPPOSITION TO 51 COUNTY SHERIFF DEFENDANTS' RENEWED MOTION TO DISMISS (INDIVIDUAL CAPACITY)

### BRIEF A

Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804
Mary B. McCord (admitted *pro hac vice*)
D.C. Bar No. 427563
Institute for Constitutional Advocacy
  and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel.: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu
mbm7@georgetown.edu

*Attorneys for the Plaintiffs*

Ryan Downer (admitted *pro hac vice*)
D.C. Bar No. 1013470
Katherine Hubbard (admitted *pro hac vice*)
D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

## <u>Index of Plaintiffs' Opposition Briefs</u>

For ease of reference, each of Plaintiffs' opposition briefs has been labeled by letter according to the motion to dismiss to which it responds, listed below.

A. 51 County Sheriff Defendants, Individual Capacity (Doc. 407)

B. Rogers County Defendants, Official Capacity (Doc. 406)

C. Kim Henry, Former Court Clerk of Rogers County, Individual Capacity (Doc. 402)

D. Scott Walton, Sheriff of Rogers County, Individual Capacity (Doc. 408)

E. Aberdeen Enterprizes II, Inc. (Doc. 404)

F. Jim and Rob Shofner (Doc. 403)

G. Oklahoma Sheriffs' Association (Doc. 405)

H. Defendant Judges (Doc. 412)

I. 51 County Sheriff Defendants, Official Capacity (Doc. 398)

J. Vic Regalado, Sheriff of Tulsa County, Individual Capacity (Doc. 409)

K. Don Newberry, Court Clerk of Tulsa County, Individual Capacity (Doc. 411)

L. Darlene Bailey, Cost Administrator of Tulsa County, Individual Capacity (Doc. 410)

M. Tulsa County Defendants, Official Capacity (Doc. 399)

BRIEF A

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................1

RELEVANT BACKGROUND ........................................................................................2

ARGUMENT ..................................................................................................................4

I.     Plaintiffs Have Standing to Sue the County Sheriffs, Who Are Alleged to Have Participated in the Challenged Conduct. ........................................................4

II.    The County Sheriffs Do Not Enjoy Absolute Quasi-Judicial Immunity. ...............8

III.   Qualified Immunity Does Not Shield the County Sheriffs. ...................................12

      A.    The County Sheriffs' Use of Aberdeen Is an Onerous Enforcement Method That Is a Clearly Established Violation of the Fourteenth Amendment (Count 7). .............................................................................13

      B.    There Is No Basis to Grant the County Sheriffs Qualified Immunity on Plaintiffs' RICO Claim (Count 1). .......................................17

IV.   The County Sheriffs Are Liable Under the RICO Act. .........................................18

      A.    The County Sheriffs Have Participated in the RICO Enterprise. .............18

      B.    The Extortion Benefitted Private Corporate Entities as Well as Government Ones. .....................................................................................21

      C.    The County Sheriffs Engaged in a Pattern of Racketeering Activity. .................................................................................................23

      D.    The County Sheriffs Have Engaged in a RICO Conspiracy......................23

V.     Plaintiffs' Claims for Injunctive Relief Are Not Moot. .........................................23

CONCLUSION..............................................................................................................25

BRIEF A

### TABLE OF AUTHORITIES

**Cases**

*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993) ........................................................ 9

*Ashcroft v. al–Kidd*, 563 U.S. 731 (2011) ................................................................... 12, 17

*BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089 (10th Cir. 1999) ................... 20

*Brown v. Cameron-Brown Co.*, 30 Fed. R. Serv. 2d 1181, 1980 WL 1856 (E.D. Va. 1980) ......... 7

*Brown v. Illinois*, 422 U.S. 590 (1975) ........................................................................ 21

*Cain v. City of New Orleans*, 327 F.R.D. 111 (E.D. La. 2018) ............................................ 15, 16

*Com. Standard Ins. Co. v. Liberty Plan Co.*, 283 F.2d 893 (10th Cir. 1960) .............................. 7

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018) ....................................................... 12

*Dodds v. Richardson*, 614 F. 3d 1185 (10th Cir. 2010) ................................................... 4, 5

*Dow v. Baird*, 389 F.2d 882 (10th Cir. 1968) ................................................................ 11

*Durkee v. Minor*, 841 F.3d 872 (10th Cir. 2016) ............................................................ 5

*Fair Fight Action, Inc. v. Raffensperger*, 413 F. Supp. 3d 1251 (N.D. Ga. 2019) ...................... 25

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167 (2000) ................ 25

*Fuller v. Oregon*, 417 U.S. 40 (1974 .......................................................................... 14

*Garner v. Memphis Police Dep't*, 8 F.3d 358 (6th Cir. 1993) .............................................. 14

*George v. Urb. Settlement Servs.*, 833 F.3d 1242 (10th Cir. 2016) ....................................... 20

*Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500 (10th Cir. 2023) ............................... 2, 24

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .................................................................. 12

*Hunnicutt v. Zeneca, Inc.*, No. 10-cv-708-TCK-TLW, 2012 WL 4321392 (N.D. Okla.
   Sept. 19, 2012) ................................................................................................... 8

*In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92 (D.N.J. 2012) ....................................... 7

*James v. Strange*, 407 U.S. 128 (1972) .............................................................. 13, 14, 16

*Juriss v. McGowan*, 957 F.2d 345 (7th Cir. 1992) ........................................................... 12

*Kneisser v. McInerney*, No. 1:15-cv-07043, 2018 WL 1586033 (D.N.J. Mar. 30, 2018) ........... 11

*Lee v. Gregory*, 363 F.3d 931 (9th Cir. 2004) ............................................................... 10

*Malley v. Briggs*, 475 U.S. 335 (1986) ....................................................................... 10

*Martin v. Bd. of Cnty. Comm'rs of Cnty. of Pueblo*, 909 F.2d 402 (10th Cir. 1990) ................... 11

*Mays v. Sudderth*, 97 F.3d 107 (5th Cir. 1996) .............................................................. 9

*Moore v. Comfed Sav. Bank*, 908 F.2d 834 (11th Cir. 1990) ............................................... 8

*Moss v. Kopp*, 559 F.3d 1155 (10th Cir. 2009) ...................................................... 10, 12

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007) ...................... 25

*Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002) ................................................... 8

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ....................................................... 14

*People v. Whaley*, 6 Cow. 661, 1827 WL 2284 (N.Y. 1827) ............................................... 22

*Rembert v. Sheahan*, 62 F.3d 937 (7th Cir. 1995) .......................................................... 25

*Rios v. Marshall*, 100 F.R.D. 395 (S.D.N.Y. 1983) ......................................................... 7

*Robbins v. BLM*, 252 F. Supp. 2d 1286 (D. Wyo. 2003) .................................................. 17

*Robertson v. Lucas*, 753 F.3d 606 (6th Cir. 2014) ......................................................... 10

*Rodriguez v. Providence Cmty. Corr., Inc.*, 191 F. Supp. 3d 758 (M.D. Tenn. 2016) ................ 16

*Rolf v. City of San Antonio*, 77 F.3d 823 (5th Cir. 1996) ................................................. 15

*Safe Sts. All. v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017) ........................................... 20

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) ............................................................. 18

BRIEF A

*Thomas v. Kaven*, 765 F.3d 1183 (10th Cir. 2014).................................................. 13
*Turney v. O'Toole*, 898 F.2d 1470 (10th Cir. 1990)............................................... 10
*United States v. Brissette*, 919 F.3d 670 (1st Cir. 2019)....................................... 22
*United States v. Lanier*, 520 U.S. 259 (1997)...................................................... 12
*United States v. Leon*, 468 U.S. 897 (1984)......................................................... 21
*United States v. Renzi*, 861 F. Supp. 2d 1014 (D. Ariz. 2012) ............................. 22
*Valdez v. City & County of Denver*, 878 F.2d 1285 (10th Cir. 1989).......... 11, 12
*Welch v. Saunders*, 720 F. App'x 476 (10th Cir. 2017)....................................... 10
*Wilkie v. Robbins*, 551 U.S. 537 (2007)............................................................... 22
*Williamson v. Curran*, 714 F.3d 432 (7th Cir. 2013)........................................... 10
*Ziglar v. Abbasi*, 582 U.S. 120 (2017)................................................................. 12

**Constitutional Provisions**
Okla. Const. art. 7, § 7(a) ...................................................................................... 16

**Statutes**
18 U.S.C. § 1951 ..................................................................................................... 22
18 U.S.C. § 1962 ........................................................................................ 2, 18, 23
18 U.S.C. §§ 1961–1968.......................................................................................... 1
42 U.S.C. § 1983 ....................................................................................................... 5
La. R.S. § 13:1336 .................................................................................................. 16
Okla. Stat. tit. 19, § 514.4 ............................................................................... 14, 19
Okla. Stat. tit. 19, § 514.5 ............................................................................... 14, 19
Okla. Stat. tit. 22, § 967 ........................................................................................ 11
Okla. Stat. tit. 22, § 968 ........................................................................................ 11
Okla. Stat. tit. 22, § 983 ........................................................................................ 24
Oklahoma Uniform Consumer Credit Code, Okla. Stat. tit. 14A, §§ 1-101 *et seq.* .................... 14

**Legislative Materials**
S.B. 689, 56th Leg., 2d Reg. Sess. (Okla. 2018) ................................................... 24

**Other Authorities**
7AA Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1785.1 (3d ed.) .......... 8

BRIEF A

## **INTRODUCTION**

This class action lawsuit challenges a systemic and extortionate scheme in Oklahoma, whereby local officials, in concert with Aberdeen Enterprizes II, Inc. ("Aberdeen"), use both the threat of arrest and actual incarceration to extract money from indigent people who owe court debt for traffic and criminal offenses. Defendants employ these coercive tactics against members of the putative class without doing anything to assess their ability to pay the debts levied against them. Plaintiffs, all of whom owe or have owed fines and fees to the court system, are threatened, arrested, and imprisoned when they cannot pay, not because of any willful refusal, but solely due to their indigence. As a result of this scheme, thousands of impoverished Oklahomans have had to sacrifice basic necessities or hand over protected government benefits to avoid being thrown in jail, while others have been arrested and jailed until they could either pay the price of their release or satisfy the court that they had served enough time to account for the money they owe. Meanwhile, tens of millions of dollars, squeezed from Oklahoma's poorest citizens, have flowed to Aberdeen, a private, for-profit debt-collection company; the Oklahoma Sheriffs' Association ("OSA"), a private lobbying organization; dozens of county sheriffs' offices; and the Oklahoma court system. Plaintiffs' suit challenges the operation of this scheme, which violates the federal Constitution, Oklahoma law, and the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. §§ 1961–1968).

County Sheriffs of 51 Oklahoma counties ("County Sheriffs")[1] are sued here in their individual and official capacities. This brief-in-opposition responds to their arguments about the claims asserted against them in their individual capacities. Those claims are based on the County

---

[1] There are 54 Sheriffs named in the Second Amended Complaint. Plaintiffs voluntarily dismissed one of those sheriffs, *see* Doc. 280, and two others—the Sheriffs of Tulsa and Rogers Counties, respectively—have filed separate motions to dismiss.

BRIEF A

Sheriffs' participation in the RICO enterprise and its pattern of extortionate activity (and their conspiracy to do the same) in violation of 18 U.S.C. § 1962(c) and (d) (Count 1), as well as their use of Aberdeen and assistance in its onerous collection practices, in violation of the Equal Protection Clause of the Fourteenth Amendment (Count 7).

In their individual-capacity motion to dismiss (Doc. 407), the County Sheriffs assert that Plaintiffs lack standing to sue many of them; have not pled sufficient facts to demonstrate their participation in the alleged constitutional violations; have not stated a plausible equal protection claim; and, in any event, cannot hold these sheriffs liable due to some form of immunity. They also argue that any request for injunctive relief has been mooted by recent changes to state law, and that Plaintiffs' RICO claim fails as a matter of law. As explained below, each of these arguments is unavailing.

## RELEVANT BACKGROUND[2]

Following the passage of a law that allowed the County Sheriffs to contract with private debt collectors for situations involving "failure-to-pay" warrants, each County Sheriff authorized the Oklahoma Sheriffs' Association ("OSA") to enter into a contract with Aberdeen on their behalf. Second Am. Compl., ("SAC"), Doc. 212, ¶ 30.[3] The County Sheriffs' contract with Aberdeen permits the company to use the threat of arrest and incarceration to pad its bottom line while abrogating the rights of indigent debtors. Pursuant to the contract, cases are transferred to

---

[2] This section includes allegations relevant to Plaintiffs' claims against the County Sheriffs in their individual capacities. For a summary of the allegations and claims against all Defendants, see *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 509-14 (10th Cir. 2023).

[3] Although the County Sheriffs themselves are not parties to the contract between OSA and Aberdeen, the decision to enter into the contract was made by each sheriff on a county-by-county basis. *Id.* A number of sheriffs in Oklahoma have decided not to contract with Aberdeen, and at least one county (Tulsa County) terminated its contract with Aberdeen after the filing of this lawsuit. *Id.* ¶¶ 9 n.5, 124.

BRIEF A

Aberdeen when debtors in the County Sheriffs' jurisdictions cannot pay and have an arrest warrant issued as a result. Transfer to Aberdeen through the contract results in an automatic 30-percent penalty surcharge to the total amount owed by each debtor, which is split between Aberdeen and OSA. *Id.* ¶ 55. Aberdeen, empowered by the County Sheriffs through the contract and with their assistance, unlawfully threatens and coerces members of the class to make payments they cannot afford and seeks arrest warrants when debtors, because of their poverty, cannot pay. *Id.* ¶ 2. These actions are extortionate under any of its prohibited iterations: Aberdeen—empowered and aided by the County Sheriffs—demands and extracts payment from debtors under threat of unlawful arrest. The County Sheriffs assist Aberdeen in its collection activities. *Id.* ¶ 283. The arrest warrants Aberdeen seeks are routinely rubber-stamped by judicial authorities in the County Sheriffs' jurisdictions. *See id.* ¶ 91.

The County Sheriffs then make Aberdeen's threats reality by arresting and jailing individuals pursuant to Aberdeen's requested debt-collection arrest warrants, *id.* ¶ 10, actions not required by any law or court and fully within the County Sheriffs' discretion. When these coercive methods are able to extract money from people, the County Sheriffs financially benefit, relying on money collected from court debts to partially fund their operations, *id.* ¶ 30, while OSA as their agent and trade organization splits the 30-percent penalty surcharge that is attached to every transfer, and has experienced more than a 60-fold increase in assets as a result of Aberdeen's collections activity. *See id.* ¶¶ 56-59, 104-07. This process subjects those too poor to pay, including Plaintiffs, to onerous debt collection enforcement methods not experienced by other types of debtors in violation of the Equal Protection Clause, as alleged in Count 7 of the Second Amended Complaint.

BRIEF A

## ARGUMENT

**I.     Plaintiffs Have Standing to Sue the County Sheriffs, Who Are Alleged to Have Participated in the Challenged Conduct.**

The County Sheriffs argue that Plaintiffs lack standing to sue "most" of them. Doc. 407 at 11. In particular, they maintain that Plaintiffs are attempting to hold them responsible for the actions of third parties and thus cannot satisfy the "fairly traceable" element of Article III standing analysis. *Id.* at 11-12. They argue that Plaintiffs have not made "allegations regarding county practices" or specific acts carried out by the County Sheriffs in their individual capacities, *id.* at 12, and therefore cannot show that the Sheriffs personally participated in the challenged constitutional violations, *id.* at 33. Because these arguments largely overlap, Plaintiffs address them together.

It simply is not true that Plaintiffs have not specifically alleged that the County Sheriffs "did anything to anyone at all," *id.*, or that they have not made "allegations regarding county practices," *id.* at 12. To the contrary, the Second Amended Complaint clearly alleges that the County Sheriffs are individually liable under Count 7 for their practice of contracting (through OSA) with Aberdeen to operate in their counties, enabling the 30-percent surcharge upon transfer and its extortionate activities, and then enforcing Aberdeen's threats through the power of arrest by knowingly executing unconstitutional arrest warrants. SAC ¶¶ 65, 81, 356, 361. This satisfies the personal participation element and exceeds the "deliberate indifference" standard that the County Sheriffs claim must be met to establish their liability. *See* Doc. 407 at 35; *see also, e.g.*, *Dodds v. Richardson,* 614 F. 3d 1185, 1196 (10th Cir. 2010) (defendant supervisor's "personal direction or knowledge of ... a constitutional violation in a constitutional violation often suffice[s] to meet the personal involvement, causal connection, and deliberate indifference prongs of the affirmative link requirement for § 1983 supervisory liability").

4

BRIEF A

Individual liability under § 1983 extends to the "defendant-supervisor who creates, promulgates, implements, or *in some other way possesses responsibility for the continued operation of a policy*" that, when enforced "by the defendant-supervisor or her subordinates," injures the plaintiff. *Dodds,* 614 F. 3d at 1199 (emphases added). Indeed, it is enough if the supervisor is deliberately indifferent to the maintenance of a practice carried out by subordinates that causes the plaintiff's injury. *See Durkee v. Minor*, 841 F.3d 872, 877 (10th Cir. 2016). In *Dodds*, for example, the Tenth Circuit held that a defendant sheriff was liable in his individual capacity under § 1983 for a policy that prevented detainees from posting bail even though he had not personally interacted with the plaintiff, and even though the sheriff "may not have actually known of his subordinates' enforcement of [the challenged] policies with regard to Plaintiff in particular." *See* 614 F.3d at 1202-03. In fact, the sheriff did not even create the policy at issue. *Id.* at 1203. It was sufficient that, "under his watch, . . . the policies which caused Plaintiff's constitutional injury continued to operate." *Id*.

Here, the County Sheriffs each personally participated in the onerous debt collection practices challenged in Count 7 by, first, authorizing OSA to enter into and then renew a contract with Aberdeen that resulted in transfer of cases to Aberdeen, the 30-percent penalty surcharge, and enabled it to engage in its onerous extortionate activities. SAC ¶ 30. The County Sheriffs then make "collective efforts" to obtain debtor information to provide to Aberdeen to assist its work. *Id.* ¶ 60. As a result of Aberdeen's actions under the contract, "courts routinely issue" the nonpayment arrest warrants Aberdeen requests, "without any inquiry into or knowledge of whether the person had the means to pay." *Id.* ¶ 92. Judges "issue the debt-collection arrest warrants Aberdeen seeks, even though the warrants are predicated on nothing more than Aberdeen's unsworn factual allegation that a debtor has not made payments." *Id.* ¶ 64. Then the County Sheriffs

BRIEF A

and their subordinates "execute the illegal arrest warrants and detain debtors based solely on the unsworn allegations of nonpayment." *Id.* ¶ 65. Critically, Plaintiffs allege that the County Sheriffs do this—authorizing the renewal of the contract and executing the unconstitutional arrest warrants—*with full knowledge of Aberdeen's unlawful collection practices and the unconstitutionality of the warrants. Id.* ¶¶ 65, 81.

Plaintiffs have Article III standing to sue the County Sheriffs because there is plainly a direct causal link between authorizing the commission and renewal of the contract with Aberdeen and the harms Plaintiffs suffer *because of* the continued administration of the contract. So, too, is there a direct causal link between the harms suffered by Plaintiffs' at the hands of Aberdeen's onerous debt-collection scheme and the County Sheriffs' enforcement of the nonpayment arrest warrants, thereby enforcing the scheme. This is not respondeat superior liability, as suggested by the Sheriffs. Doc. 407 at 33-35. It is direct personal participation in Aberdeen's unconstitutional debt collection scheme. Moreover, that the County Sheriffs do so with full knowledge of Aberdeen's impermissible financial bias and the illegality of the warrants plainly demonstrates deliberate indifference to the constitutional harms suffered by Plaintiffs.[4]

The County Sheriffs argue as well that the putative class's claims against them pose a "prudential standing" problem. Doc. 407 at 13-14. This argument fails. From the start, it omits that Plaintiffs Kendallia Killman, Ira Lee Wilkins, and Melanie Holmes have pled harms caused

---

[4] The County Sheriffs also assert that the complaint makes only "collective allegations" that fail to provide fair notice of the challenged wrongful conduct. Doc. 407 at 33-34. They are wrong. Plaintiffs have pled that each Sheriff has the same unlawful policy. *See* SAC ¶ 30 (alleging that "[e]ach Defendant Sheriff's office authorized [OSA] to enter into the contract for debt collection services with Aberdeen, Inc. on the Sheriff's behalf" and that "each of Defendant Sheriffs" uses the power of arrest to collect court debts). It is not improperly "collective" to plead that multiple defendants have engaged in the same type of unconstitutional conduct and it would not better serve Rule 8's principles to require the needless formality of listing the name of each County Sheriff in each paragraph of allegations.

BRIEF A

specifically by policies of the Cleveland County, Wagoner County, and Creek County sheriffs, respectively. SAC ¶¶ 22, 24, 25. At the very least, those Defendants must remain. But regardless, the County Sheriffs' argument as a whole lacks merit for two reasons.

First, when a plaintiff alleges harm at the hands of a conspiracy, as Plaintiffs do here, *see, e.g.*, *id.* ¶ 292, she has standing to sue all participants in the conspiracy, regardless of whether she interacted directly with each individual participant. *See, e.g.*, *Rios v. Marshall*, 100 F.R.D. 395, 404 (S.D.N.Y. 1983) ("a plaintiff injured by one of the defendants as a result of the conspiracy has standing to sue the co-conspirator defendants even though that plaintiff had no direct dealings with the co-conspirators" and "to represent a class of individuals injured by any of the defendants as part of the conspiracy"); *Brown v. Cameron-Brown Co.*, 30 Fed. R. Serv. 2d 1181, 1980 WL 1856, at *3 (E.D. Va. 1980) ("the requisite nexus between the defendants and the injured plaintiffs may be established" if all defendants "are linked together by virtue of participation in a conspiracy"), *aff'd in relevant part by* 652 F.2d 375 (4th Cir. 1981). This stems from the foundational tort law principle that each individual member of a conspiracy is jointly and severally liable for the damages caused by the conspiracy. *See, e.g.*, *Com. Standard Ins. Co. v. Liberty Plan Co.*, 283 F.2d 893, 894 (10th Cir. 1960); *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 113 (D.N.J. 2012).

In this case, Plaintiffs allege that *all* the County Sheriffs have entered into a conspiracy that has harmed the named Plaintiffs. *See, e.g.*, SAC ¶ 292. This conspiracy underpins Plaintiffs' RICO claims (Count 1), and the allegations are incorporated into Plaintiffs' constitutional claim against the County Sheriffs in their individual capacities. *See id.* ¶ 360. The County Sheriffs have entered into an agreement by which they all knowingly participate in the same scheme, whereby they enable and endorse Aberdeen's profit-seeking conduct through "execut[ing] the arrest warrants threatened and obtained by Aberdeen," "provid[ing] debtor information to Aberdeen,"

BRIEF A

"transfer[ring] cases to Aberdeen[] for collection," and "detain[ing] persons in jail pending payment to Aberdeen." *Id.* ¶¶ 283-84; *see also id.* ¶¶ 29-30, 65, 284 (explaining how sheriffs benefit financially as members of the OSA whom they authorized to contract with Aberdeen).

Second, Plaintiffs have standing to bring their § 1983 claims against the County Sheriffs pursuant to the "juridical link" doctrine. Because class members have been injured by each of the County Sheriffs through the same course of conduct, the named Plaintiffs have Article III standing to bring these claims on behalf of the class. That is, "if all the defendants took part in a similar scheme that was sustained either by a contract or conspiracy, or was mandated by a uniform state rule, it is appropriate to join as defendants even parties with whom the *named* class representative did not have direct contact." *Payton v. County of Kane*, 308 F.3d 673, 679 (7th Cir. 2002), *cert. denied*, 540 U.S. 812 (2003); *see also Moore v. Comfed Sav. Bank*, 908 F.2d 834, 838-39 (11th Cir. 1990). In such circumstances, standing exists "even though the representative was injured by the conduct of only one of the" defendants. 7AA Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1785.1 (3d ed.).[5]

## II.   The County Sheriffs Do Not Enjoy Absolute Quasi-Judicial Immunity.

Plaintiffs allege two claims against the County Sheriffs in their individual capacity, one under the RICO Act (Count 1), SAC ¶ 283, and the other under the Equal Protection Clause of the Fourteenth Amendment (Count 7), *id.* ¶ 361. The Sheriffs, in their individual capacities, argue that

---

[5] Plaintiffs recognize that this Court declined to apply the juridical link doctrine to find standing in *Hunnicutt v. Zeneca, Inc.*, No. 10-cv-708-TCK-TLW, 2012 WL 4321392, at *3 n.3 (N.D. Okla. Sept. 19, 2012). But *Hunnicutt* is factually distinct from the present case—so much so that the plaintiffs there explicitly disclaimed reliance on the doctrine. The juridical link doctrine supplies standing where, as in *Moore* and the present case, large numbers of defendants make the addition of class representatives or separate lawsuits unwieldy. *Hunnicutt*, by contrast, involved only two defendants, and this Court recognized that the juridical link doctrine does not apply in such circumstances. *Id.* at *3 n.5.

BRIEF A

they should enjoy quasi-judicial immunity from damages for these claims because the allegations against them amount to "ministerial acts" performed "at the direction of a judge." Doc. 407 at 16. This argument is incorrect, and the Sheriffs cannot meet their burden to establish immunity. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993) ("The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity.").

The argument fails from the outset because Plaintiffs' allegations against the County Sheriffs consist of much more than arresting people on unlawful warrants. Plaintiffs allege that the Sheriffs have privatized the collection of debts in their respective counties by contracting with Aberdeen through the OSA. SAC ¶ 56. Plaintiffs allege that the Sheriffs are aware that Aberdeen uses coercive and illegal collection practices, yet they continue to contract with Aberdeen. *Id.* ¶ 81. Plaintiffs allege that the County Sheriffs participate in the RICO enterprise, including that they exercise "'sole discretion' along with court clerks to choose cases to transfer to Aberdeen," "provide debtor information to Aberdeen," and in so doing, "benefit financially because . . . certain fees that Aberdeen, Inc. collects must . . . be remitted to the Defendant Sheriff of that county." *Id.* ¶¶ 283-84. And in Count 7, Plaintiffs allege that they violate equal protection by "transfer[ing] Plaintiffs' cases to Aberdeen" and by employing "onerous collection enforcement" tactics. *Id.* ¶ 361.

As such, Plaintiffs' claims against the Sheriffs pertain primarily to their decision to contract with Aberdeen and assist in its debt-collection activities, with full knowledge of its extortionate conduct. The Sheriffs do not and cannot contend that contracting with or referring cases to Aberdeen is a "judicial function"—indeed, as alleged, judges are not involved at all in the decision to contract and transfer. With respect to these functions, there is no "judicial act" from which to derive "quasi-judicial" immunity. *Cf. Mays v. Sudderth*, 97 F.3d 107, 114 (5th Cir. 1996).

9

BRIEF A

Even to the extent executing warrants is part of the broader scheme Plaintiffs challenge and "officials charged with the duty of executing a facially valid court order enjoy absolute immunity," *Moss v. Kopp*, 559 F.3d 1155, 1163 (10th Cir. 2009), the problem for the County Sheriffs here is that it is not alleged that these warrants are facially valid in a legally relevant way. Courts have not extended absolute immunity to officials who execute unlawful court orders that they themselves bear responsibility for procuring. The Tenth Circuit has long recognized that officers who help procure a court order in a manner they know will render it invalid are not immune for executing that order. *See Turney v. O'Toole*, 898 F.2d 1470, 1473 n.3 (10th Cir. 1990) (noting that "[s]uch an order does not provide the same quasi-judicial immunity as an order which the defendant played no part in procuring," and citing cases to that effect). This conclusion flows directly from the Supreme Court's reasoning in *Malley v. Briggs*, 475 U.S. 335 (1986), denying absolute immunity to an officer when seeking a warrant, *id.* at 342-43. In essence, the "good faith" normally attributed to an officer who is executing a facially valid court order dissolves when the officer has invalidly procured it.

Similarly, several circuits, including the Tenth, have recognized that an officer who executes a facially valid court order—whether or not he took part in procuring it—might not enjoy absolute immunity if he knows that the order is in fact invalid. *See Welch v. Saunders*, 720 F. App'x 476, 481 (10th Cir. 2017); *Robertson v. Lucas*, 753 F.3d 606, 619 (6th Cir. 2014); *Williamson v. Curran*, 714 F.3d 432, 442 (7th Cir. 2013); *Lee v. Gregory*, 363 F.3d 931, 935 (9th Cir. 2004). Plaintiffs allege that the Sheriffs, through OSA, contract with Aberdeen, assist Aberdeen as required under the contract, and knowingly procure invalid warrants. SAC ¶ 283. They know that the warrants have no sworn factual basis sufficient to justify arrest, that they are issued upon nonpayment of arbitrary sums without any pre-deprivation process or inquiry into

BRIEF A

ability to pay, and that Aberdeen uses the warrants to threaten indigent debtors with jail in order to extort payments. *Id.* ¶¶ 31-32, 52, 65-66, 71-82, 96, 281-83, 324-25. The law does not permit them to play an active role in procuring these invalid warrants, to know their unlawful origins, and then claim to be blind to their invalidity.[6]

The County Sheriffs' remaining arguments are unavailing. They contend that Plaintiffs fail to "allege specific facts showing that the County Sheriffs were involved [in] fact-gathering to support and issue arrest and bench warrants." Doc. 407 at 16. But Plaintiffs do make specific factual allegations about the Sheriffs' conduct. SAC ¶¶ 283-84. The Sheriffs cite Okla. Stat. tit. 22, § 967 for the proposition that warrants need not be supported by a sworn affidavit, Doc. 407 at 16, but the federal Constitution requires as much. *See Dow v. Baird,* 389 F.2d 882, 883-84 (10th Cir. 1968) (stating that a warrant "signed but not sworn to" is "clearly and obviously invalid" under the Fourth Amendment). The Sheriffs also cite Okla. Stat. tit. 22, § 968 as the source of their power to arrest debtors pursuant to bench warrants. Doc. 407 at 17. But nothing in that statute empowers them to execute warrants which they *know* to be invalid. *See supra* at 10.

To be clear, Plaintiffs are not asking the Sheriffs to make independent ability-to-pay determinations or to act as "pseudo-appellate courts scrutinizing the orders of judges." *Moss*, 559

---

[6] It is an open question "whether the absolute immunity granted by *Valdez v. City & County of Denver*, 878 F.2d 1285 (10th Cir. 1989), with respect to enforcement of judicial contempt orders extends" to other types of bench warrants. *Martin v. Bd. of Cnty. Comm'rs of Cnty. of Pueblo*, 909 F.2d 402, 405 (10th Cir. 1990); *see also id.* at 405 n.4. The warrants challenged here are not issued on a judge's initiative based on that judge's observation of the violation of a court order. Instead, they are sought by non-judicial officers without judicial direction and on the basis of facts outside any court's personal knowledge, purely for the purpose of collecting court debt. When the purpose of arrest warrants is simply to coerce payment, they "are extra-judicial and focus more on the administrative task of collecting fines than the judicial act of imposing them." *Kneisser v. McInerney*, No. 1:15-cv-07043, 2018 WL 1586033, at *14 (D.N.J. Mar. 30, 2018); *see also id.* (declining to grant absolute immunity to judge or clerk where, like here, the "whole point of incarceration was to collect fines").

BRIEF A

F.3d at 1165 (quoting *Valdez*, 878 F.2d at 1289). Rather, Plaintiffs allege that the Sheriffs *know* that these warrants are invalidly obtained—because they contract with Aberdeen and are aware of its practices—and that they cannot ignore that knowledge any more than they could if they themselves put false information into a warrant application. *See Juriss v. McGowan*, 957 F.2d 345, 351 (7th Cir. 1992). Plaintiffs seek to hold the Sheriffs liable based on their knowledge of what occurs before the warrant issues—not on the basis of any hypothetical duty to conduct a post-issuance, independent review. The Sheriffs do not enjoy quasi-judicial immunity.

**III.    Qualified Immunity Does Not Shield the County Sheriffs.**

Qualified immunity protects government officials from liability for civil damages only insofar as their conduct does not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). While "clearly established law" should not be defined "at a high level of generality," *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011), "general statements of the law are not inherently incapable of giving fair and clear warning" to government officials, *United States v. Lanier*, 520 U.S. 259, 271 (1997). The law may also be clearly established "where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018); *see also Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) ("It is not necessary, of course, that the very action in question has previously been held unlawful. That is, an officer might lose qualified immunity even if there is no reported case directly on point." (internal quotation marks and citation omitted)).

The County Sheriffs claim they are shielded by qualified immunity because Plaintiffs allege the Sheriffs committed a "nuanced violation" of constitutional rights, that there is "no precedent" for the argument that they may decline to enforce "facially valid orders," and that Plaintiffs' allegations otherwise conflict with the County Sheriffs' obligations to follow state law.

12

BRIEF A

Doc. 407 at 20-21. As an initial matter, qualified immunity is more properly raised at summary judgment, rather than in a motion to dismiss. Given the fact-specific nature of qualified immunity, early consideration of qualified immunity "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). In any case, the County Sheriffs' arguments fail, as they rely on mischaracterizations of the facts and the claims against them. To start, only two of Plaintiffs' claims are pressed against the County Sheriffs: Count 1, alleging RICO violations through both conspiracy and participation in the activities of the RICO enterprise, SAC ¶¶ 274 *et. seq.*; and Count 7, alleging that the use of Aberdeen, its extortionate activity, and the imposition of a 30-percent surcharge constitute undue onerous collection enforcement methods in violation of the Equal Protection Clause of the Fourteenth Amendment. The facts underlying the County Sheriffs' liability for these causes of action do not rest on state law obligations, and implicate clearly established violations.

A.   **The County Sheriffs' Use of Aberdeen Is an Onerous Enforcement Method That Is a Clearly Established Violation of the Fourteenth Amendment (Count 7).**

In Count 7, Plaintiffs allege that the use of specially "onerous" debt-collection methods— including "arrest warrants, . . . an additional 30-percent penalty surcharge," possible "suspension of a driver's license," and "repeated threats of arrest[]"—denies them equal protection as compared to other judgment debtors. SAC ¶ 361. Under well-established Supreme Court precedent, the government may not use "unduly harsh or discriminatory terms" to collect court costs owed from a criminal case, "merely because the obligation is to the public treasury rather than to a private creditor." *James v. Strange*, 407 U.S. 128, 138 (1972).

In *Strange*, the Court struck down a Kansas recoupment statute that expressly denied former criminal defendants who owed money to the State for indigent defense costs the basic wage garnishment exemptions available to other civil judgment debtors under state law. *Id.* at 135-36,

BRIEF A

141-42. The Court recognized that state recoupment statutes generally embody "legitimate state interests" but reasoned that those interests "are not thwarted by requiring more even treatment of indigent criminal defendants with other classes of debtors." *Id.* at 141. "For Kansas to deny" the basic wage exemptions at issue was "to risk denying" a debtor "the means needed to keep himself and his family afloat," *id.* at 136, a denial that "embodie[d] elements of punitiveness and discrimination which violate the rights of citizens to equal treatment under the law," *id.* at 142. The result was to "blight" in "discriminatory fashion the hopes of indigents for self-sufficiency and self-respect." *Id.* at 141-42. For these reasons, the Court struck down Kansas's "unduly harsh" debt-collection scheme. *Id.* at 138; *see also Fuller v. Oregon*, 417 U.S. 40, 47 (1974) (affirming that the Fourteenth Amendment protects government debtors from unduly harsh treatment as compared to people indebted to private creditors). This Supreme Court decision more than 50 years ago clearly established that similar schemes violate constitutional rights.

Here, the County Sheriffs' use of Aberdeen exposes Plaintiffs to surcharges,[7] threats, arrest warrants, and jailing in the pursuit of their county debts. Plaintiffs are thereby singled out by the government for extreme collection methods not available against other Oklahoma judgment debtors.[8] *See generally* Oklahoma Uniform Consumer Credit Code, Okla. Stat. tit. 14A, §§ 1-101 *et seq.* The Equal Protection Clause does not permit such discrimination.

---

[7] The 30-percent surcharge is required by state statute *only if* a debtor's warrant has been referred to a third-party contractor such as Aberdeen. Okla. Stat. tit. 19, § 514.5. Because state law merely authorizes but does not require the County Sheriffs to engage such a contractor and to transfer it cases, *see id.* § 514.4(A); *infra* note 9, the Sheriffs are responsible for the state-law consequences of their decision to do so, and their associated methods. *See, e.g.*, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (municipal liability attaches where policymakers make a "deliberate choice" from "among various alternatives"); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (municipality held liable for its policy of allowing deadly force in certain situations even though a state statute authorized those uses of force, because latter did not require them).

[8] The County Sheriffs concede that plaintiffs could, consistent with *James*, "draw[] a distinction between indigent defendants who owed money to the state or the state's private debt collectors

14

BRIEF A

The County Sheriffs argue that Plaintiffs' claim fails because Plaintiffs are not similarly situated compared to debtors unburdened by Defendants' harsh collection methods. Doc. 407 at 29. The Sheriffs contend that for two groups to be similarly situated, "[t]he 'challenged state action' must be able to apply to all members of [both] the groups, yet in its enforcement discriminate[] between those groups because of a protected class." *Id.* The Sheriffs misunderstand equal protection. If they were correct that a state action could only violate equal protection if it applied to members of both similarly situated groups, then a state law directing the arrest of all members of a particular race would not count, because it would not apply to similarly situated members of other races. For good reason, that is not the standard. It is enough that the challenged action "classifies or distinguishes between two or more relevant groups." *Rolf v. City of San Antonio*, 77 F.3d 823, 826 (5th Cir. 1996). And, as the example illustrates, an action targeting just one of two similarly situated groups can effect just such a distinction.

Building upon their misunderstanding of the doctrine, the County Sheriffs invite this Court to follow the district court in *Cain v. City of New Orleans*, 327 F.R.D. 111 (E.D. La. 2018), which dismissed a claim brought under *Strange* on the ground that the defendant municipal judges overseeing the challenged debt-collection on behalf of a government creditor did not have jurisdiction over private civil judgment debtors. Doc. 407 at 30. In reaching that decision, the court in *Cain* relied on two principal factors which do not apply here. First, it found that plaintiffs there did not "point to any state law that facially discriminates against criminal judgment debtors like the Kansas recoupment statute in *James*." *Cain*, 327 F.R.D. at 120. Here, Plaintiffs have

---

versus those who owed money to private parties." Doc. 407 at 33 n.11. Plaintiffs' claim in Count 7 implicates exactly this distinction, albeit with references to additional distinctions between wealthy and indigent debtors. Given the important constitutional rights at stake, this Court should construe Plaintiffs' complaint as making the same comparison as the Supreme Court did in *Strange*, which forms the basis for this type of "onerous collection" claim.

BRIEF A

specifically identified the 30-percent surcharge, which only applies to criminal judgment debtors whose cases are transferred for private collection. SAC ¶ 55; *see supra* note 7. Second, the court in *Cain* found that because the plaintiffs there were challenging the policy of judges in a specific court that, per state law, only had jurisdiction over criminal cases, it did not align with *Strange*. *Cain*, 327 F.R.D. at 120 (citing La. R.S. § 13:1336). But here, the courts out of which Plaintiffs' debts arise are Oklahoma District Courts, which have "unlimited original jurisdiction of *all justiciable matters*," civil and criminal. Okla. Const. art. 7, § 7(a) (emphasis added). Unlike in *Cain*, the groups here are directly comparable, and the criminal debtors are discriminated against by rules and practices that do not apply to civil debtors in the same courts.

In any event, the Supreme Court in *Strange* did not require that the defendant judicial administrator have "jurisdiction" or other power over private debtors (nor is there any indication that he did). Nor could the Kansas recoupment scheme invalidated in *Strange* have been rendered constitutional simply by setting up a separate court with jurisdiction limited to indigent criminal defendants who owed money for the costs of their state-afforded defense. What *Strange* clearly established is that the Equal Protection Clause is violated when the government helps itself to unduly harsh collection methods that are not available to private judgment creditors (regardless of whether the same officials who employed those methods would have been involved in a private creditor's collection efforts). *See* 407 U.S. at 138-39. The County Sheriffs offer no reason why Plaintiffs' debts could not "be collected in the same manner as a judgment in a civil action," rather than in Defendants' abusive manner. *Rodriguez v. Providence Cmty. Corr., Inc.*, 191 F. Supp. 3d 758, 775 (M.D. Tenn. 2016) (denying a motion to dismiss a similar equal protection claim challenging a private probation scheme). But for the County Sheriffs' choice to subject them to Defendants' extreme collection methods, Plaintiffs would be in the same situation as any other

16

BRIEF A

Oklahoma judgment debtor. In treating Plaintiffs harsher simply because the debts they cannot pay are owed to municipalities, the County Sheriffs violate Plaintiffs' right to equal protection.

## B. There Is No Basis to Grant the County Sheriffs Qualified Immunity on Plaintiffs' RICO Claim (Count 1).

Second, the County Sheriffs should be denied qualified immunity as to Count 1. Qualified immunity is, traditionally, only a defense to constitutional claims. Although some courts have left open the possibility that qualified immunity may apply to RICO claims, they have typically found that the right to be free from extortion by a RICO enterprise is "clearly established" by the RICO statute itself (and the statutes prohibiting its predicate acts), and focused their analysis on whether a RICO violation has been stated at all. *See, e.g.*, *Robbins v. BLM*, 252 F. Supp. 2d 1286, 1294-45 (D. Wyo. 2003) (denying qualified immunity because, under the Hobbs Act and state law, "a person's right to be free from extortion is clearly established" for purposes of RICO liability).

The doctrine of qualified immunity is intended to "give[] government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Unlike a constitutional issue, which may be subject to judicial interpretation and more amenable to "reasonable but mistaken judgments," whether the County Sheriffs have participated in the RICO enterprise does not rest on open legal questions—it is factual. If they wish to deny any of Plaintiffs' factual RICO allegations—that they have contracted with Aberdeen, that Aberdeen has extorted money from Plaintiffs, that they have assisted Aberdeen in its extortionate activities, or that Plaintiffs have suffered injury to their property, for example—they may do so after discovery has concluded. At this stage, the allegations in the Second Amended Complaint must be taken as true, and Plaintiffs have plausibly pled their RICO claim as to the County Sheriffs. *See infra* at 18-23. They should not be granted qualified immunity.

17

BRIEF A

IV.     **The County Sheriffs Are Liable Under the RICO Act.**

The County Sheriffs argue that the Second Amended Complaint fails to state a valid RICO claim. Specifically, they claim that it does not allege their involvement in the RICO enterprise, their commission of predicate acts, their engagement in a pattern of racketeering activity, or their conspiracy to commit these acts. Doc. 407 at 21. For the reasons explained below, Plaintiffs have successfully pleaded a RICO claim against the County Sheriffs.

In Count 1, Plaintiffs allege that the County Sheriffs in their individual capacities, along with Aberdeen, Jim and Robert Shofner, the OSA, and the Tulsa and Rogers County Sheriffs in their individual capacities (collectively, "RICO Defendants"), are members of an enterprise that uses the threat of arrest and incarceration to extort millions of dollars from thousands of impoverished debtors, in violation of 18 U.S.C. § 1962(c) and (d). SAC ¶¶ 274-317. It is unlawful for any person associated with any enterprise, the activities of which affect interstate commerce, to participate in the conduct of the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c). It is also unlawful "to conspire to violate" the RICO statute. *Id.* § 1962(d).

Here, what might otherwise have been a legitimate purpose of collecting money from debtors who willfully refuse to pay was corrupted by the pattern of extortion from the indigent carried out by the enterprise through Aberdeen, and enabled by the remaining RICO participants. "The elements of a civil RICO claim are (1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity." *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006). The Second Amended Complaint pleads every element of civil RICO for each of the RICO Defendants, including the County Sheriffs.

A.     **The County Sheriffs Have Participated in the RICO Enterprise.**

The County Sheriffs argue that they cannot be held liable for the activities of the RICO enterprise if their only involvement in the enterprise's affairs was compliance with the statutory

BRIEF A

duty to serve warrants. Executing such warrants, they claim, constitutes a "regular service[]" performed in the regular course of business. Doc. 407 at 22-23. The County Sheriffs' RICO arguments rest on the mistaken premise that all of the allegations against them stem from their execution of unlawful warrants. As explained above with regard to their similar argument for quasi-judicial immunity, this characterization misreads the Second Amended Complaint. The County Sheriffs are alleged to have participated in the RICO enterprise in multiple ways.

First, the County Sheriffs are members of the OSA, which has acted as their "agent" and "on [their] behalf" with respect to the contract with Aberdeen. SAC ¶ 29. As members of the OSA, they "authorized [OSA] to enter into the Agreement for debt collection services on their behalf." *Id.*; *accord id.* ¶ 30. Moreover, under state law, each Sheriff was empowered to make an individual decision regarding whether and how to contract for debt-collection services in his or her particular county. These Sheriffs chose individually to "assign their right to contract to the statewide association administering the provisions of the contract," Okla. Stat. tit. 19, § 514.4(E) (eff. Nov. 1, 2010); *see also* Okla. Stat. tit. 19, § 514.4(A)(2) (eff. Nov. 1, 2023) ("County sheriffs . . . may contract with a statewide association of county sheriffs to administer contracts with third parties who shall be known as court cost compliance liaisons"),[9] knowing that the OSA contracts with a company that engages in unlawful activity. Each County Sheriff is responsible for using Aberdeen in his respective county on an ongoing basis and for authorizing multiple renewals of the

---

[9] Attached as Exhibit 1 are the versions of Okla. Stat. tit. 19, § 514.4 (and § 514.5) that were in place at the time Plaintiffs' suit was filed in 2017 (the 2010 laws) and that have been in place since an amendment took effect in 2018 (the 2018 laws), respectively. Under both the 2010 and 2018 version of § 514.4 cited *supra*, a sheriff was authorized to assign his rights to the OSA; the main difference between these two versions of the statute was that the former allowed the sheriff to contract with debt collector directly, and the latter required OSA to serve as a go-between. The recent amendments to these statutes, which will take effect on November 1, 2023, do not alter this scheme, and they are attached as exhibits to numerous co-defendants' renewed motions to dismiss. *See, e.g.*, Doc. 405-1.

BRIEF A

agreement, with "full knowledge" of the misconduct. SAC ¶ 81. They are therefore all implicated in OSA's participation in the enterprise.

Second, each County Sheriff has been authorized by the contract to "select cases to refer to Aberdeen." SAC ¶ 57; *see also* SAC Ex. A, Doc. 212-1, at 3. Each County Sheriff also has provided Aberdeen with "debtor information" it collects through the OSA. SAC ¶ 60. Assigning the right to collect debt and providing information to assist a company that regularly threatens unlawful arrest to debtors who cannot pay are singular, discretionary acts, and are not part of the "goods and services" they provide in the "regular course of business" as described by the Tenth Circuit. *See Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 884 (10th Cir. 2017); *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1101 (10th Cir. 1999). In *BancOklahoma*, for example, the challenged conduct involved activities that the defendant title companies "would have performed in their normal course of business in dealing with all mortgage lenders." 194 F.3d at 1102. Enabling and assisting a private company's extortion is not normal business activity for an elected government official. Importantly, the County Sheriffs are not "outsiders" merely providing services to the RICO enterprise; they are an integral part of the enterprise, and they decide individually whether to authorize Aberdeen's operation in their respective counties. *See George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1251-52 (10th Cir. 2016).

Third, the County Sheriffs "routinely arrest[] and jail[] individuals pursuant to . . . debt-collection arrest warrants that are based solely on nonpayment." SAC ¶ 10. Once a person is arrested for nonpayment, even if she is indigent and unable to pay, the County Sheriffs will not release her unless a sum of money is paid. *Id.* This is the sole form of participation acknowledged by Defendants in their brief, but their objections are still unavailing. The County Sheriffs claim that arrest and detention based on the challenged warrants constitute "regular services." *See* Doc.

BRIEF A

407 at 22. But there is nothing regular about the Sheriffs' use of the unconstitutional warrants. Even if signed by a judge, the warrants are obviously invalid, as they are issued without the process required by state law and without an affidavit supporting probable cause. "[W]here the issuing magistrate wholly abandoned his judicial role . . . no reasonably well-trained officer should rely on the warrant." *United States v. Leon*, 468 U.S. 897, 923 (1984). And an officer does not demonstrate "good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (citing *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part) (internal quotation marks omitted). The County Sheriffs cannot reasonably claim that their "regular services" include jailing people on warrants "not supported by oath or affirmation" or probable cause. SAC ¶ 336. The arrests contribute directly to the success of the RICO enterprise by making real Aberdeen's threats. For that reason, the County Sheriffs' argument that executing valid warrants cannot be considered racketeering activity under RICO, Doc. 407 at 26, misses the point. The arrests themselves are not predicate offenses, *see infra* at 22, but evidence of participation in the activities of the RICO enterprise.

Finally, the County Sheriffs profit from the enterprise through the collection of Sheriff's Fees, *see* SAC ¶ 149, and through participation in the OSA, *see id.* ¶¶ 105-06. Together, the allegations in the complaint establish the County Sheriffs' intimate and frequent participation in the RICO enterprise through a variety of means, none of which are required under state law.

## B. The Extortion Benefitted Private Corporate Entities as Well as Government Ones.

The County Sheriffs also deny involvement in the predicate acts that constitute the RICO enterprise, on the alleged ground that an extortion claim cannot be based on the collection of money intended for the government. Doc. 407 at 23-25. This provides no defense here, as

BRIEF A

Aberdeen and the OSA are both private beneficiaries of the money extorted by the RICO enterprise. It is true that there can be no claim for extortion where the "sole" intended beneficiary is a governmental entity. *See Wilkie v. Robbins*, 551 U.S. 537, 564-65 (2007).[10] But the Supreme Court in *Wilkie* expressly distinguished cases in which money was extorted to benefit *both* a private third party and a government actor. *See* 551 U.S. at 565 (distinguishing *People v. Whaley*, 6 Cow. 661, 1827 WL 2284 (N.Y. 1827)); *see also United States v. Renzi*, 861 F. Supp. 2d 1014, 1022 (D. Ariz. 2012) (finding extortion where land deal between the federal government and a private investment group benefited the defendant as well as the government), *aff'd* 769 F.3d 731 (9th Cir. 2014).

In this case, the money is intended for both public *and* private benefit: the extortionate scheme has netted millions of dollars in profit for Aberdeen and the OSA, both private entities. *See, e.g.*, SAC ¶ 3. The fact that the money may be sent first to the counties, which then compensate the private entities from the same funds, does not remove its taint. The County Sheriffs argue that this transitional flow of money, from private account to public account and swiftly back to private account, effectively launders the extortionate proceeds and shields Defendants from liability. Doc. 407 at 25. That is not the *Wilkie* rule. Again, *Wilkie* only exempts the extortion perpetrated for the "*sole* benefit of the Government." 551 U.S. at 564-65 (emphasis added); *see also Renzi*, 861 F. Supp. at 1023 ("The Supreme Court [in *Wilkie*] did not hold that as long as an action is taken 'in

---

[10] The *Wilkie* principle only applies to extortion "under color of official right," which is just one of the two forms of Hobbs Act extortion pled in the Second Amended Complaint. *See, e.g.*, *United States v. Brissette*, 919 F.3d 670, 680 (1st Cir. 2019) (noting that the "exclusive benefit" language from *Wilkie* was limited to the "color of official right" element of extortion). Plaintiffs here also allege that the enterprise has engaged in extortion through the "wrongful use of actual or threatened force, violence, or fear," SAC ¶ 295; 18 U.S.C. § 1951(b)(2), to which *Wilkie* has no relevance.

BRIEF A

part' to benefit the government, it is not actionable under the Hobbs Act."). Where, like here, both public and private entities benefit from an extortionate scheme, *Wilkie* does not bar relief.

### C.    The County Sheriffs Engaged in a Pattern of Racketeering Activity.

The County Sheriffs also argue that they have not engaged in a pattern of racketeering activity. *See* Doc. 407 at 25-26. Here they again mischaracterize the complaint as alleging only that they have executed unlawful warrants. But the same allegations that establish the County Sheriffs' participation in the RICO enterprise in multiple ways, *see supra* Section IV.A, also demonstrate their participation in a pattern of racketeering activity. Although they deny that they had the criminal intent to engage in illegal acts, this is a factual question. The complaint clearly pleads facts from which criminal intent can be inferred—the County Sheriffs assist Aberdeen in its collection activities by, inter alia, providing it with debtor information with "full knowledge" that it uses that information to violate the law. SAC ¶¶ 60, 81. As those allegations must be accepted as true at this stage, Defendants' argument fails.

### D.    The County Sheriffs Have Engaged in a RICO Conspiracy.

The County Sheriffs' final RICO argument is that Plaintiffs have failed to plead predicate RICO acts, so the conspiracy claim under § 1962(d) must also fail. Given that Plaintiffs have alleged a violation under § 1962(c), *supra*, and given the "agreement" inherent in the fact that Defendants have united by contract with the common purpose of engaging in a course of conduct to maximize the collection of money from indigent court debtors in Oklahoma counties, SAC ¶¶ 55 *et seq.*, Plaintiffs have stated a claim under § 1962(d).

## V.    Plaintiffs' Claims for Injunctive Relief Are Not Moot.

The County Sheriffs note that in addition to damages, Plaintiffs seek equitable relief. They assert that "most, if not all" of this relief is mooted by forthcoming modifications to the Oklahoma statutory regime, which "appear to have been enacted almost directly in response to the claims

BRIEF A

Plaintiffs make in this lawsuit." Doc. 407 at 36. Accordingly, they argue, this Court should dismiss any relief that would amount to a statutory violation under the new regime. The County Sheriffs do not specify which claims they believe are mooted or cite any law in support of their argument.

Plaintiffs laud the Oklahoma legislature for taking measures to address the deficiencies challenged in this lawsuit. But at this time, no change has actually taken effect. If and when it does, this case will not become moot because Plaintiffs challenge *practices*, not any statute or rule. *See*, *e.g.*, SAC pp. 98-100; *Graff*, 65 F.4th at 517 ("every one of the ten claims set out in the [SAC] challenges debt-collection practices commenced after Plaintiffs are convicted and sentenced"). This is because Defendants' actions have *never* complied with state law. Plaintiffs have consistently alleged that the County Sheriffs' practices did not comply with the statute that was in place at the time this lawsuit was filed. Until the recent amendments go into effect, state law has been clear: a court debtor can only be imprisoned for nonpayment if "the trial court finds after notice and a hearing that the defendant is financially able but refuses or neglects to pay." Okla. Stat. tit. 22, § 983(A) (eff. Nov. 1, 2018);[11] *see also* SAC ¶¶ 43-46 (noting that "Oklahoma's statutory scheme provides protections" intended to ensure constitutional requirements are followed, but alleging that "the collapse of these protections" has led to the challenged practices).

Pursuant to the allegations, the County Sheriffs as well as other Defendants "routinely ignore constitutional *and statutory* requirements in a concerted effort to extract as much money as possible from indigent people." SAC ¶ 49 (emphasis added). For example, the County Sheriffs are alleged to execute arrest warrants procured by Aberdeen, which they knew were a result of

---

[11] Attached as Exhibit 2 to this brief in opposition is a copy of Section 983 as it exists today, before the amendments take effect on November 1, 2023. Although this version of the law went into effect after Plaintiffs filed this lawsuit, the prior version was identical in all relevant respects. *See* S.B. 689, 56th Leg., 2d Reg. Sess. (Okla. 2018).

BRIEF A

Aberdeen's actions, including "intentionally conceal[ing] alternative options that would avoid the issuance of an arrest warrant, and seek[ing] warrants for the arrest of persons who it knows to be indigent without disclosing such information." *Id.* ¶¶ 281, 283. This activity, among others practiced by the County Sheriffs, has never been authorized by any version of Section 983. Other sources of liability, including the County Sheriffs' transfer of cases to Aberdeen (the subject of Count 7), remain authorized by the amended statutes. The County Sheriffs, in other words, cannot point to a change in *statutes or rules* when the relevant inquiry is whether they have changed their *practices. See, e.g.*, *Fair Fight Action, Inc. v. Raffensperger*, 413 F. Supp. 3d 1251, 1272-76 (N.D. Ga. 2019) (claim not moot from change in state law where defendants had not shown compliance with amended law); *Rembert v. Sheahan*, 62 F.3d 937, 942 (7th Cir. 1995) (following change of law, the "district court must determine what the Sheriff's actual . . . practices are in order to assess whether [plaintiffs'] case is moot")

In any event, even if evidence showed the County Sheriffs had changed their practices in response to the law, under the voluntary-cessation doctrine a defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 190 (2000). Defendants cannot meet that burden because they continue to "vigorously defend[] the constitutionality" of the challenged practices. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007). None of Plaintiffs' claims are moot.

## **CONCLUSION**

For the reasons set forth above, the Court should deny the County Sheriffs' motion to dismiss in their individual capacities.

BRIEF A

Dated: August 10, 2023                    Respectfully submitted,

/s/ *Daniel E. Smolen*
Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

/s/ *Ryan Downer*
Ryan Downer (admitted *pro hac vice*)
D.C. Bar No. 1013470
Katherine Hubbard (admitted *pro hac vice*)
D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

/s/ *Seth Wayne*
Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804
Mary B. McCord (admitted *pro hac vice*)
D.C. Bar No. 427563
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu

26

BRIEF A

mbm7@georgetown.edu

*Attorneys for the Plaintiffs*

BRIEF A

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of August, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

/s/ *Seth Wayne*

BRIEF A