## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CARLY GRAFF, et al.,** | |
| *Plaintiffs,* | |
| v. | **Case No. 4:17-CV-606-TCK-JFJ** |
| **ABERDEEN ENTERPRIZES II, INC., et al.,** | |
| *Defendants.* | |

### PLAINTIFFS' OPPOSITION TO RENEWED MOTION TO DISMISS BY DEFENDANTS THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ROGERS, SCOTT WALTON (SHERIFF OF ROGERS COUNTY), AND KIM HENRY (FORMER COURT CLERK OF ROGERS COUNTY), IN THEIR OFFICIAL CAPACITIES

### BRIEF B

Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804
Mary B. McCord (admitted *pro hac vice*)
D.C. Bar No. 427563
Institute for Constitutional Advocacy
  and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel.: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu
mbm7@georgetown.edu

Ryan Downer (admitted *pro hac vice*)
D.C. Bar No. 1013470
Katherine Hubbard (admitted *pro hac vice*)
D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

*Attorneys for the Plaintiffs*

<u>**Index of Plaintiffs' Opposition Briefs**</u>

For ease of reference, each of Plaintiffs' opposition briefs has been labeled by letter according to the motion to dismiss to which it responds, listed below.

A.  51 County Sheriff Defendants, Individual Capacity (Doc. 407)

B.  Rogers County Defendants, Official Capacity (Doc. 406)

C.  Kim Henry, Former Court Clerk of Rogers County, Individual Capacity (Doc. 402)

D.  Scott Walton, Sheriff of Rogers County, Individual Capacity (Doc. 408)

E.  Aberdeen Enterprizes II, Inc. (Doc. 404)

F.  Jim and Rob Shofner (Doc. 403)

G.  Oklahoma Sheriffs' Association (Doc. 405)

H.  Defendant Judges (Doc. 412)

I.  51 County Sheriff Defendants, Official Capacity (Doc. 398)

J.  Vic Regalado, Sheriff of Tulsa County, Individual Capacity (Doc. 409)

K.  Don Newberry, Court Clerk of Tulsa County, Individual Capacity (Doc. 411)

L.  Darlene Bailey, Cost Administrator of Tulsa County, Individual Capacity (Doc. 410)

M.  Tulsa County Defendants, Official Capacity (Doc. 399)

BRIEF B

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................... iii

INTRODUCTION ...........................................................................1

RELEVANT BACKGROUND ............................................................1

ROGERS COUNTY'S MISCHARACTERIZATIONS ................................5

ARGUMENT ................................................................................7

    I.     Plaintiffs Have Standing to Sue the Rogers County Defendants and Have Also Stated Claims for Municipal Liability................................................7

          A.     The Rogers Sheriff Has Final Policymaking Authority with Respect to Engaging Aberdeen, Executing Warrants, and Detaining People Pursuant to Them. ............................................9

                    1.     Contracting with and Assisting Aberdeen ........................9

                    2.     Executing Warrants Known to Be Unlawful ...................11

                    3.     Detaining Debtors Who Cannot Afford to Pay for Their Release ..........................................................12

          B.     The Rogers Clerk Has Final Policymaking Authority with Respect to Referring Cases to Aberdeen and Seeking Unlawful Warrants.............13

    II.    Rogers County Is a Proper Party Defendant. ...........................................15

    III.    Plaintiffs' Claims for Injunctive Relief Are Not Moot. ..........................17

          A.     Plaintiffs Challenge Practices, Not Statutes, and There Has Been No Showing That Practices Have Changed. ................................17

          B.     Even if Rogers County Had Changed Its Practices, the Change Would Constitute Voluntary Cessation That Does Not Moot the Case..........................................................21

CONCLUSION...............................................................................23

BRIEF B

## **TABLE OF AUTHORITIES**

**Cases**

*Bearden v. Georgia*, 461 U.S. 660 (1983) ................................................................. 6

*Bishop v. United States ex rel. Holder*, 962 F. Supp. 2d 1252 (N.D. Okla. 2014) ...................... 17

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175 (10th Cir. 2010)................... 7, 8

*Brown v. Buhman*, 822 F.3d 1151 (10th Cir. 2016).......................................................... 22

*Burns v. State*, 220 P.2d 473 (Okla. Crim. App. 1950) ................................................ 12

*Camfield v. City of Oklahoma City*, 248 F.3d 1214 (10th Cir. 2001)........................................ 21

*Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174 (10th Cir. 2000) ............................................................................................................................. 21

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)........................................................... 8

*Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320 (11th Cir. 2004).......................... 21

*duBois v. Bd. of Cnty. Comm'rs of Mayes Cnty.*, No. 12-cv-677, 2014 WL 4810332 (N.D. Okla. Sept. 29, 2014) ........................................................................................................... 15, 16

*Fair Fight Action, Inc. v. Raffensperger*, 413 F. Supp. 3d 1251 (N.D. Ga. 2019) ...................... 20

*Flowers v. Garvin Cnty. Bd. of Cnty. Comm'rs*, No. 15-cv-396-C, 2016 WL 3079286 (W.D. Okla. May 3, 2016) .......................................................................................................... 17

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ................. 21

*Goss v. Bd. of Cnty. Comm'rs of Creek Cnty.*, No. 13-cv-374, 2014 WL 4983856 (N.D. Okla. Oct. 6, 2014) .................................................................................................................... 16

*Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500 (10th Cir. 2023) ................................ 1, 5, 17

*Hogan v. Okla. Dep't of Corr.*, 24 F. App'x 984 (10th Cir. 2002).......................................... 20

*Hollingsworth v. Hill*, 110 F.3d 733 (10th Cir. 1997) ...................................................... 10

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) .................................................... 13

*Knox v. SEIU*, 567 U.S. 298 (2012) .................................................................................. 21

*Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005) ............................................................. 16

*Lopez v. LeMaster*, 172 F.3d 756 (10th Cir. 1999) ........................................................ 12

*Malley v. Briggs*, 475 U.S. 335 (1986) ............................................................................ 11

*McCaskey v. State*, 781 P.2d 836 (Okla. Crim. App. 1989) ................................................. 6

*McMillian v. Monroe County*, 520 U.S. 781 (1997)............................................................ 8

*McNeil v. Cmty. Prob. Servs., LLC*, No. 1:18-cv-33, 2019 WL 633012 (M.D. Tenn. Feb. 14, 2019) ............................................................................................................................... 12

*Messerschmidt v. Millender*, 565 U.S. 535 (2012) ............................................................ 11

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652 (2019).............................. 17

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)............................................................ 8

*Mont v. United States*, 139 S. Ct. 1826 (2019) .................................................................. 6

*Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313 (10th Cir. 1998) ......................... 9

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656 (1993) ............................................................................................................................... 20

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007)...................... 21

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)....................................................... 8, 14

*Ratzlaff v. Bd. of Cnty. Comm'rs of Caddo Cnty.*, No. CIV-18-477-D, 2019 WL 544952 (W.D. Okla. Feb. 11, 2019) ......................................................................................................... 16

*Reid v. Hamby*, 124 F.3d 217, 1997 WL 537909 (10th Cir. 1997)............................................ 10

*Rembert v. Sheahan*, 62 F.3d 937 (7th Cir. 1995) ........................................................... 20

*Rodriguez v. Wagoner Cnty. Bd. of Cnty. Comm'rs*, No. 22-7011, 2023 WL 3830771 (10th

BRIEF B

Cir. June 6, 2023) ................................................................................................ 16

*S. Utah Wilderness All. v. Smith*, 110 F.3d 724 (10th Cir. 1997) ............................ 22

*See Smith v. United States*, 561 F.3d 1090 (10th Cir. 2009) .................................... 5

*Tilden v. State*, 306 P.3d 554 (Okla. Crim. App. 2013) .......................................... 6

*United States v. Leon*, 468 U.S. 897 (1984) ........................................................... 11

*Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207 (10th Cir. 2005) ........................ 21

**Statutes**

42 U.S.C. § 1983 ...................................................................................................... 7

Okla. Stat. tit. 12, § 29 ........................................................................................... 15

Okla. Stat. tit. 19, § 514 .................................................................................... 10, 12

Okla. Stat. tit. 19, § 514.4 ................................................................... 2, 9, 10, 19

Okla. Stat. tit. 19, § 514.5 ....................................................................................... 2

Okla. Stat. tit. 19, § 516 ......................................................................................... 10

Okla. Stat. tit. 21, § 1533 ....................................................................................... 15

Okla. Stat. tit. 22, § 983 ............................................................... 4, 17, 18, 19

**Rules**

Rule 8.4, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (Okla. R.
Crim. App. 8.4) ................................................................................................. 4, 6

**Legislative Materials**

2010 Okla. Sess. Law Serv. Ch. 87 (H.B. 3242) (West) ......................................... 9

2018 Okla. Sess. Law Serv. Ch. 128 (S.B. 689) (West) ......................................... 18

2023 Okla. Sess. Law Serv. Ch. 247 (H.B. 2259) (West) ....................................... 17

2023 Okla. Sess. Law Serv. Ch. 369 (S.B. 907) (West) ......................................... 17

BRIEF B

**INTRODUCTION**

The Court should deny the motion to dismiss of Defendants Scott Walton, Sheriff of Rogers County, and Kim Henry, former Court Clerk of Rogers County, in their official capacities ("Rogers Sheriff" and "Rogers Clerk," respectively), and the Board of County Commissioners of Rogers County (collectively, "Rogers County Defendants") (Doc. 406). The Rogers County Defendants have participated in a wide-ranging and unconstitutional scheme that has resulted in the extortion of money, issuance of invalid arrest warrants, and illegal arrest and detention of indigent court debtors, including Plaintiffs and putative class members. In their brief, the Rogers County Defendants mischaracterize the facts and attempt to shift to the state courts wholesale responsibility for this unlawful scheme in which they participate and, in many respects, control in their capacity as final policymakers for the county. They also contend that the Board is not a proper party to this lawsuit, and that recent changes in state law moot Plaintiffs' claims for injunctive relief. Their arguments are unavailing, and their motion should be denied.

**RELEVANT BACKGROUND[1]**

This lawsuit challenges an extortionate scheme in which a private debt-collection company called Aberdeen Enterprizes II, Inc. ("Aberdeen"), in concert with local officials, uses threats of arrest and actual incarceration to coerce indigent Oklahomans convicted of criminal and traffic offenses into paying fines, fees, and costs, without any court process, hearing, or inquiry into their ability to pay. Second Am. Compl. ("SAC"), Doc. 212, ¶¶ 1-2, 5, 9-11. The scheme has trapped indigent court debtors in repeated cycles of debt, poverty, arrest, jailing, and more debt. *Id.* ¶ 67.

---

[1] This section includes allegations relevant to Plaintiffs' claims against the Rogers County Defendants in their official capacities. For a summary of the allegations and claims against all Defendants, see *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 509-14 (10th Cir. 2023). This section also captures the Rogers County Defendants' practices as alleged in the Second Amended Complaint, before they stopped using Aberdeen to collect court debt. Doc. 342.

BRIEF B

The Rogers Clerk is responsible for collecting court debt in Rogers County. *Id.* ¶ 37. As part of that effort, she establishes payment plans that require people owing court debt to pay a minimum amount, regardless of ability to pay. *Id.* Minimum payments are regularly set at $75 per month. *Id.* ¶ 134. The Rogers Clerk seeks arrest warrants for debtors who fall behind on payments, or when she decides that a debtor has sought too many extensions of time to pay. *Id.* ¶ 136. She does so without providing notice to the debtor or inquiring into ability to pay—even in the face of evidence that the debtor cannot pay. *Id.* ¶¶ 37, 136-37. She then "submits a boilerplate, bare-bones debt-collection arrest warrant application to a Rogers County Judge, who signs it as a matter of course," even though "[n]one of the information is provided under oath or affirmation." *Id.* ¶ 136. These warrants are sought and issued "in the face of evidence . . . that the debtor lacks the ability to pay." *Id.* ¶ 137. The complaint alleges that the Rogers Clerk established these practices for seeking warrants. *Id.* ¶ 37.

Once a warrant is issued, the Rogers Clerk makes the decision to transfer the case to Aberdeen to take charge of collecting court debt. *Id.* ¶¶ 37, 57, 137. If the Rogers Clerk "uses [her] discretion to transfer the case to Aberdeen, Inc. for collection," she "adds an additional 30 percent penalty surcharge to the total debt owed." *Id.* ¶ 137. Once again, this is done without conducting an inquiry into the debtor's ability to pay. *Id.* ¶ 37. The surcharge is then used to pay Aberdeen and the Oklahoma Sheriffs' Association ("OSA"). *Id.* ¶¶ 5, 55-59; *see* Okla. Stat. tit. 19, § 514.5(A)-(B) (eff. Nov. 1, 2010).[2]

---

[2] An amended version of § 514.5—as well as § 514.4—went into effect on November 1, 2018, and yet another version is set to go into effect on November 1, 2023. Plaintiffs have attached a copy of the laws in effect at the time this suit was filed (the 2010 laws), as well as the laws that remain in effect until November 1, 2023 (the 2018 laws), as an exhibit to their first brief in opposition to Defendants' renewed motions to dismiss. *See* Br. A, Ex. 1. The forthcoming amendments to the statutes are contained in exhibits to numerous co-defendants' motions to dismiss. *See, e.g.*, Doc.

BRIEF B

After transferring a case to Aberdeen, the Rogers Clerk continues to play a role in the collection of court debt. Aberdeen sends "boilerplate requests to the Rogers Clerk when it seeks to recall or issue a debt-collection arrest warrant." SAC ¶ 138. "As a matter of course," the Clerk assists Aberdeen by forwarding these requests to the Rogers County Judge, who then "recalls and issues debt-collection arrest warrants at the direction of Aberdeen, Inc." *Id.* Once again, this is done without any pre-deprivation process or sworn statements establishing probable cause. *Id.*

The Rogers Sheriff is the final policymaker for all county law enforcement and jail-related decisions in Rogers County. *Id.* ¶ 32. He regularly arrests individuals pursuant to these debt-collection arrest warrants, knowing that there has been no inquiry into ability to pay or application made on sworn assertions of fact sufficient to justify arrest. *Id.* When a debtor is arrested on one of these warrants, she is brought to the Rogers County Jail and detained by the Rogers Sheriff. *Id.* ¶ 139. The Rogers Sheriff detains debtors on demand that they pay the total amount of court debts owed.[3] *Id.* If they can afford to pay, they are released. *Id.* If not, they stay in jail until a hearing occurs on the following Monday, Tuesday, Thursday, or Friday. *Id.* ¶¶ 139-40. After seeing a judge, the Rogers Sheriff keeps those who cannot afford to pay $100 in prison to "sit it out" at a rate of $25 per day. *Id.*

The Rogers Sheriff (along with the other Defendant Sheriffs) is also responsible for outsourcing the responsibility of collecting court debt to Aberdeen. He authorized OSA to act as his agent in entering into—and renewing—the Agreement with Aberdeen. *Id.* ¶¶ 29-30, 32. The Agreement delegates to Aberdeen the authority to determine when to request new arrest warrants

---

399-4 (Ex. 4 to Tulsa County's renewed motion to dismiss). With that said, § 514.5 has remained (and will continue to remain) largely the same since 2010.

[3] The amount, if paid, does not function as a bail bond; it is simply applied as a payment on the debt. *Id.*

BRIEF B

and when to request the recall of old ones. *Id.* ¶ 51. It empowers the sheriffs (and clerks) to decide when to transfer a case to Aberdeen, and requires the sheriffs to assist Aberdeen in its collection activities by providing "debtor information" to the company. *Id.* ¶¶ 57, 60, 283; *see also* SAC Ex. A, Doc. 212-1, at 3, 7-8.

The Board of County Commissioners of the County of Rogers ("the Board") is the governing body of Rogers County. *Id.* ¶ 39. Rogers County, through the Sheriff and Clerk, is responsible for establishing policy for the Rogers County jail and for the collection of court debt. *Id.*

Plaintiffs, on behalf of themselves and members of the putative class, assert claims against the Rogers County Defendants for: **(1)** seeking and executing debt-collection arrest warrants that are based solely on nonpayment, without inquiry into ability to pay, and unsworn allegations that contain material omissions, in violation of Plaintiffs' due process and equal protection rights under the Fourteenth Amendment (Count 2), their Fourth Amendment right to a warrant affidavit that supports probable cause (Count 3), and the liberty interests established by Oklahoma law[4] (Count 5); **(2)** detaining persons arrested on debt-collection arrest warrants because of their inability to pay, in violation of their due process and equal protection rights under the Fourteenth Amendment (Count 4) and the same state-created liberty interests (Count 5); **(3)** subjecting Plaintiffs to these onerous enforcement methods, including transfer to a private company that threatens and harasses them and a penalty surcharge solely because of Plaintiffs' inability to pay, in violation of equal protection under the Fourteenth Amendment (Count 7); and **(4)** delegating law enforcement

---

[4] *See* Okla. Stat. tit. 22, § 983; Rule 8.4, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (hereinafter Okla. R. Crim. App. 8.4).

BRIEF B

authority to Aberdeen despite a financial conflict of interest, in violation of due process under the Fourteenth Amendment (Count 6).[5] SAC ¶¶ 318-62.

## <u>ROGERS COUNTY'S MISCHARACTERIZATIONS</u>

As documented in the Second Amended Complaint, the Rogers Clerk submits applications for nonpayment arrest warrants that omit the crucial information that a debtor cannot afford to pay, transfers cases to Aberdeen, and seeks warrants at Aberdeen's request. SAC ¶¶ 136-37. The Rogers Sheriff executes these debt-collection arrest warrants and holds debtors in jail when they cannot afford to pay a predetermined dollar amount, while releasing those who pay. *Id.* ¶ 139. Yet in their introductory paragraphs, these Defendants attempt to downplay their serial warrant-seeking, arrest, and incarceration of indigent court debtors who lack the ability to pay by characterizing their "bench warrant[s]" as merely a means to "compel the attendance of persons who have disobeyed an order of the court." Doc. 406 at 7. This is a cynical euphemism, and it contradicts the allegations in the complaint, which must be taken as true at the motion-to-dismiss stage. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The warrants sought and enforced by the Rogers County Defendants, both at their own discretion and at the behest of Aberdeen, whether they are labeled "bench warrants" or otherwise, do not function as summonses. They are "arrest warrants." *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 509 (10th Cir. 2023). And when the Rogers Sheriff arrests a debtor based on one of these warrants, he keeps that debtor in jail, sometimes for days, if she cannot afford to pay the preset dollar amount. SAC ¶¶ 139-40. Even short jail stays can have devastating consequences for indigent arrestees, including loss of employment, removal from housing, and inability to arrange care for children. *Id.* ¶ 99.

---

[5] Count 6 is asserted only against the Rogers Sheriff in his official capacity.

BRIEF B

Nor, as these Defendants propose, are these warrants mandated under state law. In fact, state law does not even *permit* the arrests for nonpayment that the Rogers County Sheriff routinely makes pursuant to these warrants. Rule 8.4 of the Oklahoma Court of Criminal Appeals requires that court debtors who have missed payments "be given an opportunity to be heard" and may only be incarcerated if they fail to provide a satisfactory explanation as to the reasons for nonpayment "at [a] hearing on failure to pay." This means—and in light of *Bearden v. Georgia*, 461 U.S. 660 (1983) must mean—that debtors must receive process *prior* to arrest. The Rogers County Defendants omit this crucial mandatory step, seeking and enforcing arrest warrants prior to any opportunity to be heard. *See* SAC ¶¶ 136-39. In other words, the Rogers County Defendants turn the Rule 8 process on its head—they routinely arrest and imprison indigent debtors without any inquiry into ability to pay and before any court could possibly assess that ability.[6]

The state law-mandated procedure, which tracks the constitutional requirements of *Bearden*, belies the Rogers County Defendants' suggestion that indigency should be raised only after the debtor's arrest and imprisonment in the form of an affirmative defense. *See* Doc. 406 at 7. The state court cases cited by the Rogers County Defendants do not support this end-run around Rule 8.4. *Tilden v. State*, 306 P.3d 554, 556 (Okla. Crim. App. 2013), and *McCaskey v. State*, 781 P.2d 836, 837 (Okla. Crim. App. 1989), simply hold that at a hearing regarding probation revocation for nonpayment of fines, a debtor who claims inability to pay at a hearing must present evidence of the same, not that she may be arrested and jailed before any hearing occurs.

---

[6] In their individual-capacity briefs, the Rogers Clerk and Sheriff attempt to distinguish *Bearden* on the ground that the warrants here do not impose a "term of imprisonment." Doc. 402 at 12; Doc. 408 at 12. The notion that there is some constitutional distinction between being jailed before or after a hearing, such that only the latter constitutes "imprisonment," is simply wrong, both as a matter of law and common sense. *See Mont v. United States*, 139 S. Ct. 1826, 1832 (2019) (explaining that the term "imprison" "encompass[es] pretrial detention"); *see also* SAC ¶ 140 (alleging that debtors can remain in jail for days before seeing a judge).

6

BRIEF B

Defendants' attempts to use state law as a smokescreen to justify their unconstitutional scheme rely on wholesale mischaracterization, as state law equally forbids the arrest and incarceration of indigent debtors prior to a hearing on ability to pay.

## ARGUMENT

I.   **Plaintiffs Have Standing to Sue the Rogers County Defendants and Have Also Stated Claims for Municipal Liability.**

The Rogers County Defendants argue that Plaintiffs lack standing to sue them. Doc. 406 at 11. In particular, they maintain that Plaintiffs are attempting to hold them responsible for the actions of third parties and thus cannot satisfy the "fairly traceable" element of Article III standing analysis. *Id.* They further argue that Plaintiffs cannot establish *Monell* liability under § 1983 because they have not alleged a policy and custom of Rogers County that violated or was the moving force behind a violation of their constitutional rights. *Id.* at 13-17.[7] Because these arguments largely overlap and are wrong for mostly the same reasons, Plaintiffs address them together.

Municipal liability under § 1983 attaches where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) (quoting *Pembaur v. City of*

---

[7] The Rogers County Defendants also argue that there is no underlying constitutional violation for the reasons stated in their individual-capacity motions to dismiss—namely, that Plaintiffs Graff and Holmes have not been arrested, and thus "the principles enunciated in *Bearden* have not been violated." Doc. 406 at 13. Accordingly, Plaintiffs incorporate their responses to those motions here. *See* Br. C, Section III.A (Clerk); Br. D, Section III.A (Sheriff). In brief, the mere existence of the unconstitutionally-sought and -issued warrants give rise to an injury that is clearly prohibited by *Bearden*. But even if Plaintiffs were not injured by the warrants themselves, these warrants have been executed and used to detain members of the putative class under nearly identical circumstances, and also pose a risk of future injury that Plaintiffs seek to remedy with prospective relief. And, in any event, not all of Plaintiffs' claims revolve around the execution of warrants.

BRIEF B

*Cincinnati*, 475 U.S. 469, 483-84 (1986)); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Such liability "may be based on a formal regulation or policy statement, or it may be based on an informal 'custom' so long as this custom amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Brammer-Hoelter*, 602 F.3d at 1189 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Whether the final policy is carried out on behalf of the state or on behalf of a county or other political subdivision is a question of state law. *See McMillian v. Monroe County*, 520 U.S. 781, 787 (1997).

It simply is not true that the Rogers County Defendants "had no role in Aberdeen's collection efforts and were not responsible for any policies related to alleged onerous collection enforcement methods." Doc. 406 at 17 (internal quotation marks omitted). First, the Rogers Clerk is a county agent. As a matter of practice, the Clerk determines when to request warrants in the first instance, chooses which cases to refer to Aberdeen, and then, in administering that referral, assists Aberdeen in seeking new arrest warrants. Similarly, the Rogers Sheriff acts as a county official with final policymaking authority in carrying out the practices challenged in the complaint—i.e., contracting with and assisting Aberdeen, executing warrants, and detaining people pursuant to those warrants. In short, the policies and practices of the Rogers County Defendants that Plaintiffs challenge in this lawsuit *are* "county practices" because the county sheriffs and court clerks are final policymakers under *Monell*.[8] Each of their official actions on

---

[8] Because the Rogers Clerk and Rogers Sheriff are final policymakers for the county, and do not act for the state, they are not entitled to Eleventh Amendment immunity on Plaintiffs' damages claims. To the extent Rogers County raises an Eleventh Amendment argument by adopting the arguments made by Tulsa County, *see* Doc. 406 at 16 n.6, Plaintiffs incorporate their response to the same. *See* Br. M, Section II.

BRIEF B

behalf of the county also constitutes a moving force behind the resulting violations, cementing Plaintiffs' standing to challenge them. Plaintiffs will address each policy in turn.

> **A.      The Rogers Sheriff Has Final Policymaking Authority with Respect to Engaging Aberdeen, Executing Warrants, and Detaining People Pursuant to Them.**

> 1.      Contracting with and Assisting Aberdeen

Sheriffs are county actors with final policymaking authority over "law enforcement activities" in each of their counties. *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1319 (10th Cir. 1998). Oklahoma law confirms that the decision to hire Aberdeen falls within the scope of the Rogers Sheriff's final policymaking authority. The law under which each Defendant Sheriff contracted with Aberdeen provided that "the county sheriffs" "*may*" contract with a private debt collector to allow the debt collector "to attempt to *locate and notify persons* of their outstanding misdemeanor or failure-to-pay warrants." *See* Okla. Stat. tit. 19, § 514.4(A) (eff. Nov. 1, 2010) (emphasis added).[9] Indeed, the description of that legislation was "[a]n Act relating *to counties and county officers* . . . which relate to outstanding warrants . . . ." 2010 Okla. Sess. Law Serv. Ch. 87 (H.B. 3242) (West) (emphasis added). The Rogers County Sheriff, moreover, had authority at the time this lawsuit was filed to decide whether to enter into the contract himself or to designate OSA as its agent to do so. Okla. Stat. tit. 19, § 514.4(E) (eff. Nov. 1, 2010). Thus, "locat[ing] and notify[ing]" people of warrants is a law enforcement activity within the domain of a county sheriff, as is determining the most effective way to do so. Rather than handling that responsibility in-house with his own employees or contracting directly with a private company,

---

[9] As mentioned *supra* in note 2, Plaintiffs have attached a copy of § 514.4 as it existed at the time this suit was filed. *See* Br. A, Ex. 1. The 2018 and 2023 revisions maintain county sheriffs' final policymaking authority, but now only provide the option to contract with OSA as a go-between instead of directly with a debt collector.

9

BRIEF B

the Rogers Sheriff designated OSA as his agent to contract with a private debt collector. When the Rogers Sheriff exercised his discretion under this statutory provision to permit OSA to hire Aberdeen and then to reauthorize that decision, year after year, he did so as a county officer and as the officer with final policymaking authority.

The Tenth Circuit has found that sheriffs are final policymakers with respect to "the service and execution of orders issued by Oklahoma courts" on the basis of laws that give sheriffs the "duty . . . to keep and preserve the peace of their respective counties," Okla. Stat. tit. 19, § 516(A), and that task the sheriffs with responsibility to "serve and execute, according to law, all process . . . and . . . attend upon the several courts of record held in his county," Okla. Stat. tit. 19, § 514. *See Hollingsworth v. Hill*, 110 F.3d 733, 743 (10th Cir. 1997); *Reid v. Hamby*, 124 F.3d 217, 1997 WL 537909, at *5 & n.1 (10th Cir. 1997) (unpublished). The Rogers County Sheriff is also the county actor and final policymaker for the decision of whether (and previously, with whom) to contract in their specific county to perform these activities for the collection of court debt under Okla. Stat. tit. 19, § 514.4(A). Tellingly, the provision that vests the sheriffs with authority to decide whether to contract with an entity such as Aberdeen is part of the same chapter of Oklahoma law as these other provisions that courts have determined constitute county functions.

Moreover, under the terms of the contract that he authorized as county policymaker, the Rogers County Sheriff is required to assist Aberdeen in its collection activities. *See* SAC ¶ 283 (requiring sheriffs to "provide debtor information"); *id.* (sheriffs and court clerks are granted "sole discretion" to choose cases to transfer to Aberdeen). Any assistance provided to the company is attributable to the contract authorized by the Rogers County Sheriff, who made the decision for Rogers County. There is plainly a causal link between repeatedly entering into a contract that

10

created an impermissible financial bias on its face and the harms that Plaintiffs experienced *because of* the contract.

2.      Executing Warrants Known to Be Unlawful

The Rogers Sheriff is also the final policymaker with respect to the decision to execute the debt-collection arrest warrants in this case. Plaintiffs have pled that, in addition to contracting with and assisting Aberdeen, the Rogers Sheriff executes debt-collection arrest warrants he knows to be unlawful. As the Second Amended Complaint alleges, "courts routinely issue" the nonpayment arrest warrants Aberdeen requests, "without any inquiry into or knowledge of whether the person had the means to pay." SAC ¶ 92. The courts "issue the debt-collection arrest warrants Aberdeen, Inc. seeks, even though the warrants are predicated on nothing more than Aberdeen, Inc.'s unsworn factual allegation that a debtor has not made payments." *Id.* ¶ 64. Defendant Sheriffs, including the Rogers Sheriff, thereafter "execute the illegal arrest warrants and detain debtors based solely on the unsworn allegations of nonpayment." *Id.* ¶ 65. Critically, Plaintiffs allege that Defendant Sheriffs do this *with full knowledge of Aberdeen's unlawful collection practices and the unconstitutionality of the warrants. Id.* ¶¶ 65, 81.

To be clear, although the courts issue these warrants, the Rogers Sheriff makes the deliberate choice to enforce them. Longstanding Supreme Court precedent establishes that officers may be held liable for enforcing warrants when they lack a reasonable belief the warrants are lawful. *See generally United States v. Leon*, 468 U.S. 897, 923 (1984); *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986); *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012).[10] Here, it is alleged that the Rogers Sheriff not only lacks a reasonable belief, but that he executes warrants with *full*

---

[10] Functionally, this is no different than a warrantless arrest, and a sheriff, of course, does not act as an arm of the state courts in carrying out such arrests.

BRIEF B

*knowledge* of Aberdeen's unlawful practices and that the warrants are issued on nothing more than unsworn allegations of nonpayment. SAC ¶¶ 65, 81. This aligns with state law, which only requires Sheriffs to exercise warrants "according to law." Okla. Stat. tit. 19, § 514. There is simply no duty for Sheriffs to enforce court orders they know to be deficient, even if issued by a lawful authority. For example, in *Burns v. State*, 220 P.2d 473 (Okla. Crim. App. 1950), the Criminal Court of Appeals of Oklahoma found that a warrant issued by a judge was nonetheless invalid because the person who verified the affidavit did so "in no official capacity," creating a risk of false statements. *Id.* at 475-76.

Here, Plaintiffs allege that magistrates have abandoned their judicial role by rubber-stamping warrants at Aberdeen's request, and that the warrants themselves lack any indicia of probable cause whatsoever. No reasonable officer could rely on warrants like the one whose sole basis in the record is "DID NOT PAY ABERDEEN." *Cf.* SAC ¶ 207 (citing example from Tulsa). The Rogers Sheriff cannot claim that the mere existence of warrants they know to be illegal and invalid rendered them wholly without discretion. The decision to enforce unconstitutional warrants accordingly fell within the Roger Sheriff's discretion, was not mandated—or even permitted—by law, and is the moving force behind the constitutional harms Plaintiffs suffered. The County is liable under *Monell*.

3.    Detaining Debtors Who Cannot Afford to Pay for Their Release

The Rogers Sheriff likewise bears final policymaking authority for detaining debtors after they are arrested. The Rogers Sheriff is the final policymaker with respect to the jail where he holds individuals arrested on debt-collection warrants. *See Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999); *see also McNeil v. Cmty. Prob. Servs., LLC*, No. 1:18-cv-33, 2019 WL 633012, at *15 (M.D. Tenn. Feb. 14, 2019) ("The custom or policy Plaintiffs challenge . . . is the practice of the Sheriff in *detaining* misdemeanor probation arrestees who cannot satisfy the secured bail

12

amount written on the arrest warrant. As the official in charge of the operation of the county jail, the Sheriff effectuates the detention of these indigent misdemeanor probation arrestees."), *aff'd*, 945 F.3d 991 (6th Cir. 2019). Further, the arrestees end up in that jail only because of practices (just described) that fall within the policymaking authority of the Rogers Sheriff. The requirement that there be a cash payment in exchange for release takes hold only after material information has been omitted in a request to the judge for a warrant for arrest. It, too, is not lawful, and for the reasons already stated, the Rogers Sheriff is not obligated to execute it.

**B.      The Rogers Clerk Has Final Policymaking Authority with Respect to Referring Cases to Aberdeen and Seeking Unlawful Warrants.**

Plaintiffs have also sufficiently alleged that the Rogers Clerk has established unlawful practices that are attributable to Rogers County, not the State of Oklahoma.

When considering whether a municipal entity has final policymaking authority for its actions, courts not only consider "state and local positive law," but also "custom or usage having the force of law." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal quotation marks omitted), *superseded by statute on other grounds*, 42 U.S.C. § 1981(c). As explained above, the Rogers Sheriff made the decision to engage Aberdeen as an exercise of his policymaking authority. The contract with Aberdeen, in turn, vests the Clerk and Sheriff with the "sole discretion" to choose which cases to refer to Aberdeen. SAC Ex. A at 4. Plaintiffs have further alleged that, by custom and practice in Rogers County, the Clerk exercises the authority—without any involvement from the court—to "choose[]" which cases to refer to Aberdeen. SAC ¶¶ 37; *see also id.* ¶¶ 136-37 ("After three months of nonpayment, or if the debtor seeks too many extensions of time to pay (*as determined at the discretion of the Rogers Clerk*)," the Rogers Clerk submits a "warrant application" and the debt is sent to Aberdeen (emphasis added)). When the Rogers Clerk seeks a debt collection arrest warrant, the Clerk does not provide any information to the court about

BRIEF B

the debtor's ability to pay and "routinely seeks debt-collection arrest warrants in the face of evidence . . . that the debtor lacks the ability to pay." *Id.* ¶¶ 136-137. Rogers County cannot plausibly argue that the courts are responsible for the Clerk's policy of deceiving the courts by withholding information relevant to the warrant process. Once a case is referred, the Clerk has an established practice of seeking warrants on Aberdeen's behalf. *Id.* ¶ 138. Because the Rogers Clerk has final decision-making authority over these processes—referral and warrant requests—as a result of custom or usage, the County is liable for the Clerk's "deliberate choice to follow a course of action" that "is made from among various alternatives." *Pembaur*, 475 U.S. at 483.

Contrary to Rogers County's argument, this is not an area in which the Clerk is subject to the supervision of Oklahoma judges. Doc. 406 at 16. It was the decision of the Sheriff, not the Oklahoma courts, to engage Aberdeen. The Clerk's settled roles in facilitating Aberdeen's work stems from that decision, which is squarely within the province of a county policymaker. Therefore, the custom and usage under which the Clerk refers cases and assists Aberdeen is a county policy as well.

That the Chief Justice of the Oklahoma Supreme Court directed district courts to participate in the misdemeanor or failure-to-pay warrant collection program also does not undermine the Clerk's final policymaking authority. *See id.* at 16. First, that order is directed specifically at the courts themselves, and not at the Clerk. It therefore cannot explain or excuse the Clerk's actions. Second, nothing in that order or the orders from the individual district courts instructs the Clerk on when or how to refer individual cases to Aberdeen. As noted, that authority could only come from the contract in the first instance and has only taken hold through settled custom and usage not attributable to the Oklahoma courts.

BRIEF B

Finally, any suggestion that the Rogers Clerk is compelled by law to simply transmit Aberdeen's patently unlawful warrant requests to a judge is contradicted by Oklahoma law. *Id.* at 16-17. The Clerk may "refuse to file any document presented for filing if the clerk believes that the document constitutes sham legal process as defined by [Okla. Stat. tit. 21, § 1533]." Okla. Stat. tit. 12, § 29. Sham legal process is broadly defined and includes the "issuance, display, delivery, distribution, reliance on as lawful authority, or other use of an instrument that is not lawfully issued . . . and [that] purports to" be an arrest warrant or other court order, require the arrest of any person, or "assert jurisdiction or authority over" the rights or privileges of any person or property. Okla. Stat. tit. 21, § 1533(H)(1). The term "lawfully issued" is defined to mean "in accordance with the applicable statutes, rules, regulations, and ordinances of the United States, a state, or a political subdivision of a state." *Id.* § 1533(H)(2). In this case, the arrest warrants sought by Aberdeen and processed by the Clerk were not lawfully issued and thus constitute sham legal process. This is particularly evident in that the warrant applications lack oath or affirmation or any hint of a basis for probable cause. Nevertheless, the Clerk did not refuse to participate in their execution, and may be liable for their transmission.

## II.    Rogers County Is a Proper Party Defendant.

The Rogers County Board of Commissioners argues that it cannot be sued by Plaintiffs because it is not a "proper party." Doc. 406 at 12. It argues that the Sheriff and Court Clerk alone are responsible for the alleged activities imputed to the County, and because they are already named as defendants, any claims against the Board are "unnecessary and superfluous." *Id.*

To the extent the Board contends that it is not a proper defendant to this action because it is distinct from the independently elected officers sued in their official capacities, the Board is mistaken. This argument was exhaustively examined and rejected in *duBois v. Board of County Commissioners of Mayes County*, No. 12-cv-677, 2014 WL 4810332 (N.D. Okla. Sept. 29, 2014).

15

BRIEF B

There, the district court explained that because Tenth Circuit and Supreme Court precedent "plainly establish that a policy of a county sheriff in his final policymaking capacity *is a county policy*," and because "a 'county' is sued in the name of its board of county commissioners" under Oklahoma law, the Board is a "proper party." *Id.* at *7-8; *see also Rodriguez v. Wagoner Cnty. Bd. of Cnty. Comm'rs*, No. 22-7011, 2023 WL 3830771, at *5 (10th Cir. June 6, 2023) (describing "claims against the Board of County Commissioners and the sheriff in his official capacity" as claims "effectively asserted against the county itself").[11] Here, Plaintiffs have clearly challenged policies and practices of the Rogers County Sheriff and Clerk, *see, e.g.*, SAC ¶¶ 32, 37, and these policies and practices are imputed to the county, *see supra* Section I. Thus, just as in *duBois*, the Board is a proper party in this case.

To the extent the Board concedes that it may be a proper party, but still seeks dismissal of the claims against it as "unnecessary or superfluous," Doc. 406 at 12,[12] Plaintiffs are "the master of [their] complaint," *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005), and are free to pursue claims against both the County and its officials at the motion-to-dismiss stage. *See, e.g.*, *Ratzlaff v. Bd. of Cnty. Comm'rs of Caddo Cnty.*, No. CIV-18-477-D, 2019 WL 544952, at *2-4 (W.D. Okla. Feb. 11, 2019) (denying Board's motion to dismiss even where county sheriff remained a defendant in his official capacity); *Flowers v. Garvin Cnty. Bd. of Cnty. Comm'rs*, No. 15-cv-396-

---

[11] The sole district court case cited by Defendants—*Goss v. Board of County Commissioners of Creek County*, No. 13-cv-374, 2014 WL 4983856 (N.D. Okla. Oct. 6, 2014)—was decided prior to *duBois*. Since *duBois*, district courts in this state have adopted its reasoning and declined to adopt the ruling from *Goss*. *See* Doc. 268 at 13 (collecting cases).

[12] *See also* Doc. 292 at 7 (characterizing these claims as "redundant" in reply in support of prior motion to dismiss, and requesting that "the Court dismiss the official capacity claims against the Sheriff and Clerk *or* dismiss the claims against the Board").

BRIEF B

C, 2016 WL 3079286, at *5 & n.8 (W.D. Okla. May 3, 2016) (same), *report & recommendation adopted*, 2016 WL 3080922 (W.D. Okla. May 31, 2016).

## III.   Plaintiffs' Claims for Injunctive Relief Are Not Moot.

Rogers County argues that this case is moot because while the appeal in this case was pending, "the Oklahoma Legislature adopted substantial amendments to the statutes that govern collection" of court debts. Doc. 406 at 19. The only statute that Rogers County references is Okla. Stat. tit. 22, § 983 ("Section 983"), which was substantially amended. The revised version is set to take effect on November 1, 2023.[13] A court "may dismiss . . . for [mootness] only if it is impossible for a court to grant [plaintiffs] any effectual relief."[14] *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019) (internal quotation marks omitted). That demanding standard is not met here, *id.*, for two distinct but related reasons.

### A.   Plaintiffs Challenge Practices, Not Statutes, and There Has Been No Showing That Practices Have Changed.

First and foremost, Plaintiffs challenge *practices*, not any statute or rule. *See, e.g.*, SAC pp. 98-100; *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 517 (10th Cir. 2023) ("every one of

---

[13] The legislature originally passed reforms in 2022 to take effect on July 1, 2023, which the Tenth Circuit referenced in its opinion. Those amendments were repealed on an emergency basis before they took effect, leaving the previous version from 2018 in place, as it is today. *See* 2023 Okla. Sess. Law Serv. Ch. 369 (S.B. 907) (West). New reforms were passed in 2023, which are set to take effect on November 1, 2023. The forthcoming changes are set out in H.B. 2259, which is attached as an exhibit to Tulsa County's motion to dismiss (Doc. 399-4). *See supra* note 2; *see also* 2023 Okla. Sess. Law Serv. Ch. 247. Although Rogers County mentions the now-repealed reforms in passing, *see* Doc. 406 at 10, 20, the H.B. 2259 amendments set to take effect on November 1, 2023 are the only relevant consideration for mootness. And it remains to be seen whether these amendments, like the previous ones, will be repealed before they ever take effect.

[14] "[U]nlike claims for declaratory or injunctive relief, claims for damages are not mooted by subsequent events." *Bishop v. United States ex rel. Holder*, 962 F. Supp. 2d 1252, 1271 (N.D. Okla. 2014) (Kern, J.). Plaintiffs bring six claims against Rogers County (Counts 2-7). Each seeks damages and injunctive relief. Even if Rogers County were correct that Plaintiffs' equitable claims are moot, the damages portion of the complaint would not be disturbed.

BRIEF B

the ten claims set out in the [SAC] challenges debt-collection practices commenced after Plaintiffs are convicted and sentenced"). Although the Rogers County Defendants specify language in the new statute that would prohibit their alleged misconduct, Plaintiffs have consistently alleged that their practices have not complied with that statute at any time, notwithstanding the forthcoming revisions. Even before the recent amendments were passed, state law was clear: a court debtor could only be imprisoned for nonpayment if "the trial court finds after notice and a hearing that the defendant is financially able but refuses or neglects to pay." Okla. Stat. tit. 22, § 983(A) (eff. Nov. 1, 2018);[15] *see also id.* (a jail sentence for nonpayment may only be imposed "after a hearing and a judicial determination . . . that the defendant is able to satisfy the fine, cost, fee, or assessment by payment, but refuses or neglects to do so."); SAC ¶¶ 43-46 (noting that "Oklahoma's statutory scheme provides protections" intended to ensure constitutional requirements are followed, but alleging that "the collapse of these protections" has led to the challenged practices).

Pursuant to the allegations, the Rogers County Defendants as well as other Defendants "routinely ignore constitutional *and statutory* requirements in a concerted effort to extract as much money as possible from indigent people." SAC ¶ 49 (emphasis added). They do so by, among other things, seeking arrest warrants for the collection of court debt without providing notice "in the face of evidence. . . that the debtor lacks the ability to pay," and then, once a warrant is issued on the basis of a misleading application, transferring the case to Aberdeen and adding a 30 percent surcharge to the amount owed. *Id.* ¶ 137. These allegations present facts that at the time of filing,

---

[15] Plaintiffs have attached a copy of Section 983 that will remain in effect until November 1, 2023, as an exhibit to their first brief in opposition to Defendants' renewed motions to dismiss. *See* Br. A, Ex. 2. Although this version of the law went into effect after Plaintiffs filed this lawsuit, the prior version was identical in all relevant respects. *See* 2018 Okla. Sess. Law Serv. Ch. 128 (S.B. 689) (West).

BRIEF B

the Rogers County Defendants violated Section 983's command that imprisonment only be based on notice, hearing, and a finding of ability to pay, just as the alleged facts would violate the provisions of the revised Section 983 when it takes effect.

Rogers County's claim-by-claim recitation of how the revised law results in mootness also reveals practices that the new law allows to continue. For example, it concedes Plaintiffs request an order prohibiting Defendants from using debt-collection companies with a financial conflict of interest. Doc. 406 at 25. This conduct, challenged in Count 6 of the complaint, remains permitted by the revised statute. *Compare* Okla. Stat. tit. 19, § 514.4(A) (eff. Nov. 1, 2018) (authorizing county sheriffs to "contract with a statewide association of county sheriffs to administer contracts with third parties" for debt collection activities), *with* Okla. Stat. tit. 19, § 514.4(A) (eff. Jul. 1, 2023) (renaming contractors "court cost compliance liaisons" but otherwise maintaining the program). Rogers County vaguely argues that the request is moot "insofar as the conduct of the third-party is regulated by the amended statute," Doc. 406 at 25, but does not explain how this is the case, or why conduct regulations would moot a conflict-of-interest due process claim. The same is true for Plaintiffs' request for an injunction prohibiting the imposition of more onerous collection methods on indigent debtors, and prohibiting the collection of the 30 percent surcharge when a case is transferred to Aberdeen.

Notably, both the old and new versions of Section 983 instruct the Oklahoma Court of Criminal Appeals to implement "procedures" and "rules" deriving from Section 983. *Compare* Okla. Stat. tit. 22, § 983(D) (eff. Nov. 1, 2018), *with* Okla. Stat. tit. 22, § 983(L) (eff. Nov. 1, 2023). Those have been codified as Section VIII of the Rules of the Oklahoma Court of Criminal Appeals (widely known as "Rule 8"), and have yet to be amended based on the upcoming revisions to Section 983. Rule 8, from the beginning of this litigation until today, has prohibited the arrest

BRIEF B

of a person who misses a payment without a hearing and inquiry into ability to pay, which is at the heart of Rogers County's conduct that Plaintiffs challenge.

Hence, the question of the lawfulness of the challenged practices under state law has not changed with the amendments to Section 983. The introduction of the new statute simply cannot by itself moot this case because it has been alleged from the beginning that the applicable Oklahoma laws have not operated to constrain the Rogers County Defendants from failing to comply with constitutional requirements. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (change of law did not moot case where new law did not eliminate the possibility of continuing wrongful conduct). Rogers County, in other words, cannot point to a change in *statutes or rules* when the relevant inquiry is whether they have changed their *practices. See, e.g.*, *Fair Fight Action, Inc. v. Raffensperger*, 413 F. Supp. 3d 1251, 1272-76 (N.D. Ga. 2019) (claim not moot from change in state law where defendants had not shown compliance with amended law); *Rembert v. Sheahan*, 62 F.3d 937, 942 (7th Cir. 1995) (following change of law, the "district court must determine what the Sheriff's actual . . . practices are in order to assess whether [plaintiffs'] case is moot."). Notably, at no point do the Rogers County Defendants argue that they are actually complying with the statute, or at any point intend to comply with the amended statute.[16] For that reason alone, Plaintiffs' claims cannot be mooted at this stage of the case.

---

[16] If they were to so argue, it would constitute a factual dispute inappropriate for resolution at this stage of the case. *Hogan v. Okla. Dep't of Corr.*, 24 F. App'x 984, 985 (10th Cir. 2002) (a court does not resolve factual disputes at the motion-to-dismiss stage). And in any event, as discussed below, Defendants' compliance with the statute would constitute voluntary cessation.

BRIEF B

### B.    Even if Rogers County Had Changed Its Practices, the Change Would Constitute Voluntary Cessation That Does Not Moot the Case.

Second, even if evidence showed Rogers County had changed its practices in response to the law, under the voluntary-cessation doctrine a defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Rogers County cannot meet that burden because it continues to "vigorously defend[] the constitutionality" of the challenged practices. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007). Thus, "it is not clear [that Rogers County] would necessarily refrain from" reverting to its unconstitutional conduct. *Knox v. SEIU*, 567 U.S. 298, 307 (2012). And although repeal of a challenged statute may satisfy the voluntary-cessation standard, *see, e.g.*, *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1329 (11th Cir. 2004), Plaintiffs here, again, do not challenge Oklahoma's statutory system or court rules; they challenge Rogers County's practices that are alleged to *defy* those rules.

For that exact reason, each of the cases cited by Rogers County is inapposite. In *Camfield v. City of Oklahoma City*, 248 F.3d 1214 (10th Cir. 2001), the plaintiff brought several challenges, including a constitutional challenge to a statute. The statute was subsequently revised by the state legislature. Notably, the Tenth Circuit found that the revisions only mooted the plaintiff's challenge to the statute itself, applying the rule that "parties have no legally cognizable interest in the constitutional validity of an obsolete statute." *Id.* at 1223 (quoting *Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000)). The same is true of *Wyoming v. U.S. Department of Agriculture*, 414 F.3d 1207, 1212 (10th Cir. 2005) (challenge to validity of regulation mooted by repeal of regulation). Here, Plaintiffs have do not challenge the constitutional validity of Section 983, in any of its iterations.

21

BRIEF B

*Brown v. Buhman*, 822 F.3d 1151 (10th Cir. 2016) is even further afield. There, the plaintiffs challenged the constitutionality of a statute which was *not* amended, but the prosecutor adopted a written policy promising not to enforce it in the relevant circumstances, which the Tenth Circuit found after presentation of evidence (including testimony under oath by the prosecutor) to overcome voluntary cessation scrutiny and render the case moot. *Id.* at 1158. Here, no statute was challenged, no evidence of changed policies has been presented, and Defendants have made no promises to desist their challenged conduct. Indeed, whether the conduct has actually stopped, and whether it is likely to recur, are evidentiary questions that remain unanswered.

Plaintiffs laud the Oklahoma legislature for its efforts to remedy some of the ills underlying this lawsuit. But as a legal matter, the question is whether "circumstances [have] changed since the beginning of litigation that forestall any occasion for meaningful relief." *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997). Here, for most of Plaintiffs' claims,[17] the answer is simple: we do not know. We do not know because the challenges are not to any statutory mandate or regime, nor to Defendants' course of action following amendments to the statutory mandate, but instead to Defendants' practices that occur *in spite of* the laws that they should have been following all along. Now that the statutes are set to change as a result of this lawsuit, it is possible that Rogers County will change their ways and begin to comply with state law. But it is equally possible that they will not. Here, whether any of the affected forward-looking claims are moot is a question of fact which can only be answered in the discovery process, and even then, would require Defendants to carry a heavy burden to show they will not return to their old ways. At this stage of the case, mootness has not been established.

---

[17] Count 4 is not addressed by the updated statute, and the conduct challenged in Counts 6 and 7 remains authorized by law.

BRIEF B

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Rogers County Defendants' motion

to dismiss.


Dated: August 10, 2023                              Respectfully submitted,

                                                    /s/ *Daniel E. Smolen*
                                                    Daniel Smolen, OBA #19943
                                                    Robert M. Blakemore, OBA #18656
                                                    Smolen & Roytman
                                                    701 South Cincinnati Avenue
                                                    Tulsa, OK 74119
                                                    Tel: 918-585-2667
                                                    Fax: 918-585-2669

                                                    /s/ *Ryan Downer*
                                                    Ryan Downer (admitted *pro hac vice*)
                                                    D.C. Bar No. 1013470
                                                    Katherine Hubbard (admitted *pro hac vice*)
                                                    D.C. Bar No. 1500503
                                                    Marco Lopez (admitted *pro hac vice*)
                                                    D.C. Bar No. 888324793
                                                    Leonard J. Laurenceau (admitted *pro hac vice*)
                                                    D.C. Bar No. 90007729
                                                    Ellora Thadaney Israni (admitted *pro hac vice*)
                                                    D.C. Bar No. 1740904
                                                    Civil Rights Corps
                                                    1601 Connecticut Ave. NW, Suite 800
                                                    Washington, D.C. 20009
                                                    Tel.: 202-844-4975
                                                    ryan@civilrightscorps.org
                                                    katherine@civilrightscorps.org
                                                    marco@civilrightscorps.org
                                                    leo@civilrightscorps.org
                                                    ellora@civilrightscorps.org

                                                    /s/ *Seth Wayne*
                                                    Seth Wayne (admitted *pro hac vice*)
                                                    D.C. Bar No. 888273445
                                                    Shelby Calambokidis (admitted *pro hac vice*)
                                                    D.C. Bar No. 1684804
                                                    Mary B. McCord (admitted *pro hac vice*)
                                                    D.C. Bar No. 427563
                                                    Institute for Constitutional Advocacy and Protection

BRIEF B

Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu
mbm7@georgetown.edu

*Attorneys for the Plaintiffs*

24

BRIEF B

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of August, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

*/s/ Seth Wayne*

BRIEF B