**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **CARLY GRAFF, et al.,** | |
| *Plaintiffs*, | |
| v. | **Case No. 4:17-CV-606-TCK-JFJ** |
| **ABERDEEN ENTERPRIZES II, INC., et al.,** | |
| *Defendants*. | |

<u>**PLAINTIFFS' OPPOSITION TO RENEWED MOTION TO DISMISS BY KIM HENRY,**</u>
<u>**FORMER COURT CLERK OF ROGERS COUNTY, IN HER INDIVIDUAL CAPACITY**</u>

**BRIEF C**

Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804
Mary B. McCord (admitted *pro hac vice*)
D.C. Bar No. 427563
Institute for Constitutional Advocacy
  and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel.: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu
mbm7@georgetown.edu

*Attorneys for the Plaintiffs*

Ryan Downer (admitted *pro hac vice*)
D.C. Bar No. 1013470
Katherine Hubbard (admitted *pro hac vice*)
D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

## <u>Index of Plaintiffs' Opposition Briefs</u>

For ease of reference, each of Plaintiffs' opposition briefs has been labeled by letter according to the motion to dismiss to which it responds, listed below.

A.  51 County Sheriff Defendants, Individual Capacity (Doc. 407)

B.  Rogers County Defendants, Official Capacity (Doc. 406)

C.  Kim Henry, Former Court Clerk of Rogers County, Individual Capacity (Doc. 402)

D.  Scott Walton, Sheriff of Rogers County, Individual Capacity (Doc. 408)

E.  Aberdeen Enterprizes II, Inc. (Doc. 404)

F.  Jim and Rob Shofner (Doc. 403)

G.  Oklahoma Sheriffs' Association (Doc. 405)

H.  Defendant Judges (Doc. 412)

I.  51 County Sheriff Defendants, Official Capacity (Doc. 398)

J.  Vic Regalado, Sheriff of Tulsa County, Individual Capacity (Doc. 409)

K.  Don Newberry, Court Clerk of Tulsa County, Individual Capacity (Doc. 411)

L.  Darlene Bailey, Cost Administrator of Tulsa County, Individual Capacity (Doc. 410)

M.  Tulsa County Defendants, Official Capacity (Doc. 399)

BRIEF C

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ..................................................................................................... 1

RELEVANT BACKGROUND .................................................................................. 3

ARGUMENT ............................................................................................................ 4

I. Henry Participated in the Constitutional Violations that Plaintiffs Challenge. ................................................................................................ 4

II. Absolute Immunity Does Not Protect Henry for Seeking Arrest Warrants for Nonpayment or Referring Cases to Aberdeen .................................... 5

III. Qualified Immunity Does Not Shield Henry for Her Violation of Clearly Established Law. ...................................................................................... 10

  A. Henry Violated Plaintiffs' Rights under the Fourth and Fourteenth Amendments. ...................................................................................... 10

  B. The Constitutional Rights at Issue Are Clearly Established. .................... 14

  C. State Law Does Not Prescribe or Excuse Henry's Conduct. .................... 16

IV. Plaintiffs' Claims Against Henry Are Not Moot. .................................... 18

CONCLUSION ........................................................................................................ 18

BRIEF C

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993) ........................................ 5, 6, 7

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ............................................................... 16

*Bearden v. Georgia*, 461 U.S. 660 (1983) ........................................................ 3, 11, 13, 14

*Bishop v. United States ex rel. Holder*, 962 F. Supp. 2d 1252 (N.D. Okla. 2014) ...................... 18

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) ............................................................. 15

*Burns v. Reed*, 500 U.S. 478 (1991) ..................................................................... 6, 7

*Cannon v. City & Cnty. of Denver*, 998 F.2d 867 (10th Cir. 1993) .................................... 10

*Dow v. Baird*, 389 F.2d 882 (10th Cir. 1968) ....................................................... 2, 11, 16

*Forrester v. White*, 484 U.S. 219 (1988) ................................................................. 6

*Fuentes v. Shevin*, 407 U.S. 67 (1975) .................................................................. 13

*Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500 (10th Cir. 2023) ................................ 3, 9

*Groh v. Ramirez*, 540 U.S. 551 (2004) ................................................................. 16

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................. 10

*James v. Strange*, 407 U.S. 128 (1972) ............................................................ 3, 12, 16

*Kneisser v. McInerney*, No. 1:15-cv-07043, 2018 WL 1586033 (D.N.J. Mar. 30, 2018) .............. 8

*Martin v. Bd. of Cnty. Comm'rs of Cnty. of Pueblo*, 909 F.2d 402 (10th Cir. 1990) ................... 7

*Mays v. Sudderth*, 97 F.3d 107 (5th Cir. 1996) ...................................................... 6, 7

*Reid v. Pautler*, 36 F. Supp. 3d 1067 (D.N.M. 2014) .................................................. 9

*Stewart v. Donges*, 915 F.2d 572 (10th Cir. 1990) ................................................... 3, 12

*Thomas v. Kaven*, 765 F.3d 1183 (10th Cir. 2014) .................................................... 10

*Turner v. Rogers*, 564 U.S. 431 (2011) ............................................................. 13, 14

*Turney v. O'Toole*, 898 F.2d 1470 (10th Cir. 1990) ..................................................... 8

*United States v. Gobey*, No. 92 CR 93, 1992 U.S. Dist. LEXIS 22060 (D. Colo. Sep. 12, 1992) .......................................................................................... 16

*United States v. Grose*, 687 F.2d 1298 (10th Cir. 1982) ............................................... 11

*Williams v. City of Alexander*, 772 F.3d 1307 (8th Cir. 2014) .......................................... 4

*Williams v. Illinois*, 399 U.S. 235 (1970) .............................................................. 11

*Wolford v. Lasater*, 78 F.3d 484 (10th Cir. 1996) ................................................... 2, 12

**Constitutional Provisions**

U.S. Const. amend. IV ................................................................................... 16

**Statutes**

Okla. Stat. tit. 19, § 514.4 .............................................................................. 17

Okla. Stat. tit. 19, § 514.5 .............................................................................. 17

Okla. Stat. tit. 22, § 966A .............................................................................. 13

Okla. Stat. tit. 22, § 983 ......................................................................... 11, 13, 18

**Rules**

Rule 8.4, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (Okla. R. Crim. App. 8.4) ...................................................................................... 11

**Legislative Materials**

S.B. 689, 56th Leg., 2d Reg. Sess. (Okla. 2018) ...................................................... 11

iii

**Other Authorities**

*In re Fee Schedule of Certified Shorthand Reporters*, 2009 OK 84, 271 P.3d 776 (mem.) ........... 7

Oklahoma Supreme Court Order S.C.A.D. 2011-08 (Docs. 99-35 & 406-1) ....................... 6, 7, 17

BRIEF C

## **INTRODUCTION**

This class action lawsuit challenges an extortionate scheme whereby local officials, in concert with a for-profit company, Aberdeen Enterprizes II, Inc. ("Aberdeen"), use both the threat of arrest and actual incarceration to extract money from indigent Oklahomans who owe court debt. Defendants employ these coercive tactics against members of the putative class despite the absence of any mechanism to assess their ability to pay the fines levied against them. Plaintiffs, all of whom owe fines and fees to the court system, are threatened, arrested, and imprisoned when they cannot pay, not because of any willful refusal, but solely due to their indigence. This scheme violates the constitution, and it cannot function without arrest warrants for nonpayment and the referral of individual debtors' cases to Aberdeen for collection. These are tasks that Defendant Kim Henry, as the former Clerk of the District Court of Rogers County, played a key role in carrying out.

Plaintiffs seek compensatory damages for the harm caused by Henry's practice of requesting, and helping Aberdeen request, warrants for nonpayment without regard for the subject's ability to pay or sworn allegations. *See* Second Am. Compl. ("SAC"), Doc. 212, ¶¶ 318-38, 345-53 (Counts 2, 3 & 5). Plaintiffs also seek damages from Henry in her individual capacity based on her practice of referring cases to Aberdeen, which is an essential component of the collective effort among various Defendants in this case to use unconstitutionally onerous methods to collect debt. *See id.* ¶¶ 360-62 (Count 7).

In her motion to dismiss (Doc. 402), Henry asserts that she can avoid liability for her illegal conduct because she is entitled to quasi-judicial immunity, claiming that her challenged actions were carried out at the order of the Oklahoma Supreme Court. But the order on which she relies was merely an administrative directive to district courts (not court clerks) to participate in a debt-collection program. Government actors cannot claim derivative immunity for following such administrative orders. Regardless, the order did not direct court clerks to do any specific things,

1

BRIEF C

like to request warrants in individual cases in specific circumstances, or to refer individual cases to a private debt collector. It is those individualized decisions that Plaintiffs challenge, and Plaintiffs have alleged that Henry made them at her own discretion, not at the direction of any judge on the Oklahoma Supreme Court or otherwise. Further, Henry does not argue that those acts are entitled to absolute immunity in their own right.

Nor can Henry shield herself under the doctrine of qualified immunity. She claims that she has not personally participated in the violation of constitutional rights, first on the ground that she has not participated in arresting or detaining any Plaintiffs and, second on the ground that seeking a warrant, arresting someone, and holding them in jail for not being able to pay is somehow permissible and constitutionally distinct from ordering them to be imprisoned for the same thing. The first argument misunderstands Plaintiffs' claims, which challenge Henry's role in requesting warrants and referring individual debtor's cases to Aberdeen, regardless of whether Plaintiffs have already been detained. Henry's second argument misunderstands the law. If it is unconstitutional to imprison someone solely for nonpayment—which she does not dispute—it is of course unconstitutional to seek an arrest warrant and cause them to be jailed at length for that same "offense." Henry cites nothing to support her counterintuitive argument to the contrary.

Contrary to Henry's assertion that Plaintiffs' rights are not clearly established, there is Supreme Court and Tenth Circuit precedent directly on point. First, the Tenth Circuit has held that warrants issued without oath or affirmation violate the Fourth Amendment. *See Dow v. Baird*, 389 F.2d 882, 883-84 (10th Cir. 1968). Second, the Tenth Circuit has held that recklessly omitting from a warrant request material information that would eliminate probable cause—here, information related to the debtor's inability to pay—violates the Fourth Amendment. *See Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996); *Stewart v. Donges*, 915 F.2d 572, 581-83 (10th Cir.

BRIEF C

1990). Third, the Supreme Court has held that it is unconstitutional to imprison someone simply for being too poor to pay their court debt. *See Bearden v. Georgia*, 461 U.S. 660, 667-68 (1983). Fourth, the Supreme Court has held that it is unconstitutional to impose onerous collection methods—here, referral to Aberdeen and imposition of a 30 percent penalty—only on those too poor to pay debt owed to the government. *See James v. Strange*, 407 U.S. 128, 140-41 (1972). These are the practices, clearly established as unconstitutional, for which Plaintiffs seek to hold Henry liable.

Defendant Henry's motion to dismiss should be denied.

## RELEVANT BACKGROUND[1]

Defendant Kim Henry is the former Clerk of the District Court of Rogers County. SAC ¶ 37. In that role, she was responsible for (1) collecting court debt in Rogers County, where she maintained a policy and practice of seeking debt-collection arrest warrants without inquiring into the subject's ability to pay, without notice, and without making her requests under oath or affirmation, *id.* ¶¶ 37, 134-37; (2) choosing which individual cases to transfer to Aberdeen for collection and assessing a 30-percent penalty surcharge to the debt of anyone whose case was transferred, regardless of the individual's ability to pay, *id.* ¶¶ 37, 137; and (3) after transferring a case to Aberdeen, assisting the company in seeking new arrest warrants and recalling old ones at its request, again without any information about ability to pay or factual allegations sworn by oath or affirmation, *id.* ¶¶ 37, 63, 89-90, 137.

Henry's practices affected multiple Plaintiffs in this case. She requested that an arrest warrant be issued against Plaintiff Carly Graff—without notice and based solely on nonpayment—

---

[1] This section includes allegations relevant to Plaintiffs' claims against Henry in her individual capacity. For a summary of the allegations and claims against all Defendants, see *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 509-14 (10th Cir. 2023).

BRIEF C

and decided to transfer Graff's case to Aberdeen. *Id.* ¶ 158. The application for the arrest warrant did not contain sworn statements supporting any of its factual claims. *Id.* Nor did it even contain unsworn assertions that would provide probable cause. *Id.* The result was a substantially increased debt for Graff, *id.*, who was harassed by Aberdeen via mail, *id.* ¶ 159, and who for years lived in fear of arrest, unable to lead a normal life, *id.* ¶ 160. Henry also requested a warrant issue against Plaintiff Melanie Holmes. *Id.* ¶¶ 25, 207. Because of that warrant, Holmes, who now lives in Oregon, is afraid to return to Oklahoma to visit her family. *Id.* ¶¶ 212-13.

## ARGUMENT

### I.   Henry Participated in the Constitutional Violations that Plaintiffs Challenge.

At the outset, Plaintiffs must address Henry's contention that she did not participate in the violation of Plaintiffs' constitutional rights because she did not arrest or detain them. *See* Doc. 402 at 5, 10. This contention, which underlies both of her immunity arguments, is premised on a gross mischaracterization of Plaintiffs' claims. Plaintiffs challenge Henry's role in requesting warrants and referring individual debtors' cases to Aberdeen, regardless of whether Plaintiffs have been arrested or detained.[2] The harms caused by these warrants—separate and apart from Plaintiffs' unlawful arrests and detentions—include their extortionate use by Aberdeen and other Defendants as a means of debt collection. *See, e.g.*, SAC ¶¶ 159-60 (alleging that Ms. Graff received four letters from Aberdeen demanding payment and threatening her with arrest if she did not pay the company, and as a result, Ms. Graff only left home to take her children to the bus stop out of fear

---

[2] For similar reasons, Henry tilts at windmills by claiming that she "cannot be held [personally] liable, on any constitutional theory, for [the] issuance" of warrants. Doc. 402 at 10. Plaintiffs do not allege Henry issued warrants; they allege she requested them, and, among other issues in this case, it is clearly established that it is a constitutional violation to seek an arrest warrant by omitting materially relevant information. *See, e.g.*, *Williams v. City of Alexander*, 772 F.3d 1307, 1313 (8th Cir. 2014).

BRIEF C

of being arrested); *id.* ¶¶ 203-05 (alleging that Ms. Holmes made payments to Aberdeen that "forced her to struggle to meet the basic necessities of life" because she "was 'scared to death' of being arrested," and that even after she lost her job and became homeless, Aberdeen called her on a near-daily basis and threatened her with arrest); *id.* ¶ 213 (alleging that Ms. Holmes is afraid to return to Oklahoma to visit her children and family because of her arrest warrants).

To that end, Plaintiffs have alleged that Henry requested the warrants against Plaintiffs Holmes and Graff; that Henry referred Ms. Graff's case to Aberdeen for collection and increased her debt by 30 percent, and that Henry established the policies for seeking warrants and referring cases in Rogers County. *Id.* ¶¶ 37, 134-37, 158, 206, 332. There is no doubt that Henry has personally participated in the constitutional violations challenged by Plaintiffs.

## II.   Absolute Immunity Does Not Protect Henry for Seeking Arrest Warrants for Nonpayment or Referring Cases to Aberdeen.

Henry argues that her conduct requesting warrants and referring cases to Aberdeen is protected by quasi-judicial immunity because she "has been directed to participate in these functions by the Oklahoma Supreme Court, and the Clerk's function is therefore integral to the judicial process and protected by absolute immunity." Doc. 402 at 7. This argument is incorrect, and Henry cannot meet her burden to establish immunity. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993) ("The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity.").

As discussed in greater detail below, *see infra* Section III, Plaintiffs' claims against Henry are based on her practices of referring indigent debtors' cases to Aberdeen and seeking failure-to-pay warrants without regard for ability to pay, without sworn allegations or probable cause that nonpayment was willful (and, in fact, with personal knowledge that it was not), and without submitting information that would preclude a finding of willfulness if presented to the judge. SAC

BRIEF C

¶¶ 247, 322, 332, 361. Henry contends that, because the Oklahoma Supreme Court issued a "direct[ive] [to each county] to participate" in a statutorily-authorized debt collection scheme, quasi-judicial immunity for participation therein should follow. Doc. 402 at 6-7.

The first problem with this argument is that the Oklahoma Supreme Court directive Henry appears to invoke was not a judicial order. Henry cannot have quasi-judicial immunity for following directives that were not themselves issued judicially. This is because quasi-judicial immunity is derived from judicial immunity; where a judge would not have absolute immunity for issuing a given directive (because she happens not to act judicially when doing so), there is no judicial immunity from which to derive quasi-judicial immunity for those who follow the directive. *See Mays v. Sudderth*, 97 F.3d 107, 114 (5th Cir. 1996).

The "touchstone" of a judicial act is the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine*, 508 U.S. at 435-36 (quoting *Burns v. Reed*, 500 U.S. 478, 500 (1991) (Scalia, J., concurring in part and dissenting in part)). By contrast, making rules with general application, supervising court employees, and overseeing the efficient operation of a court, even when done by judges, are done in a legislative or administrative capacity. *See Forrester v. White*, 484 U.S. 219, 229 (1988). Judges are not entitled to absolute immunity when acting in their administrative capacity. *Id.*

By this standard, the Oklahoma Supreme Court Order at issue here, S.C.A.D. 2011-08 (Docs. 99-35 & 406-1), was clearly administrative. It "directed" Oklahoma district courts "to participate in the misdemeanor or failure-to-pay warrant collection program" authorized by certain Oklahoma statutes. The title of the order betrays its administrative nature: "S.C.A.D." stands for "Supreme Court *Administrative* Docket." "Administrative directives" that issue on this docket address such administrative matters as the payment schedule for court reporters, *see In re Fee*

*Schedule of Certified Shorthand Reporters*, 2009 OK 84, 271 P.3d 776 (mem.), and whether to use a private debt collector. Substantively, S.C.A.D. 2011-08 does not touch on the "performance of the function of resolving disputes between *parties*, or of authoritatively adjudicating *private rights*" at all. *Antoine*, 508 U.S. at 435-36 (emphases added) (quoting *Burns*, 500 U.S. at 500 (Scalia, J., concurring in part and dissenting in part)). The order is no more entitled to judicial immunity than it would be if it directed district courts to use Quik Print for copying instead of their own Xerox machines. Because the justices themselves would not be entitled to judicial immunity for this administrative decision, Henry cannot claim derivative immunity for complying with it. *See Mays*, 97 F.3d at 114.

Further, even if S.C.A.D. 2011-08 were a "judicial" order—and it is not—Henry still would not be entitled to derivative immunity "from damage claims directed not to the conduct prescribed in the court order itself but to the manner of its execution." *Martin v. Bd. of Cnty. Comm'rs of Cnty. of Pueblo*, 909 F.2d 402, 405 (10th Cir. 1990). S.C.A.D. 2011-08 only broadly directs district courts to "participate" in a statutory debt-collection program. It does not address when any individual case should be referred to a collector, nor does it direct clerks like Henry as to what information to include (or omit) in warrant requests. That is the conduct of Henry's that Plaintiffs challenge here, and it goes directly to the "manner of [the] execution" of S.C.A.D. 2011-08, to which derivative immunity does not extend. *Id.*

The cases Henry cites, Doc. 402 at 3-4, 6-7, are not to the contrary, for at least two reasons. First, each of them involved a clerk's action—preparing a warrant, for example—in an individual case adjudicating private rights. Here, Henry does not argue that she was just following a district judge's order in any particular case, but rather that she was following the Oklahoma Supreme

BRIEF C

Court Justices' general order to participate in the debt collection program globally. As explained above, this is not adjudicative.

Second, the failure-to-pay warrants were not, from Henry's perspective, "facially valid." The Tenth Circuit has long held that an officer who helps procure a court order in a manner that they know will render the order invalid does not enjoy quasi-judicial immunity. *See Turney v. O'Toole*, 898 F.2d 1470, 1473 n.3 (10th Cir. 1990) (noting that "[s]uch an order does not provide the same quasi-judicial immunity as an order *which the defendant played no part in procuring*," and citing cases to that effect (emphasis added)). The warrants at issue here were based on information that Henry herself provided to the court—information that she knew was incomplete and unsupported by oath or affirmation. SAC ¶¶ 247, 322, 332. Similarly, Henry referred each case to Aberdeen on her own initiative, without any involvement by a judge, without inquiring whether the failure to pay was willful—but knowing full well that the fact of the referral would trigger a 30-percent surcharge (from which her office would benefit). *Id.* ¶¶ 57, 78. When the purpose of arrest warrants is simply to coerce payment, they "are extra-judicial and focus more on the administrative task of collecting fines than the judicial act of imposing them." *Kneisser v. McInerney*, No. 1:15-cv-07043, 2018 WL 1586033, at *14 (D.N.J. Mar. 30, 2018); *see also id.* (declining to grant absolute immunity to judge and clerk where, as here, the "whole point of incarceration was to collect fines").

Third, although Henry asserts in passing that "[a]bsolute immunity is applicable in this case since Plaintiffs' claims revolve around the issuance of the bench warrants," Doc. 402 at 3 n.4, this is only partially correct, and provides her no relief. In short, the issuance of warrants is only one part in the debt-collection scheme that Plaintiffs challenge, which includes extortion and threats by the private company to which Henry routinely transferred cases. Those elements are not

BRIEF C

remotely akin to judicial functions. While arrest warrants for nonpayment are an aspect of that scheme, it is alleged Henry did not issue warrants; she sought them by omitting materially relevant information at her own discretion, without judicial direction in any particular case. It is well established that officials who make the decision to submit warrant applications or order requests to a court for its signature are entitled only to qualified, not absolute, immunity for those actions. *See, e.g.*, *Reid v. Pautler*, 36 F. Supp. 3d 1067, 1180 (D.N.M. 2014) (probation officers who reviewed files and sent requests to court for additional probation were akin to police officers submitting warrant applications and not entitled to quasi-judicial immunity). Accordingly, she is not entitled to judicial or quasi-judicial immunity.

Henry's remaining arguments do not bear on whether she enjoys personal immunity here. She points out that Ms. Graff and Ms. Holmes have not yet been arrested on failure-to-pay warrants in Rogers County, but that question does not address immunity, where the inquiry is whether Henry has acted in a quasi-judicial manner. Henry also suggests that "bench warrants are a common method of summoning individuals to Court," Doc. 402 at 7 n.7, but as has been repeated many times in this Court and on appeal in the Tenth Circuit, these warrants do not function as summonses. Plaintiffs have alleged that what Defendants refer to as "bench" warrants are, in fact, arrest warrants, for which Plaintiffs and members of the putative class are held in jail for days. *See Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 509-11 (10th Cir. 2023). In any event, the widespread unlawful use of these warrants does not counsel that anyone involved in their issuance receives blanket absolute immunity. Henry does not enjoy quasi-judicial immunity for referring cases to Aberdeen or seeking warrants based on incomplete—and misleading—information.

9

BRIEF C

### III.    Qualified Immunity Does Not Shield Henry for Her Violation of Clearly Established Law.

Qualified immunity protects government officials from liability for damages only insofar as their conduct does not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense against claims for damages, and does not apply to suits seeking injunctive or declaratory relief. *Cannon v. City & Cnty. of Denver*, 998 F.2d 867, 876 (10th Cir. 1993). Henry raises qualified immunity, claiming that (1) there was no underlying constitutional violation, Doc. 402 at 8-13, (2) the right at issue was not clearly established, *id.* at 13-15, and (3) she was reasonably relying on the Oklahoma Supreme Court's directive and state law, *id.* at 15-17. Her arguments fail. Plaintiffs have alleged clearly established constitutional violations that are not excused by state law.

As an initial matter, qualified immunity is more properly raised at summary judgment, rather than in a motion to dismiss. Given the fact-specific nature of qualified immunity, early consideration of qualified immunity "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Henry's claim to qualified immunity should be heard not now but at the summary judgment stage. In any case, Henry does not enjoy such immunity.

### A.    Henry Violated Plaintiffs' Rights under the Fourth and Fourteenth Amendments.

Plaintiffs have alleged constitutional claims against Henry for seeking debt-collection arrest warrants based solely on nonpayment without inquiry into ability to pay (Counts 2 and 5 – Fourteenth Amendment), SAC ¶¶ 318-28, and based on unsworn allegations containing material falsehoods and lacking probable cause (Count 3 – Fourth Amendment), *id.* ¶¶ 329-38, and for

BRIEF C

subjecting debtors to onerous collection methods (Count 7 – Fourteenth Amendment),[3] *id.* ¶¶ 360-62.

*Bearden v. Georgia*, 461 U.S. 660 (1983) prohibits imprisoning a person solely for nonpayment of court debt without a finding that the person willfully refused to pay. *Id.* at 666-68; *see also Williams v. Illinois*, 399 U.S. 235, 240-41 (1970) (holding that imprisonment resulting "directly from an involuntary nonpayment of a fine or court costs" is "impermissible discrimination that rests on ability to pay"); *United States v. Grose*, 687 F.2d 1298, 1301 (10th Cir. 1982) (en banc) ("[I]t is unconstitutional for Grose to be sent to prison . . . if he cannot pay the fine due to indigency."). It is therefore also unconstitutional to request a warrant against someone solely for nonpayment, because a warrant cannot (lawfully) issue for a nonexistent offense. Oklahoma law codifies this principle. *See* Okla. Stat. tit. 22, § 983(A);[4] Okla. R. Crim. App. 8.4. Thus, Plaintiffs have plausibly alleged that Henry violated their due process and equal protection rights under *Bearden* (Count 2), SAC ¶¶ 318-28, and their procedural due process rights based on state-created liberty interests (Count 5), *id.* ¶¶ 345-53.

Against these background principles, Plaintiffs also allege that Henry violated the Fourth Amendment in three ways when she requested warrants for nonpayment (Count 3). *Id.* ¶¶ 329-38. First, she did so without making the requests under oath or affirmation, in violation of the Fourth Amendment's plain text and settled Tenth Circuit law. *See Dow v. Baird*, 389 F.2d 882, 883-84 (10th Cir. 1968). Second, her requests are unconstitutional because she has no evidence, let alone

---

[3] Plaintiffs have briefed these constitutional violations and injuries at length in their motion for preliminary injunction. Doc. 77 at 5-16.

[4] Plaintiffs have attached a copy of Section 983 that will remain in effect until November 1, 2023, as an exhibit to their first brief in opposition. *See* Br. A, Ex. 2. Although this version of the law went into effect after Plaintiffs filed this lawsuit, the prior version was identical in all relevant respects. *See* S.B. 689, 56th Leg., 2d Reg. Sess. (Okla. 2018).

BRIEF C

enough to support probable cause, that the debtor has willfully refused to pay. Indeed, Plaintiffs allege that she knows they cannot pay due to indigence. SAC ¶¶ 322, 330, 332, 347. Third, Henry's requests are unconstitutional because she recklessly omits information about ability to pay that would eliminate probable cause for willful nonpayment if presented to the judge who issues the warrants. *Id.* ¶¶ 322, 332; *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) ("It is a violation of the Fourth Amendment for an arrest warrant affiant to . . . recklessly omit from the affidavit information which, if included, would have vitiated probable cause." (citing *Stewart v. Donges*, 915 F.2d 572, 581-83 (10th Cir. 1990))).

Finally, in Count 7, Plaintiffs allege that Henry partook in unconstitutionally onerous methods of debt collection by referring cases to Aberdeen and assessing a 30-percent penalty surcharge. SAC ¶¶ 360-67. In *James v. Strange*, 407 U.S. 128 (1972), the Supreme Court struck down a Kansas recoupment statute that expressly denied indigent defendants who owed money to the state for indigent defense costs the wage garnishment exception available to judgment debtors in civil cases under Kansas law. *Id.* at 135, 141-42. Similarly, here, Henry subjected indigent criminal defendants to more onerous collection practices than other judgment debtors by referring their cases to Aberdeen and seeking warrants for nonpayment.

Henry raises numerous objections to Plaintiffs' constitutional claims, but none have merit. First, she attempts to distinguish the present case from *Bearden* by saying "[n]othing in *Bearden* prohibits a district court from issuing a bench warrant for purposes of summoning a defendant to Court to assess whether the defendant has willfully failed" to pay court debt. Doc. 402 at 12. Even if correct, this would have no effect on Plaintiffs' claims that Henry violates the Fourth Amendment's oath or affirmation requirement. But Henry's argument is not correct. As explained above, the warrants that Defendants have attempted to characterize as court summonses throughout

BRIEF C

the life of this case are alleged to be *arrest* warrants that result in law enforcement forcibly seizing an individual, jailing her, and only thereafter taking her to court, sometimes days later. SAC ¶¶ 139-40. Even a relatively short stay in jail can have devastating consequences for the impoverished person, including loss of employment, removal from housing, and inability to arrange child care. *Id.* ¶ 99. This is an arrest. And under both Oklahoma and federal law, nonpayment alone is insufficient to establish probable cause for an arrest (even pursuant to a so-called "bench warrant") because jailing can only ever be predicated on willful nonpayment. *See* Okla. Stat. tit. 22, § 983(A); *Bearden*, 461 U.S. at 672.[5]

Henry also asserts that "*Bearden* does not identify clearly established rights related to the *processes*" that must determine willfulness of nonpayment. Doc. 402 at 10–11. But *Bearden* itself held that, prior to incarcerating a defaulting debtor, "a sentencing court *must* inquire into the reasons for the failure to pay" and that only upon a finding of willful refusal may the court "sentence the defendant to imprisonment." 461 U.S. at 672 (emphasis added); *see also Fuentes v. Shevin*, 407 U.S. 67, 90 (1975) (requiring "a prior hearing" before deprivation of liberty). And since *Bearden*, the Court has explicitly laid out minimum procedural safeguards that must be given before incarcerating a person for nonpayment. *See Turner v. Rogers*, 564 U.S. 431, 447-48 (2011).

Henry's additional, scattershot arguments are unavailing. She suggests that "a defendant can request a Rule 8 hearing at any time[.]" Doc. 402 at 12. Plaintiffs allege that Rule 8's procedural protections are regularly not given, SAC ¶ 95 (in fact, the failure to follow Rule 8 plays heavily into Count Five, *id.* ¶ 346)—but in any case, it is the *State's* burden to provide such

---

[5] Henry misleadingly suggests that Okla. Stat. tit. 22, § 966A authorizes arrest for nonpayment alone. That statute merely states that when a warrant issues, a fee should be assessed against the subject. The statute describes a "failure to pay," but that does not mean—and in light of the Supreme Court's decision in *Bearden*, cannot mean—that the failure to pay need not be willful for the defendant to be validly arrested.

BRIEF C

hearings, not Plaintiffs' to request them. *See Turner*, 564 U.S. at 448 (requiring the "*State* [to] provide[] . . . procedural safeguards" (emphasis added)); *see also* Doc. 276 at 14-16 (explaining how Rule 8 creates a "liberty interest" deserving due process protections). Furthermore, *Bearden* clearly required a *pre-imprisonment* "inquir[y] into the reasons for the failure to pay," 461 U.S. at 672; it would turn this requirement on its head to suggest that a *post-arrest* Rule 8 hearing satisfies *Bearden*'s requirements.

Henry also suggests that there is no law precluding her from "'assisting' the district court to determine whether a bench warrant should issue." Doc. 402 at 12. But as explained above, Henry does far more than "assist" the court—she plays an affirmative role in seeking warrants, *see supra* Section I—and the warrants are, functionally, not mere summons to court but arrest warrants, *see supra* Section II.

Finally, contrary to Henry's assertions, Doc. 402 at 12-13, there is Supreme Court case law supporting Plaintiffs' right to be free from "unduly harsh or discriminatory" collections methods, whether they are executed by a private contractor or otherwise. *James*, 407 U.S. at 138.[6] As such, Plaintiffs have plausibly alleged that Henry violates their constitutional rights.

### B.      The Constitutional Rights at Issue Are Clearly Established.

Henry next argues that the constitutional rights at issue are not clearly established. She admits that a debtor has "a right to be free from imprisonment when he or she lacks funds to pay a fine and, upon failure to pay a fine, a right to a judicial determination regarding ability to pay as

---

[6] Henry claims that there is "no case law recognizing a constitutional right to be free from 'onerous collection enforcement methods,' particularly where Plaintiffs have failed to identify any conduct that was conscious shocking in nature." Doc. 402 at 13. But as Plaintiffs explained in their opposition to Henry's prior motion to dismiss, Doc. 269 at 4, 9 (and their reply brief on appeal), Plaintiffs' equal protection claim in Count 7 relies on *James*, not a substantive-due-process conscience-shocking theory.

BRIEF C

discussed in *Bearden*." Doc. 402 at 14. The problem, she says, is that there is no clearly established right to be free from "the mere issuance of a bench warrant." *Id.* at 14 (emphasis omitted). But, as described above, the warrants at issue are, in every functional sense, arrest warrants. *See supra* Section II. The terminology used does nothing to change the fact that, pursuant to the warrants that Henry seeks, indigent debtors are imprisoned prior to any determination of willfulness or other due process.[7] And the fact that it is unlawful to imprison people under such circumstances obviously means that it is also unlawful seek their imprisonment; no one could reasonably contend, for example, that a government official would be entitled to qualified immunity for seeking an arrest warrant for speech that does not "incit[e] . . . imminent lawless action," *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969), simply because *Brandenburg* only addressed the question of conviction. *Bearden* and its progeny clearly establish that Henry's warrant practices were unconstitutional.

For similar reasons, it is simply irrelevant whether there is any "case law indicat[ing] that . . . a bench warrant is necessarily rendered constitutionally invalid when unsupported with affidavits, oaths or affirmations." Doc. 402 at 14-15. Again, Plaintiffs have alleged—and their plausible allegations must be taken as true at this stage—that the warrants at issue are arrest warrants because they result in jail time, and they are based on facts independently determined and investigated by the clerks and Aberdeen. That is, they for failure to *pay*, which requires information and attestation from the payee; not a failure to appear in court after a valid summons, which is a

---

[7] The cases Henry cites, Doc. 403 at 14 n.12, are not helpful here because they do not discuss whether or when an ability-to-pay inquiry was conducted, and do not contemplate whether *Bearden* was violated, prior to the issuance of arrests for nonpayment.

BRIEF C

fact immediately observable by a judge.[8] And longstanding precedent (as well as the text of the Fourth Amendment) states that warrants not supported by sworn affidavits are "clearly and obviously invalid." *Dow*, 389 F.2d at 883-84; *see also* U.S. Const. amend. IV ("no warrant shall issue except on probable cause, supported by Oath or affirmation"); *Groh v. Ramirez*, 540 U.S. 551, 563 (2004) (qualified immunity did not bar suit when law at issue was "set forth in the text of the [Fourth Amendment]").

Finally, although Henry complains that there is no case law indicating that "a court clerk is constitutionally barred from referring individual cases to a debt collection service" or "assess[ing] a legislatively-authorized fee when said referral takes place," Doc. 402 at 14-15, these constitute onerous enforcement methods that were deemed to violate equal protection in *James*. Aberdeen's threats and harassment and the automatic surcharge are significantly *more* burdensome than the "harsh and discriminatory" methods struck down in *James*. Any subtle differences in fact between that case and this one are inconsequential. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (qualified immunity does not require "a case directly on point" so long as the constitutional question is beyond debate). The rule against such onerous methods is clearly established.

### C.     State Law Does Not Prescribe or Excuse Henry's Conduct.

Finally, Henry suggests that she has not violated clearly established law because she was simply following Oklahoma law in referring cases to Aberdeen and seeking failure-to-pay warrants. The problem is that none of the legal provisions to which Henry cites actually prescribe the problematic conduct that Plaintiffs allege. In fact, the crux of Count Five of the Complaint is that Henry and her co-Defendants do *not* follow state law. SAC ¶¶ 346-53.

---

[8] *Cf. United States v. Gobey*, No. 92 CR 93, 1992 U.S. Dist. LEXIS 22060, at *20 (D. Colo. Sep. 12, 1992) (differentiating between a "bench warrant" issued by the court itself for contempt or disobeying a subpoena, and an "arrest warrant" based on an enforcement officer's observations).

BRIEF C

Henry again attempts to lean on an Oklahoma Supreme Court Administrative Order that "authorized and directed" district courts "to participate in the misdemeanor or failure-to-pay warrant collection program authorized" by certain statutes. S.C.A.D. 2011-08. The statutes, in turn, are limited to authorizing courts to enter into contracts with private debt collectors, Okla. Stat. tit. 19, § 514.4(A)-(B) (eff. Nov. 1, 2010), via the Oklahoma Sheriffs' Association, *id.* § 514.4(E), and authorizing the courts to tack an administrative fee onto any warrants referred to a private collector, *id.* § 514.5(A), with the proceeds to be shared between the collector and the court, *id.* § 514.5(B).[9]

Neither the order nor the invoked statutes provide Henry any cover, because they simply and broadly direct participation in a program and generally define its parameters. They do not purport to prescribe its methods. Nor do they prescribe the specific, unlawful conduct in which Plaintiffs allege Henry engages: seeking warrants without oath or affirmation; seeking warrants without inquiry into or mention of debtors' ability to pay (and in fact, with knowledge in some cases that they cannot pay, *see* SAC ¶¶ 322, 330, 332, 347); recklessly omitting information about ability to pay that would eliminate probable cause for willful nonpayment if presented to the judge who issues the warrants, *see id.* ¶¶ 322, 332; and engaging in onerous debt collection methods by referring cases to Aberdeen solely for nonpayment without inquiry into willfulness. As such,

---

[9] An amended version of these went into effect on November 1, 2018, and yet another version is set to go into effect on November 1, 2023. Plaintiffs have attached a copy of the laws in effect at the time this suit was filed (the 2010 laws), as well as the laws that remain in effect until November 1, 2023 (the 2018 laws), as an exhibit to their first brief in opposition to Defendants' renewed motions to dismiss. *See* Br. A, Ex. 1. The forthcoming amendments to the statutes are attached as exhibits to various motions to dismiss filed by Henry's co-defendants. *See, e.g.*, Doc. 399-4 (Ex. 4 to Tulsa County's renewed motion to dismiss). The main difference between the 2010 and 2018 versions of § 514.4 is that the former provided sheriffs the option to contract with a debt collector directly, while the latter only provides the option to contract with OSA as a go-between. The 2023 amendments do not alter this aspect of the statute. As for § 514.5, it has remained (and will continue to remain) largely the same since 2010.

BRIEF C

Oklahoma law provides Henry no cover. Because Plaintiffs have alleged that she violates their clearly established constitutional rights, she is not entitled to qualified immunity.

## IV.    Plaintiffs' Claims Against Henry Are Not Moot.

Henry briefly makes a cursory argument that forthcoming amendments to Okla. Stat. tit. 22, § 983 ("Section 983") moot Plaintiffs' claims for injunctive relief, adopting the Defendant Judges' arguments. Doc. 402 at 17. Accordingly, Plaintiffs incorporate their response to the same. *See* Br. H, Section III.

In any event, Plaintiffs note that since Henry is no longer the Clerk of Rogers County, *see* Doc. 402 at 1, the sole form of relief available against her in her individual capacity is compensatory damages, and "unlike claims for declaratory or injunctive relief, claims for damages are not mooted by subsequent events." *Bishop v. United States ex rel. Holder*, 962 F. Supp. 2d 1252, 1271 (N.D. Okla. 2014) (Kern, J.). Even if she were correct that Plaintiffs' injunctive claims are moot, the portion of the complaint now relevant to Henry would not be disturbed.

## CONCLUSION

For the reasons set forth above, the Court should deny Henry's motion to dismiss in her individual capacity.

Dated: August 10, 2023                    Respectfully submitted,

/s/ *Daniel E. Smolen*
Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

/s/ *Ryan Downer*
Ryan Downer (admitted *pro hac vice*)
D.C. Bar No. 1013470

18

BRIEF C

Katherine Hubbard (admitted *pro hac vice*)
D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

/s/ *Seth Wayne*
Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804
Mary B. McCord (admitted *pro hac vice*)
D.C. Bar No. 427563
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu
mbm7@georgetown.edu

*Attorneys for the Plaintiffs*

19

BRIEF C

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 10th day of August, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.


<u>/s/ *Seth Wayne*</u>

BRIEF C