# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CARLY GRAFF, et al.,** | |
| *Plaintiffs,* | |
| **v.** | **Case No. 4:17-CV-606-TCK-JFJ** |
| **ABERDEEN ENTERPRIZES II, INC., et al.,** | |
| *Defendants.* | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT ABERDEEN ENTERPRIZES II, INC.'S RENEWED MOTION TO DISMISS

### BRIEF E

Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804
Mary B. McCord (admitted *pro hac vice*)
D.C. Bar No. 427563
Institute for Constitutional Advocacy
  and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel.: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu
mbm7@georgetown.edu

*Attorneys for the Plaintiffs*

Ryan Downer (admitted *pro hac vice*)
D.C. Bar No. 1013470
Katherine Hubbard (admitted *pro hac vice*)
D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

## <u>Index of Plaintiffs' Opposition Briefs</u>

For ease of reference, each of Plaintiffs' opposition briefs has been labeled by letter according to the motion to dismiss to which it responds, listed below.

A.  51 County Sheriff Defendants, Individual Capacity (Doc. 407)

B.  Rogers County Defendants, Official Capacity (Doc. 406)

C.  Kim Henry, Former Court Clerk of Rogers County, Individual Capacity (Doc. 402)

D.  Scott Walton, Sheriff of Rogers County, Individual Capacity (Doc. 408)

E.  Aberdeen Enterprizes II, Inc. (Doc. 404)

F.  Jim and Rob Shofner (Doc. 403)

G.  Oklahoma Sheriffs' Association (Doc. 405)

H.  Defendant Judges (Doc. 412)

I.  51 County Sheriff Defendants, Official Capacity (Doc. 398)

J.  Vic Regalado, Sheriff of Tulsa County, Individual Capacity (Doc. 409)

K.  Don Newberry, Court Clerk of Tulsa County, Individual Capacity (Doc. 411)

L.  Darlene Bailey, Cost Administrator of Tulsa County, Individual Capacity (Doc. 410)

M.  Tulsa County Defendants, Official Capacity (Doc. 399)

i

BRIEF E

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION .............................................................................................................. 1

RELEVANT BACKGROUND ........................................................................................... 2

ARGUMENT ...................................................................................................................... 4

      I.      Plaintiffs Have Stated Claims Pursuant to 42 U.S.C. § 1983. ................................ 5

            A.      Aberdeen Acts Under Color of Law. ................................................................ 5

            B.      Plaintiffs Have Pled a Policy or Custom. ......................................................... 8

            C.      Aberdeen's Policies and Practices Violate the Constitution. ........................... 9

                    1.      Aberdeen Violates the Fourteenth Amendment by Seeking Arrest Warrants Based Solely on Nonpayment Without Regard for Ability to Pay. .................................................................. 9

                    2.      Aberdeen Violates the Fourth Amendment by Seeking Illegal Arrest Warrants Based on Unsworn Allegations That Contain Material Omissions and Lack Probable Cause. ...................................................................................................... 11

                    3.      Aberdeen Violates Equal Protection by Subjecting Indigent Criminal Court Debtors to Onerous Collection Methods. ............. 12

                    4.      Aberdeen Violates Due Process Because It Has Conflicting Loyalties to Money and Justice. ...................................................... 14

            D.      Aberdeen Is Not Entitled to Immunity. ......................................................... 16

      II.     Plaintiffs Have Stated a RICO Claim Against Aberdeen. ..................................... 16

            A.      Plaintiffs Have Pled the Existence of an Enterprise. ................................... 16

             B.      The RICO Enterprise Affects Interstate Commerce. ................................... 18

             C.      Plaintiffs Have Shown Injury for RICO Purposes. ..................................... 19

             D.      The RICO Enterprise Engaged in a Pattern of Activity. .............................. 20

             E.      Plaintiffs Have Pled Predicate Offenses of Racketeering. .......................... 21

      III.    Plaintiffs Have Properly Pled Their State Law Claims. ....................................... 24

CONCLUSION ................................................................................................................ 25

BRIEF E

## TABLE OF AUTHORITIES

**Cases**

*Advanced Optics Elecs., Inc. v. Robins*, 633 F. Supp.2d 1237 (D.N.M. 2008) ........................... 21

*Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584 (10th Cir. 1999) ........................ 5

*Austin v. Paramount Parks, Inc.*, 195 F.3d 715 (4th Cir. 1999) ........................................... 8

*Bank of Oklahoma, N.A. v. Portis*, 942 P.2d 249 (Okla. Civ. App. 1997).................................. 24

*Bearden v. Georgia*, 461 U.S. 660 (1983) ................................................................. 9, 22

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001) ..................... 7

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125 (10th Cir. 2014) ............... 7

*Bryson v. City of Oklahoma City*, 627 F.3d 784 (10th Cir. 2010) ...................................... 8

*Buffin v. City & Cnty. of S.F.*, No. 15-cv-04959-YGR, 2018 WL 424362 (N.D. Cal. Jan. 16, 2018) .................................................................................................. 10

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) ............................................... 15

*Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014)..................................... 22

*City of Scottsbluff v. Waste Connections of Neb., Inc.*, 809 N.W.2d 725 (Neb. 2011)............... 25

*Cleavinger v. Saxner*, 474 U.S. 193 (1985) ............................................................ 16

*Colite Int'l Inc. v. Robert L. Lipton, Inc.*, No. 05-cv-60046, 2006 WL 8431505 (S.D. Fla. Jan. 20, 2006).......................................................................................... 19

*Connally v. Georgia*, 429 U.S. 245 (1977) ............................................................. 15

*Creech v. Fed. Land Bank*, 647 F. Supp. 1097 (D. Colo. 1986).......................................... 20

*Dow v. Baird*, 389 F.2d 882 (10th Cir. 1968) ......................................................... 11

*Ellison v. Garbarino*, 48 F.3d 192 (6th Cir. 1995) ..................................................... 6

*Fuller v. Oregon*, 417 U.S. 40 (1974) ................................................................ 13

*Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442 (10th Cir. 1995) ........................ 5, 6, 7

*Gallegos v. Bernalillo Cnty. Bd. of Cnty. Comm'rs*, 278 F. Supp. 3d 1245 (D.N.M. 2017) ........ 16

*George v. Urb. Settlement Servs.*, 833 F.3d 1242 (10th Cir. 2016)...................................... 16

*Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500 (10th Cir. 2023) ............................... 2

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989)................................................... 21

*Harte v. Bd. of Comm'rs of Cnty. of Johnson*, 864 F.3d 1154 (10th Cir. 2017)........................ 12

*Hoppe v. Klapperich*, 28 N.W.2d 780 (Minn. 1947) ................................................. 24

*Huggins v. Winn-Dixie Greenville, Inc.*, 153 S.E.2d 693 (S.C. 1967)................................... 24

*In re Lampart*, 856 N.W.2d 192 (Mich. Ct. App. 2014)................................................. 20

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974) ............................................. 6

*James v. Strange*, 407 U.S. 128 (1972)............................................................... 13

*Jatoi v. Hurst-Euless-Bedford Hosp. Auth.*, 807 F.2d 1214 (5th Cir. 1987)............................. 7

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980) ...................................................... 15

*Mathews v. Eldridge*, 424 U.S. 319 (1976)............................................................ 11

*McGinnity v. Kirk*, 362 P.3d 186 (Okla. 2015)........................................................ 24

*Monroe v. Pape*, 365 U.S. 167 (1961) ................................................................. 5

*NCAA v. Tarkanian*, 488 U.S. 179 (1998) ............................................................. 5

*Okla. Dep't of Sec. ex rel. Faught v. Blair*, 231 P.3d 645 (Okla. 2010)................................ 25

*Perez v. United States*, 402 U.S. 146 (1971) ......................................................... 22

*Poolaw v. Marcantel*, 565 F.3d 721 (10th Cir. 2009).................................................. 11

*Ray v. Jud. Corr. Servs., Inc.*, 270 F. Supp. 3d 1262 (N.D. Ala. 2017)................................ 16

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) ...................................................... 19

*Robbins v. Wilkie*, 300 F.3d 1208 (10th Cir. 2002) .................................................. 21

BRIEF E

*Robbins v. Wilkie*, 433 F.3d 755 (10th Cir. 2006) ........................................................ 22

*Safe Sts. All. v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017) .................................... 21

*Smith v. United States*, 561 F.3d 1090 (10th Cir. 2009) ................................................. 2

*State v. Ballard*, 1994 OK CR 6, 868 P. 2d 738 ....................................................... 13, 14

*State v. Catling*, 438 P.3d 1174 (Wash. 2019) ............................................................. 20

*Stewart v. Donges*, 915 F.2d 572 (10th Cir. 1990) ................................................... 11, 12

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) ............................................................ 21

*Tumey v. Ohio*, 273 U.S. 510 (1927) ............................................................................ 15

*Turner v. Rogers*, 564 U.S. 431 (2011) ........................................................................ 10

*United States v. Altomare*, 625 F.2d 5 (4th Cir. 1980) ................................................ 19

*United States v. Boulahanis*, 677 F.2d 586 (7th Cir. 1982) ........................................ 18

*United States v. Briola*, 465 F.2d 1018 (10th Cir. 1972) ............................................ 23

*United States v. Curtis*, 344 F.3d 1057 (10th Cir. 2003) ............................................ 18

*United States v. Garcia*, 793 F.3d 1194 (10th Cir. 2015) ........................................... 18

*United States v. Goode*, 945 F.2d 1168 (10th Cir. 1991) ............................................ 23

*United States v. Hutchinson*, 573 F.3d 1011 (10th Cir. 2009) ................................... 17

*United States v. Johnson*, 440 F.3d 832 (6th Cir. 2006) ............................................ 17

*United States v. Kamahele*, 748 F.3d 984 (10th Cir. 2014) ....................................... 16

*United States v. Kennedy*, 131 F.3d 1371 (10th Cir. 1997) ....................................... 12

*United States v. Knight*, 659 F.3d 1285 (10th Cir. 2011) .......................................... 21

*United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008) ................................................. 18

*United States v. Natale*, 526 F.2d 1160 (2d Cir. 1975) ............................................. 23

*United States v. Ortiz-Hernandez*, 427 F.3d 567 (9th Cir. 2005) ............................ 12

*United States v. Stauffer*, 922 F.2d 508 (9th Cir. 1990) ........................................... 23

*United States v. Turkette*, 452 U.S. 576 (1981) ........................................................ 16

*United States v. Zappola*, 677 F.2d 264 (2d Cir. 1982) ............................................ 22

*Valdez v. City & Cnty. of Denver*, 878 F.2d 1285 (10th Cir. 1989) ......................... 16

*Waucaush v. United States*, 380 F.3d 251 (6th Cir. 2004) ........................................ 18

*Wilkinson v. Austin*, 545 U.S. 209 (2005) .................................................................. 10

*Williams v. Illinois*, 399 U.S. 235 (1970) ..................................................................... 9

*Williams v. Miller*, No. 14-cv-61, 2015 WL 1207011 (W.D. Okla. Mar. 12, 2015) .... 8

*Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277 (11th Cir. 2006) ........................... 17

*Wittner v. Banner Health*, 720 F.3d 770 (10th Cir. 2013) ................................... 5, 6, 7

*Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987) .................. 15

**Constitutional Provisions**

Okla. Const. art. II, § 30 ................................................................................................. 25

**Statutes**

18 U.S.C. § 1961 ....................................................................................................... 16, 21

18 U.S.C. § 1962 ................................................................................................... 18, 19, 21

18 U.S.C. § 1964 ............................................................................................................. 20

18 U.S.C. § 891 .............................................................................................................. 23

18 U.S.C. §§ 1961–1968 ................................................................................................... 1

18 U.S.C. §§ 891–894 .................................................................................................... 22

42 U.S.C. § 1983 ...................................................................................................... 5, 8, 9

42 U.S.C. § 407 .............................................................................................................. 20

Okla. Stat. tit. 19, § 514.4 ............................................................................................... 6

BRIEF E

Okla. Stat. tit. 19, § 514.5 ................................................................................ 6, 20, 25
Okla. Stat. tit. 22, § 983 ....................................................................................... 11, 22
Oklahoma Uniform Consumer Credit Code, Okla. Stat. tit. 14A, §§ 1-101 *et seq.* .................... 13

**Rules**

Rule 8.4, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (Okla. R. Crim. App. 8.4) ................................................................................................. 11
Rule 8.5, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (Okla. R. Crim. App. 8.5) ............................................................................................. 20, 21

**Legislative Materials**

H.B. 2259, 59th Leg., 1st Reg. Sess. (Okla. 2023) ................................................ 6
S.B. 689, 56th Leg., 2d Reg. Sess. (Okla. 2018) ..................................................... 11

**Other Authorities**

Restatement (Third) of Restitution and Unjust Enrichment § 1, cmt. b ...................................... 25
Restatement (Third) of Restitution and Unjust Enrichment § 14 ................................................ 25

BRIEF E

# INTRODUCTION

Through a lucrative contract with the lobbying organization for Oklahoma sheriffs, Aberdeen Enterprizes II, Inc. ("Aberdeen") is empowered to collect court debts owed in criminal and traffic cases in counties throughout Oklahoma. This agreement is the foundation of an illegal extortionate scheme whereby Aberdeen uses the threat of arrest to coerce tens of millions of dollars in payments from indigent court debtors which then enrich Aberdeen, its officers (Jim and Rob Shofner), the Oklahoma Sheriffs' Association ("OSA"), the sheriffs themselves, and the Oklahoma court system. In service of this scheme, Aberdeen regularly threatens to obtain new arrest warrants or refuses to remove old ones unless impoverished debtors make payments that they cannot afford without sacrificing basic necessities or handing over protected government benefits. Further, Aberdeen seeks and procures warrants, and with the assistance of the Sheriff Defendants who execute them, has Plaintiffs arrested and detained solely for nonpayment.

Plaintiffs, all impoverished debtors suffering under this systemic extortion scheme, have sued Aberdeen and the other Defendants in this case under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. §§ 1961–1968), the United States Constitution, and Oklahoma law. Even as it has partnered with the key government actors in Oklahoma's criminal legal system to leverage the threat of arrest and incarceration to extract debt payments, Aberdeen disingenuously underplays its authority and behavior by asserting that it is a "for profit" corporation unfettered by the legal principles that bind those state actors. Aberdeen is wrong as a matter of fact and law. The agreement with the sheriffs effectively deputizes Aberdeen, giving it law enforcement authority and discretion to seek arrest warrants, and simultaneously allows the company to maximize its profit from those decisions. Aberdeen's exclusive and discretionary power to seek arrest warrants and have debtors thrown in jail for nonpayment makes it a moving force behind the violations of Plaintiffs' constitutional rights. This Court should disregard

1

BRIEF E

Aberdeen's attempts to deny the factual allegations and its misapprehension of the relevant law, and deny its motion to dismiss (Doc. 404).

## **RELEVANT BACKGROUND**[1]

Aberdeen is a private, for-profit company that has contracted with OSA, the Defendant Sheriffs' agent, to collect court debts in each of the counties in which the Defendant Sheriffs operate. Second Am. Compl. ("SAC"), Doc. 212, ¶¶ 5, 26, 51. Aberdeen has no revenue source other than payments by court debtors. *Id.* ¶ 107. It assumes control of debt collection for a specific case after a court clerk seeks, and a district court issues, a debt-collection arrest warrant against the individual owing debt, and a court clerk decides to transfer the case to Aberdeen. *Id.* ¶ 50. As part of its contractually delegated responsibility to collect court debt, Aberdeen uses its discretion to determine payment plans for the payment of court debts, to monitor debtors' compliance with those plans, to control when to request the recall of warrants, and to determine when to request that new arrest warrants issue. *Id.*

Once Aberdeen takes control of a case, it engages in threats and extortion to extract as much money as possible from the debtor, without regard for the debtor's ability to pay or need to obtain the basic necessities of life. *Id.* ¶ 52. Aberdeen begins repeatedly contacting the debtor and their family and threatening arrest to coerce payment, even when it knows the debtor is too poor to pay. *Id.* ¶¶ 2, 7, 82.[2] Aberdeen employees tell debtors that the only way to remove an active arrest warrant is to pay an amount Aberdeen deems sufficient, *id.* ¶¶ 68-71, 73, 77, and threaten

---

[1] This section includes allegations relevant to Plaintiffs' claims against Aberdeen. For a summary of the allegations and claims against all Defendants, see *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 509-14 (10th Cir. 2023).

[2] Aberdeen's claim that it "does nothing but supply information of nonpayment that another entity may then use in seeking a warrant," Doc. 404 at 18, is plainly at odds with Plaintiffs' allegations, which must be taken as true. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

BRIEF E

debtors with imminent arrest, *see, e.g.*, *id.* ¶ 75 (describing call in which an employee passed the phone to a purported law enforcement officer "who stated that he would come and immediately arrest the debtor if the debtor did not pay enough money to Aberdeen"). They also tell debtors who have had their warrants recalled that Aberdeen will secure new arrest warrants if they do not continue to make payments prescribed by the company. *Id.* ¶ 69. In all cases, "[t]he threat is explicit and systemic as a matter of policy: pay Aberdeen[] what it demands when it demands it, or be arrested and jailed." *Id.* ¶ 71. And these tactics work: Individuals sacrifice basic necessities, beg others for money, and divert money from means-tested disability payments to pay Aberdeen rather than live under the shadow of an arrest warrant. *Id.* ¶¶ 7, 82; *see, e.g.*, *id.* ¶¶ 23, 173, 203.[3]

If Aberdeen's threats are unsuccessful, the company contacts court clerks to request an arrest warrant for nonpayment. *Id.* ¶¶ 88-90.[4] When Aberdeen makes this request, it does not provide any of the information that it possesses about the person's indigence. *Id.* ¶¶ 63, 89-90, 93. Nor does it swear to any facts or give debtors notice or an opportunity to be heard on their ability to pay. *Id.* Instead, Aberdeen merely sends a message that contains an unsworn allegation that the debtor has not paid. *Id*. ¶ 63. In at least one county, the court clerk annotates case dockets in a way that illustrates Aberdeen's exclusive authority, specifically warning, "DO NOT ISSUE WARRANNT UNLESS CONTACTED BY ABERDEEN." *Id*. ¶ 62. And Plaintiffs allege that "[a]s a matter of policy and practice, to coerce payments and increase profits," Aberdeen promises

---

[3] Aberdeen has also implemented policies to obscure the fact that direct payment to the court is an option (and an almost always preferable one, given that the company usually demands larger payments), and employees often tell people that paying Aberdeen is the only option. *Id.* ¶ 83.

[4] Here again, Aberdeen's glaring assertion that it "does not seek . . . or recall warrants." Doc. 404 at 2, is contradicted by the allegations in the complaint. So, too, is its assertion that it "tries to assist persons with outstanding failure-to-pay warrants . . . in order to help them avoid arrest." *Id.* at 22.

3

BRIEF E

to recall an active warrant if a debtor makes the payment the company demands, and threatens to issue a new one if they fail to make ongoing payments after a warrant has been recalled. *Id*. ¶ 68.

As a result of Aberdeen's predatory behavior, Plaintiffs, all of whom are indigent, have suffered serious, persistent, and ongoing harm. Aberdeen's repeated threats against Plaintiff Carly Graff caused her so much fear that she would "only leave[] her home to take her children to their school bus stop." *Id.* ¶¶ 159-60. Aberdeen threatened not only Plaintiff Randy Frazier, a veteran with serious health issues—of which Aberdeen is well aware—but also his daughter. *Id.* ¶¶ 166-67. Plaintiff David Smith, under threat of arrest, was forced to forego basic necessities and his child support payment in order to pay Aberdeen, costing him visitation with his son. *Id.* ¶ 173. Aberdeen continues to threaten to jail Plaintiff Kendallia Killman—whose only income is a disability payment that supports her intellectually disabled son—if she does not pay them a lump sum. *Id.* ¶¶ 182, 184. And Plaintiff Melanie Holmes—after suffering near-daily threats of arrest by Aberdeen, one actual arrest on a debt-collection warrant, a weeklong detention due to her inability to pay for release, and eviction and homelessness—ultimately was forced to move to Oregon to live with her youngest daughter. *Id.* ¶¶ 204-12. She is afraid to return to Oklahoma because of her debt-collection arrest warrants. *Id.* ¶ 213.

## ARGUMENT

The Second Amended Complaint alleges that Aberdeen infringes on the rights of Plaintiffs and other indigent court debtors in Oklahoma by: **(1)** threatening them and extorting money, in violation of federal racketeering law (Count 1), the Constitution (Count 7), and state law (Counts 8-10); **(2)** maintaining an impermissible financial conflict of interest in the outcome of the cases under its authority, in violation of the Constitution (Count 6); and **(3)** failing to assess (or in some cases actively concealing) a debtor's ability to pay before seeking an arrest warrant, in violation

BRIEF E

of the Constitution (Counts 2, 3 & 5). For the reasons explained below, the Court should deny Aberdeen's motion to dismiss. Plaintiffs have adequately pled each of their claims.

## I.    Plaintiffs Have Stated Claims Pursuant to 42 U.S.C. § 1983.

### A.    Aberdeen Acts Under Color of Law.

Aberdeen argues that because it is a private entity and because the contract is authorized by state law, it is not a state actor or otherwise acting "under color of law," and thus not subject to suit under § 1983. *See* Doc. 404 at 11-14. This argument is wrong.

Defendants are subject to a claim under § 1983 when they "represent [the state] in some capacity, whether they act in accordance with their authority or misuse it." *NCAA v. Tarkanian*, 488 U.S. 179, 191 (1998) (quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)). Courts employ a "flexible approach" to determine whether a private entity is acting under color of state law. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995). A private entity acts under color of state law if it meets any one of the three tests described below. In this case, Aberdeen meets all three.[5]

*Joint Action.* Aberdeen meets the joint-action test because it "is a willful participant in joint action with the state or its agents" that deprives Plaintiffs of their constitutional rights. *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 596 (10th Cir. 1999) (quoting *Gallagher*, 49 F.3d at 1453); *see also id.* (finding joint action where a private treatment center acted with the state to implement a policy resulting in illegal arrest and detention in treatment facilities). Here, pursuant to a contract with OSA as agent for Defendant Sheriffs, Aberdeen and government

---

[5] Aberdeen also likely exercises powers "traditionally" and "exclusively reserved to the State," *Wittner v. Banner Health*, 720 F.3d 770, 777 (10th Cir. 2013). *See generally* Br. G at 11 n.7. But the Court need not reach this stricter test because Aberdeen clearly meets the other three tests.

BRIEF E

entities work together to collect public debt. *See* Okla. Stat. tit. 19, § 514.4 (eff. Nov. 1, 2010).[6] Under the contract, government actors assist in Aberdeen's collection of the debt, SAC ¶¶ 60-61, and punish and coerce debtors when they default, *id*. ¶¶ 62, 65. Aberdeen, the courts, and the sheriffs work together to arrest and imprison indigent persons who do not pay enough to Aberdeen. *Id*. ¶¶ 88-99. These practices represent "joint action" under any definition.

    ***Sufficiently Close Nexus***. Aberdeen also satisfies the "nexus" test. A private entity acts under color of law if there is a "'sufficiently close nexus' between the government and the challenged conduct" such that the conduct "'may be fairly treated as that of the State.'" *Gallagher*, 49 F.3d at 1448 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)). The test is met when the state acts "coercively" on the private actor, *Wittner*, 720 F.3d at 775, often in the form of a "state regulation or contract," *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995). Here, Aberdeen has contracted with OSA as agent for Defendant Sheriffs (who are obviously government actors), and is empowered by Oklahoma law to collect public court debts. The contract mandates that Aberdeen follow specific procedures for debt collection *see, e.g.*, SAC Ex. A, Doc. 212-1, at 3, ¶ 2(a); *id.* at 5, ¶¶ 2(e)(3), 2(e)(3)(C), and also imposes obligations on public actors, *see*, *e.g.*, *id.* at 4-5, ¶¶ 2(b), 2(e)(3)(B). This lack of discretion on the part of both the state and its contractor is an indication that Aberdeen's collection of court fees "may be fairly treated as that of the state." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1143 (10th Cir.

---

[6] An amended version of § 514.4—as well as § 514.5—went into effect on November 1, 2018, and yet another version is set to go into effect on November 1, 2023. A copy of both the laws in effect at the time this suit was filed and the laws that remain in effect until November 1, 2023, are attached as an exhibit to Plaintiffs' first brief in opposition to Defendants' renewed motions to dismiss. *See* Br. A, Ex. 1. The main difference between the two versions of § 514.4 is that the earlier provided sheriffs the option to contract with a debt collector directly, while the later only provides the option to contract with OSA as a go-between. The 2023 amendments do not alter this aspect of the statute. *See* H.B. 2259, 59th Leg., 1st Reg. Sess. (Okla. 2023). As for § 514.5, cited *infra*, it has remained largely the same since 2010.

BRIEF E

2014) (internal quotation marks omitted). Moreover, under the contract, government officials (county sheriffs and court clerks) determine which cases to transfer to Aberdeen, effectively controlling the scope of Aberdeen's business and activities, and assist them in their collection efforts. *See* SAC Ex. A at 3, ¶ 2(a); SAC ¶ 60.

**Symbiotic Relationship.** Finally, the "symbiotic relationship" test is satisfied here because the state "has so far insinuated itself into a position of interdependence" with Aberdeen that "it must be recognized as a joint participant." *Gallagher*, 49 F.3d at 1451 (internal quotation omitted). Determining when the entity's operations become sufficiently commingled is a "matter[] of degree." *Id.* at 1452. Aberdeen here acts under the color of law because "the state's relationship goes beyond the 'mere private [purchase] of contract services.'" *Wittner*, 720 F.3d at 777-78 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 299 (2001)). The Oklahoma counties rely heavily on Aberdeen's collection of court debts to run their judicial systems. The debts collected by Aberdeen are deposited into the "Court Fund," which is used to pay for compensation, juror fees, witness fees, transcripts, and indigent defendant services, among other things. SAC ¶ 111-12. The money Aberdeen collects also pays for public employees' salaries. *Id.* ¶ 114. This heavy dependence on Aberdeen's debt collection illustrates the interdependence between defendants and the state. *See Jatoi v. Hurst-Euless-Bedford Hosp. Auth.*, 807 F.2d 1214, 1221-22 (5th Cir. 1987) (finding state action where state relied on private company to satisfy its financial obligations, such as mortgages or bonds). Aberdeen has clearly acted under the color of law as determined by any of these tests.[7]

---

[7] Aberdeen additionally argues that its furnishing of information to law enforcement cannot constitute state action, Doc. 404 at 13, citing several cases involving individuals reporting crimes to police. As explained above, Aberdeen does not merely "furnish[] . . . information." But in any event, the cited cases are inapplicable to a situation where a private corporation has a contractual

BRIEF E

### B.      Plaintiffs Have Pled a Policy or Custom.

Aberdeen's argument that Plaintiffs have not alleged an unconstitutional policy or custom of Aberdeen's that caused their injuries, Doc. 404 at 14-15, is equally mistaken. Section 1983 imposes liability on a municipal corporation for, among other things, policies and "decisions of employees with final policymaking authority" that cause constitutional injuries. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks omitted). "[P]rinciples of § 1983 'policymaker' liability" are "equally applicable to a private corporation," like Aberdeen, "acting under color of state law." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 729 (4th Cir. 1999); *see also, e.g.*, *Williams v. Miller*, No. 14-cv-61, 2015 WL 1207011, at *19 (W.D. Okla. Mar. 12, 2015) (denying private corporation's motion to dismiss due to decisions of employee "charged with the policy and ultimate decision-making responsibilities").

Here, Plaintiffs seek to hold Aberdeen liable for its unconstitutional *policies*. Plaintiffs have specifically alleged that Aberdeen's leveraging of Oklahoma's law enforcement apparatus to unconstitutionally extract debt from those who cannot pay is, in fact, <u>official company policy</u> and, indeed, the entire basis for its business model. Among other things, Plaintiffs have alleged that Aberdeen explicitly instructs its employees to "overcome" any objections about a debtor's inability to pay, SAC ¶ 86, and provides them scripts for conversations with indigent people, including those receiving SSI disability benefits, *id.* ¶ 82. These sample scripts instruct employees to threaten debtors with arrest if they do not pay Aberdeen, *id.* ¶¶ 74, 87, and forbid employees from informing people of their legal rights and other lawful avenues of paying court debts, *id.* ¶ 83. The highest level of management at Aberdeen carefully supervises the employees to ensure they comply with these extortionate policies, including by listening to their phone calls with debtors. *Id.* ¶¶ 27-28,

---

arrangement with a public entity, and works in concert with court officials and law enforcements to carry out its statutorily authorized contractual obligation to collect *public debt*.

BRIEF E

100-01. And, when seeking arrest warrants for nonpayment, Aberdeen's *policy* is to withhold information about a debtor's indigence or to swear to the factual allegations that form the basis of the warrant request. *Id*. ¶¶ 89-90. This is not an allegation of "vicarious liability." Doc. 404 at 14. It is a straightforward application of settled principles of corporate liability under § 1983.

### C.    Aberdeen's Policies and Practices Violate the Constitution.

#### 1.    Aberdeen Violates the Fourteenth Amendment by Seeking Arrest Warrants Based Solely on Nonpayment Without Regard for Ability to Pay.

As a matter of policy and practice, Aberdeen seeks arrest warrants against indigent debtors solely based on nonpayment without regard to their ability to pay. SAC ¶ 89. At no point prior to seeking an arrest warrant, or the actual arrest of a court debtor, does Aberdeen or any other Defendant provide the protections that the Supreme Court and Oklahoma law have mandated: an opportunity to be heard, consideration of ability to pay and alternatives to incarceration, and findings concerning willfulness.

In Count 2, Plaintiffs challenge this practice under the hybrid due-process and equal-protection framework articulated in *Bearden v. Georgia*, 461 U.S. 660 (1983). SAC ¶¶ 319-22. That framework prohibits the government from arresting and jailing a person solely because she cannot afford to pay an amount of money. *See* Pls.' Mot. for TRO & Prelim. Inj., Doc. 77, at 5-11 (citing cases including *Williams v. Illinois*, 399 U.S. 235, 240-41 (1970) (holding imprisonment resulting "directly from an involuntary nonpayment of a fine or court costs" is "an impermissible discrimination that rests on ability to pay"), and *Bearden*, 461 U.S. at 667-68 (holding state may not "imprison a person solely because he lacked the resources to pay" a fine or restitution)). A debtor may only be jailed for nonpayment found to be willful. *Bearden*, 461 U.S. at 672.

Aberdeen incorrectly argues that the claim fails because Plaintiffs have not alleged "conscience-shocking conduct." Doc. 404 at 17. That test is not implicated here. *Bearden* creates

BRIEF E

a substantive right to be free from wealth-based detention that invokes heightened scrutiny, *see, e.g.*, *Buffin v. City & Cnty. of S.F.*, No. 15-cv-04959-YGR, 2018 WL 424362, at *8 (N.D. Cal. Jan. 16, 2018), and procedural protections required to guarantee that right are established by *Turner v. Rogers*, 564 U.S. 431, 447-48 (2011). Here, there is no dispute that Plaintiffs did not receive *any* procedure before suffering the challenged harms.

Next, Aberdeen argues that it is not responsible for any due process violation because it neither conducts ability-to-pay determinations nor executes warrants. Doc. 404 at 16. This too is incorrect. Plaintiffs have pointed to several formal policies and customs of Aberdeen that directly contribute to the fact that they are not given the ability-to-pay determinations to which they are entitled. *See supra* Section I.B. The scheme to extort debt payments from Plaintiffs relies on Aberdeen—empowered by state law and by contract with OSA—as the primary mover, and indeed, in practice, *only* mover in deciding whether a debt-collection arrest warrant should issue after a case is transferred. *See, e.g.*, SAC ¶ 62 ("Court clerks also delegate the function of determining when to seek a new arrest warrant for nonpayment to Aberdeen, Inc. . . . .").

Plaintiffs also challenge these practices in Count 5, which alleges that Defendants' jailing of debtors without notice and a hearing violates Plaintiffs' state-created liberty interests. SAC ¶ 347. Like with Count 2, Aberdeen first disclaims responsibility for providing such process, *see* Doc. 404 at 19, which fails for the same reasons stated above. Aberdeen next argues that Count 5 is either duplicative of Count 2 or an improper attempt to seek redress directly under Oklahoma law. *Id.* It is neither. "A liberty interest may arise from the Constitution itself . . . [or] from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Here, Oklahoma law provides every person owing court debt with an affirmative right to be free from imprisonment in the absence of proof that the person has willfully refused to pay her

BRIEF E

court debt. *See* Okla. Stat. tit. 22, § 983(A);[8] Okla. R. Crim. App. 8.4. This right creates a distinct liberty interest from the one guaranteed by *Bearden* and invoked in Count 2. Under both theories, Plaintiffs are entitled to a particular process that ensures they will not be jailed solely for being indigent. *See generally Mathews v. Eldridge*, 424 U.S. 319 (1976). Because of Aberdeen's policy and practices, Plaintiffs do not receive that process.

> 2. <u>Aberdeen Violates the Fourth Amendment by Seeking Illegal Arrest Warrants Based on Unsworn Allegations That Contain Material Omissions and Lack Probable Cause.</u>

As alleged in Count 3, Aberdeen violates the Fourth Amendment because it seeks arrest warrants that are unsupported by sworn factual allegations or probable cause that the alleged nonpayment was willful, and omits material facts in those warrant applications as a matter of policy. SAC ¶¶ 330-32, 336; *see* Doc. 77 at 11-15; *see also*, *e.g.*, *Dow v. Baird*, 389 F.2d 882, 884 (10th Cir. 1968) (finding a signed but unsworn affidavit "clearly and obviously invalid"); *Stewart v. Donges*, 915 F.2d 572, 582-83 (10th Cir. 1990) (finding an intentional or reckless omission of material information from a warrant application to be a clearly established constitutional violation); *Poolaw v. Marcantel*, 565 F.3d 721, 733 (10th Cir. 2009) (denying qualified immunity to officers who requested, but did not execute, warrant that lacked probable cause).

Again, Aberdeen does not seriously contest the principles at issue. Instead, it contends that Plaintiffs' Fourth Amendment claim must fail because there is no "specific allegation" that it provides "false information" to serve as a basis for the warrants. Doc. 404 at 18. But Aberdeen does not need to provide false information; it is enough that Aberdeen knowingly or recklessly

---

[8] Plaintiffs have attached a copy of Section 983 that will remain in effect until November 1, 2023, as an exhibit to their first brief in opposition. *See* Br. A, Ex. 2. Although this version of the law went into effect after Plaintiffs filed this lawsuit, the prior version was identical in all relevant respects. *See* S.B. 689, 56th Leg., 2d Reg. Sess. (Okla. 2018).

BRIEF E

makes "material omissions" in its warrant applications. *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997) (quoting *Stewart*, 915 F.2d at 582); *see also Harte v. Bd. of Comm'rs of Cnty. of Johnson*, 864 F.3d 1154, 1182 (10th Cir. 2017) ("law-enforcement officers must not 'disregard facts tending to dissipate probable cause'" (quoting *United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005))). And here, as a matter of policy and practice, when Aberdeen employees seek debt-collection arrest warrants, they omit the debtor's reasons for nonpayment, even when they know the reason is the person's indigence. SAC ¶¶ 63, 322, 332, 334, 336; *see, e.g.*, *id.* ¶¶ 204, 184, 207 (Aberdeen requested warrant for Ms. Holmes and Ms. Killman even after they repeatedly informed the company that they could not afford to pay); *id.* ¶¶ 192, 198 (Aberdeen threatened to seek or refused to recall warrants against Mr. Wilkins and Mr. Choate despite knowing they could not pay).

Finally, Aberdeen's actions are the moving force behind this Fourth Amendment violation. Plaintiffs do not allege that Aberdeen "does nothing but supply information of nonpayment that another entity may then use in seeking a warrant." Doc. 404 at 18. As explained above, Plaintiffs have alleged it is *Aberdeen*, and not any other actor, that exercises discretion as to whom will be subject to debt-collection arrest warrants, based on whether the debtor has acquiesced to Aberdeen's threats. This is pure law enforcement discretion—not merely the "begin[ning] [of] the warrant process." *Id.* at 17. Indeed, given the rubber-stamp approval by clerks and judges, it is the only event that determines whether an arrest warrant is issued. *See, e.g.*, SAC ¶¶ 126, 138. As such, it is the direct cause of the violation of Plaintiffs' Fourth Amendment rights.

### 3. Aberdeen Violates Equal Protection by Subjecting Indigent Criminal Court Debtors to Onerous Collection Methods.

Plaintiffs allege in Count 7 that the use of especially "onerous" debt-collection methods—including "an additional 30-percent penalty surcharge" and "repeated threats of arrest[]"—denies

BRIEF E

them equal protection as compared to other judgment debtors. SAC ¶ 361. Under well-established Supreme Court precedent, the government may not use "unduly harsh or discriminatory terms" to collect court costs owed from a criminal case, "merely because the obligation is to the public treasury rather than to a private creditor." *James v. Strange*, 407 U.S. 128, 138 (1972). In *Strange*, the Court struck down a Kansas recoupment statute that expressly denied civil debt protections to former criminal defendants who owed money to the State for indigent defense. *Id.* at 135-36, 141-42. The Court reasoned that state interests "are not thwarted by requiring more even treatment of indigent criminal defendants with other classes of debtors," *id.* at 141, and denying them protections "embodie[d] elements of punitiveness and discrimination which violate the rights of citizens to equal treatment under the law," *id.* at 142. The Court accordingly struck down Kansas's "unduly harsh" debt-collection scheme. *Id.* at 138; *see also Fuller v. Oregon*, 417 U.S. 40, 47 (1974) (affirming that the Fourteenth Amendment protects government debtors from unduly harsh treatment as compared to people indebted to private creditors). Here, when Aberdeen receives a case, Plaintiffs are exposed to surcharges, threats, arrest warrants, and jailing in the pursuit of their county debts. Plaintiffs are thereby singled out through the use of extreme collection methods not available against other Oklahoma judgment debtors. *See generally* Oklahoma Uniform Consumer Credit Code, Okla. Stat. tit. 14A, §§ 1-101 *et seq.* The Equal Protection Clause does not permit such discrimination.

Aberdeen argues that Plaintiffs' claim fails because Oklahoma law already provides that people who are unable to pay criminal court debt receive the same protections as civil debtors. *See* Doc. 404 at 21-22 (citing *State v. Ballard*, 1994 OK CR 6, ¶¶ 6-7, 868 P. 2d 738, 741). This argument is baseless, because Plaintiffs do not challenge that Oklahoma law—they challenge Defendants' practices, by which criminal court debtors are subjected to vastly different and much

BRIEF E

more punitive measures for nonpayment than civil judgment debtors, including threats of arrest from Aberdeen, actual arrest on a warrant requested by Aberdeen, and lengthy jailing. *See, e.g.*, SAC ¶ 46 (harms identified in lawsuit resulted from the "collapse" of state law protections). These practices lack any statutory basis and discriminate against indigent criminal court debtors.[9] In *Ballard*, the Court emphasized that "[i]f a defendant cannot pay the assessment because he is without means to do so, he is not thrown into prison or otherwise punished." 868 P.2d at 741. That "enable[d] the assessment to withstand a constitutional challenge by an indigent on equal protection grounds." *Id*. Defendants' scheme does the opposite, purposefully using imprisonment to compel indigent debtors to pay. In other words, by *Ballard*'s logic, it is unconstitutional.

Aberdeen's remaining argument attempts to fight the facts in the complaint, saying Plaintiffs' allegation that the company "forces them to pay arbitrary and unachievable amounts to have a warrant recalled," SAC ¶ 361, is untrue because Aberdeen does not set the amounts due at the time of sentencing. Doc. 404 at 22. But, of course, these can both be true—Aberdeen does not set the amounts originally imposed, but then when a case is transferred, it sets the amount a person must pay to have a warrant recalled or avoid issuance of a new one. In any event, Aberdeen's harsh methods only apply to criminal court debtors, making it liable under Count 7.

4.    Aberdeen Violates Due Process Because It Has Conflicting Loyalties to Money and Justice.

Count 6 alleges a due process violation because those enforcing the debt-collection scheme have a personal financial interest in every decision that they make, in violation of Plaintiffs' right to a neutral decision maker. SAC ¶¶ 354-59. Aberdeen does not move to dismiss Count 6 on the

---

[9] The sole exception is the 30-percent surcharge which, as Aberdeen notes, is authorized by statute, but even then only if a debtor's warrant has been referred to a third-party debt collector like Aberdeen, which is itself a discretionary act. *See, e.g.*, SAC ¶¶ 36, 37, 50.

BRIEF E

grounds that it is not operating under an improper financial incentive. Instead, Aberdeen once again erroneously argues that its system of extorting debt payments upon threat of arrest is not "conscience-shocking," invoking principles of substantive due process. Doc. 404 at 20 (internal quotation marks omitted). But the Supreme Court has made clear that the neutrality requirement is a safeguard of *procedural* due process. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). The "conscience-shocking" cases cited by Aberdeen are simply not relevant to Plaintiffs' claims.

The Supreme Court has long held that judges and other neutral decisionmakers must be free from financial conflicts of interest. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876-78 (2009); *Connally v. Georgia*, 429 U.S. 245, 250 (1977); *Tumey v. Ohio*, 273 U.S. 510, 522 (1927). This extends to <u>all</u> officials who perform law enforcement functions. *See Jerrico* 446 U.S. at 251 (noting that due process would be implicated if there were "a realistic possibility that the assistant regional administrator's judgment w[ould] be distorted by the prospect of institutional gain as a result of zealous enforcement efforts"); *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 803-05, 807-08 (1987) (finding structural error due to the mere "*potential* for private interest to influence" prosecutor's actions (emphasis in original)).

Here, Defendants have abdicated to Aberdeen control over certain law enforcement and investigative functions, including determining the amount of money people should pay and when arrest warrants should issue for nonpayment. SAC ¶¶ 79, 88-89. Aberdeen's enforcement decisions directly affect how much money it makes. SAC ¶ 107. This incentive arrangement goes far beyond creating a "realistic possibility" that financial interests will shape enforcement decisions—it purposefully assures it. *Jerrico*, 446 U.S. at 250. Aberdeen, which explains that it is a "***private, for profit business*** [that] receives compensation for its services" in extracting money

BRIEF E

from Plaintiffs under the imprimatur of law enforcement, Doc. 404 at 21 (emphasis in original), effectively concedes the point. No more is needed to establish a due process violation.

### D.    Aberdeen Is Not Entitled to Immunity.

Aberdeen claims to be entitled to quasi-judicial immunity, because, as it argues, it is "only performing a purely ministerial act of locating and attempting to collect orders issued from a court." Doc. 404 at 15. This argument fails on its face because a corporate entity cannot claim quasi-judicial immunity. *See Gallegos v. Bernalillo Cnty. Bd. of Cnty. Comm'rs*, 278 F. Supp. 3d 1245, 1271 (D.N.M. 2017) (holding quasi-judicial immunity "protects people and not entities" (citing *Valdez v. City & Cnty. of Denver*, 878 F.2d 1285, 1287 (10th Cir. 1989))); *see also Ray v. Jud. Corr. Servs., Inc.*, 270 F. Supp. 3d 1262, 1289-90 (N.D. Ala. 2017). The inapposite cases that Aberdeen cites in its brief, Doc. 404 at 15, all addressed the immunity claims of individuals.

In any event, for the reasons described in Plaintiffs' opposition to the Shofners' motion to dismiss, even an *individual* in Aberdeen's situation would lack quasi-judicial immunity because Aberdeen does not perform quasi-judicial functions. *See* Br. F, Section I.D.1; *see also Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985). As such, Aberdeen is not entitled to quasi-judicial immunity from Plaintiffs' damages claims.

## II.    Plaintiffs Have Stated a RICO Claim Against Aberdeen.

### A.    Plaintiffs Have Pled the Existence of an Enterprise.

To show the existence of an association-in-fact constituting a RICO enterprise, Plaintiffs need only establish that there was a "group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Kamahele*, 748 F.3d 984, 1003 (10th Cir. 2014) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)); *see* 18 U.S.C. § 1961(4); *see also George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1250-51 (10th Cir. 2016) (two corporate entities engaged in course of conduct can constitute RICO enterprise). Such enterprises "may be

BRIEF E

proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Hutchinson*, 573 F.3d 1011, 1020 (10th Cir. 2009) (Gorsuch, J.) (internal quotation marks omitted). Here, the enterprise is straightforward: two corporate entity defendants, along with their officers and members, have united by contract with the common purpose of engaging in a course of conduct to maximize the collection of money from indigent court debtors.[10] SAC ¶¶ 55 *et seq.* Aberdeen and OSA are connected through and have periodically renewed that contract. *Id.* ¶ 350. And each of the Sheriff Defendants has authorized OSA to enter into the contract to use Aberdeen. *Id.* ¶ 65. The allegations meet every requirement for an association-in-fact enterprise.

Nevertheless, Aberdeen argues Plaintiffs have not adequately pled that the enterprise had a "common purpose," because court debt and the 30-percent penalty surcharge are assessed by the courts and set by statute. Doc. 404 at 7. This misunderstands the purpose of the RICO Defendants' conduct, which is aimed at maximizing the amounts *collected,* not merely *assessed*. No statute requires Aberdeen to use extortionate methods to collect court debt, and there is no guarantee that an assessed court debt will be collected in full. Indeed, many people are unable to comply with the payments that the courts demand. *See, e.g.*, SAC ¶ 153 (despite increase in assessed financial penalties, collections have decreased). The RICO Defendants work together to ensure that these debts are collected, and profit from the collection, thereby achieving, at a minimum, "the common purpose of making money." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1284 (11th Cir. 2006); *see also United States v. Johnson*, 440 F.3d 832, 840 (6th Cir. 2006).

---

[10] Aberdeen's claim that it "does not appear that Plaintiffs' 'enterprise' extends beyond Aberdeen itself" is thus not based in reality. *See* Doc. 404 at 7 n.2.

BRIEF E

### B.  The RICO Enterprise Affects Interstate Commerce.

Plaintiffs have also properly alleged that the activities of Defendants' debt-collection enterprise "affect[] interstate . . . commerce." 18 U.S.C. § 1962(c). To satisfy this requirement, a plaintiff need only establish that the enterprise had at least some "minimal effect" on interstate commerce. *United States v. Garcia*, 793 F.3d 1194, 1210 (10th Cir. 2015) (collecting cases). A plaintiff may meet this prong by establishing that the enterprise uses "an instrumentality of commerce, such as telephone lines," *United States v. Mejia*, 545 F.3d 179, 203 (2d Cir. 2008), or depletes assets that victims would potentially have used to purchase goods in interstate commerce, *see United States v. Curtis*, 344 F.3d 1057, 1070 (10th Cir. 2003). Plaintiffs satisfy either test here.

First, Plaintiffs have alleged that Defendants' enterprise uses interstate mail and wires (through telephone calls) to contact debtors across state lines and collect court debt from people out of state. SAC ¶ 279. Second, and independently, Plaintiffs have alleged facts that meet the depletion-of-assets theory. The complaint alleges that the enterprise has "collected millions of dollars in payments from thousands of debtors who would have used some of that money to purchase goods in interstate commerce." *Id.* Thus, interstate commerce was affected by Defendants' actions. *See United States v. Boulahanis*, 677 F.2d 586, 589-90 (7th Cir. 1982) (interstate commerce affected where extortionate activities prevented victim's out-of-state purchases that "amounted to only about $68 a month").

Citing *Waucaush v. United States*, 380 F.3d 251, 258 (6th Cir. 2004), Aberdeen argues that Plaintiffs' "general proposition that this matter involves the collection of money and movement of profits" does not create "sufficient proof" of a connection to interstate commerce. Doc. 404 at 4. But the "substantial" showing demanded in *Waucausch* applies only when the enterprise's activities are wholly non-economic—not where, as here, it engages in economic activity through extortion. *See* 380 F.3d at 255-56 (distinguishing cases involving "quintessential illegal economic

BRIEF E

activities" such as "extortion" (internal quotation mark omitted)). Relatedly, Aberdeen asserts without basis that the Court should simply disregard Plaintiffs' allegations concerning interstate communications and debt collection—first, because those allegations are purportedly inconsistent with Plaintiffs' assertion that the proposed class would be "limited in geographic scope (unlike a nationwide . . . class[)]," and second because every party is a resident of Oklahoma[11] with cases in Oklahoma. Doc 404 at 5. Neither argument is viable. The statute asks whether the "*enterprise*" is "engaged in, or [its] activities . . . affect[] interstate . . . commerce," 18 U.S.C. § 1962(c) (emphasis added), not whether the parties to the litigation, associated debt, or even specific activities of the enterprise taken in isolation implicate interstate commerce. *See United States v. Altomare*, 625 F.2d 5, 8 n.8 (4th Cir. 1980). Here, the enterprise's actions extend well beyond state lines and, cumulatively, have a substantial effect on interstate commerce. SAC ¶¶ 76, 96, 281.

### C.    Plaintiffs Have Shown Injury for RICO Purposes.

Aberdeen wrongly states that Plaintiffs "have suffered no concrete injury to their business or property." Doc. 404 at 6. The complaint alleges injury in the form of money that Plaintiffs paid to Aberdeen because of its extortionate threats. *See* SAC ¶ 315. A loss of money is a classic injury to "property" within the meaning of the RICO Act. *See, e.g.*, *Colite Int'l Inc. v. Robert L. Lipton, Inc.*, No. 05-cv-60046, 2006 WL 8431505, at *10 (S.D. Fla. Jan. 20, 2006); *cf. Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("A consumer whose money has been diminished by reason of an antitrust violation has been injured 'in his . . . property' within the meaning of § 4.").

Aberdeen next suggests that Plaintiffs have suffered no injury to their "business or property" because they were "actually remitting payments" for debt that was imposed by a court and/or statute. Doc. 404 at 6 (emphasis omitted). Defendants seem to be arguing that Plaintiffs

---

[11] Aberdeen is wrong, factually. Plaintiff Holmes is a resident of Oregon. SAC ¶ 212.

BRIEF E

have failed to establish cause in fact—or, in RICO parlance, that Plaintiffs suffered their injuries "by reason of" the enterprise's activities. 18 U.S.C. § 1964(c). This is simply wrong. Aberdeen extorted money that indigent Plaintiffs needed for basic living necessities, such as groceries, which they were forced to forgo as a result of the extortion. *See* SAC ¶¶ 21-24. Oklahoma law exempts indigent persons from payment under such circumstances, *see* Okla. R. Crim. App. 8.5, but Aberdeen actively worked to conceal that fact, *see* SAC ¶ 83. The same is true for Plaintiffs' means-tested benefits extracted by Aberdeen: federal law prohibits such monies from being subject to "execution, levy, attachment, garnishment, or other legal process," 42 U.S.C. § 407(a), including court-ordered payments of fines and fees, *see, e.g.*, *State v. Catling*, 438 P.3d 1174, 1178-79 (Wash. 2019) (en banc); *In re Lampart*, 856 N.W.2d 192, 199-200 (Mich. Ct. App. 2014). Finally, any money Aberdeen and OSA collected from Plaintiffs due to the 30-percent penalty added when a case is referred to Aberdeen, *see* Okla. Stat. tit. 19, § 514.5(A) (eff. Nov. 1, 2010) is a RICO injury. Since the cases are referred to Aberdeen without any pre-deprivation process in violation of the federal Constitution, the penalty is null; Plaintiffs did not owe that money at all. But for Aberdeen's extortionate threats (on behalf of the RICO enterprise), Plaintiffs would not have made the payments, and Oklahoma and federal law did not require them to. Thus, they suffered an injury (the loss of money) solely "by reason of" the enterprise's misconduct. 18 U.S.C. § 1964(c).

### D.    The RICO Enterprise Engaged in a Pattern of Activity.

Aberdeen argues that Plaintiffs have not alleged a pattern of racketeering activity because the complaint only alleges a "single scheme." [12] Doc. 404 at 8. But to show a "pattern" of

---

[12] The lone case cited by Aberdeen does not, in fact, support its contention that multiple "schemes" are required to show a pattern. The heightened-pleading standard invoked in that case, *Creech v. Fed. Land Bank*, 647 F. Supp. 1097, 1100-01 (D. Colo. 1986), is relevant only for RICO claims

BRIEF E

racketeering activity for the purposes of § 1962(c), Plaintiffs need only show "'two acts of racketeering activity . . . within ten years' of each other." *Tal v. Hogan*, 453 F.3d 1244, 1267 (10th Cir. 2006) (quoting 18 U.S.C. § 1961(5)). "Racketeering activity" encompasses "dozens of state and federal offenses, known in RICO parlance as predicates." *Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017). To establish a pattern, Plaintiffs need only show "a relationship between the predicates" and "the threat of continuing activity." *United States v. Knight*, 659 F.3d 1285, 1288 (10th Cir. 2011) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events." *Id.* at 1289 (quoting *H.J. Inc.*, 492 U.S. at 240). Here, the complaint alleges multiple incidents of extortion over the course of years, comprising a pattern. *See, e.g.*, SAC ¶¶ 2, 8 (detailing Aberdeen's threats towards indigent debtors); *see also id.* ¶¶ 20, 23, 58 (Aberdeen extorted payments from named Plaintiffs through threats of unlawful arrest). It is alleged that these separate acts have the same or similar purposes, results, participants, victims, and methods of commission and are in no way isolated events. The complaint clearly and adequately makes out a "pattern" of activity that satisfies RICO.

### E.    Plaintiffs Have Pled Predicate Offenses of Racketeering.

*Extortion.* Aberdeen claims threats of arrest may not constitute extortion where "arrest is a statutory repercussion available for a person's failure to comply with the monetary component of a criminal sentence." Doc. 404 at 9. But arrest of a person known to be indigent and unable to pay is *not* a statutory repercussion for a person's nonpayment of court debt. *See* Okla. R. Crim. App. 8.5 (requiring relief from fine and fee payments due to inability to pay); Okla. Stat. tit. 22, §

---

based on the predicate act of fraud. *See Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002); *Advanced Optics Elecs., Inc. v. Robins*, 633 F. Supp.2d 1237, 1254 (D.N.M. 2008).

BRIEF E

983(A); *Bearden v. Georgia*, 461 U.S. 660 (1983) (prohibiting incarceration for nonpayment due to inability to pay). Aberdeen did not have a rightful claim to payments from indigent debtors who could not pay. And, even if it did, it used wrongful means to obtain them, violating prohibitions on extortion under the Hobbs Act, Travel Act, and state law. *See Robbins v. Wilkie*, 433 F.3d 755, 769 (10th Cir. 2006) ("if an official obtains property that he has lawful authority to obtain, but does so in a wrongful manner, his conduct constitutes extortion under the Hobbs Act."), *rev'd and remanded on other grounds*, 551 U.S. 537 (2007); *United States v. Zappola*, 677 F.2d 264, 268-69 (2d Cir. 1982) ("Congress meant to punish as extortion any effort to obtain property by inherently wrongful means, such as force or threats of force . . . regardless of the defendant's claim of right to the property."). "The existence of this element of wrongfulness is a question of fact for the fact finder." *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 579 (S.D.N.Y. 2014).

*Extortionate Extension of Credit.* In addition to allegations of extortion, the complaint pleads that Aberdeen, on behalf of the RICO enterprise, committed the predicate offense of extortionate credit transactions under 18 U.S.C. §§ 891–894. Unlike the Hobbs and Travel Acts, these statutes expressly do not require a connection to interstate commerce. *See Perez v. United States*, 402 U.S. 146, 154 (1971). Section 894(a) prohibits the "use of any extortionate means (1) to collect or attempt to collect any extension of credit, or (2) to punish any person for the nonrepayment thereof." Aberdeen argues that there was no extortionate extension of credit because there is no allegation that Aberdeen "extended credit" or that Aberdeen used "extortionate means" to collect. Doc. 404 at 10. Aberdeen is wrong on both counts.

First, the term "extend credit" is broadly defined, encompassing "enter[ing] into any agreement, tacit or express, whereby the repayment or satisfaction of *any debt* or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or will be deferred." 18

BRIEF E

U.S.C. § 891(1) (emphasis added). To "collect an extension of credit" is defined as "induc[ing] in any way any person to make repayment thereof." *Id.* § 891(5). Plaintiffs allege that Aberdeen enters into repayment agreements with indigent debtors regarding the satisfaction of debt. *See, e.g.*, SAC ¶¶ 77-79. Defendants' contention that the monies are not "debts" owed to Aberdeen but rather "amounts due to the state," Doc. 404 at 10, is both wrong and irrelevant. The money owed does not have to be a traditional loan, *United States v. Stauffer*, 922 F.2d 508, 512 (9th Cir. 1990), and the statute is "not limited to attempts to collect illegal or illegitimate extensions of credit," *United States v. Goode*, 945 F.2d 1168, 1169 (10th Cir. 1991). An agreement to accept deferred payments to satisfy a civil judgment debt, for example, constitutes an "extension of credit." *Goode*, 945 F.2d at 1170-71. Aberdeen negotiates with debtors about payments, deferred payments, and payment plans; accepts payments pursuant to those plans; and profits from the money paid. Aberdeen has extended credit under the meaning of the statute.

Second, Defendants have used "extortionate means" to collect on the extensions of credit, 18 U.S.C. § 891(7), which in essence requires "the use of force or threats for the purpose of extorting money." *United States v. Briola*, 465 F.2d 1018, 1022 (10th Cir. 1972). "Acts or statements constitute a threat under [§ 891(7)] if they instill fear in the person to whom they are directed *or are reasonably calculated to do so in light of the surrounding circumstances*." *United States v. Natale*, 526 F.2d 1160, 1168 (2d Cir. 1975) (internal quotation marks), *cert denied*, 425 U.S. 950 (1976). Plaintiffs allege throughout the complaint that Aberdeen uses threats of unlawful arrest and employs collection tactics virtually identical to those of traditional loan sharks. *See, e.g.*, SAC ¶ 75 (call in which Aberdeen passed phone to person purporting to be law enforcement officer who stated he would immediately arrest debtor if she did not pay enough money to Aberdeen).

BRIEF E

### III.    Plaintiffs Have Properly Pled Their State Law Claims.

*Abuse of Process.* Under Oklahoma law, "[t]he elements of an abuse of process claim are (1) the improper use of the court's process (2) primarily for an ulterior or improper purpose (3) with resulting damage to the plaintiff asserting the misuse." *McGinnity v. Kirk*, 362 P.3d 186, 203-04 (Okla. 2015). Aberdeen does not challenge that Plaintiffs have alleged injury. Instead, it focuses on the first and second elements. *See* Doc. 404 at 23. As to the improper use of court process, Plaintiffs have alleged that Aberdeen leverages warrants to "obtain as much money as possible" by threatening debtors with arrest if they do not pay sums they cannot afford, and conditioning the recall of warrants on debtors making lump sum payments that are arbitrarily set in the hundreds of dollars (i.e., above the amount of the court-ordered installment payments). *See, e.g.*, SAC ¶¶ 7, 19, 20, 22, 24, 80. Plainly, the use of a warrant as a tool of extortion to extract unlawful payments from indigent debtors is not a "proper use" of that warrant. *See, e.g.*, *Hoppe v. Klapperich*, 28 N.W.2d 780, 790 (Minn. 1947); *Huggins v. Winn-Dixie Greenville, Inc.*, 153 S.E.2d 693, 696 (S.C. 1967). Plaintiffs have also adequately alleged that Aberdeen uses the warrants "primarily" for an improper purpose. Far from having the mere "collateral effect of exerting pressure for collection of a debt," *Bank of Oklahoma, N.A. v. Portis*, 942 P.2d 249, 255 (Okla. Civ. App. 1997), Aberdeen *repeatedly* raises the threat of a warrant when speaking with debtors, and conditions the recall of warrants on the payment of arbitrary lump sums precisely to exploit the extortionate potential of the warrants. *See, e.g.*, SAC ¶¶ 7, 19, 20, 22, 24, 80. This has nothing to do with the proper purpose for which the warrants issued (enabling an arrest).

*Duress.* Aberdeen argues that Plaintiffs' claim for "civil extortion" is untenable. Doc. 404 at 24. There is no claim for civil extortion in the Second Amended Complaint. As this Court recognized in granting leave to amend the complaint, that claim was substituted for an equitable contract claim of "duress," which provides for compensatory damages. *See* Doc. 211 at 14. And

BRIEF E

for the reasons stated in Plaintiffs' opposition to the Shofners' renewed motion to dismiss, *see* Br. F, Section III.B, Plaintiffs have stated a valid claim for duress here.

 ***Unjust Enrichment.*** Aberdeen also errs in contending that Plaintiffs have not stated a claim for unjust enrichment. "Unjust enrichment is a condition which results from the failure of a party to make restitution in circumstances where not to do so is inequitable, *i.e.*, the party has money in its hands that, in equity and good conscience, it should not be allowed to retain." *Okla. Dep't of Sec. ex rel. Faught v. Blair*, 231 P.3d 645, 658 (Okla. 2010). Aberdeen's conduct easily satisfies this standard. Aberdeen's revenue is drawn from a 30-percent penalty added to a debtor's outstanding debt when a warrant issues and a case is referred to the company. *See* Okla. Stat. tit. 19, § 514.5. Because these penalty-triggering "warrants" issue without probable cause and not on the basis of oath or affirmation, a violation of the law underpins the money that Aberdeen receives. *See* Okla. Const. art. II, § 30.[13] Retention of that money therefore constitutes unjust enrichment. *See City of Scottsbluff v. Waste Connections of Neb., Inc.*, 809 N.W.2d 725, 743 (Neb. 2011) ("unjust enrichment means a 'transfer of a benefit without adequate legal ground'" (quoting Restatement (Third) of Restitution and Unjust Enrichment § 1, cmt. b)). Moreover, Aberdeen collects money—sometimes in amounts greater than court-ordered installment payments— through its extortionate and unlawful threats of arrest. "A transfer induced by duress" is unjust enrichment." *See generally* Restatement (Third) of Restitution and Unjust Enrichment § 14.

## <u>CONCLUSION</u>

 For all the reasons stated above, the Court should deny Aberdeen's motion to dismiss.

---

[13] Aberdeen's argument that its enrichment is equitable because it is authorized by statute thus falls flat. Although Oklahoma law authorizes the assessment of the 30-percent penalty when "warrants [are] referred," Okla. Stat. tit. 19 § 514.5, "warrants" obviously means lawful warrants. Moreover, because this 30-percent penalty is used to pay Aberdeen (and OSA), SAC ¶¶ 26, 55, 59, Aberdeen cannot seriously claim that it has not been enriched *at all* because Plaintiffs are merely making payments on court debt they already owe "through Aberdeen." Doc. 404 at 24 (emphasis omitted).

BRIEF E

Dated: August 10, 2023

Respectfully submitted,

/s/ *Daniel E. Smolen*
Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

/s/ *Ryan Downer*
Ryan Downer (admitted *pro hac vice*)
D.C. Bar No. 1013470
Katherine Hubbard (admitted *pro hac vice*)
D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

/s/ *Seth Wayne*
Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804
Mary B. McCord (admitted *pro hac vice*)
D.C. Bar No. 427563
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu

BRIEF E

mbm7@georgetown.edu

*Attorneys for the Plaintiffs*

27

BRIEF E

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of August, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

<u>/s/ *Seth Wayne*</u>

BRIEF E