**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **CARLY GRAFF, et al.,** | |
| *Plaintiffs,* | |
| **v.** | **Case No. 4:17-CV-606-TCK-JFJ** |
| **ABERDEEN ENTERPRIZES II, INC., et al.,** | |
| *Defendants.* | |

<u>**PLAINTIFFS' OPPOSITION TO DEFENDANT OKLAHOMA SHERIFFS'
ASSOCIATION'S RENEWED MOTION TO DISMISS**</u>

**BRIEF G**

Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804
Mary B. McCord (admitted *pro hac vice*)
D.C. Bar No. 427563
Institute for Constitutional Advocacy
 and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel.: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu
mbm7@georgetown.edu

*Attorneys for the Plaintiffs*

Ryan Downer (admitted *pro hac vice*)
D.C. Bar No. 1013470
Katherine Hubbard (admitted *pro hac vice*)
D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

<u>**Index of Plaintiffs' Opposition Briefs**</u>

For ease of reference, each of Plaintiffs' opposition briefs has been labeled by letter according to the motion to dismiss to which it responds, listed below.

A.  51 County Sheriff Defendants, Individual Capacity (Doc. 407)

B.  Rogers County Defendants, Official Capacity (Doc. 406)

C.  Kim Henry, Former Court Clerk of Rogers County, Individual Capacity (Doc. 402)

D.  Scott Walton, Sheriff of Rogers County, Individual Capacity (Doc. 408)

E.  Aberdeen Enterprizes II, Inc. (Doc. 404)

F.  Jim and Rob Shofner (Doc. 403)

G.  Oklahoma Sheriffs' Association (Doc. 405)

H.  Defendant Judges (Doc. 412)

I.  51 County Sheriff Defendants, Official Capacity (Doc. 398)

J.  Vic Regalado, Sheriff of Tulsa County, Individual Capacity (Doc. 409)

K.  Don Newberry, Court Clerk of Tulsa County, Individual Capacity (Doc. 411)

L.  Darlene Bailey, Cost Administrator of Tulsa County, Individual Capacity (Doc. 410)

M.  Tulsa County Defendants, Official Capacity (Doc. 399)

BRIEF G

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ..........................................................................................................1

RELEVANT BACKGROUND ........................................................................................1

ARGUMENT ..................................................................................................................3

     I.     Plaintiffs Have Adequately Pled OSA's Participation in RICO Violations. ...........4

          A.     Participation in the RICO Enterprise ...........................................................4

          B.     Participation in Predicate Acts and Conspiracy...........................................8

     II.     Plaintiffs Have Stated Valid Claims Pursuant to 42 U.S.C. § 1983. ....................10

          A.     OSA's Illegal Actions Occurred Under Color of State Law......................10

          B.     OSA Participated in the Unlawful Activity Detailed in the Complaint.................................................................................................15

     III.     OSA Is Liable for Plaintiffs' State Law Claims. ...................................................18

     IV.     Plaintiffs' Claims Are Not Moot..........................................................................22

CONCLUSION..............................................................................................................25

BRIEF G

## **TABLE OF AUTHORITIES**

**Cases**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)........................................................ 12

*Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 374 P.3d 820 (Okla. 2016) ...................... 21

*Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584 (10th Cir. 1999) ........................ 11

*Bagoue v. Dev. Pathways Inc.*, No. 16-cv-01804, 2017 WL 4236316 (D. Colo. Sept. 25, 2017) . 4

*Baldonado v. Chavez*, No. 14-cv-382 WJ/CG, 2015 WL 13650071 (D.N.M. Nov. 24, 2015).... 19

*BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089 (10th Cir. 1999) ............ 7

*Bd. of Cnty. Comm'rs v. Liberty Grp.*, 965 F.2d 879 (10th Cir. 1992)............................ 7

*Bishop v. United States ex rel. Holder*, 962 F. Supp. 2d 1252 (N.D. Okla. 2014) ...................... 22

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001) ........................ 15

*Brinkman v. Hobble Creek Half-Marathon*, No. 2:05-cv-00009, 2005 WL 8175141 (D. Utah
  C.D. Oct. 5, 2005)............................................................................................... 22

*Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961)............................................ 15

*Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 130 F. Supp. 3d 236 (D.D.C. 2015)......... 21

*Cimarron Pipeline Constr., Inc. v. U.S. Fid. & Guar. Ins. Co.*, 848 P.2d 1161 (Okla. 1993) ..... 19

*Cnty. Line Inv. Co. v. Tinney*, No. 88-C-550-E, 1989 WL 237380 (N.D. Okla. June 15, 1989).. 21

*Coleman v. Turpen*, 697 F.2d 1341 (10th Cir. 1982)...................................................... 12

*Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320 (11th Cir. 2004)...................... 25

*D.T. ex rel. M.T. v. Indep. Sch. Dist. No. 16*, 894 F.2d 1176 (10th Cir. 1990)............................ 10

*Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010)................................................. 16, 17

*Dopp v. Loring*, 54 F. App'x 296 (10th Cir. 2002).......................................................... 7

*Doug Grant, Inc. v. Greate Bay Casino Corp.*, 3 F. Supp. 2d 518 (D.N.J. 1998)........................ 8

*Dubbs v. Head Start, Inc.*, 336 F.3d 1194 (10th Cir. 2003)...................................... 17, 18

*Durkee v. Minor*, 841 F.3d 872 (10th Cir. 2016) .......................................................... 16

*Ellison v. Garbarino*, 48 F.3d 192 (6th Cir. 1995) ........................................................ 13

*Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008) .................................................... 16

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ................ 24

*Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442 (10th Cir. 1995).............. 11, 13, 14, 15

*George v. Urb. Settlement Servs.*, 833, F.3d 1242 (10th Cir. 2016)...................................... 8

*Gov't Emps. Ins. Co. v. Path Med.*, No. 8:17-cv-2848, 2018 WL 11487963 (M.D. Fla. Mar.
  2, 2018) .................................................................................................................. 4

*Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500 (10th Cir. 2023) ...................... 1, 22

*Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1312 (S.D. Fla. 2014)............................ 21

*Hubbard v. Jones*, 229 P. 516 (Okla. 1924)........................................................ 19, 20

*Indep. Drug Wholesalers Grp., Inc. v. Denton*, No. 92-2164-JWL, 1993 WL 191393 (D.
  Kan. May 13, 1993) ............................................................................................. 9

*Jackson v. Metro. Edison Co.*, 419 U.S. 345 (1974)................................................ 13, 14

*Jatoi v. Hurst-Euless-Bedford Hosp. Auth.*, 807 F.2d 1214 (5th Cir. 1987).............................. 15

*Knox v. SEIU*, 567 U.S. 298 (2012)........................................................................... 25

*Marth v. Kingfisher Commercial Club*, 144 P. 1047 (Okla. 1914)...................................... 19

*Matter of S & S Indus.*, 37 B.R. 838 (Bankr. E.D. Mich. 1984) ...................................... 21

*Monroe v. Pape*, 365 U.S. 167 (1961) ....................................................................... 11

*Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514 (S.D.N.Y. 2001)........ 8

*NCAA v. Tarkanian*, 488 U.S. 179 (1988) ................................................................. 11

*Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783 (6th Cir. 2012) ...................... 8

iii

BRIEF G

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007)...................... 25
*Perino v. Mercury Fin. Co. of Ill.*, 912 F. Supp. 313 (N.D. Ill. 1995)..................................... 8
*Poolaw v. Marcantel*, 565 F.3d 721 (10th Cir. 2009)................................................... 17
*Resolution Trust Corp. v. Stone*, 998 F.2d 1534 (10th Cir. 1993)................................... 6
*Reves v. Ernst & Young*, 507 U.S. 170 (1993)................................................... 4, 5
*Rizzo v. Goode*, 423 U.S. 362 (1976)............................................................ 17
*Safe Sts. All. v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017).................................. 5
*Salinas v. United States*, 522 U.S. 52 (1997)................................................. 5, 9
*Smith v. Cochran*, 339 F.3d 1205 (10th Cir. 2003).............................................. 11
*Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990)............................................... 19
*Spurlock v. Townes*, 661 F. App'x 536 (10th Cir. 2016)......................................... 11
*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) .................................................. 7
*Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504 (10th Cir. 1998)................................ 8
*Union Cent. Life Ins. Co. v. Erwin*, 145 P. 1125 (Okla. 1914)............................... 19, 20
*United States v. Harris*, 695 F.3d 1125 (10th Cir. 2012)......................................... 9
*United States v. Price*, 383 U.S. 787 (1966)................................................... 12
*United States v. Smith*, 413 F.3d 1253 (10th Cir. 2005)......................................... 9
*West v. Atkins*, 487 U.S. 42 (1988) ........................................................ 11, 13
*Wilson v. Montano*, 715 F.3d 847 (10th Cir. 2013)............................................. 16
*Wittner v. Banner Health*, 720 F.3d 770 (10th Cir. 2013)................................ 11, 13, 15

## Constitutional Provisions
Okla. Const. art. II, § 30................................................................... 20

## Statutes
18 U.S.C. § 1962...................................................................... 4, 5, 8, 9
18 U.S.C. §§ 1961–1968................................................................... 3
42 U.S.C. § 1983..................................................................... 10, 15
Okla. Stat. tit. 15, §§ 51–55.............................................................. 19
Okla. Stat. tit. 19, § 514.4........................................................ 2, 12, 24
Okla. Stat. tit. 19, § 514.5.................................................... 2, 20, 21, 22
Okla. Stat. tit. 22, § 983............................................................. 23, 24

## Rules
Rule 8.5, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (Okla. R. Crim. App. 8.5) ....................................................................... 21

## Legislative Materials
S.B. 689, 56th Leg., 2d Reg. Sess. (Okla. 2018) ............................................... 23

## Other Authorities
Okla. Att'y Gen. Op. 2017-18 (Dec. 27, 2017), *available at* https://perma.cc/NX9E-R4KB...... 10

BRIEF G

**INTRODUCTION**

The Court should deny Defendant Oklahoma Sheriffs' Association's ("OSA") motion to dismiss (Doc. 405). OSA contracts with Aberdeen Enterprizes II, Inc. ("Aberdeen"), knowing of its extortionate activities, because of the enormous financial benefit that OSA receives. Under the contract, OSA actively assists in the unlawful collection of court debt, including by enlisting government actors to refer cases to Aberdeen, and provides that company with debtor information. As the vehicle that enables Aberdeen, and that connects the Defendant Sheriffs to this debt-collection company and its threats of unlawful arrest, OSA is the linchpin of the entire unconstitutional and extortionate scheme challenged in this lawsuit. Nevertheless, OSA attempts to distance itself from this scheme by claiming that it did not personally participate in the illegal activity alleged in the Second Amended Complaint. The Court should reject this. Plaintiffs have alleged sufficient facts to find OSA liable for each claim against it. Likewise, Plaintiffs' claims are not mooted by the forthcoming amendments to state law because Plaintiffs challenge practices, not any statute, and there is no evidence that practices have changed, much less changed permanently.

**RELEVANT BACKGROUND**[1]

OSA is an ostensibly private Oklahoma corporation that represents all county sheriffs in Oklahoma (including each Sheriff Defendant) as a lobbying organization. *See* Second Am. Compl. ("SAC"), Doc. 212, ¶ 29. After heavy lobbying, OSA secured amendments to Oklahoma law to provide the organization with an enormous financial windfall. As of 2010, the law allows county sheriffs to make contracts with private entities to "locate and notify persons" of their outstanding

---

[1] This section includes allegations relevant to Plaintiffs' claims against OSA. For a summary of the allegations and claims against all Defendants, see *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 509-14 (10th Cir. 2023).

BRIEF G

"failure-to-pay warrants," and gives OSA the exclusive right to administer those warrants. *Id.* ¶ 54; Okla. Stat. tit. 19, § 514.4(A), (E) (eff. Nov. 1, 2010).[2] Any time a debtor's case is sent to a private company, a 30-percent penalty surcharge is added by law, and OSA is paid a portion of that money. SAC ¶ 55; *see also* Okla. Stat. tit. 19, § 514.5(A)-(B) (eff. Nov. 1, 2010). The same year that the law was amended, OSA contracted with Aberdeen on behalf of the Sheriff Defendants. SAC ¶ 56.

Empowered by the contract with OSA ("the contract"), Aberdeen embarked on an extortionate campaign to squeeze as much money as possible from court debtors by using threats of arrest and actual incarceration. *See id.* ¶¶ 66-76. Aberdeen paid, and continues to pay, OSA a portion of the unlawfully obtained money, and OSA has profited enormously as a result. From 2009 (the year prior to the contract with Aberdeen), to 2016, OSA's assets increased from approximately $50,000 to over $3,000,000. *Id.* ¶ 105. It made over $800,000 in 2016 alone.

To maintain this untrammeled flow of income, OSA is incentivized to aid and encourage Aberdeen's aggressive pursuit of profit. The contract provides for just that. Pursuant to the contract, OSA enlists the various county sheriffs and court clerks to obtain debtor information and pass it to Aberdeen through OSA. *Id.* ¶ 60. Although Aberdeen is ostensibly prohibited by the contract from engaging in unlawful collection activities, it routinely and openly violates that provision, with the knowledge and informal agreement of OSA. *Id.* ¶ 81. Despite this knowledge,

---

[2] An amended version of § 514.4—as well as § 514.5—went into effect on November 1, 2018, and yet another version is set to go into effect on November 1, 2023. A copy of the laws in effect at the time this suit was filed (the 2010 laws), as well as the laws that remain in effect until November 1, 2023 (the 2018 laws), are attached as an exhibit to Plaintiffs' first brief in opposition to Defendants' renewed motions to dismiss. *See* Br. A, Ex. 1. The forthcoming amendments to the statutes are attached as an exhibit to OSA's motion to dismiss. *See* Doc. 405-1. Although § 514.5 has remained largely the same since 2010, the main difference between the 2010 and 2018 versions of § 514.4 is that the former provided sheriffs the option to contract with a debt collector directly, while the latter only provides the option to contract with OSA as a go-between. The recent amendments do not alter this aspect of the statute. *See infra* Section IV.

BRIEF G

OSA has repeatedly renewed the contract with Aberdeen, and continues to knowingly benefit and assist in its extortionate activities. *Id.* ¶ 282. The pursuit of money over the rights of individuals underlies Plaintiffs' claims against OSA. OSA has played a key role in contributing to the proliferation of debtor imprisonment in Oklahoma, one of the reasons the state now boasts one of the highest incarceration rates in the country. *Id.* ¶ 142.

In the Second Amended Complaint, Plaintiffs assert claims against OSA for (1) participating in an extortionate enterprise and conspiracy, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. §§ 1961–1968) (**Count 1**); (2) enabling the seeking, issuing, and executing of debt-collection arrest warrants, without inquiry into ability to pay in violation of due process and equal protection under the Fourteenth Amendment (**Count 2**), and based on unsworn allegations in violation of the Fourth Amendment (**Count 3**); (3) enabling the jailing of debtors without notice and a hearing, in violation of state-created liberty interests and procedural due process (**Count 5**); (4) enabling a system where public debt is collected by an entity with an impermissible direct financial stake in extracting money from debtors, in violation of due process (**Count 6**); (5) subjecting Plaintiffs to onerous debt collection, in violation of equal protection (**Count 7**); and (6) engaging in abuse of process (**Count 8**), contractual duress (**Count 9**), and unjust enrichment (**Count 10**), all in violation of Oklahoma law.

## ARGUMENT

OSA's main defenses rest on an attempt to avoid the factual pleadings in the complaint, a mischaracterization of its pivotal role in the extortionate scheme as that of a passive beneficiary, a denial that it acted under color of state law, and an incorrect assertion that Plaintiffs' claims are

BRIEF G

now moot. None of these claims justify dismissal. Plaintiffs' claims are supported by law and the allegations in the complaint, and therefore cannot properly be dismissed.[3]

## I.    Plaintiffs Have Adequately Pled OSA's Participation in RICO Violations.

### A.    Participation in the RICO Enterprise

The Second Amended Complaint states a valid RICO claim and properly alleges how OSA participated in the RICO enterprise. OSA's motion to dismiss rests on the theory that it was a mere passive and innocent beneficiary of the unlawful activity and is not alleged to have taken any direct action itself. *See* Doc. 405 at 8. This argument can succeed only by ignoring Plaintiffs' allegations.

OSA argues that it did not itself use threats of force or other criminal means to obtain property or direct the affairs of the enterprise by participating in its "operation or management." Doc. 405 at 8-10 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)). But the complaint alleges that OSA contracted—and continues to contract—with Aberdeen, SAC ¶ 29; provides debtor information essential to collection activity and otherwise assists Aberdeen with debt collection, *id.* ¶ 282; shares in the enterprise's considerable profits, *id.* ¶¶ 105-06; and continues to tolerate Aberdeen's criminal activity despite full knowledge of the same and control over the contractual relationship, *id.* ¶ 81. That is more than sufficient for purposes of RICO liability.

The statutory "participation" standard for RICO liability is whether OSA "participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs." 18 U.S.C. § 1962(c). This

---

[3] In its motion, OSA attempts to "adopt[] by reference" all arguments made by all co-defendants. Doc. 405 at 6 n.3. Yet OSA does not identify which specific arguments it intends to incorporate, or how those arguments would apply to OSA given its unique role in the unlawful conduct alleged. "These 'Hey, Judge! What he said!' cross-references are inappropriate and unduly tax the Court's resources." *Gov't Emps. Ins. Co. v. Path Med.*, No. 8:17-cv-2848, 2018 WL 11487963, at *1 (M.D. Fla. Mar. 2, 2018); *see also, e.g.*, *Bagoue v. Dev. Pathways Inc.*, No. 16-cv-01804, 2017 WL 4236316, at *2 n.2 (D. Colo. Sept. 25, 2017) ("Defendants' attempt to incorporate 21 pages of additional argument into their 22-page motion to dismiss is improper."). Nevertheless, to the extent necessary, Plaintiffs hereby incorporate their responses to the other Defendants' motions.

BRIEF G

provision imposes liability on any individual who has participated in the "operation or management" of the RICO enterprise. *Reves*, 507 U.S. at 183. Significantly, "operation or management" is not limited to "upper management" or those with a "formal position"; it includes "lower rung participants in the enterprise" or "others 'associated with' the enterprise" who exert some control over it. *Id.* at 179, 184. The *Reves* test is "easily satisf[ied]" where, as here, "an enterprise member played some part—even a bit part—in conducting the enterprise's affairs." *Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 884 (10th Cir. 2017) (internal quotation mark omitted). This test plainly encompasses OSA's role in contracting with Aberdeen, contributing to its extortionate debt-collection efforts, overseeing and renewing the contract, and profiting from its activities. These allegations and the contract show that OSA participated in the conduct of the RICO enterprise and played far more than a "bit part" in its affairs.

It is legally irrelevant that OSA has not itself threatened debtors because it has participated in the predicate acts by directly assisting with Aberdeen's unlawful debt-collection activities.[4] Among other things, OSA has actually obligated government entities, including its county sheriff members and court clerks, to specifically assist Aberdeen in its extortionate activities. *See* SAC Ex. A, Doc. 212-1, at 3; SAC ¶ 60. Moreover, despite OSA's insistence that the Agreement "prohibits the OSA from exercising any control over how Aberdeen carries out its duties," Doc. 405 at 9, the contract mandates that Aberdeen follow specific procedures for debt collection, *see, e.g.*, SAC Ex. A at 3, ¶ 2(a) ("Upon request by a County Sheriff or Court Clerk, Aberdeen *shall* immediately return to such County Sheriff of Clerk any account(s) referred to Aberdeen in error . . . ." (emphasis added)); *id.* at 5, ¶ 2(e)(3) ("Aberdeen *shall* deposit all funds collected by

---

[4] Even if OSA had not participated in any predicate acts, it would still be liable for conspiracy under § 1962(d). *See infra* Section I.B; *Salinas v. United States*, 522 U.S. 52, 63 (1997) (RICO conspirator need not commit or agree to commit predicate acts).

BRIEF G

Aberdeen hereunder in a trust account . . . ." (emphasis added)); *id.* at 5, ¶ 2(e)(3)(C) ("Aberdeen, within fifteen (15) days of the receipt of any funds . . ., *shall* distribute to the Association [redacted] of that amount . . . ." (emphasis added)). OSA receives regular reports on Aberdeen's activity, *id.* at 7, and is empowered to revoke the contract, *id.* at 2-3, thereby inherently exercising control over Aberdeen's collection of public debt.

Plaintiffs have pled that "Aberdeen routinely and openly" violates the contractual provision that prohibits the company from breaking the law or "harass[ing] or exert[ing] undue pressure on delinquent debtors or employ[ing] any procedure that would cast discredit upon [OSA]," *id.* at 4, "with the full knowledge and informal agreement of [OSA] and the Defendant Sheriffs," SAC ¶ 81. Accordingly, as pled, OSA knew that Aberdeen violated the law and/or engaged in misconduct when collecting debt. Despite this knowledge, OSA is alleged to have renewed the Agreement "multiple times, most recently on January 1, 2017." SAC ¶ 29. This contract also gives OSA discretion to terminate the Agreement for "neglect," including a broad list of activities, such as "failure to provide required standards of service" and "failure to act consistently with the spirit of the applicable debt collection provisions of the FDCPA and FCRA under the Federal guidelines for collections," or for the material breach of any obligations. SAC Ex. A at 2.

OSA has knowingly allowed the RICO enterprise to continue its extortionate activities for years, while profiting greatly from the misconduct. Further, *Aberdeen directly pays OSA a percentage of the money it extorts*. SAC ¶ 29. These payments totaled millions of dollars and contributed to a *sixty-fold* increase in OSA's assets. *Id*. The exchange of information and mutual financial benefit demonstrates a "close relationship" that establishes participation in the RICO enterprise. *See Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1542 (10th Cir. 1993) (citing

BRIEF G

evidence of significant payments from fraudulent sales along with contracts sufficient to support inference that defendant was participating in RICO enterprise).

The cases relied on by OSA do not support dismissal and none involves a contract. For example, in *Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006), the court found that the defendants did not participate in the RICO enterprise where the defendants allegedly had made misrepresentations *to* the enterprise to defraud it, which did not constitute "operation or management." *Id*. at 1270. That situation is obviously different from the allegations here that, pursuant to a contract signed and renewed several times, OSA actually participated in and oversaw the enterprise's activities.

Similarly, in *BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089 (10th Cir. 1999), no participation was found for title companies that performed activities they "would have performed in their normal course of business" with everyone, not just the enterprise. *Id.* at 1102. That scenario is not relevant here, because OSA's relationship with Aberdeen is not the traditional business activity of a company—it is specific to the activities of the enterprise, as laid out in the terms of their contract.

OSA also cites *Dopp v. Loring*, 54 F. App'x 296 (10th Cir. 2002), in which a pro se plaintiff sued prosecutors, judges, clerks, and private individuals alleging a RICO conspiracy. The court there held that the plaintiff's suit against individual defendants did not establish a RICO enterprise "which had an existence and purpose *distinct from any one of them*." *Id.* at 298 (emphasis in original) (citing *Bd. of Cnty. Comm'rs v. Liberty Grp.*, 965 F.2d 879, 885 (10th Cir. 1992)). *Dopp* was therefore not about whether a particular entity participated in the conduct of the enterprise, but whether there was an enterprise at all. This case is clearly distinct from *Dopp*. Here, Aberdeen

7

BRIEF G

and OSA have collaborated and mutually benefitted from extracting money from indigent defendants by threats, pursuant to a signed Agreement.[5]

OSA's "categorical[] deni[al]s" that it has ever known of Aberdeen's activities are legally meaningless. Doc. 405 at 9. At this stage, Plaintiffs' allegations that OSA, inter alia, "receives and reviews regular reports regarding Aberdeen Inc.'s collection activities," SAC ¶ 282, must be taken as true. *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 510 (10th Cir. 1998); *see also George v. Urb. Settlement Servs.*, 833, F.3d 1242, 1253 (10th Cir. 2016) (factual allegations establishing participation in RICO enterprise that "may require fleshing out [in] discovery" can be "sufficient to withstand dismissal"); *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 793 (6th Cir. 2012) (while differences in capacities "may ultimately impact the determination of whether a particular Defendant only participated in his own affairs, . . . that is a matter [for] discovery"). The full extent of OSA's participation in the RICO enterprise will be revealed through discovery and at trial. But at this juncture, the complaint and Agreement amply allege that OSA participated in the "operation or management" of the enterprise as that term has been defined by the courts.

## B.  Participation in Predicate Acts and Conspiracy

OSA also argues that Plaintiffs have not pled a valid § 1962(c) RICO claim against OSA because they have not sufficiently alleged that OSA itself actually used the threat of force or other criminal means to obtain property. Doc. 405 at 12. But that is not the standard for participation. As explained above, OSA is alleged to have directly participated in the pattern of racketeering

---

[5] The other cited cases are similarly inapposite. Neither *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 3 F. Supp. 2d 518 (D.N.J. 1998), nor *Perino v. Mercury Fin. Co. of Ill.*, 912 F. Supp. 313 (N.D. Ill. 1995) addresses the question of "participation" in a RICO enterprise. And the quoted holding in *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514 (S.D.N.Y. 2001), that knowledge and financial benefit alone do not provide grounds for liability in the absence of an agreement, was about the standard for *conspiracy*, not enterprise participation. These are two entirely separate concepts, and irrelevant here, given the signed Agreement between OSA and Aberdeen.

BRIEF G

activity in a number of ways, including facilitating the actors who issued the actual threats, providing assistance and information, and receiving extorted money. *See supra* at 5-6. This is more than sufficient to meet the standard for § 1962(c), which requires only that OSA be "associated with the primary violation, participated in it as something that [it] wished to bring about, and sought by [its] actions to make it succeed." *Indep. Drug Wholesalers Grp., Inc. v. Denton*, No. 92-2164-JWL, 1993 WL 191393, at *4 (D. Kan. May 13, 1993).

In addition to a direct claim under 18 U.S.C. § 1962(c), the SAC states a claim of conspiracy to violate § 1962(c) pursuant to § 1962(d) (which prohibits conspiring to violate other provisions of the RICO Act) on the part of OSA.[6] In a footnote, OSA argues that it did not "adopt[] the goal of furthering or facilitating the criminal endeavor," and therefore did not conspire, because mere knowledge is not sufficient to show a conspiracy. Doc. 405 at 12 n.7 (quoting *United States v. Harris,* 695 F.3d 1125, 1133 (10th Cir. 2012)). In this case, Plaintiffs have more than adequately pled that the RICO Defendants conspired to violate § 1962(c).

"RICO conspiracy . . . is even more comprehensive than the general conspiracy offense," because it requires no overt act. *Harris*, 695 F.3d at 1133. It does not require that a defendant have "committed or agreed to commit the predicate acts." *Id.* (citing *Salinas*, 522 U.S. at 65). Although it is *sufficient* under *Salinas* to show that a defendant "adopt[ed] the goal of furthering or facilitating the criminal endeavor," 522 U.S. at 65, it is not necessary. All that is required for a § 1962(d) conspiracy is that the defendant "knew about or agreed to facilitate the commission of acts sufficient to establish a § 1962(c) violation," *United States v. Smith*, 413 F.3d 1253, 1265 (10th Cir. 2005), *overruled on other grounds by Boyle v. United States*, 556 U.S. 938 (2009).

---

[6] OSA argues that Plaintiffs have not pled a viable claim under section 1962(c), and therefore that the conspiracy claim fails as a matter of law. *See* Doc. 405 at 12. For the reasons stated in this brief, *see supra* Section I.A, Plaintiffs have pled a viable claim, and OSA's argument is unavailing.

BRIEF G

That test is easily satisfied here, where the contract itself provides for OSA to facilitate the collection of debt, which, as pled, was a criminal endeavor undertaken by Aberdeen. *See, e.g.*, SAC Ex. A at 7-8 (describing the "collective efforts of each County Sheriff's office" to provide debtor information to Aberdeen through OSA). As pled, OSA had "full knowledge" of Aberdeen's misconduct, SAC ¶ 81, and knowingly and willfully took actions in furtherance of that misconduct, including renewing and administering the contract on an ongoing basis *id.* ¶ 29. Whether or not each individual sheriff member of OSA personally "adopted the goal" of the endeavor is irrelevant to whether OSA agreed to facilitate the acts of the RICO enterprise, which it undeniably did on the face of the Agreement.

## II.    Plaintiffs Have Stated Valid Claims Pursuant to 42 U.S.C. § 1983.

### A.    OSA's Illegal Actions Occurred Under Color of State Law

Section 1983 allows suit for actions taken by private entities "under color of state law." *D.T. ex rel. M.T. v. Indep. Sch. Dist. No. 16*, 894 F.2d 1176, 1186 (10th Cir. 1990) (internal quotation marks omitted). OSA argues that because it is a private entity and has a "private contract" with Aberdeen, it is not acting under the "color of state law." Doc. 405 at 14. OSA—an organization that receives public funding, has a membership entirely of public servants for whom it serves as agent, occupies a special position under state law, and is intimately involved in the collection of public debt—cannot plausibly argue that it is not acting under color of law.

The Oklahoma Attorney General has already analogously determined that OSA is a "public body" for the purposes of the Oklahoma Open Meetings and Open Records Acts, as it "receive[s] a set portion of a statutorily-required fee" related to a motorist insurance plan. Okla. Att'y Gen. Op. 2017-18, at 3 (Dec. 27, 2017), *available at* https://perma.cc/NX9E-R4KB. Per the Attorney General, receipt of a portion of a statutory administrative fee constitutes "public fund[ing]," and as a publicly funded agency, OSA is to be considered a public body. *Id.* Similarly, here, OSA

10

BRIEF G

receives a portion of a statutorily-prescribed administrative fee extracted from debtors as a collateral result of their criminal or traffic sentences, SAC ¶ 5, and that portion has resulted in a *sixty-fold* increase in OSA's assets, *id.* ¶ 29. Per the Attorney General's opinion, OSA is treated not only as acting "under color of law," but as a public body itself.

Even if it were to be considered a fully private body, OSA meets all the requirements that courts have set for the purposes of § 1983 liability. Courts employ a "flexible approach" to determine whether a private entity is acting under color of state law when it engages in unconstitutional conduct. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995). Defendants are subject to a claim under § 1983 when they "represent [the state] in some capacity, whether they act in accordance with their authority or misuse it." *NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988) (quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)). An entity is considered to represent the state if it meets any one of three tests used by the courts: the joint action test, the sufficiently close nexus test, and the symbiotic relationship test. As explained below, OSA easily meets the requirements of each of these tests. [7]

***Joint Action.*** First, OSA meets the joint-action test. A private party acts under color of law if it "is a willful participant in joint action with the state or its agents . . . in effecting a particular deprivation of constitutional rights." *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 596 (10th Cir. 1999) (quoting *Gallagher*, 49 F.3d at 1453) (finding joint action where a private

---

[7] OSA also likely exercises powers "traditionally" and "exclusively reserved to the State." *Wittner v. Banner Health*, 720 F.3d 770, 777 (10th Cir. 2013). By overseeing the collection of criminal court debt, OSA falls within the traditional government category of administering judicial and correctional functions. *See West v. Atkins*, 487 U.S. 42, 54-56 (1988) (physician under contract with prison to provide medical services); *Spurlock v. Townes*, 661 F. App'x 536, 538 n.2 (10th Cir. 2016) (private prison facility); *see also Smith v. Cochran*, 339 F.3d 1205, 1215-16 (10th Cir. 2003) ("[P]ersons to whom the state delegates its penological functions . . . can be held liable for violations of the Eighth Amendment."). There is no need to reach this stricter test, however, because OSA clearly meets the other three tests.

BRIEF G

treatment center acted with the state to implement a policy resulting in illegal arrest and detention in treatment facilities); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) ("To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." (quoting *United States v. Price*, 383 U.S. 787, 794 (1966))); *Coleman v. Turpen*, 697 F.2d 1341, 1345 (10th Cir. 1982) (finding joint action when private company "jointly participated" in seizure of a truck).

Here, a state statute delegates to OSA the exclusive power to administer contracts with debt-collection companies to collect *public* debt, as agent of *public employee* county sheriffs. Accordingly, OSA is specifically assigned a public function under state law. *See* Okla. Stat. tit. 19, § 514.4(A), (E) (eff. Nov. 1, 2010) (mandating that "a statewide association of county sheriffs" administer contract with debt-collection company, and allowing county sheriffs to assign their right to contract to the association).[8] Pursuant to this law, OSA, representing Defendant Sheriffs, has entered into a contract with Aberdeen to outsource collection of court debts, with each of the parties and the court clerk dividing the fees and 30% penalty surcharge. *See* SAC ¶¶ 53-59. Under the contract, OSA enlists government actors to participate in Aberdeen's collection of the debt by providing Aberdeen access to court files—and, in at least one county, editing privileges—as well as debtor information necessary to collect the warrant. *Id.* ¶¶ 60-61. In other words, by the terms of the contract itself, OSA, Aberdeen, and government entities work together to ensure collection of public debt. When a debtor does not pay the amount determined by Aberdeen, the company contacts the court clerk, who issues an arrest warrant. *Id.* ¶ 62.

---

[8] Plaintiffs are aware of no statewide association of county sheriffs other than OSA. OSA is accordingly singled-out to fulfill a public duty by state statute.

BRIEF G

In fact, the contract that OSA claims to this Court is merely an exclusively private agreement contains mandates for government actors to follow. For example, under the contract, it is "understood and agreed that each Court Clerk of the County that has issued a warrant and collected the funds . . . shall then, in turn, pay [OSA], or its designated representative or assignee." SAC Ex. A at 5. The contract also requires County Sheriffs and Court Clerks who use the state's electronic information system to furnish accounts to Aberdeen using that system. *Id.* at 4. OSA has negotiated, signed, and administered a contract as an agent of public employees, that imposes obligations on public bodies. These practices represent "joint action."

***Sufficiently Close Nexus***. Second, OSA also satisfies the "nexus" test. A private entity acts under color of law if there is a "'sufficiently close nexus' between the government and the challenged conduct" such that the conduct "'may be fairly treated as that of the State.'" *Gallagher*, 49 F.3d at 1448 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). In "nexus" cases, the test is met when the state acts coercively on the private actor, *Wittner*, 720 F.3d at 775, often in the form of a "state regulation or contract." *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995). It is not the fact of a contract alone which creates the nexus, but that the contract imposes mandatory obligations on both the private actor and the state. Here, it is probative of the entanglement between the state and private actor. *See, e.g.*, *West,* 487 U.S. at 54-56 ("Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner."); *Gallagher*, 49 F.3d at 1445 (examining contractual language).

OSA, empowered by a statutory delegation from the state of Oklahoma and serving as an agent of public employees, contracted with Aberdeen to collect public court debts. Although OSA claims it "exercises no control over Aberdeen's work," Doc. 405 at 14, this assertion is belied by

BRIEF G

the contract itself, which mandates that Aberdeen follow specific procedures for debt collection, *see, e.g.*, SAC Ex. A at 3, ¶ 2(a) ("Upon request by a County Sheriff or Court Clerk, Aberdeen *shall* immediately return to such County Sheriff of Clerk any account(s) referred to Aberdeen in error." (emphasis added)); *id.* at 5, ¶ 2(e)(3) ("Aberdeen *shall* deposit all funds collected by Aberdeen hereunder in a trust account." (emphasis added)); *id.* at 5, ¶ 2(e)(3)(C) ("Aberdeen, within fifteen (15) days of the receipt of any funds . . ., *shall* distribute to the Association [redacted] of that amount." (emphasis added)). OSA receives regular reports on Aberdeen's activity, *id.* at 7, and as administrator of the contract, is empowered to revoke it, *id.* at 2-3. OSA thereby inherently exercising control over Aberdeen's collection of public debt, which "may be fairly treated as that of the State." *Gallagher*, 49 F.3d at 1448 (quoting *Jackson*, 419 U.S. at 351).

Moreover, under the contract negotiated and administered by OSA, government officials (individual county sheriffs and court clerks) are responsible for transferring cases to Aberdeen, effectively placing OSA in a position overseeing the actions of public entities. *See* SAC Ex. A at 3; SAC ¶ 60. In fact, the alleged "private" contract that OSA administers grants "private" entities the right to access state court documents. *Id.*

The complaint also alleges that OSA exercises control over Aberdeen. Plaintiffs allege that OSA shares debtor information with Aberdeen, SAC ¶ 60, and assists Aberdeen "by enlisting government entities to procure debtor information and relay that information to Aberdeen," *id.* ¶ 282. OSA has knowledge of Aberdeen's activities, *id.* ¶ 81, and the power to terminate the contract if Aberdeen does not comply with its requirements, SAC Ex. A at 2. OSA's argument that it has no control belies the facts as pled, and may not serve as a defense at this stage.

***Symbiotic Relationship.*** Third, OSA meets the "symbiotic relationship" test. A private entity acts under color of law if the state "has so far insinuated itself into a position of

BRIEF G

interdependence" with that entity that "it must be recognized as a joint participant." *Gallagher*, 49

F.3d at 1451 (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)).

Determining when the entity's operations become sufficiently commingled is a "matter[] of

degree." *Id.* at 1452. OSA here acts under the color of law because "the state's relationship with

the private actor goes beyond the 'mere private [purchase] of contract services.'" *Wittner*, 720 F.3d

at 778 (alteration in original) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,

531 U.S. 288, 299 (2001)). The Oklahoma counties rely heavily on the collection of court debts

by Aberdeen, and the partnership administered by OSA, to run their judicial systems. The fines

collected as a result of OSA's contract are deposited into the "Court Fund," which is used to pay

for compensation, juror fees, witness fees, transcripts, and indigent defendant services, among

other things. SAC ¶ 112. The fees even pay for salaries of judges and certain members of their

staff. *Id.* ¶¶ 114-15. This heavy dependence on OSA-administered fee collection illustrates the

interdependence between OSA and the state. *See Jatoi v. Hurst-Euless-Bedford Hosp. Auth.*, 807

F.2d 1214, 1221 (5th Cir. 1987) (finding a symbiotic relationship where the state relied on a private

company to satisfy its financial obligations, such as mortgages or bonds). OSA has clearly acted

under the color of law as determined by any of these tests.

### B.     OSA Participated in the Unlawful Activity Detailed in the Complaint

OSA argues that Plaintiffs do not allege its involvement in the constitutional harms—

emphasizing the fact that it does not personally seek, issue, or execute warrants—and that the

Plaintiffs' allegations reflect "mere knowledge" rather than causation. Doc. 405 at 16. This reflects

a misunderstanding both of the law of causation and the allegations in the complaint.

Liability under § 1983 does not require "direct participation" in the infliction of the injury

and "'is not limited solely to situations where a defendant violates a plaintiff's rights by [for

example] physically placing hands on him.'" *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir.

BRIEF G

2010) (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008)). It also extends to the "defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy" that, when enforced "by the defendant-supervisor or her subordinates," injures the plaintiff. *Id.* at 1199. Indeed, it is enough if the supervisor is deliberately indifferent to the maintenance of a practice carried out by subordinates that causes the plaintiff's injury. *Durkee v. Minor*, 841 F.3d 872, 877 (10th Cir. 2016); *Wilson v. Montano*, 715 F.3d 847, 858 (10th Cir. 2013) (finding sheriff liable where he was "deliberately indifferent to the ongoing constitutional violations which occurred under his supervision" although there was no allegation he had any interaction with or knowledge of plaintiffs). In *Dodds*, for example, the Tenth Circuit held that a defendant sheriff was liable under § 1983 even though he had not personally interacted with the plaintiff and even though he "may not have actually known of his subordinates' enforcement of [the challenged] policies with regard to Plaintiff in particular." *See* 614 F.3d at 1202-03. In fact, the sheriff did not even create the policy at issue. *Id.* at 1203. It was sufficient that, "under his watch," the "policies which caused Plaintiff's constitutional injury continued to operate." *Id*. *Dodds* thus forecloses OSA's argument that its lack of direct interaction with Plaintiffs (or their cases) precludes a finding that they have caused Plaintiffs' harm.

In any event, OSA is a direct participant in the harm challenged by Count 6, which alleges that Aberdeen operates with an impermissible financial bias. OSA negotiated, signed, and administered a contract that created the impermissible financial incentive on its face. *See* SAC Ex. A at 5-6 (providing that Aberdeen's share depends on how much it collects). The unconstitutional arrangement took effect when OSA signed the Agreement, which OSA has administered and renewed multiple times since. *See* SAC ¶ 29. There is plainly a direct causal link

BRIEF G

between OSA's conduct and the injuries suffered by Plaintiffs *because of* the biased administration of that contract.

OSA also directly participates in the harm challenged by Counts 2, 3, 5 and 7[9] by enabling Aberdeen to seek unconstitutional warrants. As pled, OSA enlists government entities to procure debtor information and relay it to Aberdeen; refuses to enforce the contractual provisions that require Aberdeen to comply with the law,[10] despite knowledge of Aberdeen's misconduct; and has renewed the contract with Aberdeen on multiple occasions. *See id.* ¶¶ 29, 282, 350; SAC Ex. A at 4. These acts "set in motion"—and demonstrated deliberate indifference towards—the continuation of Aberdeen's misconduct. *Dodds*, 614 F.3d at 1195-96 (quoting *Poolaw v. Marcantel*, 565 F.3d 721, 732 (10th Cir. 2009)); *see id.* at 1200 (quoting *Rizzo v. Goode*, 423 U.S. 362, 371 (1976), for proposition that a defendant is liable for enabling an unconstitutional policy "express[ly] *or otherwise*" (emphasis added)). This is not a "respondeat superior" theory of liability. Doc. 405 at 15. It is direct participation. *See Dodds*, 614 F.3d at 1195-96.

The lone case that OSA cites in support of its argument to the contrary—*Dubbs v. Head Start, Inc.*, 336 F.3d 1194 (10th Cir. 2003)—offers no support. Doc. 405 at 15-16. *Dubbs* concerned a challenge to medical examinations performed at a pre-school without parental consent. OSA's recounting of *Dubbs* is misleading and inaccurate. In *Dubbs*, the defendant, KD, "had *no* role in performance of the examinations or *in arranging for notice and consent*." 336 F.3d at 1217 (emphases added). The Tenth Circuit explained that to the extent KD played an "incidental

---

[9] OSA is not named in Count 4, which concerns post-arrest detention practices.

[10] OSA suggests that the contractual provisions requiring Aberdeen to comply with the law defeat Plaintiffs' claims. *See* Doc. 405 at 5-6, 16. But this argument overlooks Plaintiffs' allegation that those provisions were "routinely and openly violate[d] . . . with the full knowledge and informal agreement of the [OSA]." SAC ¶ 81.

BRIEF G

role" in arranging medical examinations, it could rely on the representations from the responsible organization "that parental consent *had* been obtained." *Id.* (emphasis added). *Dubbs*, then, stands only for the common-sense rule that an entity will not be liable for the misconduct of people whom the entity does not supervise, especially when the entity has reason to believe that the misconduct has not occurred. Here—unlike KD in *Dubbs*—OSA has both knowledge of Aberdeen's unlawful activities and control over its continued role (under the Agreement) in collecting debt.

Finally, to the extent OSA suggests elsewhere in its brief that Plaintiffs make only "conclusory" allegations that OSA knew of Aberdeen's misconduct, *see* Doc. 405 at 5, OSA is wrong. As detailed above, Plaintiffs have pled sufficient facts illustrating OSA's direct participation in the RICO enterprise. *See supra* at 4-7, 10.

## III.   OSA Is Liable for Plaintiffs' State Law Claims.

OSA also seeks dismissal of Plaintiffs' state law claims under a lack-of-direct-participation theory similar to the one they assert for Plaintiffs' constitutional claims. *See* Doc. 405 at 19-21. These arguments fail.

*Abuse of Process.* With regard to Count 8, OSA's administration of the contract, renewal, and assistance and empowering of Aberdeen lie at the center of Plaintiffs' abuse-of-process claim. The complaint alleges that OSA enlists public actors to provide debtor information to Aberdeen, SAC ¶ 282, has "full knowledge" of Aberdeen's unlawful activities and allows them to continue through "informal agreement," *id.* ¶ 81.[11] Then, again with knowledge of Aberdeen's unlawful activities, OSA continued to renew Aberdeen's contract. *See id.* ¶ 29. This assistance and approval of Aberdeen's methods set in motion the tortious conduct that caused Plaintiffs' injuries, and that

---

[11] Such knowledge, moreover, may be reasonably inferred from Aberdeen reporting to OSA, OSA's years-long relationship with Aberdeen, the substantial financial benefits OSA has reaped from that relationship, and OSA's relationship with its sheriff members. *See* SAC ¶ 29.

BRIEF G

renders OSA liable. *See, e.g.*, *Baldonado v. Chavez*, No. 14-cv-382 WJ/CG, 2015 WL 13650071, at *4 (D.N.M. Nov. 24, 2015) (noting that the defendant could be liable under state tort law "if she was a moving force that set in motion a series of events Defendant knew or reasonably should have known would cause others to commit or join in the tort"); *Marth v. Kingfisher Commercial Club*, 144 P. 1047, 1049-50 (Okla. 1914) ("[I]f [defendants] as promoters participated in the arrangement of such program, they would be liable for such torts as were committed in the carrying out of such program."); *cf. Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990).

   ***Duress.*** With regard to Count 9, as this Court recognized in granting leave for Plaintiffs to amend the complaint, *see* Doc. 211 at 14, Plaintiffs are advancing a contract claim of duress of the type the Oklahoma Supreme Court has recognized, *see, e.g.*, *Hubbard v. Jones*, 229 P. 516, 518 (Okla. 1924). "[T]he relief of voiding or rescinding a contract executed under duress or restoring money paid under duress is codified in [Oklahoma's] contract statutes." *Cimarron Pipeline Constr., Inc. v. U.S. Fid. & Guar. Ins. Co.*, 848 P.2d 1161, 1164 (Okla. 1993); *see also* Okla. Stat. tit. 15, §§ 51–55. A contract is executed under duress when consent is induced through "threats regarding the safety or liberty of a person, or his or her family or property, which are so oppressive as to deprive the person of the free exercise of his or her will and prevent a meeting of the minds necessary to a valid contract." *Cimarron,* 848 P. at 1164. When one party pays money pursuant to a contract agreed to under duress, that party can later sue to recover the amount paid. *See, e.g.*, *Hubbard*, 229 P. at 518; *Union Cent. Life Ins. Co. v. Erwin*, 145 P. 1125, 1127 (Okla. 1914).

   Plaintiffs Smith, Choate, Meachum, and Holmes' claims of duress fit squarely within this doctrine. Aberdeen threatened to have each of these Plaintiffs arrested (or, in the case of Meachum, to continue her detention) if they did not agree to pay Aberdeen money, even though each was indigent (and remains so) and therefore could not lawfully have been compelled to pay.

BRIEF G

Nonetheless, each agreed to, and did, pay, out of fear of unlawful incarceration. *See* SAC ¶¶ 172-73, 179, 193, 203. Their payment consummated a contract formed under duress, and they now have a right to recover the sums paid. *Hubbard*, 229 P. at 518; *Union Cent. Life Ins. Co.*, 145 P. at 1127. OSA argues that it is not specifically mentioned in the "duress" portion of the complaint, but that portion incorporates prior allegations, SAC ¶ 368, including that OSA enables, assists, and approves Aberdeen's activities entering Plaintiffs into contracts under duress, and then financially benefits from those contracts. OSA may be sued for recovery of the value of the money paid pursuant to those contracts.

*Unjust Enrichment.* Finally, as to Count 10 for unjust enrichment, OSA argues that its receipt of the money is justified because it is authorized under state law. Doc. 405 at 21. But although Oklahoma law authorizes the assessment of the 30-percent penalty when "warrants [are] referred," Okla. Stat. tit. 19, § 514.5(A) (eff. Nov. 1, 2010), "warrants" obviously means lawful warrants. "[W]arrants," as that term is used in Oklahoma law, should not be read to extend to ones that issue without probable cause and not on the basis of oath or affirmation, which is what Plaintiffs' claims concern. Okla. Const. art. II, § 30 ("[N]o warrant shall issue but upon probable cause supported by oath or affirmation."). Defendants' retention of Plaintiffs' money on the basis of unlawful "warrants," therefore, is not equitable.

OSA's three additional arguments for why the Court should dismiss Plaintiffs' unjust enrichment claim each lack merit. First, OSA asserts that Plaintiffs' claim fails because they "do not allege that OSA has collected *any* monies directly from Plaintiffs." Doc. 405 at 20 (emphasis in original). Multiple courts have rejected this inference, reasoning that "[i]t would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the 'benefit' passed through an intermediary before being conferred on a defendant." *Hamilton v. Suntrust*

BRIEF G

*Mortg. Inc.*, 6 F. Supp. 3d 1312, 1317 (S.D. Fla. 2014) (alteration in original) (internal quotation marks omitted); *see also Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 130 F. Supp. 3d 236, 256-57 (D.D.C. 2015) (collecting cases).

Second, OSA asserts that Plaintiffs have not alleged that they paid any money that "they do not in fact owe." Doc. 405 at 20. That claim is legally incorrect. Aberdeen, with OSA's approval and assistance, extorted money indigent Plaintiffs needed for basic living necessities, such as groceries, which they were forced to forgo as a result of the extortion. SAC ¶¶ 21-24. Oklahoma law exempts indigent persons from such payment, *see* Okla. R. Crim. App. 8.5, but Aberdeen actively worked to conceal this, instructing its employees to "***NEVER*** refer any defendant to call the court clerks," SAC ¶ 83. The injury is not a result of the assessment of court debt at the time of their convictions, but of Defendants' manner of collection at the time the money was paid.

Third, OSA contends that, because the operative statute provides that a portion of the 30% penalty "shall be distributed" to OSA, Okla. Stat. tit. 19, § 514.5(B) (eff. Nov. 1, 2010), that entity's receipt of the money falls within the rule that a party "is not unjustly enriched . . . by retaining benefits involuntarily acquired which law and equity give him absolutely without any obligation on his part to make restitution." Doc. 405 at 20 (quoting *Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 374 P.3d 820, 828 (Okla. 2016)). That rule applies when the defendant "never requested or authorized [the] [p]laintiff[] to take any action or expend any amounts on his behalf." *Cnty. Line Inv. Co. v. Tinney*, No. 88-C-550-E, 1989 WL 237380, at *2 (N.D. Okla. June 15, 1989); *see also Matter of S & S Indus.*, 37 B.R. 838, 841-42 (Bankr. E.D. Mich. 1984).

OSA cannot escape liability under this theory for their unjust enrichment. To begin, the applicable statute states that the fees collected "shall be distributed" to the third-party contractor, i.e., Aberdeen, but a portion of those fees "may" be used to compensate OSA. Okla. Stat. tit. 19,

BRIEF G

§ 514.5(B) (eff. Nov. 1, 2010). Thus, OSA did not "involuntarily acquire" these funds, but negotiated to obtain them through the Agreement. *See* SAC Ex. A. Moreover, Aberdeen here did far more than merely "request" the money paid: it demanded it through extortionate threats, and OSA enabled it do so. Finally, OSA's reliance on the statutory authorization is, again, misplaced, because the statute cannot be read to require the "distribution" in the case of *unconstitutional* warrants, which is what is at issue here.

## IV.   Plaintiffs' Claims Are Not Moot.

OSA argues that "much of the relief" Plaintiffs seek—later expanded to "all of the injunctive and declaratory relief"—is moot as a result of statutory amendments passed by the Oklahoma legislature this year that have yet to take effect. Doc. 405 at 21, 24.[12] To support this, OSA argues that Plaintiffs' claims are, "as a practical matter, a challenge to the statutory process for collecting unpaid court financial obligations and the procedures followed by Oklahoma courts." *Id.* But this is false. Plaintiffs challenge *practices*, not any statute or rule. *See, e.g.*, SAC pp. 98-100; *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 517 (10th Cir. 2023) ("every one of the ten claims set out in the [SAC] challenges debt-collection *practices* commenced after Plaintiffs are convicted and sentenced" (emphasis added)).

As an initial matter, "unlike claims for declaratory or injunctive relief, claims for damages are not mooted by subsequent events." *Bishop v. United States ex rel. Holder*, 962 F. Supp. 2d 1252, 1271 (N.D. Okla. 2014) (Kern, J.). Plaintiffs bring nine claims against OSA (Counts 1-3 &

---

[12] OSA notes that the "new processes and procedures go into effect on November 1, 2023." *Id.* at 21. OSA does not explain how a change that appears likely to occur in the future, but has not yet occurred, would affect claims that are live today. *See, e.g.*, *Brinkman v. Hobble Creek Half-Marathon*, No. 2:05-cv-00009, 2005 WL 8175141, at *2 (D. Utah C.D. Oct. 5, 2005) ("A mere promise to behave in a certain way at a future time does not moot a controversy."). In any event, the forthcoming revisions would not moot any of Plaintiffs' claims.

BRIEF G

5-10). Two seek only damages (Counts 1 & 9), and the remainder seek both damages and injunctive relief. Even if OSA was correct that Plaintiffs' injunctive claims were moot, the damages portion of the complaint would not be disturbed.

But none of Plaintiffs' claims against OSA will be mooted when the new law takes effect. Plaintiffs have alleged that OSA does not comply with state law. A change in the law that OSA has never complied with cannot moot a case. In addition, several of Plaintiffs' allegations are not addressed by the amendments. Until the revisions take effect on November 1, 2023, state law is clear: a court debtor can only be imprisoned for nonpayment if "the trial court finds after notice and a hearing that the defendant is financially able but refuses or neglects to pay." Okla. Stat. tit. 22, § 983(A) (eff. Nov. 1, 2018);[13] *see also id.* (a jail sentence for nonpayment may only be imposed "after a hearing and a judicial determination . . . that the defendant is able to satisfy the fine, cost, fee, or assessment by payment, but refuses or neglects to do so"); SAC ¶¶ 43-46 (noting that the challenged practices stem from the "collapse" of the protections provided by Oklahoma's statutory scheme that are intended to ensure constitutional requirements are followed). Plaintiffs have alleged that OSA and other Defendants "routinely ignore constitutional *and statutory* requirements in a concerted effort to extract as much money as possible from indigent people." SAC ¶ 49 (emphasis added). OSA does so by contracting with Aberdeen and renewing that contract, "with knowledge of Aberdeen's unlawful policies and practices." *Id.* ¶¶ 325, 335, 350; *see also id.* ¶ 366 (similar). OSA also provides Aberdeen with debtor information and financially benefits from Aberdeen's activities. *Id.* ¶ 282. Aberdeen's unlawful practices that underpin OSA's

---

[13] Plaintiffs have attached a copy of Section 983 that will remain in effect until November 1, 2023, as an exhibit to their first brief in opposition. *See* Br. A, Ex. 2. Although this version of the law went into effect after Plaintiffs filed this lawsuit, the prior version was identical in all relevant respects. *See* S.B. 689, 56th Leg., 2d Reg. Sess. (Okla. 2018).

BRIEF G

liability include "demand[ing] payment under threat of unlawful arrest"; "intentionally conceal[ing] alternative options that would avoid issuance of an arrest warrant"; "seek[ing] warrants for the arrest of persons who it knows to be indigent without disclosing such information"; and "call[ing]" and "threaten[ing]" family members that their loved one would be jailed if the family did not pay Aberdeen. *Id.* ¶ 281. *None* of those things have ever been authorized by any version of Oklahoma's statutory scheme.[14]

Importantly, the core of the allegations against OSA are that it has contracted with Aberdeen, knows what Aberdeen is doing, and despite that, refuses to end the contract and continues to renew it while benefitting financially. OSA's contract with Aberdeen remains authorized by state law. *Compare* Okla. Stat. tit. 19, § 514.4(A) (eff. Nov. 1, 2018) (authorizing county sheriffs to "contract with a statewide association of county sheriffs to administer contracts with third parties" for debt-collection activities), *with* Okla. Stat. tit. 19, § 514.4(A) (eff. Nov. 1, 2023) (renaming contractors "court cost compliance liaisons" but otherwise maintaining the program). Indeed, that is the sole allegation in Count 6, which alleges that Aberdeen's role in the criminal court process constitutes an unlawful conflict of interest. It also is the source of OSA's liability for the remaining equitable claims for relief. Because the change in law has not affected this fact, even if it were shown that Defendants had changed their practices to comply with the revised Okla. Stat. tit. 22, § 983(A), those claims would be unaffected.

Moreover, even if evidence showed Defendants had changed their practices in response to the law, under the voluntary-cessation doctrine a defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167,

---

[14] Notably, OSA does not represent that any of these things have stopped.

BRIEF G

190 (2000). Defendants cannot meet that burden here because they continue to "vigorously defend[] the constitutionality" of the challenged practices. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007). OSA does not claim that it no longer contracts with Aberdeen, or that the new law will prevent it from doing so. Indeed, it implicitly concedes that the statute's cosmetic change from the term "contractor" to "court cost compliance liaison" does not impede its ability to contract with Aberdeen. Doc. 405 at 23. Thus, "it is not clear [that] the [OSA] would necessarily refrain from" reverting to—or really, here, continuing—their unconstitutional conduct. *Knox v. SEIU*, 567 U.S. 298, 307 (2012).

And although repeal of a challenged statute may satisfy the voluntary-cessation standard, *see, e.g.*, *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1329 (11th Cir. 2004), Plaintiffs here, again, do not challenge Oklahoma's statutory system or court rules; they challenge OSA's actions enabling Aberdeen's activity that is alleged to *defy* those rules. There is no evidence that those practices will change as a result of the change in the law, and even if there were, it would amount to voluntary cessation under these circumstances.

Plaintiffs laud the Oklahoma legislature for its efforts to remedy some of the ills underlying this lawsuit. But as a legal matter, it cannot moot any equitable claims against OSA when the conduct underlying OSA's liability either remains authorized by state law, or has been unauthorized from the start.

## CONCLUSION

For the foregoing reasons, the Court should deny OSA's motion to dismiss.

Dated: August 10, 2023                Respectfully submitted,

                                                  /s/ *Daniel E. Smolen*
                                                  Daniel Smolen, OBA #19943
                                                  Robert M. Blakemore, OBA #18656
                                                  Smolen & Roytman

BRIEF G

701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

/s/ *Ryan Downer*
Ryan Downer (admitted *pro hac vice*)
D.C. Bar No. 1013470
Katherine Hubbard (admitted *pro hac vice*)
D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

/s/ *Seth Wayne*
Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804
Mary B. McCord (admitted *pro hac vice*)
D.C. Bar No. 427563
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu
mbm7@georgetown.edu

*Attorneys for the Plaintiffs*

BRIEF G

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of August, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.


<u>/s/ *Seth Wayne*</u>

BRIEF G