**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **CARLY GRAFF, et al.,** | |
| *Plaintiffs,* | |
| v. | **Case No. 4:17-CV-606-TCK-JFJ** |
| **ABERDEEN ENTERPRIZES II, INC., et al.,** | |
| *Defendants.* | |

<u>**PLAINTIFFS' OPPOSITION TO THE DEFENDANT JUDGES' RENEWED MOTION
TO DISMISS**</u>

**BRIEF H**

Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804
Mary B. McCord (admitted *pro hac vice*)
D.C. Bar No. 427563
Institute for Constitutional Advocacy
  and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel.: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu
mbm7@georgetown.edu

*Attorneys for the Plaintiffs*

Ryan Downer (admitted *pro hac vice*)
D.C. Bar No. 1013470
Katherine Hubbard (admitted *pro hac vice*)
D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

<u>**Index of Plaintiffs' Opposition Briefs**</u>

For ease of reference, each of Plaintiffs' opposition briefs has been labeled by letter according to the motion to dismiss to which it responds, listed below.

A.  51 County Sheriff Defendants, Individual Capacity (Doc. 407)

B.  Rogers County Defendants, Official Capacity (Doc. 406)

C.  Kim Henry, Former Court Clerk of Rogers County, Individual Capacity (Doc. 402)

D.  Scott Walton, Sheriff of Rogers County, Individual Capacity (Doc. 408)

E.  Aberdeen Enterprizes II, Inc. (Doc. 404)

F.  Jim and Rob Shofner (Doc. 403)

G.  Oklahoma Sheriffs' Association (Doc. 405)

H.  Defendant Judges (Doc. 412)

I.  51 County Sheriff Defendants, Official Capacity (Doc. 398)

J.  Vic Regalado, Sheriff of Tulsa County, Individual Capacity (Doc. 409)

K.  Don Newberry, Court Clerk of Tulsa County, Individual Capacity (Doc. 411)

L.  Darlene Bailey, Cost Administrator of Tulsa County, Individual Capacity (Doc. 410)

M.  Tulsa County Defendants, Official Capacity (Doc. 399)

i

BRIEF H

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ....................................................................................................... 1

RELEVANT BACKGROUND ........................................................................................ 4

    I.    Warrant and Jailing Practices in Tulsa County ........................................ 4

    II.    Warrant and Jailing Practices in Rogers County ..................................... 6

    III.    Plaintiffs Are at Risk of Being Subjected to the Defendant Judges' Practices .......................................................................................... 7

ARGUMENT .............................................................................................................. 9

    I.    Plaintiffs Are at Imminent Risk of Being Subjected to the Defendant Judges' Unconstitutional Practices and Therefore Have Standing to Sue. .............. 9

        A.    Plaintiffs Have Alleged a Concrete Injury-in-Fact. ..................................... 9

        B.    Plaintiffs Have Alleged that Their Injuries Are Fairly Traceable to the Defendant Judges. ................................................................. 14

        C.    Plaintiffs' Injuries Will Be Redressed by a Favorable Ruling from This Court. ...................................................................................... 16

    II.    Declaratory Relief Is Available. .......................................................... 16

    III.    Plaintiffs' Claims Are Not Moot. ........................................................ 17

        A.    Plaintiffs Challenge Practices, Not Statutes, and There Has Been No Showing that Practices Have Changed. ................................................. 19

        B.    Even if the Defendant Judges Had Changed Their Practices, the Change Would Constitute Voluntary Cessation That Does Not Moot the Case. ....................................................................................... 23

CONCLUSION ........................................................................................................... 25

BRIEF H

## **TABLE OF AUTHORITIES**

**Cases**

*ACORN v. City of Tulsa*, 835 F.2d 735 (10th Cir. 1987) .............................................. 16

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) ............................. 13

*Brinkman v. Hobble Creek Half-Marathon*, No. 2:05-cv-00009, 2005 WL 8175141
(D. Utah Oct. 4, 2005) ............................................................................................. 18

*Citizen Cent. v. Gessler*, 770 F.3d 900 (10th Cir. 2014) ............................................. 21

*Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174,
1192 (10th Cir. 2000) ......................................................................................... 11, 12

*Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537 (10th Cir. 2016) ...................... 11

*Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320 (11th Cir. 2004) .......... 24

*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) ................................................ 8

*EEOC v. CollegeAmerica Denver, Inc.*, 869 F.3d 1171 (10th Cir. 2017) ...................... 14

*Fair Fight Action, Inc. v. Raffensperger*, 413 F. Supp. 3d 1251 (N.D. Ga. 2019) ...... 23

*Finstuen v. Crutcher*, 496 F.3d 1139 (10th Cir. 2007) ................................................... 9

*Franklin v. City of Chicago*, 102 F.R.D. 944 (N.D. Ill. 1984) ............................... 10, 11

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ...... 23

*Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500 (10th Cir. 2023) ............... 4, 17, 19

*Hafer v. Melo*, 502 U.S. 21 (1991); ............................................................................. 1

*Hogan v. Okla. Dep't of Corr.*, 24 F. App'x 984 (10th Cir. 2002) ............................... 23

*In re Cont'l Airlines*, 91 F.3d 553, 559 (3d Cir. 1996) ................................................. 18

*In re Semcrude, L.P.*, 728 F.3d 314, 320 (3d Cir. 2013) ............................................... 18

*Jiricko v. Frankenburg Jensen Law Firm*, No. 2:16-cv-00132-DB-EJF, 2017 WL 1207879
(D. Utah Mar. 14, 2017) .......................................................................................... 19

*Jones v. Murphy*, 470 F. Supp. 2d 537 (D. Md. 2007) .......................................... 10, 11

*Juidice v. Vail*, 430 U.S. 327 (1977) ................................................................. 10, 12, 13

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015) ........................................... 11

*Knox v. SEIU*, 567 U.S. 298 (2012) ............................................................................. 24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ............. 18

*Lynch v. Baxley*, 744 F.2d 1452 (11th Cir. 1984) ....................................................... 13

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652 (2019) ............... 19

*Moore v. Harper*, 216 L.Ed.2d 729 (2023) ................................................................. 18

*NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77 (D.C. Cir. 2012) ................ 13

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S.
656 (1993) ................................................................................................................ 22

*Oryem v. Richardson*, No. 10-cv-1221, 2011 WL 13174639 (D.N.M. Apr. 11, 2011) ...... 10

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007) ...... 23

*Porter v. Clarke*, 290 F. Supp. 3d 518 (E.D. Va. 2018) ............................................. 18

*Rembert v. Sheahan*, 62 F.3d 937 (7th Cir. 1995) ....................................................... 23

*Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096 (10th Cir. 2010) ...... 18, 23

*S. Utah Wilderness All. v. Smith*, 110 F.3d 724 (10th Cir. 1997) ......................... 19, 24

*Sprint Nextel Corp. v. Middle Man, Inc.*, 822 F.3d 524 (10th Cir. 2016) ................... 19

*State Farm Fire & Casualty v. Mhoon*, 31 F.3d 979 (10th Cir. 1994) ......................... 17

*Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236 (10th Cir. 2008) ............................... 17

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ........................................... 18

*Tandy v. City of Wichita*, 380 F.3d 1277 (10th Cir. 2004) .......................................... 10

BRIEF H

*Watt v. Energy Action Educ. Found.*, 454 U.S. 151 (1981) ............................................... 9

*Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208 (10th Cir. 2012) ............................ 24

*Younger v. Harris*, 401 U.S. 37 (1971) ....................................................................... 3

**Statutes**

42 U.S.C. § 1983 ........................................................................................... 16, 19

Okla. Stat. tit. 19, § 514.4 ................................................................................. 21

Okla. Stat. tit. 22, § 983 ............................................................................... 17, 20, 22

**Rules**

Fed. R. Civ. P. 25(d) ......................................................................................... 1

**Legislative Materials**

2018 Okla. Sess. Law Serv. Ch. 128 (S.B. 689) (West) ....................................................... 20

**Other Authorities**

Okla. Att'y Gen. Op. No. 07-3 (Feb. 14, 2007) ............................................................... 15

BRIEF H

## **INTRODUCTION**

Plaintiffs in this case challenge an unlawful debt-collection scheme that has forced them, and thousands of similarly situated indigent Oklahomans, into "a cycle of mounting debts, arrest, and incarceration." Second Am. Compl. ("SAC"), Doc. 212, ¶ 67. Defendants Tulsa County Judges[1] Dawn Moody, Doug Drummond, and William Musseman and Rogers County Judge Terrell Crosson (collectively, the "Defendant Judges") play a central role in keeping that cycle churning in their counties. Specifically, at the request of court clerks or the for-profit debt-collection company Aberdeen Enterprizes II, Inc., ("Aberdeen"), the Defendant Judges issue warrants for the arrest of people who have not paid court debt, regardless of the reason for nonpayment. The Defendant Judges then require every person arrested on such a debt-collection warrant to remain in jail, sometimes for days, unless they can pay a fixed sum ($250 in Tulsa County and however much outstanding court debt the arrestee has in Rogers County) to gain their freedom. At no point in this process do the Defendant Judges make the constitutionally required inquiry into the debtors' ability to pay, either before issuing a warrant for nonpayment of court debt or before setting the amount the debtor must pay to be released from jail.

Plaintiffs seek an order from this Court declaring that these warrant and jailing practices violate the Fourth and Fourteenth Amendments. Specifically, in Counts 2 and 5, Plaintiffs challenge as a violation of the Due Process and Equal Protection Clauses the Defendant Judges'

---

[1] Per the Defendant Judges, Judge Musseman was appointed to the Court of Criminal Appeals in 2022 and is no longer a District Judge in Tulsa County, and Judge Moody was elected to District Judge in 2019 and is no longer assigned to the cost docket. Doc. 412 at 1 n.1. As they were sued in their official capacities, the Defendant Judges' successors will "automatically assume [their] role[s] in the litigation." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also* Fed. R. Civ. P. 25(d). Defendants have yet to identify successors, so for ease of reading Plaintiffs will continue to refer to the Defendant Judges by the names as pled, with the intent that they be construed to refer to the relevant successor.

BRIEF H

practice of issuing warrants for nonpayment without making any inquiry into the debtor's ability to pay. In Count 3, Plaintiffs allege that the Defendant Judges' practice of issuing warrants not based on oath or affirmation violates the Fourth Amendment. In Count 4, Plaintiffs allege that the Defendant Judges' practice of requiring arrestees to pay a fixed sum to obtain their release from jail, without the constitutionally required inquiry into ability to pay, violates the Due Process and Equal Protection Clauses. And in Count 7, Plaintiffs challenge as a violation of the Equal Protection Clause Defendants' use of unconstitutionally onerous debt-collection methods, including, as relevant here, the role that the Defendant Judges' warrant and jailing practices play in that scheme.

In their motion to dismiss (Doc. 412), the Defendant Judges do not argue that their practices actually are consistent with the Constitution. Instead, they seek to evade liability for their unlawful acts by challenging Plaintiffs' standing, arguing that this Court lacks authority to grant the requested declaratory relief, and asking the Court to dismiss the case as moot. None of the Defendant Judges' attempts to avoid scrutiny of their illegal conduct has merit.

Multiple Plaintiffs have standing to challenge the Defendant Judges' jailing and warrant practices. Two Plaintiffs have outstanding debt-collection arrest warrants right now, providing them with standing to challenge the jailing practices, which are automatic post-arrest procedures. If Plaintiffs are arrested, they will be forced to wait in jail for up to four days because they are too poor to pay the hundreds of dollars the Defendant Judges will require for their release. Plaintiffs thus have concrete and imminent injuries sufficient to satisfy Article III's requirements, and an order from this Court declaring unconstitutional the Defendant Judges' practice of setting a release fee without regard to ability to pay will redress these anticipated injuries.

BRIEF H

Further, five Plaintiffs have standing to challenge the Defendant Judges' warrant practices. These Plaintiffs cannot afford to pay their court debt, and it is likely only a matter of time until the Defendant Judges issue new arrest warrants against them. Aberdeen and the court clerks have a practice of seeking a new warrant when a debtor misses payments, as each of these Plaintiffs has. Once a request is made, it is the Defendant Judges' practice to issue the warrant. This, too, is an imminent injury, and an order declaring the Defendant Judges' warrant practices unconstitutional will shield Plaintiffs from it.

The Defendant Judges' declaratory relief argument fails as well. They argue that declaratory relief is unavailable for three main reasons, namely, because there is no live controversy, because the Oklahoma appellate process provides Plaintiffs with a remedy, and because declaratory relief here would create friction between the federal and state courts. The first argument is merely a reframing of the contention that Plaintiffs lack standing, and it fails for the same reasons. The second misunderstands Plaintiffs' claims. Plaintiffs seek declaratory relief related to *anticipated future* injuries. There is not yet any order from which Plaintiffs could appeal; a state court appeal is therefore not an option, let alone one that would provide a full remedy. And the third argument is premised on the notion that federal declaratory relief will somehow interfere with the state court's jurisdiction, a reassertion of Defendants' previous argument for abstention under *Younger v. Harris*, 401 U.S. 37 (1971) that was rejected by the Tenth Circuit.

Finally, the Defendant Judges err in contending that Plaintiffs' claims have been mooted by recent changes to Oklahoma law. As Plaintiffs explain below, it is the Defendant Judges' practices, not Oklahoma's statutes, that Plaintiffs challenge in this lawsuit. The Defendant Judges have not shown any change to their practices, which Plaintiffs have consistently alleged violate the same statutory provision that Defendants believe will moot this case when amended. And even

BRIEF H

if their practices have changed, the Defendant Judges have not met their heavy burden of establishing that any voluntary cessation renders this case moot.

Thus, this Court has both jurisdiction to hear Plaintiffs' claims and authority to issue the requested relief. The Defendant Judges' motion to dismiss should be denied.

## RELEVANT BACKGROUND[2]

### I.   Warrant and Jailing Practices in Tulsa County

In Tulsa County, judges, the Court Clerk, and the Cost Administrator assess fines, fees, and costs against persons with criminal or traffic convictions at the close of each case. SAC ¶ 117. If an individual cannot pay off this court debt immediately, the Cost Administrator establishes a payment plan. Minimum payments are typically $50 or $75 (and never below $25) per month. *Id.* ¶ 118. Each debtor receives a payment plan "regardless of the debtor's ability to pay or whether the debtor depends on government assistance to survive," *id.*, and regardless of whether the debtor communicates her poverty to the Cost Administrator, *id.* ¶ 119.

After the Cost Administrator establishes a payment plan, if the debtor misses a certain number of payments, the Cost Administrator or Court Clerk will request that Judge Moody issue a warrant for the debtor's arrest. *See id.* ¶¶ 120-21. The Court Clerk and Cost Administrator do not include any information about the debtor's ability to pay in the warrant request and do not make their requests under oath or affirmation. *Id.* ¶¶ 33, 120-21. Upon receiving a warrant request, Judge Moody issues a warrant as a matter of course, without making the constitutionally required inquiry into the debtor's ability to pay. *Id.* After Judge Moody issues the warrant, if the debtor does not

---

[2] This section includes allegations relevant to Plaintiffs' claims against the Defendant Judges. For a summary of the allegations and claims against all Defendants, see *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 509-14 (10th Cir. 2023).

BRIEF H

make a payment within 30 days, the Cost Administrator and Clerk transfer the case to Aberdeen for collection. *Id.* ¶ 125.[3]

A debtor may still make a warrant-recall payment after a case is transferred to Aberdeen, but even if she does, Aberdeen maintains control of collections and can request a new debt-collection arrest warrant. *See id.* ¶ 126. Like the Court Clerk and Cost Administrator, Aberdeen requests a new warrant after a debtor misses a certain number of payments. *Id.* Aberdeen also requests new warrants without providing essential information about the debtor's ability to pay to the state court or making the request under oath or affirmation. *Id.* ¶¶ 63, 89 & n.23, 90. The Tulsa Clerk and Cost Administrator then put the request in front of Judge Moody, who issues a warrant, again without making any inquiry into the debtor's ability to pay. *Id.* ¶¶ 33, 126.

If a debtor is arrested on a debt-collection warrant—regardless of whether the Clerk and Cost Administrator or Aberdeen requested the warrant—the debtor is taken to the Tulsa County jail. *Id.* ¶ 128. Pursuant to policy established by the Tulsa County Judges, each debtor must pay $250 to be released from jail immediately. *Id.* ¶¶ 128, 342. This money does not operate as a bond used to secure the debtor's appearance; it is simply applied to the debtor's outstanding debt. *Id.* ¶ 128. If the debtor is too poor to pay, she must wait until the next "cost docket." *Id.* ¶ 129. Judge Moody presides over the cost docket on Tuesdays and Fridays, meaning that debtors who cannot pay remain in jail up to four days in a normal week and longer over holidays. *Id.* When a debtor finally appears in court, Judge Moody releases her without requiring any payment (unless the debtor has another active warrant unrelated to court debt), and the debtor continues to owe court debt. *Id.* ¶¶ 130, 132.

---

[3] Tulsa County ceased using Aberdeen to collect debt after Plaintiffs initiated this action, but before the filing of the Second Amended Compliant. *Id.* ¶¶ 9 n.5, 124. The statement of relevant background captures the practices of the Defendant Judges in Tulsa County prior to that point.

BRIEF H

Judges Drummond and Musseman supervise Judge Moody and approved these policies. *Id.* ¶¶ 33; 128 n.29.

## II.   Warrant and Jailing Practices in Rogers County

Rogers County operates much the same way. As in Tulsa County, judges and the Rogers County Court Clerk assess fines, fees, and costs at the end of criminal and traffic cases. SAC ¶ 133. If a debtor cannot pay off this court debt immediately, the Rogers Clerk establishes a payment plan, normally with a minimum payment of $75 per month. *Id.* ¶ 134. The Rogers Clerk sets the amount owed per month without regard to the debtor's ability to pay. *Id.*

If a debtor then fails to make payments for a certain amount of time, Judge Crosson, on request of the Rogers Clerk, will issue a warrant for the debtor's arrest. *Id.* ¶ 136. These debt-collection arrest warrants issue without regard to, and frequently in the face of evidence of, a debtor's inability to pay, and the Rogers Clerk does not make the requests under oath or affirmation. *Id.* ¶¶ 136-37. The Rogers Clerk then transfers the debtor's case to Aberdeen to take charge of collections. *Id.* ¶¶ 137-38.[4]

As with cases arising out of Tulsa County, a debtor can pay Aberdeen to recall her warrant, but the case will remain with Aberdeen even after that point. *See* SAC ¶ 138. If the debtor then misses payments, Aberdeen will request a new warrant. *Id.* Aberdeen, again, does this without providing any information about the debtor's ability to pay to the state court and without making the request under oath or affirmation. *Id.* ¶¶ 63, 89 & n.23, 90, 138. Judge Crosson, in turn, issues the warrant without making the constitutionally mandated inquiry into the debtor's ability to pay. *Id.* ¶¶ 34, 138.

---

[4] Like Tulsa County, Rogers County ceased using Aberdeen to collect debt at some point after Plaintiffs initiated this action. *See* Doc. 342. The statement of relevant background captures the practices of the Defendant Judges in Rogers County prior to that point.

BRIEF H

Once law enforcement arrests a debtor on such a warrant, the debtor is taken to the Rogers County jail. *Id.* ¶ 139. Pursuant to Judge Crosson's policy, each debtor must pay the *total* amount of debt owed (which can be thousands of dollars) to obtain immediate release. *Id.* ¶¶ 6, 139. As in Tulsa County, this payment does not act as a bond and "is simply a cash payment to be applied to the amount owed by the debtor." *Id*. ¶ 139. If the debtor is too poor to pay, she must wait until the next arraignment hearing. *Id.* ¶ 140. Arraignment hearings are held on Mondays, Tuesdays, Thursdays, and Friday, meaning that a debtor may remain in jail up to three days in a normal week (or longer in a holiday week) if she cannot pay. *Id.* Once the debtor appears in court, Judge Crosson requires the debtor to either pay $100 or, if the debtor is too poor to pay, to "sit it out" in jail for four days before release, with each day in jail earning a $25 credit against the debt owed. *Id*.

## III.   Plaintiffs Are at Risk of Being Subjected to the Defendant Judges' Practices

Multiple Plaintiffs in this action have cases arising in Tulsa and Rogers Counties. Two have outstanding debt-collection arrest warrants. One is Randy Frazier, a 59-year-old Tulsa resident who has debt from cases arising in Tulsa County. SAC ¶¶ 161, 164. A debt-collection warrant issued against Mr. Frazier in January 2017, and the Tulsa Clerk and Cost Administrator referred his case to Aberdeen for collection. *Id.* ¶ 164. He has not been able to work since suffering a mini-stroke in November 2015 and has no income beyond Social Security disability payments. *Id.* ¶ 162. Mr. Frazier cannot afford to pay his court debt or the $250 necessary to obtain his release, should he be arrested. *Id.* ¶¶ 19, 165.

The second Plaintiff alleged to have an active warrant is Melanie Holmes.[5] Ms. Holmes is indigent and has for years struggled to pay court debt from cases in multiple counties, including

---

[5] At the time the Complaint was filed, Plaintiff Carly Graff also had an outstanding arrest warrant from Rogers County. *Id.* ¶ 18. Defendants represent that she no longer has one, Doc. 342, but because this is a putative class action, Plaintiffs seek equitable relief, and the "bench warrants" for nonpayment are inherently transitory, "the termination of a class representative's claim does not

BRIEF H

Creek, Rogers, and Tulsa Counties. SAC ¶¶ 25, 201-05. In 2016, the Rogers Clerk sought, and Judge Crosson issued, a debt-collection arrest warrant for Ms. Holmes. *Id.* ¶¶ 25, 206. To Plaintiffs' knowledge, Ms. Holmes also has an active debt-collection arrest warrant in Tulsa County. *Id.* ¶ 25.

Aberdeen is in charge of collecting court debt from three additional Plaintiffs with cases in Tulsa County District Court. These Plaintiffs also cannot pay at all or struggle to pay sporadically, but they do not yet have active arrest warrants. Linda Meachum was at the time of filing a 58-year-old Tulsa resident. Her only income is $194 in food stamps and $50 she receives each month for helping an elderly neighbor. *Id.* ¶ 21. As alleged in the Second Amended Complaint, Ms. Meachum cannot afford to pay her court debt. *Id*. Christopher Choate, a 40-year-old (at the time of filing) resident of Tulsa, depends on federal disability benefits to support himself, his wife, and his wife's grandson, and to make child support payments. *Id.* ¶ 23. Mr. Choate has struggled to make payments on his court debt from this limited income and, at the time the Second Amended Complaint was filed in May 2018, his benefits were "soon [to] be reduced from approximately $800 per month to $588 per month." *Id.* ¶¶ 23, 187. David Smith, a 32-year-old (at the time of filing) resident of Tulsa County, earns approximately $1,200 a month, which he uses to pay child support for his son and to support his girlfriend and her three children. *Id.* ¶¶ 20, 170. Mr. Smith cannot afford to pay his court debt; he has only been able to make periodic payments by foregoing his child support payments and, as a result, visitations with his son. *Id.* ¶ 173.

---

moot the claims of the unnamed members of the class," and the "'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution." *County of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991) (internal quotation marks omitted).

BRIEF H

## ARGUMENT

I. **Plaintiffs Are at Imminent Risk of Being Subjected to the Defendant Judges' Unconstitutional Practices and Therefore Have Standing to Sue.**

The Defendant Judges contend that Plaintiffs lack standing to challenge their unlawful jailing and warrant practices, and attack each aspect of Article III standing, "which requires that a plaintiff establish injury-in-fact, causation and redressability." *Finstuen v. Crutcher*, 496 F.3d 1139, 1143 (10th Cir. 2007). In advancing this argument, the Defendant Judges contradictorily alternate between claiming that Plaintiffs' injuries are speculative because they depend on uncertain events in the future and that Plaintiffs' claims are not redressable by the Defendant Judges because they involve past injuries.

The Defendant Judges are wrong on all fronts. Plaintiffs' challenge to the Defendant Judges' jailing and warrant practices are forward-looking only and seek a declaration relating to imminent injuries that Defendant Judges will inflict on Plaintiffs in the absence of court intervention. Plaintiffs have standing to pursue these claims.

### A. **Plaintiffs Have Alleged a Concrete Injury-in-Fact.**

The Defendant Judges argue that Plaintiffs have failed to plead injury-in-fact because their claims are too speculative to be legally cognizable. Doc. 412 at 10-13. This claim is meritless.

***Jailing Practices.*** Plaintiffs Randy Frazier and Melanie Holmes each have standing to challenge the Defendant Judges' detention practices.[6] A plaintiff has standing to seek equitable relief so long as she faces an "imminent," rather than a "conjectural" or "speculative," threat of being subjected to the challenged conduct. *See, e.g.*, *Tandy v. City of Wichita*, 380 F.3d 1277, 1283

---

[6] In focusing on certain Plaintiffs' standing, Plaintiffs do not concede that the remainder lack standing. *See, e.g.*, *Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981) ("Because we find California has standing, we do not consider the standing of the other plaintiffs.").

BRIEF H

(10th Cir. 2004). A plaintiff has standing to challenge post-arrest procedures if (1) the risk of arrest is imminent, and (2) the procedures will necessarily be applied upon arrest. *See, e.g.*, *Jones v. Murphy*, 470 F. Supp. 2d 537, 551 (D. Md. 2007) (finding standing to challenge practice of subjecting arrestees to strip searches where plaintiff faced realistic threat of arrest); *Franklin v. City of Chicago*, 102 F.R.D. 944, 947-48 (N.D. Ill. 1984) (finding standing to challenge practice of subjecting arrestees to transportation without seatbelts where plaintiff "face[d] a realistic threat of being subjected to an arrest").[7]

Both of these elements are satisfied here. First, it is settled that the existence of an active arrest warrant suffices to establish that an arrest is imminent for purposes of Article III. In *Juidice v. Vail*, 430 U.S. 327 (1977), the Supreme Court held that a plaintiff who "had not been imprisoned, but alleged that he was in imminent danger of being imprisoned pursuant to [a contempt order]" had standing to challenge "the contempt citation or the short period[] of incarceration" to which he would be subjected. *Id.* at 332 (internal quotation mark omitted); *see also, e.g.*, *Oryem v. Richardson*, No. 10-cv-1221, 2011 WL 13174639, at *4 (D.N.M. Apr. 11, 2011) (finding standing based on a "likelihood of an unlawful arrest" on the basis of "an outstanding, but invalid, bench warrant"); *Jones*, 470 F. Supp. 2d at 551. Mr. Frazier and Ms. Holmes have active arrest warrants commanding their arrest from the Tulsa County District Court and Rogers County District Court, respectively. *See* SAC ¶¶ 19, 25. They can be arrested on those warrants *at any time*, just as the plaintiff in *Juidice* could have been arrested on the contempt order.

_____

[7] Although courts have not explicitly articulated their holdings as establishing a two-pronged test, a hypothetical demonstrates why it is sensible. If a plaintiff brought suit to challenge the use of handcuffs (a post-arrest procedure necessarily used upon arrest), adequate allegations that the risk of arrest is imminent would, of course, be sufficient to establish that the risk of being subjected to the use of handcuffs is imminent as well.

BRIEF H

Second, upon arrest, Mr. Frazier and Ms. Holmes will automatically be subjected to, and injured by, the Defendant Judges' jailing practices. *Cf. Jones*, 470 F. Supp. 2d at 551; *Franklin*, 102 F.R.D. at 947-48. Plaintiffs have alleged that anyone arrested for nonpayment in Tulsa County or Rogers County must pay a fixed sum to be released from jail and that those who cannot afford to pay this sum must wait in jail, sometimes for days, before they can see a judge. *See* SAC ¶¶ 128-29, 139-40, 342. Further, Mr. Frazier and Ms. Holmes have pled that they are too poor to pay the preset amounts the Defendant Judges require for release, *see id.* ¶¶ 19, 25, so there is no possibility that they will be able to avoid the unconstitutional jailing practice.

In sum, because Mr. Frazier and Ms. Holmes are at imminent risk of being arrested and because those arrests will necessarily lead to the Defendant Judges requiring them to remain in jail because of their inability to pay a fixed sum, Mr. Frazier and Ms. Holmes have satisfied Article III's injury-in-fact requirement.

***Warrant Practices.*** Plaintiffs also have standing to challenge the Defendant Judges' practice of issuing unconstitutional warrants. "Article III standing exists [w]hen the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1192 (10th Cir. 2000) (alteration in original) (internal quotation marks omitted).[8] "The plaintiff need not

---

[8] Although this standard is often applied in First Amendment cases, as the Second Circuit has noted, "[t]he Supreme Court has not limited standing to pursue pre-enforcement challenges only to plaintiffs intending conduct arguably affected with a constitutional interest." *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 n.4 (2d Cir. 2015). And other courts have found the standard applicable outside the context of the First Amendment. *See, e.g.*, *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 545 (10th Cir. 2016) (Second Amendment); *Knife Rights*, 802 F.3d at 384 (Due Process Clause vagueness claim). In any event, Plaintiffs submit that, in light of their indigence, they have a constitutional right to be free from warrants, arrest, and detention when not paying the money they use for basic survival.

BRIEF H

demonstrate to a certainty that [he] will be prosecuted, only that [he] has an actual and well-founded fear that the law will be enforced against [him]." *Id.* (internal quotation marks and citation omitted).

Under this standard, Plaintiffs Linda Meachum, Christopher Choate, and David Smith have standing to seek relief against the Tulsa County Judges in connection with the court debt they currently owe. Ms. Meachum "has no money to pay Aberdeen" and has not paid; Mr. Choate and Mr. Smith can barely afford basic necessities and have struggled to pay their debts. SAC ¶¶ 20, 23, 172-73. In other words, they expect to "engage in a course of conduct"—nonpayment of court debt, due to indigence, for an extended period—that Defendants treat as an offense subject to arrest. These Plaintiffs, if these practices persist, are likely to miss the requisite number of payments, and the Court Clerk and Cost Administrator (or Aberdeen, if Tulsa renews its relationship) will seek new warrants. *See id.* ¶¶ 88, 121, 126. Those requests will, in turn, lead the Defendant Judges currently in charge of the "cost docket"—acting pursuant to a policy approved by Judges Musseman and Drummond—to issue new debt-collection arrest warrants. *See Id.* ¶¶ 33, 91, 126. This threat is more than credible. As Plaintiffs have alleged, as of February 2017, there were more than 22,000 active arrest warrants in Tulsa County issued for engaging in precisely this course of conduct. *Id.* ¶ 6.

The Supreme Court's decision in *Juidice* is again instructive. In addition to the plaintiff who was facing an already issued contempt order, the Supreme Court also found that another plaintiff had standing. No contempt order had yet issued against this second plaintiff, but he had failed to comply with an order to show cause, the precondition that allowed a judge to issue a contempt order. 430 U.S. at 332. This was sufficient to create standing because it was expected that the judge would, at some point, exercise the authority to issue the contempt order, even though

BRIEF H

such an order did not issue immediately. *See id.* at 329 (noting that one contempt order issued "[n]early two months" after noncompliance with a court order). Here, in the absence of court intervention, Plaintiffs' nonpayment will prompt new warrants—even if not immediately—just as noncompliance with the show-cause order was expected to prompt the issuance of a contempt order in *Juidice*. Although *Juidice* predates the "credible threat" standard,[9] it nonetheless applies analogous standing principles and demonstrates that Plaintiffs have met the standard.

Ms. Holmes and Mr. Frazier also have standing to seek relief against Rogers County Judge Crosson and the Tulsa County Judges, respectively. If Ms. Holmes and Mr. Frazier are arrested on their current warrants, their debt will remain and they will be given new payment plans that they will be equally unable to pay. *See* SAC ¶¶ 156, 162; *see also id.* ¶ 132. With that nonpayment will come new debt-collection arrest warrants. As a result, they too are at imminent risk of being subjected to the Defendant Judges' warrant practices, and to subsequent detention.

Finally, it is irrelevant that arrest warrants against these Plaintiffs might not issue immediately. *See Juidice*, 430 U.S. at 329. So long as the likelihood of the warrants issuing is sufficiently concrete—which it is here—the precise date on which the injury will occur need not be known now. *See, e.g.*, *NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77, 84 (D.C. Cir. 2012) (finding plaintiff had standing where precise date injury would occur in the future was unknown, but likely to occur "at some point over the course of a year"); *see also id.* (citing cases finding standing to challenge injuries that would not occur for over a year); *Lynch v. Baxley*, 744 F.2d 1452, 1457 (11th Cir. 1984) (plaintiff had standing to challenge practice of jailing people

---

[9] The Supreme Court first introduced the standard in *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

BRIEF H

committed for mental health reasons even though he had experienced such detentions irregularly—specifically, "two…in the past three years"—because he still suffered from mental health issues).[10]

### B.   Plaintiffs Have Alleged that Their Injuries Are Fairly Traceable to the Defendant Judges.

The Defendant Judges next assert that Plaintiffs have not satisfied the "'fairly traceable' element of Article III standing" because Plaintiffs have not shown how their injuries are "attributable to the challenged conduct of defendants." Doc. 412 at 14.[11] It is easy to see, however, that the injuries Plaintiffs fear will be caused *directly* by the Defendant Judges. When Mr. Frazier is arrested, he will be forced to stay in jail for up to four days because Judge Moody, pursuant to a policy approved by Judges Drummond and Musseman, will require Mr. Frazier to pay a fee that he cannot afford to obtain his release. And when Ms. Holmes is arrested, she will remain in jail for up to three days because Judge Crosson will require her to pay a fee that she cannot afford to obtain her release.

It is equally obvious that the Defendant Judges will bear immediate responsibility for the injuries caused by their warrant practices. Judge Moody—acting pursuant to a policy approved by

---

[10] Nor is it relevant that Plaintiffs have not alleged that a warrant issued between the filing of this action and the filing of the Second Amended Complaint. At most, this might demonstrate that Defendants have temporarily changed their practices in response to this litigation, but a voluntary change of practices under such circumstances cannot defeat this Court's Article III jurisdiction. *Cf. EEOC v. CollegeAmerica Denver, Inc.*, 869 F.3d 1171, 1173 (10th Cir. 2017) (live controversy remains after voluntary cessation of conduct unless "[i]t is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur" (internal quotation marks omitted)).

[11] The Defendant Judges' argument appears at times to rest on the erroneous view that Plaintiffs seek a declaration related to injuries suffered in the past. *See* Doc. 412 at 13 (arguing that Plaintiffs "have not actually alleged they have had any contact with any of Defendant State Judges"). Plaintiffs' claims are forward-looking, and as alleged, Plaintiffs face imminent "contact" with these Judges' practices.

BRIEF H

Judges Musseman and Drummond[12]—will issue any debt-collection warrants against Ms. Meachum, Mr. Choate, Mr. Smith, and Mr. Frazier. SAC ¶¶ 33, 342. Likewise, Judge Crosson will issue the anticipated debt-collection arrest warrant against Ms. Holmes. *Id.* ¶¶ 34, 342. Thus, Plaintiffs' injuries are fairly traceable to the Defendant Judges.

At one point, the Defendant Judges, without citation to any case, suggest that Plaintiffs' injuries are not traceable to the Defendant Judges because they stem from Plaintiffs' "fail[ure] to meet their financial obligations and . . . fail[ure] to seek or appear for a review of their ability to pay." Doc. 412 at 14. This confuses standing with the merits. The Defendant Judges are free to argue at the appropriate time that, because Plaintiffs will not have made payments or appeared in court (a contention that would ignore that a core allegation of Plaintiffs' claim is that there is no pre-arrest hearing), they have not violated Plaintiffs' constitutional rights. That is a merits argument. But it does not change that Plaintiffs' claimed injuries stem directly from the Defendant Judges' conduct. The non-payment (or phantom non-appearance) is the step that triggers the

---

[12] In their brief, the Defendant Judges do not argue that Judge Musseman or Judge Drummond require separate consideration for purposes of Article III standing. In fact, the Defendant Judges have abandoned a related argument that they made in their motion to dismiss Plaintiffs' First Amended Complaint that these two Judges did not "personally participate" in the challenged practices. *See* Doc. 169 at 25. That abandonment is warranted. Judges Drummond and Musseman are responsible for policies related to debt collection in Tulsa County District Court. They supervise Judge Moody, SAC ¶ 33, who is a special judge and who they therefore may fire "at will" under Oklahoma law. *See* Okla. Att'y Gen. Op. No. 07-3 (Feb. 14, 2007). Judge Moody, in turn and as has been explained, issues debt-collection arrest warrants based solely on nonpayment and sets the amount required for release from jail—without any inquiry into ability to pay or other pre-deprivation process—as a matter of regular practice. Critically, the Second Amended Complaint alleges that Judges Drummond and Musseman were part of a committee that recognized the unlawfulness of this conduct, and that even recommended ceasing the practice of arresting debtors based solely on nonpayment—which follows directly from the warrants Judge Moody issues—but that Judges Musseman and Drummond nevertheless chose to allow business to continue as usual rather than implement that recommendation. *See* SAC ¶¶ 33, 128 n.29.

BRIEF H

Defendant Judges' warrant and jailing practices. This means that the Defendant Judges directly cause Plaintiffs' anticipated injuries.

### C.     Plaintiffs' Injuries Will Be Redressed by a Favorable Ruling from This Court.

The Defendant Judges' challenge to the redressability element of Article III standing fails as well. They argue that the requested relief will not redress Plaintiffs' injuries because it "will not have any effect on Plaintiffs' underlying criminal cases." *See* Doc. 412 at 16. But Plaintiffs do not challenge their underlying criminal cases; they challenge the unlawful practices relating to the collection of court debt. The Defendant Judges' argument thus misconceives Plaintiffs' claims as being backward-looking when they are, in fact, only forward-looking. As explained, Plaintiffs still owe court debt, are indigent, and are at imminent risk of being subjected to the Defendant Judges' wrongful practices. The requested declaratory order stating that the Defendant Judges' detention and warrant practices are unconstitutional will redress these injuries so long as the Judges respect that order and amend their practices. Because the Defendant Judges can be expected to do so, a declaratory judgment from this Court "is likely to redress" Plaintiffs' injuries. *ACORN v. City of Tulsa*, 835 F.2d 735, 738 (10th Cir. 1987).

## II.   Declaratory Relief Is Available.

In compliance with § 1983's limits on relief against judicial officers acting in a judicial capacity, Plaintiffs have sought only a declaratory judgment, and not an injunction, against the Defendant Judges. Nonetheless, the Defendant Judges make two arguments that even declaratory relief is unavailable here. Both are wrong.

***First***, the Defendant Judges assert that a live controversy sufficient to support declaratory relief exists only when a party is "faced with abandoning [the party's] rights or risking prosecution." Doc. 412 at 19. Yet the Judges cite nothing to support this contention. All that is

BRIEF H

required for declaratory relief is Article III standing. *See, e.g.*, *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008). The Defendant Judges' own brief recognizes as much, observing that "[t]he 'actual controversy' referenced in the Federal Declaratory Judgment Act . . . invokes the case-or-controversy requirements of Article III." Doc. 412 at 18 (citing *Surefoot LC*, 531 F.3d at 1241). For the reasons explained above, Plaintiffs have satisfied these requirements. And, in any event, Plaintiffs also satisfy the Defendant Judges' newly invented standard: Plaintiffs submit that, because of their serious indigence, they have a right to refrain from paying the money they use for basic survival without being exposed to warrants, arrests, and detention.

*Second*, the Defendant Judges argue that declaratory relief is inappropriate because the appellate process provides a "more suitable remedy." Doc. 412 at 20-21. This argument fails because there is no state appellate process that Plaintiffs can invoke. Again, Plaintiffs' claims are forward-looking: They seek a declaratory judgment about the constitutionality of actions that the Defendant Judges are likely to undertake in the future, and Plaintiffs cannot appeal something that has not yet occurred.

*Finally,* the Defendant Judges rely on *State Farm Fire & Casualty v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994), in arguing that declaratory relief here would create friction between the federal and state courts. *See* Doc. 412 at 20. This is an incorrect view and has already been dispensed with by the Tenth Circuit in this very case. *See generally Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500 (10th Cir. 2023).

## III.   Plaintiffs' Claims Are Not Moot.

The Defendant Judges argue that this case is moot because "the governing [state] statutes have changed to the benefit of criminal defendants and court debtors." Doc. 412 at 24. The only statute that the Defendant Judges reference is Okla. Stat. tit. 22, § 983 ("Section 983"), which was substantially amended by the legislature this past year. As an initial matter, the revised version is

BRIEF H

not set to take effect until November 1, 2023. The Defendant Judges do not explain how a change

that appears likely to occur in the future, but has not yet occurred, would affect claims that are live

today. *See, e.g.*, *Brinkman v. Hobble Creek Half-Marathon*, No. 2:05-cv-00009, 2005 WL

8175141, at *1 (D. Utah Oct. 4, 2005) ("A mere promise to behave in a certain way at a future

time does not moot a controversy."). This is particularly true given that a previous overhaul of the

same statute was repealed on an emergency basis before it could take effect. *See* Br. B at 17 n.13.

It is yet to be seen if something similar will happen to the new amendments. In any event, the

forthcoming revisions would not moot any of Plaintiffs' claims.

The Defendant Judges present two different standards for how the revisions to that statute

cause mootness: constitutional mootness, stemming from the Article III "Cases" and

"Controversies" requirement, *see Moore v. Harper*, 216 L.Ed.2d 729, 741 (2023), and "prudential"

mootness, where a court exercises discretion not to grant equitable relief, *Rio Grande Silvery

Minnow v. Bureau of Reclamation*, 601 F.3d 1096 (10th Cir. 2010). There are serious questions as

to whether prudential mootness has any application here.[13] But regardless, the "central inquiry"

---

[13] Recent decisions from the Supreme Court, which the Tenth Circuit has yet to grapple with, have cast doubt on the validity of prudential justiciability doctrines in any context. In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the Court determined that any prudential basis for a federal court to decline to adjudicate a claim is in "tension" with its "virtually unflagging" obligation to hear cases within its jurisdiction. *Id.* at 126 (citations omitted). Indeed, "just as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied, it cannot limit a cause of action that Congress has created merely because 'prudence' dictates." *Id.* at 128 (citation omitted); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (casting doubt on notion that claims can be deemed nonjusticiable on prudential rather than constitutional grounds). Even in its original conception, the doctrine of prudential mootness, also known as "equitable mootness," was designed to be "limited in scope and cautiously applied," typically arising in highly complex bankruptcy cases where fashioning relief is difficult, and where dismissal of the case "can prevent substantial harm to numerous parties." *In re Cont'l Airlines*, 91 F.3d 553, 559 (3d Cir. 1996); *see also In re Anderson*, 349 B.R. 448, 454 (E.D. Va. 2006); *In re Semcrude, L.P.*, 728 F.3d 314, 320 (3d Cir. 2013). It should be viewed with particular skepticism in cases like this one, a civil rights suit where fundamental constitutional rights are at stake. *See Porter v. Clarke*, 290 F. Supp. 3d 518, 542 (E.D. Va. 2018)

BRIEF H

under both Article III and prudential mootness doctrine "is essentially the same: have circumstances changed since the beginning of litigation that forestall any occasion for meaningful relief." *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997). That is, this Court "may dismiss . . . for that reason only if 'it is impossible for a court to grant [plaintiffs] any effectual relief.'"[14] *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019). That demanding standard is not met here, *id.*, for two distinct but related reasons.

### A.   Plaintiffs Challenge Practices, Not Statutes, and There Has Been No Showing that Practices Have Changed.

First and foremost, Plaintiffs challenge *practices*, not any statute or rule. *See*, *e.g.*, SAC pp. 98-100; *Graff*, 65 F.4th at 517 ("every one of the ten claims set out in the [SAC] challenges debt-collection practices commenced after Plaintiffs are convicted and sentenced").[15] To that end, Plaintiffs have consistently alleged that the Defendant Judges' practices did not comply with the statute that was in place at the time this lawsuit was filed. Before the recent amendments were passed, state law was clear: a court debtor could only be imprisoned for nonpayment if "the trial

---

("[C]oncerns . . . about the danger that a broad application of equitable mootness poses to the carefully structured federal civil rights regime are well-taken and counsel against dismissing plaintiffs' claims on prudential grounds."). Congress has provided Plaintiffs with 42 U.S.C. § 1983, an essential and historically important tool for private litigants to enforce their civil rights. There is no justifiable basis for limiting that vehicle outside the requirements of its statutory language and the Constitution.

[14] Plaintiffs only seek equitable relief against the Defendant Judges. To the extent the Defendant Judges' arguments are incorporated by other Defendants, Plaintiffs note that mootness would not affect Plaintiffs' claims for damages. *See*, *e.g.*, *Sprint Nextel Corp. v. Middle Man, Inc.*, 822 F.3d 524, 529 (10th Cir. 2016).

[15] Indeed, there is a question of whether the Defendant Judges would be proper defendants were Plaintiffs challenging a statute. *See*, *e.g.*, *Jiricko v. Frankenburg Jensen Law Firm*, No. 2:16-cv-00132-DB-EJF, 2017 WL 1207879, at *7 (D. Utah Mar. 14, 2017) ("numerous circuits have held that state court judges do not constitute proper party defendants to defend the constitutionality of a state statute because no case or controversy exists between the litigant challenging the constitutionality of a statute and the judge who adjudicated a claim under the statute."). Notably, the Defendant Judges make no such argument.

BRIEF H

court finds after notice and a hearing that the defendant is financially able but refuses or neglects to pay." Okla. Stat. tit. 22, § 983(A) (eff. Nov. 1, 2018);[16] *see also id.* (a jail sentence for nonpayment may only be imposed "after a hearing and a judicial determination . . . that the defendant is able to satisfy the fine, cost, fee, or assessment by payment, but refuses or neglects to do so."); SAC ¶¶ 43-46 (noting that "Oklahoma's statutory scheme provides protections" intended to ensure constitutional requirements are followed, but alleging that "the collapse of these protections" has led to the challenged practices). Pursuant to the allegations, the Defendant Judges as well as other Defendants "routinely ignore constitutional *and statutory* requirements in a concerted effort to extract as much money as possible from indigent people." SAC ¶ 49 (emphasis added). They do so by issuing arrest warrants for the collection of court debt that caused Plaintiffs' imprisonment, "predicated on nothing more than Aberdeen, Inc.'s unsworn factual allegation that a debtor has not made payments," with no "notice or other formal process, no opportunity to be heard, and no hearing of any kind" before signing the warrant. *Id.* ¶ 64. These allegations present facts that at the time of filing, the Defendant Judges violated Section 983's command that imprisonment only be based on notice, hearing, and a finding of ability to pay. Defendants cannot point to a change in law to moot this case when the principal claim Plaintiffs assert is that Defendants ignore the law.

The Defendant Judges eschew a claim-by-claim review of how the revised law results in mootness, preferring sweeping generalizations that Plaintiffs seek an "overhaul of the process

---

[16] Plaintiffs have attached a copy of Section 983 that will remain in effect until November 1, 2023, as an exhibit to their first brief in opposition to Defendants' renewed motions to dismiss. *See* Br. A, Ex. 2. Although this version of the law went into effect after Plaintiffs filed this lawsuit, the prior version was identical in all relevant respects. *See* 2018 Okla. Sess. Law Serv. Ch. 128 (S.B. 689) (West). The forthcoming amendments to Section 983 are attached as an exhibit to the Defendant Judges' motion to dismiss. *See* Doc. 412-1.

BRIEF H

through which court financial obligations are collected from indigent defendants." Doc. 412 at 30. But a claim-specific review of each count against the Defendant Judges reveals the truth: the greater part of their challenged conduct has never been authorized by statute, either now or at the time of filing. Counts 2 and 5 pertain to issuing arrest warrants based on nonpayment without inquiry into ability to pay, and Count 3 pertains to issuing arrest warrants solely on unsworn allegations of nonpayment. SAC ¶¶ 323, 332-33, 348. Those practices violate Section 983 as it was when the complaint was filed and as it now exists, and will violate Section 983 after the most recent amendments go into effect in November. Indeed, Count 5 is predicated on the fact that state law *provides* a guaranteed liberty interest that Defendants' actions fail to protect. *See id.* ¶ 346. As to Count 4, which challenges the practice of detaining persons in jail because of their inability to make a monetary payment *after* arrest, *id.* ¶ 342, its factual basis is not addressed by any version of the statute, and therefore could not be rendered moot by any ensuing changes in conduct. *See*, *e.g.*, *Citizen Cent. v. Gessler*, 770 F.3d 900, 907 (10th Cir. 2014) (change of rule does not moot case where "the remaining regulations allow continuation of the conduct being challenged").

The exception is Count 7, which sets forth that Defendants' use of onerous debt-collection methods—particularly transfer to a private debt collector and application of the 30-percent surcharge—for indigent court debtors violates the Equal Protection Clause of the Fourteenth Amendment. These practices *remain* authorized by state law. *Compare* Okla. Stat. tit. 19, § 514.4(A) (eff. Nov. 1, 2018) (authorizing county sheriffs to "contract with a statewide association of county sheriffs to administer contracts with third parties" for debt collection activities), *with* Okla. Stat. tit. 19, § 514.4(A) (eff. Nov. 1, 2023) (renaming contractors "court cost

BRIEF H

compliance liaisons" but otherwise maintaining the program).[17] Because the amendments to Section 983 have no impact on this claim, even if it were shown that Defendants had changed their practices to comply with the revised Section 983, Count 7 would be unaffected.

Notably, both the old and new versions of Section 983 instruct the Oklahoma Court of Criminal Appeals to implement "procedures" and "rules" deriving from Section 983. *Compare* Okla. Stat. tit. 22, § 983(D) (eff. Nov. 1, 2018), *with* Okla. Stat. tit. 22, § 983(L) (eff. Nov. 1, 2023). Those have been codified as Section VIII of the Rules of the Oklahoma Court of Criminal Appeals (widely known as "Rule 8"), and have yet to be amended based on the upcoming revisions to Section 983. Rule 8, from the beginning of this litigation until today, has prohibited the arrest of a person who misses a payment without a hearing and inquiry into ability to pay, which is at the heart of the Defendant Judges' conduct that Plaintiffs challenge. *See* SAC ¶¶ 45, 95, 346.

Hence, the question of the lawfulness of the challenged practices under state law has not changed with the amendments to Section 983. The introduction of the new statute simply cannot by itself moot this case because it has been alleged from the beginning that the applicable Oklahoma laws have not operated to constrain the Defendant Judges from failing to comply with constitutional requirements. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (change of law did not moot case where new law did not eliminate the possibility of continuing wrongful conduct). The Defendant Judges, in other words, cannot point to a change in *statutes or rules* when the relevant inquiry is whether they have

---

[17] Prior to 2018, at the time this suit was filed, sheriffs had the option to contract with debt collectors directly. Now, the statute only provides the option to contract with OSA as a go-between. A copy of § 514.4 in effect at the time this suit was filed (the 2010 law), and in effect now until November 1, 2023 (the 2018 law), is attached to Plaintiffs' first brief in opposition. *See* Br. A, Ex. 1. And as with Section 983, *see supra* note 16, the recent amendments can be found in the sole attachment to Defendant Judges' motion to dismiss (Doc. 412-1).

BRIEF H

changed their *practices. See, e.g.*, *Fair Fight Action, Inc. v. Raffensperger*, 413 F. Supp. 3d 1251, 1272-76 (N.D. Ga. 2019) (claim not moot from change in state law where defendants had not shown compliance with amended law); *Rembert v. Sheahan*, 62 F.3d 937, 942 (7th Cir. 1995) (following change of law, the "district court must determine what the Sheriff's actual . . . practices are in order to assess whether [plaintiffs'] case is moot."). The Defendant Judges do not even suggest that their mootness argument would apply absent their conformance with the amended statute. *See* Doc. 412 at 30. Although that alone would not moot the case, *see infra*, given that Plaintiffs allege Defendants have *never* acted in accordance with Section 983, whether they do now is an open question which can only be resolved through the discovery process.[18]

### B. Even if the Defendant Judges Had Changed Their Practices, the Change Would Constitute Voluntary Cessation That Does Not Moot the Case.

Second, even if evidence showed Defendants had changed their practices in response to the law, under the voluntary-cessation doctrine a defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). This is true for either of Defendants' theories of mootness, constitutional and prudential. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1122 (10th Cir. 2010). Defendants cannot meet that burden because they continue to "vigorously defend[] the constitutionality" of the challenged practices. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007). Indeed, while the Tenth Circuit has explained that "promises of reform or remedy" might be relevant to the prudential mootness inquiry, *Winzler v. Toyota Motor*

---

[18] To the extent Defendant Judges are submitting that their practices do or have complied with state law, that is a factual dispute inappropriate for resolution at this stage of the case. *Hogan v. Okla. Dep't of Corr.*, 24 F. App'x 984, 985 (10th Cir. 2002) (a court does not resolve factual disputes at the motion-to-dismiss stage).

BRIEF H

*Sales U.S.A., Inc.*, 681 F.3d 1208, 1211 (10th Cir. 2012) (Gorsuch, J.), the Defendant Judges have

not even offered that much. Thus, "it is not clear [that] the [Defendant Judges] would necessarily

refrain from" reverting to their unconstitutional conduct. *Knox v. SEIU*, 567 U.S. 298, 307 (2012).

And although repeal of a challenged statute may satisfy the voluntary-cessation standard, *see, e.g.*,

*Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1329 (11th Cir. 2004), Plaintiffs

here, again, do not challenge Oklahoma's statutory system or court rules; they challenge the

Defendant Judges' practices that are alleged to *defy* those rules. There is no evidence that those

practices have changed as a result of the change in the law, and even if there were, it would under

these circumstances amount to voluntary cessation.

Plaintiffs laud the Oklahoma legislature for its efforts to remedy some of the ills underlying

this lawsuit. But as a legal matter, "[u]nder both Article III and prudential mootness doctrines, the

central inquiry is essentially the same: have circumstances changed since the beginning of

litigation that forestall any occasion for meaningful relief." *S. Utah Wilderness All.*, 110 F.3d at

727. Here, for most of Plaintiffs' claims,[19] the answer is simple: we do not know. We do not know

because the challenges are not to any statutory mandate or regime, nor to Defendants' course of

action following amendments to the statutory mandate, but instead to Defendants' practices that

occur *in spite of* the laws that they should have been following all along. Now that the statutes are

set to change as a result of this lawsuit, it is possible that Defendants will change their ways and

begin to comply with state law. But it is equally possible that they will not. Here, whether any of

the affected forward-looking claims are moot is a question of fact which can only be answered in

---

[19] Count 4 is not addressed by the updated statute, and the challenged conduct in Count 7 remains authorized by law.

BRIEF H

the discovery process, and even then, would require Defendants to carry a heavy burden to show

they will not return to their old ways. At this stage of the case, mootness has not been established.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Defendant Judges' motion to dismiss.

Dated: August 10, 2023                          Respectfully submitted,

/s/ *Daniel E. Smolen*
Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

/s/ *Ryan Downer*
Ryan Downer (admitted *pro hac vice*)
D.C. Bar No. 1013470
Katherine Hubbard (admitted *pro hac vice*)
D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

/s/ *Seth Wayne*
Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804 (admitted *pro hac vice*)
Mary B. McCord

BRIEF H

D.C. Bar No. 427563
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu
mbm7@georgetown.edu


*Attorneys for the Plaintiffs*

BRIEF H

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 10th day of August, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.


/s/ *Seth Wayne*

27

BRIEF H