# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CARLY GRAFF, et al.,** | |
| *Plaintiffs,* | |
| v. | **Case No. 4:17-CV-606-TCK-JFJ** |
| **ABERDEEN ENTERPRIZES II, INC., et al.,** | |
| *Defendants.* | |

## PLAINTIFFS' OPPOSITION TO RENEWED MOTION TO DISMISS BY DEFENDANT VIC REGALADO, SHERIFF OF TULSA COUNTY, IN HIS INDIVIDUAL CAPACITY

### BRIEF J

Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804
Mary B. McCord (admitted *pro hac vice*)
D.C. Bar No. 427563
Institute for Constitutional Advocacy
  and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel.: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu
mbm7@georgetown.edu

Ryan Downer (admitted *pro hac vice*)
D.C. Bar No. 1013470
Katherine Hubbard (admitted *pro hac vice*)
D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

*Attorneys for the Plaintiffs*

<u>**Index of Plaintiffs' Opposition Briefs**</u>

For ease of reference, each of Plaintiffs' opposition briefs has been labeled by letter according to the motion to dismiss to which it responds, listed below.

A.  51 County Sheriff Defendants, Individual Capacity (Doc. 407)

B.  Rogers County Defendants, Official Capacity (Doc. 406)

C.  Kim Henry, Former Court Clerk of Rogers County, Individual Capacity (Doc. 402)

D.  Scott Walton, Sheriff of Rogers County, Individual Capacity (Doc. 408)

E.  Aberdeen Enterprizes II, Inc. (Doc. 404)

F.  Jim and Rob Shofner (Doc. 403)

G.  Oklahoma Sheriffs' Association (Doc. 405)

H.  Defendant Judges (Doc. 412)

I.  51 County Sheriff Defendants, Official Capacity (Doc. 398)

J.  Vic Regalado, Sheriff of Tulsa County, Individual Capacity (Doc. 409)

K.  Don Newberry, Court Clerk of Tulsa County, Individual Capacity (Doc. 411)

L.  Darlene Bailey, Cost Administrator of Tulsa County, Individual Capacity (Doc. 410)

M.  Tulsa County Defendants, Official Capacity (Doc. 399)

BRIEF J

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ........................................................................................................... 1

RELEVANT BACKGROUND ....................................................................................... 1

ARGUMENT .................................................................................................................. 4

I.      Qualified Immunity Does Not Shield Regalado from Liability for Clearly Established Constitutional Violations. ...................................................... 4

      A.      Regalado Violates Plaintiffs' Fourteenth Amendment Right Against Arrest and Incarceration Based on Inability to Pay (Counts 2 & 4). .......................................................................................... 4

      B.      Regalado's Practice of Jailing Debtors Without a Hearing or Finding of Willfulness Violates Procedural Due Process (Count 5). .......... 9

      C.      Regalado Subjects Plaintiffs to Onerous Enforcement Methods in Violation of the Equal Protection Clause (Count 7). ................................ 12

      D.      Regalado's Practice of Executing Illegal Warrants Violates the Fourth Amendment (Count 3) ...................................................................... 13

      E.      There Is No Basis to Grant Regalado Qualified Immunity on Plaintiffs' RICO Claim (Count 1). ............................................................. 14

II.      Regalado Is Also Not Entitled to Absolute Immunity. .......................................... 16

III.      This Court Has Authority to Issue Equitable Relief Against Regalado in His Individual Capacity. ..................................................................................... 20

IV.      Plaintiffs Adequately Allege Violations of the RICO Act .................................... 22

      A.      Plaintiffs Allege Regalado's Involvement in the RICO Enterprise. .......... 22

      B.      Plaintiffs Allege Predicate Acts of Racketeering Activity. ....................... 24

CONCLUSION .............................................................................................................. 25

ii

BRIEF J

## **TABLE OF AUTHORITIES**

**Cases**

*Addington v. Texas*, 441 U.S. 418 (1979) ................................................................. 11

*Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003) ............................................................. 5

*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993) ........................................... 16

*Ashcroft v. al–Kidd*, 563 U.S. 731 (2011) ............................................................. 4, 15

*BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089 (10th Cir. 1999) .................. 23

*Bearden v. Georgia*, 461 U.S. 660 (1983) ........................................................ 5, 8, 11

*Boddie v. Connecticut*, 401 U.S. 371 (1971) ................................................................ 5

*Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011) ................................................... 20

*Buffin v. City & Cnty. of San Francisco*, No. 15-cv-04959, 2019 WL 1017537 (N.D. Cal. Mar. 4, 2019) ................................................................................................. 9

*Cain v. City of New Orleans*, No. 15-cv-4479, 2016 WL 2962912 (E.D. La. May 23, 2016) ....... 9

*Chilcoat v. San Juan County*, 41 F.4th 1196 (10th Cir. 2022) .............................. 21, 22

*Connecticut v. Doehr*, 501 U.S. 1 (1991) ............................................................. 7, 12

*DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714 (10th Cir. 1988) ................. 20

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018) .................................................. 4

*Doe v. Angelina County*, 733 F. Supp. 245 (E.D. Tex. 1990) ......................................... 5

*Dow v. Baird*, 389 F.2d 882 (10th Cir. 1968) ............................................................ 13

*Ex parte Young*, 209 U.S. 123 (1908) ...................................................................... 21

*Fant v. City of Ferguson*, No. 4:15-cv-00253 2016 WL 6696065 (E.D. Mo. Nov. 15, 2016) ......... 8

*Foucha v. Louisiana*, 504 U.S. 71 (1992) ................................................................. 10

*Franks v. Delaware*, 438 U.S. 154 (1978) ................................................................ 14

*Fuentes v. Shevin*, 407 U.S. 67 (1972) .......................................................... 5, 6, 7, 11

*Fuller v. Oregon*, 417 U.S. 40 (1974) ..................................................................... 12

*George v. Urb. Settlement Servs.*, 833 F.3d 1242 (10th Cir. 2016) ................................ 23

*Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500 (10th Cir. 2023) ........................... 1

*Hafer v. Melo*, 502 U.S. 21 (1991) ......................................................................... 20

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ................................................................ 4

*James v. Strange*, 407 U.S. 128 (1972) .................................................................... 12

*Jones v. City of Clanton*, No. 2:15-cv-34, 2015 WL 5387219 (M.D. Ala. Sept. 14, 2015) ........... 9

*Juriss v. McGowan*, 957 F.2d 345 (7th Cir. 1992) ................................................. 6, 24

*Kneisser v. McInerney*, No. 1:15-cv-07043, 2018 WL 1586033 (D.N.J. Mar. 30, 2018) ........... 19

*Krohn v. United States*, 742 F.2d 24 (1st Cir. 1984) .................................................. 18

*Lee v. Gregory*, 363 F.3d 931 (9th Cir. 2004) ......................................................... 18

*Malley v. Briggs*, 475 U.S. 335 (1986) ............................................................... 17, 23

*Mathews v. Eldridge*, 424 U.S. 319 (1976) .............................................................. 10

*Mays v. Sudderth*, 97 F.3d 107 (5th Cir. 1996) ........................................................ 19

*McNeil v. Cmty. Prob. Servs., LLC*, No. 1:18-cv-00033, 2021 WL 366776 (M.D. Tenn. Feb. 3, 2021) ................................................................................................. 9

*Molina v. March*, No. 07-cv-4296, 2009 WL 10693183 (S.D. Tex. Sept. 28, 2009) ................. 20

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ................................................. 18

*Mont v. United States*, 139 S. Ct. 1826 (2019) ........................................................ 7

*Moss v. Kopp*, 559 F.3d 1155 (10th Cir. 2009) ........................................................ 19

*ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018) .......................................... 18

*People v. Whaley*, 6 Cow. 661, 1827 WL 2284 (N.Y. 1827) ........................................ 25

iii

*Perano v. Arbaugh*, No. 10-cv-01623, 2011 WL 1103885 (E.D. Pa. Mar. 25, 2011) ................. 20

*Robbins v. BLM*, 252 F. Supp. 2d 1286 (D. Wyo. 2003) ....................................................... 15

*Robertson v. Lucas*, 753 F.3d 606 (6th Cir. 2014) .............................................................. 18

*Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F. Supp. 3d 758 (M.D. Tenn. 2015) ................... 8

*Rodriguez v. Providence Cmty. Corr., Inc.*, 191 F. Supp. 3d 758 (M.D. Tenn. 2016) ........... 13, 14

*Safe Sts. All. v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017) ............................................... 23

*Smith v. O'Grady*, 312 U.S. 329 (1941) ............................................................................. 8

*Stewart v. Donges*, 915 F.2d 572 (10th Cir. 1990) ............................................................ 13

*Strawser v. Strange*, 105 F. Supp. 3d 1323 (S.D. Ala. 2015) ................................................ 8

*Tate v. Short*, 401 U.S. 395 (1971) .................................................................................. 8

*Thomas v. Kaven*, 765 F.3d 1183 (10th Cir. 2014) .............................................................. 4

*Thompson v. Moss Point*, No. 1:15-cv-00182, 2015 WL 10322003 (S.D. Miss. Nov. 6, 2015) .... 9

*Turner v. Rogers*, 564 U.S. 431 (2011) .......................................................................... 5, 11

*Turney v. O'Toole*, 898 F.2d 1470 (10th Cir. 1990) ........................................................... 17

*United States v. Brissette*, 919 F.3d 670 (1st Cir. 2019) ...................................................... 24

*United States v. Grose*, 687 F.2d 1298 (10th Cir. 1982) ................................................... 5, 8

*United States v. Lanier*, 520 U.S. 259 (1997) ..................................................................... 4

*United States v. Leon*, 468 U.S. 897 (1984) ...................................................................... 24

*United States v. Peterson*, 544 F. Supp. 2d 1363 (M.D. Ga. 2008) ....................................... 25

*United States v. Renzi*, 861 F. Supp. 2d 1014 (D. Ariz. 2012) ............................................. 25

*United States v. Schell*, 692 F.2d 672 (10th Cir. 1982) ...................................................... 11

*United States v. Ventresca*, 380 U.S. 102 (1965) ............................................................... 14

*Valdez v. City & Cnty. of Denver*, 878 F.2d 1285 (10th Cir. 1989) ............................... 16, 18, 19

*Welch v. Saunders*, 720 F. App'x 476 (10th Cir. 2017) ....................................................... 17

*Wilkie v. Robbins*, 551 U.S. 537 (2007) ....................................................................... 24, 25

*Wilkinson v. Austin*, 545 U.S. 209 (2005) ........................................................................ 10

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) ..................................................... 21

*Williams v. Illinois*, 399 U.S. 235 (1970) ....................................................................... 5, 8

*Williamson v. Curran*, 714 F.3d 432 (7th Cir. 2013) .......................................................... 18

*Youngberg v. Romeo*, 457 U.S. 307 (1982) ...................................................................... 10

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) .............................................................................. 4

**Constitutional Provisions**

U.S. Const. amend. IV ................................................................................................. 13

**Statutes**

18 U.S.C. § 1951 ....................................................................................................... 24

18 U.S.C. § 1962 ......................................................................................................... 1

18 U.S.C. §§ 1961–1968 ............................................................................................... 1

42 U.S.C. § 1983 ........................................................................................... 1, 20, 21

Okla. Stat. tit. 19, § 514 .............................................................................................. 18

Okla. Stat. tit. 19, § 514.4 ........................................................................................ 7, 23

Okla. Stat. tit. 19, § 514.5 ............................................................................................. 7

Okla. Stat. tit. 22, § 966A ............................................................................................. 7

Okla. Stat. tit. 22, § 967 ................................................................................................ 7

Okla. Stat. tit. 22, § 983 ......................................................................................... 10, 11

Oklahoma Uniform Consumer Credit Code, Okla. Stat. tit. 14A, §§ 1-101 *et seq.* ................... 13

iv

BRIEF J

**Rules**

Rule 8.4, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (Okla. R. Crim. App. 8.4) ................................................................................................. 10, 11

**Legislative Materials**

S.B. 689, 56th Leg., 2d Reg. Sess. (Okla. 2018) ........................................................ 10

BRIEF J

## INTRODUCTION

The Court should deny the motion to dismiss of Defendant Vic Regalado, Sheriff of Tulsa County, in his individual capacity (Doc. 409). Indigent court debtors in Tulsa County, including named Plaintiffs and members of the putative class, have for years been subjected to arrest and imprisonment at the hands of Regalado, and to threats and harassment from Defendant Aberdeen Enterprizes II, Inc. ("Aberdeen") as a result of his decision to contract with that company.

Regalado's defenses fail to excuse his participation in the unlawful conduct that Plaintiffs challenge. Qualified immunity does not shield him, because Plaintiffs allege clearly established violations of constitutional law. Nor does absolute, quasi-judicial immunity, because Regalado is fully aware that the warrants he executes are invalid and that the indigent debtors he jails have not received constitutionally due process. There is also no merit to Regalado's contention that this Court cannot issue injunctive relief against him in his individual capacity; 42 U.S.C. § 1983 authorizes equitable relief against any "person" who deprives another of constitutional rights, not merely a person acting in an official capacity. Finally, Plaintiffs have plausibly alleged that Regalado participated in an extensive enterprise that has led to the extortion of money from Plaintiffs and members of the putative class in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. §§ 1961–1968). Regalado's motion should be denied.

## RELEVANT BACKGROUND[1]

Plaintiffs assert claims against Regalado for participating, and conspiring to participate, in the RICO enterprise under 18 U.S.C. § 1962(c) and (d) (Count 1); executing arrest warrants for nonpayment without inquiry into ability to pay, in violation of the Fourteenth Amendment (Count

---

[1] This section includes allegations relevant to Plaintiffs' claims against Regalado in his individual capacity. For a summary of the allegations and claims against all Defendants, see *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 509-14 (10th Cir. 2023).

BRIEF J

2); executing arrest warrants based on unsworn allegations of nonpayment with material omissions in violation of the Fourth Amendment (Count 3); detaining persons arrested on debt-collection arrest warrants because of their inability to pay, in violation of the Fourteenth Amendment (Count 4); depriving Plaintiffs of state-created liberty interests by executing unlawful arrest warrants and detaining them unlawfully (Count 5); and employing onerous enforcement methods in violation of the Fourteenth Amendment (Count 7). Second Am. Compl. ("SAC"), Doc. 212, ¶¶ 274-353, 360-62. These claims are well-pled in the Second Amended Complaint.

Regalado is one of the dozens of county sheriffs in Oklahoma who participate in a wide-ranging enterprise with the "unflagging aim . . . to squeeze as much money out of impoverished court debtors as possible." *Id.* ¶ 2. Like the other Sheriff Defendants, he has "contractually delegated to Aberdeen, Inc. the responsibility to collect court debts," *id.* ¶ 51, through the Oklahoma Sheriffs' Association ("OSA") as his agent, *id.* ¶¶ 29, 31; *see also* SAC Ex. A., Doc. 212-1, at 1. This responsibility includes the authority to determine when to request new arrest warrants and when to request the recall of old ones. Doc. 212 ¶ 51. Regalado has authorized OSA to renew the contract with Aberdeen despite knowledge of its misconduct. *Id.* ¶¶ 29, 31, 65, 81. The contract gives him "'sole discretion' along with the court clerks to choose cases to transfer to Aberdeen," *id.* ¶ 283, and requires him to assist Aberdeen in its debt-collection activities by providing "debtor information" to the company, *id.* ¶ 60. He is a member of OSA, which administers the contract and profits enormously from it. *Id.* ¶¶ 55, 59, 105-06.[2]

The Sheriff Defendants, including Regalado, "routinely arrest[] and jail[] individuals pursuant to . . . debt-collection arrest warrants that are based solely on nonpayment." *Id.* ¶ 10; *see*

---

[2] Regalado did not stop using Aberdeen for collection of court debt in Tulsa County until months into this litigation, after the First Amended Complaint was filed. *Id.* ¶¶ 9 n.5, 124.

BRIEF J

*id.* ¶ 31. In Tulsa County, the Clerk and Cost Administrator seek warrants, based on their own request or Aberdeen's. *Id.* ¶¶ 120-26. A judge issues the warrants without any inquiry into ability to pay. *Id.* Regalado arrests debtors with active warrants, *id.* ¶ 31, and Tulsa County debtors arrested by any law enforcement agency are taken to the county jail operated by Regalado, *id.* ¶ 128. He detains them unless they are able to pay a preset $250 payment. *Id.* ¶ 128. The payment does not function as a "bond"; if paid, it is applied to the debt and never returned. *Id.* If a debtor cannot pay, she is held in jail until Regalado brings her to see a judge at the next "cost docket" date, usually the following Tuesday or Friday. *Id.* ¶ 129. Regalado arrests and detains debtors without providing, and knowing that other actors do not provide, "any of the inquiries, findings, or procedural safeguards required by Supreme Court precedent [and state law] prior to jailing a person for nonpayment." *Id.* ¶ 10; *see also id.* ¶ 31.

Regalado's practices have injured multiple Plaintiffs. For example, in December 2016, Plaintiff Melanie Holmes was arrested on a Tulsa County warrant and detained for six nights in the Tulsa County Jail because she could not afford to pay $500 to secure her release. *Id.* ¶¶ 25, 208-09. The order of commitment was not signed by a judge. *Id.* ¶ 209. Ms. Holmes still has an open warrant in Tulsa County and faces imminent arrest and detention by Regalado because of her indigency. *Id.* ¶ 25. Moreover, because of Regalado's decision to contract with Aberdeen, Plaintiff Randy Frazier and his family members have been regularly threatened and harassed by the company, and he still has open warrants in Tulsa County. *Id.* ¶¶ 19, 165-68. And several other Tulsa County Plaintiffs, including David Smith and Christopher Choate, have made payments to Aberdeen as a result of its extortionate threats, often having to decide between purchasing basic necessities and paying the company. *Id.* ¶¶ 20, 23; *see also id.* ¶ 315.

BRIEF J

## ARGUMENT

I.    **Qualified Immunity Does Not Shield Regalado from Liability for Clearly Established Constitutional Violations.**

Qualified immunity protects government officials from liability for civil damages only if their conduct does not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). While "clearly established law" should not be defined "at a high level of generality," *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011), "general statements of the law are not inherently incapable of giving fair and clear warning" to government officials. *United States v. Lanier*, 520 U.S. 259, 271 (1997). The law may be clearly established "where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018); *see also Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) ("It is not necessary . . . that the very action in question has previously been held unlawful. That is, an officer might lose qualified immunity even if there is no reported case directly on point." (cleaned up)).

Regalado claims he is shielded by qualified immunity because the law was not clearly established at the time of the alleged violations. As an initial matter, qualified immunity is more properly raised at summary judgment, rather than in a motion to dismiss. Given the fact-specific nature of qualified immunity, its early consideration "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). In any case, the law underlying Plaintiffs' claims against Regalado has been clearly established since well before the alleged violations took place.

A.    **Regalado Violates Plaintiffs' Fourteenth Amendment Right Against Arrest and Incarceration Based on Inability to Pay (Counts 2 & 4).**

Equal protection and substantive due process prohibit arresting and jailing a person solely because she cannot afford to pay an amount of money. *See* Pls.' Mot. for TRO & Prelim. Inj.,

4

BRIEF J

Doc. 77, at 5-11 (citing cases including *Williams v. Illinois*, 399 U.S. 235, 240-41 (1970), which held that imprisonment resulting "directly from an involuntary nonpayment of a fine or court costs" is "an impermissible discrimination that rests on ability to pay," and *Bearden v. Georgia*, 461 U.S. 660, 667-68 (1983), which held that, "if the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it").  To deprive someone of their liberty based on inability to pay is "contrary to the fundamental fairness required by the Fourteenth Amendment." *Bearden*, 461 U.S. at 672-73; *United States v. Grose*, 687 F.2d 1298, 1301 (10th Cir. 1982) (en banc) ("[I]t is unconstitutional for Grose to be sent to prison . . . if he cannot pay the fine due to indigency.").[3] A debtor may only be jailed for nonpayment found to be willful. *Bearden*, 461 U.S. at 672.

Significantly here, the Supreme Court has established minimum procedural safeguards that must be met before the government may arrest or jail a person for nonpayment.  In *Turner v. Rogers*, 564 U.S. 431 (2011), the Court described those safeguards to include:

> (1) notice to the defendant that his "ability to pay" is a critical issue in the . . . proceeding; (2) the use of a form (or the equivalent) to elicit relevant financial information; (3) an opportunity at the hearing for the defendant to respond to statements and questions about his financial status, (e.g., those triggered by his responses on the form); and (4) an express finding by the court that the defendant has the ability to pay.

*Id.* at 447-48. *Turner*'s holding reaffirms a longstanding legal principle that the Supreme Court has repeatedly upheld: absent "extraordinary situations," *Fuentes v. Shevin*, 407 U.S. 67, 90 (1972) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)), a person must be given a meaningful

---

[3] *See also Alkire v. Irving*, 330 F.3d 802, 818-19 (6th Cir. 2003) (holding that it is unconstitutional to issue a bench warrant and imprison a person for nonpayment without an inquiry into whether nonpayment was willful); *Doe v. Angelina County*, 733 F. Supp. 245, 254 (E.D. Tex. 1990) (same).

BRIEF J

opportunity to be heard *prior* to a deprivation of liberty, *see id.* at 90-92. Regalado and his co-Defendants violate this fundamental principle as a matter of policy and practice.

*Count 2.* Regalado executes warrants that have been issued based solely on nonpayment, without constitutionally due process.  In particular, he arrests and incarcerates impoverished court debtors for nonpayment despite full knowledge that protections mandated by the Supreme Court—an opportunity to be heard, consideration of ability to pay and alternatives to incarceration, and findings concerning willfulness—have not been provided.[4] SAC ¶¶ 5, 26, 29-31, 53-60, 65, 81, 282-84, 325, 335, 350, 356.

Regalado cannot evade responsibility for these constitutional violations by sticking his head in the sand. He accuses Plaintiffs of making mere conclusory allegations about his knowledge of the unlawfulness of the warrants he executes. Doc. 409 at 4-5. But as Plaintiffs explain thoroughly *infra* in Section II, Regalado himself plays a part in procuring these warrants without due process. Regalado is thus fully aware that these warrants have been issued absent any ability-to-pay inquiry or other process. He cannot ignore that knowledge any more than he could if he himself put false or misleading information into the warrant application. *See Juriss v. McGowan*, 957 F.2d 345, 351 (7th Cir. 1992). He need not act as a "pseudo-appellate" court and construct a secondary investigation into an individual's financial circumstances to know that he is jailing people in violation of *Bearden* and *Turner*.

Regalado's attempts to distinguish *Bearden* are unavailing. He argues that *Bearden* does not clearly prohibit his conduct because the bench warrants he executes "do not purport to impose some term of imprisonment for nonpayment" and instead are "issued and served so that the

---

[4] While Tulsa County no longer refers cases to Aberdeen, Regalado arrested and jailed debtors pursuant to requests from Aberdeen up to and after the filing of the First Amended Complaint.

BRIEF J

criminal defendant can be brought before the Court." Doc. 409 at 18. But this argument contradicts Plaintiffs' factual allegations, which must be taken as true at this stage. Plaintiffs allege that debtors arrested on failure-to-pay warrants are not merely "brought before the Court." They are taken directly to jail, where they must remain, sometimes for days at a time, before seeing a judge. SAC ¶¶ 96-99. The notion that there is some constitutional distinction between being jailed before or after a hearing, such that only the latter constitutes "imprisonment," is simply wrong. *See Mont v. United States*, 139 S. Ct. 1826, 1832 (2019) (the term "imprison" "encompass[es] pretrial detention"). *Bearden* and its progeny clearly establish the "right to a *prior* hearing" before any deprivation of liberty. *Fuentes*, 407 U.S. at 84 (emphasis added); *see also Connecticut v. Doehr*, 501 U.S. 1, 15 (1991) (holding that due process is offended when a delayed hearing "would not cure the temporary deprivation that an earlier hearing might have prevented").

Regalado's attempts to hide behind several state statutes are similarly unavailing, because the statutes do not actually direct or enable Regalado to act as he does. Okla. Stat. tit. 19, §§ 514.4–514.5 (eff. Nov. 1, 2010)[5] simply authorize County Sheriffs to enter into contracts with private companies to collect court debts. Okla. Stat. tit. 22, § 966A authorizes County Clerks to impose a $5 warrant issuance fee; it says nothing about County Sheriffs. And Okla. Stat. tit. 22, § 967 provides a template for warrants. None of those statutes authorize County Sheriffs to refer

---

[5] An amended version of these laws went into effect on November 1, 2018, and yet another version is set to go into effect on November 1, 2023. At the time this suit was filed in 2017, the law allowed sheriffs to contract with a debt collector directly, with OSA administering the contract (§ 514.4), and authorized a 30-percent surcharge to be split among OSA and the collector (§ 514.5). In 2018, the laws were amended to require that any such contract be made with OSA as a go-between, but otherwise remained unchanged, and will continue to remain unchanged in these respects after the more recent amendments take effect in November. Plaintiffs have attached the 2010 and 2018 versions of the laws as an exhibit to their first brief in opposition to Defendants' renewed motions to dismiss, *see* Br. A, Ex. 1, and the forthcoming amendments are attached as an exhibit to Regalado's official-capacity motion to dismiss, *see* Doc. 399-4.

BRIEF J

any individual person's outstanding court debt to a private collector without inquiry into willfulness of nonpayment, nor do they authorize County Sheriffs to imprison individuals who have not received procedural due process solely for nonpayment. The statutes do not shield Regalado for the simple reason that they do not prescribe his conduct. And even if they did, the federal constitution "is the supreme law of the land." *Smith v. O'Grady*, 312 U.S. 329, 331 (1941). When a municipal official is "faced with complying with either [state law or] with the United States Constitution," "the choice should be simple." *Strawser v. Strange*, 105 F. Supp. 3d 1323, 1329 (S.D. Ala. 2015). Sheriff Regalado detains indigent persons solely due to nonpayment. This clearly violates *Bearden* and its progeny.

    ***Count 4.*** Plaintiffs also allege that Regalado's post-arrest detention practices are unconstitutional. Specifically, Plaintiffs allege that after debtors are arrested pursuant to unlawful warrants, they are detained for days at a time unless they can pay $250. *See* SAC ¶ 128; *see also* Doc. 77 at 16-20. These arbitrary monetary amounts do not constitute bail designed to ensure the debtor's appearance in court; instead, they function as ransom. SAC ¶ 97.

    Requiring a predetermined payment for release from jail, without an inquiry into ability to pay or consideration of non-financial alternatives, violates both due process and equal protection. *See Williams*, 399 U.S. at 240-41; *Tate v. Short*, 401 U.S. 395, 398-99 (1971); *Bearden*, 461 U.S. at 665, 667-68; *Grose*, 687 F.2d at 1301. These principles have been applied by various courts in situations nearly identical to those presented in this case. *See, e.g.*, *Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F. Supp. 3d 758, 768-69 (M.D. Tenn. 2015) (finding that the government cannot subject probationers to predetermined money bonds to secure release pending formal revocation hearings without individualized consideration of ability to pay and alternatives); *Fant v. City of Ferguson*, No. 4:15-cv-00253 2016 WL 6696065, at *6 (E.D. Mo. Nov. 15, 2016)

BRIEF J

(holding that plaintiffs stated constitutional claim by pleading that they were arrested and imprisoned on pre-set secured money bonds pursuant to warrants issued solely for their failure to pay court costs, without any inquiry into the reasons for nonpayment); *Cain v. City of New Orleans*, No. 15-cv-4479, 2016 WL 2962912, at *6 (E.D. La. May 23, 2016) (same); *McNeil v. Cmty. Prob. Servs., LLC*, No. 1:18-cv-00033, 2021 WL 366776, at *27-32 (M.D. Tenn. Feb. 3, 2021) (holding that keeping plaintiffs on probation under supervision of private company, solely because of nonpayment of fees and without inquiry into ability to pay, violates *Bearden*); *Buffin v. City & Cnty. of San Francisco*, No. 15-cv-04959, 2019 WL 1017537, at *13-16 (N.D. Cal. Mar. 4, 2019) (holding that use of a secured money bail schedule to detain a person after arrest, without an ability-to-pay determination and other procedural protections, violates *Bearden*); *Jones v. City of Clanton*, No. 2:15-cv-34, 2015 WL 5387219, at *2 (M.D. Ala. Sept. 14, 2015) (same); *Thompson v. Moss Point*, No. 1:15-cv-00182, 2015 WL 10322003, at *1 (S.D. Miss. Nov. 6, 2015) (same).

Regalado makes no attempt to defend his unconstitutional detention practices, other than by claiming that a judge ordered them.  That is simply not true. As a salient example, the order that ostensibly justified his detention of Melanie Holmes was not signed by a judge.  SAC ¶ 209. And because Regalado himself (or his deputies) bring these indigent debtors to jail, rather than to court, they *know* that the debtors have been jailed without any process. Regalado detains people for days based on their failure to pay a predetermined cash payment, where there has been no inquiry into their ability to pay or consideration of alternatives. In doing so, he violates *Bearden*.

### B.    Regalado's Practice of Jailing Debtors Without a Hearing or Finding of Willfulness Violates Procedural Due Process (Count 5).

Oklahoma law provides every person owing court debt with an affirmative right to be free from imprisonment in the absence of proof that the person has willfully refused to pay her court

BRIEF J

debt.  *See* Okla. Stat. tit. 22, § 983(A);[6] Okla. R. Crim. App. 8.4.  This state law creates a liberty interest that the Fourteenth Amendment's Due Process Clause protects from arbitrary deprivation.  *See, e.g.*, *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("A liberty interest may arise from the Constitution itself . . .  or it may arise from an expectation or interest created by state laws or policies.").  Such a liberty interest cannot be infringed upon without due process. The Supreme Court has set forth a three-part balancing test to determine precisely what process is due prior to depriving someone of a liberty interest.  *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Courts are to examine: (1) the nature of the private right at stake; (2) the risk of erroneous deprivation given the procedures currently being employed and the probable value of additional safeguards; and (3) the government's interest in avoiding additional procedural safeguards.  *Id.*

Here, the "private right" at stake is one of the most fundamental: the right to be free from bodily restraint and confinement in a jail cell.  *See, e.g.*, *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982).  The fundamental nature of this right is underscored by the fact that it is also an entitlement under Oklahoma law: Okla. Stat. tit. 22, § 983(A) states: "Any defendant found guilty of an offense . . . may be imprisoned for nonpayment of the fine, cost, fee, or assessment *when the trial court finds after notice and hearing that the defendant is financially able but refuses or neglects to pay* . . . ." (emphasis added).  Additionally, Rule 8.4 of the Rules of the Oklahoma Court of Criminal Appeals provides: "If the defendant fails to make an installment payment when due, he/she must be given an opportunity to be heard as to the refusal or neglect to pay the installment when due." Incarceration is

---

[6] For the Court's convenience, Plaintiffs have attached a copy of Section 983 that will remain in effect until November 1, 2023, as an exhibit to their first brief in opposition. *See* Br. A, Ex. 2. Although this version of the law went into effect after Plaintiffs filed this lawsuit, the prior version was identical in all relevant respects. *See* S.B. 689, 56th Leg., 2d Reg. Sess. (Okla. 2018).

BRIEF J

appropriate only "[i]f no satisfactory explanation is given at the hearing on failure to pay." *Id*. This right is mandatory and non-discretionary. State law thus clearly establishes a liberty interest that cannot be taken away without due process.

As to the second prong of *Mathews*, the risk of erroneous deprivation without inquiry into ability to pay here is enormous. Because nonpayment may be punished with physical confinement only if it is willful, *Bearden*, 461 U.S. at 667-68, and because large numbers of traffic and criminal debtors are indigent, jailing people before inquiring into their ability to pay is highly likely to result in a wrongful deprivation.

Finally, there is no harm to the government in requiring it do in practice what is already required by law: issue a summons and hold a hearing on whether nonpayment was willful *before* depriving a person of her liberty. *See* Okla. Stat. tit. 22, § 983(A); Okla. R. Crim. App. 8.4. In fact, the government actually *benefits* from accurate fact-finding and a reduction in wasted resources spent on incarcerating those who cannot pay. *Cf. Addington v. Texas*, 441 U.S. 418, 426 (1979) (deeming it "at least unclear to what extent, if any, the state's interests are furthered" by using processes that increase the risk of erroneous detention); *United States v. Schell*, 692 F.2d 672, 684 (10th Cir. 1982) (McKay, J., concurring in part and dissenting in part) (explaining that the government has an interest in avoiding erroneous liberty deprivations).

As discussed above, the Supreme Court has applied these principles to this exact context and explained the minimum procedural safeguards required before the government may jail a person for nonpayment. *See Turner*, 564 U.S. at 447-48. Absent "extraordinary situations," a person must be given a meaningful opportunity to be heard *prior* to a deprivation of liberty. *Fuentes*, 407 U.S. at 82; *id.* at 90-91 (postponement of notice and a hearing is justified only in "truly unusual" situations, and only when "directly necessary" to advance important interests);

BRIEF J

*Doehr*, 501 U.S. at 15 (due process is offended when a delayed hearing "would not cure the temporary deprivation that an earlier hearing might have prevented"). As such, Regalado's practice of jailing individuals who have not received such protections violates clearly established law.

### C.    Regalado Subjects Plaintiffs to Onerous Enforcement Methods in Violation of the Equal Protection Clause (Count 7).

Regalado makes no argument specific to Count 7; accordingly, any such defense is waived for the purposes of this motion to dismiss. Even if his general arguments were found to encompass Count 7, they would fail. Under Count 7, Plaintiffs allege that the use of specially "onerous" debt-collection methods—including "arrest warrants, . . . an additional 30-percent penalty surcharge," possible "suspension of a driver's license," and "repeated threats of arrest[]"—denies them equal protection as compared to other judgment debtors. SAC ¶ 361. Under well-established Supreme Court precedent, the government may not use "unduly harsh or discriminatory terms" to collect court costs owed from a criminal case, "merely because the obligation is to the public treasury rather than to a private creditor." *James v. Strange*, 407 U.S. 128, 138 (1972). In *Strange*, the Court struck down a Kansas recoupment statute that denied former criminal defendants who owed money to the State the protections available to other civil judgment debtors. *Id.* at 135-36, 141-42. This denied the debtor "the means needed to keep himself and his family afloat," *id.* at 136, which "embodie[d] elements of punitiveness and discrimination which violate the rights of citizens to equal treatment under the law," *id.* at 142. For this reason, the Court struck down Kansas's "unduly harsh" debt-collection scheme. *Id.* at 138; *see also Fuller v. Oregon*, 417 U.S. 40, 47 (1974) (affirming that the Fourteenth Amendment protects government debtors from unduly harsh treatment as compared to people indebted to private creditors).

BRIEF J

Here, Regalado's use of Aberdeen exposed Plaintiffs to surcharges, threats, arrest warrants, and jailing in the pursuit of their county debts. Plaintiffs are thereby singled out by the government for extreme collection methods not available against other Oklahoma judgment debtors. *See generally* Oklahoma Uniform Consumer Credit Code, Okla. Stat. tit. 14A, §§ 1-101 *et seq.* The Equal Protection Clause does not permit such discrimination. Regalado offers no reason why Plaintiffs' debts could not "be collected in the same manner as a judgment in a civil action," rather than in Defendants' abusive manner. *Rodriguez v. Providence Cmty. Corr., Inc.*, 191 F. Supp. 3d 758, 775-76 (M.D. Tenn. 2016) (denying a motion to dismiss a similar equal protection claim challenging a private probation scheme). But for Regalado's choice to subject them to Defendants' extreme collection methods, Plaintiffs would be in the same situation as any other Oklahoma judgment debtor. By treating Plaintiffs more harshly simply because the debts they cannot pay are owed as part of their criminal court sentences, Regalado has violated Plaintiffs' right to equal protection.

### D. Regalado's Practice of Executing Illegal Warrants Violates the Fourth Amendment (Count 3).

Regalado violates the Fourth Amendment because he executes arrest warrants unsupported by sworn factual allegations; the warrant applications omit material facts as a matter of policy; and the warrants are not supported by probable cause that the alleged nonpayment was willful. *See* U.S. Const. amend. IV ("[N]o warrant shall issue except on probable cause, supported by Oath or affirmation."); *Dow v. Baird*, 389 F.2d 882, 884 (10th Cir. 1968) (explaining that an affidavit that is signed but not sworn under oath is "clearly and obviously invalid"); *Stewart v. Donges*, 915 F.2d 572, 582-83 (10th Cir. 1990) ("[I]t was a clearly established violation of plaintiff's Fourth and Fourteenth Amendment rights to knowingly or recklessly omit from an arrest affidavit information which, if included, would have vitiated probable cause."); *United*

13

BRIEF J

*States v. Ventresca*, 380 U.S. 102, 109 (1965) (affirming that a warrant must be supported by probable cause); *Rodriguez*, 191 F. Supp. 3d at 777-78 (holding that mere nonpayment is insufficient to establish probable cause for an arrest when jailing can only be predicated on willful nonpayment); *see also* Doc. 77 at 11-16.

Regalado does not seriously contest the principles at issue or even the fact that he executes arrest warrants for nonpayment without anyone having sworn to the veracity of the factual allegations in the warrant applications, as alleged in the complaint.   SAC ¶¶ 9, 30-36.   He also does not contest that, in place of the required sworn affidavit, an Aberdeen employee or employee in the Clerk's office simply asserts—without oath or affirmation—that a debtor has not made sufficient payments. *Id.*

Any facts forming the basis for probable cause that are not personally known to the judge signing the warrant must be supported by a sworn affidavit. *See Franks v. Delaware*, 438 U.S. 154 (1978).  Here, the fact of nonpayment is not a matter of court record.  Because the judges do not personally know facts establishing probable cause for either nonpayment or willfulness, the warrants must be backed by sworn affidavits attesting to such facts.  The warrants here have no such backing. And because the judges conduct no pre-deprivation inquiry into a debtor's ability to pay, there can be no evidence—much less evidence recited on the face of the warrants—that the judges signing the warrants have inquired into the debtor's ability to pay.  As such, in executing such warrants, Regalado violates clearly established law.

### E.     There Is No Basis to Grant Regalado Qualified Immunity on Plaintiffs' RICO Claim (Count 1).

Qualified immunity is, traditionally, only a defense to constitutional claims. While some courts have left open the possibility that qualified immunity may apply to RICO claims, they have typically found that the right to be free from extortion by a RICO enterprise is "clearly established"

BRIEF J

by the RICO statute itself (and the statutes prohibiting its predicate acts), and focused their analysis on whether a RICO violation has been stated at all. *See, e.g.*, *Robbins v. BLM*, 252 F. Supp. 2d 1286, 1294-95 (D. Wyo. 2003) (denying qualified immunity because, under the Hobbs Act and state law, "a person's right to be free from extortion is clearly established" for purposes of RICO).

Qualified immunity is intended to "give[] government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Unlike a constitutional issue, which may be subject to judicial interpretation and more amenable to "reasonable but mistaken judgments," whether Regalado has participated in the RICO enterprise does not rest on open legal questions. If he wishes to deny any of Plaintiffs' *factual* allegations—that he has contracted with Aberdeen, that Aberdeen has extorted money from Plaintiffs, that he has assisted Aberdeen in its extortionate activities, or that Plaintiffs have suffered injury, for example—he may do so after discovery. At this stage, the allegations in the complaint must be taken as true, and Plaintiffs have plausibly pled their RICO claim. *See infra* Section IV.

\* \* \*

There is no serious dispute that decades of Supreme Court and federal courts of appeals authority prohibit (1) jailing people solely for nonpayment without a pre-deprivation inquiry into their ability to pay (and other meaningful procedural safeguards), (2) jailing people on arrest warrants without a sufficient factual basis sworn by oath or affirmation, (3) omitting material facts in warrant applications, and (4) subjecting indigent court debtors to harsh enforcement practices that other types of debtors would not have to endure. Regalado violates clearly established law if he knows that the person against whom he executes an arrest warrant has no ability to pay, or if he knows that there will be no pre-arrest hearing on ability to pay. Plaintiffs have alleged Regalado's knowledge. SAC ¶ 81. At the motion to dismiss stage, he thus violates clearly established law.

BRIEF J

Finally, regardless of whether Regalado can claim qualified immunity, Plaintiffs' claims for prospective relief should go forward. Immunity applies only to damages claims, if at all.

## II.     Regalado Is Also Not Entitled to Absolute Immunity.

Regalado contends that he is entitled to "absolute quasi-judicial immunity" because "[e]very claim against [him] . . . is founded upon [his] execution of his duties to the District Court," whether it be "executi[ng] . . . bench warrants" or "det[aining] . . . individuals after execut[ing] such warrants." Doc. 409 at 7. This argument is incorrect, and Regalado cannot meet his burden to establish immunity. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993).

At the outset, Regalado takes an incomplete view of Plaintiffs' claims. In Count 1, Plaintiffs allege that Regalado participates in the RICO enterprise by exercising "'sole discretion' along with court clerks to choose cases to transfer to Aberdeen" and "provid[ing] debtor information to Aberdeen," and that he benefits financially from this arrangement. SAC ¶¶ 283-84. In Count 7, Plaintiffs rely on similar allegations to support their equal protection claim; they allege that Regalado "transfer[s] Plaintiffs' cases to Aberdeen," and that Aberdeen (whom Regalado is responsible for contracting with in Tulsa County) subjects court debtors to repeated threats and forces them to pay arbitrary and unachievable amounts. *Id.* ¶ 361.

Regalado ignores these allegations. He argues that "an official charged with the duty of executing a *facially valid* court order enjoys absolute immunity from liability for damages[7] in a suit challenging conduct prescribed by that order." *Valdez v. City & Cnty. of Denver*, 878 F.2d 1285, 1286 (10th Cir. 1989) (emphasis added); *see also* Doc. 409 at 7-10. The problem here is that the warrants at issue are not facially valid.

---

[7] *Valdez* and its progeny do not extend quasi-judicial immunity to claims for injunctive relief. As such, even if this Court finds that Regalado enjoys such immunity from Plaintiffs' damages claims, that finding would not disturb Plaintiffs' claims for injunctive relief.

BRIEF J

The Tenth Circuit has long recognized that officers who help procure a court order in a manner they know will render it invalid are not immune for executing that order. *See Turney v. O'Toole*, 898 F.2d 1470, 1473 n.3 (10th Cir. 1990) (noting that "[s]uch an order does not provide the same quasi-judicial immunity as an order *which the defendant played no part in procuring*," and citing cases to that effect (emphasis added)). This conclusion flows from the Supreme Court's reasoning in *Malley v. Briggs*, 475 U.S. 335, 342-43 (1986), denying absolute immunity to an officer when seeking a warrant. In essence, the "good faith" normally attributed to an officer who is executing a facially valid court order dissolves when the officer has invalidly procured it.

Plaintiffs allege that Regalado, through his participation in the OSA, contracts with Aberdeen, assists Aberdeen as required under the contract, and knowingly procures invalid warrants. SAC ¶¶ 5, 26, 29-31, 53-60, 65, 81, 282-84, 325, 335, 350, 356. The law does not permit him to play an active role in procuring invalid warrants, and then claim to be unaware of their invalidity. The (mostly unpublished) cases cited by Regalado, Doc. 409 at 8-10, all involved warrants in whose procurement the executing official was entirely uninvolved. To the extent those cases granted officers immunity for executing warrants with "procedural defects," those defects were not due to upstream acts by the warrant's executor himself.

Even if Regalado had not played in part in procuring these invalid warrants, he would not enjoy absolute immunity because he *knows* that the warrant is in fact invalid. In *Welch v. Saunders*, 720 F. App'x 476 (10th Cir. 2017), the court considered whether deputy sheriffs enjoyed quasi-judicial immunity for executing a protection order that was facially valid but had been superseded. The court noted that "[i]f the Deputies knew that the . . . [p]rotection [o]rder had been superseded, we would have a more challenging issue to resolve." *Id.* at 481 (but noting that the record did not support a finding of such knowledge). Several circuits have recognized an exception to immunity

BRIEF J

where the executing officers know that the warrant at issue is not supported by probable cause. *See*, *e.g.*, *Robertson v. Lucas*, 753 F.3d 606, 619 (6th Cir. 2014); *Williamson v. Curran*, 714 F.3d 432, 442 (7th Cir. 2013); *Lee v. Gregory*, 363 F.3d 931, 935 (9th Cir. 2004).[8]

Regalado executes arrest warrants illegally sought and issued as a result of the scheme that he himself has entered into and repeatedly renewed with Aberdeen. SAC ¶¶ 65, 81, 282, 325, 335, 350. He knows that the warrants have no sworn factual basis sufficient to justify arrest, that they are issued upon nonpayment without any pre-deprivation process, and that Aberdeen uses the warrants to threaten indigent debtors with jail in order to extort payments. *Id.* ¶¶ 30-31, 52, 65-66, 71-82, 96, 281-83, 324-25, 334.

Okla. Stat. tit. 19, § 514 (which Regalado cites in Doc. 409 at 12) provides no excuse, for it merely provides that "[t]he sheriff . . . shall serve and execute, *according to law*, all process, writs, precepts and orders issued or made by lawful authorities" (emphasis added). Far from mandating the execution of warrants that law enforcement knows to be invalid, this statute prohibits it.[9]

Moreover, the fact that the present case involves failure-to-pay warrants—rather than a judicial contempt order like the one at issue in *Valdez*—is legally significant. Unlike the "judicial contempt orders" at issue in *Valdez*, the warrants challenged here are not initiated by a judge or

---

[8] *Cf. Krohn v. United States*, 742 F.2d 24, 26-27 (1st Cir. 1984) (holding that "a federal official does not violate the Constitution by executing a facially valid state warrant, *if he does not know that it is invalid*" (emphasis added)).

[9] Regalado's citation to *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018), *vacated on other grounds by Daves v. Dallas Cnty.*, 64 F.4th 616 (5th Cir. 2023) (en banc), is misplaced. The issue in *ODonnell* was whether the Sheriff acted for Harris County or the State of Texas in enforcing bail orders for *Monell* purposes; the Fifth Circuit held, as a matter of Texas law, that the Sheriff acted for the State. *Id.* at 155-56. Whether Regalado acts for Tulsa County or the State of Oklahoma has no bearing on his personal immunity; it goes to Tulsa County's liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

BRIEF J

based on the judge's personal observation. Instead, they are sought by non-judicial officers on the basis of facts outside any court's personal knowledge, purely for the purpose of collecting court debt. When the purpose of a warrant is simply to coerce payment, it is "extra-judicial and focus[ed] more on the administrative task of collecting fines than the judicial act of imposing them." *Kneisser v. McInerney*, No. 1:15-cv-07043, 2018 WL 1586033, at *14 (D.N.J. Mar. 30, 2018); *see also id.* (declining to grant absolute immunity to judge or clerk where the "whole point of incarceration was to collect fines"). Just as a judge is not entitled to judicial immunity for his administrative acts, no quasi-judicial immunity flows from a warrant that was issued is for administrative purpose of fee collection. *See Mays v. Sudderth*, 97 F.3d 107, 114 (5th Cir. 1996).

To be clear, Plaintiffs are not asking for Regalado to make independent ability-to-pay determinations or "scrutinize[e] the orders of judges." *Moss v. Kopp*, 559 F.3d 1155, 1165 (10th Cir. 2009) (quoting *Valdez*, 878 F.2d at 1289). Rather, Plaintiffs allege that Regalado knows from the outset that failure-to-pay warrants are invalidly obtained—because he is involved in obtaining them. Plaintiffs seek to hold Regalado liable based on his knowledge of what occurs before the warrant issues, not any hypothetical duty to conduct an independent review.

Finally, Regalado argues that he enjoys quasi-judicial immunity based on a local court rule that disallows release without approval of a judge or posting an appearance bond. *See* Doc. 409 at 13-14. This rule says nothing about the other acts for which Plaintiffs allege Regalado is liable, such as referring cases to Aberdeen and employing onerous collection methods. SAC ¶¶ 283-84, 361. And Regalado does not always follow this "rule"; for example, the order that resulted in his detention of Melanie Holmes was not even signed by a judicial officer. *Id.* ¶ 209. But even if he did, whether a course of action is required under state law has nothing to do with whether it is lawful under the federal Constitution. *See supra* p. 8.

BRIEF J

As such, Regalado does not enjoy quasi-judicial immunity from Plaintiffs' damages claims.

### III. This Court Has Authority to Issue Equitable Relief Against Regalado in His Individual Capacity.

Regalado next argues that injunctive relief is never available against a government official in his individual capacity. Doc. 409 at 25. This argument is belied by the plain text of 42 U.S.C. § 1983, which vests this Court with authority to enjoin any "person" (other than one acting in a judicial capacity) who violates the constitutional rights of another under color of state law. There is no limitation in the text to "persons in their official capacity." So long as the "person" who is sued "cause[d]" the constitutional violation—which Regalado did here, *see supra* Section I—this Court has the power to provide equitable relief. *See* 42 U.S.C. § 1983; *see also, e.g.*, *Perano v. Arbaugh*, No. 10-cv-01623, 2011 WL 1103885, at *6 (E.D. Pa. Mar. 25, 2011) (holding that injunctive relief is available against defendants in their individual capacities); *Molina v. March*, No. 07-cv-4296, 2009 WL 10693183, at *15 (S.D. Tex. Sept. 28, 2009) (same).

Regalado invokes *Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011), and *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714 (10th Cir. 1988), but neither case supports his theory. *Brown* was brought against state officials who, unlike Regalado and other municipal officials, enjoy Eleventh Amendment immunity from damages when sued in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991) (outlining forms of relief available against a *state* official). And *DeVargas* considered only whether an interlocutory appeal of a denial of qualified immunity may be taken when there is a pending claim for injunctive relief. It did not confront the question whether, if an injunction is unavailable against a defendant in his official capacity, it may be available against him in his individual capacity.[10]

---

[10] The rationale for the rule recognized in cases like *DeVargas* has everything to do with the purposes of qualified immunity and nothing to do with the availability of personal injunctive relief. *See* 844 F.2d at 718 (explaining that the risk of being sued and held personally responsible for

BRIEF J

Regalado also relies upon *Chilcoat v. San Juan County*, 41 F.4th 1196 (10th Cir. 2022). There, the plaintiff sought injunctive and declaratory relief against a prosecutor who made material factual misrepresentations during a preliminary hearing. The district court dismissed Ms. Chilcoat's claims on Eleventh Amendment grounds because it concluded that Ms. Chilcoat had not pled an ongoing violation of federal law and therefore could not avail herself of the *Ex parte Young*, 209 U.S. 123 (1908), exception to Eleventh Amendment immunity, which allows for prospective injunctive relief against state officers who violate federal law. (The Eleventh Amendment applied because the prosecutor acted for the state, and not the county, at the preliminary hearing. *See Chilcoat*, 41 F.4th at 1213 n.20, 1215-16.) On appeal, Ms. Chilcoat attempted to sidestep *Ex parte Young* altogether by arguing that she sued the prosecutor only in his individual capacity. It was in the context of rejecting this argument that the Tenth Circuit explained that "a plaintiff cannot sue an official in their individual capacity for injunctive or declaratory relief" under § 1983. *Id.* at 1214. This context distinguishes *Chilcoat*. Defendants here are not state but municipal officials. As such, they do not enjoy the same Eleventh Amendment immunity when sued in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 & n.10 (1989) (explaining that "official-capacity actions for prospective relief [against state officials] are not treated as actions against the State," but that the same bifurcation does not apply to municipal officials because "municipalities were no longer protected by sovereign immunity" at the time of § 1983's enactment).

Finally, the Court may, at a minimum, issue declaratory relief against Regalado in his individual capacity. To Plaintiffs' knowledge, the Tenth Circuit has not addressed such relief other

---

damages would deter people from public service in ways that threats of injunctive relief would not).

BRIEF J

than in *Chilcoat*, which is distinguishable for the reasons stated above. Moreover, unlike in *Chilcoat*, Plaintiffs are not seeking a purely backward-looking declaration about a violation of their rights in the past; the declaratory order here is intended to address Regalado's *ongoing* unconstitutional actions. *See* 41 F.4th at 1215. This Court is not powerless to stop him.

## IV.   Plaintiffs Adequately Allege Violations of the RICO Act.

Regalado argues that Plaintiffs have not adequately pled a RICO claim against him. Specifically, he argues that Plaintiffs have not pled his involvement in the RICO enterprise or predicate acts on the part of the RICO Defendants.[11] Doc. 409 at 19. Each of these arguments fails upon review of the allegations in the complaint and the applicable law.

### A.   Plaintiffs Allege Regalado's Involvement in the RICO Enterprise.

Defendant Regalado argues that he cannot be held liable for the activities of the RICO enterprise, claiming that his only involvement in the enterprise's affairs was compliance with the statutory duty to serve warrants. Serving such warrants, he claims, constitutes a "service" performed in the "regular course of business." Doc. 409 at 20. This argument rests upon a misreading of the Second Amended Complaint. Beyond executing warrants, Regalado has participated in the RICO enterprise in multiple ways.

First, Regalado is a member of the OSA, which has acted as his "agent" and "on [his] behalf" with respect to the contract with Aberdeen. SAC ¶ 29. Under state law, each sheriff is empowered to make an individualized decision regarding whether and how to contract for debt-

---

[11] Regalado also argues that his conduct does not constitute a "pattern" of racketeering activity and that he cannot be liable as a conspirator. But those arguments are simply extensions of his claim that Plaintiffs have not adequately alleged a predicate offense, which fails for the reasons stated below. Moreover, although Regalado argues that only Plaintiffs Smith, Choate, Meachum, and Wilkins have alleged a valid injury for RICO purposes, Plaintiff Holmes is also alleged to have paid money to the enterprise. SAC ¶ 203. And Plaintiffs only bring Count 1 on behalf of Smith, Choate, Meachum, and Holmes, as representatives of a putative class. *Id.* ¶ 275.

BRIEF J

collection services in his or her particular county. Regalado made the choice to "assign [his] right to contract to the statewide association administering the provisions of the contract," Okla. Stat. tit. 19, § 514.4(E) (eff. Nov. 1, 2010), knowing that OSA contracts with a company that engages in unlawful activity. Regalado is responsible for the activities of Aberdeen in his county during the relevant time period and had "full knowledge" of its misconduct. SAC ¶ 81.

Second, Regalado has been authorized by the contract to "select cases to refer to Aberdeen." SAC ¶ 57; *see also* SAC Ex. A at 3. He also provided Aberdeen with "debtor information" it collects through OSA. SAC ¶ 60. Assigning the right to collect debt and assisting a company that regularly threatens unlawful arrest to debtors who cannot pay is a singular, discretionary act, and is not a "service[]" provided in the "regular course of business" as described by the Tenth Circuit. *See Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 884 (10th Cir. 2017); *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1101-02 (10th Cir. 1999). Importantly, Regalado was not an "outsider" merely providing services to the RICO enterprise; he personally authorized Aberdeen's operation in Tulsa County and has been an integral part of the enterprise. *See George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1251-52 (10th Cir. 2016).

Third, Regalado, along with the other County Sheriffs, "routinely arrest[s] and jail[s] individuals pursuant to . . . debt-collection arrest warrants that are based solely on nonpayment." SAC ¶ 10. Once a person is arrested for nonpayment, even if she is indigent and unable to pay, Regalado, at his discretion, will hold her in jail unless she can pay $250 in cash. *Id.* ¶ 31. There is nothing "regular," Doc. 409 at 20, about this use of unconstitutional warrants for the same reason that their execution does not entitle Regalado to absolute immunity: he knowingly participated in the procurement of the unlawful warrants, *see Malley v. Briggs*, 475 U.S. 335 (1986), and, in fact, executes warrants he knows to be invalid, *see, e.g., Juriss v. McGowan*, 957 F.2d 345 (7th Cir.

BRIEF J

1992). An officer does not demonstrate "good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984) (internal quotation marks omitted). Regalado cannot reasonably claim that his "regular services" include executing and detaining people on warrants "not supported by oath or affirmation" or probable cause. SAC ¶ 336. Regalado's arrests contribute directly to the success of the enterprise by making real Aberdeen's threats of unlawful arrest. And when Regalado holds debtors in jail unless they pay $250, that money goes directly to service their debts (and thus benefits the enterprise of which he is a part).

Finally, Regalado profits from the enterprise through the collection of Sheriff's Fees, *see id.* ¶ 149, and through participation in the OSA, *id.* ¶¶ 105-06. Together, the allegations in the complaint establish Regalado's intimate and frequent participation in the RICO enterprise. His arguments do not address most forms of his participation and do not support dismissal.

**B.    Plaintiffs Allege Predicate Acts of Racketeering Activity.**

Regalado next argues that Plaintiffs have not adequately alleged extortion, for one reason: money extracted under threat cannot constitute extortion if it goes to the exclusive benefit of the government. Doc. 409 at 21-24. This provides no defense here, as Aberdeen and the OSA are both private beneficiaries of the money extorted by the RICO enterprise. It is true that there can be no claim for extortion under color of official right where the "sole" intended beneficiary is a governmental entity. *See Wilkie v. Robbins*, 551 U.S. 537, 564-65 (2007). But the *Wilkie* principle only applies to extortion "under color of official right," *see*, *e.g.*, *United States v. Brissette*, 919 F.3d 670, 680 (1st Cir. 2019), which is just one of the two forms of Hobbs Act extortion pled in the complaint, the other being "wrongful use of actual or threatened force, violence, or fear," 18 U.S.C. § 1951(b)(2), to which *Wilkie* has no relevance. *See* SAC ¶ 295.

BRIEF J

In any event, the Supreme Court in *Wilkie* expressly distinguished cases in which money was extorted to benefit *both* a private party and a government actor. *See* 551 U.S. at 565 (distinguishing *People v. Whaley*, 6 Cow. 661, 1827 WL 2284 (N.Y. 1827)); *see also United States v. Renzi*, 861 F. Supp. 2d 1014, 1022 (D. Ariz. 2012), *aff'd* 769 F.3d 731 (9th Cir. 2014). In this case, the money is intended for both public *and* private benefit: the extortionate scheme has netted millions of dollars in profit for Aberdeen and the OSA, both private entities. *See, e.g.*, SAC ¶ 3. That the money may be sent first to the counties, which then compensate the private entities from the same funds, does not remove its taint; *Wilkie* only exempts the extortion of money for the "*sole* benefit of the Government.*" 551 U.S. at 564-65 (emphasis added); *see also Renzi*, 861 F. Supp. at 1023. This distinguishes *United States v. Peterson*, where the Sheriff collected funds and remitted them all to the county commissioners. 544 F. Supp. 2d 1363, 1371 (M.D. Ga. 2008). Where, as here, both public and private entities benefit from an extortionate scheme, *Wilkie* does not bar relief.

## **CONCLUSION**

For all the reasons stated above, the Court should deny Regalado's motion to dismiss in his individual capacity.

Dated: August 10, 2023                    Respectfully submitted,

                                          /s/ *Daniel E. Smolen*
                                          Daniel Smolen, OBA #19943
                                          Robert M. Blakemore, OBA #18656
                                          Smolen & Roytman
                                          701 South Cincinnati Avenue
                                          Tulsa, OK 74119
                                          Tel: 918-585-2667
                                          Fax: 918-585-2669

                                          /s/ *Ryan Downer*
                                          Ryan Downer (admitted *pro hac vice*)
                                          D.C. Bar No. 1013470

25

BRIEF J

Katherine Hubbard (admitted *pro hac vice*)
D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

/s/ *Seth Wayne*
Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804
Mary B. McCord (admitted *pro hac vice*)
D.C. Bar No. 427563
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu
mbm7@georgetown.edu

*Attorneys for the Plaintiffs*

BRIEF J

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of August, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.


<u>/s/ *Seth Wayne*</u>

BRIEF J