# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CARLY GRAFF, et al.,** | |
| *Plaintiffs,* | |
| v. | **Case No. 4:17-CV-606-TCK-JFJ** |
| **ABERDEEN ENTERPRIZES II, INC., et al.,** | |
| *Defendants.* | |

## PLAINTIFFS' OPPOSITION TO RENEWED MOTION TO DISMISS BY DON NEWBERRY, COURT CLERK OF TULSA COUNTY, IN HIS INDIVIDUAL CAPACITY

### BRIEF K

Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804
Mary B. McCord (admitted *pro hac vice*)
D.C. Bar No. 427563
Institute for Constitutional Advocacy
  and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel.: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu
mbm7@georgetown.edu

Ryan Downer (admitted *pro hac vice*)
D.C. Bar No. 1013470
Katherine Hubbard (admitted *pro hac vice*)
D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

*Attorneys for the Plaintiffs*

## <u>Index of Plaintiffs' Opposition Briefs</u>

For ease of reference, each of Plaintiffs' opposition briefs has been labeled by letter according to the motion to dismiss to which it responds, listed below.

A. 51 County Sheriff Defendants, Individual Capacity (Doc. 407)

B. Rogers County Defendants, Official Capacity (Doc. 406)

C. Kim Henry, Former Court Clerk of Rogers County, Individual Capacity (Doc. 402)

D. Scott Walton, Sheriff of Rogers County, Individual Capacity (Doc. 408)

E. Aberdeen Enterprizes II, Inc. (Doc. 404)

F. Jim and Rob Shofner (Doc. 403)

G. Oklahoma Sheriffs' Association (Doc. 405)

H. Defendant Judges (Doc. 412)

I. 51 County Sheriff Defendants, Official Capacity (Doc. 398)

J. Vic Regalado, Sheriff of Tulsa County, Individual Capacity (Doc. 409)

K. Don Newberry, Court Clerk of Tulsa County, Individual Capacity (Doc. 411)

L. Darlene Bailey, Cost Administrator of Tulsa County, Individual Capacity (Doc. 410)

M. Tulsa County Defendants, Official Capacity (Doc. 399)

BRIEF K

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ................................................................................................... 1

RELEVANT BACKGROUND ............................................................................... 4

ARGUMENT .......................................................................................................... 6

     I.     Newberry Caused the Constitutional Violations that Plaintiffs Challenge ............. 6

     II.    Newberry Is Not Entitled to Judicial or Quasi-Judicial Immunity. ......................... 7

          A.     Newberry Is Not Entitled to Immunity for Seeking Warrants for Nonpayment. ............................................................................... 9

          B.     Newberry Is Not Entitled to Immunity for Working with Aberdeen to Collect Debts ............................................................... 12

     III.   Qualified Immunity Does Not Shield Newberry from Suit. ................................... 15

     IV.   This Court Has Authority to Issue Equitable Relief Against Newberry in His Individual Capacity. .......................................................... 18

     V.    This Court Should Not Reach Newberry's Statute of Limitations Defense, Which Fails in Any Event. ....................................................... 20

CONCLUSION ..................................................................................................... 25

BRIEF K

## TABLE OF AUTHORITIES

**Cases**

*Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697 (10th Cir. 2014) .............. 21, 22

*Anderson Living Tr. v. WPX Energy Prod., LLC*, 27 F. Supp. 3d 1188 (D.N.M. 2014) ............. 25

*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993)................................................. 3, 8, 9, 14

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ........................................................................... 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................................. 21

*Bearden v. Georgia*, 461 U.S. 660 (1983) ........................................................................ 3, 15

*Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011)....................................................... 18, 20

*Cain v. City of New Orleans*, No. 15-4479, 2017 WL 467685 (E.D. La. Feb. 3, 2017)............. 10

*Chilcoat v. San Juan County*, 41 F.4th 1196 (10th Cir. 2022) ...................................... 19, 20

*Cooper v. Occidental Petroleum Corp.*, No. 16-cv-687, 2017 WL 1652576 (N.D. Okla. May 1, 2017)................................................................................................................. 24

*Cressman v. Thompson*, 719 F.3d 1139 (10th Cir. 2013) ...................................................... 9

*DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714 (10th Cir. 1988)........... 18, 19, 20

*Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010)......................................................... 6

*Dow v. Baird*, 389 F.2d 882 (10th Cir. 1968) ................................................................ 3, 15

*Durkee v. Minor*, 841 F.3d 872 (10th Cir. 2016)................................................................ 6

*Ennenga v. Starns*, 677 F.3d 766 (7th Cir. 2012) .............................................................. 21

*Ex parte Young*, 209 U.S. 123 (1908) ................................................................................. 19

*F.T.C. v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378 (D. Md. 2009)................................... 21

*Fernandez v. Clean House, LLC*, 883 F.3d 1296 (10th Cir. 2018)....................................... 24

*Forrester v. White*, 484 U.S. 219 (1988) ......................................................................... 9, 14

*Fry v. Robinson*, 678 F. App'x 313 (6th Cir. 2017).............................................................. 10

*Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500 (10th Cir. 2023) .................................. 4

*Groh v. Ramirez*, 540 U.S. 551 (2004) .............................................................................. 15

*Hafer v. Melo*, 502 U.S. 21 (1991) ................................................................................... 18

*Herrera v. City of Espanola*, 32 F.4th 980 (10th Cir. 2022)......................................... 24, 25

*James v. Strange*, 407 U.S. 128 (1972)........................................................................... 3, 17

*Kalina v. Fletcher*, 522 U.S. 118 (1997)............................................................................. 9

*Kneisser v. McInerney*, No. 1:15-cv-07043, 2018 WL 1586033 (D.N.J. Mar. 30, 2018) 11, 12, 13

*Malley v. Briggs*, 475 U.S. 335 (1986) ................................................................................ 9

*Mays v. Sudderth*, 97 F.3d 107 (5th Cir. 1996).................................................................. 13

*McKinney v. Oklahoma*, 925 F.2d 363 (10th Cir. 1991)..................................................... 11

*Molina v. March*, No. 07-cv-4296, 2009 WL 10693183 (S.D. Tex. Sept. 28, 2009).................. 18

*N. Side State Bank v. Bd. of Cnty. Comm'rs of Tulsa Cnty.*, 894 P.2d 1046 (Okla. 1994).......... 12

*Perano v. Arbaugh*, No. 10-cv-01623, 2011 WL 1103885 (E.D. Pa. Mar. 25, 2011)................. 18

*Pulliam v. Allen*, 466 U.S. 522 (1983) ................................................................................ 7

*Scott v. Allen*, No. 21-cv-02011, 2022 WL 16961940 (D. Colo. Nov. 16, 2022)................. 21, 22

*Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990) .................................................................. 9

*Split Rail Fence Co. v. United States*, 852 F.3d 1228 (10th Cir. 2017)................................... 16

*Stevenson v. Grace*, 356 F. App'x 97 (10th Cir. 2009) ........................................................ 23

*Stewart v. Donges*, 915 F.2d 572 (10th Cir. 1990) ........................................................ 3, 16

*United States v. Grose*, 687 F.2d 1298 (10th Cir. 1982) ..................................................... 15

iii

BRIEF K

*Valdez v. City & Cnty. of Denver*, 878 F.2d 1285 (10th Cir. 1989)................................. 10, 11, 14
*W. Watersheds Project v. Michael*, 869 F.3d 1189 (10th Cir. 2017)................................................ 7
*Walzer v. Muriel Siebert & Co.*, 447 F. App'x 377 (3d Cir. 2011) ............................................. 22
*Wiggins v. N.M. State Sup. Ct. Clerk*, 664 F.2d 812 (10th Cir. 1981)........................................ 11
*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989).............................................................. 20
*Williams v. Illinois*, 399 U.S. 235 (1970).................................................................................... 15
*Wilson v. Montano*, 715 F.3d 847 (10th Cir. 2013) ...................................................................... 6
*Wolford v. Lasater*, 78 F.3d 484 (10th Cir. 1996) ...................................................................... 16

## Constitutional Provisions

U.S. Const. amend. IV ................................................................................................................... 15

## Statutes

42 U.S.C. § 1983........................................................................................................... passim
Okla. Stat. tit. 19, § 514.4 ...................................................................................................... 5, 13
Okla. Stat. tit. 19, § 514.5 ...................................................................................................... 5, 13
Okla. Stat. tit. 22, § 983 ............................................................................................................... 16

## Rules

Fed. R. Civ. P. 12(b)(6).......................................................................................... 6, 21, 22
Fed. R. Civ. P. 12(c) ...................................................................................................... 21
Fed. R. Civ. P. 12(g)(2)....................................................................................... 4, 20, 21, 22
Fed. R. Civ. P. 12(h)(1)...................................................................................................... 22
Fed. R. Civ. P. 12(h)(2)........................................................................................... 20, 21, 22

## Other Authorities

*In re Fee Schedule of Certified Shorthand Reporters*, 2009 OK 84, 271 P.3d 776 (mem.)......... 14
Oklahoma Supreme Court Order S.C.A.D. 2011-08 (Doc. 99-35)........................................ 13, 14

BRIEF K

## **INTRODUCTION**

Plaintiffs in this case challenge an abusive and illegal debt-collection scheme perpetrated by a for-profit company, Aberdeen Enterprizes II, Inc. ("Aberdeen"), that depends on the threat of arrest and incarceration to extract money from indigent Oklahomans, like Plaintiffs, who owe court debt that they are unable to pay. This illicit scheme cannot function without arrest warrants for nonpayment and without individual debtors' cases being referred to Aberdeen for collection.

Defendant Don Newberry, the Clerk of the Tulsa County District Court, plays a pivotal role in securing the necessary arrest warrants and referring cases to Aberdeen. First, as the Second Amended Complaint alleges, Newberry has established a practice—carried out with the assistance of the Tulsa County Cost Administrator—of requesting arrest warrants after a debtor misses a certain number of payments. Under this policy, Newberry's office requests warrants with complete disregard of the debtor's ability to pay the court debt owed, and does not make the request under oath or affirmation. Second, Newberry chooses which cases to refer to Aberdeen, again without the constitutionally required inquiry into the debtor's ability to pay, and once a case is transferred, adds a 30-percent surcharge to the amount of court debt the debtor owes. Third, Newberry has established a policy that requires his office to assist Aberdeen in securing new debt-collection arrest warrants after the company takes control of a case. These requests also involve no inquiry into ability to pay and are not made under oath or affirmation.

Plaintiffs have sued Newberry, in his individual capacity, to enjoin him from continuing this unlawful conduct and to seek compensatory damages for the harm already done. In Counts 2 and 5, Plaintiffs challenge Newberry's practice of requesting, and helping Aberdeen request, warrants based solely on nonpayment, without regard for the debtor's ability to pay. In Count 3, Plaintiffs challenge Newberry's practice of recklessly omitting material information related to ability to pay when requesting, or helping Aberdeen request, warrants. Count 3 also challenges his

1

BRIEF K

practice of requesting warrants that are not based on oath or affirmation. In Count 7, Plaintiffs challenge Newberry's practice of referring cases to Aberdeen, which is an integral part of the collective effort among various Defendants in this case to use unconstitutionally onerous methods to collect debt that violate the Equal Protection Clause. *See generally* Second Am. Compl. ("SAC"), Doc. 212, ¶¶ 318-38, 345-53, 360-62.

In his motion to dismiss (Doc. 411), Newberry contends that he is only responsible for the transfer of Plaintiff Randy Frazier's case to Aberdeen and that the rest of Plaintiffs' allegations based on unconstitutional warrant requests occurred before Newberry took office in January 2017. He is wrong. The Second Amended Complaint alleges that Newberry is responsible for warrant requests that were made against Plaintiffs Randy Frazier and Melanie Holmes after he took office. Accordingly, the damages claims brought by these Plaintiffs, and members of the putative class, against Newberry survive.

Newberry attempts to characterize his actions as judicial acts and/or ministerial tasks performed at the direction of Oklahoma judges, and he seeks absolute immunity on this basis. But his description of his own conduct does not align with Plaintiffs' allegations, which must be taken as true at the pleadings stage. Those allegations are clear: Newberry, on his own initiative, seeks warrants for non-payment and chooses to refer cases to Aberdeen in compliance with his own policies, not at the instruction of a judge. Even if such a judge's order existed, Newberry would be able to claim derivative immunity for following it only if the order itself were covered by the doctrine of judicial immunity. But the only order Newberry identifies is a broadly applicable directive to district courts to participate in a debt-collection program. And that directive is, in reality, an administrative rule, not a "judicial act" to which absolute immunity attaches. *See*

BRIEF K

*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993). Newberry is thus not entitled to absolute immunity.

Nor can Newberry take shelter under the doctrine of qualified immunity. The Supreme Court and Tenth Circuit have clearly established the constitutional principles underlying Plaintiffs' claims. First, the Tenth Circuit has held that warrants issued not on the basis of oath or affirmation violate the Fourth Amendment. *See Dow v. Baird*, 389 F.2d 882, 883-84 (10th Cir. 1968). Second, the Tenth Circuit has held that recklessly omitting from a warrant request material information that would eliminate probable cause—here, information related to the debtor's inability to pay—violates the Fourth Amendment. *See Stewart v. Donges*, 915 F.2d 572, 581 (10th Cir. 1990). Third, the Supreme Court has held that it is unconstitutional to imprison someone simply for being too poor to pay their court debt. *See Bearden v. Georgia*, 461 U.S. 660, 667-68 (1983). Fourth, the Supreme Court has held that it is unconstitutional to impose onerous collection methods—which Newberry contributes to by referring cases to Aberdeen and triggering a 30-percent penalty surcharge—only on those too poor to pay debt owed to the government. *See James v. Strange*, 407 U.S. 128, 140-41 (1972). These are practices clearly established as unconstitutional for which Plaintiffs seek to hold Newberry liable.

There is also no merit to Newberry's contention that this Court cannot issue otherwise appropriate injunctive relief against him in his individual capacity. Section 1983 authorizes equitable relief against any "person" who deprives another of constitutional rights. 42 U.S.C. § 1983. There is no limitation to "persons acting in an official capacity."

Lastly, Newberry cannot prevail on any statute of limitations defense at this juncture. Not only is he barred from raising this new defense in a successive motion to dismiss, *see* Fed. R. Civ.

3

BRIEF K

P. 12(g)(2), but he has also failed to meet his burden to show that any (much less "most") of Plaintiffs' claims are time barred. Newberry's motion to dismiss should be denied.

## RELEVANT BACKGROUND[1]

Don Newberry is the Clerk of the Tulsa County District Court. SAC ¶ 35. Along with Defendant Darlene Bailey, the Cost Administrator, he is responsible for collecting fines, fees, and costs assessed against individuals convicted of traffic and criminal offenses. *Id.* ¶¶ 35-36. As part of that effort, Newberry and Bailey establish payment plans for people owing court debt with a minimum payment of $25 per month, regardless of ability to pay. *Id.* Under practices that Newberry has established, if a debtor misses a certain number of payments, ranging from six to twelve payments, his office, which includes Bailey, requests that a judge issue a warrant for the debtor's arrest. *Id.* ¶¶ 35, 118, 120-21. Under these practices, the requests include no information about the debtor's ability to pay, and they are made without providing notice to the debtor or inquiring into the debtor's ability to pay. *Id.* The requestor also does not attest to facts under oath or affirmation. *Id.* ¶¶ 35, 120-21. Once the request is submitted, a judge signs the warrant so that it becomes an active arrest warrant. *Id.* ¶¶ 33, 120-21. The Second Amended Complaint alleges that Bailey and Newberry established these practices for seeking warrants. *Id.* ¶¶ 35-36.

After a warrant issues in a specific case, Newberry, along with Bailey, "chooses" whether to refer the case to Aberdeen to take charge of collecting the court debt. *Id.* ¶¶ 35-36, 57, 125.[2] If

---

[1] This section includes allegations relevant to Plaintiffs' claims against Newberry in his individual capacity. For a summary of the allegations and claims against all Defendants, see *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 509-14 (10th Cir. 2023).

[2] Tulsa County ceased using Aberdeen to collect debt after Plaintiffs initiated this action, but before the filing of the Second Amended Complaint. SAC ¶¶ 9 n.5, 124. The statement of the relevant background that follows captures Newberry's practices prior to the point that Tulsa stopped using Aberdeen.

BRIEF K

the case is referred, Newberry's office increases the amount the debtor owes by 30 percent. *Id.* The

30 percent add-on is used to pay Aberdeen for its services and the Oklahoma Sheriffs' Association

("OSA") for overseeing Aberdeen's contract. *Id.* ¶¶ 5, 55-59; *see* Okla. Stat. tit. 19, § 514.5(A)-

(B) (eff. Nov. 1, 2010).[3]

Newberry has established practices that require his office to continue to play a role in

collecting debt even after referral, specifically, by assisting Aberdeen in obtaining new arrest

warrants. If the debtor pays Aberdeen to have a warrant recalled, but then misses payments again,

Aberdeen will seek a new warrant. SAC ¶ 126. To do this, Aberdeen makes an informal request

for a warrant to Newberry's office. *Id.* ¶¶ 35, 89 & n.23, 126. Pursuant to Newberry' practice, his

office then assists Aberdeen by putting the request in front of a judge in a form that allows the

judge to issue a warrant. *Id.* ¶ 35. This is done without information about the debtor's ability to

pay and without making (or having Aberdeen make) the request under oath or affirmation. *Id.*

¶¶ 35, 63, 89-90, 126.

Newberry's illegal policies have affected multiple Plaintiffs in this case. Of particular

relevance here, pursuant to his policies, Newberry's office requested that a warrant issue against

Melanie Holmes for nonpayment. *See id.* ¶ 25; *see also infra* note 5. Additionally, Newberry

referred Randy Frazier's case to Aberdeen. SAC ¶ 19. As a result of Newberry's practices, Ms.

Holmes has an active warrant out against her, leaving her afraid to return to Oklahoma to visit her

---

[3] An amended version of § 514.5—as well as preceding § 514.4—went into effect on November 1, 2018, and yet another version is set to go into effect on November 1, 2023. Plaintiffs have attached a copy of the laws in effect at the time this suit was filed (the 2010 laws), as well as the laws that remain in effect until November 1, 2023 (the 2018 laws), as an exhibit to their first brief in opposition to Defendants' renewed motions to dismiss. *See* Br. A, Ex. 1. The forthcoming amendments to the statutes are attached as an exhibit to Defendant Newberry's official-capacity motion to dismiss. *See* Doc. 399-4. Nevertheless, § 514.5 has remained (and will continue to remain) largely the same since 2010.

BRIEF K

family, *id.* ¶¶ 25, 212, and Mr. Frazier has endured being threatened with arrest by Aberdeen—a threat Aberdeen conveyed not only to him but also to his daughter, *id.* ¶¶ 166-68. Multiple other Plaintiffs, moreover, are financially unable to pay their court debt. *See, e.g.*, *id.* ¶¶ 20, 21, 23. Because they will therefore miss payments, they are at risk of being subjected to Newberry's practices for requesting warrants. *See id.* ¶ 126.

## ARGUMENT[4]

### I.     Newberry Caused the Constitutional Violations that Plaintiffs Challenge.

Newberry first argues that the § 1983 claims against him should be dismissed because Plaintiffs' allegations are unrelated to Newberry's conduct. Doc. 411 at 8. This is simply untrue. Indeed, on the very same page Newberry acknowledges that he transferred Plaintiff Randy Frazier's case to Aberdeen. *Id.*

Although personal liability under § 1983 requires a "direct causal link" between a defendant's conduct and plaintiff's injury, *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010), it does not require "*direct* participation" in the infliction of an injury, *id.* at 1195 (emphasis added). Liability also extends to the "defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy" that, when enforced by "her subordinates," injures the plaintiff. *Id.* at 1199. Indeed, it is enough if the supervisor is deliberately indifferent to a practice carried out by subordinates that causes the plaintiff's injury. *Durkee v. Minor*, 841 F.3d 872, 877 (10th Cir. 2016); *Wilson v. Montano*, 715 F.3d 847, 858 (10th Cir. 2013) (finding sheriff liable where he was "deliberately indifferent to the ongoing constitutional violations which occurred under his supervision").

---

[4] All of the arguments raised by Newberry in his motion to dismiss are based on failure to state a claim under Fed. R. Civ. P. 12(b)(6). Thus, his discussion of Rule 12(b)(1), *see* Doc. 411 at 6-7, is not relevant to the disposition of this motion.

BRIEF K

Here, Plaintiffs challenge Newberry's personal actions as well as his role in establishing office-wide policies regarding when to seek warrants for nonpayment, what process to follow before and in seeking those warrants, and which cases to transfer to Aberdeen. Specifically, Plaintiffs have alleged that Newberry requested the warrants against Plaintiffs Randy Frazier and Melanie Holmes;[5] that Newberry referred Mr. Frazier's case to Aberdeen for collection, levied an $80 warrant fee against him and increased his debt by 30 percent; and that Newberry establishes the policies for seeking warrants and referring cases in Tulsa County which included, at the time of filing, seeking unconstitutional arrest warrants. SAC ¶¶ 25, 118-23, 164, 332. There is no doubt that Newberry has personally caused the constitutional violations challenged by Plaintiffs.

## II.   Newberry Is Not Entitled to Judicial or Quasi-Judicial Immunity.[6]

Newberry asserts that he is entitled to absolute, quasi-judicial immunity from damages because "[e]very claim against Newberry in his individual capacity is founded upon Newberry's execution of his duties to the District Court." Doc. 411 at 9.[7] This argument is incorrect, and

---

[5] Although Newberry claims there are no factual allegations against him relating to Ms. Holmes, Plaintiffs have presented this Court with public records reflecting that a nonpayment warrant for her arrest issued in September 2017, after Clerk Newberry took office. *See* Doc. 277-1 (Exhibit A to Plaintiffs' brief in opposition to Newberry's prior motion to dismiss containing docket in Case No. CF-2005-4750 for Melanie Lee); *see also* Doc. 215 at 17 (prior motion to dismiss of Defendant P.D. Taylor observing that Ms. Holmes previously went by Melanie Lee). The allegations in the Second Amended Complaint demonstrate the same: Plaintiffs have alleged that Ms. Holmes was detained from December 2 to 8, 2016 on a debt-collection warrant, and that after she was released, *another* warrant, which was active at the time the complaint was filed, had issued for her arrest. SAC ¶ 25. Plaintiffs have further alleged that a debtor must miss multiple monthly payments before either Newberry's office or Aberdeen will request a new warrant. *Id.* ¶¶ 120-21, 126. It is not possible that the new warrant was requested before Newberry took office on January 2, 2017. These inferences must be drawn in Plaintiffs' favor at the pleadings stage. *See, e.g.*, *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1193 (10th Cir. 2017).

[6] Because Defendants Newberry and Bailey raise virtually identical arguments regarding absolute and qualified immunity, Plaintiffs' responses to these Defendants are substantially similar.

[7] Newberry does not and cannot claim such immunity with respect to injunctive relief. *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1983). Further, Newberry claims "absolute judicial, quasi-judicial

BRIEF K

Newberry cannot meet his burden to establish immunity. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993) ("The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity.").

At the outset, Newberry's claim to immunity is based on an incomplete view of Plaintiffs' allegations. Plaintiffs do not seek to hold Newberry liable for merely following a judge's orders. Rather, Plaintiffs allege that Newberry himself "set[s] initial payment plans that require individuals owing court debts to pay a minimum amount of $25 per month, regardless of ability to pay"; "seek[s] debt-collection arrest warrants without inquiring into the warrant subject's ability to pay, without notice, and without sworn statements sufficient to justify arrest"; "chooses which individual cases to transfer to Aberdeen"; "transfer[s] such cases without conducting an inquiry into the debtor's ability to pay," knowing this will automatically trigger a 30-percent surcharge; and "assists Aberdeen, Inc. with seeking arrest warrants at [its] request." SAC ¶ 35. Plaintiffs allege that even when Newberry is aware that a person is financially unable to pay outstanding court debt, he does not adjust their minimum payment amount and does not include this information when seeking warrants from a judge. *Id.* ¶¶ 118-21.

Importantly, Plaintiffs do not allege that Newberry "issues" warrants—rather, Plaintiffs allege that he "seek[s] and *judges* issue arrest warrants." *Id.* ¶ 9 (emphasis added). Nor do Plaintiffs allege that judges instruct Newberry to require minimum payment amounts; seek arrest warrants basesd solely on nonpayment after a set number of missed payments (or help Aberdeen do the same); omit crucial information from warrant applications; or transfer individual cases to

---

and/or derivative immunity." Doc. 411 at 16. Newberry does not distinguish among these terms. For purposes of this brief, Plaintiffs use the term "judicial immunity" to mean the immunity that applies to officials executing judicial functions, and Plaintiffs use the term "quasi-judicial immunity" to mean the derivative immunity that extends to persons executing judicial orders.

BRIEF K

Aberdeen. Any suggestion by Newberry to the contrary must be ignored at this stage, because it conflicts with Plaintiffs' well-pled allegations. *See Cressman v. Thompson*, 719 F.3d 1139, 1144 (10th Cir. 2013). With Plaintiffs' allegations properly understood, Newberry's claims to immunity fall apart.

    **A.**    **Newberry Is Not Entitled to Immunity for Seeking Warrants for Nonpayment.**

Judicial immunity applies only to "judicial acts." *Forrester v. White*, 484 U.S. 219, 227 (1988). The "touchstone" of a judicial act is the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine*, 508 U.S. at 435-36 (internal quotation marks omitted).

Seeking a warrant is not a judicial act, because it does not involve the resolution of a dispute among parties or an adjudication of private rights. *See Malley v. Briggs*, 475 U.S. 335, 340-43 (1986); *Snell v. Tunnell*, 920 F.2d 673, 687 (10th Cir. 1990) ("[A]pplying for a warrant 'while a vital part of the administration of criminal justice, is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment.'" (internal quotation marks omitted)). As the Supreme Court has explained in the context of prosecutors, who enjoy absolute immunity for prosecutorial functions, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997) (internal quotation marks omitted). Seeking a warrant is precisely the type of "investigative function[] normally performed by a detective." Newberry does not enjoy absolute immunity for doing so, purely based on his title, when a police officer would not. As Newberry himself points out, "[i]mmunity is justified and defined by the *functions* it

9

protects and serves, not by the person to whom it attaches." Doc. 411 at 10 (quoting *Valdez v. City & Cnty. of Denver*, 878 F.2d 1285, 1287 (10th Cir. 1989)).

Newberry seeks to blur the distinction between "seeking" and "issuing" warrants based on another district court's decision in *Cain v. City of New Orleans*, No. 15-4479, 2017 WL 467685 (E.D. La. Feb. 3, 2017). Doc. 411 at 14. But the court in *Cain* interpreted the "Plaintiffs' principal grievance" in that case as being that judges had "allegedly outsourced their job" to a court administrator. 2017 WL 467685 at *6. Noting that the administrator did "not ask for issuance of a warrant based on his own investigation," but had instead been vested with the functional authority to issue warrants himself, the court held that the administrator should receive immunity because issuing warrants is "fundamentally judicial." *Id.* Here, by contrast, Plaintiffs have alleged that it is a judge who issues the warrants, whereas Newberry investigates and seeks them. SAC ¶ 9. Although Plaintiffs allege that Defendant Judge Moody does not adequately scrutinize Newberry's warrant requests, Doc. 411 at 14, Judge Moody's failure to properly review Newberry's requests does not convert those requests into judicial acts any more than a magistrate's rubber-stamp of a search warrant would render a police officer's application for that warrant a judicial act. *See, e.g.*, *Fry v. Robinson*, 678 F. App'x 313, 319 (6th Cir. 2017) (affirming denial of qualified immunity for police officer who sought arrest warrants "on the basis of . . . bare bones affidavits" where clerk acted as a "rubber-stamp" in signing the warrant).

Newberry also emphasizes that the court administrator in *Cain* used a "formula" set by judges to determine when to issue a warrant. 2017 WL 467685 at *6. Newberry claims that this case is the "same" because Plaintiffs have alleged that clerks "automatically" seek warrants based on nonpayment. Doc. 411 at 14. But, Newberry ignores, again, the difference between "issuing"

BRIEF K

and "seeking." He is alleged to do only the latter. *See, e.g.*, SAC ¶ 120. Setting a minimum payment amount, and seeking a warrant for its nonpayment, formulaically or otherwise, is not a judicial act.

Nor is Newberry entitled to quasi-judicial immunity, because he is not acting pursuant to any judicial directive in demanding minimum payment amounts or seeking warrants. Newberry relies extensively on *Valdez* for the proposition that he should receive quasi-judicial immunity because he is simply "executing a facially valid court order," 878 F.2d at 1286. But Newberry does not merely follow a judge's orders or even merely commit "grave procedural errors" in so doing. Doc. 411 at 10-11. No judge orders Newberry to seek warrants for failure-to-pay without inquiring into the willfulness of that nonpayment; to the contrary, *Newberry* comes to *judges* with such warrants for their signatures. SAC ¶¶ 35, 118-21. Similarly, no judge orders Newberry to impose a minimum payment amount without consideration of ability to pay. *Id.* ¶ 118. Nor does any judge order Newberry to omit crucial information from his warrant applications. *Id.* ¶ 120. As such, *Valdez* does not shield Newberry,[8] because he does not simply "execute" court orders; he helps procure them in the first instance by setting arbitrary minimum payment amounts and seeking warrants if debtors cannot meet them through no fault of their own.

When the purpose of arrest warrants is to coerce payment, they "are extra-judicial and focus more on the administrative task of collecting fines than the judicial act of imposing them." *Kneisser v. McInerney*, No. 1:15-cv-07043, 2018 WL 1586033, at *14 (D.N.J. Mar. 30, 2018). In *Kneisser*,

---

[8] Nor do the other (mostly unpublished) Tenth Circuit cases to which Newberry cites. *See* Doc. 411 at 10-11. In all but two of those cases, the defendant-official undertook the challenged action pursuant to the *direct instruction* of a judge, and/or the challenged action was a quintessentially "judicial act" such as *issuing* a warrant. The two exceptions are *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991), in which the Tenth Circuit summarily affirmed the district court's grant of immunity without describing the underlying facts or allegations against the clerk defendant, and *Wiggins v. New Mexico State Supreme Court Clerk*, 664 F.2d 812, 815 (10th Cir. 1981), in which the Tenth Circuit dismissed the clerk defendants because they were not proper parties for the plaintiff to sue.

BRIEF K

as here, "the whole point of incarceration [is] to collect fines." *Id.* And so here, as in *Kneisser*, Newberry should be denied absolute immunity.

**B.     Newberry Is Not Entitled to Immunity for Working with Aberdeen to Collect Debts.**

The other bucket of conduct for which Plaintiffs seek to hold Newberry liable is his practice of working with Aberdeen to collect debts. Newberry "chooses which individual cases to transfer to Aberdeen"; "transfer[s] such cases without conducting an inquiry into the debtor's ability to pay," knowing this will automatically trigger a 30-percent surcharge; and "assists Aberdeen, Inc. with seeking arrest warrants at [its] request." SAC ¶ 35 No judge orders him to do these things.

Newberry attempts to hide behind several Oklahoma statutes that set out court fines and fees and instruct clerks to collect such fees. Doc. 411 at 12-14. But the statutes do not instruct clerks to refer cases to a private debt collector without inquiring into ability to pay, or to assist private collectors in seeking their own warrants based on unsworn statements. (Nor do the statutes instruct clerks to impose minimum payment amounts without inquiring into ability to pay, seek debt-collection warrants without inquiring into ability to pay, or exclude known information about inability to pay when seeking such warrants.) This is the conduct for which Plaintiffs seek to hold Newberry liable. *See* SAC ¶ 35. State statutes do not prescribe, and cannot excuse, any of it.

Newberry also attempts to assert absolute immunity on the ground that his position as clerk falls under the general supervision of the judiciary. Doc. 411 at 16.[9] Newberry notes that, "[i]n the performance of all *ministerial* court functions, the court clerk and his deputies are subject to *summary control* by the judges." Doc. 411 at 15 (emphases and alteration in original) (quoting *N. Side State Bank v. Bd. of Cnty. Comm'rs of Tulsa Cnty.*, 894 P.2d 1046, 1051 (Okla. 1994)). But

---

[9] Newberry's brief undermines his own argument, as he describes a chain of "administrative," not judicial, supervision. Doc. 411 at 16.

BRIEF K

Plaintiffs do not seek to hold Newberry liable for purely "ministerial" acts as directed by judges. The private debt collection scheme at issue vests "sole discretion" to transfer cases to Aberdeen in the Tulsa Sheriff and Court Clerk. SAC ¶ 283. The scheme arises from a contract between the OSA and Aberdeen; the judges are not a party. SAC Ex. A, Doc. 212-1. The fact that judges are not at all involved in this process confirms its "administrative" nature. *Kneisser*, 2018 WL 1586033, at *14. General supervision by judges in other aspects of his job does not convert Newberry's every act into a judicial or quasi-judicial one.

For similar reasons, Oklahoma Supreme Court Order S.C.A.D. 2011-08 (Doc. 99-35) does not confer quasi-judicial immunity upon Newberry. S.C.A.D. 2011-08 is an administrative order "direct[ing]" Oklahoma district courts "to participate in the misdemeanor or failure-to-pay warrant collection program authorized" by Okla. Stat. tit. 19, §§ 514.4 and 514.5 if the relevant county sheriff had chosen to engage a private debt collector. *See* Okla. Stat. tit. 19, § 514.4(A) (eff. Nov. 1, 2010) ("county sheriffs of any Oklahoma county *may* enter into a private contract" (emphasis added)).[10]

Quasi-judicial immunity is derived from judicial immunity; where a judge would not have judicial immunity for issuing a given directive (because she happens not to act judicially when doing so), an official following that directive does not enjoy quasi-judicial immunity. *See Mays v. Sudderth*, 97 F.3d 107, 114 (5th Cir. 1996). That is, there is no quasi-judicial immunity when there is no judicial immunity from which to derive it. And making rules with general application, even

---

[10] As mentioned *supra* in note 3, Plaintiffs have attached a copy of § 514.4 as it existed at the time this suit was filed. *See* Br. A, Ex. 1. The 2018 and 2023 revisions maintain county sheriffs' discretion to enter into a contract, but any contract is now with OSA as a go-between, rather than with debt collectors directly.

BRIEF K

when done by judges, is done in an administrative capacity and is not entitled to judicial immunity. *See Forrester*, 484 U.S. at 229.

By this standard, S.C.A.D. ("Supreme Court Administrative Docket") 2011-08 is a purely administrative order. "Administrative directives" that issue on this docket address such administrative matters as the payment schedule for court reporters, *see In re Fee Schedule of Certified Shorthand Reporters*, 2009 OK 84, 271 P.3d 776 (mem.), and whether to use a private debt collector. Substantively, S.C.A.D. 2011-08 does not touch on the "performance of the function of resolving disputes between *parties*, or of authoritatively adjudicating *private rights*" at all. *Antoine*, 508 U.S. at 435-36 (emphases added) (internal quotation marks omitted). It does not instruct Newberry (or anyone else) to refer any particular cases to Aberdeen; it sets rules of general operation for the courts. The order is no more entitled to judicial immunity than it would be if it directed district courts to use Quik Print for copying instead of their own Xerox machines. Because the justices themselves would not be entitled to judicial immunity for this administrative decision, Newberry cannot claim derivative immunity for complying with it. And because the order does not direct Newberry's specific conduct with respect to Aberdeen, he cannot use it as a quasi-judicial immunity shield either.

In his final parry, Newberry argues that he must be entitled to absolute immunity lest he be forced into the role of a "pseudo-appellate court" by having to "mak[e] his own determination as to whether a particular person is indigent." Doc. 411 at 16 (quoting *Valdez*, 878 F.2d at 1289). This fear is unwarranted. *Valdez* sought to prevent situations where government officials, absent immunity, would be liable for having obeyed a state judge's facially valid order later determined to be unlawful. *See* 878 F.2d at 1289. Here, by contrast, no judicial order requires Newberry to act as he does; it is Newberry who comes to judges seeking warrants (on his own initiative or to assist

14

BRIEF K

Aberdeen), omits crucial information from warrant applications (such as a known inability to pay arbitrary minimum payments set by Newberry himself), and chooses which cases to refer to Aberdeen. Plaintiffs are not asking for Newberry to independently verify judges' ability-to-pay determinations. Plaintiffs are instead asking Newberry not to violate the Constitution by seeking arrest warrants when no such determinations have been made.

For the reasons above, Newberry does not enjoy absolute immunity.

### III. Qualified Immunity Does Not Shield Newberry from Suit.

Plaintiffs allege that Newberry has violated four constitutional principles. Each of those principles is clearly established under existing precedent.

First, Newberry seeks, and assists Aberdeen in seeking, warrants without making those requests under oath or affirmation (Count 3). *See* SAC ¶¶ 120, 332. The Tenth Circuit has held that a warrant request submitted not under oath is "clearly and obviously invalid." *Dow v. Baird*, 389 F.2d 882, 884 (10th Cir. 1968). Newberry knows the warrants at issue are invalid because he is himself involved in procuring them. As such, he knowingly violates the Fourth Amendment's requirement that warrants must be based upon probable cause "supported by Oath or affirmation." U.S. Const. amend. IV. Qualified immunity is no bar to suit, especially when the law at issue "is set forth in the text of the Constitution." *Groh v. Ramirez*, 540 U.S. 551, 563 (2004).

Second, Newberry seeks warrants without regard for ability to pay (Counts 2 & 5). *See* SAC ¶¶ 322, 347. This violates the clearly established rule that the government cannot "imprison a person solely because he lack[s] the resources to pay" a fine. *Bearden v. Georgia*, 461 U.S. 660, 667-68 (1983); *see also Williams v. Illinois*, 399 U.S. 235, 240-41 (1970) (holding that imprisonment resulting "directly from an involuntary nonpayment of a fine or court costs" is "impermissible discrimination that rests on ability to pay"); *United States v. Grose*, 687 F.2d 1298, 1301 (10th Cir. 1982) (en banc) ("[I]t is unconstitutional for Grose to be sent to prison . . . if he

BRIEF K

cannot pay the fine due to indigency."). Newberry attempts to distinguish the present case on the grounds that *Bearden* "does not hold that it [is] unlawful to assist in issuing bench warrants" that "do not purport to impose some term of imprisonment for nonpayment," Doc. 411 at 20—but Plaintiffs clearly allege that they are, in fact, imprisoned for nonpayment. When a Sheriff serves a debtor with such a warrant, he does not bring the debtor to court for a hearing; he brings her straight to the jail, where she must remain—sometimes for days at a time—before seeing a judge. SAC ¶¶ 96-99. Whatever these warrants are called, they function as arrest warrants. As such, these warrants impose imprisonment on indigent debtors for the sole reason that they are poor. *Bearden* clearly establishes that this is unconstitutional.

Third, and relatedly, Newberry recklessly omits information related to the debtor's ability to pay when he requests warrants or assists Aberdeen in requesting them (Count 3). *See* SAC ¶¶ 120, 332. The Tenth Circuit has held that "[i]t is a violation of the Fourth Amendment for an arrest warrant affiant to . . . recklessly omit from the affidavit information which, if included, would have vitiated probable cause." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) (citing *Stewart v. Donges*, 915 F.2d 572, 581-83 (10th Cir. 1990)). Here, the offense for which Newberry seeks warrants is the *willful* refusal to pay court debt. Okla. Stat. tit. 22, § 983(A). By turning a blind eye to ability to pay—and, sometimes, not including known information about inability to pay in warrant requests— Newberry regularly and recklessly omits information in his warrant requests that would "vitiate[] probable cause." *Wolford*, 78 F.3d at 489.[11]

---

[11] That Newberry may not have actual knowledge of the debtor's inability to pay in every single instance does not render him immune. His lack of actual knowledge is a consequence of his complete disregard for the key element of the offense (*willful* refusal to pay). His conduct thus "equate[s] to 'willful blindness,' or constructive knowledge." *Split Rail Fence Co. v. United States*, 852 F.3d 1228, 1250 n.18 (10th Cir. 2017). Put differently, Newberry cannot escape the reach of the rule articulated in *Wolford* by being woefully deficient at his task of investigating nonpayment of criminal court debt.

BRIEF K

Fourth, Newberry refers indigent debtors' cases to Aberdeen, which subjects them to onerous collection methods to which persons whose debts are not referred are not subject (Count 7). *See* SAC ¶ 361. This violates the Supreme Court's command, more than fifty years ago, that government officials who subject indigent criminal defendants to "unduly harsh or discriminatory terms" as compared to other debtors violate the Equal Protection clause. *James v. Strange*, 407 U.S. 128, 138 (1972). There, the Court struck down a Kansas recoupment statute that expressly denied protections available to civil judgment debtors to indigent defendants who owed money to the State. *Id.* at 135, 141-42.  Similarly, here, Newberry and his colleagues subject indigent criminal defendants to more onerous practices than other judgment debtors by referring their cases to Aberdeen and seeking warrants for nonpayment. While there may be subtle differences between the "harsh and discriminatory" methods struck down in *James* and those employed here, that does not mean that the rule against such onerous methods is not clearly established. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Finally, there is no basis for Newberry to invoke the rule that qualified immunity may protect an official who relies on a duly enacted statute. Newberry accuses Plaintiffs of defining the rights at issue at too abstract a level of generality. But it is Newberry who defines his conduct in broad strokes—as simply "assist[ing] in issuing bench warrants" and "utiliz[ing] a private contractor in court cost collection efforts," Doc. 411 at 20, in an attempt to argue that that conduct is mandated by statute. As explained *supra* in Section II, no statute or court order *requires* Newberry's practices. Qualified immunity does not shield him from violating clearly established law that requires warrants to be supported by oath or affirmation, prohibits wealth-based detention, forbids lying on a warrant application (by reckless omission or otherwise), and bars discrimination against criminal defendant debtors.

BRIEF K

IV.  **This Court Has Authority to Issue Equitable Relief Against Newberry in His Individual Capacity.**

Newberry next argues that injunctive relief is never available against a government official in his individual capacity. Doc. 411 at 20. This argument is belied by the plain text of 42 U.S.C. § 1983, which vests this Court with authority to enjoin any "person" (other than one acting in a judicial capacity) who violates the constitutional rights of another under color of state law. There is no limitation in the text to "persons in their official capacity." So long as the "person" who is sued "cause[d]" the constitutional violation—which Plaintiffs have adequately alleged Newberry did here, *see supra* Section I & III—this Court has the power to provide equitable relief. *See* 42 U.S.C. § 1983; *see also, e.g.*, *Perano v. Arbaugh*, No. 10-cv-01623, 2011 WL 1103885, at *6 (E.D. Pa. Mar. 25, 2011) (holding that injunctive relief is available against defendants in their individual capacities); *Molina v. March*, No. 07-cv-4296, 2009 WL 10693183, at *15 (S.D. Tex. Sept. 28, 2009) ("The Court disagrees with Magidson's broad assertion that injunctive suits can only be lodged against defendants in their official capacity.").

Newberry invokes *Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011), and *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714 (10th Cir. 1988), to argue otherwise, but neither case supports his theory. First, Newberry cites to a footnote from *Brown*, stating that "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." 662 F.3d at 1161 n.5 (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)). *Brown* was brought against state-level officials who, unlike Newberry and other municipal officials, enjoy Eleventh Amendment immunity from damages when sued in their official capacities. *See Hafer*, 502 U.S. at 30-31. The quoted language was dicta; the availability of injunctive relief was not at issue in the appeal. And it is based on a misreading of *Hafer*, which was again about the forms of relief available against a *state* official sued under § 1983. Newberry

BRIEF K

also cites to *DeVargas*, in which the Tenth Circuit observed that "[a]n action for injunctive relief no matter how it is phrased is against a defendant in official capacity only." 844 F.2d at 718. But *DeVargas* considered only the burden of defending a claim for injunctive relief in *Bivens* and § 1983 suits for purposes of determining whether an interlocutory appeal of a denial of qualified immunity may be taken when there is a pending claim for injunctive relief. It did not actually confront the question whether, if an injunction is unavailable against a defendant in his official capacity, it may be available against him in his individual capacity.[12]

Newberry also relies upon *Chilcoat v. San Juan County*, 41 F.4th 1196 (10th Cir. 2022). In that case, the plaintiff sought injunctive and declaratory relief against a prosecutor who made material factual misrepresentations during a preliminary hearing. The district court dismissed Ms. Chilcoat's claims on Eleventh Amendment grounds because it concluded that Ms. Chilcoat had not pled on ongoing violation of federal law and therefore could not avail herself of the *Ex parte Young*, 209 U.S. 123 (1908), exception to Eleventh Amendment immunity, which allows for prospective injunctive relief against state officers who violate federal law. (The Eleventh Amendment applied because the prosecutor acted for the state, and not the county, at the preliminary hearing. *See Chilcoat*, 41 F.4th at 1213 n.20, 1215-16.) On appeal, Ms. Chilcoat attempted to sidestep *Ex parte Young* altogether by arguing that she sued the prosecutor only in his individual capacity. It was in the context of rejecting this argument that the Tenth Circuit explained that "a plaintiff cannot sue an official in their individual capacity for injunctive or

---

[12] The rationale for the rule recognized in cases like *DeVargas*—that denials of qualified immunity are subject to interlocutory review even when there are injunctive claims that would require further litigation anyway—has everything to do with the purposes of qualified immunity and nothing to do with the availability of personal injunctive relief. *See* 844 F.2d at 718 (explaining that the risk of being sued and held personally responsible for damages would deter people from public service in ways that threats of injunctive relief would not).

19

BRIEF K

declaratory relief" under § 1983. *Id.* at 1214 (first citing *Brown*, 662 F.3d at 1161 n.5; then citing *DeVargas*, 844 F.2d at 718).

*Chilcoat* too is distinguishable. Defendants here are municipal officials. As such, they do not enjoy the same Eleventh Amendment immunity as do state officials. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 & n.10 (1989) (explaining that "official-capacity actions for prospective relief [against state officials] are not treated as actions against the State," but that the same bifurcation does not apply to municipal officials because "municipalities were no longer protected by sovereign immunity" at the time of § 1983's enactment).

Finally, the Court may, at a minimum, issue declaratory relief against Newberry in his individual capacity. To Plaintiffs' knowledge, the Tenth Circuit has not addressed such relief other than in *Chilcoat*, which is distinguishable for the reasons stated above. And unlike in *Chilcoat*, Plaintiffs are not seeking a backward-looking declaration about a past violation of their rights; the declaratory order here is intended to address Newberry's *ongoing* unconstitutional actions. *See* 41 F.4th at 1215. This Court is not powerless to stop him.

## V. This Court Should Not Reach Newberry's Statute of Limitations Defense, Which Fails in Any Event.

Newberry's argument that "most of Plaintiffs' claims are barred by the statute of limitations" should be rejected as well.

As an initial matter, because Newberry did not raise a statute-of-limitations defense in his prior motion to dismiss the Second Amended Complaint, he may not do so now. Federal Rule of Civil Procedure 12(g)(2) states, in relevant part, that "[e]xcept as provided in Rule 12(h)(2)," a party may not file a successive Rule 12 motion that "rais[es] a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(2)'s exception allows certain defenses to be raised "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion

BRIEF K

under Rule 12(c); or (C) at trial." None of those exceptions apply here, as Defendants have not

filed a Rule 7 pleading or Rule 12(c) motion, and this is not trial. Moreover, courts have refused

to construe a 12(b)(6) motion to dismiss as a 12(c) motion for judgment on the pleadings where,

as here, an answer has yet to be filed. *See Scott v. Allen*, No. 21-cv-02011, 2022 WL 16961940, at

*2 (D. Colo. Nov. 16, 2022) (collecting cases).[13]

      The Tenth Circuit did not hold otherwise in *Albers v. Board of County Commissioners of*

*Jefferson County*, 771 F.3d 697 (10th Cir. 2014). There, the court acknowledged that district courts

have struggled to determine whether a party can raise a previously available argument in a

successive Rule 12(b)(6) motion before filing a responsive pleading. *Id.* at 702 (noting that while

some courts strictly construe the rule's requirements and prohibit new arguments in successive

motions to dismiss, others generally construe Rule 12(g)(2) to allow discretion in considering

successive motions in the interest of efficiency). It then surveyed the competing approaches taken

by other courts of appeals. The court began with the Seventh Circuit's decision in *Ennenga v.*

*Starns*, 677 F.3d 766 (7th Cir. 2012), which held that "Rule 12(h)(2) specifically excepts failure-

to-state-a-claim defenses from the Rule 12(g) consolidation requirement," and that, as a result,

"the prohibition on successive motions in Rule 12(g)(2) is simply inapplicable to motions to

dismiss for failure to state a claim made before a responsive pleading under Rule 12(b)(6)." *Albers*,

771 F.3d at 703 (internal quotation marks omitted). *Albers* found the Seventh Circuit's approach

"problematic," however, because it did not grapple with Rule 12(h)(2)'s language limiting the

---

[13] Newberry cites *F.T.C. v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378 (D. Md. 2009), for the
proposition that he should be allowed to raise this new defense. Doc. 411 at 8. But the issue in
*F.T.C.* was not whether the defendants could raise new defenses in subsequent motions to dismiss;
it was whether they could file multiple motions at all. 654 F. Supp. 2d at 383-84. The court there
allowed the subsequent motions in large part because the seminal case of *Ashcroft v. Iqbal*, 556
U.S. 662 (2009) was decided between when the defendant's first and second motions to dismiss
were filed.

BRIEF K

presentation of defenses to a pleading, a motion for judgment on the pleadings, or a trial. *Id.* Thus, it turned to the Third Circuit's decision in *Walzer v. Muriel Siebert & Co.*, 447 F. App'x 377, 384 (3d Cir. 2011), which declined to decide whether the district court committed a technical violation of 12(g)(2) by simply reviewing for harmless error. *See Albers*, 771 F.3d at 703. Finding this approach more persuasive, *Albers* conducted the same review on appeal and concluded that any presumed error was harmless. *See id.* at 704.

Although *Albers* ultimately reviewed a technical violation of Rule 12(g)(2) for harmless error, it did not give district courts license to "engage in procedural error on the basis that the error may subsequently be deemed harmless." *Scott*, 2022 WL 16961940, at *3. Indeed, the court's opinion is clear about the purpose of the rule—to "avoid unnecessary delay at the pleading stage" by encouraging an omnibus pre-answer motion that raises "every available Rule 12 defense . . . that is assertable by motion." *Albers*, 771 F.3d at 702 (internal quotation mark omitted). And it also implicitly rejects the argument, raised by Newberry here (Doc. 411 at 7), that the fact that a defense is not waived under Rule 12(h)(1) somehow makes it immune from the plain language of Rule 12(g)(2) and 12(h)(2). *See Albers*, 771 F.3d at 703.[14]

Even if the Rules permitted Newberry to raise his previously available statute-of-limitations defense in a successive Rule 12(b)(6) motion, his defense fails for several reasons. Newberry appears to raise two arguments in support of his defense. First, he argues that to the extent two of the named Plaintiffs—Linda Meachum and Christopher Choate—challenge his

---

[14] Newberry also contends that Rule 12(g)(2) is inapplicable because the Court "expressly ordered additional briefing on Defendants' dismissal arguments." Doc. 411 at 7. This contention finds no support in the plain language of Rule 12. Moreover, even if the Court were permitted to violate the rule in the general interest of "judicial economy," *id.*, it is not clear how such an interest would be served here. As explained below, Newberry asks the Court to address an affirmative defense that ordinarily cannot be decided on a 12(b)(6) motion, that raises factual issues, that does not affect all of Plaintiffs' claims, and that will not result in the outright dismissal of those claims.

BRIEF K

practice of seeking debt-collection arrest warrants in Counts 2, 3, and 5,[15] those claims are untimely. Doc. 411 at 21. These claims, Newberry reasons, would have accrued on the date the warrants were issued, and at the very latest, the date of arrest, which he says was more than two years prior to the filing of the complaint. *Id.* at 21-22. Second, Newberry adds that "[t]he only specific allegation pled as to [him] that would be within the statute of limitations is that in January 2017, Newberry transferred Randy Frazier's . . . delinquent accounts to Aberdeen." *Id.* at 22.

Newberry's first argument—that the claims raised by Ms. Meachum and Mr. Choate in Counts 2, 3, and 5 are time barred—misunderstands the nature of these claims and the relief that they seek. Multiple Plaintiffs, including Ms. Meachum and Mr. Choate, allege that they are financially unable to pay their court debts. They are therefore at imminent risk of having a *new* unconstitutional debt-collection arrest warrants issue against them, a process in which Newberry plays an integral role. *See* SAC ¶¶ 21, 23, 35-36, 126. They seek injunctive relief against Newberry's warrant practices to prevent future harm. They do not seek damages stemming from harm that they suffered as a result of past warrants. *See id.* ¶¶ 328, 338, 353 (stating Ms. Meachum and Mr. Choate seek "injunctive relief only" for Counts 2, 3, and 5). Accordingly, the statute of limitations is not a valid defense to their claims, which are based on ongoing risk of imminent harm. *Cf. Stevenson v. Grace*, 356 F. App'x 97, 98 (10th Cir. 2009) (noting, in the sole case cited by Defendants, that § 1983 claims accrue "when the plaintiff knows or should know that his or her constitutional rights *have been* violated" (emphasis added) (internal quotation mark omitted)).

Moreover, at the very least, Newberry has not met his burden of establishing a statute-of-limitations defense to the claims raised by Mr. Choate in Counts 2, 3, and 5, and certainly not at

---

[15] Newberry also mentions Count 4, but that count is asserted against him only in his official capacity, and he raises no statute-of-limitations argument in his official-capacity brief (Doc. 399).

BRIEF K

this early stage of the litigation. A statute-of-limitations defense is an affirmative defense that may be raised in a dispositive motion to dismiss only if the defense is apparent from the face of the complaint. *See Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022); *see also Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) ("[a] plaintiff need not anticipate in the complaint an affirmative defense"). Here, the entirety of Newberry's statute-of-limitations argument with respect to Mr. Choate is premised on public records. Even assuming, *arguendo*, that it would be permissible for the Court to take judicial notice of these records under these circumstances, Newberry does not actually point the Court to any judicially noticeable records. He merely states that the date of Mr. Choate's arrest (which he inconsistently refers to as April 2014 and April 2015) is a matter of "public record." *See* Doc. 411 at 21–22 & nn. 7-8.[16]

Newberry's second argument—that the only timely claim asserted against him is based on the transfer of Plaintiff Randy Frazier's case in January 2017—ignores the allegations in the Complaint, which must be accepted as true at the motion to dismiss stage. Plaintiffs allege that "[i]n January 2017, the . . . Tulsa Clerk sought and a Tulsa County Special Judge issued debt-collection arrest warrants" in each of Mr. Frazier's cases. SAC ¶ 164. Even if Newberry did not take office until January 2017, *see* Doc. 411 at 2 n.4, it is plausible to conclude that Newberry

---

[16] Even if Newberry's first argument had any merit (it does not), Plaintiffs note that the affected claims would still be able to proceed against Newberry in his official capacity. Newberry did not raise a statute-of-limitations argument in his official-capacity brief, *see supra* note 15, and thus has waived the argument for purposes of resolution at the motion-to-dismiss stage. *See generally Cooper v. Occidental Petroleum Corp.*, No. 16-cv-687, 2017 WL 1652576, at *5 (N.D. Okla. May 1, 2017) (Kern, J.) ("[I]t [is] improper to consider an argument or theory first raised in a reply to which Plaintiff lacked a meaningful opportunity to respond."); *see also Fernandez*, 883 F.3d at 1299 ("[I]t is the defendant's burden to plead an affirmative defense.").

BRIEF K

requested the warrant in question when drawing all reasonable inferences in Plaintiffs' favor. Thus, his theory is far from "clear" from the face of the complaint. *See Herrera*, 32 F.4th at 991.[17]

Likewise, Plaintiffs have alleged that Newberry sought a nonpayment warrant for Ms. Holmes. Although Newberry concedes that Plaintiffs' allegations about a warrant that issued in Tulsa County in October 2016 would fall within the statute of limitations, he contends that he was not the Clerk at that time and thus cannot be held responsible. *See* Doc. 411 at 22. That may be so. But as explained above, it is reasonable to infer from the allegations in the complaint—and public records confirm—that Newberry is responsible for an *additional* warrant request that was made against Ms. Holmes after Newberry took office in January 2017. *See supra* note 5.

For all these reasons, even if the Court reaches Newberry's statute-of-limitations arguments, it should deny Newberry's renewed motion to dismiss on this ground.[18]

## CONCLUSION

For the foregoing reasons, the Court should deny Newberry's motion to dismiss in his individual capacity.

---

[17] Newberry's argument may be based on a request he made in a prior motion to dismiss, which was never ruled upon by the Court and which Newberry does not raise again here. In that motion, Newberry urged the Court to take judicial notice of a public record that he claimed showed the warrant actually issued against Mr. Frazier in December 2016. *See* Doc. 236 at 8. But the record in question contains two notations, one that says the warrant issued against Mr. Frazier on January 3, 2017, and one that says a warrant issued on December 28, 2016. *See* Doc. 277 at 6 n.2. At best, this demonstrates a factual dispute that is improper for resolution at the 12(b)(6) stage. *See Anderson Living Tr. v. WPX Energy Prod., LLC*, 27 F. Supp. 3d 1188, 1235 (D.N.M. 2014) ("[N]ot all limitations defenses are open-and-shut cases; genuine factual disputes can exist, and a rule 12(b)(6) motion is not the place to decide them.").

[18] In any event, Newberry makes no argument concerning the claims raised by Plaintiffs David Smith and Ira Wilkins in Counts 2, 3, 5, and 7. Therefore, even if the Court were to grant the motion, those claims would necessarily survive.

BRIEF K

Dated: August 10, 2023

Respectfully submitted,

/s/ *Daniel E. Smolen*
Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

/s/ *Ryan Downer*
Ryan Downer (admitted *pro hac vice*)
D.C. Bar No. 1013470
Katherine Hubbard (admitted *pro hac vice*)
D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

/s/ *Seth Wayne*
Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804
Mary B. McCord (admitted *pro hac vice*)
D.C. Bar No. 427563
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu
mbm7@georgetown.edu

26

BRIEF K

*Attorneys for the Plaintiffs*

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of August, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

<u>/s/ *Seth Wayne*</u>

BRIEF K