# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CARLY GRAFF, et al.,** | |
| *Plaintiffs,* | |
| v. | **Case No. 4:17-CV-606-TCK-JFJ** |
| **ABERDEEN ENTERPRIZES II, INC., et al.,** | |
| *Defendants.* | |

## PLAINTIFFS' OPPOSITION TO RENEWED MOTION TO DISMISS BY DARLENE BAILEY, COST ADMINISTRATOR OF TULSA COUNTY, IN HER INDIVIDUAL CAPACITY

### BRIEF L

Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804
Mary B. McCord (admitted *pro hac vice*)
D.C. Bar No. 427563
Institute for Constitutional Advocacy
  and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel.: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu
mbm7@georgetown.edu

*Attorneys for the Plaintiffs*

Ryan Downer (admitted *pro hac vice*)
D.C. Bar No. 1013470
Katherine Hubbard (admitted *pro hac vice*)
D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

<u>**Index of Plaintiffs' Opposition Briefs**</u>

For ease of reference, each of Plaintiffs' opposition briefs has been labeled by letter according to the motion to dismiss to which it responds, listed below.

A. 51 County Sheriff Defendants, Individual Capacity (Doc. 407)

B. Rogers County Defendants, Official Capacity (Doc. 406)

C. Kim Henry, Former Court Clerk of Rogers County, Individual Capacity (Doc. 402)

D. Scott Walton, Sheriff of Rogers County, Individual Capacity (Doc. 408)

E. Aberdeen Enterprizes II, Inc. (Doc. 404)

F. Jim and Rob Shofner (Doc. 403)

G. Oklahoma Sheriffs' Association (Doc. 405)

H. Defendant Judges (Doc. 412)

I. 51 County Sheriff Defendants, Official Capacity (Doc. 398)

J. Vic Regalado, Sheriff of Tulsa County, Individual Capacity (Doc. 409)

K. Don Newberry, Court Clerk of Tulsa County, Individual Capacity (Doc. 411)

L. Darlene Bailey, Cost Administrator of Tulsa County, Individual Capacity (Doc. 410)

M. Tulsa County Defendants, Official Capacity (Doc. 399)

i

BRIEF L

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ......................................................................................................1

RELEVANT BACKGROUND ....................................................................................3

ARGUMENT .............................................................................................................6

      I.      Bailey Is Not Entitled to Judicial or Quasi-Judicial Immunity. ..............................6

              A.      Bailey Is Not Entitled to Immunity for Seeking Warrants for
                         Nonpayment. ................................................................................7

              B.      Bailey Is Not Entitled to Immunity for Working with Aberdeen to
                         Collect Debts. ..............................................................................10

      II.     Qualified Immunity Does Not Shield Bailey from Suit. ......................13

      III.    This Court Has Authority to Issue Equitable Relief Against Bailey in Her
           Individual Capacity. .....................................................................16

      IV.    This Court Should Not Reach Bailey's Statute-of-Limitations Defense,
           Which Fails in Any Event. ............................................................20

CONCLUSION ........................................................................................................24

BRIEF L

## TABLE OF AUTHORITIES

**Cases**

*Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697 (10th Cir. 2014) .............. 21, 22

*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993)............................................ 6, 7, 12

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ....................................................................... 15

*Bearden v. Georgia*, 461 U.S. 660 (1983) .................................................................. 3, 14

*Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011)................................................... 17, 18

*Cain v. City of New Orleans*, No. 15-4479, 2017 WL 467685 (E.D. La. Feb. 3, 2017)............ 8, 9

*Chilcoat v. San Juan County*, 41 F.4th 1196 (10th Cir. 2022) ................................ 17, 18, 19, 20

*Cooper v. Occidental Petroleum Corp.*, No. 16-cv-687, 2017 WL 1652576 (N.D.
     Okla. May 1, 2017) ............................................................................................... 24

*Cressman v. Thompson*, 719 F.3d 1139 (10th Cir. 2013) ................................................. 7

*DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714 (10th Cir. 1988)................. 17, 18

*Dow v. Baird*, 389 F.2d 882 (10th Cir. 1968) ............................................................ 2, 13

*Ennenga v. Starns*, 677 F.3d 766 (7th Cir. 2012) ........................................................ 21

*Ex parte Young*, 209 U.S. 123 (1908) ........................................................................ 18

*F.T.C. v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378 (D. Md. 2009)................................. 21

*Fernandez v. Clean House, LLC*, 883 F.3d 1296 (10th Cir. 2018)....................................... 23, 24

*Forrester v. White*, 484 U.S. 219 (1988) .................................................................. 7, 12

*Fry v. Robinson*, 678 F. App'x 313 (6th Cir. 2017)......................................................... 8

*Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500 (10th Cir. 2023) ............................... 3

*Groh v. Ramirez*, 540 U.S. 551 (2004) ....................................................................... 14

*Hafer v. Melo*, 502 U.S. 21 (1991) .......................................................................... 17

*Herrera v. City of Espanola*, 32 F.4th 980 (10th Cir. 2022)............................................ 23

*James v. Strange*, 407 U.S. 128 (1972)................................................................... 3, 15

*Kalina v. Fletcher*, 522 U.S. 118 (1997).................................................................... 8

*Kneisser v. McInerney*, No. 1:15-cv-07043, 2018 WL 1586033 (D.N.J. Mar. 30, 2018) ...... 10, 11

*Malley v. Briggs*, 475 U.S. 335 (1986) ....................................................................... 7

*Mays v. Sudderth*, 97 F.3d 107 (5th Cir. 1996)........................................................... 12

*McKinney v. Oklahoma*, 925 F.2d 363 (10th Cir. 1991).................................................. 9

*Molina v. March*, No. 07-cv-4296, 2009 WL 10693183 (S.D. Tex. Sept. 28, 2009)................. 16

*N. Side State Bank v. Bd. of Cnty. Comm'rs of Tulsa Cnty.*, 894 P.2d 1046 (Okla. 1994).......... 11

*Perano v. Arbaugh*, No. 10-cv-01623, 2011 WL 1103885 (E.D. Pa. Mar. 25, 2011).................. 16

*Pulliam v. Allen*, 466 U.S. 522 (1983) ....................................................................... 6

*Scott v. Allen*, No. 21-cv-02011, 2022 WL 16961940 (D. Colo. Nov. 16, 2022).................. 21, 22

*Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990) .......................................................... 7

*Split Rail Fence Co. v. United States*, 852 F.3d 1228 (10th Cir. 2017)................................ 15

*Stevenson v. Grace*, 356 F. App'x 97 (10th Cir. 2009) ................................................. 23

*Stewart v. Donges*, 915 F.2d 572 (10th Cir. 1990)...................................................... 2, 15

*United States v. Grose*, 687 F.2d 1298 (10th Cir. 1982)................................................ 14

*Valdez v. City & Cnty. of Denver*, 878 F.2d 1285 (10th Cir. 1989) ................................ 8, 9, 13

*Walzer v. Muriel Siebert & Co.*, 447 F. App'x 377 (3d Cir. 2011) .................................... 22

*Wiggins v. N.M. State Sup. Ct. Clerk*, 664 F.2d 812 (10th Cir. 1981).............................. 10

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)................................................ 18

*Williams v. Illinois*, 399 U.S. 235 (1970).................................................................. 14

*Wolford v. Lasater*, 78 F.3d 484 (10th Cir. 1996) ...................................................... 15

BRIEF L

**Constitutional Provisions**

U.S. Const. amend. IV ................................................................................................ 14

**Statutes**

42 U.S.C. § 1983 .............................................................................................. passim

Okla. Stat. tit. 19, § 514.4 ............................................................................ 4, 11, 12

Okla. Stat. tit. 19, § 514.5 ................................................................................. 4, 11

Okla. Stat. tit. 22, § 983 ........................................................................................ 15

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................... 6, 21, 22

Fed. R. Civ. P. 12(c) ............................................................................................. 21

Fed. R. Civ. P. 12(g)(2) ......................................................................... 3, 20, 21, 22

Fed. R. Civ. P. 12(h)(1) ......................................................................................... 22

Fed. R. Civ. P. 12(h)(2) .......................................................................... 20, 21, 22

**Other Authorities**

2 Nahmod, Civil Rights & Civil Liberties Litigation: The Law of Section 1983 § 6:56 ............ 19

*In re Fee Schedule of Certified Shorthand Reps.*, 2009 OK 84, 271 P.3d 776 (mem.) ................ 12

Oklahoma Supreme Court Order S.C.A.D. 2011-08 (Doc. 99-35) ........................................ 11, 12

BRIEF L

## INTRODUCTION

Plaintiffs challenge an abusive and illegal debt-collection scheme perpetrated by a for-profit company, Aberdeen Enterprizes II, Inc. ("Aberdeen"), that uses the threat of arrest and incarceration to extract money from indigent Oklahomans who owe court debt that they are financially unable to pay. This illicit scheme cannot function without the existence of arrest warrants for nonpayment and without the referral of individual debtors' cases to Aberdeen for collection by extortionate means.

Defendant Darlene Bailey, the Cost Administrator of the Tulsa County District Court, plays a pivotal role in securing the necessary arrest warrants and referring cases to Aberdeen. First, as the Second Amended Complaint alleges, Bailey has established a practice, along with the Tulsa County District Court Clerk, of requesting arrest warrants after a debtor misses a certain number of payments. She makes these requests with complete disregard for the debtor's ability to pay the court debt owed, and she does not make the requests under oath or affirmation. Second, Bailey chooses which cases to refer to Aberdeen, again without any inquiry into the debtor's ability to pay, and in so doing she adds a 30-percent surcharge to the amount of court debt the debtor owes. Third, after Aberdeen takes control of a case, Bailey assists it in securing new debt-collection arrest warrants. As before, these requests involve no inquiry into ability to pay and are not made under oath or affirmation.

Plaintiffs have sued Bailey, in her individual capacity, to enjoin her from continuing this unlawful conduct and to seek compensatory damages for the harm already done. In Counts 2 and 5, Plaintiffs challenge Bailey's practice of requesting, and helping Aberdeen request, warrants based solely on nonpayment, without regard for the debtor's ability to pay. In Count 3, Plaintiffs challenge Bailey's practice of requesting, and helping Aberdeen request, warrants that recklessly omit material information related to ability to pay, as well as her practice of requesting warrants

1

BRIEF L

without oath or affirmation. In Count 7, Plaintiffs challenge Bailey's practice of referring cases to Aberdeen, which is part and parcel of the collective effort among various Defendants in this case to use unconstitutionally onerous methods to collect debt. *See generally* Second Am. Compl. ("SAC"), Doc. 212, ¶¶ 318-38, 345-53, 360-62.

In her motion to dismiss (Doc. 410), Bailey attempts to characterize her actions as judicial acts and/or ministerial tasks performed at the direction of Oklahoma judges, and she seeks absolute immunity on this basis. But her description of her own conduct does not align with Plaintiffs' allegations, which must be taken as true at the pleadings stage. Those allegations are clear: Bailey, on her own initiative, seeks warrants for nonpayment and chooses to refer cases to Aberdeen in compliance with her (and the Tulsa Clerk's) own policies, not at the instruction of a judge. Even if such a judge's order existed, Bailey would be able to claim derivative immunity for following it only if the order itself were covered by the doctrine of judicial immunity. But the only order Bailey identifies is a broadly applicable directive to district courts to participate in a debt-collection program. And that directive is, in reality, an administrative rule, not a "judicial act" to which absolute immunity attaches. Bailey is thus not entitled to absolute immunity.

Nor can Bailey take shelter under the doctrine of qualified immunity. The Supreme Court and Tenth Circuit have clearly established the constitutional principles underlying Plaintiffs' claims. First, the Tenth Circuit has held that warrants issued not on the basis of oath or affirmation violate the Fourth Amendment. *See Dow v. Baird*, 389 F.2d 882, 883-84 (10th Cir. 1968). Second, the Tenth Circuit has held that recklessly omitting from a warrant request material information that would eliminate probable cause—here, information related to the debtor's inability to pay— violates the Fourth Amendment. *See Stewart v. Donges*, 915 F.2d 572, 581 (10th Cir. 1990). Third, the Supreme Court has held that it is unconstitutional to imprison someone simply for being too

2

BRIEF L

poor to pay their court debt. *See Bearden v. Georgia*, 461 U.S. 660, 667-68 (1983). Fourth, the Supreme Court has held that it is unconstitutional to impose onerous collection methods—which Bailey contributes to by referring cases to Aberdeen and triggering a 30-percent penalty surcharge—only on those too poor to pay debt owed to the government. *See James v. Strange*, 407 U.S. 128, 140-41 (1972). These are practices clearly established as unconstitutional for which Plaintiffs seek to hold Bailey liable.

There is also no merit to Bailey's contention that this Court cannot issue otherwise appropriate injunctive relief against her in her individual capacity. Section 1983 authorizes equitable relief against any "person" who deprives another of constitutional rights. 42 U.S.C. § 1983. There is no limitation to "persons acting in an official capacity."

Lastly, this Court should decline Bailey's invitation to dismiss some of Plaintiffs' claims on statute-of-limitations grounds. Because Bailey did not raise this defense in her prior motion to dismiss the Second Amended Complaint, Fed. R. Civ. P. 12(g)(2) precludes her from doing so now. And in any event, Bailey has not met her burden to establish this affirmative defense, particularly at the pleadings stage. Bailey's motion to dismiss should be denied.

## **RELEVANT BACKGROUND**[1]

Bailey is the Cost Administrator for the Tulsa County District Court. SAC ¶ 36. Along with Defendant Don Newberry, the Clerk of Court, Bailey is responsible for collecting fines, fees, and costs assessed against individuals convicted of traffic and criminal offenses. *Id.* ¶¶ 35-36. As part of that effort, Bailey establishes payment plans for people owing court debt and sets a minimum payment amount of $25 per month, regardless of ability to pay. *Id.* ¶ 36.

---

[1] This section includes allegations relevant to Plaintiffs' claims against Bailey in her individual capacity. For a summary of the allegations and claims against all Defendants, see *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 509-14 (10th Cir. 2023).

BRIEF L

If a debtor misses a certain number of payments, pursuant to office policy, Bailey then seeks a warrant for the debtor's arrest. *Id.* ¶¶ 36, 118, 120-21. Bailey seeks these warrants without providing notice to the debtor or inquiring into the debtor's ability to pay. *Id.* Bailey includes no information about the debtor's ability to pay when she requests a warrant, even when a debtor has informed her that they are unable to pay, and she does not make her requests under oath or affirmation. *Id.* The complaint alleges that Defendants Bailey and Newberry have established these county-wide practices. *See id.* ¶¶ 35-36.

After a warrant issues in a specific case, Bailey, along with Newberry, "chooses" whether to refer the case to Aberdeen to take charge of collecting the court debt. *Id.* ¶¶ 35-36, 57, 125.[2] If Bailey does refer the case to Aberdeen, she also increases the amount the debtor owes by 30 percent. *Id.* ¶¶ 36, 125. The 30 percent add-on is used to pay Aberdeen for its services and to pay the Oklahoma Sheriffs' Association ("OSA"), in its role as a representative for each County Sheriff, for overseeing Aberdeen's contract. *Id.* ¶¶ 5, 55-59; *see* Okla. Stat. tit. 19, § 514.5(A)-(B) (eff. Nov. 1, 2010).[3] The process of transferring a case to Aberdeen and adding the surcharge occurs without any notice to the debtor or inquiry into ability to pay. SAC ¶¶ 5, 36, 50.

After the referral, Bailey continues to play a role in attempting to collect debt from indigent debtors by assisting Aberdeen in obtaining new arrest warrants. If a debtor pays Aberdeen to have

---

[2] Tulsa County ceased using Aberdeen to collect debt after Plaintiffs initiated this action, but before the filing of the Second Amended Complaint. SAC ¶¶ 9 n.5, 124. The statement of the relevant background that follows captures Bailey's practices prior to that point.

[3] An amended version of § 514.5—as well as § 514.4—went into effect on November 1, 2018. Yet another version is set to go into effect on November 1, 2023. Plaintiffs have attached a copy of the laws in effect at the time this suit was filed (the 2010 laws), as well as the laws that remain in effect until November 1, 2023 (the 2018 laws), as an exhibit to their first brief in opposition to Defendants' renewed motions to dismiss. *See* Br. A, Ex. 1. The forthcoming amendments to the statutes are attached as an exhibit to Bailey's official-capacity motion to dismiss. *See* Doc. 399-4. With that said, § 514.5 has remained (and will continue to remain) largely the same since 2010.

BRIEF L

their warrant recalled, but then misses payments again, Aberdeen will seek a new warrant. *Id.* ¶ 126. To do this, Aberdeen makes an informal request for a warrant to Bailey. *Id.* ¶¶ 36, 89 & n.23, 126. Bailey then assists Aberdeen by putting the request in front of a judge in a form that allows the judge to issue a warrant. *Id.* ¶ 126. This is done without information about the debtor's ability to pay and without making (or having Aberdeen make) the request under oath or affirmation. *Id.* ¶¶ 36, 63, 89-90, 126.

Bailey's practices have affected multiple Plaintiffs in this case. Of particular relevance here, she requested that a warrant issue against Plaintiff Randy Frazier and assisted in requesting multiple warrants against Melanie Holmes. *Id.* ¶¶ 164, 207. Bailey also referred Mr. Frazier's case to Aberdeen. *Id.* ¶ 19. As a result of Bailey's conduct, Mr. Frazier has lived under the specter of an active warrant and endured being threatened with arrest by Aberdeen—a threat Aberdeen conveyed not only to him but also to his daughter. *Id.* ¶¶ 165-67. And Ms. Holmes was ultimately arrested on a warrant that Bailey helped Aberdeen request and is now too scared to return to Oklahoma to visit family because of another warrant that Bailey requested. *Id.* ¶¶ 207-08, 212-13. Multiple other plaintiffs in Tulsa County who are too poor to pay their court debt, *see, e.g.*, *id.* ¶¶ 20-23, are at imminent risk of being subjected to Bailey's illegal practice of assisting Aberdeen in requesting new warrants, *see id.* ¶ 126.[4]

---

[4] Bailey's comment in passing that most of the complaint's allegations are "wholly disconnected from any claim of any named Plaintiff," Doc. 410 at 5, is incorrect. Plaintiffs have alleged that Bailey established and executed the practices that resulted in warrant requests against Ms. Holmes and Mr. Frazier and that resulted in the referral of Mr. Frazier's case to Aberdeen. SAC ¶¶ 19, 36, 164, 207-08; *see also* Doc. 278 at 19-21, 24-25 (refuting Bailey's prior argument that she did not personally participate in the unconstitutional conduct that injured Plaintiffs).

BRIEF L

## ARGUMENT[5]

### I.     Bailey Is Not Entitled to Judicial or Quasi-Judicial Immunity.[6]

Bailey asserts that she is entitled to absolute, quasi-judicial immunity from damages because "[e]very claim against Bailey in her individual capacity is founded upon Bailey's execution of her duties to the Tulsa County Clerk on behalf of the District Court." Doc. 410 at 8.[7] This argument is incorrect, and Bailey cannot meet her burden to establish immunity. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993) ("The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity.").

At the outset, Bailey's claim to immunity is based on an incomplete view of Plaintiffs' allegations. Plaintiffs do not seek to hold Bailey liable for merely following a judge's orders. Rather, Plaintiffs allege that Bailey herself "set[s] initial payment plans that require individuals owing court debts to pay a minimum amount of $25 per month, regardless of ability to pay"; "seek[s] debt-collection arrest warrants without inquiring into the warrant subject's ability to pay, without notice, and without sworn statements sufficient to justify arrest"; "chooses which individual cases to transfer to Aberdeen"; "transfer[s] such cases without conducting an inquiry into the debtor's ability to pay," knowing this will automatically trigger a 30-percent surcharge;

---

[5] All of the arguments raised by Bailey in her motion to dismiss are based on failure to state a claim under Fed. R. Civ. P. 12(b)(6). Thus, her recitation of the legal standard for a Rule 12(b)(1) motion, *see* Doc. 410 at 6-7, is not relevant to the disposition of this motion.

[6] Because Defendants Bailey and Newberry raise virtually identical arguments regarding absolute and qualified immunity, Plaintiffs' responses to these Defendants are substantially similar.

[7] Bailey does not and cannot claim such immunity with respect to injunctive relief. *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1983) ("judicial immunity is not a bar to prospective injunctive relief"). Further, Bailey claims "absolute judicial, quasi-judicial and/or derivative immunity." Doc. 410 at 15. Bailey does not distinguish among these terms. For purposes of this brief, Plaintiffs use the term "judicial immunity" to mean the immunity that applies to officials executing judicial functions, and Plaintiffs use the term "quasi-judicial immunity" to mean the derivative immunity that extends to persons executing judicial orders.

BRIEF L

and "assists Aberdeen, Inc. with seeking arrest warrants at [its] request." SAC ¶ 36. Plaintiffs allege that even when Bailey is aware that a person is financially unable to pay outstanding court debt, she does not adjust their minimum payment amount and does not include this information when seeking warrants from a judge. *Id.* ¶¶ 118-21.

Importantly, Plaintiffs do not allege that Bailey "issues" warrants—rather, Plaintiffs allege that she "seek[s] and *judges* issue arrest warrants." *Id.* ¶ 9 (emphasis added). Nor do Plaintiffs allege that judges instruct Bailey to require minimum payment amounts; seek arrest warrants based solely on nonpayment after a set number of missed payments (or help Aberdeen do the same); omit crucial information from warrant applications; or transfer individual cases to Aberdeen. Any suggestion by Bailey to the contrary must be ignored at this stage, because it conflicts with Plaintiffs' well-pled allegations. *See Cressman v. Thompson*, 719 F.3d 1139, 1144 (10th Cir. 2013). With Plaintiffs' allegations properly understood, Bailey's claims to immunity fall apart.

### A.    Bailey Is Not Entitled to Immunity for Seeking Warrants for Nonpayment.

Judicial immunity applies only to "judicial acts." *Forrester v. White*, 484 U.S. 219, 227 (1988). The "touchstone" of a judicial act is the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine*, 508 U.S. at 435-36 (internal quotation marks omitted).

Seeking a warrant is not a judicial act, because it does not involve the resolution of a dispute among parties or an adjudication of private rights. *See Malley v. Briggs*, 475 U.S. 335, 340-43 (1986); *Snell v. Tunnell*, 920 F.2d 673, 687 (10th Cir. 1990) ("[A]pplying for a warrant 'while a vital part of the administration of criminal justice, is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment.'" (internal quotation marks omitted)). As the Supreme Court has explained in the context of prosecutors, who enjoy

7

BRIEF L

absolute immunity for prosecutorial functions, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997) (internal quotation marks omitted). Seeking a warrant is precisely the type of "investigative function[] normally performed by a detective." Bailey does not enjoy absolute immunity for doing so, purely based on her title, when a police officer would not. As Bailey herself points out, "[i]mmunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." Doc. 410 at 8 (quoting *Valdez v. City & Cnty. of Denver,* 878 F.2d 1285, 1287 (10th Cir. 1989)).

Bailey seeks to blur the distinction between "seeking" and "issuing" warrants based on another district court's decision in *Cain v. City of New Orleans*, No. 15-4479, 2017 WL 467685 (E.D. La. Feb. 3, 2017). Doc. 410 at 13. But the court in *Cain* interpreted the "Plaintiffs' principal grievance" in that case as being that judges had "allegedly outsourced their job" to a court administrator. 2017 WL 467685 at *6. Noting that the administrator did "not ask for issuance of a warrant based on his own investigation," but had instead been vested with the functional authority to issue warrants himself, the court held that the administrator should receive immunity because issuing warrants is "fundamentally judicial." *Id.* Here, by contrast, Plaintiffs have alleged that it is a judge who issues the warrants, whereas Bailey investigates and seeks them. SAC ¶ 9. Although Plaintiffs allege that Defendant Judge Moody does not adequately scrutinize Bailey's warrant requests, Doc. 410 at 13, Judge Moody's failure to properly review Bailey's requests does not convert those requests into judicial acts any more than a magistrate's rubber-stamp of a search warrant would render a police officer's application for that warrant a judicial act. *See, e.g.*, *Fry v. Robinson*, 678 F. App'x 313, 319 (6th Cir. 2017) (affirming denial of qualified immunity for police

BRIEF L

officer who sought arrest warrants "on the basis of . . . bare bones affidavits" where clerk acted as a "rubber-stamp" in signing the warrant).

Bailey also emphasizes that the court administrator in *Cain* used a "formula" set by judges to determine when to issue a warrant. 2017 WL 467685 at *6. Bailey claims that this case is the "same" because Plaintiffs have alleged that clerks "automatically" seek warrants based on nonpayment. Doc. 410 at 13. But, Bailey ignores, again, the difference between "issuing" and "seeking." She is alleged to do only the latter. *See, e.g.*, SAC ¶ 120. Setting a minimum payment amount, and seeking a warrant for its nonpayment, formulaically or otherwise, is not a judicial act.

Nor is Bailey entitled to quasi-judicial immunity, because she is not acting pursuant to any judicial directive in demanding minimum payment amounts or seeking warrants. Bailey relies extensively on *Valdez* for the proposition that she should receive quasi-judicial immunity because she is simply "executing a facially valid court order," 878 F.2d at 1286. But Bailey does not merely follow a judge's orders or even merely commit "grave procedural errors" in so doing. Doc. 410 at 10. No judge orders Bailey to seek warrants for failure-to-pay without inquiring into the willfulness of that nonpayment; to the contrary, *Bailey* comes to *judges* with such warrants for their signatures. SAC ¶¶ 36, 118-21. Similarly, no judge orders Bailey to impose a minimum payment amount without consideration of ability to pay. *Id.* ¶ 118. Nor does any judge order Bailey to omit crucial information from her warrant applications. *Id.* ¶ 120. As such, *Valdez* does not shield Bailey,[8] because she does not simply "execute" court orders; she helps procure

---

[8] Nor do the other (mostly unpublished) Tenth Circuit cases to which Bailey cites. *See* Doc. 410 at 9-10. In all but two of those cases, the defendant-official undertook the challenged action pursuant to the *direct instruction* of a judge, and/or the challenged action was a quintessentially "judicial act" such as *issuing* a warrant. The two exceptions are *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991), in which the Tenth Circuit summarily affirmed the district court's grant of immunity without describing the underlying facts or allegations against the clerk defendant, and *Wiggins v. New Mexico State Supreme Court Clerk*, 664 F.2d 812, 815 (10th

BRIEF L

them in the first instance by setting arbitrary minimum payment amounts and seeking warrants if debtors cannot meet them through no fault of their own.

When the purpose of arrest warrants is to coerce payment, they "are extra-judicial and focus more on the administrative task of collecting fines than the judicial act of imposing them." *Kneisser v. McInerney*, No. 1:15-cv-07043, 2018 WL 1586033, at *14 (D.N.J. Mar. 30, 2018). In *Kneisser*, as here, "the whole point of incarceration was to collect fines." *Id.* And so here, as in *Kneisser*, Bailey should be denied absolute immunity.

## B. Bailey Is Not Entitled to Immunity for Working with Aberdeen to Collect Debts.

The other bucket of conduct for which Plaintiffs seek to hold Bailey liable is her practice of working with Aberdeen to collect debts. Bailey "chooses which individual cases to transfer to Aberdeen"; "transfer[s] such cases without conducting an inquiry into the debtor's ability to pay," knowing this will automatically trigger a 30-percent surcharge; and "assists Aberdeen, Inc. with seeking arrest warrants at [its] request." SAC ¶ 36. No judge orders her to do these things.

Bailey attempts to hide behind several Oklahoma statutes that set out court fines and fees and instruct clerks to collect such fees. Doc. 410 at 11-13. But the statutes do not instruct cost administrators to refer cases to a private debt collector without inquiring into ability to pay, or to assist private collectors in seeking their own warrants based on unsworn statements. (Nor do the statutes instruct cost administrators to impose minimum payment amounts without inquiring into ability to pay, seek debt-collection warrants without inquiring into ability to pay, or exclude known information about inability to pay when seeking such warrants.) This is the conduct for which

---

Cir. 1981), in which the Tenth Circuit dismissed the clerk defendants because they were not proper parties for the plaintiff to sue.

BRIEF L

Plaintiffs seek to hold Bailey liable. *See* SAC ¶ 36. State statutes do not prescribe, and cannot excuse, any of it.

Bailey also attempts to assert absolute immunity on the ground that her position as cost administrator falls under the general supervision of the judiciary. Doc. 410 at 14-15.[9] Bailey notes that, "[i]n the performance of all *ministerial* court functions, the court clerk and his deputies are subject to *summary control* by the judges." Doc. 410 at 14 (emphases and alteration in original) (quoting *N. Side State Bank v. Bd. of Cnty. Comm'rs of Tulsa Cnty.*, 894 P.2d 1046, 1051 (Okla. 1994)). But Plaintiffs do not seek to hold Bailey liable for purely "ministerial" acts as directed by judges. The private debt collection scheme at issue vests "sole discretion" to transfer cases to Aberdeen in the Tulsa Sheriff and Court Clerk (who has engaged Bailey for help). SAC ¶ 283. The scheme arises from a contract between the OSA and Aberdeen; the judges are not a party. SAC Ex. A, Doc. 212-1. The fact that judges are not at all involved in this process confirms its "administrative" nature. *Kneisser*, 2018 WL 1586033, at *14. General supervision by judges in other aspects of her job does not convert Bailey's every act into a judicial or quasi-judicial one.

For similar reasons, Oklahoma Supreme Court Order S.C.A.D. 2011-08 (Doc. 99-35) does not confer quasi-judicial immunity upon Bailey. S.C.A.D. 2011-08 is an administrative order "direct[ing]" Oklahoma district courts "to participate in the misdemeanor or failure-to-pay warrant collection program authorized by" Okla. Stat. tit. 19, §§ 514.4 and 514.5 if the relevant county sheriff had chosen to engage a private debt collector. *See* Okla. Stat. tit. 19, § 514.4(A) (eff. Nov.

---

[9] Bailey's brief undermines her own argument, as she describes a chain of "administrative," not judicial, supervision. Doc. 410 at 14.

BRIEF L

1, 2010) ("county sheriffs of any Oklahoma county *may* enter into a private contract" (emphasis added)).[10]

Quasi-judicial immunity is derived from judicial immunity; where a judge would not have judicial immunity for issuing a given directive (because she happens not to act judicially when doing so), an official following that directive does not enjoy quasi-judicial immunity. *See Mays v. Sudderth*, 97 F.3d 107, 114 (5th Cir. 1996). That is, there is no quasi-judicial immunity when there is no judicial immunity from which to derive it. And making rules with general application, even when done by judges, is done in an administrative capacity and does not give rise to judicial immunity. *See Forrester*, 484 U.S. at 229.

By this standard, S.C.A.D. ("Supreme Court Administrative Docket") 2011-08 is a purely administrative order. "Administrative directives" that issue on this docket address such administrative matters as the payment schedule for court reporters, *see In re Fee Schedule of Certified Shorthand Reps.*, 2009 OK 84, 271 P.3d 776 (mem.), and whether to use a private debt collector. Substantively, S.C.A.D. 2011-08 does not touch on the "performance of the function of resolving disputes between *parties*, or of authoritatively adjudicating *private rights*" at all. *Antoine*, 508 U.S. at 435-36 (emphases added) (internal quotation marks omitted). It does not instruct Bailey (or anyone else) to refer any particular cases to Aberdeen; it sets rules of general operation for the courts. The order is no more entitled to judicial immunity than it would be if it directed district courts to use Quik Print for copying instead of their own Xerox machines. Because the justices themselves would not be entitled to judicial immunity for this administrative decision, Bailey

---

[10] As mentioned *supra* in note 3, Plaintiffs have attached a copy of § 514.4 as it existed at the time this suit was filed. *See* Br. A, Ex. 1. The 2018 and 2023 revisions maintain county sheriffs' discretion to enter into a contract, but any contract must now be with OSA as a go-between, rather than with debt collectors directly.

BRIEF L

cannot claim derivative immunity for complying with it. And because the order does not direct Bailey's specific conduct with respect to Aberdeen, she cannot use it as a quasi-judicial immunity shield either.

In her final parry, Bailey argues that she must be entitled to absolute immunity lest she be forced into the role of a "pseudo-appellate court" by having to "mak[e] her own determination as to whether a particular person is indigent." Doc. 410 at 15 (quoting *Valdez*, 878 F.2d at 1289). This fear is unwarranted. *Valdez* sought to prevent situations where government officials, absent immunity, would be liable for having obeyed a state judge's facially valid order later determined to be unlawful. *See* 878 F.2d at 1289. Here, by contrast, no judicial order requires Bailey to act as she does; it is Bailey who comes to judges seeking warrants (on her own initiative or to assist Aberdeen), omits crucial information from warrant applications (such as a known inability to pay arbitrary minimum payments set by Bailey herself), and chooses which cases to refer to Aberdeen. Plaintiffs are not asking for Bailey to independently verify judges' ability-to-pay determinations. Plaintiffs are instead asking Bailey not to violate the Constitution by seeking arrest warrants when no such determinations have been made.

For the reasons above, Bailey does not enjoy absolute immunity.

## II.   Qualified Immunity Does Not Shield Bailey from Suit.

Plaintiffs allege that Bailey has violated four constitutional principles. Each of those principles is clearly established under existing precedent.

First, Bailey seeks, and assists Aberdeen in seeking, warrants without making those requests under oath or affirmation (Count 3). *See* SAC ¶¶ 120, 332. The Tenth Circuit has held that a warrant request submitted not under oath is "clearly and obviously invalid." *Dow v. Baird*, 389 F.2d 882, 884 (10th Cir. 1968). Bailey knows the warrants at issue are invalid because she herself is involved in procuring them. As such, she knowingly violates the Fourth Amendment's

BRIEF L

requirement that warrants must be based upon probable cause "supported by Oath or affirmation." U.S. Const. amend. IV. Qualified immunity is no bar to suit, especially when the law at issue "is set forth in the text of the Constitution." *Groh v. Ramirez*, 540 U.S. 551, 563 (2004).

Second, Bailey seeks warrants without regard for ability to pay (Counts 2 & 5). *See* SAC ¶¶ 322, 347. This violates the clearly established rule that the government cannot "imprison a person solely because he lack[s] the resources to pay" a fine. *Bearden v. Georgia*, 461 U.S. 660, 667-68 (1983); *see also Williams v. Illinois*, 399 U.S. 235, 240-41 (1970) (holding that imprisonment resulting "directly from an involuntary nonpayment of a fine or court costs" is "impermissible discrimination that rests on ability to pay"); *United States v. Grose*, 687 F.2d 1298, 1301 (10th Cir. 1982) (en banc) ("[I]t is unconstitutional for Grose to be sent to prison . . . if he cannot pay the fine due to indigency."). Bailey attempts to distinguish the present case on the grounds that *Bearden* "does not hold that it [is] unlawful to assist in issuing bench warrants" that "do not purport to impose some term of imprisonment for nonpayment," Doc. 410 at 18-19—but Plaintiffs clearly allege that they are, in fact, imprisoned for nonpayment. When a Sheriff serves a debtor with such a warrant, he does not bring the debtor to court for a hearing; he brings her straight to the jail, where she must remain—sometimes for days at a time—before seeing a judge. SAC ¶¶ 96-99. Whatever these warrants are called, they function as arrest warrants. As such, these warrants impose imprisonment on indigent debtors for the sole reason that they are poor. *Bearden* clearly establishes that this is unconstitutional.

Third, and relatedly, Bailey recklessly omits information related to the debtor's ability to pay when she requests warrants or assists Aberdeen in requesting them (Count 3). *See* SAC ¶¶ 120, 332. The Tenth Circuit has held that "[i]t is a violation of the Fourth Amendment for an arrest warrant affiant to . . . recklessly omit from the affidavit information which, if included, would have

BRIEF L

vitiated probable cause." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) (citing *Stewart v. Donges*, 915 F.2d 572, 581-83 (10th Cir. 1990)). Here, the offense for which Bailey seeks warrants is the *willful* refusal to pay court debt. Okla. Stat. tit. 22, § 983(A). By turning a blind eye to ability to pay—and, sometimes, not including known information about inability to pay in warrant requests—Bailey regularly and recklessly omits information in her warrant requests that would "vitiate[] probable cause." *Wolford*, 78 F.3d at 489.[11]

Fourth, Bailey refers indigent debtors' cases to Aberdeen, which subjects them to onerous collection methods to which persons whose debts are not referred are not subject (Count 7). *See* SAC ¶ 361. This violates the Supreme Court's command, more than fifty years ago, that government officials who subject indigent criminal defendants to "unduly harsh or discriminatory terms" as compared to other debtors violate the Equal Protection clause. *James v. Strange*, 407 U.S. 128, 138 (1972). There, the Court struck down a Kansas recoupment statute that expressly denied protections available to civil judgment debtors to indigent defendants who owed money to the State. *Id.* at 135, 141-42. Similarly, here, Bailey and her colleagues subject indigent criminal defendants to more onerous practices than other judgment debtors by referring their cases to Aberdeen and seeking warrants for nonpayment. While there may be subtle differences between the "harsh" and "discriminatory" methods struck down in *James* and those employed here, that does not mean that the rule against such onerous methods is not clearly established. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

---

[11] That Bailey may not have actual knowledge of the debtor's inability to pay in every single instance does not render her immune. Her lack of actual knowledge is a consequence of her complete disregard for the key element of the offense (*willful* refusal to pay). Her conduct thus "equate[s] to 'willful blindness,' or constructive knowledge." *Split Rail Fence Co. v. United States*, 852 F.3d 1228, 1250 n.18 (10th Cir. 2017). Put differently, Bailey cannot escape the reach of the rule articulated in *Wolford* by being woefully deficient at her task of investigating nonpayment of criminal court debt.

BRIEF L

Finally, there is no basis for Bailey to invoke the rule that qualified immunity may protect a government official who relies on a duly enacted statute or ordinance. Bailey accuses Plaintiffs of defining the rights at issue at too abstract a level of generality. But it is Bailey who defines her conduct in broad strokes—as simply "assist[ing] in issuing bench warrants" and "utiliz[ing] a private contractor in court cost collection efforts," Doc. 410 at 19—in an attempt to argue that that conduct is mandated by statute. As explained *supra* in Section I, no statute or court order *requires* Bailey's practices. Qualified immunity does not shield her from violating clearly established law that requires warrants to be supported by oath or affirmation, prohibits wealth-based detention, forbids lying on a warrant application (by reckless omission or otherwise), and bars discrimination against criminal defendant debtors.

## III.   This Court Has Authority to Issue Equitable Relief Against Bailey in Her Individual Capacity.

Bailey next argues that injunctive relief is never available against a government official in her individual capacity. Doc. 410 at 19-20. This argument is belied by the plain text of 42 U.S.C. § 1983, which vests this Court with authority to enjoin any "person" (other than one acting in a judicial capacity) who violates the constitutional rights of another under color of state law. There is no limitation in the text to "persons in their official capacity." So long as the "person" who is sued "cause[d]" the constitutional violation—which Plaintiffs have adequately alleged Bailey did here, *see supra* Section II—this Court has the power to provide equitable relief. *See* 42 U.S.C. § 1983; *see also, e.g.*, *Perano v. Arbaugh*, No. 10-cv-01623, 2011 WL 1103885, at *6 (E.D. Pa. Mar. 25, 2011) (holding that injunctive relief is available against defendants in their individual capacities); *Molina v. March*, No. 07-cv-4296, 2009 WL 10693183, at *15 (S.D. Tex. Sept. 28, 2009) ("The Court disagrees with Magidson's broad assertion that injunctive suits can only be lodged against defendants in their official capacity.").

16

BRIEF L

Bailey invokes *Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011), and *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714 (10th Cir. 1988), to argue otherwise, but neither case supports her theory. First, Bailey cites to a footnote from *Brown*, stating that "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." 662 F.3d at 1161 n.5 (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)). *Brown* was brought against state-level officials who, unlike Bailey and other municipal officials, enjoy Eleventh Amendment immunity from damages when sued in their official capacities. *See Hafer*, 502 U.S. at 30-31. The quoted language was dicta; the availability of injunctive relief was not at issue in the appeal. And it is based on a misreading of *Hafer*, which was again about the forms of relief available against a *state* official sued under § 1983. Bailey also cites to *DeVargas*, in which the Tenth Circuit observed that "[a]n action for injunctive relief no matter how it is phrased is against a defendant in official capacity only." 844 F.2d at 718. But *DeVargas* considered only the burden of defending a claim for injunctive relief in *Bivens* and § 1983 suits for purposes of determining whether an interlocutory appeal of a denial of qualified immunity may be taken when there is a pending claim for injunctive relief. It did not actually confront the question whether, if an injunction is unavailable against a defendant in her official capacity, it may be available against her in her individual capacity.[12]

Bailey also relies upon *Chilcoat v. San Juan County*, 41 F.4th 1196 (10th Cir. 2022). In that case, the plaintiff sought injunctive and declaratory relief against a prosecutor who made

---

[12] The rationale for the rule recognized in cases like *DeVargas*—that denials of qualified immunity are subject to interlocutory review even when there are injunctive claims that would require further litigation anyway—has everything to do with the purposes of qualified immunity and nothing to do with the availability of personal injunctive relief. *See* 844 F.2d at 718 (explaining that the risk of being sued and held personally responsible for damages would deter people from public service in ways that threats of injunctive relief would not).

17

BRIEF L

material factual misrepresentations during a preliminary hearing. The district court dismissed Ms. Chilcoat's claims on Eleventh Amendment grounds because it concluded that Ms. Chilcoat had not pled on ongoing violation of federal law and therefore could not avail herself of the *Ex parte Young*, 209 U.S. 123 (1908), exception to Eleventh Amendment immunity, which allows for prospective injunctive relief against state officers who violate federal law. (The Eleventh Amendment applied because the prosecutor acted for the state, and not the county, at the preliminary hearing. *See Chilcoat*, 41 F.4th at 1213 n.20, 1215-16.) On appeal, Ms. Chilcoat attempted to sidestep *Ex parte Young* altogether by arguing that she sued the prosecutor only in his individual capacity. It was in the context of rejecting this argument that the Tenth Circuit explained that "a plaintiff cannot sue an official in their individual capacity for injunctive or declaratory relief" under § 1983. *Id.* at 1214 (first citing *Brown*, 662 F.3d at 1161 n.5; then citing *DeVargas*, 844 F.2d at 718).

*Chilcoat* too is distinguishable. Defendants here are municipal officials. As such, they are not subject to the same Eleventh Amendment immunity considerations—considerations that have uniquely informed the Supreme Court's interpretation of who is a "person" for purposes of § 1983 in the context of state officials. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 & n.10 (1989) (explaining that "official-capacity actions for prospective relief [against state officials] are not treated as actions against the State," but that the same bifurcation does not apply to municipal officials because "municipalities were no longer protected by sovereign immunity" at the time of § 1983's enactment).

Moreover, Bailey's argument must be viewed alongside her claim, made in the Tulsa County Defendants' motion to dismiss in their official capacity, that she is an improper defendant

BRIEF L

in her official capacity because she is not a final policymaker. *See* Doc. 399 at 22.[13] Plaintiffs

explain in their opposition to that brief why Bailey's official capacity argument is misguided. But

the upshot of her two positions, taken together, is that even though she is alleged to be causing

ongoing constitutional harms, she cannot be enjoined in her individual capacity at all and cannot

be enjoined in her official capacity unless she is acting pursuant to a final municipal policy. Under

this theory, if Bailey were to prove during discovery that her conduct is not pursuant to a municipal

policy, then she would remain free to continue her unconstitutional conduct, and this Court would

be powerless to stop her. Plaintiffs submit that both Bailey's individual capacity argument and her

official capacity argument are wrong, but at a minimum, they cannot both be correct: to hold

otherwise would be to carve out an extra-textual loophole contrary to the § 1983's broad

authorization of suits against "*[e]very person*" acting under color of state law.[14]

Finally, the Court may, at a minimum, issue declaratory relief against Bailey in her

individual capacity. To Plaintiffs' knowledge, the Tenth Circuit has not addressed such relief other

than in *Chilcoat*, which is distinguishable for the reasons stated above. Moreover, unlike in

*Chilcoat*, Plaintiffs are not seeking a purely backward-looking declaration about a violation of

---

[13] To the extent Bailey claims she is not a final policymaker, *Chilcoat* is distinguishable for that reason as well. *See* 41 F.4th at 1215-16 (holding that the prosecutor was a final policymaker for the state). Moreover, if discovery later reveals that Bailey was not following any policy, *see infra*, there would be even more of a reason to distinguish *Chilcoat*. *Cf.* 2 Nahmod, Civil Rights & Civil Liberties Litigation: The Law of Section 1983 § 6:56 (suggesting that "where a local government official alone and independently, and not pursuant to an official policy or custom, is engaging in . . . unconstitutional conduct that is the object of [a] § 1983 prospective relief action against the official," that official might be deemed to be "stripped of his official capacity and . . . in effect sued in his personal capacity" within the meaning of *Ex parte Young*).

[14] To take a separate example, Bailey's argument would mean that a deputy clerk who refuses to issue marriage licenses to same-sex couples because of her personal beliefs could not be enjoined because (1) as a deputy, she is not a final policymaker and (2) courts can never enjoin officials in their individual capacities.

BRIEF L

their rights in the past; the declaratory order here is intended to address Bailey's *ongoing* unconstitutional actions. *See* 41 F.4th at 1215 ("*Ex parte Young* may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past. . . . This request cannot be properly characterized as seeking prospective relief; thus, Ms. Chilcoat's declaratory relief claim necessarily fails to avoid the absolute bar of sovereign immunity." (internal quotation marks omitted)).

## IV. This Court Should Not Reach Bailey's Statute-of-Limitations Defense, Which Fails in Any Event.

Bailey's argument that "most of Plaintiffs' claims are barred by the statute of limitations" should be rejected as well. Like Newberry, Bailey argues that to the extent two of the named Plaintiffs—Linda Meachum and Christopher Choate—challenge the seeking of debt-collection arrest warrants in Counts 2, 3, and 5,[15] those claims are untimely. Doc. 410 at 20. These claims, Bailey reasons, would have accrued on the date the warrants were issued, and at the very latest the date of arrest, which was more than two years prior to the filing of the complaint. *Id.*

As an initial matter, because Bailey did not raise a statute-of-limitations defense in her prior motion to dismiss the Second Amended Complaint, she may not do so now. Federal Rule of Civil Procedure 12(g)(2) states in relevant part that "[e]xcept as provided in Rule 12(h)(2)," a party may not file a successive Rule 12 motion that "rais[es] a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(2)'s exception allows certain defenses to be raised "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." None of those exceptions apply here, as Defendants have not filed a Rule 7

---

[15] Bailey also mentions Count 4, but Count 4 is asserted against her only in her official capacity, and she raises no statute-of-limitations argument in her official capacity brief. *See* Doc. 399; *see also infra* note 18.

BRIEF L

pleading or Rule 12(c) motion, and this is not trial. Moreover, courts have refused to construe a 12(b)(6) motion to dismiss as a 12(c) motion for judgment on the pleadings where, as here, an answer has yet to be filed. *See Scott v. Allen*, No. 21-cv-02011, 2022 WL 16961940, at *2 (D. Colo. Nov. 16, 2022) (collecting cases).[16]

The Tenth Circuit did not hold otherwise in *Albers v. Board of County Commissioners of Jefferson County*, 771 F.3d 697 (10th Cir. 2014). There, the court acknowledged that district courts have struggled to determine whether a party can raise a previously available argument in a successive Rule 12(b)(6) motion before filing a responsive pleading. *Id.* at 702 (noting that while some courts strictly construe the rule's requirements and prohibit new arguments in successive motions to dismiss, others generally construe Rule 12(g)(2) to allow discretion in considering successive motions in the interest of efficiency). It then surveyed the competing approaches taken by other courts of appeals. The court began with the Seventh Circuit's decision in *Ennenga v. Starns*, 677 F.3d 766 (7th Cir. 2012), which held that "Rule 12(h)(2) specifically excepts failure-to-state-a-claim defenses from the Rule 12(g) consolidation requirement," and that, as a result, "the prohibition on successive motions in Rule 12(g)(2) is simply inapplicable to motions to dismiss for failure to state a claim made before a responsive pleading under Rule 12(b)(6)." *Albers*, 771 F.3d at 703 (internal quotation marks omitted). *Albers* found the Seventh Circuit's approach "problematic," however, because it did not grapple with Rule 12(h)(2)'s language limiting the presentation of defenses to a pleading, a motion for judgment on the pleadings, or a trial. *Id.* Thus,

---

[16] Bailey cites *F.T.C. v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378 (D. Md. 2009), for the proposition that she should be allowed to raise this new defense. Doc. 410 at 7. But in *F.T.C.*, the court found that a second motion to dismiss was warranted because a Supreme Court decision released after the first motion to dismiss had changed the applicable standard. 654 F. Supp. 2d at 384. Bailey does not claim anything has occurred since her previous motion was filed that would justify her new argument.

BRIEF L

it turned to the Third Circuit's decision in *Walzer v. Muriel Siebert & Co.*, 447 F. App'x 377 (3d Cir. 2011), which declined to decide whether the district court committed a technical violation of 12(g)(2) by simply reviewing for harmless error. *See Albers*, 771 F.3d at 703 (citing *Walzer*, 447 F. App'x at 384). Finding this approach more persuasive, *Albers* conducted the same review on appeal and concluded that any presumed error was harmless. *See id.* at 704.

Although *Albers* ultimately reviewed a technical violation of Rule 12(g)(2) for harmless error, it did not give district courts license to "engage in procedural error on the basis that the error may subsequently be deemed harmless." *Scott*, 2022 WL 16961940, at *3. Indeed, the court's opinion is clear about the purpose of the rule—to "avoid unnecessary delay at the pleading stage" by encouraging an omnibus pre-answer motion that raises "every available Rule 12 defense . . . that is assertable by motion." *Albers*, 771 F.3d at 702 (internal quotation mark omitted). And it also implicitly rejects the argument, raised by Bailey here (Doc. 410 at 7), that the fact that a defense is not waived under Rule 12(h)(1) somehow makes it immune from the plain language of Rule 12(g)(2) and 12(h)(2). *See Albers*, 771 F.3d at 703.[17]

But even if the Rules permitted Bailey to raise this defense, it fails for several reasons. First, Bailey misunderstands the nature of the claims asserted and relief sought in Counts 2, 3, and 5. Multiple Plaintiffs, including Ms. Meachum and Mr. Choate, allege that they are financially unable to pay their court debts. They are therefore at imminent risk of having a *new* debt-collection arrest warrant issue against them, a process in which Bailey plays an integral—and

---

[17] Bailey also contends that Rule 12(g)(2) is inapplicable because the Court "expressly ordered additional briefing on Defendants' dismissal arguments." Doc. 410 at 7. This contention finds no support in the plain language of Rule 12. Even if the Court were permitted to ignore Rule 12 in the general interest of "judicial economy," *id.*, it is not clear how such an interest would be served here. As explained below, Bailey asks the Court to address an affirmative defense that ordinarily cannot be decided on a 12(b)(6) motion, that raises factual issues, that does not affect all of Plaintiffs' claims, and that will not result in the outright dismissal of those claims in any event.

BRIEF L

unconstitutional—role. *See* SAC ¶¶ 21, 23, 35-36, 126. They seek injunctive relief against Bailey's warrant practices to prevent future harm. They do not seek damages stemming from harm that they suffered as a result of past warrants. *See id.* ¶¶ 328, 338, 353 (stating Ms. Meachum and Mr. Choate seek "injunctive relief only" for Counts 2, 3, and 5). Accordingly, the statute of limitations is not a valid defense to their claims. *Cf. Stevenson v. Grace*, 356 F. App'x 97, 98 (10th Cir. 2009) (unpublished) (noting, in the sole case cited by Defendants, that § 1983 claims accrue "when the plaintiff knows or should know that his or her constitutional rights *have been* violated" (emphasis added) (internal quotation mark omitted)).

Second, particularly at this early stage of the litigation, Bailey has not met her burden of establishing a statute-of-limitations defense with respect to Mr. Choate. A statute-of-limitations defense is an affirmative defense that may be raised only in a dispositive motion to dismiss if the defense is apparent from the face of the complaint. *See Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022); *see also Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) ("A plaintiff need not anticipate in the complaint an affirmative defense that may be raised by the defendant; it is the defendant's burden to plead an affirmative defense."). The entirety of Bailey's statute-of-limitations argument with respect to Mr. Choate is premised on public records outside the complaint. Even assuming, *arguendo*, that it would be permissible for the Court to take judicial notice of these records under these circumstances, Bailey does not actually point the Court to any judicially noticeable records. She merely states that the date of Mr. Choate's arrest (which she inconsistently refers to as either April 2014 or April 2015) is a matter of "public record." *See* Doc. 410 at 20-21 & nn.6-7 (cross-referencing an earlier footnote in the brief, which simply says

BRIEF L

a court may take judicial notice of matters of public record, including state court documents in an appropriate case).[18]

Finally, even if there were any merit to the statute-of-limitations arguments raised by Bailey—and there is not—it is not true that these arguments affect "most" of Plaintiffs' claims. Bailey does not seek dismissal of the claims raised by David Smith or Ira Wilkins in Counts 2, 3, 5, or 7. And Bailey raises no argument with respect to any of the claims asserted by Plaintiffs Randy Frazier and Melanie Holmes. Her statute-of-limitations defense should be rejected.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Bailey's motion to dismiss in her individual capacity.

Dated: August 10, 2023        Respectfully submitted,

/s/ *Daniel E. Smolen*
Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

/s/ *Ryan Downer*
Ryan Downer (admitted *pro hac vice*)
D.C. Bar No. 1013470
Katherine Hubbard (admitted *pro hac vice*)

---

[18] Even if Bailey's argument had any merit (it does not), Plaintiffs note that the affected claims would still be able to proceed against Bailey in her official capacity. As explained above, *see supra* note 15, Bailey did not raise a statute-of-limitations argument in her official-capacity brief, and thus has waived the argument for purposes of resolution at the motion-to-dismiss stage. *See generally Cooper v. Occidental Petroleum Corp.*, No. 16-cv-687, 2017 WL 1652576, at *5 (N.D. Okla. May 1, 2017) (Kern, J.) ("[I]t [is] improper to consider an argument or theory first raised in a reply to which Plaintiff lacked a meaningful opportunity to respond."); *see also Fernandez*, 883 F.3d at 1299 ("[I]t is the defendant's burden to plead an affirmative defense.").

BRIEF L

D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

/s/ *Seth Wayne*
Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804
Mary B. McCord (admitted *pro hac vice*)
D.C. Bar No. 427563
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu
mbm7@georgetown.edu

*Attorneys for the Plaintiffs*

BRIEF L

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of August, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

<u>/s/ *Seth Wayne*</u>

BRIEF L