## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CARLY GRAFF, et al.,** | |
| *Plaintiffs,* | |
| **v.** | Case No. 4:17-CV-606-TCK-JFJ |
| **ABERDEEN ENTERPRIZES II, INC., et al.,** | |
| *Defendants.* | |

### PLAINTIFFS' OPPOSITION TO RENEWED MOTION TO DISMISS BY DEFENDANTS THE BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY, TULSA COUNTY SHERIFF, TULSA COUNTY COURT CLERK, AND TULSA COST ADMINISTRATOR, IN THEIR OFFICIAL CAPACITIES

### BRIEF M

Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804
Mary B. McCord (admitted *pro hac vice*)
D.C. Bar No. 427563
Institute for Constitutional Advocacy
  and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel.: 202-662-9042
sw1098@georgetown.edu
sc2053@georgetown.edu
mbm7@georgetown.edu

Ryan Downer (admitted *pro hac vice*)
D.C. Bar No. 1013470
Katherine Hubbard (admitted *pro hac vice*)
D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

*Attorneys for the Plaintiffs*

### Index of Plaintiffs' Opposition Briefs

For ease of reference, each of Plaintiffs' opposition briefs has been labeled by letter according to the motion to dismiss to which it responds, listed below.

A.  51 County Sheriff Defendants, Individual Capacity (Doc. 407)

B.  Rogers County Defendants, Official Capacity (Doc. 406)

C.  Kim Henry, Former Court Clerk of Rogers County, Individual Capacity (Doc. 402)

D.  Scott Walton, Sheriff of Rogers County, Individual Capacity (Doc. 408)

E.  Aberdeen Enterprizes II, Inc. (Doc. 404)

F.  Jim and Rob Shofner (Doc. 403)

G.  Oklahoma Sheriffs' Association (Doc. 405)

H.  Defendant Judges (Doc. 412)

I.  51 County Sheriff Defendants, Official Capacity (Doc. 398)

J.  Vic Regalado, Sheriff of Tulsa County, Individual Capacity (Doc. 409)

K.  Don Newberry, Court Clerk of Tulsa County, Individual Capacity (Doc. 411)

L.  Darlene Bailey, Cost Administrator of Tulsa County, Individual Capacity (Doc. 410)

M.  Tulsa County Defendants, Official Capacity (Doc. 399)

BRIEF M

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ...........................................................................1

RELEVANT BACKGROUND .............................................................2

ARGUMENT .................................................................................6

    I.      Plaintiffs Have Stated a Claim for Municipal Liability Against Tulsa
          County.................................................................................6

          A.     The Tulsa Clerk and Cost Administrator Have Final Policymaking
                Authority with Respect to Referring Cases to Aberdeen and
                Seeking Unlawful Warrants.................................................8

          B.     The Tulsa Sheriff Has Policymaking Authority with Respect to
                Engaging Aberdeen, Executing Warrants, and Detaining People
                Pursuant to Them. ..........................................................12

                1.     Contracting with and Assisting Aberdeen ....................12

                2.     Executing Warrants Known to Be Unlawful .................13

                3.     Detaining Debtors Who Cannot Afford to Pay for Their
                     Release ...............................................................16

    II.     Tulsa County Is Not Entitled to Eleventh Amendment Immunity. ......17

    III.    Tulsa County Cost Administrator Darlene Bailey Is a Properly Named
          Defendant..........................................................................19

    IV.    The Board of County Commissioners of Tulsa County Is a Properly
          Named Defendant. ...............................................................21

    V.     Plaintiffs' Claims for Injunctive Relief Are Not Moot.........................21

CONCLUSION..............................................................................23

BRIEF M

## TABLE OF AUTHORITIES

**Cases**

*Barney v. Pulsipher*, 143 F.3d 1299 (10th Cir. 1998) ................................................. 6
*Bishop v. United States ex rel. Holder*, 962 F. Supp. 2d 1252 (N.D. Okla. 2014) ...................... 21
*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175 (10th Cir. 2010) ....................... 7
*Brashear v. Tulsa Cnty. Bd. of Cnty. Comm'rs*, No. 15-CV-0473, 2016 WL 633374 (N.D. Okla. Feb. 17, 2016) ................................................................................... 20
*Brinkman v. Hobble Creek Half-Marathon*, No. 05-CV-0009, 2005 WL 8175141 (D. Utah Oct. 4, 2005) ................................................................................................... 22
*Burns v. State*, 220 P.2d 473 (Okla. Crim. App. 1950) ................................................. 15
*Cain v. City of New Orleans*, No. 15-CV-4479, 2017 WL 467685 (E.D. La. Feb. 3, 2017) ........ 10
*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) ....................................................... 7
*Couser v. Gay*, 959 F.3d 1018 (10th Cir. 2020) ............................................................ 17
*duBois v. Bd. of Cnty. Comm'rs of Mayes Cnty.*, No. 12-CV-0677, 2014 WL 4810332 (N.D. Okla. Sept. 29, 2014) ................................................................................... 21
*Ex parte Young*, 209 U.S. 123 (1908) ......................................................................... 15
*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ............... 23
*Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500 (10th Cir. 2023) ........................... 2, 22
*Green v. Mansour*, 474 U.S. 64 (1985) ....................................................................... 19
*Hollingsworth v. Hill*, 110 F.3d 733 (10th Cir. 1997) ............................................... 13, 14
*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) ................................................. 7, 8
*Juriss v. McGowan*, 957 F.2d 345 (7th Cir. 1992) ......................................................... 15
*Ledbetter v. City of Topeka*, 318 F.3d 1183 (10th Cir. 2003) ............................................ 9
*Lopez v. LeMaster*, 172 F.3d 756 (10th Cir. 1999) ....................................................... 16
*Malley v. Briggs*, 475 U.S. 335 (1986) ...................................................................... 14
*McMillian v. Monroe County*, 520 U.S. 781 (1997) ........................................................ 7
*McNeil v. Cmty. Prob. Servs., LLC*, No. 18-CV-0033, 2019 WL 633012 (M.D. Tenn. Feb. 14, 2019) ................................................................................................... 16
*Messerschmidt v. Millender*, 565 U.S. 535 (2012) ....................................................... 15
*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) .................................................. 7, 19
*Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313 (10th Cir. 1998) ........................ 12
*N. Side State Bank v. Bd. of Cnty. Comm'rs*, 894 P.2d 1046 (Okla. 1994) ........................ 10, 11
*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007) ................ 23
*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) .................................................. 7, 9
*Petuskey v. Cannon*, 742 P.2d 1117 (Okla. 1987) ........................................................ 10
*Ray v. Jud. Corr. Servs., Inc.*, No. 12-CV-02819, 2017 WL 660842 (N.D. Ala. Feb. 17, 2017) ... 9
*Reid v. Hamby*, 124 F.3d 217, 1997 WL 537909 (10th Cir. 1997) .................................... 18
*Safe Sts. All. v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017) ...................................... 15
*Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760 (10th Cir. 2013) ................... 6
*Scott v. O'Grady*, 975 F.2d 366 (7th Cir. 1992) ....................................................... 17, 18
*See Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391 (1979) ............. 17
*Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281 (10th Cir. 2007) ..................... 20
*Smith v. O'Grady*, 312 U.S. 329 (1941) ................................................................... 18
*Strawser v. Strange*, 105 F. Supp. 3d 1323 (S.D. Ala. 2015) ......................................... 18
*Turney v. O'Toole*, 898 F.2d 1470 (10th Cir. 1990) ..................................................... 15
*United States v. Leon*, 468 U.S. 897 (1984) .............................................................. 14

iii

BRIEF M

*Webb v. City of Maplewood*, 889 F.3d 483 (8th Cir. 2018) .......................................... 17

**Statutes**

42 U.S.C. § 1983 ............................................................................................. 6, 16, 20

Okla. Stat. tit. 12, § 29 ................................................................................................ 11

Okla. Stat. tit. 19, § 514 ....................................................................................... 14, 18

Okla. Stat. tit. 19, § 514.4 ................................................................................ 3, 13, 14

Okla. Stat. tit. 19, § 514.5 ....................................................................................... 3, 11

Okla. Stat. tit. 19, § 516 ............................................................................................. 14

Okla. Stat. tit. 19, § 547 ............................................................................................. 14

Okla. Stat. tit. 21, § 1533 ........................................................................................... 11

Okla. Stat. tit. 21, § 533 ............................................................................................. 18

Okla. Stat. tit. 22, § 983 ....................................................................................... 21, 22

Okla. Stat. tit. 22, §§ 454–458 .................................................................................... 9

Okla. Stat. tit. 28, § 151 ............................................................................................... 9

Okla. Stat. tit. 57, § 55 ............................................................................................... 18

**Rules**

Fed. R. Civ. P. 12(g)(2) ............................................................................................... 12

Rules 8.1-8.7, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. .......... 9

**Legislative Materials**

2010 Okla. Sess. Law Serv. Ch. 87 (H.B. 3242) (West) ............................................. 13

2018 Okla. Sess. Law Serv. Ch. 128 (S.B. 689) (West) ............................................. 22

BRIEF M

## INTRODUCTION

In their official capacity motion to dismiss (Doc. 399), Defendants Tulsa County Court Clerk Don Newberry ("Tulsa Clerk"), Tulsa County Sheriff Vic Regalado ("Tulsa Sheriff"), Tulsa County Cost Administrator Darlene Bailey ("Tulsa Cost Administrator"), and the Board of County Commissioners of Tulsa County (collectively, "Tulsa County Defendants") seek to shift to the state courts wholesale responsibility for the unconstitutional debt-collection scheme in which they have extensively participated and, in all relevant respects, control. The Second Amended Complaint alleges that the Tulsa County Defendants are the final policymakers in their respective roles and that they have systematized various unconstitutional practices that enable Defendants' unlawful and extortionate debt-collection scheme to pervade Tulsa County's criminal legal system. *See* Second. Am. Compl. ("SAC"), Doc. 212.

The Tulsa County Defendants attempt to evade responsibility for these practices by claiming that they have no discretion to do anything other than transfer cases to a private company that will use threats of arrest to extort money from indigent people, seek arrest warrants for people who do not pay according to the arbitrary terms set by that company, and arrest and detain people on those warrants. These arguments fail. The law plainly does not require this course of action. And their additional arguments—that the Cost Administrator and Board of County Commissioners are not properly named defendants, that the County is entitled to immunity under the Eleventh Amendment, and that recent changes in state law moot Plaintiffs' claims for injunctive relief—are also meritless. The Tulsa County Defendants' motion to dismiss should be denied.

BRIEF M

## RELEVANT BACKGROUND[1]

The Second Amended Complaint makes numerous allegations that establish that the Tulsa County Defendants are final policymakers for the County whose decisions facilitate the unconstitutional debt collection scheme.

The Tulsa Clerk and Cost Administrator are responsible for collecting court debts in Tulsa County. SAC ¶¶ 35-36. As part of that effort, the Tulsa Clerk and Cost Administrator establish payment plans for people owing court debt without regard for ability to pay. *Id.* Minimum payments are typically $50 or $75, and never below $25, per month. *Id.* ¶ 118. If a debtor misses a certain number of payments, ranging from six to twelve payments, the Clerk's office, which includes the Cost Administrator, seeks a warrant for the debtor's arrest. *Id.* ¶¶ 5, 9, 35-36, 108-09, 118-21. These requests are made without providing notice to the debtor or inquiring into the debtor's ability to pay. *Id.* ¶¶ 35-36, 50, 118-21, 123. They include no information about the debtor's ability to pay—even when the Clerk or Cost Administrator has evidence that the debtor is unable to pay—and the requestor does not attest to facts under oath or affirmation. *Id.* Once the request is submitted, a judge signs the warrant so that it becomes an active arrest warrant. *Id.* ¶¶ 33, 120. The Second Amended Complaint alleges that the Tulsa Clerk and Cost Administrator established these practices for seeking warrants. *Id.* ¶¶ 35-36.

After a warrant issues in a specific case, the Tulsa Clerk and Cost Administrator choose whether to refer the case to Aberdeen Enterprizes II, Inc. ("Aberdeen") to take charge of collecting

---

[1] This section includes allegations relevant to Plaintiffs' claims against the Tulsa County Defendants in their official capacities. For a summary of the allegations and claims against all Defendants, see *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 509-14 (10th Cir. 2023). The following background also captures practices that existed before Tulsa County stopped using Aberdeen Enterprizes, II, Inc. ("Aberdeen") to collect court debt, which occurred after the initiation of this lawsuit, but prior to the filing of the Second Amended Complaint. *See* SAC ¶¶ 9 n.5, 124.

BRIEF M

the court debt. *Id.* ¶¶ 35-36, 57, 125. If the case is referred, the Tulsa Clerk's office increases the amount the debtor owes by 30 percent. *Id.* The 30-percent add-on is used to pay Aberdeen for its services and the Oklahoma Sheriffs' Association ("OSA") for overseeing Aberdeen's contract. *Id.* ¶¶ 5, 55-59; *see also* Okla. Stat. tit. 19, § 514.5(A)-(B) (eff. Nov. 1, 2010).[2] The process of transferring a case to Aberdeen and adding the surcharge occurs yet again without any notice to the debtor or inquiry into ability to pay. SAC ¶¶ 5, 35-36, 50.

The Tulsa Clerk and Cost Administrator have established practices that require their office to continue to play a role in collecting debt even after referral, specifically, by assisting Aberdeen in obtaining new arrest warrants. If the debtor pays Aberdeen to have a warrant recalled, but then misses payments again, Aberdeen will seek a new warrant. SAC ¶¶ 35-36, 126. To do this, Aberdeen makes an informal request for a warrant to the Tulsa Clerk's office. *Id.* ¶¶ 35-36, 89, 126. Pursuant to the Tulsa County Defendants' practice, the Tulsa Clerk's office then assists Aberdeen by putting the request before a judge in order to have him or her issue a warrant. *Id.* ¶¶ 35-36. This is done without information about the debtor's ability to pay and without making (or having Aberdeen make) the request under oath or affirmation. *Id.* ¶¶ 35-36, 63, 89 & n.23, 90, 126. The Tulsa Clerk's office has annotated case dockets in a way that shows collaboration with Aberdeen, including specifically warning: "DO NOT ISSUE WARRANT UNLESS CONTACTED BY ABERDEEN." *Id.* ¶ 62. The Tulsa Clerk's office assists Aberdeen in its efforts to seek arrest warrants by putting the company's requests before judges. *Id.* ¶¶ 62, 126.

---

[2] An amended version of § 514.5—as well as § 514.4—went into effect on November 1, 2018. Yet another version is set to go into effect on November 1, 2023. Plaintiffs have attached a copy of the laws in effect at the time this suit was filed (the 2010 laws), as well as the laws that remain in effect until November 1, 2023 (the 2018 laws), as an exhibit to their first brief in opposition to Defendants' renewed motions to dismiss. *See* Br. A, Ex. 1. The forthcoming amendments to the statutes are attached as an exhibit to Tulsa County's motion to dismiss. *See* Doc. 399-4. Nevertheless, § 514.5 has remained (and will continue to remain) largely the same since 2010.

BRIEF M

The Tulsa Sheriff is the final policymaker for all county law enforcement and county jail-related decisions in Tulsa County. *Id.* ¶ 31. In this capacity, the Tulsa Sheriff (along with the other Defendant Sheriffs), through his agent OSA, entered into an Agreement with Aberdeen. *Id.* ¶¶ 29, 31, 56; *see* SAC Ex. A, Doc. 212-1. The Agreement empowers the Tulsa Sheriff and Clerk to decide when to assign a case to Aberdeen, and it contractually delegates to Aberdeen the responsibility to collect court debts. SAC ¶¶ 51, 57. This responsibility includes the authority to determine when to request that new arrest warrants issue and to control when to request the recall of warrants. *Id.* ¶ 51. The Agreement also requires the Tulsa Sheriff to assist Aberdeen in its collection activities by providing "debtor information" to the company. *Id.* ¶¶ 60, 283.

The Tulsa Sheriff has a policy and practice of arresting individuals with outstanding debt-collection warrants knowing that there has been no pre-deprivation process, no inquiry into ability to pay, and no application made based on sworn assertions of fact sufficient to justify an arrest. *Id.* ¶ 31. He has a policy of detaining such individuals in the Tulsa County Jail until the following Tuesday or Friday unless the individual pays $250 in cash, without any inquiry into ability to pay. *Id.* ¶¶ 31, 128. The $250 cash release payment, if paid, is not returned upon the arrestee's appearance at any future court date (indeed, there will be no future court date if the person is able to pay the debts in full), but is instead applied to the arrestee's court debts, a portion of which is retained by the Sheriffs. *Id.*

The Board of County Commissioners of the County of Tulsa is the governing body of Tulsa County. *Id.* ¶ 38. Tulsa County, through the Sheriff, Clerk, and Cost Administrator, is responsible for establishing policy for the Tulsa County jail and for the collection of court debt. *Id.*

The Tulsa County Defendants' practices have injured several of the named Plaintiffs. For example, the Tulsa Clerk's office helped Aberdeen request an arrest warrant for Plaintiff Melanie

4

BRIEF M

Holmes based solely on nonpayment of debt without inquiry into her inability to pay. *Id.* ¶ 207. Ms. Holmes was arrested on the warrant and detained by the Tulsa Sheriff because she could not afford to pay $500 to secure her release. *Id.* ¶¶ 208-09; *see also id.* ¶ 209 (noting that the order of commitment was signed by an employee in the Clerk's office rather than a judge). Similarly, the Tulsa Clerk and Cost Administrator sought an arrest warrant against Plaintiff Randy Frazier due to his unpaid court debt—without any inquiry into his ability to pay. *Id.* ¶¶ 35-36, 164. They subsequently assigned his case to Aberdeen, automatically increasing his debt by more than 30 percent. *Id.* ¶ 164. Aberdeen has repeatedly threatened him with arrest if he does not pay, even though he has informed the company of his indigence and medical issues that render him unable to fulfill basic tasks. *See id.* ¶¶ 162-68. Countless putative class members have suffered similar injuries at the hands of the Tulsa County Defendants.

Plaintiffs, on behalf of themselves and members of the putative class, assert claims against the Tulsa County Defendants for: **(1)** seeking and executing arrest warrants that are based solely on nonpayment, without inquiry into ability to pay, and unsworn allegations containing material omissions, in violation of Plaintiffs' due process and equal protection rights under the Fourteenth Amendment (Count 2), their Fourth Amendment right to a warrant affidavit that supports probable cause (Count 3), and the liberty interests created by Oklahoma Criminal Rule 8 (Count 5); **(2)** detaining persons arrested on debt-collection arrest warrants because of their inability to pay, in violation of their due process and equal protection rights under the Fourteenth Amendment (Count 4) and the same state-created liberty interests (Count 5); **(3)** subjecting Plaintiffs to these onerous enforcement methods, including transfer to a private company who threatens and harasses them, and a penalty surcharge solely because of Plaintiffs' inability to pay, in violation of equal protection under the Fourteenth Amendment (Count 7); and **(4)** delegating law enforcement

5

BRIEF M

authority to Aberdeen despite a financial conflict of interest, in violation of due process under the Fourteenth Amendment (Count 6).[3] *Id.* ¶¶ 318-62.

## ARGUMENT

### I.   Plaintiffs Have Stated a Claim for Municipal Liability Against Tulsa County.

The Tulsa County Defendants raise two principal, related arguments that Plaintiffs have failed to state a claim for municipal liability against Tulsa County. First, they argue that in carrying out the conduct challenged in this case, they act as arms of the state courts, and that their actions thus do not give rise to municipal liability for Tulsa County. Second, in a variation on this theme, they argue that the State of Oklahoma, by and through its legislature and judiciary, has final policymaking authority over their challenged conduct. Through these dual assertions, the Tulsa County Defendants seek to shift wholesale responsibility to others for every policy affecting unlawful debt-collection in Tulsa County. Their arguments are unavailing.[4]

Municipal liability under § 1983 attaches where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Brammer-Hoelter v. Twin*

---

[3] Count 6 is asserted only against the Tulsa Sheriff in his official capacity.

[4] The Tulsa County Defendants also argue that Plaintiffs have not shown that they acted with "deliberate indifference"—a requirement they claim Plaintiffs must meet to establish municipal liability—because, they contend, the Tulsa County Defendants merely obeyed state laws which they faced criminal penalties for disobeying. *See* Doc. 399 at 9. As discussed *infra*, the Tulsa County Defendants were under no obligation to enter into the impermissible contract with Aberdeen, to participate in a sham legal process generating unconstitutional debt-collection arrest warrants, to arrest indigent debtors on those warrants, nor to then jail the indigent debtors who could not afford to pay for their release. The Tulsa County Defendants took these discretionary actions with *full knowledge* of Aberdeen's impermissible financial bias, Aberdeen's onerous debt-collection practices, and the illegality of the warrant process and therefore of the warrants themselves. This is sufficient to surpass the deliberate indifference standard. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 771 (10th Cir. 2013) (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).

BRIEF M

*Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)); *see also Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978). Such liability "may be based on a formal regulation or policy statement, or it may be based on an informal 'custom' so long as this custom amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Brammer-Hoelter*, 602 F.3d at 1189 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Whether a policy is carried out on behalf of the state or on behalf of a county or other political subdivision is a question of state law. *See McMillian v. Monroe County*, 520 U.S. 781, 787 (1997). Such law includes not only "state and local positive law," but also "custom or usage having the force of law." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal quotation marks omitted), *superseded by statute on other grounds*, 42 U.S.C. § 1981(c).

The policies and practices that Plaintiffs challenge in this lawsuit are county practices because the Tulsa Clerk, Cost Administrator, and Sheriff are final municipal policymakers with respect to the challenged policies and practices. As a matter of widespread practice, the Tulsa Clerk and Cost Administrator establish county policy regarding which cases to refer to Aberdeen, and when and on what matters to seek warrants for nonpayment of court debt. Similarly, the Tulsa Sheriff acts as a county official with final policymaking authority in contracting with Aberdeen, executing warrants, and detaining people pursuant to those warrants. These discretionary actions are not mandated by state law; rather, the Tulsa County Defendants have established them as custom at a county level. Plaintiffs will address each county policy in turn.

BRIEF M

**A.      The Tulsa Clerk and Cost Administrator Have Final Policymaking Authority with Respect to Referring Cases to Aberdeen and Seeking Unlawful Warrants.**

Plaintiffs have alleged that the Tulsa Clerk and Cost Administrator have established unlawful practices that are attributable to Tulsa County, not the Oklahoma courts. These practices include "seeking debt-collection arrest warrants" "without inquiring into the debtor's ability to pay, without notice, and without sworn statements sufficient to justify arrest"; "choos[ing] which individual cases to transfer to Aberdeen, Inc. for collection"; "transferring cases without conducting an inquiry into the debtor's ability to pay"; and "assist[ing] Aberdeen, Inc. with seeking arrest warrants at Aberdeen, Inc.'s request." SAC ¶ 35; *accord id.* ¶ 36.

The Tulsa County Sheriff decided to engage Aberdeen as an exercise of his policymaking authority. *See infra* Section I.B.1. The contract with Aberdeen, in turn, vests the Clerk and Sheriff with the "sole discretion" to choose which cases to refer to Aberdeen. SAC Ex. A, Doc. 212-1, at 4. The Tulsa Clerk, with the assistance of the Tulsa Cost Administrator, exercises the authority to "choose[]" which cases to refer to Aberdeen. SAC ¶¶ 35-36; *id.* ¶ 125 ("If no payments have been made within 30 days after the issuance of a debt-collection arrest warrant, *the Clerk and Cost Administrator* exercise their discretion under the Agreement to transfer the case to Aberdeen, Inc." (emphasis added)). Once a case is referred, the Clerk and Cost Administrator have established a practice of seeking warrants on Aberdeen's behalf. *Id.* ¶¶ 35-36. Contrary to the County's argument (Doc. 399 at 11-15), this is not an area in which the Clerk and Cost Administrator are subject to the supervision of Oklahoma judges. As explained *infra* in Section I.B.1, it was the Tulsa Sheriff, not the courts, who decided to engage Aberdeen. The Clerk's and Cost Administrator's settled roles in facilitating Aberdeen's work stems from that decision, which is squarely within the province of a county policymaker. Therefore, the custom and usage under which the Clerk and Cost Administrator refer cases and assist Aberdeen is a county policy. *Cf. Jett*, 491 U.S. at 737.

8

BRIEF M

Further, the Tulsa Clerk and Cost Administrator's policy of seeking debt collection arrest warrants for indigent debtors and, in so doing, withholding information about their indigency from the courts, cannot plausibly be attributed to the courts themselves. When these county officials seek debt-collection arrest warrants, they provide no information to the court about the debtor's ability to pay, "*even when the debtor ha[s] informed the Cost Administrator that the debtor is unable to pay*." SAC ¶ 120 (emphasis added). The courts are obviously not responsible for the Clerk and Cost Administrator's policy of withholding relevant information from the courts in their warrant applications. Because the Tulsa Clerk and Cost Administrator have final decision-making authority over these processes—referral and warrant requests—as a matter of custom or usage, they are liable for their "deliberate choice[s] to follow a course of action" that "is made from among various alternatives by the official or officials responsible." *Pembaur*, 475 U.S. at 483.

None of the sources of law to which the Tulsa County Defendants point are to the contrary. Rules 8.1 through 8.7 of the Oklahoma Court of Criminal Appeals (cited Doc. 399 at 12) outline the process that judicial officials must follow before imposing fines and fees or jailing debtors for nonpayment, but they do not speak to the specific conduct by the Clerk and Cost Administrator challenged here: seeking warrants for nonpayment and referring cases to Aberdeen. Okla. Stat. tit. 28, § 151(A) (cited Doc. 399 at 15) establishes a clerk's authority to collect court debt, but does not speak to the *methods* by which the Clerk may (or may not) do so. And Okla. Stat. tit. 22, §§ 454–458, *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1189-90 (10th Cir. 2003), and *Ray v. Judicial Corrections Services, Inc.*, No. 12-CV-02819, 2017 WL 660842, at *4 (N.D. Ala. Feb. 17, 2017) (cited Doc. 399 at 12-14), speak to a judge's authority to *issue* warrants, but not to the process by which the Clerk and Cost Administrator *seek* such warrants.

9

BRIEF M

Citing *Cain v. City of New Orleans*, No. 15-CV-4479, 2017 WL 467685 (E.D. La. Feb. 3, 2017), Defendants attempt to elide the distinction between "issuing" and "seeking" warrants. Doc. 399 at 13-14. But in *Cain*, the defendant-official merely "applie[d] a formula for issuing warrants *set by judges*" and "[did] *not* ask for issuance of a warrant based on his own investigation." 2017 WL 467685, at *6 (emphasis added). Here, by contrast, Plaintiffs have alleged the Clerk and Cost Administrator do conduct their own investigation before seeking a warrant, SAC ¶ 9, and personally "maintain[] a policy and practice of setting initial payment plans . . . that require individuals owing court debt to pay a minimum amount of $25 per month," *id.* ¶¶ 35-36. That is, as a matter of custom, the Clerk and Cost Administrator decide when to seek a warrant or help Aberdeen do the same.

Tulsa County's reliance on *North Side State Bank v. Board of County Commissioners*, 894 P.2d 1046 (Okla. 1994), is similarly misplaced. Doc. 399 at 3. Although the County is correct that *North Side* posited that court clerks are sometimes subject to the "*summary control*" of judges, that is only when clerks are engaged in "*ministerial* court functions." 894 P.2d at 1051. Here, Plaintiffs have alleged (consistent with the text of the contract with Aberdeen) that the Clerk and Cost Administrator exercise discretion when referring cases to Aberdeen. SAC ¶¶ 35-36; *cf. Petuskey v. Cannon*, 742 P.2d 1117, 1121 (Okla. 1987) ("[T]he District Court Clerk is 'judicial personnel' . . . whose duties are ministerial, except for those discretionary duties provided by statute.").[5] *North Side* did not discuss discretionary clerk functions. It also addressed only a court clerk's handling of *state funds*. 894 P.2d at 1052. Here, by contrast, the 30-percent penalty that Aberdeen collects

---

[5] The Tulsa County Defendants accuse Plaintiffs of "frequently, and randomly, us[ing] the word 'discretion.'" Doc. 399 at 11. But Plaintiffs' invocation of the County Defendants' "discretion" is not arbitrary; it is a direct quotation of the contract establishing the County's relationship with Aberdeen, *i.e.*, the very heart of this lawsuit. *See* SAC Ex. A at 4.

BRIEF M

results from a contract with a county official (the Tulsa Sheriff, via the OSA). Indeed, no part of the 30-percent penalty is retained by the state courts; it is shared by Aberdeen and the OSA. *See* Okla. Stat. tit. 19, § 514.5(B) (eff. Nov. 1, 2010). These funds are therefore more akin to the county funds that, as *North Side* explained, the Clerk handles as an elected executive county official. 894 P.2d at 1052.

That the Chief Justice of the Oklahoma Supreme Court directed district courts in broad terms to participate in the misdemeanor or failure-to-pay warrant collection program also does not undermine the Clerk and Cost Administrator's final policymaking authority. Doc. 399 at 14. Nothing in that order instructs the Clerk and Cost Administrator on when or how to refer individual cases to Aberdeen. That authority comes from the contract in the first instance and has taken hold through settled custom and usage whereby the Clerk and Cost Administrator, not judges, decide when to engage Aberdeen in any given case.

Finally, any suggestion (*id.* at 15) that the Clerk is compelled by law to simply transmit Aberdeen's patently unlawful warrant requests to a judge is contradicted by Oklahoma law. The Clerk may "refuse to file any document presented for filing if the clerk believes that the document constitutes sham legal process as defined by [Okla. Stat. tit. 21, § 1533]." Okla. Stat. tit. 12, § 29. Sham legal process is broadly defined and includes the "issuance, display, delivery, distribution, reliance on as lawful authority, or other use of an instrument that is not lawfully issued . . . and [that] purports to" "assert jurisdiction or authority over" the rights or privileges of any person or property. Okla. Stat. tit. 21, § 1533(H)(1). "Lawfully issued," in turn, is defined to mean "in accordance with the applicable statutes, rules, regulations, and ordinances of the United States, a state, or a political subdivision of a state." *Id.* § 1533(H)(2). In this case, Aberdeen's requests for arrest warrants not processes "lawfully issued"—this is particularly evident in that Aberdeen's

BRIEF M

warrant applications lack oath or affirmation or any hint of a basis for probable cause, SAC ¶ 63—and the Clerk is not obligated to process them.

State law does not obligate the Tulsa County Clerk and Cost Administrator to act as they do in seeking warrants for nonpayment or referring cases to Aberdeen. As a matter of custom and usage, they have final policymaking authority for Tulsa County on these matters.

**B.      The Tulsa Sheriff Has Policymaking Authority with Respect to Engaging Aberdeen, Executing Warrants, and Detaining People Pursuant to Them.**

1.      Contracting with and Assisting Aberdeen

As in their prior motion to dismiss, the Tulsa County Defendants do not address Count 6 of the Second Amended Complaint, which seeks to hold the Tulsa Sheriff liable for his role in contracting with Aberdeen and the attendant violations of Plaintiffs' due process right to a neutral law enforcement actor. *See* SAC ¶¶ 354-59; Doc. 238 at 18 (characterizing challenged practices of the Sheriff in prior motion to dismiss as merely executing failure-to-pay warrants and detaining those arrested); Doc. 399 at 16 (same in renewed motion to dismiss); *see also* Doc. 279 at 5-6 (Plaintiffs' prior brief in opposition highlighting same failure). Any argument that the Sheriff is not liable remains forfeited. *See* Fed. R. Civ. P. 12(g)(2) (forbidding a party from including an argument in a subsequent motion to dismiss that "was available to the party but omitted from its earlier motion").

In any event, to the extent the Tulsa County Defendants have suggested in passing, *see* Doc. 399 at 5 & n.8, that the Sheriff acts for the State rather than the County by contracting with Aberdeen, that argument fails. Oklahoma law confirms that the decision to hire Aberdeen falls within the scope of the Tulsa Sheriff's final policymaking authority over "law enforcement activities" in his county. *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1319 (10th Cir. 1998). The law under which each Defendant Sheriff contracted with Aberdeen provides that

BRIEF M

"the county sheriffs" "*may*" contract with a private debt collector "to attempt to *locate and notify persons* of their outstanding misdemeanor or failure-to-pay warrants." *See* Okla. Stat. tit. 19, § 514.4(A) (eff. Nov. 1, 2010) (emphases added).[6] The Tulsa Sheriff had authority to decide whether to enter into the contract himself or to designate OSA as his agent to do so. *Id.* § 514.4(E). Indeed, the description of that legislation was "[a]n Act relating *to counties and county officers . . . which relate to outstanding warrants . . . .*" 2010 Okla. Sess. Law Serv. Ch. 87 (H.B. 3242) (West) (emphasis added). When the Tulsa Sheriff exercised his authority under these statutory provisions to hire Aberdeen (via OSA) and then to reauthorize the contract, year after year, he did so as final policymaker for Tulsa County. That the policy is established at a county level is perhaps best illustrated by the fact that Sheriffs in other Oklahoma counties chose not to contract with Aberdeen.

Moreover, under the terms of the contract that he authorized as county policymaker, the Tulsa Sheriff assists Aberdeen in its collection activities. *See* SAC ¶ 283 (requiring sheriffs to "provide debtor information" and granting sheriffs and court clerks "sole discretion" to choose which cases to transfer to Aberdeen). Any assistance provided to the company is attributable to the contract authorized by the Tulsa Sheriff, on behalf of the County. As such, Tulsa County, by and through its officials, is liable for the conduct alleged in Count 6, as well as Count 7, which also stems primarily from the Tulsa Sheriff's decision to contract with and assist Aberdeen, enabling its onerous enforcement methods in violation of equal protection.

2.    Executing Warrants Known to Be Unlawful

Oklahoma sheriffs are final policymakers concerning law enforcement activities in their counties. *See Hollingsworth v. Hill*, 110 F.3d 733, 743 (10th Cir. 1997). More specifically, sheriffs

---

[6] As mentioned *supra* in note 2, Plaintiffs have attached a copy of § 514.4 as it existed at the time this suit was filed. *See* Br. A, Ex. 1. The 2018 and 2023 revisions maintain county sheriffs' final policymaking authority, but now provide only the option to contract with OSA as a go-between instead of directly with a debt collector.

BRIEF M

are "vested with the final policymaking authority" over "the service and execution of orders issued by Oklahoma courts." *Id.* (citing Okla. stat. tit. 19, §§ 514, 516, 547(A)).

As such, the Tulsa Sheriff is the final policymaker with respect to the decision to execute the debt-collection arrest warrants in this case. As the complaint alleges, "courts routinely issue" the nonpayment arrest warrants Aberdeen requests, "even though the warrants are predicated on nothing more than Aberdeen's unsworn factual allegation that a debtor has not made payments." SAC ¶¶ 64, 92. Defendant Sheriffs thereafter "execute the illegal arrest warrants and detain debtors based solely on the unsworn allegations of nonpayment." *Id.* ¶ 65.

Critically, Plaintiffs allege that Defendant Sheriffs do this with full knowledge of Aberdeen's unlawful collection practices and the unconstitutionality of the warrants. *Id.* ¶¶ 65, 81. Longstanding Supreme Court precedent establishes that officers may be held liable for enforcing warrants when they lack a reasonable belief the warrants are lawful. *See generally United States v. Leon*, 468 U.S. 897, 923 (1984); *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986).[7] This aligns with state law, which requires Sheriffs to exercise warrants only "according to law." Okla. Stat. tit. 19, § 514. Plaintiffs' allegations as to the Sheriff's knowledge are far from "conclusory." Doc. 399 at 16 n.14. Plaintiffs allege that magistrates have abandoned their judicial role by rubber-stamping warrants at Aberdeen's request, and that the warrants themselves lack any indicia of probable cause whatsoever. No reasonable officer could rely on warrants like one whose sole basis was "DID NOT PAY ABERDEEN." SAC ¶ 207. The Tulsa Sheriff is fully aware of these deficiencies. He cannot ignore that knowledge any more than he could if he himself put false or misleading information into the warrant application. *See Juriss v. McGowan*, 957 F.2d 345, 350-

---

[7] Functionally, this is no different than a warrantless arrest, and a sheriff, of course, does not act as an arm of the state courts in carrying out such arrests.

BRIEF M

51 (7th Cir. 1992); *cf. Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (noting that "the fact that a neutral magistrate has issued a warrant" authorizing the allegedly unconstitutional search or seizure "does not end the inquiry into objective reasonableness"). Indeed, the Tulsa Sheriff himself plays a role in procuring the unlawful warrants. SAC ¶¶ 60, 282-84. The law does not permit him to play an active role in procuring invalid warrants, then claim to be unaware of their invalidity. *See Turney v. O'Toole*, 898 F.2d 1470, 1473 n.3 (10th Cir. 1990).

Tulsa County's reliance on a ruling from this District regarding bail in Tulsa County—attached as Exhibit 1 to their renewed motion to dismiss—is misplaced because it fails to recognize this longstanding principle. *See* Doc. 399 at 7 (discussing Doc. 399-1, Order, *Feltz v. Bd. of Cnty. Comm'rs*, No. 18-CV-0298 (N.D. Okla. Sept. 29, 2021)). There is simply no duty for sheriffs to enforce court orders they *know* to be deficient, even if issued by a lawful authority.[8] For example, in *Burns v. State*, 220 P.2d 473 (Okla. Crim. App. 1950), the Criminal Court of Appeals of Oklahoma found that a warrant issued by a judge was nonetheless invalid because the person who verified the affidavit did so "in no official capacity," creating a risk of false statements. *Id.* at 475-76.

The Tulsa Sheriff cannot plausibly claim that the mere existence of warrants he knows to be illegal and invalid render him wholly without discretion. The decision to enforce unconstitutional warrants accordingly fell within the Tulsa County Sheriff's discretion, was not

---

[8] Nor could the Tulsa County Defendants be prosecuted for noncompliance with an unconstitutional state court order. *Cf. Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 906 & n.19 (10th Cir. 2017). Indeed, the Sheriff could himself bring an action under *Ex parte Young* to prevent any state prosecution for disobeying Defendant Judges in compliance with this Court's injunction. *See* 209 U.S. 123, 155-56 (1908) (holding that "officers of the state . . . who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce . . . an unconstitutional act, . . . may be enjoined by a Federal court").

BRIEF M

mandated—or even permitted—by law, and is the moving force behind the constitutional harms Plaintiffs suffered.

3.      Detaining Debtors Who Cannot Afford to Pay for Their Release

The Tulsa Sheriff likewise bears final policymaking authority for detaining debtors after they are arrested. As noted, the Sheriff is the final policymaker with respect to the jail where the Sheriff holds individuals, such as Plaintiff Melanie Holmes, arrested on debt-collection warrants. *See Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999); *McNeil v. Cmty. Prob. Servs., LLC*, No. 18-CV-0033, 2019 WL 633012, at *15 (M.D. Tenn. Feb. 14, 2019) ("The custom or policy Plaintiffs challenge . . . is the practice of the Sheriff in *detaining* misdemeanor probation arrestees who cannot satisfy the secured bail amount written on the arrest warrant. As the official in charge of the operation of the county jail, the Sheriff effectuates the detention of these indigent misdemeanor probation arrestees."), *aff'd*, 945 F.3d 991 (6th Cir. 2019). Further, the arrestees end up in that jail only because of practices (just described) that fall within the policymaking authority of the Tulsa Sheriff. Tulsa County's requirement that there be a $250 payment by someone arrested on a warrant for nonpayment on takes hold only *after* material information about inability to pay has been omitted in a County official's request to the judge for an arrest warrant. The arrest warrant, too, is not lawful, and for the reasons already stated, the Sheriff is not obligated to execute it.

*             *             *

In their final parry, the Tulsa County Defendants protest that "a county officer's decision to follow state law and state judicial orders does not support municipal liability under 42 U.S.C. § 1983." Doc. 399 at 18 (citing cases). But as outlined above, neither state law nor state judicial orders *require* the Tulsa County Defendants to act as they did. In fact, after this lawsuit was filed, Tulsa County ceased using Aberdeen to collect debts. *See* Doc. 342. No one contests that, under

16

BRIEF M

state law, Tulsa County Defendants are not permitted to make this change—because they are, ultimately, empowered as a matter of law and custom to make such decisions for Tulsa County.

## II.   Tulsa County Is Not Entitled to Eleventh Amendment Immunity.

The Tulsa County Defendants argue that they should enjoy Eleventh Amendment immunity from damages because they "'act as an arm of the state' when enforcing court orders." Doc. 399 at 20 (quoting *Scott v. O'Grady*, 975 F.2d 366, 371 (7th Cir. 1992)). As applied to the County itself (to which county officials sued in their official capacities are legally equivalent), this argument is facially incorrect. *See Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401 (1979) (counties do not enjoy Eleventh Amendment immunity "even though [they] exercise a 'slice of state power'"); *see also Couser v. Gay*, 959 F.3d 1018, 1023 (10th Cir. 2020) (because counties do not receive Eleventh Amendment immunity, neither do county officers sued in their official capacities for damages). Accordingly, courts do not apply the "real, substantial party in interest" test invoked by Tulsa County, Doc. 399 at 22, "to find that a municipality itself had immunity." *See Webb v. City of Maplewood*, 889 F.3d 483, 486 (8th Cir. 2018).

The County's argument may be that, insofar as the District Court of Tulsa County is an arm of the state, the County Sheriff and Clerk act for the state when they execute District Court orders. But these officials do not simply "execute" judges' orders. The Sheriff plays a role in wrongfully procuring warrants by deciding which cases to transfer to Aberdeen and providing debtor information to Aberdeen. SAC ¶¶ 282-84. The execution of those warrants flows from his wrongful conduct as a county law enforcement official, not as a state actor. *See supra* Section I.B. Nor do Plaintiffs fault the Clerk and Cost Administrator for simply executing court orders; these officials set minimum payment amounts without regard for inability to pay, transfer cases to

BRIEF M

Aberdeen without due process or regard for inability to pay, and seek warrants omitting crucial information. SAC ¶¶ 35-36. Again, in so doing, they act for Tulsa County. *See supra* Section I.A.

The state statutes cited by the County, Doc. 399 at 21, do not change this. The cited statutes simply require County Sheriffs to "execute" warrants "according to law," Okla. Stat. tit. 19, § 514, and penalize their refusal to do so, Okla. Stat. tit. 21, § 533; Okla. Stat. tit. 57, § 55. But warrants sought, issued, and executed in violation of the federal constitution—as Plaintiffs allege the failure-to-pay warrants at issue here are—are plainly not executed "according to law." And the cited statutes do not purport to instruct county officials regarding when to *seek* warrants (for outstanding court debt or otherwise), in what manner to execute outstanding warrants, or whether to engage a private collection company. As such, the statutes do not apply to most of the challenged County conduct. In any case, the federal Constitution "is the supreme law of the land." *Smith v. O'Grady*, 312 U.S. 329, 331 (1941). When a municipal official is "faced with complying with either" state law or the Constitution," "the choice should be simple." *Strawser v. Strange*, 105 F. Supp. 3d 1323, 1329 (S.D. Ala. 2015).

The County's numerous citations to the Seventh Circuit's decision in *Scott* are unavailing because, as *Scott* itself notes, whether a Sheriff acts for a county or a state "depends, at least in part, on state law." 975 F.2d at 370. The Illinois laws at issue in *Scott* differ meaningfully from the Oklahoma laws at issue here. Oklahoma law lets each County's Sheriff decide which (if any) private debt collector to contract with, how to prioritize executing failure-to-pay warrants among many other law enforcement responsibilities, what process to employ in executing such warrants, and how to manage the County jail, where indigent persons arrested on such warrants are detained. *See supra* Section I.B; *Reid v. Hamby*, 124 F.3d 217, 1997 WL 537909, at *5 n.1 (10th Cir. 1997) (unpublished) ("[A]n Oklahoma sheriff is the policymaker *for his county* for law enforcement

BRIEF M

purposes." (emphasis added)). Nothing in Oklahoma law commands Clerks or Cost Administrators to refer individual cases to Aberdeen or seek failure-to-pay warrants in any particular case across all counties; rather, these officials exercise discretion in deciding how to collect court debts within their jurisdiction. *See supra* Section I.A. Many counties' sheriffs have chosen not to work with Aberdeen at all.

Finally, even if the Court finds that these officials should receive Eleventh Amendment immunity from damages, that finding would not disturb Plaintiffs' claims for prospective relief. *See Green v. Mansour*, 474 U.S. 64, 68 (1985). The law is clear: whether or not the County can be made to compensate Plaintiffs for past harm, this Court has the power to stop them from committing further constitutional violations.

### III. Tulsa County Cost Administrator Darlene Bailey Is a Properly Named Defendant.

Defendants argue that Darlene Bailey, the Tulsa Cost Administrator, should be dismissed because she is not a "policymaker" and thus no "official capacity" suit is available against her. *See* Doc. 399 at 22. This contention disregards the allegations in the Second Amended Complaint, which state that the Cost Administrator is responsible for multiple Tulsa County policies including collecting court debts, setting initial payment plans, seeking debt-collection arrest warrants, transferring cases to Aberdeen, and assessing a 30-percent penalty surcharge. *See* SAC ¶ 36. As argued *supra* in Section I.A, these allegations establish that the Cost Administrator is a final policymaker for Tulsa County.

But even assuming that the Cost Administrator is not a "policymaker," she is a proper defendant in this action. A suit against a defendant in her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n.55. A municipal entity, in turn, may be held liable for the misconduct of such

BRIEF M

agents when they act pursuant to a municipal policy, regardless of whether the agent is a "policymaker." *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1284 (10th Cir. 2007) ("[A]ctions taken by employees in compliance with official policy or custom are one way to establish liability on the part of a municipality."); *see also Brashear v. Tulsa Cnty. Bd. of Cnty. Comm'rs*, No. 15-CV-0473, 2016 WL 633374, at *4 (N.D. Okla. Feb. 17, 2016) (describing official-capacity claims against two deputies as an "action[] against Tulsa County").[9] Thus, even if the Cost Administrator is subordinate to the Court Clerk as Defendants argue, actions that she takes in compliance with the official policy established by the Clerk (*see supra* Section I.A) establish liability on the part of the municipality.

Moreover, the Tulsa County Defendants' arguments must be viewed alongside the claim, made by the Cost Administrator in her individual capacity, that injunctive relief is never available against a government official in her individual capacity. Doc. 410 at 19-20. The upshot of the Cost Administrator's two positions, taken together, is that even if she is continuing to cause constitutional harms, she cannot be enjoined in either her individual or official capacity, *i.e.*, she is free to continue her unconstitutional conduct. Both of the Cost Administrator's contentions are wrong, but at a minimum, they cannot both be correct: holding otherwise would create a significant gap in § 1983's coverage, contrary to § 1983's text and remedial purpose.[10] This Court is not powerless to stop her.

---

[9] Although the court in *Brashear* ultimately dismissed the claims against the deputies in their official capacities as duplicative of the claims against the county, in this case, Defendants seek dismissal of not only the claims against the cost administrator in her official capacity but also the claims against the Board. *See* Doc. 399 at 22-23.

[10] To take a separate example, the Cost Administrator's argument would mean that a deputy clerk who refuses to issue marriage licenses to same-sex couples because of her personal beliefs could not be enjoined because (1) as a deputy, she is not a policymaker and (2) courts can never enjoin officials in their individual capacities.

BRIEF M

## IV.    The Board of County Commissioners of Tulsa County Is a Properly Named Defendant.

Defendants also argue that Plaintiffs have failed to state a claim against the Tulsa Board of

County Commissioners because the Board does not control the conduct of the Sheriff and Court

Clerks. Doc. 399 at 23. It is unclear whether Defendants' argument in this regard is a reprise of

their municipal liability argument, *see id.* (concluding by noting that municipal liability cannot be

premised on either respondeat superior or vicarious liability), which Plaintiffs have already

addressed above, or is instead the same argument made by the Rogers County Defendants (Doc.

406 at 12) that the Board itself is an improper party to this lawsuit. To the extent the Tulsa County

Defendants intend to raise the latter argument, Plaintiffs explain why this argument is incorrect in

their opposition to the Rogers County Defendants' motion to dismiss in their official capacity. *See*

Br. B, Section II. In short, because the policies challenged here are county policies, *see supra*

Section I; *see also* SAC ¶¶ 31, 35-36—and because a county can be sued "in the name of its board

of county commissioners"—the Board is a "proper party" here. *See duBois v. Bd. of Cnty. Comm'rs*

*of Mayes Cnty.*, No. 12-CV-0677, 2014 WL 4810332, at *7-8 (N.D. Okla. Sept. 29, 2014).[11]

## V.    Plaintiffs' Claims for Injunctive Relief Are Not Moot.

Tulsa County briefly makes a cursory argument that forthcoming amendments to Okla.

Stat. tit. 22, § 983 ("Section 983") moot Plaintiffs' claims for injunctive relief.[12] Doc. 399 at 24.

---

[11] If the Tulsa County Defendants ultimately take the position that Plaintiffs' claims against the Board should simply be dismissed as duplicative of the claims against the named individuals in their official capacities, *see* Doc. 283 at 10 (acknowledging, in reply in support of prior motion to dismiss, that "Plaintiffs' suit against Vic Regalado, in his official capacity as Sheriff, *is* a suit against Tulsa County"), Plaintiffs urge the Court to reject their argument for the same reasons stated in Plaintiffs' opposition to the Rogers County Defendants' renewed motion to dismiss. *See* Br. B, Section II.

[12] "[U]nlike claims for declaratory or injunctive relief, claims for damages are not mooted by subsequent events." *Bishop v. United States ex rel. Holder*, 962 F. Supp. 2d 1252, 1271 (N.D. Okla. 2014) (Kern, J.). Plaintiffs bring six claims against Tulsa County (Counts 2, 3, 4, 5, 6 & 7).

BRIEF M

As an initial matter, the revised version of Section 983 is not set to take effect until November 1, 2023, and Tulsa County does not explain how a change that appears likely to occur in the future, but has not yet occurred, would affect claims that are live today. *See, e.g.*, *Brinkman v. Hobble Creek Half-Marathon*, No. 05-CV-0009, 2005 WL 8175141, at *1 (D. Utah Oct. 4, 2005) ("A mere promise to behave in a certain way at a future time does not moot a controversy."). In any event, the forthcoming revisions would not moot any of Plaintiffs' claims.

Declining to make a mootness argument of their own, the Tulsa County Defendants instead adopt the arguments of the Defendant Judges. Doc. 399 at 24. Accordingly, Plaintiffs incorporate their response to the Defendant Judges' renewed motion to dismiss. *See* Br. H, Section III. In brief, this case is not moot because Plaintiffs challenge *practices*, not any statute or rule. *See*, *e.g.*, SAC pp. 98-100; *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 517 (10th Cir. 2023) ("[E]very one of the ten claims set out in the [SAC] challenges debt-collection practices commenced after Plaintiffs are convicted and sentenced . . . ."). To that end, Plaintiffs have consistently alleged that Tulsa County's practices did not comply with the statute that was in place at the time this lawsuit was filed. Until the most recent amendments take effect on November 1, 2023, state law is clear: a court debtor can be imprisoned for nonpayment only if "the trial court finds after notice and hearing that the defendant is financially able but refuses or neglects to pay." Okla. Stat. tit. 22, § 983(A) (eff. Nov. 1, 2018);[13] *see also* SAC ¶¶ 43-46 (noting that "Oklahoma's statutory scheme provides protections" intended to ensure constitutional requirements are followed, but alleging that

---

Each seeks damages and injunctive relief. Even if Tulsa County was correct that Plaintiffs' injunctive claims were moot, the damages portion of the complaint would not be disturbed.

[13] Plaintiffs have attached a copy of Section 983 that will remain in effect until November 1, 2023, as an exhibit to their first brief in opposition. *See* Br. A, Ex. 2. Although this version of the law went into effect after Plaintiffs filed this lawsuit, the prior version was identical in all relevant respects. *See* 2018 Okla. Sess. Law Serv. Ch. 128 (S.B. 689) (West).

BRIEF M

"[t]he collapse of these protections" has led to the challenged practices). Pursuant to the allegations, Tulsa County as well as other Defendants "routinely ignore constitutional *and statutory* requirements in a concerted effort to extract as much money as possible from indigent people." SAC ¶ 49 (emphasis added). For example, Tulsa County officials are alleged to seek arrest warrants "without any inquiry into ability to pay and often in the face of evidence . . . that the debtor lacks the ability to pay." *Id.* ¶ 123. Arrested debtors are then held in jail unless they pay a fixed amount of money determined by the Tulsa Sheriff. *Id.* ¶ 128. These activities, among others practiced by Tulsa County, have never been authorized by any version of Section 983. Other sources of liability, including Tulsa County's use of Aberdeen (the subject of Count 7), remain authorized by the amended statute.

Moreover, even if evidence showed Tulsa County had changed its practices in response to the law, under the voluntary-cessation doctrine a defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Defendants cannot meet that burden because they continue to "vigorously defend[] the constitutionality" of the challenged practices, *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007). None of Plaintiffs' claims are moot.

## CONCLUSION

Plaintiffs have stated a claim for municipal liability against Tulsa County for its role in Defendants' unconstitutional debt-collection scheme. The County is not entitled to Eleventh Amendment immunity. The Cost Administrator and Board of Commissioners are properly named Defendants. And Plaintiffs' claims for injunctive relief are not moot. Accordingly, the Tulsa County Defendants' motion to dismiss should be denied in full.

23

BRIEF M

Dated: August 10, 2023

Respectfully submitted,

/s/ *Daniel E. Smolen*
Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Tel: 918-585-2667
Fax: 918-585-2669

/s/ *Ryan Downer*
Ryan Downer (admitted *pro hac vice*)
D.C. Bar No. 1013470
Katherine Hubbard (admitted *pro hac vice*)
D.C. Bar No. 1500503
Marco Lopez (admitted *pro hac vice*)
D.C. Bar No. 888324793
Leonard J. Laurenceau (admitted *pro hac vice*)
D.C. Bar No. 90007729
Ellora Thadaney Israni (admitted *pro hac vice*)
D.C. Bar No. 1740904
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Tel.: 202-844-4975
ryan@civilrightscorps.org
katherine@civilrightscorps.org
marco@civilrightscorps.org
leo@civilrightscorps.org
ellora@civilrightscorps.org

/s/ *Seth Wayne*
Seth Wayne (admitted *pro hac vice*)
D.C. Bar No. 888273445
Shelby Calambokidis (admitted *pro hac vice*)
D.C. Bar No. 1684804
Mary B. McCord (admitted *pro hac vice*)
D.C. Bar No. 427563
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
sw1098@georgetown.edu

24

BRIEF M

sc2053@georgetown.edu
mbm7@georgetown.edu

*Attorneys for the Plaintiffs*

BRIEF M

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of August, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

/s/ *Seth Wayne*

BRIEF M