IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

CARLY GRAFF, et al., on behalf of themselves and all other similarly situated, )
)
)
)
Plaintiffs, )
)
v. )   Case No. 17-cv-00606-TCK-JFJ
)
ABERDEEN ENTERPRIZES II, INC., et al., )
)
)
Defendants. )

**REPLY IN SUPPORT OF DEFENDANTS JIM SHOFNER AND ROB SHOFNER'S SECOND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

**Coffey, Senger & Woodard, PLLC**
John R. Woodard, III, OBA# 9853
Jennifer L. Struble, OBA #19949
4725 East 91st Street, Suite 100
Tulsa, OK 74137
P: 9189-292-8787
F: 918-292- 8788
john@cswlawgroup.com
jstruble@cswlawgroup.com
***Attorneys for Defendants Jim Shofner and Rob Shofner***

Defendants Jim D. Shofner and Rob Shofner submit the following Reply in support of their Motion [Doc. 403] requesting the Court to Dismiss Plaintiffs' Second Amended Complaint ("SAC") [Doc. 212]. In further support of their Motion, these Defendants state as follows:

### REPLY IN SUPPORT

Oklahoma Statutes permit Oklahoma county sheriffs to enter into a private contract for the establishment of an automated telephone system notifying persons of outstanding misdemeanor warrants and for payment of the same by "electronic means." 19 O.S. § 514.4.[1] Upon payment, the statute requires the court release the warrant. *Id.*, at § 514.4 (D). Defendant Aberdeen Enterprizes II, Inc. - of which the Shofners are officers - is one of the private vendors contracting in accordance with § 514.4 (A).[2] When a criminal sentence imposes fees, costs and/or fines, the **trial court** shall conduct a hearing **to determine the person's ability to pay the fees, costs and/or fines imposed**. *See* Rules 8.1 - 8.4, *Rules of the Court of Criminal Appeals*. If a person is found capable of paying the monetary component and fails to pay the same, the person may be imprisoned. Once a warrant[3] is issued for nonpayment, it may be referred to Aberdeen for collection attempts. Aberdeen locates and notifies persons of outstanding failure-to-pay warrants and accepts payment of the outstanding amounts and then remits the same to the court clerk. *See* SAC [Doc. 212], ¶ 5, p. 6. ***Aberdeen does not and, by law, cannot "seek," issue, execute or recall warrants.***

---

[1] In 2023 the Oklahoma Legislature passed revisions and additions to the statutes at 19 O.S. §§ 514.4 and 514.5. This was signed into law and will go into effect as of November 1, 2023. The new statutory language provides, in no uncertain terms, authorization for the courts to take the exact action under fire by Plaintiff's here.

[2] *See* Motion to Dismiss of Defendant P.D. Taylor [Doc. 215], p. 3 (noting Aberdeen "is but one" of "a number of private vendors").

[3] The warrants issued for failure to pay were arrest warrants issued as bench warrants meaning that they were issued from the bench by virtue of the authority of the judge and did not require any sworn oath or affirmation. As such Plaintiff's complaint that such an affirmation was lacking and any insinuation of wrongdoing arising from the lack of such lack of affirmation is without basis.

1

Plaintiffs' characterization of the reporting that a person has failed to make a payment as the "seeking" of an arrest warrant is wholly unsupported and misleading. Any alleged "threat" of arrest by Aberdeen personnel is, likewise, a mischaracterization as it remains a fact that, under Oklahoma law, the failure to pay the subject amounts <u>can</u> result in the person's arrest. Thus, this matter does not concern an alleged unlawful debt collection business by Aberdeen or *any* of the Defendants in this matter. Rather, this matter is merely a challenge to "imprisonment for debt" in relation to orders of the Oklahoma Supreme Court, statutory enactments by the Oklahoma Legislature and rules of the courts regarding outstanding fees and costs connected with criminal sentences.

## ARGUMENTS AND AUTHORITY

Rule 8.1 of the Rules of the Court of Criminal Appeals for Oklahoma requires that, when a judgment and sentence of a court imposes a fine and/or costs upon a defendant, "a judicial hearing shall be conducted, and judicial determination made as to the defendant's ability to immediately satisfy the fine and costs." If the defendant is able, but refuses to pay this "court debt," the defendant "may be immediately confined." Rule 8.2, Rules of the Oklahoma Court of Criminal Appeals. *See also* 22 O.S. § 983 (A). Rules 8.5 and 8.6 allow the defendant to appear and have the ***court determine whether a change in their physical or financial condition*** support being relieved of their "court debt." These rules, along with § 983, require a judicial determination that a defendant is financially able, but refuses, to pay "court debt" before being *imprisoned* for nonpayment. It is a function of the Court to determine the defendant's ability to pay.

Plaintiffs claim to be burdened with "court debt," but none claim they were not afforded this process by their respective sentencing court. Plaintiffs, similarly, do not contend that they were denied the opportunity to seek a determination as to a change in physical or financial condition

under the rules or other available procedure to modify their sentence. *See* 22 O.S. § 1080. Plaintiffs, nevertheless, claim they are "indigent debtors who cannot pay" their court debt and take issue with attempts to collect the same. *See* Second Amended Complaint [Doc. 212] ¶ 7.

Plaintiffs contend the Shofners, as officers of Aberdeen, directed and/or created policies/customs requiring employees to threaten them with arrest for failing to make payments and "seek" arrest warrants when they fail to make payments. Regardless as to the specific federal or state theory of liability proposed, the critical deficiency as to Plaintiffs' cause of action is that the issuance of an *arrest* warrant for failure to pay "court debt" is, in fact, a lawful repercussion. Aberdeen's purported involvement in any arrest warrant for failure to pay is not wrongful.

In *Bearden v. Georgia*, 461 U.S. 660 (1983), the United States Supreme Court examined when, in accordance with due process and equal protection principles, a person may be <u>*imprisoned*</u> for failing to pay "court debt." The Court, in sum, required that, before a person may be imprisoned, the "**<u>sentencing court</u>**" must inquire into the reasons for the defendant's failure to pay to distinguish those situations where a defendant has ability to pay but refuses from those involving a defendant who, through no fault of his own, is unable to pay. *See Bearden*, at 672-73. This process is set forth in the Oklahoma rules and statutory provision referenced above.

Plaintiffs have presented no allegation that the Shofners personally (or Aberdeen), or through some policy or custom, impeded their ability to secure a determination in accordance with *Bearden* and Oklahoma law. Indeed, Plaintiffs have alleged Aberdeen is not involved until *after* such sentencing process. *See* SAC, ¶¶ 7 and 9. *See also Ray v. Judicial Correction Servs., Inc.*, 270 F. Supp. 3d 1262, 1299 (N.D. Ala. 2017). Plaintiffs' attempt to challenge Aberdeen's involvement is premised upon Aberdeen "seeking" arrest warrants and not advising law enforcement and/or court personnel of their claimed indigent status. Information arguably

"supplied" by Aberdeen regarding a failure to pay is not challenged as false and would support sufficient probable cause for issuance of a warrant. *See Ray*, at 1306. Nevertheless, the focus remains on a determination of inability/failure to pay **before imprisonment, <u>not</u> before an arrest warrant may issue or be executed**.[4] Plaintiffs' mere placing of such allegations into pleading form does not automatically require protection in terms of the assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

## <u>Section 1983</u>

The Shofners' Motion presented argument and authority supporting that they cannot be deemed state actors for purposes of § 1983. As described in Aberdeen's reply (and incorporated by reference herein), none of the four tests available for determining state action apply in this matter. In their response to the Shofners' motion, Plaintiffs key in on the existence of the contract between Aberdeen and the Oklahoma Sheriffs Association ("OSA"). The mere existence of such contract is insufficient to confer state action for purposes of § 1983. *See Gallagher v. Neil Young Freedom Concert*, 49 F. 3d 1442, 1448 (10th Cir. 1995).

Plaintiffs represent that Aberdeen employees "have a special authority" to issue arrest warrants based upon a Tulsa County docket notation indicating "DO NOT ISSUE WARRANT UNLESS CONTACTED BY ABERDEEN." SAC [Doc. 212], ¶ 62. The implication is <u>not</u> that Aberdeen has some "special authority" to issue warrants, but merely that no warrant should issue unless advised of nonpayment by Aberdeen. Plaintiffs go on to allege that if payment is not made, Aberdeen "*contacts the court clerk* to seek an arrest warrant for nonpayment of court debts." *Id.*

---

[4] Plaintiffs fail to present any allegation that the Shofners personally participated in any constitutional violation beyond their mere capacities as officers of Aberdeen. Likewise, Plaintiffs failed to identify any exercise of control or direction or failure to supervise which can be attributed to any proposed constitutional violation.

4

Plaintiffs' interpretation is also contradicted by statements elsewhere claiming **judges** issue warrants and **sheriffs** execute them. *See id.*, ¶¶ 2 and 10. The agreement relied upon by Plaintiffs does not transfer warrant issuance and execution authority to Aberdeen. Rather, Aberdeen is simply a private company contracted to perform collection services which, may involve advising that a person has failed to make payment.

Even assuming, *arguendo*, the Shofners could be determined as acting under color of state law, Plaintiffs have failed to state a plausible claim for relief based upon any constitutional violation. Plaintiffs do not allege that Jim or Rob Shofner personally threatened them or personally "sought" an arrest warrant, but that they directed employees to do so and/or created policies/customs in such respects.[5] Plaintiffs, in other words, seek to hold the Shofners liable in more of a supervisory context. To support such liability, Plaintiffs must demonstrate the Shofners created, implemented or possessed responsibility for a policy that caused their alleged constitutional violation and the Shofners acted with the requisite state of mind to establish such constitutional violation. *See Dodds v. Richardson*, 614 F. 3d 1185, 1199 (10th Cir. 2010).

The defect with respect to all of Plaintiffs' proposed constitutional violations relates to the absence of an unconstitutional policy, custom or conduct on behalf of Aberdeen. If the policy is not constitutionally infirm, supervisory liability fails. *See Durkee v. Minor*, 841 F. 3d 872, 877 (10th Cir. 2016). It is not unconstitutional for a bench warrant to issue regarding nonpayment of "court debt." Whether a person's failure to pay is based upon inability or outright refusal is a ***judicial determination*** by law and wholly unconnected to any policy or conduct by Aberdeen.

---

[5] The Shofners incorporate the argument and authority presented in Aberdeen's separate motion to dismiss and reply regarding Plaintiffs' failure to state a claim with respect to any policy or custom for purposes of their proffered "official capacity" liability. *See Culbertson v. Fletcher Public School Dist.*, 2011 WL 3477112, *2 (W.D. Okla. August 9, 2011) ("official capacity" claims represent only another way of pleading against an entity and are redundant).

Nor have Plaintiffs identified any unconstitutional policy, custom or conduct by Aberdeen in respect to the claimed "seeking" of an arrest warrant. The information provided by Aberdeen relates to the mere fact of nonpayment - a factor expressed by the court in *Ray* as properly supporting probable cause for issuance of a warrant. Plaintiffs' charge that Aberdeen was required to provide law enforcement/court personnel with information as to their claimed indigency is untenable as such information is not "material" for purposes of Fourth Amendment protection. *See U.S. v. Kennedy*, 131 F. 3d 1371, 1377 (10th Cir. 1997). Whether Plaintiffs' nonpayment is attributable to inability or refusal remains a matter to be determined by the court.

Plaintiffs reject the Shofners' entitlement to any immunity for such alleged constitutional violations based upon the fact that they are private, for-profit contractors. The authority upon which Plaintiffs rely, however, is not so supportive. As addressed in the Shofners' motion, quasi-judicial immunity applies to those found sufficient state actors for purposes of § 1983 who perform purely ministerial acts of locating and attempting to collect orders issued from a court. Quasi-judicial immunity is available in the individual capacity context and, particularly, where private persons are claimed to have conspired with public officials who are entitled to judicial or quasi-judicial immunity. *See Ray,* at 1289-90; *Turner v. Am. Bar Ass'n*, 407 F. Supp. 451, 481 (N.D. Tex. 1975). *See also Mee v. Ortega*, 967 F. 2d 423, 426 (10th Cir. 1992) ("'[A] functional approach to immunity requires that those performing like functions receive like immunity.'").

The Shofners are entitled to qualified immunity. Plaintiffs' reliance upon *Richardson v. McKnight*, 521 U.S. 399 (1997), to refute such entitlement is misplaced. That Court refused to answer whether qualified immunity may be extended in contexts other than specifically addressed in that case. *Richardson*, at 413. *See also Filarsky v. Delia*, 566 U.S. 377, 393-94 (2012) (finding no reason *not* to extent qualified immunity to a private individual retained by the City). The

6

Shofners did not violate any clearly established law. Rather, under Oklahoma law, an arrest warrant may issue for a person's failure to pay "court debt." It is only in the context of the court sentencing *imprisonment* for such failure that the person's indigency becomes pertinent.

## CIVIL RICO

The Shofners have proposed Plaintiffs' civil RICO claims fail at every level. Plaintiffs' claims fail for lack of sufficient allegation to support the effect on interstate commerce. From their Response, it appears Plaintiffs believe the question with respect to interstate commerce is whether the factor may be established by only "minimal" effect as opposed to "substantial" effect. Plaintiffs' failure is in the lack of sufficient allegations to support ***any*** effect on interstate commerce. The allegations presented relate strictly to *intra*state persons, entities and court and government process. *See* SAC [Doc. 212], ¶¶ 18-39. It is impossible to reconcile Plaintiffs' concession as to the parties' geographical limitation in this matter with the claim that debt-collection efforts extend beyond such limitation.

Plaintiffs contend "arrest of a person known to be indigent and unable to pay is *not* a statutory repercussion for a person's nonpayment of court debt." Plaintiffs' Response [Doc. 419][6], p. 21. This misrepresentation illustrates the untenability of Plaintiffs' entire cause of action and is worth reemphasis. The Oklahoma Court of Criminal Appeals Rules and statutory authority in this context all concern ***imprisonment*** for nonpayment, <u>not</u> ***arrest***. In fact, the rule cited by Plaintiffs, Rule 8.5, expressly contemplates that failure to pay will result in the person having "to report back to the court." The United States Supreme Court in *Bearden* (relied upon by Plaintiffs for purposes of their hybrid Due Process/Equal Protection claim) explained as much. Poverty does not immunize a person from punishment. *Bearden*, at 669. The protection - and what separates

---

[6] In their Response to Shofner's Motion to Dismiss [Doc 420], Plaintiffs adopt their argument from their Response to Aberdeen's Motion to Dismiss. [Doc 419].

wrongful process from legitimate process - relates to a hearing prior to <u>imprisonment</u> to determine whether the defendant has willfully refused to pay or "could not pay despite sufficient bona fide efforts to acquire the resources to do so." *Id.*, at 672.

For all of Plaintiffs' charges of "extortion," this authority supports the absence of any element of unlawful activity. No matter the charged adjective applied by Plaintiffs to describe Aberdeen's collection efforts, the circumstances presented do not support a plausible claim for relief under RICO. Arrest for nonpayment of court-imposed fines, fees and costs remains a possibility under the law and Plaintiffs' claims regarding Aberdeen's efforts within the collection process cannot survive based solely upon Plaintiffs' characterization of the same as "unlawful."

Plaintiffs' attempt to place this matter within the context of 18 U.S.C. § 894 also fails. The "court debts" are not owed to Aberdeen, but to the counties in connection with Plaintiffs' sentences. Under no stretch of the imagination can this scenario qualify as an "extension of credit" by Aberdeen. Aberdeen is not attempting to negotiate satisfaction of a debt but assist in the collection of the "court debt" owed by Plaintiffs through payment plans. Aberdeen is not a "creditor" and its attempts do not otherwise qualify under § 894. *See United States v. Pacione*, 738 F. 2d 567, 572-73 (2nd Cir. 1984); *Oak Rubber Co. v. Bank One, N.A.*, 214 F. Supp. 2d 820, 828 (N.D. Ohio 2002). Any "repayment agreement" entered between Plaintiffs and Aberdeen continues to relate solely to amounts owed to the counties - amounts that, when collected, are transferred to the counties. *See* SAC, Exhibit "A" [Doc. 212-1], p. 5.

## STATE CLAIMS

Plaintiffs' state tort allegations fail to present the Court with any plausible right to relief. With respect to their abuse of process claim, Plaintiffs contend the Shofners engaged in improper use of court process through the extortionate use of warrants. The only connection to the warrant

process presented relates to Aberdeen advising as to nonpayment. Plaintiffs' interjection of a claimed requirement that Aberdeen also advise as to their assertion of indigency is unsupported.

It remains unclear as to how Aberdeen's performance of its collection services under the agreement and advising as to a person's failure to make payment constitute improper use for an ulterior or improper purpose. *See Martin Oil Corp. v. Barby Energy Corp.*, 2002 OK CIV APP 92, ¶ 11, 55 P. 3d 446, 449. It is not abuse of process if the subject process is being "used legitimately to its authorized conclusion." *Greenberg v. Wolfberg*, 1994 OK 147, 890 P. 2d 895, 905. The failure to pay the "court debt" at issue is, under Oklahoma law, a basis for the issuance of an arrest warrant. Again, a person's claimed inability to pay "court debt" does not immunize them from punishment for failure to pay or being summoned to court for a determination as to whether such failure was willful or excusable before imprisonment.

In support of their second state claim, "duress," Plaintiffs allege they entered into a repayment contract with Aberdeen out of fear of being arrested. As has been explained thoroughly, the possibility of arrest is a lawful scenario for the failure to pay "court debt." Again, Plaintiffs' representation that "state law only permits arrest for nonpayment found to be willful after an inquiry" is wholly incorrect. Plaintiffs' Response [Doc. 420], p. 23. The very statute cited by Plaintiffs for such provision explains that it is not *arrest* that is at issue for purposes of the indigency determination, but "imprisonment." *See*. 22 O.S. § 983 (A).

Aberdeen's involvement includes working with persons such as Plaintiffs to arrive at payment arrangements much more accessible than having to pay the total amount owed. The risk of arrest for nonpayment exists regardless of any payment arrangement secured through Aberdeen. The claimed "duress" from the possibility of arrest is inherent in the circumstances created by sentencing and not particular to Aberdeen's involvement. For example, many of the Plaintiffs have

9

described concern over arrest based upon failure to pay *even before their case was transferred to Aberdeen*. *See* SAC [Doc. 212], ¶¶ 158, 164 and 190.[7]

Plaintiffs finally suggest the Shofners have been unjustly enriched. The very essence of this claim is that a party has money which it should not be permitted to retain. Beyond the amount of "court debt" which has been imposed by Plaintiffs' respective sentencing courts (and to which they do not appear to challenge as not owing), the only other amount arguably implicated relates to the 30% representing the administrative cost **set forth by Oklahoma statute**. *See* 19 O.S. § 514.5 (A). Plaintiffs' acknowledge this basis but propose that the warrants referenced therein are not lawful. The lawfulness of the warrants has been addressed throughout this proceeding.

It is important to note that Plaintiffs have adequate remedies at law to resolve the alleged unjust enrichment. *See Harvell v. Goodyear Tire and Rubber Co.*, 2006 OK 24, ¶ 18, 164 P. 3d 1028, 1036. To the extent Plaintiffs believe the administrative fee is inequitable, they could challenge the subject statute as unconstitutional. To the extent Plaintiffs believe their financial circumstances dictate a legitimate inability to pay, they could employ the procedures set forth in the Rules of the Oklahoma Court of Criminal Appeals. To the extent Plaintiffs believe the amount imposed by their respective sentencing courts is unfair, they could commence procedure to seek review of their sentence such as set forth in 22 O.S. § 1080. None of which they have done.

As set forth herein, Plaintiffs' have wholly failed to state a plausible claim for relief against Jim Shofner and Rob Shofner pursuant to RICO, § 1983 and state law. Jim Shofner and Rob Shofner request the Court dismiss Plaintiffs' cause of action against them in its entirety.

---

[7] Moreover, not all of the Plaintiffs have alleged that a contract with Aberdeen actually exists beyond mere knowledge that their case has been transferred to Aberdeen and Aberdeen has since attempted to contact them. *See id.*, ¶¶ 159, 165, 178-180 and 184.

Respectfully submitted,

/s/ John R. Woodard, III
John R. Woodard, III, OBA No. 9853
Jennifer L. Struble, OBA No. 19949
Coffey Senger & Woodard, PLLC
4725 East 91st Street, Suite 100
Tulsa, OK 74137
918-292-8787
918-292-8788 – Fax
john@cswlawgroup.com
jstruble@cswlawgroup.com
*Attorneys for Defendants Jim D. Shofner and Rob Shofner*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of August, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | | |
|---|---|---|
| Robert Lamar Betts | Robert Dale James | Daniel E. Smolen |
| Robert Murray Blakemore | Jo Lynn Jeter | Donald Eugene Smolen, II |
| Kelsey Ann Chilcoat | Alexander Karakatsanis | Todd Michael Wagner |
| Isaac Robertson Ellis | April Danielle Kelso | Chris M. Warzecha |
| Aaron Etherington | Robert Steven Lafferrandre | Seth T Wayne |
| Melodie Freeman-Burney | Stefanie Erin Lawson | Jill Elizabeth Webb |
| Robert D Friedman | Thomas Adrian LeBlanc | Joel L. Wohlgemuth |
| Kimberly Majors Hall | Douglas N. Letter | Randall J. Wood |
| Rodney J Heggy | Mary B McCord | Maurice Glenn Woods, II |
| Jeffrey Calvin Hendrickson | Carri Ann Remillard | Katherine Hubbard |
| Elizabeth Rossi | Scott B. Wood | Douglas Allen Wilson |
| Emily Brooks Kosmider | | |

/s/ John R. Woodard, III
John R. Woodard, III