JLS

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CARLY GRAFF, et al., on behalf of themselves and all other similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 17-cv-00606-TCK-JFJ |
| ABERDEEN ENTERPRIZES II, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

---

## DEFENDANT ABERDEEN ENTERPRIZES' REPLY IN SUPPORT OF ITS SECOND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

---

**COFFEY SENGER & WOODARD, PLLC**
John R. Woodard, III, OBA No. 9853
Jennifer L. Struble, OBA No. 19949
4725 East 91st Street, Suite 100
Tulsa, OK 74137
918-292-8787
918-292-8788 – Fax
john@cswlawgroup.com
jstruble@cswlawgroup.com
*Attorneys for Defendant Aberdeen Enterprizes II, Inc., Jim D. Shofner, and Rob Shofner*

Defendant Aberdeen Enterprizes II, Inc. submits the following Reply in support of its Motion [Doc. 404] requesting the Court to Dismiss Plaintiffs' Second Amended Complaint ("SAC") [Doc. 212]. In further support of their Motion, this Defendant states as follows:

## REPLY IN SUPPORT

Oklahoma Statutes permit Oklahoma county sheriffs to enter into a private contract for the establishment of an automated telephone system notifying persons of outstanding misdemeanor warrants and for payment of the same by "electronic means." 19 O.S. § 514.4.[1] Upon payment, the statute requires the court release the warrant. *Id.*, at § 514.4 (D). Defendant Aberdeen Enterprizes II, Inc. is one of the private vendors contracting in accordance with § 514.4 (A).[2] When a criminal sentence imposes fees, costs and/or fines, the ***trial court*** shall conduct a hearing ***to determine the person's ability to pay the fees, costs and/or fines imposed***. *See* Okla. Ct. Crim. App. R. 8.1 - 8.4. If a person is found capable of paying the monetary component and fails to pay the same, the person may be imprisoned. Once a warrant[3] is issued for nonpayment, it may be referred to Aberdeen for collection attempts. Aberdeen locates and notifies persons of outstanding failure-to-pay warrants and accepts payment of the outstanding amounts and then remits the same to the court clerk. *See* SAC [Doc. 212], ¶ 5. ***Aberdeen does not and, by law, cannot, "seek," issue, execute or recall warrants.***

---

[1] In 2023 the Oklahoma Legislature passed revisions and additions to the statutes at 19 O.S. §§ 514.4 and 514.5. This will go into effect November 1, 2023. The new statutory language provides authorization for the courts to take the exact action under fire by Plaintiff's here.

[2] *See* Motion to Dismiss of Defendant P.D. Taylor [Doc. 215], p. 3 (Aberdeen "is but one" of "a number of private vendors").

[3] The warrants issued for failure to pay were arrest warrants issued as bench warrants meaning that they were issued from the bench by virtue of the authority of the judge and did not require any sworn oath or affirmation. As such Plaintiff's complaint that such an affirmation was lacking and any insinuation of wrongdoing arising from the lack of such lack of affirmation is without basis.

Plaintiffs' characterization of the reporting that a person has failed to make a payment as the "seeking" of an arrest warrant is wholly unsupported and misleading. Any alleged "threat" of arrest by Aberdeen personnel is, likewise, a mischaracterization as it remains a fact that, in Oklahoma, the failure to pay the fine amounts <u>can</u> result in arrest. Thus, this matter does not concern an alleged unlawful debt collection business by Aberdeen or *any* of the Defendants in this matter. Rather, this matter is merely a challenge to "imprisonment for debt" in relation to orders of the Oklahoma Supreme Court, statutory enactments by the Oklahoma Legislature and rules of the courts regarding outstanding fees and costs connected with criminal sentences.

## ARGUMENT AND AUTHORITY

Plaintiffs' Response to Aberdeen's Motion to Dismiss primarily addresses claims presented under 42 U.S.C. § 1983, including whether Aberdeen may be determined as acting under color of state law and whether a policy or custom of Aberdeen violated their constitutional rights. The allegations presented in these respects continue to amount to nothing more than unsupported accusations which contradict allegations presented in their initial pleadings and Oklahoma law. Plaintiffs' attempt to buy their cause of action one more day of judicial life using federal pleading rules as a shield cannot be sustained.

In reviewing the sufficiency of a complaint to state a claim, the Court determines whether a plaintiff has presented "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). While detailed factual allegations may not be necessary, a plaintiff remains obligated to state more than mere "labels and conclusions" which succeed only in providing "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

Reviewing the conclusory allegations against Aberdeen reveals a far less culpable scenario than represented. Plaintiffs' cause of action is premised upon the alleged impropriety of imprisonment for inability to pay court debt.[4] Aberdeen's alleged involvement relates to two ideas: (1) Aberdeen improperly threatened them with imprisonment for failure to pay their respective court debt, and (2) Aberdeen sought arrest warrants for their failure to pay and, in doing so, failed to advise law enforcement, court and/or other judicial personnel of their inability to pay their respective court debt. Plaintiffs have alleged, however, that any determination as to ability to pay is made *prior to Aberdeen's involvement* (see SAC [Doc. 212], at ¶¶ 5, 7 and 9) and to the extent any determination was not made or needs to be revised based upon an alleged change in circumstances, Oklahoma law sets forth the procedure for the same (see Class Action Complaint [Doc. 2], at ¶¶ 41-43; Okla. Ct. Crim. App. R. 8.1 - 8.4). As referenced below, imprisonment for a failure to pay court debt is, in fact, a possibility.[5] At best, beyond the alleged "threats" of the possibility of imprisonment, Plaintiffs' cause of action against Aberdeen challenges Aberdeen's providing of truthful information.[6]

### *§ 1983 - Color of Law*

Whether Aberdeen - an admitted private, for-profit company - may be held liable under § 1983 is dependent upon satisfaction of one of four tests. *See Gallagher v. Neil Young Freedom Concert*, 49 F. 3d 1442, 1447 (10th Cir. 1995). Of these four tests, Plaintiffs address the joint-action test, close nexus test and symbiotic relationship test.[7] The "flexible approach" employed is

---

[4] Statutorily imposed criminal fines assigned by the Court.

[5] As referenced in Aberdeen and other Defendants' motions, **arrest** for an outstanding failure to pay warrant must not be confused with **imprisonment** for failing to pay court debt.

[6] No Plaintiff has alleged that Aberdeen provided information to a court, sheriff or other official which inaccurately charged them with failing to comply with a payment arrangement.

[7] Plaintiffs claim "there is no need to reach" the "stricter test" of whether the private entity has exercised authority traditionally reserved to the state as the three other tests have been "clearly"

not a call for the courts to err on the side of finding requisite state action, but in reference to the use of the four tests as opposed to one single rigid determination. *See Wittner v. Banner Health*, 720 F. 3d 770, 779 (10th Cir. 2013); *Gallagher*, at 1447. Further, the alleged unconstitutional deprivation must be found "fairly attributable to the State" and not the mere private use of some remedy for public interests. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 53 (1999); *Gallagher*, at 1447.

In support of the joint-action test, Plaintiffs charge that Aberdeen contracted with government entities to "work together to ensure collection of public debt." Plaintiffs' Response [Doc. 419], at 6. The authority cited by Plaintiffs for this contention, though, clearly indicates that the county sheriffs are contracting with third parties to perform the service and not in conjunction. *See* 19 O.S. § 514.4 (A). The stated purpose of the statutory authorization and contract is to defer handling of debt collection to a private entity. As Plaintiffs allege, the court clerks transfer cases for Aberdeen to handle. *See* SAC, at ¶ 7. The very essence of the joint-action test is the existence of some joint agreement between private and public actors to violate the Plaintiffs' constitutional rights. *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F. 2d 106, 107 (7th Cir. 1991). Once the case has been transferred to Aberdeen for its handling of collection efforts, the only "joint" involvement relates to Aberdeen advising if/when a person fails to comply with payment arrangements. As addressed in Aberdeen's motion (and casually dispelled without any supporting authority in Plaintiffs' Response), Aberdeen's providing of such information cannot form the requisite involvement of state action for purposes of § 1983.

The next test addressed by Plaintiffs requires proof that "the state exercises sufficient 'coercive power' over the challenged action." *Wittner*, at 775. Plaintiffs allege Aberdeen's

---

established. Plaintiffs' Response [Doc. 419], at 5 n. 5. Aberdeen would reference the authority submitted in its motion and Plaintiffs' inability to present any contrary authority.

contract with the Oklahoma Sheriff's Association ("OSA") supports such coercion. Courts have made clear that the mere existence of a contract between a state and private entity or the fact that government funds are received cannot transform the private entity's actions into "state action." *Gallagher*, at 1448. The purpose of the "nexus" test "is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). The mere approval or acquiescence of the state to action taken by private entities is insufficient. *Sullivan*, 526 U.S. at 52. The mere fact that Aberdeen was collecting debts for governmental entities or allegedly made threats of action by law enforcement officials are insufficient to support the requisite "nexus." *See In re Benson*, 2009 WL 2957786 (Bankr. E.D. Pa. September 10, 2009).

Plaintiffs suggest that Aberdeen has little to no discretion in its collection procedures. This contention is not only contrary to the agreement relied upon by Plaintiffs, but also the allegations presented throughout the SAC and Plaintiffs' Response trying to establish how Aberdeen violated their constitutional rights.[8] *See* Plaintiffs' Response [Doc. 419], at 2 ("… Plaintiffs specifically allege that Aberdeen has 'the function of determining when to seek a new arrest warrant…' and that Aberdeen has 'discretion to determine the amount of money a debtor must pay, the deadline for making the payment, and when to seek a warrant for nonpayment.'"). It is difficult to impart any deference to Plaintiffs' allegations for purposes of Rule 8 when, as in this instance, the allegations change from page to page and from purpose to purpose.

---

[8] Paragraph 2 (c) of the agreement requires Aberdeen to "use its best efforts" to collect court debts and utilize "means which are legal, necessary and proper." *See* SAC, Exhibit A [Doc. 212A], at 4. Such direction cannot be characterized as the type of force/compulsion and "intimate involvement" by the state required for purposes of the "nexus" test. *See Wolotsky v. Huhn*, 960 F. 2d 1331, 1335 (6th Cir. 1992).

Plaintiffs' third test requires a "symbiotic relationship." Plaintiffs submit that Oklahoma counties rely heavily on Aberdeen's collection activities as funds collected are used for public purposes. The Tenth Circuit, though, has clarified that factors such as "extensive state regulation, the receipt of substantial state funds, and the performance of important public functions do not necessarily establish the kind of symbiotic relationship between the government and a private entity that is required for state action." *Gallagher*, at 1441. The relationship necessary to satisfy this test must go beyond the government's mere purchase of private services by way of contract. *See Wittner*, at 778. Aberdeen's activities are not conducted on public property and any "fiscal relationship" with state entities "is not different from that of many contractors performing services for the government." *Rendell-Baker v. Kohn*, 457 U.S. 830, 843 (1982).

### *Specific Constitutional Violations*

Notwithstanding the lack of evidence to support action under color of state law against Aberdeen, Plaintiffs have, nevertheless, failed to state a plausible claim for relief with respect to any policy or custom of Aberdeen which violated their constitutional rights. It is necessary to emphasize the continued lack of any factual allegations supporting injury beyond the mere speculation of arrest. *See O'Shea v. Littleton*, 414 U.S. 488, 496-97; *Citizen Ctr. v. Gessler*, 770 F. 3d 900, 911 (10th Cir. 2014). Regardless, the policies/customs challenged by Plaintiffs on behalf of Aberdeen do not implicate any of the constitutional rights alleged.

The policies/customs identified in Plaintiffs' Response concern the "encourage[ment]" of employees to collect money from persons with disabilities, forbidding employees to inform persons of their legal rights, instructing employees to "overcome" objections to payment, instructing employees to threaten debtors with arrest warrants, and allegedly withholding information from law enforcement/court personnel of a "debtor's indigence when requesting a

warrant." Plaintiffs' Response [Doc. 419] at 8-9. The dispositive factor common to all of these purported policies/customs is that ***none of these actions are unconstitutional under the circumstances presented***. No constitutional right is transgressed through (1) alleged threats of arrest/imprisonment for a failure to pay the court debt at issue or (2) advising law enforcement/ court officials that a person has failed to make payment while omitting information as to whether such person is refusing to pay or unable to pay.

Plaintiffs' first Fourteenth Amendment claim alleges Aberdeen violates the Equal Protection and Due Process clauses by "seeking" arrest warrants without inquiring whether they have the ability to pay. This claim is premised upon *Bearden v. Georgia*, 461 U.S. 660 (1983), holding that a "***sentencing court***" must inquire into the reasons for a defendant's failure to pay fines or restitution before it may sentence the defendant to imprisonment. *See Bearden*, at 672-73. What Plaintiffs conveniently ignore is the fact that such process exists by virtue of Rules 8.1 - 8.6 of the Rules of the Oklahoma Court of Criminal Appeals. Under these rules, a determination as to Plaintiffs' ability to pay court debt must occur *prior to Aberdeen's involvement*. To the extent any change of condition occurs, Rules 8.5 and 8.6 provide procedure for resolving the same. It remains unclear how Plaintiffs believe *Bearden* or any other constitutional amendment or law requires Aberdeen to step into the role of the sentencing court and make a determination as to whether the failure to pay is due to inability or outright refusal.

No constitutional provision or court mandate precludes the issuance of an arrest warrant based upon a failure to pay court debt. The United States Supreme Court in *Bearden* made clear that "poverty in no way immunizes" a defendant from punishment for a failure to pay. *Id.*, at 669. Rather, the constitutional protection required concerns a sentencing court making proper inquiry as to the failure to pay *before sentencing the defendant to imprisonment.* Aberdeen can

be characterized as a sentencing court capable of imprisoning Plaintiffs under none of the stated allegations. The allegations presented only suggest Aberdeen advises law enforcement/court personnel of a person's failure to comply with a payment arrangement and such information may be used for the purposes of new arrest warrants being issued. *See* SAC [Doc. 212], at ¶ 9. Plaintiffs' *Bearden* charge against Aberdeen is unfounded both factually and legally.

Plaintiffs' Fourth Amendment claim alleges Aberdeen had a policy or custom of providing false information which led to a warrant being issued and/or omitted material information which might have altered a judge's probable cause determination for purposes of issuing the warrant. *See U.S. v. Kennedy*, 131 F. 3d 1371, 1377 (10th Cir. 1997). No Plaintiff contends Aberdeen falsely claimed they did not comply with a payment arrangement (or had a policy or custom of the same). Rather, Plaintiffs propose that it was incumbent upon Aberdeen to advise law enforcement/court officials of their indigent status.[9] No authority has been (or can be) presented to support such requirement against Aberdeen.

Again, the requirements discussed in *Bearden* and Oklahoma Court of Criminal Appeals Rules 8.1 - 8.6 are concerned with a pre-*imprisonment* determination of refusal to pay, as opposed to inability to pay. The material factor for purposes of an *arrest warrant* is whether the plaintiff failed to comply with the payment arrangement. Plaintiffs admit that Aberdeen's involvement in any arrest warrant process is solely dependent upon the basic fact of nonpayment. The Fourth Amendment does not require a person providing information for purposes of a warrant to investigate every possible factor in support. *See Harte v. Bd. of Commisioners of Cty. of Johnson, Kansas*, 864 F. 3d 1154, 1182 (10th Cir. 2017); *Stonecipher v. Valles*, 759 F. 3d

---

[9] *Bearden* addresses the sentencing court's review of information such as a defendant's employment history and financial resources, yet Plaintiffs submit that Aberdeen was required to forward information or affirmatively act on information received solely via their claim of inability to pay.

1134, 1142 (10th Cir. 2014). Plaintiffs wholly fail to state a Fourth Amendment claim against Aberdeen even assuming, arguendo, Aberdeen's advising of nonpayment amounts to be "seeking" an arrest warrant.

Plaintiffs further contend Aberdeen's "financial conflict of interest" implicates due process. Due process protections founded upon disinterest relate to impartiality/neutrality in adjudicative proceedings. *See Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242. Plaintiffs allege Aberdeen extracts money from them "under the imprimatur of law enforcement." Plaintiffs' Response [Doc. 419], at 15-16. Determinations as to the amount of "court debt" owed are made prior to Aberdeen's involvement. The only discretion alleged for such purposes relates to Aberdeen's creation of a payment plan *to help Plaintiffs meet their court-imposed obligations*. The constitutional concern is the risk of bias "when an officer acting in an <u>adjudicative capacity</u> has a substantial, personal pecuniary interest in the outcome of the <u>adjudicative proceeding</u>." *Waters v. Hollywood Tow Serv.*, 2010 WL 11465238, *8 (C.D. Cal. July 27, 2010) (emphasis added). Aberdeen's "financial incentives" aside, no allegations have been presented as to what adjudicative actions/proceeding Aberdeen is involved as respects Plaintiffs.

The last constitutional charge addressed in Plaintiffs' Response concerns equal protection. While Plaintiffs dispel the authority in Aberdeen's Motion as "dubious" and "puzzling[]," the argument and authority presented in rebuttal is ineffectual. Plaintiffs reject application of *Cain v. City of New Orleans*, 327 F.R.D. 111, 2018 WL 3657447 (E.D. La. August 2, 2018), because the comparison there concerned criminal judgment debtors and civil judgment debtors, while Plaintiffs' challenge in this matter relates to two groups owing "the same type of debt to the same entity." Plaintiffs' Response [Doc. 271], at 21. This distinction is unclear and

unconvincing. Plaintiffs remain unable to identify a policy or custom of Aberdeen which denies equal protection to similarly situated persons.

This failure is further demonstrated in Plaintiffs' argument as to *State v. Ballard*, 1994 OK CR 6, 868 P. 2d 738. Plaintiffs deny application of *Ballard* because they claim the procedure for determining whether they are able or unwilling to pay their court debt "is conspicuously absent here." *Id.*, at 22. *This argument illustrates the fundamental flaw with their cause of action against Aberdeen as a whole*. There is, in fact, a procedure in place for the sentencing court to conduct a "judicial hearing" and make a "judicial determination" as to a criminal defendant's ability to satisfy the fees, fines and costs imposed as part of their sentence. Okla. Ct. Crim. App. R. 8.1. These rules also provide a process for an opportunity to be heard if the defendant subsequently fails to make a required payment or experiences a change of physical or financial condition. *See* Okla. Ct. Crim. App. R. 8.4 - 8.6.. Such sentencing determination is, by Plaintiffs' own allegations, made prior to a case being transferred to Aberdeen. If a person fails to make payment to Aberdeen, Aberdeen notes such failure. Even to the extent such notation or other provision of information of nonpayment could be characterized as "seeking" an arrest warrant or otherwise used in connection with the issuance of an arrest warrant, any judicial determination *before imprisonment* as to ability to pay remains outside of Aberdeen's involvement.

Plaintiffs' cause of action against Aberdeen is premised upon alleged threats of arrest/imprisonment and alleged failure to advise law enforcement/court personnel of their indigent status. Neither of these scenarios rises to the level of "extortion" or unconstitutional conduct sufficient to permit Plaintiffs' action against Aberdeen to proceed.

Respectfully submitted,

/s/ John R. Woodard, III
John R. Woodard, III, OBA No. 9853
Jennifer L. Struble, OBA No. 19949
Coffey Senger & Woodard, PLLC
4725 East 91st Street, Suite 100
Tulsa, OK 74137
918-292-8787
918-292-8788 – Fax
john@cswlawgroup.com
jstruble@cswlawgroup.com
*Attorneys for Defendant Aberdeen
Enterprizes II, Inc., Jim D. Shofner,
and Rob Shofner*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of August, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | | |
|---|---|---|
| Robert Lamar Betts | Robert Dale James | Daniel E. Smolen |
| Robert Murray Blakemore | Jo Lynn Jeter | Donald Eugene Smolen, II |
| Kelsey Ann Chilcoat | Alexander Karakatsanis | Todd Michael Wagner |
| Isaac Robertson Ellis | April Danielle Kelso | Chris M. Warzecha |
| Aaron Etherington | Robert Steven Lafferrandre | Seth T Wayne |
| Melodie Freeman-Burney | Stefanie Erin Lawson | Jill Elizabeth Webb |
| Robert D Friedman | Thomas Adrian LeBlanc | Joel L. Wohlgemuth |
| Kimberly Majors Hall | Douglas N. Letter | Randall J. Wood |
| Rodney J Heggy | Mary B McCord | Maurice Glenn Woods, II |
| Jeffrey Calvin Hendrickson | Carri Ann Remillard | Katherine Hubbard |
| Elizabeth Rossi | Scott B. Wood | Douglas Allen Wilson |
| Emily Brooks Kosmider | | |

/s/ John R. Woodard, III
John R. Woodard, III