UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARLY GRAFF, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:17-CV-00606-TCK-JFJ |
| ) | |
| ABERDEEN ENTERPRIZES II, INC., ) | |
| et al. ) | |
| ) | |
| Defendants. ) | |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS (DOC. #399) PLAINTIFFS' SECOND AMENDED COMPLAINT BY DEFENDANTS TULSA COUNTY COURT CLERK, TULSA COUNTY SHERIFF, AND TULSA COST ADMINISTRATOR, IN THEIR OFFICIAL CAPACITIES, AND THE BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY**

Douglas A. Wilson, OBA #13128
Assistant District Attorney
Tulsa County District Attorney's Office
218 West Sixth Street, Suite 933
Tulsa, OK 74119
(918) 596-8795
douglas.wilson@tulsacounty.org

Mike Shouse, OBA #33610
Assistant District Attorney
Tulsa County District Attorney's Office
218 West Sixth Street, Suite 935
Tulsa, OK 74119
(918) 596-4825
mshouse@tulsacounty.org

Joel L. Wohlgemuth, OBA #9811
Jo Lynn Jeter, OBA #20252
W. Caleb Jones, OBA #33541
Norman Wohlgemuth, LLP
3200 Mid-Continent Tower
401 South Boston
Tulsa, OK 74103
(918) 583-7571
JWohlgemuth@NWLawOK.com
JJeter@NWLawOK.com
Jones@NWLawOK.com

**ATTORNEYS FOR DEFENDANTS VIC REGALADO, SHERIFF OF TULSA COUNTY, DON NEWBERRY, TULSA COUNTY COURT CLERK, DARLENE BAILEY, TULSA COUNTY COURT COST ADMINISTRATOR, IN THEIR OFFICIAL CAPACITIES, AND BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TULSA**

I.        PLAINTIFFS' FALSE FRAMING OF THE ISSUE

Plaintiffs' Response Brief (Doc. #427) would have this Court believe that employees on the lowest rung of the judicial hierarchy ladder, that is, county employees in service of the district court, engage in practices unsanctioned by their judicial supervisors to recover past due money owed to the state court. In this upside-down world as briefed by Plaintiffs, the state's judicial branch, which exclusively supervises the Court Clerk's activities on behalf of the state court and directs the Sheriff's activities in service to the court, stands idly by while county employees in service to the court contravene governing statutes and judicial directives to independently decide matters of utmost consequence to the state's judiciary. Plaintiffs' proffered framework is not only unbelievable, it is contradicted by well-established law and policy.

II.       THE COURT MUST DETERMINE WHO HAS FINAL POLICYMAKING AUTHORITY IN THE SPHERE OF THE GOVERNMENTAL OPERATIONS COMPLAINED OF, AND WHETHER SUCH AUTHORITY IS EXERCISED AS A FUNCTION OF COUNTY GOVERNMENT OR STATE GOVERNMENT

To determine whether municipal liability can legally attach to Tulsa County[1] requires the Court, as a matter of law, to determine who has final policymaking authority in the sphere of the governmental operations complained of, and whether such authority is exercised as a function of county government or state government. People with final policymaking authority perform various functions, some on behalf of the county, and some on behalf of the state.

> To decide whether a government employee is a final policymaker whose actions can give rise to municipal liability, we ask (1) whether the employee is meaningfully constrained by policies not of his own making; (2) whether his decisions are final, i.e., not subject to any meaningful review; and (3) whether the policy decisions and actions at issue in this case fall within the realm of his grant of authority.

---

[1] This concerns the first of three elements that every municipal liability § 1983 plaintiff must plead and prove, that is, (1) an official government policy (2) undertaken with deliberate indifference (3) that was the moving force behind plaintiff's injuries. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769-71 (10th Cir. 2013).

*Patel v. Hall*, 849 F.3d 970, 979 (10th Cir. 2017) (citing *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988), and *Pembaur v. Cincinnati*, 475 U.S. 469 (1986)). This includes an analysis under relevant state law of whether the subject employee "represents the State or the county when he [or she] acts in [the] capacity [at issue]." *McMillian v. Monroe County*, 520 U.S. 781, 785-86 (1997).

> Whether a particular official has "final policymaking authority" is a question of state law. This is not to say that state law can answer the question for us by, for example, simply labeling as a state official an official who clearly makes county policy. But *our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law.*

*Id.,* at 786 (internal citations, brackets and quotation marks omitted, emphasis added). Citing *McMillian*, Plaintiffs acknowledge "[w]hether a policy is carried out on behalf of the state or on behalf of a county or other political subdivision is a question of state law." Response Brief, p. 7, Doc. #427. State law is found in the state's constitution, statutes and court decisions. The Supreme Court in *McMillian* explained that its prior case law also allowed plaintiffs "to prove that 'a widespread practice' has been established by 'custom or usage' with the force of law" to prevent governments from manipulating the titles of their local officials in an "egregious attempt … to insulate themselves from liability." 520 U.S. at 796. The *McMillian* Court did not resort in its particular case to the "custom or usage" formula because "there is certainly no evidence of such manipulation here; indeed, the Alabama provisions that cut most strongly against petitioner's position predate our decision in *Monell* by some time." *Id*. As in *McMillian*, the Court Clerk's and Sheriff's ministerial roles in Oklahoma as officers and arms of the state court date back to at least 1908[2] and 1913,[3] respectively, and "predate [the] decision in *Monell* by some time."

---

[2] *See* collection of cases cited in *Petuskey v. Cannon*, 1987 OK 74, ¶ 18, 742 P.2d 1117, 1121.

[3] *See Kniseley v. Ham*, 1913 OK 630, ¶ 0, 136 P. 427; *Pappe v. Law*, 1934 OK 427, ¶ 11, 35 P.2d 941, 943.

2

Hoping to avoid any true scrutiny whether the acts complained of function, under the relevant state law, as the acts of the county or the acts of the state, Plaintiffs point *throughout their response brief* to their own "custom or usage" allegations conveniently impregnated with the label of "county policy." Supreme Court precedent rejects such manipulative tactics designed to circle one's reasoning with *ipse dixit* logic. Such egregious attempts to foist municipal liability where none exists fail to address how the challenged acts serve a county, as opposed to a state, function.

### III. THE COLLECTION OF PAST DUE MONEY OWED THE STATE COURT IS A MATTER OF STATE POLICY

The right to collect the criminal fines, fees and costs at issue in this case belongs to the State of Oklahoma, and more specifically, to the Oklahoma Supreme Court.[4] The Court Clerk serves as the district court's bursar.[5] The Court Clerk's acts as bursar are ministerial – as are *all*

---

[4] *See* 28 O.S. § 151(D) ("Supreme Court is authorized to institute a cost collection program for collection of fees, fines, costs and assessments"); Rule 2, Rules on Administration of Courts, 20 O.S. App. 2; *Petuskey v. Cannon*, 1987 OK 74, ¶ 20, 742 P.2d 1117, 1121 (Supreme Court's administrative and supervisory authority over all court personnel). County employees in service to the state court are supervised in their ministerial duties, in ascending order, by their immediate supervisor, if other than a district judge; a district judge of the judicial district; the Presiding Judge of the judicial administrative district; and the Chief Justice of the Supreme Court. *Id*.

[5] The Oklahoma Supreme Court has held that "the court clerk's function of receiving and disbursing funds of every character is inextricably connected, not with county government, but with that official's duty as state court's bursar. *In managing funds not derived from county appropriations the court clerk acts as a functionary of the state district court rather than as a county official*." *North Side State Bank v. Board of County Comm'rs of Tulsa County*, 1994 OK 34, ¶ 15, 894 P.2d 1046, 1052 (emphasis added). "In approximately 2003 or 2004, the Office of the Supreme Court Administrator of Oklahoma required each Court Clerk to designate a deputy clerk as Cost Administrator. The Cost Administrator is responsible for, among other things, tracking payments and receipts for the collection of fines and court costs associated with the [district court's] dockets." *Jones v. Hacker*, Case No. 13-CV-444-JHP, 2015 WL 1279352, *1 (E.D. Okla. Mar. 20, 2015). Collection of fines, fees and costs includes a $5.00 fee for the Sheriff and another $10.00 fee for the Sheriff's provision of courthouse security. *See* 28 O.S. §§ 153.2 and 153(D), respectively. These sums are negligible, and required by state statute, not county policy. Any similar fee that may be earmarked for the Court Clerk is necessarily a fee that is earned as the district court's bursar because such fees are not county appropriations. *See* 2007 OK AG 6, ¶ 8 (explaining county appropriations). The Court Clerk's filing and maintenance of records is also supervised by the judiciary. *See Speight v. Presley*, 2008 OK 99, ¶ 18, 203 P.3d 173, 178.

3

of the Court Clerk's acts taken on behalf of the district court – and subject at all times to the supervisory control of the state's judiciary. *Petuskey*, *supra*, at ¶ 20. The Cost Administrator is a mere deputy Court Clerk, whose duties are judicially trained and supervised and whose practices are judicially ratified. *See Jones*, *supra*, at *1-2 ("It was the commonly understood practice that the [state] judges expect the Court Clerk's office, and specifically the Cost Administrator, to determine … who failed to pay court-ordered fines in criminal cases and to prepare bench warrants for the judges' signature for those persons"). The Sheriff serves as an officer and arm of the court required to enforce the state judiciary's orders. "The sheriff cannot set himself up as a court of review to determine the legality and validity of a writ regular upon its face. He is a ministerial, not a judicial, officer, and must execute all orders or process of the court regular and valid upon its face." *Pappe v. Law*, 1934 OK 427, ¶ 11, 35 P.2d 941, 943. The Board of County Commissioners is landlord of the courthouse where the district court adjudicates criminal cases. Plaintiffs' only allegation as to the Board is a misdirected allegation in the nature of respondeat superior. *See* Second Amended Complaint ("SAC"), ¶ 38, Doc. #212; and *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978) ("a municipality cannot be held liable under § 1983 on a respondeat superior theory").

      The warrant collection program at issue in this case, 19 O.S. (2011) §§ 514.4, 514.5, was enacted to enhance revenue collection for state courts. Oklahoma's Legislature frequently enacts laws specifically designed to "enhance revenue collection" for state courts. *See, e.g.*, 20 O.S. §§ 80, 1315.2a. The warrant collection program authorizes a thirty percent (30%) assessment against delinquent criminal accounts to help finance the use of a private collection agency to locate and notify criminal defendants of their past due obligations. *See* 19 O.S. §§ 514.4, 514.5. Under the warrant collection program, the state court and private collection agency work together to resolve outstanding accounts. *See* 19 O.S. §§ 514.4(B) & (D), 514.5. Plaintiffs do not challenge the

constitutionality of "any [Oklahoma] statute or rule" in this case. Plaintiffs' Response Brief, p. 22, Doc. #427.

By order of the Chief Justice of the Supreme Court, each district court was directed to immediately "participate in the misdemeanor or failure-to-pay warrant collection program authorized by Title 19, Oklahoma Statutes, Sections 514.4 and 514.5." Supreme Court Order, S.C.A.D. 2011-08 (Doc. #99-35; Doc #275, fn. 7).

District courts participate in the warrant collection program through § 514.4(A)'s express authorization for any county sheriff to "enter into a private contract,[6] *pursuant to Section 85.41 of Title 74 of the Oklahoma Statutes*...." County sheriffs generally have no authority to contract because the board of county commissioners "alone is authorized to enter into contracts for and in behalf of the county." *Western Chemical Co. v. Board of County Comm'rs of Pottawatomie County*, 1935 OK 53, ¶ 5, 44 P.2d 825; 19 O.S. §§ 1(5), 3.

Contrary to Plaintiffs' recast, § 514.4(E) authorizes each sheriff to *assign his right to contract* – acquired in § 514.4(A)[7] – "to the [Oklahoma Sheriff's Association ("OSA") who is required by the same statute to] administer[] the provisions of th[e] contract." The private collection agency employed by the OSA must also contract directly with the Oklahoma Supreme Court. *See* MTD, pp. 5-6, n. 8, Doc. #399. Plaintiffs allege that all of the Defendant Sheriffs have authorized the OSA "to enter into [an] Agreement for debt collection services on their behalf," SAC at ¶ 29, but the debt to be collected is owed to the state courts, and the statutory authority granted the sheriffs is to contract *on behalf of the state* pursuant to 74 O.S. § 85.41, as a state

---

[6] Because Plaintiffs have filed suit, the contract requires cessation of collection activities by Aberdeen. *See* Agreement for Collection, Ex. "A" to SAC, Doc. #212-1, ¶ 2(g)(1).

[7] As noted in Defendants' Motion to Dismiss ("MTD"), no other lawful authority exists for county sheriffs to collect criminal court debt or to contract for its collection (other than obedience to an order or directive of a state court judge). *See* Motion to Dismiss, pp. 5-6, n. 8, Doc. #399.

agency, not as a county. The OSA is not the sheriffs' agent, but their assignee of such right to contract as a state agency pursuant to 74 O.S. § 85.41. The assignment isn't much. But what one does not possess one cannot assign. If the OSA is an agent, it is clearly an agent of the state, not the county. Payments of past due amounts are made by criminal defendants to either the private collection agency or directly to the state court. *See* 19 O.S. § 514.4(B) & (D).

The county sheriff, in his capacity as a county actor, possesses no claim against the delinquent criminal defendants, and has no legal obligation to collect delinquent monies owed the state's judiciary (save and except his § 514.4(A) right to enter into a contract to be administered by the OSA). Consequently, § 514.4(E)'s assignment to the OSA is necessarily an assignment of the sheriff's right to contract on behalf of the state *pursuant to 74 O.S. § 85.41*, as a state agency, not as a county, coupled with the state judiciary's right to collect delinquent monies owed to the court. The object of the contract is to enhance revenue collection for the state's judiciary. In such a role, the sheriffs function as ministerial officers of the court who carry out the directive of the Chief Justice of the Oklahoma Supreme Court. The warrant collection program serves no county function, and to the extent it is intended to assist the district court with the collection of accounts receivable, it assists the district court's bursar, not the county qua county.

IV. MUNICIPAL LIABILITY UNDER § 1983 DOES NOT ATTACH TO A COUNTY FOR THE ACTS OF ITS EMPLOYEES SERVING UNDER THE DIRECTION AND CONTROL OF STATE JUDGES AND IN ADHERENCE TO STATE LAW

The acts of county employees of which Plaintiffs complain were carried out under the direction and supervision of the state judiciary, pursuant to state policy, either promulgated by judicial policymakers expressly directing such actions, or with knowledge thereof, by judicial policymakers acquiescing to such practices undertaken on the judiciary's behalf. County employees, as is their oath pursuant to 51 O.S. §§ 36.1, 36.2A, also follow the command of state statutes, which is the expressed policy of the State of Oklahoma.

Local county officers, as a matter of law, cannot be responsible for establishing final governmental policy with respect to matters under the exclusive jurisdiction, supervision and control of the state judiciary.[8] Nor can the obedience of local county officers to state statutes, under criminal penalty for non-compliance, establish municipal liability under § 1983.[9] Plaintiffs advance the theory that "the County's relationship with Aberdeen [is] the very heart of this lawsuit." Response Brief, p. 10, n. 5, Doc. #427. But Plaintiffs' refuse to either see, or simply cannot see, that the district courts extend the reach of the judicial branch of state government into each county, but are not county-operated. Aberdeen's relationship is with the district courts, and the acts complained of by the Court Clerk and Sheriff function as the acts of the state court, undertaken pursuant to its supervision or direction, and by command of state law and state policy.

---

[8] In Oklahoma, "the judiciary has exclusive authority to manage its own affairs." *Petuskey*, *supra*, at ¶ 15. "The purpose of a unitary system of judicial management is to centralize the administrative power of the entire judicial system in the Supreme Court, and make the Chief Justice the administrative head of all courts." *Id*. *See* W*hitesel v. Sengenberger*, 222 F.3d 861, 872 (10th Cir. 2000) (board of county commissioners "cannot be liable for merely implementing a policy created by the state judiciary"); *Ledbetter v. City of Topeka, Kan*., 318 F.3d 1183, 1190 (10th Cir. 2003) (collecting cases) (acts of a municipal judge *in performing a state judicial function* do not establish municipal policy); *Shepp v. Fremont County, Wyo*., 900 F.2d 1448, 1456-57 (10th Cir. 1990) (denial of bail was the responsibility of state judge and could not be attributed to the county). Plaintiffs' response wholly fails to address these case holdings previously identified in Defendants' Motion to Dismiss. *See* Response Brief, Doc. #427, and MTD, p. 18, Doc. #399.

[9] *Surplus Store and Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 791-92 (7th Cir. 1991) ("It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law. If the language and standards from *Monell* are not to become a dead letter, such a 'policy' simply cannot be sufficient to ground liability against a municipality."); *Robinson v. City of Tupelo, Mississippi*, 2018 WL 2348666, *6 (N.D. Miss. March 23, 2018) (municipal liability did not attach to county sheriff's charging a $25 fee when releasing someone on bail because sheriff was simply following state law); *Humphries v. Milwaukee County*, 2011 WL 5506676, *6 (E.D. Wisc. Nov. 10, 2011) ("a municipality 'cannot be held liable under section 1983 for acts that it did under the command of state or federal law'") (quoting *Bethesda Lutheran Homes and Services, Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998); and *Frobe v. Village of Lindenhurst*, 2014 WL 902878, *9 (N.D. Ill. March 7, 2014) ("the state law is a state law, not municipal policy"). Plaintiffs' response wholly fails to address these case holdings previously identified in Defendants' Motion to Dismiss. *See* Response Brief, Doc. #427, and MTD, pp. 18-19, Doc. #399.

A.   **Cost Administrator functions as the accounts receivable bursar for the district court**

The Cost Administrator clearly represents the state, and not the county, in her job as the accounts receivable bursar[10] for the district court; in fact, the position of "cost administrator" has no county function. *See* footnote 5 above.

Plaintiffs' *ipse dixit* reasoning that the Cost Administrator should be viewed as a county official setting county policy contradicts the U.S. Supreme Court's admonition that "our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law." *McMillian*, *supra*, 520 U.S. at 786. The policy of the state judiciary has been to train each county's cost administrator. The Office of the Supreme Court Administrator "provided [each Cost Administrator] training upon appointment." *Jones*, *supra*, at *1.

The Cost Administrator's tasks with respect to her job, including setting initial payment plans for those who cannot immediately pay their criminal fines, fees and costs, reviewing the accounts receivables ledger on the state judiciary's accounting software to determine who is in arrears, preparing failure-to-pay bench warrants for judicial review and signature and advising the court's private collection agency of delinquent accounts the court would like its assistance with under 19 O.S. §§ 514.4(A) & (B), are all actions supervised by the state judiciary and undertaken on behalf of the state to collect debts owed to the district court.[11]  No county function is involved.

---

[10] The term "bursar" means "an officer in charge of funds." Webster's Ninth New Collegiate Dictionary, p. 189 (1983).

[11] The Rules of the Court of Criminal Appeals, 22 O.S. Ch. 18, App., § VIII, impose on state court criminal judges the obligation to determine a defendant's "ability to pay" and to set "installments in reasonable amounts and fix the due date of each payment." *See* Rules 8.1, 8.3, 8.4 and 8.5. "The issuance of [failure-to-pay bench] warrants is a judicial function." *Jones*, *supra*, at *5. The private collection agency utilizes the state judiciary's accounting software pursuant to an agreement with the Oklahoma Supreme Court. *See* Agreement for Collection, Ex. "A" to SAC, Doc. #212-1, ¶ 2(b)(1).   The monies collected and disbursed pursuant to such agreement are

B.   **Court Clerk functions as the district court's bursar in managing funds not derived from county appropriations**

Like the Cost Administrator, "[i]n managing funds not derived from county appropriations *the court clerk acts as a functionary of the state district court rather than as a county official*." *North Side State Bank*, *supra*, at ¶ 15 (emphasis added). The Court Clerk is not entitled "to exercise unbridled discretion over the administration of his office" because he is governed by the state's judiciary. *Petuskey*, *supra*, at ¶¶ 15-25. However, unlike the Cost Administrator, this is not in *every* instance. The Court Clerk has been granted certain "discretionary duties provided by statute" that are not subject to judicial control. For example, the Court Clerk is solely responsible for hiring and firing his deputies and employees and determining their compensation. *See* 19 O.S. §§ 162, 180.65(A). After summarizing a handful of cases establishing that the Court Clerk functions as a ministerial officer of the district court, the Oklahoma Supreme Court explained:

> In addition to common law, a review of the statutory duties of the Office of District Court Clerk, further establishes the clerk is ultimately connected to the existence, dignity and function of the judiciary. It is entirely contrary to the centralized, hierarchical, and well-organized structure of the state judiciary for the court clerk to be a "loose cannon sliding around on the county's judicial deck." *Rutledge v. Workman*, supra.
>
> Therefore, we conclude the District Court Clerk is "judicial personnel" as the term is used in Rule 2 of Administration of Courts, supra. **He is an arm of the court, whose duties are ministerial, except for those discretionary duties provided by statute**.[12] As such, the Court Clerk is subject to the control of the Supreme Court, and the supervisory control it has passed down to the Administrative District Judge in his Judicial Administrative District in the performance of his ministerial functions.

*Petuskey*, *supra*, at ¶¶ 19-20 (emphasis added). The Court Clerk's responsibilities at issue in this case include the same state court tasks performed by the Cost Administrator. *See* page 8 above.

---

audited annually by the State Auditor. *See* 19 O.S. § 514.5(C). The state court, not the county, is granted authority to waive the thirty percent (30%) administrative cost. *See* 19 O.S. § 514.5(A).

[12] *See*, *e.g.*, 19 O.S. §§ 162, 180.65(A); *Petuskey*, *supra*, at ¶ 23.

9

In no instance, have the Plaintiffs pointed to a statutory grant of authority for the Court Clerk, free from judicial supervision, to independently carry out the acts of which Plaintiffs complain. Plaintiffs complain that the OSA-Aberdeen contract, attached as Exhibit "A" to the SAC, Doc. #212-1, "empowers the Tulsa Sheriff and Clerk" to take certain actions which they imply have become a widespread custom or usage having the force of law. *See* Response Brief, p. 4. The Sheriff and Court Clerk, however, are not parties to the contract, and their lawful authority is derived solely from the state constitution, statutes and common law. *See* footnotes 2-5 and 7-8 above. As recently noted by the Tenth Circuit Court of Appeals in *Couser v. Gay*, 959 F.3d 1018, 1028 n. 16 (10th Cir. 2020) (citing *Scott v. O'Grady*, 975 F.2d 366, 371 (7th Cir. 1992), "[c]ircuit courts have treated the sheriff's law enforcement function as separate from its function in carrying out duties for the judicial system."

**C.    Sheriff carries out the ministerial function of enforcing state judicial orders**

The Sheriff clearly functions as an officer and arm of the state court duty-bound by state law to enforce judicial orders valid on their face, and to detain arrestees brought to his jail until released by state statute or judicial decree. *See Pappe*, *supra*, at ¶ 11; *State v. Price*, 2012 OK 51, ¶ 4, n. 3, 280 P.3d 943, 946. As discussed above at pp. 5-6, the Sheriff participated in the warrant collection program not as the county qua county, but as a state agency pursuant to 74 O.S. § 85.41 in obedience to a directive of the Chief Justice of the Supreme Court to enhance revenue collection for state courts. Both Tulsa County's original Motion to Dismiss, Doc. #238, and this present MTD, Doc. #399, are 12(b)(6) motions for failure to state a claim. Contrary to Plaintiffs' argument, *see* Response Brief, p. 12, there is no prohibition against this present motion. *See Albers v. Board of County Comm'rs of Jefferson County, Colo.*, 771 F.3d 697, 701-02 (10th Cir. 2014). *See also* Tulsa County's original Motion to Dismiss, Doc. #238, p. 22, § D.

Respectfully submitted,

/s/ Douglas A. Wilson
Douglas A. Wilson, OBA #13128
Assistant District Attorney
Tulsa County District Attorney's Office
218 West Sixth Street, Suite 933
Tulsa, OK  74119
(918) 596-8795
douglas.wilson@tulsacounty.org

Mike Shouse, OBA #33610
Assistant District Attorney
Tulsa County District Attorney's Office
218 West Sixth Street, Suite 935
Tulsa, OK  74119
(918) 596-4825
mshouse@tulsacounty.org

- and –

Joel L. Wohlgemuth, OBA #9811
Jo Lynn Jeter, OBA #20252
W. Caleb Jones, OBA #33541
Norman Wohlgemuth, LLP
3200 Mid-Continent Tower
401 South Boston
Tulsa, OK 74103
(918) 583-7571
JWohlgemuth@NWLawOK.com
JJeter@NWLawOK.com
Jones@NWLawOK.com

***Attorneys for Tulsa County Sheriff Vic Regalado, Tulsa County Court Clerk Don Newberry and Tulsa County Cost Administrator Darlene Bailey, in their official capacities, and the Board of County Commissioners of the County of Tulsa***

11

CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | | |
|---|---|---|
| Robert E. Applegate | Jill E. Webb | Todd M. Wagner |
| Robert M. Blakemore | Daniel E. Smolen | Robert L. Betts |
| Robert D. Friedman | Donald E. Smolen, II | Harry Anthony Parrish |
| Rodney J. Heggy | Seth T. Wayne | Robert Stevens Lafferrandre |
| Jeffrey C. Hendrickson | John R. Woodward, III | Aaron Etherington |
| Katherine Hubbard | Chris M. Warzecha | April Danielle Kelso |
| Alexander Karakatsanis | Isaac Robertson Ellis | Randall J. Wood |
| Mary B. McCord | Melodie Freeman-Burney | Stefanie E. Lawson |
| Henry A. Parrish | Robert Dale James | Douglas N. Letter |
| Elizabeth Rossi | Thomas A. LeBlanc | Kelsey Ann Chilcoat |
| Maurice G. Woods, II | Carri Ann Remillard | |

/s/ Douglas A. Wilson