UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARLY GRAFF, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:17-CV-606-TCK-JFJ |
| ) | |
| ABERDEEN ENTERPRIZES II, INC., et al.; ) | |
| ) | |
| Defendants. ) | |

---

**DEFENDANT OKLAHOMA SHERIFFS' ASSOCIATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

---

Respectfully submitted by:

**CONNER & WINTERS, LLP**

Robert Dale James, OBA #16667
Melodie Freeman-Burney, OBA #12667
Isaac Robertson Ellis, OBA #30072
4000 One Williams Center
Tulsa, OK 74172-0148
Tel: 918.586.5711
rob.james@cwlaw.com
mburney@cwlaw.com
iellis@cwlaw.com

**Attorneys for Oklahoma Sheriffs' Association**

Defendant Oklahoma Sheriffs' Association (the "OSA") submits the following Reply Brief in Support of its Motion to Dismiss (Doc. 405, the "MTD"). This Reply addresses the arguments raised in Plaintiffs' Response (Brief G, Doc. 421).

## I. PLAINTIFFS FAIL TO STATE A CLAIM UNDER RICO AGAINST THE OSA.

### a. No Valid Claim is Stated for § 1962(c) Liability As Against the OSA.

Plaintiffs attempt to minimize the requisite level of "enterprise" participation on the part of a RICO defendant by cherry-picking language from cases interpreting the standard set forth in *Reves v. Ernst & Young*, 507 U.S. 170, 185, (1993) (defendant must "have some part in **directing**" the affairs of the alleged enterprise) (emphasis added). However, even the authority cited by Plaintiffs—*Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017)—recites "*Reves*' operation or management test" and explains that "a defendant must do more than simply provide, through its regular course of business, goods and services that ultimately benefit the enterprise." *Id.* at 884. The *Hickenlooper* Court specifically applied that rule to the allegation that a contractor defendant had supplied water for use by a marijuana-growing enterprise, finding that allegation did not sufficiently allege enterprise participation. *Id*.

Plaintiffs allege a similarly tenuous connection from the OSA to the alleged RICO enterprise here, claiming merely that the OSA contracts with Aberdeen for statutorily-authorized services and provides Aberdeen with information obtained from government entities to be used by Aberdeen in performing those services—all of which (assuming those allegations to be true) the OSA does in the normal course of its business as the designated agent for Oklahoma's Sheriffs. These allegations are not sufficient under *Reves* to state a claim against OSA that it played a part in **directing** a RICO enterprise. Plaintiffs' allegations that the OSA has knowledge of and benefits from Aberdeen's alleged extortionate conduct does not alter the outcome. *See Nasik Breeding &*

*Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 537 (S.D.N.Y. 2001) (finding knowledge coupled with personal benefit is insufficient to state even a § 1962(d) conspiracy claim, much less a § 1962(c) direct liability claim).

Further, Plaintiffs implicitly concede a critical point in Brief G. The SAC does not plead a single predicate act on the part of the OSA as expressly required by § 1962(c).

### b. No Valid Claim is Stated for § 1962(d) Liability Against the OSA.

Plaintiffs argue that they need not allege the OSA ***agreed to facilitate*** the predicate acts of the alleged RICO enterprise, but only that the OSA ***knew about*** the commission of the alleged predicate acts. Although the overruled Tenth Circuit opinion cited by Plaintiffs for this proposition does state at the outset of its lengthy RICO discussion that "a defendant can be convicted under 1962(d) upon proof that the defendant knew about or agreed to facilitate the commission of acts sufficient to establish a 1962(c) violation", it also states in the section of the opinion specifically titled "*D. Conspiracy to Violate RICO*" that a plaintiff must show "that the defendant knew about ***and*** agreed to facilitate the commission of . . . at least two of the predicate acts [establishing a 1962(c) violation]." *See United States v. Smith*, 413 F.3d 1253, 1265 and 1272 (emphases added). Interestingly, the *Smith* Court cited to the Supreme Court's decision in *Salinas v. United States*, 522 U.S. 52, 63–64, (1997) for both of these contradictory statements.[1] Despite having now briefed these arguments twice, Plaintiffs have not come up with any authority other than *Smith* in support of this standard. As the standard set forth by the Supreme Court, *Salinas* should govern.

*Salinas* (cited by the *Smith* court) makes clear that a defendant <u>must have knowledge **and** agree to facilitate</u>. That is, the defendant must be alleged to have agreed to commit or facilitate

---

[1] The Tenth Circuit discussed the Smith case's apparent discrepancy in *United States v. Kamahele*, 748 F.3d 984, 1015 (10th Cir. 2014) but did not decide whether the statement had been made in error because the issue was not squarely before the court.

some portion of the predicate acts giving rise to a 1962(c) violation. Mere knowledge of the acts is not enough. This conclusion stems from the *Salinas* Court's statement that "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate ***each and every*** part of the substantive offense." *Salinas*, 522 U.S. at 63 (citation omitted) (emphasis added)). The *Salinas* Court further stated that:

> A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion. One can be a conspirator <u>by agreeing to facilitate only some of the acts</u> leading to the substantive offense.

*Id*. at 65 (emphasis added). At a minimum then, a § 1962(d) claim must include an allegation that the defendant agreed to facilitate some of the acts of the illicit enterprise. A mere allegation of knowledge as to the enterprise's commission of predicate acts is legally insufficient. As Plaintiffs have not and cannot in good faith allege that the OSA agreed to commit *or* facilitate any alleged predicate act, Plaintiffs have failed to state a claim against the OSA under § 1962(d). Plaintiffs claim the renewal and administration of a contract, which on its face prohibits any illegal conduct on Aberdeen's part, somehow suffices as knowledge and agreement to engage in a criminal conspiracy. This is simply not supported by the applicable precedent.

The OSA does not believe Plaintiffs have stated a valid RICO claim against any defendant, but they plainly have failed to do so as against the OSA. "Because the mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Nasik*, 165 F. Supp. 2d at 537 (S.D.N.Y. 2001) (internal quotation omitted). Plaintiffs' RICO claims, as pled against the OSA, fail and must be dismissed.

## II.    PLAINTIFFS' SECTION 1983 CLAIMS AGAINST THE OSA FAIL.

Plaintiffs have not demonstrated direct participation on the part of the OSA that caused any of the alleged constitutional violations underpinning Plaintiffs' § 1983 claims.[2] Nor have Plaintiffs identified any alleged policy or custom of the OSA giving rise to a constitutional violation. In fact, Plaintiffs have likewise failed to establish "supervisory liability" under § 1983 because the SAC does not allege any facts supporting its assertion that the OSA was deliberately indifferent to constitutional violations occurring under its watch.

A plaintiff bringing a § 1983 claim against a municipal or corporate entity must plead sufficient facts to establish two elements: (1) that an employee or agent of the entity committed a constitutional violation, and (2) that a policy or custom of the municipality or corporation "was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)); *see also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (stating that "caselaw from this and other circuits has extended the Monell doctrine to private § 1983 defendants). For a private entity to be held liable under § 1983 (assuming it can be considered a state actor), the entity must be shown to have its own policy or custom "that was the 'direct cause' or 'moving force' behind the constitutional violation," and the entity must have "directly participated in the challenged conduct." *Dubbs v. Head Start*, Inc., 336 F.3d 1194, 1215; 1217 (10th Cir. 2003).

---

[2] Plaintiffs have also failed to demonstrate that the OSA is a state actor for purposes of § 1983. In Brief G, Plaintiffs assert that the OSA is a state actor because: 1) it is a "willful participant" in joint activity with the State or its agents; 2) there is a sufficiently close nexus between the State and the OSA such that the OSA's actions may fairly be treated as the State's; and 3) there is a "symbiotic relationship" between the State and the OSA. The OSA does not meet any of these tests for state action based upon the analysis set forth in the OSA's MTD, which need not be rehashed here. (Doc. 405, pp. 13-15).

4

OSA's Reply to Brief G

As an initial matter, <u>Plaintiffs have not pointed to any employee or agent of the OSA that has participated in any alleged constitutional violation</u>. This alone is dispositive of Plaintiffs' § 1983 claims against the OSA.

In addition, Plaintiffs essentially concede a lack of direct participation by the OSA in the constitutional violations alleged in Counts Two, Three, Five, and Seven—focusing mainly on Count Six as purportedly involving the OSA's direct participation. Yet, even as to Count Six, Plaintiffs state only that the OSA is a direct participant because it signed a contract that created an impermissible financial bias *for Aberdeen.* (Brief G, p. 16). In other words, Plaintiffs only assert direct action on the part of the OSA because of the financial bias they attribute to Aberdeen. This does not state a claim against the OSA because it 1) fails to allege an actionable constitutional violation and 2) makes no showing of causation between the OSA contracting with Aberdeen and the alleged Due Process violation.

While a financial stake in the outcome of **proceedings** can create a conflict of interest such that procedural due process is implicated, the conflict arises only as to the "decisionmaker". *See, e.g., Monroe v. City of Lawrence, Kan.*, 124 F. Supp. 3d 1097, 1131 (D. Kan. 2015) ("Impartiality of the tribunal is an essential element of due process."). An example of this type of claim would be where a judge has a financial stake in the outcome of a case. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 891 (2009) ("It is well established that a judge may not preside over a case in which he has a 'direct, personal, substantial, pecuniary interest.'"). Even in such instances, "the risk of bias must be 'intolerably high' to violate due process." *Monroe*, 124 F. Supp. 3d at 1131. Plaintiffs have not alleged that the OSA plays any role in deciding any aspect of the Plaintiffs' collective fates in their criminal cases. The OSA has no such role, and the signing of an agreement with Aberdeen does not change this fact. Count Six necessarily fails.

5

OSA's Reply to Brief G

Counts Two, Three, Five, and Seven likewise fail. Plaintiffs' contention that the OSA has directly participated in the alleged unconstitutional conduct at issue in these Counts is weak at best. Plaintiffs assert that OSA is "enabling" Aberdeen to seek unconstitutional warrants, which in turn, directly leads to warrants being issued and executed in violation of the Fourth and Fourteenth Amendments." (Brief G, p. 17). In doing so, Plaintiffs appear to rely on the supervisory liability doctrine of § 1983 and its corresponding "deliberate indifference" standard. (*Id.*). Plaintiffs cannot show supervisory liability because 1) the OSA cannot be held liable under a theory of supervisory liability because it is not an individual; 2) even if such a theory applied, the OSA does not supervise any of the alleged participants; and 3) there's been no showing of knowledge on the part of the OSA of any unconstitutional conduct.

The OSA is not a "supervisor", it's an entity. "A theory of 'supervisory liability' may be available against individuals employed by [an entity], but is inapplicable to the corporation itself." *Stutes v. Burkhart*, No. CIV-08-207-M, 2008 WL 3896113, at *3 (W.D. Okla. Aug. 19, 2008); *see also Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987) ("when supervisory liability is imposed, it is imposed against the supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates"); *Green v. City of Paterson*, 971 F. Supp. 891, 912 (D.N.J. 1997) ("A local governmental entity cannot be held liable pursuant to supervisor liability for the conduct of its employees."). Plaintiffs do not point to any employee or agent of the OSA that supervises any individual involved in the alleged constitutional deprivations. Further, Plaintiffs cite no authority extending supervisory liability in the manner they suggest.

The Plaintiffs' own allegations demonstrate that the OSA is not tasked with supervising anyone involved in this case. The conduct Plaintiffs decry involves the seeking, issuance, and

execution of warrants and collection of debt in an allegedly unconstitutional manner. The OSA does not oversee any of these processes or the individuals that carry them out. In fact, the contract between the OSA and Aberdeen expressly precludes the OSA from exercising supervisory control over the manner in which Aberdeen carries out its job:

> **It is expressly understood and agreed that Association shall not exercise any control over the methods by which Aberdeen, shall perform Aberdeen's work and functions.**

(Doc. 212-1, at ¶ 17 (emphasis added)). The OSA has no right or obligation under the contract to supervise Aberdeen's work (or anyone else's). This stands in stark contrast to the supervisory liability cases cited by Plaintiffs in which the supervisors at issue (all individuals) have clear authority, and indeed, the obligation, to exercise control and supervision over their employees (for example, a sheriff tasked with overseeing a jail). As such, the OSA cannot be a supervisor for purposes of § 1983 supervisory liability.

Even assuming the OSA could be considered any other Defendants' supervisor (which it cannot and is not), Plaintiffs still allege no facts showing the OSA's approval of or deliberate indifference to any unconstitutional conduct.[3] The Tenth Circuit has held that supervisors are not liable under 42 U.S.C. § 1983 unless there is "'an affirmative link ... between the constitutional deprivation and either the supervisor's personal participation, [ ] exercise of control or direction, or [ ] failure to supervise.'" *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (quoting *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)). That is, the Plaintiffs must show a direct link between the unconstitutional acts of a supervisor's subordinates and the supervisor's "**adoption of any plan or policy ...—express or otherwise—showing their authorization or**

---

[3] In its 100-plus pages, the SAC never once references a theory of supervisory liability or deliberate indifference with respect to any defendant, let alone the OSA. That theory of liability simply has not been pled.

7

OSA's Reply to Brief G

**approval of such misconduct**." *Dodds v. Richardson*, 614 F.3d 1185, 1200-01 (10th Cir. 2010) (omission in original). No such showing is made here.

Plaintiffs' response fails to even attempt to demonstrate any problematic policy or custom or deliberate indifference on the part of OSA. Instead, it simply cites authority regarding supervisory liability and fails to explain how the OSA would meet any of the standards set forth in the cited cases. (*See* Brief G, pp. 15-16). Left with no facts to support any alleged deliberate indifference or knowledge of and acquiescence to unconstitutional conduct (assuming these standards even applied to the OSA), Plaintiffs' § 1983 claims fail and must be dismissed.

### III. PLAINTIFFS' STATE LAW CLAIMS FAIL AS PLED AGAINST THE OSA.

**Abuse of Process.** Rather than directly address their failure to plead facts to satisfy the three elements of a claim for abuse of process—most prominently the element requiring the actual use of the court's process—Plaintiffs cite two totally inapposite cases in an effort to squeeze this claim past dismissal. Both of the cited cases are negligence cases that do not discuss abuse of process. *See Baldonado v. Chavez*, No. 14cv382 WJ/CG, 2015 WL 13650071 (D.N.M Nov. 24, 2015) (discussing whether an officer of a corporate entity could be held individually liable for the alleged negligence of said entity; *Marth v. Kingfisher Commercial Club*, 144 P. 1047 (Okla. 1914) (discussing whether a corporation and its officers could be liable in negligence for having planned, arranged, promoted, and negligently selected the participants for a foreseeably dangerous event). Plaintiffs have not alleged in the SAC that the OSA ever *used*, much less abused, court process, and Plaintiffs have cited no authority supporting their novel interpretation of this claim.

**Duress.** In Brief G, Plaintiffs wholly fail to support their claim for "Duress" against the OSA. There is no contract alleged between any Plaintiff and the OSA which Plaintiffs may seek to rescind through a theory of "Duress." Plaintiffs point solely to a contract between a few of the

Plaintiffs and Aberdeen. Plaintiffs fail to cite any authority suggesting that the OSA could be held liable for a claim of duress that relates to an alleged contract to which it is not a party. This claim against the OSA must be dismissed.

**Unjust Enrichment.** In Brief G, Plaintiffs assert that the OSA's receipt of a statutorily-authorized portion of fines, fees and costs owed by Plaintiffs is somehow unjust because members of the Oklahoma judiciary, with whom the OSA has no relation, allegedly issued unlawful warrants acted upon by Aberdeen in an unlawful manner. Plaintiffs cite no authority supporting the position that the alleged wrongful conduct of third-parties can render unjust another's passive and statutorily-authorized receipt of court-ordered fees.[4] Count Ten should dismissed.

## IV.   MOOTNESS.

The OSA seeks dismissal of Plaintiffs' claims for injunctive and declaratory relief as moot because of changes in Oklahoma law. In an effort to avoid this mootness argument, Plaintiffs argue that they "challenge *practices*, not any statute or rule". (Brief G, p. 22). But the practices Plaintiffs refer to are provided for by statute, and those statutes are changing in a major way on November 1, 2023. Any claim on the part of Plaintiffs that the Defendants in this case will disregard or violate those new statutory rules in the future is rank speculation and insufficient to overcome mootness.

Plaintiffs incorrectly attempt to put the onus on the OSA to meet the high burden imposed under the voluntary cessation doctrine (*see* Brief G, p. 24), but that doctrine does not apply here. When a change in statute is at issue in a mootness challenge, it is the Plaintiff that must show its challenge is not moot. *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1334 (11th Cir. 2005)

---

[4] Instead, Plaintiffs' attempt to minimize the Oklahoma Supreme Court's 2016 statement in *Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 374 P.3d 820, 828 (Okla. 2016) that a party "is not unjustly enriched . . . by retaining benefits involuntarily acquired which law and equity give him absolutely without any obligation on his part to make restitution" by citation to district court opinions pre-dating it by 30 years.

("National bears the burden of presenting affirmative evidence that its challenge is no longer moot. Mere speculation that the City may return to its previous ways is no substitute for concrete evidence of secret intentions."). In order to overcome this burden, Plaintiffs would have to show a "substantial likelihood that the challenged statute will be reenacted", which they have not done. *Id.* (internal quotations omitted); *see also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1117 (10th Cir. 2010) ("A case cease[s] to be a live controversy if the possibility of recurrence of the challenged conduct is only a speculative contingency.") (internal quotations omitted).

Plaintiffs have also attempted to recharacterize their lawsuit to avoid the implications of challenging Oklahoma's statutory framework, however that recasting should be ignored for purposes of evaluating mootness. *See, e.g., Scharff v. Wyeth*, No. 2:10–CV–220–WKW, 2011 WL 3320501, at *16 (M.D. Ala. Aug. 2, 2011) ("Substance, not labels, governs."); *Paramo v. IMICO Brickell*, LLC, No. 08–20458–CIV, 2008 WL 4360609, at *7 (S.D. Fla. Sept. 24, 2008) ("[T]his Court looks beyond the captions and labels in a complaint to the content and substance of the allegations ....").

Critically, Plaintiffs' response completely fails to demonstrate why the new statutory processes that will go into effect under HB2259 will not impact the relief they request. In fact, Brief G does not even so much as mention the injunctive and declaratory relief Plaintiffs seek in their SAC. That is likely because Plaintiffs' requested injunctive and declaratory relief squarely overlaps with the new due process protections created under HB2259. In the absence of any explanation as to why HB2259 will not obviate the need for the injunctive and declaratory relief sought in the SAC, that requested relief should be dismissed as moot.

The OSA respectfully requests that its Motion to Dismiss be granted.

Respectfully Submitted,

/s/   Isaac R. Ellis
Robert Dale James, OBA #16667
Melodie Freeman-Burney, OBA #12667
Isaac Robertson Ellis, OBA #30072
CONNER & WINTERS, LLP
4000 One Williams Center
Tulsa, OK 74172-0148
Tel: 918.586.5711
rob.james@cwlaw.com
mburney@cwlaw.com
iellis@cwlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

/s/ Isaac R. Ellis