# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARLY GRAFF, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ABERDEEN ENTERPRIZES II, INC., *et al.*,<br><br>Defendants. | 4:17-CV-606-TCK-JFJ<br>*Hon. Terence C. Kern* |

## THE COUNTY SHERIFF DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO THE INDIVIDUAL-CAPACITY MOTION TO DISMISS

Robert S. Lafferrandre, OBA #11897
Randall J. Wood, OBA #10531
Jeffrey C. Hendrickson, OBA #32798
**PIERCE COUCH HENDRICKSON**
**BAYSINGER & GREEN, L.L.P.**
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
jhendrickson@piercecouch.com

*Attorneys for County Sheriff Defendants*

– August 31, 2023 –

The Plaintiffs' Response to the County Sheriff Defendants' individual-capacity Motion to Dismiss is, once more, an exercise in re-framing. Like an ever-changing chameleon, Plaintiffs again tell the Court that certain allegations, previously little advertised, are actually the most important allegations, the real allegations, while other allegations are less important if extant at all. Too, the Plaintiffs continue to mischaracterize the CSDs' arguments in an effort to gin up the appearance of a one-sided debate. It is not. The CSDs' original arguments, plus the replies herein, demonstrate why the Court should dismiss them from the case with prejudice.

I.   **THE PLAINTIFFS CONTINUE TO FLOUT THE PLEADING STANDARDS ARTICULATED IN *TWOMBLY* AND *IQBAL*.**

As with the previous round of briefing, the Plaintiffs' entire response is afflicted with their failure to understand the ins and outs of plausibility pleading as set out *Bell Atlantic Corp. v. Twombly* and refined in *Ashcroft v. Iqbal*. At repeated points, Plaintiffs baldly claim to have complied with the applicable pleading standards despite having changed no single part of their Second Amended Complaint—and despite the fact that the SAC is replete with generalities about what the entire set of County Sheriff Defendants did, not what specific County Sheriffs did. *See* ECF 415, pg. 6 (with no authority: "It is not improperly 'collective' to plead that multiple defendants have engaged in the same type of unconstitutional conduct[.]").

The problem with this conclusion is that no existing law supports it. The fact is, as discussed below, Rule 8(a) requires a complaint to "contain a short and plain statement of the claim showing that the pleader is entitled to relief," *see Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008), which the Supreme Court—well before this suit was filed—clarified to mean that "a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As the CSDs already pointed out, the level of specificity required to establish plausibility and give fair notice, in this federal

circuit, "depends on the contact and the type of case." *See Frey v. Town of Jackson*, 41 F.4th 1233, 1232 (10th Cir. 2022); *see also* ECF 415, pg. 33. In *this* type of case, a § 1983 claim, showing plausibility requires "connecting defendants to misconduct in pleadings[.]" *Shrum v. Cooke*, 60 F.4th 1304, 1312 (10th Cir. 2023). Said differently, "to recover damages from each of [multiple] defendants under § 1983, [Plaintiff] had to show that such defendant personally participated in the alleged constitutional violation."). *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018). They have to show *who* did *what* to *whom*. *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013).

In a phrase, Plaintiffs have simply never, at any point, made this showing with regard to the overwhelming majority of the CSDs. The only actual argument Plaintiffs offer about any specific act of each CSD is that they pleaded that the CSDs each contracted with Aberdeen while knowing about Aberdeen's conduct, and then that each CSD "knowingly executed unconstitutional arrest warrants." *See* ECF 415, pg. 4. But because the named Plaintiffs have borderline descriptive claims against exactly one of the fifty-one CSDs involved, these allegations tell us *nothing* about *anything* that the remaining fifty CSDs did or did not do that violated the rights of persons heretofore unknown.

What, for example, is Sheriff Rick Wallace of Alfalfa County—not even located in this federal district—supposed to take away from the Plaintiffs' Second Amended Complaint? What did Aberdeen do in Alfalfa County? Who, by name, is claiming that Alfalfa County and/or Sheriff Wallace personally violated their rights? There is not a single mention of any person, act, or event in the SAC that even tangentially mentions Sheriff Wallace *or* Alfalfa County aside from their names in the case style and in footnote 8. *See* ECF 212, pg. 17. So it goes for almost every other CSD named in the SAC. This flatly defies Rule 8's directive for a plaintiff to show that they are entitled to relief. *None* of the named Plaintiffs allege that Rick Wallace or Alfalfa County (or the

other fifty CSDs not specifically mentioned the SAC) did anything to them. This reality contributes to several of the CSDs' arguments broadly, but most specifically and basically, it does not track Rule 8 in the slightest, and thus warrants dismissal.

Of course, Plaintiffs do include paragraphs where they make conclusory allegations against the "Defendants" generally. But it is well known that "general allegations against a group of defendants are insufficient," *In re Reciprocal of America (ROA) Sales Practices Litigation*, No. MDL-1551, 2007 WL 2866160, *4 (W.D. Tenn. Sept. 27, 2007), and that is especially true when the "collective allegations" are made in support of § 1983 claims. *Bills v. City of Oklahoma City*, Okla., No. CIV-09-974-D, 2010 WL 3604450, *4 (W.D. Okla. Sept. 10, 2010) ("Allegations against a group of defendants collectively are insufficient to withstand dismissal of a § 1983 claim; the Tenth Circuit has expressly so held") (citing *Robbins*, 519 F.3d at 1250). At any point where the CSDs contend Plaintiffs have failed to adequately allege facts—be it in standing, in an individual immunity claim, in a substantive failure to plead argument—Plaintiffs' overarching failure to get specific as to each CSD supports the CSDs' contention and dooms Plaintiffs' constitutional and RICO claims against the CSDs.

**II.    THE PLAINTIFFS FAIL TO SHOW WHY THEY HAVE PRUDENTIAL STANDING TO SUE THE COUNTY SHERIFF DEFENDANTS.**

Turning to the substantive arguments, Plaintiffs respond first to the CSDs' contention that they lack Article III and prudential standing. *See* ECF 415, pgs. 4-8. Though for the reasons set out in the CSDs' motion, see ECF 407, pgs. 11-13, Plaintiffs cannot show a case or controversy to satisfy Article III as to an overwhelming number of the CSDs,[1] the CSDs' focus in reply is on the

---

[1] This is because the CSDs do not contract with Aberdeen; they assign their right to contract to the Oklahoma Sheriffs' Association, who in turn contracts with Aberdeen to collect debts owed to the State of Oklahoma. *See* Okla. Stat. tit. 19, § 514.4(E); *see also* ECF 430, Reply Br. of Tulsa County, at pgs. 3-5.

Plaintiffs' flat inability to articulate how their class-action complaint establishes prudential standing against all but one of the CSDs.[2] Recall that prudential standing requires of class-action plaintiffs in a multi-defendant suit that they show that each defendant has harmed at least one named plaintiff. *See*, *e.g.*, *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 188 (4th Cir. 1993); *see also Hunnicutt v. Zeneca, Inc.*, No. 10-CV-708-TCK-TLW, 2013 WL 4321392, at *3 (N.D. Okla. Sept. 19, 2012) (citing *Cent. Wesleyan Coll.*). This is an off-shoot of the concept that "named plaintiffs who represent a class must allege and show that they have been personally injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *see also Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1159 (10th Cir. 2011) ("Prior to class certification, the named plaintiffs' failure to maintain a live case or controversy is fatal to the case as a whole—that unnamed plaintiffs might have a case or controversy is irrelevant"). Plaintiffs make two arguments as to why prudential standing exists as to the CSDs. Both fail.

***Conspiracy Standing.*** First, Plaintiffs tell the Court—with citations only to forty-plus-year-old, non-binding opinions from the 1980s—that when alleging a conspiracy, they can "sue all participants in the conspiracy, regardless of whether [they] interacted with each individual participant." *See* ECF 415, pgs. 7-8 (citing *Rios v. Marshall*, 100 F.R.D. 395 (S.D.N.Y. 1984) and *Brown v. Cameron-Brown Co.*, Civil Action No. 78-0836-A, 1980 WL 1856 (E.D. Va. June 13, 1980)). Assuming for the reply this is true—it does not appear the Tenth Circuit has ever taken up

---

[2] Appearing to realize their prudential-standing problem, the Plaintiffs tacitly concede that "at the very least," only the CSDs of Cleveland, Wagoner, and Creek County must remain in the case. *See* ECF 415, pgs. 6-7. But that is itself not accurate, as the cited portions of the SAC which reference those counties mention only the acts of those counties' district courts and underlying county personnel who function as arms of the state, not the CSDs in those counties. Moreover, the Plaintiffs flatly get the law wrong—the cost-and-fee program is not county policy, but state policy. *See* Okla. Stat. tit. 28, § 151(D); *see also* Okla. Stat. tit. 19, §§ 514.4-514.5.

the question—*Rios* and *Brown* stand only for the proposition that a plaintiff can sue defendants with whom the plaintiff has not dealt if those non-dealing defendants participated with the harm-dealing defendants in a conspiracy that itself harmed the plaintiff.

In *Rios*, for example, the Southern District of New York found certain plaintiff farmhands in a proposed class action had standing to sue their employers, as well as other employers that did not employ them but employed probable non-named farmhand class members, on a theory that the entire lot of employers participated in an alleged conspiracy among the employers to replace the resident farmhands with temporary foreign workers, and thereby harm the named plaintiffs. *See* 100 F.R.D. at 404. The court concluded that the named farmhands had sufficiently alleged a conspiracy *among* (or *between*) the similarly-situated defendants such that standing was conferred on the named farmhands to bring class claims against apple growers that did not employ them but who engaged in the conspiracy with the apple growers that did employ them. *Id.* at 405.

In *Brown*, an antitrust suit, the Eastern District of Virginia concluded that certain plaintiff mortgagors in a proposed class action had standing to sue their mortgage lenders, as well as lenders who did not hold their mortgages but held mortgages of probable non-named mortgagors, on a theory that the entire lot of lenders participated in an alleged conspiracy to eliminate one method of accounting for mortgage escrow payments, which in turn reduced competition in the mortgage loan market. 1980 WL 1856, at *1. The court concluded that the named mortgagors had sufficiently alleged a conspiracy *among* (or *between*) the similarly-situated lenders such that standing was conferred on the named mortgagors to bring class claims against lenders that did not hold their mortgages but who engaged in the conspiracy with the lenders that did. *Id.* at 405. The principle is thus clear: in each case, standing was conferred over the non-dealing defendants because those defendants still participated in a conspiracy between the primary defendants which operated to

harm the named plaintiffs.

That principle is not applicable here because Plaintiffs do not allege a broad, horizontal[3] conspiracy between or among the CSDs; to the extent ascertainable, they allege individual, vertical conspiracies between each CSD, the OSA, and Aberdeen. In other words, Plaintiffs do not sufficiently allege that the CSDs themselves conspired between the CSDs to violate Plaintiffs' rights, unlike the apple growers in *Rios* or the mortgage lenders in *Brown*. As such, Plaintiffs do not conceivably allege they suffered harm from any CSD with whom they also did not interact. Sheriff Rick Wallace in Alfalfa County did not conspire with Sheriff Bryan Jump in Coal County to violate the rights of any named Plaintiff—none of whom, by the way, alleged they've ever set foot in Alfalfa or Coal Counties to begin with.

This concept, as it were, is illustrated neatly by a case cited directly in *Rios* as an example of how the conspiracy-defendant standing exception does not operate. In *Vulcan Soc. of Westchester v. Fire Dep't of City of White Plains*, while discussing class certification, the Southern District of New York observed that each of a set of named race-discrimination plaintiffs only had standing to sue the municipality "from which he has…allegedly been the subject of discriminatory practices and policies" because there was no "proper allegation of conspiracy or other joint liability sufficient to confer on a plaintiff from one municipality standing to sue another municipality." *See Vulcan*, 82 F.R.D. 379, 398 (S.D.N.Y. 1979). The court determined that there was no identity of interests among plaintiffs from separate municipalities that would give rise to a claim from one plaintiff against a municipality with which he was not directly associated. *Id.* That, plus the fact,

---

[3] The CSDs' argument here borrows concepts from antitrust conspiracy law, which itself has a standing doctrine that differs in application when one alleges a price-fixing conspiracy among a vertical column (a vertical conspiracy) versus a conspiracy among a horizontal group (a horizontal conspiracy). *See Marion Diagnostic Center, LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 342 (7th Cir. 2022).

that each municipality as "a separate legal entity, [was] individually responsible for any practices or policies of discrimination within its jurisdiction," meant that there would be simply no cause of action against a municipality if there wasn't a named plaintiff with a claim against it. *Id.* at 399, n. 31. So it is here. Plaintiffs simply do not plead facts sufficient to show a conspiracy between the CSDs, as opposed to multiple individual conspiracies between each CSD, OSA, and Aberdeen, such that they could rely on the conspiracy-defendant standing exception—to the extent it even exists in the Tenth Circuit.

    ***Juridical Link.*** As a secondary position on standing, Plaintiffs pivot to cite the "juridical link" doctrine to establish standing against CSDs with whom none of them have personally dealt. *See* ECF 415, pg. 8. Plaintiffs acknowledge this Court's past refusal to apply the juridical link doctrine, *see Hunnicutt*, 2012 WL 4321392, at *3, n. 3, and it remains the case that there appears to be no Tenth Circuit authority even citing the doctrine (even now, fifty years since the Ninth Circuit created it), much less finding it applicable to a particular set of facts. Contra the Plaintiffs' claim that *Hunnicutt* was so "factually distinct" from this case that the plaintiffs "explicitly disclaimed reliance on the doctrine," the *Hunnicutt* plaintiffs abandoned the argument because the juridical link doctrine does not apply to standing. *See* 2012 WL 4321392, at *3, n. 3 ("Plaintiff conceded that the juridical link doctrine does not apply to standing[.]").

    This Court was correct to discard the juridical-link doctrine as a creature of standing in *Hunnicutt*. The majority view is that the juridical-link doctrine simply does not apply to standing—a conclusion impliedly reached even by the Ninth Circuit itself, which created it.[4] Given these

---

[4] *See, e.g., Bahamas Surgery Center, LLC v. Kimberly-Clark Corporation*, 820 F. App'x. 563, 565–66, n.4 (9th Cir. 2020) (finding juridical link doctrine "irrelevant" and rejecting standing as to defendant that did not manufacture gowns purchased by named plaintiff in disputed transaction); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (rejecting juridical link doctrine).

persuasive authorities, and the frank lack of direction from the Tenth Circuit on the topic, this Court should decline Plaintiffs' invitation to adopt the juridical-link doctrine as a matter of standing and dismiss the CSDs on prudential-standing grounds.

### III. THE COUNTY SHERIFF DEFENDANTS REMAIN ENTITLED TO QUASI-JUDICIAL IMMUNITY ON ALL CLAIMS.

Turning to the CSDs' invocation of quasi-judicial immunity, *see* ECF 407, pgs. 14-18, Plaintiffs again shift the emphasis of their claims to dance around a straightforward application of the immunity doctrine. The CSDs argued, simply, that their execution of warrants is a judicial function because there are no specific allegations that any CSD acted in a way that would give them knowledge that any particular warrant they executed was unlawful. *Id.* Thus, to hold the CSDs liable would force them into the very pseudo-appellate role specifically disavowed by the Tenth Circuit in cases like *Turney v. O'Toole* and *Moss v. Kopp. Id.* at 16.

To counter, Plaintiffs reorganize their claims once more. They now say the CSDs cannot claim quasi-judicial immunity because they continue to "contract" with Aberdeen despite knowing Aberdeen's practices. *See* ECF 415, pg. 9. They also now say the CSDs know any warrant issued when Aberdeen is involved is "invalidly obtained" because the CSDs know about Aberdeen's practices generally—the content of any one order notwithstanding. *See* ECF 415, pgs. 11-12. Thus the CSDs can't claim quasi-judicial immunity because, effectually, every Aberdeen-adjacent warrant they execute is not lawful. *Id.* There are several glaring problems here.

*One*, the CSDs do not "contract" with Aberdeen. *See* footnote 1, *supra*, at 4. They, under authorization from state law and a directive from the Oklahoma Supreme Court, assign rights to the OSA to contract. That distinction removes the CSDs one step from the process at the forefront. *Two*, the CSDs' assignment of rights to the OSA *is* a judicial function. As Tulsa County explains, *see* ECF 430, pgs. 4-6, the cost-and-fee system functions to collect revenue for the state courts, a

system the Oklahoma Supreme Court itself ordered district courts to engage in. *Id.* at 5. They so engage by the CSDs' assignment of contract rights, done on the state's behalf, to enable collections of state-owed debt. *Id.*; *see also* Okla. Stat. tit. 74, § 85.41. Thus the CSDs' only authorized acts are ministerial ones, in service to the Oklahoma Supreme Court. *See Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000). Thus the very act of contracting is plainly a judicial function.

*Three*, Plaintiffs' argument that the CSDs know that any warrant ever issued when Aberdeen is involved is invalid because the CSDs know of Aberdeen's alleged tactics falls short both of Rule 8 and of quasi-judicial immunity principles more generally. Rule 8 because there is simply no allegation about any specific act of any specific CSD toward any specific Plaintiff; QJI because Plaintiffs would have the Court believe that executing any warrant that contains some inherent defect causes quasi-judicial immunity to evaporate, when that is not so. In *Moss*, the Tenth Circuit highlighted the parameters of "facial validity," observing that a "narrow conception of facial validity would deprive the court of most of the benefit it derives from the existence of quasi-judicial immunity for officers carrying out its orders because the unhesitating execution of court orders is essential to the court's authority and ability to function, and state officers subject to litigation might neglect to execute these orders." *Id.* (quoting *Turney,* 898 F.2d at 1473).

Given this authority, it cannot be the case that to comply with the applicable constitutional provisions, a CSD must refuse to execute any order signed by a judge simply because the CSD knows Aberdeen is involved in the case. That type of contention—as with nearly all of Plaintiffs' arguments in this case—sounds far more like an attack on the laws that authorize the cost-and-fee system than it does on the CSDs' involvement therein.

### IV. THE COUNTY SHERIFF DEFENDANTS REMAIN ENTITLED TO QUALIFIED IMMUNITY ON ALL CLAIMS.

For the same reasons articulated in Section III, the County Sheriff Defendants are entitled

to qualified immunity on all claims raised in the Plaintiffs' allegations. This is precisely because the Plaintiffs failed to plead facts sufficient to support any additional claim besides that the CSDs assign their contract rights to the OSA, which then contracts with Aberdeen, and the CSDs execute warrants they know are unconstitutional because they know how Aberdeen behaves. Plaintiffs' claim that these acts involve the CSDs in RICO and federal constitutional violations. But these claims, lacking any indicia of specificity, fail under *Twombly/Iqbal* and under the heightened pleading standard the Tenth Circuit applies to § 1983 claims. *See Robbins, supra*, at 1.

That leaves the CSDs' initial argument as the correct one: the Plaintiffs attempt to define the constitutional right at issue at too high a level of generality, when the reality is, they seek vindication of very narrow rights that were not established at the time Plaintiffs filed suit: (1) the right to have non-attorney actors independently review judicial orders for constitutional firmness, and/or (2) the right to be free from the consequences of government officials engaging in acts expressly permitted by state law—contract-assignment and the 30% surcharge, for two—when those laws have never been declared unconstitutional. Indeed, Plaintiffs *still* claim they are not challenging the validity of the state laws discussed in this case. As their response shows however, they clearly are.

V. **THE COUNTY SHERIFF DEFENDANTS DEFER TO THEIR ORIGINAL BRIEFING ON ALL REMAINING ISSUES.**

The CSDs otherwise refer this Court to their original briefing on all remaining issues, including the Plaintiffs' failure to plead RICO claims and mootness under revisions to Okla. Stat. tit. 22, § 983. To the extent the constitutional questions disputed under the Equal Protection Clause apply the CSDs in both capacities, the CSDs in their individual capacity adopt by reference their arguments in reply as set out in the CSDs' official-capacity reply brief.

- 11 -

Date: August 31, 2023                    Respectfully submitted,

                                         s/ Jeffrey C. Hendrickson
                                         Robert S. Lafferrandre, OBA #11897
                                         Randall J. Wood, OBA #10531
                                         Jeffrey C. Hendrickson, OBA #32798
                                         **PIERCE COUCH HENDRICKSON**
                                         **BAYSINGER & GREEN, L.L.P.**
                                         1109 North Francis Avenue
                                         Oklahoma City, Oklahoma 73106
                                         Telephone: (405) 235-1611
                                         Facsimile: (405) 235-2904
                                         jhendrickson@piercecouch.com

                                         ***Attorneys for County Sheriff Defendants***

## CERTIFICATE OF SERVICE

      I certify that on **August 31, 2023** I electronically transmitted the attached document to the Clerk of this Court using the ECF System for filing. Based on the records currently on file, the Clerk will transmit a Notice of Electronic Filing all ECF registrants who have appeared in this case.

s/ Jeffrey C. Hendrickson  
Jeffrey C. Hendrickson
