# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1)   CARLY GRAFF, )<br>)<br>On behalf of themselves and all others )<br>similarly situated, )<br>)<br>           Plaintiffs, )<br>)<br>vs. )<br>)<br>(1) ABERDEEN ENTERPRIZES II, INC., )<br>AN OKLAHOMA CORPORATION, ET AL., )<br>)<br>           Defendants. ) | Case No. 17-CV-00606-TCK-JFJ |

## REPLY BRIEF OF DEFENDANT SHERIFF SCOTT WALTON (INDIVIDUAL CAPACITY) IN SUPPORT OF HIS RENEWED MOTION TO DISMISS

COMES NOW Defendant Sheriff Scott Walton (individual capacity) and pursuant to the Court's previous Order hereby files this Reply Brief in Support of his Renewed Motion to Dismiss, (Doc. 408).

Respectfully submitted,

Thomas A. LeBlanc, OBA #14768
BEST & SHARP
One West Third Street
Williams Center Tower I, Suite 900
Tulsa OK 74103
(918) 582-1234 Telephone
(918) 585-7447 Facsimile
tleblanc@bestsharp.com
*Attorneys for Defendants,*
*Scott Walton, Sheriff of Rogers County,*
*in his official and individual capacities;*
*Board of County Commissioners of Rogers*
*County, Oklahoma; and Kim Henry, Rogers*
*County Court Clerk, official capacity only.*

August 31, 2023

**REPLY BRIEF OF DEFENDANT SHERIFF SCOTT WALTON (INDIVIDUAL CAPACITY) IN SUPPORT OF HIS RENEWED MOTION TO DISMISS**

COMES NOW Defendant Sheriff Scott Walton (individual capacity) and hereby files this Reply Brief in Support of his Renewed Motion to Dismiss, (Doc. 408).

**I.   DEFENDANT WALTON IS ENTITLED TO ABSOLUTE IMMUNITY**

The Tenth Circuit has adopted a broad view of absolute immunity with respect to those defendants whose duties have an integral relationship with the judicial process. *See Valdez v. City and Cty. of Denver*, 878 F.2d 1285, 1287 (10th Cir. 1989). And there is no dispute that said immunity applies to a sheriff's role in serving warrants or other court process. *Id.*; *Whitesel v. Sengenberger*, 222 F.3d 861, 865 (10th Cir. 2000) (pre-trial service officers); *Hackett v. Artesia*, 379 Fed. Appx. 789, 793 (10th Cir. 2020) (police officer); *Lopez v. Shapiro*, 139 F.3d 912 (10th Cit. 1998) (unpub.) (sheriff deputy); *Moss v. Kopp*, 449 F.3d 1155 (10th Cir. 2009) (sheriff deputy).

In response, Plaintiffs make predictable but ultimately unpersuasive arguments. First, in whipsaw fashion, Plaintiffs suggest they are not *really* suing Sheriff Walton for his role in serving process but are instead alleging that he was involved in a conspiracy with court clerks to transfer "cases" to Aberdeen and that he "benefits financially" from this arrangement. (Doc. 418 at 6). This argument is unpersuasive because, according to Plaintiffs' Second Amended Complaint, these very processes are directly linked to the service of judicial process (warrants). (*E.g.*, Doc. 212, ¶30) (connecting Aberdeen contract and Sheriff with the alleged "arresting and confining individuals on debt-collection arrest **warrants** issued based on unsworn statements.") (bold added). And, in truth, Plaintiffs' Second Amended Complaint makes it clear – repeatedly – that Plaintiffs are suing Sheriff Walton for his role in serving warrants. (Doc. 212, ¶¶ 284, 324, 334, 349, 361). Hence, based on Tenth Circuit law, absolute immunity applies. *See Valdez.*

Second, Plaintiffs suggest that absolute immunity should not apply where the defendant "knows" that the warrant is, in fact, invalid and/or where they Sheriff played an "active role" in

1

"procuring invalid warrants." (Doc. 418 at 6-7). Even aside from the falsity of Plaintiffs' allegations regarding the Sheriff's "role" in "procuring" warrants, these arguments do not overcome absolute immunity in light of the Second Amended Complaint. Plaintiffs suggest that the Sheriff knows, or has reason to know, that the warrants are invalid because the Sheriff is aware that defendants do not receive adequate due process guarantees, i.e., a hearing on their ability to pay, prior to the issuance of said warrants. (*E.g.*, Doc. 212, ¶324; Doc. 418 at 7). But, the law does not place an obligation on the Sheriff to assess the appropriateness of the legal process by which bench warrants are issued. Law enforcement officers are not required to act as "pseudo-appellate courts scrutinizing the orders of judges" because "[t]he public interest demands strict adherence to judicial decrees." *See Valdez*, 878 F.2d at 1289. Plaintiffs cite no case law showing that Sheriffs have a legal duty to understand *Bearden* and all of its implications.[1] Sheriffs are not required to be attorneys or judges. Rather, they serve and execute all process, writs, precepts, and orders issued by lawful authorities. 19 O.S. §514.

Further, the Tenth Circuit has rejected Plaintiffs' narrow view of absolute immunity. In *Turney v. O'Toole*, 898 F.2d 1470 (10th Cir. 1990), the plaintiff sued various individuals responsible for enforcing a court order requiring the confinement of the plaintiff due to his violence and suicidal ideations. Much like Plaintiffs here, the *Turney* plaintiff suggested that the defendants *should have known* that the confinement order violated various statute statutes. But, the Court, in a lengthy analysis of the policy implications of any different rule, rejected this argument, finding that "[e]ven assuming that the order was infirm as a matter of state law, it was facially valid. 'Facially valid' does not mean 'lawful.' An erroneous order can be valid." *Id.* at 1473. And, "to accept so narrow a conception of facial validity would eliminate much of the immunity granted

---

[1] The parameters of *Bearden* are not even clear to the bench and the bar. "*Bearden* is not a beacon of clarity as is evidenced by the struggle numerous courts exhibited in their early attempts to decipher the decision." *Winbush v. State*, 433 P.3d 1275, 1278 (Okla. Crim. App. 2018) (citing cases). Plaintiffs do not explain how they can further impute such legal knowledge to Sheriffs.

2

just last year in *Valdez*. . .[S]ubjecting them to liability for executing an order because the order did not measure up to statutory standards would" have the effect of requiring them to be "pseudo-appellate courts scrutinizing the orders of judges." *Id.* The only exception noted by the Court was a scenario whereby an order was issued in the "clear absence of all jurisdiction." *Id.; see also Moss v. Kopp*, 559 F.3d 1155, 1166 (10th Cir. 2009) ("[We] have deplored a 'narrow conception' of facial validity . . .").

In this case, there is simply no doubt the state courts had authority to issue bench warrants. 22 O.S. §§ 966A, 967; 19 O.S. §514.4. The district courts were not "clearly without jurisdiction." And, it is also undisputed that, in the underlying criminal law proceedings, Plaintiffs were obligated to make payments to the Court for their violations of Oklahoma law, and yet had failed to make such payments. In Oklahoma, the burden is <u>on the defendant</u> to prove that his failure to pay was not willful or that he has made sufficient *bona fide* efforts to pay. *See Winbush v. State*, 433 P.3d 1275, 1280 (Okla. Crim. App. 2018). Hence, bench warrants for failure to pay cannot be considered "facially unlawful" under these circumstances. Sheriffs cannot be presumed to know that any additional procedures were required before serving such a facially valid warrant.

Plaintiffs also argue that the bench warrants were "administrative" only and therefore absolute immunity should not apply. (Doc. 418 at 14). Plaintiffs cite an unpublished decision from New Jersey wherein the Court found that, with respect to claims against certain judges, it was possible that the collection of fines was more of an "administrative task of collecting fines than the judicial act of imposing them." *See Kneisser v. McInerney*, 2018 WL 1486033 (D. N. J. 2018). In contrast, the bench warrants at issue here are not administrative in nature. Plaintiffs affirmatively allege that "Judges routinely sign these debt-collection arrest warrants" based on the clerk's determination that the defendant had not satisfied certain court-imposed obligations. (Doc. 212, ¶5). This clearly implicates a judicial function – assessing the effect of a defendant's failure

3

to abide by the terms of their sentence and/or plea agreement and subsequent issuance of a bench warrant.[2]  Hence, absolute immunity applies to Plaintiffs' claims against Sheriff Walton.[3]

Finally, Plaintiffs suggest that they can obtain "prospective" relief against Sheriff Walton in his individual capacity.  This is simply not the case.  "Under § 1983, a plaintiff cannot sue an official in their individual capacity for injunctive or declaratory relief."  *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1214 (10th Cir. 2022), *cert. denied sub nom.* 143 S. Ct. 1748; *see also Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief.").  For these reasons, Sheriff Walton is entitled to absolute immunity.[4]

## II.     DEFENDANT WALTON IS ENTITLED TO QUALIFIED IMMUNITY

Sheriff Walton is also entitled to qualified immunity.  Plaintiffs have failed to show that Sheriff Walton violated their constitutional rights and have failed to show that any such right was clearly established.  Further, it is undisputed that Sheriff Walton reasonably relied on directives of the Oklahoma Legislature and Oklahoma Supreme Court.

---

[2] Plaintiffs have also failed to show that the holding in *Kneisser* has been adopted in the Tenth Circuit.  Rather, bench warrants are closely associated with the judicial process, and therefore absolute immunity applies to a Sheriff's service of same.  *See Hackett, supra*; *see also Burns v. Reed,* 500 U.S. 478, 492 (1991) (noting that "the issuance of a search warrant is unquestionably a judicial act" and hence absolute immunity applied to prosecutor's appearance at hearing in support of search warrant and presentation of evidence at hearing).

[3] Plaintiffs also attempt to compare the bench warrants at issue here with a sheriff's attempt to obtain a warrant by putting "false or misleading information into the warrant application."  However, <u>obtaining a warrant for arrest is wholly different that serving a court order</u>.  Absolute immunity applies to the latter.  *See Valdez, supra.; Lundhal v. Zimmer*, 296 F.3d 936 (10th Cir. 2002) (clerk's role in entry of default judgment "unquestionably constitutes a judicial act").

[4] Defendant maintains his standing arguments as well, but does not have sufficient room in this brief to further address those arguments.  This case does not implicate county-level policies or decision-making, but rather, implicates <u>the State's</u> system for collection of fines, costs, and fees.

*No Constitutional Violation.* Plaintiffs now concede that neither Graff nor Holmes have been arrested by Sheriff Walton for a mere failure to pay. (*E.g.,* Doc. 418 at 2). Indeed, Plaintiff Graff has no outstanding warrants or court debt. (Doc. 342). Rather, their constitutional claims are premised on their alleged fear that such warrants might exist (or existed in the past) and might have possibly been enforced against them. *Bearden* did not hold that any such fear amounted to a violation of the Fourth or Fourteenth Amendments. Hence, because Plaintiffs have identified no constitutional violation, Defendant Walton is entitled to qualified immunity.

Plaintiffs claim that they have identified four separate constitutional violations against Sheriff Walton, i.e., (1) executing warrants based on nonpayment without a hearing on "ability to pay"; (2) executing warrants which were based on "unsworn allegations" of failure to pay; (3) jailing debtors without proof of willfulness or without compliance with Rule 8; and (4) subjecting debtors to onerous collection methods. None of these allegations apply to Graff or Holmes. Further, Plaintiffs cite *Bearden*, but *Bearden* did not determine state that *a Sheriff* violated a criminal defendants' constitutional rights by executing a warrant where the defendant has violated the terms of his probation or plea agreement. In addition, Plaintiffs cite no case law showing that *a Sheriff* has an obligation to look behind a warrant to ensure it is supported by "oaths or affirmations."[5] Plaintiffs cite no authority for the proposition that *a Sheriff* is constitutionally obligated to evaluate whether a district court judge has complied with Rule 8 when said judge authorized a bench warrant. Plaintiffs cite no law recognizing a constitutional right to be free from the use of a private contractor to assist in collecting court costs, nor any constitutional right

---

[5] For instance, bench warrants may be issued without oath or affidavit based upon the personal knowledge of the magistrate. *State v. Davidson*, 618 N.W.2d 418, 425 (Neb. 2000) ("To require the production of a separate affidavit, where the evidence supporting a finding of probable cause is personally known to the court and can be set forth in the warrant itself, would accomplish nothing other than to elevate form over substance."); *State v. Mohs*, 743 N.W.2d 607 (Minn. 2008); *Ex parte Cranford*, 105 P. 367 (Okla. Crim. App. 1909) (bench warrant). The oath or affidavit requirement is excused where the warrant is based on information held in the clerk's office and is within the personal knowledge of the court. *E.g., State v. Pinela*, 830 P.2d 179 (N.M. App. 1992).

5

to be free of collection costs related to the use of such a contractor. Plaintiffs cite no law recognizing a right to be free from "onerous collection enforcement methods," particularly in light of the absence of *any* allegation that *the Sheriff* himself engaged in conscious-shocking behavior. Plaintiffs' briefing on this issue is sparse, (Doc. 418 at 10-13), which shows they lack any basis for asserting that Sheriff Walton violated any particular Plaintiffs' constitutional rights.

*No Clearly Established Law.* Plaintiffs do not provide a separate analysis of the "clearly-established" prong of the analysis with respect to each of their claims. (Doc. 418 at 10-13). Instead, Plaintiffs muddle the concepts. (*Id.*). The two prongs of the qualified immunity analysis are normally analyzed separately, and the "record must clearly demonstrate the plaintiff[s] ha[ve] satisfied [their] heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." *Felders v. Malcom*, 755 F.3d 870, 877-78 (10th Cir. 2014); *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996) ("Unless the plaintiff carries its twofold burden, the defendant prevails."). Plaintiffs also do not separately address *each* claim[6] in their complaint.

Notably, Plaintiffs cite zero cases where a Sheriff has been held liable for executing warrants under the circumstances of this case. Zero. None. *Bearden* did not involve the liability of a Sheriff for executing an arrest warrant, or arrests based on "unsworn allegations" of failure to pay, or the use of a private contractor, or alleged "onerous" collection efforts. Plaintiffs cite *Turner v. Rogers*, 564 U.S. 431 (2011), claiming it established "minimum procedural safeguards that must be met before the government may arrest or jail a person for nonpayment." (Doc. 418). It did no such thing. *Bearden* is not referenced in *Turner*. *Turner* addressed whether the due process clause required a state to provide counsel at a father's civil contempt proceeding, and held that the due process clause did not require the provision of counsel even where the party

---

[6] Plaintiffs must satisfy their burden with respect to "each claim" in their complaint. *Estate of Booker v. Gomez*, 745 F.3d 405, 418 (10th Cir. 2014). Plaintiffs do not attempt to differentiate their claims or otherwise show that the law was clearly-established with respect to claims 2, 3, 5, and 7. They have failed in their "heavy" burden to show that the law was clearly-established.

6

faced incarceration. *Id.* at 448. It did not address a criminal defendant's failure to abide by the terms of their plea agreement, and certainly <u>did not address the role of a Sheriff in this process</u>.

Plaintiffs rely on *James v. Strange*, 407 U.S. 128 (1972), but that case did <u>not</u> find that a Sheriff had violated anybody's constitutional rights. In *James*, the Supreme Court held that a Kansas statute violated the Equal Protection Clause because it permitted the State to recoup court-appointed attorney fees from indigent criminal defendants without permitting them to raise any of the defenses available to other civil judgment debtors, including certain protections from wage garnishment. *See James*, 407 U.S. at 142. *James* does not support Plaintiffs' assertions that they have a constitutional right to be free from collection efforts by a third-party, nor does it support the notion that a State is prohibited, by the U.S. Constitution, from permitting a third party to assist in collecting duly-imposed fines and fees. Oklahoma has a rational, legitimate basis for collecting fees and fines from those who violate Oklahoma law. In addition, *James* dealt with the constitutionality of a state statute concerning recoupment of court-appointed attorney fees, and <u>not with a sheriff's statutory obligation to serve warrants issued by district courts of the State of Oklahoma</u>. *James* also does not identify a clearly-established constitutional right related to (as alleged by Plaintiffs) "use of a private debt-collection company that harasses and threatens debtors." (Doc. 418 at 13). Plaintiffs have cited no portion of *James* that would have alerted Sheriff Walton that his conduct was a violation of a criminal defendant's constitutional rights. Because Plaintiffs have failed to identify any clearly-established law with respect to their constitutional claims (Claims 2, 3, 5, 7), Sheriff Walton is entitled to qualified immunity.

***State law and Supreme Court Order.*** Finally, in considering the "objective legal reasonableness" of a state officer's actions, one relevant factor is whether the defendant relied upon a state statute, regulation or official policy that sanctioned the conduct in question. Here, the entirety of Walton's conduct at issue in this case was authorized by state statute. Sheriff Walton was obligated to serve warrants. 19 O.S. §§ 514, 516. District courts were directed by the

7

Oklahoma Supreme Court to participate in the misdemeanor/failure-to-pay warrant program authorized by 19 O.S. §514.4. (Dkt. #226-9). Oklahoma law <u>allows</u> sheriffs to enter into contracts to collect on outstanding misdemeanor and failure to pay warrants, and <u>allows</u> sheriffs to assign their rights to contract to the state Sheriff's Association. 19 O.S. §514. In addition, the statutes <u>allow</u> for the imposition of a 30% administrative cost when the matter is referred to the contractor – i.e., one of the costs that Plaintiffs challenge in this case and which serves as the basis for their theories about "financial incentives." *Id.* It would be fundamentally unfair to impose personal liability on Walton for participation in a program that was explicitly sanctioned by Oklahoma law and an Oklahoma Supreme Court directive. *E.g., Saved Magazine v. Spokane*, 19 F.4th 1193, 1200 (9th Cir. 2021) (qualified immunity granted). Walton is entitled to qualified immunity.[7]

### III. PLAINTIFFS' RICO CLAIMS FAIL FOR NUMEROUS REASONS

In light of Plaintiffs' Response, it is clear that Plaintiffs' RICO claims are wholly without merit. First, Plaintiffs have failed to establish <u>standing</u> to pursue a RICO claim. Plaintiffs claim that they suffered a "loss of money," and that this classifies as an injury to "property." In truth, Plaintiffs have suffered no injury to their "property" because they do not challenge their underlying convictions: fees and costs form a proper and valid basis for their sentence for violating Oklahoma law, and the State has a valid basis for seeking to recover those fees from criminal defendants. Hence, the fact that Plaintiffs are required to pay fees and costs as part of their plea and pay agreements does not mean they have suffered an injury to "property" within the meaning of RICO.

---

[7] Plaintiffs argue that qualified immunity does not apply to RICO claims. This argument is incorrect. Because the RICO claims are necessarily tied to Sheriff Walton's alleged role in executing warrants and/or related to his relationship with collection on those warrants, qualified immunity applies. *E.g., BEG Investments, LLC v. Alberti*, 34 F. Supp. 3d 68, 81 (D.D.C. 2014) ("Although this Circuit has not explicitly decided whether state actors are entitled to qualified immunity on RICO claims, other circuits have routinely allowed defendants to raise qualified immunity as a defense in suits involving RICO."); *Brown v. Nationsbank Corp.*, 188 F.3d 579, 587 (5th Cir. 1999); *Cullinan v. Abramson*, 128 F.3d 301, 308 (6th Cir. 1997).

In fact, Plaintiffs prevailed at the Tenth Circuit based on their argument that they only challenged "collection methods," and not the underlying fees and costs.[8]

For their "predicate act," Plaintiffs continue to rely on extortion statutes. <u>To reiterate, a governmental actor's attempt to collect on a debt owed to the government is not considered extortion</u>. *Wilkie v. Robbins*, 551 U.S. 537, 564-65 (2007). That is precisely the situation before the Court. Plaintiffs attempt to wire-around the holding of *Wilkie* by suggesting that some of the fees are used to pay for the contractor's services in the collection efforts. As stated previously, the fines and fees, including the 30% surcharge, form part of the criminal defendant's sentence. 28 O.S. §101. <u>Even this 30% fee is for the benefit of the government in its effort to collect fees and costs owed to the government by criminal defendants</u>. 19 O.S. §514.5. Those funds are even subject to audit. 19 O.S. §514.5(C). Sheriff Walton's alleged role in the collection of these fees and costs cannot form the basis of a RICO claim. <u>Plaintiffs may complain about the process afforded to them to recover fines, fees and costs, but this does not amount to "extortion</u>." Because Plaintiffs cannot identify a RICO predicate act (insofar as each act relied upon by Plaintiffs [i.e., Hobbs Act, Travel Act, and state law] requires a showing of "extortion"), the RICO claim fails.

Plaintiffs' allegations also fail to show that Walton and other defendants "conducted" the affairs of an "enterprise" through a pattern of racketeering activity. 18 U.S.C. §1962(c). For their "enterprise" theory, Plaintiffs have argued that the Defendants acted together for the purposes of maximizing the collection of money from those who owe money to governmental authorities. (Dkt. #418 at 19-21). However, the alleged "enterprise" at issue was permitted by Oklahoma

---

[8] The opinion noted that "no claim for relief set out in the SACADC can reasonably be read as seeking to recover the amount of court debt originally imposed in the judgment of conviction. Rather, each claim for monetary relief . . . seeks to make Plaintiffs whole for the alleged constitutional, statutory, and state law violations Plaintiffs suffered as a result of Defendants' **post-judgment collection methods**." *Graff v. Aberdeen*, 65 F.4th 500, 519 n.24 (10th Cir. 2023) (bold added); *see also* Doc. 418 at 4 (noting Plaintiffs challenge "method of collecting – not assessing court debt."). That is, Plaintiffs seek damages for "personal injuries," and not for an injury to "property" within the meaning of RICO. *Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006).

9

statutory law; Oklahoma law allowed for the hiring of a contractor to assist in collection of valid court debt.  Likewise, the fees and costs that Plaintiffs complain of (and which form part of the alleged RICO injury) were permitted by Oklahoma law.  Walton's alleged participation or "conduct" in the "enterprise" (i.e., his alleged connection with the Sheriff's Association and Aberdeen) was pursuant to the authority granted him <u>by Oklahoma law</u>.  A defendant does not participate in a RICO "enterprise" when the only allegations show that he was providing services in the regular course of his job responsibilities.  *E.g., Safe Streets v. Hickenlooper*, 859 F.3d 865, 884 (10th Cir. 2017); *Kahre v. Damm*, 342 Fed. Appx. 267, 268 (9th Cir. 2009) (finding "conduct" element not satisfied since officers were acting pursuant to search/arrest warrants and indictments "in accordance with their duties under law'); *Sinclair v. Hawke*, 314 F.3d 934, 943 (8th Cir. 2003).

Finally, Plaintiffs suggest that they have established that the RICO enterprise affects "interstate commerce" because defendants send "mail" and make "telephone calls" and because the enterprise has collected money which *might* have been used to purchase goods in interstate commerce.  (Dkt. #418 at 19).  Plaintiffs' allegations are thread-bare.  Plaintiffs challenge an *Oklahoma* statutory system designed to collect fees and costs owed by those who violate *Oklahoma* law.  The fees are collected on behalf of *Oklahoma*; Plaintiffs are residents of *Oklahoma*, or have been charged with violating *Oklahoma* law.  This is purely intrastate conduct.  And Plaintiffs' "depletion of assets" argument is faulty because Plaintiffs owe these fees and costs as part of their criminal sentence, and those amounts would be unavailable to spend on interstate commerce in any event.  Plaintiffs' arguments in favor of the "interstate commerce" requirement are insufficient.  *E.g., Waucaush v. United States*, 380 F.3d 251, 257 (6th Cir. 2004).

**IV.     CONCLUSION**

Plaintiffs have failed to cite a single case where a Sheriff has been held liable under the circumstances at issue in this case.  Sheriff Walton is entitled to absolute and qualified immunity.  And Plaintiffs have otherwise failed to state a claim for relief.

WHEREFORE, Defendant Scott Walton requests that all claims against him be dismissed.

10

Respectfully submitted,

BEST & SHARP

*s/ Thomas A. LeBlanc*
Thomas A. LeBlanc, OBA #14768
One West Third Street
Williams Center Tower I, Suite 900
Tulsa OK 74103
(918) 582-1234 Telephone
(918) 585-7447 Facsimile
tleblanc@bestsharp.com
*Attorneys for Defendants,*
*Scott Walton, Sheriff of Rogers County,*
*in his official and individual capacity; Board*
*of County Commissioners of Rogers*
*County, Oklahoma; and Kim Henry, Rogers*
*County Court Clerk (official capacity only)*

## **CERTIFICATE OF MAILING**

I hereby certify that on the 31st day of August, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

Daniel E Smolen
danielsmolen@ssrok.com
Donald E. Smolen
donaldsmolen@ssrok.com
Robert M. Blakemore
bobblakemore@ssrok.com
Seth T. Wayne
sw1098@georgetown.edu
Mary B. McCord
mbm7@georgetown.edu
Elizabeth Rossi
elizabeth@civilrightscorps.org
Douglas N. Letter, Admitted Pro Hac Vice
dl1016@georgetown.edu
Ryan Downer, Admitted Pro Hac Vice
ryan@civilrightscorps.org
Marco Lopez, Admitted Pro Hac Vice
marco@civilrightscorps.org
Tara Mikkilineni, Admitted Pro Hac Vice
tara@civilrightscorps.org

Ryan Downer
ryan@civilrightscorps.org
Leonard Laurenceau, Admitted Pro Hac Vice
leo@civilrightscorps.org
Shelby Calambokidis, Admitted Pro Hac Vice
sc2053@georgetown.edu
Ellora Thadaney Israni. Admitted Pro Hac Vice
ellora@civilrightscorps.org
*Attorneys for Plaintiffs*

John R Woodard III
john@csmlawgroup.com
Jennifer L. Struble
jstruble@cswlawgroup.com
*Attorney for Aberdeen Enterprizes II, Inc.,*
*Jim D. Shofner and Rob Shofner*

Jeffrey C. Hendrickson
jhendrickson@piercecouch.com
Robert Lamar Betts
rbetts@piercecouch.com
April D. Kelso
akelso@piercecouch.com
Robert S. Lafferandre
rlafferandre@piercecouch.com
Randall J. Wood
rwood@piercecouch.com
*Attorneys for 51 Sheriff Defendants*
*Excluding the Sheriffs of Oklahoma, Rogers*
*and Tulsa Counties*

Rodney J. Heggy
rod.heggy@oklahomacounty.org
Aaron Etherington
aaron.etherington@oklahomacounty.org
Carri A. Remillard
carri.remallard@oklahomacounty.org
*Attorney for PD Taylor, Oklahoma County Sheriff*

Chris M. Warzecha
cwarzecha@cwlaw.com
Isaac Robertson Ellis
iellis@cwlaw.com
Melodie Freeman-Burney
mburney@cwlaw.com
Robert Dale James
rob.james@cwlaw.com

Conner & Winters, LLP
*Attorneys for Oklahoma Sheriffs' Association*

Stefanie E. Lawson
stefanie.lawson@oag.ok.gov
*Attorneys for Judge Dawn Moody, Judge Doug M. Drummond, Judge Williams J. Musseman, Jr. and Judge Terrell S. Crosson*

Joel L. Wohlgemuth
jlw@nwcjlaw.com
Jo Lynn Jeter
jlj@nwcjlaw.com
W. Caleb Jones
wjones@NWLawOK.com
Douglas A. Wilson
douglas.wilson@tulsacounty.org
Mike Shouse
mshouse@tulsacounty.org
*Attorneys for Don Newberry, Tulsa County Court Clerk, Vic Regalado, Tulsa County Sheriff, Darlene Bailey, Tulsa County Cost Administrator, Board of County Commissioners for Tulsa County*

Scott Wood
okcoplaw@aol.com
*Attorney for Kim Henry*

*s/ Thomas A. LeBlanc*