IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARLY GRAFF, *et.al.* <br><br> Plaintiffs, <br><br> v. <br><br> ABERDEEN ENTERPRIZES II, INC., *et al.*, <br><br> Defendants. | Case No.: 17-cv-606-TCK-JFJ |

**DEFENDANT STATE JUDGES' REPLY IN
SUPPORT OF THEIR MOTION TO DISMISS**

Defendant State Judges[1], by and through their attorney of record, Assistant Attorney General Stefanie E. Lawson, and file this Reply to Plaintiff's Response [Doc. 422] to Defendant State Judges' Motion to Dismiss [Doc. 412].

Defendant State Judges would note at the outset that Plaintiffs' conclusory allegations as to how the statutory system works and the constitutional requirements for issuing bench warrants or the characterization of potential arrests on a bench warrant as an order of incarceration is not supported as explained by Judge Kern's Opinion and Order, issued March 12, 2021. *See* [Doc 352, pp. 6-10].[2] Plaintiffs may

---

[1] Judge David Guten currently occupies Judge Musseman's former office as District Judge in Tulsa County. He was sworn in to this seat in January 2023. He was not on the bench and did not participate in any steering committee referenced in the SAC. Judge Julie Doss currently occupies Judge Dawn Moody's office as Special Judge in Tulsa County. She does not preside over the cost docket. Judge Anthony Miller is currently presiding over the general weekly cost docket.

[2] The Tenth Circuit Opinion reversing the application of abstention in Judge Kern's Order did not address, and thus leaves intact, Judge Kern's determination of the statutory and constitutional foundation for issuing bench warrants for failure to appear or failure to pay. *See Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239,

insist that a judge is required to provide an evidentiary hearing to inquire as to why a defendant is non-compliant with a court order prior to issuing a warrant for that same non-compliance, but that assertion is not, in fact, an accurate reflection of what is required. As Judge Kern stated "Prior to issuance of a bench warrant a court need only review its own records – of which it may take judicial notice – to determine whether there is probable cause to believe that the defendant has failed to comply with a court order. No provision of state law requires a court to support the issuance of a bench warrant with a sworn affidavit. OKLA. STAT. tit. 22, § 967. The Constitution does not contain such a requirement either." [Doc. 352 at 7].

***Standing***

Plaintiffs assert that they do, in fact, have standing because they have alleged multiple and concrete ongoing injuries in fact which are fairly traceable to Defendant State Judges' warrant and jailing practices and which would be redressable by a declaratory judgment finding those practices unconstitutional. The Response rehashes the broad indictment of the failure to pay enforcement practices of the Defendant State Judges. Plaintiffs essentially assert they have standing because they currently and will continue to disregard their validly imposed criminal sentences and refuse to utilize easily accessed and adequate remedies that have always been available to address inability to pay. Plaintiffs seek to have a federal court intervene

---

1242 (10th Cir. 2016)( "[a] legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, [generally] becomes the law of the case." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 321 F.3d 950, 992 (10th Cir. 2003);

even though the state court has always supplied multiple avenues to redress post-sentencing changes in circumstances that affect ability to pay. Named Plaintiffs have not, however, alleged enough to establish standing. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Plaintiffs must allege enough facts to state a claim to relief that is plausible on its face [] and not just conceivable. *Twombly* at 570; *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

To establish constitutional standing, a plaintiff must demonstrate "(1) that he or she has 'suffered an injury in fact;' (2) that the injury is 'fairly traceable to the challenged action of the defendant;' and, (3) that it is 'likely' that 'the injury will be redressed by a favorable decision.'" *Awad v. Ziriax*, 670 F.3d 1111, 1120 (10th Cir. 2012) (quoting *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011)). These three requirements are often referred to as "injury in fact, causation, and redressability." *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1224 (10th Cir. 2008).

Causation requires "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the[e] result [of] the independent action of some third party not before the court.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct.

2130 (1992) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42, 96 S. Ct. 1917, 1926 (1976)) (ellipses and brackets in original). Causation for standing purposes can, therefore, be defeated by voluntary action— purely self-inflicted injury is not fairly traceable to the actions of another. *See Petro–Chem Processing, Inc. v. EPA*, 866 F.2d 433, 438 (D.C.Cir.1989). "[S]elf-inflicted harm doesn't satisfy the basic requirements for standing" since it is neither a "cognizable" injury nor "fairly traceable to the defendant's challenged conduct." *Nat'l Family Planning & Reproductive Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006). In *Clapper v. Amnesty Int'l USA*, the Supreme Court considered the concept of self-inflicted harm as pertaining to standing and explained that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending" because such injuries "are not fairly traceable" to the conduct creating that fear. 568 U.S. 398, 416 (2013). "[O]therwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing by making an expenditure based on a nonparanoid fear." *Id.*

As Judge Kern explained in his Order, the entire premise which Plaintiffs rely on to assert their claims against Defendant State Judges and how warrants for non-payment of court obligations are issued is flawed. Plaintiffs assert that Defendant State Judges' practice of issuing failure to pay warrants prior to an inquiry into a debtor's ability to pay violates the debtor's rights. The Oklahoma Court of Criminal Appeals, shortly after the filing of the Second Amended Complaint, issued its opinion in *Winbush v. State*, 2018 OK CR 38, 433 P.3d 1275, in which it explained that, prior

to a sentence of incarceration pursuant to failure to make court ordered payments, the trial court must determine that the defendant has not paid but the burden then shifts to the defendant to show that the failure to pay was not willful. *See also Conroy-Perez v. State*, 2019 OK CR 5, ¶ 11, 440 P.3d 64, 67 (citing *Winbush*, 433 P.3d 1275). *Winbush* concerned a probationer that had agreed to two different payment plans but failed to make any payments toward his costs, fines and fees. *Winbush* at ¶ 2. Mr. Winbush eventually appeared before the court after the District Attorney sought revocation of his probation based in part on failure to pay. *Id*. at ¶ 3. Mr. Winbush did not present any evidence of his poverty or any bona fide efforts to make payments. *Id*. at ¶ 4. The trial court revoked his probation based on the failure to pay alone. *Id*. On appeal, Mr. Winbush argued that the District Attorney had not proved an unwillingness or refusal to pay and the trial court had not so inquired. *Id*. at ¶ 5.

The Court of Criminal Appeals, interpreting *Bearden v. Georgia*, 461 U.S. 660 (1983) and relying on *Tollet v. State*, 387 P.3d 915 (Okla. 2016) and *McCaskey v. State*, 781 P.2d 836 (Okla. 1989) determined that the inquiry into the ability to pay comes only after the debtor demonstrates that failure to pay was not willful. The State has the burden to show that the debtor has not paid, but the debtor then has the burden to show that the failure to pay was not willful because the court is not in possession of the information needed to determine the ability to pay without the debtor. *Winbush* at ¶¶ 7, 11 ("it is not 'inequitable, oppressive, or substantially prejudicial' to place the burden of proof on the defendant when the State cannot viably bear the burden because, if such facts exist, they are " 'peculiarly within [the defendant's] knowledge,

and could be easily susceptible of proof by him.'") *Id.* (quoting *Tollet v. State*, 387 P3d 917).

As noted in Defendant State Judges' Motion to Dismiss [Doc. 412], the Oklahoma Court of Criminal Appeals Rules 8.1, *et seq.* provide process and remedy for ongoing review of a defendant's continued ability to pay her court debts. Specifically, Rules 8.3, 8.4, 8.5, and 8.6 provide for installment payments with a fixed due date of each payment, opportunity to be heard as to failure to make payments, and incarceration if defendant fails to appear on or before the due date of installment or for examination for ability to pay. *See* OKLA. STAT. tit. 22, Rule 8.3, 8.4, 8.5, and 8.6.

Plaintiffs admit they owe court debts and have not made or attempted to make payments in some time. [Doc. 422, pp. 7-8, 12.]. They also continue to assert that failure to pay warrants are issued by and with the approval of the Defendant State Judges without an inquiry into the debtors ability to pay, or the notice or opportunity for the court debtors to assert their indigence is a violation of Plaintiffs' rights. *Id.* at p. 15. Plaintiffs have not stated in their Response that any named Plaintiff has specifically been arrested on a failure to pay warrant in the five years since the filing of the Second Amended Complaint [Doc. 212], though certain Plaintiffs acknowledge existence of outstanding warrants. *See Kansas Nat. Res. Coal. v. United States Dep't of Interior*, 971 F.3d 1222, 1231 (10th Cir. 2020) (". . . for an injury to be imminent, it must be certainly impending." (quotations and citations omitted)). Plaintiffs further allege and admit that cost dockets occur regularly, at least twice a week. [Doc. 422,

pp. 5, 7]. Plaintiffs have not alleged, and in fact it is not the case, that the cost dockets are reserved for debtors arrested on failure to pay warrants. Plaintiffs have not alleged that they have availed themselves of the constitutionally adequate process already in place to assert their indigence and thereby adjust their financial obligations. Plaintiffs cannot, and have not, gained standing to assert these claims against the Defendant State Judges by failing to participate in the process which is granted and guaranteed by Oklahoma statutes and rules.

Plaintiffs' position is that they have no agency or responsibility to resolve their own obligations absent this Court's intervention. That simply cannot be the case. *See Clapper, supra*. There is no support for Plaintiffs' contention that the cost-collection procedures are constitutionally deficient simply because the onus is on the court debtor to request review of her circumstances and seek relief from those obligations. There is no presumption of indigence by virtue of failing to make court-ordered payments. The court debtor bears the burden of showing indigence because she is in the unique position of possessing the pertinent information. *Winbush v. State, supra*, at ¶¶ 7, 11 ("it is not 'inequitable, oppressive, or substantially prejudicial' to place the burden of proof on the defendant when the State cannot viably bear the burden because, if such facts exist, they are '"peculiarly within [the defendant's] knowledge, and could be easily susceptible of proof by him."'") (*quoting Tollet,* 387 P.3d 917). A bench warrant may be issued to alert a debtor that the court requires an explanation. As has always been the case, no debtor, however, is required to wait until the court summons her to explain or seek relief. Plaintiffs have been, and remain, free to

appear at the cost administrator on or before the installment due date each month and seek placement on the cost docket to show indigence as provided by the Rules. *Winbush* clarifies that the onus is on the debtors once a failure to pay has been determined to show failure to pay was not willful. No Plaintiff has availed themselves of the opportunity to show their indigence or seek adjusted payment terms, thereby putting themselves at risk for failure to pay or failure to appear warrants and potential arrest. Any potential injury for failure to pay warrants is therefore self-inflicted and Plaintiffs cannot show that any potential injury is fairly traceable to the Defendant State Judges.

As to the claims against Judges Drummond and Musseman specifically, Plaintiffs' legal conclusion that as individual District Judges either Judge Drummond or Judge Musseman had the authority to supervise any special judge's decisions or had the authority to unilaterally implement any recommendations from a non-binding "steering" committee as a policy or practice in Tulsa County is erroneous. *See* [Doc. 422 at fn 12]. Tulsa County District Court is organized under 20 O.S. Ch. 1 App. 2 Rule 2 (as amended by the Oklahoma Supreme Court at 2011 OK 41, eff. May 12, 2011). Tulsa County has further adopted local general rules (found at https://www.tulsacountydistrictcourt.org/files/TCDC-LocalRulesGeneral-Current12072021.pdf), none of which give any single or pair of District Judges the authority to implement policy for a specific special judge or the court as a whole. Furthermore, not even the Presiding Judge (as defined by the above statute) has the authority to direct hearings or judicial decisions in another courtroom in a matter to

which he is not assigned, as this would interfere with the judicial independence of the other judges. OKLA. CONST., art. VII, §§ 1 and 8; *Harper v. Dist. Ct. of Okla. Cty.*, 484 P.2d 891, 896-897 (Okla. Crim. App. 1971) (Presiding Judge has no ability to interfere with the judicial decisions being rendered by Magistrates or Judges as his directives are administrative only.) The decision to issue a bench warrant in any particular case is not subject to review absent an appeal or application for a writ. Plaintiffs do not, therefore, have standing to assert these claims against the Defendant State Judges because their potential injuries are not fairly traceable to the judges' actions.

***Mootness***

Only prospective relief is potentially available against these judicial Defendants for these claims. The party requesting relief must "demonstrate a good chance of being likewise injured in the future." *Beattie v. U.S.*, 949 F.2d 1092, 1093 (10th Cir. 1991). "If an event occurs while a case is pending that heals the injury and only prospective relief has been sought, the case must be dismissed." *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997). Plaintiffs' claims are moot. In response to State Judge Defendants' mootness argument, Plaintiffs state that it is possible that Defendant State Judges will *not* comply with the amended version of OKLA. STAT. tit. 22 § 983, which takes effect later this year. The amended provisions of § 983 codifies much of the relief sought by Plaintiffs in this action. As Plaintiffs have mentioned in multiple instances throughout their Response, the relief they seek is strictly forward-looking. *See* [Doc. 422, pp. 9, 14, 16-17, 24].

It is wholly speculative to posit that Defendant State Judges would disregard the provisions set forth in § 983 in the future simply because they have allegedly done so in the past. In a case with similar circumstances to the case at bar, the Supreme Court opined in *O'Shea v. Littleton*, 414 U.S. 488, 496-97, 94 S. Ct. 669, 676 (1974), that although "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury[,] injury relying upon the respondents being arrested again under valid, unchallenged laws which would subject them to allegedly discriminatory conduct from the petitioner judges is speculative and calls for conjecture.

Plaintiffs admit to the speculative nature of Defendant State Judges' future conduct regarding collection of court costs, fines, and fees, and they cannot show any likelihood of Defendant State Judges noncompliance with § 983 once the amendments to the statute become effective.[3] Plaintiffs allege that any change in Defendant State Judges allegedly wrongful behavior resulting from the amendments to § 983 amounts to voluntary cessation and does not moot this action. However, there is no voluntary cessation exception to mootness when there is an intervening legislative action creating the mootness. *See Prison Legal News v. Federal Bureau of Prisons*, 944 F.3d 868, 881-2 (10th Cir. 2019)(formal process evidencing changes are permanent in nature and reasonably foreclose repetition of challenged conduct suffices to overcome

---

[3] As for Plaintiffs assertion that there is no guarantee the statute will be effective on November 1, 2023, the Oklahoma Legislature is not currently in session and there are no plans for a special session to be called to consider § 983.

–10–

voluntary cessation exception to mootness).[4] Ultimately, Plaintiffs cannot overcome the mootness of their claims pursuant to the Legislature's action. Thus, Defendant State Judges' Motion to Dismiss should be granted.

Respectfully submitted,

/s/Stefanie E. Lawson
**STEFANIE E. LAWSON, OBA# 22422**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK   73105
Telephone:   (405) 521-3921
Facsimile:    (405) 521-4518
Email: stefanie.lawson@oag.ok.gov
*Attorney for Judicial Defendants*

---

[4] "Courts may accord "more solicitude" to government officials' claims that their voluntary conduct moots a case. *Rio Grande Silvery Minnow*, 601 F.3d at 1116 n.15 (quotations omitted). This solicitude is "not ... invoked automatically." 13C Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 3533.7 (3d ed. Aug. 2019). But, "government self-correction provides a secure foundation for mootness so long as it seems genuine." *Brown*, 822 F.3d at 1167-68 (alterations and quotations omitted). And, absent evidence the voluntary cessation is a sham, the mere possibility a successor official may shift course does not necessarily keep a case live. *See id.* at 1175 (explaining "hypothetical" that a future government official could *882 change a policy "does not breathe life into an otherwise moot case"). *Id.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day August 2023 I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further certify that a true and correct copy of the foregoing document was sent via the ECF System to all counsel of record who are ECF participants.

/s/ Stefanie Lawson
Stefanie E. Lawson
