UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CARLY GRAFF, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-CV-606-TCK-JFJ |
| | ) | |
| ABERDEEN ENTERPRIZES II, INC., | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY TO PLAINTIFFS' OPPOSITION TO RENEWED MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT BY DEFENDANT VIC REGALADO, IN HIS INDIVIDUAL CAPACITY**

**Joel L. Wohlgemuth, OBA #9811**　　　**Douglas A. Wilson, OBA #13128**
**Jo Lynn Jeter, OBA #20252**　　　　　**Michael Shouse, OBA #33610**
**W. Caleb Jones, OBA #33541**　　　　　**Tulsa County District Attorney's Office**
**Norman Wohlgemuth, LLP**　　　　　　**Civil Division**
3200 Mid-Continent Tower　　　　　　　218 W. Sixth St., Suite 933
401 South Boston　　　　　　　　　　　Tulsa, OK 74119
Tulsa, OK 74103　　　　　　　　　　　918-596-8795
(918) 583-7571　　　　　　　　　　　　douglas.wilson@tulsacounty.org
(918) 584-7846 – facsimile　　　　　　　mshouse@tulsacounty.org
JWohlgemuth@NWLawOK.com
JJeter@NWLawOK.com
WJones@NWLawOK.com

**ATTORNEYS FOR DEFENDANTS VIC REGALADO, SHERIFF OF TULSA COUNTY, DON NEWBERRY, TULSA COUNTY COURT CLERK, DARLENE BAILEY, TULSA COUNTY COURT COSTS ADMINISTRATOR, AND BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TULSA**

**August 31, 2023**

Defendant, Vic Regalado, Sheriff of Tulsa County, in his individual capacity, respectfully submits this Reply Brief in support of his Renewed Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. No. 409).

### I. REGALADO IS ENTITLED TO QUASI-JUDICIAL IMMUNITY FOR ENFORCING COURT ORDERS.

The Tenth Circuit's precedent in *Valdez v. City of Denver*, 878 F.2d 1285 (10th Cir. 1989) is binding and indistinguishable. The Tenth Circuit granted absolute quasi-judicial immunity to a sheriff who made an arrest pursuant to a judge's order. *Id.* Absolute quasi-judicial immunity is afforded to officials who carry out functions that are an "important and integral part of the judicial process." *Id.* at 1287-88. A warrant is a judicial act and the Tenth Circuit is clear that courts must have the power to "execute judicial decrees." *Id.* If a sheriff could be sued for carrying out a warrant issued by a judge, "officers might neglect the execution of their sworn duties." *Id.* at 1288.

At base, Plaintiffs seek to hold Regalado *individually* liable for nothing more than his deputies making arrests pursuant to court-issued warrants. Seeking to distinguish this case from *Valdez*, Plaintiffs argue that Sheriff Regalado is not subject to quasi-judicial immunity because "Regalado, through his participation in the OSA, contracts with Aberdeen, assists Aberdeen as required under the contract, and knowingly procures invalid warrants." (Doc. 424, p. 17).

In support, Plaintiffs cite to paragraphs 5, 26, 29-31, 53-60, 65, 81, 282-84, 325, 335, 350, 356 of the Second Amended Complaint. Yet, most of the paragraphs cited make no allegations regarding Regalado; nearly all are merely general allegations regarding the OSA's agreement with Aberdeen. The only specific allegation against Sheriff Regalado is that he maintains a "policy and practice of arresting individuals with outstanding debt-collection warrants knowing that there has been no pre-deprivation process, no inquiry into ability to pay, and no application made based on

1

sworn assertions of fact sufficient to justify an arrest." (Doc. 212, ¶ 31). This allegation is conclusory and similar in nature to the allegations rejected by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the Supreme Court rejected conclusory allegations regarding defendants' knowledge and intent. Nowhere in the Second Amended Complaint ("SAC") do Plaintiffs plead facts showing *how* Regalado himself would have knowledge of warrant defects—Plaintiffs' do not allege, for instance, that Regalado was himself involved in obtaining the warrants from the Court. In fact, it is not alleged that Regalado arrested any of the Plaintiffs. (Doc. 212). Nor is Regalado alleged to have participated in any stage of the proceedings. Much less do Plaintiffs plausibly allege that Regalado, personally, "knowingly procures invalid warrants." (Doc. 424, p. 17).

Plaintiffs never plausibly allege that Regalado "knowingly procures invalid warrants." (Doc. 424, p. 17). Instead, Plaintiffs argue that Regalado should be held liable through a convoluted chain of liability: Regalado is liable because he participates in the OSA, which has contracted with Aberdeen, which has allegedly engaged in improper debt collection practices and, through the Oklahoma court clerks and or cost administrators, have improperly secured arrest warrants. Nowhere along this conspiratorial sequence of liability do Plaintiffs plausibly allege Sheriff Regalado's personal knowledge and participation in this supposed scheme. This is totally inimical to basic §1983 principles: "In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation of a constitutional right must be established." *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006) (emphasis added); *see also Novitsky v. City of Aurora*, 491 F.3d 1244, 1254 (10th Cir. 2007). Nowhere do Plaintiffs explain how execution or performance of a contract can give rise to third-party § 1983 liability.

Ultimately, all Plaintiffs have plausibly alleged regarding Sheriff Regalado is that he is a member of the OSA and that his deputies execute duly issued court process. As Regalado has shown in his Renewed Motion to Dismiss, this cannot possibly suffice to state an individual capacity §1983 claim, and he is entitled to quasi-judicial immunity.

Plaintiffs also argue, based upon a non-precedential opinion from the District Court of New Jersey, that officers are not entitled to quasi-judicial immunity arising from execution of failure-to-pay warrants. Doc. 424 (Citing *Kneisser v. McInerney*, No. 1:15-cv-07043, 2018 WL 1586033, at *14 (D.N.J. Mar. 30, 2018)). *Kneisser* did not involve an officer's execution of court process; the only defendant in that case was a municipal judge, and, in fact, the District Court did not ultimately decide that the defendant was not entitled to judicial immunity. The District Court for the Eastern District of Oklahoma, in *Jones v. Hacker*, reached the opposite conclusion after examining Oklahoma law, the structure of Oklahoma's judiciary, and applying Tenth Circuit case law. *Jones*, 2015 U.S. Dist. LEXIS 34911, *19-20. Nor is the Eastern District of Oklahoma alone in its conclusion that the collection of fines and issuance of bench warrants for failure to pay are acts judicial in nature. *See Cain*, 2017 U.S. Dist. LEXIS 15124, *17-*18 (clerk "seeking" of failure-to-pay arrest warrant was judicial in nature); *Mahoney v. Derrick*, 2022 Ark. 27, 2022 Ark. LEXIS 35 (judge's decision to issue an arrest warrant for someone who is delinquent on their fines is "unquestionably an exercise of his judicial authority").

Plaintiffs do not refute the Fifth Circuit Court of Appeals' decision in *ODonnell v. Harris County*, in which the Fifth Circuit determined that a county sheriff should be dismissed from a practically identical case to the present one. 892 F.3d 147, 156 (5th Cir. 2018). The material facts of *ODonnell* are analogous. Plaintiffs sought to hold the sheriff liable for detaining them pursuant to a monetary release policy that plaintiffs argued was unconstitutional. *Id.* at 152. The Fifth Circuit

3

reasoned that the sheriff must be dismissed because "the Sheriff is legally obliged to execute all lawful process and cannot release prisoners committed to jail by a magistrate's warrant. . . ." *Id.* at 156. The Court concluded that the sheriff cannot "unilaterally declar[e] [the warrant] unconstitutional." *Id.* The same is true for Regalado. He has no authority to unilaterally declare a court order unconstitutional and release detainees absent an Order from the courts. Were he to do so, Regalado could face criminal penalties and removal from office. *See State v. Price*, 2012 OK 51, ¶ 4, fn. 3, 280 P.3d 943, 946; *see also* 21 *Okla. Stat.* §§ 345, 532 and 533; 57 *Okla. Stat.* § 55.

Plaintiffs also did not respond to Regalado's Tenth Circuit precedent of *Moya v. Garcia*, in which the plaintiffs were arrested and detained by the sheriff, which triggered New Mexico's requirement for an arraignment within fifteen days. 895 F.3d 1229, 1233-34 (10th Cir. 2018). The New Mexico courts did not hold the arraignment, resulting in the over detention of the plaintiffs. *Id.* at 1234. Plaintiffs sued the sheriff, arguing that the sheriff "could have mitigated the risk of overdetention by keeping track of whether detainees had been timely arraigned, requesting arraignments for those who had been overdetained, or bringing detainees to court prior to a scheduled arraignment." *Id.* The Tenth Circuit rejected this argument for two reasons: (1) The failure to timely arraign plaintiffs was a failure of the court, not the sheriff, because an "arraignment is a court proceeding that takes place only when scheduled by the court" and (2) even if the sheriff did everything suggested by plaintiffs, "the arraignments could only be scheduled by the court itself." *Id.*

The Tenth Circuit's opinion in *Moya* is determinative. Plaintiffs complain that Regalado arrested them with knowledge that there had not been an inquiry into Plaintiffs' ability to pay. Plaintiffs further argue that they are "held in jail until Regalado brings [them] to see a judge at the next 'cost docket' date, usually the following Tuesday or Friday." (Doc. No. 276, Response, p. 8).

4

*First*, there is no allegation that Regalado executes out-of-custody affidavits or otherwise prepares failure-to-pay bench warrants that his deputies subsequently execute. *Second*, Regalado must execute the warrant. He does not, and cannot, conduct a failure-to-pay inquiry himself (or "cost docket") prior to arresting and detaining a defendant. That is solely the courts' responsibility, just as it was the New Mexico court's responsibility to conduct arraignment hearings in *Moya*. *See* 22 *Okla. Stat.* § 983(A) (A defendant may be imprisoned for nonpayment when "*the trial court* finds after notice and hearing that the defendant is financially able but refuses or neglects to pay.") (emphasis added). *Third*, as the Court in *Moya* made clear, even if the sheriff wanted to, sheriffs have no authority or ability to compel a court proceeding such as an arraignment or a cost docket. Sheriffs cannot refuse to arrest or detain a criminal defendant because the sheriff unilaterally believes the court has not fulfilled its duties. This would cause sheriffs to act as the pseudo-appellate judges that the Tenth Circuit forbid in *Valdez*, *supra*.

## II. REGALADO IS ENTITLED TO QUALIFIED IMMUNITY.

Plaintiffs' assertion that qualified immunity is more properly raised at summary judgment is not in accord with Tenth Circuit precedent. The Tenth Circuit has repeatedly noted that qualified immunity should be decided at the earliest possible stage because "entitlement to qualified immunity 'is an *immunity from suit* rather than a mere defense to liability'" *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 644 (10th Cir. 1988) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis in *Pueblo*). The *Pueblo* court also endorsed granting qualified immunity on a motion to dismiss. *Id.* at 644-645.

To defeat qualified immunity, it is Plaintiffs' burden to show that Regalado (1) violated a constitutional or statutory right; and (2) the right was clearly established. *Moya*, 895 P.3d at 1232; *see also Pueblo*, 847 F.2d at 645. To meet the first step, *Plaintiffs must demonstrate that it was*

5

*Regalado's conduct that deprived Plaintiffs' of their rights. Moya,* 895 P.3d at 1232. The Tenth Circuit in *Moya* determined that any alleged constitutional or statutory violation was not caused by the conduct of the sheriff because the sheriff had no authority to schedule plaintiffs' arraignment; only the court could do so. *Id.* at 1233. The same principle applies here.

Plaintiffs summarize their argument against qualified immunity for Regalado, arguing that Regalado is not entitled to qualified immunity "*if* he knows that the person against whom he executes an arrest warrant has no ability to pay, or *if* he knows that there will be no pre-arrest hearing on ability to pay." (Doc. No. 424, Response, p. 15) (emphasis added). While Plaintiffs have *alleged* Regalado has this knowledge, this is a meaningless conclusory allegation absent factual allegations that make this conclusion plausible. *See Allen v. Town of Colcord*, 874 F. Supp. 2d 1276, 1282 (N.D. Okla. 2012). There are no facts alleged in the SAC from which this Court could deem it plausible that Regalado *knows* what process occurred for each person he arrests on a failure-to-pay warrant. As discussed, *supra*, Plaintiffs allege that it is Aberdeen, the Court Clerk, and the Cost Administrator that seek the warrants, not Regalado. (Doc. No. 212, SAC, ¶¶ 5, 7). It is the judge who signs the warrant, not Regalado. (Doc. No. 212, SAC, ¶ 9). Regalado's first appearance in this process, as alleged by Plaintiffs, is when an arrest is made, at which point he is enforcing a facially valid court order.

### III.   PLAINTIFFS CANNOT ENJOIN REGALADO IN HIS INDIVIDUAL CAPACITY.

The Tenth Circuit has consistently held that a §1983 defendant cannot be enjoined as a matter of law in his individual capacity. *See Brown v. Montoya*, 662 F.3d 1152, 1161 n. 5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."); *see also DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 718 (10th Cir. 1988); *Chilcoat v. San Juan County.*, 41

F.4th 1196, 1214 (10th Cir. 2022) ("Under § 1983, a plaintiff cannot sue an official in their individual capacity for injunctive or declaratory relief.").

Plaintiffs argue that the cited Tenth Circuit authority is distinguishable because several of the cases (though not all them) involved state officials who, in their official capacities, were immune from damages suit under the Eleventh Amendment. Doc. 424, pp. 20-21. The Tenth Circuit has never itself made this distinction in holding that individual capacity §1983 defendants may not be sued for injunctive relief. Moreover, in *Devargas*, the Tenth Circuit affirmatively stated that "[a]n action for injunctive relief no matter how it is phrased is against a defendant in official capacity only; plaintiff seeks to change the behavior of the governmental entity." *DeVargas*, 844 F.2d at 718. This reasoning is clearly applicable to any §1983 defendant, including municipal officers, like Regalado. Regalado acknowledges that in his role as a state actor, that is, in carrying out the orders of a district court judge, he may be subject under applicable law to prospective injunctive relief to prevent any ongoing constitutional violations. This would not, however, be in his individual capacity.

**IV.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST REGALADO IN HIS INDIVIDUAL CAPACITY.**

Regalado cannot be held personally liable for the enforcement of warrants. A § 1983 claim against a government official in their individual capacity must be "based on personal involvement in the alleged constitutional violation." *Brown*, 662 F.3d at 1163. There is no vicarious liability in a § 1983 suit; Plaintiffs must allege facts showing that Regalado personally committed a "deliberate, intentional act . . . to violate constitutional rights." *See Ashcroft*, 556 U.S. 662; *see also Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). As demonstrated in §I, *supra*,

7

Plaintiffs' actual allegations against Regalado are incredibly sparse. That Regalado was a member of the OSA and that his deputies served legal process cannot satisfy Plaintiffs' burden.

Regalado cannot be held personally liable for OSA's contract with Aberdeen. Title 19 *Okla. Stat.* §§ 514.4 gives county sheriffs a right to contract and then authorizes them to assign such right to a statewide association, such as the OSA, who is the statutory administrator of such contracts with third-parties, such as Aberdeen, to locate and notify persons of their outstanding failure-to-pay warrants. Plaintiffs do not allege that this statute is unconstitutional on its face. Plaintiffs do not allege that Regalado contracted personally with the OSA or Aberdeen. Plaintiffs do not allege that Regalado was in office at the time the Tulsa County Sheriff's Office entered into the original contract with OSA (he was not). Plaintiffs allege only that Regalado was in office when the OSA renewed its contract with Aberdeen. (Doc. No. 212, SAC, ¶ 31). Nor can Regalado be held liable for failing to supervise the contract with Aberdeen. In *Means v. Lambert*, the plaintiff sought to hold government officials personal liable for failing to monitor a government contract and actions taken under that contract. 2008 WL 281551, at *1 (W.D. Okla. Jan. 31, 2008). The court rejected this argument: "No court has ever stretched supervisor liability to cover the supervision of [a contract] rather than a person." *Id.* at *5.

### V. PLAINTIFFS FAIL TO PLEAD THE NECESSARY ELEMENTS OF A RICO CLAIM AS TO REGALADO.

Defendants have demonstrated that a RICO claim fails where the government is the intended beneficiary of the allegedly extortionate acts. *See Wilkie v. Robbins*, 551 U.S. 537, 567 (2007). Plaintiffs argue that because Aberdeen and the OSA receive payment, the "enterprise" is intended to benefit a private party. Not so. Plaintiffs' allegations make clear that the intended

8

benefit is to "maximize[e] the collection of court debts." (Doc. No. 212, SAC, ¶ 278). Court costs are collected for the state; that is the end of the analysis and Plaintiffs have now shown otherwise.

Plaintiffs further attempt to distinguish their claims from the holding in *Wilkie*, arguing that they also allege violation of the Hobbs act under the "wrongful use of actual or threatened force, violence, or fear" prong of the offense, and that *Wilkie* applies only to the "under color of official right" prong of the offense. 18 U.S.C. § 1951. This is wrong. Firstly, *Wilkie* makes clear that a government official, collecting money on behalf of the government, is wholly outside the "common law conception of 'extortion,' which we presume Congress meant to incorporate when it passed the Hobbs Act." 551 U.S. at 563. This undermines any argument that *Wilkie* applies only to the "under color of right" prong of the Hobbs Act—the Court's opinion clearly refers to any definition of extortion captured by the Hobbs Act provisions. The *Wilkie* Court further noted that: "it is not reasonable to assume that the Hobbs Act (let alone RICO) was intended to expose all federal employees… to extortion charges whenever they stretch in trying to enforce Government property claims." Again, the Court's reasoning makes it clear that the *Wilkie* holding applies to any claim of Hobbs Act extortion, not just "under color of official right" extortion.

The *Wilkie* Court rejected the notion that a public official collecting public funds could be guilty of any offense that is "capable of being generically classified as extortionate." *Id*. at 567. The Supreme Court's generic definition of extortion—"obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats"—is nearly identical to the language of the Hobbs Act upon which Plaintiffs seek to rely. *Scheidler v. NOW, Inc*., 537 U.S. 393, 410. (2003). Other Courts have similarly held that *Wilkie* excludes any claim of Hobbs Act extortion involving a government official collecting government funds. *Andrews v. United States*, 2010 U.S. Dist. LEXIS 74660, *8-9 (D. Colo. Mar. 8, 2010); *United States v. Peterson*, 544 F.

9

Supp. 2d 1363, 1371 (M.D. Ga. Feb. 28, 2008). Plaintiffs' arguments are not credible and counter to the *Wilkie* opinion itself. Lastly, the one case cited by Plaintiffs, *United States v. Brissette*, 919 F.3d 670 (1st Cir. 2019), does not even support Plaintiffs' argument. *Brissette* merely stands for the proposition that there are two distinct species of extortion under the Hobbs Act; it says nothing about *Wilkie* and does not support Plaintiffs' unprecedented, restrictive reading of *Wilkie*.

It is also undisputed that personal participation in the RICO enterprise cannot be established based upon the performance of services in the regular course of business. *See Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 884 (10th Cir. 2017). Plaintiffs' only argument to claim the arrest and detention of individuals pursuant to a warrant does not constitute regular services of a sheriff is that the sheriff should know the warrant was not supported by probable cause and was without an inquiry into ability to pay. As discussed, *supra*, Plaintiffs fail to allege facts supporting this conclusion and, in any event, Regalado does not have the authority to unilaterally refuse to carry out a facially valid court order or to release a defendant from jail without a court order. The Tulsa County Sheriff's office's contracting with the OSA is also an act undertaken as an official and regular service. Regalado did not unilaterally decide to contract with a private association. Title 19 *Okla. Stat.* §§ 514.4 and 514.5 specifically provide for the contracting with a "statewide association of county sheriffs" with respect to failure-to-pay warrants.

## CONCLUSION

The Renewed Motion to Dismiss the Second Amended Complaint (Doc. No. 409) should be *granted with prejudice* because any amendment would be futile based upon the nature of Plaintiffs' pleading defects. *See Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.").

10

Respectfully submitted,

 /s/ Jo Lynn Jeter
**Joel L. Wohlgemuth**, OBA #9811
**Jo Lynn Jeter**, OBA #20252
**W. Caleb Jones**, OBA # 33541
**NORMAN WOHLGEMUTH, LLP**
401 South Boston, Suite 3200
Tulsa, OK 74103
(918) 583-7571
(918) 584-7846 – facsimile
JWohlgemuth@NWLawOK.com
JJeter@NWLawOK.com
WJones@NWLawOK.com

**Douglas A. Wilson**, OBA #13128
**Michael Shouse**, OBA #33610
**Tulsa County District Attorney's Office**
**Civil Division**
218 W. Sixth St., Suite 933
Tulsa, OK  74119
Telephone: (918) 596-8795
Facsimile: (918) 596-4804
douglas.wilson@tulsacounty.org
mshouse@tulsacount.org

**Attorneys for Tulsa County Sheriff Vic Regalado, Tulsa County Court Clerk Don Newberry and Tulsa County Cost Administrator Darlene Bailey, in both their individual and official capacities, and the Board of County Commissioners of the County of Tulsa**

# CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants in this matter.

/s/ Jo Lynn Jeter