1                    UNITED STATES DISTRICT COURT FOR THE
                         NORTHERN DISTRICT OF OKLAHOMA
2

3
   IRA LEE WILKINS, et al.,          )
4                                    )
                  PLAINTIFFS,        )
5                                    )
   vs.                               )    Case No. 17-CV-606-TCK-JFJ
6                                    )
                                     )
7  ABERDEEN ENTERPRIZES II, INC.,    )
   et al.,                           )
8                                    )
                  DEFENDANTS.        )
9  _____)

10

11

12

13

14
                    TRANSCRIPT OF RECORDED HEARING
15
            BEFORE THE HONORABLE JODI F. JAYNE
16
                  U.S. MAGISTRATE JUDGE
17
                    SEPTEMBER 30, 2020
18

19

20

21

22

23

24

25  Reported by:  Laura Griffin, United States Court Reporter

```
 1
 2                        A P P E A R A N C E S
 3
 4    FOR THE PLAINTIFFS:                DANIEL E. SMOLEN
                                         SETH WAYNE
 5                                       ROBERT BLAKEMORE
                                         ROBERT FRIEDMAN
 6                                       TARA MIKKILINENI
 7
      FOR THE DEFENDANT TULSA COUNTY:    DOUGLAS WILSON
 8                                       JO LYNN JETER
                                         MICHAEL SHOUSE
 9
      FOR THE DEFENDANT OKLAHOMA
10    SHERIFF'S ASSOCIATION:             KELSEY ANN CHILICOAT
11    FOR THE DEFENDANT COUNTY SHERIFFS: JEFFREY HENDRICKSON
                                         ROBERT LAFFERRANDRE
12
      FOR THE DEFENDANT STATE COURT JUDGES:  STEFANIE LAWSON
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1    PROCEEDINGS:

2              DEPUTY COURT CLERK:  This is Ira Lee Wilkins versus

3    Aberdeen Enterprizes, case number 17-CV-606-TCK-JFJ.

4         Counsel, please enter your appearances starting with

5    plaintiffs.

6              MR. SMOLEN:  Dan Smolen on behalf of plaintiff.

7              MR. WAYNE:  Good morning, Your Honor.  This is Seth

8    Wayne on behalf of the plaintiffs.  Several of my co-counsel

9    are with me.  I can introduce them all or they can introduce

10   themselves individually, whatever you prefer.

11             THE COURT:  You can introduce them, Mr. Wayne.

12             MR. WAYNE:  Your Honor, with me is Dan Smolen who

13   just introduced himself as well as Bob Blakemore, Robert

14   Friedman and Tara Mikkilineni.

15             THE COURT:  Mr. Wayne, are you going to be doing

16   most of the arguing for plaintiffs today or are you splitting

17   it up?

18             MR. WAYNE:  I'm going to be doing the argument, Your

19   Honor.

20             THE COURT:  All right.  Thank you.  Okay.  Let's

21   move on to the Sheriff's Association defendant.

22             MS. CHILCOAT:  Kelsey Chilcoat is present for the

23   Sheriff's Association.

24             THE COURT:  Okay.  Who else is here?

25             MR. LAFFERRANDRE:  Robert Lafferrandre for the 51

1    sheriffs.

2           MR. HENDRICKSON:  Jeffrey Hendrickson for the 51

3    sheriffs.

4           MS. LAWSON:  Stephanie Lawson for the defendant

5    state judges.

6           MR. WILSON:  Douglas Wilson and Michael Shouse for

7    the Tulsa County Sheriff, the Tulsa County Court Clerk and the

8    Tulsa County Cost Administrator.

9           MS. JETER:  Jo Lynn Jeter, co-council with

10   Mr. Wilson and Mr. Shouse for the same defendants that he just

11   listed, the Tulsa County defendants.

12          THE COURT:  I didn't have Mr., is it Shouse,

13   S-h-o-u-s-e, checked on my form.  Is that correct, Michael

14   Shouse?

15          MR. SHOUSE:  It is.

16          THE COURT:  Okay.  And are the appropriate

17   officials, Mr. Wilson, still Darlene Bailey as the cost

18   administrator, Don Newberry as the clerk and Vic Regalado as

19   the sheriff?

20          MR. WILSON:  Yes.

21          THE COURT:  Okay.  I believe that's everyone.

22      Is there any attorney on the line who has not entered an

23   appearance?

24      Okay.  I'm going to take that as a no.  I think we have

25   everyone covered.  And I'm assuming today that I'm going to be

1    hearing from Mr. Wayne and either Mr. Wilson or Ms. Jeter as

2    to these issues.

3         I don't intend to call on the other defendants for

4    arguments unless you stop me and let me know that you wish to

5    make an argument.  So please feel free to do that but my

6    intent -- my guess is that today most of the argument is going

7    to be between plaintiff and the Tulsa County defendants since

8    that's all who is left on this preliminary injunction.

9         Okay.  With that we're here today on a motion for a

10   preliminary injunction.  I would obviously prefer to have you

11   here in person for a hearing like this but we are still trying

12   to be observant of problems related to COVID and I believe

13   some of you are out of town.

14        Is that right, Mr. Wayne?

15             MR. WAYNE:  Yes, Your Honor.

16             THE COURT:  Okay.  So I set this for oral argument

17   at a phone conference so that we could get some of these

18   issues laid out.  The main purpose that I set this for hearing

19   as I tried to indicate in my minute order is just to get a

20   status update as to what's going on as well as hear oral

21   argument on the substantive issues.  I have no intention of

22   taking evidence today but we're going to talk some about that.

23        So back at the beginning of this case Judge Kern

24   converted the request for a T.R.O. to a request for

25   preliminary injunction.  That was on February 28th, 2018.

1  That's Docket 149 and the court will apply the standards

2  applicable to preliminary injunctions.

3      Back in March of 2018 plaintiff responded to a show cause

4  order issued by Judge Kern and stated that plaintiffs were not

5  requesting an evidentiary hearing because facts set forth by

6  plaintiffs were admitted for purposes of deciding the P.I.

7  motion.  Judge Kern at that time struck the scheduled hearing

8  and did not schedule any oral argument.

9      Upon referral of the P.I. motion to me in August of 2020

10  I did decide oral argument would be helpful and to get a

11  status update since considerable time has passed since the

12  motion was filed obviously.

13      After I set that hearing, this hearing for oral argument,

14  plaintiff withdrew part of the motion for preliminary

15  injunction.  So I want to start, Mr. Wayne, by making sure I

16  understand what still needs to be decided.

17      My understanding from your filing is that plaintiff has

18  withdrawn the motion for preliminary injunction against Rogers

19  County and in favor of Carly Graff because Ms. Graff no longer

20  has an active arrest warrant or outstanding court debts in

21  Rogers County.

22      Plaintiff no longer seeks injunctive relief against

23  Aberdeen, Inc., because Tulsa and Rogers County represented

24  that neither county is currently contracting with Aberdeen

25  Inc., for debt collection.

1      Plaintiff does still seek injunctive relief in favor of

2  Randy Frazier and against Tulsa County Sheriff, Tulsa County

3  Clerk and Tulsa County Cost Administrator.

4      Is that accurate, Mr. Wayne?

5          MR. WAYNE:  That is accurate, Your Honor.  I will

6  just add that while (unintelligible) injunctive relief against

7  Aberdeen Enterprises, preliminary injunctive relief on behalf

8  of Mr. Frazier, because I understand from speaking to counsel

9  for the counties is that they're no longer doing business with

10  them, we are still seeking injunctive relief against Aberdeen

11  on behalf of the class per the case in general.

12          THE COURT:  Thank you.  Thanks for that

13  clarification.  I should have said preliminary injunctive

14  relief.

15      I'm looking now, if I can find it here, I want to make

16  sure I have the injunctive relief you're requesting correct.

17  I'm looking at Docket 189, I'm sure none of you have that in

18  front of you.  It's a very old pleading.  But it's where

19  plaintiffs set forth their request for relief, and I'm just

20  going to go over it so that we're all on the same page about

21  what's being asked for and I've crossed out the parties that

22  are no longer applicable and the relief that's no longer

23  applicable.

24      So plaintiff is essentially asking for an order enjoining

25  the Tulsa County Sheriff from executing active arrest warrants

1    against Randy Frazier, and then there's one, two, three, four,

2    five, six, seven, eight arrest warrants listed arising in

3    Tulsa County.  So that's part one.

4         Part two, an order enjoining the Tulsa County Court Clerk

5    and the Tulsa County Cost Administrator from seeking new

6    arrest warrants for nonpayment of court debt against Randy

7    Frazier unless there has been a determination following notice

8    and a hearing that the nonpayment was wilful.

9         And then, three, an order enjoining the Tulsa County

10   Sheriff from executing new arrest warrants against Randy

11   Frazier unless the warrant issued after a determination

12   following notice and a hearing that the nonpayment was wilful.

13        Mr. Wayne, I'm just going to again verify, is that a

14   correct revised request for injunctive relief in this case?

15        MR. WAYNE:  Yes, Your Honor, although we want to

16   clarify something.  This is from the (unintelligible) the

17   court of this hearing.  To be specific I know we used the

18   general language enjoining the sheriff from executing new

19   arrest warrants, but, no, specifically I'm referring to

20   failure to pay warrants as they're called in the docket or

21   ones for nonpayment of court debt generally, not any arrest

22   warrant should he get a new charge which wouldn't be subject

23   to this.

24        But I also wanted to discuss, when we use the term

25   executing arrest warrants, I believe under the original it

1   concedes when you spoke of executing that we were talking

2   about actually physically arresting these individuals, in this

3   case Mr. Frazier, but I know that the defendants have raised

4   issues with rejectability with that given the number of

5   different law enforcement agencies that operate in Tulsa

6   County.

7        So we wanted to clarify that when we're talking about

8   enjoining the sheriff from executing the arrest warrants, we

9   mean inclusive detaining Mr. Frazier in the jail if he was to

10  be arrested by somebody else on this arrest warrant.

11           THE COURT:  All right.  So you're asking for a

12  different relief than originally requested slightly?  I'm

13  going to -- obviously I can't word that for you.

14           MR. WAYNE:  Yeah, we can obviously make something,

15  Your Honor, as a second proposed order more so explaining

16  that.  I think that obviously it falls within the gambit of

17  executing an arrest warrant as we originally phrased it, but I

18  think to be more accurate it would be better phrased as

19  detaining Mr. Frazier on the arrest warrant if he is to be

20  arrested.

21           THE COURT:  So you want to stop the Tulsa County

22  Sheriff from putting Mr. Frazier in a jail regardless of which

23  entity or whether it's the TPD or some other entity arrested

24  him on these outstanding failure to pay warrants?  Once he

25  arrives at the jail, you believe it's the Tulsa County Sheriff

1    and only the Tulsa County Sheriff who would have the ability

2    or the authority to jail him?  Is that right?

3          MR. WAYNE:  Yes, that's our understanding.  Yes,

4    Your Honor.  That's my understanding is that no matter who

5    arrests Mr. Frazier, he will be brought to the jail and placed

6    in the custody of the sheriff and that's within the sheriff

7    policy to refuse to detain Mr. Frazier on these

8    unconstitutional warrants.

9          THE COURT:  Okay.  I'll discuss that more at the end

10   whether I need some proposed language so that I know exactly

11   what it is you're asking for at this point in the case.

12       Okay.

13          MR. WILSON:  Judge, can we --

14          THE COURT:  Okay.  Let me -- stop, stop.

15          MR. WILSON:  You bet.

16          THE COURT:  Because we're here on a phone hearing, I

17   should have said this at the beginning and we obviously have a

18   lot of lawyers.  Before you speak, particularly in the

19   instance like it just occurred, I know that's Mr. Wilson

20   because I know his voice but the court reporters don't know

21   Mr. Wilson and so if you could say, this is Mr. Wilson,

22   particularly if you're interrupting, and I don't mean

23   interrupting in a negative way, I just mean if you're

24   interjecting, that's very important.

25       If I said Mr. Wilson and asked you a question, you don't

1  need to reintroduce yourself.

2      With that, Mr. Wilson, go ahead.

3          MR. WILSON:  Yes, Judge, I just wanted to object to

4  the proposed amendment.  The matter that has not been briefed

5  and just add that the warrants at issue are statewide warrants

6  so they apply in all 77 counties.

7          THE COURT:  Okay.  All right.  I want to go on

8  because this is going to touch on some other things I want to

9  discuss as preliminary matters.  It seems to me that this

10 preliminary injunction motion is in a unique and somewhat

11 strange procedural posture due to the passage of time and due

12 to the referral, none of which are obviously any parties'

13 doing or plaintiffs' doing, but I want to make sure the

14 parties have thought about two things.

15     First, this report and recommendation or any report and

16 recommendation that I'm going to issue may touch on several

17 different issues for the purposes of deciding a pretty small

18 sliver of this case related to one plaintiff.

19     Due to the passage of time and the referral of the motion

20 it seems that strategies may have changed and resolution of

21 this issue may be more possible than it seemed two years ago

22 or in the past.  I want to know if the parties need more time

23 to explore this issue before I proceed with this hearing.  And

24 when I say explore this issue, I mean the possibility of

25 resolving this -- this limited piece of a case out of court.

1    Again, plaintiff, I know that wasn't your original

2    intent.  I know time has passed and I know that's not anyone's

3    fault, but nonetheless things have changed and I just want to

4    make sure the parties have had a chance before I launch into

5    this, you launch into this, that the parties have had a chance

6    to hear from me that you have the opportunity to talk about

7    whether you can resolve this limited piece of the case.

8         Mr. Wayne, I'll start with you on that.  And of course I

9    don't want you to reveal any confidential settlement

10   negotiations, I just want to know does it make sense to go

11   forward with this hearing right now and do the parties need

12   more time to talk.

13        MR. WAYNE:  Your Honor, I am sensitive to that

14   concern as well and I conferred with counsel for the Tulsa

15   County defendants trying to reach a resolution and we had an

16   amicable discussion, but unfortunately we weren't able to

17   reach an agreement that was satisfied by the parties.

18        As far as we're concerned I believe that we're at an

19   impasse, but I'll let Mr. Wilson speak if he believes

20   different.

21        THE COURT:  Okay.  Mr. Wilson, you guys have talked

22   about this.  Rogers County it seems like from the beginning

23   was agreeing to this limited relief, probably just for

24   purposes of going down the road in the case.  I understand

25   Tulsa County wasn't and I'm not forcing you or wanting you to

**United States District Court**

1    feel like you have to explain yourself on that, I just want to

2    know if due to the changed circumstances there's any point in

3    giving the parties more time to try to resolve this piece of

4    the case.

5              MR. WILSON:  It is a position that the sheriff, the

6    court clerk and the cost administrator, that they do what they

7    do pursuant to state statute and pursuant to the orders of the

8    district court judge and whatever the judges want to agree to

9    is okay with us, but we don't have any authority to enter into

10   any agreement that's contrary to what the judge orders us to

11   do or that's contrary to the statute.

12        Stephanie Lawson is on the phone.  She is counsel for the

13   judges.  She can maybe address that matter.

14             THE COURT:  Ms. Lawson, do you want to explain

15   anything?  You can if you want to.

16             MS. LAWSON:  Judge, I was not prepared to get into

17   any of this.

18             THE COURT:  Okay.

19             MS. LAWSON:  I can certainly file something, you

20   know, later if you would like or have discussions with

21   plaintiff, but I'm not prepared to do anything at this

22   point.

23             THE COURT:  I understand.  That's why I said you can

24   if you want to but I'm not going to force you to talk about

25   that here for purposes of this hearing.

1       But I think it sounds like Mr. Wilson agrees you're at an

2   impasse and you do need this preliminary injunction motion

3   resolved and nobody is objecting to me proceeding with this

4   motion at least in terms of timing.

5       Relatedly I was going to ask plaintiff if you had any

6   requests that I delay ruling on this preliminary injunction

7   motion until the district judge decides motions to dismiss.

8   It sounds like you've thought about that and your answer is no

9   and obviously that wouldn't have been your original intent in

10  filing the motions but things have changed and I just want to

11  give you that option to tell me if you would want me to delay

12  this ruling until you get more substantive rulings from a

13  district judge.

14       MR. WAYNE:  Thank you for the offer, Your Honor, and

15  we appreciate it but, no, we prefer to press forward.  As far

16  as we're concerned it's still an imminent issue for Mr.

17  Frazier.  He could be arrested at any time and I don't think

18  we can actively agree to delay for any reason.

19       THE COURT:  I understand.  Okay.

20       So the answer is you-all are not letting me off the hook.

21  Is that a fair assessment here?

22       MR. WAYNE:  Afraid so, Your Honor.

23       THE COURT:  All right.

24       MR. WILSON:  Judge, Doug Wilson speaking.  The one

25  thing that Seth and I discussed and that might make sense is

1   that the argument on this or hearing or whatever you want to

2   call it takes place after the COVID 19 pandemic has passed,

3   because at this point in time as you know there are some

4   pretty rigorous efforts being made by the judges here and the

5   District Attorney and Public Defender's Office to keep the

6   jail population at a minimum and the -- the circumstances that

7   existed at the time of the filing of the complaint and the

8   motion for preliminary injunction are not the same as those

9   that exist now.

10       And, you know, law enforcement are being advised to keep

11  as many people out of the jail as they can for public health

12  reasons.

13          THE COURT:  Well, but Tulsa County is not willing to

14  agree to any relief today; right?  Either in conjunction with

15  the judges or not, so the COVID 19 pandemic is -- if I say I'm

16  going to delay a hearing on something until the COVID 19

17  pandemic has passed, I think you know and I know that that is

18  the equivalent of an indefinite stay that has no end date that

19  I have no idea what that end date might be.

20       So everything you just told me, Mr. Wilson, indicates to

21  me that maybe you would be more willing to, I don't know,

22  resolve this issue or agree not to arrest Mr. Frazier than you

23  would have two years ago if you could, but I don't think

24  anything you told me is grounds for delaying my ruling.

25       Mr. Wayne, is there anything you want to say about that?

1          MR. WAYNE:  No, Your Honor.  And I agree with Your

2   Honor, I mean, for Mr. Frazier, if anything, this makes it

3   more pressing.  It's still within the discretion of the law

4   enforcement officer to arrest Mr. Frazier and for someone with

5   underlying health conditions even a brief detention would run

6   him a risk of contracting a disease and suffering grave

7   consequences.  So for us the pandemic makes it even more

8   pressing.

9          THE COURT:  All right.  Let's move on to the issue

10  of -- I have as another category of discussion evidence.  Do

11  the parties still agree that I can proceed without an

12  evidentiary hearing on the preliminary injunction motion, for

13  purposes of this motion only accept plaintiff's facts as

14  undisputed?  I think this question goes to you, Mr. Wilson.

15         MR. WILSON:  Well, the plaintiff submitted exhibits

16  to their motion.

17         THE COURT:  Yes.

18         MR. WILSON:  And we have not countered those

19  exhibits although we have requested in a filing they did a

20  week ago today that the court take judicial notice of certain

21  facts and we have submitted some additional exhibits in our

22  response and I don't think plaintiffs have taken issue with

23  those exhibits so I think the exhibits speak for themselves.

24  There isn't really a list of facts upon which the motion is

25  brought other than the exhibits that are attached.

1              THE COURT:  I agree with you, Mr. Wilson, and I

2    think I certainly have the exhibits that you've submitted.  I

3    was going to address your motion to take judicial notice later

4    in the hearing but we can go ahead and talk about that now.

5        Mr. Wayne, does plaintiff have any objection to that

6    motion?  That's Docket 341, motion to take judicial notice of

7    other law enforcement agencies.  I certainly understand you're

8    going to dispute or the impact of that or the relevance of

9    that, but do you object to me taking judicial notice of the

10   existence of those agencies for purposes of this hearing only?

11             MR. WAYNE:  No, Your Honor.

12             THE COURT:  All right.  That motion will be granted.

13   That's Docket 341.

14       So my only other question for you about the evidence,

15   Mr. Wayne, is the facts articulated by Ms. Gaines in her, I

16   think it's a declaration, are from early 2018.  And that's

17   really -- the rest of the exhibits are less consequential but

18   that is actually a factual statement by her as observed during

19   court hearings two years ago.

20       So I just want to make sure that everyone understands

21   I'm -- is it correct that you're asking me to decide this

22   preliminary injunction mostly based on those facts as to

23   practices or do you want the opportunity to update them?

24       I guess I also want to hear from you as to the

25   proprietive granting of preliminary injunction, enjoining

1   future conduct if the alleged practices -- at least the

2   practices as observed by Ms. Gaines are now dated.

3        I don't know if they're dated, I don't know if they're

4   not dated, I just want to make it clear that I'm looking at

5   stuff that happened in 2018 for purposes of deciding this

6   motion and make sure everybody understands that.

7        Mr. Wayne, is there anything you want to weigh in on on

8   that?

9           MR. WAYNE:  Yes, Your Honor, just briefly.  I mean

10  certainly opposition is also the relevant facts for the

11  purpose of this motion and the facts as they were when this

12  was filed and that any consequent changes where defendants

13  have changed their conduct could be grounds for movement if

14  properly argued, but otherwise it constitutes voluntary

15  cessation which is a very high bar to establish.

16       We have obviously been prevented from conducting

17  discovery in the interim period by Judge Kern's stay of

18  discovery, so we haven't been able to conduct rigorous fact

19  gathering.  I saw how practices have changed.

20       I believe from conversations with opposing counsel that

21  there are some details that have changed in that the frequency

22  of cost dockets may have increased at this time.  And I know

23  Mr. Wilson said that efforts were being made to keep the jail

24  population down, and certainly we appreciate that, but I think

25  what's important is that at any time defendants could go back

1   to conducting things exactly the way they were and still

2   people can be arrested on -- or Mr. Frazier particularly could

3   be arrested on this warrant and held in jail subject to an

4   order exactly as they were in 2018.

5       So I think -- I think our position is that these facts

6   are the relevant ones and an injunction is appropriate because

7   any changes that occurred are simply voluntary cessation.

8           THE COURT:  Okay.  I have a question, I think this

9   should go to Mr. Wilson, about 22 Oklahoma Statute Section

10  983.  I just printed that version off of Westlaw which was

11  effective November 1st, 2018.  Was there a similar law in

12  place before November 1st, 2018, and this was just sort of a

13  revised version of it?

14          MR. WILSON:  I don't know.  That governs the courts

15  in their conducting of these hearings.  I do know that the

16  Criminal Court of Appeals has court rules regarding the

17  conduct of those hearings that has been in existence for more

18  than two or three years.  But I believe --

19          THE COURT:  Okay.  I'm trying to understand, did

20  these laws get passed mid-lawsuit, did things drastically

21  change mid-lawsuit with respect to Rule 8.4 and 8.5, or were

22  these really in place at the time this conduct occurred with

23  respect to Mr. Frazier in early 2018.

24      I don't know how important that is, I just saw that the

25  statute was recent, but I assumed a similar statute was on the

1  books before that.  It sounds like maybe you don't know,

2  Mr. Wilson.  Is that fair?

3           MR. WILSON:  It governs the conduct of judges, and

4  maybe Stephanie Lawson could answer your question since she

5  represents the judges.  The county defendants have nothing to

6  do with these hearings.

7           THE COURT:  Fair enough.  I'm not going to ask

8  Ms. Lawson about that.  I was really mainly curious about the

9  laws.

10      Mr. Wayne, do you know?  You're the one who cites that

11  statute in your brief and caused me to look it up and I'm just

12  curious, it says effective November 1st, 2018.  Obviously

13  there could have been a small change or a change in wording

14  but did this -- this lawsuit was filed in 2017; right?

15           MR. WAYNE:  Yes, Your Honor.  I believe that the

16  rules -- Your Honor, I'm not familiar with exactly what the

17  amendments were to the rules.  My understanding is that the

18  rules are substantively the same as they were when we filed

19  this motion which is that in essence the rules require a type

20  of hearing Mr. Frazier was never afforded.

21      So I'm not sure exactly and I wish I could tell Your

22  Honor what exactly the amendments were but I think

23  substantively what they require is the same as what they were

24  at the time of the trial.

25           THE COURT:  Okay.  It sounds to me like -- go ahead,

1    Mr. Wilson.

2         MR. WILSON:  Doug Wilson speaking.  I think you've

3    alleged in your complaint that, you know, that the laws in the

4    State of Oklahoma require -- the statutory laws require the

5    kind of judicial processes that you're asking for and that it

6    is simply being Tulsa County state court judges that are not

7    following through with the laws as written.  Is that correct?

8         THE COURT:  Well, he doesn't have to answer your

9    question, Mr. Wilson, but I do have the same question.  That's

10   kind of what I was getting at.  This lawsuit is not about

11   challenging the state statute or trying to cause a change in

12   the state statute or Rule 8.4 or 8.5, this lawsuit is more

13   about from what -- or at least -- I shouldn't say the lawsuit,

14   the preliminary injunction motion that I'm citing or that I'm

15   going to make a recommendation on, you're not challenging the

16   state law, you're challenging the procedures that were applied

17   to Mr. Frazier, procedures and policies applied to Mr. Frazier

18   in this case, and you say they don't comport with state law.

19       I don't know what plaintiff's position is on whether

20   state law is adequate constitutionally or not, but it appears

21   that you believe the state law, if followed, would be

22   adequate.

23       Is that accurate, Mr. Wayne?

24         MR. WAYNE:  Your Honor, I would say to this specific

25   point our argument is that Mr. Frazier's federal

1    constitutional rights were violated.

2         THE COURT:  Sure.

3         MR. WAYNE:  And let me tell Your Honor, there's

4    three of the claims we make in our complaint we think are

5    relevant to this preliminary injunction.

6         Now we think the state law also imports some of the

7    requirements from the constitution, specifically it requires a

8    hearing.

9         Now state law doesn't really explain much more than that

10   and we think that, you know, procedural due process implicates

11   some additional requirements beyond just how he's doing and an

12   opportunity to be heard.

13        That might go beyond what state law requires but we're

14   certainly not challenging the state law as being

15   unconstitutional.  I think to a very good sense state law

16   tracks what the constitution requires even if it doesn't fully

17   explain all of the requirements that we think would fall

18   within due process.

19        THE COURT:  Okay.  I think I got us down a path I

20   didn't necessarily need to go down.  You've answered my

21   question.  That's all I needed to know about that.

22        I want to briefly go over the record evidence that I'm

23   going to be relying on and just make sure I'm not missing

24   anything because I've gone through this and looked at the

25   docket and what relates to Mr. Frazier.

1          Docket 77 in the motion we have Exhibit 2 which is

2    Mr. Frazier's affidavit, Exhibit 5 which is the declaration of

3    Kailyn Gaines.  Exhibit 6 which is the state court docket

4    sheets for the criminal cases of Randy Eugene Maxwell who I

5    believe is also known as Randy Frazier.

6          And then Docket 145, the response, Exhibit 1 are the

7    bench warrants issued with respect to Mr. Frazier on these

8    nonpayment warrants.  And then the evidence that I've just

9    taken judicial notice of without objection that was submitted

10   pursuant to Docket 341.

11         Is there any other evidence that I'm missing from either

12   party?

13              MR. WILSON:  There is Exhibit 3 to Document 145.

14              THE COURT:  Tell me what that is.

15              MR. WILSON:  It's the memorandum from the

16   Administrative Office of the Courts that only a judge can

17   issue and recall bench warrants.

18              THE COURT:  Oh, yes.  I'm sorry.  Yeah.  I

19   apologize, Mr. Wilson.  Those are sort of things I would take

20   judicial notice of anyway but, yes.  And Exhibit 2 as well

21   which is the Rule 8.5.  So, yes, thank you.

22         Any other evidence just to make sure we're all on the

23   same page and there's no surprises?  Mr. Wayne?

24              MR. WAYNE:  Not from plaintiffs, Your Honor.

25              THE COURT:  All right.  Okay.  And I want to make

1   sure the briefs I'm relying on, Docket 77 is the motion,

2   Docket 145 is the response, Docket 153 is the reply, Docket

3   187 is a surreply.  Docket 191 is a response to a surreply.

4   Docket 217 is supplemental authority which is the *Moore* case

5   out of the Ninth Circuit, and then Docket 224 is the response

6   to that supplemental authority.

7       Are there any other briefs that the parties expect me to

8   consider in ruling on this motion for preliminary injunction?

9   And when I say ruling, please know I mean recommending or

10  making a recommendation.

11       MR. WAYNE:  Not from plaintiffs, Your Honor.  I

12  don't have anything in addition to the Ninth Circuit case.

13  There have been several additional recent cases that may be

14  relevant to the court's consideration, so if the court

15  requests, you know, we would be happy to file further briefing

16  after this.

17       THE COURT:  Okay.  Mr. Wilson, any briefs I'm

18  missing?  I just want to make sure because this is a big

19  docket sheet.  I'm new to this party and I want to make sure

20  I've got everything.

21       MR. WILSON:  I think you've got everything.  You

22  mentioned Document 341 earlier.

23       THE COURT:  Yes.

24       MR. WILSON:  So that should be it.

25       THE COURT:  Okay.  I want to move to the legal

1    standard.  The only thing I think I need to address on that is

2    neither party addressed whether this is a disfavored

3    preliminary injunction in the Tenth Circuit or cited that law.

4        And I'll just tell you, Mr. Wayne, that it says a

5    disfavored injunction exhibits any of the three

6    characteristics:  It mandates action rather than prohibiting

7    it; it changes the status quo, or it grants all the relief

8    that the moving party could expect from a trial when.  That's

9    from a Tenth Circuit case 916 F.3d 792, 2019.

10       Is this a -- and the reason it matters, and I'm not sure

11   it is a huge difference in this case, but if it is a

12   disfavored injunction, the plaintiff must make a, quote,

13   strong showing of the likelihood of success factors and the

14   balance of the harm factor.

15       I guess somehow you have to show stronger than

16   substantial because a movant always has to show substantial,

17   but that's why it matters.  It says there's just a slightly

18   different standard if the injunction is disfavored.

19       It seems to me that you're asking to change the status

20   quo.  Does plaintiffs disagree with that?

21           MR. WAYNE:  Well, I believe you could do it two

22   ways, Your Honor.  And the status quo right now for Mr.

23   Frazier is not detained.  So in a sense we're asking for him

24   to continue to not be detained.  I think we're maintaining the

25   status quo.

1    Whether asking -- whether the question that status quo is

2  the facts, you know, we're asking to maintain the status quo.

3  If the status quo is the sheriff's ability to detain

4  Mr. Frazier, then certainly we're asking to modify the status

5  quo.

6         THE COURT:  Well, I was viewing the status quo as

7  there's outstanding warrants that he could be jailed on any

8  day.  Tomorrow, the next day, and you want to change that

9  status quo and prohibit that detention, but I understand your

10  argument.

11    Mr. Wilson, do you want to weigh in on that?

12         MR. WILSON:  I do believe it changes the status quo.

13  It requires law enforcement officers looking at a facially

14  valid arrest warrant to in addition to that check something

15  else to see if this is one of those folks that we're not

16  supposed to honor the warrant on.

17         THE COURT:  Right.  All right.  Okay.  Moving on to

18  the merits, plaintiffs are basing their injunctive relief on

19  three claims and so those are the claims that they will have

20  to show a likelihood of success on the merits, or that's my

21  relevant analysis as to that prong.

22    I have looked at paragraphs 318 to 344 of the second

23  amended complaint that covers those Counts 2 through 4 and

24  there's no legal doctrine or statute cited specifically in

25  those counts.  There's numerous defendants and there's

1   defendants sued in both their official and individual

2   capacities.

3       No party has set forth for me the elements of the

4   underlying claim of Counts 2, 3 or 4 really and I -- I have to

5   analyze the likelihood of success on the merits, vis-a-vis

6   these three county officials that plaintiffs are seeking

7   relief from.

8       So, Mr. Wayne, I want to ask you what those claims

9   precisely and what elements am I analyzing for purposes of

10  likelihood of success on the merits against these Tulsa County

11  defendants.

12          MR. WAYNE:  Certainly, Your Honor.  I believe we

13  discussed the legal province of those claims at length in our

14  preliminary injunction brief, Docket 77 but I'm happy to go

15  through them as well.

16      The first claim is that the plaintiffs are likely to

17  succeed on --

18          THE COURT:  Well, wait.  Stop.  Mr. Wayne, I

19  certainly understand your arguments and I understand your

20  theories of relief.  I want to know what you're suing -- are

21  you suing them under 42 U.S.C. Section 1983?  How does this

22  claim arise?

23          MR. WAYNE:  Yeah, so under Section 1983 provides a

24  constitutional right with -- in combination with the *Ex parte*

25  *Young* which in essence grants the ability to sue state

1   officials who are executing state law under the federal

2   constitution.  So the Section 1983 in combination with *Ex*

3   *parte Young* (unintelligible).

4          THE COURT:  Okay.  Because you know that became

5   important in the briefs later; right?  Is this *Ex parte Young*,

6   is it 1983, and it became important in the briefing and I

7   looked back at your complaint to see, well what are we talking

8   about here, and I couldn't really tell what it was arising

9   under.  And you certainly don't go through the elements of a

10  1983 claim in your brief.

11     So to prove the underlying 1983 claim against the county

12  officials I'm relying on law.  The most common case I think is

13  *Myers v. Oklahoma County Board -- Oklahoma County Board of*

14  *County Commissioners.*

15     Well, first of all let me back up, Mr. Wayne.  These

16  officials were sued in their official capacity because you're

17  making a policy challenge here.  The constitutionality of the

18  county policies -- you're challenging the constitutionality of

19  these policies and you're suing these officials in their

20  official capacity related to those policies; is that correct?

21     I didn't phrase that very well but is that correct?

22          MR. WAYNE:  Well, it's a little bit finicky, Your

23  Honor, because there's a couple ways that -- that someone like

24  the Sheriff of Tulsa County can be held accountable under

25  Section 1983 acting in their official capacity.  One is the

1    *Monell* liability which is where it is a county policy but that

2    it's created by a county policy maker.

3         The second is *Ex parte Young* which is distinct from

4    *Monell's* liability.  And what *Ex parte Young* says is that when

5    any individual, whether a municipal actor or a state actor is

6    active in a violation of federal law and it's the enforcement

7    actor, they can be enjoined from violating federal law.

8         So this is actually right now in good detail explained in

9    a case -- in a recent case that came about since this motion

10   was briefed which is *McNeil v. Community Probation Services*.

11   That's 945 F.3d 991, it's a Sixth Circuit case.

12        And in that case the sheriff was enjoined from enforcing

13   bail orders.  And as the court explains, this could happen

14   either -- it didn't really matter whether it was either a

15   county actor or a state actor if they were enforcing those

16   orders, but because they ultimately determined that the

17   sheriff was a state actor that couldn't be enjoined under

18   *Ex parte Young*.

19        So there are two documents that are relevant.  One is

20   *Monell*, it's acting as a county actor, and other is *Ex parte*

21   *Young* that they're acting pursuant to the orders of the state

22   court.

23        So it's in summary it's from a traditional 1983 suit

24   under *Monell* which requires the county policy maker to be

25   essentially enjoined under *Ex parte Young* as enforcement

1    actors.

2          THE COURT:  Did you think that was clear from your

3    current briefs, Mr. Wayne?  I'm just curious.

4          MR. WAYNE:  Well, I know from *Ex parte Young* that

5    maybe we could have explained it.  And *Monell* was available at

6    the time we agreed because I think that the court there, Judge

7    Sutton explains it quite clear in a way maybe we failed to

8    do.

9          THE COURT:  Okay.  Well, and I think *Ex parte Young*

10   comes up in the like the response to the surreply on the last

11   page or something like that if I recall.  So forgive me if I'm

12   not well versed in this argument yet.

13       The -- okay.  So you've got Counts 2, 3, 4.  They

14   arise -- you admit that you're assuming an official capacity

15   under 1983, you also are suing for relief under this sort of

16   hybrid *Ex parte Young* doctrine that I'm going to look further

17   into.

18       And Counts 2, 3 and 4, I don't think we need to go over

19   what those -- I think I have a good understanding of how

20   you're alleging those are unconstitutional.  I don't have any

21   questions about that.

22       Basically 2 and 4 arise under the 14th Amendment, they're

23   equal protection due process allegations, and then Count 3 is

24   more of a 4th Amendment allegation based on the lack of

25   probable cause and the lack of oath or affirmation supporting

1    the warrants.

2         Okay.  Mr. Wayne, I don't really see the defendants'

3    briefs as trying to defend or really asserting defenses, for

4    purposes of this motion at least, the constitutionality of the

5    policies that you're challenging.  They're really raising

6    other types of defenses and I just want to go through

7    quickly -- I have grouped them in to four arguments and I want

8    you to focus your arguments on those.

9         In doing that I fully acknowledge the other elements of

10   the preliminary injunction motion balance of the harms, and if

11   you want to talk about any of those, you can feel free to at

12   the end, but I really want to focus your attention to these

13   defenses or, for lack of a better term, arguments that they're

14   making in response to the motion.

15        So first is that the defendants do not have authority to

16   satisfy the injunctive relief sought.  Second is that the

17   injunctive relief sought by Frazier is, quote, unquote,

18   readily available in Tulsa County.

19        And that really -- that's when they fold in their Younger

20   abstention argument, but I want to address that separately.

21   So no authority to satisfy injunctive relief sought; the

22   injunctive relief is readily available in Tulsa County;

23   Younger abstention.  And then in the surreply we get into the

24   SCIA statutory judicial immunity as applied to the sheriff,

25   the court clerk and the cost administrator and that's where

1    you've cited or you've given Moore as supplemental authority

2    on some of those issues.

3        And then finally an argument that the state -- there's a

4    state court procedure at issue, not an official county policy.

5    They argue that you misdirected your request for an injunction

6    to county employees and that unless defendants provide

7    plaintiffs with predeprivation procedures and substantive

8    findings required for lawful incarceration, that type of --

9    well, I'm sorry, the relief requested turning on the state

10   court judges doing something or not doing something,

11   plaintiffs contend that makes the injunctive relief requested

12   inappropriate.

13       So I think that argument sort of overlaps with the first

14   argument, but those are the main areas that I want to hear

15   from you on and then I'll hear from you, Mr. Wilson on, but

16   those are my areas of focus to purposes of this hearing.

17       I don't want to waste -- take up a whole lot of time here

18   today but those are -- obviously those are the areas that I'm

19   focused on.  If there's anything else that you want to bring

20   up after you address those, you can feel free, but at this

21   point I'm going to try to be quiet and let you make your

22   arguments.

23       So you can go ahead, Mr. Wayne.

24       MR. WAYNE:  Thank you, Your Honor.  I would just

25   like to go through the things that you've raised one by one

1    and I'm happy to do so.

2         I think the first argument you mentioned, Your Honor, was

3    that the defendants do not have the authority to satisfy the

4    injunctive relief.  And that argument is based on the idea

5    that no matter what the requirements of the federal

6    constitution are, no matter that the fact that these warrants

7    were issued in violation of federal law, state law requires

8    the sheriff to follow this warrant, to execute this warrant,

9    to comply with it therefore they have no authority to follow

10   the federal constitution.

11        And frankly that's something that's been resolved decades

12   and decades ago by means of binding authority under the

13   supremacy clause which is that the federal constitution trumps

14   whatever state law might say.  And that's also the basis for

15   law under *Ex parte Young* which is long periods of cases where

16   enforcement actors are enjoined from following state law or

17   state judicial orders that are in violation of the federal

18   constitution.

19        Now we cite the *Strawser v. Strange* case in our brief in

20   which the Supreme Court of Alabama, where court clerks cannot

21   issue marriage licenses with same sex couples and what the

22   federal court there held was that the federal constitution

23   requires the issuance of these warrants, then the court clerk

24   could be enjoined regardless of what the Supreme Court of the

25   state has ordered.

1      And in the *McNeil* case that I just cited, again that's

2   945 F.3d 991, is another excellent example of that.  In that

3   case the court was issuing money bail orders in violation of

4   the constitution, akin to what's happening -- to what we

5   challenged in this case, when people are detained on these

6   warrants they're required to pay money to be released.  And

7   the sheriff there argued that they were obligated to follow

8   the orders of the state court and they were not authorized to

9   release people under state law.

10      But what the Fifth Circuit held is that under the federal

11   constitution a federal court can enjoin the state actor from

12   enforcing a state law or a state order that violates federal

13   law.  And this is something that is being rained within --

14   within all *Ex parte Young* presence, in essence that

15   enforcement actors can be enjoined from enforcing unlawful

16   orders, regardless if they come from a state judge, as in

17   *McNeil*, as in the *Moore* case that we filed the supplemental

18   (unintelligible), or whether that's something required under a

19   state statute.

20      In either way if they violate federal law or federal

21   constitutional law, then a federal judge can enjoin that

22   action.

23         THE COURT:  Mr. Wayne, I'm going to stop you.  I

24   said I would be quiet but I wasn't accurate on that.

25      Was -- I haven't read *McNeil*, and as I said I haven't

1   been that focused on *Ex parte Young*.  Was the state -- the

2   constitutionality of the state law challenged in that case and

3   do you have to challenge the constitutionality of the state

4   law in order to get the benefit of the *Ex parte Young*

5   doctrine?

6           MR. WAYNE:  No, Your Honor.  The state law

7   doesn't -- it wasn't a case where they are saying that the

8   state law is unconstitutional in *McNeil*.  From my

9   understanding and of the case in *Moore v. Urquhart* and more

10  specific case in *O'Donnell v. Harris County* which is a

11  district court decision in our briefing that since then the

12  Fifth Circuit upheld the injunction.

13      Same thing (unintelligible) orders from court and that

14  the Fifth Circuit upheld an injunction authorizing the sheriff

15  to in essence disobey those court orders when they come in

16  violation of the constitution.

17      That was the--

18          THE COURT:  What about this idea -- Okay.  Thank

19  you.  And I'll be sure to look at those.

20      What about this idea that, okay, that's great, but don't

21  you have to have the judge as part of the relief in this case,

22  it's sort of like an elephant in the room argument I think

23  they're making is you're trying to get relief from the

24  surrounding county officials but you're ignoring and not

25  challenging the judge's role in the process.

1      And what they're saying is you can't get relief from us

2  unless you get relief from the judge.  Why is that wrong?

3          MR. WAYNE:  And that is the exactly the question

4  that comes up in *McNeil* and is resolved in favor of an

5  injunction.  And the ruling is that all of the *Ex parte Young*

6  doctrine is about enjoining the enforcement actors when an

7  injunction isn't available against the person who is actually

8  making the order or making the rule.

9      The original *Ex parte Young* from 1908 is about

10  sovereignty.  You can't enjoin the state, but you can enjoin

11  the state actor that's enforcing the rule.  So like here you

12  can't -- under the FCIA modification of Section 1983 where

13  declaratory relief is available you can't issue an injunction

14  against the judge unless the declaratory relief has not been

15  complied with.

16      But, you know, similarly if a court says, you know, you

17  can enjoin the enforcement actor even if the person issuing

18  the ruling is not -- can't be enjoined at the time.  Now we

19  preserve the argument that declaratory -- declaratory relief

20  is unavailable in a preliminary process we are now, so

21  arguably because there's no available declaratory relief you

22  could enjoin the judges, but I think unquestionably you can

23  enjoin the enforcement actor.

24          THE COURT:  Thank you.  You can continue.

25          MR. WAYNE:  And I believe that that -- that's my

1  argument as it relates to the authority, Your Honor.  And I'm

2  happy to move on to the second question about the

3  availability.

4  THE COURT:  Yes, you can.

5  MR. WAYNE:  Okay.  So I think my understanding of

6  the defendants' arguments here is that Randy Frazier could,

7  you know, with his older warrants walk himself in to court in

8  Tulsa County and ask the court there to recall the warrants

9  because he's indigent, which is required under state law.

10  And there is a number of reasons why this doesn't

11  invalidate their request for injunctive relief.  First of all

12  under the action 1983 that the Tenth Circuit has repeatedly

13  held, some of these cases indicate that federal writs in

14  federal court is not required to exhaust state (inaudible).

15  There is no reason to go and request a hearing and thus

16  institute new proceedings in state court in order to vindicate

17  his federal rights.

18  And, second, the idea that his rights could be vindicated

19  in state court when he could be arrested on the way to court

20  and be arrested when he arrives at court, so this is an empty

21  remedy.  And there's actually a great example of this out of

22  this district, Your Honor, which is the recent case from 2019,

23  *Feenstra v. Sigler*, I only have a Lexis cite, but it's 2019

24  U.S. District Lexis 197691.

25  And in that case they cited a different county that's a

1    similar posture.  A woman brought -- several plaintiffs

2    brought suit related to arrest warrants issued and perhaps

3    because of their inability to pay their, quote, debt.  And in

4    that case one of the plaintiffs was told she could go to court

5    and avail herself of the proceedings under Rule 8.5 to get her

6    warrant recalled.  She did so, but instead when she arrived at

7    court instead of being offered a hearing and having her

8    warrant recalled, she was arrested on her outstanding warrant.

9        That's a risk that Mr. Frazier runs were he to go to

10   court.  He can't be forced to suffer the constitutional harm

11   he's complaining about in order if he were to address his

12   constitutional rights.  And that's exactly what the defendants

13   are asking Mr. Frazier to do.

14       (Unintelligible) like the proposed remedy is comes from

15   the same courts that issued the warrant against Mr. Frazier in

16   violation of Rule 8.4 and his federal constitutional rights.

17   I don't think we can say that this is sufficient remedy for

18   him to go to the same court that he was before and trust that

19   they will follow a different rule in order to have his warrant

20   recalled.

21       So to answer your question neither is he required to do

22   so nor is it a realistic available remedy to him.

23           THE COURT:  Okay.  I have just a question factually.

24   Well, no, never mind.  You can go ahead.  Never mind.

25           MR. WAYNE:  Okay.  Your Honor, I think that --

1          THE COURT:  I think the next one was the *Younger*

2   abstention, yeah.

3          MR. WAYNE:  Yes, Your Honor.  There's a number of

4   reasons that *Younger* abstention doesn't apply and I'll kind of

5   sort them into three buckets.  The first is *Younger* abstention

6   requires there to be an ongoing state proceeding, and right

7   now there is no ongoing state proceeding.  There is no court

8   date for Mr. Frazier.  He has no ongoing criminal case.

9          Long ago his plea was resolved.  His conviction is over.

10  His time for appeal lapsed.  His sentence is over other than

11  this court debt, and the mere existence of court debt is

12  insufficient to say there is an ongoing state proceeding and

13  so was the holding in the *Rodriguez* case from Tennessee that

14  we cite in our brief.

15         There has clearly been a warrant issued for him, but that

16  warrant doesn't create a court date and it doesn't create a

17  proceeding in which it could go -- raise his constitutional

18  arguments.

19         What the defendants are saying is that he could go

20  himself and request to institute a proceeding in court, but

21  that's not how *Younger* abstention works.  There's the

22  existence of an arrest warrant as other (unintelligible) have

23  held that could create an ongoing state proceeding.

24         Even if there were an ongoing state proceeding, there's

25  no adequate opportunity for him to make his constitutional

1    argument in state court.

2        Now these warrants were issued out any process at all.

3    He wasn't given a hearing at which he could make argument

4    before a warrant was issued.  He wasn't given any opportunity

5    to make any argument much less his federal constitutional

6    argument about his rights in state court before an arrest

7    warrant was issued.

8        He could be arrested -- on the later courts he could be

9    arrested as the plaintiff as he arrives at court and before

10   he's ever granted a hearing in essence that would require him

11   to suffer the constitutional violations he's complaining of in

12   order to have a proceeding at which he could raise his

13   argument.  And what the Supreme Court has said in *Gerstein* is

14   that that's not an adequate opportunity for *Younger* purposes.

15       Finally and the following example doesn't apply because

16   *Gerstein* also created a categorical exemption from *Younger* for

17   things that may be involved with a state criminal proceeding

18   but can't be raised in defense of the prosecution itself.

19       *Gerstein* involved individuals who were complaining that

20   they were being detained pretrial without given a hearing.

21   Mr. Frazier is being complained -- is complaining that he's

22   going to be detained in the post-trial posture for mounting

23   court debts without being given a hearing.

24       Either way out of *Gerstein* the arguments raised about

25   needing probable cause for pretrial detention, needing a

1  hearing on that, couldn't be raised in defense of the criminal

2  prosecution itself under the (unintelligible) and *Younger* and

3  here Mr. Frazier's argument about his -- the fact that he

4  can't -- the mounting court debts without a showing that he is

5  able to pay, that defense isn't raised related to his criminal

6  prosecution itself.  So it's under *Gerstein* categorically

7  exempt from *Younger*.

8      Your Honor, even if he were to be given a cost docket

9  hearing at some point either before or after he is arrested, I

10  don't think there's any evidence that -- that at these cost

11  docket hearings providing opportunity for individuals to

12  (unintelligible) these federal constitutional issues.  These

13  are perfunctory brief hearings where there's several questions

14  just about why someone hasn't paid.  They're not a full-blown

15  court hearing.  They're adversarial with counsel where

16  individuals have the opportunities to raise these arguments.

17  For all of those reasons this court is obligated to hear this

18  case.  It's not subject to *Younger* abstention.

19      And I believe next, Your Honor, unless you have any

20  questions I'm happy to move on to statutory judicial immunity.

21          THE COURT:  You can move on.

22          MR. WAYNE:  Thank you, Your Honor.

23      With regard to immunity, just first of all, Your Honor,

24  regarding the judicious waive, immunities are affirmative

25  defenses.  This was raised for the first time in a surreply.

1         The Tenth Circuit has held that arguments raised for the

2    first time in a reply brief, much less surreply briefs,

3    produce a waive.  But regardless the argument is --

4              THE COURT:  Let me ask you a question, Mr. Wayne.

5    Let me ask you a question because I haven't looked back at the

6    docket sheet on this.

7         How did that surreply come about?  Did Judge Kern

8    expressly permit defendant to file that surreply?

9              MR. WAYNE:  Yes.

10             THE COURT:  And if so did he know why?  Did he

11   articulate -- did the defendants say, we want to make this

12   argument in a surreply, and he said, yes, go ahead?  He being

13   Judge Kern.

14             MR. WAYNE:  I also go back and look at their motion

15   requesting a surreply.

16             THE COURT:  Okay.

17             MR. WAYNE:  I don't believe it's to

18   (unintelligible).

19             THE COURT:  All right.  Well I'll let you go on from

20   that, but just to let you know, that that makes a difference

21   to me if a court has expressly permitted a surreply to be

22   filed, you know, that can play a role in whether there's

23   waiver.  So go ahead.

24             MR. WAYNE:  Absolutely, Your Honor.  And certainly

25   our main point is that this is -- our main point is that this

1    is wrong.

2              THE COURT:  Okay.

3              MR. WAYNE:  And it's wrong because they -- it's

4    wrong because defendants are here conflating two different

5    types of immunity.  There is judicial immunity which is what

6    the congress pulled in to Section 1983 when they amended it

7    with the FCIA, and then there's quasi judicial immunity.

8         And quasi judicial immunity requires the individual to

9    perhaps -- incapacitates their own related to this process or

10   amended to (unintelligible) from the court process like

11   sheriffs enforcing warrants for court clerks submitting

12   warrants for signatures by the judge that are not judicial in

13   nature.

14        Judicial immunity, which includes the immunity in Section

15   1983, immunity from injunctions where declaratory relief is

16   available, is only available to individuals who are acting in

17   their judicial capacity.

18        And what the Tenth Circuit describes and the Supreme

19   Court describes as acting in a judicial capacity in essence is

20   doing the types of things that judges regularly do, which is

21   adjudicating rights, sitting as an impartial determinate of

22   private rights at a hearing.

23        And the cases that defendant cite that's got the judicial

24   immunity for individuals who are not judges which can occur

25   applies to either non-judges acting as judges.  One involved a

1   hearing officer who was presiding over a hearing.  Or other

2   individuals who were acting under the direct order of judges,

3   and, you know, ministerial officers who were told by a judge

4   to do something in a case and then they do it.

5   Neither of those was the case here.

6        The sheriff certainly is not acting in a judicial

7   capacity.  Judges don't arrest people on warrants, judges

8   don't detain people in jail and take custody of them once

9   they're arrested on warrants, and judges don't submit warrants

10  to themselves like the cost administrators do for approval.

11       Neither of the -- of the groups in fact, the sheriff and

12  clerk or cost administrator are acting in a judicial capacity

13  in the sense.  And (unintelligible) quasi-judicial actors

14  here, that even if the court were to find that they were

15  acting in a quasi-judicial capacity, that simply doesn't

16  provide any leave from injunctive relief.  It would only apply

17  any kind of immunity from their actions for damages.

18       So by conflating those two doctrines, they seek to be

19  able to escape injunction, but that's simply not the case.

20  I've seen many case where court clerks or law enforcement

21  actors or jailers are enjoined by federal courts in a similar

22  posture would show.  (Unintelligible) is an example of that.

23  *O'Donnell v. Harris County* is an example of that.  And there's

24  tons of district court cases where jailers and other officials

25  acting in things that were related to a court cost but are

1   non-judicial in nature are enjoined by federal court.

2       For that reason, Your Honor, this immunity is a red

3   herring, it's simply not applicable here.

4           THE COURT:  Quick question.  Quick question.  Under

5   the *Moore* case that you cited, that case -- doesn't that case

6   indicate that the court clerk, not the sheriff, but the court

7   clerk could be entitled to the expanded judicial immunity

8   available under the FCIA?

9       I understand your argument with respect to the sheriff

10  based on *Moore*, but do you think *Moore* hurts your argument in

11  relation to the clerk by some of its dicta or am I

12  misunderstanding it?

13          MR. WAYNE:  I believe the -- they stand for the same

14  thing which I was just saying, Your Honor, which is that the

15  court in *Moore* says, (unintelligible) says, the test to bar

16  injunctive relief against, quote, a judicial officer, end

17  quote, for acts or omissions taken in the officer's, quote,

18  judicial capacity, end quote.

19      That language is closely associated with the immunity

20  extended to judges and their equivalents.  In that case, you

21  know, the sheriff was not a judge or their equivalent.  But

22  here neither the clerk and their cost administrator are acting

23  as the judge or their equivalent.

24      What they're doing is submitting prospective warrants to

25  judges for their signatures.  That is a classic activity of a

1    law enforcement actor, not of a judge.

2         THE COURT:  But if they're doing that -- let me stop

3    you.  If they're doing that because a court -- because a judge

4    has told them to or the court policy directs them to, meaning

5    the court policy is we have an accounts report and we expect

6    our cost administrator to run it, we expect you to run that

7    report, we expect you to go through that report, we expect you

8    to identify for the judges which of these need a warrant and

9    then you submit that to a judge to sign at the judge's

10   direction.

11        Isn't -- doesn't that start looking more like a judicial

12   capacity function or no?

13        MR. WAYNE:  So were that the case in any individual

14   case, Your Honor, I would agree with you.  If a judge is

15   looking at a case, the court clerk or cost administrator

16   action saying I have determined based on the record in this

17   case that a warrant is necessary to arrest you, the court

18   clerk are directing the cost administrator to send him a

19   warrant for signature.  That certainly looks much more like

20   something that's happened at the direction of the judge.

21        If it's a general policy divorced from any individual

22   case, and I'm certain there's nothing in the record here that

23   says this is a policy of the judges, that there's a standing

24   order regarding this or this is coming from the judges and not

25   the cost administrators and the clerks themselves, but even if

1  it were a standing order related to all cases, that's not a

2  judicial act.

3      So coming from even judges -- even a comment from the

4  judge doesn't mean they're immune if they're acting in a

5  judicial capacity.  They're issuing their general order that's

6  administrative in nature.  That's not a judge acting in their

7  judicial capacity.  So unless there's a specific order of an

8  individual case, then immunity would not apply.

9      Now, certainly defendants have an opportunity to submit

10  evidence that Mr. Frazier's warrants were ordered -- the kind

11  of allocation that Mr. Frazier's warrants were ordered by the

12  judge before they're submitted by the clerk, but I don't

13  believe that's the case and I think the docket reflects

14  otherwise where it says something like, you know, normally as

15  the case is warrant for failure to pay issued, did not pay

16  (unintelligible).

17      There is no evidence on the docket or in the record that

18  any of the warrants for Mr. Frazier were issued or were sought

19  at the request of the judge in a judicial decision.  Instead

20  the judge happened to be end of the process.  The way the

21  clerk and the cost administrator were acting were presenting

22  these warrants to the judges for signature, not

23  (unintelligible) an order from the judge if that answers your

24  question.

25          THE COURT:  It does.  Thank you.  And I think

1    honestly I read the -- I've read the case someone cited out of

2    the Eastern District of Oklahoma, I think *Jones v. Hacker*,

3    that describes the process in that case.  And I might be

4    unfairly using some of those facts as if they were true in

5    this case, which clearly I can't do that and I don't know

6    that.

7        I can't remember what county was at issue, I think it may

8    have been Okmulgee County, but it kind of helped me understand

9    maybe what occurred and what generally occurs.  But those

10   aren't facts in this case, those are just facts in a related

11   case that I reviewed.

12       So you're absolutely correct that defendants haven't

13   submitted evidence on this point and I'm down to the record

14   that's in front of me regarding how this came about or how

15   these warrants come about, so I will do my best not to make

16   assumptions about that.

17       Okay.  Going on.  Well, before I move on from that, I'm

18   going to -- I think this is a really important section so

19   before you move on I want to consult with my clerk and make

20   sure she doesn't have any other questions on that that she

21   wants me to raise.

22       All right.  Okay.  You may go on now to the fifth, the

23   state court procedure.  Well, I have written down state court

24   procedure at issue not an official county policy.

25           MR. WAYNE:  Yes, Your Honor, and I think this

1   relates back to the argument we previously just had regarding

2   the availability of injunctive relief against state court

3   enforcement actors.  And even though they have the very

4   similar posture, it really doesn't (unintelligible) why

5   there's issues.

6       County policies where this is something that's happening

7   as an unconstitutional enforcement of state law.  Either way

8   injunction is available either under *Monell* if you're a county

9   actor or under *Ex parte Young* if it's a state court

10  enforcement actor.

11      I think that the question of whether they're acting as a

12  state actor or as a county actor would be better resolved if

13  we had discovery and we can figure out exactly where -- what

14  the internal processes that are making these determinations,

15  and no account of that yet.  We hope to soon, but right now

16  they can be enjoined, the actors can be enjoined, whether they

17  are acting as state actors enforcing unlawful state orders or

18  whether they are acting as county decision makers.

19          THE COURT:  Okay, Mr. Wayne, I'm going to go back to

20  one issue, and I don't know exactly what legal bucket it falls

21  under, but I'll tell what you I'm struggling with and I want

22  to hear your arguments on it.

23      So with respect to prospective injunctive relief, we have

24  this phrased as an order enjoining -- we, I shouldn't say we.

25  Plaintiffs have this phrased as an order enjoining the court

1    clerk, the cost administrator, at least on this second part,

2    from seeking new arrest warrants for nonpayment of court debt

3    against Randy Frazier unless there has been a determination

4    following notice and a hearing that the nonpayment was wilful.

5        So you're asking the court to enjoin county officials

6    from doing something unless state judges have done something.

7    Is that correct?

8        Don't do this unless this has happened by the state court

9    officials.  And is that problematic and if not why not?

10       I'm a little bit caught up, there's some visceral appeal

11   to defendant's argument that you can't ask me to do something

12   that I have no control over whether -- you can't ask me not to

13   do Step B when I don't have any control over whether Step A

14   happens or doesn't happen.  And in fact I'm instructed perhaps

15   by the people who are in charge of Step A to do Step B.

16       And I understand your supremacy clause argument that

17   you're saying, you're a federal judge, you can tell state

18   actors to do or not do things, but you're not -- we don't have

19   everybody here who is a piece of this puzzle.  So tell me why

20   that relief is still acceptable.

21           MR. WAYNE:  Absolutely, Your Honor, and there's a

22   bunch of cases that address this issue directly.  Most of them

23   come in the (unintelligible) context.

24           THE COURT:  In the what context?  I'm sorry, I

25   didn't understand you.

1          MR. WAYNE:  The (unintelligible).

2          THE COURT:  The what context?

3          MR. WAYNE:  Sorry, Your Honor.

4          THE COURT:  The bail?

5          MR. WAYNE:  Yeah, people challenging, plaintiffs

6  challenging the unconstitutional use of money bail.

7      Sometimes in a similar posture here post trial like in

8  *McNeil* and sometimes pretrial in *O'Donnell v. Harris County*.

9  There's a number of other cases.  I'll be happy to give you a

10  string cite, but there's a bunch of federal cases, *Declan v.*

11  *St. Louis* there an injunction was issued where the

12  (unintelligible).

13      But all of these cases injunctions were issued against

14  the enforcement actor that they said they couldn't enforce the

15  orders unless certain processes were followed.  And that's

16  what we're asking for here.

17      There's nothing improper about enactment of conditional

18  injunction that required the existence of certain facts before

19  an individual can take certain actions.

20      We argue, Your Honor, that that's the essence of

21  procedural due process.  Is that certain things can happen so

22  their property can't be taken, their liberty can't be taken

23  away unless procedures were followed.  That's the nature of

24  our claim and that's the relief that we're asking for.

25      That was the case, again the *McNeil* lays this out well.

1   It's in *O'Donnell* and it goes over bunches of federal cases in

2   similar postures, that you can have an injunction but a

3   prerequisite to enforcement of an order is that the

4   constitution is followed and that's what we're asking for.

5           THE COURT:  And I'm analyzing whether you have a

6   likelihood of success on the merits of your constitutional

7   claim against these defendants, right, for purposes of this

8   motion?

9           MR. WAYNE:  Yes, Your Honor.  And this is similar

10  to -- these cases I've been citing, Your Honor, where the

11  defendant who is enjoined is not the defendant who is required

12  to undertake the process.

13      In those cases as well it was judges who needed to

14  conduct certain hearings by following certain procedures in

15  order to make their bail or they're constitutional and it was

16  the sheriff or the jail that was enjoined from enforcing them

17  unless the judges followed this processes.  It's the same

18  thing we're asking for here.

19          THE COURT:  Understood.  Okay.  Thank you.

20      I don't think I have any other questions, and, as I said,

21  I didn't mean to skip the other elements of the P.I. but I

22  didn't see them as particularly challenged in the briefs

23  before me.  So you're free to make any other arguments you

24  want to make at this time but those were the areas I

25  specifically wanted you to cover.

1     And I'm going to let Mr. Wilson make arguments and you'll

2   have a chance to reply if you would like.  So is there

3   anything else at this time, Mr. Wayne?

4         MR. WAYNE:  Just briefly, Your Honor, and I know

5   Your Honor is already very aware of this.  Mr. Frazier has

6   been living under fear of being arrested and jailed.  And

7   although he has done that for years now, the irreparable harm

8   is eminent.  He could be -- I know he hasn't been arrested for

9   some time, but he could be arrested at any time.

10    We say that the balance of equities may count in the

11  favor of Mr. Frazier's injunction and that irreparable harm is

12  eminent.  So we would ask that this injunction issue.  Thank

13  you, Your Honor.

14        THE COURT:  Thank you.

15    Okay, Mr. Wilson, I'm just going to direct you to I think

16  those same four categories or you can address it.  I think

17  that would be a helpful order to go in or if you want to

18  condense it in some way, feel free to do that, but I'm going

19  to let you address your arguments at this time.

20        MR. WILSON:  Okay.  Just trying to clean up where

21  the plaintiff left off.  In addition to those four arguments I

22  do believe I need to address *Ex parte Young* because that's

23  something that they've raised.

24    I believe he wrongly suggested that *Moore v. Urquhart* was

25  not based on a facial challenge to the state statute when in

1    fact it was.  And it also sought to enjoin the sheriff from

2    executing eviction orders pursuant to a state statute.

3         And he has said a number of times that there is nothing

4    in the records, but this is his burden for extraordinary

5    relief, it is not the defendant's burden.

6         The motion to file a surreply is Document Number 164 and

7    it was specifically to address the 1996 SCIA Amendment which

8    found that the judges -- or not found but amended Section 1983

9    to give the judges immunity, folks acting in a judicial

10   capacity.

11        He also says that the cases that we cited were people

12   acting under direct orders of the judges, and he said such is

13   not the case here.  But an arrest warrant is in fact a direct

14   order from the judge.

15        The case that you talk about from the Eastern District of

16   Oklahoma regarding cost administration clerks, if you look at

17   that case, the order came down from the Chief Justice of the

18   Supreme Court and issued through the Administrative Offices of

19   the Courts, and all District Court Clerks are required to

20   abide by the directions of the Chief Justice of the Supreme

21   Court.

22        So, you know, what the district court tells me to do in

23   that case is applicable to all 77 counties.  There is --

24             THE COURT:  So, Mr. Wilson, you want me to rely on

25   that case or you think it's appropriate for me to look at that

1   case to understand the procedures here because --

2          MR. WILSON:  I do.

3          THE COURT:  Okay.

4          MR. WILSON:  Because it's a -- it's a statewide

5   directive from the Supreme Court to the 77 counties to set up

6   cost administration courts.  And if you look at Rule Q in

7   Oklahoma per the rules of the administration of courts, the

8   court clerk is subject to a judge in his or her district and

9   then to the presiding judge and then to the Chief Justice of

10  the Supreme Court.  So, you know, for the most part the court

11  clerk does ministerial duties for the benefit of the court.

12      I think I've addressed the issues that plaintiff raised.

13  I will go through my outline, Judge, and try and omit

14  everything that you and plaintiff have already discussed.

15          THE COURT:  Well, you don't need to -- if you feel

16  like it's covered in your brief, sir, I don't want you to feel

17  like you have to restate it, but I do just want to make sure

18  you have a chance, and I appreciate the things that you

19  clarified particularly the motion Docket 164 regarding

20  waiver.

21          MR. WILSON:  Well I just want to highlight --

22          THE COURT:  Okay.

23          MR. WILSON:  I just want to highlight the things

24  we've not discussed.

25          THE COURT:  Great.  Great.

1          MR. WILSON:  The exhibits attached to the motions do

2    not establish a county policy or custom.  So in response to us

3    pointing that out, he recognized that when following the

4    directives of a district court judge, the sheriff and court

5    clerk and its deputy are state actors and as such he or she

6    may be enjoined under the doctrine of *Ex parte Young*.

7          Now in a typical *Ex parte Young* case a state

8    constitutional provision or a state statute or even a ruling

9    at the state's highest court is found to be an ongoing

10   violation of federal law.  And under those circumstances the

11   federal court can enjoin state actors from violating federal

12   law by ordering them not to enforce the unconstitutional state

13   law.

14         The *Ex parte Young* exception or doctrine allows a

15   plaintiff to sue state officials in their official capacity

16   but the court must first determine to apply *Ex parte Young*,

17   number one, that there is an ongoing violation of federal law;

18   and number two, this relief that plaintiff seeks is properly

19   characterized as prospective.  And that's a U.S. Supreme Court

20   case *Verizon v. Public Services*, 535 U.S. 635.

21         And *Ex parte Young* may not be used to obtain a

22   declaration that a state officer has violated a claimant's

23   federal rights in the past.

24         Now, under Federal Rule of Civil Procedure 52(a), a

25   district court is required to make findings of fact and

1  conclusions of law at the time it enters a preliminary

2  injunction.

3       Now, unlike a state constitutional provision or state

4  statute or an opinion from the state's highest court that you

5  can read and determine on its face, well that constitutes an

6  ongoing violation of federal law.  Not so with a facially

7  valid arrest warrant like the bench warrants for Randy

8  Frazier's arrest.

9       To get to the ongoing violation of federal law required

10  under *Ex parte Young*, this court must make certain findings of

11  fact and conclusions of law regarding the facially valid

12  arrest warrant.  The court is going to be required to make

13  findings of fact regarding the procedures employed and the

14  proceedings held or not held by the state court judge in

15  issuing the warrant.

16       And the court will then be required to conclude as a

17  matter of law that these procedures were unconstitutional.

18  It's only with that kind of a finding of fact and conclusions

19  of law that the court can declare the facially -- the facially

20  valid arrest warrants for Randy Frazier to constitute a

21  violation of federal law.  And because this warrant remains

22  active it would be an ongoing violation.

23       But these necessary findings and conclusions date back to

24  the moment in time when the arrest warrants were issued,

25  January of 2017.  This is ten months prior to the filing of

1  the complaint, 13 months prior to Randy Frazier being

2  identified as a named plaintiff.

3       And as noted earlier, retrospective declaratory relief is

4  not permitted under the *Ex parte Young* doctrine, and that's

5  506 U.S. 139, *Puerto Rico v. Metcalf*.

6       Now without these necessary retrospective findings of

7  fact and conclusions of law, the facially valid arrest

8  warrants in this case could never be viewed as an ongoing

9  violation of federal law.  *Ex parte Young* does not permit the

10  relief that plaintiff seeks.

11      Now he seeks three things.  Number one he wants an order

12  enjoining the Tulsa County Sheriff from executing those arrest

13  warrants.  But as pointed out, that depends upon retrospective

14  declaratory relief in the form of findings of fact and

15  conclusions of law dating back to well over a year before

16  Randy Frazier signed up.

17      Second thing that he seeks is an order enjoining the

18  Tulsa County Court Clerk and Cost Administrator from seeking

19  new arrest warrants for nonpayment of court debt against

20  Mr. Frazier, and as you had pointed out, unless there's been a

21  determination of yada, yada, yada.

22      Now, in *Cressman v. Thompson*, 719 F.3d at 1139, Tenth

23  Circuit case from 2013, they point out that under *Ex parte*

24  *Young* a plaintiff may avoid the 11th Amendment's prohibition

25  on suits against state and federal court by seeking to enjoin

1    a state official from enforcing an unconstitutional statute.

2         The plaintiff must be, one, suing state officials rather

3    than the state itself.  Two, alleging an ongoing violation of

4    federal law.  And, three, seeking perspective relief.  In

5    addition the named official must have some connection with the

6    enforcement of the challenged statute.

7         I would venture to say that when the court clerk is

8    showing the accounts receivable records to the judge, that

9    they are not charged with the enforcement of an

10   unconstitutional statute.

11        As plaintiffs' counsel referred to these folks, he called

12   them enforcement actors.  Clearly the cost administrator is

13   not an enforcement actor when all she does is bring

14   information to the judge.

15        Now, the third thing that they seek for relief is an

16   order enjoining the Tulsa County Sheriff from executing new

17   arrest warrants against Mr. Frazier unless the warrant issued,

18   yada, yada, yada, after certain procedures.

19        Well, I think on its face since that's yet to occur it's

20   clearly evident that it's not an ongoing violation of federal

21   law to which they're not intended -- not entitled to a

22   permanent or a preliminary injunction.

23        With respect to his desire to change his request for

24   relief after his court specifically requested and show cause

25   ordered to set out exactly what he wanted from whom, the

1   county defendant strenuously objected and suggests he file a

2   new motion for temporary restraining order, but we shouldn't

3   be asked at this late date to address matters that weren't

4   addressed in the briefs or in the response to the show cause.

5        Now, in a separate argument Section 1983 was amended in

6   1996 to prohibit injunctions against the state judicial

7   officer for acts or omissions taken in his or her judicial

8   capacity.

9        Now, how do we construe this amendment?  What was the

10  legislative intent?  We argue that this amendment was intended

11  to free state judges from being pushed or pulled by the

12  federal judiciary without first being advised of just exactly

13  what the federal law requires of them.  And then if they

14  violate such a declaratory ruling, they may enjoin.

15       Additionally we believe that the state court judge is the

16  brains of the state's judicial system but sheriff's deputies,

17  court clerks, bailiffs and legal assistants are its arms and

18  legs and to enjoin one is to enjoin the other.

19       Plaintiff argues that the prohibition against injunction

20  applies only to the brains of the court and that it's free to

21  enjoin its arms and legs.  However, plaintiff has cited -- or

22  we've cited a number of cases that have discussed the 1996

23  amendment and have applied it to the arms and legs of the

24  court, but the plaintiff decided no case that number one

25  discusses the 1996 Amendment, and number two, refuses to

1   extend it to the court's arms or legs.

2       As a practical matter an injunction under Federal Rule

3   65(d)(2)(C) against a sheriff, a judge or a court clerk, would

4   also enjoin all other persons who are in active concert or

5   participation with them.

6       You know the court does what it does because when it

7   speaks, the law requires other government employees to insist

8   the court to carry out its orders and decrees, and to handcuff

9   one is to handcuff the other.  And we think the intent behind

10  the amendment of Section 1983 was you don't handcuff the court

11  until you specifically tell us what's required of it and the

12  court disobeys it.

13      Now, the elements for preliminary injunction, you've

14  already covered the first element with the plan.  The second

15  one, irreparable injury to the movant if the injunction is not

16  granted.  Well, he said in his reply brief at page 153 -- or,

17  I'm sorry, Document 153 Page 1 that he lives in constant fear

18  of being arrested on warrants issued for nonpayment of court

19  debts that he has no ability to pay.

20      Well Mr. Frazier has had a court debt for 21 years and

21  he's never been arrested for failure to pay in all those 21

22  years.  There was one time in 2012 I think he made one payment

23  of $250.  That's it.  And all that's in Exhibit 6 in the

24  docket sheets to the motion for preliminary injunction.

25      He swears in his affidavit that he had a stroke in 2015,

1    that he suffers left side paralysis and must rely on his wife

2    for transportation.  And he swears that he can't afford to

3    pay.

4        But in Tulsa County case number TR-2018-8032 during the

5    summer of 2018 Mr. Frazier was arrested for driving under

6    suspension and he was fined $344.  And he paid that fine in

7    full.  And at this point in time, Judge, I would like to

8    request that the court take judicial notice of the Tulsa

9    County Court records in case number TR-2018-8032.

10             THE COURT:  Are those an exhibit, Mr. Wilson,

11   already to your motion?

12             MR. WILSON:  They are not.  They are available

13   online on the -- on the Tulsa County -- not Tulsa County, the

14   Oklahoma Supreme Court's Network of docket sheets for Tulsa

15   County cases.  You just put in the case number and the docket

16   sheet comes up.

17             THE COURT:  And you're telling me this docket sheet

18   shows that he paid -- it's important because he paid a $344

19   fine at some point in time?

20             MR. WILSON:  Yes.  He paid it in the summer of 2018.

21             THE COURT:  All right.

22             MR. WILSON:  It also shows he was driving under

23   suspension after representing to the court that he couldn't

24   drive and that he didn't have any money.  So I think it's

25   relevant to the veracity of the affidavit that he submitted to

1    this court as well.

2           THE COURT:  I'm sorry, sir, did you say "TR" just in

3    case I want to look at that?

4           MR. WILSON:  It is.

5           THE COURT:  TR-2018-803T?  Is that what you said?

6           MR. WILSON:  8032.

7           THE COURT:  2.

8           MR. WILSON:  8032.

9           THE COURT:  Okay.  Go ahead.

10          MR. WILSON:  Okay.  Furthermore defendant -- Tulsa

11   County defendants lumped in with the current circumstances

12   justify emergency injunctive relief.

13       Now, the imminent irreparable harm that plaintiff alleges

14   is his arrest for nonpayment of costs, but stopping the

15   sheriff from arresting him doesn't stop and can't prevent any

16   of the other 16 law enforcement agencies in Tulsa County from

17   arresting him on a facially valid arrest warrant.

18          And even under defendant's last, it's not even eleventh

19   hour, eleventh and a half hour amendment, it's not going to

20   stop them from arresting him now.  They're going to bring him

21   to the jail and what they want the sheriff to do is to refuse

22   to take him and pursuant to state statute commit a criminal

23   violation in doing so.

24          So even if the court grants everything that he asks for,

25   he will still live in constant fear of being arrested on those

1   outstanding warrants because he did not request that the

2   warrants be recalled.  Simple request.

3        Law enforcement agencies during this global pandemic are

4   trying to keep the jail at a minimum.  He's never been

5   arrested in 21 years for court debt.  Tulsa County severed its

6   relationship with Aberdeen years ago but after this case was

7   filed.  When this case was filed, we took a look at it and

8   said we don't want to do business with them.

9        Frazier can drive and at least he can pay some money on

10  his fines, fees and costs.  He did it in the summer of 2018.

11  And (unintelligible) his counsel can appear at the cost docket

12  and have all of the warrants recalled and the present evidence

13  regarding his indigency.  Now this is a point worth saying,

14  that plaintiff has not presented any evidence that that's not

15  true.

16       Now without recalling the warrants, plaintiff's risk of

17  being jailed on outstanding failure to pay warrants is the

18  same even if the court grants his relief because TCSO deputies

19  are such a small portion of law enforcement officers in Tulsa

20  County.

21       And in fact there is -- I was looking at the list of law

22  enforcement officers the other day.  There's a number of

23  federal law enforcement officers as well that we have not

24  talked about.  Bottom line, you know there's warrants issued

25  statewide and they're enforceable by any peace officer.

1          Plaintiff cannot show that he will suffer irreparable

2     injury absent the extraordinary relief from a preliminary

3     injunction, and then he pointed out that an injunction being

4     sought by the plaintiff in this case is disfavored in the

5     Tenth Circuit and additionally it's disfavored for another

6     reason.  It would grant him virtually all the relief he's

7     requesting in the merits in the case.

8          Now, when we go to the next item on the elements for

9     preliminary injunction balancing the harm, plaintiff's

10    threatened injury remains whether the court grants the relief

11    or not.  But on the other side of the scale any time a state

12    is enjoined from carrying out the orders of its duly elected

13    or appointed judges, it suffers a form of irreparable injury.

14         The State of Oklahoma has a strong interest in seeing

15    that criminal sentences are carried out and that its facially

16    valid judicial orders are obeyed.  The Oklahoma Judiciary has

17    a strong interest in hesitating execution of its court orders.

18         Now without recalling the warrant every TCSO deputy is

19    going to be required to keep a Post-it note in his or her

20    patrol car or on their person to ignore any failure to pay

21    warrants against Randy Frazier.  And if it's a new warrant,

22    then those deputies are going to have to ask the appellate

23    court and investigate whether the state judge has followed

24    proper procedure or not before they can determine whether or

25    not to execute that facially valid warrant.  That's going to

1   create a lot of trouble here in Tulsa.

2        And I would just like to read from the Tenth Circuit's

3   decision in *Valdez*, 878 F.2d 1285, it's cited in our briefs,

4   1289, it addresses this.  To force officials performing

5   ministerial acts intimately related to the judicial process to

6   answer in court every time a litigant believes the judge acted

7   improperly is unacceptable.  Officials must not be called upon

8   to answer for the legality of decisions which they are

9   powerless to control.

10       We explained in *Kurtz*, 588 F.2d at 802 that it is simply

11  unfair to spare the judges who give orders while punishing the

12  officers who obey them.  Denying these officials absolute

13  immunity for their acts would make them a lightning rod for

14  harassing litigation aimed at the judicial orders.

15       Tension between trial judges and those officials

16  responsible for enforcing their orders inevitably would result

17  were there not absolute immunity for both.  Officials such as

18  the defendants must not be required to act as pseudo appellate

19  courts scrutinizing the orders of judges.  The public interest

20  demands strict adherence to judicial decrees.

21       Which -- and that's the end of the citation of *Valdez*

22  brings me to the last element for preliminary injunctive

23  relief that it's not allowed to be adverse to the public

24  interest and it is adverse in this interest.

25       It disembodies the court, the state court, from its arms

1    and legs.  It empowers those who assist the court to ignore

2    facially valid court orders.  It asks the county sheriff and

3    court clerk to sit in judgment of a proceeding that a state

4    court judge, even though they're bound by law to obey the

5    court and follow these directives.

6        And I suspect if they sit in judgment of the state court

7    proceedings and find that they're not up to snuff, well,

8    they're allowed to thumb their nose to the court and say do it

9    right next time.  That's going to create lots of problems.

10       The preliminary injunction is clearly adverse to the

11   public interest and we would respectfully request that the

12   plaintiff's motion for extraordinary relief which is required

13   to be proven by substantial and compelling evidence and is

14   disfavored by its very nature by the Tenth Circuit, we would

15   request that under the circumstances that exist in September

16   of 2020 in this case that that be respectfully denied.

17            THE COURT:  Thank you, Mr. Wilson.

18       At this point -- at this point, Mr. Wayne, I'm going to

19   let you briefly respond to his main points or anything that

20   you want to address.

21            MR. WAYNE:  Thank you, Your Honor.  There's two

22   things I would like to address quickly.  Just quickly, Your

23   Honor, Mr. Wilson kept referring to these warrants as facially

24   valid.  Actually I don't think they are facially valid.

25   They're issued without any of the accompanying indicia of

1  probable cause, (unintelligible) while the warrant would

2  require and that goes directly to our Fourth Amendment

3  argument regarding the warrants.

4      With that aside I think Mr. Wilson is just simply wrong

5  when it comes to *Ex parte Young* in a couple of different ways.

6  One, there is no state statute that's required for an *Ex parte*

7  *Young* injunction which is reflected in a number of different

8  cases.  Following *McNeil*, which I've talked about a lot and I

9  need to talk about more, it is the most recent of them.

10     But there's many cases where *Ex parte Young* justifies an

11 injunction preventing a violation of federal law regardless of

12 whether it comes from the state statute or a state order.

13     With regards to the argument about arms and legs versus

14 the brains, this goes to both *Ex parte Young* issues and the

15 judicial immunity issues and I would like to just read a brief

16 passage from *McNeil* because this was an issue that came up

17 there and was dealt with comprehensively by Judge Sutton in

18 the Sixth Circuit.

19          THE COURT:  I don't want you to read that into the

20 record.  That's okay.  I can read that case.  Go ahead.

21          MR. WAYNE:  Got it.  But needless to say that it

22 was exacting an argument that really that should be up to the

23 judge that you can enjoin the sheriff and the court said no.

24 It's up to the plaintiff would want to sue and they certainly

25 can sue the sheriff and they can get an injunction.  So it's

1    the same issue here.

2        You know when we get to the judges and actions for

3    declaratory relief against them as part of this case as a

4    whole and even in this preliminary posture and even at the end

5    of the case we're permitted to seek an injunction against the

6    sheriff for enforcing unconstitutional orders and that's

7    authorized by law.

8        There was some confusion I think that Mr. Wilson had

9    about retrospective versus prospective relief.  We're not

10   seeking retrospective relief in this preliminary injunction

11   motion, we're seeking prospective relief.  We are asking that

12   these defendants be enjoined from doing something in the

13   future.  That's the distinction.  The fact that the act that

14   created the unconstitutional situation that Mr. Frazier is in

15   happened in the past, that's true of any case where

16   injunctions are issued based on unconstitutional state law or

17   state orders.

18       Many things have to have already happened for the

19   standing to get an injunction.  That's what happened now.  The

20   warrants were issued and now we are seeking prospectively.

21   That's why it isn't unavailable.

22       And the thing about that is where he talks about --

23            THE COURT:  Well, wait, let me stop you there just

24   to make sure I understand.  What about his argument that, yes,

25   they can be based on past facts but you have to prove an

1  ongoing violation of federal law, meaning it's still happening

2  right now and we don't know that unless based on facts that

3  were alleged or that occurred in 2018 and that you bear the

4  burden of proving it's ongoing, not them bearing the burden of

5  proving that it's not still happening.

6        MR. WAYNE:  Certainly, Your Honor.  Simply put these

7  warrants are still there.  There is a threatened future

8  violation of federal law by an arrest on unconstitutional

9  merit and there's a current ongoing violation forcing

10  Mr. Frazier to live in constant fear of arrest

11  (unintelligible) of these unconstitutional warrants.

12     Now we declared -- we have evidence in the record that

13  Mr. Frazier cannot afford to pay.  The payment in 2018 on a

14  judgment case that's not addressed in this lawsuit, simply

15  there's no evidence at all with regards to Mr. Frazier's

16  ability to pay these current warrants.  And I would argue it's

17  irrelevant, Your Honor.  Mr. Frazier's financial --

18        THE COURT:  Do you agree with Mr. Wilson that the

19  court needs to make findings of fact and conclusions of law

20  indicating that these arrest warrants were not issued based on

21  valid procedures or were issued in violation of due process

22  and equal protection before I can issue this relief?

23        MR. WAYNE:  Yes, Your Honor, and in fact I would

24  argue that I can dispute it.  That there was no argument made

25  with regard to this preliminary injunction that those warrants

1  were issued constitutionally.

2      So that fact has nothing to concede it by these

3  defendants that these warrants were unconstitutional, but

4  regardless in any case where a court is issuing an injunction

5  regarding law, you are making -- the court is making findings

6  of fact and conclusions of law regarding that unconstitutional

7  state action that has already happened.

8      That's the case in *McNeil*.  I think it's case in the

9  original *Ex parte Young* case from 1908 where the law that was

10  unconstitutional there had already been (unintelligible).  And

11  the question of threatened enforcement.  Here we have

12  threatened enforcement of these unconstitutional warrants

13  against Mr. Frazier and it's the same situation.

14      So -- so, yes, Your Honor the --

15          THE COURT:  But it's confessed in your view?

16          MR. WAYNE:  Yes, Your Honor.

17          THE COURT:  I think you're going to go on to *Valdez*.

18  Feel free to do that.

19          MR. WAYNE:  Yes, Your Honor.  *Valdez*, again they're

20  confusing judicial immunity from damages which applies to, as

21  Mr. Wilson said, the arms and the legs, actors whose actions

22  are derivative of judicial authority with judicial actions

23  taken in their judicial capacity which requires discretion as

24  the hallmark of that county from judicial decision making.

25      That act requires immediate injunctive relief under

1   Section 1983.  It's in fact discussed in the *Moore* case which

2   we submitted in supplemental authority and it specifically

3   discusses the fact that the judicial immunity originally in

4   the common law (unintelligible) was imported into Section 1983

5   by the FPIA, did not extend to the arms and legs actors.  So

6   while they may claim that as judicial actors that they're

7   immune from damages, they are not immune from injunctive

8   relief.

9       And I believe that's -- that's the salient things, Your

10  Honor.  I'm happy to address anything else.

11          THE COURT:  Yeah, respond quickly to this argument

12  that Rule 65(d)(2)(C) would also enjoin the judges.  I guess

13  the language used is they are active, I can't remember,

14  participants or joint actors or something like that and so

15  that any relief that I grant I think you said would be to

16  handcuff one would be to handcuff the other under Rule 65.

17      Do you view this injunctive relief as also enjoining any

18  behavior by judges?

19          MR. WAYNE:  No, Your Honor.  As the court said in

20  *McNeil* there's two distinct stages here.  There's the order

21  from the state court and then there's the resulting detention.

22  And I know Mr. Wilson discussed at length the (unintelligible)

23  actors and (unintelligible) an injunction just to detention.

24      So there's two things stated, there's the order by the

25  court and then there's the detention.  The judges are not

1  involved in the detention and what we're seeking to enjoin is

2  that detention.

3      Now certainly if they're depending upon what the judges

4  do whether that detention is lawful, but at the end of the day

5  plaintiffs are committed to sue the detainer as well as the

6  jailer and not required to sue the judge and then we've just

7  got the plain (unintelligible).

8          THE COURT:  If I don't allow you to amend because I

9  think it's untimely and because I really don't want a whole

10  other round of briefing on this, is Mr. Wilson correct that

11  some of this relief is unavailable?

12      Or I should say there's less of an irreparable injury I

13  think is the prong that this goes to, this idea that he's not

14  going to suffer irreparable injury absent an injunction if 15

15  other different law enforcement agencies have the power to

16  arrest him, and I believe that plaintiffs are somewhat

17  acknowledging that that's a problem with their motion by

18  seeking this amendment.

19      If I don't allow this amendment, how do you address the

20  irreparable injury prong?

21          MR. WAYNE:  Well, the other (unintelligible) of this

22  amendment we believe is a clarification.  That it can only be

23  used in the execution of the arrest warrant and we believe

24  detention is part of the execution of that warrant.  If

25  they're enjoined from executing it, they're certainly enjoined

1    from enforcing it.  While an initial portion of that execution

2    was taken by a county sheriff or whether it is taken by

3    another agency, that detention pursuant to the warrant is

4    problematic in the execution of the warrant.  So we don't

5    believe it can be amended so much as a clarification.

6        The fact that you can't have a warrant only pertaining to

7    the act of arrest which we don't concede, but if it were, the

8    question is irreparable harm pursuant to this defendant.  Now

9    certainly it's possible he could be harmed by another actor

10   not party to this suit and so then that would offer complete

11   relief, but what we're seeking here is relief after the

12   effect.

13       The irreparable harm potentially from the sheriff remains

14   is no less because some action will be taken by another actor

15   who is party -- that's not a party to this suit.  If the

16   sheriff were to arrest him, and they have discretion to do so

17   and it's just (unintelligible) that they may choose to arrest

18   you at any time, they do not allow (unintelligible) to arrest

19   them at any time.  That would constitute irreparable harm.

20       So I don't think that it (unintelligible) in terms to be

21   a legal analysis of irreparable harm, but I do think that

22   qualifying the execution of the order extends to taking

23   custody of Mr. Frazier if the initial act of arrest is taken

24   by another agency that offers more accurate and complete

25   relief.

1        And I hope that answers your question, Your Honor.

2              THE COURT:  It does.  I'm thinking.  Okay.  I don't

3   have any other questions for you.

4              MR. WILSON:  Judge.

5              THE COURT:  I know, yeah, I'm going to let you talk,

6   Mr. Wilson, I'm just double checking something with my law

7   clerk.

8              MR. WILSON:  Okay.

9              THE COURT:  Okay.  I'm ready to move on.

10       Mr. Wilson, I'll let you briefly -- well, were you

11  completely done, Mr. -- this is going to be it so speak now or

12  forever hold your peace, Mr. Wayne.  Is that all the arguments

13  you want to make at this time?

14             MR. WAYNE:  Judge, one thing I was remiss on not

15  responding to, Your Honor, is the argument regarding the

16  balance of the equities and public interest.

17       As case law makes clear it's always in the public

18  interest to prevent a violation of constitutional rights.  I

19  think given everything that's going on with the pandemic and

20  the difficulties with the crowing in the jails, and

21  Mr. Frazier's current health condition, (unintelligible) now

22  as I've already said it.  So, you know, we cite a case in our

23  brief regarding the public interest.  But that's it for me,

24  Your Honor.  Thank you.

25             THE COURT:  Well, Mr. Wayne, let me ask you, is it

1   fair -- for lack of a better legal term is it fair for me to

2   pass on the constitutionality, the legality and the propriety

3   of essentially the judge's procedures that are leading in your

4   estimation to these constitutional violations without the

5   benefit of their defense of their actions?

6       I think that's part of the visceral problems that I'm

7   having and I'm not sure that they've been articulated well by

8   me or by the defendant in a legal term but -- and maybe this

9   *McNeil* case and other cases, obviously as I said I haven't

10  read everything on this topic and I certainly have more to do

11  to educate myself, but, I don't know, it seems like I'm

12  passing on the constitutionality of procedures and conduct of

13  people who aren't in front of me to defend themselves

14  specifically based on the way that you're couching this

15  preliminary relief.

16      And your answer to me is, that's how it goes in these

17  cases.  Is that fair?

18          MR. WAYNE:  Well, in a sense that's how it goes,

19  Judge.  And you know that the judges are a party to this case.

20  They could have filed a brief related to the constitutionality

21  of these warrant as it pertains to the preliminary injunction

22  if they wanted to.  They didn't.

23      So the purpose of this preliminary injunction, the

24  constitutional violations are undisputed.  But even if they

25  were, the case law is crystal clear that you can't issue

1   warrants.

2         *Bearden* is directly on point as well as a number of

3   other cases with that fact that you cannot arrest someone for

4   nonpayment of a debt unless you've conducted at least some

5   inquiry into their ability to pay.  There's simply no dispute

6   on that constitutional proposition.

7         So even if we found the opportunity to and didn't, I

8   think that it is fair to order relief and we are hopeful that

9   it's on the merits of constitutionality.

10        THE COURT:  Okay.  Thank you.

11        Mr. Wilson, your final turn here.

12        MR. WILSON:  Yes.  As the plaintiff points out in

13  one of his briefs, when we address the issue about he can

14  appear in court and have his warrants recalled and stuff.  He

15  says, well, you know, the county defendants can't speak for

16  what's going on in court because they don't control it and

17  they're not there.

18        Well, he's right.  We don't control it, we are not there,

19  and that's why we're not arguing one way or another whether or

20  not the court's behavior or processes do or do not meet

21  constitutional muster.  It's not our job to sit in judgment of

22  the courts.

23        He doesn't have any evidence regarding a *Monell*

24  violation, and with respect to *Ex parte Young*, it all depends

25  upon this court issuing findings of fact and conclusions of

1    law about retrospective declaratory relief that in January of

2    2017 the district court followed certain procedures and those

3    procedures are unconstitutional and as a result of that

4    consequence the bench warrants are invalid despite the fact

5    that on their face they look good.

6         And since you're not entitled to retrospective

7    declaratory relief under *Ex parte Young*, under neither theory

8    is he entitled to a preliminary injunction.

9         And, you know, it's a moving target with the plaintiff as

10   just what he's trying to get in this case, he says now that

11   detention's got nothing to do with the judges, but the jail

12   exists solely as an adjunct to the court system.

13        The sheriff's office has no interest in holding anyone.

14   It has no county laws to enforce.  They're state laws and

15   state law requires that folks are arrested for violations

16   being held to answer to the court.

17        He has no authority to reject someone who is brought to

18   his jail.  That's 21 Oklahoma Statute 533.  And he has no

19   authority to let someone go who has been brought to his jail.

20   That rests with the district court judge pursuant to 57 O.S.

21   Section 47 and Section 55 and 21 O.S. 532.

22        And the final case I would like to leave you with is *State

23   v. Price*, 280 P.3d 943 in which the sheriff released someone

24   from custody in the absence of judicial authorization and he

25   faced criminal penalties and removal from law, and in that

1    case they affirmed his removal from office for doing so.

2       So the whole concept of detaining someone in the jail is a

3    judicial concept so they can answer in court for their public

4    offense.  The sheriff and the county don't have any interest

5    in that.  That's all.

6            THE COURT:  Okay.  I'm going to pin you down one or

7    more time, Mr. Wayne, on this to make sure I understand.  It

8    was a question I really wanted to start this hearing with and

9    I'm back to it which is, and I think your answer is both, but

10   are you trying to prove a 1983 *Monell* violation or are you

11   trying to get relief under *Ex parte Young* for purposes of me

12   analyzing the likelihood of success on the merits against

13   these three defendants?  Or is it both?

14           MR. WAYNE:  Your Honor, I do both, officially the

15   answer and --

16           THE COURT:  So you want me -- you expect -- if this

17   order, if these findings are complete, as complete as they

18   could be if I reach every issue that's presented, I would be

19   addressing the likelihood of your success on prevailing on a

20   1983 claim based on *Monell* principles as well as the *Ex parte*

21   *Young* doctrine where you have the possibility or the

22   availability of prospective injunctive relief against state

23   officials?  Yes?

24           MR. WAYNE:  Yes, Your Honor.  If they're a county

25   actor, they're enjoinable in the 1983 *Monell*.  If they're

1    acting pursuant to the state, they're enjoinable under 1983

2    and *Ex parte Young* and *Monell* is directly off of that.

3            THE COURT:  Okay.  I really appreciate everybody's

4    arguments today.  I know two hours is a long hearing but like

5    I said I'm a little late to the party, I'm trying to get up to

6    speed, I'm trying to make sure that I understand these issues.

7            If after this hearing you-all decide you want to talk and

8    think you can reach any agreement, please let me or my

9    courtroom deputy know as quickly as possible just because I

10   will be working on this.  If I hear nothing from you, I will

11   assume that you are just awaiting a report and recommendation

12   from me.

13           Is there anything else from any of the other attorneys

14   that are present on the phone?  And if I hear nothing, you

15   don't have to all go through and say no, Your Honor.  If I

16   hear nothing, I'll assume nobody wants to chime in, but this

17   is your chance.

18           Is there anything from any of the other defendants here?

19           Okay.  I heard the proverbial silence, so with that I

20   appreciate your time today and court is adjourned.  Thank you.

21           (PROCEEDINGS ADJOURNED.)

22

23

24

25

1

2

3                     **REPORTER'S CERTIFICATION**

4       WHILE NOT PRESENT TO STENOGRAPHICALLY REPORT THE FOREGOING

5   PROCEEDINGS, I CERTIFY THAT IT WAS TRANSCRIBED TO THE BEST OF

6   MY ABILITY FROM A DIGITAL RECORDING.

7

8                 CERTIFIED:        S/Laura Griffin

9                                 Laura Griffin, RMR, CRR
                                  United States Court Reporter
                                  333 W. 4th Street, RM 411
10                                Tulsa, OK  74103
                                  (918) 699-4879
11                                laura_griffin@oknd.uscourts.gov.

12

13

14

15

16

17

18

19

20

21

22

23

24

25