United States District Court
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARLY GRAFF, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| vs. ) | Case No. 17-cv-00606-SEH-JFJ |
| ) | |
| ABERDEEN ENTERPRIZES II, INC., et al., ) | |
| ) | |
| Defendants. ) | |

TULSA COUNTY DEFENDANTS'
RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF

More than six years ago, on February 1, 2018, based on 42 U.S.C. § 1983,[1] Plaintiff Randy Frazier ("Frazier" aka Randy Maxville) requested this Court issue a Preliminary Injunction (Doc. #77) to prevent Tulsa County's Court Clerk, Cost Administrator and the Sheriff from participating in the issuance and enforcement of bench warrants based on Frazier's failure to pay criminal fines, fees and costs. *See* Frazier's Motion for Preliminary Injunction ("MPI"), *id*. Frazier has since modified his request to argue that if such relief is unavailable against these officials "as county actors" under § 1983 for allegedly implementing an unconstitutional county policy, he is still entitled to preliminary injunctive relief against them "as state actors" under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), for enforcing unconstitutional state law and state judicial orders.[2] All County employees drive on the right-hand side of the road, but it would stretch

---

[1] *See* Second Amended Complaint, ¶ 15 (Doc. #212); Consolidated Reply of Plaintiffs Carly Graff and Randy Frazier in Support of Their Motion for Preliminary Injunction, p. 10 (Doc. #153).

[2] *See* Response to Defendant Vic Regalado, Don Newberry, and Darlene Bailey's Sur-reply to Motion for Preliminary Injunction, p. 6 (Doc. #191) ("under *Ex parte Young* and its progeny, individual officials acting for a state can be sued in their official capacities for injunctive relief. *See Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012). Thus, whether or not Defendants are correct that merely state policies are at issue—which Plaintiffs do not concede—this Court has the power to enjoin their constitutional violations.").

1

credulity to suggest that County policy is the moving force for such behavior. State law requires everyone drive on the right-hand side. 47 O.S. § 11-301. An allegation that such behavior is caused by county policy is not entitled to deference. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("we are not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation marks omitted).

Decisively, the failure-to-pay bench warrants of which Frazier complains, which had been authorized by 19 O.S. (2010) §§ 514.4, 514.5, are no more. *See* 19 O.S. (2024) §§ 514.4, 514.5. House Bill 2259 (effective Nov. 1, 2023) converted all such warrants as a matter of law into "cost cite and release warrants," an entirely new type of warrant throughout the State of Oklahoma under which no defendant can be taken into custody but instead is given a written warning with notice to appear within ten (10) days before the applicable court clerk. *See* 22 O.S. §§ 983(H)(1), (H)(6); Affidavit of Undersheriff George Brown, ¶ 2, Exhibit "A." Because failure-to-pay bench warrants, as a matter of law, no longer exist, Frazier's request for preliminary injunctive relief to prohibit the issuance of such warrants is moot. Because Frazier can no longer be taken into custody based on such warrants, his requested preliminary injunctive relief to prohibit the execution of his failure-to-pay bench warrants is likewise moot.

## I.
## FRAZIER'S RIGHT TO SECTION 1983 INJUNCTIVE RELIEF AGAINST COUNTY ACTORS HAS NOT BEEN SHOWN; BUT RELIEF AGAINST STATE ACTORS UNDER THE DOCTRINE OF *EX PARTE YOUNG* MAY BE AVAILABLE

As recently explained by the United States Supreme Court, to be entitled to relief in a § 1983 action against county officials, plaintiffs "must show that their injury was caused by a municipal policy or custom. … [This is true both when plaintiffs seek] monetary damages … [and] when plaintiffs seek prospective relief, such as an injunction or a declaratory judgment." *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 31 (2010). "Congress … intend[ed that]

municipalities and other local government units … can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where … the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 689 (1978). The fact that the Court Clerk, Cost Administrator and the Sheriff obey state law and the state judiciary in their roles as officers of the state court does not establish a county policy. *See Surplus Store and Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 791-92 (10th Cir. 1991) ("It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law. If the language and standards from *Monell* are not to become a dead letter, such a 'policy' simply cannot be sufficient to ground liability against a municipality."); and *Ray v. Judicial Corrections Services, Inc.*, 2017 WL 660842, *14 (N.D. Ala. 2017) (A district court clerk "is not a policymaker for the [county] when conducting judicial acts, such as issuing a warrant .... This is because he or she is controlled by the state's judiciary system.").[3]

---

[3] *See also* W*hitesel v. Sengenberger*, 222 F.3d 861, 872 (10th Cir. 2000) (board of county commissioners "cannot be liable for merely implementing a policy created by the state judiciary"); *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1190 (10th Cir. 2003) (collecting cases) (acts of a municipal judge *in performing a state judicial function* do not establish municipal policy); *Shepp v. Fremont County, Wyo.*, 900 F.2d 1448, 1456-57 (10th Cir. 1990) (denial of bail was the responsibility of state judge and could not be attributed to the county); *O'Donnell v. Harris Cty.*, 892 F.3d 147, 156 (5th Cir. 2018) (sheriff is not a municipal policymaker when following judicial orders); *Robinson v. City of Tupelo, Mississippi*, 2018 WL 2348666, *6 (N.D. Miss. March 23, 2018) (municipal liability did not attach to county sheriff's charging a $25 fee when releasing someone on bail because sheriff was simply following state law); *Humphries v. Milwaukee County*, 2011 WL 5506676, *6 (E.D. Wisc. Nov. 10, 2011) ("a municipality 'cannot be held liable under section 1983 for acts that it did under the command of state or federal law'") (quoting *Bethesda Lutheran Homes and Services, Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998); and *Frobe v. Village of Lindenhurst*, 2014 WL 902878, *9 (N.D. Ill. March 7, 2014) ("the state law is a state law, not municipal policy").

In determining whether Frazier has shown a controlling county policy or whether county officials are simply obeying the state legislature and state judiciary, the Court must look to and respect the "state and local law[] that allocate policymaking authority among particular individuals and bodies." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988). *See also McMillian v. Monroe County, Ala.*, 520 U.S. 781, 786 (1997) ("Whether a particular official has 'final policymaking authority' is a question of *state law*'").

The Oklahoma Supreme Court is in charge of and exercises control over the collection of fines, fees, costs and assessments in criminal cases. 28 O.S. §§ 151(D), 153; Supreme Court Order, S.C.A.D. 2011-08 (Doc. #99-35). The Defendant Court Clerk and his deputy clerks are judicial personnel subject to the control and direction of the Chief Justice of the Oklahoma Supreme Court. *See Petuskey v. Cannon*, 1987 OK 74, ¶ 20, 742 P.2d 1117, 1121; Oklahoma Supreme Court Rules on Administration of Courts, 20 O.S. Ch. 1, Rule 2.

> In order to have a unified, organized judiciary in Oklahoma, there must be one individual at the apex: the Chief Justice of the Supreme Court. Through the powers vested in the Supreme Court, by the Oklahoma Constitution and statutes, it has passed down the authority for the administration of district courts to the Administrative Judge of an Administrative Judicial District. This authority is essential for the orderly operation of justice.
>
> In ministerial matters, the District Court Clerk is serving his Court subject to the authority of the Administrative Judge. *Even though he may disagree with a particular order of the Administrative Judge, he has no discretion but to follow it in ministerial matters.*

*Petuskey*, ¶¶ 35-36, 742 P.2d at 1123 (emphasis added). The "court clerk's function of receiving and disbursing funds of every character is inextricably connected, not with county government, but with that official's duty as state court's bursar. In managing funds not derived from county appropriations the court clerk acts as a functionary of the state district court rather than as a county official." *North Side State Bank v. Board of County Comm'rs of Tulsa County*, 1994 OK 34, ¶ 15,

894 P.2d 1046, 1052. Every deputy court clerk who serves as cost administrator is trained by the Office of the Supreme Court Administrator. *Jones v. Hacker*, 2015 WL 1279352, *1, *6-7 (E.D. Okla. March 20, 2015) (county cost administrators are lawfully authorized by state court judges in criminal cases to carry out the judges' expectations with respect to documentation, receipt and collection of fines, fees and costs that "the judges themselves had imposed"). "[T]he judiciary has exclusive authority to manage its own affairs." *Petuskey, supra*, ¶ 15, 742 P.2d at 1120.

Every sheriff is statutorily required to enforce facially valid arrest warrants under criminal penalty for non-compliance. *See* 19 O.S. § 514 ("The sheriff in person, or by his undersheriff or deputy, shall serve and execute, according to law, all process, writs, precepts and orders issued or made by lawful authorities, and to him directed"); and 21 O.S. § 538 ("Every person who, after having been lawfully commanded by any magistrate to arrest another person, willfully neglects or refuses so to do, is guilty of a misdemeanor").

When the Court Clerk, Cost Administrator, and the Sheriff – in their roles as officers of the state court – obey the orders of the court, their obedience is undertaken pursuant to state policy as an arm of the state court. Such acts do not constitute county policy, but rather, "the unhesitating execution of [state] court orders [that] is essential to the [state] court's authority and ability to function." *Moss v. Kopp*, 559 F.3d 1155, 1165 (10th Cir. 2009). To the extent that the Court Clerk and the Sheriff are acting as arms of the court, they are agents of the State of Oklahoma carrying out state law dictated by state statute and judicial decree. There are *no county court*s in Oklahoma.[4]

---

[4] Oklahoma's seventy-seven counties are divided into twenty-six judicial districts, each with its own district court and at least one district court judge; these judicial districts are then divided into nine judicial administrative districts, each with its own presiding administrative judge. 20 O.S. §§ 22-23, 92.1–92.27; Okla. Const. art. 7, § 7. Each county is required to provide a court room and an office for the judge of the district court, but each judge serves his or her judicial district, not the county. 19 O.S. § 401; George B. Fraser, "Oklahoma's New Judicial System," 21 Okla. L. Rev. 373, 375, 392 (1968) ("The courts are organized on the basis of judicial districts rather than

Frazier's naked legal conclusion and *ipse dixit* argument that county policy is to blame for his constitutional woes stands in flat contradiction to state law. Although Frazier argues that he is complaining about judicial "practices, not any statute … governing [the collection of] court financial obligations," the Tenth Circuit has clarified that "[a] [j]udge's failure to follow state law or federal constitutional law does not transform his [conduct] into municipal policymaking." *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1190 (10th Cir. 2003) (quoting *Eggar v. City of Livingston*, 40 F.3d 312, 314-15 (9th Cir. 1994)).

Frazier fails to make a "clear and unequivocal showing"[5] that a county policy is the moving force behind his alleged constitutional violations. Thus, he fails to satisfy Section 1983's municipal liability requirement.

Frazier can nevertheless seek preliminarily injunctive relief under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), against the Court Clerk and the Sheriff to the extent they are named as state actors (not as a county actors) "to prevent a continuing violation of federal law." Consolidated Reply of Plaintiffs Carly Graff and Randy Frazier in Support of Their Motion for Preliminary Injunction, p. 3 (Doc. #153) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985), citing

---

counties, and a judge is a judge of the district court rather than a judge for only one county.… [D]istrict judges and associate district judges are state officers."); Okla. Const., art. 7. *See also* Motion to Dismiss Plaintiffs' Second Amended Complaint by Tulsa County Defendants, pp. 9-19 (Doc. #399).

[5] "To succeed on a motion for preliminary injunction, the moving party must establish (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) [that] the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) [that] the injunction, if issued, will not adversely affect the public interest. *Preliminary injunctive relief is considered an extraordinary remedy that requires the moving party make a clear and unequivocal showing it is entitled to such relief.*" *Colorado v. Griswold*, 99 F.4th 1234, 1240 (10th Cir. 2024) (emphasis added, citations and quotation marks omitted).

6

*Ex parte Young*, 209 U.S. at 155-156, 159). Under *Ex parte Young,* no showing of a county policy is required. This was the approach adopted by the Court in a similar class action lawsuit pending in the Northern District concerning the state's bail procedures:

> To the extent the sheriff is named as a county actor, he is DISMISSED from this action with prejudice. The motion is DENIED to the extent the sheriff is named as a state actor, i.e., as a person who carries out the allegedly unconstitutional policies and directives of the Tulsa judges. To this extent, the sheriff remains a defendant for purposes of counts one and two, both of which seek prospective declaratory and injunctive relief against him.

*Feltz v. Board of County Comm'rs of the County of Tulsa*, Case No. 18-cv-0298-SPF-JFJ (N.D. Okla. Sept. 29, 2021), Order on Motion to Dismiss, p. 31, Exhibit "B."

Nonetheless, Frazier's six-year-old request for preliminary injunctive relief is moot in light of the sweeping legislation that has been passed since he first filed his MPI.

## II.
## FRAZIER'S REQUESTED PRELIMINARY INJUNCTIVE RELIEF IS MOOT IN LIGHT OF HOUSE BILL 2259, WHICH BECAME EFFECTIVE NOVEMBER 1, 2023

Frazier testifies that he has a number of failure-to-pay bench warrants several years old out of Tulsa County; that as far as he knows, those arrest warrants are still active; that he and his wife live in constant fear that when he leaves the house he will be arrested and unable to afford bail;[6] that such fear has kept him from attending family gatherings; that his sole form of income is social security disability payments; and that he cannot afford to pay his court debt. *See* MPI, Ex. 2 (Doc. #77-2); Supplemental Brief in Support of Plaintiffs' Motion for Preliminary Injunction ("Frazier's Supp'l Brief"), Ex. 8, Supplemental Declaration of Plaintiff Randy Frazier, ¶¶ 3-8 (Doc. #479-8). Frazier requests in his Motion for Preliminary Injunction that the Tulsa County Sheriff be enjoined:

---

[6] Yet, when Frazier was arrested by a deputy sheriff for driving with a suspended driver's license five months after this lawsuit was filed, he pled guilty or no contest, promptly paid the associated fines, fees and costs ($344.00), and spent no time in jail. *See* Docket Sheet in Tulsa County Case No. TR-2018-8032, Exhibit "D."

- To not arrest or jail … Randy Frazier for nonpayment on the basis of debt-collection arrest warrants previously issued for nonpayment of debts in … [Tulsa County Case Nos.] TR-2013-19564, TR-2013-19565, TR-2013-19566, TR-1999-4823, CF-2006-1754, CM-2007-1934, CF-2008-2215, and CF-2008-3763; and

- To not enforce any arrest warrants for nonpayment against … Mr. Frazier that may issue in the future, unless such warrant was issued based on a finding, following notice and an opportunity to be heard, that the nonpayment was willful;

and that the Tulsa Court Clerk (and his deputy clerk assigned to the position of Cost Administrator)

be preliminarily enjoined:

- To not seek any arrest warrant for nonpayment against … Randy Frazier unless there has been an inquiry and determination, following notice and an opportunity to be heard, that the nonpayment was willful.

MPI, Proposed Order, Exhibit 8 (Doc. #77-8).

Frazier's request for preliminary injunctive relief is moot.  **There is no imminent threat of irreparable harm to Frazier unless the injunction issues**.  First, Frazier's previously issued failure-to-pay bench warrants[7] are no more; instead, House Bill 2259, which became effective November 1, 2023 (*see* Exhibit "C"), converted Frazier's failure-to-pay bench warrants as a matter of law into "cost cite and release warrants."

> All warrants for failure to appear at a cost hearing or for failure to pay court financial obligations which have been issued prior to the effective date of this act [Nov. 1, 2023] and which remain unserved, shall be treated as cost cite and release warrants.

---

[7] *See* Frazier's failure-to-pay bench warrants (Doc. #145-1), attached as Exhibit "1" to Defendants Vic Regalado, Don Newberry and Darlene Bailey's Response in Opposition to Motion for Temporary Restraining Order and Preliminary Injunction.  Each of these warrants was issued on December 28, 2016, by Special Judge David Youll.  *See* Frazier's Supp'l Brief, Ex. 1, p. 10; Ex. 2, p. 5; Ex. 3, p. 5; Ex. 4, p. 10; Ex. 5, p. 11; and Ex. 6, p. 9 (Docs. #479-1 through 479-6).

8

22 O.S. § 983(H)(6). Defendant Sheriff obeys state law and treats these old failure-to-pay bench warrants as cost cite and release warrants under which no defendant can be taken into custody. *See* Affidavit of Undersheriff George Brown, ¶ 2, Exhibit "A."

Second, under this new law, Frazier has no reason to fear arrest by *any* Oklahoma law enforcement officer.[8]

> If a defendant is found by a law enforcement officer to have an outstanding cost cite and release warrant, the law enforcement officer shall issue a Warning/Notice to appear within ten (10) days of release from detention on the warrant to the court clerk of the court in which the court financial obligations are owed…. The law enforcement officer shall not take the defendant into custody on the cite and release warrant.

22 O.S. § 983(H)(1).

Third, defendants who are totally disabled, or whose total income is below one hundred fifty percent (150%) of the federal poverty level,[9] shall be presumed unable to pay and, upon legal demonstration, relieved by the court of their outstanding court debt through a hardship waiver. *See* 22 O.S. § 983(B)(5). Frazier can therefore be relieved of all court debt by simply showing up and presenting his disability and income information to the District Court. *See* 22 O.S. § 983. There is no actual or certain threat of irreparable harm.

---

[8] Frazier's request for preliminary injunctive relief against the Sheriff does nothing to stop the other sixteen law enforcement agencies operating in Tulsa County from arresting him on an outstanding warrant: (1) Oklahoma Highway Patrol; (2) Tulsa Police Department; (3) Bixby Police Department; (4) Broken Arrow Police Department; (5) Catoosa Police Department; (6) Collinsville Police Department; (7) Jenks Police Department; (8) Owasso Police Department; (9) Glenpool Police Department; (10) Sand Springs Police Department; (11) Sapulpa Police Department; (12) Skiatook Police Department; (13) Sperry Police Department; (14) Inola Police Department; (15) Muscogee (Creek) Nation Whitehorse Tribal Police Department; and (16) Tulsa International Airport Police Department. *See* 22 O.S. §§ 172, 175, 967-969; and Tulsa County Defendants' Request for the Court to Take Judicial Notice (Doc. #341). However, the new legislation, at 22 O.S. § 983(H)(1), applies to *all Oklahoma law enforcement agencies* and forbids them from taking Frazier into custody on his cost cite and release warrants.

[9] Disability payments do not count toward a defendant's income. *See* 22 O.S. § 983(B)(4)(b).

The Tenth Circuit Court of Appeals explained in *State v. U.S. Environmental Protection Agency*, 989 F.3d 874, 884 (10th Cir. 2021):

> To merit preliminary injunctive relief, a movant must present a significant risk it will experience harm that cannot be compensated after the fact by money damages. *That harm must be both certain and great*, not merely serious or substantial. *And a speculative or theoretical injury will not suffice*. The injury must also be of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm. If the harm is not likely to occur before the district court rules on the merits, there is no need for preliminary injunctive relief.

(emphasis added, quotation marks and internal citations omitted). Further, to satisfy the doctrine of standing, a plaintiff seeking injunctive relief "must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). "Standing is a jurisdictional issue that may be raised by the court at any time." *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993).

This case has been pending for more than six years and it has received a lot of media scrutiny as well as scrutiny from the Tenth Circuit Court of Appeals. *See Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500 (10th Cir. 2023). House Bill 2259 is an express declaration of state policy, *see Oklahoma Ind. Petroleum Ass'n v. Potts*, 2018 OK 24, ¶ 18, 414 P.3d 351, 367 (Wyrick, J., concurring), and *Morrison v. Ardmore Indus. Dev. Corp.*, 1968 OK 116, ¶ 17, 444 P.2d 816, 821-22, and clearly the result of studied reflection that exhibits a good faith effort to comport with the Constitution. It is a wholesale change, and a sweeping revision.

*Frazier* suggests that because the judiciary has not recalled every one of those old failure-to-pay bench warrants,[10] they cannot be trusted to follow the new statute. *See* Frazier's Supp'l Brief, p. 3 (Doc. #479). Frazier's suggestion (without proof) that state actors will disobey a new state statute undermines the basic rule of law that a Court "must presume that a state statute is constitutional." *Eaton v. Jarvis Products*, 965 F.2d 922, 929 (10th Cir. 1992). This required presumption is meaningless if you also presume that no one will follow the state statute. Clearly, in this case, the Sheriff is following the new statute. *See* Affidavit of Undersheriff George Brown, ¶ 2, Exhibit "A." Frazier tenders no evidence whatsoever that the Court Clerk or his Cost Administrator have refused to do so.

The requested relief is no longer necessary. Under House Bill 2259, Frazier's previously issued failure-to-pay bench warrants are no more; as a matter of law, they have been converted into "cost cite and release warrants" under which no defendant can be taken into custody but instead is given a written warning with notice to appear within ten (10) days before the applicable court clerk. Frazier cannot make a "clear and unequivocal showing" that he is entitled to the preliminary injunctive relief that he requests. And should any relief be forthcoming, which it should not, the Court should follow the path paved by the *Feltz* Court and preliminarily enjoin the Court Clerk, Cost Administrator and/or the Sheriff 'to the extent they are named as state actors (not as county actors).' *See Feltz*, *supra*, at 32 (Exhibit "B").

---

[10] In Oklahoma, "no one may recall a warrant of any kind except a magistrate or judge." 2006 AOC 29, ¶ 4, 145-3.

Respectfully submitted,

/s/ Douglas A. Wilson
Douglas A. Wilson, OBA #13128
Assistant District Attorney
Tulsa County District Attorney's Office
218 West Sixth Street, Suite 933
Tulsa, OK  74119
(918) 596-8795
douglas.wilson@tulsacounty.org

Mike Shouse, OBA #33610
Assistant District Attorney
Tulsa County District Attorney's Office
218 West Sixth Street, Suite 935
Tulsa, OK  74119
(918) 596-4825
mshouse@tulsacounty.org

- and –

Joel L. Wohlgemuth, OBA #9811
Jo Lynn Jeter, OBA #20252
Norman Wohlgemuth, LLP
3200 Mid-Continent Tower
401 South Boston
Tulsa, OK 74103
(918) 583-7571
JWohlgemuth@NWLawOK.com
JJeter@NWLawOK.com
Jones@NWLawOK.com

***Attorneys for Tulsa County Sheriff Vic Regalado, Tulsa County Court Clerk Don Newberry and Tulsa County Cost Administrator Darlene Bailey, in their official capacities, and the Board of County Commissioners of the County of Tulsa***

CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2024, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registered counsel of record.

/s/ Douglas A. Wilson