# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

RICHARD FELTZ and ASHTON   )
LEE DENNIS, on behalf of   )
themselves and all others similarly   )
situated,   )
   )
     Plaintiffs,   )
   )
-vs-   )   Case No. 18-cv-0298-SPF-JFJ
   )
BOARD OF COUNTY   )
COMMISSIONERS OF THE   )
COUNTY OF TULSA, et al.,   )
   )
   Defendants.   )


EXHIBIT
B

## ORDER
### (on motions at doc. nos. 269, 270 and 272)

This putative class action is brought under 42 U.S.C. § 1983. The second amended complaint (doc. no. 259) alleges federal constitutional violations based on the Tulsa County District Court's wealth-based pretrial detention policies and practices.

Plaintiffs Richard Feltz and Ashton Lee Dennis are named as class representatives. They allege they were confined in Tulsa County jail cells because they did not have money to purchase their pretrial release. They allege class members are jailed, as they were, pursuant to Tulsa County's wealth-based detention system which jails people who are unable to meet secured financial conditions of release (people who are unable to make bail). In count one, plaintiffs bring due process and equal protection challenges to this wealth-based detention system. In count two, they allege procedural due process claims based on the manner in which

Tulsa County judges conduct detention proceedings. Plaintiffs seek prospective relief only,[1] in the form of injunctive and declaratory relief.

Defendants, all of whom are sued in their official capacities only, are: Tulsa County Sheriff Vic Regalado; Presiding Judge of Oklahoma's Fourteenth Judicial District William LaFortune; and special judges for the District Court of Tulsa County. The second amended complaint alleges that the special judges' duties include making bail determinations, presiding over arraignments, and presiding over the bond docket which was created in October of 2018. This order refers to the presiding judge and the special judges, together, as "the Tulsa judges."

<u>The Motions</u>

The following motions are before the court. The motions raise issues regarding constitutional standing, mootness and other issues.

Sheriff Regalado moves for dismissal under Rule 12(b)(6) and Rule 21, Fed. R. Civ. P. Doc. no. 272. Plaintiffs responded, objecting to relief. Doc. no. 289. Regalado filed a reply brief. Doc. no. 300.

Presiding Judge LaFortune moves for dismissal under Rule 12(b)(1) and Rule 12(b)(6), Fed. R. Civ. P. Doc. no. 270. Plaintiffs responded, objecting to relief. Doc. no. 290 (consolidated response brief). The presiding judge filed a reply brief. Doc. no. 299.

The special judges move for dismissal under Rule 12(b)(1) and Rule 12(h)(3), Fed. R. Civ. P. Doc. no. 269. Plaintiffs responded, objecting to relief. Doc. no. 290 (consolidated response brief). The special judges filed a reply brief. Doc. no. 298.

---

[1] The prayer asks the court to enjoin certain conduct and to declare that defendants "violate," present tense, plaintiffs' constitutional rights. Plaintiffs briefs also make clear that they seek only prospective relief.

For the reasons stated in this order, the sheriff's motion will be granted in part and denied in part.  The motions of the presiding judge and the special judges will be denied.

Standards

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may take two forms: a facial attack challenging the complaint's allegations or a factual attack challenging the facts upon which subject matter jurisdiction depends. Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995). "[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." Id.  In contrast, "[w]hen reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." Id. at 1003 (internal citations omitted).

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face.  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007).  To survive a motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible.  Id. The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.  Ridge at Red Hawk, 493 F.3d at 1177.  In conducting a Rule 12(b)(6) review, the court assumes the truth of the plaintiff's well-pleaded

3

factual allegations and views them in the light most favorable to the plaintiff.  *Id*. Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  Ashcroft v. Iqbal, 556 U.S.662, 664 (2009).  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Id*. The court will disregard mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" to determine if what remains meets the standard of plausibility.  Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678. "Determining  whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  at 679.

Rule 21 (relied on by the sheriff) provides that the court may add or drop a party, at any time, on just terms.

Rule 12(h)(3) (relied on by the special judges) provides that the court must dismiss the action if it determines, at any time, that it lacks subject matter jurisdiction.

## Procedural History

Standing and mootness issues have been raised in this action before, in different procedural contexts.  The parties cite these prior rulings, disagreeing, at times, about what has already been decided or the extent to which prior rulings control the present issues.  Accordingly, the court begins with a timeline, outlining some of the relevant procedural history which unfolded before this case was transferred to the undersigned.

On June 6, 2018, this action was filed and assigned to Judge Claire V. Eagan.

On August 8, 2018, a motion to dismiss was filed by the Tulsa County presiding judge[2] and the special judges.[3]  Doc. no. 24.  That motion, which was brought under Rules 12(b)(1) and (6), included facial challenges to plaintiffs' standing.  The Tulsa judges argued the complaint did not allege that the named plaintiffs were found indigent or denied counsel or had appeared before any of the named judges, and that it was speculative to allege that plaintiffs would remain in jail until their first court appearance.  For these and other reasons, the Tulsa judges argued there was no injury in fact and that allegations of future injuries were insufficient to confer standing.

In early October of 2018, a bond docket was established by an administrative order signed by Presiding Judge (at the time) William Musseman.  Doc. no. 157-2, Administrative Order 2018-9.  *See also*, doc. no. 157-3, Administrative Order 2018-10 (Establishment of Pretrial Release Program).[4]  These administrative orders became effective on October 15, 2018.

On October 22, 2018, the first amended complaint was filed to correct the name of the first-named defendant (the Board).  Doc. no. 33.  On October 24, 2018, Judge Eagan ordered that the pending motion to dismiss would be deemed a motion to dismiss the first amended complaint.

On November 19, 2018, Judge Eagan granted the Tulsa judges' motion to dismiss this action.  Doc. no. 40.  As noted above, the judges had raised lack of standing arguments.  They had not, however, raised mootness.  In her order, Judge

---

[2] At the time, the presiding judge was William J. Musseman, Jr., for whom presiding judge William LaFortune has been substituted.

[3] Some of the currently named special judges have been substituted for special judges who no longer serve in that capacity.

[4] The Tulsa judges' filing at doc. no. 157, p. 4, states that Administrative Orders 2018-9 and 2018-10 were repealed after the adoption of Rule 2 of the Tulsa County Local Criminal Court Rules (CR2).

Eagan addressed mootness sua sponte. She determined that none of the four named plaintiffs[5] continued to suffer an injury that could be redressed in this litigation. *Id.* at 6.[6] She found that none of the named plaintiffs remained detained due to an inability to pay bond, and that there was no expectation they would be subjected to a new bond amount as a result of new arrests. *Id.* at 6-7. Judge Eagan found none of the exceptions to the mootness doctrine (including the inherently transitory exception) applied to the claims as she then understood them. *Id.* at 7-11. Accordingly, she dismissed this action, without prejudice, on mootness grounds and entered judgment. Doc. nos. 40, 41.

On March 15, 2019, after determining that she had mis-read the complaint, Judge Eagan granted a motion for relief from the judgment, vacating her order of dismissal and the associated judgment. Doc. no. 48, p. 19. She reinstated the first amended complaint (doc. no. 32) and the Tulsa judges' motion to dismiss (doc. no. 24). *Id.* Judge Eagan also addressed the Tulsa judges' motion to dismiss which, as noted earlier, brought a facial challenge to standing. Judge Eagan granted the motion in part and denied it in part, dismissing certain claims and allowing others to stand. *Id.* at 20.

More specifically, the March 15 order dismissed count three in its entirety because the first amended complaint did not allege facts sufficient to show that any of the named plaintiffs had Article III (constitutional) standing to bring that count, which alleged violations of plaintiffs' right to counsel under the Sixth Amendment. *Id.* at 8. As for the claims against the presiding judge, Judge Eagan ruled that plaintiffs' claims seeking injunctive relief against the presiding judge sought relief

---

[5] Currently, there are only two named plaintiffs, one of which, Feltz, was included in original complaint.

[6] Unless otherwise stated, this order uses documents' original pages numbers rather than electronic case filing (ecf) page numbers.

based on his administrative authority as opposed to his judicial authority.  She concluded that these claims could stand as the judicial immunity provided by the Federal Courts Improvement Act of 1996 (FCIA)[7] bars injunctive relief in any §1983 action against a judicial officer for an act or omission taken in such officer's <u>judicial</u> capacity (unless a declaratory decree was violated or declaratory relief was unavailable, exceptions which are not involved here).  *Id.* at 19.[8]  Judge Eagan permitted the claims against the presiding judge to stand, having found the allegations sufficiently alleged injuries fairly traceable to the presiding judge's actions with respect to counts one and two based on the presiding judge's supervisory authority over the Tulsa County District Court and promulgation of rules which specify the timing and conduct of arraignments.  *Id.* at 10.  As for the claims against the special judges, Judge Eagan dismissed the special judges from count one, having concluded no allegations showed the injuries complained of in that count to be fairly traceable to the special judges.  *Id.* at 11.  Judge Eagan let the claims for declaratory relief which are alleged against the special judges in count two (procedural due process claims) stand, finding that plaintiffs had alleged an imminent threat of future injury traceable to the special judges.  *Id.* at 17.

---

[7] Section 309(c) of the Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, 10 Stat. 3847, amends 42 U.S.C. § 1983 to bar injunctive relief in any § 1983 action "brought against a judicial officer for an act or omission taken in such officer's judicial capacity…."  42 U.S.C. § 1983.  Judge Eagan found this action challenged the presiding judge's administrative, rulemaking and supervisory authority over the Tulsa County District Court, his promulgation of the secured money-bail schedule, and his promulgation of certain local criminal rules.  She reasoned that these matters are not considered functions normally performed by a judge and that in performing these functions the presiding judge does not deal with any parties.

[8] The FCIA is not an issue with respect to the relief sought against the special judges, as all versions of the complaint seek only declaratory relief (no injunctive relief) against the special judges.  *See*, doc. no. 259, ¶ 19 and equivalent paragraphs in the original complaint and first amended complaint.

On August 22, 2019, Rule 2 of the Tulsa County Local Criminal Rules ("CR2") was adopted,[9] addressing "Pre-established Bail and Initial Appearance." Doc. no. 270-4.  As later characterized by Judge Eagan, CR2 was adopted to ensure a hearing is scheduled within forty-eight hours of confinement and that factors other than inability to afford bail are considered with respect to release.[10]

On December 10, 2019, most of the special judges filed a new motion to dismiss.  Doc. no. 104.[11]  This motion brought a factual attack on standing.  Movants argued that named plaintiff Feltz had not interacted with any of the special judges who were movants, and that Feltz could not show the special judges had promulgated any policy for the Tulsa County District Court.

On April 2, 2020, the Tulsa judges filed another motion to dismiss, bringing their first mootness challenge.  Doc. no. 157.  (As stated earlier, Judge Eagan had addressed mootness in her November 19, 2018, order, later vacated, which dismissed the complaint, but she did so sua sponte.)  The April 2, 2020, motion was brought under Rule 12(b)(1) and was a factual attack on plaintiffs' claims.  In it, the Tulsa judges argued the adoption of CR2, on August 22, 2019, mooted plaintiffs' claims because none of the named plaintiffs had been subject to that rule, which movants said updated pretrial detention and bond hearing practices to create additional safeguards.  In response, plaintiffs argued that their case was not moot because, even with CR2 in place, the system fails to correct continuing violations of the class members' constitutional rights.  Doc. no. 173, p. 1.

---

[9] CR2 carries the heading: "REVISION ADOPTED 08222019."  Doc. no. 157-4.  It is not clear from the briefing whether the rule was adopted for the first time on that date or whether revisions to an earlier version of CR2 were adopted on that date.

[10] *See*, doc. no. 191, p. 4.

[11] Special Judge Dawn Moody did not join the motion.  The presiding judge's current motion to dismiss (doc. no. 270, p. 2) states that Judge Moody presided over Feltz's initial arraignment. Judge Moody is no longer a party as she is no longer a special judge, having become a district judge.

On April 24, 2020, Judge Eagan terminated the three named plaintiffs other than Feltz because one had died, and two others were no longer represented by counsel. Doc. no. 174.

On May 11, 2020, Judge Eagan denied a motion for a preliminary injunction and a temporary restraining order. Doc. no. 191. That ruling largely confined its analysis to whether relief should be granted based on the COVID-19 pandemic. *Id*. at 3. On the "likelihood of success on the merits" factor, Judge Eagan deferred more in-depth consideration of this action's challenges to the bail system until a more robust record could be developed, noting discovery was incomplete. *Id*. at 33.

On December 20, 2020, Feltz moved for leave to file a second amended complaint. Doc. nos. 224, 226. He sought to add a new named plaintiff, Ashton Lee Dennis, who had been arrested in December of 2020 after new pre-trial procedures (including the creation of the bond docket and the adoption of CR2) were put in place. Feltz also sought to update factual allegations to reflect substituted defendants. Thus, the proposed second amended complaint was intended to address the Tulsa judges' motion to dismiss (doc. no. 157), which focused on the fact that none of the four original plaintiffs had been subject to procedures put in place after this action was filed.

On February 26, 2021, Magistrate Judge Jodi F. Jayne granted Feltz leave to file the second amended complaint. Doc. no. 256. The magistrate judge reasoned that judicial economy, the interests of justice, and lack of undue prejudice to the judges, favored permitting the proposed pleading, which updated the allegations to reflect procedures implemented after the original complaint was filed. The magistrate judge rejected the Tulsa judges' argument that the second amended complaint did not present a live case or controversy. The Tulsa judges had argued there was no case or controversy for reasons related to mootness and lack of standing, contending that the proposed second amended complaint was therefore

futile. The magistrate judge rejected these arguments for reasons not reaching the merits. *See*, *id*. at 11. She noted these issues (mootness and standing) would likely require further resolution—a prediction which proved correct, given the round of motions to dismiss currently before the court. *Id*. The magistrate judge granted leave to amend, but she prohibited Feltz from realleging any previously dismissed claims or related prayers for relief. *Id*. at 12.

On March 3, 2021, the second amended complaint was filed. Doc. no. 259. It added Dennis as a new named plaintiff. It updated allegations to reflect the automatic substitution of certain defendants by operation of Rule 25(d), Fed. R. Civ. P. It updated plaintiff's factual allegations to reflect changes to pre-trial procedures governing detention and release. It also made minor changes to the wording of the complaint's requests for injunctive and declaratory relief, as set out in the prayer. As required by the magistrate judge, the second amended complaint did not re-allege any previously dismissed claims. Consequently, the second amended complaint dropped the special judges from the first count, and it eliminated the third count (sixth amendment right to counsel claim).[12]

On March 4, 2021, Judge Eagan terminated the Tulsa judges' then-pending motions to dismiss. Doc. no. 260. As already noted, those motions had brought factual challenges to Feltz' standing to bring claims against most of the special judges (doc. no. 104) and had raised mootness arguments based on the adoption of CR2 and other changes to detention procedures (doc. no. 157). Judge Eagan found these motions moot given the filing of the second amended complaint.

On May 6, 2021, the Board of County Commissioners of the County of Tulsa was dismissed pursuant to a stipulation of voluntary dismissal. Doc. nos. 291, 292.

---

[12] The second amended complaint still includes some references to plaintiffs' right to counsel, but the right to counsel claim remains dismissed.

On May 20, 2021, this case was reassigned from Judge Eagan to the undersigned. Doc. no. 297.

Claims Challenged by the Current Motions

Based on the procedural history of this case, the claims which remain for adjudication, brought by Feltz and Dennis on behalf of the putative class, are summarized as follows.

> Count One: The sheriff and the presiding judge violate plaintiffs' equal protection rights and due process protections against wealth-based detention by detaining and jailing plaintiffs because plaintiffs cannot afford a monetary payment.

> Count Two: The sheriff, the presiding judge and the special judges detain and jail plaintiffs without providing procedural due process protections.

> Relief sought:

>> Declaratory Relief. Prospective declaratory relief is sought against the above-named defendants.

>> Injunctive Relief. Prospective injunctive relief is sought against the sheriff and the presiding judge. Per Judge Eagan's ruling, the injunctive relief sought against the presiding judge is relief with respect to his administrative (non-judicial) acts.

General Principles

Before addressing the motions, the court reviews some general principles related to constitutional standing and mootness.

The Standing Doctrine. In her March 15, 2019, order, Judge Eagan indicated it is well settled law that, to satisfy standing requirements in a putative class action, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim. Doc. no. 48, p. 7, citing Colorado Cross Disability Coalition v. Abercrombie & Fitch Co., 765 F.3d 1205, 1214 (10th Cir. 2014), which, in turn, cites Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266,

11

1279-80 (11th Cir. 2000). Where there are multiple defendants in a putative class action (as there are here), at least one named plaintiff must establish standing with respect to each defendant. *See*, Hunnicutt v. Zeneca, Inc., 2012 WL 4321392, *3 (N.D. Okla. Sept. 19, 2012) (citing William B. Rubenstein, Newberg on Class Actions § 2:5 for proposition that "In multidefendant class actions, the named plaintiffs must show that each defendant has harmed at least one of them. Generally, class representatives do not have standing to sue defendants who have not injured them even if those defendants have allegedly injured other class members.").

Standing requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction. Brown v. Buhman, 822 F.3d 1151, 1164 (10th Cir. 2016). Standing is measured as of the time the plaintiff files suit. *Id*. To sustain their burden with respect to constitutional standing, plaintiffs must allege that they have 1) suffered an injury in fact, 2) that is fairly traceable to the challenged conduct of the defendant (causation), and 3) that is likely to be redressed by a favorable judicial decision (redressability). Santa Fe Alliance for Public Health and Safety v. City of Santa Fe, New Mexico, 993 F.3d 802, 813 (10th Cir. 2021).

Plaintiffs suing public officials can satisfy the causation and redressability requirements of standing by demonstrating a meaningful nexus between the defendant and the asserted injury. Kitchen v. Herbert, 755 F.3d 1193, 1201 (10th Cir. 2014), citing Bronson v. Swensen, 500 F.3d 1099, 1111-12 (10th Cir. 2007). The causation element of standing requires the named defendants to possess authority to enforce the complained-of provision. Kitchen at 1201, citing Bronson at 1110. The redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce the challenged practice or policy. Kitchen at 1201, citing Bronson at 1111. Whether defendants have enforcement authority is related to whether, under Ex Parte Young, 209 U.S. 123 (1908), they are the proper

state officials to be on the receiving end of a federal lawsuit. <u>Kitchen</u> at 1201, citing <u>Cressman v. Thompson</u>, 719 F.3d 1139, 1146, n. 8 (10th Cir. 2013). Under <u>Ex Parte Young</u>, a state official sued in his official capacity must have some connection with the enforcement of the challenged practice or policy. <u>Kitchen</u> at 1201, citing <u>Ex Parte Young</u> at 157.

The Relationship Between Standing and Mootness. Mootness is the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness). <u>Brown v. Buhman</u>, 822 F.3d 1151, 1163-64 (10th Cir. 2016), quoting <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 68 at n. 22 (1997).

The Mootness Doctrine. If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit at any point during litigation, the action can no longer proceed and must be dismissed as moot. <u>Brown</u>, 822 F.3d at 1165, citing <u>Campbell-Ewald Co. v. Gomez</u>, 577 U.S. 153, 160-61 (2016). A suit becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *Id*., citing <u>Chafin v. Chafin</u>, 568 U.S. 165 (2013). No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights. *Id*. The crucial question is whether granting a present determination of the issues offered will have some effect in the real world. *Id*. at 1165-66. Put another way, a case becomes moot when a plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision. *Id*., citing <u>Ind v. Colorado Dep't of Corrections</u>, 801 F.3d 1209, 1213 (10th Cir. 2015).

The Inherently Transitory Exception to the Mootness Doctrine. The inherently transitory exception to the mootness doctrine may apply to a class of arrestees awaiting trial if it cannot be determined that any given individual, named

13

as plaintiff, would be in pretrial custody long enough for a district judge to certify the class, and if, at the same time, it was certain that there would always be some group of detainees subject to the challenged practice. U.S. v. Sanchez-Gomez, ___ U.S. ___, 138 S. Ct. 1532, 1538 (2018), citing Gerstein v. Pugh, 420 U.S. 103, 110–111, n. 11 (1975). Importantly, the inherently transitory exception to the mootness doctrine (unlike the capable of repetition yet evading review exception) does not require plaintiffs to show they were likely to be subjected to the complained-of state procedures again. *See*, Olson v. Brown, 594 F.3d 577, 584 (7th Cir. 2010) (since the claim is of the kind that is unlikely to be able to be certified before it becomes moot, under Gerstein v. Pugh, "all Olson must show is that the claim is likely to recur with regard to the class, not that the claim is likely to recur with regard to him."). Here, plaintiffs argue that Judge Eagan recognized their claims to be inherently transitory and reinstated the case. Doc. no. 290, p. 10. The undersigned agrees that Judge Eagan so found when, on March 15, 2019, she granted plaintiffs' motion to reconsider and vacated her earlier order of dismissal which had held the claims were not inherently transitory.[13]

Ex Parte Young. States and state actors are ordinarily entitled to eleventh amendment immunity in federal court. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984). A narrow exception, first recognized in Ex Parte Young, applies when a plaintiff seeks to prospectively enjoin state officials in their official capacities. Similarly, to the extent prospective declaratory relief is sought against state actors in their official capacities, such relief is permitted by the

---

[13]As stated by Judge Eagan in her March 15 order, plaintiffs' brief clarified that the time periods for which detention is challenged do not extend beyond the point at which class members are given counsel and have an opportunity to be heard on bail reduction motions; as a result, plaintiffs' claims would necessarily become moot for any class member within six to ten days. Doc. 48, pp. 5-6. While Judge Eagan's order does not expressly refer to the inherently transitory exception, that doctrine was the primary basis for plaintiffs' motion to alter or amend the original dismissal, and it is clear she concluded that the doctrine applied.

Eleventh Amendment.  *See*, <u>Buchwald v. University of New Mexico School of Medicine</u>, 159 F.3d 487, 495 (10th Cir. 1998), citing <u>Puerto Rico Aqueduct v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 146 (1993).  The injunctive and declaratory relief sought in this action is prospective relief, which plaintiffs seek to impose against defendants in their official capacities.  This type of relief is not foreclosed by the Eleventh Amendment.

The Sheriff's Motion to Dismiss

Sheriff Regalado moves under Rule 12(b)(6), arguing, primarily, that he should be dismissed with prejudice because the second amended complaint (hereafter referred to as "the complaint" except where necessary to distinguish earlier versions) fails to state a claim against him in his official capacity.  The last argument in this motion, however, is not an argument about failure to state a claim but an argument about standing.  That argument is construed as a facial challenge to standing, a jurisdictional issue considered under Rule 12(b)(1).[14]  Because standing is jurisdictional, the court considers it first, then moves on to the sheriff's Rule 12(b)(6) arguments.

As stated earlier, standing requires 1) an injury in fact, 2) that is fairly traceable to the challenged conduct of the defendant, and 3) that is likely to be redressed by a favorable judicial decision.  The sheriff argues that the claims against him do not meet the second and third requirements of constitutional standing.[15]

To satisfy the second requirement—an injury which is fairly traceable to the challenged conduct of the defendant—plaintiffs need not establish that the defendant was the proximate cause of their injury.  <u>Santa Fe Alliance for Public Health and</u>

---

[14] This part of the sheriff's motion is premised on the allegations and the law; it relies on no evidence outside the pleadings.  *See*, doc. no. 272, pp. 23-25.

[15] Although not challenged by the sheriff, the court has a duty to consider its jurisdiction. Accordingly, the court has considered whether the first requirement for constitutional standing (injury in fact) is met.  This requirement is satisfied. *See, e.g.*, doc. no. 259, ¶¶ 3, 137, 139-140.

15

<u>Safety</u>, 993 F.3d 802, 814. Rather, at the motion to dismiss stage, plaintiffs may satisfy the fairly traceable requirement by advancing allegations which, if proven, allow for the conclusion that the challenged conduct is a "but for" cause of the injury. *Id*.

The sheriff argues there is no injury fairly traceable to him because, with respect to the pre-trial detention and release of arrestees, he has no authority to do anything other than carry out the directives of the Tulsa judges. This argument is rejected. No matter the source of the authority for the sheriff's alleged detention of arrestees in unconstitutional circumstances, the sheriff's acts are a "but for" cause of plaintiffs' injuries. For example, the complaint alleges the sheriff's office unconstitutionally detains arrestees who cannot pay a secured money bail amount, that it detains arrestees even though there has been no inquiry into their ability to pay and with no consideration of alternative conditions of release, and that it detains arrestees without findings concerning the necessity of their pretrial detention. Doc. no. 259, ¶ 18. Without these acts of detention (but for these acts) plaintiffs would have none of their alleged constitutional injuries.

The third requirement of constitutional standing, redressability, is also satisfied. If plaintiffs achieve the type of declaratory and injunctive relief they seek in this action, such relief will presumably prohibit the sheriff from detaining arrestees who cannot pay secured money bail. Such relief would also presumably enjoin the sheriff from detaining arrestees who have not had a hearing which inquired into the arrestees' ability to pay and inquired into alternative conditions of release, etc. This type of relief is likely to redress plaintiffs' injuries.

Turning to the sheriff's Rule 12(b)(6) arguments, the sheriff argues the complaint fails against him, as a matter of law, to the extent he is named as a *county* actor, and that there is no need for plaintiffs to name him as a *state* actor because any such claim duplicates claims alleged against the Tulsa judges. Accordingly, the

sheriff argues he should be dismissed with prejudice from this action. Alternatively, he argues that even if he remains a defendant as a state actor, he should be dismissed with prejudice to the extent he is named as a county actor.[16] As explained below, the court agrees with this alternative approach.

This is a § 1983 action. It is fundamental that to bring a § 1983 official capacity claim against the sheriff as the final policymaker for the Tulsa County jail (that is, to state a claim against the sheriff as a county actor), the complaint must identify a policy or custom of the jail that caused the plaintiffs' injury. Monell v. Dep't of Social Services of New York, 436 U.S. 658, 690-91 (1978).

The complaint alleges the sheriff is "the keeper of the County Jail" and that he is "the final policymaker for the jail in Tulsa County." Doc. no. 259, ¶ 18. These allegations track the law in Oklahoma, which provides that the sheriff is the final policymaker for the county jail.[17] However, the sheriff's general policymaking authority over the jail does not necessarily mean that the policies in question in this action, i.e., the policies which control the detention and release of prisoners pursuant to the bail system, are policies of the sheriff. Read as a whole, the complaint does not allege that jail detentions and conditions of release are controlled by policies of the sheriff. (Allegations that are merely conclusory or fail to give adequate notice are disregarded.)[18] Rather, the complaint indicates that detentions and conditions of

---

[16] The complaint indicates that it names the sheriff, alternatively, as a county actor and a state actor. Doc. no. 259, ¶ 18, n. 3.

[17] Whether an official has final policymaking authority for purposes of § 1983 is a question of state law. McMillian v. Monroe County, Ala., 520 U.S. 781, 786 (1997). Under Oklahoma law, the sheriff is the final policymaker for the county's jail. See, 19 O.S. 2011 § 513; 57 O.S. 2011 § 47; Lopez v. LeMaster, 172 F.3d 756, 763 (10th Cir. 1999), abrogated on other grounds.

[18] The complaint includes many references to policies or acts of the "defendants," plural, without differentiation. These are construed as generalized references to the more specific allegations which are set out elsewhere in the complaint regarding the separate roles and policies of each of the defendants. See, Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008) (complaint's use

release are controlled by policies of the Tulsa judges.  *See*, *e.g.*, *id.* at  ¶¶ 19-21 (special judges' duties with respect to bail), ¶ 22 (authority of presiding judge).

This is appropriate because, under Oklahoma law, it is judges, not sheriffs, who determine policies regarding the bail system.[19]  Furthermore, a sheriff who does not comply with judicial policies on this subject may be guilty of a felony and removed from office.[20]  Thus, the sheriff has no discretion with respect to enforcing the bail policies set by the Tulsa judges.

Faced with these realities, plaintiffs argue that when the sheriff acts pursuant to the policies or orders of the Tulsa judges, he does so because it is his policy to comply with judicial policies and orders even if unconstitutional.  Plaintiffs contend the sheriff's policy to comply with the judges' policies satisfies the policy requirement for a § 1983 claim against the sheriff as the policymaker for the Tulsa county jail.  This argument is rejected.

---

of the collective term "defendants," without differentiation, may prevent defendants from ascertaining what particular unconstitutional acts they are alleged to have committed).  As for allegations specific to the sheriff, the complaint alleges: "The Sheriff's Office detains arrested people who cannot pay a predetermined secured money bail prior to any individualized hearing," and "The Sheriff's Office continues to detain arrested people who cannot pay a secured money bail amount after an individualized hearing, even though there has been no inquiry into or findings concerning ability to pay, consideration of alternatives [*sic*] conditions of release, or findings concerning the necessity of pretrial detention."  Doc. no. 259, ¶ 18.  These are allegations about what the sheriff *does*, but they are not allegations that such acts are based on policies determined by the sheriff.

[19] *See*, *e.g.*, 22 O.S. Supp. 2020 § 1105.2(B) (every judicial district may, upon order of the presiding judge for the district, establish a pretrial bail schedule); 59 O.S. 2011 § 1334 (personal recognizance permitted subject to conditions court or magistrate may reasonably prescribe).

[20] *See*, 21 O.S. 2011 § 532 (sheriff who willfully or carelessly allows a person lawfully held by him in custody to escape or go at large, except as may be permitted by law, shall be guilty of a felony); 57 O.S. 2011 § 47 ("sheriff…shall have charge of the county jail of his county and of all persons by law confined therein, and such sheriff…is hereby required to conform, in all respects, to the rules and directions promulgated pursuant to Section 192 of Title 74 of the Oklahoma Statutes and of the district judge and communicated to him by the proper authority"); 57 O.S. 2011 § 55 (criminalizing and setting penalty for sheriff or jailer who neglects or refuses to comply with any of the rules and regulations established by the district judge); State v. Price, 280 P.3d 943, 946, 950, 952-53 (Okla. 2012) (affirming removal of sheriff from office).

First, as already discussed, the sheriff has no discretion with respect to whether to carry out the directives of the Tulsa judges concerning detention and release of arrestees. The sheriff has not, in any meaningful sense, set "a policy" of complying with the Tulsa judges' directives. Rather, compliance is required by law.

Second, § 1983 requires the policy in question to be the moving force behind the challenged conduct. *See*, Whitesel v. Sengenberger, 222 F.3d 861, 872 (10th Cir. 2000) (Board of County Commissioners, i.e., the county, cannot be liable under §1983 for merely implementing policy created by the state judiciary; to prevail against the Board, plaintiff must demonstrate the Board was the moving force behind the complained of matters); Schepp v. Fremont County, Wyo., 900 F.2d 1448, 1456-57 (10th Cir. 1990) (the deprivations Schepp complains of, including denial of bail pending the revocation hearing, were the sole responsibility of Judge Ranck, and cannot be attributed in any way to Fremont County); *and see*, Surplus Store and Exchange, Inc. v. City of Delphi, 928 F.2d 788, 791-92 (7th Cir. 1991) ("It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law. If the language and standards from Monell are not to become a dead letter, such a 'policy' simply cannot be sufficient to ground liability against a municipality."). Here, it is the judges' policies, rather than the sheriff's policy of compliance, that are the moving force behind the conduct challenged in this action. The claims alleged against the sheriff named as a county actor fail because the complaint identifies no legally sufficient policy or custom as to which the sheriff, as the source of the allegedly unconstitutional acts of confinement challenged in this action, is the moving force.

To the extent the sheriff is named as a county actor he is entitled to dismissal, with prejudice, under Rule 12(b)(6).

The court reaches a different conclusion with respect to claims brought against the sheriff as a state actor, that is, to the extent the sheriff is named a defendant based on his role in carrying out the orders and procedures of state-court judges. The sheriff appears to concede that the exception to eleventh amendment immunity permits him to be named as a defendant as a state actor. Doc. no. 272, p. 21. He argues, however, that even if such claims are permitted under Ex Parte Young, (which they are), they should not be permitted in this case because an injunction against the sheriff as a state actor would constitute an injunction against the special judges at whose behest the sheriff acts, in violation of the language added to § 1983 by the FCIA.

For this argument the sheriff relies on Rule 65(d)(2)(C), contending an injunction against the sheriff would apply to all other persons who are in active concert or participation with him, and would therefore be an injunction of the special judges. The sheriff also argues that the claims alleged against him as a state actor are redundant because he acts at the direction of the Tulsa judges, who are also defendants. The sheriff argues that an injunction against him might be inconsistent with relief granted or denied with respect to the Tulsa judges and could interfere with the state's interest in a stable relationship between the district court and the sheriff as a state actor. These arguments are based on speculation about possible outcomes and risks which it is too early to evaluate. The court rejects these arguments as grounds to dismiss the sheriff, to the extent he is named as a state actor.

In summary, the sheriff's Rule 12(b)(6) motion will be granted to the extent he is named as a county actor, that is, to the extent he is named as a defendant based on his role as final policymaker for the Tulsa county jail. The sheriff's motion will be denied to the extent he is named as a state actor, that is, to the extent he is named as a defendant based on his role in carrying out the orders and policies of state-court judges regarding the pre-trial detention procedures challenged in this action.

<u>The Presiding Judge's Motion to Dismiss</u>

Presiding Judge LaFortune brings a factual challenge to the court's jurisdiction under Rule 12(b)(1) and moves for dismissal under Rule 12(b)(6). The presiding judge's brief begins with a discussion of standing, ultimately focusing on mootness. This order will address the presiding judge's Rule 12(b)(1) arguments first.

Judge Eagan's March 15, 2019, order on the Tulsa judges' first motion to dismiss rejected the presiding judge's arguments for dismissal presented, at that time, as a facial challenge to jurisdiction. Although Judge Eagan addressed standing to sue the presiding judge as a facial challenge to jurisdiction, nothing has been added to the record to indicate that the presiding judge's authority or involvement in these matters is materially different from what is alleged as recounted by Judge Eagan in her order.[21] The main differences between the alleged facts evaluated by Judge Eagan and the evidence presented in the presiding judge's current factual challenge to standing are the presiding judge's contentions that he does not promulgate changes to Tulsa's local criminal rules and did not promulgate CR2, and that "stacking" is not a policy created by the presiding judge.[22] Crediting these contentions, they do not cause the court to conclude that the presiding judge's connection to the issues is too attenuated to satisfy injury, causation and redressability requirements.

Moreover, state law gives the presiding judge administrative authority over the courts within his district,[23] and Rule 1 of the Local Criminal Rules, CR1(A),

---

[21] *See*, doc. no. 48, pp. 9-10.

[22] Per the complaint, "stacking" is the practice of computing a person's secured financial condition of release by adding the money-bail amounts for each offense on which the person is booked, so that the person must pay the cumulative amount before being released. Doc. no. 259, ¶ 59.

[23] *See*, 20 O.S. 2011 § 23(2); Rules on Administration of Courts, 20 O.S. Ch. 1 Appx. 2, including Rule 1(D)(2) and (3), and Rule 2(C) including Rule 2(C)(1).

authorizes the presiding judge to be involved in the specific types of matters implicated in this action.[24]  This authority, given to the presiding judge by the law and the rules, was exercised by Judge Musseman (Judge LaFortune's predecessor in the office of presiding judge) in matters related to pre-trial detention and release. For example, then-Presiding Judge Musseman created the bond docket for the Tulsa courts via administrative order.  *See*, doc. no. 157-2 (Administrative Order 2018-09, effective October 15, 2018).  The text of AO 2018-09 states:  "The purpose of the Bond docket is to ensure eligible Defendants are provided with an individualized determination of bail as guaranteed by the Oklahoma Constitution."  Judge Musseman also established a pretrial release program via administrative order.  Doc. no. 157-3 (Administrative Order 2018-10, effective October 15, 2018).

As explained by Judge Musseman in his affidavit submitted with a prior motion to dismiss (doc. no. 157), his duties as presiding judge included promulgating the bond index then in use in Tulsa County (April 1, 2020, is the date of that affidavit), and issuing administrative orders outlining various court procedures. Doc. no. 157-1, ¶ 1.  Judge Musseman's affidavit states that before this action was filed, Tulsa County District Court had begun a process to revise and improve bail procedures for arrestees.  *Id*. at ¶ 3.  The administrative orders issued by Judge Musseman in October of 2018 were the product of that process.  *Id*. at ¶ 4.  After implementation of these administrative orders, the district judges codified the process which had been established by administrative order by adopting CR2,

---

[24] CR1(A) provides: "Criminal and Traffic Bond Index has been prepared and will be periodically reviewed under the direction of the Presiding Judge.  This listing of bonds shall be for the purpose of expediting releases from the Tulsa County Jail and as a guide for judges to follow in order to provide consistency in bond settings.  It shall not, however, affect the discretion of a Judge initially to set a higher or lower bond without a hearing or to raise or lower the bond initially set in a case, provided a proper hearing is held with all parties present."

making the bond docket daily and enshrining procedures through the rulemaking process. *Id.* at ¶ 5.

Given all of this, the court finds a causal connection between the challenged detentions and the presiding judge's authority in relation to court procedures that impact wealth-based detentions. It also finds a likelihood that plaintiffs' alleged injuries will be redressed by the type of relief sought in this action against the presiding judge. Thus, the second and third requirements for constitutional standing are satisfied with respect to plaintiffs' claims against the presiding judge.[25] The presiding judge's challenge to plaintiffs' standing is therefore rejected.

The court next addresses the presiding judge's Rule 12(b)(1) arguments about mootness. To show mootness, the presiding judge presents the docket sheets for the criminal proceedings against Feltz and Dennis, apparently in an effort to establish facts regarding their individual circumstances which might bear on mootness, such as the dates of their release, etc. *See, e.g.*, doc. no. 270, pp. 1-3, 14. The presiding judge also argues that the adoption of CR2 moots plaintiffs' claims by putting various protections in place. He argues there is no appreciable risk that either Feltz or Dennis will again be subject to criminal charges in Tulsa County where they would be subject to the procedures established by CR2.

In response, plaintiffs argue (as they did in their earlier motion which asked Judge Eagan to reconsider her original order dismissing this action, which she did)

---

[25] Although not challenged, the court has also considered the first requirement for constitutional standing, injury in fact, for purposes of the claims against the presiding judge. As to count one, there is evidence that Feltz and Dennis spent time in jail due to their inability to pay bail. *See, e.g.*, criminal docket sheets at doc. no. 270-1, -2, -3; doc. no. 270, pp. 1, 3 (presiding judge's recitation of events with respect to Feltz and Dennis's detentions.) As to count two, there is evidence of what plaintiffs allege are procedural due process violations. *See, e.g.*, doc. no. 269-8 (Wright deposition, pp. 237-39, questions not asked by special judges presiding over bond docket). This evidence, along with the law and evidence regarding the presiding judge's authority in this area, satisfies the injury in fact requirement.

that their claims are inherently transitory, and thus their release dates and other facts regarding their individual circumstances do not moot their claims against the presiding judge.

Although the current mootness challenge is a factual challenge rather than a facial one, the undersigned finds no reason to rule differently than Judge Eagan ruled when she (implicitly) found that plaintiffs' claims were inherently transitory. In County of Riverside v. McLaughlin, 500 U.S. 44, 51-52 (1991), the Court considered class action challenges to detention without a prompt judicial determination of probable cause. The Court concluded that a fact pattern which deprives the trial court of enough time to rule on a motion for class certification before the named representative's individual interest expires, satisfies the inherently transitory claims exception even though the class is not certified until after the named plaintiffs' claims have become moot, where there is sure to be a constant stream of future arrestees subjected to the same violation. 500 U.S. at 52 (we recognized in Gerstein v. Pugh that some claims are so inherently transitory the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires). The evidence and allegations in this putative class action fit the same fact pattern. Accordingly, the inherently transitory claims exception to the mootness doctrine applies and largely answers the presiding judge's challenges that are based on Feltz or Dennis' individual circumstances.[26]

The presiding judge's argument that CR2 moots the claims against him is also rejected. Part of the magistrate judge's reasoning when she permitted plaintiffs to file the second amended complaint was to update the factual allegations to reflect

---

[26] This includes the presiding judge's argument that there is no reason to think either named plaintiff will be subject, in the future, to the Tulsa court's wealth-based detention system. As stated earlier, for the inherently transitory claims exception to apply, there is no requirement that a plaintiff show the constitutional violation is likely to recur with regard to him.

procedures put in place by CR2. The second amended complaint alleges, and evidence shows, there are alleged constitutional violations which CR2 did not rectify. *See, e.g.*, doc. no. 269-8 (Wright deposition, pp. 237-39, questions not asked by special judges presiding over bond docket). In addition, Dennis, who was arrested after CR2 and other procedures were put in place, is now a named plaintiff.

The court also rejects the other arguments made by the presiding judge in this part of his moving brief, some of which are addressed below.

The court rejects the presiding judge's argument that prospective injunctive relief cannot redress plaintiffs' alleged harms so plaintiffs either lack standing or their claims are moot. To support this argument (doc. no. 270, pp. 15-16), the presiding judge argues that plaintiffs' alleged future harms are too speculative to permit relief because neither Feltz nor Dennis allege or could show that they face an appreciable risk of future arrest and subsequent proceedings. The inherently transitory claims exception to the mootness doctrine answers this argument, as it does not require a named plaintiff to face a recurring harm.

The court rejects the presiding judge's argument (*id.* at 16) that plaintiffs' claims against him for injunctive relief are prohibited by the judicial immunity language the FCIA added to § 1983, an argument already rejected by Judge Eagan. In her March 15, 2019, order, Judge Eagan found that plaintiffs bring claims against the presiding judge based on his administrative (non-judicial) acts and thus seek no injunctive relief against him in his judicial capacity. As a result, she held that § 1983 does not bar injunctive relief against the presiding judge (Musseman at that time). Doc. no. 48, p. 19.

The court also rejects the presiding judge's argument that injunctive or declaratory relief against him would violate the Eleventh Amendment. The complaint seeks prospective relief only, of an equitable nature, against the presiding judge, who is a state actor sued in his official capacity. Relief, if granted, would

presumably declare certain aspects of the Tulsa bail system unconstitutional and enjoin any ongoing, unconstitutional practices and procedures. In these circumstances, the claims against the presiding judge come within <u>Ex Parte Young</u> and do not violate the Eleventh Amendment.

The court next addresses the presiding judge's arguments for dismissal under Rule 12(b)(6). The presiding judge argues that the claims against him fail because his authority to develop a bail schedule is not enough to state a claim against him in count one or count two. He argues he does not have the authority to dictate how special judges use the bail schedule, and that he does not dictate any result to the special judges or to review their decisions.

While there are limits on the presiding judge's authority in this area, the presiding judge's arguments fail as grounds for dismissal. With respect to count one, the complaint plausibly alleges facts indicating the presiding judge has at least some control over matters which impacted Feltz and Dennis's detention and which continue to impact members of the purported class who, like Feltz and Dennis, cannot afford money bond amounts. With respect to the procedural due process claim alleged in count two, the complaint plausibly alleges that the presiding judge has general administrative and rule-making authority over the special judges who, in turn: do not routinely conduct any inquiries into and do not make any findings concerning, detainees' ability to pay money bail or the necessity of pretrial detention; do not provide adequate hearings, with notice of the critical issues to be heard, and with an adequate opportunity to be heard and to confront evidence; do not provide findings that meet legal or evidentiary standards; and do not provide an explanation of reasons for such findings on the record. Doc. no. 259, ¶ 19. In addition, the merits of the claims against the presiding judge are likely to be fact-intensive and would benefit from determination at a later stage.

No claims alleged against the presiding judge will be dismissed under Rule 12(b)(6).

<u>The Special Judges' Motion to Dismiss</u>

The special judges bring a factual attack on the court's jurisdiction under Rule 12(b)(1), relying on principles of standing and mootness to challenge the claims alleged against them in count two, the only count as to which they remain defendants.[27]  The gist of some of the special judges' arguments is set out below.[28]

The special judges argue Feltz has no injury traceable to seventeen of them (Special Judge Doss is not included), as these seventeen had nothing to do with Feltz's judicial proceedings.

The special judges argue that Feltz's claim against Judge Doss, the substituted official for Judge Moody, is moot.  They argue that Judge Doss follows CR2, which informs her discretion regarding how to conduct the docket or an individual proceeding before her.  They argue there is no evidence that Judge Doss does not consider ability to pay along with other factors.  They argue there is no evidence that Judge Doss has adopted the alleged practices or policies attributed to former Special Judge Moody, including Judge Moody's alleged practice or policy of refusing to consider bail at initial arraignments.  They argue there is no evidence that Feltz is likely to be harmed by CR2 as there is no evidence he will be arrested on future charges and come before the Tulsa court.  They argue that to escape the mootness doctrine, there must be a reasonable expectation that the same complaining party will be subjected to the same action again.  They also argue that CR2 moots Feltz's allegation that he received "no process" to review his bail.

---

[27] Claims alleged against the special judges in count one did not survive Judge Eagan's March 15, 2019, order and are not included in the second amended complaint.

[28] Whether or not expressly addressed in this order, the court has considered all arguments for dismissal.

The special judges argue that Feltz and Dennis were arrested for open charges that appear on the pre-set bond schedule and that neither of the named plaintiffs has an injury from any alleged policy or practice of the special judges regarding detention of persons arrested pursuant to a warrant, as persons arrested on a warrant are not eligible for pre-set bond. Accordingly, the special judges argue that neither Feltz nor Dennis has standing to assert claims related to arrests on warrants.

The special judges argue that Dennis has no injury traceable to seventeen of the special judges (all but Judge Wilson) and no injury redressable by these seventeen, as none of the seventeen handled the bond docket at which Dennis appeared or made a decision related to Dennis' bail.

The special judges argue that because Dennis appeared at the bond docket and received a ruling on his bond from Judge Wilson, Dennis' claims against Judge Wilson would necessarily be for retrospective declaratory relief. They argue that such relief is barred by the Eleventh Amendment, as <u>Ex Parte Young</u> permits only claims for prospective relief.

These arguments are rejected for the reasons stated below.

<u>Standing</u>. With respect to constitutional standing, the court has already found, in the context of the presiding judge's factual challenge to constitutional standing, that the injury in fact requirement is met with respect to the presiding judge. The same is true with respect to plaintiffs' claims against the special judges. The evidence shows that arrestees appear before special judges who determine matters related to their detention and conditions of release. Causation and redressability requirements are met by the special judges' authority and control over the way they conduct the pre-trial detention matters that come before them. To be sure, their control is a shared control in the sense that it is limited by law, by the presiding judge's actions in his supervisory capacity (such as the creation of the bond docket), and by local court rules (such as CR2). That said, evidence shows, and there is no

debate, that the special judges retain significant authority over the way they handle detention proceedings.  *See*, *e.g.*, doc. no. 269-8, Wright deposition, pp. 174-5 (different judges conduct arraignments differently, some talking more to the defendant than others); pp. 233-57 (special judges' conduct of bond dockets).  The procedural due process claims (the only claims which remain against the special judges) are aimed at this authority.  Furthermore, this action seeks only prospective declaratory relief against the special judges in their official capacities.  In this situation, the fact that a judge was not involved in any proceedings involving Feltz or Dennis does not defeat plaintiffs' standing to bring procedural due process claims against that judge, seeking future declaratory relief.[29]  For these and other reasons, plaintiffs have standing to bring claims for declaratory relief against the special judges, as sought in count two.

<u>Mootness</u>.  The special judges' mootness arguments are largely answered by the inherently transitory claims exception to the mootness doctrine, which does not require plaintiffs to show they are likely to be subjected to the complained-of state procedures again.  Nor does the adoption of CR2 render plaintiffs' claims against the special judges moot.  The second amended complaint permitted Dennis to be added as a named plaintiff.  Dennis was arrested after CR2 was in effect.  In addition, the second amended complaint was permitted so that factual allegations could be updated to reflect procedural changes such as the creation of the bond docket and adoption of CR2.  Finally in this regard, this action alleges,[30] and there is evidence

---

[29] *See*, <u>Kitchen</u>, 755 F.3d 1193, 1201; <u>Parkell v. Danberg</u>, 833 F.3d 313, 332 (3d Cir. 2016) ("Our conclusion that the State Defendants lacked personal involvement in past constitutional violations does not preclude Parkell from obtaining prospective injunctive relief for ongoing violations," citing cases from various circuits.).

[30] Count two alleges:

to show,[31] that CR2 did not solve all procedural due process issues raised in count two and did not render plaintiffs' claims against the special judges moot.[32]

Comparison to Those Arrested on a Warrant.  The court also rejects the special judges' argument that Feltz and Dennis have no injury traceable to the special judges to the extent Feltz and Dennis seek to represent people who were arrested on a warrant or who were arrested on charges that do not appear on the pre-set bond schedule.  Whether individuals in these categories are sufficiently similarly situated to Feltz and Dennis with respect to the detentions at issue in this action are questions to be determined in connection with class certification.  In the meantime, these argued-for distinctions do not deprive plaintiffs of standing or render plaintiffs' claims moot.

Eleventh Amendment Immunity.  The special judges' argument that the Eleventh Amendment defeats Dennis's claims against Judge Wilson because

---

The Due Process Clause requires the government, before depriving anyone of the fundamental right to pretrial liberty, to provide notice of the critical issues to be decided at the hearing. The person must be represented by counsel and have the opportunity to present and confront evidence and to be heard concerning the issue of pretrial release or detention. Any transparent or de facto order of pretrial detention must be accompanied by findings on the record by clear and convincing evidence explaining why no combination of conditions could sufficiently serve the government's compelling interests.

Defendants violate Plaintiffs' procedural due process rights by depriving them of their fundamental right to pretrial liberty without providing these necessary safeguards to ensure the accuracy of the substantive finding of necessity.

Doc. no. 259, ¶¶ 139, 140.

[31] *See*, *e.g.*, doc. no. 269-8 (Wright deposition, pp. 237-39, questions not asked by special judges presiding over bond docket).

[32] If the special judges' argument should be interpreted as challenging not only mootness but also Feltz or Dennis's standing to challenge the bail system after adoption of CR2, the court rejects that argument.  There is evidence that CR2 did not solve all of plaintiff's alleged issues with respect to the way Feltz's detention was handled, and evidence shows Dennis was arrested after the adoption of CR2.  Plaintiffs, who must show that at least one of the named plaintiffs has standing to sue each of the remaining defendants, have met that requirement.

Dennis's relief would be retrospective, is rejected.  Plaintiffs seek only prospective declaratory relief in this action.  The claims against Judge Wilson, like the claims against the other special judges, seek prospective declaratory relief with respect to alleged due process violations which plaintiffs allege, and which there is at least some evidence to show, continue to occur in proceedings conducted by the special judges.  The fact that Dennis appeared before Judge Wilson does not turn plaintiffs' due process claims into a claim, in Dennis's case, for retrospective relief against Judge Wilson.

The special judges' motion to dismiss will be denied.

Conclusion

After careful consideration, the court rules as follows.

The Sheriff's Motion.  Sheriff Regalado's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.  The motion is **GRANTED** to the extent the sheriff is named in this action as a county actor, i.e., based on his role as the policymaker for the county jail.  To the extent the sheriff is named as a county actor, he is **DISMISSED** from this action with prejudice.  The motion is **DENIED** to the extent the sheriff is named as a state actor, i.e., as a person who carries out the allegedly unconstitutional policies and directives of the Tulsa judges.  To this extent, the sheriff remains a defendant for purposes of counts one and two, both of which seek prospective declaratory and injunctive relief against him.

The Presiding Judge's Motion.  Presiding Judge LaFortune's motion to dismiss is **DENIED**.  He remains a defendant for purposes of counts one and two, both of which seek prospective declaratory and injunctive relief against him based on his administrative (non-judicial) supervisory authority.

The Special Judges' Motion.  The special judges' motion to dismiss is **DENIED**.  The special judges remain defendants for purposes of count two, which seeks prospective declaratory relief (no injunctive relief) against them.

Surviving Claims.  The claims which survive this order, brought by Feltz and Dennis on behalf of the putative class, are summarized below.  Defendants are named in their official capacities only.

Count One:  The sheriff to the extent he is named as a state actor (not as a county actor) and the presiding judge violate plaintiffs' equal protection rights and due process protections against wealth-based detention by detaining and jailing plaintiffs because plaintiffs cannot afford a monetary payment.

Count Two:  The sheriff to the extent he is named as a state actor (not as a county actor), the presiding judge and the special judges detain and jail plaintiffs without procedural due process protections.

Relief sought:

Declaratory Relief.  Prospective declaratory relief is sought against the remaining defendants.

Injunctive Relief.  Prospective injunctive relief is sought against the sheriff and the presiding judge.  The injunctive relief sought against the presiding judge is relief with respect to his administrative (non-judicial) acts.

Other matters.  The court is mindful–and expects the parties and their counsel to be equally mindful–of the scheduling order, doc. no. 305, entered on August 31, 2021.  The court's intent is to move this 2018 case in an orderly way and with reasonable dispatch, to a final adjudication in this court.

IT IS SO ORDERED this 29th day of September, 2021.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

18-0298p002 rev_.docx