**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

IRA LEE WILKINS, ET AL.,

*Plaintiffs*,

v.

ABERDEEN ENTERPRIZES, II, INC., ET AL.,

*Defendants*.

Case No. 17-CV-00606-SEH-JFJ

# PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY ALL PROCEEDINGS PENDING RESOLUTION OF INTERLOCUTORY APPEAL

Salil Dudani*
Israa Alzamli*
Jeffrey Stein*
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW
Suite 800
Washington, DC 20009
(202) 844-4975
salil@civilrightscorps.org

Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
(918) 585-2667
danielsmolen@ssrok.com

*Attorneys for Plaintiffs*

Seth Wayne*
Shelby Calambokidis*
Mary B. McCord*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY & PROTECTION
Georgetown University Law Center
600 New Jersey Ave. N.W.
Washington, D.C. 20001
Phone: (202) 662-6671
sw1098@georgetown.edu

**Admitted pro hac vice*

# TABLE OF CONTENTS

INTRODUCTION .......... 1
PERTINENT BACKGROUND .......... 2
ARGUMENT .......... 4
I. A Stay of All Proceedings Is Not Required .......... 4
II. Traditional Factors Disfavor a Global Stay .......... 7
III. Defendants' Arguments for a Global Stay Fail .......... 15
CONCLUSION .......... 19
CERTIFICATE OF SERVICE .......... 21

## INTRODUCTION

This putative class action challenges Defendants' wide-ranging scheme to extort payment of criminal justice debts from Oklahoma's most vulnerable residents using both threats of arrest and actual incarceration for nonpayment, without any court process, hearing, or inquiry into their ability to pay. Plaintiffs seek damages, declaratory relief, and injunctive relief in a complaint alleging ten separate claims. Relying primarily on qualified and quasi-judicial immunity, some Defendants have noticed appeals of this Court's denial of their motions to dismiss some of the pending claims against them. Defendants' appeals do not reach most of Plaintiffs' claims. Nor could they, given the limited scope of the immunities upon which Defendants' appeals are premised. Nonetheless, *all* Defendants have moved this Court "for an order staying all proceedings in this case, including discovery," pending the Tenth Circuit's resolution of those appeals. Defs.' Joint Mot. to Stay All Proceedings (Mot.), ECF No. 527, at 1. According to the Defendants who have noted appeals, those notices "automatically divested" this Court of jurisdiction "to proceed with any part of the action against an appealing defendant." *Id.* at 8 (quoting *Stewart v. Donges*, 915 F.2d 572, 576, 579 (10th Cir. 1990)). The other Defendants ask the Court to "exercise its discretion to stay the remainder of the case." *Id.* at 3.

The Court should deny this request. Defendants are wrong on the law: a notice of appeal "affects only those aspects of the case involved in the appeal." *Howard v. Mail-Well Envelope Co.*, 150 F.3d 1227, 1229 (10th Cir. 1998); *see also Alice L. v. Dusek*, 492 F.3d 563, 564 (5th Cir. 2007) (same). The Court thus is not bound to stay all proceedings against any Defendant. Moreover, even if every appealing Defendant were to prevail entirely on appeal, Plaintiffs' remaining claims would entitle them to a materially identical scope of discovery. There is no basis for a global stay. Instead, the Court should stay only the aspect of this nine-year-old case that is properly the subject of

Defendants' interlocutory appeals: Plaintiffs' claims seeking damages against the appealing Defendants. As to all other matters—including discovery—this case should proceed.

## PERTINENT BACKGROUND

Plaintiffs filed this case nine years ago, in November 2017. *See* Compl., ECF No. 2. The unlawful scheme and other illegal acts alleged in the complaint began many years before that—in 2010, if not earlier. *See* Second Am. Compl. (SAC), ECF No. 212, ¶ 309. Despite their diligence in prosecuting this case, Plaintiffs are still waiting to begin discovery for their nearly decade-old claims, and remain many steps away from achieving recompense for their injuries. Thus far, the "pace with which this case has proceeded" has not just been slow, it has been "glacial." Op. & Order (MTD Op.), ECF No. 491, at 97.

Plaintiffs filed their operative complaint on September 21, 2018. *See* SAC. After years of intervening litigation, the Court denied most of Defendants' motions to dismiss on September 30, 2026. The following claims are not subject to any pending appeal:

- Count One (RICO) against Aberdeen Enterprizes II, Inc. (Aberdeen) and Jim and Robert Shofner (collectively, the Aberdeen Defendants), as well as the Oklahoma Sheriff's Association (OSA), for damages. *See id.* at 80.

- Count Two (use of arrest warrants for nonpayment without inquiry into ability to pay, in violation of the hybrid due-process-and-equal-protection principles recognized in *Bearden v. Georgia*, 461 U.S. 660 (1983)); Count Three (use of warrants based on unsworn allegations and lacking material information about ability to pay, in violation of the Fourth Amendment); Count Five (jailing of debtors without proof of willfulness, notice, and hearing, in violation of state-created liberty interests and procedural due process); and Count Seven (subjecting Plaintiffs to more onerous debt-collection-enforcement methods, in violation of their equal protection rights under *James v. Strange*, 407 U.S. 128 (1972)), against Rogers County for damages and injunctive relief, Tulsa County for injunctive relief, the Rogers and Tulsa County Judges for declaratory relief, and the Aberdeen Defendants and OSA for damages and injunctive relief. *See id.* at 89-97. In addition, Plaintiffs' claim in Count Seven is also proceeding—and is not the subject of any appeal—against the Wagoner, Cleveland, and Creek County Sheriffs in their official capacity for damages and injunctive relief. *See id.* at 96.

- Count Four (jailing individuals on debt-collection warrants based on an inability to pay, in violation of *Bearden*) against Rogers County for damages and injunctive relief, Tulsa County for injunctive relief, and the Rogers and Tulsa County Judges for declaratory relief. *See id.* at 92.

- Count Six (delegation of law enforcement authority to a non-neutral private entity with a financial conflict of interest, in violation of due process) against the Rogers, Wagoner, Cleveland, and Creek County Sheriffs in their official capacity for damages and injunctive relief, the Tulsa County Sheriff in his official capacity for injunctive relief, and the Aberdeen Defendants and OSA for damages and injunctive relief. *See id.* at 95.

- Count Eight (abuse of process) against the Aberdeen Defendants for damages and injunctive relief. *See id.* at 97.

- Count Nine (duress) against the Aberdeen Defendants for damages. *Id.*

- Count Ten (unjust enrichment) against the Aberdeen Defendants and OSA for damages and injunctive relief. *Id.* at 98.

In contrast, the claims on appeal are limited to damages claims in five of the ten counts against the Rogers County Clerk and the Rogers, Creek, Cleveland, and Wagoner County Sheriffs in their personal capacities, and damages claims in seven of the ten counts against the Tulsa County Sheriff, Clerk, and Cost Administrator (Tulsa County Defendants) in their personal and official capacities.[1] *See* Notice of Appeal, ECF No. 504 (Rogers County Clerk); Joint Notice of Appeal, ECF No. 509 (Creek, Cleveland, and Wagoner County Sheriffs); Notice of Appeal, ECF No. 514 (Rogers County Sheriff); Joint Notice of Appeal, ECF No. 518 (Tulsa County Defendants).

---

[1] Specifically, the claims subject to appeal are limited to those for damages in Count One against the Sheriffs in their personal capacities; Counts Two, Three, Five, and Seven against the Rogers County Clerk and Sheriff in their personal capacities, the Tulsa County Defendants in their personal and official capacities, and as to Count Seven only, the remaining grouped Sheriffs in their personal capacities; Count Four against the Tulsa County Sheriff in his personal and official capacities; and Count Six against the Tulsa County Sheriff in his official capacity.

## ARGUMENT

The Court should decline Defendants' request to stay all proceedings in this case while some Defendants appeal the Court's motion-to-dismiss ruling on some of the claims against them. Discovery on claims for which Defendants "cannot assert . . . immunity . . . do[es] not implicate [their] right to qualified [or other] immunity." *Alice L.*, 492 F.3d at 565. Thus, an "assertion of qualified [or other] immunity *does not* obligate the district court to impose a global stay of the entire case, including as to defendants and claims where . . . immunity is inapplicable." *Cruz v. City of Deming*, 687 F. Supp. 3d 1155, 1167 (D.N.M. 2023). Here, the claims that will persist regardless of the outcome of the appeals encompass the complete run of issues, facts, and controversies in this litigation. A global stay in response to the minority of claims on appeal would amount to the tail wagging the dog. There are also prudential reasons that the Court should not exercise its discretion to stay those aspects of the case not on appeal: the age of the case, the importance of Plaintiffs' claims both to them and to the other putative class members, and the fact that all Defendants will have to participate in this case and provide discovery "irrespective of whether [some of them] are granted . . . immunity." *Id.* at 1168.

### I. A Stay of All Proceedings Is Not Required

"[A] complete stay of all discovery pending an interlocutory appeal in a qualified [or other] immunity case is neither mandated nor automatic." *Davis v. Matagorda County*, No. 3:18-CV-00188, 2019 WL 1924532, at *2 (S.D. Tex. Apr. 30, 2019). Rather, it is "fully within a judge's discretion to permit discovery to continue on claims separate and apart from those at issue in the interlocutory appeal." *Id.* That includes both claims against defendants who have not asserted an immunity defense or noticed an appeal, and also claims against defendants who have done those things, where the discovery is for claims that are not involved in the appeal.

This conclusion flows from the rules governing interlocutory appeals and the nature of qualified immunity. When a defendant notices an appeal from the denial of qualified or other immunity, that notice "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). But "[a] notice of appeal from an interlocutory order does not produce a complete divestiture of the district court's jurisdiction over the case; rather, it only divests the district court of jurisdiction over those aspects of the case on appeal." *Alice L.*, 492 F.3d at 564. And because "the transfer [of jurisdiction] affects only those aspects of the case involved in the appeal . . . , when an appeal is taken from a limited interlocutory ruling, as opposed to one that affects the litigation as a whole, the district court may proceed with the case." *Howard*, 150 F.3d at 1229; *see also, e.g.*, *Est. of Simon v. Van Beek*, No. 1:21-cv-01923-CNS-GPG, 2023 WL 1768548, at *2 (D. Colo. Jan. 3, 2023) ("While filing a Notice of Interlocutory Appeal divests the Court of jurisdiction over the implicated claims, it does not divest the Court of jurisdiction over the unrelated, remaining claims.").

A qualified or other immunity "is a right to immunity *from certain claims*, not from litigation in general." *Behrens v. Pelletier*, 516 U.S. 299, 312 (1996); *see also Cruz*, 687 F. Supp. 3d at 1167-68 (noting that immunity defenses are "limited to particular claims against particular individuals"). Such immunity thus "does not shield government officials from all discovery but only from discovery which is either avoidable or overly broad." *Maxey v. Fulton*, 890 F.2d 279, 282 (10th Cir. 1989) (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir. 1987)). As a result, nothing "mandate[s] that a district court stay *all discovery* as to *all defendants* merely because at least one defendant invokes . . . immunity in a dispositive motion." *Cruz*, 687 F. Supp. 3d at 1161; *see also, e.g.*, *Laca v. United States ex rel. Dep't of Veterans Affs.*, No. 22-cv-00366-

SEH-SH, 2024 WL 3467351, at *2 n.2 (N.D. Okla. July 18, 2024) (noting that a court is not "*required* to stay discovery for all defendants when one party raises qualified immunity"); *Ramirez v. Escajeda*, No. EP-17-CV-00193-DCG, 2022 WL 1744454, at *1 (W.D. Tex. May 31, 2022) ("[T]here is no right to a global stay of litigation during a qualified immunity appeal."). Where a defendant "is subject to discovery requests on claims for which she does not or cannot assert qualified [or other] immunity, such discovery requests do not implicate her right to . . . immunity." *Alice L.*, 492 F.3d at 565. Thus, when a defendant or defendants appeal the denial of an immunity defense, "the issuance of a discovery stay remains within the sound discretion of the district court." *Cruz*, 687 F. Supp. 3d at 1161; *see also, e.g.*, *Davis*, 2019 WL 1924532, at *2 (noting that it is "fully within a judge's discretion to permit discovery to continue on claims separate and apart from those at issue in the interlocutory appeal, as well as those claims brought against parties who have not moved for dismissal based on qualified immunity"). "Indeed, examples abound of judges staying selected discovery during the pendency of an interlocutory appeal on qualified [or other] immunity while allowing other discovery to proceed unabated." *Davis*, 2019 WL 1924532, at *2 (citing cases).[2]

[2] These examples include numerous cases allowing plaintiffs to obtain discovery from the officials appealing the denial of immunity. *See, e.g.*, *Est. of Simon*, 2023 WL 1768548, at *3; *Howard v. City of Houston*, No. H-21-1179, 2022 WL 1156097, at *2 (S.D. Tex. Apr. 18, 2022); *R.F.J. v. Fla. Dep't of Child. & Fams.*, No. 3:15-cv-1184-J-32JBT, 2017 WL 11004970, at *1 (M.D. Fla. Feb. 24, 2017); *Torres v. Faxton St. Lukes Healthcare*, No. 6:16-CV-439, 2017 U.S. Dist. LEXIS 226892, at *14 (N.D.N.Y. Jan. 26, 2017); *Mendia v. Garcia*, No. 10-cv-03910-MEJ, 2016 WL 3249485, at *5 (N.D. Cal. June 14, 2016); *Stumpf v. City of Dallas*, No. 3:15-CV-1944-N, 2016 WL 10749149, at *2 (N.D. Tex. May 25, 2016); *Harris v. City of Balch Springs*, 33 F. Supp. 3d 730, 733 (N.D. Tex. 2014); *Seeds of Peace Collective v. City of Pittsburgh*, No. 09-1275, 2010 WL 2990734, at *3 (W.D. Pa. July 28, 2010).

Here, the Court should exercise its broad discretion to stay discovery only as to the aspect of the case that is properly the subject of Defendants' interlocutory appeals: the Court's denial of immunity for the appealing Defendants on Plaintiffs' claims seeking damages against those Defendants primarily in their individual capacities. The Court should allow discovery to go forward on the remaining "legally distinct" claims against Defendants who cannot assert immunity and have not noticed an interlocutory appeal, as well as claims for declaratory and injunctive relief brought against the appealing Defendants in their official capacities that are not subject to an immunity defense. *Alice L.*, 492 F.3d at 565 ("Even though the factual basis of the Title IX claims and the § 1983 claim overlap, the claims are legally distinct"). Immunity defenses are "limited to particular claims against particular individuals." *Cruz*, 687 F. Supp. 3d at 1167-68. "To the extent that [the appealing Defendants are] subject to discovery requests on claims for which [they do] not or cannot assert [an] immunity, such discovery requests do not implicate [their] right to [such] immunity." *Alice L.*, 492 F.3d at 565.

## II. Traditional Factors Disfavor a Global Stay

Plaintiffs do not dispute that the Court has lost jurisdiction over the claims that are subject to the appealing Defendants' appeals, and that it is therefore appropriate to issue a limited stay that covers any proceedings or discovery solely applicable to those claims and no others. But the Court should reject Defendants' request to stay all proceedings in this case simply because certain Defendants have noticed appeals as to certain claims. Rather, the Court should exercise its "considerable discretion in controlling the scope, timing, and methodology of discovery so as to [deny] a global stay of discovery" and allow the case to proceed on the many claims over which the Court retains jurisdiction. *Cruz*, 687 F. Supp. 3d at 1167.

The relevant factors weigh heavily in favor of denying Defendants' requested stay. "A stay is an 'intrusion into the ordinary processes of administration and judicial review.'" *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quoting *Va. Petrol. Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958)). Because "the issuance of a discovery stay remains within the sound discretion of the district court," *Cruz*, 687 F. Supp. 3d at 1161, this Court should apply "the 'traditional' standard for a stay" to Defendants' request to stay all proceedings and consider four factors: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies,'" *Nken*, 556 U.S. at 425-26 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). *See, e.g.*, *Est. of Simon*, 2023 WL 1768548, at *2-3 (applying *Nken* factors to requested stay of discovery pending qualified immunity appeal); *Montoya v. City & County of Denver*, No. 16-cv-01457-JLK, 2021 WL 8087380, at *1-5 (D. Colo. July 27, 2021) (same).

The first stay factor—the applicants' likelihood of success on appeal—weighs against staying all discovery in this case because most of Plaintiffs' claims are not even at issue in these appeals. As discussed above, even if the appealing Defendants were to prevail before the Tenth Circuit, they would still have to participate in this litigation, including discovery, on the many claims that are not subject to their appeal. Generally, the immunity defenses at issue on appeal are "available only to individual government officials, not governmental entities," and are "applicable only [to] claims for monetary damages" and "claims against officers in their individual capacities." *Rome v. Romero*, 225 F.R.D. 640, 643 (D. Colo. 2004); *see also id.* ("[O]fficial-capacity claims,

being the equivalent of a claim against an entity, are not subject to qualified immunity.").[3] Thus, "a government official's participation in discovery may be inevitable in cases where a plaintiff files a complaint alleging a mix of different Section 1983 claims, only some of which are subject to a qualified immunity defense." *Cruz*, 687 F. Supp. 3d at 1168.

This is true where, as here, the complaint "allege[s] both a claim against a county and a county official in their individual capacity." *Id.* It is also true where, as here, "an official [is] named in a complaint that alleges claims under Section 1983 along with violations of other federal statutes or state law," because "qualified immunity is inapplicable as a defense to other federal statutes or state law claims." *Id.* at 1169. This factor thus weighs against staying all discovery in this case. *See Est. of Simon*, 2023 WL 1768548, at *2 (finding this factor did not "carr[y] much weight" where defendants seeking a stay of discovery as to all claims against them would "still [need to] defend against the remaining [municipal liability and state law] claims, even if the Tenth Circuit decide[d] [they] ha[d] qualified immunity"); *Montoya*, 2021 WL 8087380, at *3 (reasoning that "the likelihood of Defendant Officers succeeding on appeal [was] not relevant for assessing whether a stay should be granted as to the municipal liability claim" since "[t]he case against the City w[ould] proceed irrespective of whether the Tenth Circuit reverse[d] [on] qualified immunity").

The second stay factor—whether the applicants will be irreparably injured absent a stay—likewise weighs against the complete stay of all proceedings requested by all Defendants. Regardless of what happens to the appealing Defendants' claims on appeal, those who have noticed

[3] The exceptions here are the damages claims against Tulsa County, for which the Court denied and County officials appealed sovereign immunity. But as explained above, Plaintiffs still have claims for injunctive relief against Tulsa County, so the scope of discovery is not materially affected by the appeal.

appeals, as well as those who have not, will have to participate in this litigation on claims implicating virtually, if not entirely, the same discovery as the claims on appeal. For example, even if Defendants' appeals prevail, Plaintiffs' official-capacity damages and/or injunctive claims against the Rogers County Clerk and Sheriff, as well as the Wagoner, Cleveland, and Creek County Sheriffs, will proceed. *See supra* pp. 2-3. These Defendants' conduct is critical to Plaintiffs' claims under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Plaintiffs will likewise need to take the same discovery to prove their claims for declaratory and injunctive relief: the facts of Defendants' unlawful scheme to date are critical to Plaintiffs' ability to prove violations of law alleged in the complaint, and to prove the necessity of prospective relief. The same is true as to each and every appealing Defendant, since each has claims pending against them untouched by their notices of appeal. *See supra* pp. 2-3. Moreover, the Aberdeen Defendants, OSA, and the Rogers and Tulsa County Judges have not noticed any appeals. The crux of Plaintiffs' claims is that these Defendants acted in concert with the sheriffs and other officials in these counties to extort and incarcerate Plaintiffs in violation of state and federal law, enriching themselves and their budgets in the process.

As discovery from each of the appealing Defendants would be necessary to prove the non-appealed claims no matter the results of the appeals, the denial of a stay cannot irreparably injure any Defendants. "The Tenth Circuit has made clear that asserting the defense of qualified immunity does not 'shield government officials from all discovery but only from discovery which is either avoidable or overly broad.'" *Est. of Simon*, 2023 WL 1768548, at *3 (quoting *Garrett v. Stratman*, 254 F.3d 946, 953 (10th Cir. 2001)); *see also Crawford-El v. Britton*, 523 U.S. 574, 593 n.14 (1998) (explaining that the Supreme Court's qualified-immunity jurisprudence does not "create an immunity from *all* discovery"). As discussed above, because they have also been sued

in their official capacities and are key fact witnesses for Plaintiffs' *Monell* claims against the governmental entities, the appealing Defendants will be required to participate in this litigation, including discovery, regardless of the outcome of their appeals. *See, e.g.*, *Howard v. City of Houston*, No. H-21-1179, 2022 WL 1156097, at *2 (S.D. Tex. Apr. 18, 2022) ("[E]ven if Acevedo obtains qualified immunity on appeal, he would still be required to subject himself to the same discovery requests because the facts involved would be relevant to the claims against the City."); *Montoya*, 2021 WL 8087380, at *3 ("If the Court of Appeals finds each Defendant Officer is entitled to qualified immunity on Mr. Montoya's claims, the officers will nevertheless be required to participate in discovery on the claims against the City, as necessary.").

Because the appealing Defendants will be required to engage in the same discovery no matter what, they will not be irreparably injured by the denial of a stay. *See, e.g.*, *Nero v. Mosby*, No. MJG-16-1288, 2017 WL 1048259, at *2 (D. Md. Mar. 20, 2017) (finding that discovery "is not 'unnecessary,' nor would it cause irreparable injury," where the appealing defendant "must, in any event, act as a witness in regard to facts relating to claims against" the non-appealing defendant, and thus "will not suffer irreparable injury" since "a stay would only delay any discovery-related burden on her"); *Bos. Taxi Owners Ass'n v. City of Boston*, 187 F. Supp. 3d 339, 342 (D. Mass. 2016) (finding that the defendant would "suffer no substantial harm from proceeding directly with the case rather than waiting for the qualified immunity issue to be resolved on appeal" because the case "involve[d] claims . . . for both money damages and equitable relief," and thus would "proceed regardless of the First Circuit's decision on the qualified immunity issue"); *Mendia v. Garcia*, No. 10-cv-03910-MEJ, 2016 WL 3249485, at *5 (N.D. Cal. June 14, 2016) ("[L]imited discovery as to these Defendants is appropriate because regardless of whether they are entitled to qualified immunity, they will still need participate in discovery as

percipient witnesses related to the FTCA claims against the United States. As such, there is no undue burden on Defendants."); *V.S. v. Muhammad*, Nos. 07-CV-0213 (DLI)(JO), 07-CV-1281 (DLI)(JO), 2008 WL 5068877, at *2 (E.D.N.Y. Nov. 24, 2008) (finding it "hard to see how the movants will be harmed at all in the absence of a stay, much less harmed irreparably" where "the movants will in any event have to participate—whether as parties or as witnesses with discoverable information—in the discovery of the claims that are not involved in the pending appeals").

In contrast, Plaintiffs will be substantially injured by a complete stay of the proceedings during the pendency of the appealing Defendants' appeals, and thus the third stay factor—whether a stay will substantially injure the other parties interested in the proceeding—weighs against granting the broad stay requested by Defendants. As discussed above, Plaintiffs brought this lawsuit nine years ago, and the allegations in the complaint challenge practices dating back at least sixteen years. Nonetheless, Plaintiffs have not been able to send a single discovery request or conduct a single deposition, much less seek redress for their injuries, given the "glacial" pace at which this case has proceeded. MTD Op. 97. Plaintiffs have "pursued [their] civil claims in this case for [nine] years with little forward progress. . . . As is often said, justice delayed is justice denied, and in this case, the denial of justice looms." *Montoya*, 2021 WL 8087380, at *4.

That denial of justice is particularly acute in this case, a putative class action brought on behalf of the thousands of Oklahomans whose constitutional rights were violated by Defendants' years-long practices. When Plaintiffs filed their lawsuit, there were "tens of thousands of cases in Oklahoma with outstanding debt collection arrest warrants." SAC ¶ 6; *accord* Compl. ¶ 71. Defendants "subjected thousands of people to their extortionate practices when attempting to collect court debt from people who have been assessed fines and fees assessed in criminal and traffic cases in Oklahoma District Courts." SAC ¶ 233. And this case involves not just the named

Plaintiffs—who suffered significant, concrete injuries as a result of Defendants' practices, *id.* ¶¶ 18-25—but also thousands of putative class members who each "paid money to Aberdeen, Inc. and the Sheriffs' Association" and "have been forced to continue paying under threat of jailing and other legal consequences even when they cannot afford to do so without sacrificing the basic necessities of life, resulting in economic harm to themselves and their families," *id.* ¶ 315. Given the reach of Defendants' practices and size of the putative class, it is inevitable that many class members—some of Oklahoma's poorest and most vulnerable residents in whose lives even a modest amount of money could be transformative—will not live to see the case's resolution. Thus, in this case, "[j]ustice delayed" may in fact "be justice denied for [thousands of] victims of civil rights abuses." *Cruz*, 687 F. Supp. 3d at 1170.

A complete stay of proceedings will injure Plaintiffs and putative class members in other ways as well. A stay of all discovery, "accompanied by the inexorable passage of time, will 'increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party.'" *Davis*, 2019 WL 1924532, at *3 (quoting *Clinton v. Jones*, 520 U.S. 681, 707-08 (1997)). As this already old case becomes even older, there in an ever-increasing "risk . . . that the 'memories of the parties and other witnesses may fade with the passage of time, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed' while the interlocutory appeal is decided." *Est. of Simon*, 2023 WL 1768548, at *3 (quoting *Est. of Bailey v. City of Colorado Springs*, No. 20-cv-1600-WJM-KMT, 2020 WL 6743789, at *2 (D. Colo. Nov. 17, 2020)). And delaying discovery in civil rights cases such as this one "tends to delay the implementation of necessary reforms and changes to prevent future violations." *Cruz*, 687 F. Supp. 3d at 1170. Here, a complete stay of proceedings would hamstring Plaintiffs' efforts to determine whether Defendants are continuing

to violate Plaintiffs' constitutional rights notwithstanding the changes to Oklahoma law prompted by this lawsuit. As this Court recognized in rejecting Defendants' motions to dismiss based on mootness, "the Court can still redress Plaintiffs['] injuries if the Defendants violated and/or continue to violate their constitutional rights regardless of what state law says." MTD Op. 17. The total stay requested by Defendants would harm Plaintiffs by impeding their efforts to establish the extent to which Defendants' constitutional violations continue to harm indigent Oklahomans today.

Finally, the fourth stay factor—the public interest—weighs against staying all discovery here. First, "doing so would only prolong the case, given the inevitability of discovery against [all] Defendants." *Mendia*, 2016 WL 3249485, at *5. A stay would thus undermine the public's interest in judicial efficiency. *See Est. of Bailey*, 2020 WL 6743789, at *2 ("[C]onvenience to the Court weighs against granting a stay of discovery, as cases that linger on the Court's docket are more difficult to manage."); *Nero*, 2017 WL 1048259, at *3 ("The public interest in judicial efficiency would be hampered by a stay in this case since discovery will proceed inevitably on many of the same issues in [the non-appealing defendant's] case."). Second, "[t]he public has a strong interest in seeing cases resolved, especially when public entities and violations of citizens' constitutional rights are involved." *Montoya*, 2021 WL 8087380, at *5. Thus, "[t]he public interest disfavors the grant of a stay where it would hinder the speedy adjudication of constitutional claims." *Verizon N.Y. Inc. v. Village of Westhampton Beach*, Nos. CV 11-252(AKT), CV 11-213(AKT), 2013 WL 5762926, at *9 (E.D.N.Y. Oct. 18, 2013). This is especially true where, as here, "the plaintiffs raise issues that implicate the safety of the most vulnerable members of our society." *V.S.*, 2008 WL 5068877, at *3. In such cases, "[t]he public plainly has a strong interest in learning as soon as possible whether the plaintiffs' allegations are true." *Id.* Third, "there is no public interest in

enabling a public official to delay providing information regarding claims against her where, as here, essentially the same information would be disclosed even if she obtained dismissal of all claims against her." *Nero*, 2017 WL 1048259, at *2. "[G]iven that the case will proceed irrespective of the outcome of [the appealing Defendants'] appeal, staying the proceedings will not promote the broader goal of the Supreme Court's qualified immunity jurisprudence, which is to help shield government officers from unnecessary litigation." *Bos. Taxi Owners*, 187 F. Supp. 3d at 342. "Accordingly, the public interest would not be served by a stay." *Id.*

**III. Defendants' Arguments for a Global Stay Fail**

Defendants' arguments in favor of a blanket stay are meritless. Relying on *Stewart v. Donges*, 915 F.2d 572 (10th Cir. 1990), the appealing Defendants assert that, because they noticed appeals from this Court's denial of immunity as to certain claims, this Court is divested of jurisdiction "to proceed with any part of the action against an appealing defendant." Mot. 8 (quoting *Stewart*, 915 F.2d at 576). Thus, according to the appealing Defendants, "all proceedings against [them] must be stayed pending the appeal." *Id.*

Not so. *Stewart* involved only a claim for damages against a single defendant, and thus the defendant's motion to dismiss covered "the *entire* proceeding based on a defense of . . . qualified immunity." 915 F.2d at 576. In such a circumstance, "[i]f the defense is valid, then no part of the action should proceed against the defendant." *Id.* Where, as in *Stewart*, "an interlocutory appeal from an order refusing to dismiss on . . . qualified immunity grounds relates to the entire action . . . , it divests the district court of jurisdiction to proceed with any part of the action against an appealing defendant." *Id.* Here, in contrast, Plaintiffs have sued a large number of defendants, many of whom have not appealed, and have sought injunctive and declaratory relief against individual defendants in their official capacities. As numerous courts have recognized, this Court

retains jurisdiction over the majority of claims which are not involved in the immunity appeals. *See, e.g.*, *Alice L.*, 492 F.3d at 564-65; *Cruz*, 687 F. Supp. 3d at 1167; *Est. of Simon*, 2023 WL 1768548, at *2; *Davis*, 2019 WL 1924532, at *2 (citing cases). "[W]hen an appeal is taken from a limited interlocutory ruling, as opposed to one that affects the litigation as a whole, the district court may proceed with the case." *Howard*, 150 F.3d at 1229.

Defendants' reliance (at 8) on *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), is likewise flawed. In *Coinbase*, the Supreme Court stated that, "[a]t least absent contrary indications, the background *Griggs* principle already requires an automatic stay of district court proceedings that relate to any aspect of the case involved in the appeal." 599 U.S. at 744. But *Coinbase* contained no discussion of which "aspect of the case" is involved in an immunity appeal. That question is answered by *Alice L.*, *Howard*, *Cruz*, and the many other cases to have addressed a situation like the one here.

Defendants are also incorrect that the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), requires a total stay of all proceedings in the case while some of the Defendants appeal the denial of immunity as to only some of the claims against them. In *Iqbal*, the government defendants were asserting qualified immunity as to *all* claims against them. *See* 556 U.S. at 666. Here, every appealing Defendant has claims pending against them and/or their employing municipality that are not the subject of appeal. So the reasoning in *Iqbal* on which Defendants rely—that "[i]t is no answer to these concerns to say that discovery for petitioners can be deferred while pretrial proceedings continue *for other defendants*," Mot. 9 (emphasis added) (quoting *Iqbal*, 556 U.S. at 685)—has no application. In this case, absent a stay, "pretrial proceedings" will continue as to these very same defendants, and there will be no material reduction in the discovery needed from the appealing Defendants as to the claims being appealed and those to which no

immunity has been (or could be) raised. The same is true of the district court cases cited by Defendants. *See* Mot. 9-10. Unlike here, *all claims* against the immunity-seeking defendants appear to have been at issue in the qualified-immunity assertions in those cases. *See Laca*, 2024 WL 3467351, at *1; *Dalton v. Town of Silver City*, No. 17-1143 WJ/GLF, at *3 (D.N.M. Mar. 29, 2019); *Tenorio v. Pitzer*, No. 12-1295, 2013 WL 12178001, at *1-3 (D.N.M. July 27, 2013).

As the court in *Cruz* explained while comprehensively rejecting the same interpretation of *Iqbal* that Defendants advance here:

> None of the cases upon which Defendants Luna County and Baeza rely—including . . . *Iqbal*—"stand for the proposition that *all discovery* as to *all defendants* must be stayed pending a court's resolution of an assertion of qualified immunity." *Saenz v. City of El Paso, Tex.*, No. EP-14-CV-244-PRM, 2015 WL 4590309, at *2 (W.D. Tex. Jan. 26, 2015). In fact, a multitude of district court decisions, as well as legal scholarship, have concluded that *Iqbal* . . . never purported to alter long-standing precedent that provides district courts considerable discretion in controlling the scope, timing, and methodology of discovery so as to mandate a global stay of discovery.

*Cruz*, 687 F. Supp. 3d at 1137 (citing numerous cases and law review articles); *see also, e.g.*, *Weaver v. Stroman*, No. 1:16-cv-01195-ADA, 2020 WL 3545655, at *3 (W.D. Tex. June 30, 2020) ("*Iqbal* does not stand for the idea that *all discovery* for *all defendants* must be stayed while waiting for resolution of qualified immunity."); *Mendia*, 2016 WL 3249485, at *3 ("'[T]he Supreme Court in *Iqbal* did not hold . . . that [a court] no longer has discretion to determine whether it is proper to stay all discovery' pending resolution of qualified immunity issues" (second and third alterations in original) (quoting *Seeds of Peace Collective v. City of Pittsburgh*, No. 09-1275, 2010 WL 2990734, at *2 (W.D. Pa. July 28, 2010))). Even *Laca*—a case Defendants cite—correctly recognized that a court is not "*required* to stay discovery for all defendants when one party raises qualified immunity." 2024 WL 3467351, at *2 n.2. This is because immunity "is a right to immunity *from certain claims*, not from litigation in general." *Behrens*, 516 U.S. at 312. Such

immunity "does not shield government officials from all discovery but only from discovery which is either avoidable or overly broad." *Maxey*, 890 F.2d at 282 (quoting *Lion Boulos*, 834 F.2d at 507). Where, as here, Defendants will be subject to the same discovery regardless of the outcome of the immunity-related appeals, that discovery is neither "avoidable" nor "overly broad," and nothing in *Iqbal* or elsewhere requires the Court to stay it pending appeal.

Defendants' argument (at 10-11) that there is "complete" overlap between Plaintiffs' claims against the appealing Defendants and the non-appealing Defendants, and that "[d]iscovery into the Non-Appealing Defendants' policies and practices would necessarily require the testimony, documents, and participation of the Appealing Defendants, whose decisions are—generally—the subject of the claims," counsels *against* their requested stay. As discussed above, the overlap in claims against the Defendants who have asserted immunity and those who either have not or cannot means that the appealing Defendants will be required to participate in this litigation, including discovery, regardless of the outcome of their appeals. Numerous courts have invoked precisely that reason for denying a stay in comparable circumstances. *See supra* p. 6 & note 2; *see also supra* Part II.

Even where "the factual basis of the . . . claim[s] overlap," so long as they "are legally distinct," discovery on claims for which the defendant cannot assert immunity may go forward. *Alice L.*, 492 F.3d at 565. "The district court may compel discovery disclosures" as to those claims "because doing so does not interfere with any aspect of [a defendant's immunity] appeal." *Id.*; *see generally Villegas v. City of El Paso*, No. EP-15-CV-00386-DCG, 2025 WL 3654257, at *4 (W.D. Tex. Dec. 9, 2025) ("Factual overlap does not necessarily draw claims into the scope of the appeal. The inquiry instead asks whether claims are legally distinct." (internal quotation marks and footnotes omitted)). Indeed, factual overlap between claims "supports *denying* a stay" because

even if a defendant were to "obtain[] qualified [or other] immunity on appeal, he would still be required to subject himself to the same discovery requests." *Howard*, 2022 WL 1156097, at *2. Moreover, because the appealing Defendants will be required to participate in discovery regardless, there is no reason to believe that the limited stay that Plaintiffs agree is necessary will result in "[s]eparate schedules, repeated discovery, and the prospect of separate trials." Mot. 12. To the contrary, the "complete" overlap in "claims" and "discovery," *id.* at 10-11, renders the likelihood of repeated discovery or other complications virtually nil.

## CONCLUSION

For the foregoing reasons, Defendants' request for a global stay should be denied. The Court should stay no more than the specific claims at issue in Defendants' pending appeals. The lion's share of this case should proceed.

If granted, Defendants' motion will halt proceedings for many months, if not years, pending Defendants' appeal, and continue to indefinitely deny Plaintiffs the opportunity to begin discovery for their years-old claims. Its appropriate and prompt resolution accordingly carries significant importance for Plaintiffs. For those reasons, Plaintiffs welcome the opportunity to address any questions, clarify any concerns, or speak to any other considerations expressed by the Court, should it deem oral argument appropriate.

Respectfully submitted this 9th day of November, 2026.

Salil Dudani*
Israa Alzamli*
Jeffrey Stein*
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW
Suite 800
Washington, DC 20009
(202) 844-4975
salil@civilrightscorps.org

Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
(918) 585-2667
danielsmolen@ssrok.com

*Attorneys for Plaintiffs*

/s/ Seth Wayne
Seth Wayne*
Shelby Calambokidis*
Mary B. McCord*
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY & PROTECTION
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, D.C. 20001
Phone: (202) 662-6671
sw1098@georgetown.edu

**Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 9, 2026, I electronically filed the foregoing with the Clerk of the Court and served a copy upon all counsel of record registered to receive notice via the Court's CM/ECF system.

/s/ *Seth Wayne*
Seth Wayne